**IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION**

| | |
|---|---|
| IN RE: ARC AIRBAG INFLATORS PRODUCTS LIABILITY LITIGATION | MDL No. 3051 Case No. 1:22-md-03051-ELR <br><br> PLAINTIFFS' CORRECTED CONSOLIDATED CLASS ACTION COMPLAINT <br><br> JURY TRIAL DEMANDED <br><br> (VOLUME II) |

# TABLE OF CONTENTS

**Page**

VII.   CLAIMS ASSERTED ON BEHALF OF THE NATIONWIDE CLASS ......1

   1.   Nationwide Count 1: Fraud by Omission and Concealment Against All Defendants.................................................................................1

   2.   Nationwide Count 2: Unjust Enrichment Against the Automaker Defendants.....................................................................................6

VIII.  CLAIMS ASSERTED ON BEHALF OF STATE SUBCLASSES ...............8

   1.   Alabama .........................................................................................8

      a.   Alabama Count 1: Breach of Express Warranty (Ala. Code §§ 7-2-313 and 7-2A-210) Against the Automaker Defendants. ....8

      b.   Alabama Count 2: Breach of Implied Warranty of Merchantability (Ala. Code §§ 7-2-314 and 7-2A-212) Against the Automaker Defendants. .........................................12

      c.   Alabama Count 3: Violation of the Alabama Deceptive Trade Practices Act (Ala. Code §§ 8-19-1, *et seq.*) Against All Defendants. ................................................................15

      d.   Alabama Count 4: Fraud by Omission and Concealment Against All Defendants.................................................24

      e.   Alabama Count 5: Unjust Enrichment Against the Automaker Defendants. ...........................................................29

   2.   Alaska ...........................................................................................31

      a.   Alaska Count 1: Breach of Express Warranty (Alaska Stat. Ann. §§ 45.02.313 and 45.12.210) Against the Automaker Defendants. ................................................................31

      b.   Alaska Count 2: Breach of Implied Warranty of Merchantability (Alaska Stat. Ann. §§ 455.02.314 and 44.12.212) Against the Automaker Defendants. .....................35

      c.   Alaska Count 3: Violation of the Alaska Unfair Trade Practices and Consumer Protection Act (Alaska Stat. Ann. § 45.503471, *et seq.*) Against All Defendants. ............................38

i

d.    Alaska Count 4: Fraud by Omission and Concealment Against All Defendants.............................................................47

e.    Alaska Count 5: Unjust Enrichment Against the Automaker Defendants. ..................................................................52

3.    Arizona .................................................................................54

a.    Arizona Count 1: Breach of Express Warranty (Ariz. Rev. Stat. Ann. §§ 47.2313 and 47-2A210) Against the Automaker Defendants. .............................................................54

b.    Arizona Count 2: Breach of Implied Warranty of Merchantability (Ariz. Rev. Stat. Ann. § 44-1521, *et seq.*) Against the Automaker Defendants...........................................58

c.    Arizona Count 3: Violation of the Arizona Consumer Fraud Act (Ariz. Rev. Stat. Ann. § 44-1521, *et seq.*) Against All Defendants. ..................................................................61

d.    Arizona Count 4: Fraud by Omission and Concealment Against All Defendants.............................................................68

e.    Arizona Count 5: Unjust Enrichment Against the Automaker Defendants. ............................................................74

4.    Arkansas ...............................................................................75

a.    Arkansas Count 1: Breach of Express Warranty (Ark. Code Ann. §§ 4-2-313 and 4-2A-210) Against the Automaker Defendants. .............................................................76

b.    Arkansas Count 2: Breach of Implied Warranty of Merchantability (Ark. Code Ann. §§ 4-2-314 and 4-2A-212) Against the Automaker Defendants...........................................80

c.    Arkansas Count 3: Violations of the Deceptive Trade Practices Act (Ark. Code Ann. § 4-88-101, *et seq.*) Against All Defendants. ..................................................................83

d.    Arkansas Count 4: Fraud by Omission and Concealment Against All Defendants.............................................................90

e.    Arkansas Count 5: Unjust Enrichment Against the Automaker Defendants. ............................................................96

5.     California ............................................................................98

     a.     California Count 1: Breach of Express Warranty (Cal. Com. Code §§ 2313 and 10210) Against the Automaker Defendants. ...............................................................98

     b.     California Count 2: Breach of Implied Warranty of Merchantability (Cal. Com. Code §§ 2314 and 10212) Against the Automaker Defendants. .......................................102

     c.     California Count 3: Violations of the Song-Beverly Act (Civ. Code § 1790, *et seq*.) via Breach of Implied Warranty Against the Automaker Defendants. .......................................105

     d.     California Count 4: Violations of California's Consumer Legal Remedies Act (Cal. Civ. Code §§ 1750, *et seq*.) Against All Defendants. ...............................................................107

     e.     California Count 5: False Advertising Under the California False Advertising Law (Cal. Bus. & Prof. Code § 17500, *et seq*.) Against the Automaker Defendants. ...............................116

     f.     California Count 6: Violations of California's Unfair Competition Law (Cal. Bus. & Prof. Code § 17200, *et* seq.) Against All Defendants. ...........................................122

     g.     California Count 7: Fraud by Omission and Concealment Against All Defendants. ...........................................126

     h.     California Count 8: Unjust Enrichment Against the Automaker Defendants. ........................................132

6.     Colorado ........................................................................134

     a.     Colorado Count 1: Breach of Express Warranty (Colo. Rev. Stat. §§ 4-2-313 and 4-2.5-210) Against the Automaker Defendants. ........................................134

     b.     Colorado Count 2: Breach of Implied Warranty of Merchantability (Colo. Rev. Stat. §§ 4-2-314 and 4-2.5-212) Against the Automaker Defendants. .......................................138

     c.     Colorado Count 3: Violations of Colorado Consumer Protection Act (Colo. Rev. Stat. § 6-1-101, *et seq*.) Against All Defendants. ...............................................................141

       d.      Colorado Count 4: Fraud by Omission and Concealment Against All Defendants...........................................................148

       e.      Colorado Count 5: Unjust Enrichment Against the Automaker Defendants. ........................................................154

  7.      Connecticut....................................................................156

       a.      Connecticut Count 1: Breach of Express Warranty (Conn. Gen. Stat. Ann. §§ 42A-2-313 and 42a-2A-503) Against the Automaker Defendants. ....................................................156

       b.      Connecticut Count 2: Breach of Implied Warranty of Merchantability (Conn. Gen. Stat. §§ 42a-2-314 and 42a-2a-504) Against the Automaker Defendants. ........................160

       c.      Connecticut Count 3: Violation of the Connecticut Unlawful Trade Practices Act (Conn. Gen. Stat. Ann. § 42-110a, *et seq*.) Against All Defendants. ................................................163

       d.      Connecticut Count 4: Fraud by Omission and Concealment Against All Defendants...........................................................170

       e.      Connecticut Count 5: Unjust Enrichment Against the Automaker Defendants. ........................................................175

  8.      Delaware........................................................................177

       a.      Delaware Count 1: Breach of Express Warranty (6 Del. Code §§ 2-313 and 2A-210) Against the Automaker Defendants. ....................................................................177

       b.      Delaware Count 2: Breach of Implied Warranty of Merchantability (6 Del. Code §§ 2-314 and 2A-212) Against the Automaker Defendants.......................................181

       c.      Delaware Count 3: Violations of the Delaware Consumer Fraud Act (6 Del. Code §§ 2511, *et seq*.) Against All Defendants. ..................................................................184

       d.      Delaware Count 4: Violation of the Delaware Deceptive Trade Practices Act (6 Del. Code § 2531, *et seq*.) Against All Defendants. ..................................................................191

       e.      Delaware Count 5: Fraud by Omission and Concealment Against All Defendants...........................................................198

iv

  f.  Delaware Count 6: Unjust Enrichment Against the Automaker Defendants. ........................................................203

 9. District of Columbia................................................................205

  a.  District of Columbia Count 1: Breach of Express Warranty (DC Stat. §§ 28:2-313 and 28:2A-210) Against the Automaker Defendants. ...........................................................205

  b.  District of Columbia Count 2: Breach of Implied Warranty of Merchantability (DC Stat §§ 28:2-314 and 28:2A-212) Against the Automaker Defendants.......................................209

  c.  District of Columbia Count 3: Violations of the District of Columbia's Consumer Protection Procedures Act (DC Stat §§ 28-3901, *et seq.*) Against All Defendants..........................212

  d.  District of Columbia Count 4: Fraud by Omission and Concealment Against All Defendants.....................................221

  e.  District of Columbia Count 5: Unjust Enrichment Against the Automaker Defendants. ...................................................226

 10. Florida.....................................................................................228

  a.  Florida Count 1: Breach of Express Warranty (Fla. Stat. §§ 672.313 and 680.21) Against the Automaker Defendants......228

  b.  Florida Count 2: Breach of Implied Warranty of Merchantability (Fla. Stat. §§ 672.314 and 680.212) Against the Automaker Defendants. ...................................................232

  c.  Florida Count 3: Violations of the Florida Deceptive & Unfair Trade Practices Act (Fla. Stat. § 501.201, *et seq.*) Against All Defendants...........................................................235

  d.  Florida Count 4: Fraud by Omission and Concealment Against All Defendants...........................................................242

  e.  Florida Count 5: Unjust Enrichment Against the Automaker Defendants. ...........................................................248

 11. Georgia ...................................................................................249

a.     Georgia Count 1: Breach of Express Warranty (Ga. Code. Ann. §§ 11-2-313 and 11-2A-210) Against the Automaker Defendants. ..............................................................250

b.     Georgia Count 2: Breach of Implied Warranty of Merchantability (Ga. Code Ann. §§ 11-2-314 and 11-2A-212) Against the Automaker Defendants.............................254

c.     Georgia Count 3: Violations of the Georgia Uniform Deceptive Trade Practices Act (Ga. Code Ann. §§ 10-1-370, *et seq*.) Against All Defendants. ....................................257

d.     Georgia Count 4: Violations of the Georgia Fair Business Practices Act (Ga. Code Ann. §§ 10-1-390, *et seq*.) Against All Defendants. ......................................................265

e.     Georgia Count 5: Fraud by Omission and Concealment Against All Defendants............................................274

f.     Georgia Count 6: Unjust Enrichment Against the Automaker Defendants. ........................................279

12.     Hawaii.................................................................281

a.     Hawaii Count 1: Breach of Express Warranty (Haw. Rev. Stat. §§ 490:2-313 and 490:2A-210) Against the Automaker Defendants. ........................................281

b.     Hawaii Count 2: Breach of Implied Warranty of Merchantability (Haw. Rev. Stat. §§ 490:2-314 and 490:2A-212) Against the Automaker Defendants. .......................285

c.     Hawaii Count 3: Unfair and Deceptive Acts in Violation of Hawaii Law (Haw. Rev. Stat. §§ 480, *et seq*.) Against All Defendants. ......................................................288

d.     Hawaii Count 4: Fraud by Omission and Concealment Against All Defendants............................................295

e.     Hawaii Count 5: Unjust Enrichment Against the Automaker Defendants. ........................................301

13.     Idaho .................................................................303

a.      Idaho Count 1: Breach of Express Warranty (Idaho Code §§ 28-2-314 and 28-12-212) Against the Automaker Defendants. ...............................................................303

b.      Idaho Count 2: Breach of Implied Warranty of Merchantability (Idaho Code §§ 28-2-314 and 28-12-212) Against the Automaker Defendants. ..........................................307

c.      Idaho Count 3: Violations of the Idaho Consumer Protection Act (Idaho Code § 48-601, *et seq.*) Against All Defendants. ......................................................310

d.      Idaho Count 4: Fraud by Omission and Concealment Against All Defendants..........................................317

e.      Idaho Count 5: Unjust Enrichment Against the Automaker Defendants. ..........................................323

14.     Illinois................................................................325

a.      Illinois Count 1: Breach of Express Warranty (810 Ill. Comp. Stat. 5/2-313 and 5/2A-210) Against the Automaker Defendants. ..........................................325

b.      Illinois Count 2: Breach of Implied Warranty of Merchantability (810 Ill. Comp. Stat. 5/2-314 and 5/2A-212) Against the Automaker Defendants. ....................329

c.      Illinois Count 3: Violations of Illinois Consumer Fraud and Deceptive Business Practices Act (815 Ill. Comp. Stat. 505/1, *et seq.*) Against All Defendants. ...................333

d.      Illinois Count 4: Violation of the Illinois Uniform Deceptive Trade Practices Act (815 Ill. Comp. Stat. 510/1, *et seq.*) Against All Defendants..........................................341

e.      Illinois Count 5: Fraud by Omission and Concealment Against All Defendants..........................................346

f.      Illinois Count 6: Unjust Enrichment Against the Automaker Defendants. ..........................................351

15.     Indiana ...............................................................353

vii

a.   Indiana Count 1: Breach of Express Warranty (Ind. Code §§ 26-1-2-313 and 26-1-2.1-210) Against the Automaker Defendants. ........................................................353

b.   Indiana Count 2: Breach of Implied Warranty of Merchantability (Ind. Code §§ 26-1-2-314 and 26-1-2.1-212) Against the Automaker Defendants..............................357

c.   Indiana Count 3: Violation of the Indiana Deceptive Consumer Sales Act (Ind. Code § 24-5-0.5-1, *et seq.*) Against All Defendants. ..........................................360

16.   Iowa ..............................................................375

a.   Iowa Count 1: Breach of Express Warranty (Iowa Code §§ 554.2313 and 554.13210) Against the Automaker Defendants. ........................................................375

b.   Iowa Count 2: Breach of Implied Warranty of Merchantability (Iowa Code §§ 554.2314 and 554.13212) Against the Automaker Defendants. ..........................................379

c.   Iowa Count 3: Violations of the Private Right of Action for Consumer Frauds Act (Iowa Code § 714h.1, *et seq.*) Against All Defendants. ..........................................382

d.   Iowa Count 4: Fraud by Omission and Concealment Against All Defendants. ..........................................389

e.   Iowa Count 5: Unjust Enrichment Against the Automaker Defendants. ........................................................395

17.   Kansas ..............................................................397

a.   Kansas Count 1: Breach of Express Warranty (Kan. Stat. Ann. §§ 84-2-313 and 84-2A-210) Against the Automaker Defendants. ........................................................397

b.   Kansas Count 2: Breach of Implied Warranty (Kan. Stat. Ann. §§ 84-2-314 and 84-2A-212) Against the Automaker Defendants. ........................................................401

18.   Kentucky ..............................................................419

a.      Kentucky Count 1: Breach of Express Warranty (Ky. Rev. Stat. §§ 335.2-313 and 355.2A-210) Against the Automaker Defendants. ..........................................................419

b.      Kentucky Count 2: Breach of Implied Warranty of Merchantability (Ky. Rev. Stat. §§ 335.2-314 and 355.2A-212) Against the Automaker Defendants...............................423

c.      Kentucky Count 3: Violations of Kentucky's Consumer Protection Act (Ky. Rev. Stat. § 367.110, *et seq*.) Against All Defendants. .......................................................426

d.      Kentucky Count 4: Fraud by Omission and Concealment Against All Defendants...........................................................433

e.      Kentucky Count 5: Unjust Enrichment Against the Automaker Defendants. .........................................................438

19.    Louisiana .........................................................................440

a.      Louisiana Count 1: Breach of Implied Warranty of Merchantability/Warranty Against Redhibitory Defects (La. Civ. Code Art. 2520, 2524) Against the Automaker Defendants. ...................................................................440

b.      Louisiana Count 2: Violations of Louisiana's Unfair Trade Practices and Consumer Protection Law (La. Rev. Stat. § 51:1401, *et seq*.) Against All Defendants. ...............................444

c.      Louisiana Count 3: Fraud by Omission and Concealment Against All Defendants...........................................................450

d.      Louisiana Count 4: Unjust Enrichment Against the Automaker Defendants. .........................................................456

20.    Maine................................................................................458

a.      Maine Count 1: Breach of Express Warranty (Me. Rev. Stat. Tit. 11 §§ 2-313 and 2-1210) Against the Automaker Defendants. ...................................................................458

b.      Maine Count 2: Breach of Implied Warranty of Merchantability (Me. Rev. Stat. Tit. 11 §§ 2-314 and 2-1212) Against the Automaker Defendants. .........................................462

ix

|   | c. | Maine Count 3: Violations of Maine's Unfair Trade Practices Act (Me. Rev. Stat. Ann. Tit. 5 § 205-a, *et seq.*) Against All Defendants. | 465 |
|---|---|---|---|
|   | d. | Maine Count 4: Fraud by Omission and Concealment Against All Defendants. | 473 |
|   | e. | Maine Count 5: Unjust Enrichment Against the Automaker Defendants. | 478 |
| 21. | | Maryland | 480 |
|   | a. | Maryland Count 1: Breach of Express Warranty (Md. Code Com. Law §§ 2-313 and 2A-210) Against the Automaker Defendants. | 480 |
|   | b. | Maryland Count 2: Breach of Implied Warranty of Merchantability (Md. Code Com. Law §§ 2-314 and 2A-212) Against the Automaker Defendants. | 484 |
|   | c. | Maryland Count 3: Violation of the Maryland Consumer Protection Act (Md. Code, Com. Law, § 13-101, *et seq.*) Against All Defendants. | 488 |
|   | d. | Maryland Count 4: Fraud by Omission and Concealment Against All Defendants. | 496 |
|   | e. | Maryland Count 5: Unjust Enrichment Against the Automaker Defendants. | 501 |
| 22. | | Massachusetts | 503 |
|   | a. | Massachusetts Count 1: Breach of Express Warranty (Mass. Gen Laws ch.A 106, §§ 2-313 and 2A-210) Against the Automaker Defendants. | 503 |
|   | b. | Massachusetts Count 2: Breach of Implied Warranty of Merchantability (Mass. Gen. Laws ch. 106, §§ 2-314 and 2A-212) Against the Automaker Defendants. | 508 |
|   | c. | Massachusetts Count 3: Violations of Massachusetts's Deceptive Acts or Practices Law (Mass. Gen. Laws ch. 93a, § 1, *et seq.*) Against All Defendants. | 511 |
|   | d. | Massachusetts Count 4: Fraud by Omission and Concealment Against All Defendants. | 518 |

    e.    Massachusetts Count 5: Unjust Enrichment Against the Automaker Defendants. ........................................................524

23.    Michigan........................................................................526

    a.    Michigan Count 1: Breach of Express Warranty (Mich. Comp. Laws §§ 440.2313 and 440.2860) Against the Automaker Defendants. ........................................................526

    b.    Michigan Count 2: Breach of Implied Warranty of Merchantability (Mich. Comp. Laws §§ 440.2314 and 440.2862) Against the Automaker Defendants. ....................530

    c.    Michigan Count 3: Violations of Michigan's Consumer Protection Act (Mich. Comp. Laws § 445.901, *et seq*.) Against All Defendants...........................................................533

    d.    Michigan Count 4: Fraud by Omission and Concealment Against All Defendants...........................................................541

    e.    Michigan Count 5: Unjust Enrichment Against the Automaker Defendants. ........................................................546

24.    Minnesota ......................................................................548

    a.    Minnesota Count 1: Breach of Express Warranty (Minn. Stat. §§ 336.2-313 and 336.2A-210) Against the Automaker Defendants. ........................................................548

    b.    Minnesota Count 2: Breach of Implied Warranty of Merchantability (Minn. Stat. §§ 336.2-314 and 336.2A-212) Against the Automaker Defendants...............................553

    c.    Minnesota Count 3: Violation of the Minnesota Prevention of Consumer Fraud Act (Minn. Stat. § 325F.68, *et seq*., and Minn. Stat. § 8.31, subd. 3a) Against the Automaker Defendants. ........................................................556

    d.    Minnesota Count 4: Violations of Minnesota's Uniform Deceptive Trade Practices Act (Minn. Stat. § 325D.44, Subd. 1, *et seq*.) Against All Defendants...............................562

    e.    Minnesota Count 5: Fraud by Omission and Concealment Against All Defendants...........................................................570

|  | f. | Minnesota Count 6: Unjust Enrichment Against the Automaker Defendants. ........................................................575 |

25.   Mississippi ............................................................................577

    a.   Mississippi Count 1: Breach of Express Warranty (Miss. Code §§ 75-2-313 and 75-2A-210) Against the Automaker Defendants. ........................................................577

    b.   Mississippi Count 2: Breach of Implied Warranty of Merchantability (Miss. Code §§ 75-2-314 and 75-2A-212) Against the Automaker Defendants. .......................................581

    c.   Mississippi Count 3: Violations of Mississippi's Consumer Protection Act (Miss. Code. Ann. § 75-24-1, *et seq*.) Against All Defendants. ..........................................................584

    d.   Mississippi Count 4: Fraud by Omission and Concealment Against All Defendants. ..........................................................593

    e.   Mississippi Count 5: Unjust Enrichment Against the Automaker Defendants. ........................................................598

26.   Missouri ...............................................................................600

    a.   Missouri Count 1: Breach of Express Warranty (Mo. Rev. Stat. §§ 400.2-313 and 400.2A-210) Against the Automaker Defendants. ........................................................600

    b.   Missouri Count 2: Breach of Implied Warranty of Merchantability (Mo. Rev. Stat. §§ 400.2-314 and 400.2A-212) Against the Automaker Defendants. ...............................604

    c.   Missouri Count 3: Violations of the Missouri Merchandising Practices Act (Mo. Rev. Stat. § 407.010, *et seq*.) Against All Defendants. ..........................................................608

    d.   Missouri Count 4: Fraud by Omission and Concealment Against All Defendants. ..........................................................615

    e.   Missouri Count 5: Unjust Enrichment Against the Automaker Defendants. ........................................................620

27.   Montana ...............................................................................622

a.  Montana Count 1: Breach of Express Warranty (Mont. Code §§ 30-2-313 and 30-2A-210) Against the Automaker Defendants. ................................................................622

b.  Montana Count 2: Breach of Implied Warranty of Merchantability (Mont. Code §§ 30-2-314 and 30-2A-212) Against the Automaker Defendants................................626

c.  Montana Count 3: Violation of the Montana Unfair Trade Practices Act of 1973 (Mont. Code § 30-14-101, *et seq.*) Against All Defendants. ...........................................629

d.  Montana Count 4: Fraud by Omission and Concealment Against All Defendants. ...........................................636

e.  Montana Count 5: Unjust Enrichment Against the Automaker Defendants. .........................................641

28. Nebraska ................................................................643

a.  Nebraska Count 1: Breach of Express Warranty (Neb. Rev. Stat. U.C.C. §§ 2-313 and 2A-210) Against the Automaker Defendants. ........................................643

b.  Nebraska Count 2: Breach of Implied Warranty of Merchantability (Neb. Rev. Stat. U.C.C. §§ 30-2-314 and 30-2A-212) Against the Automaker Defendants. ..................647

c.  Nebraska Count 3: Violation of the Nebraska Consumer Practices Act (Neb. Rev. Stat. § 59-1601, *et seq.*) Against All Defendants. ........................................651

d.  Nebraska Count 4: Fraud by Omission and Concealment Against All Defendants. ...........................................657

e.  Nebraska Count 5: Unjust Enrichment Against the Automaker Defendants. .........................................663

29. Nevada ................................................................665

a.  Nevada Count 1: Breach of Express Warranty (Nev. Rev. Stat. §§ 104.2313 and 104A.2210) Against the Automaker Defendants. ................................................665

b.    Nevada Count 2: Breach of Implied Warranty of Merchantability (Nev. Rev. Stat. §§ 104.2314 and 104A. 2212) Against the Automaker Defendants.............................669

c.    Nevada Count 3: Violation of the Nevada Consumer Practices Act (Nev. Rev. Stat. § 598.0903, *et seq.*) Against All Defendants. ...........................................................................672

d.    Nevada Count 4: Fraud by Omission and Concealment Against All Defendants...........................................................679

e.    Nevada Count 5: Unjust Enrichment Against the Automaker Defendants. ........................................................684

30.    New Hampshire ...................................................................686

a.    New Hampshire Count 1: Breach of Express Warranty (N.H. Rev. Stat. §§ 382-A:2-313 and 382-A:2A-210) Against the Automaker Defendants. ......................................686

b.    New Hampshire Count 2: Breach of Implied Warranty of Merchantability (N.H. Rev. Stat. §§ 382-A:2-314 and 382-A:2A-212) Against the Automaker Defendants. ...................690

c.    New Hampshire Count 3: Violation of the New Hampshire Consumer Practices Act (N.H. Rev. Stat. § 358-A:1, *et seq.*) Against All Defendants. .............................................694

d.    New Hampshire Count 4: Fraud by Omission and Concealment Against All Defendants.....................................701

e.    New Hampshire Count 5: Unjust Enrichment Against the Automaker Defendants. ........................................................706

31.    New Jersey ...........................................................................714

a.    New Jersey Count 1: Breach of Express Warranty (N.J. Stat. Ann. §§ 12A:2-313 and 12A:2A-210) Against the Automaker Defendants. ........................................................714

b.    New Jersey Count 2: Breach of Implied Warranty of Merchantability (N.J. Stat. Ann. §§ 12A:2-314 and 12A:2A-212) Against the Automaker Defendants. ........................718

c.      New Jersey Count 3: Violation of the New Jersey Consumer
        Fraud Act (N.J. Stat. Ann. § 56:8-1, *et seq.*) Against All
        Defendants. ................................................................721

d.      New Jersey Count 4: Fraud by Omission and Concealment
        Against All Defendants. ...............................................728

e.      New Jersey Count 5: Unjust Enrichment Against the
        Automaker Defendants. ...............................................733

32.   New Mexico ..................................................................735

a.      New Mexico Count 1: Breach of Express Warranty (N.M.
        Stat. §§ 55-2-313 and 55-2A-210) Against the Automaker
        Defendants. ................................................................735

b.      New Mexico Count 2: Breach of Implied Warranty of
        Merchantability (N.M. Stat. §§ 55-2-314 and 55-2A-212)
        Against the Automaker Defendants. ............................739

c.      New Mexico Count 3: Violation of the New Mexico Unfair
        Trade Practices Act (N.M. Stat. § 57-12-1, *et seq.*) Against
        All Defendants. ...........................................................743

d.      New Mexico Count 4: Fraud by Omission and Concealment
        Against All Defendants. ...............................................750

e.      New Mexico Count 5: Unjust Enrichment Against the
        Automaker Defendants. ...............................................755

33.   New York ......................................................................757

a.      New York Count 1: Breach of Express Warranty (N.Y.
        U.C.C. §§ 2-313 and 2A-210) Against the Automaker
        Defendants. ................................................................757

b.      New York Count 2: Breach of Implied Warranty of
        Merchantability (N.Y. U.C.C. §§ 2-314 and 2A-212)
        Against the Automaker Defendants. ............................761

c.      New York Count 3: Violation of New York General Business
        Law § 349 (N.Y. Gen. Bus. Law § 349, *et seq.*) Against
        All Defendants. ...........................................................764

    d.    New York Count 4: Violation of New York General Business Law § 350 (N.Y. Gen. Bus. Law § 350, *et seq.*) Against All Defendants. .......................................................771

    e.    New York Count 5: Fraud by Omission and Concealment Against All Defendants. ..........................................777

    f.    New York Count 6: Unjust Enrichment Against the Automaker Defendants. ..........................................783

34.    North Carolina ...................................................................785

    a.    North Carolina Count 1: Breach of Express Warranty (N.C. Gen. Stat. §§ 25-2-313 and 25-2A-210) Against the Automaker Defendants. ..........................................785

    b.    North Carolina Count 2: Breach of Implied Warranty of Merchantability (N.C. Gen. Stat. §§ 25-2-314 and 25-2A-212) Against the Automaker Defendants...............................789

    c.    North Carolina Count 3: Violation of the North Carolina Unfair and Deceptive Trade Practices Act (N.C. Gen. Stat. § 75-1.1, *et seq.*) Against All Defendants..............................792

    d.    North Carolina Count 4: Fraud by Omission and Concealment Against All Defendants....................................798

    e.    North Carolina Count 5: Unjust Enrichment Against the Automaker Defendants. ..........................................804

35.    North Dakota ...................................................................806

    a.    North Dakota Count 1: Breach of Express Warranty (N.D. Cent. Code §§ 41-02-30 and 41-02.1-19) Against the Automaker Defendants. ..........................................806

    b.    North Dakota Count 2: Breach of Implied Warranty of Merchantability (N.D. Cent. Code §§ 41-02-31 and 41-02.1-21) Against the Automaker Defendants. ......................810

    c.    North Dakota Count 3: Violation of the North Dakota Consumer Fraud Act (N.D. Cent. Code § 51-15-02, *et seq.*) Against All Defendants. .............................................813

    d.    North Dakota Count 4: Fraud by Omission and Concealment Against All Defendants....................................820

e.    North Dakota Count 5: Unjust Enrichment Against the Automaker Defendants. ........................................................825

36.    Ohio ...............................................................................827

a.    Ohio Count 1: Breach of Express Warranty (Ohio Rev. Code Ann. §§ 1302.26 and 1310.17) Against the Automaker Defendants. ........................................................827

b.    Ohio Count 2: Breach of Implied Warranty of Merchantability (Ohio Rev. Code Ann. §§ 1302.27 and 1310.19) Against the Automaker Defendants. ....................................................831

c.    Ohio Count 3: Violation of the Ohio Consumer Sales Practices Act (Ohio Rev. Code Ann. § 1345.01, *et seq.*) Against All Defendants. ............................................................834

d.    Ohio Count 4: Violation of the Ohio Deceptive Trade Practices Act (Ohio Rev. Code Ann. § 4165.01, *et seq.*) Against All Defendants. ............................................................841

e.    Ohio Count 5: Fraud by Omission and Concealment Against All Defendants. ...........................................................848

f.    Ohio Count 6: Unjust Enrichment Against the Automaker Defendants. ........................................................854

37.    Oklahoma ......................................................................855

a.    Oklahoma Count 1: Breach of Express Warranty (Okla. Stat. Ann. tit. 12A, §§ 2-313 and 2A-210) Against the Automaker Defendants. ........................................................856

b.    Oklahoma Count 2: Breach of Implied Warranty of Merchantability (Okla. Stat. Ann., tit. 12A §§ 2-314 and 2A-212) Against the Automaker Defendants. ........................860

c.    Oklahoma Count 3: Violation of the Oklahoma Consumer Protection Act (Okla. Stat. Ann. tit. 15, § 751, *et seq.*) Against All Defendants............................................................863

d.    Oklahoma Count 4: Fraud by Omission and Concealment Against All Defendants............................................................870

e.    Oklahoma Count 5: Unjust Enrichment Against the Automaker Defendants. ........................................................875

38.   Oregon ........................................................................877

    a.   Oregon Count 1: Breach of Express Warranty (Or. Rev. Stat. §§ 72.3130 and 72A.2100) Against the Automaker Defendants. ...........................................................877

    b.   Oregon Count 2: Breach of Implied Warranty of Merchantability (Or. Rev. Stat. §§ 72.3140 and 72A.2120) Against the Automaker Defendants. .....................................881

    c.   Oregon Count 3: Violation of the Oregon Unlawful Trade Practices Act (Or. Rev. Stat. § 646.605, *et seq.*) Against All Defendants. ....................................................885

    d.   Oregon Count 4: Fraud by Omission and Concealment Against All Defendants. ..........................................892

    e.   Oregon Count 5: Unjust Enrichment Against the Automaker Defendants. .......................................897

39.   Pennsylvania ..............................................................899

    a.   Pennsylvania Count 1: Breach of Express Warranty (13 Pa. Cons. Stat. §§ 2313 and 2A210) Against the Automaker Defendants. ...........................................................899

    b.   Pennsylvania Count 2: Breach of Implied Warranty of Merchantability (13 Pa. Cons. Stat. §§ 2314 and 2A212) Against the Automaker Defendants. .....................................903

    c.   Pennsylvania Count 3: Violation of the Pennsylvania Unfair Trade Practices and Consumer Protection Law (73 Pa. Cons. Stat. § 201-1, *et seq.*) Against All Defendants. ............906

    d.   Pennsylvania Count 4: Fraud by Omission and Concealment Against All Defendants. ..........................................913

    e.   Pennsylvania Count 5: Unjust Enrichment Against the Automaker Defendants. .......................................919

40.   Rhode Island ..............................................................921

    a.   Rhode Island Count 1: Breach of Express Warranty (R.I. Gen. Laws §§ 6A-2-313 and 6A-2.1-210) Against the Automaker Defendants. .......................................921

b.    Rhode Island Count 2: Breach of Implied Warranty of Merchantability (R.I. Gen. Laws §§ 6A-2-314 and 6A-2.1-212) Against the Automaker Defendants. ........................925

c.    Rhode Island Count 3: Violation of the Rhode Island Deceptive Trade Practices Act (R.I. Gen. Laws § 6-13.1, *et seq.*) Against All Defendants. .............................................928

d.    Rhode Island Count 4: Fraud by Omission and Concealment Against All Defendants...........................................................935

e.    Rhode Island Count 5: Unjust Enrichment Against the Automaker Defendants. .........................................................941

41.    South Carolina....................................................................943

a.    South Carolina Count 1: Breach of Express Warranty (S.C. Code Ann. §§ 36-2-313 and 36-2A-210) Against the Automaker Defendants. ........................................................943

b.    South Carolina Count 2: Breach of Implied Warranty of Merchantability (S.C. Code Ann. §§ 36-2-314 and 36-2A-212) Against the Automaker Defendants................................947

c.    South Carolina Count 3: Violation of the South Carolina Unfair Trade Practices Act (S.C. Code Ann. § 39-5-10, *et seq.*) Against All Defendants...........................................................950

d.    South Carolina Count 4: Violation of the South Carolina Regulation of Manufacturers, Distributors, and Dealers Act (S.C. Code Ann. § 56-15-10, *et seq.*) Against All Defendants. .............................................................956

e.    South Carolina Count 5: Fraud by Omission and Concealment Against All Defendants...........................................................960

f.    South Carolina Count 6: Unjust Enrichment Against the Automaker Defendants. .........................................................966

42.    South Dakota ......................................................................968

a.    South Dakota Count 1: Breach of Express Warranty (S.D. Codified Laws §§ 57A-2-313 and 57A-2A-210) Against the Automaker Defendants. ...................................................968

b.      South Dakota Count 2: Breach of Implied Warranty of Merchantability (S.D. Codified Laws §§ 57A-2-314 and 57A-2A-212) Against the Automaker Defendants. ...............972

c.      South Dakota Count 3: Violation of the South Dakota Deceptive Trade Practices and Consumer Protection Law (S.D. Codified Laws § 37-24-1, *et seq.*) Against All Defendants. ...........................................................975

d.      South Dakota Count 4: Fraud by Omission and Concealment Against All Defendants. ..........................................981

e.      South Dakota Count 6: Unjust Enrichment Against the Automaker Defendants. ..........................................987

43.    Tennessee ...............................................................989

a.      Tennessee Count 1: Breach of Express Warranty (Tenn. Code §§ 47-2-313 and 47-2A-210) Against the Automaker Defendants. ..........................................989

b.      Tennessee Count 2: Breach of Implied Warranty of Merchantability (Tenn. Code §§ 47-2-314 and 47-2A-212) Against the Automaker Defendants. .......................993

c.      Tennessee Count 3: Violation of the Tennessee Consumer Protection Act of 1977 (Tenn. Code § 47-18-101, *et seq.*) Against All Defendants. ..........................................996

d.      Tennessee Count 4: Fraud by Omission and Concealment Against All Defendants. ........................................ 1004

e.      Tennessee Count 5: Unjust Enrichment Against the Automaker Defendants. ........................................ 1009

44.    Texas....................................................................... 1011

a.      Texas Count 1: Breach of Express Warranty (Tex. Bus. & Com. Code Ann. §§ 2.313 and 2A.210) Against the Automaker Defendants. ....................................... 1011

b.      Texas Count 2: Breach of Implied Warranty of Merchantability (Tex. Bus. & Com. Code Ann. §§ 2.314 and 2A.212) Against the Automaker Defendants. .................................... 1015

c.    Texas Count 3: Violation of the Texas Consumer Protection Act of 1977 (Tex. Bus. & Com. Code Ann. § 17.41, *et seq.*) Against All Defendants. ............................................ 1019

d.    Texas Count 4: Fraud by Omission and Concealment Against All Defendants. ....................................................... 1027

e.    Texas Count 5: Unjust Enrichment Against the Automaker Defendants. ....................................................... 1033

45.    Utah ................................................................................ 1034

a.    Utah Count 1: Breach of Express Warranty (Utah Code Ann. §§ 70A-2-313 and 70A-2A-210) Against the Automaker Defendants. ............................................................. 1035

b.    Utah Count 2: Breach of Implied Warranty of Merchantability (Utah Code Ann. §§ 70A-2-314 and 70A-2A-212) Against the Automaker Defendants. ................................................. 1039

c.    Utah Count 3: Violation of the Utah Consumer Sales Practices Act (Utah Code Ann. § 13-11-1, *et seq.*) Against All Defendants. ............................................................. 1042

d.    Utah Count 4: Violation of the Utah Truth in Advertising Law (Utah Code Ann. § 13-11a-1, *et seq.*) Against All Defendants. ............................................................. 1049

e.    Utah Count 5: Fraud by Omission and Concealment Against All Defendants. ................................................... 1056

f.    Utah Count 6: Unjust Enrichment Against the Automaker Defendants. ............................................................. 1062

46.    Vermont ......................................................................... 1064

a.    Vermont Count 1: Breach of Express Warranty (Vt. Stat. Ann. Tit. 9A, §§ 2-313 and 2A-210) Against the Automaker Defendants. ....................................................... 1064

b.    Vermont Count 2: Breach of Implied Warranty of Merchantability (Vt. Stat. Ann. Tit. 9A, §§ 2-314 and 2A-212) Against the Automaker Defendants............................ 1068

c.     Vermont Count 3: Violation of the Vermont Consumer Protection Act (Vt. Stat. Ann. Tit. 9, § 13-11-1, *et seq.*) Against All Defendants. ........................................................ 1071

d.     Vermont Count 4: Fraud by Omission and Concealment Against All Defendants. ........................................................ 1078

e.     Vermont Count 5: Unjust Enrichment Against the Automaker Defendants. ...................................................... 1084

47.     Virginia .................................................................................. 1086

a.     Virginia Count 1: Breach of Express Warranty (Va. Code Ann. §§ 8.2-313 and 8.2A-210) Against the Automaker Defendants. ............................................................................ 1086

b.     Virginia Count 2: Breach of Implied Warranty of Merchantability (Va. Code Ann. §§ 8.2-314 and 8.2A-212) Against the Automaker Defendants. ................................... 1090

c.     Virginia Count 3: Violation of the Virginia Consumer Protection Act (Va. Code Ann. § 59.1-196, *et seq.*) Against All Defendants. .................................................................... 1093

d.     Virginia Count 4: Fraud by Omission and Concealment Against All Defendants. ........................................................ 1100

e.     Virginia Count 5: Unjust Enrichment Against the Automaker Defendants. ...................................................... 1106

48.     Washington ............................................................................ 1107

a.     Washington Count 1: Breach of Express Warranty (Wash. Rev. Code §§ 62A.2-313 and 62A.2A-210) Against the Automaker Defendants. ...................................................... 1108

b.     Washington Count 2: Breach of Implied Warranty of Merchantability (Wash. Rev. Code §§ 62A.2-314 and 62A.2A-212) Against the Automaker Defendants. ............. 1112

c.     Washington Count 3: Violation of the Washington Consumer Protection Act (Wash. Rev. Code § 19.86.010, *et seq.*) Against All Defendants. ........................................ 1115

d.     Washington Count 4: Fraud by Omission and Concealment Against All Defendants. ........................................................ 1121

xxii

e.    Washington Count 5: Unjust Enrichment Against the
      Automaker Defendants. ...................................................... 1127

49.   West Virginia ...................................................................... 1129

a.    West Virginia Count 1: Breach of Express Warranty (W. Va.
      Code §§ 46-2-313 and 46-2A-210) Against the
      Automaker Defendants. ...................................................... 1129

b.    West Virginia Count 2: Breach of Implied Warranty of
      Merchantability (W. Va. Code §§ 46-2-314 and 46-2A-212)
      Against the Automaker Defendants. .................................... 1133

c.    West Virginia Count 3: Violation of the West Virginia
      Consumer Credit and Protection Act (W. Va. Code § 46A-1-
      101, *et seq.*) Against All Defendants. .................................. 1136

d.    West Virginia Count 4: Fraud by Omission and Concealment
      Against All Defendants. ...................................................... 1145

e.    West Virginia Count 5: Unjust Enrichment Against the
      Automaker Defendants. ...................................................... 1150

50.   Wisconsin ........................................................................... 1152

a.    Wisconsin Count 1: Breach of Express Warranty (Wis. Stat.
      §§ 402.313 and 411.210) Against the Automaker
      Defendants. ........................................................................ 1152

b.    Wisconsin Count 2: Breach of Implied Warranty of
      Merchantability (Wis. Stat. §§ 402.314 and 411.212)
      Against the Automaker Defendants. .................................... 1156

c.    Wisconsin Count 3: Violation of the Wisconsin Deceptive
      Trade Practices Act (Wis. Stat. § 100.18, *et seq.*) Against
      All Defendants. ................................................................... 1159

d.    Wisconsin Count 4: Fraud by Omission and Concealment
      Against All Defendants. ...................................................... 1166

e.    Wisconsin Count 5: Unjust Enrichment Against the
      Automaker Defendants. ...................................................... 1171

51.   Wyoming ............................................................................ 1173

a.   Wyoming Count 1: Breach of Express Warranty (Wyo. Stat. §§ 34.1-2-313 and 34.1-2.A-210) Against the Automaker Defendants. .......................................................................... 1173

b.   Wyoming Count 2: Breach of Implied Warranty of Merchantability (Wyo. Stat. §§ 34.1-2-314 and 34.1-2.A-212) Against the Automaker Defendants. ................................... 1177

c.   Wyoming Count 3: Violation of the Wyoming Consumer Protection Act (Wyo. Stat. § 40-12-101, *et seq.*) Against All Defendants. .................................................................. 1181

d.   Wyoming Count 4: Fraud by Omission and Concealment Against All Defendants. ........................................................ 1189

e.   Wyoming Count 5: Unjust Enrichment Against the Automaker Defendants. ..................................................... 1194

IX.   PRAYER FOR RELIEF .......................................................... 1197

X.   DEMAND FOR JURY TRIAL ................................................ 1199

## VII.   CLAIMS ASSERTED ON BEHALF OF THE NATIONWIDE CLASS

**1.      Nationwide Count 1: Fraud by Omission and Concealment Against All Defendants.**

408.   Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

409.   Plaintiffs bring this count under Georgia law, individually and on behalf of the other members of the Nationwide Class against Defendants.

410.   Alternatively, Plaintiffs bring this claim on behalf of themselves and the Nationwide Class under the common law of fraudulent concealment, as there are no true conflicts among the states' laws of fraudulent concealment.

411.   For purposes of this count, members of the Nationwide Class shall be referred to as "Class Members."

412.   For purposes of this count, ARC, the Automaker Defendants, and the Airbag Module Defendants shall be referred to as "Defendants."

413.   Defendants are liable for both fraudulent concealment and non-disclosure. *See, e.g.*, Restatement (Second) of Torts §§ 550-51 (1977).

414.   Defendants owed Plaintiffs and Class Members a duty to disclose all the material facts concerning the Defective Inflators in the Class Vehicles because:

   a.      Given the Automaker Defendants' role in the design, manufacture, testing, and sale of Class Vehicles and Defective Inflators, and their

1

experience and knowledge as experts and long-time veterans of the automotive industry, they, along with ARC and the Airbag Module Defendants, possessed exclusive access to and were in a superior position to know the true facts about the Defective Inflators;

b.  Given ARC's design, development, testing and manufacture of the Defective Inflators and its experience and knowledge as experts and long-time veterans of the automotive industry, it, along with the Automaker Defendants and the Airbag Module Defendants, possessed exclusive access to and was in a superior position to know the true facts about the Defective Inflators;

c.  Given the Airbag Module Defendants' role in the design, manufacture, and testing of the airbag modules with the Defective Inflators installed in them, and their experience and knowledge as experts and long-time veterans of the automotive industry, they, along with ARC and the Automaker Defendants, possessed exclusive access to and were in a superior position to know the true facts about the Defective Inflators;

d.  Defendants knew that the Inflator Defect gave rise to serious safety concerns for the consumers who purchased and leased the Class Vehicles;

2

e.     The Inflator Defect poses a severe risk of harm in that, among other things, the metal shrapnel can puncture and stab the occupants, causing severe and potentially fatal injuries;

f.     Defendants knew about and investigated the Inflator Defect, but then did not notify consumers about it, disclose the Inflator Defect to NHTSA, or further launch a comprehensive recall for all Class Vehicles, which individually and together deprived Plaintiffs of an opportunity that otherwise could have led them to discover the truth about the Inflator Defect in their Class Vehicles; and

g.     The Automaker Defendants made, helped to make, or conspired to make incomplete representations about the safety and reliability of the Class Vehicles and their airbags, while purposefully withholding material facts about a known safety defect. Because they volunteered to provide information about the Class Vehicles that they marketed and offered for sale and lease to consumers, the Automaker Defendants had the duty to disclose the whole truth.

415.   In breach of their duties, Defendants failed to disclose the Inflator Defect and that the Class Vehicles' airbags were not safe and reliable to Plaintiffs and Class Members in connection with the sale of the Class Vehicles.

3

416.   The Inflator Defect within the Class Vehicles is material to the sale of the Class Vehicles because a reasonable person would find it important in purchasing, leasing, or retaining a new or used motor vehicle and because it directly impacts the value of the Class Vehicles purchased or leased by Plaintiffs and Class Members.

417.   Defendants intended for Plaintiffs and Class Members to rely on their omissions and concealment—which they did by purchasing and leasing the Class Vehicles at the prices they paid believing that their vehicles would not have an Inflator Defect that would affect the quality, reliability, and safety of the Class Vehicles and their airbags.

418.   Plaintiffs' and Class Members' reliance was reasonable because a reasonable consumer would not have expected that the Class Vehicles contained a safety defect that poses such a serious risk. They had no way of learning the facts that Defendants had concealed or failed to disclose. Plaintiffs and Class Members did not, and could not, unravel Defendants' deception on their own.

419.   Defendants actively concealed and suppressed these material facts, in whole or in part, to maintain a market for the Class Vehicles and the Defective Inflators installed in them, to protect profits, and to avoid costly recalls that would expose them to liability for those expenses and harm the commercial reputations of

Defendants and their products. They did so at the expense of Plaintiffs and Class Members.

420.   If Defendants had fully and adequately disclosed the Inflator Defect to consumers, Plaintiffs and Class Members would have seen such a disclosure.

421.   Through their omissions and concealment with respect to the Inflator Defect within the Class Vehicles, Defendants intended to induce, and did induce, Plaintiffs and Class Members to either purchase a Class Vehicle that they otherwise would not have purchased, or pay more for a Class Vehicle than they otherwise would have paid.

422.   Had Plaintiffs and Class Members known of the Inflator Defect within the Class Vehicles, they would not have purchased the Class Vehicles or would have paid less for them.

423.   As a direct and proximate result of Defendants' omissions and concealment, Plaintiffs and other Class Members either overpaid for the Class Vehicles or would not have purchased the Class Vehicles at all if the Inflator Defect had been disclosed to them. Accordingly, Defendants are liable to Plaintiffs and Class Members for their damages in an amount to be proven at trial.

424.   Defendants acted maliciously, oppressively, deliberately, with intent to defraud; in reckless disregard of the Plaintiffs' and Class Members' rights and well-

being; and to enrich themselves. Defendants' misconduct warrants an assessment of punitive damages, as permitted by law, in an amount sufficient to deter such conduct in the future, which amount shall be determined according to proof at trial.

### 2. Nationwide Count 2: Unjust Enrichment Against the Automaker Defendants.

425. Plaintiffs reallege and incorporate by reference all allegations in Volume 1 of the Consolidated Class Action Complaint above as though fully set forth herein.

426. Plaintiffs bring this count under Georgia law, individually and on behalf of the other members of the Nationwide Class against the Automaker Defendants.

427. For purposes of this count, members of the Nationwide Class shall be referred to as "Class Members."

428. When they purchased and leased the Class Vehicles, Plaintiffs and Class Members conferred tangible and material economic benefits upon the Automaker Defendants, who readily accepted and retained these benefits.

429. Plaintiffs and Class Members would not have purchased or leased their Class Vehicles, or would have paid less for them, had they known of the Inflator Defect at the time of purchase or lease. Therefore, the Automaker Defendants profited from the sale and lease of the Class Vehicles to the detriment and expense

of Plaintiffs and Class Members.

430.   The Automaker Defendants appreciated these economic benefits. These benefits were the expected result of the Automaker Defendants acting in their pecuniary interest at the expense of their customers. They knew of these benefits because they were aware of the Inflator Defect, yet they failed to disclose this knowledge and misled the Plaintiffs and Class Members regarding the nature and quality of the Class Vehicles while profiting from this deception.

431.   It would be unjust, inequitable, and unconscionable for the Automaker Defendants to retain these benefits, including because they were procured as a result of their wrongful conduct alleged above.

432.   Plaintiffs and Class Members are entitled to restitution of the benefits the Automaker Defendants unjustly retained and/or any amounts necessary to return Plaintiffs and Class Members to the position they occupied prior to dealing with those Defendants, with such amounts to be determined at trial.

433.   Plaintiffs plead this claim separately as well as in the alternative to their claims for damages under Fed. R. Civ. P. 8(a)(3), because if the Court dismisses Plaintiffs' claims for damages enters judgment on them in favor of the Automaker Defendants, Plaintiffs will have no adequate legal remedy.

## VIII.  CLAIMS ASSERTED ON BEHALF OF STATE SUBCLASSES

### 1.  Alabama

#### a.  Alabama Count 1: Breach of Express Warranty (Ala. Code §§ 7-2-313 and 7-2A-210) Against the Automaker Defendants.

434.  Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

435.  The Alabama Plaintiffs bring this count under Alabama law, individually and on behalf of the other members of the Alabama Subclasses against the Automaker Defendants for their respective Class Vehicles. For the remaining Automaker Defendants, Plaintiffs who purchased or leased their Class Vehicles in states with materially similar laws may represent subclasses under this count against those Automaker Defendants.

436.  For purposes of this count, members of the Alabama Subclass shall be referred to as "Class Members."

437.  The Class Vehicles are "goods" under Ala. Code §§ 7-2-105(1) and 7-2A-103(1)(h).

438.  The Automaker Defendants are "merchants," "sellers," and "lessors" of the Class Vehicles under Ala. Code §§ 7-2-104(1) and 7-2A-103(3), §§ 7-2-103(1)(d) and 7-2A-103(3), and § 7-2A-103(1)(p).

439.  Plaintiffs and Class Members who purchased and leased the Class

8

Vehicles in Alabama are "buyers" and "lessees" within the meaning of Ala. Code §§ 7-2-103(1)(a) and 7-2A-103(3), and § 7-2A-103(1)(n).

440.   The Automaker Defendants issued an express written warranty for each defective Class Vehicle they sold, including that:

a.   The Class Vehicles would be free of defects in materials and workmanship at the time of sale; and

b.   The Class Vehicles were safe and reliable, and their airbags would function properly in the event of a crash.

441.   The warranties listed above formed the basis of the bargain with regard to Plaintiffs' and Class Members' purchase and lease of the Class Vehicles.

442.   The Automaker Defendants knowingly breached their warranty for the Class Vehicles because:

a.   The airbag inflators have latent defects which have a dangerous propensity to cause the inflators to rupture and eject metal shrapnel, subjecting Plaintiffs and Class Members to the risk of loss and injury; and

b.   The Automaker Defendants denied, concealed, and misrepresented the Inflator Defect, in the process refusing to pay for or provide in a reasonably timely fashion the needed repairs and replacements for

9

Plaintiffs and Class Members.

443.   The Automaker Defendants knew or should have known that the warranties were false and/or misleading. Specifically, the Automaker Defendants were aware of the Inflator Defect in the Class Vehicles, which made the vehicles inherently defective and dangerous at the time that they were sold and leased to Plaintiffs and Class Members.

444.   Plaintiffs and Class Members were exposed to the Automaker Defendants' misrepresentations, and they had no way of discerning that the Automaker Defendants' representations were false and misleading or otherwise learning the material facts that the Automaker Defendants had concealed or failed to disclose. Accordingly, Plaintiffs and Class Members reasonably relied on the Automaker Defendants' express warranties when purchasing or leasing their Class Vehicles.

445.   Plaintiffs and Class Members timely provided the Automaker Defendants notice of the issues raised in this count and this Complaint and an opportunity to cure, as alleged in the paragraphs addressing Defendants' notice above.

446.   Alternatively, Plaintiffs and Class Members were excused from providing the Automaker Defendants with notice and an opportunity to cure the

breach, because it would have been futile. As alleged above, the Automaker Defendants knew about the Defective Inflators for years; however, to date, the Automaker Defendants have not instituted a recall or any other repair program with respect to all of the Class Vehicles, or even acknowledged that the Inflator Defect exists in all of the Class Vehicles. Therefore, they have refused to recall or repair defective vehicles. Moreover, to the extent the Automaker Defendants have issued recalls, those recalls are inadequate because, *inter alia*: (a) they are belated because the Automaker Defendants knew about the Defective Inflators for years and did nothing to recall or remedy the serious safety defect; (b) with tens of millions of vehicles impacted in existing and potential future recalls, as a result of the Automaker Defendants' concealment of the Inflator Defect, the recalls cannot be implemented effectively due to supply constraints and resulting delays; (c) the recalls are incomplete, and apply to only a subset of the Class Vehicles.

447.   As a direct and proximate result of the Automaker Defendants' breach of their express warranties, the Class Vehicles were and are defective and the Inflator Defect was not remedied. Therefore, Plaintiff and Class Members have been damaged, in an amount to be proven at trial, through their overpayment at the time of purchase or lease for the Class Vehicles with an undisclosed safety defect that would not be remedied.

      **b.**     **Alabama Count 2: Breach of Implied Warranty of Merchantability (Ala. Code §§ 7-2-314 and 7-2A-212) Against the Automaker Defendants.**

448. Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

449. The Alabama Plaintiffs bring this count under Alabama law, individually and on behalf of the other members of the Alabama Subclasses against the Automaker Defendants for their respective Class Vehicles. For the remaining Automaker Defendants, Plaintiffs who purchased or leased their Class Vehicles in states with materially similar laws may represent subclasses under this count against those Automaker Defendants.

450. For purposes of this count, members of the California Subclass shall be referred to as "Class Members."

451. The Class Vehicles are "goods" under Ala. Code §§ 7-2-105(1) and 7-2A-103(1)(h).

452. Plaintiffs and Class Members are "buyers" and "lessees" of the Class Vehicles under Ala. Code §§ 7-2-103(1)(a) and 7-2A-103(3), and Ala. Code § 7-2A-103(1)(n).

453. The Automaker Defendants are "merchants," "sellers," and "lessors" with respect to the Class Vehicles under Ala. Code §§ 7-2-104(1) and 7-2A-103(3),

§§ 7-2-103(1)(d) and 7-2A-103(3), and § 7-2A-103(1)(p).

454.    Alabama law conferred an implied warranty that the Class Vehicles were in merchantable condition and fit for the ordinary purpose for which they were to be used pursuant to Ala. Code §§ 7-2-314 and 7-2A-212.

455.    The Class Vehicles are not merchantable, and as such the Automaker Defendants breached their implied warranties, because at the time of sale and all times thereafter:

a.    The Class Vehicles would not pass without objection in the automotive trade given the Inflator Defect;

b.    The Inflator Defect renders the Class Vehicles unsafe to drive and unfit for ordinary purposes;

c.    The Class Vehicles and the airbags therein were inadequately labeled as safe and reliable, and the labeling failed to disclose the Inflator Defect; and

d.    The Class Vehicles do not conform to their labeling, which represents that the vehicles are safe and suitable for their intended use.

456. Plaintiffs and Class Members timely provided the Automaker Defendants notice of the issues raised in this count and this Complaint and an opportunity to cure, as alleged in the paragraphs addressing Defendants' notice,

above.

457.   Alternatively, Plaintiffs and Class Members were excused from providing the Automaker Defendants with notice and an opportunity to cure the breach because it would have been futile. As alleged above, the Automaker Defendants have long known that the Class Vehicles contained the Defective Inflators, and that the Defective Inflators have caused airbags to malfunction in crashes involving the Class Vehicles; however, to date, the Automaker Defendants have not instituted a recall or any other repair program with respect to all of the Class Vehicles, or even acknowledged that the Inflator Defect exists in all of those Class Vehicles. Moreover, to the extent the Automaker Defendants have issued recalls, those recalls are inadequate because, inter alia: (a) they are belated because the Automaker Defendants knew about the Defective Inflators for years and did nothing to recall or remedy the serious safety defect; (b) with tens of millions of vehicles impacted in existing and potential future recalls, as a result of the Automaker Defendants' concealment of the Inflator Defect, the recalls cannot be implemented effectively due to supply constraints and resulting delays; (c) the recalls are incomplete, and apply to only a subset of the Class Vehicles.

458.   Plaintiffs, individually and on behalf of Class Members, seek all available monetary damages (including actual, compensatory, and punitive

14

damages), injunctive and equitable relief, and attorneys' fees and costs.

        c.       **Alabama Count 3: Violation of the Alabama Deceptive Trade Practices Act (Ala. Code §§ 8-19-1, *et seq*.) Against All Defendants.**[1]

459.   Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

460.   The Alabama Plaintiffs bring this count under Alabama law, individually and on behalf of the other members of the Alabama Subclasses against the Automaker Defendants and Airbag Module Defendants for their respective Class Vehicles, and ARC. For the remaining Defendants, Plaintiffs who purchased or leased their Class Vehicles in states with materially similar laws may represent Subclasses under this count against all other Defendants, and ARC.

461.   For purposes of this count, members of the Alabama Subclass shall be referred to as "Class Members."

462.   For purposes of this count, the Automaker Defendants, Airbag Module Defendants, and ARC shall be referred to as "Defendants."

463.   Defendants, Plaintiffs, and Class Members are "persons" within the meaning of Ala. Code § 8-19-3(5).

_____

[1] Plaintiffs bring this count against ARC and the Airbag Module Defendants based on their omissions and concealment of material facts only.

464.   Plaintiffs and Class Members are "consumers" within the meaning of Ala. Code § 8-19-3(2) because they purchased the Class Vehicles primarily for personal, family, or household use.

465.   The Class Vehicles are "goods" within the meaning of Ala. Code. § 8-19-3(3).

466.   Defendants were and are engaged in "trade or commerce" within the meaning of Ala. Code § 8-19-3(8).

467.   The Alabama Deceptive Trade Practices Act ("Alabama DTPA") prohibits "deceptive acts or practices in the conduct of any trade or commerce[.]" Ala. Code § 8-19-5.

468.   Defendants' violations of the Alabama DTPA occurred repeatedly in their trade or practice—including the design, manufacture, distribution, marketing, sale, and lease of the Defective Inflators and the Class Vehicles.

469.   Defendants, through their agents, employees, and/or subsidiaries, violated the Alabama DTPA by knowingly and intentionally misrepresenting, omitting, concealing, and/or failing to disclose material facts regarding the reliability, safety, and performance of the Class Vehicles and the Defective Inflators, as detailed above.

470.   Defendants had an ongoing duty to Plaintiffs and Class Members to

refrain from unfair or deceptive practices under the Alabama DTPA in the course of their business. Specifically, Defendants owed Plaintiffs and Class Members a duty to disclose all the material facts concerning the Defective Inflators in the Class Vehicles because:

a. Given the Automaker Defendants' role in the design, manufacture, testing, and sale of Class Vehicles and Defective Inflators, and their experience and knowledge as experts and long-time veterans of the automotive industry, they, along with ARC and the Airbag Module Defendants, possessed exclusive access to and were in a superior position to know the true facts about the Defective Inflators;

b. Given ARC's design, development, testing and manufacture of the Defective Inflators and its experience and knowledge as experts and long-time veterans of the automotive industry, it, along with the Automaker Defendants and the Airbag Module Defendants, possessed exclusive access to and was in a superior position to know the true facts about the Defective Inflators;

c. Given the Airbag Module Defendants' role in the design, manufacture, and testing of the airbag modules with the Defective Inflators installed in them, and their experience and knowledge as experts and long-time

veterans of the automotive industry, they, along with ARC and the Automaker Defendants, possessed exclusive access to and were in a superior position to know the true facts about the Defective Inflators;

d.     Given the Inflator Defect's hidden and technical nature, Plaintiffs and Class Members lack the sophisticated expertise in vehicle components and technology that would be necessary to discover the Inflator Defect on their own;

e.     Defendants knew that the Inflator Defect gave rise to serious safety concerns for the consumers who purchased and leased the Class Vehicles;

f.     The Inflator Defect poses a severe risk of harm in that, among other things, the metal shrapnel can puncture and stab the occupants, causing severe and potentially fatal injuries;

g.     Defendants knew about and investigated the Inflator Defect, but then did not notify consumers about it, disclose the Inflator Defect to NHTSA, and the Automaker Defendants did not launch a comprehensive recall for all Class Vehicles, all of which individually and together deprived Plaintiffs of an opportunity that otherwise could have led them to discover the truth about the Inflator Defect in their

18

Class Vehicles; and

h.      The Automaker Defendants made, helped to make, or conspired to make incomplete representations about the safety and reliability of the Class Vehicles and their airbags, while purposefully withholding material facts about a known safety defect. Because they volunteered to provide information about the Class Vehicles that they marketed and offered for sale and lease to consumers, the Automaker Defendants had the duty to disclose the whole truth.

471.   By misrepresenting the Class Vehicles as safe and reliable and the airbags installed in them as properly functioning and free from defects, and/or by failing to disclose and actively concealing the dangers and risk posed by the Inflator Defect to both consumers and NHTSA, Defendants engaged in one or more of the following unfair or deceptive business practices as defined in Ala. Code § 8-19-5:

a.      Causing confusion or misunderstanding as to the approval or certification of the Class Vehicles and/or the Defective Inflators;

b.      Representing that the Class Vehicles and/or the Defective Inflators had a characteristic that they did not actually have—*i.e.*, that the vehicles were safe and suitable for use on the roadway, when, in fact, they were not because their airbag inflators were defectively designed such that

they had an unreasonably dangerous propensity to rupture, causing severe and fatal injuries;

c.  Representing that the Class Vehicles and the Defective Inflators installed in them were of a particular quality, grade, or standard when, in fact, they were not of that quality, grade, or standard;

d.  Failing to market, distribute, sell, and lease the Class Vehicles equipped with Defective Inflators in accordance with Defendants' previous representations—i.e., that the Class Vehicles were safe and suitable for their intended use, when, in fact, they were not because of the Inflator Defect; and

e.  Engaging in unconscionable, false, misleading, and deceptive acts and practices in the conduct of trade or commerce pertaining to the Class Vehicles and/or Defective Inflators, including concealing and failing to disclose that the Class Vehicles' airbag inflators were inherently defective, defectively designed, and not suitable for their intended use despite advertising them as safe and suitable for their intended function.

Ala. Code §§ 8-19-5(2), (5), (7), (9) and (27).

472.  Defendants' unfair or deceptive acts or practices, including their misrepresentations, concealments, omissions, and/or suppressions of material facts,

20

were designed to mislead and had a tendency or capacity to mislead and create a false impression in consumers that the Class Vehicles had properly-functioning and reliable airbags. Indeed, those misrepresentations, concealments, omissions, and suppressions of material facts did in fact deceive reasonable consumers, including Plaintiffs and Class Members, about the true safety and reliability of the Class Vehicles and/or the Defective Inflators installed in them, the quality of the Class Vehicles, and the true value of the Class Vehicles.

473.   Defendants intended for Plaintiffs and Class Members to rely on their misrepresentations, omissions, and concealment—which they did by purchasing and leasing the Class Vehicles at the prices they paid believing that their vehicles would not have an Inflator Defect that would affect the quality, reliability, and safety of the Class Vehicles and their airbags.

474.  Defendants' misrepresentations, concealments, omissions, and suppressions of material facts regarding the Inflator Defect and true characteristics of the Class Vehicles were material to the decisions of Plaintiffs and Class Members to purchase and lease those vehicles, as Defendants intended. Plaintiffs and Class Members were exposed to those misrepresentations, concealments, omissions, and suppressions of material facts, and relied on Defendants' misrepresentations that the Class Vehicles and their airbags were safe and reliable in deciding to purchase and

lease the Class Vehicles.

475.   Plaintiffs' and Class Members' reliance was reasonable, as they had no way of discerning that Defendants' representations were false and misleading, or otherwise learning the facts that Defendants had concealed or failed to disclose. Plaintiffs and Class Members did not, and could not, unravel Defendants' deception on their own.

476.   Had they known the truth about the Inflator Defect, Plaintiffs and Class Members would not have purchased or leased the Class Vehicles, or would have paid significantly less for them.

477.   As a direct and proximate result of Defendants' deceptive practices, Plaintiffs and Class Members have sustained economic injury and loss—either by purchasing a vehicle they otherwise would not have purchased or paying more than they otherwise would have as a result of Defendants' actions and omissions alleged above—that first occurred at the time each Class Vehicle was purchased or leased.

478.   Defendants' violations present a continuing risk to Plaintiffs and Class Members, as well as to the general public, because the Class Vehicles remain unsafe due to the Defective Inflators therein. Defendants' unlawful acts and practices complained of herein affect the public interest.

479.   Plaintiffs and Class Members timely provided Defendants notice of the

issues raised in this count and this Complaint and an opportunity to cure as alleged in the paragraphs addressing Defendants' notice, above. Because Defendants failed to remedy their unlawful conduct within a reasonable time period, Plaintiff seek all damages and relief to which Class Members are entitled.

480. Alternatively, Plaintiffs and Class Members were excused from providing the Automaker Defendants with notice and an opportunity to cure the Inflator Defect, because it would have been futile. As alleged above, the Automaker Defendants knew about the Defective Inflators for years; however, to date, the Automaker Defendants have not instituted a recall or any other repair program with respect to all of the Class Vehicles, or even acknowledged that the Inflator Defect exists in all of the Class Vehicles. Therefore, they have refused to recall or repair defective vehicles. Moreover, to the extent the Automaker Defendants have issued recalls, those recalls are inadequate because, *inter alia*: (a) they are belated because the Automaker Defendants knew about the Defective Inflators for years and did nothing to recall or remedy the serious safety defect; (b) with tens of millions of vehicles impacted in existing and potential future recalls, as a result of the Automaker Defendants' concealment of the Inflator Defect, the recalls cannot be implemented effectively due to supply constraints and resulting delays; (c) the recalls are incomplete, and apply to only a subset of the Class Vehicles.

481.    Pursuant to Ala. Code § 8-19-10, Plaintiffs and Class Members seek an order enjoining Defendants' unfair or deceptive acts or practices and awarding actual damages, treble damages, restitution, attorneys' fees, and any other just and proper relief available under the Alabama DTPA.

        **d.    Alabama Count 4: Fraud by Omission and Concealment Against All Defendants.**

482.    Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

483.    The Alabama Plaintiffs bring this count under Alabama law, individually and on behalf of the other members of the Alabama Subclasses against the Automaker Defendants and Airbag Module Defendants for their respective Class Vehicles , and ARC. For the remaining Defendants, Plaintiffs who purchased or leased their Class Vehicles in states with materially similar laws may represent Subclasses under this count against all other Defendants, and ARC.

484.    For purposes of this count, members of the Alabama Subclass shall be referred to as "Class Members."

485.    For purposes of this count, ARC, the Automaker Defendants, and the Airbag Module Defendants shall be referred to as "Defendants."

486.    Defendants are liable for both fraudulent concealment and non-

disclosure. *See, e.g.*, Restatement (Second) of Torts §§ 550-51 (1977).

487. Defendants owed Plaintiffs and Class Members a duty to disclose all the material facts concerning the Defective Inflators in the Class Vehicles because:

a.   Given the Automaker Defendants' role in the design, manufacture, testing, and sale of Class Vehicles and Defective Inflators, and their experience and knowledge as experts and long-time veterans of the automotive industry, they, along with ARC and the Airbag Module Defendants, possessed exclusive access to and were in a superior position to know the true facts about the Defective Inflators;

b.   Given ARC's design, development, testing and manufacture of the Defective Inflators and its experience and knowledge as experts and long-time veterans of the automotive industry, it, along with the Automaker Defendants and the Airbag Module Defendants, possessed exclusive access to and was in a superior position to know the true facts about the Defective Inflators;

c.   Given the Airbag Module Defendants' role in the design, manufacture, and testing of the airbag modules with the Defective Inflators installed in them, and their experience and knowledge as experts and long-time veterans of the automotive industry, they, along with ARC and the

Automaker Defendants, possessed exclusive access to and were in a superior position to know the true facts about the Defective Inflators;

d.      Given the Inflator Defect's hidden and technical nature, Plaintiffs and Class Members lack the sophisticated expertise in vehicle components and technology that would be necessary to discover the Inflator Defect on their own;

e.      Defendants knew that the Inflator Defect gave rise to serious safety concerns for the consumers who purchased and leased the Class Vehicles;

f.      The Inflator Defect poses a severe risk of harm in that, among other things, the metal shrapnel can puncture and stab the occupants, causing severe and potentially fatal injuries;

g.      Defendants knew about and investigated the Inflator Defect, but then did not notify consumers about it, disclose the Inflator Defect to NHTSA, and the Automaker Defendants did not launch a comprehensive recall for all Class Vehicles, all of which individually and together deprived Plaintiffs of an opportunity that otherwise could have led them to discover the truth about the Inflator Defect in their Class Vehicles; and

26

h.    The Automaker Defendants made, helped to make, or conspired to make incomplete representations about the safety and reliability of the Class Vehicles and their airbags, while purposefully withholding material facts about a known safety defect. Because they volunteered to provide information about the Class Vehicles that they marketed and offered for sale and lease to consumers, the Automaker Defendants had the duty to disclose the whole truth.

488.   In breach of their duties, Defendants failed to disclose the Inflator Defect and that the Class Vehicles' airbags were not safe and reliable to Plaintiffs and Class Members in connection with the sale of the Class Vehicles.

489.   The Inflator Defect within the Class Vehicles is material to the sale of the Class Vehicles because a reasonable person would find it important in purchasing, leasing, or retaining a new or used motor vehicle and because it directly impacts the value of the Class Vehicles purchased or leased by Plaintiffs and Class Members.

490.   Defendants intended for Plaintiffs and Class Members to rely on their omissions and concealment—which they did by purchasing and leasing the Class Vehicles at the prices they paid believing that their vehicles would not have an Inflator Defect that would affect the quality, reliability, and safety of the Class

27

Vehicles and their airbags.

491.   Plaintiffs' and Class Members' reliance was reasonable because a reasonable consumer would not have expected that the Class Vehicles contained a safety defect that poses such a serious risk. They had no way of learning the facts that Defendants had concealed or failed to disclose. Plaintiffs and Class Members did not, and could not, unravel Defendants' deception on their own.

492.   Defendants actively concealed and suppressed these material facts, in whole or in part, to maintain a market for the Class Vehicles, to protect profits, and to avoid costly recalls that would expose them to liability for those expenses and harm the commercial reputations of Defendants and their products. They did so at the expense of Plaintiffs and Class Members.

493.   If Defendants had fully and adequately disclosed the Inflator Defect to consumers, Plaintiffs and Class Members would have seen such a disclosure.

494.   Through their omissions and concealment with respect to the Inflator Defect within the Class Vehicles, Defendants intended to induce, and did induce, Plaintiffs and Class Members to either purchase a Class Vehicle that they otherwise would not have purchased, or pay more for a Class Vehicle than they otherwise would have paid.

495.   Had Plaintiffs and Class Members known of the Inflator Defect within

the Class Vehicles, they would not have purchased the Class Vehicles or would have paid less for them.

496.   As a direct and proximate result of Defendants' omissions and concealment, Plaintiffs and other Class Members either overpaid for the Class Vehicles or would not have purchased the Class Vehicles at all if the Inflator Defect had been disclosed to them. Accordingly, Defendants are liable to Plaintiffs and Class Members for their damages in an amount to be proven at trial.

497.   Defendants' acts were done maliciously, oppressively, deliberately, with intent to defraud; in reckless disregard of the Plaintiffs' and Class Members' rights and well-being; and to enrich themselves. Defendants' misconduct warrants an assessment of punitive damages, as permitted by law, in an amount sufficient to deter such conduct in the future, which amount shall be determined according to proof at trial.

>   **e.   Alabama Count 5: Unjust Enrichment Against the Automaker Defendants.**

498.   Plaintiffs reallege and incorporate by reference all allegations in Volume 1 of the Consolidated Class Action Complaint as though fully set forth herein.

499.   The Alabama Plaintiffs bring this count under Alabama law,

individually and on behalf of the other members of the California Subclasses against the Automaker Defendants for their respective Class Vehicles. For the remaining Automaker Defendants, Plaintiffs who purchased or leased their Class Vehicles in states with materially similar laws may represent Subclasses under this count against all other Automaker Defendants.

500.   For purposes of this count, members of the Alabama Subclass shall be referred to as "Class Members."

501.   When they purchased and leased the Class Vehicles, Plaintiffs and Class Members conferred tangible and material economic benefits upon the Automaker Defendants, who readily accepted and retained these benefits.

502.   Plaintiffs and Class Members would not have purchased or leased their Class Vehicles, or would have paid less for them, had they known of the Inflator Defect at the time of purchase or lease. Therefore, the Automaker Defendants profited from the sale and lease of the Class Vehicles to the detriment and expense of Plaintiffs and Class Members.

503.   The Automaker Defendants appreciated these economic benefits. These benefits were the expected result of the Automaker Defendants acting in their pecuniary interest at the expense of their customers. They knew of these benefits because they were aware of the Inflator Defect, yet they failed to disclose this

knowledge and misled the Plaintiffs and Class Members regarding the nature and quality of the Class Vehicles while profiting from this deception.

504.   It would be unjust, inequitable, and unconscionable for the Automaker Defendants to retain these benefits, including because they were procured as a result of their wrongful conduct alleged above.

505.   Plaintiffs and Class Members are entitled to restitution of the benefits the Automaker Defendants unjustly retained and/or any amounts necessary to return Plaintiffs and Class Members to the position they occupied prior to dealing with those Defendants, with such amounts to be determined at trial.

506.   Plaintiffs plead this claim separately as well as in the alternative to their claims for damages under Fed. R. Civ. P. 8(a)(3), because if the Court dismisses Plaintiffs' claims for damages or enters judgment on them in favor of the Automaker Defendants, Plaintiffs will have no adequate legal remedy.

## 2.   Alaska

### a.   Alaska Count 1: Breach of Express Warranty (Alaska Stat. Ann. §§ 45.02.313 and 45.12.210) Against the Automaker Defendants.

507.   Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

508.   The Alaska Plaintiffs bring this count under Alaska law, individually

31

and on behalf of the other members of the Alaska Subclasses against the Automaker Defendants for their respective Class Vehicles. For the remaining Automaker Defendants, Plaintiffs who purchased or leased their Class Vehicles in states with materially similar laws may represent Subclasses under this count against all other Automaker Defendants.

509.   For purposes of this count, members of the Alaska Subclass shall be referred to as "Class Members."

510.   The Class Vehicles are "goods" under Alaska Stat. Ann. §§ 45.02.105(a) and 45.12.103(a)(8)).

511.   The Automaker Defendants are "merchants," "sellers," and lessors" under Alaska Stat. Ann. §§ 45.02.104(a) and 45.12.103(c)(11), § 45.02.103(a)(4), and § 45.12.103(a)(16).

512.   Plaintiffs and Class Members who purchased and leased the Class Vehicles in Alaska are "buyers" and "lessees" under Alaska Stat. Ann. §§ 45.12.103(c)(3) and 45.02.103(a)(1), and § 45.12.103(a)(14).

513.   The Automaker Defendants issued an express written warranty for each defective Class Vehicle they sold, including that:

a.      The Class Vehicles would be free of defects in materials and workmanship at the time of sale; and

b.      The Class Vehicles were safe and reliable, and their airbags would function properly in the event of a crash.

514.    The warranties listed above formed the basis of the bargain with regard to Plaintiffs' and Class Members' purchase and lease of the Class Vehicles.

515.    The Automaker Defendants knowingly breached their warranty for the Class Vehicles because:

a.      The airbag inflators have latent defects which have a dangerous propensity to cause the inflators to rupture and eject metal shrapnel, subjecting Plaintiffs and Class Members to the risk of loss and injury; and

b.      The Automaker Defendants denied, concealed, and misrepresented the Inflator Defect, in the process refusing to pay for or provide in a reasonably timely fashion the needed repairs and replacements for Plaintiffs and Class Members.

516.    The Automaker Defendants knew or should have known that the warranties were false and/or misleading. Specifically, the Automaker Defendants were aware of the Inflator Defect in the Class Vehicles, which made the vehicles inherently defective and dangerous at the time that they were sold and leased to Plaintiffs and Class Members.

33

517. Plaintiffs and Class Members were exposed to the Automaker Defendants' misrepresentations, and they had no way of discerning that the Automaker Defendants' representations were false and misleading or otherwise learning the material facts that the Automaker Defendants had concealed or failed to disclose. Accordingly, Plaintiffs and Class Members reasonably relied on the Automaker Defendants' express warranties when purchasing or leasing their Class Vehicles.

518. Plaintiffs and Class Members timely provided the Automaker Defendants notice of the issues raised in this count and this Complaint and an opportunity to cure, as alleged in the paragraphs addressing Defendants' notice, above.

519. Alternatively, Plaintiffs and Class Members were excused from providing the Automaker Defendants with notice and an opportunity to cure the breach, because it would have been futile. As alleged above, the Automaker Defendants knew about the Defective Inflators for years; however, to date, the Automaker Defendants have not instituted a recall or any other repair program with respect to all of the Class Vehicles, or even acknowledged that the Inflator Defect exists in all of the Class Vehicles. Therefore, they have refused to recall or repair defective vehicles. Moreover, to the extent the Automaker Defendants have issued

34

recalls, those recalls are inadequate because, *inter alia*: (a) they are belated because the Automaker Defendants knew about the Defective Inflators for years and did nothing to recall or remedy the serious safety defect; (b) with tens of millions of vehicles impacted in existing and potential future recalls, as a result of the Automaker Defendants' concealment of the Inflator Defect, the recalls cannot be implemented effectively due to supply constraints and resulting delays; (c) the recalls are incomplete, and apply to only a subset of the Class Vehicles.

520.   As a direct and proximate result of the Automaker Defendants' breach of their express warranties, the Class Vehicles were and are defective and the Inflator Defect was not remedied. Therefore, Plaintiff and Class Members have been damaged, in an amount to be proven at trial, through their overpayment at the time of purchase or lease for the Class Vehicles with an undisclosed safety defect that would not be remedied.

> **b.    Alaska Count 2: Breach of Implied Warranty of Merchantability (Alaska Stat. Ann. §§ 455.02.314 and 44.12.212) Against the Automaker Defendants.**

521.  Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

522.   The Alaska Plaintiffs bring this count under Alaska law, individually and on behalf of the other members of the Alaska Subclasses against the Automaker

Defendants for their respective Class Vehicles. For the remaining Automaker Defendants, Plaintiffs who purchased or leased their Class Vehicles in states with materially similar laws may represent Subclasses under this count against all other Automaker Defendants.

523.   For purposes of this count, members of the Alaska Subclass shall be referred to as "Class Members."

524.   The Class Vehicles are "goods" under Alaska Stat. Ann. §§ 45.02.105(a) and 45.12.103(a)(8).

525.   Plaintiffs and Class Members are "buyers" and "lessees" of the Class Vehicles under Alaska Stat. Ann. §§ 45.02.103(a)(1) and § 45.12.103(a)(14).

526.   The Automaker Defendants are "merchants," "sellers," and "lessors" under Alaska Stat. Ann. §§ 45.02.104(a) and 45.12.103(c)(11), § 45.02.103(a)(4), and § 45.12.103(a)(16).

527.   Alaska law conferred an implied warranty that the Class Vehicles were in merchantable condition and fit for the ordinary purpose for which they were to be used pursuant to Alaska Stat. §§ 45.02.314 and 45.12.212.

528.   The Class Vehicles are not merchantable, and as such the Automaker Defendants breached their implied warranties, because at the time of sale and all times thereafter:

36

a.    The Class Vehicles would not pass without objection in the automotive trade given the Inflator Defect;

b.    The Inflator Defect renders the Class Vehicles unsafe to drive and unfit for ordinary purposes;

c.    The Class Vehicles and the airbags therein were inadequately labeled as safe and reliable, and the labeling failed to disclose the Inflator Defect; and

d.    The Class Vehicles do not conform to their labeling, which represents that the vehicles are safe and suitable for their intended use.

529.    Plaintiffs and Class Members timely provided the Automaker Defendants notice of the issues raised in this count and this Complaint and an opportunity to cure, as alleged in the paragraphs addressing Defendants' notice, above.

530.    Alternatively, Plaintiffs and Class Members were excused from providing the Automaker Defendants with notice and an opportunity to cure the breach because it would have been futile. As alleged above, the Automaker Defendants have long known that the Class Vehicles contained the Defective Inflators, and that the Defective Inflators have caused airbags to malfunction in crashes involving the Class Vehicles; however, to date, the Automaker Defendants

37

have not instituted a recall or any other repair program with respect to all of the Class Vehicles, or even acknowledged that the Inflator Defect exists in all of those Class Vehicles. Moreover, to the extent the Automaker Defendants have issued recalls, those recalls are inadequate because, inter alia: (a) they are belated because the Automaker Defendants knew about the Defective Inflators for years and did nothing to recall or remedy the serious safety defect; (b) with tens of millions of vehicles impacted in existing and potential future recalls, as a result of the Automaker Defendants' concealment of the Inflator Defect, the recalls cannot be implemented effectively due to supply constraints and resulting delays; (c) the recalls are incomplete, and apply to only a subset of the Class Vehicles.

531.   Plaintiffs, individually and on behalf of Class Members, seek all available monetary damages (including actual, compensatory, and punitive damages), injunctive and equitable relief, and attorneys' fees and costs.

> **c.   Alaska Count 3: Violation of the Alaska Unfair Trade Practices and Consumer Protection Act (Alaska Stat. Ann. § 45.503471, *et seq*.) Against All Defendants.[2]**

532.   Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

---

[2] Plaintiffs bring this count against ARC and the Airbag Module Defendants based on their omissions and concealment of material facts only.

533.   The Alaska Plaintiffs bring this count under Alaska law, individually and on behalf of the other members of the Alaska Subclasses against the Automaker Defendants and Airbag Module Defendants for their respective Class Vehicles, and ARC. For the remaining Defendants, Plaintiffs who purchased or leased their Class Vehicles in states with materially similar laws may represent Subclasses under this count against all other Defendants, and ARC.

534.   For purposes of this count, members of the Alaska Subclass shall be referred to as "Class Members."

535.   For purposes of this count ARC, the Automaker Defendants, and the Airbag Module Defendants shall be referred to as "Defendants."

536.   Plaintiffs and Class Members are "consumers" within the meaning of Alaska Stat. Ann. § 45.50.561 because they purchased the Class Vehicles primarily for personal, family, or household use.

537.   The Alaska Unfair Trade Practices Act and Consumer Protection Act ("Alaska CPA") declares that "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of trade or commerce . . . are unlawful." Alaska Stat. Ann. § 45.50.471(a).

538.   Defendants' violations of the Alaska CPA occurred repeatedly in their trade or practice—including the design, manufacture, distribution, marketing, sale,

39

and lease of the Defective Inflators and the Class Vehicles.

539.    Defendants, through their agents, employees, and/or subsidiaries, violated the Alaska CPA by knowingly and intentionally misrepresenting, omitting, concealing, and/or failing to disclose material facts regarding the reliability, safety, and performance of the Class Vehicles and the Defective Inflators, as detailed above.

540.    Defendants had an ongoing duty to Plaintiffs and Class Members to refrain from unfair or deceptive practices under the Alaska CPA in the course of their business. Specifically, Defendants owed Plaintiffs and Class Members a duty to disclose all the material facts concerning the Defective Inflators in the Class Vehicles because:

a.    Given the Automaker Defendants' role in the design, manufacture, testing, and sale of Class Vehicles and Defective Inflators, and their experience and knowledge as experts and long-time veterans of the automotive industry, they, along with ARC and the Airbag Module Defendants, possessed exclusive access to and were in a superior position to know the true facts about the Defective Inflators;

b.    Given ARC's design, development, testing and manufacture of the Defective Inflators and its experience and knowledge as experts and long-time veterans of the automotive industry, it, along with the

Automaker Defendants and the Airbag Module Defendants, possessed exclusive access to and was in a superior position to know the true facts about the Defective Inflators;

c.     Given the Airbag Module Defendants' role in the design, manufacture, and testing of the airbag modules with the Defective Inflators installed in them, and their experience and knowledge as experts and long-time veterans of the automotive industry, they, along with ARC and the Automaker Defendants, possessed exclusive access to and were in a superior position to know the true facts about the Defective Inflators;

d.     Given the Inflator Defect's hidden and technical nature, Plaintiffs and Class Members lack the sophisticated expertise in vehicle components and technology that would be necessary to discover the Inflator Defect on their own;

e.     Defendants knew that the Inflator Defect gave rise to serious safety concerns for the consumers who purchased and leased the Class Vehicles;

f.     The Inflator Defect poses a severe risk of harm in that, among other things, the metal shrapnel can puncture and stab the occupants, causing severe and potentially fatal injuries;

41

g.     Defendants knew about and investigated the Inflator Defect, but then did not notify consumers about it, disclose the Inflator Defect to NHTSA, and the Automaker Defendants did not launch a comprehensive recall for all Class Vehicles, all of which individually and together deprived Plaintiffs of an opportunity that otherwise could have led them to discover the truth about the Inflator Defect in their Class Vehicles; and

h.     The Automaker Defendants made, helped to make, or conspired to make incomplete representations about the safety and reliability of the Class Vehicles and their airbags, while purposefully withholding material facts about a known safety defect. Because they volunteered to provide information about the Class Vehicles that they marketed and offered for sale and lease to consumers, the Automaker Defendants had the duty to disclose the whole truth.

541.   By misrepresenting the Class Vehicles as safe and reliable and the airbags installed in them as properly functioning and free from defects, and/or by failing to disclose and actively concealing the dangers and risk posed by the Inflator Defect to both consumers and NHTSA, Defendants engaged in one or more of the following unfair or deceptive business practices as defined in Ala. Code § 8-19-5:

42

a.  Causing a likelihood of confusion or of misunderstanding as to the approval or certification of the Class Vehicles and/or the Defective Inflators;

b.  Representing that the Class Vehicles and/or the Defective Inflators had a characteristic that they did not actually have—*i.e.*, that the vehicles were safe and suitable for use on the roadway, when, in fact, they were not because their airbag inflators were defectively designed such that they had an unreasonably dangerous propensity to rupture, causing severe and fatal injuries;

c.  Representing that the Class Vehicles and the Defective Inflators installed in them were of a particular quality, grade, or standard when, in fact, they were not of that quality, grade, or standard;

d.  Failing to market, distribute, sell, and lease the Class Vehicles equipped with Defective Inflators in accordance with Defendants' previous representations—i.e., that the Class Vehicles were safe and suitable for their intended use, when, in fact, they were not because of the Inflator Defect;

e.  Engaging in other conduct which created a likelihood of confusion or of misunderstanding and that misleads, deceives, or damages, including

43

concealing and failing to disclose that the Class Vehicles' airbag inflators were inherently defective, defectively designed, and not suitable for their intended use despite advertising them as safe and suitable for their intended function; and

f.   Using or employing deception, fraud, false pretense, false promise or misrepresentation, or the concealment, suppression, or omission of a material fact with intent that others rely upon such concealment, suppression or omission, in connection with the advertisement and sale/lease of the Class Vehicles, whether or not any person has in fact been misled, deceived or damaged thereby.

Alaska Stat. Ann. § 45.50.471(b)(3), (4), (6), (8), (11), and (12).

542.   Defendants' unfair or deceptive acts or practices, including their misrepresentations, concealments, omissions, and/or suppressions of material facts, were designed to mislead and had a tendency or capacity to mislead and create a false impression in consumers that the Class Vehicles had properly-functioning and reliable airbags. Indeed, those misrepresentations, concealments, omissions, and suppressions of material facts did in fact deceive reasonable consumers, including Plaintiffs and Class Members, about the true safety and reliability of the Class Vehicles and/or the Defective Inflators installed in them, the quality of the Class

Vehicles, and the true value of the Class Vehicles.

543.   Defendants intended for Plaintiffs and Class Members to rely on their misrepresentations, omissions, and concealment—which they did by purchasing and leasing the Class Vehicles at the prices they paid believing that their vehicles would not have an Inflator Defect that would affect the quality, reliability, and safety of the Class Vehicles and their airbags.

544.   Defendants' misrepresentations, concealments, omissions, and suppressions of material facts regarding the Inflator Defect and true characteristics of the Class Vehicles were material to the decisions of Plaintiffs and Class Members to purchase and lease those vehicles, as Defendants intended. Plaintiffs and Class Members were exposed to those misrepresentations, concealments, omissions, and suppressions of material facts, and relied on Defendants' misrepresentations that the Class Vehicles and their airbags were safe and reliable in deciding to purchase and lease the Class Vehicles.

545.   Plaintiffs' and Class Members' reliance was reasonable, as they had no way of discerning that Defendants' representations were false and misleading, or otherwise learning the facts that Defendants had concealed or failed to disclose. Plaintiffs and Class Members did not, and could not, unravel Defendants' deception on their own.

546.   Had they known the truth about the Inflator Defect, Plaintiffs and Class Members would not have purchased or leased the Class Vehicles, or would have paid significantly less for them.

547.   As a direct and proximate result of Defendants' deceptive practices, Plaintiffs and Class Members have sustained economic injury and loss—either by purchasing a vehicle they otherwise would not have purchased or paying more than they otherwise would have as a result of Defendants' actions and omissions alleged above—that first occurred at the time each Class Vehicle was purchased or leased.

548.   Defendants' violations present a continuing risk to Plaintiffs and Class Members, as well as to the general public, because the Class Vehicles remain unsafe due to the Defective Inflators therein. Defendants' unlawful acts and practices complained of herein affect the public interest.

549.   Plaintiffs and Class Members timely provided Defendants notice of the issues raised in this count and this Complaint and an opportunity to cure as alleged in the paragraphs addressing Defendants' notice, above. Because Defendants failed to remedy their unlawful conduct within a reasonable time period, Plaintiff seek all damages and relief to which Class Members are entitled.

550.   Pursuant to Alaska Stat. Ann. §§ 45.50.531 and 45.50.535, Plaintiffs and Class Members seek an order enjoining the above unfair or deceptive acts or

practices and awarding actual damages, treble damages, restitution, attorneys' fees, and any other just and proper relief available under the Alaska CPA

### d.      Alaska Count 4: Fraud by Omission and Concealment Against All Defendants.

551. Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

552.   The Alaska Plaintiffs bring this count under Alaska law, individually and on behalf of the other members of the Alaska Subclasses against the Automaker Defendants and Airbag Module Defendants for their respective Class Vehicles, and ARC. For the remaining Defendants, Plaintiffs who purchased or leased their Class Vehicles in states with materially similar laws may represent Subclasses under this count against all other Defendants, and ARC.

553.   For purposes of this count, members of the Alaska Subclass shall be referred to as "Class Members."

554.   For purposes of this count, ARC, the Automaker Defendants, and the Airbag Module Defendants shall be referred to as "Defendants."

555.   Defendants are liable for both fraudulent concealment and non-disclosure. *See, e.g.*, Restatement (Second) of Torts §§ 550-51 (1977).

556.   Defendants owed Plaintiffs and Class Members a duty to disclose all

the material facts concerning the Defective Inflators in the Class Vehicles because:

    a.    Given the Automaker Defendants' role in the design, manufacture, testing, and sale of Class Vehicles and Defective Inflators, and their experience and knowledge as experts and long-time veterans of the automotive industry, they, along with ARC and the Airbag Module Defendants, possessed exclusive access to and were in a superior position to know the true facts about the Defective Inflators;

    b.    Given ARC's design, development, testing and manufacture of the Defective Inflators and its experience and knowledge as experts and long-time veterans of the automotive industry, it, along with the Automaker Defendants and the Airbag Module Defendants, possessed exclusive access to and was in a superior position to know the true facts about the Defective Inflators;

    c.    Given the Airbag Module Defendants' role in the design, manufacture, and testing of the airbag modules with the Defective Inflators installed in them, and their experience and knowledge as experts and long-time veterans of the automotive industry, they, along with ARC and the Automaker Defendants, possessed exclusive access to and were in a superior position to know the true facts about the Defective Inflators;

48

d.      Given the Inflator Defect's hidden and technical nature, Plaintiffs and Class Members lack the sophisticated expertise in vehicle components and technology that would be necessary to discover the Inflator Defect on their own;

e.      Defendants knew that the Inflator Defect gave rise to serious safety concerns for the consumers who purchased and leased the Class Vehicles;

f.      The Inflator Defect poses a severe risk of harm in that, among other things, the metal shrapnel can puncture and stab the occupants, causing severe and potentially fatal injuries;

g.      Defendants knew about and investigated the Inflator Defect, but then did not notify consumers about it, disclose the Inflator Defect to NHTSA, and the Automaker Defendants did not launch a comprehensive recall for all Class Vehicles, all of which individually and together deprived Plaintiffs of an opportunity that otherwise could have led them to discover the truth about the Inflator Defect in their Class Vehicles; and

h.      The Automaker Defendants made, helped to make, or conspired to make incomplete representations about the safety and reliability of the

49

Class Vehicles and their airbags, while purposefully withholding material facts about a known safety defect. Because they volunteered to provide information about the Class Vehicles that they marketed and offered for sale and lease to consumers, the Automaker Defendants had the duty to disclose the whole truth.

557.   In breach of their duties, Defendants failed to disclose the Inflator Defect and that the Class Vehicles' airbags were not safe and reliable to Plaintiffs and Class Members in connection with the sale of the Class Vehicles.

558.   The Inflator Defect within the Class Vehicles is material to the sale of the Class Vehicles because a reasonable person would find it important in purchasing, leasing, or retaining a new or used motor vehicle and because it directly impacts the value of the Class Vehicles purchased or leased by Plaintiffs and Class Members.

559.   Defendants intended for Plaintiffs and Class Members to rely on their omissions and concealment—which they did by purchasing and leasing the Class Vehicles at the prices they paid believing that their vehicles would not have an Inflator Defect that would affect the quality, reliability, and safety of the Class Vehicles and their airbags.

560.   Plaintiffs' and Class Members' reliance was reasonable because a

50

reasonable consumer would not have expected that the Class Vehicles contained a safety defect that poses such a serious risk. They had no way of learning the facts that Defendants had concealed or failed to disclose. Plaintiffs and Class Members did not, and could not, unravel Defendants' deception on their own.

561.   Defendants actively concealed and suppressed these material facts, in whole or in part, to maintain a market for the Class Vehicles, to protect profits, and to avoid costly recalls that would expose them to liability for those expenses and harm the commercial reputations of Defendants and their products. They did so at the expense of Plaintiffs and Class Members.

562.   If Defendants had fully and adequately disclosed the Inflator Defect to consumers, Plaintiffs and Class Members would have seen such a disclosure.

563.   Through their omissions and concealment with respect to the Inflator Defect within the Class Vehicles, Defendants intended to induce, and did induce, Plaintiffs and Class Members to either purchase a Class Vehicle that they otherwise would not have purchased, or pay more for a Class Vehicle than they otherwise would have paid.

564.   Had Plaintiffs and Class Members known of the Inflator Defect within the Class Vehicles, they would not have purchased the Class Vehicles or would have paid less for them.

51

565.   As a direct and proximate result of Defendants' omissions and concealment, Plaintiffs and other Class Members either overpaid for the Class Vehicles or would not have purchased the Class Vehicles at all if the Inflator Defect had been disclosed to them. Accordingly, Defendants are liable to Plaintiffs and Class Members for their damages in an amount to be proven at trial.

566.   Defendants' acts were done maliciously, oppressively, deliberately, with intent to defraud; in reckless disregard of the Plaintiffs' and Class Members' rights and well-being; and to enrich themselves. Defendants' misconduct warrants an assessment of punitive damages, as permitted by law, in an amount sufficient to deter such conduct in the future, which amount shall be determined according to proof at trial.

### e.      Alaska Count 5: Unjust Enrichment Against the Automaker Defendants.

567.   Plaintiffs reallege and incorporate by reference all allegations in Volume 1 of the Consolidated Class Action Complaint as though fully set forth herein.

568.   The Alaska Plaintiffs bring this count under Alaska law, individually and on behalf of the other members of the Alaska Subclasses against the Automaker Defendants for their respective Class Vehicles. For the remaining Automaker

Defendants, Plaintiffs who purchased or leased their Class Vehicles in states with materially similar laws may represent Subclasses under this count against all other Automaker Defendants.

569.   For purposes of this count, members of the Alaska Subclass shall be referred to as "Class Members."

570.   When they purchased and leased the Class Vehicles, Plaintiffs and Class Members conferred tangible and material economic benefits upon the Automaker Defendants, who readily accepted and retained these benefits.

571.   Plaintiffs and Class Members would not have purchased or leased their Class Vehicles, or would have paid less for them, had they known of the Inflator Defect at the time of purchase or lease. Therefore, the Automaker Defendants profited from the sale and lease of the Class Vehicles to the detriment and expense of Plaintiffs and Class Members.

572.   The Automaker Defendants appreciated these economic benefits. These benefits were the expected result of the Automaker Defendants acting in their pecuniary interest at the expense of their customers. They knew of these benefits because they were aware of the Inflator Defect, yet they failed to disclose this knowledge and misled the Plaintiffs and Class Members regarding the nature and quality of the Class Vehicles while profiting from this deception.

573.   It would be unjust, inequitable, and unconscionable for the Automaker Defendants to retain these benefits, including because they were procured as a result of their wrongful conduct alleged above.

574.   Plaintiffs and Class Members are entitled to restitution of the benefits the Automaker Defendants unjustly retained and/or any amounts necessary to return Plaintiffs and Class Members to the position they occupied prior to dealing with those Defendants, with such amounts to be determined at trial.

575.   Plaintiffs plead this claim separately as well as in the alternative to their claims for damages under Fed. R. Civ. P. 8(a)(3), because if the Court dismisses Plaintiffs' claims for damages or enters judgment on them in favor of the Automaker Defendants, Plaintiffs will have no adequate legal remedy.

### 3.   Arizona

#### a.   Arizona Count 1: Breach of Express Warranty (Ariz. Rev. Stat. Ann. §§ 47.2313 and 47-2A210) Against the Automaker Defendants.

576.   Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

577.   The Arizona Plaintiffs bring this count under Arizona law, individually and on behalf of the other members of the Arizona Subclasses against the Automaker Defendants for their respective Class Vehicles. For the remaining Automaker

Defendants, Plaintiffs who purchased or leased their Class Vehicles in states with materially similar laws may represent Subclasses under this count against all other Automaker Defendants.

578.   For purposes of this count, members of the Arizona Subclass shall be referred to as "Class Members."

579.   The Class Vehicles are "goods" under Ariz. Rev. Stat. Ann. §§ 47-2105(A) and 47-2A103(A)(8).

580.   The Automaker Defendants are "merchants," "sellers," and "lessors" of the Class Vehicles under Ariz. Rev. Stat. Ann. §§ 47-2104(A) and 47-2A103(C)(11), § 47-2103(A)(4) and § 47-2a103(A)(16).

581.   Plaintiffs and Class Members who purchased and leased the Class Vehicles in Arizona are "buyers" and "lessees" under Ariz. Rev. Stat. Ann. § 47-2103(A)(1) and § 47-2A103(A)(14).

582.   The Automaker Defendants issued an express written warranty for each defective Class Vehicle they sold, including that:

a.   The Class Vehicles would be free of defects in materials and workmanship at the time of sale; and

b.   The Class Vehicles were safe and reliable, and their airbags would function properly in the event of a crash.

583.   The warranties listed above formed the basis of the bargain with regard to Plaintiffs' and Class Members' purchase and lease of the Class Vehicles.

584.   The Automaker Defendants knowingly breached their warranty for the Class Vehicles because:

a.   The airbag inflators have latent defects which have a dangerous propensity to cause the inflators to rupture and eject metal shrapnel, subjecting Plaintiffs and Class Members to the risk of loss and injury; and

b.   The Automaker Defendants denied, concealed, and misrepresented the Inflator Defect, in the process refusing to pay for or provide in a reasonably timely fashion the needed repairs and replacements for Plaintiffs and Class Members.

585.   The Automaker Defendants knew or should have known that the warranties were false and/or misleading. Specifically, the Automaker Defendants were aware of the Inflator Defect in the Class Vehicles, which made the vehicles inherently defective and dangerous at the time that they were sold and leased to Plaintiffs and Class Members.

586.   Plaintiffs and Class Members were exposed to the Automaker Defendants' misrepresentations, and they had no way of discerning that the

Automaker Defendants' representations were false and misleading or otherwise learning the material facts that the Automaker Defendants had concealed or failed to disclose. Accordingly, Plaintiffs and Class Members reasonably relied on the Automaker Defendants' express warranties when purchasing or leasing their Class Vehicles.

587. Plaintiffs and Class Members timely provided the Automaker Defendants notice of the issues raised in this count and this Complaint and an opportunity to cure, as alleged in the paragraphs addressing Defendants' notice, above.

588. Alternatively, Plaintiffs and Class Members were excused from providing the Automaker Defendants with notice and an opportunity to cure the breach, because it would have been futile. As alleged above, the Automaker Defendants knew about the Defective Inflators for years; however, to date, the Automaker Defendants have not instituted a recall or any other repair program with respect to all of the Class Vehicles, or even acknowledged that the Inflator Defect exists in all of the Class Vehicles. Therefore, they have refused to recall or repair defective vehicles. Moreover, to the extent the Automaker Defendants have issued recalls, those recalls are inadequate because, *inter alia*: (a) they are belated because the Automaker Defendants knew about the Defective Inflators for years and did

nothing to recall or remedy the serious safety defect; (b) with tens of millions of vehicles impacted in existing and potential future recalls, as a result of the Automaker Defendants' concealment of the Inflator Defect, the recalls cannot be implemented effectively due to supply constraints and resulting delays; (c) the recalls are incomplete, and apply to only a subset of the Class Vehicles.

589.   As a direct and proximate result of the Automaker Defendants' breach of their express warranties, the Class Vehicles were and are defective and the Inflator Defect was not remedied. Therefore, Plaintiff and Class Members have been damaged, in an amount to be proven at trial, through their overpayment at the time of purchase or lease for the Class Vehicles with an undisclosed safety defect that would not be remedied.

> **b.     Arizona Count 2: Breach of Implied Warranty of Merchantability (Ariz. Rev. Stat. Ann. § 44-1521, *et seq.*) Against the Automaker Defendants.**

590.   Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

591.   The Arizona Plaintiffs bring this count under Arizona law, individually and on behalf of the other members of the Arizona Subclasses against the Automaker Defendants for their respective Class Vehicles. For the remaining Automaker Defendants, Plaintiffs who purchased or leased their Class Vehicles in states with

materially similar laws may represent Subclasses under this count against all other Automaker Defendants.

592.   For purposes of this count, members of the Arizona Subclass shall be referred to as "Class Members."

593.   The Class Vehicles are "goods" under Ariz. Rev. Stat. Ann. §§ 47-2105(A) and 47-2A103(A)(8).

594.   Plaintiffs and Class Members are "buyers" and "lessees" of the Class Vehicles under Ariz. Rev. Stat. Ann. § 47-21-3(A)(1) and § 47-2a103(A)(14).

595.   The Automaker Defendants are "merchants," "sellers," and "lessors" under Ariz. Rev. Stat. Ann. §§ 47-2104(A) and 47-2A103(C)(11), § 47-2103(A)(4) and § 47-2a103(A)(16).

596.   Arizona law conferred an implied warranty that the Class Vehicles were in merchantable condition and fit for the ordinary purpose for which they were to be used pursuant to Ariz. Rev. Stat. Ann. §§ 47-2314 and 47-2A212.

597.   The Class Vehicles are not merchantable, and as such the Automaker Defendants breached their implied warranties, because at the time of sale and all times thereafter:

a.   The Class Vehicles would not pass without objection in the automotive trade given the Inflator Defect;

59

b.    The Inflator Defect renders the Class Vehicles unsafe to drive and unfit for ordinary purposes;

c.    The Class Vehicles and the airbags therein were inadequately labeled as safe and reliable, and the labeling failed to disclose the Inflator Defect; and

d.    The Class Vehicles do not conform to their labeling, which represents that the vehicles are safe and suitable for their intended use.

598. Plaintiffs and Class Members timely provided the Automaker Defendants notice of the issues raised in this count and this Complaint and an opportunity to cure, as alleged in the paragraphs addressing Defendants' notice, above.

599. Alternatively, Plaintiffs and Class Members were excused from providing the Automaker Defendants with notice and an opportunity to cure the breach because it would have been futile. As alleged above, the Automaker Defendants have long known that the Class Vehicles contained the Defective Inflators, and that the Defective Inflators have caused airbags to malfunction in crashes involving the Class Vehicles; however, to date, the Automaker Defendants have not instituted a recall or any other repair program with respect to all of the Class Vehicles, or even acknowledged that the Inflator Defect exists in all of those Class

Vehicles. Moreover, to the extent the Automaker Defendants have issued recalls, those recalls are inadequate because, inter alia: (a) they are belated because the Automaker Defendants knew about the Defective Inflators for years and did nothing to recall or remedy the serious safety defect; (b) with tens of millions of vehicles impacted in existing and potential future recalls, as a result of the Automaker Defendants' concealment of the Inflator Defect, the recalls cannot be implemented effectively due to supply constraints and resulting delays; (c) the recalls are incomplete, and apply to only a subset of the Class Vehicles.

600.   Plaintiffs, individually and on behalf of Class Members, seek all available monetary damages (including actual, compensatory, and punitive damages), injunctive and equitable relief, and attorneys' fees and costs.

### c.   Arizona Count 3: Violation of the Arizona Consumer Fraud Act (Ariz. Rev. Stat. Ann. § 44-1521, *et seq.*) Against All Defendants.[3]

601.   Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

602.   The Arizona Plaintiffs bring this count under Arizona law, individually and on behalf of the other members of the Arizona Subclasses against the Automaker

---

[3] Plaintiffs bring this count against ARC and the Airbag Module Defendants based on their omissions and concealment of material facts only.

Defendants and Airbag Module Defendants for their respective Class Vehicles, and ARC. For the remaining Defendants, Plaintiffs who purchased or leased their Class Vehicles in states with materially similar laws may represent Subclasses under this count against all other Defendants, and ARC.

603.   For purposes of this count, members of the Arizona Subclass shall be referred to as "Class Members."

604.   For purposes of this count ARC, the Automaker Defendants and the Airbag Module Defendants as "Defendants."

605.   Defendants, Plaintiffs, and Class Members are "persons" under Ariz. Rev. Stat. Ann. § 44-1521(6).

606.   The Class Vehicles are "merchandise" under Ariz. Rev. Stat. Ann § 44-1521(5).

607.   The Arizona Consumer Fraud Act ("Arizona CFA") prohibits unlawful business practices and declares them to be unlawful. Ariz. Rev. Stat. Ann § 44-1522(A).

608.   Defendants' violations of the Arizona CFA occurred repeatedly in their trade or practice—including the design, manufacture, distribution, marketing, sale, and lease of the Defective Inflators and the Class Vehicles.

609.   Defendants, through their agents, employees, and/or subsidiaries,

violated the Arizona CFA by knowingly and intentionally misrepresenting, omitting, concealing, and/or failing to disclose material facts regarding the reliability, safety, and performance of the Class Vehicles and the Defective Inflators, as detailed above.

610.   Defendants had an ongoing duty to Plaintiffs and Class Members to refrain from unfair or deceptive practices under the Arizona CFA in the course of their business. Specifically, Defendants owed Plaintiffs and Class Members a duty to disclose all the material facts concerning the Defective Inflators in the Class Vehicles because:

    a.    Given the Automaker Defendants' role in the design, manufacture, testing, and sale of Class Vehicles and Defective Inflators, and their experience and knowledge as experts and long-time veterans of the automotive industry, they, along with ARC and the Airbag Module Defendants, possessed exclusive access to and were in a superior position to know the true facts about the Defective Inflators;

    b.    Given ARC's design, development, testing and manufacture of the Defective Inflators and its experience and knowledge as experts and long-time veterans of the automotive industry, it, along with the Automaker Defendants and the Airbag Module Defendants, possessed exclusive access to and was in a superior position to know the true facts

about the Defective Inflators;

c.     Given the Airbag Module Defendants' role in the design, manufacture, and testing of the airbag modules with the Defective Inflators installed in them, and their experience and knowledge as experts and long-time veterans of the automotive industry, they, along with ARC and the Automaker Defendants, possessed exclusive access to and were in a superior position to know the true facts about the Defective Inflators;

d.     Given the Inflator Defect's hidden and technical nature, Plaintiffs and Class Members lack the sophisticated expertise in vehicle components and technology that would be necessary to discover the Inflator Defect on their own;

e.     Defendants knew that the Inflator Defect gave rise to serious safety concerns for the consumers who purchased and leased the Class Vehicles;

f.     The Inflator Defect poses a severe risk of harm in that, among other things, the metal shrapnel can puncture and stab the occupants, causing severe and potentially fatal injuries;

g.     Defendants knew about and investigated the Inflator Defect, but then did not notify consumers about it, disclose the Inflator Defect to

NHTSA, and the Automaker Defendants did not launch a comprehensive recall for all Class Vehicles, all of which individually and together deprived Plaintiffs of an opportunity that otherwise could have led them to discover the truth about the Inflator Defect in their Class Vehicles; and

h.  The Automaker Defendants made, helped to make, or conspired to make incomplete representations about the safety and reliability of the Class Vehicles and their airbags, while purposefully withholding material facts about a known safety defect. Because they volunteered to provide information about the Class Vehicles that they marketed and offered for sale and lease to consumers, the Automaker Defendants had the duty to disclose the whole truth.

611.  By misrepresenting the Class Vehicles as safe and reliable and the airbags installed in them as properly-functioning and free from defects, and/or by failing to disclose and actively concealing the dangers and risk posed by the Inflator Defect to both consumers and NHTSA, Defendants engaged in deceptive acts or practices, as outlined in Ariz. Rev. Stat. § 44-1522(A), including using or employing deception, deceptive or unfair acts or practices, fraud, false pretenses, false promises

65

or misrepresentations, or the concealment, suppression or omission of a material fact with intent that others rely upon such concealment, suppression, or omission, in connection with the advertisement and sale or lease of the Class Vehicles.

612.    Defendants' unfair or deceptive acts or practices, including their misrepresentations, concealments, omissions, and/or suppressions of material facts, were designed to mislead and had a tendency or capacity to mislead and create a false impression in consumers that the Class Vehicles had properly-functioning and reliable airbags. Indeed, those misrepresentations, concealments, omissions, and suppressions of material facts did in fact deceive reasonable consumers, including Plaintiffs and Class Members, about the true safety and reliability of the Class Vehicles and/or the Defective Inflators installed in them, the quality of the Class Vehicles, and the true value of the Class Vehicles.

613.    Defendants intended for Plaintiffs and Class Members to rely on their misrepresentations, omissions, and concealment—which they did by purchasing and leasing the Class Vehicles at the prices they paid believing that their vehicles would not have an Inflator Defect that would affect the quality, reliability, and safety of the Class Vehicles and their airbags.

614.    Defendants' misrepresentations, concealments, omissions, and suppressions of material facts regarding the Inflator Defect and true characteristics

of the Class Vehicles were material to the decisions of Plaintiffs and Class Members to purchase and lease those vehicles, as Defendants intended. Plaintiffs and Class Members were exposed to those misrepresentations, concealments, omissions, and suppressions of material facts, and relied on Defendants' misrepresentations that the Class Vehicles and their airbags were safe and reliable in deciding to purchase and lease the Class Vehicles.

615.   Plaintiffs' and Class Members' reliance was reasonable, as they had no way of discerning that Defendants' representations were false and misleading, or otherwise learning the facts that Defendants had concealed or failed to disclose. Plaintiffs and Class Members did not, and could not, unravel Defendants' deception on their own.

616.   Had they known the truth about the Inflator Defect, Plaintiffs and Class Members would not have purchased or leased the Class Vehicles, or would have paid significantly less for them.

617.   As a direct and proximate result of Defendants' deceptive practices, Plaintiffs and Class Members have sustained economic injury and loss—either by purchasing a vehicle they otherwise would not have purchased or paying more than they otherwise would have as a result of Defendants' actions and omissions alleged above—that first occurred at the time each Class Vehicle was purchased or leased.

618.   Defendants' violations present a continuing risk to Plaintiffs and Class Members, as well as to the general public, because the Class Vehicles remain unsafe due to the Defective Inflators therein. Defendants' unlawful acts and practices complained of herein affect the public interest.

619.   Plaintiffs and Class Members seek an order enjoining the above unfair or deceptive acts or practices and awarding actual damages, treble damages, restitution, attorneys' fees, and any other just and proper relief available under the Arizona CFA against all Defendants.

> ### d.   Arizona Count 4: Fraud by Omission and Concealment Against All Defendants.

620.   Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

621.   The Arizona Plaintiffs bring this count under Arizona law, individually and on behalf of the other members of the Arizona Subclasses against the Automaker Defendants and Airbag Module Defendants for their respective Class Vehicles, and ARC. For the remaining Defendants, Plaintiffs who purchased or leased their Class Vehicles in states with materially similar laws may represent Subclasses under this count against all other Defendants, and ARC.

622.   For purposes of this count, members of the Arizona Subclass shall be

referred to as "Class Members."

623.    For purposes of this count, ARC, the Automaker Defendants, and the Airbag Module Defendants shall be referred to as "Defendants."

624.    Defendants are liable for both fraudulent concealment and non-disclosure. *See, e.g.*, Restatement (Second) of Torts §§ 550-51 (1977).

625.    Defendants owed Plaintiffs and Class Members a duty to disclose all the material facts concerning the Defective Inflators in the Class Vehicles because:

a.    Given the Automaker Defendants' role in the design, manufacture, testing, and sale of Class Vehicles and Defective Inflators, and their experience and knowledge as experts and long-time veterans of the automotive industry, they, along with ARC and the Airbag Module Defendants, possessed exclusive access to and were in a superior position to know the true facts about the Defective Inflators;

b.    Given ARC's design, development, testing and manufacture of the Defective Inflators and its experience and knowledge as experts and long-time veterans of the automotive industry, it, along with the Automaker Defendants and the Airbag Module Defendants, possessed exclusive access to and was in a superior position to know the true facts about the Defective Inflators;

69

c.      Given the Airbag Module Defendants' role in the design, manufacture, and testing of the airbag modules with the Defective Inflators installed in them, and their experience and knowledge as experts and long-time veterans of the automotive industry, they, along with ARC and the Automaker Defendants, possessed exclusive access to and were in a superior position to know the true facts about the Defective Inflators;

d.      Given the Inflator Defect's hidden and technical nature, Plaintiffs and Class Members lack the sophisticated expertise in vehicle components and technology that would be necessary to discover the Inflator Defect on their own;

e.      Defendants knew that the Inflator Defect gave rise to serious safety concerns for the consumers who purchased and leased the Class Vehicles;

f.      The Inflator Defect poses a severe risk of harm in that, among other things, the metal shrapnel can puncture and stab the occupants, causing severe and potentially fatal injuries;

g.      Defendants knew about and investigated the Inflator Defect, but then did not notify consumers about it, disclose the Inflator Defect to NHTSA, and the Automaker Defendants did not launch a

comprehensive recall for all Class Vehicles, all of which individually and together deprived Plaintiffs of an opportunity that otherwise could have led them to discover the truth about the Inflator Defect in their Class Vehicles; and

h.   The Automaker Defendants made, helped to make, or conspired to make incomplete representations about the safety and reliability of the Class Vehicles and their airbags, while purposefully withholding material facts about a known safety defect. Because they volunteered to provide information about the Class Vehicles that they marketed and offered for sale and lease to consumers, the Automaker Defendants had the duty to disclose the whole truth.

626.   In breach of their duties, Defendants failed to disclose the Inflator Defect and that the Class Vehicles' airbags were not safe and reliable to Plaintiffs and Class Members in connection with the sale of the Class Vehicles.

627.   The Inflator Defect within the Class Vehicles is material to the sale of the Class Vehicles because a reasonable person would find it important in purchasing, leasing, or retaining a new or used motor vehicle and because it directly impacts the value of the Class Vehicles purchased or leased by Plaintiffs and Class Members.

628.   Defendants intended for Plaintiffs and Class Members to rely on their omissions and concealment—which they did by purchasing and leasing the Class Vehicles at the prices they paid believing that their vehicles would not have an Inflator Defect that would affect the quality, reliability, and safety of the Class Vehicles and their airbags.

629.   Plaintiffs' and Class Members' reliance was reasonable because a reasonable consumer would not have expected that the Class Vehicles contained a safety defect that poses such a serious risk. They had no way of learning the facts that Defendants had concealed or failed to disclose. Plaintiffs and Class Members did not, and could not, unravel Defendants' deception on their own.

630.   Defendants actively concealed and suppressed these material facts, in whole or in part, to maintain a market for the Class Vehicles, to protect profits, and to avoid costly recalls that would expose them to liability for those expenses and harm the commercial reputations of Defendants and their products. They did so at the expense of Plaintiffs and Class Members.

631.   If Defendants had fully and adequately disclosed the Inflator Defect to consumers, Plaintiffs and Class Members would have seen such a disclosure.

632.   Through their omissions and concealment with respect to the Inflator Defect within the Class Vehicles, Defendants intended to induce, and did induce,

Plaintiffs and Class Members to either purchase a Class Vehicle that they otherwise would not have purchased, or pay more for a Class Vehicle than they otherwise would have paid.

633.   Had Plaintiffs and Class Members known of the Inflator Defect within the Class Vehicles, they would not have purchased the Class Vehicles or would have paid less for them.

634.   As a direct and proximate result of Defendants' omissions and concealment, Plaintiffs and other Class Members either overpaid for the Class Vehicles or would not have purchased the Class Vehicles at all if the Inflator Defect had been disclosed to them. Accordingly, Defendants are liable to Plaintiffs and Class Members for their damages in an amount to be proven at trial.

635.   Defendants' acts were done maliciously, oppressively, deliberately, with intent to defraud; in reckless disregard of the Plaintiffs' and Class Members' rights and well-being; and to enrich themselves. Defendants' misconduct warrants an assessment of punitive damages, as permitted by law, in an amount sufficient to deter such conduct in the future, which amount shall be determined according to proof at trial.

### e. Arizona Count 5: Unjust Enrichment Against the Automaker Defendants.

636.   Plaintiffs reallege and incorporate by reference all allegations in Volume 1 of the Consolidated Class Action Complaint as though fully set forth herein.

637.   The Arizona Plaintiffs bring this count under Arizona law, individually and on behalf of the other members of the Arizona Subclasses against the Automaker Defendants for their respective Class Vehicles. For the remaining Automaker Defendants, Plaintiffs who purchased or leased their Class Vehicles in states with materially similar laws may represent Subclasses under this count against all other Automaker Defendants.

638.   For purposes of this count, members of the Arizona Subclass shall be referred to as "Class Members."

639.   When they purchased and leased the Class Vehicles, Plaintiffs and Class Members conferred tangible and material economic benefits upon the Automaker Defendants, who readily accepted and retained these benefits.

640.   Plaintiffs and Class Members would not have purchased or leased their Class Vehicles, or would have paid less for them, had they known of the Inflator Defect at the time of purchase or lease. Therefore, the Automaker Defendants profited from the sale and lease of the Class Vehicles to the detriment and expense

74

of Plaintiffs and Class Members.

641.   The Automaker Defendants appreciated these economic benefits. These benefits were the expected result of the Automaker Defendants acting in their pecuniary interest at the expense of their customers. They knew of these benefits because they were aware of the Inflator Defect, yet they failed to disclose this knowledge and misled the Plaintiffs and Class Members regarding the nature and quality of the Class Vehicles while profiting from this deception.

642.   It would be unjust, inequitable, and unconscionable for the Automaker Defendants to retain these benefits, including because they were procured as a result of their wrongful conduct alleged above.

643.   Plaintiffs and Class Members are entitled to restitution of the benefits the Automaker Defendants unjustly retained and/or any amounts necessary to return Plaintiffs and Class Members to the position they occupied prior to dealing with those Defendants, with such amounts to be determined at trial.

644.   Plaintiffs plead this claim separately as well as in the alternative to their claims for damages under Fed. R. Civ. P. 8(a)(3), because if the Court dismisses Plaintiffs' claims for damages or enters judgment on them in favor of the Automaker Defendants, Plaintiffs will have no adequate legal remedy.

**4.   Arkansas**

a.   **Arkansas Count 1: Breach of Express Warranty (Ark. Code Ann. §§ 4-2-313 and 4-2A-210) Against the Automaker Defendants.**

645.   Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

646.   The Arkansas Plaintiff brings this count under Arkansas law, individually and on behalf of the other members of the Arkansas Subclasses against the Automaker Defendants for his or her respective Class Vehicle(s). For the remaining Automaker Defendants, Plaintiffs who purchased or leased their Class Vehicles in states with materially similar laws may represent Subclasses under this count against all other Automaker Defendants.

647.   For purposes of this count, members of the Arkansas Subclass shall be referred to as "Class Members."

648.   The Class Vehicles are "goods" under Ark. Code Ann. §§ 4-2-105(1) and 4-2A-103(1)(h).

649.   The Automaker Defendants are "merchants," "sellers," and "lessors," of the Class Vehicles under Ark. Code Ann. §§ 4-2-103(1)(d), 4-2-104(1) and 4-2A-103(3), § 4-2-103(1)(d), and Ark. Code Ann. § 4-2A-103(1)(p). respectively.

650.   Plaintiffs and Class Members who purchased and leased the Class Vehicles in California are "buyers" and "lessees" under Ark. Code Ann. §§ 4-2-

103(1)(a) and 4-2A-103(1)(a), and § 4-2A-103(1)(n).

651.   The Automaker Defendants issued an express written warranty for each defective Class Vehicle they sold, including that:

a.   The Class Vehicles would be free of defects in materials and workmanship at the time of sale; and

b.   The Class Vehicles were safe and reliable, and their airbags would function properly in the event of a crash.

652.   The warranties listed above formed the basis of the bargain with regard to Plaintiffs' and Class Members' purchase and lease of the Class Vehicles.

653.   The Automaker Defendants knowingly breached their warranty for the Class Vehicles because:

a.   The airbag inflators have latent defects which have a dangerous propensity to cause the inflators to rupture and eject metal shrapnel, subjecting Plaintiffs and Class Members to the risk of loss and injury; and

b.   The Automaker Defendants denied, concealed, and misrepresented the Inflator Defect, in the process refusing to pay for or provide in a reasonably timely fashion the needed repairs and replacements for Plaintiffs and Class Members.

654. The Automaker Defendants knew or should have known that the warranties were false and/or misleading. Specifically, the Automaker Defendants were aware of the Inflator Defect in the Class Vehicles, which made the vehicles inherently defective and dangerous at the time that they were sold and leased to Plaintiffs and Class Members.

655. Plaintiffs and Class Members were exposed to the Automaker Defendants' misrepresentations, and they had no way of discerning that the Automaker Defendants' representations were false and misleading or otherwise learning the material facts that the Automaker Defendants had concealed or failed to disclose. Accordingly, Plaintiffs and Class Members reasonably relied on the Automaker Defendants' express warranties when purchasing or leasing their Class Vehicles.

656. Plaintiffs and Class Members timely provided the Automaker Defendants notice of the issues raised in this count and this Complaint and an opportunity to cure, as alleged in the paragraphs addressing Defendants' notice, above.

657. Alternatively, Plaintiffs and Class Members were excused from providing the Automaker Defendants with notice and an opportunity to cure the breach, because it would have been futile. As alleged above, the Automaker

78

Defendants knew about the Defective Inflators for years; however, to date, the Automaker Defendants have not instituted a recall or any other repair program with respect to all of the Class Vehicles, or even acknowledged that the Inflator Defect exists in all of the Class Vehicles. Therefore, they have refused to recall or repair defective vehicles. Moreover, to the extent the Automaker Defendants have issued recalls, those recalls are inadequate because, *inter alia*: (a) they are belated because the Automaker Defendants knew about the Defective Inflators for years and did nothing to recall or remedy the serious safety defect; (b) with tens of millions of vehicles impacted in existing and potential future recalls, as a result of the Automaker Defendants' concealment of the Inflator Defect, the recalls cannot be implemented effectively due to supply constraints and resulting delays; (c) the recalls are incomplete, and apply to only a subset of the Class Vehicles.

658.   As a direct and proximate result of the Automaker Defendants' breach of their express warranties, the Class Vehicles were and are defective and the Inflator Defect was not remedied. Therefore, Plaintiff and Class Members have been damaged, in an amount to be proven at trial, through their overpayment at the time of purchase or lease for the Class Vehicles with an undisclosed safety defect that would not be remedied.

      **b.**     **Arkansas Count 2: Breach of Implied Warranty of Merchantability (Ark. Code Ann. §§ 4-2-314 and 4-2A-212) Against the Automaker Defendants.**

659.  Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

660.  The Arkansas Plaintiff brings this count under Arkansas law, individually and on behalf of the other members of the Arkansas Subclasses against the Automaker Defendants for his or her respective Class Vehicle(s). For the remaining Automaker Defendants, Plaintiffs who purchased or leased their Class Vehicles in states with materially similar laws may represent Subclasses under this count against all other Automaker Defendants.

661.  For purposes of this count, members of the Arkansas Subclass shall be referred to as "Class Members."

662.  The Class Vehicles are "goods" under Ark. Code Ann. §§ 4-2-105(1) and 4-2A-103(1)(h).

663.  The Automaker Defendants are "merchants," "sellers," and "lessors," of the Class Vehicles under Ark. Code Ann. §§ 4-2-103(1)(d), 4-2-104(1) and 4-2A-103(3), § 4-2-103(1)(d), and Ark. Code Ann. § 4-2A-103(1)(p). respectively.

664.  Plaintiffs and Class Members who purchased and leased the Class Vehicles in California are "buyers" and "lessees" under Ark. Code Ann. §§ 4-2-

103(1)(a) and 4-2A-103(1)(a), and § 4-2A-103(1)(n).

665.    Arkansas law conferred an implied warranty that the Class Vehicles were in merchantable condition and fit for the ordinary purpose for which they were to be used pursuant to Ark. Code Ann. §§ 4- 2-314 and 4-2A-212.

666.    The Class Vehicles are not merchantable, and as such the Automaker Defendants breached their implied warranties, because at the time of sale and all times thereafter:

a.    The Class Vehicles would not pass without objection in the automotive trade given the Inflator Defect;

b.    The Inflator Defect renders the Class Vehicles unsafe to drive and unfit for ordinary purposes;

c.    The Class Vehicles and the airbags therein were inadequately labeled as safe and reliable, and the labeling failed to disclose the Inflator Defect; and

d.    The Class Vehicles do not conform to their labeling, which represents that the vehicles are safe and suitable for their intended use.

667.    Plaintiffs and Class Members timely provided the Automaker Defendants notice of the issues raised in this count and this Complaint and an opportunity to cure, as alleged in the paragraphs addressing Defendants' notice,

above.

668.   Alternatively, Plaintiffs and Class Members were excused from providing the Automaker Defendants with notice and an opportunity to cure the breach because it would have been futile. As alleged above, the Automaker Defendants have long known that the Class Vehicles contained the Defective Inflators, and that the Defective Inflators have caused airbags to malfunction in crashes involving the Class Vehicles; however, to date, the Automaker Defendants have not instituted a recall or any other repair program with respect to all of the Class Vehicles, or even acknowledged that the Inflator Defect exists in all of those Class Vehicles. Moreover, to the extent the Automaker Defendants have issued recalls, those recalls are inadequate because, inter alia: (a) they are belated because the Automaker Defendants knew about the Defective Inflators for years and did nothing to recall or remedy the serious safety defect; (b) with tens of millions of vehicles impacted in existing and potential future recalls, as a result of the Automaker Defendants' concealment of the Inflator Defect, the recalls cannot be implemented effectively due to supply constraints and resulting delays; (c) the recalls are incomplete, and apply to only a subset of the Class Vehicles.

669.   Plaintiffs, individually and on behalf of Class Members, seek all available monetary damages (including actual, compensatory, and punitive

damages), injunctive and equitable relief, and attorneys' fees and costs.

      c.      **Arkansas Count 3: Violations of the Deceptive Trade Practices Act (Ark. Code Ann. § 4-88-101, *et seq*.) Against All Defendants.[4]**

670.   Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

671.   The Arkansas Plaintiff brings this count under Arkansas law, individually and on behalf of the other members of the Arkansas Subclasses against the Automaker Defendants and Airbag Module Defendants for his or her respective Class Vehicle(s), and ARC. For the remaining Defendants, Plaintiffs who purchased or leased their Class Vehicles in states with materially similar laws may represent Subclasses under this count against all other Defendants, and ARC.

672.   For purposes of this count, members of the Arkansas Subclass shall be referred to as "Class Members."

673.   For purposes of this count, ARC, the Automaker Defendants, and the Airbag Module Defendants shall be referred to as "Defendants."

674.   Defendants, Plaintiffs and Class Members are "persons" under Ark. Code Ann. § 4-88-102(5).

---

[4] Plaintiffs bring this count against ARC and the Airbag Module Defendants based on their omissions and concealment of material facts only.

675.   The Class Vehicles are "goods" under Ark. Code Ann. § 4-88-102(4).

676.   The Arkansas Deceptive Trade Practices Act ("Arkansas DTPA") makes unlawful "[d]eceptive and unconscionable trade practices." Ark. Code Ann. § 4-88-107(a).

677.   Defendants' violations of the Arkansas DTPA occurred repeatedly in their trade or practice—including the design, manufacture, distribution, marketing, sale, and lease of the Defective Inflators and the Class Vehicles.

678.   Defendants, through their agents, employees, and/or subsidiaries, violated the Arkansas DTPA by knowingly and intentionally misrepresenting, omitting, concealing, and/or failing to disclose material facts regarding the reliability, safety, and performance of the Class Vehicles and the Defective Inflators, as detailed above.

679.   Defendants had an ongoing duty to Plaintiffs and Class Members to refrain from unfair or deceptive practices under the Arkansas DTPA in the course of their business. Specifically, Defendants owed Plaintiffs and Class Members a duty to disclose all the material facts concerning the Defective Inflators in the Class Vehicles because:

a.   Given the Automaker Defendants' role in the design, manufacture, testing, and sale of Class Vehicles and Defective Inflators, and their

experience and knowledge as experts and long-time veterans of the automotive industry, they, along with ARC and the Airbag Module Defendants, possessed exclusive access to and were in a superior position to know the true facts about the Defective Inflators;

b.      Given ARC's design, development, testing and manufacture of the Defective Inflators and its experience and knowledge as experts and long-time veterans of the automotive industry, it, along with the Automaker Defendants and the Airbag Module Defendants, possessed exclusive access to and was in a superior position to know the true facts about the Defective Inflators;

c.      Given the Airbag Module Defendants' role in the design, manufacture, and testing of the airbag modules with the Defective Inflators installed in them, and their experience and knowledge as experts and long-time veterans of the automotive industry, they, along with ARC and the Automaker Defendants, possessed exclusive access to and were in a superior position to know the true facts about the Defective Inflators;

d.      Given the Inflator Defect's hidden and technical nature, Plaintiffs and Class Members lack the sophisticated expertise in vehicle components and technology that would be necessary to discover the Inflator Defect

on their own;

e.   Defendants knew that the Inflator Defect gave rise to serious safety concerns for the consumers who purchased and leased the Class Vehicles;

f.   The Inflator Defect poses a severe risk of harm in that, among other things, the metal shrapnel can puncture and stab the occupants, causing severe and potentially fatal injuries;

g.   Defendants knew about and investigated the Inflator Defect, but then did not notify consumers about it, disclose the Inflator Defect to NHTSA, and the Automaker Defendants did not launch a comprehensive recall for all Class Vehicles, all of which individually and together deprived Plaintiffs of an opportunity that otherwise could have led them to discover the truth about the Inflator Defect in their Class Vehicles; and

h.   The Automaker Defendants made, helped to make, or conspired to make incomplete representations about the safety and reliability of the Class Vehicles and their airbags, while purposefully withholding material facts about a known safety defect. Because they volunteered to provide information about the Class Vehicles that they marketed and

offered for sale and lease to consumers, the Automaker Defendants had

the duty to disclose the whole truth.

680.   By misrepresenting the Class Vehicles as safe and reliable and the

airbags installed in them as properly functioning and free from defects, and/or by

failing to disclose and actively concealing the dangers and risk posed by the Inflator

Defect to both consumers and NHTSA, Defendants engaged in one or more of the

following unfair or deceptive business practices as defined in Ark. Code Ann. § 4-

88-107(a):

    a.   Knowingly making false representations that the Class Vehicles and/or

the Defective Inflators had a characteristic that they did not actually

have—*i.e.*, that the vehicles were safe and suitable for use on the

roadway, when, in fact, they were not because their airbag inflators

were defectively designed such that they had an unreasonably

dangerous propensity to rupture, causing severe and fatal injuries;

    b.   Representing that the Class Vehicles and the Defective Inflators

installed in them were of a particular quality, grade, or standard when,

in fact, they were not of that quality, grade, or standard;

    c.   Failing to market, distribute, sell, and lease the Class Vehicles equipped

with Defective Inflators in accordance with Defendants' previous

advertising—i.e., that the Class Vehicles were safe and suitable for their intended use, when, in fact, they were not because of the Inflator Defect; and

d.   Engaging in any other unconscionable, false, or deceptive act or practice.

Ark. Code Ann. § 4-88-107(a)(1), (3), and (10).

681.   Defendants' unfair or deceptive acts or practices, including their misrepresentations, concealments, omissions, and/or suppressions of material facts, were designed to mislead and had a tendency or capacity to mislead and create a false impression in consumers that the Class Vehicles had properly-functioning and reliable airbags. Indeed, those misrepresentations, concealments, omissions, and suppressions of material facts did in fact deceive reasonable consumers, including Plaintiffs and Class Members, about the true safety and reliability of the Class Vehicles and/or the Defective Inflators installed in them, the quality of the Class Vehicles, and the true value of the Class Vehicles.

682.   Defendants intended for Plaintiffs and Class Members to rely on their misrepresentations, omissions, and concealment—which they did by purchasing and leasing the Class Vehicles at the prices they paid believing that their vehicles would not have an Inflator Defect that would affect the quality, reliability, and safety of the

Class Vehicles and their airbags.

683.   Defendants' misrepresentations, concealments, omissions, and suppressions of material facts regarding the Inflator Defect and true characteristics of the Class Vehicles were material to the decisions of Plaintiffs and Class Members to purchase and lease those vehicles, as Defendants intended. Plaintiffs and Class Members were exposed to those misrepresentations, concealments, omissions, and suppressions of material facts, and relied on Defendants' misrepresentations that the Class Vehicles and their airbags were safe and reliable in deciding to purchase and lease the Class Vehicles.

684.   Plaintiffs' and Class Members' reliance was reasonable, as they had no way of discerning that Defendants' representations were false and misleading, or otherwise learning the facts that Defendants had concealed or failed to disclose. Plaintiffs and Class Members did not, and could not, unravel Defendants' deception on their own.

685.   Had they known the truth about the Inflator Defect, Plaintiffs and Class Members would not have purchased or leased the Class Vehicles, or would have paid significantly less for them.

686.   As a direct and proximate result of Defendants' deceptive practices, Plaintiffs and Class Members have sustained economic injury and loss—either by

purchasing a vehicle they otherwise would not have purchased or paying more than they otherwise would have as a result of Defendants' actions and omissions alleged above—that first occurred at the time each Class Vehicle was purchased or leased.

687.   Defendants' violations present a continuing risk to Plaintiffs and Class Members, as well as to the general public, because the Class Vehicles remain unsafe due to the Defective Inflators therein. Defendants' unlawful acts and practices complained of herein affect the public interest.

688.   Pursuant to Ark. Code Ann. § 4-88-113(f), Plaintiffs and Class Members seek an order enjoining the above unfair or deceptive acts or practices and awarding actual damages, treble damages, restitution, attorneys' fees, and any other just and proper relief available under the Arkansas DTPA against all Defendants.

### d.    Arkansas Count 4: Fraud by Omission and Concealment Against All Defendants.

689.   Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

690.   The Arkansas Plaintiff brings this count under Arkansas law, individually and on behalf of the other members of the Arkansas Subclasses against the Automaker Defendants and Airbag Module Defendants for his or her respective Class Vehicle(s), and ARC. For the remaining Defendants, Plaintiffs who purchased

or leased their Class Vehicles in states with materially similar laws may represent Subclasses under this count against all other Defendants, and ARC.

691.   For purposes of this count, members of the Arkansas Subclass shall be referred to as "Class Members."

692.   For purposes of this count, ARC, the Automaker Defendants, and the Airbag Module Defendants shall be referred to as "Defendants."

693.   Defendants are liable for both fraudulent concealment and non-disclosure. *See, e.g.*, Restatement (Second) of Torts §§ 550-51 (1977).

694.   Defendants owed Plaintiffs and Class Members a duty to disclose all the material facts concerning the Defective Inflators in the Class Vehicles because:

a.   Given the Automaker Defendants' role in the design, manufacture, testing, and sale of Class Vehicles and Defective Inflators, and their experience and knowledge as experts and long-time veterans of the automotive industry, they, along with ARC and the Airbag Module Defendants, possessed exclusive access to and were in a superior position to know the true facts about the Defective Inflators;

b.   Given ARC's design, development, testing and manufacture of the Defective Inflators and its experience and knowledge as experts and long-time veterans of the automotive industry, it, along with the

91

Automaker Defendants and the Airbag Module Defendants, possessed exclusive access to and was in a superior position to know the true facts about the Defective Inflators;

c.  Given the Airbag Module Defendants' role in the design, manufacture, and testing of the airbag modules with the Defective Inflators installed in them, and their experience and knowledge as experts and long-time veterans of the automotive industry, they, along with ARC and the Automaker Defendants, possessed exclusive access to and were in a superior position to know the true facts about the Defective Inflators;

d.  Given the Inflator Defect's hidden and technical nature, Plaintiffs and Class Members lack the sophisticated expertise in vehicle components and technology that would be necessary to discover the Inflator Defect on their own;

e.  Defendants knew that the Inflator Defect gave rise to serious safety concerns for the consumers who purchased and leased the Class Vehicles;

f.  The Inflator Defect poses a severe risk of harm in that, among other things, the metal shrapnel can puncture and stab the occupants, causing severe and potentially fatal injuries;

g.   Defendants knew about and investigated the Inflator Defect, but then did not notify consumers about it, disclose the Inflator Defect to NHTSA, and the Automaker Defendants did not launch a comprehensive recall for all Class Vehicles, all of which individually and together deprived Plaintiffs of an opportunity that otherwise could have led them to discover the truth about the Inflator Defect in their Class Vehicles; and

h.   The Automaker Defendants made, helped to make, or conspired to make incomplete representations about the safety and reliability of the Class Vehicles and their airbags, while purposefully withholding material facts about a known safety defect. Because they volunteered to provide information about the Class Vehicles that they marketed and offered for sale and lease to consumers, the Automaker Defendants had the duty to disclose the whole truth.

695.   In breach of their duties, Defendants failed to disclose the Inflator Defect and that the Class Vehicles' airbags were not safe and reliable to Plaintiffs and Class Members in connection with the sale of the Class Vehicles.

696.   The Inflator Defect within the Class Vehicles is material to the sale of the Class Vehicles because a reasonable person would find it important in

purchasing, leasing, or retaining a new or used motor vehicle and because it directly impacts the value of the Class Vehicles purchased or leased by Plaintiffs and Class Members.

697.   Defendants intended for Plaintiffs and Class Members to rely on their omissions and concealment—which they did by purchasing and leasing the Class Vehicles at the prices they paid believing that their vehicles would not have an Inflator Defect that would affect the quality, reliability, and safety of the Class Vehicles and their airbags.

698.   Plaintiffs' and Class Members' reliance was reasonable because a reasonable consumer would not have expected that the Class Vehicles contained a safety defect that poses such a serious risk. They had no way of learning the facts that Defendants had concealed or failed to disclose. Plaintiffs and Class Members did not, and could not, unravel Defendants' deception on their own.

699.   Defendants actively concealed and suppressed these material facts, in whole or in part, to maintain a market for the Class Vehicles, to protect profits, and to avoid costly recalls that would expose them to liability for those expenses and harm the commercial reputations of Defendants and their products. They did so at the expense of Plaintiffs and Class Members.

700.   If Defendants had fully and adequately disclosed the Inflator Defect to

94

consumers, Plaintiffs and Class Members would have seen such a disclosure.

701.   Through their omissions and concealment with respect to the Inflator Defect within the Class Vehicles, Defendants intended to induce, and did induce, Plaintiffs and Class Members to either purchase a Class Vehicle that they otherwise would not have purchased, or pay more for a Class Vehicle than they otherwise would have paid.

702.   Had Plaintiffs and Class Members known of the Inflator Defect within the Class Vehicles, they would not have purchased the Class Vehicles or would have paid less for them.

703.   As a direct and proximate result of Defendants' omissions and concealment, Plaintiffs and other Class Members either overpaid for the Class Vehicles or would not have purchased the Class Vehicles at all if the Inflator Defect had been disclosed to them. Accordingly, Defendants are liable to Plaintiffs and Class Members for their damages in an amount to be proven at trial.

704.   Defendants' acts were done maliciously, oppressively, deliberately, with intent to defraud; in reckless disregard of the Plaintiffs' and Class Members' rights and well-being; and to enrich themselves. Defendants' misconduct warrants an assessment of punitive damages, as permitted by law, in an amount sufficient to deter such conduct in the future, which amount shall be determined according to

95

proof at trial.

      **e.**    **Arkansas Count 5: Unjust Enrichment Against the Automaker Defendants.**

705.   Plaintiffs reallege and incorporate by reference all allegations in Volume 1 of the Consolidated Class Action Complaint as though fully set forth herein.

706.   The Arkansas Plaintiff brings this count under Arkansas law, individually and on behalf of the other members of the Arkansas Subclasses against the Automaker Defendants for his or her respective Class Vehicle(s). For the remaining Automaker Defendants, Plaintiffs who purchased or leased their Class Vehicles in states with materially similar laws may represent Subclasses under this count against all other Automaker Defendants.

707.   For purposes of this count, members of the Arkansas Subclass shall be referred to as "Class Members."

708.   When they purchased and leased the Class Vehicles, Plaintiffs and Class Members conferred tangible and material economic benefits upon the Automaker Defendants, who readily accepted and retained these benefits.

709.   Plaintiffs and Class Members would not have purchased or leased their Class Vehicles, or would have paid less for them, had they known of the Inflator

Defect at the time of purchase or lease. Therefore, the Automaker Defendants profited from the sale and lease of the Class Vehicles to the detriment and expense of Plaintiffs and Class Members.

710.   The Automaker Defendants appreciated these economic benefits. These benefits were the expected result of the Automaker Defendants acting in their pecuniary interest at the expense of their customers. They knew of these benefits because they were aware of the Inflator Defect, yet they failed to disclose this knowledge and misled the Plaintiffs and Class Members regarding the nature and quality of the Class Vehicles while profiting from this deception.

711.   It would be unjust, inequitable, and unconscionable for the Automaker Defendants to retain these benefits, including because they were procured as a result of their wrongful conduct alleged above.

712.   Plaintiffs and Class Members are entitled to restitution of the benefits the Automaker Defendants unjustly retained and/or any amounts necessary to return Plaintiffs and Class Members to the position they occupied prior to dealing with those Defendants, with such amounts to be determined at trial.

713.   Plaintiffs plead this claim separately as well as in the alternative to their claims for damages under Fed. R. Civ. P. 8(a)(3), because if the Court dismisses Plaintiffs' claims for damages or enters judgment on them in favor of the Automaker

Defendants, Plaintiffs will have no adequate legal remedy.

### 5.      California

#### a.      California Count 1: Breach of Express Warranty (Cal. Com. Code §§ 2313 and 10210) Against the Automaker Defendants.

714.   Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

715.   The California Plaintiffs bring this count under California law, individually and on behalf of the other members of the California Subclasses against the Automaker Defendants for their respective Class Vehicles. For the remaining Automaker Defendants, Plaintiffs who purchased or leased their Class Vehicles in states with materially similar laws may represent Subclasses under this count against all other Automaker Defendants.

716.   For purposes of this count, members of the California Subclass shall be referred to as "Class Members."

717.   The Class Vehicles are "goods" under Cal. Com. Code §§ 2105(1) and 10103(a)(8).

718.   The Automaker Defendants are "merchants," "sellers," and "lessors,"

of the Class Vehicles under Cal. Com. Code §§ 2104(1), 10103(c), and 2103(1)(d), respectively.

719.   Plaintiffs and Class Members who purchased and leased the Class Vehicles in California are "buyers" and "lessees" under Cal. Com. Code §§ 2103(1)(a), 10103(a)(14).

720.   The Automaker Defendants issued an express written warranty for each defective Class Vehicle they sold, including that:

a.   The Class Vehicles would be free of defects in materials and workmanship at the time of sale; and

b.   The Class Vehicles were safe and reliable, and their airbags would function properly in the event of a crash.

721.   The warranties listed above formed the basis of the bargain with regard to Plaintiffs' and Class Members' purchase and lease of the Class Vehicles.

722.   The Automaker Defendants knowingly breached their warranty for the Class Vehicles because:

a.   The airbag inflators have latent defects which have a dangerous propensity to cause the inflators to rupture and eject metal shrapnel, subjecting Plaintiffs and Class Members to the risk of loss and injury; and

99

b.   The Automaker Defendants denied, concealed, and misrepresented the Inflator Defect, in the process refusing to pay for or provide in a reasonably timely fashion the needed repairs and replacements for Plaintiffs and Class Members.

723.   The Automaker Defendants knew or should have known that the warranties were false and/or misleading. Specifically, the Automaker Defendants were aware of the Inflator Defect in the Class Vehicles, which made the vehicles inherently defective and dangerous at the time that they were sold and leased to Plaintiffs and Class Members.

724.   Plaintiffs and Class Members were exposed to the Automaker Defendants' misrepresentations, and they had no way of discerning that the Automaker Defendants' representations were false and misleading or otherwise learning the material facts that the Automaker Defendants had concealed or failed to disclose. Accordingly, Plaintiffs and Class Members reasonably relied on the Automaker Defendants' express warranties when purchasing or leasing their Class Vehicles.

725.   Plaintiffs and Class Members timely provided the Automaker Defendants notice of the issues raised in this count and this Complaint and an opportunity to cure, as alleged in the paragraphs addressing Defendants' notice,

100

above.

726.   Alternatively, Plaintiffs and Class Members were excused from providing the Automaker Defendants with notice and an opportunity to cure the breach, because it would have been futile. As alleged above, the Automaker Defendants knew about the Defective Inflators for years; however, to date, the Automaker Defendants have not instituted a recall or any other repair program with respect to all of the Class Vehicles, or even acknowledged that the Inflator Defect exists in all of the Class Vehicles. Therefore, they have refused to recall or repair defective vehicles. Moreover, to the extent the Automaker Defendants have issued recalls, those recalls are inadequate because, *inter alia*: (a) they are belated because the Automaker Defendants knew about the Defective Inflators for years and did nothing to recall or remedy the serious safety defect; (b) with tens of millions of vehicles impacted in existing and potential future recalls, as a result of the Automaker Defendants' concealment of the Inflator Defect, the recalls cannot be implemented effectively due to supply constraints and resulting delays; (c) the recalls are incomplete, and apply to only a subset of the Class Vehicles.

727.   As a direct and proximate result of the Automaker Defendants' breach of their express warranties, the Class Vehicles were and are defective and the Inflator Defect was not remedied. Therefore, Plaintiff and Class Members have been

damaged, in an amount to be proven at trial, through their overpayment at the time of purchase or lease for the Class Vehicles with an undisclosed safety defect that would not be remedied.

> **b.**   **California Count 2: Breach of Implied Warranty of Merchantability (Cal. Com. Code §§ 2314 and 10212) Against the Automaker Defendants.**

728.   Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

729.   The California Plaintiffs bring this count under California law, individually and on behalf of the other members of the California Subclasses against the Automaker Defendants for their respective Class Vehicles. For the remaining Automaker Defendants, Plaintiffs who purchased or leased their Class Vehicles in states with materially similar laws may represent Subclasses under this count against all other Automaker Defendants.

730.   For purposes of this count, members of the California Subclass shall be referred to as "Class Members."

731.   The Class Vehicles are "goods" under Cal. Com. Code §§ 2105(1) and 10103(a)(8).

732.   Plaintiffs and Class Members are "buyers" and "lessees" of the Class Vehicles under Cal. Com. Code §§ 2103(1)(a) and 10103(a)(14).

733.   The Automaker Defendants are "merchants," "sellers," and "lessors" under Cal. Com. Code §§ 2104(1), 10103(c), and 10103(a)(16).

734.   California law conferred an implied warranty that the Class Vehicles were in merchantable condition and fit for the ordinary purpose for which they were to be used pursuant to Cal. Com. Code §§ 2314 and 10212.

735.   The Class Vehicles are not merchantable, and as such the Automaker Defendants breached their implied warranties, because at the time of sale and all times thereafter:

a.   The Class Vehicles would not pass without objection in the automotive trade given the Inflator Defect;

b.   The Inflator Defect renders the Class Vehicles unsafe to drive and unfit for ordinary purposes;

c.   The Class Vehicles and the airbags therein were inadequately labeled as safe and reliable, and the labeling failed to disclose the Inflator Defect; and

d.   The Class Vehicles do not conform to their labeling, which represents that the vehicles are safe and suitable for their intended use.

736.   Plaintiffs and Class Members timely provided the Automaker Defendants notice of the issues raised in this count and this Complaint and an

opportunity to cure, as alleged in the paragraphs addressing Defendants' notice, above.

737.   Alternatively, Plaintiffs and Class Members were excused from providing the Automaker Defendants with notice and an opportunity to cure the breach because it would have been futile. As alleged above, the Automaker Defendants have long known that the Class Vehicles contained the Defective Inflators, and that the Defective Inflators have caused airbags to malfunction in crashes involving the Class Vehicles; however, to date, the Automaker Defendants have not instituted a recall or any other repair program with respect to all of the Class Vehicles, or even acknowledged that the Inflator Defect exists in all of those Class Vehicles. Moreover, to the extent the Automaker Defendants have issued recalls, those recalls are inadequate because, inter alia: (a) they are belated because the Automaker Defendants knew about the Defective Inflators for years and did nothing to recall or remedy the serious safety defect; (b) with tens of millions of vehicles impacted in existing and potential future recalls, as a result of the Automaker Defendants' concealment of the Inflator Defect, the recalls cannot be implemented effectively due to supply constraints and resulting delays; (c) the recalls are incomplete, and apply to only a subset of the Class Vehicles.

738.   Plaintiffs, individually and on behalf of Class Members, seek all

available monetary damages (including actual, compensatory, and punitive damages), injunctive and equitable relief, and attorneys' fees and costs.

      c.    **California Count 3: Violations of the Song-Beverly Act (Civ. Code § 1790,** *et seq.***) via Breach of Implied Warranty Against the Automaker Defendants.**

739. Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

740. The California Plaintiffs bring this count under California law, individually and on behalf of the other members of the California Subclass against the Automaker Defendants for their respective Class Vehicles. For the remaining Automaker Defendants, Plaintiffs who purchased or leased their Class Vehicles in states with materially similar laws may represent Subclasses under this count against all other Automaker Defendants.

741. For purposes of this count, members of the California Subclass shall be referred to as "Class Members."

742. Cal. Civ. Code § 1792 provides that, unless properly disclaimed, every sale of consumer goods is accompanied by an implied warranty of merchantability. The Automaker Defendants did not at any time properly disclaim the warranty.

743. The Class Vehicles are "consumer goods" under Cal. Civ. Code § 1791(a).

744.   Plaintiffs and Class Members are "buyers" and "lessees" under Cal. Civ. Code §§ 1791(b) and (h). The Automaker Defendants are the "manufacturers," "sellers," and "lessors" of the Class Vehicles under Cal. Civ. Code §§ 1791(i), (j), and (l).

745.   The Automaker Defendants knew of the particular purposes for which the Class Vehicles and the Defective Inflators were intended and impliedly warranted to Plaintiffs and Class Members that the Class Vehicles (all of which were equipped with a Defective Inflator) were "merchantable" under Cal. Civ. Code §§ 1791.1(a) & 1792.

746.   The Class Vehicles are not merchantable, and as such the Automaker Defendants breached their implied warranties, because:

a.   The Class Vehicles would not pass without objection in the automotive trade because they are equipped with Defective Inflators;

b.   The Inflator Defect renders the vehicles unsafe to drive and unfit for ordinary purposes;

c.   The Class Vehicles and the airbags therein were inadequately labeled as safe and reliable, and the labeling failed to disclose the Inflator Defect; and

d.   The Class Vehicles do not conform to their labeling, which represents

that the vehicles are safe and suitable for their intended use.

747.   Plaintiffs and Class Members received the Class Vehicles in a condition which substantially diminishes their value, and which prevents the vehicles from safely and properly functioning. As a result of the Automaker Defendants' failure to comply with their statutory obligations, Plaintiffs are entitled to damages and other legal and equitable relief, including, at their election, the purchase price of their vehicles, or the overpayment or diminution in value of their vehicles.

748.   Plaintiffs, individually and on behalf of Class Members, seek all available monetary damages (including actual, compensatory, and punitive damages), injunctive and equitable relief, and attorneys' fees and costs.

### d.   California Count 4: Violations of California's Consumer Legal Remedies Act (Cal. Civ. Code §§ 1750, *et seq*.) Against All Defendants.[5]

749.   Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

750.   The California Plaintiffs bring this count under California law, individually and on behalf of the other members of the California Subclasses against the Automaker Defendants and Airbag Module Defendants for their respective Class

---

[5] Plaintiffs bring this count against ARC and the Airbag Module Defendants based on their omissions and concealment of material facts only.

Vehicles, and ARC. For the remaining Defendants, Plaintiffs who purchased or leased their Class Vehicles in states with materially similar laws may represent Subclasses under this count against all other Defendants, and ARC.

751.   For purposes of this count, members of the California Subclass shall be referred to as "Class Members."

752.   For purposes of this count, ARC, the Automaker Defendants, and the Airbag Module Defendants shall be referred to as "Defendants."

753.   Defendants are "persons" under Cal. Civ. Code § 1761(c).

754.   Plaintiffs and Class Members are "consumers" under Cal. Civ. Code § 1761(d) because they purchased the Class Vehicles primarily for personal, family, or household use.

755.   The purchase of the Class Vehicles by Plaintiffs and Class Members constitute "transactions" within the meaning of Cal. Civ. Code § 1761(e).

756.   The Class Vehicles are "goods" under Cal. Civ. Code § 1761(a).

757.   Defendants' violations of the CLRA occurred repeatedly in their trade or practice—including the design, manufacture, distribution, marketing, sale, and lease of the Defective Inflators and the Class Vehicles.

758.   Defendants, through their agents, employees, and/or subsidiaries, violated the CLRA by knowingly and intentionally misrepresenting, omitting,

concealing, and/or failing to disclose material facts regarding the reliability, safety, and performance of the Class Vehicles and the Defective Inflators, as detailed above.

759.   Defendants had an ongoing duty to Plaintiffs and Class Members to refrain from unfair or deceptive practices under the CLRA in the course of their business. Specifically, Defendants owed Plaintiffs and Class Members a duty to disclose all the material facts concerning the Defective Inflators in the Class Vehicles because:

a.   Given the Automaker Defendants' role in the design, manufacture, testing, and sale of Class Vehicles and Defective Inflators, and their experience and knowledge as experts and long-time veterans of the automotive industry, they, along with ARC and the Airbag Module Defendants, possessed exclusive access to and were in a superior position to know the true facts about the Defective Inflators;

b.   Given ARC's design, development, testing and manufacture of the Defective Inflators and its experience and knowledge as experts and long-time veterans of the automotive industry, it, along with the Automaker Defendants and the Airbag Module Defendants, possessed exclusive access to and was in a superior position to know the true facts about the Defective Inflators;

109

c.  Given the Airbag Module Defendants' role in the design, manufacture, and testing of the airbag modules with the Defective Inflators installed in them, and their experience and knowledge as experts and long-time veterans of the automotive industry, they, along with ARC and the Automaker Defendants, possessed exclusive access to and were in a superior position to know the true facts about the Defective Inflators;

d.  Given the Inflator Defect's hidden and technical nature, Plaintiffs and Class Members lack the sophisticated expertise in vehicle components and technology that would be necessary to discover the Inflator Defect on their own;

e.  Defendants knew that the Inflator Defect gave rise to serious safety concerns for the consumers who purchased and leased the Class Vehicles;

f.  The Inflator Defect poses a severe risk of harm in that, among other things, the metal shrapnel can puncture and stab the occupants, causing severe and potentially fatal injuries;

g.  Defendants knew about and investigated the Inflator Defect, but then did not notify consumers about it, disclose the Inflator Defect to NHTSA, and the Automaker Defendants did not launch a

110

comprehensive recall for all Class Vehicles, all of which individually and together deprived Plaintiffs of an opportunity that otherwise could have led them to discover the truth about the Inflator Defect in their Class Vehicles; and

h.   The Automaker Defendants made, helped to make, or conspired to make incomplete representations about the safety and reliability of the Class Vehicles and their airbags, while purposefully withholding material facts about a known safety defect. Because they volunteered to provide information about the Class Vehicles that they marketed and offered for sale and lease to consumers, the Automaker Defendants had the duty to disclose the whole truth.

760.   By misrepresenting the Class Vehicles as safe and reliable and the airbags installed in them as properly functioning and free from defects, and/or by failing to disclose and actively concealing the dangers and risk posed by the Inflator Defect to both consumers and NHTSA, Defendants engaged in one or more of the following unfair or deceptive business practices as defined in Cal. Civ. Code § 1770(a):

a.   Representing that the Class Vehicles and/or the Defective Inflators had a characteristic that they did not actually have—*i.e.*, that the vehicles

111

were safe and suitable for use on the roadway, when, in fact, they were not because their airbag inflators were defectively designed such that they had an unreasonably dangerous propensity to rupture, causing severe and fatal injuries;

b.   Representing that the Class Vehicles and the Defective Inflators installed in them were of a particular quality, grade, or standard when, in fact, they were not of that quality, grade, or standard;

c.   Concealing and failing to disclose that the Class Vehicles' airbag inflators were inherently defective, defectively designed, and not suitable for their intended use despite advertising them as safe and suitable for their intended function; and

d.   Failing to market, distribute, sell, and lease the Class Vehicles equipped with Defective Inflators in accordance with Defendants' previous representations—i.e., that the Class Vehicles were safe and suitable for their intended use, when, in fact, they were not because of the Inflator Defect.

Cal. Civ. Code §§ 1770(a)(5), (7), (9), and (16).

761. Defendants' unfair or deceptive acts or practices, including their misrepresentations, concealments, omissions, and/or suppressions of material facts,

112

were designed to mislead and had a tendency or capacity to mislead and create a false impression in consumers that the Class Vehicles had properly-functioning and reliable airbags. Indeed, those misrepresentations, concealments, omissions, and suppressions of material facts did in fact deceive reasonable consumers, including Plaintiffs and Class Members, about the true safety and reliability of the Class Vehicles and/or the Defective Inflators installed in them, the quality of the Class Vehicles, and the true value of the Class Vehicles.

762.   Defendants intended for Plaintiffs and Class Members to rely on their misrepresentations, omissions, and concealment—which they did by purchasing and leasing the Class Vehicles at the prices they paid believing that their vehicles would not have an Inflator Defect that would affect the quality, reliability, and safety of the Class Vehicles and their airbags.

763. Defendants' misrepresentations, concealments, omissions, and suppressions of material facts regarding the Inflator Defect and true characteristics of the Class Vehicles were material to the decisions of Plaintiffs and Class Members to purchase and lease those vehicles, as Defendants intended. Plaintiffs and Class Members were exposed to those misrepresentations, concealments, omissions, and suppressions of material facts, and relied on Defendants' misrepresentations that the Class Vehicles and their airbags were safe and reliable in deciding to purchase and

113

lease the Class Vehicles.

764.   Plaintiffs' and Class Members' reliance was reasonable, as they had no way of discerning that Defendants' representations were false and misleading, or otherwise learning the facts that Defendants had concealed or failed to disclose. Plaintiffs and Class Members did not, and could not, unravel Defendants' deception on their own.

765.   Had they known the truth about the Inflator Defect, Plaintiffs and Class Members would not have purchased or leased the Class Vehicles, or would have paid significantly less for them.

766.   As a direct and proximate result of Defendants' deceptive practices, Plaintiffs and Class Members have sustained economic injury and loss—either by purchasing a vehicle they otherwise would not have purchased or paying more than they otherwise would have as a result of Defendants' actions and omissions alleged above—that first occurred at the time each Class Vehicle was purchased or leased.

767.   Defendants' violations present a continuing risk to Plaintiffs and Class Members, as well as to the general public, because the Class Vehicles remain unsafe due to the Defective Inflators therein. Defendants' unlawful acts and practices complained of herein affect the public interest.

768.   Plaintiffs and Class Members provided Defendants notice of the issues

raised in this count and this Complaint and an opportunity to cure pursuant to Cal. Civ. Code § 1782, as alleged in the section addressing Defendants' notice above. Because the ARC, Audi, Ford and Joyson Safety System Defendants failed to adequately remedy their unlawful conduct within the requisite time period, the California Plaintiffs seek all damages and relief to which Plaintiffs and Class Members are entitled.

769.   With respect to the remaining Defendants, Plaintiffs' and Class Members' claims against them under this count right now are for injunctive relief only. If these Defendants fail to correct or agree to correct the actions described in the notice letter, Plaintiffs will amend this Complaint to include all compensatory and monetary damages against them to which Plaintiffs and Class Members are entitled.

770.   Pursuant to Cal. Civ. Code § 1780(a), Plaintiffs and Class Members seek an order enjoining the above unfair or deceptive acts or practices and awarding actual damages, treble damages, restitution, attorneys' fees, and any other just and proper relief available under the CLRA against all Defendants except the Autoliv, Toyoda Gosei, BMW Group, FCA, GM LLC, Hyundai-Kia, Porsche, Volkswagen, and ZF Defendants. With respect to those Defendants, Plaintiffs and Class Members seek an order enjoining their unfair or deceptive acts or practices, and any other just

115

and proper equitable relief available under the CLRA.

> **e.    California Count 5: False Advertising Under the California False Advertising Law (Cal. Bus. & Prof. Code § 17500, *et seq*.) Against the Automaker Defendants.**

771.    Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

772.    The California Plaintiffs bring this count under California law, individually and on behalf of the other members of the California Subclasses against the Automaker Defendants for their respective Class Vehicles. For the remaining Automaker Defendants, Plaintiffs who purchased or leased their Class Vehicles in states with materially similar laws may represent Subclasses under this count against all other Automaker Defendants.

773.    For purposes of this count, members of the California Subclass shall be referred to as "Class Members."

774.    The Automaker Defendants, Plaintiffs, and Class Members are "persons" within the meaning of Cal. Bus. & Prof. Code § 17506.

775.    The California False Advertising Law ("California FAL") prohibits false advertising. California Bus. & Prof. Code § 17500.

776.    In the course of their business, the Automaker Defendants, through their agents, employees, and/or subsidiaries, violated the California FAL by

knowingly and intentionally misrepresenting, omitting, concealing, and/or failing to disclose material facts regarding the quality, reliability, and safety of the Class Vehicles and the Inflator Defect, as detailed above.

777. The Automaker Defendants had an ongoing duty to Plaintiffs and Class Members to refrain from unfair or deceptive practices under the California FAL in the course of their business. Specifically, they owed Plaintiffs and Class Members a duty to disclose all the material facts concerning the Inflator Defect in the Class Vehicles because:

    a.    Given their role in the design, manufacture and sale of the Defective Inflators and Class Vehicles, and their experience and knowledge as experts and long-time veterans of the automotive industry, the Automaker Defendants possessed exclusive access to and were in a superior position to know the true facts about the Defective Inflators;

    b.    Given the Inflator Defect's hidden and technical nature, Plaintiffs and Class Members lack the sophisticated expertise in vehicle components and technology that would be necessary to discover the Inflator Defect on their own;

    c.    The Automaker Defendants knew that the Inflator Defect gave rise to serious safety concerns for the consumers who purchased and leased

the Class Vehicles;

d.    The Inflator Defect poses a severe risk of harm in that, among other things, the metal shrapnel can puncture and stab the occupants, causing severe and potentially fatal injuries;

e.    The Automaker Defendants knew about and investigated the Inflator Defect, but then did not notify consumers about it, disclose the Inflator Defect to NHTSA, and the Automaker Defendants did not launch a comprehensive recall for all Class Vehicles, all of which individually and together deprived Plaintiffs of an opportunity that otherwise could have led them to discover the truth about the Inflator Defect in their Class Vehicles; and

f.    The Automaker Defendants made, helped to make, or conspired to make incomplete representations about the safety and reliability of the Class Vehicles and their airbags, while purposefully withholding material facts about a known safety defect. Because they volunteered to provide information about the Class Vehicles that they marketed and offered for sale and lease to consumers, the Automaker Defendants had the duty to disclose the whole truth.

778.  By misrepresenting the Class Vehicles as safe and reliable and free

from defects, and by failing to disclose and actively concealing the dangers and risk posed by the Inflator Defect to consumers, the Automaker Defendants engaged in untrue and misleading advertising prohibited by California Bus. & Prof. Code § 17500.

779.   The Automaker Defendants made or caused to be made and disseminated throughout California advertising, marketing, labeling, and other publications containing numerous statements that were untrue or misleading, and which were known, or which by the exercise of reasonable care they should have been known to be untrue and misleading to consumers, including Plaintiffs and Class Members.

780.   The Automaker Defendants' unfair or deceptive acts and practices, including their misrepresentations, concealments, omissions, and suppressions of material facts, were designed to mislead and had a tendency or capacity to mislead and create a false impression in consumers that the Class Vehicles were safe, secure, and reliable, and that they did not contain the Inflator Defect. Indeed, those misrepresentations, concealments, omissions, and suppressions of material facts did in fact deceive reasonable consumers, including Plaintiffs and Class Members, about the true safety and reliability of the Class Vehicles, the quality of the Class Vehicles and their brands, and the true value of the Class Vehicles.

781.   Defendants intended for Plaintiffs and Class Members to rely on their misrepresentations, omissions, and concealment—which they did by purchasing and leasing the Class Vehicles at the prices they paid believing that their vehicles would not have an Inflator Defect that would affect the quality, reliability, and safety of the Class Vehicles and their airbags.

782.   The Automaker Defendants' misrepresentations, omissions, and concealment of material facts regarding the Inflator Defect and true characteristics of the Class Vehicles were material to the decisions of Plaintiffs and Class Members to purchase and lease those vehicles, as the Automaker Defendants intended. Plaintiffs and Class Members were exposed to those misrepresentations, concealments, omissions, and suppressions of material facts, and relied on the Automaker Defendants' misrepresentations and omissions that the Class Vehicles were safe, secure, and reliable in deciding to purchase and lease those vehicles.

783.   Plaintiffs' and Class Members' reliance was reasonable, as they had no way of discerning that those representations were false and misleading, or otherwise learning the facts that the Automaker Defendants had concealed or failed to disclose. Plaintiffs and Class Members did not, and could not, unravel the Automaker Defendants' deception on their own.

784.   Had Plaintiffs and Class Members known the truth about the Inflator

Defect, they would not have purchased or leased the Class Vehicles, or would have paid significantly less for them.

785.   Plaintiffs and Class Members suffered ascertainable losses and actual damages as a direct and proximate result of the Automaker Defendants' concealment, misrepresentations, and/or failure to disclose material information.

786.   The Automaker Defendants' violations present a continuing risk to Plaintiffs and Class Members, as well as to the general public, because the Class Vehicles remain unsafe due to the Inflator Defect. The unlawful acts and practices complained of herein affect the public interest.

787.   Plaintiffs and Class Members seek an order enjoining the Automaker Defendants' false advertising, any such orders or judgments as may be necessary to restore to Plaintiffs and Class Members any money acquired by unfair competition, including restitution and/or restitutionary disgorgement, and any other just and proper relief available under the false advertising provisions of the California FAL.

788.   Plaintiffs plead this claim separately as well as in the alternative to their claims for damages under Fed. R. Civ. P. 8(a)(3), because if the Court dismisses Plaintiffs' claims for damages or enters judgment on them in favor of the Automaker Defendants, Plaintiffs will have no adequate legal remedy.

f.   **California Count 6: Violations of California's Unfair Competition Law (Cal. Bus. & Prof. Code § 17200, *et* seq.) Against All Defendants.**[6]

789.   Plaintiffs reallege and incorporate by reference all allegations in Volume 1 of the Consolidated Class Action Complaint as though fully set forth herein.

790.   The California Plaintiffs bring this count under California law, individually and on behalf of the other members of the California Subclasses against the Automaker Defendants and the Airbag Module Defendants, and ARC. For the remaining Defendants, Plaintiffs who purchased or leased their Class Vehicles in states with materially similar laws may represent Subclasses under this count against all other Defendants, and ARC.

791.   For purposes of this count, members of the California Subclass shall be referred to as "Class Members."

792.   For purposes of this count, ARC, the Automaker Defendants, and the Airbag Module Defendants shall be referred to as "Defendants."

793.   California's Unfair Competition Law ("UCL") prohibits "unfair business competition," including any "unlawful, unfair or fraudulent" act or practice,

---

[6] Plaintiffs bring this count against ARC and the Airbag Module Defendants based on their omissions and concealment of material facts only.

122

as well as any "unfair, deceptive, untrue or misleading" advertising. Cal. Bus. & Prof. Code § 17200.

794.   Defendants committed an unlawful business act or practice in violation of §17200 by violating the California FAL and CLRA, California Commercial Code, and Song-Beverly Consumer Warranty Act, and other laws alleged herein.

795.   Defendants committed fraudulent acts or practices in violation of §17200. Specifically, as alleged in detail above, Defendants designed, developed, tested, manufactured, and/or installed Defective Inflators into the Class Vehicles, knowingly and intentionally marketed and sold those Class Vehicles with the Defective Inflators installed while misrepresenting the safety of the Class Vehicles, and/or and omitting, and failing to disclose material facts regarding the existence, nature, and scope of the Inflator Defect in the Class Vehicles from both NHTSA and consumers alike, including the Plaintiffs and Class Members, while under a duty to disclose those material facts.

796.   Defendants' unfair or deceptive acts or practices were designed to mislead and had a tendency or capacity to mislead and create a false impression in consumers that the Class Vehicles had properly-functioning and reliable airbags, and that the Class Vehicles did not contain Defective Inflators. Indeed, those misrepresentations, concealments, omissions, and suppressions of material facts did

123

in fact deceive reasonable consumers, including Plaintiffs and Class Members, about the true safety and reliability of the Class Vehicles, the Defective Inflators installed in them, the quality of the Class Vehicles, and the true value of the Class Vehicles.

797. Defendants' misrepresentations, concealments, omissions, and suppressions of material facts regarding the Inflator Defect and true characteristics of the Class Vehicles were material to the decisions of Plaintiffs and Class Members to purchase and lease those vehicles, as Defendants intended. Plaintiffs and Class Members were exposed to those misrepresentations, concealments, omissions, and suppressions of material facts, and relied on Defendants' misrepresentations that the Class Vehicles and their airbags were safe and reliable in deciding to purchase and lease the Class Vehicles.

798. Plaintiffs' and Class Members' reliance was reasonable, as they had no way of discerning Defendants' representations were false and misleading, or otherwise learning that the Class Vehicles contained the Inflator Defect, as alleged above. Plaintiffs and Class Members did not, and could not, unravel Defendants' deception on their own.

799. Had they known the truth about the Inflator Defect, Plaintiffs and Class Members would not have purchased or leased the Class Vehicles, or would have paid significantly less for them.

800.   Additionally, Defendants committed unfair business acts and practices in violation of § 17200 when they concealed the existence and nature of the Inflator Defect and the dangers and risks posed by the Class Vehicles and the Defective Inflators installed in them from consumers and NHTSA while misrepresenting or conspiring to misrepresent that the Class Vehicles and the Defective Inflators installed in them were reliable and safe when, in fact, they are not. These acts and practices offend established public policy and the harm they cause to consumers greatly outweighs any benefits associated with those practices. Defendants' conduct has also impaired competition within the automotive vehicles market and has prevented Plaintiffs and Class Members from making fully informed decisions about whether to purchase or lease the Class Vehicles and/or the price to be paid to purchase or lease them.

801.   Plaintiffs and Class Members suffered ascertainable losses as a direct and proximate result of Defendants' unlawful, fraudulent, and unfair business acts and practices.

802.   Defendants' acts and practices described above present a continuing risk to Plaintiffs and Class Members, as well as to the general public, because the Class Vehicles remain unsafe due to the Defective Inflators therein. Defendants' unlawful acts and practices complained of herein affect the public interest.

803.   Pursuant to Cal. Bus. & Prof. Code § 17200, Plaintiffs and Class Members seek an order enjoining Defendants' unfair and/or deceptive acts or practices, any such orders or judgments as may be necessary to restore to them any money acquired by unfair competition, including restitution and/or restitutionary disgorgement, as provided in Cal. Bus. & Prof. Code §§ 17203, and any other just and proper relief available under the California UCL.

804.   Plaintiffs plead this claim separately as well as in the alternative to their claims for damages under Fed. R. Civ. P. 8(a)(3), because if Plaintiffs' claims for damages are dismissed or judgment is entered on them in favor of Defendants, Plaintiffs will have no adequate legal remedy.

### g.   California Count 7: Fraud by Omission and Concealment Against All Defendants.

805.   Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

806.   The California Plaintiffs bring this count under California law, individually and on behalf of the other members of the California Subclasses against the Automaker Defendants and Airbag Module Defendants for their respective Class Vehicles, and ARC. For the remaining Defendants, Plaintiffs who purchased or leased their Class Vehicles in states with materially similar laws may represent

Subclasses under this count against all other Defendants, and ARC.

807.    For purposes of this count, members of the California Subclass shall be referred to as "Class Members."

808.    For purposes of this count, ARC, the Automaker Defendants, and the Airbag Module Defendants shall be referred to as "Defendants."

809.    Defendants are liable for both fraudulent concealment and non-disclosure. *See, e.g.*, Restatement (Second) of Torts §§ 550-51 (1977).

810.    Defendants owed Plaintiffs and Class Members a duty to disclose all the material facts concerning the Defective Inflators in the Class Vehicles because:

a.    Given the Automaker Defendants' role in the design, manufacture, testing, and sale of Class Vehicles and Defective Inflators, and their experience and knowledge as experts and long-time veterans of the automotive industry, they, along with ARC and the Airbag Module Defendants, possessed exclusive access to and were in a superior position to know the true facts about the Defective Inflators;

b.    Given ARC's design, development, testing and manufacture of the Defective Inflators and its experience and knowledge as experts and long-time veterans of the automotive industry, it, along with the Automaker Defendants and the Airbag Module Defendants, possessed

127

exclusive access to and was in a superior position to know the true facts about the Defective Inflators;

c. Given the Airbag Module Defendants' role in the design, manufacture, and testing of the airbag modules with the Defective Inflators installed in them, and their experience and knowledge as experts and long-time veterans of the automotive industry, they, along with ARC and the Automaker Defendants, possessed exclusive access to and were in a superior position to know the true facts about the Defective Inflators;

d. Given the Inflator Defect's hidden and technical nature, Plaintiffs and Class Members lack the sophisticated expertise in vehicle components and technology that would be necessary to discover the Inflator Defect on their own;

e. Defendants knew that the Inflator Defect gave rise to serious safety concerns for the consumers who purchased and leased the Class Vehicles;

f. The Inflator Defect poses a severe risk of harm in that, among other things, the metal shrapnel can puncture and stab the occupants, causing severe and potentially fatal injuries;

g. Defendants knew about and investigated the Inflator Defect, but then

did not notify consumers about it, disclose the Inflator Defect to NHTSA, and the Automaker Defendants did not launch a comprehensive recall for all Class Vehicles, all of which individually and together deprived Plaintiffs of an opportunity that otherwise could have led them to discover the truth about the Inflator Defect in their Class Vehicles; and

h.    The Automaker Defendants made, helped to make, or conspired to make incomplete representations about the safety and reliability of the Class Vehicles and their airbags, while purposefully withholding material facts about a known safety defect. Because they volunteered to provide information about the Class Vehicles that they marketed and offered for sale and lease to consumers, the Automaker Defendants had the duty to disclose the whole truth.

811.   In breach of their duties, Defendants failed to disclose the Inflator Defect and that the Class Vehicles' airbags were not safe and reliable to Plaintiffs and Class Members in connection with the sale of the Class Vehicles.

812.   The Inflator Defect within the Class Vehicles is material to the sale of the Class Vehicles because a reasonable person would find it important in purchasing, leasing, or retaining a new or used motor vehicle and because it directly

129

impacts the value of the Class Vehicles purchased or leased by Plaintiffs and Class Members.

813.   Defendants intended for Plaintiffs and Class Members to rely on their omissions and concealment—which they did by purchasing and leasing the Class Vehicles at the prices they paid believing that their vehicles would not have an Inflator Defect that would affect the quality, reliability, and safety of the Class Vehicles and their airbags.

814.   Plaintiffs' and Class Members' reliance was reasonable because a reasonable consumer would not have expected that the Class Vehicles contained a safety defect that poses such a serious risk. They had no way of learning the facts that Defendants had concealed or failed to disclose. Plaintiffs and Class Members did not, and could not, unravel Defendants' deception on their own.

815.   Defendants actively concealed and suppressed these material facts, in whole or in part, to maintain a market for the Class Vehicles, to protect profits, and to avoid costly recalls that would expose them to liability for those expenses and harm the commercial reputations of Defendants and their products. They did so at the expense of Plaintiffs and Class Members.

816.   If Defendants had fully and adequately disclosed the Inflator Defect to consumers, Plaintiffs and Class Members would have seen such a disclosure.

817.   Through their omissions and concealment with respect to the Inflator Defect within the Class Vehicles, Defendants intended to induce, and did induce, Plaintiffs and Class Members to either purchase a Class Vehicle that they otherwise would not have purchased, or pay more for a Class Vehicle than they otherwise would have paid.

818.   Had Plaintiffs and Class Members known of the Inflator Defect within the Class Vehicles, they would not have purchased the Class Vehicles or would have paid less for them.

819.   As a direct and proximate result of Defendants' omissions and concealment, Plaintiffs and other Class Members either overpaid for the Class Vehicles or would not have purchased the Class Vehicles at all if the Inflator Defect had been disclosed to them. Accordingly, Defendants are liable to Plaintiffs and Class Members for their damages in an amount to be proven at trial.

820.   Defendants' acts were done maliciously, oppressively, deliberately, with intent to defraud; in reckless disregard of the Plaintiffs' and Class Members' rights and well-being; and to enrich themselves. Defendants' misconduct warrants an assessment of punitive damages, as permitted by law, in an amount sufficient to deter such conduct in the future, which amount shall be determined according to proof at trial.

### h. California Count 8: Unjust Enrichment Against the Automaker Defendants.

821. Plaintiffs reallege and incorporate by reference all allegations in Volume 1 of the Consolidated Class Action Complaint as though fully set forth herein.

822. The California Plaintiffs bring this count under California law, individually and on behalf of the other members of the California Subclasses against the Automaker Defendants for their respective Class Vehicles. For the remaining Automaker Defendants, Plaintiffs who purchased or leased their Class Vehicles in states with materially similar laws may represent Subclasses under this count against all other Automaker Defendants.

823. For purposes of this count, members of the California Subclass shall be referred to as "Class Members."

824. When they purchased and leased the Class Vehicles, Plaintiffs and Class Members conferred tangible and material economic benefits upon the Automaker Defendants, who readily accepted and retained these benefits.

825. Plaintiffs and Class Members would not have purchased or leased their Class Vehicles, or would have paid less for them, had they known of the Inflator Defect at the time of purchase or lease. Therefore, the Automaker Defendants profited from the sale and lease of the Class Vehicles to the detriment and expense

of Plaintiffs and Class Members.

826.    The Automaker Defendants appreciated these economic benefits. These benefits were the expected result of the Automaker Defendants acting in their pecuniary interest at the expense of their customers. They knew of these benefits because they were aware of the Inflator Defect, yet they failed to disclose this knowledge and misled the Plaintiffs and Class Members regarding the nature and quality of the Class Vehicles while profiting from this deception.

827.    It would be unjust, inequitable, and unconscionable for the Automaker Defendants to retain these benefits, including because they were procured as a result of their wrongful conduct alleged above.

828.    Plaintiffs and Class Members are entitled to restitution of the benefits the Automaker Defendants unjustly retained and/or any amounts necessary to return Plaintiffs and Class Members to the position they occupied prior to dealing with those Defendants, with such amounts to be determined at trial.

829.    Plaintiffs plead this claim separately as well as in the alternative to their claims for damages under Fed. R. Civ. P. 8(a)(3), because if the Court dismisses Plaintiffs' claims for damages or enters judgment on them in favor of the Automaker Defendants, Plaintiffs will have no adequate legal remedy.

6.     **Colorado**

a.     **Colorado Count 1: Breach of Express Warranty (Colo. Rev. Stat. §§ 4-2-313 and 4-2.5-210) Against the Automaker Defendants.**

830.   Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

831.   The Colorado Plaintiffs bring this count under Colorado law, individually and on behalf of the other members of the Colorado Subclasses against the Automaker Defendants for their respective Class Vehicles. For the remaining Automaker Defendants, Plaintiffs who purchased or leased their Class Vehicles in states with materially similar laws may represent Subclasses under this count against all other Automaker Defendants.

832.   For purposes of this count, members of the Colorado Subclass shall be referred to as "Class Members."

833.   The Class Vehicles are "goods" under Colo. Rev. Stat. §§ 4-2-105(1) and 4-2.5-103(1)(h).

834.   The Automaker Defendants are "merchants," "sellers," and "lessors," of the Class Vehicles under Colo. Rev. Stat. §§ 4-2-103(1)(d) and 4-2-104(1), § 4-2.5-103(1)(p), respectively.

835.   Plaintiffs and Class Members who purchased and leased the Class

Vehicles in California are "buyers" and "lessees" under Color. Rev. Stat. §§ 4-2-103(1)(a) and 4-25.-103(1)(n).

836.    The Automaker Defendants issued an express written warranty for each defective Class Vehicle they sold, including that:

a.    The Class Vehicles would be free of defects in materials and workmanship at the time of sale; and

b.    The Class Vehicles were safe and reliable, and their airbags would function properly in the event of a crash.

837.    The warranties listed above formed the basis of the bargain with regard to Plaintiffs' and Class Members' purchase and lease of the Class Vehicles.

838.    The Automaker Defendants knowingly breached their warranty for the Class Vehicles because:

a.    The airbag inflators have latent defects which have a dangerous propensity to cause the inflators to rupture and eject metal shrapnel, subjecting Plaintiffs and Class Members to the risk of loss and injury; and

b.    The Automaker Defendants denied, concealed, and misrepresented the Inflator Defect, in the process refusing to pay for or provide in a reasonably timely fashion the needed repairs and replacements for

135

Plaintiffs and Class Members.

839.   The Automaker Defendants knew or should have known that the warranties were false and/or misleading. Specifically, the Automaker Defendants were aware of the Inflator Defect in the Class Vehicles, which made the vehicles inherently defective and dangerous at the time that they were sold and leased to Plaintiffs and Class Members.

840.   Plaintiffs and Class Members were exposed to the Automaker Defendants' misrepresentations, and they had no way of discerning that the Automaker Defendants' representations were false and misleading or otherwise learning the material facts that the Automaker Defendants had concealed or failed to disclose. Accordingly, Plaintiffs and Class Members reasonably relied on the Automaker Defendants' express warranties when purchasing or leasing their Class Vehicles.

841.   Plaintiffs and Class Members timely provided the Automaker Defendants notice of the issues raised in this count and this Complaint and an opportunity to cure, as alleged in the paragraphs addressing Defendants' notice, above.

842.   Alternatively, Plaintiffs and Class Members were excused from providing the Automaker Defendants with notice and an opportunity to cure the

136

breach, because it would have been futile. As alleged above, the Automaker Defendants knew about the Defective Inflators for years; however, to date, the Automaker Defendants have not instituted a recall or any other repair program with respect to all of the Class Vehicles, or even acknowledged that the Inflator Defect exists in all of the Class Vehicles. Therefore, they have refused to recall or repair defective vehicles. Moreover, to the extent the Automaker Defendants have issued recalls, those recalls are inadequate because, *inter alia*: (a) they are belated because the Automaker Defendants knew about the Defective Inflators for years and did nothing to recall or remedy the serious safety defect; (b) with tens of millions of vehicles impacted in existing and potential future recalls, as a result of the Automaker Defendants' concealment of the Inflator Defect, the recalls cannot be implemented effectively due to supply constraints and resulting delays; (c) the recalls are incomplete, and apply to only a subset of the Class Vehicles.

843.   As a direct and proximate result of the Automaker Defendants' breach of their express warranties, the Class Vehicles were and are defective and the Inflator Defect was not remedied. Therefore, Plaintiff and Class Members have been damaged, in an amount to be proven at trial, through their overpayment at the time of purchase or lease for the Class Vehicles with an undisclosed safety defect that would not be remedied.

137

>    **b.    Colorado Count 2: Breach of Implied Warranty of Merchantability (Colo. Rev. Stat. §§ 4-2-314 and 4-2.5-212) Against the Automaker Defendants.**

844.   Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

845.   The Colorado Plaintiffs bring this count under Colorado law, individually and on behalf of the other members of the Colorado Subclasses against the Automaker Defendants for their respective Class Vehicles. For the remaining Automaker Defendants, Plaintiffs who purchased or leased their Class Vehicles in states with materially similar laws may represent Subclasses under this count against all other Automaker Defendants.

846.   For purposes of this count, members of the California Subclass shall be referred to as "Class Members."

847.   The Class Vehicles are "goods" under Colo. Rev. Stat. §§ 4-2-105(1) and 4-2.5-103(1)(h).

848.   The Automaker Defendants are "merchants," "sellers," and "lessors," of the Class Vehicles under Colo. Rev. Stat. §§ 4-2-103(1)(d) and 4-2-104(1), § 4-2.5-103(1)(p), respectively.

849.   Plaintiffs and Class Members who purchased and leased the Class Vehicles in California are "buyers" and "lessees" under Color. Rev. Stat. §§ 4-2-

103(1)(a) and 4-25.-103(1)(n).

850.   California law conferred an implied warranty that the Class Vehicles were in merchantable condition and fit for the ordinary purpose for which they were to be used pursuant to Colo. Rev. Stat. §§ 4-2-314 and 4-2.5-212.

851.   The Class Vehicles are not merchantable, and as such the Automaker Defendants breached their implied warranties, because at the time of sale and all times thereafter:

    a.    The Class Vehicles would not pass without objection in the automotive trade given the Inflator Defect;

    b.    The Inflator Defect renders the Class Vehicles unsafe to drive and unfit for ordinary purposes;

    c.    The Class Vehicles and the airbags therein were inadequately labeled as safe and reliable, and the labeling failed to disclose the Inflator Defect; and

    d.    The Class Vehicles do not conform to their labeling, which represents that the vehicles are safe and suitable for their intended use.

852.   Plaintiffs and Class Members timely provided the Automaker Defendants notice of the issues raised in this count and this Complaint and an opportunity to cure, as alleged in the paragraphs addressing Defendants' notice,

above.

853.   Alternatively, Plaintiffs and Class Members were excused from providing the Automaker Defendants with notice and an opportunity to cure the breach because it would have been futile. As alleged above, the Automaker Defendants have long known that the Class Vehicles contained the Defective Inflators, and that the Defective Inflators have caused airbags to malfunction in crashes involving the Class Vehicles; however, to date, the Automaker Defendants have not instituted a recall or any other repair program with respect to all of the Class Vehicles, or even acknowledged that the Inflator Defect exists in all of those Class Vehicles. Moreover, to the extent the Automaker Defendants have issued recalls, those recalls are inadequate because, inter alia: (a) they are belated because the Automaker Defendants knew about the Defective Inflators for years and did nothing to recall or remedy the serious safety defect; (b) with tens of millions of vehicles impacted in existing and potential future recalls, as a result of the Automaker Defendants' concealment of the Inflator Defect, the recalls cannot be implemented effectively due to supply constraints and resulting delays; (c) the recalls are incomplete, and apply to only a subset of the Class Vehicles.

854.   Plaintiffs, individually and on behalf of Class Members, seek all available monetary damages (including actual, compensatory, and punitive

damages), injunctive and equitable relief, and attorneys' fees and costs.

      c.    **Colorado Count 3: Violations of Colorado Consumer Protection Act (Colo. Rev. Stat. § 6-1-101, *et seq*.) Against All Defendants.[7]**

855. Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

856. The Colorado Plaintiffs bring this count under Colorado law, individually and on behalf of the other members of the Colorado Subclasses against the Automaker Defendants and Airbag Module Defendants, and ARC. For the remaining Defendants, Plaintiffs who purchased or leased their Class Vehicles in states with materially similar laws may represent Subclasses under this count against all other Defendants, and ARC.

857. For purposes of this count, members of the Colorado Subclass shall be referred to as "Class Members."

858. For purposes of this count, ARC, the Automaker Defendants, and the Airbag Module Defendants shall be referred to as "Defendants."

859. Defendants, Plaintiffs, and Class Members are "persons" under Colo. Rev. Stat. § 6-1-102(6).

---

[7] Plaintiffs bring this count against ARC and the Airbag Module Defendants based on their omissions and concealment of material facts only.

860.   The Class Vehicles are "Motor vehicles" within the meaning of Colo. Rev. Stat. § 6-1-102(5.5).

861.   The Colorado Consumer Protection Act ("Colorado CPA") prohibits unfair, unconscionable, and deceptive acts or practices in the course of the person's business, vocation, or occupation. Colo. Rev. Stat. § 6-1-105.

862.   Defendants' violations of the Colorado CPA occurred repeatedly in their trade or practice—including the design, manufacture, distribution, marketing, sale, and lease of the Defective Inflators and the Class Vehicles.

863.   Defendants, through their agents, employees, and/or subsidiaries, violated the Colorado CPA by knowingly and intentionally misrepresenting, omitting, concealing, and/or failing to disclose material facts regarding the reliability, safety, and performance of the Class Vehicles and the Defective Inflators, as detailed above.

864.   Defendants had an ongoing duty to Plaintiffs and Class Members to refrain from unfair or deceptive practices under the Colorado CPA in the course of their business. Specifically, Defendants owed Plaintiffs and Class Members a duty to disclose all the material facts concerning the Defective Inflators in the Class Vehicles because:

a.      Given the Automaker Defendants' role in the design, manufacture,

testing, and sale of Class Vehicles and Defective Inflators, and their experience and knowledge as experts and long-time veterans of the automotive industry, they, along with ARC and the Airbag Module Defendants, possessed exclusive access to and were in a superior position to know the true facts about the Defective Inflators;

b.  Given ARC's design, development, testing and manufacture of the Defective Inflators and its experience and knowledge as experts and long-time veterans of the automotive industry, it, along with the Automaker Defendants and the Airbag Module Defendants, possessed exclusive access to and was in a superior position to know the true facts about the Defective Inflators;

c.  Given the Airbag Module Defendants' role in the design, manufacture, and testing of the airbag modules with the Defective Inflators installed in them, and their experience and knowledge as experts and long-time veterans of the automotive industry, they, along with ARC and the Automaker Defendants, possessed exclusive access to and were in a superior position to know the true facts about the Defective Inflators;

d.  Given the Inflator Defect's hidden and technical nature, Plaintiffs and Class Members lack the sophisticated expertise in vehicle components

143

and technology that would be necessary to discover the Inflator Defect on their own;

e.    Defendants knew that the Inflator Defect gave rise to serious safety concerns for the consumers who purchased and leased the Class Vehicles;

f.    The Inflator Defect poses a severe risk of harm in that, among other things, the metal shrapnel can puncture and stab the occupants, causing severe and potentially fatal injuries;

g.    Defendants knew about and investigated the Inflator Defect, but then did not notify consumers about it, disclose the Inflator Defect to NHTSA, and the Automaker Defendants did not launch a comprehensive recall for all Class Vehicles, all of which individually and together deprived Plaintiffs of an opportunity that otherwise could have led them to discover the truth about the Inflator Defect in their Class Vehicles; and

h.    The Automaker Defendants made, helped to make, or conspired to make incomplete representations about the safety and reliability of the Class Vehicles and their airbags, while purposefully withholding material facts about a known safety defect. Because they volunteered

144

to provide information about the Class Vehicles that they marketed and offered for sale and lease to consumers, the Automaker Defendants had the duty to disclose the whole truth.

865.   By misrepresenting the Class Vehicles as safe and reliable and the airbags installed in them as properly functioning and free from defects, and/or by failing to disclose and actively concealing the dangers and risk posed by the Inflator Defect to both consumers and NHTSA, Defendants engaged in one or more of the following unfair or deceptive business practices as defined in Colo. Rev. Stat. § 6-1-105:

a.   Knowingly or recklessly making a false representation that the Class Vehicles and/or the Defective Inflators had a characteristic that they did not actually have—*i.e.*, that the vehicles were safe and suitable for use on the roadway, when, in fact, they were not because their airbag inflators were defectively designed such that they had an unreasonably dangerous propensity to rupture, causing severe and fatal injuries;

b.   Representing that the Class Vehicles and the Defective Inflators installed in them were of a particular quality, grade, or standard when, in fact, they were not of that quality, grade, or standard;

c.   Concealing and failing to disclose that the Class Vehicles' airbag

145

inflators were inherently defective, defectively designed, and not suitable for their intended use despite advertising them as safe and suitable for their intended function; and

d.     Engaging in the other unconscionable, false, misleading, or deceptive acts or practices pertaining to the Class Vehicles "actionable at common law or under other statutes of [Colorado]."

Colo. Rev. Stat. §§ 6-1-105(1)(e), (g), (i), and (3).

866.   Defendants' unfair or deceptive acts or practices, including their misrepresentations, concealments, omissions, and/or suppressions of material facts, were designed to mislead and had a tendency or capacity to mislead and create a false impression in consumers that the Class Vehicles had properly-functioning and reliable airbags. Indeed, those misrepresentations, concealments, omissions, and suppressions of material facts did in fact deceive reasonable consumers, including Plaintiffs and Class Members, about the true safety and reliability of the Class Vehicles and/or the Defective Inflators installed in them, the quality of the Class Vehicles, and the true value of the Class Vehicles.

867.   Defendants intended for Plaintiffs and Class Members to rely on their misrepresentations, omissions, and concealment—which they did by purchasing and leasing the Class Vehicles at the prices they paid believing that their vehicles would

not have an Inflator Defect that would affect the quality, reliability, and safety of the Class Vehicles and their airbags.

868.   Defendants' misrepresentations, concealments, omissions, and suppressions of material facts regarding the Inflator Defect and true characteristics of the Class Vehicles were material to the decisions of Plaintiffs and Class Members to purchase and lease those vehicles, as Defendants intended. Plaintiffs and Class Members were exposed to those misrepresentations, concealments, omissions, and suppressions of material facts, and relied on Defendants' misrepresentations that the Class Vehicles and their airbags were safe and reliable in deciding to purchase and lease the Class Vehicles.

869.   Plaintiffs' and Class Members' reliance was reasonable, as they had no way of discerning that Defendants' representations were false and misleading, or otherwise learning the facts that Defendants had concealed or failed to disclose. Plaintiffs and Class Members did not, and could not, unravel Defendants' deception on their own.

870.   Had they known the truth about the Inflator Defect, Plaintiffs and Class Members would not have purchased or leased the Class Vehicles, or would have paid significantly less for them.

871.   As a direct and proximate result of Defendants' deceptive practices,

Plaintiffs and Class Members have sustained economic injury and loss—either by purchasing a vehicle they otherwise would not have purchased or paying more than they otherwise would have as a result of Defendants' actions and omissions alleged above—that first occurred at the time each Class Vehicle was purchased or leased.

872.   Defendants' violations present a continuing risk to Plaintiffs and Class Members, as well as to the general public, because the Class Vehicles remain unsafe due to the Defective Inflators therein. Defendants' unlawful acts and practices complained of herein affect the public interest.

873.   Pursuant to Colo. Rev. Stat. § 6-1-113, Plaintiffs and Class Members seek an order enjoining the above unfair or deceptive acts or practices and awarding actual damages, treble damages, restitution, attorneys' fees, and any other just and proper relief available under the Colorado CPA against all Defendants. With respect to those Defendants, Plaintiffs and Class Members seek an order enjoining their unfair or deceptive acts or practices, and any other just and proper equitable relief available under the Colorado CPA.

### d.  Colorado Count 4: Fraud by Omission and Concealment Against All Defendants.

874.  Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

875.   The Colorado Plaintiffs bring this count under Colorado law, individually and on behalf of the other members of the Colorado Subclasses against the Automaker Defendants and Airbag Module Defendants for their respective Class Vehicles, and ARC. For the remaining Defendants, Plaintiffs who purchased or leased their Class Vehicles in states with materially similar laws may represent Subclasses under this count against all other Defendants, and ARC.

876.   For purposes of this count, members of the Colorado Subclass shall be referred to as "Class Members."

877.   For purposes of this count, ARC, the Automaker Defendants, and the Airbag Module Defendants shall be referred to as "Defendants."

878.   Defendants are liable for both fraudulent concealment and non-disclosure. *See, e.g.*, Restatement (Second) of Torts §§ 550-51 (1977).

879.   Defendants owed Plaintiffs and Class Members a duty to disclose all the material facts concerning the Defective Inflators in the Class Vehicles because:

a.      Given the Automaker Defendants' role in the design, manufacture, testing, and sale of Class Vehicles and Defective Inflators, and their experience and knowledge as experts and long-time veterans of the automotive industry, they, along with ARC and the Airbag Module Defendants, possessed exclusive access to and were in a superior

149

position to know the true facts about the Defective Inflators;

b.     Given ARC's design, development, testing and manufacture of the Defective Inflators and its experience and knowledge as experts and long-time veterans of the automotive industry, it, along with the Automaker Defendants and the Airbag Module Defendants, possessed exclusive access to and was in a superior position to know the true facts about the Defective Inflators;

c.     Given the Airbag Module Defendants' role in the design, manufacture, and testing of the airbag modules with the Defective Inflators installed in them, and their experience and knowledge as experts and long-time veterans of the automotive industry, they, along with ARC and the Automaker Defendants, possessed exclusive access to and were in a superior position to know the true facts about the Defective Inflators;

d.     Given the Inflator Defect's hidden and technical nature, Plaintiffs and Class Members lack the sophisticated expertise in vehicle components and technology that would be necessary to discover the Inflator Defect on their own;

e.     Defendants knew that the Inflator Defect gave rise to serious safety concerns for the consumers who purchased and leased the Class

Vehicles;

f. The Inflator Defect poses a severe risk of harm in that, among other things, the metal shrapnel can puncture and stab the occupants, causing severe and potentially fatal injuries;

g. Defendants knew about and investigated the Inflator Defect, but then did not notify consumers about it, disclose the Inflator Defect to NHTSA, and the Automaker Defendants did not launch a comprehensive recall for all Class Vehicles, all of which individually and together deprived Plaintiffs of an opportunity that otherwise could have led them to discover the truth about the Inflator Defect in their Class Vehicles; and

h. The Automaker Defendants made, helped to make, or conspired to make incomplete representations about the safety and reliability of the Class Vehicles and their airbags, while purposefully withholding material facts about a known safety defect. Because they volunteered to provide information about the Class Vehicles that they marketed and offered for sale and lease to consumers, the Automaker Defendants had the duty to disclose the whole truth.

880. In breach of their duties, Defendants failed to disclose the Inflator

Defect and that the Class Vehicles' airbags were not safe and reliable to Plaintiffs and Class Members in connection with the sale of the Class Vehicles.

881.   The Inflator Defect within the Class Vehicles is material to the sale of the Class Vehicles because a reasonable person would find it important in purchasing, leasing, or retaining a new or used motor vehicle and because it directly impacts the value of the Class Vehicles purchased or leased by Plaintiffs and Class Members.

882.   Defendants intended for Plaintiffs and Class Members to rely on their omissions and concealment—which they did by purchasing and leasing the Class Vehicles at the prices they paid believing that their vehicles would not have an Inflator Defect that would affect the quality, reliability, and safety of the Class Vehicles and their airbags.

883.   Plaintiffs' and Class Members' reliance was reasonable because a reasonable consumer would not have expected that the Class Vehicles contained a safety defect that poses such a serious risk. They had no way of learning the facts that Defendants had concealed or failed to disclose. Plaintiffs and Class Members did not, and could not, unravel Defendants' deception on their own.

884.   Defendants actively concealed and suppressed these material facts, in whole or in part, to maintain a market for the Class Vehicles, to protect profits, and

152

to avoid costly recalls that would expose them to liability for those expenses and harm the commercial reputations of Defendants and their products. They did so at the expense of Plaintiffs and Class Members.

885.   If Defendants had fully and adequately disclosed the Inflator Defect to consumers, Plaintiffs and Class Members would have seen such a disclosure.

886.   Through their omissions and concealment with respect to the Inflator Defect within the Class Vehicles, Defendants intended to induce, and did induce, Plaintiffs and Class Members to either purchase a Class Vehicle that they otherwise would not have purchased, or pay more for a Class Vehicle than they otherwise would have paid.

887.   Had Plaintiffs and Class Members known of the Inflator Defect within the Class Vehicles, they would not have purchased the Class Vehicles or would have paid less for them.

888.   As a direct and proximate result of Defendants' omissions and concealment, Plaintiffs and other Class Members either overpaid for the Class Vehicles or would not have purchased the Class Vehicles at all if the Inflator Defect had been disclosed to them. Accordingly, Defendants are liable to Plaintiffs and Class Members for their damages in an amount to be proven at trial.

889.   Defendants' acts were done maliciously, oppressively, deliberately,

with intent to defraud; in reckless disregard of the Plaintiffs' and Class Members' rights and well-being; and to enrich themselves. Defendants' misconduct warrants an assessment of punitive damages, as permitted by law, in an amount sufficient to deter such conduct in the future, which amount shall be determined according to proof at trial.

**e.**      **Colorado Count 5: Unjust Enrichment Against the Automaker Defendants.**

890. Plaintiffs reallege and incorporate by reference all allegations in Volume 1 of the Consolidated Class Action Complaint as though fully set forth herein.

891. The Colorado Plaintiffs bring this count under Colorado law, individually and on behalf of the other members of the Colorado Subclasses against the Automaker Defendants for their respective Class Vehicles. For the remaining Automaker Defendants, Plaintiffs who purchased or leased their Class Vehicles in states with materially similar laws may represent Subclasses under this count against all other Automaker Defendants.

892. For purposes of this count, members of the Colorado Subclass shall be referred to as "Class Members."

893. When they purchased and leased the Class Vehicles, Plaintiffs and

154

Class Members conferred tangible and material economic benefits upon the Automaker Defendants, who readily accepted and retained these benefits.

894.   Plaintiffs and Class Members would not have purchased or leased their Class Vehicles, or would have paid less for them, had they known of the Inflator Defect at the time of purchase or lease. Therefore, the Automaker Defendants profited from the sale and lease of the Class Vehicles to the detriment and expense of Plaintiffs and Class Members.

895.   The Automaker Defendants appreciated these economic benefits. These benefits were the expected result of the Automaker Defendants acting in their pecuniary interest at the expense of their customers. They knew of these benefits because they were aware of the Inflator Defect, yet they failed to disclose this knowledge and misled the Plaintiffs and Class Members regarding the nature and quality of the Class Vehicles while profiting from this deception.

896.   It would be unjust, inequitable, and unconscionable for the Automaker Defendants to retain these benefits, including because they were procured as a result of their wrongful conduct alleged above.

897.   Plaintiffs and Class Members are entitled to restitution of the benefits the Automaker Defendants unjustly retained and/or any amounts necessary to return Plaintiffs and Class Members to the position they occupied prior to dealing with

those Defendants, with such amounts to be determined at trial.

898.   Plaintiffs plead this claim separately as well as in the alternative to their claims for damages under Fed. R. Civ. P. 8(a)(3), because if the Court dismisses Plaintiffs' claims for damages or enters judgment on them in favor of the Automaker Defendants, Plaintiffs will have no adequate legal remedy.

### 7.   Connecticut

#### a.   Connecticut Count 1: Breach of Express Warranty (Conn. Gen. Stat. Ann. §§ 42A-2-313 and 42a-2A-503) Against the Automaker Defendants.

899.   Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

900.   The Connecticut Plaintiffs bring this count under Connecticut law, individually and on behalf of the other members of the Connecticut Subclasses against the Automaker Defendants for their respective Class Vehicles. For the remaining Automaker Defendants, Plaintiffs who purchased or leased their Class Vehicles in states with materially similar laws may represent Subclasses under this count against all other Automaker Defendants.

901.   For purposes of this count, members of the Connecticut Subclass shall be referred to as "Class Members."

902.   The Class Vehicles are "goods" under Conn. Gen. Stat. Ann. §§ 42a-2-

156

105(1) and 42a-2-103(2).

903. The Automaker Defendants are "merchants," "sellers," and "lessors," of the Class Vehicles under Conn. Gen. Stat. Ann. §§ 42a-2-104(1) and 42a-2-103(2), § 42a-2-103(1)(c), and Conn. Gen. Stat. Ann. § 42a-2A-102(a)(23), respectively.

904. Plaintiffs and Class Members who purchased and leased the Class Vehicles in Connecticut are "buyers" and "lessees" under Conn. Gen. Stat. Ann. § 42a-2-103(1)(a) and Conn. Gen. Stat. Ann. § 42a-2A-102(a)(21).

905. The Automaker Defendants issued an express written warranty for each defective Class Vehicle they sold, including that:

a. The Class Vehicles would be free of defects in materials and workmanship at the time of sale; and

b. The Class Vehicles were safe and reliable, and their airbags would function properly in the event of a crash.

906. The warranties listed above formed the basis of the bargain with regard to Plaintiffs' and Class Members' purchase and lease of the Class Vehicles.

907. The Automaker Defendants knowingly breached their warranty for the Class Vehicles because:

a. The airbag inflators have latent defects which have a dangerous

157

propensity to cause the inflators to rupture and eject metal shrapnel, subjecting Plaintiffs and Class Members to the risk of loss and injury; and

b.      The Automaker Defendants denied, concealed, and misrepresented the Inflator Defect, in the process refusing to pay for or provide in a reasonably timely fashion the needed repairs and replacements for Plaintiffs and Class Members.

908.   The Automaker Defendants knew or should have known that the warranties were false and/or misleading. Specifically, the Automaker Defendants were aware of the Inflator Defect in the Class Vehicles, which made the vehicles inherently defective and dangerous at the time that they were sold and leased to Plaintiffs and Class Members.

909.   Plaintiffs and Class Members were exposed to the Automaker Defendants' misrepresentations, and they had no way of discerning that the Automaker Defendants' representations were false and misleading or otherwise learning the material facts that the Automaker Defendants had concealed or failed to disclose. Accordingly, Plaintiffs and Class Members reasonably relied on the Automaker Defendants' express warranties when purchasing or leasing their Class Vehicles.

910.   Plaintiffs and Class Members timely provided the Automaker Defendants notice of the issues raised in this count and this Complaint and an opportunity to cure, as alleged in the paragraphs addressing Defendants' notice, above.

911.   Alternatively, Plaintiffs and Class Members were excused from providing the Automaker Defendants with notice and an opportunity to cure the breach, because it would have been futile. As alleged above, the Automaker Defendants knew about the Defective Inflators for years; however, to date, the Automaker Defendants have not instituted a recall or any other repair program with respect to all of the Class Vehicles, or even acknowledged that the Inflator Defect exists in all of the Class Vehicles. Therefore, they have refused to recall or repair defective vehicles. Moreover, to the extent the Automaker Defendants have issued recalls, those recalls are inadequate because, *inter alia*: (a) they are belated because the Automaker Defendants knew about the Defective Inflators for years and did nothing to recall or remedy the serious safety defect; (b) with tens of millions of vehicles impacted in existing and potential future recalls, as a result of the Automaker Defendants' concealment of the Inflator Defect, the recalls cannot be implemented effectively due to supply constraints and resulting delays; (c) the recalls are incomplete, and apply to only a subset of the Class Vehicles.

159

912.   As a direct and proximate result of the Automaker Defendants' breach of their express warranties, the Class Vehicles were and are defective and the Inflator Defect was not remedied. Therefore, Plaintiff and Class Members have been damaged, in an amount to be proven at trial, through their overpayment at the time of purchase or lease for the Class Vehicles with an undisclosed safety defect that would not be remedied.

> **b.     Connecticut Count 2: Breach of Implied Warranty of Merchantability (Conn. Gen. Stat. §§ 42a-2-314 and 42a-2a-504) Against the Automaker Defendants.**

913.   Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

914.   The Connecticut Plaintiffs bring this count under Connecticut law, individually and on behalf of the other members of the Connecticut Subclass against the Automaker Defendants for their respective Class Vehicles. For the remaining Automaker Defendants, Plaintiffs who purchased or leased their Class Vehicles in states with materially similar laws may represent Subclasses under this count against all other Automaker Defendants.

915.   For purposes of this count, members of the Connecticut Subclass shall be referred to as "Class Members."

916.   The Class Vehicles are "goods" under Conn. Gen. Stat. Ann. §§ 42a-2-

105(1) and 42a-2-103(2).

917.   The Automaker Defendants are "merchants," "sellers," and "lessors," of the Class Vehicles under Conn. Gen. Stat. Ann. §§ 42a-2-104(1) and 42a-2-103(2), § 42a-2-103(1)(c), and Conn. Gen. Stat. Ann. § 42a-2A-102(a)(23), respectively.

918.   Plaintiffs and Class Members who purchased and leased the Class Vehicles in Connecticut are "buyers" and "lessees" under Conn. Gen. Stat. Ann. § 42a-2-103(1)(a) and Conn. Gen. Stat. Ann. § 42a-2A-102(a)(21).

919.   The Class Vehicles are not merchantable, and as such the Automaker Defendants breached their implied warranties, because at the time of sale and all times thereafter:

a.   The Class Vehicles would not pass without objection in the automotive trade given the Inflator Defect;

b.   The Inflator Defect renders the Class Vehicles unsafe to drive and unfit for ordinary purposes;

c.   The Class Vehicles and the airbags therein were inadequately labeled as safe and reliable, and the labeling failed to disclose the Inflator Defect; and

d.   The Class Vehicles do not conform to their labeling, which represents

that the vehicles are safe and suitable for their intended use.

920. Plaintiffs and Class Members timely provided the Automaker Defendants notice of the issues raised in this count and this Complaint and an opportunity to cure, as alleged in the paragraphs addressing Defendants' notice, above.

921. Alternatively, Plaintiffs and Class Members were excused from providing the Automaker Defendants with notice and an opportunity to cure the breach because it would have been futile. As alleged above, the Automaker Defendants have long known that the Class Vehicles contained the Defective Inflators, and that the Defective Inflators have caused airbags to malfunction in crashes involving the Class Vehicles; however, to date, the Automaker Defendants have not instituted a recall or any other repair program with respect to all of the Class Vehicles, or even acknowledged that the Inflator Defect exists in all of those Class Vehicles. Moreover, to the extent the Automaker Defendants have issued recalls, those recalls are inadequate because, inter alia: (a) they are belated because the Automaker Defendants knew about the Defective Inflators for years and did nothing to recall or remedy the serious safety defect; (b) with tens of millions of vehicles impacted in existing and potential future recalls, as a result of the Automaker Defendants' concealment of the Inflator Defect, the recalls cannot be implemented

effectively due to supply constraints and resulting delays; (c) the recalls are incomplete, and apply to only a subset of the Class Vehicles.

922.   Plaintiffs, individually and on behalf of Class Members, seek all available monetary damages (including actual, compensatory, and punitive damages), injunctive and equitable relief, and attorneys' fees and costs.

### c.   Connecticut Count 3: Violation of the Connecticut Unlawful Trade Practices Act (Conn. Gen. Stat. Ann. § 42-110a, *et seq*.) Against All Defendants.[8]

923.   Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

924.   The Connecticut Plaintiffs bring this count under Connecticut law, individually and on behalf of the other members of the Connecticut Subclasses against the Automaker Defendants and Airbag Module Defendants for their respective Class Vehicles, and ARC. For the remaining Defendants, Plaintiffs who purchased or leased their Class Vehicles in states with materially similar laws may represent Subclasses under this count against all other Defendants, and ARC.

925.   For purposes of this count, members of the Connecticut Subclass shall be referred to as "Class Members."

---

[8] Plaintiffs bring this count against ARC and the Airbag Module Defendants based on their omissions and concealment of material facts only.

926.   For purposes of this count, ARC, the Automaker Defendants, and the Airbag Module Defendants shall be referred to as "Defendants."

927.   Defendants, Plaintiffs and Class Members are "persons" under Conn. Gen. Stat. Ann. § 42-110a(3).

928.   Defendants were and are engaged in "trade" and "commerce" under Conn. Gen. Stat. Ann. § 42-110a(3).

929.   The Connecticut Unfair Trade Practices Act ("Connecticut UTPA") prohibits "unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce." Conn. Gen. Stat. Ann. § 42-110b(a).

930.   Defendants' violations of the Connecticut UTPA occurred repeatedly in their trade or practice—including the design, manufacture, distribution, marketing, sale, and lease of the Defective Inflators and the Class Vehicles.

931.   Defendants, through their agents, employees, and/or subsidiaries, violated the Connecticut UTPA by knowingly and intentionally misrepresenting, omitting, concealing, and/or failing to disclose material facts regarding the reliability, safety, and performance of the Class Vehicles and the Defective Inflators, as detailed above.

932.   Defendants had an ongoing duty to Plaintiffs and Class Members to refrain from unfair or deceptive practices under the Connecticut UTPA in the course

164

of their business. Specifically, Defendants owed Plaintiffs and Class Members a duty to disclose all the material facts concerning the Defective Inflators in the Class Vehicles because:

a.   Given ARC's design, development, testing and manufacture of the Defective Inflators and its experience and knowledge as experts and long-time veterans of the automotive industry, it, along with the Automaker Defendants and the Airbag Module Defendants, possessed exclusive access to and was in a superior position to know the true facts about the Defective Inflators;

b.   Given the Airbag Module Defendants' role in the design, manufacture, and testing of the airbag modules with the Defective Inflators installed in them, and their experience and knowledge as experts and long-time veterans of the automotive industry, they, along with ARC and the Automaker Defendants, possessed exclusive access to and were in a superior position to know the true facts about the Defective Inflators;

c.   Given the Automaker Defendants' role in the design, manufacture, testing, and sale of Class Vehicles and Defective Inflators, and their experience and knowledge as experts and long-time veterans of the automotive industry, they, along with ARC and the Airbag Module

Defendants, possessed exclusive access to and were in a superior position to know the true facts about the Defective Inflators;

d.     Given the Inflator Defect's hidden and technical nature, Plaintiffs and Class Members lack the sophisticated expertise in vehicle components and technology that would be necessary to discover the Inflator Defect on their own;

e.     Defendants knew that the Inflator Defect gave rise to serious safety concerns for the consumers who purchased and leased the Class Vehicles;

f.     The Inflator Defect poses a severe risk of harm in that, among other things, the metal shrapnel can puncture and stab the occupants, causing severe and potentially fatal injuries;

g.     Defendants knew about and investigated the Inflator Defect, but then did not notify consumers about it or disclose the Inflator Defect to NHTSA, and the Automaker Defendants did not launch a comprehensive recall for all Class Vehicles, all of which individually and together deprived Plaintiffs of an opportunity that otherwise could have led them to discover the truth about the Inflator Defect in their Class Vehicles; and

h.  The Automaker Defendants made, helped to make, or conspired to make incomplete representations about the safety and reliability of the Class Vehicles and their airbags, while purposefully withholding material facts about a known safety defect. Because they volunteered to provide information about the Class Vehicles that they marketed and offered for sale and lease to consumers, the Automaker Defendants had the duty to disclose the whole truth.

933.  By misrepresenting the Class Vehicles as safe and reliable and the airbags installed in them as properly-functioning and free from defects, and/or by failing to disclose and actively concealing the dangers and risk posed by the Inflator Defect to both consumers and NHTSA, Defendants engaged in unfair methods of competition and unfair or deceptive acts or practices in the conduct of trade or commerce, as prohibited by Conn. Gen. Stat. § 42-110b(a).

934.  Defendants intended for Plaintiffs and Class Members to rely on their misrepresentations, omissions, and concealment—which they did by purchasing and leasing the Class Vehicles at the prices they paid believing that their vehicles would not have an Inflator Defect that would affect the quality, reliability, and safety of the Class Vehicles and their airbags.

935.  Defendants' unfair or deceptive acts or practices, including their

167

misrepresentations, concealments, omissions, and/or suppressions of material facts, were designed to mislead and had a tendency or capacity to mislead and create a false impression in consumers that the Class Vehicles had properly-functioning and reliable airbags. Indeed, those misrepresentations, concealments, omissions, and suppressions of material facts did in fact deceive reasonable consumers, including Plaintiffs and Class Members, about the true safety and reliability of the Class Vehicles and/or the Defective Inflators installed in them, the quality of the Class Vehicles, and the true value of the Class Vehicles.

936. Defendants' misrepresentations, concealments, omissions, and suppressions of material facts regarding the Inflator Defect and true characteristics of the Class Vehicles were material to the decisions of Plaintiffs and Class Members to purchase and lease those vehicles, as Defendants intended. Plaintiffs and Class Members were exposed to those misrepresentations, concealments, omissions, and suppressions of material facts, and relied on Defendants' misrepresentations that the Class Vehicles and their airbags were safe and reliable in deciding to purchase and lease the Class Vehicles.

937. Plaintiffs' and Class Members' reliance was reasonable, as they had no way of discerning that Defendants' representations were false and misleading, or otherwise learning the facts that Defendants had concealed or failed to disclose.

Plaintiffs and Class Members did not, and could not, unravel Defendants' deception on their own.

938.   Had they known the truth about the Inflator Defect, Plaintiffs and Class Members would not have purchased or leased the Class Vehicles, or would have paid significantly less for them.

939.   As a direct and proximate result of Defendants' deceptive practices, Plaintiffs and Class Members have sustained economic injury and loss—either by purchasing a vehicle they otherwise would not have purchased or paying more than they otherwise would have as a result of Defendants' actions and omissions alleged above—that first occurred at the time each Class Vehicle was purchased or leased.

940.   Defendants' violations present a continuing risk to Plaintiffs and Class Members, as well as to the general public, because the Class Vehicles remain unsafe due to the Defective Inflators therein. Defendants' unlawful acts and practices complained of herein affect the public interest.

941.   Pursuant to Conn. Gen. Stat. Ann. § 42-110g, Plaintiffs and Class Members seek an order enjoining the above unfair or deceptive acts or practices and awarding actual damages, treble damages, restitution, attorneys' fees, and any other just and proper relief available under the Connecticut UTPA against all Defendants.

### d.   Connecticut Count 4: Fraud by Omission and Concealment Against All Defendants.

942.   Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

943.   The Connecticut Plaintiffs bring this count under Connecticut law, individually and on behalf of the other members of the Connecticut Subclasses against the Automaker Defendants and Airbag Module Defendants for their respective Class Vehicles, and ARC. For the remaining Defendants, Plaintiffs who purchased or leased their Class Vehicles in states with materially similar laws may represent Subclasses under this count against all other Defendants, and ARC.

944.   For purposes of this count, members of the Connecticut Subclass shall be referred to as "Class Members."

945.   For purposes of this count, ARC, the Automaker Defendants, and the Airbag Module Defendants shall be referred to as "Defendants."

946.   Defendants are liable for both fraudulent concealment and non-disclosure. *See, e.g.*, Restatement (Second) of Torts §§ 550-51 (1977).

947.   Defendants owed Plaintiffs and Class Members a duty to disclose all the material facts concerning the Defective Inflators in the Class Vehicles because:

a.   Given the Automaker Defendants' role in the design, manufacture, testing, and sale of Class Vehicles and Defective Inflators, and their

170

experience and knowledge as experts and long-time veterans of the automotive industry, they, along with ARC and the Airbag Module Defendants, possessed exclusive access to and were in a superior position to know the true facts about the Defective Inflators;

b. Given ARC's design, development, testing and manufacture of the Defective Inflators and its experience and knowledge as experts and long-time veterans of the automotive industry, it, along with the Automaker Defendants and the Airbag Module Defendants, possessed exclusive access to and was in a superior position to know the true facts about the Defective Inflators;

c. Given the Airbag Module Defendants' role in the design, manufacture, and testing of the airbag modules with the Defective Inflators installed in them, and their experience and knowledge as experts and long-time veterans of the automotive industry, they, along with ARC and the Automaker Defendants, possessed exclusive access to and were in a superior position to know the true facts about the Defective Inflators;

d. Given the Inflator Defect's hidden and technical nature, Plaintiffs and Class Members lack the sophisticated expertise in vehicle components and technology that would be necessary to discover the Inflator Defect

on their own;

e.   Defendants knew that the Inflator Defect gave rise to serious safety concerns for the consumers who purchased and leased the Class Vehicles;

f.   The Inflator Defect poses a severe risk of harm in that, among other things, the metal shrapnel can puncture and stab the occupants, causing severe and potentially fatal injuries;

g.   Defendants knew about and investigated the Inflator Defect, but then did not notify consumers about it, disclose the Inflator Defect to NHTSA, and the Automaker Defendants did not launch a comprehensive recall for all Class Vehicles, all of which individually and together deprived Plaintiffs of an opportunity that otherwise could have led them to discover the truth about the Inflator Defect in their Class Vehicles; and

h.   The Automaker Defendants made, helped to make, or conspired to make incomplete representations about the safety and reliability of the Class Vehicles and their airbags, while purposefully withholding material facts about a known safety defect. Because they volunteered to provide information about the Class Vehicles that they marketed and

172

offered for sale and lease to consumers, the Automaker Defendants had the duty to disclose the whole truth.

948.   In breach of their duties, Defendants failed to disclose the Inflator Defect and that the Class Vehicles' airbags were not safe and reliable to Plaintiffs and Class Members in connection with the sale of the Class Vehicles.

949.   The Inflator Defect within the Class Vehicles is material to the sale of the Class Vehicles because a reasonable person would find it important in purchasing, leasing, or retaining a new or used motor vehicle and because it directly impacts the value of the Class Vehicles purchased or leased by Plaintiffs and Class Members.

950.   Defendants intended for Plaintiffs and Class Members to rely on their omissions and concealment—which they did by purchasing and leasing the Class Vehicles at the prices they paid believing that their vehicles would not have an Inflator Defect that would affect the quality, reliability, and safety of the Class Vehicles and their airbags.

951.   Plaintiffs' and Class Members' reliance was reasonable because a reasonable consumer would not have expected that the Class Vehicles contained a safety defect that poses such a serious risk. They had no way of learning the facts that Defendants had concealed or failed to disclose. Plaintiffs and Class Members

did not, and could not, unravel Defendants' deception on their own.

952.   Defendants actively concealed and suppressed these material facts, in whole or in part, to maintain a market for the Class Vehicles and the Defective Inflators installed in them, to protect profits, and to avoid costly recalls that would expose them to liability for those expenses and harm the commercial reputations of Defendants and their products. They did so at the expense of Plaintiffs and Class Members.

953.   If Defendants had fully and adequately disclosed the Inflator Defect to consumers, Plaintiffs and Class Members would have seen such a disclosure.

954.   Through their omissions and concealment with respect to the Inflator Defect within the Class Vehicles, Defendants intended to induce, and did induce, Plaintiffs and Class Members to either purchase a Class Vehicle that they otherwise would not have purchased, or pay more for a Class Vehicle than they otherwise would have paid.

955.   Had Plaintiffs and Class Members known of the Inflator Defect within the Class Vehicles, they would not have purchased the Class Vehicles or would have paid less for them.

956.   As a direct and proximate result of Defendants' omissions and concealment, Plaintiffs and other Class Members either overpaid for the Class

Vehicles or would not have purchased the Class Vehicles at all if the Inflator Defect had been disclosed to them. Accordingly, Defendants are liable to Plaintiffs and Class Members for their damages in an amount to be proven at trial.

957.   Defendants acted maliciously, oppressively, deliberately, with intent to defraud; in reckless disregard of the Plaintiffs' and Class Members' rights and well-being; and to enrich themselves. Defendants' misconduct warrants an assessment of punitive damages, as permitted by law, in an amount sufficient to deter such conduct in the future, which amount shall be determined according to proof at trial.

### e.   Connecticut Count 5: Unjust Enrichment Against the Automaker Defendants.

958.   Plaintiffs reallege and incorporate by reference all allegations in Volume 1 of the Consolidated Class Action Complaint as though fully set forth herein.

959.   The Connecticut Plaintiffs bring this count under Connecticut law, individually and on behalf of the other members of the Connecticut Subclasses against the Automaker Defendants for their respective Class Vehicles. For the remaining Automaker Defendants, Plaintiffs who purchased or leased their Class Vehicles in states with materially similar laws may represent Subclasses under this count against all other Automaker Defendants.

960.   For purposes of this count, members of the Connecticut Subclass shall be referred to as "Class Members."

961.   When they purchased and leased the Class Vehicles, Plaintiffs and Class Members conferred tangible and material economic benefits upon the Automaker Defendants, who readily accepted and retained these benefits.

962.   Plaintiffs and Class Members would not have purchased or leased their Class Vehicles, or would have paid less for them, had they known of the Inflator Defect at the time of purchase or lease. Therefore, the Automaker Defendants profited from the sale and lease of the Class Vehicles to the detriment and expense of Plaintiffs and Class Members.

963.   The Automaker Defendants appreciated these economic benefits. These benefits were the expected result of the Automaker Defendants acting in their pecuniary interest at the expense of their customers. They knew of these benefits because they were aware of the Inflator Defect, yet they failed to disclose this knowledge and misled the Plaintiffs and Class Members regarding the nature and quality of the Class Vehicles while profiting from this deception.

964.   It would be unjust, inequitable, and unconscionable for the Automaker Defendants to retain these benefits, including because they were procured as a result of their wrongful conduct alleged above.

965.   Plaintiffs and Class Members are entitled to restitution of the benefits the Automaker Defendants unjustly retained and/or any amounts necessary to return Plaintiffs and Class Members to the position they occupied prior to dealing with those Defendants, with such amounts to be determined at trial.

966.   Plaintiffs plead this claim separately as well as in the alternative to their claims for damages under Fed. R. Civ. P. 8(a)(3), because if the Court dismisses Plaintiffs' claims for damages enters judgment on them in favor of the Automaker Defendants, Plaintiffs will have no adequate legal remedy.

### 8.   Delaware

#### a.   Delaware Count 1: Breach of Express Warranty (6 Del. Code §§ 2-313 and 2A-210) Against the Automaker Defendants.

967.   Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

968.   The Delaware Plaintiff brings this count under Delaware law, individually and on behalf of the other members of the Delaware Subclasses against the Automaker Defendants for his or her respective Class Vehicle(s). For the remaining Automaker Defendants, Plaintiffs who purchased or leased their Class

Vehicles in states with materially similar laws may represent Subclasses under this count against all other Automaker Defendants.

969.    For purposes of this count, members of the Delaware Subclass shall be referred to as "Class Members."

970.    The Class Vehicles are "goods" under 6 Del. C. §§ 2-105(1) and 2A-103(1)(h).

971.    The Automaker Defendants are "merchants," "sellers," and "lessors," of the Class Vehicles under 6 Del. C. §§ 2-104(1) and 2A-103(3), § 2-103(1)(d), and § 2A-103(1)(p).

972.    Plaintiffs and Class Members who purchased and leased the Class Vehicles in Delaware are "buyers" and "lessees" under 6 Del. C. §§ 2-103(1)(a) 2A-103(1)(n).

973.    The Automaker Defendants issued an express written warranty for each defective Class Vehicle they sold, including that:

a.    The Class Vehicles would be free of defects in materials and workmanship at the time of sale; and

b.    The Class Vehicles were safe and reliable, and their airbags would function properly in the event of a crash.

974.    The warranties listed above formed the basis of the bargain with regard

to Plaintiffs' and Class Members' purchase and lease of the Class Vehicles.

975.   The Automaker Defendants knowingly breached their warranty for the Class Vehicles because:

a.     The airbag inflators have latent defects which have a dangerous propensity to cause the inflators to rupture and eject metal shrapnel, subjecting Plaintiffs and Class Members to the risk of loss and injury; and

b.     The Automaker Defendants denied, concealed, and misrepresented the Inflator Defect, in the process refusing to pay for or provide in a reasonably timely fashion the needed repairs and replacements for Plaintiffs and Class Members.

976.   The Automaker Defendants knew or should have known that the warranties were false and/or misleading. Specifically, the Automaker Defendants were aware of the Inflator Defect in the Class Vehicles, which made the vehicles inherently defective and dangerous at the time that they were sold and leased to Plaintiffs and Class Members.

977.   Plaintiffs and Class Members were exposed to the Automaker Defendants' misrepresentations, and they had no way of discerning that the Automaker Defendants' representations were false and misleading or otherwise

learning the material facts that the Automaker Defendants had concealed or failed to disclose. Accordingly, Plaintiffs and Class Members reasonably relied on the Automaker Defendants' express warranties when purchasing or leasing their Class Vehicles.

978. Plaintiffs and Class Members timely provided the Automaker Defendants notice of the issues raised in this count and this Complaint and an opportunity to cure, as alleged in the paragraphs addressing Defendants' notice, above.

979. Alternatively, Plaintiffs and Class Members were excused from providing the Automaker Defendants with notice and an opportunity to cure the breach, because it would have been futile. As alleged above, the Automaker Defendants knew about the Defective Inflators for years; however, to date, the Automaker Defendants have not instituted a recall or any other repair program with respect to all of the Class Vehicles, or even acknowledged that the Inflator Defect exists in all of the Class Vehicles. Therefore, they have refused to recall or repair defective vehicles. Moreover, to the extent the Automaker Defendants have issued recalls, those recalls are inadequate because, *inter alia*: (a) they are belated because the Automaker Defendants knew about the Defective Inflators for years and did nothing to recall or remedy the serious safety defect; (b) with tens of millions of

vehicles impacted in existing and potential future recalls, as a result of the Automaker Defendants' concealment of the Inflator Defect, the recalls cannot be implemented effectively due to supply constraints and resulting delays; (c) the recalls are incomplete, and apply to only a subset of the Class Vehicles.

980.   As a direct and proximate result of the Automaker Defendants' breach of their express warranties, the Class Vehicles were and are defective and the Inflator Defect was not remedied. Therefore, Plaintiff and Class Members have been damaged, in an amount to be proven at trial, through their overpayment at the time of purchase or lease for the Class Vehicles with an undisclosed safety defect that would not be remedied.

       **b.**       **Delaware Count 2: Breach of Implied Warranty of Merchantability (6 Del. Code §§ 2-314 and 2A-212) Against the Automaker Defendants.**

981.   Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

982.   The Delaware Plaintiff brings this count under Delaware law, individually and on behalf of the other members of the Delaware Subclasses against the Automaker Defendants for his or her respective Class Vehicle(s). For the remaining Automaker Defendants, Plaintiffs who purchased or leased their Class Vehicles in states with materially similar laws may represent Subclasses under this

count against all other Automaker Defendants.

983.   For purposes of this count, members of the Delaware Subclass shall be referred to as "Class Members."

984.   The Class Vehicles are "goods" under 6 Del. C. §§ 2-105(1) and 2A-103(1)(h).

985.   The Automaker Defendants are "merchants," "sellers," and "lessors," of the Class Vehicles under 6 Del. C. §§ 2-104(1) and 2A-103(3), § 2-103(1)(d), and § 2A-103(1)(p).

986.   Plaintiffs and Class Members who purchased and leased the Class Vehicles in Delaware are "buyers" and "lessees" under 6 Del. C. §§ 2-103(1)(a) 2A-103(1)(n).

987.   Delaware law conferred an implied warranty that the Class Vehicles were in merchantable condition and fit for the ordinary purpose for which they were to be used pursuant to 6 Del. C. §§ 2-314 and 2A-212.

988.   The Class Vehicles are not merchantable, and as such the Automaker Defendants breached their implied warranties, because at the time of sale and all times thereafter:

a.   The Class Vehicles would not pass without objection in the automotive trade given the Inflator Defect;

b.      The Inflator Defect renders the Class Vehicles unsafe to drive and unfit for ordinary purposes;

c.      The Class Vehicles and the airbags therein were inadequately labeled as safe and reliable, and the labeling failed to disclose the Inflator Defect; and

d.      The Class Vehicles do not conform to their labeling, which represents that the vehicles are safe and suitable for their intended use.

989.   Plaintiffs and Class Members timely provided the Automaker Defendants notice of the issues raised in this count and this Complaint and an opportunity to cure, as alleged in the paragraphs addressing Defendants' notice, above.

990.   Alternatively, Plaintiffs and Class Members were excused from providing the Automaker Defendants with notice and an opportunity to cure the breach because it would have been futile. As alleged above, the Automaker Defendants have long known that the Class Vehicles contained the Defective Inflators, and that the Defective Inflators have caused airbags to malfunction in crashes involving the Class Vehicles; however, to date, the Automaker Defendants have not instituted a recall or any other repair program with respect to all of the Class Vehicles, or even acknowledged that the Inflator Defect exists in all of those Class

Vehicles. Moreover, to the extent the Automaker Defendants have issued recalls, those recalls are inadequate because, inter alia: (a) they are belated because the Automaker Defendants knew about the Defective Inflators for years and did nothing to recall or remedy the serious safety defect; (b) with tens of millions of vehicles impacted in existing and potential future recalls, as a result of the Automaker Defendants' concealment of the Inflator Defect, the recalls cannot be implemented effectively due to supply constraints and resulting delays; (c) the recalls are incomplete, and apply to only a subset of the Class Vehicles.

991.   Plaintiffs, individually and on behalf of Class Members, seek all available monetary damages (including actual, compensatory, and punitive damages), injunctive and equitable relief, and attorneys' fees and costs.

### c.   Delaware Count 3: Violations of the Delaware Consumer Fraud Act (6 Del. Code §§ 2511, *et seq.*) Against All Defendants.[9]

992.   Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

993.   The Delaware Plaintiffs bring this count under Delaware law, individually and on behalf of the other members of the Delaware Subclasses against

---

[9] Plaintiffs bring this count against ARC and the Airbag Module Defendants based on their omissions and concealment of material facts only.

184

the Automaker Defendants and Airbag Module Defendants for his or her respective Class Vehicle(s), and ARC. For the remaining Defendants, Plaintiffs who purchased or leased their Class Vehicles in states with materially similar laws may represent Subclasses under this count against all other Defendants, and ARC.

994.   For purposes of this count, members of the Delaware Subclass shall be referred to as "Class Members."

995.   For purposes of this count, ARC, the Automaker Defendants, and the Airbag Module Defendants shall be referred to as "Defendants."

996.   Defendants, Plaintiffs and Class Members are "persons" under 6 Del. Code § 2511(7) and § 2531(5).

997.   All Defendants engaged in "advertisement" under 6 Del. Code § 2511(1).

998.   The purchase and lease of the Class Vehicles by Plaintiffs and Class Members constitute "sales" and leases under 6 Del. Code § 2511(7).

999.   The Class Vehicles are "merchandise" under 6 Del. Code § 2511(6).

1000. The Delaware Consumer Fraud Act ("Delaware CFA") makes unlawful the "act, use or employment by any person of any deception, fraud, false pretense, false promise, misrepresentation, or the concealment, suppression, or omission of any material fact with intent that others rely upon such concealment, suppression or

omission, in connection with the sale, lease or advertisement of any merchandise, whether or not any person has in fact been misled, deceived or damaged thereby." 6 Del. Code § 2513(a).

1001. Defendants' violations of the Delaware CFA occurred repeatedly in their trade or practice—including the design, manufacture, distribution, marketing, sale, and lease of the Defective Inflators and the Class Vehicles.

1002. Defendants, through their agents, employees, and/or subsidiaries, violated the Delaware CFA by knowingly and intentionally misrepresenting, omitting, concealing, and/or failing to disclose material facts regarding the reliability, safety, and performance of the Class Vehicles and the Defective Inflators, as detailed above.

1003. Defendants had an ongoing duty to Plaintiffs and Class Members to refrain from unfair or deceptive practices under the Delaware CFA in the course of their business. Specifically, Defendants owed Plaintiffs and Class Members a duty to disclose all the material facts concerning the Defective Inflators in the Class Vehicles because:

a.   Given ARC's design, development, testing and manufacture of the Defective Inflators and its experience and knowledge as experts and long-time veterans of the automotive industry, it, along with the

186

Automaker Defendants and the Airbag Module Defendants, possessed exclusive access to and was in a superior position to know the true facts about the Defective Inflators;

b.    Given the Airbag Module Defendants' role in the design, manufacture, and testing of the airbag modules with the Defective Inflators installed in them, and their experience and knowledge as experts and long-time veterans of the automotive industry, they, along with ARC and the Automaker Defendants, possessed exclusive access to and were in a superior position to know the true facts about the Defective Inflators;

c.    Given the Automaker Defendants' role in the design, manufacture, testing, and sale of Class Vehicles and Defective Inflators, and their experience and knowledge as experts and long-time veterans of the automotive industry, they, along with ARC and the Airbag Module Defendants, possessed exclusive access to and were in a superior position to know the true facts about the Defective Inflators;

d.    Given the Inflator Defect's hidden and technical nature, Plaintiffs and Class Members lack the sophisticated expertise in vehicle components and technology that would be necessary to discover the Inflator Defect on their own;

187

e.      Defendants knew that the Inflator Defect gave rise to serious safety concerns for the consumers who purchased and leased the Class Vehicles;

f.      The Inflator Defect poses a severe risk of harm in that, among other things, the metal shrapnel can puncture and stab the occupants, causing severe and potentially fatal injuries;

g.      Defendants knew about and investigated the Inflator Defect, but then did not notify consumers about it or disclose the Inflator Defect to NHTSA, and the Automaker Defendants did not launch a comprehensive recall for all Class Vehicles, all of which individually and together deprived Plaintiffs of an opportunity that otherwise could have led them to discover the truth about the Inflator Defect in their Class Vehicles; and

h.      The Automaker Defendants made, helped to make, or conspired to make incomplete representations about the safety and reliability of the Class Vehicles and their airbags, while purposefully withholding material facts about a known safety defect. Because they volunteered to provide information about the Class Vehicles that they marketed and offered for sale and lease to consumers, the Automaker Defendants had

188

the duty to disclose the whole truth.

1004. By misrepresenting the Class Vehicles as safe and reliable and the airbags installed in them as properly-functioning and free from defects, and/or by failing to disclose and actively concealing the dangers and risk posed by the Inflator Defect to both consumers and NHTSA, Defendants engaged in one or more of the following unfair or deceptive business practices as defined in 6 Del. Code § 2513(a): using or employing deception, fraud, false pretense, false promise, misrepresentation, unfair practice, or the concealment, suppression, or omission of a material fact with intent that others rely upon such concealment, suppression or omission, in connection with the advertisement and sale/lease of the Class Vehicles, whether or not any person has in fact been misled, deceived or damaged thereby.

1005. Defendants' unfair or deceptive acts or practices, including their misrepresentations, concealments, omissions, and/or suppressions of material facts, were designed to mislead and had a tendency or capacity to mislead and create a false impression in consumers that the Class Vehicles had properly-functioning and reliable airbags. Indeed, those misrepresentations, concealments, omissions, and suppressions of material facts did in fact deceive reasonable consumers, including Plaintiffs and Class Members, about the true safety and reliability of the Class Vehicles and/or the Defective Inflators installed in them, the quality of the Class

189

Vehicles, and the true value of the Class Vehicles.

1006. Defendants intended for Plaintiffs and Class Members to rely on their misrepresentations, omissions, and concealment—which they did by purchasing and leasing the Class Vehicles at the prices they paid believing that their vehicles would not have an Inflator Defect that would affect the quality, reliability, and safety of the Class Vehicles and their airbags.

1007. Defendants' misrepresentations, concealments, omissions, and suppressions of material facts regarding the Inflator Defect and true characteristics of the Class Vehicles were material to the decisions of Plaintiffs and Class Members to purchase and lease those vehicles, as Defendants intended. Plaintiffs and Class Members were exposed to those misrepresentations, concealments, omissions, and suppressions of material facts, and relied on Defendants' misrepresentations that the Class Vehicles and their airbags were safe and reliable in deciding to purchase and lease the Class Vehicles.

1008. Plaintiffs' and Class Members' reliance was reasonable, as they had no way of discerning that Defendants' representations were false and misleading, or otherwise learning the facts that Defendants had concealed or failed to disclose. Plaintiffs and Class Members did not, and could not, unravel Defendants' deception on their own.

190

1009. Had they known the truth about the Inflator Defect, Plaintiffs and Class Members would not have purchased or leased the Class Vehicles, or would have paid significantly less for them.

1010. As a direct and proximate result of Defendants' deceptive practices, Plaintiffs and Class Members have sustained economic injury and loss—either by purchasing a vehicle they otherwise would not have purchased or paying more than they otherwise would have as a result of Defendants' actions and omissions alleged above—that first occurred at the time each Class Vehicle was purchased or leased.

1011. Defendants' violations present a continuing risk to Plaintiffs and Class Members, as well as to the general public, because the Class Vehicles remain unsafe due to the Defective Inflators therein. Defendants' unlawful acts and practices complained of herein affect the public interest.

1012. Pursuant to 6 Del. Code § 2525, Plaintiffs and Class Members seek an order enjoining the above unfair or deceptive acts or practices and awarding actual damages, treble damages, restitution, attorneys' fees, and any other just and proper relief available under the Delaware CFA and DTPA against all Defendants.

      **d.**     **Delaware Count 4: Violation of the Delaware Deceptive Trade Practices Act (6 Del. Code § 2531, *et seq*.) Against All Defendants.**

1013. Plaintiffs reallege and incorporate by reference all preceding

allegations as though fully set forth herein.

1014. The Delaware Plaintiff brings this count under Delaware law, individually and on behalf of the other members of the Delaware Subclasses against the Automaker Defendants and Airbag Module Defendants for his or her respective Class Vehicle(s), and ARC. For the remaining Defendants, Plaintiffs who purchased or leased their Class Vehicles in states with materially similar laws may represent Subclasses under this count against all other Defendants, and ARC.

1015. For purposes of this count, members of the Delaware Subclass shall be referred to as "Class Members."

1016. For purposes of this count, ARC, the Automaker Defendants, and the Airbag Module Defendants shall be referred to as "Defendants."

1017. Defendants, Plaintiffs, and Class Members are "persons" within the meaning of 6 Del. Code § 2531(5).

1018. The Delaware Deceptive Trade Practices Act ("Delaware DTPA") makes it unlawful to engage in a deceptive trade practice in the course of a business." 6 Del. Code § 2532(a).

1019. In the course of their business, the Defendants, through their agents, employees, and/or subsidiaries, violated the Delaware DTPA by knowingly and intentionally misrepresenting, omitting, concealing, and/or failing to disclose

material facts regarding the quality, reliability, and safety of the Class Vehicles and the Inflator Defect, as detailed above.

1020. Defendants had an ongoing duty to Plaintiffs and Class Members to refrain from unfair or deceptive practices under the Delaware DTPA in the course of their business. Specifically, they owed Plaintiffs and Class Members a duty to disclose all the material facts concerning the Inflator Defect in the Class Vehicles because:

    a.    Given their role in the design, manufacture and sale of the Defective Inflators and Class Vehicles, and their experience and knowledge as experts and long-time veterans of the automotive industry, Defendants possessed exclusive access to and were in a superior position to know the true facts about the Defective Inflators;

    b.    Given the Inflator Defect's hidden and technical nature, Plaintiffs and Class Members lack the sophisticated expertise in vehicle components and technology that would be necessary to discover the Inflator Defect on their own;

    c.    Defendants knew that the Inflator Defect gave rise to serious safety concerns for the consumers who purchased and leased the Class Vehicles;

193

d.    The Inflator Defect poses a severe risk of harm in that, among other things, the metal shrapnel can puncture and stab the occupants, causing severe and potentially fatal injuries;

e.    Defendants knew about and investigated the Inflator Defect, but then did not notify consumers about it, disclose the Inflator Defect to NHTSA, and the Automaker Defendants did not launch a comprehensive recall for all Class Vehicles, all of which individually and together deprived Plaintiffs of an opportunity that otherwise could have led them to discover the truth about the Inflator Defect in their Class Vehicles; and

f.    Defendants made, helped to make, or conspired to make incomplete representations about the safety and reliability of the Class Vehicles and their airbags, while purposefully withholding material facts about a known safety defect. Because they volunteered to provide information about the Class Vehicles that they marketed and offered for sale and lease to consumers, Defendants had the duty to disclose the whole truth.

1021. By misrepresenting the Class Vehicles as safe and reliable and free from defects, and by failing to disclose and actively concealing the dangers and risk posed by the Inflator Defect to consumers, Defendants engaged in one or more of

194

the following deceptive trade practices enumerated by the Delaware Deceptive Trade Practices Act at 6 Del. Code § 2532:

a.   Representing that the Class Vehicles and/or the Defective Inflators had a characteristic that they did not actually have—*i.e.*, that the vehicles were safe and suitable for use on the roadway, when, in fact, they were not because their airbag inflators were defectively designed such that they had an unreasonably dangerous propensity to rupture, causing severe and fatal injuries;

b.   Representing that the Class Vehicles and the Defective Inflators installed in them were of a particular quality, grade, or standard when, in fact, they were not of that quality, grade, or standard; and

c.   Failing to market, distribute, sell, and lease the Class Vehicles equipped with Defective Inflators in accordance with Defendants' previous representations—i.e., that the Class Vehicles were safe and suitable for their intended use, when, in fact, they were not because of the Inflator Defect.

6 Del. Code § 2532(5), (7), and (9).

1022. Defendants' unfair or deceptive acts or practices, including their misrepresentations, concealments, omissions, and/or suppressions of material facts,

were designed to mislead and had a tendency or capacity to mislead and create a false impression in consumers that the Class Vehicles had properly-functioning and reliable airbags. Indeed, those misrepresentations, concealments, omissions, and suppressions of material facts did in fact deceive reasonable consumers, including Plaintiffs and Class Members, about the true safety and reliability of the Class Vehicles and/or the Defective Inflators installed in them, the quality of the Class Vehicles, and the true value of the Class Vehicles.

1023. Defendants intended for Plaintiffs and Class Members to rely on their misrepresentations, omissions, and concealment—which they did by purchasing and leasing the Class Vehicles at the prices they paid believing that their vehicles would not have an Inflator Defect that would affect the quality, reliability, and safety of the Class Vehicles and their airbags.

1024. Defendants' misrepresentations, omissions, and concealment of material facts regarding the Inflator Defect and true characteristics of the Class Vehicles were material to the decisions of Plaintiffs and Class Members to purchase and lease those vehicles, as Defendants intended. Plaintiffs and Class Members were exposed to those misrepresentations, concealments, omissions, and suppressions of material facts, and relied on Defendants' misrepresentations and omissions that the Class Vehicles were safe, secure, and reliable in deciding to purchase and lease those

vehicles.

1025. Plaintiffs' and Class Members' reliance was reasonable, as they had no way of discerning that those representations were false and misleading, or otherwise learning the facts that Defendants had concealed or failed to disclose. Plaintiffs and Class Members did not, and could not, unravel Defendants' deception on their own.

1026. Had Plaintiffs and Class Members known the truth about the Inflator Defect, they would not have purchased or leased the Class Vehicles, or would have paid significantly less for them.

1027. Plaintiffs and Class Members suffered ascertainable losses and actual damages as a direct and proximate result of the Defendants' concealment, misrepresentations, and/or failure to disclose material information.

1028. Defendants' violations present a continuing risk to Plaintiffs and Class Members, as well as to the general public, because the Class Vehicles remain unsafe due to the Inflator Defect. The unlawful acts and practices complained of herein affect the public interest.

1029. Pursuant to 6 Del. Code § 2533, Plaintiffs and Class Members seek an order enjoining the above unfair or deceptive acts or practices and awarding actual damages, treble damages, restitution, attorneys' fees, and any other just and proper relief available under the Delaware DTPA against all Defendants.

e.     **Delaware Count 5: Fraud by Omission and Concealment Against All Defendants.**

1030. Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

1031. The Delaware Plaintiff brings this count under Delaware law, individually and on behalf of the other members of the Delaware Subclasses against the Automaker Defendants and Airbag Module Defendants for his or her respective Class Vehicle(s), and ARC. For the remaining Defendants, Plaintiffs who purchased or leased their Class Vehicles in states with materially similar laws may represent Subclasses under this count against all other Defendants, and ARC.

1032. For purposes of this count, members of the Delaware Subclass shall be referred to as "Class Members."

1033. For purposes of this count, ARC, the Automaker Defendants, and the Airbag Module Defendants shall be referred to as "Defendants."

1034. Defendants are liable for both fraudulent concealment and non-disclosure. *See, e.g.*, Restatement (Second) of Torts §§ 550-51 (1977).

1035. Defendants owed Plaintiffs and Class Members a duty to disclose all the material facts concerning the Defective Inflators in the Class Vehicles because:

a.     Given the Automaker Defendants' role in the design, manufacture, testing, and sale of Class Vehicles and Defective Inflators, and their

198

experience and knowledge as experts and long-time veterans of the automotive industry, they, along with ARC and the Airbag Module Defendants, possessed exclusive access to and were in a superior position to know the true facts about the Defective Inflators;

b.       Given ARC's design, development, testing and manufacture of the Defective Inflators and its experience and knowledge as experts and long-time veterans of the automotive industry, it, along with the Automaker Defendants and the Airbag Module Defendants, possessed exclusive access to and was in a superior position to know the true facts about the Defective Inflators;

c.       Given the Airbag Module Defendants' role in the design, manufacture, and testing of the airbag modules with the Defective Inflators installed in them, and their experience and knowledge as experts and long-time veterans of the automotive industry, they, along with ARC and the Automaker Defendants, possessed exclusive access to and were in a superior position to know the true facts about the Defective Inflators;

d.       Given the Inflator Defect's hidden and technical nature, Plaintiffs and Class Members lack the sophisticated expertise in vehicle components and technology that would be necessary to discover the Inflator Defect

on their own;

e.   Defendants knew that the Inflator Defect gave rise to serious safety concerns for the consumers who purchased and leased the Class Vehicles;

f.   The Inflator Defect poses a severe risk of harm in that, among other things, the metal shrapnel can puncture and stab the occupants, causing severe and potentially fatal injuries;

g.   Defendants knew about and investigated the Inflator Defect, but then did not notify consumers about it, disclose the Inflator Defect to NHTSA, and the Automaker Defendants did not launch a comprehensive recall for all Class Vehicles, all of which individually and together deprived Plaintiffs of an opportunity that otherwise could have led them to discover the truth about the Inflator Defect in their Class Vehicles; and

h.   The Automaker Defendants made, helped to make, or conspired to make incomplete representations about the safety and reliability of the Class Vehicles and their airbags, while purposefully withholding material facts about a known safety defect. Because they volunteered to provide information about the Class Vehicles that they marketed and

offered for sale and lease to consumers, the Automaker Defendants had

the duty to disclose the whole truth.

1036. In breach of their duties, Defendants failed to disclose the Inflator

Defect and that the Class Vehicles' airbags were not safe and reliable to Plaintiffs

and Class Members in connection with the sale of the Class Vehicles.

1037. The Inflator Defect within the Class Vehicles is material to the sale of

the Class Vehicles because a reasonable person would find it important in

purchasing, leasing, or retaining a new or used motor vehicle and because it directly

impacts the value of the Class Vehicles purchased or leased by Plaintiffs and Class

Members.

1038. Defendants intended for Plaintiffs and Class Members to rely on their

omissions and concealment—which they did by purchasing and leasing the Class

Vehicles at the prices they paid believing that their vehicles would not have an

Inflator Defect that would affect the quality, reliability, and safety of the Class

Vehicles and their airbags.

1039. Plaintiffs' and Class Members' reliance was reasonable because a

reasonable consumer would not have expected that the Class Vehicles contained a

safety defect that poses such a serious risk. They had no way of learning the facts

that Defendants had concealed or failed to disclose. Plaintiffs and Class Members

did not, and could not, unravel Defendants' deception on their own.

1040. Defendants actively concealed and suppressed these material facts, in whole or in part, to maintain a market for the Class Vehicles and the Defective Inflators installed in them, to protect profits, and to avoid costly recalls that would expose them to liability for those expenses and harm the commercial reputations of Defendants and their products. They did so at the expense of Plaintiffs and Class Members.

1041. If Defendants had fully and adequately disclosed the Inflator Defect to consumers, Plaintiffs and Class Members would have seen such a disclosure.

1042. Through their omissions and concealment with respect to the Inflator Defect within the Class Vehicles, Defendants intended to induce, and did induce, Plaintiffs and Class Members to either purchase a Class Vehicle that they otherwise would not have purchased, or pay more for a Class Vehicle than they otherwise would have paid.

1043. Had Plaintiffs and Class Members known of the Inflator Defect within the Class Vehicles, they would not have purchased the Class Vehicles or would have paid less for them.

1044. As a direct and proximate result of Defendants' omissions and concealment, Plaintiffs and other Class Members either overpaid for the Class

Vehicles or would not have purchased the Class Vehicles at all if the Inflator Defect had been disclosed to them. Accordingly, Defendants are liable to Plaintiffs and Class Members for their damages in an amount to be proven at trial.

1045. Defendants acted maliciously, oppressively, deliberately, with intent to defraud; in reckless disregard of the Plaintiffs' and Class Members' rights and well-being; and to enrich themselves. Defendants' misconduct warrants an assessment of punitive damages, as permitted by law, in an amount sufficient to deter such conduct in the future, which amount shall be determined according to proof at trial.

> **f.  Delaware Count 6: Unjust Enrichment Against the Automaker Defendants.**

1046. Plaintiffs reallege and incorporate by reference all allegations in Volume 1 of the Consolidated Class Action Complaint as though fully set forth herein.

1047. The Delaware Plaintiff brings this count under Delaware law, individually and on behalf of the other members of the Delaware Subclasses against the Automaker Defendants for his or her respective Class Vehicle(s). For the remaining Automaker Defendants, Plaintiffs who purchased or leased their Class Vehicles in states with materially similar laws may represent Subclasses under this count against all other Automaker Defendants.

1048. For purposes of this count, members of the Delaware Subclass shall be referred to as "Class Members."

1049. When they purchased and leased the Class Vehicles, Plaintiffs and Class Members conferred tangible and material economic benefits upon the Automaker Defendants, who readily accepted and retained these benefits.

1050. Plaintiffs and Class Members would not have purchased or leased their Class Vehicles, or would have paid less for them, had they known of the Inflator Defect at the time of purchase or lease. Therefore, the Automaker Defendants profited from the sale and lease of the Class Vehicles to the detriment and expense of Plaintiffs and Class Members.

1051. The Automaker Defendants appreciated these economic benefits. These benefits were the expected result of the Automaker Defendants acting in their pecuniary interest at the expense of their customers. They knew of these benefits because they were aware of the Inflator Defect, yet they failed to disclose this knowledge and misled the Plaintiffs and Class Members regarding the nature and quality of the Class Vehicles while profiting from this deception.

1052. It would be unjust, inequitable, and unconscionable for the Automaker Defendants to retain these benefits, including because they were procured as a result of their wrongful conduct alleged above.

1053. Plaintiffs and Class Members are entitled to restitution of the benefits the Automaker Defendants unjustly retained and/or any amounts necessary to return Plaintiffs and Class Members to the position they occupied prior to dealing with those Defendants, with such amounts to be determined at trial.

1054. Plaintiffs plead this claim separately as well as in the alternative to their claims for damages under Fed. R. Civ. P. 8(a)(3), because if the Court dismisses Plaintiffs' claims for damages enters judgment on them in favor of the Automaker Defendants, Plaintiffs will have no adequate legal remedy.

**9.    District of Columbia**

**a.    District of Columbia Count 1: Breach of Express Warranty (DC Stat. §§ 28:2-313 and 28:2A-210) Against the Automaker Defendants.**

1055. Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

1056. The District of Columbia Plaintiffs bring this count under District of Columbia law, individually and on behalf of the other members of the District of Columbia Subclasses against the Automaker Defendants for their respective Class Vehicles. For the remaining Automaker Defendants, Plaintiffs who purchased or leased their Class Vehicles in states with materially similar laws may represent

Subclasses under this count against all other Automaker Defendants.

1057. For purposes of this count, members of the District of Columbia Subclass shall be referred to as "Class Members."

1058. The Class Vehicles are "goods" under DC Stat. §§ 28:2-105(1) and 28:2A-103(a)(8).

1059. The Automaker Defendants are "merchants," "sellers," and "lessors," of the Class Vehicles under DC Stat §§ 28:2-104(1), 28:2-103(1)(d) and 28:2A-103(a)(16), respectively.

1060. Plaintiffs and Class Members who purchased and leased the Class Vehicles in the District of Columbia are "buyers" and "lessees" under DC Stat §§ 28:2-103(1)(a) and 28:2A-103(a)(15), respectively.

1061. The Automaker Defendants issued an express written warranty for each defective Class Vehicle they sold, including that:

a.    The Class Vehicles would be free of defects in materials and workmanship at the time of sale; and

b.    The Class Vehicles were safe and reliable, and their airbags would function properly in the event of a crash.

1062. The warranties listed above formed the basis of the bargain with regard to Plaintiffs' and Class Members' purchase and lease of the Class Vehicles.

206

1063. The Automaker Defendants knowingly breached their warranty for the Class Vehicles because:

a. The airbag inflators have latent defects which have a dangerous propensity to cause the inflators to rupture and eject metal shrapnel, subjecting Plaintiffs and Class Members to the risk of loss and injury; and

b. The Automaker Defendants denied, concealed, and misrepresented the Inflator Defect, in the process refusing to pay for or provide in a reasonably timely fashion the needed repairs and replacements for Plaintiffs and Class Members.

1064. The Automaker Defendants knew or should have known that the warranties were false and/or misleading. Specifically, the Automaker Defendants were aware of the Inflator Defect in the Class Vehicles, which made the vehicles inherently defective and dangerous at the time that they were sold and leased to Plaintiffs and Class Members.

1065. Plaintiffs and Class Members were exposed to the Automaker Defendants' misrepresentations, and they had no way of discerning that the Automaker Defendants' representations were false and misleading or otherwise learning the material facts that the Automaker Defendants had concealed or failed to

disclose. Accordingly, Plaintiffs and Class Members reasonably relied on the Automaker Defendants' express warranties when purchasing or leasing their Class Vehicles.

1066. Plaintiffs and Class Members timely provided the Automaker Defendants notice of the issues raised in this count and this Complaint and an opportunity to cure, as alleged in the paragraphs addressing Defendants' notice, above.

1067. Alternatively, Plaintiffs and Class Members were excused from providing the Automaker Defendants with notice and an opportunity to cure the breach, because it would have been futile. As alleged above, the Automaker Defendants knew about the Defective Inflators for years; however, to date, the Automaker Defendants have not instituted a recall or any other repair program with respect to all of the Class Vehicles, or even acknowledged that the Inflator Defect exists in all of the Class Vehicles. Therefore, they have refused to recall or repair defective vehicles. Moreover, to the extent the Automaker Defendants have issued recalls, those recalls are inadequate because, *inter alia*: (a) they are belated because the Automaker Defendants knew about the Defective Inflators for years and did nothing to recall or remedy the serious safety defect; (b) with tens of millions of vehicles impacted in existing and potential future recalls, as a result of the

Automaker Defendants' concealment of the Inflator Defect, the recalls cannot be implemented effectively due to supply constraints and resulting delays; (c) the recalls are incomplete, and apply to only a subset of the Class Vehicles.

1068. As a direct and proximate result of the Automaker Defendants' breach of their express warranties, the Class Vehicles were and are defective and the Inflator Defect was not remedied. Therefore, Plaintiff and Class Members have been damaged, in an amount to be proven at trial, through their overpayment at the time of purchase or lease for the Class Vehicles with an undisclosed safety defect that would not be remedied.

      **b.**      **District of Columbia Count 2: Breach of Implied Warranty of Merchantability (DC Stat §§ 28:2-314 and 28:2A-212) Against the Automaker Defendants.**

1069. Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

1070. The District of Columbia Plaintiffs bring this count under District of Columbia law, individually and on behalf of the other members of the District of Columbia Subclasses against the Automaker Defendants for their respective Class Vehicles. For the remaining Automaker Defendants, Plaintiffs who purchased or leased their Class Vehicles in states with materially similar laws may represent Subclasses under this count against all other Automaker Defendants.

1071. For purposes of this count, members of the District of Columbia Subclass shall be referred to as "Class Members."

1072. The Class Vehicles are "goods" under DC Stat §§ 28:2-105(1) and 28:2A-103(a)(8).

1073. The Automaker Defendants are "merchants," "sellers," and "lessors," of the Class Vehicles under DC Stat §§ 28:2-104(1), 28:2-103(1)(d) and 28:2A-103(a)(16), respectively.

1074. Plaintiffs and Class Members who purchased and leased the Class Vehicles in the District of Columbia are "buyers" and "lessees" under DC Stat §§ 28:2-103(1)(a) and 28:2A-103(a)(15), respectively.

1075. District of Columbia law conferred an implied warranty that the Class Vehicles were in merchantable condition and fit for the ordinary purpose for which they were to be used pursuant to DC Stat §§ 28:2-314 and 28:2A-212.

1076. The Class Vehicles are not merchantable, and as such the Automaker Defendants breached their implied warranties, because at the time of sale and all times thereafter:

    a.    The Class Vehicles would not pass without objection in the automotive trade given the Inflator Defect;

    b.    The Inflator Defect renders the Class Vehicles unsafe to drive and unfit

for ordinary purposes;

c.   The Class Vehicles and the airbags therein were inadequately labeled as safe and reliable, and the labeling failed to disclose the Inflator Defect; and

d.   The Class Vehicles do not conform to their labeling, which represents that the vehicles are safe and suitable for their intended use.

1077. Plaintiffs and Class Members timely provided the Automaker Defendants notice of the issues raised in this count and this Complaint and an opportunity to cure, as alleged in the paragraphs addressing Defendants' notice, above.

1078. Alternatively, Plaintiffs and Class Members were excused from providing the Automaker Defendants with notice and an opportunity to cure the breach because it would have been futile. As alleged above, the Automaker Defendants have long known that the Class Vehicles contained the Defective Inflators, and that the Defective Inflators have caused airbags to malfunction in crashes involving the Class Vehicles; however, to date, the Automaker Defendants have not instituted a recall or any other repair program with respect to all of the Class Vehicles, or even acknowledged that the Inflator Defect exists in all of those Class Vehicles. Moreover, to the extent the Automaker Defendants have issued recalls,

those recalls are inadequate because, inter alia: (a) they are belated because the Automaker Defendants knew about the Defective Inflators for years and did nothing to recall or remedy the serious safety defect; (b) with tens of millions of vehicles impacted in existing and potential future recalls, as a result of the Automaker Defendants' concealment of the Inflator Defect, the recalls cannot be implemented effectively due to supply constraints and resulting delays; (c) the recalls are incomplete, and apply to only a subset of the Class Vehicles.

1079. Plaintiffs, individually and on behalf of Class Members, seek all available monetary damages (including actual, compensatory, and punitive damages), injunctive and equitable relief, and attorneys' fees and costs.

### c. District of Columbia Count 3: Violations of the District of Columbia's Consumer Protection Procedures Act (DC Stat §§ 28-3901, *et seq*.) Against All Defendants.[10]

1080. Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

1081. The District of Columbia Plaintiffs bring this count under District of Columbia law, individually and on behalf of the other members of the District of Columbia Subclasses against the OEM and Airbag Module Defendants for their

---

[10] Plaintiffs bring this count against ARC and the Airbag Module Defendants based on their omissions and concealment of material facts only.

respective Class Vehicles, and ARC. For the remaining Defendants, Plaintiffs who purchased or leased their Class Vehicles in states with materially similar laws may represent Subclasses under this count against all other Defendants, and ARC.

1082. For purposes of this count, members of the District of Columbia Subclass shall be referred to as "Class Members."

1083. For purposes of this count, ARC, the Automaker Defendants, and the Airbag Module Defendants shall be referred to as "Defendants."

1084. Defendants, Plaintiffs and Class Members are "persons" under DC Stat § 28-3901(1).

1085. Defendants are "merchants" under DC Stat § 25-3901(3).

1086. Plaintiffs and Class Members are "consumers" under DC Stat § 28-3901(2) because they purchased the Class Vehicles primarily for personal, family, or household use.

1087. The Class Vehicles are "goods and services" under DC Stat § 28-3901(7).

1088. The District of Columbia Consumer Protection Procedures Act ("D.C. CPPA") makes it unlawful to engage in any "unfair or deceptive trade practice. DC Stat § 28-3904.

1089. Defendants' violations of the D.C. CPPA occurred repeatedly in their

213

trade or practice—including the design, manufacture, distribution, marketing, sale, and lease of the Defective Inflators and the Class Vehicles.

1090. Defendants, through their agents, employees, and/or subsidiaries, violated the D.C. CPPA by knowingly and intentionally misrepresenting, omitting, concealing, and/or failing to disclose material facts regarding the reliability, safety, and performance of the Class Vehicles and the Defective Inflators, as detailed above.

1091. Defendants had an ongoing duty to Plaintiffs and Class Members to refrain from unfair or deceptive practices under the D.C. CPPA in the course of their business. Specifically, Defendants owed Plaintiffs and Class Members a duty to disclose all the material facts concerning the Defective Inflators in the Class Vehicles because:

a.   Given ARC's design, development, testing and manufacture of the Defective Inflators and its experience and knowledge as experts and long-time veterans of the automotive industry, it, along with the Automaker Defendants and the Airbag Module Defendants, possessed exclusive access to and was in a superior position to know the true facts about the Defective Inflators;

b.   Given the Airbag Module Defendants' role in the design, manufacture, and testing of the airbag modules with the Defective Inflators installed

214

in them, and their experience and knowledge as experts and long-time veterans of the automotive industry, they, along with ARC and the Automaker Defendants, possessed exclusive access to and were in a superior position to know the true facts about the Defective Inflators;

c.    Given the Automaker Defendants' role in the design, manufacture, testing, and sale of Class Vehicles and Defective Inflators, and their experience and knowledge as experts and long-time veterans of the automotive industry, they, along with ARC and the Airbag Module Defendants, possessed exclusive access to and were in a superior position to know the true facts about the Defective Inflators;

d.    Given the Inflator Defect's hidden and technical nature, Plaintiffs and Class Members lack the sophisticated expertise in vehicle components and technology that would be necessary to discover the Inflator Defect on their own;

e.    Defendants knew that the Inflator Defect gave rise to serious safety concerns for the consumers who purchased and leased the Class Vehicles;

f.    The Inflator Defect poses a severe risk of harm in that, among other things, the metal shrapnel can puncture and stab the occupants, causing

severe and potentially fatal injuries;

g.      Defendants knew about and investigated the Inflator Defect, but then did not notify consumers about it or disclose the Inflator Defect to NHTSA, and the Automaker Defendants did not launch a comprehensive recall for all Class Vehicles, all of which individually and together deprived Plaintiffs of an opportunity that otherwise could have led them to discover the truth about the Inflator Defect in their Class Vehicles; and

h.      The Automaker Defendants made, helped to make, or conspired to make incomplete representations about the safety and reliability of the Class Vehicles and their airbags, while purposefully withholding material facts about a known safety defect. Because they volunteered to provide information about the Class Vehicles that they marketed and offered for sale and lease to consumers, the Automaker Defendants had the duty to disclose the whole truth.

1092. By misrepresenting the Class Vehicles as safe and reliable and the airbags installed in them as properly functioning and free from defects, and/or by failing to disclose and actively concealing the dangers and risk posed by the Inflator Defect to both consumers and NHTSA, Defendants engaged in one or more of the

216

following unfair or deceptive business practices as defined in DC Stat § 28-3904:

    a.    Representing that the Class Vehicles and/or the Defective Inflators had a characteristics or benefits that they did not actually have—*i.e.*, that the vehicles were safe and suitable for use on the roadway, when, in fact, they were not because their airbag inflators were defectively designed such that they had an unreasonably dangerous propensity to rupture, causing severe and fatal injuries;

    b.    Representing that the Class Vehicles and the Defective Inflators installed in them were of a particular quality, grade, or standard when, in fact, they were not of that quality, grade, or standard;

    c.    Making misrepresentations as to a material fact which has a tendency to mislead including that that the Class Vehicles and the Defective Inflators installed in them were inherently defective, defectively designed, and not suitable for their intended use despite advertising them as safe and suitable for their intended function;

    d.    Failing to state a material fact if such failure tends to mislead including that that the Class Vehicles and the Defective Inflators installed in them were inherently defective, defectively designed, and not suitable for their intended use despite advertising them as safe and suitable for their

intended function;

e.    Using inuendo or ambiguity as to a material fact, which has a tendency to mislead including that that the Class Vehicles and the Defective Inflators installed in them were inherently defective, defectively designed, and not suitable for their intended use despite advertising them as safe and suitable for their intended function;

f.    Failing to market, distribute, sell, and lease the Class Vehicles equipped with Defective Inflators in accordance with Defendants' previous representations—i.e., that the Class Vehicles were safe and suitable for their intended use, when, in fact, they were not because of the Inflator Defect; and

g.    Offering the Class Vehicles which were not in conformity with applicable consumer product safety standards.

D.C. Code § 28-3904(a), (d), (e), (f), (f-1), (h), (w).

1093. Defendants' unfair or deceptive acts or practices, including their misrepresentations, concealments, omissions, and/or suppressions of material facts, were designed to mislead and had a tendency or capacity to mislead and create a false impression in consumers that the Class Vehicles had properly-functioning and reliable airbags. Indeed, those misrepresentations, concealments, omissions, and

218

suppressions of material facts did in fact deceive reasonable consumers, including Plaintiffs and Class Members, about the true safety and reliability of the Class Vehicles and/or the Defective Inflators installed in them, the quality of the Class Vehicles, and the true value of the Class Vehicles.

1094. Defendants intended for Plaintiffs and Class Members to rely on their misrepresentations, omissions, and concealment—which they did by purchasing and leasing the Class Vehicles at the prices they paid believing that their vehicles would not have an Inflator Defect that would affect the quality, reliability, and safety of the Class Vehicles and their airbags.

1095. Defendants' misrepresentations, concealments, omissions, and suppressions of material facts regarding the Inflator Defect and true characteristics of the Class Vehicles were material to the decisions of Plaintiffs and Class Members to purchase and lease those vehicles, as Defendants intended. Plaintiffs and Class Members were exposed to those misrepresentations, concealments, omissions, and suppressions of material facts, and relied on Defendants' misrepresentations that the Class Vehicles and their airbags were safe and reliable in deciding to purchase and lease the Class Vehicles.

1096. Plaintiffs' and Class Members' reliance was reasonable, as they had no way of discerning that Defendants' representations were false and misleading, or

otherwise learning the facts that Defendants had concealed or failed to disclose. Plaintiffs and Class Members did not, and could not, unravel Defendants' deception on their own.

1097. Had they known the truth about the Inflator Defect, Plaintiffs and Class Members would not have purchased or leased the Class Vehicles, or would have paid significantly less for them.

1098. As a direct and proximate result of Defendants' deceptive practices, Plaintiffs and Class Members have sustained economic injury and loss—either by purchasing a vehicle they otherwise would not have purchased or paying more than they otherwise would have as a result of Defendants' actions and omissions alleged above—that first occurred at the time each Class Vehicle was purchased or leased.

1099. Defendants' violations present a continuing risk to Plaintiffs and Class Members, as well as to the general public, because the Class Vehicles remain unsafe due to the Defective Inflators therein. Defendants' unlawful acts and practices complained of herein affect the public interest.

1100. Pursuant to DC Stat § 28-3905(k)(2), Plaintiffs and Class Members seek an order enjoining the above unfair or deceptive acts or practices and awarding actual damages, treble damages, restitution, attorneys' fees, and any other just and proper relief available under the D.C. CPPA against all Defendants

### d. District of Columbia Count 4: Fraud by Omission and Concealment Against All Defendants.

1101. Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

1102. The District of Columbia Plaintiffs bring this count under District of Columbia law, individually and on behalf of the other members of the District of Columbia Subclasses against the Automaker Defendants and Airbag Module Defendants for their respective Class Vehicles, and ARC. For the remaining Defendants, Plaintiffs who purchased or leased their Class Vehicles in states with materially similar laws may represent Subclasses under this count against all other Defendants, and ARC.

1103. For purposes of this count, members of the District of Columbia Subclass shall be referred to as "Class Members."

1104. For purposes of this count, ARC, the Automaker Defendants, and the Airbag Module Defendants shall be referred to as "Defendants."

1105. Defendants are liable for both fraudulent concealment and non-disclosure. *See, e.g.*, Restatement (Second) of Torts §§ 550-51 (1977).

1106. Defendants owed Plaintiffs and Class Members a duty to disclose all the material facts concerning the Defective Inflators in the Class Vehicles because:

a.     Given the Automaker Defendants' role in the design, manufacture, testing, and sale of Class Vehicles and Defective Inflators, and their experience and knowledge as experts and long-time veterans of the automotive industry, they, along with ARC and the Airbag Module Defendants, possessed exclusive access to and were in a superior position to know the true facts about the Defective Inflators;

b.     Given ARC's design, development, testing and manufacture of the Defective Inflators and its experience and knowledge as experts and long-time veterans of the automotive industry, it, along with the Automaker Defendants and the Airbag Module Defendants, possessed exclusive access to and was in a superior position to know the true facts about the Defective Inflators;

c.     Given the Airbag Module Defendants' role in the design, manufacture, and testing of the airbag modules with the Defective Inflators installed in them, and their experience and knowledge as experts and long-time veterans of the automotive industry, they, along with ARC and the Automaker Defendants, possessed exclusive access to and were in a superior position to know the true facts about the Defective Inflators;

222

d.       Given the Inflator Defect's hidden and technical nature, Plaintiffs and Class Members lack the sophisticated expertise in vehicle components and technology that would be necessary to discover the Inflator Defect on their own;

e.       Defendants knew that the Inflator Defect gave rise to serious safety concerns for the consumers who purchased and leased the Class Vehicles;

f.       The Inflator Defect poses a severe risk of harm in that, among other things, the metal shrapnel can puncture and stab the occupants, causing severe and potentially fatal injuries;

g.       Defendants knew about and investigated the Inflator Defect, but then did not notify consumers about it, disclose the Inflator Defect to NHTSA, and the Automaker Defendants did not launch a comprehensive recall for all Class Vehicles, all of which individually and together deprived Plaintiffs of an opportunity that otherwise could have led them to discover the truth about the Inflator Defect in their Class Vehicles; and

h.       The Automaker Defendants made, helped to make, or conspired to make incomplete representations about the safety and reliability of the

223

Class Vehicles and their airbags, while purposefully withholding material facts about a known safety defect. Because they volunteered to provide information about the Class Vehicles that they marketed and offered for sale and lease to consumers, the Automaker Defendants had the duty to disclose the whole truth.

1107. In breach of their duties, Defendants failed to disclose the Inflator Defect and that the Class Vehicles' airbags were not safe and reliable to Plaintiffs and Class Members in connection with the sale of the Class Vehicles.

1108. The Inflator Defect within the Class Vehicles is material to the sale of the Class Vehicles because a reasonable person would find it important in purchasing, leasing, or retaining a new or used motor vehicle and because it directly impacts the value of the Class Vehicles purchased or leased by Plaintiffs and Class Members.

1109. Defendants intended for Plaintiffs and Class Members to rely on their omissions and concealment—which they did by purchasing and leasing the Class Vehicles at the prices they paid believing that their vehicles would not have an Inflator Defect that would affect the quality, reliability, and safety of the Class Vehicles and their airbags.

224

1110. Plaintiffs' and Class Members' reliance was reasonable because a reasonable consumer would not have expected that the Class Vehicles contained a safety defect that poses such a serious risk. They had no way of learning the facts that Defendants had concealed or failed to disclose. Plaintiffs and Class Members did not, and could not, unravel Defendants' deception on their own.

1111. Defendants actively concealed and suppressed these material facts, in whole or in part, to maintain a market for the Class Vehicles and the Defective Inflators installed in them, to protect profits, and to avoid costly recalls that would expose them to liability for those expenses and harm the commercial reputations of Defendants and their products. They did so at the expense of Plaintiffs and Class Members.

1112. If Defendants had fully and adequately disclosed the Inflator Defect to consumers, Plaintiffs and Class Members would have seen such a disclosure.

1113. Through their omissions and concealment with respect to the Inflator Defect within the Class Vehicles, Defendants intended to induce, and did induce, Plaintiffs and Class Members to either purchase a Class Vehicle that they otherwise would not have purchased, or pay more for a Class Vehicle than they otherwise would have paid.

1114. Had Plaintiffs and Class Members known of the Inflator Defect within

225

the Class Vehicles, they would not have purchased the Class Vehicles or would have paid less for them.

1115. As a direct and proximate result of Defendants' omissions and concealment, Plaintiffs and other Class Members either overpaid for the Class Vehicles or would not have purchased the Class Vehicles at all if the Inflator Defect had been disclosed to them. Accordingly, Defendants are liable to Plaintiffs and Class Members for their damages in an amount to be proven at trial.

1116. Defendants acted maliciously, oppressively, deliberately, with intent to defraud; in reckless disregard of the Plaintiffs' and Class Members' rights and well-being; and to enrich themselves. Defendants' misconduct warrants an assessment of punitive damages, as permitted by law, in an amount sufficient to deter such conduct in the future, which amount shall be determined according to proof at trial.

### e.   District of Columbia Count 5: Unjust Enrichment Against the Automaker Defendants.

1117. Plaintiffs reallege and incorporate by reference all allegations in Volume 1 of the Consolidated Class Action Complaint as though fully set forth herein.

1118. The District of Columbia Plaintiffs bring this count under District of Columbia law, individually and on behalf of the other members of the District of

Columbia Subclasses against the Automaker Defendants for their respective Class Vehicles. For the remaining Automaker Defendants, Plaintiffs who purchased or leased their Class Vehicles in states with materially similar laws may represent Subclasses under this count against all other Automaker Defendants.

1119. For purposes of this count, members of the District of Columbia Subclass shall be referred to as "Class Members."

1120. When they purchased and leased the Class Vehicles, Plaintiffs and Class Members conferred tangible and material economic benefits upon the Automaker Defendants, who readily accepted and retained these benefits.

1121. Plaintiffs and Class Members would not have purchased or leased their Class Vehicles, or would have paid less for them, had they known of the Inflator Defect at the time of purchase or lease. Therefore, the Automaker Defendants profited from the sale and lease of the Class Vehicles to the detriment and expense of Plaintiffs and Class Members.

1122. The Automaker Defendants appreciated these economic benefits. These benefits were the expected result of the Automaker Defendants acting in their pecuniary interest at the expense of their customers. They knew of these benefits because they were aware of the Inflator Defect, yet they failed to disclose this knowledge and misled the Plaintiffs and Class Members regarding the nature and

quality of the Class Vehicles while profiting from this deception.

1123. It would be unjust, inequitable, and unconscionable for the Automaker Defendants to retain these benefits, including because they were procured as a result of their wrongful conduct alleged above.

1124. Plaintiffs and Class Members are entitled to restitution of the benefits the Automaker Defendants unjustly retained and/or any amounts necessary to return Plaintiffs and Class Members to the position they occupied prior to dealing with those Defendants, with such amounts to be determined at trial.

1125. Plaintiffs plead this claim separately as well as in the alternative to their claims for damages under Fed. R. Civ. P. 8(a)(3), because if the Court dismisses Plaintiffs' claims for damages enters judgment on them in favor of the Automaker Defendants, Plaintiffs will have no adequate legal remedy.

### 10.   Florida

#### a.   Florida Count 1: Breach of Express Warranty (Fla. Stat. §§ 672.313 and 680.21) Against the Automaker Defendants.

1126. Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

1127. The Florida Plaintiffs bring this count under Florida law, individually and on behalf of the other members of the Florida Subclasses against the Automaker Defendants for their respective Class Vehicles. For the remaining Automaker

Defendants, Plaintiffs who purchased or leased their Class Vehicles in states with materially similar laws may represent Subclasses under this count against all other Automaker Defendants.

1128. For purposes of this count, members of the Florida Subclass shall be referred to as "Class Members."

1129. The Class Vehicles are "goods" under Fla. Stat. §§ 672.105(1) and 680.1031(1)(h).

1130. The Automaker Defendants are "merchants," "sellers," and "lessors," of the Class Vehicles under Cal. Com. Code §§ 672.104(1) and 680.1031(3)(k), § 672.103(1)(d), and § 680.1031(1)(p), respectively.

1131. Plaintiffs and Class Members who purchased and leased the Class Vehicles in Florida are "buyers" and "lessees" under Fla. Stat. §§ 672.103(1)(a) and 680.1031(1)(n).

1132. The Automaker Defendants issued an express written warranty for each defective Class Vehicle they sold, including that:

a.   The Class Vehicles would be free of defects in materials and workmanship at the time of sale; and

b.   The Class Vehicles were safe and reliable, and their airbags would function properly in the event of a crash.

229

1133. The warranties listed above formed the basis of the bargain with regard to Plaintiffs' and Class Members' purchase and lease of the Class Vehicles.

1134. The Automaker Defendants knowingly breached their warranty for the Class Vehicles because:

a.    The airbag inflators have latent defects which have a dangerous propensity to cause the inflators to rupture and eject metal shrapnel, subjecting Plaintiffs and Class Members to the risk of loss and injury; and

b.    The Automaker Defendants denied, concealed, and misrepresented the Inflator Defect, in the process refusing to pay for or provide in a reasonably timely fashion the needed repairs and replacements for Plaintiffs and Class Members.

1135. The Automaker Defendants knew or should have known that the warranties were false and/or misleading. Specifically, the Automaker Defendants were aware of the Inflator Defect in the Class Vehicles, which made the vehicles inherently defective and dangerous at the time that they were sold and leased to Plaintiffs and Class Members.

1136. Plaintiffs and Class Members were exposed to the Automaker Defendants' misrepresentations, and they had no way of discerning that the

230

Automaker Defendants' representations were false and misleading or otherwise learning the material facts that the Automaker Defendants had concealed or failed to disclose. Accordingly, Plaintiffs and Class Members reasonably relied on the Automaker Defendants' express warranties when purchasing or leasing their Class Vehicles.

1137. Plaintiffs and Class Members timely provided the Automaker Defendants notice of the issues raised in this count and this Complaint and an opportunity to cure, as alleged in the paragraphs addressing Defendants' notice, above.

1138. Alternatively, Plaintiffs and Class Members were excused from providing the Automaker Defendants with notice and an opportunity to cure the breach, because it would have been futile. As alleged above, the Automaker Defendants knew about the Defective Inflators for years; however, to date, the Automaker Defendants have not instituted a recall or any other repair program with respect to all of the Class Vehicles, or even acknowledged that the Inflator Defect exists in all of the Class Vehicles. Therefore, they have refused to recall or repair defective vehicles. Moreover, to the extent the Automaker Defendants have issued recalls, those recalls are inadequate because, *inter alia*: (a) they are belated because the Automaker Defendants knew about the Defective Inflators for years and did

nothing to recall or remedy the serious safety defect; (b) with tens of millions of vehicles impacted in existing and potential future recalls, as a result of the Automaker Defendants' concealment of the Inflator Defect, the recalls cannot be implemented effectively due to supply constraints and resulting delays; (c) the recalls are incomplete, and apply to only a subset of the Class Vehicles.

1139. As a direct and proximate result of the Automaker Defendants' breach of their express warranties, the Class Vehicles were and are defective and the Inflator Defect was not remedied. Therefore, Plaintiff and Class Members have been damaged, in an amount to be proven at trial, through their overpayment at the time of purchase or lease for the Class Vehicles with an undisclosed safety defect that would not be remedied.

      **b.**    **Florida Count 2: Breach of Implied Warranty of Merchantability (Fla. Stat. §§ 672.314 and 680.212) Against the Automaker Defendants.**

1140. Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

1141. The Florida Plaintiffs bring this count under Florida law, individually and on behalf of the other members of the Florida Subclasses against the Automaker Defendants for their respective Class Vehicles. For the remaining Automaker Defendants, Plaintiffs who purchased or leased their Class Vehicles in states with

materially similar laws may represent Subclasses under this count against all other Automaker Defendants.

1142. For purposes of this count, members of the Florida Subclass shall be referred to as "Class Members."

1143. The Class Vehicles are "goods" under Fla. Stat. §§ 672.105(1) and 680.1031(1)(h).

1144. The Automaker Defendants are "merchants," "sellers," and "lessors," of the Class Vehicles under Cal. Com. Code §§ 672.104(1) and 680.1031(3)(k), § 672.103(1)(d), and § 680.1031(1)(p), respectively.

1145. Plaintiffs and Class Members who purchased and leased the Class Vehicles in Florida are "buyers" and "lessees" under Fla. Stat. §§ 672.103(1)(a) and 680.1031(1)(n).

1146. Florida law conferred an implied warranty that the Class Vehicles were in merchantable condition and fit for the ordinary purpose for which they were to be used pursuant to Fla. Stat. §§ 672.314 and 680.212.

1147. The Class Vehicles are not merchantable, and as such the Automaker Defendants breached their implied warranties, because at the time of sale and all times thereafter:

a.    The Class Vehicles would not pass without objection in the automotive

trade given the Inflator Defect;

b.     The Inflator Defect renders the Class Vehicles unsafe to drive and unfit for ordinary purposes;

c.     The Class Vehicles and the airbags therein were inadequately labeled as safe and reliable, and the labeling failed to disclose the Inflator Defect; and

d.     The Class Vehicles do not conform to their labeling, which represents that the vehicles are safe and suitable for their intended use.

1148. Plaintiffs and Class Members timely provided the Automaker Defendants notice of the issues raised in this count and this Complaint and an opportunity to cure, as alleged in the paragraphs addressing Defendants' notice, above.

1149. Alternatively, Plaintiffs and Class Members were excused from providing the Automaker Defendants with notice and an opportunity to cure the breach because it would have been futile. As alleged above, the Automaker Defendants have long known that the Class Vehicles contained the Defective Inflators, and that the Defective Inflators have caused airbags to malfunction in crashes involving the Class Vehicles; however, to date, the Automaker Defendants have not instituted a recall or any other repair program with respect to all of the Class

Vehicles, or even acknowledged that the Inflator Defect exists in all of those Class Vehicles. Moreover, to the extent the Automaker Defendants have issued recalls, those recalls are inadequate because, inter alia: (a) they are belated because the Automaker Defendants knew about the Defective Inflators for years and did nothing to recall or remedy the serious safety defect; (b) with tens of millions of vehicles impacted in existing and potential future recalls, as a result of the Automaker Defendants' concealment of the Inflator Defect, the recalls cannot be implemented effectively due to supply constraints and resulting delays; (c) the recalls are incomplete, and apply to only a subset of the Class Vehicles.

1150. Plaintiffs, individually and on behalf of Class Members, seek all available monetary damages (including actual, compensatory, and punitive damages), injunctive and equitable relief, and attorneys' fees and costs.

> ### c.   Florida Count 3: Violations of the Florida Deceptive & Unfair Trade Practices Act (Fla. Stat. § 501.201, *et seq.*) Against All Defendants.[11]

1151. Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

---

[11] Plaintiffs bring this count against ARC and the Airbag Module Defendants based on their omissions and concealment of material facts only.

1152. The Florida Plaintiffs bring this count under Florida law, individually and on behalf of the other members of the Florida Subclasses against the Automaker Defendants and Airbag Module Defendants for their respective Class Vehicles, and ARC. For the remaining Defendants, Plaintiffs who purchased or leased their Class Vehicles in states with materially similar laws may represent Subclasses under this count against all other Defendants, and ARC.

1153. For purposes of this count, members of the Florida Subclass shall be referred to as "Class Members."

1154. For purposes of this count, ARC, the Automaker Defendants, and the Airbag Module Defendants shall be referred to as "Defendants."

1155. Plaintiffs and Class Members are "consumers" under Fla. Stat. § 501.203(7) because they purchased the Class Vehicles primarily for personal, family, or household use.

1156. Defendants were and are engaged in "trade or commerce" under the meaning of Fla. Stat. § 501.203(8).

1157. The Florida Unfair and Deceptive Trade Practices Act ("Florida UDTPA") prohibits "[u]nfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices in the conduct of any trade or commerce." Fla. Stat. § 501.204(1).

236

1158. Defendants' violations of the Florida UDTPA occurred repeatedly in their trade or practice—including the design, manufacture, distribution, marketing, sale, and lease of the Defective Inflators and the Class Vehicles.

1159. Defendants, through their agents, employees, and/or subsidiaries, violated the Florida UDTPA by knowingly and intentionally misrepresenting, omitting, concealing, and/or failing to disclose material facts regarding the reliability, safety, and performance of the Class Vehicles and the Defective Inflators, as detailed above.

1160. Defendants had an ongoing duty to Plaintiffs and Class Members to refrain from unfair or deceptive practices under the Florida UDTPA in the course of their business. Specifically, Defendants owed Plaintiffs and Class Members a duty to disclose all the material facts concerning the Defective Inflators in the Class Vehicles because:

     a.    Given ARC's design, development, testing and manufacture of the Defective Inflators and its experience and knowledge as experts and long-time veterans of the automotive industry, it, along with the Automaker Defendants and the Airbag Module Defendants, possessed exclusive access to and was in a superior position to know the true facts about the Defective Inflators;

237

b. Given the Airbag Module Defendants' role in the design, manufacture, and testing of the airbag modules with the Defective Inflators installed in them, and their experience and knowledge as experts and long-time veterans of the automotive industry, they, along with ARC and the Automaker Defendants, possessed exclusive access to and were in a superior position to know the true facts about the Defective Inflators;

c. Given the Automaker Defendants' role in the design, manufacture, testing, and sale of Class Vehicles and Defective Inflators, and their experience and knowledge as experts and long-time veterans of the automotive industry, they, along with ARC and the Airbag Module Defendants, possessed exclusive access to and were in a superior position to know the true facts about the Defective Inflators;

d. Given the Inflator Defect's hidden and technical nature, Plaintiffs and Class Members lack the sophisticated expertise in vehicle components and technology that would be necessary to discover the Inflator Defect on their own;

e. Defendants knew that the Inflator Defect gave rise to serious safety concerns for the consumers who purchased and leased the Class Vehicles;

238

f.     The Inflator Defect poses a severe risk of harm in that, among other things, the metal shrapnel can puncture and stab the occupants, causing severe and potentially fatal injuries;

g.     Defendants knew about and investigated the Inflator Defect, but then did not notify consumers about it or disclose the Inflator Defect to NHTSA, and the Automaker Defendants did not launch a comprehensive recall for all Class Vehicles, all of which individually and together deprived Plaintiffs of an opportunity that otherwise could have led them to discover the truth about the Inflator Defect in their Class Vehicles; and

h.     The Automaker Defendants made, helped to make, or conspired to make incomplete representations about the safety and reliability of the Class Vehicles and their airbags, while purposefully withholding material facts about a known safety defect. Because they volunteered to provide information about the Class Vehicles that they marketed and offered for sale and lease to consumers, the Automaker Defendants had the duty to disclose the whole truth.

1161. By misrepresenting the Class Vehicles as safe and reliable and the airbags installed in them as properly-functioning and free from defects, and/or by

failing to disclose and actively concealing the dangers and risk posed by the Inflator Defect to both consumers and NHTSA, Defendants engaged in unfair methods of competition and unfair or deceptive acts or practices in the conduct of trade or commerce, as prohibited by Fla. Stat. § 501.204(1).

1162. Defendants' unfair or deceptive acts or practices, including their misrepresentations, concealments, omissions, and/or suppressions of material facts, were designed to mislead and had a tendency or capacity to mislead and create a false impression in consumers that the Class Vehicles had properly-functioning and reliable airbags. Indeed, those misrepresentations, concealments, omissions, and suppressions of material facts did in fact deceive reasonable consumers, including Plaintiffs and Class Members, about the true safety and reliability of the Class Vehicles and/or the Defective Inflators installed in them, the quality of the Class Vehicles, and the true value of the Class Vehicles.

1163. Defendants intended for Plaintiffs and Class Members to rely on their misrepresentations, omissions, and concealment—which they did by purchasing and leasing the Class Vehicles at the prices they paid believing that their vehicles would not have an Inflator Defect that would affect the quality, reliability, and safety of the Class Vehicles and their airbags.

1164. Defendants'   misrepresentations,   concealments,   omissions,   and

240

suppressions of material facts regarding the Inflator Defect and true characteristics of the Class Vehicles were material to the decisions of Plaintiffs and Class Members to purchase and lease those vehicles, as Defendants intended. Plaintiffs and Class Members were exposed to those misrepresentations, concealments, omissions, and suppressions of material facts, and relied on Defendants' misrepresentations that the Class Vehicles and their airbags were safe and reliable in deciding to purchase and lease the Class Vehicles.

1165. Plaintiffs' and Class Members' reliance was reasonable, as they had no way of discerning that Defendants' representations were false and misleading, or otherwise learning the facts that Defendants had concealed or failed to disclose. Plaintiffs and Class Members did not, and could not, unravel Defendants' deception on their own.

1166. Had they known the truth about the Inflator Defect, Plaintiffs and Class Members would not have purchased or leased the Class Vehicles, or would have paid significantly less for them.

1167. As a direct and proximate result of Defendants' deceptive practices, Plaintiffs and Class Members have sustained economic injury and loss—either by purchasing a vehicle they otherwise would not have purchased or paying more than they otherwise would have as a result of Defendants' actions and omissions alleged

above—that first occurred at the time each Class Vehicle was purchased or leased.

1168. Defendants' violations present a continuing risk to Plaintiffs and Class Members, as well as to the general public, because the Class Vehicles remain unsafe due to the Defective Inflators therein. Defendants' unlawful acts and practices complained of herein affect the public interest.

1169. Pursuant to Fla. Stat. § 501.211, Plaintiffs and Class Members seek an order enjoining the above unfair or deceptive acts or practices and awarding actual damages, treble damages, restitution, attorneys' fees, and any other just and proper relief available under the Florida UDTPA against all Defendants.

### d.   Florida Count 4: Fraud by Omission and Concealment Against All Defendants.

1170. Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

1171. The Florida Plaintiffs bring this count under Florida law, individually and on behalf of the other members of the Florida Subclasses against the Automaker Defendants and Airbag Module Defendants for their respective Class Vehicles, and ARC. For the remaining Defendants, Plaintiffs who purchased or leased their Class Vehicles in states with materially similar laws may represent Subclasses under this count against all other Defendants, and ARC.

242

1172. For purposes of this count, members of the Florida Subclass shall be referred to as "Class Members."

1173. For purposes of this count, ARC, the Automaker Defendants, and the Airbag Module Defendants shall be referred to as "Defendants."

1174. Defendants are liable for both fraudulent concealment and non-disclosure. *See, e.g.*, Restatement (Second) of Torts §§ 550-51 (1977).

1175. Defendants owed Plaintiffs and Class Members a duty to disclose all the material facts concerning the Defective Inflators in the Class Vehicles because:

a.      Given the Automaker Defendants' role in the design, manufacture, testing, and sale of Class Vehicles and Defective Inflators, and their experience and knowledge as experts and long-time veterans of the automotive industry, they, along with ARC and the Airbag Module Defendants, possessed exclusive access to and were in a superior position to know the true facts about the Defective Inflators;

b.      Given ARC's design, development, testing and manufacture of the Defective Inflators and its experience and knowledge as experts and long-time veterans of the automotive industry, it, along with the Automaker Defendants and the Airbag Module Defendants, possessed exclusive access to and was in a superior position to know the true facts

243

about the Defective Inflators;

c.      Given the Airbag Module Defendants' role in the design, manufacture, and testing of the airbag modules with the Defective Inflators installed in them, and their experience and knowledge as experts and long-time veterans of the automotive industry, they, along with ARC and the Automaker Defendants, possessed exclusive access to and were in a superior position to know the true facts about the Defective Inflators;

d.      Given the Inflator Defect's hidden and technical nature, Plaintiffs and Class Members lack the sophisticated expertise in vehicle components and technology that would be necessary to discover the Inflator Defect on their own;

e.      Defendants knew that the Inflator Defect gave rise to serious safety concerns for the consumers who purchased and leased the Class Vehicles;

f.      The Inflator Defect poses a severe risk of harm in that, among other things, the metal shrapnel can puncture and stab the occupants, causing severe and potentially fatal injuries;

g.      Defendants knew about and investigated the Inflator Defect, but then did not notify consumers about it, disclose the Inflator Defect to

NHTSA, and the Automaker Defendants did not launch a comprehensive recall for all Class Vehicles, all of which individually and together deprived Plaintiffs of an opportunity that otherwise could have led them to discover the truth about the Inflator Defect in their Class Vehicles; and

h.   The Automaker Defendants made, helped to make, or conspired to make incomplete representations about the safety and reliability of the Class Vehicles and their airbags, while purposefully withholding material facts about a known safety defect. Because they volunteered to provide information about the Class Vehicles that they marketed and offered for sale and lease to consumers, the Automaker Defendants had the duty to disclose the whole truth.

1176. In breach of their duties, Defendants failed to disclose the Inflator Defect and that the Class Vehicles' airbags were not safe and reliable to Plaintiffs and Class Members in connection with the sale of the Class Vehicles.

1177. The Inflator Defect within the Class Vehicles is material to the sale of the Class Vehicles because a reasonable person would find it important in purchasing, leasing, or retaining a new or used motor vehicle and because it directly impacts the value of the Class Vehicles purchased or leased by Plaintiffs and Class

Members.

1178. Defendants intended for Plaintiffs and Class Members to rely on their omissions and concealment—which they did by purchasing and leasing the Class Vehicles at the prices they paid believing that their vehicles would not have an Inflator Defect that would affect the quality, reliability, and safety of the Class Vehicles and their airbags.

1179. Plaintiffs' and Class Members' reliance was reasonable because a reasonable consumer would not have expected that the Class Vehicles contained a safety defect that poses such a serious risk. They had no way of learning the facts that Defendants had concealed or failed to disclose. Plaintiffs and Class Members did not, and could not, unravel Defendants' deception on their own.

1180. Defendants actively concealed and suppressed these material facts, in whole or in part, to maintain a market for the Class Vehicles and the Defective Inflators installed in them, to protect profits, and to avoid costly recalls that would expose them to liability for those expenses and harm the commercial reputations of Defendants and their products. They did so at the expense of Plaintiffs and Class Members.

1181. If Defendants had fully and adequately disclosed the Inflator Defect to consumers, Plaintiffs and Class Members would have seen such a disclosure.

246

1182. Through their omissions and concealment with respect to the Inflator Defect within the Class Vehicles, Defendants intended to induce, and did induce, Plaintiffs and Class Members to either purchase a Class Vehicle that they otherwise would not have purchased, or pay more for a Class Vehicle than they otherwise would have paid.

1183. Had Plaintiffs and Class Members known of the Inflator Defect within the Class Vehicles, they would not have purchased the Class Vehicles or would have paid less for them.

1184. As a direct and proximate result of Defendants' omissions and concealment, Plaintiffs and other Class Members either overpaid for the Class Vehicles or would not have purchased the Class Vehicles at all if the Inflator Defect had been disclosed to them. Accordingly, Defendants are liable to Plaintiffs and Class Members for their damages in an amount to be proven at trial.

1185. Defendants acted maliciously, oppressively, deliberately, with intent to defraud; in reckless disregard of the Plaintiffs' and Class Members' rights and well-being; and to enrich themselves. Defendants' misconduct warrants an assessment of punitive damages, as permitted by law, in an amount sufficient to deter such conduct in the future, which amount shall be determined according to proof at trial.

e.      **Florida Count 5: Unjust Enrichment Against the Automaker Defendants.**

1186. Plaintiffs reallege and incorporate by reference all allegations in Volume 1 of the Consolidated Class Action Complaint as though fully set forth herein.

1187. The Florida Plaintiffs bring this count under Florida law, individually and on behalf of the other members of the Florida Subclasses against the Automaker Defendants for their respective Class Vehicles. For the remaining Automaker Defendants, Plaintiffs who purchased or leased their Class Vehicles in states with materially similar laws may represent Subclasses under this count against all other Automaker Defendants.

1188. For purposes of this count, members of the Florida Subclass shall be referred to as "Class Members."

1189. When they purchased and leased the Class Vehicles, Plaintiffs and Class Members conferred tangible and material economic benefits upon the Automaker Defendants, who readily accepted and retained these benefits.

1190. Plaintiffs and Class Members would not have purchased or leased their Class Vehicles, or would have paid less for them, had they known of the Inflator Defect at the time of purchase or lease. Therefore, the Automaker Defendants profited from the sale and lease of the Class Vehicles to the detriment and expense

of Plaintiffs and Class Members.

1191. The Automaker Defendants appreciated these economic benefits. These benefits were the expected result of the Automaker Defendants acting in their pecuniary interest at the expense of their customers. They knew of these benefits because they were aware of the Inflator Defect, yet they failed to disclose this knowledge and misled the Plaintiffs and Class Members regarding the nature and quality of the Class Vehicles while profiting from this deception.

1192. It would be unjust, inequitable, and unconscionable for the Automaker Defendants to retain these benefits, including because they were procured as a result of their wrongful conduct alleged above.

1193. Plaintiffs and Class Members are entitled to restitution of the benefits the Automaker Defendants unjustly retained and/or any amounts necessary to return Plaintiffs and Class Members to the position they occupied prior to dealing with those Defendants, with such amounts to be determined at trial.

1194. Plaintiffs plead this claim separately as well as in the alternative to their claims for damages under Fed. R. Civ. P. 8(a)(3), because if the Court dismisses Plaintiffs' claims for damages enters judgment on them in favor of the Automaker Defendants, Plaintiffs will have no adequate legal remedy.

**11.    Georgia**

a.    **Georgia Count 1: Breach of Express Warranty (Ga. Code. Ann. §§ 11-2-313 and 11-2A-210) Against the Automaker Defendants.**

1195. Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

1196. The Georgia Plaintiffs bring this count under Georgia law, individually and on behalf of the other members of the Georgia Subclasses against the Automaker Defendants for their respective Class Vehicles. For the remaining Automaker Defendants, Plaintiffs who purchased or leased their Class Vehicles in states with materially similar laws may represent Subclasses under this count against all other Automaker Defendants.

1197. For purposes of this count, members of the Georgia Subclass shall be referred to as "Class Members."

1198. The Class Vehicles are "goods" under Ga. Code Ann. §§ 11-2-105(1) and 11-2A-103(1)(h).

1199. The Automaker Defendants are "merchants," "sellers," and "lessors," of the Class Vehicles under Ga. Code Ann. §§ 11-2-104(1) and 11-2A-103(3), § 11-2-103(1)(d) and § 11-2A-103(1)(p), respectively.

1200. Plaintiffs and Class Members who purchased and leased the Class Vehicles in Georgia are "buyers" and "lessees" under Ga. Code Ann. §§ 11-2-

103(1)(a) and 11-2A-103(1)(n).

1201. The Automaker Defendants issued an express written warranty for each defective Class Vehicle they sold, including that:

a.     The Class Vehicles would be free of defects in materials and workmanship at the time of sale; and

b.     The Class Vehicles were safe and reliable, and their airbags would function properly in the event of a crash.

1202. The warranties listed above formed the basis of the bargain with regard to Plaintiffs' and Class Members' purchase and lease of the Class Vehicles.

1203. The Automaker Defendants knowingly breached their warranty for the Class Vehicles because:

a.     The airbag inflators have latent defects which have a dangerous propensity to cause the inflators to rupture and eject metal shrapnel, subjecting Plaintiffs and Class Members to the risk of loss and injury; and

b.     The Automaker Defendants denied, concealed, and misrepresented the Inflator Defect, in the process refusing to pay for or provide in a reasonably timely fashion the needed repairs and replacements for Plaintiffs and Class Members.

1204. The Automaker Defendants knew or should have known that the warranties were false and/or misleading. Specifically, the Automaker Defendants were aware of the Inflator Defect in the Class Vehicles, which made the vehicles inherently defective and dangerous at the time that they were sold and leased to Plaintiffs and Class Members.

1205. Plaintiffs and Class Members were exposed to the Automaker Defendants' misrepresentations, and they had no way of discerning that the Automaker Defendants' representations were false and misleading or otherwise learning the material facts that the Automaker Defendants had concealed or failed to disclose. Accordingly, Plaintiffs and Class Members reasonably relied on the Automaker Defendants' express warranties when purchasing or leasing their Class Vehicles.

1206. Plaintiffs and Class Members timely provided the Automaker Defendants notice of the issues raised in this count and this Complaint and an opportunity to cure, as alleged in the paragraphs addressing Defendants' notice, above.

1207. Alternatively, Plaintiffs and Class Members were excused from providing the Automaker Defendants with notice and an opportunity to cure the breach, because it would have been futile. As alleged above, the Automaker

Defendants knew about the Defective Inflators for years; however, to date, the Automaker Defendants have not instituted a recall or any other repair program with respect to all of the Class Vehicles, or even acknowledged that the Inflator Defect exists in all of the Class Vehicles. Therefore, they have refused to recall or repair defective vehicles. Moreover, to the extent the Automaker Defendants have issued recalls, those recalls are inadequate because, *inter alia*: (a) they are belated because the Automaker Defendants knew about the Defective Inflators for years and did nothing to recall or remedy the serious safety defect; (b) with tens of millions of vehicles impacted in existing and potential future recalls, as a result of the Automaker Defendants' concealment of the Inflator Defect, the recalls cannot be implemented effectively due to supply constraints and resulting delays; (c) the recalls are incomplete, and apply to only a subset of the Class Vehicles.

1208. As a direct and proximate result of the Automaker Defendants' breach of their express warranties, the Class Vehicles were and are defective and the Inflator Defect was not remedied. Therefore, Plaintiff and Class Members have been damaged, in an amount to be proven at trial, through their overpayment at the time of purchase or lease for the Class Vehicles with an undisclosed safety defect that would not be remedied.

### b. Georgia Count 2: Breach of Implied Warranty of Merchantability (Ga. Code Ann. §§ 11-2-314 and 11-2A-212) Against the Automaker Defendants.

1209. Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

1210. The Georgia Plaintiffs bring this count under Georgia law, individually and on behalf of the other members of the Georgia Subclasses against the Automaker Defendants for their respective Class Vehicles. For the remaining Automaker Defendants, Plaintiffs who purchased or leased their Class Vehicles in states with materially similar laws may represent Subclasses under this count against all other Automaker Defendants.

1211. For purposes of this count, members of the Georgia Subclass shall be referred to as "Class Members."

1212. The Class Vehicles are "goods" under Ga. Code Ann. §§ 11-2-105(1) and 11-2A-103(1)(h).

1213. The Automaker Defendants are "merchants," "sellers," and "lessors," of the Class Vehicles under Ga. Code Ann. §§ 11-2-104(1) and 11-2A-103(3), § 11-2-103(1)(d) and § 11-2A-103(1)(p), respectively.

1214. Georgia law conferred an implied warranty that the Class Vehicles were in merchantable condition and fit for the ordinary purpose for which they were to be

used pursuant to Cal. Com. Code §§ 2314 and 10212.

1215. Plaintiffs and Class Members who purchased and leased the Class Vehicles in Georgia are "buyers" and "lessees" under Ga. Code Ann. §§ 11- 2-314 and 11-2A-212.

1216. The Class Vehicles are not merchantable, and as such the Automaker Defendants breached their implied warranties, because at the time of sale and all times thereafter:

a.   The Class Vehicles would not pass without objection in the automotive trade given the Inflator Defect;

b.   The Inflator Defect renders the Class Vehicles unsafe to drive and unfit for ordinary purposes;

c.   The Class Vehicles and the airbags therein were inadequately labeled as safe and reliable, and the labeling failed to disclose the Inflator Defect; and

d.   The Class Vehicles do not conform to their labeling, which represents that the vehicles are safe and suitable for their intended use.

1217. Plaintiffs and Class Members timely provided the Automaker Defendants notice of the issues raised in this count and this Complaint and an opportunity to cure, as alleged in the paragraphs addressing Defendants' notice,

above.

1218. Alternatively, Plaintiffs and Class Members were excused from providing the Automaker Defendants with notice and an opportunity to cure the breach because it would have been futile. As alleged above, the Automaker Defendants have long known that the Class Vehicles contained the Defective Inflators, and that the Defective Inflators have caused airbags to malfunction in crashes involving the Class Vehicles; however, to date, the Automaker Defendants have not instituted a recall or any other repair program with respect to all of the Class Vehicles, or even acknowledged that the Inflator Defect exists in all of those Class Vehicles. Moreover, to the extent the Automaker Defendants have issued recalls, those recalls are inadequate because, inter alia: (a) they are belated because the Automaker Defendants knew about the Defective Inflators for years and did nothing to recall or remedy the serious safety defect; (b) with tens of millions of vehicles impacted in existing and potential future recalls, as a result of the Automaker Defendants' concealment of the Inflator Defect, the recalls cannot be implemented effectively due to supply constraints and resulting delays; (c) the recalls are incomplete, and apply to only a subset of the Class Vehicles.

1219. Plaintiffs, individually and on behalf of Class Members, seek all available monetary damages (including actual, compensatory, and punitive

damages), injunctive and equitable relief, and attorneys' fees and costs.

> ### c. Georgia Count 3: Violations of the Georgia Uniform Deceptive Trade Practices Act (Ga. Code Ann. §§ 10-1-370, *et seq*.) Against All Defendants.[12]

1220. Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

1221. The Georgia Plaintiffs bring this count under Georgia law, individually and on behalf of the other members of the Georgia Subclasses against the Automaker Defendants and Airbag Module Defendants for their respective Class Vehicles, and ARC. For the remaining Defendants, Plaintiffs who purchased or leased their Class Vehicles in states with materially similar laws may represent Subclasses under this count against all other Defendants, and ARC.

1222. For purposes of this count, members of the Georgia Subclass shall be referred to as "Class Members."

1223. For purposes of this count, ARC, the Automaker Defendants, and the Airbag Module Defendants shall be referred to as "Defendants."

1224. Defendants, Plaintiffs and Class Members are "persons" under Ga. Code. Ann. § 10-1-371(5).

---

[12] Plaintiffs bring this count against ARC and the Airbag Module Defendants based on their omissions and concealment of material facts only.

1225. The Georgia Uniform Deceptive Trade Practices Act ("Georgia UDPTA") prohibits any "deceptive trade practices," which include misrepresenting the "standard, quality, or grade" of goods or services, and engaging "in any other conduct which similarly creates a likelihood of confusion or of misunderstanding." Ga. Code. Ann. § 10-1-372(a).

1226. Defendants' violations of the Georgia UDPTA occurred repeatedly in their trade or practice—including the design, manufacture, distribution, marketing, sale, and lease of the Defective Inflators and the Class Vehicles.

1227. Defendants, through their agents, employees, and/or subsidiaries, violated the Georgia UDPTA by knowingly and intentionally misrepresenting, omitting, concealing, and/or failing to disclose material facts regarding the reliability, safety, and performance of the Class Vehicles and the Defective Inflators, as detailed above.

1228. Defendants had an ongoing duty to Plaintiffs and Class Members to refrain from unfair or deceptive practices under the Georgia UDPTA in the course of their business. Specifically, Defendants owed Plaintiffs and Class Members a duty to disclose all the material facts concerning the Defective Inflators in the Class Vehicles because:

a.     Given ARC's design, development, testing and manufacture of the

Defective Inflators and its experience and knowledge as experts and long-time veterans of the automotive industry, it, along with the Automaker Defendants and the Airbag Module Defendants, possessed exclusive access to and was in a superior position to know the true facts about the Defective Inflators;

b. Given the Airbag Module Defendants' role in the design, manufacture, and testing of the airbag modules with the Defective Inflators installed in them, and their experience and knowledge as experts and long-time veterans of the automotive industry, they, along with ARC and the Automaker Defendants, possessed exclusive access to and were in a superior position to know the true facts about the Defective Inflators;

c. Given the Automaker Defendants' role in the design, manufacture, testing, and sale of Class Vehicles and Defective Inflators, and their experience and knowledge as experts and long-time veterans of the automotive industry, they, along with ARC and the Airbag Module Defendants, possessed exclusive access to and were in a superior position to know the true facts about the Defective Inflators;

d. Given the Inflator Defect's hidden and technical nature, Plaintiffs and Class Members lack the sophisticated expertise in vehicle components

and technology that would be necessary to discover the Inflator Defect on their own;

e.   Defendants knew that the Inflator Defect gave rise to serious safety concerns for the consumers who purchased and leased the Class Vehicles;

f.   The Inflator Defect poses a severe risk of harm in that, among other things, the metal shrapnel can puncture and stab the occupants, causing severe and potentially fatal injuries;

g.   Defendants knew about and investigated the Inflator Defect, but then did not notify consumers about it or disclose the Inflator Defect to NHTSA, and the Automaker Defendants did not launch a comprehensive recall for all Class Vehicles, all of which individually and together deprived Plaintiffs of an opportunity that otherwise could have led them to discover the truth about the Inflator Defect in their Class Vehicles; and

h.   The Automaker Defendants made, helped to make, or conspired to make incomplete representations about the safety and reliability of the Class Vehicles and their airbags, while purposefully withholding material facts about a known safety defect. Because they volunteered

to provide information about the Class Vehicles that they marketed and offered for sale and lease to consumers, the Automaker Defendants had the duty to disclose the whole truth.

1229. By misrepresenting the Class Vehicles as safe and reliable and the airbags installed in them as properly functioning and free from defects, and/or by failing to disclose and actively concealing the dangers and risk posed by the Inflator Defect to both consumers and NHTSA, Defendants engaged in one or more of the following unfair or deceptive business practices as defined in Cal. Civ. Code § 1770(a):

a. Representing that the Class Vehicles and/or the Defective Inflators had a characteristic that they did not actually have—*i.e.*, that the vehicles were safe and suitable for use on the roadway, when, in fact, they were not because their airbag inflators were defectively designed such that they had an unreasonably dangerous propensity to rupture, causing severe and fatal injuries;

b. Representing that the Class Vehicles and the Defective Inflators installed in them were of a particular quality, grade, or standard when, in fact, they were not of that quality, grade, or standard;

c. Concealing and failing to disclose that the Class Vehicles and the

261

Defective Inflators installed in them were inherently defective, defectively designed, and not suitable for their intended use despite advertising them as safe and suitable for their intended function;

d.      Failing to market, distribute, sell, and lease the Class Vehicles equipped with Defective Inflators in accordance with Defendants' previous representations—i.e., that the Class Vehicles were safe and suitable for their intended use, when, in fact, they were not because of the Inflator Defect; and

e.      Engaging in conduct which creates a likelihood of confusion or of misleading persons regarding the Class Vehicles.

Ga. Code. Ann. § 10-1-372(5), (7), (9), (12).

1230. Defendants' unfair or deceptive acts or practices, including their misrepresentations, concealments, omissions, and/or suppressions of material facts, were designed to mislead and had a tendency or capacity to mislead and create a false impression in consumers that the Class Vehicles had properly-functioning and reliable airbags. Indeed, those misrepresentations, concealments, omissions, and suppressions of material facts did in fact deceive reasonable consumers, including Plaintiffs and Class Members, about the true safety and reliability of the Class Vehicles and/or the Defective Inflators installed in them, the quality of the Class

Vehicles, and the true value of the Class Vehicles.

1231. Defendants intended for Plaintiffs and Class Members to rely on their misrepresentations, omissions, and concealment—which they did by purchasing and leasing the Class Vehicles at the prices they paid believing that their vehicles would not have an Inflator Defect that would affect the quality, reliability, and safety of the Class Vehicles and their airbags.

1232. Defendants' misrepresentations, concealments, omissions, and suppressions of material facts regarding the Inflator Defect and true characteristics of the Class Vehicles were material to the decisions of Plaintiffs and Class Members to purchase and lease those vehicles, as Defendants intended. Plaintiffs and Class Members were exposed to those misrepresentations, concealments, omissions, and suppressions of material facts, and relied on Defendants' misrepresentations that the Class Vehicles and their airbags were safe and reliable in deciding to purchase and lease the Class Vehicles.

1233. Plaintiffs' and Class Members' reliance was reasonable, as they had no way of discerning that Defendants' representations were false and misleading, or otherwise learning the facts that Defendants had concealed or failed to disclose. Plaintiffs and Class Members did not, and could not, unravel Defendants' deception on their own.

1234. Had they known the truth about the Inflator Defect, Plaintiffs and Class Members would not have purchased or leased the Class Vehicles, or would have paid significantly less for them.

1235. As a direct and proximate result of Defendants' deceptive practices, Plaintiffs and Class Members have sustained economic injury and loss—either by purchasing a vehicle they otherwise would not have purchased or paying more than they otherwise would have as a result of Defendants' actions and omissions alleged above—that first occurred at the time each Class Vehicle was purchased or leased.

1236. Defendants' violations present a continuing risk to Plaintiffs and Class Members, as well as to the general public, because the Class Vehicles remain unsafe due to the Defective Inflators therein. Defendants' unlawful acts and practices complained of herein affect the public interest.

1237. Pursuant to Ga. Code. Ann § 10-1-373, Plaintiffs and Class Members seek an order enjoining the above unfair or deceptive acts or practices and awarding actual damages, treble damages, restitution, attorneys' fees, and any other just and proper relief available under the Georgia UDPTA against all Defendants.

264

### d. Georgia Count 4: Violations of the Georgia Fair Business Practices Act (Ga. Code Ann. §§ 10-1-390, *et seq.*) Against All Defendants.[13]

1238. Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

1239. The Georgia Plaintiffs bring this count under Georgia law, individually and on behalf of the other members of the Georgia Subclasses against the Automaker Defendants and Airbag Module Defendants for their respective Class Vehicles, and ARC. For the remaining Defendants, Plaintiffs who purchased or leased their Class Vehicles in states with materially similar laws may represent Subclasses under this count against all other Defendants, and ARC.

1240. For purposes of this count, members of the Georgia Subclass shall be referred to as "Class Members."

1241. For purposes of this count, ARC, the Automaker Defendants, and the Airbag Module Defendants shall be referred to as "Defendants."

1242. Defendants, Plaintiffs and Class Members are "persons" under Ga. Code Ann. § 10-1-392(24).

---

[13] Plaintiffs bring this count against ARC and the Airbag Module Defendants based on their omissions and concealment of material facts only.

265

1243. Plaintiffs are "consumers" engaged in "consumer transactions" under Ga. Code Ann. § 10-1-293(6) and (10) because they purchased the Class Vehicles primarily for personal, family, or household use.

1244. Defendants' sale and lease of the Class Vehicles are "trade" and "commerce" under Ga. Code Ann. § 10-1-293(28).

1245. The Georgia Fair Business Practices Act ("Georgia FBPA") declares "[u]nfair or deceptive acts or practices in the conduct of consumer transactions and consumer acts or practices in trade or commerce" to be unlawful. Ga. Code. Ann. § 10-1-393(a).

1246. Defendants' violations of the Georgia FBPA occurred repeatedly in their trade or practice—including the design, manufacture, distribution, marketing, sale, and lease of the Defective Inflators and the Class Vehicles.

1247. Defendants, through their agents, employees, and/or subsidiaries, violated the Georgia FBPA by knowingly and intentionally misrepresenting, omitting, concealing, and/or failing to disclose material facts regarding the reliability, safety, and performance of the Class Vehicles and the Defective Inflators, as detailed above.

1248. Defendants had an ongoing duty to Plaintiffs and Class Members to refrain from unfair or deceptive practices under the Georgia FBPA in the course of

their business. Specifically, Defendants owed Plaintiffs and Class Members a duty to disclose all the material facts concerning the Defective Inflators in the Class Vehicles because:

a.   Given ARC's design, development, testing and manufacture of the Defective Inflators and its experience and knowledge as experts and long-time veterans of the automotive industry, it, along with the Automaker Defendants and the Airbag Module Defendants, possessed exclusive access to and was in a superior position to know the true facts about the Defective Inflators;

b.   Given the Airbag Module Defendants' role in the design, manufacture, and testing of the airbag modules with the Defective Inflators installed in them, and their experience and knowledge as experts and long-time veterans of the automotive industry, they, along with ARC and the Automaker Defendants, possessed exclusive access to and were in a superior position to know the true facts about the Defective Inflators;

c.   Given the Automaker Defendants' role in the design, manufacture, testing, and sale of Class Vehicles and Defective Inflators, and their experience and knowledge as experts and long-time veterans of the automotive industry, they, along with ARC and the Airbag Module

Defendants, possessed exclusive access to and were in a superior position to know the true facts about the Defective Inflators;

d.  Given the Inflator Defect's hidden and technical nature, Plaintiffs and Class Members lack the sophisticated expertise in vehicle components and technology that would be necessary to discover the Inflator Defect on their own;

e.  Defendants knew that the Inflator Defect gave rise to serious safety concerns for the consumers who purchased and leased the Class Vehicles;

f.  The Inflator Defect poses a severe risk of harm in that, among other things, the metal shrapnel can puncture and stab the occupants, causing severe and potentially fatal injuries;

g.  Defendants knew about and investigated the Inflator Defect, but then did not notify consumers about it or disclose the Inflator Defect to NHTSA, and the Automaker Defendants did not launch a comprehensive recall for all Class Vehicles, all of which individually and together deprived Plaintiffs of an opportunity that otherwise could have led them to discover the truth about the Inflator Defect in their Class Vehicles; and

h.   The Automaker Defendants made, helped to make, or conspired to make incomplete representations about the safety and reliability of the Class Vehicles and their airbags, while purposefully withholding material facts about a known safety defect. Because they volunteered to provide information about the Class Vehicles that they marketed and offered for sale and lease to consumers, the Automaker Defendants had the duty to disclose the whole truth.

1249. By misrepresenting the Class Vehicles as safe and reliable and the airbags installed in them as properly functioning and free from defects, and/or by failing to disclose and actively concealing the dangers and risk posed by the Inflator Defect to both consumers and NHTSA, Defendants engaged in one or more of the following unfair or deceptive business practices as defined in Ga. Code Ann. § 10-1-393(b):

a.   Representing that the Class Vehicles and/or the Defective Inflators had a characteristic that they did not actually have—*i.e.*, that the vehicles were safe and suitable for use on the roadway, when, in fact, they were not because their airbag inflators were defectively designed such that they had an unreasonably dangerous propensity to rupture, causing severe and fatal injuries;

269

b.   Representing that the Class Vehicles and the Defective Inflators installed in them were of a particular quality, grade, or standard when, in fact, they were not of that quality, grade, or standard;

c.   Concealing and failing to disclose that the Class Vehicles and the Defective Inflators installed in them were inherently defective, defectively designed, and not suitable for their intended use despite advertising them as safe and suitable for their intended function; and

d.   Failing to market, distribute, sell, and lease the Class Vehicles equipped with Defective Inflators in accordance with Defendants' previous representations—i.e., that the Class Vehicles were safe and suitable for their intended use, when, in fact, they were not because of the Inflator Defect.

Ga. Code Ann. § 10-1-393(b).

1250. Defendants' unfair or deceptive acts or practices, including their misrepresentations, concealments, omissions, and/or suppressions of material facts, were designed to mislead and had a tendency or capacity to mislead and create a false impression in consumers that the Class Vehicles had properly-functioning and reliable airbags. Indeed, those misrepresentations, concealments, omissions, and suppressions of material facts did in fact deceive reasonable consumers, including

270

Plaintiffs and Class Members, about the true safety and reliability of the Class Vehicles and/or the Defective Inflators installed in them, the quality of the Class Vehicles, and the true value of the Class Vehicles.

1251. Defendants intended for Plaintiffs and Class Members to rely on their misrepresentations, omissions, and concealment—which they did by purchasing and leasing the Class Vehicles at the prices they paid believing that their vehicles would not have an Inflator Defect that would affect the quality, reliability, and safety of the Class Vehicles and their airbags.

1252. Defendants' misrepresentations, concealments, omissions, and suppressions of material facts regarding the Inflator Defect and true characteristics of the Class Vehicles were material to the decisions of Plaintiffs and Class Members to purchase and lease those vehicles, as Defendants intended. Plaintiffs and Class Members were exposed to those misrepresentations, concealments, omissions, and suppressions of material facts, and relied on Defendants' misrepresentations that the Class Vehicles and their airbags were safe and reliable in deciding to purchase and lease the Class Vehicles.

1253. Plaintiffs' and Class Members' reliance was reasonable, as they had no way of discerning that Defendants' representations were false and misleading, or otherwise learning the facts that Defendants had concealed or failed to disclose.

Plaintiffs and Class Members did not, and could not, unravel Defendants' deception on their own.

1254. Had they known the truth about the Inflator Defect, Plaintiffs and Class Members would not have purchased or leased the Class Vehicles, or would have paid significantly less for them.

1255. As a direct and proximate result of Defendants' deceptive practices, Plaintiffs and Class Members have sustained economic injury and loss—either by purchasing a vehicle they otherwise would not have purchased or paying more than they otherwise would have as a result of Defendants' actions and omissions alleged above—that first occurred at the time each Class Vehicle was purchased or leased.

1256. Defendants' violations present a continuing risk to Plaintiffs and Class Members, as well as to the general public, because the Class Vehicles remain unsafe due to the Defective Inflators therein. Defendants' unlawful acts and practices complained of herein affect the public interest.

1257. Plaintiffs and Class Members timely provided Defendants notice of the issues raised in this count and this Complaint and an opportunity to cure, as alleged in the paragraphs addressing Defendants' notice, above. Because Defendants failed to adequately remedy their unlawful conduct, Plaintiffs seek all damages and relief to which Plaintiffs and Class Members are entitled.

1258. Alternatively, Plaintiffs and Class Members were excused from providing the Defendants with notice and an opportunity to cure the Inflator Defect, because it would have been futile. As alleged above, the Defendants knew about the Defective Inflators for years; however, to date, the Automaker Defendants have not instituted a recall or any other repair program with respect to all of the Class Vehicles, or even acknowledged that the Inflator Defect exists in all of the Class Vehicles. Therefore, they have refused to recall or repair defective vehicles. Moreover, to the extent the Automaker Defendants have issued recalls, those recalls are inadequate because, *inter alia*: (a) they are belated because the Automaker Defendants knew about the Defective Inflators for years and did nothing to recall or remedy the serious safety defect; (b) with tens of millions of vehicles impacted in existing and potential future recalls, as a result of the Automaker Defendants' concealment of the Inflator Defect, the recalls cannot be implemented effectively due to supply constraints and resulting delays; (c) the recalls are incomplete, and apply to only a subset of the Class Vehicles.

1259. Pursuant to Ga. Code Ann. § 10-1-399, Plaintiffs and Class Members seek an order enjoining Defendants' unfair or deceptive acts or practices and awarding actual damages, treble damages, restitution, attorneys' fees, and any other just and proper relief available under the Georgia FBPA.

### e.   Georgia Count 5: Fraud by Omission and Concealment Against All Defendants.

1260. Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

1261. The Georgia Plaintiffs bring this count under Georgia law, individually and on behalf of the other members of the Georgia Subclasses against the Automaker Defendants and Airbag Module Defendants for their respective Class Vehicles, and ARC. For the remaining Defendants, Plaintiffs who purchased or leased their Class Vehicles in states with materially similar laws may represent Subclasses under this count against all other Defendants, and ARC.

1262. For purposes of this count, members of the Georgia Subclass shall be referred to as "Class Members."

1263. For purposes of this count, ARC, the Automaker Defendants, and the Airbag Module Defendants shall be referred to as "Defendants."

1264. Defendants are liable for both fraudulent concealment and non-disclosure. *See, e.g.*, Restatement (Second) of Torts §§ 550-51 (1977).

1265. Defendants owed Plaintiffs and Class Members a duty to disclose all the material facts concerning the Defective Inflators in the Class Vehicles because:

a.   Given the Automaker Defendants' role in the design, manufacture, testing, and sale of Class Vehicles and Defective Inflators, and their

274

experience and knowledge as experts and long-time veterans of the automotive industry, they, along with ARC and the Airbag Module Defendants, possessed exclusive access to and were in a superior position to know the true facts about the Defective Inflators;

b.     Given ARC's design, development, testing and manufacture of the Defective Inflators and its experience and knowledge as experts and long-time veterans of the automotive industry, it, along with the Automaker Defendants and the Airbag Module Defendants, possessed exclusive access to and was in a superior position to know the true facts about the Defective Inflators;

c.     Given the Airbag Module Defendants' role in the design, manufacture, and testing of the airbag modules with the Defective Inflators installed in them, and their experience and knowledge as experts and long-time veterans of the automotive industry, they, along with ARC and the Automaker Defendants, possessed exclusive access to and were in a superior position to know the true facts about the Defective Inflators;

d.     Given the Inflator Defect's hidden and technical nature, Plaintiffs and Class Members lack the sophisticated expertise in vehicle components and technology that would be necessary to discover the Inflator Defect

275

on their own;

e.   Defendants knew that the Inflator Defect gave rise to serious safety concerns for the consumers who purchased and leased the Class Vehicles;

f.   The Inflator Defect poses a severe risk of harm in that, among other things, the metal shrapnel can puncture and stab the occupants, causing severe and potentially fatal injuries;

g.   Defendants knew about and investigated the Inflator Defect, but then did not notify consumers about it, disclose the Inflator Defect to NHTSA, and the Automaker Defendants did not launch a comprehensive recall for all Class Vehicles, all of which individually and together deprived Plaintiffs of an opportunity that otherwise could have led them to discover the truth about the Inflator Defect in their Class Vehicles; and

h.   The Automaker Defendants made, helped to make, or conspired to make incomplete representations about the safety and reliability of the Class Vehicles and their airbags, while purposefully withholding material facts about a known safety defect. Because they volunteered to provide information about the Class Vehicles that they marketed and

offered for sale and lease to consumers, the Automaker Defendants had

the duty to disclose the whole truth.

1266. In breach of their duties, Defendants failed to disclose the Inflator

Defect and that the Class Vehicles' airbags were not safe and reliable to Plaintiffs

and Class Members in connection with the sale of the Class Vehicles.

1267. The Inflator Defect within the Class Vehicles is material to the sale of

the Class Vehicles because a reasonable person would find it important in

purchasing, leasing, or retaining a new or used motor vehicle and because it directly

impacts the value of the Class Vehicles purchased or leased by Plaintiffs and Class

Members.

1268. Defendants intended for Plaintiffs and Class Members to rely on their

omissions and concealment—which they did by purchasing and leasing the Class

Vehicles at the prices they paid believing that their vehicles would not have an

Inflator Defect that would affect the quality, reliability, and safety of the Class

Vehicles and their airbags.

1269. Plaintiffs' and Class Members' reliance was reasonable because a

reasonable consumer would not have expected that the Class Vehicles contained a

safety defect that poses such a serious risk. They had no way of learning the facts

that Defendants had concealed or failed to disclose. Plaintiffs and Class Members

did not, and could not, unravel Defendants' deception on their own.

1270. Defendants actively concealed and suppressed these material facts, in whole or in part, to maintain a market for the Class Vehicles and the Defective Inflators installed in them, to protect profits, and to avoid costly recalls that would expose them to liability for those expenses and harm the commercial reputations of Defendants and their products. They did so at the expense of Plaintiffs and Class Members.

1271. If Defendants had fully and adequately disclosed the Inflator Defect to consumers, Plaintiffs and Class Members would have seen such a disclosure.

1272. Through their omissions and concealment with respect to the Inflator Defect within the Class Vehicles, Defendants intended to induce, and did induce, Plaintiffs and Class Members to either purchase a Class Vehicle that they otherwise would not have purchased, or pay more for a Class Vehicle than they otherwise would have paid.

1273. Had Plaintiffs and Class Members known of the Inflator Defect within the Class Vehicles, they would not have purchased the Class Vehicles or would have paid less for them.

1274. As a direct and proximate result of Defendants' omissions and concealment, Plaintiffs and other Class Members either overpaid for the Class

Vehicles or would not have purchased the Class Vehicles at all if the Inflator Defect had been disclosed to them. Accordingly, Defendants are liable to Plaintiffs and Class Members for their damages in an amount to be proven at trial.

1275. Defendants acted maliciously, oppressively, deliberately, with intent to defraud; in reckless disregard of the Plaintiffs' and Class Members' rights and well-being; and to enrich themselves. Defendants' misconduct warrants an assessment of punitive damages, as permitted by law, in an amount sufficient to deter such conduct in the future, which amount shall be determined according to proof at trial.

### f.   Georgia Count 6: Unjust Enrichment Against the Automaker Defendants.

1276. Plaintiffs reallege and incorporate by reference all allegations in Volume 1 of the Consolidated Class Action Complaint as though fully set forth herein.

1277. The Georgia Plaintiffs bring this count under Georgia law, individually and on behalf of the other members of the Georgia Subclasses against the Automaker Defendants for their respective Class Vehicles. For the remaining Automaker Defendants, Plaintiffs who purchased or leased their Class Vehicles in states with materially similar laws may represent Subclasses under this count against all other Automaker Defendants.

1278. For purposes of this count, members of the Georgia Subclass shall be referred to as "Class Members."

1279. When they purchased and leased the Class Vehicles, Plaintiffs and Class Members conferred tangible and material economic benefits upon the Automaker Defendants, who readily accepted and retained these benefits.

1280. Plaintiffs and Class Members would not have purchased or leased their Class Vehicles, or would have paid less for them, had they known of the Inflator Defect at the time of purchase or lease. Therefore, the Automaker Defendants profited from the sale and lease of the Class Vehicles to the detriment and expense of Plaintiffs and Class Members.

1281. The Automaker Defendants appreciated these economic benefits. These benefits were the expected result of the Automaker Defendants acting in their pecuniary interest at the expense of their customers. They knew of these benefits because they were aware of the Inflator Defect, yet they failed to disclose this knowledge and misled the Plaintiffs and Class Members regarding the nature and quality of the Class Vehicles while profiting from this deception.

1282. It would be unjust, inequitable, and unconscionable for the Automaker Defendants to retain these benefits, including because they were procured as a result of their wrongful conduct alleged above.

1283. Plaintiffs and Class Members are entitled to restitution of the benefits the Automaker Defendants unjustly retained and/or any amounts necessary to return Plaintiffs and Class Members to the position they occupied prior to dealing with those Defendants, with such amounts to be determined at trial.

1284. Plaintiffs plead this claim separately as well as in the alternative to their claims for damages under Fed. R. Civ. P. 8(a)(3), because if the Court dismisses Plaintiffs' claims for damages enters judgment on them in favor of the Automaker Defendants, Plaintiffs will have no adequate legal remedy.

12.    **Hawaii**

  a.    **Hawaii Count 1: Breach of Express Warranty (Haw. Rev. Stat. §§ 490:2-313 and 490:2A-210) Against the Automaker Defendants.**

1285. Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

1286. The Hawaii Plaintiffs bring this count under Hawaii law, individually and on behalf of the other members of the Hawaii Subclasses against the Automaker Defendants for their respective Class Vehicles. For the remaining Automaker

Defendants, Plaintiffs who purchased or leased their Class Vehicles in states with materially similar laws may represent Subclasses under this count against all other Automaker Defendants.

1287. For purposes of this count, members of the Hawaii Subclass shall be referred to as "Class Members."

1288. The Class Vehicles are "goods" under Haw. Rev. Stat. §§ 490:2-105(1) and 490:2A-103(a)(8).

1289. The Automaker Defendants are "merchants," "sellers," and "lessors," of the Class Vehicles under Haw. Rev. Stat. §§ 490:2-104(1), 490:2-103(1)(d), and 490:2A-103(a)(16).

1290. Plaintiffs and Class Members who purchased and leased the Class Vehicles in Hawaii are "buyers" and "lessees" under Hawaii Rev. Stat. §§ 490:2-103(1)(a) and 490:2A-103(a)(14).

1291. The Automaker Defendants issued an express written warranty for each defective Class Vehicle they sold, including that:

a.     The Class Vehicles would be free of defects in materials and workmanship at the time of sale; and

b.     The Class Vehicles were safe and reliable, and their airbags would function properly in the event of a crash.

1292. The warranties listed above formed the basis of the bargain with regard to Plaintiffs' and Class Members' purchase and lease of the Class Vehicles.

1293. The Automaker Defendants knowingly breached their warranty for the Class Vehicles because:

a.    The airbag inflators have latent defects which have a dangerous propensity to cause the inflators to rupture and eject metal shrapnel, subjecting Plaintiffs and Class Members to the risk of loss and injury; and

b.    The Automaker Defendants denied, concealed, and misrepresented the Inflator Defect, in the process refusing to pay for or provide in a reasonably timely fashion the needed repairs and replacements for Plaintiffs and Class Members.

1294. The Automaker Defendants knew or should have known that the warranties were false and/or misleading. Specifically, the Automaker Defendants were aware of the Inflator Defect in the Class Vehicles, which made the vehicles inherently defective and dangerous at the time that they were sold and leased to Plaintiffs and Class Members.

1295. Plaintiffs and Class Members were exposed to the Automaker Defendants' misrepresentations, and they had no way of discerning that the

Automaker Defendants' representations were false and misleading or otherwise learning the material facts that the Automaker Defendants had concealed or failed to disclose. Accordingly, Plaintiffs and Class Members reasonably relied on the Automaker Defendants' express warranties when purchasing or leasing their Class Vehicles.

1296. Plaintiffs and Class Members timely provided the Automaker Defendants notice of the issues raised in this count and this Complaint and an opportunity to cure, as alleged in the paragraphs addressing Defendants' notice, above.

1297. Alternatively, Plaintiffs and Class Members were excused from providing the Automaker Defendants with notice and an opportunity to cure the breach, because it would have been futile. As alleged above, the Automaker Defendants knew about the Defective Inflators for years; however, to date, the Automaker Defendants have not instituted a recall or any other repair program with respect to all of the Class Vehicles, or even acknowledged that the Inflator Defect exists in all of the Class Vehicles. Therefore, they have refused to recall or repair defective vehicles. Moreover, to the extent the Automaker Defendants have issued recalls, those recalls are inadequate because, *inter alia*: (a) they are belated because the Automaker Defendants knew about the Defective Inflators for years and did

nothing to recall or remedy the serious safety defect; (b) with tens of millions of vehicles impacted in existing and potential future recalls, as a result of the Automaker Defendants' concealment of the Inflator Defect, the recalls cannot be implemented effectively due to supply constraints and resulting delays; (c) the recalls are incomplete, and apply to only a subset of the Class Vehicles.

1298. As a direct and proximate result of the Automaker Defendants' breach of their express warranties, the Class Vehicles were and are defective and the Inflator Defect was not remedied. Therefore, Plaintiff and Class Members have been damaged, in an amount to be proven at trial, through their overpayment at the time of purchase or lease for the Class Vehicles with an undisclosed safety defect that would not be remedied.

> **b.    Hawaii Count 2: Breach of Implied Warranty of Merchantability (Haw. Rev. Stat. §§ 490:2-314 and 490:2A-212) Against the Automaker Defendants.**

1299. Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

1300. The Hawaii Plaintiffs bring this count under Hawaii law, individually and on behalf of the other members of the Hawaii Subclasses against the Automaker Defendants for their respective Class Vehicles. For the remaining Automaker Defendants, Plaintiffs who purchased or leased their Class Vehicles in states with

materially similar laws may represent Subclasses under this count against all other Automaker Defendants.

1301. For purposes of this count, members of the Hawaii Subclass shall be referred to as "Class Members."

1302. The Class Vehicles are "goods" under Haw. Rev. Stat. §§ 490:2-105(1) and 490:2A-103(a)(8).

1303. The Automaker Defendants are "merchants," "sellers," and "lessors," of the Class Vehicles under Haw. Rev. Stat. §§ 490:2-104(1), 490:2-103(1)(d), and 490:2A-103(a)(16).

1304. Plaintiffs and Class Members who purchased and leased the Class Vehicles in Hawaii are "buyers" and "lessees" under Hawaii Rev. Stat. §§ 490:2-103(1)(a) and 490:2A-103(a)(14).

1305. Hawaii law conferred an implied warranty that the Class Vehicles were in merchantable condition and fit for the ordinary purpose for which they were to be used pursuant to Haw. Rev. Stat. §§ 490:2-314 and 490:2A-212.

1306. The Class Vehicles are not merchantable, and as such the Automaker Defendants breached their implied warranties, because at the time of sale and all times thereafter:

a.      The Class Vehicles would not pass without objection in the automotive

286

trade given the Inflator Defect;

b.   The Inflator Defect renders the Class Vehicles unsafe to drive and unfit for ordinary purposes;

c.   The Class Vehicles and the airbags therein were inadequately labeled as safe and reliable, and the labeling failed to disclose the Inflator Defect; and

d.   The Class Vehicles do not conform to their labeling, which represents that the vehicles are safe and suitable for their intended use.

1307. Plaintiffs and Class Members timely provided the Automaker Defendants notice of the issues raised in this count and this Complaint and an opportunity to cure, as alleged in the paragraphs addressing Defendants' notice, above.

1308. Alternatively, Plaintiffs and Class Members were excused from providing the Automaker Defendants with notice and an opportunity to cure the breach because it would have been futile. As alleged above, the Automaker Defendants have long known that the Class Vehicles contained the Defective Inflators, and that the Defective Inflators have caused airbags to malfunction in crashes involving the Class Vehicles; however, to date, the Automaker Defendants

have not instituted a recall or any other repair program with respect to all of the Class Vehicles, or even acknowledged that the Inflator Defect exists in all of those Class Vehicles. Moreover, to the extent the Automaker Defendants have issued recalls, those recalls are inadequate because, inter alia: (a) they are belated because the Automaker Defendants knew about the Defective Inflators for years and did nothing to recall or remedy the serious safety defect; (b) with tens of millions of vehicles impacted in existing and potential future recalls, as a result of the Automaker Defendants' concealment of the Inflator Defect, the recalls cannot be implemented effectively due to supply constraints and resulting delays; (c) the recalls are incomplete, and apply to only a subset of the Class Vehicles.

1309. Plaintiffs, individually and on behalf of Class Members, seek all available monetary damages (including actual, compensatory, and punitive damages), injunctive and equitable relief, and attorneys' fees and costs.

> **c.    Hawaii Count 3: Unfair and Deceptive Acts in Violation of Hawaii Law (Haw. Rev. Stat. §§ 480, *et seq*.) Against All Defendants.[14]**

1310. Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

---

[14] Plaintiffs bring this count against ARC and the Airbag Module Defendants based on their omissions and concealment of material facts only.

288

1311. The Hawaii Plaintiffs bring this count under Hawaii law, individually and on behalf of the other members of the Hawaii Subclasses against the Automaker Defendants and Airbag Module Defendants for their respective Class Vehicles, and ARC. For the remaining Defendants, Plaintiffs who purchased or leased their Class Vehicles in states with materially similar laws may represent Subclasses under this count against all other Defendants, and ARC.

1312. For purposes of this count, members of the Hawaii Subclass shall be referred to as "Class Members."

1313. For purposes of this count, ARC, the Automaker Defendants, and the Airbag Module Defendants shall be referred to as "Defendants."

1314. Defendants, Plaintiffs and Class Members are "persons" under Haw. Rev. Stat. § 480-1.

1315. Plaintiffs and Class Members are "consumers" under Haw. Rev. Stat. § 480-1 because they purchased the Class Vehicles primarily for personal, family, or household use.

1316. The purchase of the Class Vehicles by Plaintiffs and Class Members constitute "purchases" and/or "sales" within the meaning of Haw. Rev. Stat. § 480-1.

1317. The Class Vehicles are "commodities" under Haw. Rev. Stat. § 480-1.

1318. The Hawaii Unfair and Deceptive Acts and Practices Act ("Hawaii UDAP") prohibits "unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce.…" Haw.480-2(a).

1319. Defendants' violations of the Hawaii UDAP occurred repeatedly in their trade or practice—including the design, manufacture, distribution, marketing, sale, and lease of the Defective Inflators and the Class Vehicles.

1320. Defendants, through their agents, employees, and/or subsidiaries, violated the Hawaii UDAP by knowingly and intentionally misrepresenting, omitting, concealing, and/or failing to disclose material facts regarding the reliability, safety, and performance of the Class Vehicles and the Defective Inflators, as detailed above.

1321. Defendants had an ongoing duty to Plaintiffs and Class Members to refrain from unfair or deceptive practices under the Hawaii UDAP in the course of their business. Specifically, Defendants owed Plaintiffs and Class Members a duty to disclose all the material facts concerning the Defective Inflators in the Class Vehicles because:

    a.    Given ARC's design, development, testing and manufacture of the Defective Inflators and its experience and knowledge as experts and long-time veterans of the automotive industry, it, along with the

Automaker Defendants and the Airbag Module Defendants, possessed exclusive access to and was in a superior position to know the true facts about the Defective Inflators;

b.     Given the Airbag Module Defendants' role in the design, manufacture, and testing of the airbag modules with the Defective Inflators installed in them, and their experience and knowledge as experts and long-time veterans of the automotive industry, they, along with ARC and the Automaker Defendants, possessed exclusive access to and were in a superior position to know the true facts about the Defective Inflators;

c.     Given the Automaker Defendants' role in the design, manufacture, testing, and sale of Class Vehicles and Defective Inflators, and their experience and knowledge as experts and long-time veterans of the automotive industry, they, along with ARC and the Airbag Module Defendants, possessed exclusive access to and were in a superior position to know the true facts about the Defective Inflators;

d.     Given the Inflator Defect's hidden and technical nature, Plaintiffs and Class Members lack the sophisticated expertise in vehicle components and technology that would be necessary to discover the Inflator Defect on their own;

e.   Defendants knew that the Inflator Defect gave rise to serious safety concerns for the consumers who purchased and leased the Class Vehicles;

f.   The Inflator Defect poses a severe risk of harm in that, among other things, the metal shrapnel can puncture and stab the occupants, causing severe and potentially fatal injuries;

g.   Defendants knew about and investigated the Inflator Defect, but then did not notify consumers about it or disclose the Inflator Defect to NHTSA, and the Automaker Defendants did not launch a comprehensive recall for all Class Vehicles, all of which individually and together deprived Plaintiffs of an opportunity that otherwise could have led them to discover the truth about the Inflator Defect in their Class Vehicles; and

h.   The Automaker Defendants made, helped to make, or conspired to make incomplete representations about the safety and reliability of the Class Vehicles and their airbags, while purposefully withholding material facts about a known safety defect. Because they volunteered to provide information about the Class Vehicles that they marketed and offered for sale and lease to consumers, the Automaker Defendants had

the duty to disclose the whole truth.

1322. By misrepresenting the Class Vehicles as safe and reliable and the airbags installed in them as properly functioning and free from defects, and/or by failing to disclose and actively concealing the dangers and risk posed by the Inflator Defect to both consumers and NHTSA, Defendants engaged in one or more unfair or deceptive business practices as defined Haw. Rev. Stat. § 480-2(a).

1323. Defendants' unfair or deceptive acts or practices, including their misrepresentations, concealments, omissions, and/or suppressions of material facts, were designed to mislead and had a tendency or capacity to mislead and create a false impression in consumers that the Class Vehicles had properly-functioning and reliable airbags. Indeed, those misrepresentations, concealments, omissions, and suppressions of material facts did in fact deceive reasonable consumers, including Plaintiffs and Class Members, about the true safety and reliability of the Class Vehicles and/or the Defective Inflators installed in them, the quality of the Class Vehicles, and the true value of the Class Vehicles.

1324. Defendants intended for Plaintiffs and Class Members to rely on their misrepresentations, omissions, and concealment—which they did by purchasing and leasing the Class Vehicles at the prices they paid believing that their vehicles would not have an Inflator Defect that would affect the quality, reliability, and safety of the

293

Class Vehicles and their airbags.

1325. Defendants' misrepresentations, concealments, omissions, and suppressions of material facts regarding the Inflator Defect and true characteristics of the Class Vehicles were material to the decisions of Plaintiffs and Class Members to purchase and lease those vehicles, as Defendants intended. Plaintiffs and Class Members were exposed to those misrepresentations, concealments, omissions, and suppressions of material facts, and relied on Defendants' misrepresentations that the Class Vehicles and their airbags were safe and reliable in deciding to purchase and lease the Class Vehicles.

1326. Plaintiffs' and Class Members' reliance was reasonable, as they had no way of discerning that Defendants' representations were false and misleading, or otherwise learning the facts that Defendants had concealed or failed to disclose. Plaintiffs and Class Members did not, and could not, unravel Defendants' deception on their own.

1327. Had they known the truth about the Inflator Defect, Plaintiffs and Class Members would not have purchased or leased the Class Vehicles, or would have paid significantly less for them.

1328. As a direct and proximate result of Defendants' deceptive practices, Plaintiffs and Class Members have sustained economic injury and loss—either by

purchasing a vehicle they otherwise would not have purchased or paying more than they otherwise would have as a result of Defendants' actions and omissions alleged above—that first occurred at the time each Class Vehicle was purchased or leased.

1329. Defendants' violations present a continuing risk to Plaintiffs and Class Members, as well as to the general public, because the Class Vehicles remain unsafe due to the Defective Inflators therein. Defendants' unlawful acts and practices complained of herein affect the public interest.

1330. Plaintiffs and Class Members seek an order enjoining the above unfair or deceptive acts or practices and awarding actual damages, treble damages, restitution, attorneys' fees, and any other just and proper relief available under the Hawaii UDAP.

### d. Hawaii Count 4: Fraud by Omission and Concealment Against All Defendants.

1331. Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

1332. The Hawaii Plaintiffs bring this count under Hawaii law, individually and on behalf of the other members of the Hawaii Subclasses against the Automaker Defendants and Airbag Module Defendants for their respective Class Vehicles, and ARC. For the remaining Defendants, Plaintiffs who purchased or leased their Class

Vehicles in states with materially similar laws may represent Subclasses under this count against all other Defendants, and ARC.

1333. For purposes of this count, members of the Hawaii Subclass shall be referred to as "Class Members."

1334. For purposes of this count, ARC, the Automaker Defendants, and the Airbag Module Defendants shall be referred to as "Defendants."

1335. Defendants are liable for both fraudulent concealment and non-disclosure. *See, e.g.*, Restatement (Second) of Torts §§ 550-51 (1977).

1336. Defendants owed Plaintiffs and Class Members a duty to disclose all the material facts concerning the Defective Inflators in the Class Vehicles because:

a.   Given the Automaker Defendants' role in the design, manufacture, testing, and sale of Class Vehicles and Defective Inflators, and their experience and knowledge as experts and long-time veterans of the automotive industry, they, along with ARC and the Airbag Module Defendants, possessed exclusive access to and were in a superior position to know the true facts about the Defective Inflators;

b.   Given ARC's design, development, testing and manufacture of the Defective Inflators and its experience and knowledge as experts and long-time veterans of the automotive industry, it, along with the

Automaker Defendants and the Airbag Module Defendants, possessed exclusive access to and was in a superior position to know the true facts about the Defective Inflators;

c.    Given the Airbag Module Defendants' role in the design, manufacture, and testing of the airbag modules with the Defective Inflators installed in them, and their experience and knowledge as experts and long-time veterans of the automotive industry, they, along with ARC and the Automaker Defendants, possessed exclusive access to and were in a superior position to know the true facts about the Defective Inflators;

d.    Given the Inflator Defect's hidden and technical nature, Plaintiffs and Class Members lack the sophisticated expertise in vehicle components and technology that would be necessary to discover the Inflator Defect on their own;

e.    Defendants knew that the Inflator Defect gave rise to serious safety concerns for the consumers who purchased and leased the Class Vehicles;

f.    The Inflator Defect poses a severe risk of harm in that, among other things, the metal shrapnel can puncture and stab the occupants, causing severe and potentially fatal injuries;

297

g.   Defendants knew about and investigated the Inflator Defect, but then did not notify consumers about it, disclose the Inflator Defect to NHTSA, and the Automaker Defendants did not launch a comprehensive recall for all Class Vehicles, all of which individually and together deprived Plaintiffs of an opportunity that otherwise could have led them to discover the truth about the Inflator Defect in their Class Vehicles; and

h.   The Automaker Defendants made, helped to make, or conspired to make incomplete representations about the safety and reliability of the Class Vehicles and their airbags, while purposefully withholding material facts about a known safety defect. Because they volunteered to provide information about the Class Vehicles that they marketed and offered for sale and lease to consumers, the Automaker Defendants had the duty to disclose the whole truth.

1337. In breach of their duties, Defendants failed to disclose the Inflator Defect and that the Class Vehicles' airbags were not safe and reliable to Plaintiffs and Class Members in connection with the sale of the Class Vehicles.

1338. The Inflator Defect within the Class Vehicles is material to the sale of the Class Vehicles because a reasonable person would find it important in

purchasing, leasing, or retaining a new or used motor vehicle and because it directly impacts the value of the Class Vehicles purchased or leased by Plaintiffs and Class Members.

1339. Defendants intended for Plaintiffs and Class Members to rely on their omissions and concealment—which they did by purchasing and leasing the Class Vehicles at the prices they paid believing that their vehicles would not have an Inflator Defect that would affect the quality, reliability, and safety of the Class Vehicles and their airbags.

1340. Plaintiffs' and Class Members' reliance was reasonable because a reasonable consumer would not have expected that the Class Vehicles contained a safety defect that poses such a serious risk. They had no way of learning the facts that Defendants had concealed or failed to disclose. Plaintiffs and Class Members did not, and could not, unravel Defendants' deception on their own.

1341. Defendants actively concealed and suppressed these material facts, in whole or in part, to maintain a market for the Class Vehicles and the Defective Inflators installed in them, to protect profits, and to avoid costly recalls that would expose them to liability for those expenses and harm the commercial reputations of Defendants and their products. They did so at the expense of Plaintiffs and Class Members.

1342. If Defendants had fully and adequately disclosed the Inflator Defect to consumers, Plaintiffs and Class Members would have seen such a disclosure.

1343. Through their omissions and concealment with respect to the Inflator Defect within the Class Vehicles, Defendants intended to induce, and did induce, Plaintiffs and Class Members to either purchase a Class Vehicle that they otherwise would not have purchased, or pay more for a Class Vehicle than they otherwise would have paid.

1344. Had Plaintiffs and Class Members known of the Inflator Defect within the Class Vehicles, they would not have purchased the Class Vehicles or would have paid less for them.

1345. As a direct and proximate result of Defendants' omissions and concealment, Plaintiffs and other Class Members either overpaid for the Class Vehicles or would not have purchased the Class Vehicles at all if the Inflator Defect had been disclosed to them. Accordingly, Defendants are liable to Plaintiffs and Class Members for their damages in an amount to be proven at trial.

1346. Defendants acted maliciously, oppressively, deliberately, with intent to defraud; in reckless disregard of the Plaintiffs' and Class Members' rights and well-being; and to enrich themselves. Defendants' misconduct warrants an assessment of punitive damages, as permitted by law, in an amount sufficient to deter such conduct

in the future, which amount shall be determined according to proof at trial.

e.     **Hawaii Count 5: Unjust Enrichment Against the Automaker Defendants.**

1347. Plaintiffs reallege and incorporate by reference all allegations in Volume 1 of the Consolidated Class Action Complaint as though fully set forth herein.

1348. The Hawaii Plaintiffs bring this count under Hawaii law, individually and on behalf of the other members of the Hawaii Subclasses against the Automaker Defendants for their respective Class Vehicles. For the remaining Automaker Defendants, Plaintiffs who purchased or leased their Class Vehicles in states with materially similar laws may represent Subclasses under this count against all other Automaker Defendants.

1349. For purposes of this count, members of the Hawaii Subclass shall be referred to as "Class Members."

1350. When they purchased and leased the Class Vehicles, Plaintiffs and Class Members conferred tangible and material economic benefits upon the Automaker Defendants, who readily accepted and retained these benefits.

1351. Plaintiffs and Class Members would not have purchased or leased their Class Vehicles, or would have paid less for them, had they known of the Inflator

Defect at the time of purchase or lease. Therefore, the Automaker Defendants profited from the sale and lease of the Class Vehicles to the detriment and expense of Plaintiffs and Class Members.

1352. The Automaker Defendants appreciated these economic benefits. These benefits were the expected result of the Automaker Defendants acting in their pecuniary interest at the expense of their customers. They knew of these benefits because they were aware of the Inflator Defect, yet they failed to disclose this knowledge and misled the Plaintiffs and Class Members regarding the nature and quality of the Class Vehicles while profiting from this deception.

1353. It would be unjust, inequitable, and unconscionable for the Automaker Defendants to retain these benefits, including because they were procured as a result of their wrongful conduct alleged above.

1354. Plaintiffs and Class Members are entitled to restitution of the benefits the Automaker Defendants unjustly retained and/or any amounts necessary to return Plaintiffs and Class Members to the position they occupied prior to dealing with those Defendants, with such amounts to be determined at trial.

1355. Plaintiffs plead this claim separately as well as in the alternative to their claims for damages under Fed. R. Civ. P. 8(a)(3), because if the Court dismisses Plaintiffs' claims for damages enters judgment on them in favor of the Automaker

Defendants, Plaintiffs will have no adequate legal remedy.

### 13.   Idaho

#### a.   Idaho Count 1: Breach of Express Warranty (Idaho Code §§ 28-2-314 and 28-12-212) Against the Automaker Defendants.

1356. Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

1357. The Idaho Plaintiff brings this count under Idaho law, individually and on behalf of the other members of the Idaho Subclasses against the Automaker Defendants for his or her respective Class Vehicle(s), and ARC. For the remaining Automaker Defendants, Plaintiffs who purchased or leased their Class Vehicles in states with materially similar laws may represent Subclasses under this count against all other Automaker Defendants.

1358. For purposes of this count, members of the Idaho Subclass shall be referred to as "Class Members."

1359. The Class Vehicles are "goods" under Idaho Code §§ 28-2-105(1) and 28-12-103(1)(h).

1360. The Automaker Defendants are "merchants," "sellers," and "lessors," of the Class Vehicles under Idaho Code §§ 28-2-104(1) and 28-12-103(3), § 28-2-103(1)(d), and § 28-12-103(1)(p).

1361. Plaintiffs and Class Members who purchased and leased the Class

Vehicles in Idaho are "buyers" and "lessees" under Idaho Code §§ 28-2-103(1)(a) and 28-12-103(1)(n).

1362. The Automaker Defendants issued an express written warranty for each defective Class Vehicle they sold, including that:

a. The Class Vehicles would be free of defects in materials and workmanship at the time of sale; and

b. The Class Vehicles were safe and reliable, and their airbags would function properly in the event of a crash.

1363. The warranties listed above formed the basis of the bargain with regard to Plaintiffs' and Class Members' purchase and lease of the Class Vehicles.

1364. The Automaker Defendants knowingly breached their warranty for the Class Vehicles because:

a. The airbag inflators have latent defects which have a dangerous propensity to cause the inflators to rupture and eject metal shrapnel, subjecting Plaintiffs and Class Members to the risk of loss and injury; and

b. The Automaker Defendants denied, concealed, and misrepresented the Inflator Defect, in the process refusing to pay for or provide in a reasonably timely fashion the needed repairs and replacements for

Plaintiffs and Class Members.

1365. The Automaker Defendants knew or should have known that the warranties were false and/or misleading. Specifically, the Automaker Defendants were aware of the Inflator Defect in the Class Vehicles, which made the vehicles inherently defective and dangerous at the time that they were sold and leased to Plaintiffs and Class Members.

1366. Plaintiffs and Class Members were exposed to the Automaker Defendants' misrepresentations, and they had no way of discerning that the Automaker Defendants' representations were false and misleading or otherwise learning the material facts that the Automaker Defendants had concealed or failed to disclose. Accordingly, Plaintiffs and Class Members reasonably relied on the Automaker Defendants' express warranties when purchasing or leasing their Class Vehicles.

1367. Plaintiffs and Class Members timely provided the Automaker Defendants notice of the issues raised in this count and this Complaint and an opportunity to cure, as alleged in the paragraphs addressing Defendants' notice, above.

1368. Alternatively, Plaintiffs and Class Members were excused from providing the Automaker Defendants with notice and an opportunity to cure the

breach, because it would have been futile. As alleged above, the Automaker Defendants knew about the Defective Inflators for years; however, to date, the Automaker Defendants have not instituted a recall or any other repair program with respect to all of the Class Vehicles, or even acknowledged that the Inflator Defect exists in all of the Class Vehicles. Therefore, they have refused to recall or repair defective vehicles. Moreover, to the extent the Automaker Defendants have issued recalls, those recalls are inadequate because, *inter alia*: (a) they are belated because the Automaker Defendants knew about the Defective Inflators for years and did nothing to recall or remedy the serious safety defect; (b) with tens of millions of vehicles impacted in existing and potential future recalls, as a result of the Automaker Defendants' concealment of the Inflator Defect, the recalls cannot be implemented effectively due to supply constraints and resulting delays; (c) the recalls are incomplete, and apply to only a subset of the Class Vehicles.

1369. As a direct and proximate result of the Automaker Defendants' breach of their express warranties, the Class Vehicles were and are defective and the Inflator Defect was not remedied. Therefore, Plaintiff and Class Members have been damaged, in an amount to be proven at trial, through their overpayment at the time of purchase or lease for the Class Vehicles with an undisclosed safety defect that would not be remedied.

**b.** **Idaho Count 2: Breach of Implied Warranty of Merchantability (Idaho Code §§ 28-2-314 and 28-12-212) Against the Automaker Defendants.**

1370. Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

1371. The Idaho Plaintiff brings this count under Idaho law, individually and on behalf of the other members of the Idaho Subclasses against the Automaker Defendants for his or her respective Class Vehicle(s). For the remaining Automaker Defendants, Plaintiffs who purchased or leased their Class Vehicles in states with materially similar laws may represent Subclasses under this count against all other Automaker Defendants.

1372. For purposes of this count, members of the Idaho Subclass shall be referred to as "Class Members."

1373. The Class Vehicles are "goods" under Idaho Code §§ 28-2-105(1) and 28-12-103(1)(h).

1374. The Automaker Defendants are "merchants," "sellers," and "lessors," of the Class Vehicles under Idaho Code §§ 28-2-104(1) and 28-12-103(3), § 28-2-103(1)(d), and § 28-12-103(1)(p).

1375. Plaintiffs and Class Members who purchased and leased the Class Vehicles in Idaho are "buyers" and "lessees" under Idaho Code §§ 28-2-103(1)(a)

and 28-12-103(1)(n).

1376. Idaho law conferred an implied warranty that the Class Vehicles were in merchantable condition and fit for the ordinary purpose for which they were to be used pursuant to Idaho Code §§ 28-2-314 and 28-12-212.

1377. The Class Vehicles are not merchantable, and as such the Automaker Defendants breached their implied warranties, because at the time of sale and all times thereafter:

a.   The Class Vehicles would not pass without objection in the automotive trade given the Inflator Defect;

b.   The Inflator Defect renders the Class Vehicles unsafe to drive and unfit for ordinary purposes;

c.   The Class Vehicles and the airbags therein were inadequately labeled as safe and reliable, and the labeling failed to disclose the Inflator Defect; and

d.   The Class Vehicles do not conform to their labeling, which represents that the vehicles are safe and suitable for their intended use.

1378. Plaintiffs and Class Members timely provided the Automaker Defendants notice of the issues raised in this count and this Complaint and an opportunity to cure, as alleged in the paragraphs addressing Defendants' notice,

above.

1379. Alternatively, Plaintiffs and Class Members were excused from providing the Automaker Defendants with notice and an opportunity to cure the breach because it would have been futile. As alleged above, the Automaker Defendants have long known that the Class Vehicles contained the Defective Inflators, and that the Defective Inflators have caused airbags to malfunction in crashes involving the Class Vehicles; however, to date, the Automaker Defendants have not instituted a recall or any other repair program with respect to all of the Class Vehicles, or even acknowledged that the Inflator Defect exists in all of those Class Vehicles. Moreover, to the extent the Automaker Defendants have issued recalls, those recalls are inadequate because, inter alia: (a) they are belated because the Automaker Defendants knew about the Defective Inflators for years and did nothing to recall or remedy the serious safety defect; (b) with tens of millions of vehicles impacted in existing and potential future recalls, as a result of the Automaker Defendants' concealment of the Inflator Defect, the recalls cannot be implemented effectively due to supply constraints and resulting delays; (c) the recalls are incomplete, and apply to only a subset of the Class Vehicles.

1380. Plaintiffs, individually and on behalf of Class Members, seek all available monetary damages (including actual, compensatory, and punitive

damages), injunctive and equitable relief, and attorneys' fees and costs.

> c.  **Idaho Count 3: Violations of the Idaho Consumer Protection Act (Idaho Code § 48-601, *et seq*.) Against All Defendants.**[15]

1381. Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

1382. The Idaho Plaintiff brings this count under Idaho law, individually and on behalf of the other members of the Idaho Subclasses against the Automaker Defendants and Airbag Module Defendants for his or her respective Class Vehicle(s), and ARC. For the remaining Defendants, Plaintiffs who purchased or leased their Class Vehicles in states with materially similar laws may represent Subclasses under this count against all other Defendants, and ARC.

1383. For purposes of this count, members of the Idaho Subclass shall be referred to as "Class Members."

1384. For purposes of this count, ARC, the Automaker Defendants, and the Airbag Module Defendants shall be referred to as "Defendants."

1385. Defendants, Plaintiffs and Class Members are "persons" under Idaho Code § 48-602(1).

---

[15] Plaintiffs bring this count against ARC and the Airbag Module Defendants based on their omissions and concealment of material facts only.

1386. The Class Vehicles are "goods" under Idaho Code § 48-602(6).

1387. The Idaho Consumer Protection Act ("Idaho CPA") makes "unfair methods of competition and unfair or deceptive acts or practices" unlawful. Idaho Code § 48-603.

1388. Defendants' violations of the Idaho CPA occurred repeatedly in their trade or practice—including the design, manufacture, distribution, marketing, sale, and lease of the Defective Inflators and the Class Vehicles.

1389. Defendants, through their agents, employees, and/or subsidiaries, violated the Idaho CPA by knowingly and intentionally misrepresenting, omitting, concealing, and/or failing to disclose material facts regarding the reliability, safety, and performance of the Class Vehicles and the Defective Inflators, as detailed above.

1390. Defendants had an ongoing duty to Plaintiffs and Class Members to refrain from unfair or deceptive practices under the Idaho CPA in the course of their business. Specifically, Defendants owed Plaintiffs and Class Members a duty to disclose all the material facts concerning the Defective Inflators in the Class Vehicles because:

    a.    Given ARC's design, development, testing and manufacture of the Defective Inflators and its experience and knowledge as experts and long-time veterans of the automotive industry, it, along with the

Automaker Defendants and the Airbag Module Defendants, possessed exclusive access to and was in a superior position to know the true facts about the Defective Inflators;

b.    Given the Airbag Module Defendants' role in the design, manufacture, and testing of the airbag modules with the Defective Inflators installed in them, and their experience and knowledge as experts and long-time veterans of the automotive industry, they, along with ARC and the Automaker Defendants, possessed exclusive access to and were in a superior position to know the true facts about the Defective Inflators;

c.    Given the Automaker Defendants' role in the design, manufacture, testing, and sale of Class Vehicles and Defective Inflators, and their experience and knowledge as experts and long-time veterans of the automotive industry, they, along with ARC and the Airbag Module Defendants, possessed exclusive access to and were in a superior position to know the true facts about the Defective Inflators;

d.    Given the Inflator Defect's hidden and technical nature, Plaintiffs and Class Members lack the sophisticated expertise in vehicle components and technology that would be necessary to discover the Inflator Defect on their own;

e.     Defendants knew that the Inflator Defect gave rise to serious safety concerns for the consumers who purchased and leased the Class Vehicles;

f.     The Inflator Defect poses a severe risk of harm in that, among other things, the metal shrapnel can puncture and stab the occupants, causing severe and potentially fatal injuries;

g.     Defendants knew about and investigated the Inflator Defect, but then did not notify consumers about it or disclose the Inflator Defect to NHTSA, and the Automaker Defendants did not launch a comprehensive recall for all Class Vehicles, all of which individually and together deprived Plaintiffs of an opportunity that otherwise could have led them to discover the truth about the Inflator Defect in their Class Vehicles; and

h.     The Automaker Defendants made, helped to make, or conspired to make incomplete representations about the safety and reliability of the Class Vehicles and their airbags, while purposefully withholding material facts about a known safety defect. Because they volunteered to provide information about the Class Vehicles that they marketed and offered for sale and lease to consumers, the Automaker Defendants had

313

the duty to disclose the whole truth.

1391. By misrepresenting the Class Vehicles as safe and reliable and the airbags installed in them as properly functioning and free from defects, and/or by failing to disclose and actively concealing the dangers and risk posed by the Inflator Defect to both consumers and NHTSA, Defendants engaged in one or more of the following unfair or deceptive business practices as defined in Idaho Code 48-603:

    a.    Representing that the Class Vehicles and/or the Defective Inflators had a characteristic that they did not actually have—*i.e.*, that the vehicles were safe and suitable for use on the roadway, when, in fact, they were not because their airbag inflators were defectively designed such that they had an unreasonably dangerous propensity to rupture, causing severe and fatal injuries;

    b.    Representing that the Class Vehicles and the Defective Inflators installed in them were of a particular quality, grade, or standard when, in fact, they were not of that quality, grade, or standard;

    c.    Concealing and failing to disclose that the Class Vehicles and the Defective Inflators installed in them were inherently defective, defectively designed, and not suitable for their intended use despite advertising them as safe and suitable for their intended function;

d.     Failing to market, distribute, sell, and lease the Class Vehicles equipped with Defective Inflators in accordance with Defendants' previous representations—i.e., that the Class Vehicles were safe and suitable for their intended use, when, in fact, they were not because of the Inflator Defect;

e.     Engaging in any act or practice that it otherwise misleading, false or deceptive to the consumer; and

f.     Engaging in any unconscionable method, act or practice in the conduct of trade or commerce.

Idaho Code § 48-603(5), (7), (9), (17), and (18).

1392. Defendants' unfair or deceptive acts or practices, including their misrepresentations, concealments, omissions, and/or suppressions of material facts, were designed to mislead and had a tendency or capacity to mislead and create a false impression in consumers that the Class Vehicles had properly-functioning and reliable airbags. Indeed, those misrepresentations, concealments, omissions, and suppressions of material facts did in fact deceive reasonable consumers, including Plaintiffs and Class Members, about the true safety and reliability of the Class Vehicles and/or the Defective Inflators installed in them, the quality of the Class Vehicles, and the true value of the Class Vehicles.

1393. Defendants intended for Plaintiffs and Class Members to rely on their misrepresentations, omissions, and concealment—which they did by purchasing and leasing the Class Vehicles at the prices they paid believing that their vehicles would not have an Inflator Defect that would affect the quality, reliability, and safety of the Class Vehicles and their airbags.

1394. Defendants' misrepresentations, concealments, omissions, and suppressions of material facts regarding the Inflator Defect and true characteristics of the Class Vehicles were material to the decisions of Plaintiffs and Class Members to purchase and lease those vehicles, as Defendants intended. Plaintiffs and Class Members were exposed to those misrepresentations, concealments, omissions, and suppressions of material facts, and relied on Defendants' misrepresentations that the Class Vehicles and their airbags were safe and reliable in deciding to purchase and lease the Class Vehicles.

1395. Plaintiffs' and Class Members' reliance was reasonable, as they had no way of discerning that Defendants' representations were false and misleading, or otherwise learning the facts that Defendants had concealed or failed to disclose. Plaintiffs and Class Members did not, and could not, unravel Defendants' deception on their own.

1396. Had they known the truth about the Inflator Defect, Plaintiffs and Class

Members would not have purchased or leased the Class Vehicles, or would have paid significantly less for them.

1397. As a direct and proximate result of Defendants' deceptive practices, Plaintiffs and Class Members have sustained economic injury and loss—either by purchasing a vehicle they otherwise would not have purchased or paying more than they otherwise would have as a result of Defendants' actions and omissions alleged above—that first occurred at the time each Class Vehicle was purchased or leased.

1398. Defendants' violations present a continuing risk to Plaintiffs and Class Members, as well as to the general public, because the Class Vehicles remain unsafe due to the Defective Inflators therein. Defendants' unlawful acts and practices complained of herein affect the public interest.

1399. Pursuant to Idaho Code § 48-608, Plaintiffs and Class Members seek an order enjoining the above unfair or deceptive acts or practices and awarding actual damages, treble damages, restitution, attorneys' fees, and any other just and proper relief available under the Idaho CPA against all Defendants.

> ### d.    Idaho Count 4: Fraud by Omission and Concealment Against All Defendants.

1400. Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

1401. The Idaho Plaintiff brings this count under Idaho law, individually and on behalf of the other members of the Idaho Subclasses against the Automaker Defendants and Airbag Module Defendants for his or her respective Class Vehicle(s), and ARC. For the remaining Defendants, Plaintiffs who purchased or leased their Class Vehicles in states with materially similar laws may represent Subclasses under this count against all other Defendants, and ARC.

1402. For purposes of this count, members of the Idaho Subclass shall be referred to as "Class Members."

1403. For purposes of this count, ARC, the Automaker Defendants, and the Airbag Module Defendants shall be referred to as "Defendants."

1404. Defendants are liable for both fraudulent concealment and non-disclosure. *See, e.g.*, Restatement (Second) of Torts §§ 550-51 (1977).

1405. Defendants owed Plaintiffs and Class Members a duty to disclose all the material facts concerning the Defective Inflators in the Class Vehicles because:

a.      Given the Automaker Defendants' role in the design, manufacture, testing, and sale of Class Vehicles and Defective Inflators, and their experience and knowledge as experts and long-time veterans of the automotive industry, they, along with ARC and the Airbag Module Defendants, possessed exclusive access to and were in a superior

318

position to know the true facts about the Defective Inflators;

b.      Given ARC's design, development, testing and manufacture of the Defective Inflators and its experience and knowledge as experts and long-time veterans of the automotive industry, it, along with the Automaker Defendants and the Airbag Module Defendants, possessed exclusive access to and was in a superior position to know the true facts about the Defective Inflators;

c.      Given the Airbag Module Defendants' role in the design, manufacture, and testing of the airbag modules with the Defective Inflators installed in them, and their experience and knowledge as experts and long-time veterans of the automotive industry, they, along with ARC and the Automaker Defendants, possessed exclusive access to and were in a superior position to know the true facts about the Defective Inflators;

d.      Given the Inflator Defect's hidden and technical nature, Plaintiffs and Class Members lack the sophisticated expertise in vehicle components and technology that would be necessary to discover the Inflator Defect on their own;

e.      Defendants knew that the Inflator Defect gave rise to serious safety concerns for the consumers who purchased and leased the Class

Vehicles;

f.   The Inflator Defect poses a severe risk of harm in that, among other things, the metal shrapnel can puncture and stab the occupants, causing severe and potentially fatal injuries;

g.   Defendants knew about and investigated the Inflator Defect, but then did not notify consumers about it, disclose the Inflator Defect to NHTSA, and the Automaker Defendants did not launch a comprehensive recall for all Class Vehicles, all of which individually and together deprived Plaintiffs of an opportunity that otherwise could have led them to discover the truth about the Inflator Defect in their Class Vehicles; and

h.   The Automaker Defendants made, helped to make, or conspired to make incomplete representations about the safety and reliability of the Class Vehicles and their airbags, while purposefully withholding material facts about a known safety defect. Because they volunteered to provide information about the Class Vehicles that they marketed and offered for sale and lease to consumers, the Automaker Defendants had the duty to disclose the whole truth.

1406. In breach of their duties, Defendants failed to disclose the Inflator

Defect and that the Class Vehicles' airbags were not safe and reliable to Plaintiffs and Class Members in connection with the sale of the Class Vehicles.

1407. The Inflator Defect within the Class Vehicles is material to the sale of the Class Vehicles because a reasonable person would find it important in purchasing, leasing, or retaining a new or used motor vehicle and because it directly impacts the value of the Class Vehicles purchased or leased by Plaintiffs and Class Members.

1408. Defendants intended for Plaintiffs and Class Members to rely on their omissions and concealment—which they did by purchasing and leasing the Class Vehicles at the prices they paid believing that their vehicles would not have an Inflator Defect that would affect the quality, reliability, and safety of the Class Vehicles and their airbags.

1409. Plaintiffs' and Class Members' reliance was reasonable because a reasonable consumer would not have expected that the Class Vehicles contained a safety defect that poses such a serious risk. They had no way of learning the facts that Defendants had concealed or failed to disclose. Plaintiffs and Class Members did not, and could not, unravel Defendants' deception on their own.

1410. Defendants actively concealed and suppressed these material facts, in whole or in part, to maintain a market for the Class Vehicles and the Defective

Inflators installed in them, to protect profits, and to avoid costly recalls that would expose them to liability for those expenses and harm the commercial reputations of Defendants and their products. They did so at the expense of Plaintiffs and Class Members.

1411. If Defendants had fully and adequately disclosed the Inflator Defect to consumers, Plaintiffs and Class Members would have seen such a disclosure.

1412. Through their omissions and concealment with respect to the Inflator Defect within the Class Vehicles, Defendants intended to induce, and did induce, Plaintiffs and Class Members to either purchase a Class Vehicle that they otherwise would not have purchased, or pay more for a Class Vehicle than they otherwise would have paid.

1413. Had Plaintiffs and Class Members known of the Inflator Defect within the Class Vehicles, they would not have purchased the Class Vehicles or would have paid less for them.

1414. As a direct and proximate result of Defendants' omissions and concealment, Plaintiffs and other Class Members either overpaid for the Class Vehicles or would not have purchased the Class Vehicles at all if the Inflator Defect had been disclosed to them. Accordingly, Defendants are liable to Plaintiffs and Class Members for their damages in an amount to be proven at trial.

322

1415. Defendants acted maliciously, oppressively, deliberately, with intent to defraud; in reckless disregard of the Plaintiffs' and Class Members' rights and well-being; and to enrich themselves. Defendants' misconduct warrants an assessment of punitive damages, as permitted by law, in an amount sufficient to deter such conduct in the future, which amount shall be determined according to proof at trial.

> **e.     Idaho Count 5: Unjust Enrichment Against the Automaker Defendants.**

1416. Plaintiffs reallege and incorporate by reference all allegations in Volume 1 of the Consolidated Class Action Complaint as though fully set forth herein.

1417. The Idaho Plaintiff brings this count under Idaho law, individually and on behalf of the other members of the Idaho Subclasses against the Automaker Defendants for his or her respective Class Vehicle(s). For the remaining Automaker Defendants, Plaintiffs who purchased or leased their Class Vehicles in states with materially similar laws may represent Subclasses under this count against all other Automaker Defendants.

1418. For purposes of this count, members of the Idaho Subclass shall be referred to as "Class Members."

1419. When they purchased and leased the Class Vehicles, Plaintiffs and

Class Members conferred tangible and material economic benefits upon the Automaker Defendants, who readily accepted and retained these benefits.

1420. Plaintiffs and Class Members would not have purchased or leased their Class Vehicles, or would have paid less for them, had they known of the Inflator Defect at the time of purchase or lease. Therefore, the Automaker Defendants profited from the sale and lease of the Class Vehicles to the detriment and expense of Plaintiffs and Class Members.

1421. The Automaker Defendants appreciated these economic benefits. These benefits were the expected result of the Automaker Defendants acting in their pecuniary interest at the expense of their customers. They knew of these benefits because they were aware of the Inflator Defect, yet they failed to disclose this knowledge and misled the Plaintiffs and Class Members regarding the nature and quality of the Class Vehicles while profiting from this deception.

1422. It would be unjust, inequitable, and unconscionable for the Automaker Defendants to retain these benefits, including because they were procured as a result of their wrongful conduct alleged above.

1423. Plaintiffs and Class Members are entitled to restitution of the benefits the Automaker Defendants unjustly retained and/or any amounts necessary to return Plaintiffs and Class Members to the position they occupied prior to dealing with

those Defendants, with such amounts to be determined at trial.

1424. Plaintiffs plead this claim separately as well as in the alternative to their claims for damages under Fed. R. Civ. P. 8(a)(3), because if the Court dismisses Plaintiffs' claims for damages enters judgment on them in favor of the Automaker Defendants, Plaintiffs will have no adequate legal remedy.

### 14.    Illinois

#### a.    Illinois Count 1: Breach of Express Warranty (810 Ill. Comp. Stat. 5/2-313 and 5/2A-210) Against the Automaker Defendants.

1425. Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

1426. The Illinois Plaintiffs bring this count under Illinois law, individually and on behalf of the other members of the Illinois Subclasses against the Automaker Defendants for their respective Class Vehicles. For the remaining Automaker Defendants, Plaintiffs who purchased or leased their Class Vehicles in states with materially similar laws may represent Subclasses under this count against all other Automaker Defendants.

1427. For purposes of this count, members of the Illinois Subclass shall be

referred to as "Class Members."

1428. The Automaker Defendants are and were at all relevant times "merchants" with respect to motor vehicles under 810 ILCS 5/2-104(1) and 5/2A-103(3), and "sellers" of motor vehicles under 5/2-103(1)(d).

1429. With respect to leases, the Automaker Defendants are and were at all relevant times "lessors" of motor vehicles under 810 ILCS 5/2A-103(1)(p).

1430. All Class members who purchased Class Vehicles in Illinois are "buyers" within the meaning of 810 ILCS 5/2-103(1)(a).

1431. All Class Members who leased Class Vehicles in Illinois are "lessees" within the meaning of 810 ILCS 5/2A-103(1)(n).

1432. The Class Vehicles are and were at all relevant times "goods" within the meaning of 810 ILCS 5/2-105(1) and 5/2A-103(1)(h).

1433. The Automaker Defendants issued an express written warranty for each defective Class Vehicle they sold, including that:

a.     The Class Vehicles would be free of defects in materials and workmanship at the time of sale; and

b.     The Class Vehicles were safe and reliable, and their airbags would function properly in the event of a crash.

1434. The warranties listed above formed the basis of the bargain with regard

to Plaintiffs' and Class Members' purchase and lease of the Class Vehicles.

1435. The Automaker Defendants knowingly breached their warranty for the Class Vehicles because:

a.  The airbag inflators have latent defects which have a dangerous propensity to cause the inflators to rupture and eject metal shrapnel, subjecting Plaintiffs and Class Members to the risk of loss and injury; and

b.  The Automaker Defendants denied, concealed, and misrepresented the Inflator Defect, in the process refusing to pay for or provide in a reasonably timely fashion the needed repairs and replacements for Plaintiffs and Class Members.

1436. The Automaker Defendants knew or should have known that the warranties were false and/or misleading. Specifically, the Automaker Defendants were aware of the Inflator Defect in the Class Vehicles, which made the vehicles inherently defective and dangerous at the time that they were sold and leased to Plaintiffs and Class Members.

1437. Plaintiffs and Class Members were exposed to the Automaker Defendants' misrepresentations, and they had no way of discerning that the Automaker Defendants' representations were false and misleading or otherwise

learning the material facts that the Automaker Defendants had concealed or failed to disclose. Accordingly, Plaintiffs and Class Members reasonably relied on the Automaker Defendants' express warranties when purchasing or leasing their Class Vehicles.

1438. Plaintiffs and Class Members timely provided the Automaker Defendants notice of the issues raised in this count and this Complaint and an opportunity to cure, as alleged in the paragraphs addressing Defendants' notice, above.

1439. Alternatively, Plaintiffs and Class Members were excused from providing the Automaker Defendants with notice and an opportunity to cure the breach, because it would have been futile. As alleged above, the Automaker Defendants knew about the Defective Inflators for years; however, to date, the Automaker Defendants have not instituted a recall or any other repair program with respect to all of the Class Vehicles, or even acknowledged that the Inflator Defect exists in all of the Class Vehicles. Therefore, they have refused to recall or repair defective vehicles. Moreover, to the extent the Automaker Defendants have issued recalls, those recalls are inadequate because, *inter alia*: (a) they are belated because the Automaker Defendants knew about the Defective Inflators for years and did nothing to recall or remedy the serious safety defect; (b) with tens of millions of

vehicles impacted in existing and potential future recalls, as a result of the Automaker Defendants' concealment of the Inflator Defect, the recalls cannot be implemented effectively due to supply constraints and resulting delays; (c) the recalls are incomplete, and apply to only a subset of the Class Vehicles.

1440. As a direct and proximate result of the Automaker Defendants' breach of their express warranties, the Class Vehicles were and are defective and the Inflator Defect was not remedied. Therefore, Plaintiff and Class Members have been damaged, in an amount to be proven at trial, through their overpayment at the time of purchase or lease for the Class Vehicles with an undisclosed safety defect that would not be remedied.

     **b.**    **Illinois Count 2: Breach of Implied Warranty of Merchantability (810 Ill. Comp. Stat. 5/2-314 and 5/2A-212) Against the Automaker Defendants.**

1441. Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

1442. The Illinois Plaintiffs bring this count under Illinois law, individually and on behalf of the other members of the Illinois Subclasses against the Automaker Defendants for their respective Class Vehicles. For the remaining Automaker Defendants, Plaintiffs who purchased or leased their Class Vehicles in states with materially similar laws may represent Subclasses under this count against all other

Automaker Defendants.

1443. For purposes of this count, members of the Illinois Subclass shall be referred to as "Class Members."

1444. A warranty that the Class Vehicles were in merchantable condition and fit for the ordinary purpose for which such goods are used is implied by law pursuant to 810 ILCS 5/2-314 and 5/2A-212.

1445. Defendants are and were at all relevant times "merchants" with respect to motor vehicles under 810 ILCS 5/2-104(1) and 5/2A-103(3), and a "seller" of motor vehicles under 5/2-103(1)(d).

1446. Defendants are and were at all relevant times "lessors" of motor vehicles under 810 ILCS 5/2A-103(1)(p).

1447. All Class Members who purchased Class Vehicles in Illinois are "buyers" within the meaning of 810 ILCS 5/2-103(1)(a).

1448. All State Class Members who leased Class Vehicles in Illinois are "lessees" within the meaning of 810 ILCS 5/2A-103(1)(n).

1449. The Class Vehicles are and were at all relevant times "goods" within the meaning of 810 ILCS 5/2-105(1) and 5/2A-103(1)(h).

1450. The Class Vehicles are not merchantable, and as such the Automaker Defendants breached their implied warranties, because at the time of sale and all

330

times thereafter:

    a.    The Class Vehicles would not pass without objection in the automotive trade given the Inflator Defect;

    b.    The Inflator Defect renders the Class Vehicles unsafe to drive and unfit for ordinary purposes;

    c.    The Class Vehicles and the airbags therein were inadequately labeled as safe and reliable, and the labeling failed to disclose the Inflator Defect; and

    d.    The Class Vehicles do not conform to their labeling, which represents that the vehicles are safe and suitable for their intended use.

1451. Plaintiffs and Class Members timely provided the Automaker Defendants notice of the issues raised in this count and this Complaint and an opportunity to cure, as alleged in the paragraphs addressing Defendants' notice, above.

1452. Alternatively, Plaintiffs and Class Members were excused from providing the Automaker Defendants with notice and an opportunity to cure the breach because it would have been futile. As alleged above, the Automaker Defendants have long known that the Class Vehicles contained the Defective Inflators, and that the Defective Inflators have caused airbags to malfunction in

331

crashes involving the Class Vehicles; however, to date, the Automaker Defendants have not instituted a recall or any other repair program with respect to all of the Class Vehicles, or even acknowledged that the Inflator Defect exists in all of those Class Vehicles. Moreover, to the extent the Automaker Defendants have issued recalls, those recalls are inadequate because, *inter alia*: (a) they are belated because the Automaker Defendants knew about the Defective Inflators for years and did nothing to recall or remedy the serious safety defect; (b) with tens of millions of vehicles impacted in existing and potential future recalls, as a result of the Automaker Defendants' concealment of the Inflator Defect, the recalls cannot be implemented effectively due to supply constraints and resulting delays; (c) the recalls are incomplete, and apply to only a subset of the Class Vehicles.

1453. Plaintiffs, individually and on behalf of Class Members, seek all available monetary damages (including actual, compensatory, and punitive damages), injunctive and equitable relief, and attorneys' fees and costs.

### c. Illinois Count 3: Violations of Illinois Consumer Fraud and Deceptive Business Practices Act (815 Ill. Comp. Stat. 505/1, *et seq.*) Against All Defendants.[16]

1454. Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

1455. The Illinois Plaintiffs bring this count under Illinois law, individually and on behalf of the other members of the Illinois Subclasses against the Automaker Defendants and Airbag Module Defendants for their respective Class Vehicles, and ARC. For the remaining Defendants, Plaintiffs who purchased or leased their Class Vehicles in states with materially similar laws may represent Subclasses under this count against all other Defendants, and ARC.

1456. For purposes of this count, members of the Illinois Subclass shall be referred to as "Class Members."

1457. For purposes of this count, ARC, the Automaker Defendants, and the Airbag Module Defendants shall be referred to as "Defendants."

1458. Defendants, Plaintiffs, and the Class Members are "persons" within the meaning of 815 ILCS 505/1(c).

1459. The Plaintiffs and Class Members are "consumers" within the meaning

---

[16] Plaintiffs bring this count against ARC and the Airbag Module Defendants based on their omissions and concealment of material facts only.

of 815 ILCS 505/1(e).

1460. The Class Vehicles are "merchandise" within the meaning of 815 ILCS 505/1(b).

1461. Defendants were and are engaged in "trade" and "commerce" within the meaning of 815 ILCS 505/1(f).

1462. The Illinois Consumer Fraud and Deceptive Business Practices Act ("Illinois CFA") prohibits "[u]nfair methods of competition and unfair or deceptive acts or practices[.]" 815 ILCS 505/2.

1463. Defendants' violations of the Illinois CFA occurred repeatedly in their trade or practice—including the design, manufacture, distribution, marketing, sale, and lease of the Defective Inflators and the Class Vehicles.

1464. Defendants, through their agents, employees, and/or subsidiaries, violated the Illinois CFA by knowingly and intentionally misrepresenting, omitting, concealing, and/or failing to disclose material facts regarding the reliability, safety, and performance of the Class Vehicles and the Defective Inflators, as detailed above.

1465. Defendants had an ongoing duty to Plaintiffs and Class Members to refrain from unfair or deceptive practices under the Illinois CFA in the course of their business. Specifically, Defendants owed Plaintiffs and Class Members a duty to disclose all the material facts concerning the Defective Inflators in the Class

Vehicles because:

    a.    Given the Automaker Defendants' role in the design, manufacture, testing, and sale of Class Vehicles and Defective Inflators, and their experience and knowledge as experts and long-time veterans of the automotive industry, they, along with ARC and the Airbag Module Defendants, possessed exclusive access to and were in a superior position to know the true facts about the Defective Inflators;

    b.    Given ARC's design, development, testing and manufacture of the Defective Inflators and its experience and knowledge as experts and long-time veterans of the automotive industry, it, along with the Automaker Defendants and the Airbag Module Defendants, possessed exclusive access to and was in a superior position to know the true facts about the Defective Inflators;

    c.    Given the Airbag Module Defendants' role in the design, manufacture, and testing of the airbag modules with the Defective Inflators installed in them, and their experience and knowledge as experts and long-time veterans of the automotive industry, they, along with ARC and the Automaker Defendants, possessed exclusive access to and were in a superior position to know the true facts about the Defective Inflators;

335

d.      Given the Inflator Defect's hidden and technical nature, Plaintiffs and Class Members lack the sophisticated expertise in vehicle components and technology that would be necessary to discover the Inflator Defect on their own;

e.      Defendants knew that the Inflator Defect gave rise to serious safety concerns for the consumers who purchased and leased the Class Vehicles;

f.      The Inflator Defect poses a severe risk of harm in that, among other things, the metal shrapnel can puncture and stab the occupants, causing severe and potentially fatal injuries;

g.      Defendants knew about and investigated the Inflator Defect, but then did not notify consumers about it or disclose the Inflator Defect to NHTSA, and the Automaker Defendants did not launch a comprehensive recall for all Class Vehicles, all of which individually and together deprived Plaintiffs of an opportunity that otherwise could have led them to discover the truth about the Inflator Defect in their Class Vehicles; and

h.      The Automaker Defendants made, helped to make, or conspired to make incomplete representations about the safety and reliability of the

Class Vehicles and their airbags, while purposefully withholding material facts about a known safety defect. Because they volunteered to provide information about the Class Vehicles that they marketed and offered for sale and lease to consumers, the Automaker Defendants had the duty to disclose the whole truth.

1466. By misrepresenting the Class Vehicles as safe and reliable and the airbags installed in them as properly-functioning and free from defects, and/or by failing to disclose and actively concealing the dangers and risk posed by the Inflator Defect to both consumers and NHTSA, Defendants engaged unfair or deceptive business practices prohibited by the 815 ILCS 505/2, including the use or employment of deception and fraud, and/or the concealment, suppression or omission of material facts, and engaging in conduct which creates a likelihood of confusion or misunderstanding.

1467. Defendants' unfair or deceptive acts or practices, including their misrepresentations, concealments, omissions, and/or suppressions of material facts, were designed to mislead and had a tendency or capacity to mislead and create a false impression in consumers that the Class Vehicles had properly-functioning and reliable airbags. Indeed, those misrepresentations, concealments, omissions, and suppressions of material facts did in fact deceive reasonable consumers, including

337

Plaintiffs and Class Members, about the true safety and reliability of the Class Vehicles and/or the Defective Inflators installed in them, the quality of the Class Vehicles, and the true value of the Class Vehicles.

1468. Defendants intended for Plaintiffs and Class Members to rely on their misrepresentations, omissions, and concealment—which they did by purchasing and leasing the Class Vehicles at the prices they paid believing that their vehicles would not have an Inflator Defect that would affect the quality, reliability, and safety of the Class Vehicles and their airbags.

1469. Defendants' misrepresentations, concealments, omissions, and suppressions of material facts regarding the Inflator Defect and true characteristics of the Class Vehicles were material to the decisions of Plaintiffs and Class Members to purchase and lease those vehicles, as Defendants intended. Plaintiffs and Class Members were exposed to those misrepresentations, concealments, omissions, and suppressions of material facts, and relied on Defendants' misrepresentations that the Class Vehicles and their airbags were safe and reliable in deciding to purchase and lease the Class Vehicles.

1470. Plaintiffs' and Class Members' reliance was reasonable, as they had no way of discerning that Defendants' representations were false and misleading, or otherwise learning the facts that Defendants had concealed or failed to disclose.

Plaintiffs and Class Members did not, and could not, unravel Defendants' deception on their own.

1471. Had they known the truth about the Inflator Defect, Plaintiffs and Class Members would not have purchased or leased the Class Vehicles, or would have paid significantly less for them.

1472. As a direct and proximate result of Defendants' deceptive practices, Plaintiffs and Class Members have sustained economic injury and loss—either by purchasing a vehicle they otherwise would not have purchased or paying more than they otherwise would have as a result of Defendants' actions and omissions alleged above—that first occurred at the time each Class Vehicle was purchased or leased.

1473. Defendants' violations present a continuing risk to Plaintiffs and Class Members, as well as to the general public, because the Class Vehicles remain unsafe due to the Defective Inflators therein. Defendants' unlawful acts and practices complained of herein affect the public interest.

1474. Plaintiffs and Class Members timely provided Defendants notice of the issues raised in this count and this Complaint and an opportunity to cure, as alleged in the paragraphs addressing Defendants' notice, above. Because Defendants failed to adequately remedy their unlawful conduct, Plaintiffs seek all damages and relief to which Plaintiffs and Class Members are entitled.

1475. Alternatively, Plaintiffs and Class Members were excused from providing the Defendants with notice and an opportunity to cure the Inflator Defect, because it would have been futile. As alleged above, the Defendants knew about the Defective Inflators for years; however, to date, the Automaker Defendants have not instituted a recall or any other repair program with respect to all of the Class Vehicles, or even acknowledged that the Inflator Defect exists in all of the Class Vehicles. Therefore, they have refused to recall or repair defective vehicles. Moreover, to the extent the Automaker Defendants have issued recalls, those recalls are inadequate because, *inter alia*: (a) they are belated because the Automaker Defendants knew about the Defective Inflators for years and did nothing to recall or remedy the serious safety defect; (b) with tens of millions of vehicles impacted in existing and potential future recalls, as a result of the Automaker Defendants' concealment of the Inflator Defect, the recalls cannot be implemented effectively due to supply constraints and resulting delays; (c) the recalls are incomplete, and apply to only a subset of the Class Vehicles.

1476. Pursuant to 815 ILCS 505/10a, Plaintiffs and Class Members seek an order enjoining Defendants' unfair or deceptive acts or practices and awarding actual damages, treble damages, restitution, attorneys' fees, and any other just and proper relief available under the Illinois CFA.

340

### d.   Illinois Count 4: Violation of the Illinois Uniform Deceptive Trade Practices Act (815 Ill. Comp. Stat. 510/1, *et seq.*) Against All Defendants.[17]

1477. Plaintiffs reallege and incorporate by reference all allegations in Volume 1 of the Consolidated Class Action Complaint as though fully set forth herein.

1478. The Illinois Plaintiffs bring this count under Illinois law, individually and on behalf of the other members of the Illinois Subclasses against the Automaker Defendants and Airbag Module Defendants for their respective Class Vehicles, and ARC. For the remaining Defendants, Plaintiffs who purchased or leased their Class Vehicles in states with materially similar laws may represent Subclasses under this count against all other Defendants, and ARC.

1479. For purposes of this count, members of the Illinois Subclass shall be referred to as "Class Members."

1480. For purposes of this count, ARC, the Automaker Defendants, and the Airbag Module Defendants shall be referred to as "Defendants."

1481. The Illinois Uniform Deceptive Trade Practices Act ("Illinois UDTPA") prohibits deceptive trade practices in the course of a business, vocation,

---

[17] Plaintiffs bring this count against ARC and the Airbag Module Defendants based on their omissions and concealment of material facts only.

or occupation. 815 ILCS 510/2(a).

1482. In the course of their business, Defendants, through their agents, employees, and/or subsidiaries, violated the UDTPA by knowingly and intentionally misrepresenting, omitting, concealing, and/or failing to disclose material facts regarding the quality, reliability, and safety of the Class Vehicles and the Defective Inflators, as detailed above.

1483. By misrepresenting the Class Vehicles as safe and reliable and the airbags installed in them as properly functioning and free from defects, and/or by failing to disclose and actively concealing the dangers and risk posed by the Inflator Defect to both consumers and NHTSA, Defendants engaged in one or more of the following unfair or deceptive business practices prohibited by 815 ILCS 510/2(a):

a. Representing that the Class Vehicles and/or the Defective Inflators had a characteristic that they did not actually have—*i.e.*, that the vehicles were safe and suitable for use on the roadway, when, in fact, they were not because their airbag inflators were defectively designed such that they had an unreasonably dangerous propensity to rupture, causing severe and fatal injuries;

b. Representing that the Class Vehicles and the Defective Inflators installed in them were of a particular quality, grade, or standard when,

in fact, they were not of that quality, grade, or standard;

c.    Advertising the Class Vehicles and the airbags installed in them with the intent not to sell or lease them as advertised, i.e., that the Class Vehicles were safe and suitable for their intended use, when, in fact, they were not because of the Inflator Defect; and

d.    Engaging in other conduct which similarly creates a likelihood of confusion or misunderstanding.

815 ILCS 510/2(a)(5), (7), (9), and (12)

1484. Defendants' unfair or deceptive acts or practices, including their misrepresentations, concealments, omissions, and/or suppressions of material facts, were designed to mislead and had a tendency or capacity to mislead and create a false impression in consumers that the Class Vehicles had properly-functioning and reliable airbags. Indeed, those misrepresentations, concealments, omissions, and suppressions of material facts did in fact deceive reasonable consumers, including Plaintiffs and Class Members, about the true safety and reliability of the Class Vehicles and/or the Defective Inflators installed in them, the quality of the Class Vehicles, and the true value of the Class Vehicles.

1485. Defendants intended for Plaintiffs and Class Members to rely on their misrepresentations, omissions, and concealment—which they did by purchasing and

leasing the Class Vehicles at the prices they paid believing that their vehicles would not have an Inflator Defect that would affect the quality, reliability, and safety of the Class Vehicles and their airbags.

1486. Defendants' misrepresentations, concealments, omissions, and suppressions of material facts regarding the Inflator Defect and true characteristics of the Class Vehicles were material to the decisions of Plaintiffs and Class Members to purchase and lease those vehicles, as Defendants intended. Plaintiffs and Class Members were exposed to those misrepresentations, concealments, omissions, and suppressions of material facts, and relied on Defendants' misrepresentations that the Class Vehicles and their airbags were safe and reliable in deciding to purchase and lease the Class Vehicles.

1487. Plaintiffs' and Class Members' reliance was reasonable, as they had no way of discerning that Defendants' representations were false and misleading, or otherwise learning the facts that Defendants had concealed or failed to disclose. Plaintiffs and Class Members did not, and could not, unravel Defendants' deception on their own.

1488. Had they known the truth about the Inflator Defect, Plaintiffs and Class Members would not have purchased or leased the Class Vehicles, or would have paid significantly less for them.

1489. As a direct and proximate result of Defendants' deceptive practices, Plaintiffs and Class Members have sustained economic injury and loss—either by purchasing a vehicle they otherwise would not have purchased or paying more than they otherwise would have as a result of Defendants' actions and omissions alleged above—that first occurred at the time each Class Vehicle was purchased or leased.

1490. Defendants' violations present a continuing risk to Plaintiffs and Class Members, as well as to the general public, because the Class Vehicles remain unsafe due to the Defective Inflators therein. Defendants' unlawful acts and practices complained of herein affect the public interest.

1491. Pursuant to 815 ILCS 510/3, Plaintiffs and Class Members seek an order enjoining Defendants' unfair and/or deceptive acts or practices, any such orders or judgments as may be necessary to restore to them any money acquired by their unfair or deceptive acts or practices, including restitution and/or restitutionary disgorgement, and any other just and proper relief available under the Illinois UDTPA.

1492. Plaintiffs plead this claim separately as well as in the alternative to their claims for damages under Fed. R. Civ. P. 8(a)(3), because if the Court dismisses Plaintiffs' claims for damages or enters judgment on them in favor of Defendants, Plaintiffs will have no adequate legal remedy.

### e.   Illinois Count 5: Fraud by Omission and Concealment Against All Defendants.

1493. Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

1494. The Illinois Plaintiffs bring this count under Illinois law, individually and on behalf of the other members of the Illinois Subclasses against the Automaker Defendants and Airbag Module Defendants for their respective Class Vehicles, and ARC. For the remaining Defendants, Plaintiffs who purchased or leased their Class Vehicles in states with materially similar laws may represent Subclasses under this count against all other Defendants, and ARC.

1495. For purposes of this count, members of the Illinois Subclass shall be referred to as "Class Members."

1496. For purposes of this count, ARC, the Automaker Defendants, and the Airbag Module Defendants shall be referred to as "Defendants."

1497. Defendants are liable for both fraudulent concealment and non-disclosure. *See, e.g.*, Restatement (Second) of Torts §§ 550-51 (1977).

1498. Defendants owed Plaintiffs and Class Members a duty to disclose all the material facts concerning the Defective Inflators in the Class Vehicles because:

a.   Given the Automaker Defendants' role in the design, manufacture, testing, and sale of Class Vehicles and Defective Inflators, and their

346

experience and knowledge as experts and long-time veterans of the automotive industry, they, along with ARC and the Airbag Module Defendants, possessed exclusive access to and were in a superior position to know the true facts about the Defective Inflators;

b.  Given ARC's design, development, testing and manufacture of the Defective Inflators and its experience and knowledge as experts and long-time veterans of the automotive industry, it, along with the Automaker Defendants and the Airbag Module Defendants, possessed exclusive access to and was in a superior position to know the true facts about the Defective Inflators;

c.  Given the Airbag Module Defendants' role in the design, manufacture, and testing of the airbag modules with the Defective Inflators installed in them, and their experience and knowledge as experts and long-time veterans of the automotive industry, they, along with ARC and the Automaker Defendants, possessed exclusive access to and were in a superior position to know the true facts about the Defective Inflators;

d.  Given the Inflator Defect's hidden and technical nature, Plaintiffs and Class Members lack the sophisticated expertise in vehicle components and technology that would be necessary to discover the Inflator Defect

347

on their own;

e.    Defendants knew that the Inflator Defect gave rise to serious safety concerns for the consumers who purchased and leased the Class Vehicles;

f.    The Inflator Defect poses a severe risk of harm in that, among other things, the metal shrapnel can puncture and stab the occupants, causing severe and potentially fatal injuries;

g.    Defendants knew about and investigated the Inflator Defect, but then did not notify consumers about it or disclose the Inflator Defect to NHTSA, and the Automaker Defendants did not launch a comprehensive recall for all Class Vehicles, all of which individually and together deprived Plaintiffs of an opportunity that otherwise could have led them to discover the truth about the Inflator Defect in their Class Vehicles; and

h.    The Automaker Defendants made, helped to make, or conspired to make incomplete representations about the safety and reliability of the Class Vehicles and their airbags, while purposefully withholding material facts about a known safety defect. Because they volunteered to provide information about the Class Vehicles that they marketed and

348

offered for sale and lease to consumers, the Automaker Defendants had

the duty to disclose the whole truth.

1499. In breach of their duties, Defendants failed to disclose the Inflator

Defect and that the Class Vehicles' airbags were not safe and reliable to Plaintiffs

and Class Members in connection with the sale of the Class Vehicles.

1500. The Inflator Defect within the Class Vehicles is material to the sale of

the Class Vehicles because a reasonable person would find it important in

purchasing, leasing, or retaining a new or used motor vehicle and because it directly

impacts the value of the Class Vehicles purchased or leased by Plaintiffs and Class

Members.

1501. Defendants intended for Plaintiffs and Class Members to rely on their

omissions and concealment—which they did by purchasing and leasing the Class

Vehicles at the prices they paid believing that their vehicles would not have an

Inflator Defect that would affect the quality, reliability, and safety of the Class

Vehicles and their airbags.

1502. Plaintiffs' and Class Members' reliance was reasonable because a

reasonable consumer would not have expected that the Class Vehicles contained a

safety defect that poses such a serious risk. They had no way of learning the facts

that Defendants had concealed or failed to disclose. Plaintiffs and Class Members

did not, and could not, unravel Defendants' deception on their own.

1503. Defendants actively concealed and suppressed these material facts, in whole or in part, to maintain a market for the Class Vehicles and the Defective Inflators installed in them, to protect profits, and to avoid costly recalls that would expose them to liability for those expenses and harm the commercial reputations of Defendants and their products. They did so at the expense of Plaintiffs and Class Members.

1504. If Defendants had fully and adequately disclosed the Inflator Defect to consumers, Plaintiffs and Class Members would have seen such a disclosure.

1505. Through their omissions and concealment with respect to the Inflator Defect within the Class Vehicles, Defendants intended to induce, and did induce, Plaintiffs and Class Members to either purchase a Class Vehicle that they otherwise would not have purchased, or pay more for a Class Vehicle than they otherwise would have paid.

1506. Had Plaintiffs and Class Members known of the Inflator Defect within the Class Vehicles, they would not have purchased the Class Vehicles or would have paid less for them.

1507. As a direct and proximate result of Defendants' omissions and concealment, Plaintiffs and other Class Members either overpaid for the Class

Vehicles or would not have purchased the Class Vehicles at all if the Inflator Defect had been disclosed to them. Accordingly, Defendants are liable to Plaintiffs and Class Members for their damages in an amount to be proven at trial.

1508. Defendants acted maliciously, oppressively, deliberately, with intent to defraud; in reckless disregard of the Plaintiffs' and Class Members' rights and well-being; and to enrich themselves. Defendants' misconduct warrants an assessment of punitive damages, as permitted by law, in an amount sufficient to deter such conduct in the future, which amount shall be determined according to proof at trial.

<blockquote>

**f.      Illinois Count 6: Unjust Enrichment Against the Automaker Defendants.**

</blockquote>

1509. Plaintiffs reallege and incorporate by reference all allegations in Volume 1 of the Consolidated Class Action Complaint as though fully set forth herein.

1510. The Illinois Plaintiffs bring this count under Illinois law, individually and on behalf of the other members of the Illinois Subclasses against the Automaker Defendants for their respective Class Vehicles. For the remaining Automaker Defendants, Plaintiffs who purchased or leased their Class Vehicles in states with materially similar laws may represent Subclasses under this count against all other Automaker Defendants.

1511. For purposes of this count, members of the Illinois Subclass shall be

referred to as "Class Members."

1512. When they purchased and leased the Class Vehicles, Plaintiffs and Class Members conferred tangible and material economic benefits upon the Automaker Defendants, who readily accepted and retained these benefits.

1513. Plaintiffs and Class Members would not have purchased or leased their Class Vehicles, or would have paid less for them, had they known of the Inflator Defect at the time of purchase or lease. Therefore, the Automaker Defendants profited from the sale and lease of the Class Vehicles to the detriment and expense of Plaintiffs and Class Members.

1514. The Automaker Defendants appreciated these economic benefits. These benefits were the expected result of the Automaker Defendants acting in their pecuniary interest at the expense of their customers. They knew of these benefits because they were aware of the Inflator Defect, yet they failed to disclose this knowledge and misled the Plaintiffs and Class Members regarding the nature and quality of the Class Vehicles while profiting from this deception.

1515. It would be unjust, inequitable, and unconscionable for the Automaker Defendants to retain these benefits, including because they were procured as a result of their wrongful conduct alleged above.

1516. Plaintiffs and Class Members are entitled to restitution of the benefits

the Automaker Defendants unjustly retained and/or any amounts necessary to return Plaintiffs and Class Members to the position they occupied prior to dealing with those Defendants, with such amounts to be determined at trial.

1517. Plaintiffs plead this claim separately as well as in the alternative to their claims for damages under Fed. R. Civ. P. 8(a)(3), because if the Court dismisses Plaintiffs' claims for damages enters judgment on them in favor of the Automaker Defendants, Plaintiffs will have no adequate legal remedy.

### 15.  Indiana

#### a.  Indiana Count 1: Breach of Express Warranty (Ind. Code §§ 26-1-2-313 and 26-1-2.1-210) Against the Automaker Defendants.

1518. Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

1519. The Indiana Plaintiffs bring this count under Indiana law, individually and on behalf of the other members of the Indiana Subclasses against the Automaker Defendants for their respective Class Vehicles. For the remaining Automaker Defendants, Plaintiffs who purchased or leased their Class Vehicles in states with materially similar laws may represent Subclasses under this count against all other Automaker Defendants.

1520. For purposes of this count, members of the Indiana Subclass shall be

353

referred to as "Class Members."

1521. The Automaker Defendants are and were at all relevant times "merchants" with respect to motor vehicles under Ind. Code §§ 26-1-2.1-103(3) and 26-1-2- 104(1), and "sellers" of motor vehicles under § 26-1-2-103(1)(d).

1522. With respect to leases, the Automaker Defendants are and were at all relevant times "lessors" of motor vehicles under Ind. Code § 26-1-2.1-103(1)(p).

1523. All Class Members who purchased Class Vehicles in Indiana are "buyers" within the meaning of Ind. Code § 26-1-2-103(1)(a).

1524. All Class Members who leased Class Vehicles in Indiana are "lessees" within the meaning of Ind. Code § 26-1-2.1-103(1)(n).

1525. The Automaker Defendants issued an express written warranty for each defective Class Vehicle they sold, including that:

a.      The Class Vehicles would be free of defects in materials and workmanship at the time of sale; and

b.      The Class Vehicles were safe and reliable, and their airbags would function properly in the event of a crash.

1526. The warranties listed above formed the basis of the bargain with regard to Plaintiffs' and Class Members' purchase and lease of the Class Vehicles.

1527. The Automaker Defendants knowingly breached their warranty for the

354

Class Vehicles because:

    a.    The airbag inflators have latent defects which have a dangerous propensity to cause the inflators to rupture and eject metal shrapnel, subjecting Plaintiffs and Class Members to the risk of loss and injury; and

    b.    The Automaker Defendants denied, concealed, and misrepresented the Inflator Defect, in the process refusing to pay for or provide in a reasonably timely fashion the needed repairs and replacements for Plaintiffs and Class Members.

1528. The Automaker Defendants knew or should have known that the warranties were false and/or misleading. Specifically, the Automaker Defendants were aware of the Inflator Defect in the Class Vehicles, which made the vehicles inherently defective and dangerous at the time that they were sold and leased to Plaintiffs and Class Members.

1529. Plaintiffs and Class Members were exposed to the Automaker Defendants' misrepresentations, and they had no way of discerning that the Automaker Defendants' representations were false and misleading or otherwise learning the material facts that the Automaker Defendants had concealed or failed to disclose. Accordingly, Plaintiffs and Class Members reasonably relied on the

Automaker Defendants' express warranties when purchasing or leasing their Class Vehicles.

1530. Plaintiffs and Class Members timely provided the Automaker Defendants notice of the issues raised in this count and this Complaint and an opportunity to cure, as alleged in the paragraphs addressing Defendants' notice, above.

1531. Alternatively, Plaintiffs and Class Members were excused from providing the Automaker Defendants with notice and an opportunity to cure the breach, because it would have been futile. As alleged above, the Automaker Defendants knew about the Defective Inflators for years; however, to date, the Automaker Defendants have not instituted a recall or any other repair program with respect to all of the Class Vehicles, or even acknowledged that the Inflator Defect exists in all of the Class Vehicles. Therefore, they have refused to recall or repair defective vehicles. Moreover, to the extent the Automaker Defendants have issued recalls, those recalls are inadequate because, *inter alia*: (a) they are belated because the Automaker Defendants knew about the Defective Inflators for years and did nothing to recall or remedy the serious safety defect; (b) with tens of millions of vehicles impacted in existing and potential future recalls, as a result of the Automaker Defendants' concealment of the Inflator Defect, the recalls cannot be

implemented effectively due to supply constraints and resulting delays; (c) the recalls are incomplete, and apply to only a subset of the Class Vehicles.

1532. As a direct and proximate result of the Automaker Defendants' breach of their express warranties, the Class Vehicles were and are defective and the Inflator Defect was not remedied. Therefore, Plaintiff and Class Members have been damaged, in an amount to be proven at trial, through their overpayment at the time of purchase or lease for the Class Vehicles with an undisclosed safety defect that would not be remedied.

> **b.** **Indiana Count 2: Breach of Implied Warranty of Merchantability (Ind. Code §§ 26-1-2-314 and 26-1-2.1-212) Against the Automaker Defendants.**

1533. Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

1534. The Indiana Plaintiffs bring this count under Indiana law, individually and on behalf of the other members of the Indiana Subclasses against the Automaker Defendants for their respective Class Vehicles. For the remaining Automaker Defendants, Plaintiffs who purchased or leased their Class Vehicles in states with materially similar laws may represent Subclasses under this count against all other Automaker Defendants.

1535. For purposes of this count, members of the Indiana Subclass shall be

referred to as "Class Members."

1536. A warranty that the Class Vehicles were in merchantable condition and fit for the ordinary purpose for which such goods are used is implied by law pursuant to Ind. Code §§ 26-1-2-314 and 26-1-2.1-212.

1537. Defendants were and are at all relevant times "merchants" with respect to motor vehicles under Ind. Code §§ 26-1-2.1-103(3) and 26-1-2-104(1), and "sellers" of motor vehicles under § 26-1-2-103(1)(d).

1538. Defendants were and are at all relevant times "lessors" of motor vehicles under Ind. Code § 26-1-2.1-103(1)(p).

1539. All Class Members who purchased Class Vehicles in Indiana are "buyers" within the meaning of Ind. Code § 26-1-2-103(1)(a).

1540. All Class Members who leased Class Vehicles in Indiana are "lessees" within the meaning of Ind. Code § 26-1-2.1-103(1)(n).

1541. The Class Vehicles are and were at all relevant times "goods" within the meaning of Ind. Code §§ 26-1-2.1-103(1)(h) and 26-1-2-105(1).

1542. The Class Vehicles are not merchantable, and as such the Automaker Defendants breached their implied warranties, because at the time of sale and all times thereafter:

    a.    The Class Vehicles would not pass without objection in the automotive

trade given the Inflator Defect;

b.     The Inflator Defect renders the Class Vehicles unsafe to drive and unfit for ordinary purposes;

c.     The Class Vehicles and the airbags therein were inadequately labeled as safe and reliable, and the labeling failed to disclose the Inflator Defect; and

d.     The Class Vehicles do not conform to their labeling, which represents that the vehicles are safe and suitable for their intended use.

1543. Plaintiffs and Class Members timely provided the Automaker Defendants notice of the issues raised in this count and this Complaint and an opportunity to cure, as alleged in the paragraphs addressing Defendants' notice, above.

1544. Alternatively, Plaintiffs and Class Members were excused from providing the Automaker Defendants with notice and an opportunity to cure the breach because it would have been futile. As alleged above, the Automaker Defendants have long known that the Class Vehicles contained the Defective Inflators, and that the Defective Inflators have caused airbags to malfunction in crashes involving the Class Vehicles; however, to date, the Automaker Defendants have not instituted a recall or any other repair program with respect to all of the Class

Vehicles, or even acknowledged that the Inflator Defect exists in all of those Class Vehicles. Moreover, to the extent the Automaker Defendants have issued recalls, those recalls are inadequate because, inter alia: (a) they are belated because the Automaker Defendants knew about the Defective Inflators for years and did nothing to recall or remedy the serious safety defect; (b) with tens of millions of vehicles impacted in existing and potential future recalls, as a result of the Automaker Defendants' concealment of the Inflator Defect, the recalls cannot be implemented effectively due to supply constraints and resulting delays; (c) the recalls are incomplete, and apply to only a subset of the Class Vehicles.

1545. Plaintiffs, individually and on behalf of Class Members, seek all available monetary damages (including actual, compensatory, and punitive damages), injunctive and equitable relief, and attorneys' fees and costs.

      **c.**    **Indiana Count 3: Violation of the Indiana Deceptive Consumer Sales Act (Ind. Code § 24-5-0.5-1, *et seq*.) Against All Defendants.** [18]

1546. Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

---

[18] Plaintiffs bring this count against ARC and the Airbag Module Defendants based on their omissions and concealment of material facts only.

360

1547. The Indiana Plaintiffs bring this count under Indiana law, individually and on behalf of the other members of the Indiana Subclasses against the Automaker Defendants and Airbag Module Defendants for their respective Class Vehicles, and ARC. For the remaining Defendants, Plaintiffs who purchased or leased their Class Vehicles in states with materially similar laws may represent Subclasses under this count against all other Defendants, and ARC.

1548. For purposes of this count, members of the Indiana Subclass shall be referred to as "Class Members."

1549. For purposes of this count, ARC, the Automaker Defendants, and the Airbag Module Defendants shall be referred to as "Defendants."

1550. Defendants are "suppliers" within the meaning of Ind. Code § 24-5-0.5-2(a)(3).

1551. Defendants, Plaintiffs, and Class Members are "persons" within the meaning of Ind. Code § 24-5-0.5-2(a)(2).

1552. Defendants were and are engaged in "consumer transactions" within the meaning of Ind. Code § 24-5-0.5-2(a)(1).

1553. The Class Vehicles were the "subject of a consumer transaction" within the meaning of Ind. Code §24-5-0.5-2(a)(4).

1554. The Indiana Deceptive Consumer Sales Act ("Indiana DCSA")

361

prohibits a supplier from committing an "unfair, abusive, or deceptive act, omission, or practice in connection with a consumer transaction." Ind. Code § 24-5-0.5-3(a).

1555. In the course of their business, Defendants, through their agents, employees, and/or subsidiaries, violated the Indiana DCSA by knowingly and intentionally misrepresenting, omitting, concealing, and/or failing to disclose material facts regarding the quality, reliability, and safety of the Class Vehicles and the Inflator Defect, as detailed above.

1556. Defendants had an ongoing duty to Plaintiffs and Class Members to refrain from unfair or deceptive practices under the Indiana DCSA in the course of their business. Specifically, Defendants owed the Plaintiffs and Class Members a duty to disclose all the material facts concerning the Inflator Defect in the Class Vehicles because, as detailed above:

    a.    Given the Automaker Defendants' role in the design, manufacture, testing, and sale of Class Vehicles and Defective Inflators, and their experience and knowledge as experts and long-time veterans of the automotive industry, they, along with ARC and the Airbag Module Defendants, possessed exclusive access to and were in a superior position to know the true facts about the Defective Inflators;

    b.    Given ARC's design, development, testing and manufacture of the

Defective Inflators and its experience and knowledge as experts and long-time veterans of the automotive industry, it, along with the Automaker Defendants and the Airbag Module Defendants, possessed exclusive access to and was in a superior position to know the true facts about the Defective Inflators;

c.      Given the Airbag Module Defendants' role in the design, manufacture, and testing of the airbag modules with the Defective Inflators installed in them, and their experience and knowledge as experts and long-time veterans of the automotive industry, they, along with ARC and the Automaker Defendants, possessed exclusive access to and were in a superior position to know the true facts about the Defective Inflators;

d.      Given the Inflator Defect's hidden and technical nature, Plaintiffs and Class Members lack the sophisticated expertise in vehicle components and technology that would be necessary to discover the Inflator Defect on their own;

e.      Defendants knew that the Inflator Defect gave rise to serious safety concerns for the consumers who purchased and leased the Class Vehicles;

f.      The Inflator Defect poses a severe risk of harm in that, among other

363

things, the metal shrapnel can puncture and stab the occupants, causing

severe and potentially fatal injuries;

g.     Defendants knew about and investigated the Inflator Defect, but then

did not notify consumers about it or disclose the Inflator Defect to

NHTSA, and the Automaker Defendants did not launch a

comprehensive recall for all Class Vehicles, all of which individually

and together deprived Plaintiffs of an opportunity that otherwise could

have led them to discover the truth about the Inflator Defect in their

Class Vehicles; and

h.     The Automaker Defendants made, helped to make, or conspired to

make incomplete representations about the safety and reliability of the

Class Vehicles and their airbags, while purposefully withholding

material facts about a known safety defect. Because they volunteered

to provide information about the Class Vehicles that they marketed and

offered for sale and lease to consumers, the Automaker Defendants had

the duty to disclose the whole truth.

1557. By misrepresenting the Class Vehicles as safe and reliable and the

airbags installed in them as properly functioning and free from defects, and/or by

failing to disclose and actively concealing the dangers and risk posed by the Inflator

Defect to both consumers and NHTSA, Defendants engaged in one or more of the following unfair or deceptive business practices prohibited by Ind. Code § 24-5-0.5-3:

    a.    Representing that the Class Vehicles and/or the Defective Inflators had a characteristic that they did not actually have—i.e., that the vehicles were safe and suitable for use on the roadway, when, in fact, they were not because their airbag inflators were defectively designed such that they had an unreasonably dangerous propensity to rupture, causing severe and fatal injuries;

    b.    Representing that the Class Vehicles and the Defective Inflators installed in them were of a particular quality, grade, or standard when, in fact, they were not of that quality, grade, or standard; and

    c.    Advertising the Class Vehicles and the airbags installed in them with the intent not to sell or lease them as advertised, i.e., that the Class Vehicles were safe and suitable for their intended use, when, in fact, they were not because of the Inflator Defect.

Ind. Code §§ 24-5-0.5-3(b)(1), (2), and (11).

1558. Defendants' unfair or deceptive acts or practices, including their misrepresentations, concealments, omissions, and/or suppressions of material facts,

were designed to mislead and had a tendency or capacity to mislead and create a false impression in consumers that the Class Vehicles had properly-functioning and reliable airbags. Indeed, those misrepresentations, concealments, omissions, and suppressions of material facts did in fact deceive reasonable consumers, including Plaintiffs and Class Members, about the true safety and reliability of the Class Vehicles and/or the Defective Inflators installed in them, the quality of the Class Vehicles, and the true value of the Class Vehicles.

1559. Defendants intended for Plaintiffs and Class Members to rely on their misrepresentations, omissions, and concealment—which they did by purchasing and leasing the Class Vehicles at the prices they paid believing that their vehicles would not have an Inflator Defect that would affect the quality, reliability, and safety of the Class Vehicles and their airbags.

1560. Defendants' misrepresentations, concealments, omissions, and suppressions of material facts regarding the Inflator Defect and true characteristics of the Class Vehicles were material to the decisions of Plaintiffs and Class Members to purchase and lease those vehicles, as Defendants intended. Plaintiffs and Class Members were exposed to those misrepresentations, concealments, omissions, and suppressions of material facts, and relied on Defendants' misrepresentations that the Class Vehicles and their airbags were safe and reliable in deciding to purchase and

lease the Class Vehicles.

1561. Plaintiffs' and Class Members' reliance was reasonable, as they had no way of discerning that Defendants' representations were false and misleading, or otherwise learning the facts that Defendants had concealed or failed to disclose. Plaintiffs and Class Members did not, and could not, unravel Defendants' deception on their own.

1562. Had they known the truth about the Inflator Defect, Plaintiffs and Class Members would not have purchased or leased the Class Vehicles, or would have paid significantly less for them.

1563. As a direct and proximate result of Defendants' deceptive practices, Plaintiffs and Class Members have sustained economic injury and loss—either by purchasing a vehicle they otherwise would not have purchased or paying more than they otherwise would have as a result of Defendants' actions and omissions alleged above—that first occurred at the time each Class Vehicle was purchased or leased.

1564. Defendants' violations present a continuing risk to Plaintiffs and Class Members, as well as to the general public, because the Class Vehicles remain unsafe due to the Defective Inflators therein. Defendants' unlawful acts and practices complained of herein affect the public interest.

1565. Pursuant to Ind. Code § 24-5-0.5-4, Plaintiffs and Class Members seek an order enjoining Defendants' unfair and/or deceptive acts or practices, any such orders or judgments as may be necessary to restore to them any money acquired by unfair competition, including restitution and/or restitutionary disgorgement, and any other just and proper relief available under the Indiana DCSA.

> **d.     Indiana Count 4: Fraud by Omission and Concealment Against All Defendants.**

1566. Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

1567. The Indiana Plaintiffs bring this count under Indiana law, individually and on behalf of the other members of the Indiana Subclasses against the Automaker Defendants and Airbag Module Defendants for their respective Class Vehicles, and ARC. For the remaining Defendants, Plaintiffs who purchased or leased their Class Vehicles in states with materially similar laws may represent Subclasses under this count against all other Defendants, and ARC.

1568. For purposes of this count, members of the Indiana Subclass shall be referred to as "Class Members."

1569. For purposes of this count, ARC, the Automaker Defendants, and the Airbag Module Defendants shall be referred to as "Defendants."

1570. Defendants are liable for both fraudulent concealment and non-disclosure. *See, e.g.*, Restatement (Second) of Torts §§ 550-51 (1977).

1571. Defendants owed Plaintiffs and Class Members a duty to disclose all the material facts concerning the Defective Inflators in the Class Vehicles because:

a.  Given the Automaker Defendants' role in the design, manufacture, testing, and sale of Class Vehicles and Defective Inflators, and their experience and knowledge as experts and long-time veterans of the automotive industry, they, along with ARC and the Airbag Module Defendants, possessed exclusive access to and were in a superior position to know the true facts about the Defective Inflators;

b.  Given ARC's design, development, testing and manufacture of the Defective Inflators and its experience and knowledge as experts and long-time veterans of the automotive industry, it, along with the Automaker Defendants and the Airbag Module Defendants, possessed exclusive access to and was in a superior position to know the true facts about the Defective Inflators;

c.  Given the Airbag Module Defendants' role in the design, manufacture, and testing of the airbag modules with the Defective Inflators installed in them, and their experience and knowledge as experts and long-time

369

veterans of the automotive industry, they, along with ARC and the Automaker Defendants, possessed exclusive access to and were in a superior position to know the true facts about the Defective Inflators;

d.    Given the Inflator Defect's hidden and technical nature, Plaintiffs and Class Members lack the sophisticated expertise in vehicle components and technology that would be necessary to discover the Inflator Defect on their own;

e.    Defendants knew that the Inflator Defect gave rise to serious safety concerns for the consumers who purchased and leased the Class Vehicles;

f.    The Inflator Defect poses a severe risk of harm in that, among other things, the metal shrapnel can puncture and stab the occupants, causing severe and potentially fatal injuries;

g.    Defendants knew about and investigated the Inflator Defect, but then did not notify consumers about it or disclose the Inflator Defect to NHTSA, and the Automaker Defendants did not launch a comprehensive recall for all Class Vehicles, all of which individually and together deprived Plaintiffs of an opportunity that otherwise could have led them to discover the truth about the Inflator Defect in their

370

Class Vehicles; and

h.     The Automaker Defendants made, helped to make, or conspired to make incomplete representations about the safety and reliability of the Class Vehicles and their airbags, while purposefully withholding material facts about a known safety defect. Because they volunteered to provide information about the Class Vehicles that they marketed and offered for sale and lease to consumers, the Automaker Defendants had the duty to disclose the whole truth.

1572. In breach of their duties, Defendants failed to disclose the Inflator Defect and that the Class Vehicles' airbags were not safe and reliable to Plaintiffs and Class Members in connection with the sale of the Class Vehicles.

1573. The Inflator Defect within the Class Vehicles is material to the sale of the Class Vehicles because a reasonable person would find it important in purchasing, leasing, or retaining a new or used motor vehicle and because it directly impacts the value of the Class Vehicles purchased or leased by Plaintiffs and Class Members.

1574. Defendants intended for Plaintiffs and Class Members to rely on their omissions and concealment—which they did by purchasing and leasing the Class Vehicles at the prices they paid believing that their vehicles would not have an

Inflator Defect that would affect the quality, reliability, and safety of the Class Vehicles and their airbags.

1575. Plaintiffs' and Class Members' reliance was reasonable because a reasonable consumer would not have expected that the Class Vehicles contained a safety defect that poses such a serious risk. They had no way of learning the facts that Defendants had concealed or failed to disclose. Plaintiffs and Class Members did not, and could not, unravel Defendants' deception on their own.

1576. Defendants actively concealed and suppressed these material facts, in whole or in part, to maintain a market for the Class Vehicles and the Defective Inflators installed in them, to protect profits, and to avoid costly recalls that would expose them to liability for those expenses and harm the commercial reputations of Defendants and their products. They did so at the expense of Plaintiffs and Class Members.

1577. If Defendants had fully and adequately disclosed the Inflator Defect to consumers, Plaintiffs and Class Members would have seen such a disclosure.

1578. Through their omissions and concealment with respect to the Inflator Defect within the Class Vehicles, Defendants intended to induce, and did induce, Plaintiffs and Class Members to either purchase a Class Vehicle that they otherwise

would not have purchased, or pay more for a Class Vehicle than they otherwise would have paid.

1579. Had Plaintiffs and Class Members known of the Inflator Defect within the Class Vehicles, they would not have purchased the Class Vehicles or would have paid less for them.

1580. As a direct and proximate result of Defendants' omissions and concealment, Plaintiffs and other Class Members either overpaid for the Class Vehicles or would not have purchased the Class Vehicles at all if the Inflator Defect had been disclosed to them. Accordingly, Defendants are liable to Plaintiffs and Class Members for their damages in an amount to be proven at trial.

1581. Defendants acted maliciously, oppressively, deliberately, with intent to defraud; in reckless disregard of the Plaintiffs' and Class Members' rights and well-being; and to enrich themselves. Defendants' misconduct warrants an assessment of punitive damages, as permitted by law, in an amount sufficient to deter such conduct in the future, which amount shall be determined according to proof at trial.

     e.     **Indiana Count 5: Unjust Enrichment Against the Automaker Defendants.**

1582. Plaintiffs reallege and incorporate by reference all allegations in Volume 1 of the Consolidated Class Action Complaint as though fully set forth herein.

1583. The Indiana Plaintiffs bring this count under Indiana law, individually and on behalf of the other members of the Indiana Subclasses against the Automaker Defendants for their respective Class Vehicles. For the remaining Automaker Defendants, Plaintiffs who purchased or leased their Class Vehicles in states with materially similar laws may represent Subclasses under this count against all other Automaker Defendants.

1584. For purposes of this count, members of the Indiana Subclass shall be referred to as "Class Members."

1585. When they purchased and leased the Class Vehicles, Plaintiffs and Class Members conferred tangible and material economic benefits upon the Automaker Defendants, who readily accepted and retained these benefits.

1586. Plaintiffs and Class Members would not have purchased or leased their Class Vehicles, or would have paid less for them, had they known of the Inflator Defect at the time of purchase or lease. Therefore, the Automaker Defendants profited from the sale and lease of the Class Vehicles to the detriment and expense of Plaintiffs and Class Members.

1587. The Automaker Defendants appreciated these economic benefits. These benefits were the expected result of the Automaker Defendants acting in their pecuniary interest at the expense of their customers. They knew of these benefits

374

because they were aware of the Inflator Defect, yet they failed to disclose this knowledge and misled the Plaintiffs and Class Members regarding the nature and quality of the Class Vehicles while profiting from this deception.

1588. It would be unjust, inequitable, and unconscionable for the Automaker Defendants to retain these benefits, including because they were procured as a result of their wrongful conduct alleged above.

1589. Plaintiffs and Class Members are entitled to restitution of the benefits the Automaker Defendants unjustly retained and/or any amounts necessary to return Plaintiffs and Class Members to the position they occupied prior to dealing with those Defendants, with such amounts to be determined at trial.

1590. Plaintiffs plead this claim separately as well as in the alternative to their claims for damages under Fed. R. Civ. P. 8(a)(3), because if the Court dismisses Plaintiffs' claims for damages enters judgment on them in favor of the Automaker Defendants, Plaintiffs will have no adequate legal remedy.

## 16.    Iowa

### a.    Iowa Count 1: Breach of Express Warranty (Iowa Code §§ 554.2313 and 554.13210) Against the Automaker Defendants.

1591. Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

1592. The Iowa Plaintiffs bring this count under Iowa law, individually and

375

on behalf of the other members of the Iowa Subclasses against the Automaker Defendants for their respective Class Vehicles. For the remaining Automaker Defendants, Plaintiffs who purchased or leased their Class Vehicles in states with materially similar laws may represent Subclasses under this count against all other Automaker Defendants.

1593. For purposes of this count, members of the Iowa Subclass shall be referred to as "Class Members."

1594. The Automaker Defendants are and were at all relevant times "merchants" with respect to motor vehicles under Iowa Code §§ 554.2104(1) and 554.13103(3), and "sellers" of motor vehicles under § 554.2103(1)(d).

1595. With respect to leases, the Automaker Defendants are and were all relevant times "lessors" of motor vehicles under Iowa Code § 554.13103(1)(p).

1596. The Class Vehicles are and were at all relevant times "goods" within the meaning of Iowa Code §§ 554.2105(1) and 554.13103(1)(h).

1597. The Automaker Defendants issued an express written warranty for each defective Class Vehicle they sold, including that:

a.   The Class Vehicles would be free of defects in materials and workmanship at the time of sale; and

b.   The Class Vehicles were safe and reliable, and their airbags would

376

function properly in the event of a crash.

1598. The warranties listed above formed the basis of the bargain with regard to Plaintiffs' and Class Members' purchase and lease of the Class Vehicles.

1599. The Automaker Defendants knowingly breached their warranty for the Class Vehicles because:

a.   The airbag inflators have latent defects which have a dangerous propensity to cause the inflators to rupture and eject metal shrapnel, subjecting Plaintiffs and Class Members to the risk of loss and injury; and

b.   The Automaker Defendants denied, concealed, and misrepresented the Inflator Defect, in the process refusing to pay for or provide in a reasonably timely fashion the needed repairs and replacements for Plaintiffs and Class Members.

1600. The Automaker Defendants knew or should have known that the warranties were false and/or misleading. Specifically, the Automaker Defendants were aware of the Inflator Defect in the Class Vehicles, which made the vehicles inherently defective and dangerous at the time that they were sold and leased to Plaintiffs and Class Members.

1601. Plaintiffs and Class Members were exposed to the Automaker

Defendants' misrepresentations, and they had no way of discerning that the Automaker Defendants' representations were false and misleading or otherwise learning the material facts that the Automaker Defendants had concealed or failed to disclose. Accordingly, Plaintiffs and Class Members reasonably relied on the Automaker Defendants' express warranties when purchasing or leasing their Class Vehicles.

1602. Plaintiffs and Class Members timely provided the Automaker Defendants notice of the issues raised in this count and this Complaint and an opportunity to cure, as alleged in the paragraphs addressing Defendants' notice above.

1603. Alternatively, Plaintiffs and Class Members were excused from providing the Automaker Defendants with notice and an opportunity to cure the breach, because it would have been futile. As alleged above, the Automaker Defendants knew about the Defective Inflators for years; however, to date, the Automaker Defendants have not instituted a recall or any other repair program with respect to all of the Class Vehicles, or even acknowledged that the Inflator Defect exists in all of the Class Vehicles. Therefore, they have refused to recall or repair defective vehicles. Moreover, to the extent the Automaker Defendants have issued recalls, those recalls are inadequate because, *inter alia*: (a) they are belated because

the Automaker Defendants knew about the Defective Inflators for years and did nothing to recall or remedy the serious safety defect; (b) with tens of millions of vehicles impacted in existing and potential future recalls, as a result of the Automaker Defendants' concealment of the Inflator Defect, the recalls cannot be implemented effectively due to supply constraints and resulting delays; (c) the recalls are incomplete, and apply to only a subset of the Class Vehicles.

1604. As a direct and proximate result of the Automaker Defendants' breach of their express warranties, the Class Vehicles were and are defective and the Inflator Defect was not remedied. Therefore, Plaintiff and Class Members have been damaged, in an amount to be proven at trial, through their overpayment at the time of purchase or lease for the Class Vehicles with an undisclosed safety defect that would not be remedied.

> **b.     Iowa Count 2: Breach of Implied Warranty of Merchantability (Iowa Code §§ 554.2314 and 554.13212) Against the Automaker Defendants.**

1605. Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

1606. The Iowa Plaintiffs bring this count under Iowa law, individually and on behalf of the other members of the Iowa Subclasses against the Automaker Defendants for their respective Class Vehicles. For the remaining Automaker

Defendants, Plaintiffs who purchased or leased their Class Vehicles in states with materially similar laws may represent Subclasses under this count against all other Automaker Defendants.

1607. For purposes of this count, members of the Iowa Subclass shall be referred to as "Class Members."

1608. The Automaker Defendants were at all relevant times "merchants" with respect to motor vehicles under Iowa Code §§ 554.2104(1) and 554.13103(3), and "sellers" of motor vehicles under § 554.2103(1)(d).

1609. With respect to leases, the Automaker Defendants are and were at all relevant times "lessors" of motor vehicles under Iowa Code § 554.13103(1)(p).

1610. The Class Vehicles are and were at all relevant times "goods" within the meaning of Iowa Code §§ 554.2105(1) and 554.13103(1)(h).

1611. A warranty that the Class Vehicles were in merchantable condition and fit for the ordinary purpose for which vehicles are used is implied by law pursuant to Iowa Code §§ 554.2314 and 554.13212.

1612. The Class Vehicles are not merchantable, and as such the Automaker Defendants breached their implied warranties, because at the time of sale and all times thereafter:

    a.    The Class Vehicles would not pass without objection in the automotive

380

trade given the Inflator Defect;

b.      The Inflator Defect renders the Class Vehicles unsafe to drive and unfit for ordinary purposes;

c.      The Class Vehicles and the airbags therein were inadequately labeled as safe and reliable, and the labeling failed to disclose the Inflator Defect; and

d.      The Class Vehicles do not conform to their labeling, which represents that the vehicles are safe and suitable for their intended use.

1613. Plaintiffs and Class Members timely provided the Automaker Defendants notice of the issues raised in this count and this Complaint and an opportunity to cure, as alleged in the paragraphs addressing Defendants' notice above.

1614. Alternatively, Plaintiffs and Class Members were excused from providing the Automaker Defendants with notice and an opportunity to cure the breach because it would have been futile. As alleged above, the Automaker Defendants have long known that the Class Vehicles contained the Defective Inflators, and that the Defective Inflators have caused airbags to malfunction in crashes involving the Class Vehicles; however, to date, the Automaker Defendants have not instituted a recall or any other repair program with respect to all of the Class

Vehicles, or even acknowledged that the Inflator Defect exists in all of those Class Vehicles. Moreover, to the extent the Automaker Defendants have issued recalls, those recalls are inadequate because, inter alia: (a) they are belated because the Automaker Defendants knew about the Defective Inflators for years and did nothing to recall or remedy the serious safety defect; (b) with tens of millions of vehicles impacted in existing and potential future recalls, as a result of the Automaker Defendants' concealment of the Inflator Defect, the recalls cannot be implemented effectively due to supply constraints and resulting delays; (c) the recalls are incomplete, and apply to only a subset of the Class Vehicles.

1615. Plaintiffs, individually and on behalf of Class Members, seek all available monetary damages (including actual, compensatory, and punitive damages), injunctive and equitable relief, and attorneys' fees and costs.

> ### c. Iowa Count 3: Violations of the Private Right of Action for Consumer Frauds Act (Iowa Code § 714h.1, *et seq.*) Against All Defendants.

1616. Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

1617. The Iowa Plaintiffs bring this count under Iowa law, individually and on behalf of the other members of the Iowa Subclasses against the Automaker Defendants and Airbag Module Defendants for their respective Class Vehicles, and

ARC. For the remaining Defendants, Plaintiffs who purchased or leased their Class Vehicles in states with materially similar laws may represent Subclasses under this count against all other Defendants and ARC.

1618. For purposes of this count, members of the Iowa Subclass shall be referred to as "Class Members."

1619. For purposes of this count ARC, the Automaker Defendants and the Airbag Module Defendants as "Defendants."

1620. Defendants, Plaintiffs, and the Class Members are "persons" within the meaning of Iowa Code § 714H.2(7).

1621. Plaintiffs and Class Members are "consumers" within the meaning of Iowa Code § 714H.2(3).

1622. The Class Vehicles are "merchandise" and "consumer merchandise" within the meanings of Iowa Code § 714H.2(4), and (6).

1623. The Iowa Private Right of Action for Consumer Frauds Act (the "Iowa CFA") prohibits a person from engaging in any "practice or act the person knows or reasonably should know is an unfair practice, deception, fraud, false pretense, or false promise, or the misrepresentation, concealment, suppression, or omission of a material fact with the intent that others rely upon the unfair practice, deception, fraud, false pretense, false promise, misrepresentation, concealment, suppression, or

omission in connection with the advertisement, sale, or lease of consumer merchandise." Iowa Code § 714H.3(1).

1624. In the course of their business, the Automaker Defendants, through their agents, employees, and/or subsidiaries, violated the Iowa CFA by knowingly and intentionally misrepresenting, omitting, concealing, and/or failing to disclose material facts regarding the quality, reliability, and safety of the Class Vehicles and the Inflator Defect, as detailed above.

1625. Defendants had an ongoing duty to Plaintiffs and Class Members to refrain from unfair or deceptive practices under the Iowa CFA in the course of their business. Specifically, they owed Plaintiffs and Class Members a duty to disclose all the material facts concerning the Inflator Defect in the Class Vehicles because:

a. Given the Automaker Defendants' role in the design, manufacture, testing, and sale of Class Vehicles and Defective Inflators, and their experience and knowledge as experts and long-time veterans of the automotive industry, they, along with ARC and the Airbag Module Defendants, possessed exclusive access to and were in a superior position to know the true facts about the Defective Inflators;

b. Given ARC's design, development, testing and manufacture of the Defective Inflators and its experience and knowledge as experts and

384

long-time veterans of the automotive industry, it, along with the Automaker Defendants and the Airbag Module Defendants, possessed exclusive access to and was in a superior position to know the true facts about the Defective Inflators;

c.    Given the Airbag Module Defendants' role in the design, manufacture, and testing of the airbag modules with the Defective Inflators installed in them, and their experience and knowledge as experts and long-time veterans of the automotive industry, they, along with ARC and the Automaker Defendants, possessed exclusive access to and were in a superior position to know the true facts about the Defective Inflators;

d.    Given the Inflator Defect's hidden and technical nature, Plaintiffs and Class Members lack the sophisticated expertise in vehicle components and technology that would be necessary to discover the Inflator Defect on their own;

e.    Defendants knew that the Inflator Defect gave rise to serious safety concerns for the consumers who purchased and leased the Class Vehicles;

f.    The Inflator Defect poses a severe risk of harm in that, among other things, the metal shrapnel can puncture and stab the occupants, causing

385

severe and potentially fatal injuries;

g.      Defendants knew about and investigated the Inflator Defect, but then did not notify consumers about it or disclose the Inflator Defect to NHTSA, and the Automaker Defendants did not launch a comprehensive recall for all Class Vehicles, all of which individually and together deprived Plaintiffs of an opportunity that otherwise could have led them to discover the truth about the Inflator Defect in their Class Vehicles; and

h.      The Automaker Defendants made, helped to make, or conspired to make incomplete representations about the safety and reliability of the Class Vehicles and their airbags, while purposefully withholding material facts about a known safety defect. Because they volunteered to provide information about the Class Vehicles that they marketed and offered for sale and lease to consumers, the Automaker Defendants had the duty to disclose the whole truth.

1626. By misrepresenting the Class Vehicles as safe and reliable and the airbags installed in them as properly functioning and free from defects, and/or by failing to disclose and actively concealing the dangers and risk posed by the Inflator Defect to both consumers and NHTSA, Defendants engaged in untrue and

386

misleading advertising prohibited by Iowa Code § 714H.3(1).

1627. Defendants made or caused to be made and disseminated throughout Iowa advertising, marketing, labeling, and other publications containing numerous statements that were untrue or misleading, and which were known, or which by the exercise of reasonable care they should have been known to be untrue and misleading to consumers, including Plaintiffs and Class Members.

1628. Defendants' unfair or deceptive acts or practices, including their misrepresentations, concealments, omissions, and/or suppressions of material facts, were designed to mislead and had a tendency or capacity to mislead and create a false impression in consumers that the Class Vehicles had properly-functioning and reliable airbags. Indeed, those misrepresentations, concealments, omissions, and suppressions of material facts did in fact deceive reasonable consumers, including Plaintiffs and Class Members, about the true safety and reliability of the Class Vehicles and/or the Defective Inflators installed in them, the quality of the Class Vehicles, and the true value of the Class Vehicles.

1629. Defendants intended for Plaintiffs and Class Members to rely on their misrepresentations, omissions, and concealment—which they did by purchasing and leasing the Class Vehicles at the prices they paid believing that their vehicles would not have an Inflator Defect that would affect the quality, reliability, and safety of the

Class Vehicles and their airbags.

1630. Defendants' misrepresentations, concealments, omissions, and suppressions of material facts regarding the Inflator Defect and true characteristics of the Class Vehicles were material to the decisions of Plaintiffs and Class Members to purchase and lease those vehicles, as Defendants intended. Plaintiffs and Class Members were exposed to those misrepresentations, concealments, omissions, and suppressions of material facts, and relied on Defendants' misrepresentations that the Class Vehicles and their airbags were safe and reliable in deciding to purchase and lease the Class Vehicles.

1631. Plaintiffs' and Class Members' reliance was reasonable, as they had no way of discerning that Defendants' representations were false and misleading, or otherwise learning the facts that Defendants had concealed or failed to disclose. Plaintiffs and Class Members did not, and could not, unravel Defendants' deception on their own.

1632. Had they known the truth about the Inflator Defect, Plaintiffs and Class Members would not have purchased or leased the Class Vehicles, or would have paid significantly less for them.

1633. As a direct and proximate result of Defendants' deceptive practices, Plaintiffs and Class Members have sustained economic injury and loss—either by

purchasing a vehicle they otherwise would not have purchased or paying more than they otherwise would have as a result of Defendants' actions and omissions alleged above—that first occurred at the time each Class Vehicle was purchased or leased.

1634. Defendants' violations present a continuing risk to Plaintiffs and Class Members, as well as to the general public, because the Class Vehicles remain unsafe due to the Defective Inflators therein. Defendants' unlawful acts and practices complained of herein affect the public interest.

1635. Plaintiffs and Class Members seek an order enjoining Defendants' false advertising, any such orders or judgments as may be necessary to restore to Plaintiffs and Class Members any money acquired by unfair competition, including restitution and/or restitutionary disgorgement, and any other just and proper relief available under the false advertising provisions of the Iowa CFA.

> ### d.     Iowa Count 4: Fraud by Omission and Concealment Against All Defendants.

1636. Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

1637. The Iowa Plaintiffs bring this count under Iowa law, individually and on behalf of the other members of the Iowa Subclasses against the Automaker Defendants and Airbag Module Defendants for their respective Class Vehicles, and ARC. For the remaining Defendants, Plaintiffs who purchased or leased their Class

Vehicles in states with materially similar laws may represent Subclasses under this count against all other Defendants and ARC.

1638. For purposes of this count, members of the Iowa Subclass shall be referred to as "Class Members."

1639. For purposes of this count, ARC, the Automaker Defendants, and the Airbag Module Defendants shall be referred to as "Defendants."

1640. Defendants are liable for both fraudulent concealment and non-disclosure. *See, e.g.*, Restatement (Second) of Torts §§ 550-51 (1977).

1641. Defendants owed Plaintiffs and Class Members a duty to disclose all the material facts concerning the Defective Inflators in the Class Vehicles because:

a. Given the Automaker Defendants' role in the design, manufacture, testing, and sale of Class Vehicles and Defective Inflators, and their experience and knowledge as experts and long-time veterans of the automotive industry, they, along with ARC and the Airbag Module Defendants, possessed exclusive access to and were in a superior position to know the true facts about the Defective Inflators;

b. Given ARC's design, development, testing and manufacture of the Defective Inflators and its experience and knowledge as experts and

long-time veterans of the automotive industry, it, along with the Automaker Defendants and the Airbag Module Defendants, possessed exclusive access to and was in a superior position to know the true facts about the Defective Inflators;

c.  Given the Airbag Module Defendants' role in the design, manufacture, and testing of the airbag modules with the Defective Inflators installed in them, and their experience and knowledge as experts and long-time veterans of the automotive industry, they, along with ARC and the Automaker Defendants, possessed exclusive access to and were in a superior position to know the true facts about the Defective Inflators;

d.  Given the Inflator Defect's hidden and technical nature, Plaintiffs and Class Members lack the sophisticated expertise in vehicle components and technology that would be necessary to discover the Inflator Defect on their own;

e.  Defendants knew that the Inflator Defect gave rise to serious safety concerns for the consumers who purchased and leased the Class Vehicles;

f.  The Inflator Defect poses a severe risk of harm in that, among other things, the metal shrapnel can puncture and stab the occupants, causing

391

severe and potentially fatal injuries;

g.      Defendants knew about and investigated the Inflator Defect, but then did not notify consumers about it or disclose the Inflator Defect to NHTSA, and the Automaker Defendants did not launch a comprehensive recall for all Class Vehicles, all of which individually and together deprived Plaintiffs of an opportunity that otherwise could have led them to discover the truth about the Inflator Defect in their Class Vehicles; and

h.      The Automaker Defendants made, helped to make, or conspired to make incomplete representations about the safety and reliability of the Class Vehicles and their airbags, while purposefully withholding material facts about a known safety defect. Because they volunteered to provide information about the Class Vehicles that they marketed and offered for sale and lease to consumers, the Automaker Defendants had the duty to disclose the whole truth.

1642. In breach of their duties, Defendants failed to disclose the Inflator Defect and that the Class Vehicles' airbags were not safe and reliable to Plaintiffs and Class Members in connection with the sale of the Class Vehicles.

1643. The Inflator Defect within the Class Vehicles is material to the sale of

the Class Vehicles because a reasonable person would find it important in purchasing, leasing, or retaining a new or used motor vehicle and because it directly impacts the value of the Class Vehicles purchased or leased by Plaintiffs and Class Members.

1644. Defendants intended for Plaintiffs and Class Members to rely on their omissions and concealment—which they did by purchasing and leasing the Class Vehicles at the prices they paid believing that their vehicles would not have an Inflator Defect that would affect the quality, reliability, and safety of the Class Vehicles and their airbags.

1645. Plaintiffs' and Class Members' reliance was reasonable because a reasonable consumer would not have expected that the Class Vehicles contained a safety defect that poses such a serious risk. They had no way of learning the facts that Defendants had concealed or failed to disclose. Plaintiffs and Class Members did not, and could not, unravel Defendants' deception on their own.

1646. Defendants actively concealed and suppressed these material facts, in whole or in part, to maintain a market for the Class Vehicles and the Defective Inflators installed in them, to protect profits, and to avoid costly recalls that would expose them to liability for those expenses and harm the commercial reputations of Defendants and their products. They did so at the expense of Plaintiffs and Class

Members.

1647. If Defendants had fully and adequately disclosed the Inflator Defect to consumers, Plaintiffs and Class Members would have seen such a disclosure.

1648. Through their omissions and concealment with respect to the Inflator Defect within the Class Vehicles, Defendants intended to induce, and did induce, Plaintiffs and Class Members to either purchase a Class Vehicle that they otherwise would not have purchased, or pay more for a Class Vehicle than they otherwise would have paid.

1649. Had Plaintiffs and Class Members known of the Inflator Defect within the Class Vehicles, they would not have purchased the Class Vehicles or would have paid less for them.

1650. As a direct and proximate result of Defendants' omissions and concealment, Plaintiffs and other Class Members either overpaid for the Class Vehicles or would not have purchased the Class Vehicles at all if the Inflator Defect had been disclosed to them. Accordingly, Defendants are liable to Plaintiffs and Class Members for their damages in an amount to be proven at trial.

1651. Defendants acted maliciously, oppressively, deliberately, with intent to defraud; in reckless disregard of the Plaintiffs' and Class Members' rights and well-being; and to enrich themselves. Defendants' misconduct warrants an assessment of

punitive damages, as permitted by law, in an amount sufficient to deter such conduct in the future, which amount shall be determined according to proof at trial.

### e.   Iowa Count 5: Unjust Enrichment Against the Automaker Defendants.

1652. Plaintiffs reallege and incorporate by reference all allegations in Volume 1 of the Consolidated Class Action Complaint as though fully set forth herein.

1653. The Iowa Plaintiffs bring this count under Iowa law, individually and on behalf of the other members of the Iowa Subclasses against the Automaker Defendants for their respective Class Vehicles. For the remaining Automaker Defendants, Plaintiffs who purchased or leased their Class Vehicles in states with materially similar laws may represent Subclasses under this count against all other Automaker Defendants.

1654. For purposes of this count, members of the Iowa Subclass shall be referred to as "Class Members."

1655. When they purchased and leased the Class Vehicles, Plaintiffs and Class Members conferred tangible and material economic benefits upon the Automaker Defendants, who readily accepted and retained these benefits.

1656. Plaintiffs and Class Members would not have purchased or leased their Class Vehicles, or would have paid less for them, had they known of the Inflator

Defect at the time of purchase or lease. Therefore, the Automaker Defendants profited from the sale and lease of the Class Vehicles to the detriment and expense of Plaintiffs and Class Members.

1657. The Automaker Defendants appreciated these economic benefits. These benefits were the expected result of the Automaker Defendants acting in their pecuniary interest at the expense of their customers. They knew of these benefits because they were aware of the Inflator Defect, yet they failed to disclose this knowledge and misled the Plaintiffs and Class Members regarding the nature and quality of the Class Vehicles while profiting from this deception.

1658. It would be unjust, inequitable, and unconscionable for the Automaker Defendants to retain these benefits, including because they were procured as a result of their wrongful conduct alleged above.

1659. Plaintiffs and Class Members are entitled to restitution of the benefits the Automaker Defendants unjustly retained and/or any amounts necessary to return Plaintiffs and Class Members to the position they occupied prior to dealing with those Defendants, with such amounts to be determined at trial.

1660. Plaintiffs plead this claim separately as well as in the alternative to their claims for damages under Fed. R. Civ. P. 8(a)(3), because if the Court dismisses Plaintiffs' claims for damages enters judgment on them in favor of the Automaker

Defendants, Plaintiffs will have no adequate legal remedy.

### 17.  Kansas

#### a.  Kansas Count 1: Breach of Express Warranty (Kan. Stat. Ann. §§ 84-2-313 and 84-2A-210) Against the Automaker Defendants.

1661. Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

1662. The Kansas Plaintiff brings this count under Kansas law, individually and on behalf of the other members of the Kansas Subclasses against the Automaker Defendants for his or her respective Class Vehicle(s). For the remaining Automaker Defendants, Plaintiffs who purchased or leased their Class Vehicles in states with materially similar laws may represent Subclasses under this count against all other Automaker Defendants.

1663. For purposes of this count, members of the Kansas Subclass shall be referred to as "Class Members."

1664. The Automaker Defendants are and were at all relevant times "merchants" with respect to motor vehicles under Kan. Stat. Ann. §§ 84-2-104(1) and 84-2A-103(3), and "sellers" of motor vehicles under § 84-2-103(1)(d).

1665. With respect to leases, the Automaker Defendants are and were at all relevant times "lessors" of motor vehicles under Kan. Stat. Ann. § 84-2A-103(1)(p).

1666. All Class Members who purchased Class Vehicles in Kansas are "buyers" within the meaning of Kan. Stat. Ann. § 84-2- 103(1)(a).

1667. All Class Members who leased Class Vehicles in Kansas are "lessees" within the meaning of Kan. Stat. Ann. § 84-2A-103(1)(n).

1668. The Class Vehicles are and were at all relevant times "goods" within the meaning of Kan. Stat. Ann. §§ 84-2-105(1) and 84-2A-103(1)(h).

1669. The Automaker Defendants issued an express written warranty for each defective Class Vehicle they sold, including that:

a.  The Class Vehicles would be free of defects in materials and workmanship at the time of sale; and

b.  The Class Vehicles were safe and reliable, and their airbags would function properly in the event of a crash.

1670. The warranties listed above formed the basis of the bargain with regard to Plaintiffs' and Class Members' purchase and lease of the Class Vehicles.

1671. The Automaker Defendants knowingly breached their warranty for the Class Vehicles because:

a.  The airbag inflators have latent defects which have a dangerous propensity to cause the inflators to rupture and eject metal shrapnel, subjecting Plaintiffs and Class Members to the risk of loss and injury;

and

b.   The Automaker Defendants denied, concealed, and misrepresented the Inflator Defect, in the process refusing to pay for or provide in a reasonably timely fashion the needed repairs and replacements for Plaintiffs and Class Members.

1672. The Automaker Defendants knew or should have known that the warranties were false and/or misleading. Specifically, the Automaker Defendants were aware of the Inflator Defect in the Class Vehicles, which made the vehicles inherently defective and dangerous at the time that they were sold and leased to Plaintiffs and Class Members.

1673. Plaintiffs and Class Members were exposed to the Automaker Defendants' misrepresentations, and they had no way of discerning that the Automaker Defendants' representations were false and misleading or otherwise learning the material facts that the Automaker Defendants had concealed or failed to disclose. Accordingly, Plaintiffs and Class Members reasonably relied on the Automaker Defendants' express warranties when purchasing or leasing their Class Vehicles.

1674. Plaintiffs and Class Members timely provided the Automaker Defendants notice of the issues raised in this count and this Complaint and an

opportunity to cure, as alleged in the paragraphs addressing Defendants' notice above.

1675. Alternatively, Plaintiffs and Class Members were excused from providing the Automaker Defendants with notice and an opportunity to cure the breach, because it would have been futile. As alleged above, the Automaker Defendants knew about the Defective Inflators for years; however, to date, the Automaker Defendants have not instituted a recall or any other repair program with respect to all of the Class Vehicles, or even acknowledged that the Inflator Defect exists in all of the Class Vehicles. Therefore, they have refused to recall or repair defective vehicles. Moreover, to the extent the Automaker Defendants have issued recalls, those recalls are inadequate because, *inter alia*: (a) they are belated because the Automaker Defendants knew about the Defective Inflators for years and did nothing to recall or remedy the serious safety defect; (b) with tens of millions of vehicles impacted in existing and potential future recalls, as a result of the Automaker Defendants' concealment of the Inflator Defect, the recalls cannot be implemented effectively due to supply constraints and resulting delays; (c) the recalls are incomplete, and apply to only a subset of the Class Vehicles.

1676. As a direct and proximate result of the Automaker Defendants' breach of their express warranties, the Class Vehicles were and are defective and the Inflator

Defect was not remedied. Therefore, Plaintiff and Class Members have been damaged, in an amount to be proven at trial, through their overpayment at the time of purchase or lease for the Class Vehicles with an undisclosed safety defect that would not be remedied.

> **b.    Kansas Count 2: Breach of Implied Warranty (Kan. Stat. Ann. §§ 84-2-314 and 84-2A-212) Against the Automaker Defendants.**

1677. Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

1678. The Kansas Plaintiff brings this count under Kansas law, individually and on behalf of the other members of the Kansas Subclasses against the Automaker Defendants for his or her respective Class Vehicle(s). For the remaining Automaker Defendants, Plaintiffs who purchased or leased their Class Vehicles in states with materially similar laws may represent Subclasses under this count against all other Automaker Defendants.

1679. For purposes of this count, members of the Kansas Subclass shall be referred to as "Class Members."

1680. Defendants were at all relevant times "merchants" with respect to motor vehicles under Kan. Stat. Ann. §§ 84-2-104(1) and 84-2A-103(3), and "sellers" of motor vehicles under § 84-2-103(1)(d).

1681. With respect to leases, the Automaker Defendants are and were at all relevant times "lessors" of motor vehicles under Kan. Stat. Ann. § 84-2A-103(1)(p).

1682. The Class Vehicles are and were at all relevant times "goods" within the meaning of Kan. Stat. Ann. §§ 84-2-105(1) and 84-2A-103(1)(h).

1683. A warranty that the Class Vehicles were in merchantable condition and fit for the ordinary purpose for which vehicles are used is implied by law pursuant to Kan. Stat. Ann. §§ 84- 2-314 and 84-2A-212.

1684. The Class Vehicles are not merchantable, and as such the Automaker Defendants breached their implied warranties, because at the time of sale and all times thereafter:

a. The Class Vehicles would not pass without objection in the automotive trade given the Inflator Defect;

b. The Inflator Defect renders the Class Vehicles unsafe to drive and unfit for ordinary purposes;

c. The Class Vehicles and the airbags therein were inadequately labeled as safe and reliable, and the labeling failed to disclose the Inflator Defect; and

d. The Class Vehicles do not conform to their labeling, which represents that the vehicles are safe and suitable for their intended use.

1685. Plaintiffs and Class Members timely provided the Automaker Defendants notice of the issues raised in this count and this Complaint and an opportunity to cure, as alleged in the paragraphs addressing Defendants' notice above.

1686. Alternatively, Plaintiffs and Class Members were excused from providing the Automaker Defendants with notice and an opportunity to cure the breach because it would have been futile. As alleged above, the Automaker Defendants have long known that the Class Vehicles contained the Defective Inflators, and that the Defective Inflators have caused airbags to malfunction in crashes involving the Class Vehicles; however, to date, the Automaker Defendants have not instituted a recall or any other repair program with respect to all of the Class Vehicles, or even acknowledged that the Inflator Defect exists in all of those Class Vehicles. Moreover, to the extent the Automaker Defendants have issued recalls, those recalls are inadequate because, inter alia: (a) they are belated because the Automaker Defendants knew about the Defective Inflators for years and did nothing to recall or remedy the serious safety defect; (b) with tens of millions of vehicles impacted in existing and potential future recalls, as a result of the Automaker Defendants' concealment of the Inflator Defect, the recalls cannot be implemented effectively due to supply constraints and resulting delays; (c) the recalls are

403

incomplete, and apply to only a subset of the Class Vehicles.

1687. Plaintiffs, individually and on behalf of Class Members, seek all available monetary damages (including actual, compensatory, and punitive damages), injunctive and equitable relief, and attorneys' fees and costs.

### c. Kansas Count 3: Violation of the Kansas Consumer Credit and Protection Act (Kan. Stat. Ann. § 50-623, *et seq.*) Against All Defendants.[19]

1688. Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

1689. The Kansas Plaintiff brings this count under Kansas law, individually and on behalf of the other members of the Kansas Subclasses against the Automaker Defendants and Airbag Module Defendants for his or her respective Class Vehicle(s), and ARC. For the remaining Defendants, Plaintiffs who purchased or leased their Class Vehicles in states with materially similar laws may represent Subclasses under this count against all other Defendants and ARC.

1690. For purposes of this count, members of the Kansas Subclass shall be referred to as "Class Members."

---

[19] Plaintiffs bring this count against ARC and the Airbag Module Defendants based on their omissions and concealment of material facts only.

1691. For purposes of this count, ARC, the Automaker Defendants, and the Airbag Module Defendants shall be referred to as "Defendants."

1692. Defendants are "suppliers" within the meaning of Kan. Stat. Ann. § 50-624(l). The Class Members are "consumers" within the meaning of Kan. Stat. Ann. § 50-624(b).

1693. Defendants and Plaintiffs are all "persons" within the meaning of Kan. Stat. Ann. § 50-624(i).

1694. The sale or lease of the Class Vehicles is a "consumer transaction" within the meaning of Kan. Stat. Ann. § 50-624(c).

1695. The Kansas Consumer Credit and Protection Act ("Kansas CPA") states "[n]o supplier shall engage in any deceptive act or practice in connection with a consumer transaction." Kan. Stat. Ann. § 50-626(a).

1696. In the course of their business, Defendants, through their agents, employees, and/or subsidiaries, violated the Kansas CPA by knowingly and intentionally misrepresenting, omitting, concealing, and/or failing to disclose material facts regarding the quality, reliability, and safety of the Class Vehicles and the Defective Inflators, as detailed above.

1697. Defendants had an ongoing duty to Plaintiffs and Class Members to refrain from unfair or deceptive practices under the Kansas CPA in the course of

their business. Specifically, they owed Plaintiffs and Class Members a duty to disclose all the material facts concerning the Inflator Defect in the Class Vehicles because:

    a.    Given the Automaker Defendants' role in the design, manufacture, testing, and sale of Class Vehicles and Defective Inflators, and their experience and knowledge as experts and long-time veterans of the automotive industry, they, along with ARC and the Airbag Module Defendants, possessed exclusive access to and were in a superior position to know the true facts about the Defective Inflators;

    b.    Given ARC's design, development, testing and manufacture of the Defective Inflators and its experience and knowledge as experts and long-time veterans of the automotive industry, it, along with the Automaker Defendants and the Airbag Module Defendants, possessed exclusive access to and was in a superior position to know the true facts about the Defective Inflators;

    c.    Given the Airbag Module Defendants' role in the design, manufacture, and testing of the airbag modules with the Defective Inflators installed in them, and their experience and knowledge as experts and long-time veterans of the automotive industry, they, along with ARC and the

Automaker Defendants, possessed exclusive access to and were in a superior position to know the true facts about the Defective Inflators;

d.      Given the Inflator Defect's hidden and technical nature, Plaintiffs and Class Members lack the sophisticated expertise in vehicle components and technology that would be necessary to discover the Inflator Defect on their own;

e.      Defendants knew that the Inflator Defect gave rise to serious safety concerns for the consumers who purchased and leased the Class Vehicles;

f.      The Inflator Defect poses a severe risk of harm in that, among other things, the metal shrapnel can puncture and stab the occupants, causing severe and potentially fatal injuries;

g.      Defendants knew about and investigated the Inflator Defect, but then did not notify consumers about it or disclose the Inflator Defect to NHTSA, and the Automaker Defendants did not launch a comprehensive recall for all Class Vehicles, all of which individually and together deprived Plaintiffs of an opportunity that otherwise could have led them to discover the truth about the Inflator Defect in their Class Vehicles; and

407

h.    The Automaker Defendants made, helped to make, or conspired to make incomplete representations about the safety and reliability of the Class Vehicles and their airbags, while purposefully withholding material facts about a known safety defect. Because they volunteered to provide information about the Class Vehicles that they marketed and offered for sale and lease to consumers, the Automaker Defendants had the duty to disclose the whole truth.

1698.  By misrepresenting the Class Vehicles as safe and reliable and the airbags installed in them as properly functioning and free from defects, and/or by failing to disclose and actively concealing the dangers and risk posed by the Inflator Defect to both consumers and NHTSA, Defendants engaged in one or more unconscionable acts or practices prohibited by Kan. Stat. Ann. § 50-627(a):

a.    Representing that the Class Vehicles and/or the Defective Inflators had a characteristic that they did not actually have—i.e., that the vehicles were safe and suitable for use on the roadway, when, in fact, they were not because their airbag inflators were defectively designed such that they had an unreasonably dangerous propensity to rupture, causing severe and fatal injuries;

b.    Representing that the Class Vehicles and the Defective Inflators

408

installed in them were of a particular quality, grade, or standard when, in fact, they were not of that quality, grade, or standard;

c.    Advertising the Class Vehicles and the airbags installed in them with the intent not to sell or lease them as advertised, i.e., that the Class Vehicles were safe and suitable for their intended use, when, in fact, they were not because of the Inflator Defect;

d.    Concealing and failing to disclose that the Class Vehicles and the Defective Inflators installed in them were inherently defective, defectively designed, and not suitable for their intended use despite advertising them as safe and suitable for their intended function; and

e.    Failing to market, distribute, sell, and lease the Class Vehicles equipped with Defective Inflators in accordance with Defendants' previous representations—i.e., that the Class Vehicles were safe and suitable for their intended use, when, in fact, they were not because of the Inflator Defect.

Kan. Stat. Ann. § 50-626(b)(1)(A)(D), (F), (G), (b)(3), (b)(5).

1699. Defendants' unfair or deceptive acts or practices, including their misrepresentations, concealments, omissions, and/or suppressions of material facts, were designed to mislead and had a tendency or capacity to mislead and create a

false impression in consumers that the Class Vehicles had properly-functioning and reliable airbags. Indeed, those misrepresentations, concealments, omissions, and suppressions of material facts did in fact deceive reasonable consumers, including Plaintiffs and Class Members, about the true safety and reliability of the Class Vehicles and/or the Defective Inflators installed in them, the quality of the Class Vehicles, and the true value of the Class Vehicles.

1700. Defendants intended for Plaintiffs and Class Members to rely on their misrepresentations, omissions, and concealment—which they did by purchasing and leasing the Class Vehicles at the prices they paid believing that their vehicles would not have an Inflator Defect that would affect the quality, reliability, and safety of the Class Vehicles and their airbags.

1701. Defendants' misrepresentations, concealments, omissions, and suppressions of material facts regarding the Inflator Defect and true characteristics of the Class Vehicles were material to the decisions of Plaintiffs and Class Members to purchase and lease those vehicles, as Defendants intended. Plaintiffs and Class Members were exposed to those misrepresentations, concealments, omissions, and suppressions of material facts, and relied on Defendants' misrepresentations that the Class Vehicles and their airbags were safe and reliable in deciding to purchase and lease the Class Vehicles.

1702. Plaintiffs' and Class Members' reliance was reasonable, as they had no way of discerning that Defendants' representations were false and misleading, or otherwise learning the facts that Defendants had concealed or failed to disclose. Plaintiffs and Class Members did not, and could not, unravel Defendants' deception on their own.

1703. Had they known the truth about the Inflator Defect, Plaintiffs and Class Members would not have purchased or leased the Class Vehicles, or would have paid significantly less for them.

1704. As a direct and proximate result of Defendants' deceptive practices, Plaintiffs and Class Members have sustained economic injury and loss—either by purchasing a vehicle they otherwise would not have purchased or paying more than they otherwise would have as a result of Defendants' actions and omissions alleged above—that first occurred at the time each Class Vehicle was purchased or leased.

1705. Defendants' violations present a continuing risk to Plaintiffs and Class Members, as well as to the general public, because the Class Vehicles remain unsafe due to the Defective Inflators therein. Defendants' unlawful acts and practices complained of herein affect the public interest.

1706. Pursuant to Kan. Stat. Rev. § 50-634, Plaintiffs and Class Members seek an order enjoining Defendants' unfair and/or deceptive acts or practices, any such

orders or judgments as may be necessary to restore to them any money acquired by unfair competition, including restitution and/or restitutionary disgorgement, and any other just and proper relief available under the Kansas CPA.

### d.   Kansas Count 4: Fraud by Omission and Concealment Against All Defendants.

1707. Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

1708. The Kansas Plaintiff brings this count under Kansas law, individually and on behalf of the other members of the Kansas Subclasses against the Automaker Defendants and Airbag Module Defendants for his or her respective Class Vehicle(s), and ARC. For the remaining Defendants, Plaintiffs who purchased or leased their Class Vehicles in states with materially similar laws may represent Subclasses under this count against all other Defendants and ARC.

1709. For purposes of this count, members of the Kansas Subclass shall be referred to as "Class Members."

1710. For purposes of this count, ARC, the Automaker Defendants, and the Airbag Module Defendants shall be referred to as "Defendants."

1711. Defendants are liable for both fraudulent concealment and non-disclosure. *See, e.g.*, Restatement (Second) of Torts §§ 550-51 (1977).

412

1712. Defendants owed Plaintiffs and Class Members a duty to disclose all the material facts concerning the Defective Inflators in the Class Vehicles because:

a.      Given the Automaker Defendants' role in the design, manufacture, testing, and sale of Class Vehicles and Defective Inflators, and their experience and knowledge as experts and long-time veterans of the automotive industry, they, along with ARC and the Airbag Module Defendants, possessed exclusive access to and were in a superior position to know the true facts about the Defective Inflators;

b.      Given ARC's design, development, testing and manufacture of the Defective Inflators and its experience and knowledge as experts and long-time veterans of the automotive industry, it, along with the Automaker Defendants and the Airbag Module Defendants, possessed exclusive access to and was in a superior position to know the true facts about the Defective Inflators;

c.      Given the Airbag Module Defendants' role in the design, manufacture, and testing of the airbag modules with the Defective Inflators installed in them, and their experience and knowledge as experts and long-time veterans of the automotive industry, they, along with ARC and the Automaker Defendants, possessed exclusive access to and were in a

413

superior position to know the true facts about the Defective Inflators;

d.  Given the Inflator Defect's hidden and technical nature, Plaintiffs and Class Members lack the sophisticated expertise in vehicle components and technology that would be necessary to discover the Inflator Defect on their own;

e.  Defendants knew that the Inflator Defect gave rise to serious safety concerns for the consumers who purchased and leased the Class Vehicles;

f.  The Inflator Defect poses a severe risk of harm in that, among other things, the metal shrapnel can puncture and stab the occupants, causing severe and potentially fatal injuries;

g.  Defendants knew about and investigated the Inflator Defect, but then did not notify consumers about it, disclose the Inflator Defect to NHTSA, and the Automaker Defendants did not launch a comprehensive recall for all Class Vehicles, all of which individually and together deprived Plaintiffs of an opportunity that otherwise could have led them to discover the truth about the Inflator Defect in their Class Vehicles; and

h.  The Automaker Defendants made, helped to make, or conspired to

414

make incomplete representations about the safety and reliability of the Class Vehicles and their airbags, while purposefully withholding material facts about a known safety defect. Because they volunteered to provide information about the Class Vehicles that they marketed and offered for sale and lease to consumers, the Automaker Defendants had the duty to disclose the whole truth.

1713. In breach of their duties, Defendants failed to disclose the Inflator Defect and that the Class Vehicles' airbags were not safe and reliable to Plaintiffs and Class Members in connection with the sale of the Class Vehicles.

1714. The Inflator Defect within the Class Vehicles is material to the sale of the Class Vehicles because a reasonable person would find it important in purchasing, leasing, or retaining a new or used motor vehicle and because it directly impacts the value of the Class Vehicles purchased or leased by Plaintiffs and Class Members.

1715. Defendants intended for Plaintiffs and Class Members to rely on their omissions and concealment—which they did by purchasing and leasing the Class Vehicles at the prices they paid believing that their vehicles would not have an Inflator Defect that would affect the quality, reliability, and safety of the Class Vehicles and their airbags.

1716. Plaintiffs' and Class Members' reliance was reasonable because a reasonable consumer would not have expected that the Class Vehicles contained a safety defect that poses such a serious risk. They had no way of learning the facts that Defendants had concealed or failed to disclose. Plaintiffs and Class Members did not, and could not, unravel Defendants' deception on their own.

1717. Defendants actively concealed and suppressed these material facts, in whole or in part, to maintain a market for the Class Vehicles and the Defective Inflators installed in them, to protect profits, and to avoid costly recalls that would expose them to liability for those expenses and harm the commercial reputations of Defendants and their products. They did so at the expense of Plaintiffs and Class Members.

1718. If Defendants had fully and adequately disclosed the Inflator Defect to consumers, Plaintiffs and Class Members would have seen such a disclosure.

1719. Through their omissions and concealment with respect to the Inflator Defect within the Class Vehicles, Defendants intended to induce, and did induce, Plaintiffs and Class Members to either purchase a Class Vehicle that they otherwise would not have purchased, or pay more for a Class Vehicle than they otherwise would have paid.

1720. Had Plaintiffs and Class Members known of the Inflator Defect within the Class Vehicles, they would not have purchased the Class Vehicles or would have paid less for them.

1721. As a direct and proximate result of Defendants' omissions and concealment, Plaintiffs and other Class Members either overpaid for the Class Vehicles or would not have purchased the Class Vehicles at all if the Inflator Defect had been disclosed to them. Accordingly, Defendants are liable to Plaintiffs and Class Members for their damages in an amount to be proven at trial.

1722. Defendants acted maliciously, oppressively, deliberately, with intent to defraud; in reckless disregard of the Plaintiffs' and Class Members' rights and well-being; and to enrich themselves. Defendants' misconduct warrants an assessment of punitive damages, as permitted by law, in an amount sufficient to deter such conduct in the future, which amount shall be determined according to proof at trial.

e.    **Kansas Count 5: Unjust Enrichment Against the Automaker Defendants.**

1723. Plaintiffs reallege and incorporate by reference all allegations in Volume 1 of the Consolidated Class Action Complaint as though fully set forth herein.

1724. The Kansas Plaintiff brings this count under Kansas law, individually and on behalf of the other members of the Kansas Subclasses against the Automaker

Defendants for his or her respective Class Vehicle(s). For the remaining Automaker Defendants, Plaintiffs who purchased or leased their Class Vehicles in states with materially similar laws may represent Subclasses under this count against all other Automaker Defendants.

1725. For purposes of this count, members of the Kansas Subclass shall be referred to as "Class Members."

1726.  When they purchased and leased the Class Vehicles, Plaintiffs and Class Members conferred tangible and material economic benefits upon the Automaker Defendants, who readily accepted and retained these benefits.

1727.  Plaintiffs and Class Members would not have purchased or leased their Class Vehicles, or would have paid less for them, had they known of the Inflator Defect at the time of purchase or lease. Therefore, the Automaker Defendants profited from the sale and lease of the Class Vehicles to the detriment and expense of Plaintiffs and Class Members.

1728.  The Automaker Defendants appreciated these economic benefits. These benefits were the expected result of the Automaker Defendants acting in their pecuniary interest at the expense of their customers. They knew of these benefits because they were aware of the Inflator Defect, yet they failed to disclose this

knowledge and misled the Plaintiffs and Class Members regarding the nature and quality of the Class Vehicles while profiting from this deception.

1729. It would be unjust, inequitable, and unconscionable for the Automaker Defendants to retain these benefits, including because they were procured as a result of their wrongful conduct alleged above.

1730. Plaintiffs and Class Members are entitled to restitution of the benefits the Automaker Defendants unjustly retained and/or any amounts necessary to return Plaintiffs and Class Members to the position they occupied prior to dealing with those Defendants, with such amounts to be determined at trial.

1731. Plaintiffs plead this claim separately as well as in the alternative to their claims for damages under Fed. R. Civ. P. 8(a)(3), because if the Court dismisses Plaintiffs' claims for damages enters judgment on them in favor of the Automaker Defendants, Plaintiffs will have no adequate legal remedy.

## 18.   Kentucky

### a.   Kentucky Count 1: Breach of Express Warranty (Ky. Rev. Stat. §§ 335.2-313 and 355.2A-210) Against the Automaker Defendants.

1732. Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

1733. The Kentucky Plaintiff brings this count under Kentucky law,

individually and on behalf of the other members of the Kentucky Subclasses against the Automaker Defendants for his or her respective Class Vehicle(s). For the remaining Automaker Defendants, Plaintiffs who purchased or leased their Class Vehicles in states with materially similar laws may represent Subclasses under this count against all other Automaker Defendants.

1734. For purposes of this count, members of the Kentucky Subclass shall be referred to as "Class Members."

1735. The Automaker Defendants are and were at all relevant times "merchants" with respect to motor vehicles under Ky. Rev. Stat. §§ 355.2-104(1) and 355.2A-103(3), and "sellers" of motor vehicles under § 355.2-103(1)(d).

1736. With respect to leases, the Automaker Defendants are and were all relevant times "lessors" of motor vehicles under Ky. Rev. Stat. § 355.2A-103(1)(p).

1737. The Class Vehicles are and were at all relevant times "goods" within the meaning of Ky. Rev. Stat. §§ 355.2-105(1) and 355.2A-103(1)(h).

1738. The Automaker Defendants issued an express written warranty for each defective Class Vehicle they sold, including that:

a.     The Class Vehicles would be free of defects in materials and workmanship at the time of sale; and

b.     The Class Vehicles were safe and reliable, and their airbags would

420

function properly in the event of a crash.

1739. The warranties listed above formed the basis of the bargain with regard to Plaintiffs' and Class Members' purchase and lease of the Class Vehicles.

1740. The Automaker Defendants knowingly breached their warranty for the Class Vehicles because:

a.     The airbag inflators have latent defects which have a dangerous propensity to cause the inflators to rupture and eject metal shrapnel, subjecting Plaintiffs and Class Members to the risk of loss and injury; and

b.     The Automaker Defendants denied, concealed, and misrepresented the Inflator Defect, in the process refusing to pay for or provide in a reasonably timely fashion the needed repairs and replacements for Plaintiffs and Class Members.

1741. The Automaker Defendants knew or should have known that the warranties were false and/or misleading. Specifically, the Automaker Defendants were aware of the Inflator Defect in the Class Vehicles, which made the vehicles inherently defective and dangerous at the time that they were sold and leased to Plaintiffs and Class Members.

1742. Plaintiffs and Class Members were exposed to the Automaker

Defendants' misrepresentations, and they had no way of discerning that the Automaker Defendants' representations were false and misleading or otherwise learning the material facts that the Automaker Defendants had concealed or failed to disclose. Accordingly, Plaintiffs and Class Members reasonably relied on the Automaker Defendants' express warranties when purchasing or leasing their Class Vehicles.

1743. Plaintiffs and Class Members timely provided the Automaker Defendants notice of the issues raised in this count and this Complaint and an opportunity to cure, as alleged in the paragraphs addressing Defendants' notice above.

1744. Alternatively, Plaintiffs and Class Members were excused from providing the Automaker Defendants with notice and an opportunity to cure the breach, because it would have been futile. As alleged above, the Automaker Defendants knew about the Defective Inflators for years; however, to date, the Automaker Defendants have not instituted a recall or any other repair program with respect to all of the Class Vehicles, or even acknowledged that the Inflator Defect exists in all of the Class Vehicles. Therefore, they have refused to recall or repair defective vehicles. Moreover, to the extent the Automaker Defendants have issued recalls, those recalls are inadequate because, *inter alia*: (a) they are belated because

the Automaker Defendants knew about the Defective Inflators for years and did nothing to recall or remedy the serious safety defect; (b) with tens of millions of vehicles impacted in existing and potential future recalls, as a result of the Automaker Defendants' concealment of the Inflator Defect, the recalls cannot be implemented effectively due to supply constraints and resulting delays; (c) the recalls are incomplete, and apply to only a subset of the Class Vehicles.

1745. As a direct and proximate result of the Automaker Defendants' breach of their express warranties, the Class Vehicles were and are defective and the Inflator Defect was not remedied. Therefore, Plaintiff and Class Members have been damaged, in an amount to be proven at trial, through their overpayment at the time of purchase or lease for the Class Vehicles with an undisclosed safety defect that would not be remedied.

> **b.** **Kentucky Count 2: Breach of Implied Warranty of Merchantability (Ky. Rev. Stat. §§ 335.2-314 and 355.2A-212) Against the Automaker Defendants.**

1746. Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

1747. The Kentucky Plaintiff brings this count under Kentucky law, individually and on behalf of the other members of the Kentucky Subclasses against the Automaker Defendants for his or her respective Class Vehicle(s). For the

remaining Automaker Defendants, Plaintiffs who purchased or leased their Class Vehicles in states with materially similar laws may represent Subclasses under this count against all other Automaker Defendants.

1748. For purposes of this count, members of the Kentucky Subclass shall be referred to as "Class Members."

1749. The Automaker Defendants were at all relevant times "merchants" with respect to motor vehicles under Ky. Rev. Stat. §§ 355.2-104(1) and 355.2A-103(3), and "sellers" of motor vehicles under § 355.2-103(1)(d).

1750. With respect to leases, the Automaker Defendants are and were at all relevant times "lessors" of motor vehicles under Ky. Rev. Stat. § 355.2A-103(1)(p).

1751. The Class Vehicles are and were at all relevant times "goods" within the meaning of Ky. Rev. Stat. §§ 355.2-105(1) and 355.2A-103(1)(h).

1752. A warranty that the Class Vehicles were in merchantable condition and fit for the ordinary purpose for which vehicles are used is implied by law pursuant to Ky. Rev. Stat. §§ 335.2-314 and 355.2A-212.

1753. The Class Vehicles are not merchantable, and as such the Automaker Defendants breached their implied warranties, because at the time of sale and all times thereafter:

a.    The Class Vehicles would not pass without objection in the automotive

trade given the Inflator Defect;

b.  The Inflator Defect renders the Class Vehicles unsafe to drive and unfit for ordinary purposes;

c.  The Class Vehicles and the airbags therein were inadequately labeled as safe and reliable, and the labeling failed to disclose the Inflator Defect; and

d.  The Class Vehicles do not conform to their labeling, which represents that the vehicles are safe and suitable for their intended use.

1754. Plaintiffs and Class Members timely provided the Automaker Defendants notice of the issues raised in this count and this Complaint and an opportunity to cure, as alleged in the paragraphs addressing Defendants' notice above.

1755. Alternatively, Plaintiffs and Class Members were excused from providing the Automaker Defendants with notice and an opportunity to cure the breach because it would have been futile. As alleged above, the Automaker Defendants have long known that the Class Vehicles contained the Defective Inflators, and that the Defective Inflators have caused airbags to malfunction in crashes involving the Class Vehicles; however, to date, the Automaker Defendants have not instituted a recall or any other repair program with respect to all of the Class

Vehicles, or even acknowledged that the Inflator Defect exists in all of those Class Vehicles. Moreover, to the extent the Automaker Defendants have issued recalls, those recalls are inadequate because, inter alia: (a) they are belated because the Automaker Defendants knew about the Defective Inflators for years and did nothing to recall or remedy the serious safety defect; (b) with tens of millions of vehicles impacted in existing and potential future recalls, as a result of the Automaker Defendants' concealment of the Inflator Defect, the recalls cannot be implemented effectively due to supply constraints and resulting delays; (c) the recalls are incomplete, and apply to only a subset of the Class Vehicles.

1756. Plaintiffs, individually and on behalf of Class Members, seek all available monetary damages (including actual, compensatory, and punitive damages), injunctive and equitable relief, and attorneys' fees and costs.

> c.   **Kentucky Count 3: Violations of Kentucky's Consumer Protection Act (Ky. Rev. Stat. § 367.110, *et seq*.) Against All Defendants.[20]**

1757. Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

1758. The Kentucky Plaintiff brings this count under Kentucky law,

---

[20] Plaintiffs bring this count against ARC and the Airbag Module Defendants based on their omissions and concealment of material facts only.

individually and on behalf of the other members of the Kentucky Subclasses against the Automaker Defendants and Airbag Module Defendants for his or her respective Class Vehicle(s), and ARC. For the remaining Defendants, Plaintiffs who purchased or leased their Class Vehicles in states with materially similar laws may represent Subclasses under this count against all other Defendants and ARC.

1759. For purposes of this count, members of the Kentucky Subclass shall be referred to as "Class Members."

1760. For purposes of this count, ARC, the Automaker Defendants, and the Airbag Module Defendants shall be referred to as "Defendants."

1761. Defendants, Plaintiffs and Class Members are each a "person" within the meaning of Kentucky Rev. Stat. § 367.110(1).

1762. Defendants are engaged in "trade" and "commerce" within the meaning of Kentucky Rev. Stat. § 367.110(2).

1763. The Kentucky Consumer Protect Action ("Kentucky CPA") states that "[u]nfair, misleading, or deceptive acts or practices in the conduct of any trade or commerce are hereby declared unlawful." Kentucky Rev. Stat. § 367.170.

1764. Defendants, through their agents, employees, and/or subsidiaries, violated the Kentucky CPA by knowingly and intentionally misrepresenting, omitting, concealing, and/or failing to disclose material facts regarding the

427

reliability, safety, and performance of the Class Vehicles and the Defective Inflators, as detailed above.

1765. Defendants had an ongoing duty to Plaintiffs and Class Members to refrain from unfair or deceptive practices under the Kentucky CPA in the course of their business. Specifically, Defendants owed Plaintiffs and Class Members a duty to disclose all the material facts concerning the Defective Inflators in the Class Vehicles because:

a.   Given ARC's design, development, testing and manufacture of the Defective Inflators and its experience and knowledge as experts and long-time veterans of the automotive industry, it, along with the Automaker Defendants and the Airbag Module Defendants, possessed exclusive access to and was in a superior position to know the true facts about the Defective Inflators;

b.   Given the Airbag Module Defendants' role in the design, manufacture, and testing of the airbag modules with the Defective Inflators installed in them, and their experience and knowledge as experts and long-time veterans of the automotive industry, they, along with ARC and the Automaker Defendants, possessed exclusive access to and were in a superior position to know the true facts about the Defective Inflators;

428

c.   Given the Automaker Defendants' role in the design, manufacture, testing, and sale of Class Vehicles and Defective Inflators, and their experience and knowledge as experts and long-time veterans of the automotive industry, they, along with ARC and the Airbag Module Defendants, possessed exclusive access to and were in a superior position to know the true facts about the Defective Inflators;

d.   Given the Inflator Defect's hidden and technical nature, Plaintiffs and Class Members lack the sophisticated expertise in vehicle components and technology that would be necessary to discover the Inflator Defect on their own;

e.   Defendants knew that the Inflator Defect gave rise to serious safety concerns for the consumers who purchased and leased the Class Vehicles;

f.   The Inflator Defect poses a severe risk of harm in that, among other things, the metal shrapnel can puncture and stab the occupants, causing severe and potentially fatal injuries;

g.   Defendants knew about and investigated the Inflator Defect, but then did not notify consumers about it or disclose the Inflator Defect to NHTSA, and the Automaker Defendants did not launch a

429

comprehensive recall for all Class Vehicles, all of which individually and together deprived Plaintiffs of an opportunity that otherwise could have led them to discover the truth about the Inflator Defect in their Class Vehicles; and

h.      The Automaker Defendants made, helped to make, or conspired to make incomplete representations about the safety and reliability of the Class Vehicles and their airbags, while purposefully withholding material facts about a known safety defect. Because they volunteered to provide information about the Class Vehicles that they marketed and offered for sale and lease to consumers, the Automaker Defendants had the duty to disclose the whole truth.

1766. By misrepresenting the Class Vehicles as safe and reliable and the airbags installed in them as properly-functioning and free from defects, and/or by failing to disclose and actively concealing the dangers and risk posed by the Inflator Defect to both consumers and NHTSA, Defendants engaged in unfair, misleading, or deceptive acts or practices in the conduct of trade and commerce as prohibited by Kentucky Rev. Stat. § 367.170(1).

1767. Defendants' unfair or deceptive acts or practices, including their misrepresentations, concealments, omissions, and/or suppressions of material facts,

were designed to mislead and had a tendency or capacity to mislead and create a false impression in consumers that the Class Vehicles had properly-functioning and reliable airbags. Indeed, those misrepresentations, concealments, omissions, and suppressions of material facts did in fact deceive reasonable consumers, including Plaintiffs and Class Members, about the true safety and reliability of the Class Vehicles and/or the Defective Inflators installed in them, the quality of the Class Vehicles, and the true value of the Class Vehicles.

1768. Defendants intended for Plaintiffs and Class Members to rely on their misrepresentations, omissions, and concealment—which they did by purchasing and leasing the Class Vehicles at the prices they paid believing that their vehicles would not have an Inflator Defect that would affect the quality, reliability, and safety of the Class Vehicles and their airbags.

1769. Defendants' misrepresentations, concealments, omissions, and suppressions of material facts regarding the Inflator Defect and true characteristics of the Class Vehicles were material to the decisions of Plaintiffs and Class Members to purchase and lease those vehicles, as Defendants intended. Plaintiffs and Class Members were exposed to those misrepresentations, concealments, omissions, and suppressions of material facts, and relied on Defendants' misrepresentations that the Class Vehicles and their airbags were safe and reliable in deciding to purchase and

lease the Class Vehicles.

1770. Plaintiffs' and Class Members' reliance was reasonable, as they had no way of discerning that Defendants' representations were false and misleading, or otherwise learning the facts that Defendants had concealed or failed to disclose. Plaintiffs and Class Members did not, and could not, unravel Defendants' deception on their own.

1771. Had they known the truth about the Inflator Defect, Plaintiffs and Class Members would not have purchased or leased the Class Vehicles, or would have paid significantly less for them.

1772. As a direct and proximate result of Defendants' deceptive practices, Plaintiffs and Class Members have sustained economic injury and loss—either by purchasing a vehicle they otherwise would not have purchased or paying more than they otherwise would have as a result of Defendants' actions and omissions alleged above—that first occurred at the time each Class Vehicle was purchased or leased.

1773. Defendants' violations present a continuing risk to Plaintiffs and Class Members, as well as to the general public, because the Class Vehicles remain unsafe due to the Defective Inflators therein. Defendants' unlawful acts and practices complained of herein affect the public interest.

1774. Pursuant to Kentucky Rev. Stat. § 367.220, Plaintiffs and Class

Members seek an order enjoining Defendants' unfair and/or deceptive acts or practices, any such orders or judgments as may be necessary to restore to them any money acquired by unfair competition, including restitution and/or restitutionary disgorgement, and any other just and proper relief available under the Kentucky CPA.

### d.    Kentucky Count 4: Fraud by Omission and Concealment Against All Defendants.

1775. Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

1776. The Kentucky Plaintiff brings this count under Kentucky law, individually and on behalf of the other members of the Kentucky Subclasses against the Automaker Defendants and Airbag Module Defendants for his or her respective Class Vehicle(s), and ARC. For the remaining Defendants, Plaintiffs who purchased or leased their Class Vehicles in states with materially similar laws may represent Subclasses under this count against all other Defendants and ARC.

1777. For purposes of this count, members of the Kentucky Subclass shall be referred to as "Class Members."

1778. For purposes of this count, ARC, the Automaker Defendants, and the Airbag Module Defendants shall be referred to as "Defendants."

1779. Defendants are liable for both fraudulent concealment and non-

disclosure. *See, e.g.*, Restatement (Second) of Torts §§ 550-51 (1977).

1780. Defendants owed Plaintiffs and Class Members a duty to disclose all the material facts concerning the Defective Inflators in the Class Vehicles because:

a.  Given the Automaker Defendants' role in the design, manufacture, testing, and sale of Class Vehicles and Defective Inflators, and their experience and knowledge as experts and long-time veterans of the automotive industry, they, along with ARC and the Airbag Module Defendants, possessed exclusive access to and were in a superior position to know the true facts about the Defective Inflators;

b.  Given ARC's design, development, testing and manufacture of the Defective Inflators and its experience and knowledge as experts and long-time veterans of the automotive industry, it, along with the Automaker Defendants and the Airbag Module Defendants, possessed exclusive access to and was in a superior position to know the true facts about the Defective Inflators;

c.  Given the Airbag Module Defendants' role in the design, manufacture, and testing of the airbag modules with the Defective Inflators installed in them, and their experience and knowledge as experts and long-time veterans of the automotive industry, they, along with ARC and the

434

Automaker Defendants, possessed exclusive access to and were in a
superior position to know the true facts about the Defective Inflators;

d.     Given the Inflator Defect's hidden and technical nature, Plaintiffs and
Class Members lack the sophisticated expertise in vehicle components
and technology that would be necessary to discover the Inflator Defect
on their own;

e.     Defendants knew that the Inflator Defect gave rise to serious safety
concerns for the consumers who purchased and leased the Class
Vehicles;

f.     The Inflator Defect poses a severe risk of harm in that, among other
things, the metal shrapnel can puncture and stab the occupants, causing
severe and potentially fatal injuries;

g.     Defendants knew about and investigated the Inflator Defect, but then
did not notify consumers about it, disclose the Inflator Defect to
NHTSA, and the Automaker Defendants did not launch a
comprehensive recall for all Class Vehicles, all of which individually
and together deprived Plaintiffs of an opportunity that otherwise could
have led them to discover the truth about the Inflator Defect in their
Class Vehicles; and

435

h.    The Automaker Defendants made, helped to make, or conspired to make incomplete representations about the safety and reliability of the Class Vehicles and their airbags, while purposefully withholding material facts about a known safety defect. Because they volunteered to provide information about the Class Vehicles that they marketed and offered for sale and lease to consumers, the Automaker Defendants had the duty to disclose the whole truth.

1781. In breach of their duties, Defendants failed to disclose the Inflator Defect and that the Class Vehicles' airbags were not safe and reliable to Plaintiffs and Class Members in connection with the sale of the Class Vehicles.

1782. The Inflator Defect within the Class Vehicles is material to the sale of the Class Vehicles because a reasonable person would find it important in purchasing, leasing, or retaining a new or used motor vehicle and because it directly impacts the value of the Class Vehicles purchased or leased by Plaintiffs and Class Members.

1783. Defendants intended for Plaintiffs and Class Members to rely on their omissions and concealment—which they did by purchasing and leasing the Class Vehicles at the prices they paid believing that their vehicles would not have an Inflator Defect that would affect the quality, reliability, and safety of the Class

436

Vehicles and their airbags.

1784. Plaintiffs' and Class Members' reliance was reasonable because a reasonable consumer would not have expected that the Class Vehicles contained a safety defect that poses such a serious risk. They had no way of learning the facts that Defendants had concealed or failed to disclose. Plaintiffs and Class Members did not, and could not, unravel Defendants' deception on their own.

1785. Defendants actively concealed and suppressed these material facts, in whole or in part, to maintain a market for the Class Vehicles and the Defective Inflators installed in them, to protect profits, and to avoid costly recalls that would expose them to liability for those expenses and harm the commercial reputations of Defendants and their products. They did so at the expense of Plaintiffs and Class Members.

1786. If Defendants had fully and adequately disclosed the Inflator Defect to consumers, Plaintiffs and Class Members would have seen such a disclosure.

1787. Through their omissions and concealment with respect to the Inflator Defect within the Class Vehicles, Defendants intended to induce, and did induce, Plaintiffs and Class Members to either purchase a Class Vehicle that they otherwise would not have purchased, or pay more for a Class Vehicle than they otherwise would have paid.

1788. Had Plaintiffs and Class Members known of the Inflator Defect within the Class Vehicles, they would not have purchased the Class Vehicles or would have paid less for them.

1789. As a direct and proximate result of Defendants' omissions and concealment, Plaintiffs and other Class Members either overpaid for the Class Vehicles or would not have purchased the Class Vehicles at all if the Inflator Defect had been disclosed to them. Accordingly, Defendants are liable to Plaintiffs and Class Members for their damages in an amount to be proven at trial.

1790. Defendants acted maliciously, oppressively, deliberately, with intent to defraud; in reckless disregard of the Plaintiffs' and Class Members' rights and well-being; and to enrich themselves. Defendants' misconduct warrants an assessment of punitive damages, as permitted by law, in an amount sufficient to deter such conduct in the future, which amount shall be determined according to proof at trial.

### e.   Kentucky Count 5: Unjust Enrichment Against the Automaker Defendants.

1791. Plaintiffs reallege and incorporate by reference all allegations in Volume 1 of the Consolidated Class Action Complaint as though fully set forth herein.

1792. The Kentucky Plaintiff brings this count under Kentucky law, individually and on behalf of the other members of the Kentucky Subclasses against

the Automaker Defendants for his or her respective Class Vehicle(s). For the remaining Automaker Defendants, Plaintiffs who purchased or leased their Class Vehicles in states with materially similar laws may represent Subclasses under this count against all other Automaker Defendants.

1793. For purposes of this count, members of the Kentucky Subclass shall be referred to as "Class Members."

1794. When they purchased and leased the Class Vehicles, Plaintiffs and Class Members conferred tangible and material economic benefits upon the Automaker Defendants, who readily accepted and retained these benefits.

1795. Plaintiffs and Class Members would not have purchased or leased their Class Vehicles, or would have paid less for them, had they known of the Inflator Defect at the time of purchase or lease. Therefore, the Automaker Defendants profited from the sale and lease of the Class Vehicles to the detriment and expense of Plaintiffs and Class Members.

1796. The Automaker Defendants appreciated these economic benefits. These benefits were the expected result of the Automaker Defendants acting in their pecuniary interest at the expense of their customers. They knew of these benefits because they were aware of the Inflator Defect, yet they failed to disclose this knowledge and misled the Plaintiffs and Class Members regarding the nature and

439

quality of the Class Vehicles while profiting from this deception.

1797. It would be unjust, inequitable, and unconscionable for the Automaker Defendants to retain these benefits, including because they were procured as a result of their wrongful conduct alleged above.

1798. Plaintiffs and Class Members are entitled to restitution of the benefits the Automaker Defendants unjustly retained and/or any amounts necessary to return Plaintiffs and Class Members to the position they occupied prior to dealing with those Defendants, with such amounts to be determined at trial.

1799. Plaintiffs plead this claim separately as well as in the alternative to their claims for damages under Fed. R. Civ. P. 8(a)(3), because if the Court dismisses Plaintiffs' claims for damages enters judgment on them in favor of the Automaker Defendants, Plaintiffs will have no adequate legal remedy.

### 19.  Louisiana

#### a.  Louisiana Count 1: Breach of Implied Warranty of Merchantability/Warranty Against Redhibitory Defects (La. Civ. Code Art. 2520, 2524) Against the Automaker Defendants.

1800. Plaintiffs  reallege  and  incorporate  by  reference  all  preceding

allegations as though fully set forth herein.

1801. The Louisiana Plaintiffs bring this count under Louisiana law, individually and on behalf of the other members of the Louisiana Subclasses against the Automaker Defendants for their respective Class Vehicles. For the remaining Automaker Defendants, Plaintiffs who purchased or leased their Class Vehicles in states with materially similar laws may represent Subclasses under this count against all other Automaker Defendants.

1802. For purposes of this count, members of the Louisiana Subclass shall be referred to as "Class Members."

1803. The Automaker Defendants were at all relevant times "sellers" of motor vehicles under La. Civ. Code Art. 2520, 2524.

1804. Plaintiffs were at all relevant times "buyers" of motor vehicles under La. Civ. Code Art. 2520, 2524.

1805. The Class Vehicles have, and at all relevant times, had "redhibitory defects" or "vices" under La. Civ. Code Art. 2520.

1806. The Class Vehicles are not, and at all relevant times, were not "reasonably fit for [their] ordinary use" under La. Civ. Code Art. 2524.

1807. A warranty that the Class Vehicles were in merchantable condition and fit for the ordinary purpose for which vehicles are used is implied by law pursuant

to La. Civ. Code Art. 2520, 2524.

1808. The Class Vehicles are not merchantable, and as such the Automaker Defendants breached their implied warranties, because at the time of sale and all times thereafter:

a.    The Class Vehicles would not pass without objection in the automotive trade given the Inflator Defect;

b.    The Inflator Defect renders the Class Vehicles unsafe to drive and unfit for ordinary purposes;

c.    The Class Vehicles and the airbags therein were inadequately labeled as safe and reliable, and the labeling failed to disclose the Inflator Defect; and

d.    The Class Vehicles do not conform to their labeling, which represents that the vehicles are safe and suitable for their intended use.

1809. Plaintiffs and Class Members timely provided the Automaker Defendants notice of the issues raised in this count and this Complaint and an opportunity to cure, as alleged in the paragraphs addressing Defendants' notice above.

1810. Alternatively, Plaintiffs and Class Members were excused from providing the Automaker Defendants with notice and an opportunity to cure the

breach because it would have been futile. As alleged above, the Automaker Defendants have long known that the Class Vehicles contained the Defective Inflators, and that the Defective Inflators have caused airbags to malfunction in crashes involving the Class Vehicles; however, to date, the Automaker Defendants have not instituted a recall or any other repair program with respect to all of the Class Vehicles, or even acknowledged that the Inflator Defect exists in all of those Class Vehicles. Moreover, to the extent the Automaker Defendants have issued recalls, those recalls are inadequate because, inter alia: (a) they are belated because the Automaker Defendants knew about the Defective Inflators for years and did nothing to recall or remedy the serious safety defect; (b) with tens of millions of vehicles impacted in existing and potential future recalls, as a result of the Automaker Defendants' concealment of the Inflator Defect, the recalls cannot be implemented effectively due to supply constraints and resulting delays; (c) the recalls are incomplete, and apply to only a subset of the Class Vehicles.

1811. Plaintiffs, individually and on behalf of Class Members, seek all available monetary damages (including actual, compensatory, and punitive damages), injunctive and equitable relief, and attorneys' fees and costs.

**b.   Louisiana Count 2: Violations of Louisiana's Unfair Trade Practices and Consumer Protection Law (La. Rev. Stat. § 51:1401, *et seq*.) Against All Defendants.[21]**

1812. Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

1813. The Louisiana Plaintiffs bring this count under Louisiana law, individually and on behalf of the other members of the Louisiana Subclasses against the Automaker Defendants and Airbag Module Defendants for their respective Class Vehicles, and ARC. For the remaining Defendants, Plaintiffs who purchased or leased their Class Vehicles in states with materially similar laws may represent Subclasses under this count against all other Defendants and ARC.

1814. For purposes of this count, members of the Louisiana Subclass shall be referred to as "Class Members."

1815. For purposes of this count, ARC, the Automaker Defendants, and the Airbag Module Defendants shall be referred to as "Defendants."

1816. Defendants, Plaintiffs, and Class Members are "persons" within the meaning of La. Rev. Stat. § 51:1402(8).

1817. Plaintiffs and Class Members are "consumers" within the meaning of

---

[21] Plaintiffs bring this count against ARC and the Airbag Module Defendants based on their omissions and concealment of material facts only.

La. Rev. Stat. § 51:1402(1).

1818. Defendants were and are engaged in "trade" and "commerce" within the meaning of La. Rev. Stat. § 51:1402(10).

1819. The sale or lease of the Class Vehicles by Defendants are "consumer transactions" within the meaning of La. Rev. Stat. § 51:1402(3).

1820. The Louisiana Unfair Trade Practices and Consumer Protection Law ("Louisiana CPL") states that "unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce are hereby declared unlawful." La. Rev. Stat. § 51:1405(A).

1821. Defendants, through their agents, employees, and/or subsidiaries, violated the Louisiana CPL by knowingly and intentionally misrepresenting, omitting, concealing, and/or failing to disclose material facts regarding the reliability, safety, and performance of the Class Vehicles and the Defective Inflators, as detailed above.

1822. Defendants had an ongoing duty to Plaintiffs and Class Members to refrain from unfair or deceptive practices under the Louisiana CPL in the course of their business. Specifically, Defendants owed Plaintiffs and Class Members a duty to disclose all the material facts concerning the Defective Inflators in the Class Vehicles because:

445

a.   Given ARC's design, development, testing and manufacture of the Defective Inflators and its experience and knowledge as experts and long-time veterans of the automotive industry, it, along with the Automaker Defendants and the Airbag Module Defendants, possessed exclusive access to and was in a superior position to know the true facts about the Defective Inflators;

b.   Given the Airbag Module Defendants' role in the design, manufacture, and testing of the airbag modules with the Defective Inflators installed in them, and their experience and knowledge as experts and long-time veterans of the automotive industry, they, along with ARC and the Automaker Defendants, possessed exclusive access to and were in a superior position to know the true facts about the Defective Inflators;

c.   Given the Automaker Defendants' role in the design, manufacture, testing, and sale of Class Vehicles and Defective Inflators, and their experience and knowledge as experts and long-time veterans of the automotive industry, they, along with ARC and the Airbag Module Defendants, possessed exclusive access to and were in a superior position to know the true facts about the Defective Inflators;

d.   Given the Inflator Defect's hidden and technical nature, Plaintiffs and

446

Class Members lack the sophisticated expertise in vehicle components and technology that would be necessary to discover the Inflator Defect on their own;

e.   Defendants knew that the Inflator Defect gave rise to serious safety concerns for the consumers who purchased and leased the Class Vehicles;

f.   The Inflator Defect poses a severe risk of harm in that, among other things, the metal shrapnel can puncture and stab the occupants, causing severe and potentially fatal injuries;

g.   Defendants knew about and investigated the Inflator Defect, but then did not notify consumers about it or disclose the Inflator Defect to NHTSA, and the Automaker Defendants did not launch a comprehensive recall for all Class Vehicles, all of which individually and together deprived Plaintiffs of an opportunity that otherwise could have led them to discover the truth about the Inflator Defect in their Class Vehicles; and

h.   The Automaker Defendants made, helped to make, or conspired to make incomplete representations about the safety and reliability of the Class Vehicles and their airbags, while purposefully withholding

447

material facts about a known safety defect. Because they volunteered to provide information about the Class Vehicles that they marketed and offered for sale and lease to consumers, the Automaker Defendants had the duty to disclose the whole truth.

1823. By misrepresenting the Class Vehicles as safe and reliable and the airbags installed in them as properly-functioning and free from defects, and/or by failing to disclose and actively concealing the dangers and risk posed by the Inflator Defect to both consumers and NHTSA, Defendants engaged in unfair methods of competition and unfair or deceptive acts or practices in the conduct of trade and commerce as prohibited by La. Rev. Stat. § 51:1405(A).

1824. Defendants' unfair or deceptive acts or practices, including their misrepresentations, concealments, omissions, and/or suppressions of material facts, were designed to mislead and had a tendency or capacity to mislead and create a false impression in consumers that the Class Vehicles had properly-functioning and reliable airbags. Indeed, those misrepresentations, concealments, omissions, and suppressions of material facts did in fact deceive reasonable consumers, including Plaintiffs and Class Members, about the true safety and reliability of the Class Vehicles and/or the Defective Inflators installed in them, the quality of the Class Vehicles, and the true value of the Class Vehicles.

448

1825. Defendants intended for Plaintiffs and Class Members to rely on their misrepresentations, omissions, and concealment—which they did by purchasing and leasing the Class Vehicles at the prices they paid believing that their vehicles would not have an Inflator Defect that would affect the quality, reliability, and safety of the Class Vehicles and their airbags.

1826. Defendants' misrepresentations, concealments, omissions, and suppressions of material facts regarding the Inflator Defect and true characteristics of the Class Vehicles were material to the decisions of Plaintiffs and Class Members to purchase and lease those vehicles, as Defendants intended. Plaintiffs and Class Members were exposed to those misrepresentations, concealments, omissions, and suppressions of material facts, and relied on Defendants' misrepresentations that the Class Vehicles and their airbags were safe and reliable in deciding to purchase and lease the Class Vehicles.

1827. Plaintiffs' and Class Members' reliance was reasonable, as they had no way of discerning that Defendants' representations were false and misleading, or otherwise learning the facts that Defendants had concealed or failed to disclose. Plaintiffs and Class Members did not, and could not, unravel Defendants' deception on their own.

1828. Had they known the truth about the Inflator Defect, Plaintiffs and Class

Members would not have purchased or leased the Class Vehicles, or would have paid significantly less for them.

1829. As a direct and proximate result of Defendants' deceptive practices, Plaintiffs and Class Members have sustained economic injury and loss—either by purchasing a vehicle they otherwise would not have purchased or paying more than they otherwise would have as a result of Defendants' actions and omissions alleged above—that first occurred at the time each Class Vehicle was purchased or leased.

1830. Defendants' violations present a continuing risk to Plaintiffs and Class Members, as well as to the general public, because the Class Vehicles remain unsafe due to the Defective Inflators therein. Defendants' unlawful acts and practices complained of herein affect the public interest.

1831. Pursuant to La. Rev. Stat. § 51:1409(A), Plaintiffs and Class Members seek an order enjoining Defendants' unfair and/or deceptive acts or practices, any such orders or judgments as may be necessary to restore to them any money acquired by unfair competition, including restitution and/or restitutionary disgorgement, and any other just and proper relief available under the Louisiana CPL.

### c.     Louisiana Count 3: Fraud by Omission and Concealment Against All Defendants.

1832. Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

1833. The Louisiana Plaintiffs bring this count under Louisiana law, individually and on behalf of the other members of the Louisiana Subclasses against the Automaker Defendants and Airbag Module Defendants for their respective Class Vehicles, and ARC. For the remaining Defendants, Plaintiffs who purchased or leased their Class Vehicles in states with materially similar laws may represent Subclasses under this count against all other Defendants and ARC.

1834. For purposes of this count, members of the Louisiana Subclass shall be referred to as "Class Members."

1835. For purposes of this count, ARC, the Automaker Defendants, and the Airbag Module Defendants shall be referred to as "Defendants."

1836. Defendants are liable for both fraudulent concealment and non-disclosure. *See, e.g.*, Restatement (Second) of Torts §§ 550-51 (1977).

1837. Defendants owed Plaintiffs and Class Members a duty to disclose all the material facts concerning the Defective Inflators in the Class Vehicles because:

a.      Given the Automaker Defendants' role in the design, manufacture, testing, and sale of Class Vehicles and Defective Inflators, and their experience and knowledge as experts and long-time veterans of the automotive industry, they, along with ARC and the Airbag Module Defendants, possessed exclusive access to and were in a superior

451

position to know the true facts about the Defective Inflators;

b.      Given ARC's design, development, testing and manufacture of the Defective Inflators and its experience and knowledge as experts and long-time veterans of the automotive industry, it, along with the Automaker Defendants and the Airbag Module Defendants, possessed exclusive access to and was in a superior position to know the true facts about the Defective Inflators;

c.      Given the Airbag Module Defendants' role in the design, manufacture, and testing of the airbag modules with the Defective Inflators installed in them, and their experience and knowledge as experts and long-time veterans of the automotive industry, they, along with ARC and the Automaker Defendants, possessed exclusive access to and were in a superior position to know the true facts about the Defective Inflators;

d.      Given the Inflator Defect's hidden and technical nature, Plaintiffs and Class Members lack the sophisticated expertise in vehicle components and technology that would be necessary to discover the Inflator Defect on their own;

e.      Defendants knew that the Inflator Defect gave rise to serious safety concerns for the consumers who purchased and leased the Class

452

Vehicles;

f.     The Inflator Defect poses a severe risk of harm in that, among other things, the metal shrapnel can puncture and stab the occupants, causing severe and potentially fatal injuries;

g.     Defendants knew about and investigated the Inflator Defect, but then did not notify consumers about it, disclose the Inflator Defect to NHTSA, and the Automaker Defendants did not launch a comprehensive recall for all Class Vehicles, all of which individually and together deprived Plaintiffs of an opportunity that otherwise could have led them to discover the truth about the Inflator Defect in their Class Vehicles; and

h.     The Automaker Defendants made, helped to make, or conspired to make incomplete representations about the safety and reliability of the Class Vehicles and their airbags, while purposefully withholding material facts about a known safety defect. Because they volunteered to provide information about the Class Vehicles that they marketed and offered for sale and lease to consumers, the Automaker Defendants had the duty to disclose the whole truth.

1838. In breach of their duties, Defendants failed to disclose the Inflator

Defect and that the Class Vehicles' airbags were not safe and reliable to Plaintiffs and Class Members in connection with the sale of the Class Vehicles.

1839. The Inflator Defect within the Class Vehicles is material to the sale of the Class Vehicles because a reasonable person would find it important in purchasing, leasing, or retaining a new or used motor vehicle and because it directly impacts the value of the Class Vehicles purchased or leased by Plaintiffs and Class Members.

1840. Defendants intended for Plaintiffs and Class Members to rely on their omissions and concealment—which they did by purchasing and leasing the Class Vehicles at the prices they paid believing that their vehicles would not have an Inflator Defect that would affect the quality, reliability, and safety of the Class Vehicles and their airbags.

1841. Plaintiffs' and Class Members' reliance was reasonable because a reasonable consumer would not have expected that the Class Vehicles contained a safety defect that poses such a serious risk. They had no way of learning the facts that Defendants had concealed or failed to disclose. Plaintiffs and Class Members did not, and could not, unravel Defendants' deception on their own.

1842. Defendants actively concealed and suppressed these material facts, in whole or in part, to maintain a market for the Class Vehicles and the Defective

454

Inflators installed in them, to protect profits, and to avoid costly recalls that would expose them to liability for those expenses and harm the commercial reputations of Defendants and their products. They did so at the expense of Plaintiffs and Class Members.

1843. If Defendants had fully and adequately disclosed the Inflator Defect to consumers, Plaintiffs and Class Members would have seen such a disclosure.

1844. Through their omissions and concealment with respect to the Inflator Defect within the Class Vehicles, Defendants intended to induce, and did induce, Plaintiffs and Class Members to either purchase a Class Vehicle that they otherwise would not have purchased, or pay more for a Class Vehicle than they otherwise would have paid.

1845. Had Plaintiffs and Class Members known of the Inflator Defect within the Class Vehicles, they would not have purchased the Class Vehicles or would have paid less for them.

1846. As a direct and proximate result of Defendants' omissions and concealment, Plaintiffs and other Class Members either overpaid for the Class Vehicles or would not have purchased the Class Vehicles at all if the Inflator Defect had been disclosed to them. Accordingly, Defendants are liable to Plaintiffs and Class Members for their damages in an amount to be proven at trial.

1847. Defendants acted maliciously, oppressively, deliberately, with intent to defraud; in reckless disregard of the Plaintiffs' and Class Members' rights and well-being; and to enrich themselves. Defendants' misconduct warrants an assessment of punitive damages, as permitted by law, in an amount sufficient to deter such conduct in the future, which amount shall be determined according to proof at trial.

### d. Louisiana Count 4: Unjust Enrichment Against the Automaker Defendants.

1848. Plaintiffs reallege and incorporate by reference all allegations in Volume 1 of the Consolidated Class Action Complaint as though fully set forth herein.

1849. The Louisiana Plaintiffs bring this count under Louisiana law, individually and on behalf of the other members of the Louisiana Subclasses against the Automaker Defendants for their respective Class Vehicles. For the remaining Automaker Defendants, Plaintiffs who purchased or leased their Class Vehicles in states with materially similar laws may represent Subclasses under this count against all other Automaker Defendants.

1850. For purposes of this count, members of the Louisiana Subclass shall be referred to as "Class Members."

1851. When they purchased and leased the Class Vehicles, Plaintiffs and Class Members conferred tangible and material economic benefits upon the

456

Automaker Defendants, who readily accepted and retained these benefits.

1852. Plaintiffs and Class Members would not have purchased or leased their Class Vehicles, or would have paid less for them, had they known of the Inflator Defect at the time of purchase or lease. Therefore, the Automaker Defendants profited from the sale and lease of the Class Vehicles to the detriment and expense of Plaintiffs and Class Members.

1853. The Automaker Defendants appreciated these economic benefits. These benefits were the expected result of the Automaker Defendants acting in their pecuniary interest at the expense of their customers. They knew of these benefits because they were aware of the Inflator Defect, yet they failed to disclose this knowledge and misled the Plaintiffs and Class Members regarding the nature and quality of the Class Vehicles while profiting from this deception.

1854. It would be unjust, inequitable, and unconscionable for the Automaker Defendants to retain these benefits, including because they were procured as a result of their wrongful conduct alleged above.

1855. Plaintiffs and Class Members are entitled to restitution of the benefits the Automaker Defendants unjustly retained and/or any amounts necessary to return Plaintiffs and Class Members to the position they occupied prior to dealing with those Defendants, with such amounts to be determined at trial.

1856. Plaintiffs plead this claim separately as well as in the alternative to their claims for damages under Fed. R. Civ. P. 8(a)(3), because if the Court dismisses Plaintiffs' claims for damages enters judgment on them in favor of the Automaker Defendants, Plaintiffs will have no adequate legal remedy.

### 20.    Maine

#### a.    Maine Count 1: Breach of Express Warranty (Me. Rev. Stat. Tit. 11 §§ 2-313 and 2-1210) Against the Automaker Defendants.

1857. Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

1858. The Maine Plaintiffs bring this count under Maine law, individually and on behalf of the other members of the Maine Subclasses against the Automaker Defendants for their respective Class Vehicles. For the remaining Automaker Defendants, Plaintiffs who purchased or leased their Class Vehicles in states with materially similar laws may represent Subclasses under this count against all other Automaker Defendants.

1859. For purposes of this count, members of the Maine Subclass shall be referred to as "Class Members."

1860. The Automaker Defendants are and were at all relevant times

"merchants" with respect to motor vehicles under Me. Rev. Stat. Ann. Tit. 11 §§ 2-104(1), and 2-1103(3), and are "sellers" of motor vehicles under § 2-103(1)(d).

1861. With respect to leases, the Automaker Defendants are and were at all relevant times "lessors" of motor vehicles under Me. Rev. Stat. Ann. Tit. 11 § 2-1103(1)(p).

1862. The Class Vehicles are and were at all relevant times "goods" within the meaning of Me. Rev. Stat. Ann. Tit. 11 §§ 2-105(1), and 2-1103(1)(h).

1863. The Automaker Defendants issued an express written warranty for each defective Class Vehicle they sold, including that:

a.     The Class Vehicles would be free of defects in materials and workmanship at the time of sale; and

b.     The Class Vehicles were safe and reliable, and their airbags would function properly in the event of a crash.

1864. The warranties listed above formed the basis of the bargain with regard to Plaintiffs' and Class Members' purchase and lease of the Class Vehicles.

1865. The Automaker Defendants knowingly breached their warranty for the Class Vehicles because:

a.     The airbag inflators have latent defects which have a dangerous propensity to cause the inflators to rupture and eject metal shrapnel,

subjecting Plaintiffs and Class Members to the risk of loss and injury; and

b.     The Automaker Defendants denied, concealed, and misrepresented the Inflator Defect, in the process refusing to pay for or provide in a reasonably timely fashion the needed repairs and replacements for Plaintiffs and Class Members.

1866. The Automaker Defendants knew or should have known that the warranties were false and/or misleading. Specifically, the Automaker Defendants were aware of the Inflator Defect in the Class Vehicles, which made the vehicles inherently defective and dangerous at the time that they were sold and leased to Plaintiffs and Class Members.

1867. Plaintiffs and Class Members were exposed to the Automaker Defendants' misrepresentations, and they had no way of discerning that the Automaker Defendants' representations were false and misleading or otherwise learning the material facts that the Automaker Defendants had concealed or failed to disclose. Accordingly, Plaintiffs and Class Members reasonably relied on the Automaker Defendants' express warranties when purchasing or leasing their Class Vehicles.

1868. Plaintiffs and Class Members timely provided the Automaker

Defendants notice of the issues raised in this count and this Complaint and an opportunity to cure, as alleged in the paragraphs addressing Defendants' notice above.

1869. Alternatively, Plaintiffs and Class Members were excused from providing the Automaker Defendants with notice and an opportunity to cure the breach, because it would have been futile. As alleged above, the Automaker Defendants knew about the Defective Inflators for years; however, to date, the Automaker Defendants have not instituted a recall or any other repair program with respect to all of the Class Vehicles, or even acknowledged that the Inflator Defect exists in all of the Class Vehicles. Therefore, they have refused to recall or repair defective vehicles. Moreover, to the extent the Automaker Defendants have issued recalls, those recalls are inadequate because, *inter alia*: (a) they are belated because the Automaker Defendants knew about the Defective Inflators for years and did nothing to recall or remedy the serious safety defect; (b) with tens of millions of vehicles impacted in existing and potential future recalls, as a result of the Automaker Defendants' concealment of the Inflator Defect, the recalls cannot be implemented effectively due to supply constraints and resulting delays; (c) the recalls are incomplete, and apply to only a subset of the Class Vehicles.

1870. As a direct and proximate result of the Automaker Defendants' breach

of their express warranties, the Class Vehicles were and are defective and the Inflator Defect was not remedied. Therefore, Plaintiff and Class Members have been damaged, in an amount to be proven at trial, through their overpayment at the time of purchase or lease for the Class Vehicles with an undisclosed safety defect that would not be remedied.

    **b.**   **Maine Count 2: Breach of Implied Warranty of Merchantability (Me. Rev. Stat. Tit. 11 §§ 2-314 and 2-1212) Against the Automaker Defendants.**

1871. Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

1872. The Maine Plaintiffs bring this count under Maine law, individually and on behalf of the other members of the Maine Subclasses against the Automaker Defendants for their respective Class Vehicles. For the remaining Automaker Defendants, Plaintiffs who purchased or leased their Class Vehicles in states with materially similar laws may represent Subclasses under this count against all other Automaker Defendants.

1873. For purposes of this count, members of the Maine Subclass shall be referred to as "Class Members."

1874. The Automaker Defendants were at all relevant times "merchants" with respect to motor vehicles under Me. Rev. Stat. Ann. Tit. 11 §§ 2-104(1), and 2-

1103(3), and are "sellers" of motor vehicles under § 2-103(1)(d).

1875. With respect to leases, the Automaker Defendants are and were at all relevant times "lessors" of motor vehicles under Me. Rev. Stat. Ann. Tit. 11 § 2-1103(1)(p).

1876. The Class Vehicles are and were at all relevant times "goods" within the meaning of Me. Rev. Stat. Ann. Tit. 11 §§ 2-105(1), and 2-1103(1)(h).

1877. A warranty that the Class Vehicles were in merchantable condition and fit for the ordinary purpose for which vehicles are used is implied by law pursuant to Me. Rev. Stat. Ann. Tit. 11 §§ 2-314, and 2-1212.

1878. The Class Vehicles are not merchantable, and as such the Automaker Defendants breached their implied warranties, because at the time of sale and all times thereafter:

a.     The Class Vehicles would not pass without objection in the automotive trade given the Inflator Defect;

b.     The Inflator Defect renders the Class Vehicles unsafe to drive and unfit for ordinary purposes;

c.     The Class Vehicles and the airbags therein were inadequately labeled as safe and reliable, and the labeling failed to disclose the Inflator

Defect; and

d.   The Class Vehicles do not conform to their labeling, which represents that the vehicles are safe and suitable for their intended use.

1879. Plaintiffs and Class Members timely provided the Automaker Defendants notice of the issues raised in this count and this Complaint and an opportunity to cure, as alleged in the paragraphs addressing Defendants' notice above.

1880. Alternatively, Plaintiffs and Class Members were excused from providing the Automaker Defendants with notice and an opportunity to cure the breach because it would have been futile. As alleged above, the Automaker Defendants have long known that the Class Vehicles contained the Defective Inflators, and that the Defective Inflators have caused airbags to malfunction in crashes involving the Class Vehicles; however, to date, the Automaker Defendants have not instituted a recall or any other repair program with respect to all of the Class Vehicles, or even acknowledged that the Inflator Defect exists in all of those Class Vehicles. Moreover, to the extent the Automaker Defendants have issued recalls, those recalls are inadequate because, inter alia: (a) they are belated because the Automaker Defendants knew about the Defective Inflators for years and did nothing to recall or remedy the serious safety defect; (b) with tens of millions of vehicles

impacted in existing and potential future recalls, as a result of the Automaker Defendants' concealment of the Inflator Defect, the recalls cannot be implemented effectively due to supply constraints and resulting delays; (c) the recalls are incomplete, and apply to only a subset of the Class Vehicles.

1881. Plaintiffs, individually and on behalf of Class Members, seek all available monetary damages (including actual, compensatory, and punitive damages), injunctive and equitable relief, and attorneys' fees and costs.

### c. Maine Count 3: Violations of Maine's Unfair Trade Practices Act (Me. Rev. Stat. Ann. Tit. 5 § 205-a, *et seq*.) Against All Defendants.[22]

1882. Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

1883. The Maine Plaintiffs bring this count under Maine law, individually and on behalf of the other members of the Maine Subclasses against the Automaker Defendants and Airbag Module Defendants for their respective Class Vehicles, and ARC. For the remaining Defendants, Plaintiffs who purchased or leased their Class Vehicles in states with materially similar laws may represent Subclasses under this count against all other Defendants and ARC.

---

[22] Plaintiffs bring this count against ARC and the Airbag Module Defendants based on their omissions and concealment of material facts only.

1884. For purposes of this count, members of the Maine Subclass shall be referred to as "Class Members."

1885. For purposes of this count, ARC, the Automaker Defendants, and the Airbag Module Defendants shall be referred to as "Defendants."

1886. Defendants, Plaintiffs, and Class Members are "persons" within the meaning of Me. Rev. Stat. Ann. Tit. 5, § 206(2).

1887. Defendants are engaged in "trade" or "commerce" within the meaning of Me. Rev. Stat. Ann. Tit. 5, § 206(3).

1888. The Maine Unfair Trade Practices Act ("Maine UTPA") states that "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce are . . . unlawful." Me. Rev. Stat. Ann. Tit. 5, § 207.

1889. Defendants, through their agents, employees, and/or subsidiaries, violated the Maine UTPA by knowingly and intentionally misrepresenting, omitting, concealing, and/or failing to disclose material facts regarding the reliability, safety, and performance of the Class Vehicles and the Defective Inflators, as detailed above.

1890. Defendants had an ongoing duty to Plaintiffs and Class Members to refrain from unfair or deceptive practices under the Maine UTPA in the course of their business. Specifically, Defendants owed Plaintiffs and Class Members a duty

to disclose all the material facts concerning the Defective Inflators in the Class Vehicles because:

a.     Given ARC's design, development, testing and manufacture of the Defective Inflators and its experience and knowledge as experts and long-time veterans of the automotive industry, it, along with the Automaker Defendants and the Airbag Module Defendants, possessed exclusive access to and was in a superior position to know the true facts about the Defective Inflators;

b.     Given the Airbag Module Defendants' role in the design, manufacture, and testing of the airbag modules with the Defective Inflators installed in them, and their experience and knowledge as experts and long-time veterans of the automotive industry, they, along with ARC and the Automaker Defendants, possessed exclusive access to and were in a superior position to know the true facts about the Defective Inflators;

c.     Given the Automaker Defendants' role in the design, manufacture, testing, and sale of Class Vehicles and Defective Inflators, and their experience and knowledge as experts and long-time veterans of the automotive industry, they, along with ARC and the Airbag Module Defendants, possessed exclusive access to and were in a superior

467

position to know the true facts about the Defective Inflators;

d.  Given the Inflator Defect's hidden and technical nature, Plaintiffs and Class Members lack the sophisticated expertise in vehicle components and technology that would be necessary to discover the Inflator Defect on their own;

e.  Defendants knew that the Inflator Defect gave rise to serious safety concerns for the consumers who purchased and leased the Class Vehicles;

f.  The Inflator Defect poses a severe risk of harm in that, among other things, the metal shrapnel can puncture and stab the occupants, causing severe and potentially fatal injuries;

g.  Defendants knew about and investigated the Inflator Defect, but then did not notify consumers about it or disclose the Inflator Defect to NHTSA, and the Automaker Defendants did not launch a comprehensive recall for all Class Vehicles, all of which individually and together deprived Plaintiffs of an opportunity that otherwise could have led them to discover the truth about the Inflator Defect in their Class Vehicles; and

h.  The Automaker Defendants made, helped to make, or conspired to

make incomplete representations about the safety and reliability of the Class Vehicles and their airbags, while purposefully withholding material facts about a known safety defect. Because they volunteered to provide information about the Class Vehicles that they marketed and offered for sale and lease to consumers, the Automaker Defendants had the duty to disclose the whole truth.

1891. By misrepresenting the Class Vehicles as safe and reliable and the airbags installed in them as properly-functioning and free from defects, and/or by failing to disclose and actively concealing the dangers and risk posed by the Inflator Defect to both consumers and NHTSA, Defendants engaged in unfair methods of competition and unfair and deceptive acts or practices prohibited by Me. Rev. Stat. Ann. Tit. 5, § 207.

1892. Defendants' unfair or deceptive acts or practices, including their misrepresentations, concealments, omissions, and/or suppressions of material facts, were designed to mislead and had a tendency or capacity to mislead and create a false impression in consumers that the Class Vehicles had properly-functioning and reliable airbags. Indeed, those misrepresentations, concealments, omissions, and suppressions of material facts did in fact deceive reasonable consumers, including Plaintiffs and Class Members, about the true safety and reliability of the Class

469

Vehicles and/or the Defective Inflators installed in them, the quality of the Class Vehicles, and the true value of the Class Vehicles.

1893. Defendants intended for Plaintiffs and Class Members to rely on their misrepresentations, omissions, and concealment—which they did by purchasing and leasing the Class Vehicles at the prices they paid believing that their vehicles would not have an Inflator Defect that would affect the quality, reliability, and safety of the Class Vehicles and their airbags.

1894. Defendants' misrepresentations, concealments, omissions, and suppressions of material facts regarding the Inflator Defect and true characteristics of the Class Vehicles were material to the decisions of Plaintiffs and Class Members to purchase and lease those vehicles, as Defendants intended. Plaintiffs and Class Members were exposed to those misrepresentations, concealments, omissions, and suppressions of material facts, and relied on Defendants' misrepresentations that the Class Vehicles and their airbags were safe and reliable in deciding to purchase and lease the Class Vehicles.

1895. Plaintiffs' and Class Members' reliance was reasonable, as they had no way of discerning that Defendants' representations were false and misleading, or otherwise learning the facts that Defendants had concealed or failed to disclose. Plaintiffs and Class Members did not, and could not, unravel Defendants' deception

on their own.

1896. Had they known the truth about the Inflator Defect, Plaintiffs and Class Members would not have purchased or leased the Class Vehicles, or would have paid significantly less for them.

1897. As a direct and proximate result of Defendants' deceptive practices, Plaintiffs and Class Members have sustained economic injury and loss—either by purchasing a vehicle they otherwise would not have purchased or paying more than they otherwise would have as a result of Defendants' actions and omissions alleged above—that first occurred at the time each Class Vehicle was purchased or leased.

1898. Defendants' violations present a continuing risk to Plaintiffs and Class Members, as well as to the general public, because the Class Vehicles remain unsafe due to the Defective Inflators therein. Defendants' unlawful acts and practices complained of herein affect the public interest.

1899. Plaintiffs and Class Members timely provided the Automaker Defendants notice of the issues raised in this count and this Complaint and an opportunity to cure, as alleged in the paragraphs addressing Defendants' notice above.

1900. Alternatively, Plaintiffs and Class Members were excused from providing the Automaker Defendants with notice and an opportunity to cure the

Inflator Defect, because it would have been futile. As alleged above, the Automaker Defendants knew about the Defective Inflators for years; however, to date, the Automaker Defendants have not instituted a recall or any other repair program with respect to all of the Class Vehicles, or even acknowledged that the Inflator Defect exists in all of the Class Vehicles. Therefore, they have refused to recall or repair defective vehicles. Moreover, to the extent the Automaker Defendants have issued recalls, those recalls are inadequate because, *inter alia*: (a) they are belated because the Automaker Defendants knew about the Defective Inflators for years and did nothing to recall or remedy the serious safety defect; (b) with tens of millions of vehicles impacted in existing and potential future recalls, as a result of the Automaker Defendants' concealment of the Inflator Defect, the recalls cannot be implemented effectively due to supply constraints and resulting delays; (c) the recalls are incomplete, and apply to only a subset of the Class Vehicles.

1901. Pursuant to Me. Rev. Stat. Tit. 5 § 213, Plaintiffs and Class Members seek an order enjoining Defendants' unfair and/or deceptive acts or practices, any such orders or judgments as may be necessary to restore to them any money acquired by unfair competition, including restitution and/or restitutionary disgorgement, and any other just and proper relief available under the Maine UTPA.

472

d.     **Maine Count 4: Fraud by Omission and Concealment Against All Defendants.**

1902. Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

1903. The Maine Plaintiffs bring this count under Maine law, individually and on behalf of the other members of the Maine Subclasses against the Automaker Defendants and Airbag Module Defendants for their respective Class Vehicles, and ARC. For the remaining Defendants, Plaintiffs who purchased or leased their Class Vehicles in states with materially similar laws may represent Subclasses under this count against all other Defendants and ARC.

1904. For purposes of this count, members of the Maine Subclass shall be referred to as "Class Members."

1905. For purposes of this count, ARC, the Automaker Defendants, and the Airbag Module Defendants shall be referred to as "Defendants."

1906. Defendants are liable for both fraudulent concealment and non-disclosure. *See, e.g.*, Restatement (Second) of Torts §§ 550-51 (1977).

1907. Defendants owed Plaintiffs and Class Members a duty to disclose all the material facts concerning the Defective Inflators in the Class Vehicles because:

a.     Given the Automaker Defendants' role in the design, manufacture, testing, and sale of Class Vehicles and Defective Inflators, and their

473

experience and knowledge as experts and long-time veterans of the automotive industry, they, along with ARC and the Airbag Module Defendants, possessed exclusive access to and were in a superior position to know the true facts about the Defective Inflators;

b.  Given ARC's design, development, testing and manufacture of the Defective Inflators and its experience and knowledge as experts and long-time veterans of the automotive industry, it, along with the Automaker Defendants and the Airbag Module Defendants, possessed exclusive access to and was in a superior position to know the true facts about the Defective Inflators;

c.  Given the Airbag Module Defendants' role in the design, manufacture, and testing of the airbag modules with the Defective Inflators installed in them, and their experience and knowledge as experts and long-time veterans of the automotive industry, they, along with ARC and the Automaker Defendants, possessed exclusive access to and were in a superior position to know the true facts about the Defective Inflators;

d.  Given the Inflator Defect's hidden and technical nature, Plaintiffs and Class Members lack the sophisticated expertise in vehicle components and technology that would be necessary to discover the Inflator Defect

474

on their own;

e.   Defendants knew that the Inflator Defect gave rise to serious safety concerns for the consumers who purchased and leased the Class Vehicles;

f.   The Inflator Defect poses a severe risk of harm in that, among other things, the metal shrapnel can puncture and stab the occupants, causing severe and potentially fatal injuries;

g.   Defendants knew about and investigated the Inflator Defect, but then did not notify consumers about it, disclose the Inflator Defect to NHTSA, and the Automaker Defendants did not launch a comprehensive recall for all Class Vehicles, all of which individually and together deprived Plaintiffs of an opportunity that otherwise could have led them to discover the truth about the Inflator Defect in their Class Vehicles; and

h.   The Automaker Defendants made, helped to make, or conspired to make incomplete representations about the safety and reliability of the Class Vehicles and their airbags, while purposefully withholding material facts about a known safety defect. Because they volunteered to provide information about the Class Vehicles that they marketed and

offered for sale and lease to consumers, the Automaker Defendants had

the duty to disclose the whole truth.

1908. In breach of their duties, Defendants failed to disclose the Inflator

Defect and that the Class Vehicles' airbags were not safe and reliable to Plaintiffs

and Class Members in connection with the sale of the Class Vehicles.

1909. The Inflator Defect within the Class Vehicles is material to the sale of

the Class Vehicles because a reasonable person would find it important in

purchasing, leasing, or retaining a new or used motor vehicle and because it directly

impacts the value of the Class Vehicles purchased or leased by Plaintiffs and Class

Members.

1910. Defendants intended for Plaintiffs and Class Members to rely on their

omissions and concealment—which they did by purchasing and leasing the Class

Vehicles at the prices they paid believing that their vehicles would not have an

Inflator Defect that would affect the quality, reliability, and safety of the Class

Vehicles and their airbags.

1911. Plaintiffs' and Class Members' reliance was reasonable because a

reasonable consumer would not have expected that the Class Vehicles contained a

safety defect that poses such a serious risk. They had no way of learning the facts

that Defendants had concealed or failed to disclose. Plaintiffs and Class Members

did not, and could not, unravel Defendants' deception on their own.

1912. Defendants actively concealed and suppressed these material facts, in whole or in part, to maintain a market for the Class Vehicles and the Defective Inflators installed in them, to protect profits, and to avoid costly recalls that would expose them to liability for those expenses and harm the commercial reputations of Defendants and their products. They did so at the expense of Plaintiffs and Class Members.

1913. If Defendants had fully and adequately disclosed the Inflator Defect to consumers, Plaintiffs and Class Members would have seen such a disclosure.

1914. Through their omissions and concealment with respect to the Inflator Defect within the Class Vehicles, Defendants intended to induce, and did induce, Plaintiffs and Class Members to either purchase a Class Vehicle that they otherwise would not have purchased, or pay more for a Class Vehicle than they otherwise would have paid.

1915. Had Plaintiffs and Class Members known of the Inflator Defect within the Class Vehicles, they would not have purchased the Class Vehicles or would have paid less for them.

1916. As a direct and proximate result of Defendants' omissions and concealment, Plaintiffs and other Class Members either overpaid for the Class

477

Vehicles or would not have purchased the Class Vehicles at all if the Inflator Defect had been disclosed to them. Accordingly, Defendants are liable to Plaintiffs and Class Members for their damages in an amount to be proven at trial.

1917. Defendants acted maliciously, oppressively, deliberately, with intent to defraud; in reckless disregard of the Plaintiffs' and Class Members' rights and well-being; and to enrich themselves. Defendants' misconduct warrants an assessment of punitive damages, as permitted by law, in an amount sufficient to deter such conduct in the future, which amount shall be determined according to proof at trial.

> ### e.   Maine Count 5: Unjust Enrichment Against the Automaker Defendants.

1918. Plaintiffs reallege and incorporate by reference all allegations in Volume 1 of the Consolidated Class Action Complaint as though fully set forth herein.

1919. The Maine Plaintiffs bring this count under Maine law, individually and on behalf of the other members of the Maine Subclasses against the Automaker Defendants for their respective Class Vehicles. For the remaining Automaker Defendants, Plaintiffs who purchased or leased their Class Vehicles in states with materially similar laws may represent Subclasses under this count against all other Automaker Defendants.

1920. For purposes of this count, members of the Maine Subclass shall be

referred to as "Class Members."

1921. When they purchased and leased the Class Vehicles, Plaintiffs and Class Members conferred tangible and material economic benefits upon the Automaker Defendants, who readily accepted and retained these benefits.

1922. Plaintiffs and Class Members would not have purchased or leased their Class Vehicles, or would have paid less for them, had they known of the Inflator Defect at the time of purchase or lease. Therefore, the Automaker Defendants profited from the sale and lease of the Class Vehicles to the detriment and expense of Plaintiffs and Class Members.

1923. The Automaker Defendants appreciated these economic benefits. These benefits were the expected result of the Automaker Defendants acting in their pecuniary interest at the expense of their customers. They knew of these benefits because they were aware of the Inflator Defect, yet they failed to disclose this knowledge and misled the Plaintiffs and Class Members regarding the nature and quality of the Class Vehicles while profiting from this deception.

1924. It would be unjust, inequitable, and unconscionable for the Automaker Defendants to retain these benefits, including because they were procured as a result of their wrongful conduct alleged above.

1925. Plaintiffs and Class Members are entitled to restitution of the benefits

the Automaker Defendants unjustly retained and/or any amounts necessary to return Plaintiffs and Class Members to the position they occupied prior to dealing with those Defendants, with such amounts to be determined at trial.

1926. Plaintiffs plead this claim separately as well as in the alternative to their claims for damages under Fed. R. Civ. P. 8(a)(3), because if the Court dismisses Plaintiffs' claims for damages enters judgment on them in favor of the Automaker Defendants, Plaintiffs will have no adequate legal remedy.

### 21.   Maryland

#### a.   Maryland Count 1: Breach of Express Warranty (Md. Code Com. Law §§ 2-313 and 2A-210) Against the Automaker Defendants.

1927. Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

1928. The Maryland Plaintiff brings this count under Maryland law, individually and on behalf of the other members of the Maryland Subclasses against the Automaker Defendants for his or her respective Class Vehicle(s). For the remaining Automaker Defendants, Plaintiffs who purchased or leased their Class Vehicles in states with materially similar laws may represent Subclasses under this count against all other Automaker Defendants.

1929. For purposes of this count, members of the Maryland Subclass shall be

referred to as "Class Members."

1930. The Automaker Defendants are and were at all relevant times "merchants" with respect to motor vehicles under Md. Code. Com. Law §§ 2-104(1) and 2A-103(3), and "sellers" of motor vehicles under § 2-103(1)(d).

1931. With respect to leases, the Automaker Defendants are and were at all relevant times "lessors" of motor vehicles under Md. Code. Com. Law § 2A-103(1)(p).

1932. All Class Members who purchased Class Vehicles in Maryland are "buyers" within the meaning of Md. Code. Com. Law § 2-103(1)(a).

1933. All Class members who leased Class Vehicles in Maryland are "lessees" within the meaning of Md. Code. Com. Law § 2A-103(1)(n).

1934. The Class Vehicles are and were at all relevant times "goods" within the meaning of Md. Code. Com. Law §§ 2-105(1) and 2A-103(1)(h).

1935. The Automaker Defendants issued an express written warranty for each defective Class Vehicle they sold, including that:

a.     The Class Vehicles would be free of defects in materials and workmanship at the time of sale; and

b.     The Class Vehicles were safe and reliable, and their airbags would function properly in the event of a crash.

481

1936. The warranties listed above formed the basis of the bargain with regard to Plaintiffs' and Class Members' purchase and lease of the Class Vehicles.

1937. The Automaker Defendants knowingly breached their warranty for the Class Vehicles because:

a.   The airbag inflators have latent defects which have a dangerous propensity to cause the inflators to rupture and eject metal shrapnel, subjecting Plaintiffs and Class Members to the risk of loss and injury; and

b.   The Automaker Defendants denied, concealed, and misrepresented the Inflator Defect, in the process refusing to pay for or provide in a reasonably timely fashion the needed repairs and replacements for Plaintiffs and Class Members.

1938. The Automaker Defendants knew or should have known that the warranties were false and/or misleading. Specifically, the Automaker Defendants were aware of the Inflator Defect in the Class Vehicles, which made the vehicles inherently defective and dangerous at the time that they were sold and leased to Plaintiffs and Class Members.

1939. Plaintiffs and Class Members were exposed to the Automaker Defendants' misrepresentations, and they had no way of discerning that the

Automaker Defendants' representations were false and misleading or otherwise learning the material facts that the Automaker Defendants had concealed or failed to disclose. Accordingly, Plaintiffs and Class Members reasonably relied on the Automaker Defendants' express warranties when purchasing or leasing their Class Vehicles.

1940. Plaintiffs and Class Members timely provided the Automaker Defendants notice of the issues raised in this count and this Complaint and an opportunity to cure, as alleged in the paragraphs addressing Defendants' notice above.

1941. Alternatively, Plaintiffs and Class Members were excused from providing the Automaker Defendants with notice and an opportunity to cure the breach, because it would have been futile. As alleged above, the Automaker Defendants knew about the Defective Inflators for years; however, to date, the Automaker Defendants have not instituted a recall or any other repair program with respect to all of the Class Vehicles, or even acknowledged that the Inflator Defect exists in all of the Class Vehicles. Therefore, they have refused to recall or repair defective vehicles. Moreover, to the extent the Automaker Defendants have issued recalls, those recalls are inadequate because, *inter alia*: (a) they are belated because the Automaker Defendants knew about the Defective Inflators for years and did

nothing to recall or remedy the serious safety defect; (b) with tens of millions of vehicles impacted in existing and potential future recalls, as a result of the Automaker Defendants' concealment of the Inflator Defect, the recalls cannot be implemented effectively due to supply constraints and resulting delays; (c) the recalls are incomplete, and apply to only a subset of the Class Vehicles.

1942. As a direct and proximate result of the Automaker Defendants' breach of their express warranties, the Class Vehicles were and are defective and the Inflator Defect was not remedied. Therefore, Plaintiff and Class Members have been damaged, in an amount to be proven at trial, through their overpayment at the time of purchase or lease for the Class Vehicles with an undisclosed safety defect that would not be remedied.

> **b.** **Maryland Count 2: Breach of Implied Warranty of Merchantability (Md. Code Com. Law §§ 2-314 and 2A-212) Against the Automaker Defendants.**

1943. Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

1944. The Maryland Plaintiff brings this count under Maryland law, individually and on behalf of the other members of the Maryland Subclasses against the Automaker Defendants for his or her respective Class Vehicle(s). For the remaining Automaker Defendants, Plaintiffs who purchased or leased their Class

Vehicles in states with materially similar laws may represent Subclasses under this count against all other Automaker Defendants.

1945. For purposes of this count, members of the Maryland Subclass shall be referred to as "Class Members."

1946. The Automaker Defendants are and were at all relevant times "merchants" with respect to motor vehicles Md. Code Com. Law §§ 2-104(1) and 2A-103(3), and "sellers" of motor vehicles under § 2-103(1)(d).

1947. With respect to leases, the Automaker Defendants are and were at all relevant times "lessors" of motor vehicles under Md. Code. Com. Law § 2A-103(1)(p).

1948. All Class Members who purchased Class Vehicles in Maryland are "buyers" within the meaning of Md. Code. Com. Law § 2-103(1)(a).

1949. All Class Members who leased Class Vehicles in Maryland are "lessees" within the meaning of Md. Code. Com. Law § 2A-103(1)(n).

1950. The Class Vehicles are and were at all relevant times "goods" within the meaning of Md. Code. Com. Law §§ 2-105(1) and 2A-103(1)(h).

1951. A warranty that the Class Vehicles were in merchantable condition and fit for the ordinary purpose for which such goods are used is implied by law pursuant to Md. Code Com. Law §§ 2-314 and 2A-212.

1952. The Class Vehicles are not merchantable, and as such the Automaker Defendants breached their implied warranties, because at the time of sale and all times thereafter:

a.      The Class Vehicles would not pass without objection in the automotive trade given the Inflator Defect;

b.      The Inflator Defect renders the Class Vehicles unsafe to drive and unfit for ordinary purposes;

c.      The Class Vehicles and the airbags therein were inadequately labeled as safe and reliable, and the labeling failed to disclose the Inflator Defect; and

d.      The Class Vehicles do not conform to their labeling, which represents that the vehicles are safe and suitable for their intended use.

1953. Plaintiffs and Class Members timely provided the Automaker Defendants notice of the issues raised in this count and this Complaint and an opportunity to cure, as alleged in the paragraphs addressing Defendants' notice above.

1954. Alternatively, Plaintiffs and Class Members were excused from providing the Automaker Defendants with notice and an opportunity to cure the breach because it would have been futile. As alleged above, the Automaker

Defendants have long known that the Class Vehicles contained the Defective Inflators, and that the Defective Inflators have caused airbags to malfunction in crashes involving the Class Vehicles; however, to date, the Automaker Defendants have not instituted a recall or any other repair program with respect to all of the Class Vehicles, or even acknowledged that the Inflator Defect exists in all of those Class Vehicles. Moreover, to the extent the Automaker Defendants have issued recalls, those recalls are inadequate because, inter alia: (a) they are belated because the Automaker Defendants knew about the Defective Inflators for years and did nothing to recall or remedy the serious safety defect; (b) with tens of millions of vehicles impacted in existing and potential future recalls, as a result of the Automaker Defendants' concealment of the Inflator Defect, the recalls cannot be implemented effectively due to supply constraints and resulting delays; (c) the recalls are incomplete, and apply to only a subset of the Class Vehicles.

1955. Plaintiffs, individually and on behalf of Class Members, seek all available monetary damages (including actual, compensatory, and punitive damages), injunctive and equitable relief, and attorneys' fees and costs.

c.      **Maryland Count 3: Violation of the Maryland Consumer Protection Act (Md. Code, Com. Law, § 13-101, *et seq.*) Against All Defendants.** [23]

1956. Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

1957. The Maryland Plaintiff brings this count under Maryland law, individually and on behalf of the other members of the Maryland Subclasses against the Automaker Defendants and Airbag Module Defendants for his or her respective Class Vehicle(s), and ARC. For the remaining Defendants, Plaintiffs who purchased or leased their Class Vehicles in states with materially similar laws may represent Subclasses under this count against all other Defendants and ARC.

1958. For purposes of this count, members of the Maryland Subclass shall be referred to as "Class Members."

1959. For purposes of this count, ARC, the Automaker Defendants, and the Airbag Module Defendants shall be referred to as "Defendants."

1960. Defendants, Plaintiffs, and Class Members are "persons" within the meaning of Md. Code, Com. Law, § 13-101(h).

1961. Plaintiffs and Class Members are "consumers" within the meaning of

---

[23] Plaintiffs bring this count against ARC and the Airbag Module Defendants based on their omissions and concealment of material facts only.

Md. Code, Com. Law, § 13-101(c).

1962. The Class Vehicles and the equipment installed in them are "merchandise" within the meaning of Md. Code, Com. Law, § 13-101(f).

1963. The Maryland Consumer Protection Act ("Maryland CPA") declares that "[a] person may not engage in any unfair, abusive, or deceptive trade practice, as defined in this subtitle or as further defined by the Division." Md. Code, Com. Law, § 13-303. Section 13-301 defines "unfair, abusive or deceptive trade practices." *Id*. at § 13-301.

1964. Defendants, through their agents, employees, and/or subsidiaries, violated the Maryland CPA by knowingly and intentionally misrepresenting, omitting, concealing, and/or failing to disclose material facts regarding the reliability, safety, and performance of the Class Vehicles and the Defective Inflators, as detailed above.

1965. Defendants had an ongoing duty to Plaintiffs and Class Members to refrain from unfair or deceptive practices under the Maryland CPA in the course of their business. Specifically, Defendants owed Plaintiffs and Class Members a duty to disclose all the material facts concerning the Defective Inflators in the Class Vehicles because:

    a.    Given ARC's design, development, testing and manufacture of the

Defective Inflators and its experience and knowledge as experts and long-time veterans of the automotive industry, it, along with the Automaker Defendants and the Airbag Module Defendants, possessed exclusive access to and was in a superior position to know the true facts about the Defective Inflators;

b.     Given the Airbag Module Defendants' role in the design, manufacture, and testing of the airbag modules with the Defective Inflators installed in them, and their experience and knowledge as experts and long-time veterans of the automotive industry, they, along with ARC and the Automaker Defendants, possessed exclusive access to and were in a superior position to know the true facts about the Defective Inflators;

c.     Given the Automaker Defendants' role in the design, manufacture, testing, and sale of Class Vehicles and Defective Inflators, and their experience and knowledge as experts and long-time veterans of the automotive industry, they, along with ARC and the Airbag Module Defendants, possessed exclusive access to and were in a superior position to know the true facts about the Defective Inflators;

d.     Given the Inflator Defect's hidden and technical nature, Plaintiffs and Class Members lack the sophisticated expertise in vehicle components

490

and technology that would be necessary to discover the Inflator Defect on their own;

e.     Defendants knew that the Inflator Defect gave rise to serious safety concerns for the consumers who purchased and leased the Class Vehicles;

f.     The Inflator Defect poses a severe risk of harm in that, among other things, the metal shrapnel can puncture and stab the occupants, causing severe and potentially fatal injuries;

g.     Defendants knew about and investigated the Inflator Defect, but then did not notify consumers about it or disclose the Inflator Defect to NHTSA, and the Automaker Defendants did not launch a comprehensive recall for all Class Vehicles, all of which individually and together deprived Plaintiffs of an opportunity that otherwise could have led them to discover the truth about the Inflator Defect in their Class Vehicles; and

h.     The Automaker Defendants made, helped to make, or conspired to make incomplete representations about the safety and reliability of the Class Vehicles and their airbags, while purposefully withholding material facts about a known safety defect. Because they volunteered

to provide information about the Class Vehicles that they marketed and offered for sale and lease to consumers, the Automaker Defendants had the duty to disclose the whole truth.

1966. By misrepresenting the Class Vehicles as safe and reliable and the airbags installed in them as properly functioning and free from defects, and/or by failing to disclose and actively concealing the dangers and risk posed by the Inflator Defect to both consumers and NHTSA, Defendants engaged in one or more of the following unfair or deceptive business practices prohibited by Md. Code, Com. Law, § 13-303:

    a.    Making false or misleading oral or written statements, visual descriptions, or other representations regarding the safety and quality of the Class Vehicles, which had the tendency or effect of deceiving or misleading consumers about the Class Vehicles and airbags installed in them;

    b.    Representing that the Class Vehicles and/or the Defective Inflators had a characteristic that they did not actually have—*i.e.*, that the vehicles were safe and suitable for use on the roadway, when, in fact, they were not because their airbag inflators were defectively designed such that they had an unreasonably dangerous propensity to rupture, causing

severe and fatal injuries;

c.      Representing that the Class Vehicles and the Defective Inflators installed in them were of a particular quality, grade, or standard when, in fact, they were not of that quality, grade, or standard;

d.      Concealing and failing to disclose that the Class Vehicles and the Defective Inflators installed in them were inherently defective, defectively designed, and not suitable for their intended use despite advertising them as safe and suitable for their intended function;

e.      Failing to market, distribute, sell, and lease the Class Vehicles equipped with Defective Inflators in accordance with Defendants' previous representations—i.e., that the Class Vehicles were safe and suitable for their intended use, when, in fact, they were not because of the Inflator Defect; and

f.      Engaging in deception, fraud, false pretense, false premise, misrepresentation, or knowing concealment, suppression, or omission of material facts regarding the safety of the Class Vehicles.

Md. Code, Com. Law, §§ 13-301(1), (2)(i), (2)(iv), (3), (5)(i), and (9)(i).

1967. Defendants' unfair or deceptive acts or practices, including their misrepresentations, concealments, omissions, and/or suppressions of material facts,

were designed to mislead and had a tendency or capacity to mislead and create a false impression in consumers that the Class Vehicles had properly-functioning and reliable airbags. Indeed, those misrepresentations, concealments, omissions, and suppressions of material facts did in fact deceive reasonable consumers, including Plaintiffs and Class Members, about the true safety and reliability of the Class Vehicles and/or the Defective Inflators installed in them, the quality of the Class Vehicles, and the true value of the Class Vehicles.

1968. Defendants intended for Plaintiffs and Class Members to rely on their misrepresentations, omissions, and concealment—which they did by purchasing and leasing the Class Vehicles at the prices they paid believing that their vehicles would not have an Inflator Defect that would affect the quality, reliability, and safety of the Class Vehicles and their airbags.

1969. Defendants' misrepresentations, concealments, omissions, and suppressions of material facts regarding the Inflator Defect and true characteristics of the Class Vehicles were material to the decisions of Plaintiffs and Class Members to purchase and lease those vehicles, as Defendants intended. Plaintiffs and Class Members were exposed to those misrepresentations, concealments, omissions, and suppressions of material facts, and relied on Defendants' misrepresentations that the Class Vehicles and their airbags were safe and reliable in deciding to purchase and

lease the Class Vehicles.

1970. Plaintiffs' and Class Members' reliance was reasonable, as they had no way of discerning that Defendants' representations were false and misleading, or otherwise learning the facts that Defendants had concealed or failed to disclose. Plaintiffs and Class Members did not, and could not, unravel Defendants' deception on their own.

1971. Had they known the truth about the Inflator Defect, Plaintiffs and Class Members would not have purchased or leased the Class Vehicles, or would have paid significantly less for them.

1972. As a direct and proximate result of Defendants' deceptive practices, Plaintiffs and Class Members have sustained economic injury and loss—either by purchasing a vehicle they otherwise would not have purchased or paying more than they otherwise would have as a result of Defendants' actions and omissions alleged above—that first occurred at the time each Class Vehicle was purchased or leased.

1973. Defendants' violations present a continuing risk to Plaintiffs and Class Members, as well as to the general public, because the Class Vehicles remain unsafe due to the Defective Inflators therein. Defendants' unlawful acts and practices complained of herein affect the public interest.

1974. Pursuant to Md. Code, Com. Law, § 13-408, Plaintiffs and Class

Members seek an order enjoining Defendants' unfair and/or deceptive acts or practices, any such orders or judgments as may be necessary to restore to them any money acquired by unfair competition, including restitution and/or restitutionary disgorgement, and any other just and proper relief available under the Maryland CPA.

> **d.    Maryland Count 4: Fraud by Omission and Concealment Against All Defendants.**

1975. Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

1976. The Maryland Plaintiff brings this count under Maryland law, individually and on behalf of the other members of the Maryland Subclasses against the Automaker Defendants and Airbag Module Defendants for his or her respective Class Vehicle(s), and ARC. For the remaining Defendants, Plaintiffs who purchased or leased their Class Vehicles in states with materially similar laws may represent Subclasses under this count against all other Defendants and ARC.

1977. For purposes of this count, members of the Maryland Subclass shall be referred to as "Class Members."

1978. For purposes of this count, ARC, the Automaker Defendants, and the Airbag Module Defendants shall be referred to as "Defendants."

1979. Defendants are liable for both fraudulent concealment and non-

496

disclosure. *See, e.g.*, Restatement (Second) of Torts §§ 550-51 (1977).

1980. Defendants owed Plaintiffs and Class Members a duty to disclose all the material facts concerning the Defective Inflators in the Class Vehicles because:

a.     Given the Automaker Defendants' role in the design, manufacture, testing, and sale of Class Vehicles and Defective Inflators, and their experience and knowledge as experts and long-time veterans of the automotive industry, they, along with ARC and the Airbag Module Defendants, possessed exclusive access to and were in a superior position to know the true facts about the Defective Inflators;

b.     Given ARC's design, development, testing and manufacture of the Defective Inflators and its experience and knowledge as experts and long-time veterans of the automotive industry, it, along with the Automaker Defendants and the Airbag Module Defendants, possessed exclusive access to and was in a superior position to know the true facts about the Defective Inflators;

c.     Given the Airbag Module Defendants' role in the design, manufacture, and testing of the airbag modules with the Defective Inflators installed in them, and their experience and knowledge as experts and long-time veterans of the automotive industry, they, along with ARC and the

Automaker Defendants, possessed exclusive access to and were in a superior position to know the true facts about the Defective Inflators;

d.     Given the Inflator Defect's hidden and technical nature, Plaintiffs and Class Members lack the sophisticated expertise in vehicle components and technology that would be necessary to discover the Inflator Defect on their own;

e.     Defendants knew that the Inflator Defect gave rise to serious safety concerns for the consumers who purchased and leased the Class Vehicles;

f.     The Inflator Defect poses a severe risk of harm in that, among other things, the metal shrapnel can puncture and stab the occupants, causing severe and potentially fatal injuries;

g.     Defendants knew about and investigated the Inflator Defect, but then did not notify consumers about it, disclose the Inflator Defect to NHTSA, and the Automaker Defendants did not launch a comprehensive recall for all Class Vehicles, all of which individually and together deprived Plaintiffs of an opportunity that otherwise could have led them to discover the truth about the Inflator Defect in their Class Vehicles; and

498

h.   The Automaker Defendants made, helped to make, or conspired to make incomplete representations about the safety and reliability of the Class Vehicles and their airbags, while purposefully withholding material facts about a known safety defect. Because they volunteered to provide information about the Class Vehicles that they marketed and offered for sale and lease to consumers, the Automaker Defendants had the duty to disclose the whole truth.

1981. In breach of their duties, Defendants failed to disclose the Inflator Defect and that the Class Vehicles' airbags were not safe and reliable to Plaintiffs and Class Members in connection with the sale of the Class Vehicles.

1982. The Inflator Defect within the Class Vehicles is material to the sale of the Class Vehicles because a reasonable person would find it important in purchasing, leasing, or retaining a new or used motor vehicle and because it directly impacts the value of the Class Vehicles purchased or leased by Plaintiffs and Class Members.

1983. Defendants intended for Plaintiffs and Class Members to rely on their omissions and concealment—which they did by purchasing and leasing the Class Vehicles at the prices they paid believing that their vehicles would not have an Inflator Defect that would affect the quality, reliability, and safety of the Class

Vehicles and their airbags.

1984. Plaintiffs' and Class Members' reliance was reasonable because a reasonable consumer would not have expected that the Class Vehicles contained a safety defect that poses such a serious risk. They had no way of learning the facts that Defendants had concealed or failed to disclose. Plaintiffs and Class Members did not, and could not, unravel Defendants' deception on their own.

1985. Defendants actively concealed and suppressed these material facts, in whole or in part, to maintain a market for the Class Vehicles and the Defective Inflators installed in them, to protect profits, and to avoid costly recalls that would expose them to liability for those expenses and harm the commercial reputations of Defendants and their products. They did so at the expense of Plaintiffs and Class Members.

1986. If Defendants had fully and adequately disclosed the Inflator Defect to consumers, Plaintiffs and Class Members would have seen such a disclosure.

1987. Through their omissions and concealment with respect to the Inflator Defect within the Class Vehicles, Defendants intended to induce, and did induce, Plaintiffs and Class Members to either purchase a Class Vehicle that they otherwise would not have purchased, or pay more for a Class Vehicle than they otherwise would have paid.

1988. Had Plaintiffs and Class Members known of the Inflator Defect within the Class Vehicles, they would not have purchased the Class Vehicles or would have paid less for them.

1989. As a direct and proximate result of Defendants' omissions and concealment, Plaintiffs and other Class Members either overpaid for the Class Vehicles or would not have purchased the Class Vehicles at all if the Inflator Defect had been disclosed to them. Accordingly, Defendants are liable to Plaintiffs and Class Members for their damages in an amount to be proven at trial.

1990. Defendants acted maliciously, oppressively, deliberately, with intent to defraud; in reckless disregard of the Plaintiffs' and Class Members' rights and well-being; and to enrich themselves. Defendants' misconduct warrants an assessment of punitive damages, as permitted by law, in an amount sufficient to deter such conduct in the future, which amount shall be determined according to proof at trial.

e.     **Maryland Count 5: Unjust Enrichment Against the Automaker Defendants.**

1991. Plaintiffs reallege and incorporate by reference all allegations in Volume 1 of the Consolidated Class Action Complaint as though fully set forth herein.

1992. The Maryland Plaintiff brings this count under Maryland law, individually and on behalf of the other members of the Maryland Subclasses against

the Automaker Defendants for his or her respective Class Vehicle(s). For the remaining Automaker Defendants, Plaintiffs who purchased or leased their Class Vehicles in states with materially similar laws may represent Subclasses under this count against all other Automaker Defendants.

1993. For purposes of this count, members of the Maryland Subclass shall be referred to as "Class Members."

1994. When they purchased and leased the Class Vehicles, Plaintiffs and Class Members conferred tangible and material economic benefits upon the Automaker Defendants, who readily accepted and retained these benefits.

1995. Plaintiffs and Class Members would not have purchased or leased their Class Vehicles, or would have paid less for them, had they known of the Inflator Defect at the time of purchase or lease. Therefore, the Automaker Defendants profited from the sale and lease of the Class Vehicles to the detriment and expense of Plaintiffs and Class Members.

1996. The Automaker Defendants appreciated these economic benefits. These benefits were the expected result of the Automaker Defendants acting in their pecuniary interest at the expense of their customers. They knew of these benefits because they were aware of the Inflator Defect, yet they failed to disclose this knowledge and misled the Plaintiffs and Class Members regarding the nature and

quality of the Class Vehicles while profiting from this deception.

1997. It would be unjust, inequitable, and unconscionable for the Automaker Defendants to retain these benefits, including because they were procured as a result of their wrongful conduct alleged above.

1998. Plaintiffs and Class Members are entitled to restitution of the benefits the Automaker Defendants unjustly retained and/or any amounts necessary to return Plaintiffs and Class Members to the position they occupied prior to dealing with those Defendants, with such amounts to be determined at trial.

1999. Plaintiffs plead this claim separately as well as in the alternative to their claims for damages under Fed. R. Civ. P. 8(a)(3), because if the Court dismisses Plaintiffs' claims for damages enters judgment on them in favor of the Automaker Defendants, Plaintiffs will have no adequate legal remedy.

## 22. Massachusetts

### a. Massachusetts Count 1: Breach of Express Warranty (Mass. Gen Laws ch.A 106, §§ 2-313 and 2A-210) Against the Automaker Defendants.

2000. Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

2001. The Massachusetts Plaintiffs bring this count under Massachusetts law, individually and on behalf of the other members of the Massachusetts Subclasses

503

against the Automaker Defendants for their respective Class Vehicles. For the remaining Automaker Defendants, Plaintiffs who purchased or leased their Class Vehicles in states with materially similar laws may represent Subclasses under this count against all other Automaker Defendants.

2002. For purposes of this count, members of the Massachusetts Subclass shall be referred to as "Class Members."

2003. The Automaker Defendants are and were at all relevant times "merchants" with respect to motor vehicles under Mass. Gen. Laws ch. 106, §§ 2-104(1) and 2A-103(3), and "sellers" of motor vehicles under § 2-103(1)(d).

2004. With respect to leases, the Automaker Defendants are and were at all relevant times "lessors" of motor vehicles under Mass. Gen. Laws ch. 106, § 2A-103(1)(p).

2005. All Massachusetts State Class members who purchased Class Vehicles in Massachusetts are "buyers" within the meaning of Mass. Gen. Laws ch. 106, § 2-103(1)(a).

2006. All Class Members who leased Class Vehicles in Massachusetts are "lessees" within the meaning of Mass. Gen. Laws ch. 106, § 2A-103(1)(n).

2007. The Class Vehicles are and were at all relevant times "goods" within the meaning of Mass. Gen. Laws ch. 106, §§ 2-105(1) and 2A-103(1)(h).

2008. The Automaker Defendants issued an express written warranty for each defective Class Vehicle they sold, including that:

a.    The Class Vehicles would be free of defects in materials and workmanship at the time of sale; and

b.    The Class Vehicles were safe and reliable, and their airbags would function properly in the event of a crash.

2009. The warranties listed above formed the basis of the bargain with regard to Plaintiffs' and Class Members' purchase and lease of the Class Vehicles.

2010. The Automaker Defendants knowingly breached their warranty for the Class Vehicles because:

a.    The airbag inflators have latent defects which have a dangerous propensity to cause the inflators to rupture and eject metal shrapnel, subjecting Plaintiffs and Class Members to the risk of loss and injury; and

b.    The Automaker Defendants denied, concealed, and misrepresented the Inflator Defect, in the process refusing to pay for or provide in a reasonably timely fashion the needed repairs and replacements for Plaintiffs and Class Members.

2011. The Automaker Defendants knew or should have known that the

505

warranties were false and/or misleading. Specifically, the Automaker Defendants were aware of the Inflator Defect in the Class Vehicles, which made the vehicles inherently defective and dangerous at the time that they were sold and leased to Plaintiffs and Class Members.

2012. Plaintiffs and Class Members were exposed to the Automaker Defendants' misrepresentations, and they had no way of discerning that the Automaker Defendants' representations were false and misleading or otherwise learning the material facts that the Automaker Defendants had concealed or failed to disclose. Accordingly, Plaintiffs and Class Members reasonably relied on the Automaker Defendants' express warranties when purchasing or leasing their Class Vehicles.

2013. Plaintiffs and Class Members timely provided the Automaker Defendants notice of the issues raised in this count and this Complaint and an opportunity to cure, as alleged in the paragraphs addressing Defendants' notice above.

2014. Alternatively, Plaintiffs and Class Members were excused from providing the Automaker Defendants with notice and an opportunity to cure the breach, because it would have been futile. As alleged above, the Automaker Defendants knew about the Defective Inflators for years; however, to date, the

Automaker Defendants have not instituted a recall or any other repair program with respect to all of the Class Vehicles, or even acknowledged that the Inflator Defect exists in all of the Class Vehicles. Therefore, they have refused to recall or repair defective vehicles. Moreover, to the extent the Automaker Defendants have issued recalls, those recalls are inadequate because, *inter alia*: (a) they are belated because the Automaker Defendants knew about the Defective Inflators for years and did nothing to recall or remedy the serious safety defect; (b) with tens of millions of vehicles impacted in existing and potential future recalls, as a result of the Automaker Defendants' concealment of the Inflator Defect, the recalls cannot be implemented effectively due to supply constraints and resulting delays; (c) the recalls are incomplete, and apply to only a subset of the Class Vehicles.

2015. As a direct and proximate result of the Automaker Defendants' breach of their express warranties, the Class Vehicles were and are defective and the Inflator Defect was not remedied. Therefore, Plaintiff and Class Members have been damaged, in an amount to be proven at trial, through their overpayment at the time of purchase or lease for the Class Vehicles with an undisclosed safety defect that would not be remedied.

**b.      Massachusetts Count 2: Breach of Implied Warranty of Merchantability (Mass. Gen. Laws ch. 106, §§ 2-314 and 2A-212) Against the Automaker Defendants.**

2016. Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

2017.  The Massachusetts Plaintiffs bring this count under Massachusetts law, individually and on behalf of the other members of the Massachusetts Subclasses against the Automaker Defendants for their respective Class Vehicles. For the remaining Automaker Defendants, Plaintiffs who purchased or leased their Class Vehicles in states with materially similar laws may represent Subclasses under this count against all other Automaker Defendants.

2018. For purposes of this count, members of the Massachusetts Subclass shall be referred to as "Class Members."

2019.  A warranty that the Class Vehicles were in merchantable condition and fit for the ordinary purpose for which such goods are used is implied by law pursuant to Mass. Gen. Laws ch. 106, §§ 2-314 and 2A-212.

2020.  The Automaker Defendants are and were at all relevant times "merchants" with respect to motor vehicles under Mass. Gen. Laws ch. 106, §§ 2-104(1) and 2A-103(3), and "sellers" of motor vehicles under § 2-103(1)(d).

2021.  The Automaker Defendants are and were at all relevant times "lessors"

of motor vehicles under Mass. Gen. Laws ch. 106, § 2A-103(1)(p).

2022. All Class Members who purchased Class Vehicles in Massachusetts are "buyers" within the meaning of Mass. Gen. Laws ch. 106, § 2-103(1)(a).

2023. All Class Members who leased Class Vehicles in Massachusetts are "lessees" within the meaning of Mass. Gen. Laws ch. 106, § 2A-103(1)(n).

2024. The Class Vehicles are and were at all relevant times "goods" within the meaning of Mass. Gen. Laws ch. 106, §§ 2-105(1) and 2A-103(1)(h).

2025. The Class Vehicles are not merchantable, and as such the Automaker Defendants breached their implied warranties, because at the time of sale and all times thereafter:

a.   The Class Vehicles would not pass without objection in the automotive trade given the Inflator Defect;

b.   The Inflator Defect renders the Class Vehicles unsafe to drive and unfit for ordinary purposes;

c.   The Class Vehicles and the airbags therein were inadequately labeled as safe and reliable, and the labeling failed to disclose the Inflator Defect; and

d.   The Class Vehicles do not conform to their labeling, which represents that the vehicles are safe and suitable for their intended use.

2026. Plaintiffs and Class Members timely provided the Automaker Defendants notice of the issues raised in this count and this Complaint and an opportunity to cure, as alleged in the paragraphs addressing Defendants' notice above.

2027. Alternatively, Plaintiffs and Class Members were excused from providing the Automaker Defendants with notice and an opportunity to cure the breach because it would have been futile. As alleged above, the Automaker Defendants have long known that the Class Vehicles contained the Defective Inflators, and that the Defective Inflators have caused airbags to malfunction in crashes involving the Class Vehicles; however, to date, the Automaker Defendants have not instituted a recall or any other repair program with respect to all of the Class Vehicles, or even acknowledged that the Inflator Defect exists in all of those Class Vehicles. Moreover, to the extent the Automaker Defendants have issued recalls, those recalls are inadequate because, inter alia: (a) they are belated because the Automaker Defendants knew about the Defective Inflators for years and did nothing to recall or remedy the serious safety defect; (b) with tens of millions of vehicles impacted in existing and potential future recalls, as a result of the Automaker Defendants' concealment of the Inflator Defect, the recalls cannot be implemented effectively due to supply constraints and resulting delays; (c) the recalls are

incomplete, and apply to only a subset of the Class Vehicles.

2028. Plaintiffs, individually and on behalf of Class Members, seek all available monetary damages (including actual, compensatory, and punitive damages), injunctive and equitable relief, and attorneys' fees and costs.

### c. Massachusetts Count 3: Violations of Massachusetts's Deceptive Acts or Practices Law (Mass. Gen. Laws ch. 93a, § 1, *et seq.*) Against All Defendants.[24]

2029. Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

2030. The Massachusetts Plaintiffs bring this count under Massachusetts law, individually and on behalf of the other members of the Massachusetts Subclasses against the Automaker Defendants and Airbag Module Defendants for their respective Class Vehicles, and ARC. For the remaining Defendants, Plaintiffs who purchased or leased their Class Vehicles in states with materially similar laws may represent Subclasses under this count against all other Defendants and ARC.

2031. For purposes of this count, members of the Massachusetts Subclass shall be referred to as "Class Members."

2032. For purposes of this count, ARC, the Automaker Defendants, and the

---

[24] Plaintiffs bring this count against ARC and the Airbag Module Defendants based on their omissions and concealment of material facts only.

Airbag Module Defendants shall be referred to as "Defendants."

2033. Defendants were and are engaged in "trade" or "commerce" within the meaning of Mass. Gen. Laws ch. 93A, § 1(b).

2034. The Massachusetts consumer protection law ("Massachusetts Act") prohibits "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce[.]" Mass. Gen. Laws ch. 93A, § 2.

2035. Defendants, through their agents, employees, and/or subsidiaries, violated the Massachusetts Act by knowingly and intentionally misrepresenting, omitting, concealing, and/or failing to disclose material facts regarding the reliability, safety, and performance of the Class Vehicles and the Defective Inflators, as detailed above.

2036. Defendants had an ongoing duty to Plaintiffs and Class Members to refrain from unfair or deceptive practices under the Massachusetts Act in the course of their business. Specifically, Defendants owed Plaintiffs and Class Members a duty to disclose all the material facts concerning the Defective Inflators in the Class Vehicles because:

    a.    Given ARC's design, development, testing and manufacture of the Defective Inflators and its experience and knowledge as experts and long-time veterans of the automotive industry, it, along with the

Automaker Defendants and the Airbag Module Defendants, possessed exclusive access to and was in a superior position to know the true facts about the Defective Inflators;

b.     Given the Airbag Module Defendants' role in the design, manufacture, and testing of the airbag modules with the Defective Inflators installed in them, and their experience and knowledge as experts and long-time veterans of the automotive industry, they, along with ARC and the Automaker Defendants, possessed exclusive access to and were in a superior position to know the true facts about the Defective Inflators;

c.     Given the Automaker Defendants' role in the design, manufacture, testing, and sale of Class Vehicles and Defective Inflators, and their experience and knowledge as experts and long-time veterans of the automotive industry, they, along with ARC and the Airbag Module Defendants, possessed exclusive access to and were in a superior position to know the true facts about the Defective Inflators;

d.     Given the Inflator Defect's hidden and technical nature, Plaintiffs and Class Members lack the sophisticated expertise in vehicle components and technology that would be necessary to discover the Inflator Defect on their own;

513

e.  Defendants knew that the Inflator Defect gave rise to serious safety concerns for the consumers who purchased and leased the Class Vehicles;

f.  The Inflator Defect poses a severe risk of harm in that, among other things, the metal shrapnel can puncture and stab the occupants, causing severe and potentially fatal injuries;

g.  Defendants knew about and investigated the Inflator Defect, but then did not notify consumers about it or disclose the Inflator Defect to NHTSA, and the Automaker Defendants did not launch a comprehensive recall for all Class Vehicles, all of which individually and together deprived Plaintiffs of an opportunity that otherwise could have led them to discover the truth about the Inflator Defect in their Class Vehicles; and

h.  The Automaker Defendants made, helped to make, or conspired to make incomplete representations about the safety and reliability of the Class Vehicles and their airbags, while purposefully withholding material facts about a known safety defect. Because they volunteered to provide information about the Class Vehicles that they marketed and offered for sale and lease to consumers, the Automaker Defendants had

the duty to disclose the whole truth.

2037. By misrepresenting the Class Vehicles as safe and reliable and the airbags installed in them as properly functioning and free from defects, and/or by failing to disclose and actively concealing the dangers and risk posed by the Inflator Defect to both consumers and NHTSA, Defendants engaged in unfair methods of competition and unfair or deceptive acts or practices prohibited by Mass. Gen. Laws ch. 93A, § 2.

2038. Defendants' unfair or deceptive acts or practices, including their misrepresentations, concealments, omissions, and/or suppressions of material facts, were designed to mislead and had a tendency or capacity to mislead and create a false impression in consumers that the Class Vehicles had properly-functioning and reliable airbags. Indeed, those misrepresentations, concealments, omissions, and suppressions of material facts did in fact deceive reasonable consumers, including Plaintiffs and Class Members, about the true safety and reliability of the Class Vehicles and/or the Defective Inflators installed in them, the quality of the Class Vehicles, and the true value of the Class Vehicles.

2039. Defendants intended for Plaintiffs and Class Members to rely on their misrepresentations, omissions, and concealment—which they did by purchasing and leasing the Class Vehicles at the prices they paid believing that their vehicles would

not have an Inflator Defect that would affect the quality, reliability, and safety of the Class Vehicles and their airbags.

2040. Defendants' misrepresentations, concealments, omissions, and suppressions of material facts regarding the Inflator Defect and true characteristics of the Class Vehicles were material to the decisions of Plaintiffs and Class Members to purchase and lease those vehicles, as Defendants intended. Plaintiffs and Class Members were exposed to those misrepresentations, concealments, omissions, and suppressions of material facts, and relied on Defendants' misrepresentations that the Class Vehicles and their airbags were safe and reliable in deciding to purchase and lease the Class Vehicles.

2041. Plaintiffs' and Class Members' reliance was reasonable, as they had no way of discerning that Defendants' representations were false and misleading, or otherwise learning the facts that Defendants had concealed or failed to disclose. Plaintiffs and Class Members did not, and could not, unravel Defendants' deception on their own.

2042. Had they known the truth about the Inflator Defect, Plaintiffs and Class Members would not have purchased or leased the Class Vehicles, or would have paid significantly less for them.

2043. As a direct and proximate result of Defendants' deceptive practices,

Plaintiffs and Class Members have sustained economic injury and loss—either by purchasing a vehicle they otherwise would not have purchased or paying more than they otherwise would have as a result of Defendants' actions and omissions alleged above—that first occurred at the time each Class Vehicle was purchased or leased.

2044. Defendants' violations present a continuing risk to Plaintiffs and Class Members, as well as to the general public, because the Class Vehicles remain unsafe due to the Defective Inflators therein. Defendants' unlawful acts and practices complained of herein affect the public interest.

2045. Plaintiffs and Class Members timely provided Defendants notice of the issues raised in this count and this Complaint and an opportunity to cure, as alleged in the paragraphs addressing Defendants' notice above. Because Defendants failed to adequately remedy their unlawful conduct, Plaintiffs seek all damages and relief to which Plaintiffs and Class Members are entitled.

2046. Alternatively, Plaintiffs and Class Members were excused from providing the Defendants with notice and an opportunity to cure the Inflator Defect, because it would have been futile. As alleged above, the Defendants knew about the Defective Inflators for years; however, to date, the Automaker Defendants have not instituted a recall or any other repair program with respect to all of the Class Vehicles, or even acknowledged that the Inflator Defect exists in all of the Class

517

Vehicles. Therefore, they have refused to recall or repair defective vehicles. Moreover, to the extent the Automaker Defendants have issued recalls, those recalls are inadequate because, *inter alia*: (a) they are belated because the Automaker Defendants knew about the Defective Inflators for years and did nothing to recall or remedy the serious safety defect; (b) with tens of millions of vehicles impacted in existing and potential future recalls, as a result of the Automaker Defendants' concealment of the Inflator Defect, the recalls cannot be implemented effectively due to supply constraints and resulting delays; (c) the recalls are incomplete, and apply to only a subset of the Class Vehicles.

2047. Pursuant to Mass. Gen. Laws ch. 93A, § 9, Plaintiffs and Class Members seek an order enjoining Defendants' unfair and/or deceptive acts or practices, any such orders or judgments as may be necessary to restore to them any money acquired by unfair competition, including restitution and/or restitutionary disgorgement, and any other just and proper relief available under the Massachusetts Act.

### d.   Massachusetts Count 4: Fraud by Omission and Concealment Against All Defendants.

2048. Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

2049. The Massachusetts Plaintiffs bring this count under Massachusetts law,

518

individually and on behalf of the other members of the Massachusetts Subclasses against the Automaker Defendants and Airbag Module Defendants for their respective Class Vehicles, and ARC. For the remaining Defendants, Plaintiffs who purchased or leased their Class Vehicles in states with materially similar laws may represent Subclasses under this count against all other Defendants and ARC.

2050. For purposes of this count, members of the Massachusetts Subclass shall be referred to as "Class Members."

2051. For purposes of this count, ARC, the Automaker Defendants, and the Airbag Module Defendants shall be referred to as "Defendants."

2052. Defendants are liable for both fraudulent concealment and non-disclosure. *See, e.g.*, Restatement (Second) of Torts §§ 550-51 (1977).

2053. Defendants owed Plaintiffs and Class Members a duty to disclose all the material facts concerning the Defective Inflators in the Class Vehicles because:

    a.    Given the Automaker Defendants' role in the design, manufacture, testing, and sale of Class Vehicles and Defective Inflators, and their experience and knowledge as experts and long-time veterans of the automotive industry, they, along with ARC and the Airbag Module Defendants, possessed exclusive access to and were in a superior position to know the true facts about the Defective Inflators;

b.   Given ARC's design, development, testing and manufacture of the Defective Inflators and its experience and knowledge as experts and long-time veterans of the automotive industry, it, along with the Automaker Defendants and the Airbag Module Defendants, possessed exclusive access to and was in a superior position to know the true facts about the Defective Inflators;

c.   Given the Airbag Module Defendants' role in the design, manufacture, and testing of the airbag modules with the Defective Inflators installed in them, and their experience and knowledge as experts and long-time veterans of the automotive industry, they, along with ARC and the Automaker Defendants, possessed exclusive access to and were in a superior position to know the true facts about the Defective Inflators;

d.   Given the Inflator Defect's hidden and technical nature, Plaintiffs and Class Members lack the sophisticated expertise in vehicle components and technology that would be necessary to discover the Inflator Defect on their own;

e.   Defendants knew that the Inflator Defect gave rise to serious safety concerns for the consumers who purchased and leased the Class Vehicles;

f.      The Inflator Defect poses a severe risk of harm in that, among other things, the metal shrapnel can puncture and stab the occupants, causing severe and potentially fatal injuries;

g.      Defendants knew about and investigated the Inflator Defect, but then did not notify consumers about it, disclose the Inflator Defect to NHTSA, and the Automaker Defendants did not launch a comprehensive recall for all Class Vehicles, all of which individually and together deprived Plaintiffs of an opportunity that otherwise could have led them to discover the truth about the Inflator Defect in their Class Vehicles; and

h.      The Automaker Defendants made, helped to make, or conspired to make incomplete representations about the safety and reliability of the Class Vehicles and their airbags, while purposefully withholding material facts about a known safety defect. Because they volunteered to provide information about the Class Vehicles that they marketed and offered for sale and lease to consumers, the Automaker Defendants had the duty to disclose the whole truth.

2054. In breach of their duties, Defendants failed to disclose the Inflator Defect and that the Class Vehicles' airbags were not safe and reliable to Plaintiffs

521

and Class Members in connection with the sale of the Class Vehicles.

2055. The Inflator Defect within the Class Vehicles is material to the sale of the Class Vehicles because a reasonable person would find it important in purchasing, leasing, or retaining a new or used motor vehicle and because it directly impacts the value of the Class Vehicles purchased or leased by Plaintiffs and Class Members.

2056. Defendants intended for Plaintiffs and Class Members to rely on their omissions and concealment—which they did by purchasing and leasing the Class Vehicles at the prices they paid believing that their vehicles would not have an Inflator Defect that would affect the quality, reliability, and safety of the Class Vehicles and their airbags.

2057. Plaintiffs' and Class Members' reliance was reasonable because a reasonable consumer would not have expected that the Class Vehicles contained a safety defect that poses such a serious risk. They had no way of learning the facts that Defendants had concealed or failed to disclose. Plaintiffs and Class Members did not, and could not, unravel Defendants' deception on their own.

2058. Defendants actively concealed and suppressed these material facts, in whole or in part, to maintain a market for the Class Vehicles and the Defective Inflators installed in them, to protect profits, and to avoid costly recalls that would

expose them to liability for those expenses and harm the commercial reputations of Defendants and their products. They did so at the expense of Plaintiffs and Class Members.

2059. If Defendants had fully and adequately disclosed the Inflator Defect to consumers, Plaintiffs and Class Members would have seen such a disclosure.

2060. Through their omissions and concealment with respect to the Inflator Defect within the Class Vehicles, Defendants intended to induce, and did induce, Plaintiffs and Class Members to either purchase a Class Vehicle that they otherwise would not have purchased, or pay more for a Class Vehicle than they otherwise would have paid.

2061. Had Plaintiffs and Class Members known of the Inflator Defect within the Class Vehicles, they would not have purchased the Class Vehicles or would have paid less for them.

2062. As a direct and proximate result of Defendants' omissions and concealment, Plaintiffs and other Class Members either overpaid for the Class Vehicles or would not have purchased the Class Vehicles at all if the Inflator Defect had been disclosed to them. Accordingly, Defendants are liable to Plaintiffs and Class Members for their damages in an amount to be proven at trial.

2063. Defendants acted maliciously, oppressively, deliberately, with intent to

defraud; in reckless disregard of the Plaintiffs' and Class Members' rights and well-being; and to enrich themselves. Defendants' misconduct warrants an assessment of punitive damages, as permitted by law, in an amount sufficient to deter such conduct in the future, which amount shall be determined according to proof at trial.

e.    **Massachusetts Count 5: Unjust Enrichment Against the Automaker Defendants.**

2064. Plaintiffs reallege and incorporate by reference all allegations in Volume 1 of the Consolidated Class Action Complaint as though fully set forth herein.

2065. The Massachusetts Plaintiffs bring this count under Massachusetts law, individually and on behalf of the other members of the Massachusetts Subclasses against the Automaker Defendants for their respective Class Vehicles. For the remaining Automaker Defendants, Plaintiffs who purchased or leased their Class Vehicles in states with materially similar laws may represent Subclasses under this count against all other Automaker Defendants.

2066. For purposes of this count, members of the Massachusetts Subclass shall be referred to as "Class Members."

2067. When they purchased and leased the Class Vehicles, Plaintiffs and Class Members conferred tangible and material economic benefits upon the Automaker Defendants, who readily accepted and retained these benefits.

524

2068. Plaintiffs and Class Members would not have purchased or leased their Class Vehicles, or would have paid less for them, had they known of the Inflator Defect at the time of purchase or lease. Therefore, the Automaker Defendants profited from the sale and lease of the Class Vehicles to the detriment and expense of Plaintiffs and Class Members.

2069. The Automaker Defendants appreciated these economic benefits. These benefits were the expected result of the Automaker Defendants acting in their pecuniary interest at the expense of their customers. They knew of these benefits because they were aware of the Inflator Defect, yet they failed to disclose this knowledge and misled the Plaintiffs and Class Members regarding the nature and quality of the Class Vehicles while profiting from this deception.

2070. It would be unjust, inequitable, and unconscionable for the Automaker Defendants to retain these benefits, including because they were procured as a result of their wrongful conduct alleged above.

2071. Plaintiffs and Class Members are entitled to restitution of the benefits the Automaker Defendants unjustly retained and/or any amounts necessary to return Plaintiffs and Class Members to the position they occupied prior to dealing with those Defendants, with such amounts to be determined at trial.

2072. Plaintiffs plead this claim separately as well as in the alternative to their

claims for damages under Fed. R. Civ. P. 8(a)(3), because if the Court dismisses Plaintiffs' claims for damages enters judgment on them in favor of the Automaker Defendants, Plaintiffs will have no adequate legal remedy.

### 23.   Michigan

#### a.   Michigan Count 1: Breach of Express Warranty (Mich. Comp. Laws §§ 440.2313 and 440.2860) Against the Automaker Defendants.

2073. Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

2074. The Michigan Plaintiffs bring this count under Michigan law, individually and on behalf of the other members of the Michigan Subclasses against the Automaker Defendants for their respective Class Vehicles. For the remaining Automaker Defendants, Plaintiffs who purchased or leased their Class Vehicles in states with materially similar laws may represent Subclasses under this count against all other Automaker Defendants.

2075. For purposes of this count, members of the Michigan Subclass shall be referred to as "Class Members."

2076. The Automaker Defendants are and were at all relevant times "merchants" with respect to motor vehicles under Mich. Comp. Laws §§ 440.2104(1) and 440.2803(3), and "sellers" of motor vehicles under §

440.2103(1)(c).

2077. With respect to leases, the Automaker Defendants are and were at all relevant times "lessors" of motor vehicles under Mich. Comp. Laws § 440.2803(1)(p).

2078. All Class members who purchased Class Vehicles in Michigan are "buyers" within the meaning of Mich. Comp. Laws § 440.2103(1)(a).

2079. All Class members who leased Class Vehicles in Michigan are "lessees" within the meaning of Mich. Comp. Laws § 440.2803(1)(n).

2080. The Class Vehicles are and were at all relevant times "goods" within the meaning of Mich. Comp. Laws §§ 440.2105(1) and 4400.2803(1)(h).

2081. The Automaker Defendants issued an express written warranty for each defective Class Vehicle they sold, including that:

a.    The Class Vehicles would be free of defects in materials and workmanship at the time of sale; and

b.    The Class Vehicles were safe and reliable, and their airbags would function properly in the event of a crash.

2082. The warranties listed above formed the basis of the bargain with regard to Plaintiffs' and Class Members' purchase and lease of the Class Vehicles.

2083. The Automaker Defendants knowingly breached their warranty for the

527

Class Vehicles because:

    a.    The airbag inflators have latent defects which have a dangerous propensity to cause the inflators to rupture and eject metal shrapnel, subjecting Plaintiffs and Class Members to the risk of loss and injury; and

    b.    The Automaker Defendants denied, concealed, and misrepresented the Inflator Defect, in the process refusing to pay for or provide in a reasonably timely fashion the needed repairs and replacements for Plaintiffs and Class Members.

2084. The Automaker Defendants knew or should have known that the warranties were false and/or misleading. Specifically, the Automaker Defendants were aware of the Inflator Defect in the Class Vehicles, which made the vehicles inherently defective and dangerous at the time that they were sold and leased to Plaintiffs and Class Members.

2085. Plaintiffs and Class Members were exposed to the Automaker Defendants' misrepresentations, and they had no way of discerning that the Automaker Defendants' representations were false and misleading or otherwise learning the material facts that the Automaker Defendants had concealed or failed to disclose. Accordingly, Plaintiffs and Class Members reasonably relied on the

Automaker Defendants' express warranties when purchasing or leasing their Class Vehicles.

2086. Plaintiffs and Class Members timely provided the Automaker Defendants notice of the issues raised in this count and this Complaint and an opportunity to cure, as alleged in the paragraphs addressing Defendants' notice above.

2087. Alternatively, Plaintiffs and Class Members were excused from providing the Automaker Defendants with notice and an opportunity to cure the breach, because it would have been futile. As alleged above, the Automaker Defendants knew about the Defective Inflators for years; however, to date, the Automaker Defendants have not instituted a recall or any other repair program with respect to all of the Class Vehicles, or even acknowledged that the Inflator Defect exists in all of the Class Vehicles. Therefore, they have refused to recall or repair defective vehicles. Moreover, to the extent the Automaker Defendants have issued recalls, those recalls are inadequate because, *inter alia*: (a) they are belated because the Automaker Defendants knew about the Defective Inflators for years and did nothing to recall or remedy the serious safety defect; (b) with tens of millions of vehicles impacted in existing and potential future recalls, as a result of the Automaker Defendants' concealment of the Inflator Defect, the recalls cannot be

implemented effectively due to supply constraints and resulting delays; (c) the recalls are incomplete, and apply to only a subset of the Class Vehicles.

2088. As a direct and proximate result of the Automaker Defendants' breach of their express warranties, the Class Vehicles were and are defective and the Inflator Defect was not remedied. Therefore, Plaintiff and Class Members have been damaged, in an amount to be proven at trial, through their overpayment at the time of purchase or lease for the Class Vehicles with an undisclosed safety defect that would not be remedied.

      **b.**    **Michigan Count 2: Breach of Implied Warranty of Merchantability (Mich. Comp. Laws §§ 440.2314 and 440.2862) Against the Automaker Defendants.**

2089. Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

2090. The Michigan Plaintiffs bring this count under Michigan law, individually and on behalf of the other members of the Michigan Subclasses against the Automaker Defendants for their respective Class Vehicles. For the remaining Automaker Defendants, Plaintiffs who purchased or leased their Class Vehicles in states with materially similar laws may represent Subclasses under this count against all other Automaker Defendants.

2091. For purposes of this count, members of the Michigan Subclass shall be

referred to as "Class Members."

2092. A warranty that the Class Vehicles were in merchantable condition and fit for the ordinary purpose for which such goods are used is implied by law pursuant to Mich. Comp. Laws §§ 440.2314 and 440.2862.

2093. The Automaker Defendants are and were at all relevant times "merchants" with respect to motor vehicles under Mich. Comp. Laws §§ 440.2104(1) and 440.2803(3), and "sellers" of motor vehicles under § 440.2103(1)(c).

2094. The Automaker Defendants are and were at all relevant times "lessors" of motor vehicles under Mich. Comp. Laws § 440.2803(1)(p).

2095. All Class Members who purchased Class Vehicles in Michigan are "buyers" within the meaning of Mich. Comp. Laws § 440.2103(1)(a).

2096. All Class Members who leased Class Vehicles in Michigan are "lessees" within the meaning of Mich. Comp. Laws § 440.2803(1)(n).

2097. The Class Vehicles are and were at all relevant times "goods" within the meaning of Mich. Comp. Laws §§ 440.2105(1) and 4400.2803(1)(h).

2098. The Class Vehicles are not merchantable, and as such the Automaker Defendants breached their implied warranties, because at the time of sale and all times thereafter:

a.   The Class Vehicles would not pass without objection in the automotive trade given the Inflator Defect;

b.   The Inflator Defect renders the Class Vehicles unsafe to drive and unfit for ordinary purposes;

c.   The Class Vehicles and the airbags therein were inadequately labeled as safe and reliable, and the labeling failed to disclose the Inflator Defect; and

d.   The Class Vehicles do not conform to their labeling, which represents that the vehicles are safe and suitable for their intended use.

2099. Plaintiffs and Class Members timely provided the Automaker Defendants notice of the issues raised in this count and this Complaint and an opportunity to cure, as alleged in the paragraphs addressing Defendants' notice above.

2100. Alternatively, Plaintiffs and Class Members were excused from providing the Automaker Defendants with notice and an opportunity to cure the breach because it would have been futile. As alleged above, the Automaker Defendants have long known that the Class Vehicles contained the Defective Inflators, and that the Defective Inflators have caused airbags to malfunction in crashes involving the Class Vehicles; however, to date, the Automaker Defendants

have not instituted a recall or any other repair program with respect to all of the Class Vehicles, or even acknowledged that the Inflator Defect exists in all of those Class Vehicles. Moreover, to the extent the Automaker Defendants have issued recalls, those recalls are inadequate because, inter alia: (a) they are belated because the Automaker Defendants knew about the Defective Inflators for years and did nothing to recall or remedy the serious safety defect; (b) with tens of millions of vehicles impacted in existing and potential future recalls, as a result of the Automaker Defendants' concealment of the Inflator Defect, the recalls cannot be implemented effectively due to supply constraints and resulting delays; (c) the recalls are incomplete, and apply to only a subset of the Class Vehicles.

2101. Plaintiffs, individually and on behalf of Class Members, seek all available monetary damages (including actual, compensatory, and punitive damages), injunctive and equitable relief, and attorneys' fees and costs.

###### c.     Michigan Count 3: Violations of Michigan's Consumer Protection Act (Mich. Comp. Laws § 445.901, *et seq*.) Against All Defendants.[25]

2102. Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

---

[25] Plaintiffs bring this count against ARC and the Airbag Module Defendants based on their omissions and concealment of material facts only.

2103. The Michigan Plaintiffs bring this count under Michigan law, individually and on behalf of the other members of the Michigan Subclasses against the Automaker Defendants and Airbag Module Defendants for their respective Class Vehicles, and ARC. For the remaining Defendants, Plaintiffs who purchased or leased their Class Vehicles in states with materially similar laws may represent Subclasses under this count against all other Defendants and ARC.

2104. For purposes of this count, members of the Michigan Subclass shall be referred to as "Class Members."

2105. For purposes of this count, ARC, the Automaker Defendants, and the Airbag Module Defendants shall be referred to as "Defendants."

2106. Defendants, Plaintiffs, and Class Members are "persons" within the meaning of Mich. Comp. Laws § 445.902(1)(d).

2107. Defendants were and are engaged in "trade" or "commerce" within the meaning of Mich. Comp. Laws § 445.902(1)(g).

2108. The Michigan Consumer Protection Act ("Michigan CPA") prohibits "[u]nfair, unconscionable, or deceptive methods, acts, or practices in the conduct of trade or commerce[.]" Mich. Comp. Laws § 445.903(1).

2109. Defendants, through their agents, employees, and/or subsidiaries, violated the Michigan CPA by knowingly and intentionally misrepresenting,

534

omitting, concealing, and/or failing to disclose material facts regarding the reliability, safety, and performance of the Class Vehicles and the Defective Inflators, as detailed above.

2110. Defendants had an ongoing duty to Plaintiffs and Class Members to refrain from unfair or deceptive practices under the Michigan CPA in the course of their business. Specifically, Defendants owed Plaintiffs and Class Members a duty to disclose all the material facts concerning the Defective Inflators in the Class Vehicles because:

    a.    Given ARC's design, development, testing and manufacture of the Defective Inflators and its experience and knowledge as experts and long-time veterans of the automotive industry, it, along with the Automaker Defendants and the Airbag Module Defendants, possessed exclusive access to and was in a superior position to know the true facts about the Defective Inflators;

    b.    Given the Airbag Module Defendants' role in the design, manufacture, and testing of the airbag modules with the Defective Inflators installed in them, and their experience and knowledge as experts and long-time veterans of the automotive industry, they, along with ARC and the Automaker Defendants, possessed exclusive access to and were in a

535

superior position to know the true facts about the Defective Inflators;

c.      Given the Automaker Defendants' role in the design, manufacture, testing, and sale of Class Vehicles and Defective Inflators, and their experience and knowledge as experts and long-time veterans of the automotive industry, they, along with ARC and the Airbag Module Defendants, possessed exclusive access to and were in a superior position to know the true facts about the Defective Inflators;

d.      Given the Inflator Defect's hidden and technical nature, Plaintiffs and Class Members lack the sophisticated expertise in vehicle components and technology that would be necessary to discover the Inflator Defect on their own;

e.      Defendants knew that the Inflator Defect gave rise to serious safety concerns for the consumers who purchased and leased the Class Vehicles;

f.      The Inflator Defect poses a severe risk of harm in that, among other things, the metal shrapnel can puncture and stab the occupants, causing severe and potentially fatal injuries;

g.      Defendants knew about and investigated the Inflator Defect, but then did not notify consumers about it or disclose the Inflator Defect to

NHTSA, and the Automaker Defendants did not launch a comprehensive recall for all Class Vehicles, all of which individually and together deprived Plaintiffs of an opportunity that otherwise could have led them to discover the truth about the Inflator Defect in their Class Vehicles; and

h.    The Automaker Defendants made, helped to make, or conspired to make incomplete representations about the safety and reliability of the Class Vehicles and their airbags, while purposefully withholding material facts about a known safety defect. Because they volunteered to provide information about the Class Vehicles that they marketed and offered for sale and lease to consumers, the Automaker Defendants had the duty to disclose the whole truth.

2111. By misrepresenting the Class Vehicles as safe and reliable and the airbags installed in them as properly functioning and free from defects, and/or by failing to disclose and actively concealing the dangers and risk posed by the Inflator Defect to both consumers and NHTSA, Defendants engaged in one or more of the unfair or deceptive business practices prohibited by Mich. Comp. Laws §§ 445.903:

a.    Causing a probability of confusion or misleading as to the approval or certification of the Class Vehicles;

537

b.   Representing that the Class Vehicles and/or the Defective Inflators had a characteristic that they did not actually have—*i.e.*, that the vehicles were safe and suitable for use on the roadway, when, in fact, they were not because their airbag inflators were defectively designed such that they had an unreasonably dangerous propensity to rupture, causing severe and fatal injuries;

c.   Representing that the Class Vehicles and the Defective Inflators installed in them were of a particular quality, grade, or standard when, in fact, they were not of that quality, grade, or standard;

d.   Failing to market, distribute, sell, and lease the Class Vehicles equipped with Defective Inflators in accordance with Defendants' previous representations—i.e., that the Class Vehicles were safe and suitable for their intended use, when, in fact, they were not because of the Inflator Defect; and

e.   Concealing and failing to disclose that the Class Vehicles and the Defective Inflators installed in them were inherently defective, defectively designed, and not suitable for their intended use despite advertising them as safe and suitable for their intended function.

Mich. Comp. Laws §§ 445.903(1)(a), (c), (e), (g), (s), and (cc).

2112. Defendants' unfair or deceptive acts or practices, including their misrepresentations, concealments, omissions, and/or suppressions of material facts, were designed to mislead and had a tendency or capacity to mislead and create a false impression in consumers that the Class Vehicles had properly-functioning and reliable airbags. Indeed, those misrepresentations, concealments, omissions, and suppressions of material facts did in fact deceive reasonable consumers, including Plaintiffs and Class Members, about the true safety and reliability of the Class Vehicles and/or the Defective Inflators installed in them, the quality of the Class Vehicles, and the true value of the Class Vehicles.

2113. Defendants intended for Plaintiffs and Class Members to rely on their misrepresentations, omissions, and concealment—which they did by purchasing and leasing the Class Vehicles at the prices they paid believing that their vehicles would not have an Inflator Defect that would affect the quality, reliability, and safety of the Class Vehicles and their airbags.

2114. Defendants'   misrepresentations,   concealments,   omissions,   and suppressions of material facts regarding the Inflator Defect and true characteristics of the Class Vehicles were material to the decisions of Plaintiffs and Class Members to purchase and lease those vehicles, as Defendants intended. Plaintiffs and Class Members were exposed to those misrepresentations, concealments, omissions, and

suppressions of material facts, and relied on Defendants' misrepresentations that the Class Vehicles and their airbags were safe and reliable in deciding to purchase and lease the Class Vehicles.

2115. Plaintiffs' and Class Members' reliance was reasonable, as they had no way of discerning that Defendants' representations were false and misleading, or otherwise learning the facts that Defendants had concealed or failed to disclose. Plaintiffs and Class Members did not, and could not, unravel Defendants' deception on their own.

2116. Had they known the truth about the Inflator Defect, Plaintiffs and Class Members would not have purchased or leased the Class Vehicles, or would have paid significantly less for them.

2117. As a direct and proximate result of Defendants' deceptive practices, Plaintiffs and Class Members have sustained economic injury and loss—either by purchasing a vehicle they otherwise would not have purchased or paying more than they otherwise would have as a result of Defendants' actions and omissions alleged above—that first occurred at the time each Class Vehicle was purchased or leased.

2118. Defendants' violations present a continuing risk to Plaintiffs and Class Members, as well as to the general public, because the Class Vehicles remain unsafe due to the Defective Inflators therein. Defendants' unlawful acts and practices

complained of herein affect the public interest.

2119. Pursuant to Mich. Comp. Laws § 445.911, Plaintiffs and Class Members seek an order enjoining Defendants' unfair and/or deceptive acts or practices, any such orders or judgments as may be necessary to restore to them any money acquired by unfair competition, including restitution and/or restitutionary disgorgement, and any other just and proper relief available under the Michigan CPA.

### d.   Michigan Count 4: Fraud by Omission and Concealment Against All Defendants.

2120. Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

2121. The Michigan Plaintiffs bring this count under Michigan law, individually and on behalf of the other members of the Michigan Subclasses against the Automaker Defendants and Airbag Module Defendants for their respective Class Vehicles, and ARC. For the remaining Defendants, Plaintiffs who purchased or leased their Class Vehicles in states with materially similar laws may represent Subclasses under this count against all other Defendants and ARC.

2122. For purposes of this count, members of the Michigan Subclass shall be referred to as "Class Members."

2123. For purposes of this count, ARC, the Automaker Defendants, and the

Airbag Module Defendants shall be referred to as "Defendants."

2124. Defendants are liable for both fraudulent concealment and non-disclosure. *See, e.g.*, Restatement (Second) of Torts §§ 550-51 (1977).

2125. Defendants owed Plaintiffs and Class Members a duty to disclose all the material facts concerning the Defective Inflators in the Class Vehicles because:

    a.    Given the Automaker Defendants' role in the design, manufacture, testing, and sale of Class Vehicles and Defective Inflators, and their experience and knowledge as experts and long-time veterans of the automotive industry, they, along with ARC and the Airbag Module Defendants, possessed exclusive access to and were in a superior position to know the true facts about the Defective Inflators;

    b.    Given ARC's design, development, testing and manufacture of the Defective Inflators and its experience and knowledge as experts and long-time veterans of the automotive industry, it, along with the Automaker Defendants and the Airbag Module Defendants, possessed exclusive access to and was in a superior position to know the true facts about the Defective Inflators;

    c.    Given the Airbag Module Defendants' role in the design, manufacture, and testing of the airbag modules with the Defective Inflators installed

in them, and their experience and knowledge as experts and long-time veterans of the automotive industry, they, along with ARC and the Automaker Defendants, possessed exclusive access to and were in a superior position to know the true facts about the Defective Inflators;

d.     Given the Inflator Defect's hidden and technical nature, Plaintiffs and Class Members lack the sophisticated expertise in vehicle components and technology that would be necessary to discover the Inflator Defect on their own;

e.     Defendants knew that the Inflator Defect gave rise to serious safety concerns for the consumers who purchased and leased the Class Vehicles;

f.     The Inflator Defect poses a severe risk of harm in that, among other things, the metal shrapnel can puncture and stab the occupants, causing severe and potentially fatal injuries;

g.     Defendants knew about and investigated the Inflator Defect, but then did not notify consumers about it, disclose the Inflator Defect to NHTSA, and the Automaker Defendants did not launch a comprehensive recall for all Class Vehicles, all of which individually and together deprived Plaintiffs of an opportunity that otherwise could

have led them to discover the truth about the Inflator Defect in their Class Vehicles; and

h.  The Automaker Defendants made, helped to make, or conspired to make incomplete representations about the safety and reliability of the Class Vehicles and their airbags, while purposefully withholding material facts about a known safety defect. Because they volunteered to provide information about the Class Vehicles that they marketed and offered for sale and lease to consumers, the Automaker Defendants had the duty to disclose the whole truth.

2126. In breach of their duties, Defendants failed to disclose the Inflator Defect and that the Class Vehicles' airbags were not safe and reliable to Plaintiffs and Class Members in connection with the sale of the Class Vehicles.

2127. The Inflator Defect within the Class Vehicles is material to the sale of the Class Vehicles because a reasonable person would find it important in purchasing, leasing, or retaining a new or used motor vehicle and because it directly impacts the value of the Class Vehicles purchased or leased by Plaintiffs and Class Members.

2128. Defendants intended for Plaintiffs and Class Members to rely on their omissions and concealment—which they did by purchasing and leasing the Class

Vehicles at the prices they paid believing that their vehicles would not have an Inflator Defect that would affect the quality, reliability, and safety of the Class Vehicles and their airbags.

2129. Plaintiffs' and Class Members' reliance was reasonable because a reasonable consumer would not have expected that the Class Vehicles contained a safety defect that poses such a serious risk. They had no way of learning the facts that Defendants had concealed or failed to disclose. Plaintiffs and Class Members did not, and could not, unravel Defendants' deception on their own.

2130. Defendants actively concealed and suppressed these material facts, in whole or in part, to maintain a market for the Class Vehicles and the Defective Inflators installed in them, to protect profits, and to avoid costly recalls that would expose them to liability for those expenses and harm the commercial reputations of Defendants and their products. They did so at the expense of Plaintiffs and Class Members.

2131. If Defendants had fully and adequately disclosed the Inflator Defect to consumers, Plaintiffs and Class Members would have seen such a disclosure.

2132. Through their omissions and concealment with respect to the Inflator Defect within the Class Vehicles, Defendants intended to induce, and did induce, Plaintiffs and Class Members to either purchase a Class Vehicle that they otherwise

would not have purchased, or pay more for a Class Vehicle than they otherwise would have paid.

2133. Had Plaintiffs and Class Members known of the Inflator Defect within the Class Vehicles, they would not have purchased the Class Vehicles or would have paid less for them.

2134. As a direct and proximate result of Defendants' omissions and concealment, Plaintiffs and other Class Members either overpaid for the Class Vehicles or would not have purchased the Class Vehicles at all if the Inflator Defect had been disclosed to them. Accordingly, Defendants are liable to Plaintiffs and Class Members for their damages in an amount to be proven at trial.

2135. Defendants acted maliciously, oppressively, deliberately, with intent to defraud; in reckless disregard of the Plaintiffs' and Class Members' rights and well-being; and to enrich themselves. Defendants' misconduct warrants an assessment of punitive damages, as permitted by law, in an amount sufficient to deter such conduct in the future, which amount shall be determined according to proof at trial.

    e.    **Michigan Count 5: Unjust Enrichment Against the Automaker Defendants.**

2136. Plaintiffs reallege and incorporate by reference all allegations in Volume 1 of the Consolidated Class Action Complaint as though fully set forth herein.

2137. The Michigan Plaintiffs bring this count under Michigan law, individually and on behalf of the other members of the Michigan Subclasses against the Automaker Defendants for their respective Class Vehicles. For the remaining Automaker Defendants, Plaintiffs who purchased or leased their Class Vehicles in states with materially similar laws may represent Subclasses under this count against all other Automaker Defendants.

2138. For purposes of this count, members of the Michigan Subclass shall be referred to as "Class Members."

2139. When they purchased and leased the Class Vehicles, Plaintiffs and Class Members conferred tangible and material economic benefits upon the Automaker Defendants, who readily accepted and retained these benefits.

2140. Plaintiffs and Class Members would not have purchased or leased their Class Vehicles, or would have paid less for them, had they known of the Inflator Defect at the time of purchase or lease. Therefore, the Automaker Defendants profited from the sale and lease of the Class Vehicles to the detriment and expense of Plaintiffs and Class Members.

2141. The Automaker Defendants appreciated these economic benefits. These benefits were the expected result of the Automaker Defendants acting in their pecuniary interest at the expense of their customers. They knew of these benefits

547

because they were aware of the Inflator Defect, yet they failed to disclose this knowledge and misled the Plaintiffs and Class Members regarding the nature and quality of the Class Vehicles while profiting from this deception.

2142.  It would be unjust, inequitable, and unconscionable for the Automaker Defendants to retain these benefits, including because they were procured as a result of their wrongful conduct alleged above.

2143.  Plaintiffs and Class Members are entitled to restitution of the benefits the Automaker Defendants unjustly retained and/or any amounts necessary to return Plaintiffs and Class Members to the position they occupied prior to dealing with those Defendants, with such amounts to be determined at trial.

2144.  Plaintiffs plead this claim separately as well as in the alternative to their claims for damages under Fed. R. Civ. P. 8(a)(3), because if the Court dismisses Plaintiffs' claims for damages enters judgment on them in favor of the Automaker Defendants, Plaintiffs will have no adequate legal remedy.

24.  **Minnesota**

a.  **Minnesota Count 1: Breach of Express Warranty (Minn. Stat. §§ 336.2-313 and 336.2A-210) Against the Automaker Defendants.**

2145.  Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

2146. The Minnesota Plaintiffs bring this count under Minnesota law, individually and on behalf of the other members of the Minnesota Subclasses against the Automaker Defendants for their respective Class Vehicles. For the remaining Automaker Defendants, Plaintiffs who purchased or leased their Class Vehicles in states with materially similar laws may represent Subclasses under this count against all other Automaker Defendants.

2147. For purposes of this count, members of the Minnesota Subclass shall be referred to as "Class Members."

2148. The Automaker Defendants are and were at all relevant times "merchants" with respect to motor vehicles under Minn. Stat. §§ 336.2-104(1) and 336.2A-103(3), and "sellers" of motor vehicles under § 336.2-103(1)(d).

2149. With respect to leases, the Automaker Defendants are and were at all relevant times "lessors" of motor vehicles under Minn. Stat. § 336.2A-103(1)(p).

2150. All Class Members who purchased Class Vehicles in Minnesota are "buyers" within the meaning of Minn. Stat. § 336.2-103(1)(a).

2151. All Class Members who leased Class Vehicles in Minnesota are "lessees" within the meaning of Minn. Stat. § 336.2A-103(1)(n).

2152. The Class Vehicles are and were at all relevant times "goods" within the meaning of Minn. Stat. §§ 336.2-105(1) and 336.2A-103(1)(h).

2153. The Automaker Defendants issued an express written warranty for each defective Class Vehicle they sold, including that:

a.     The Class Vehicles would be free of defects in materials and workmanship at the time of sale; and

b.     The Class Vehicles were safe and reliable, and their airbags would function properly in the event of a crash.

2154. The warranties listed above formed the basis of the bargain with regard to Plaintiffs' and Class Members' purchase and lease of the Class Vehicles.

2155. The Automaker Defendants knowingly breached their warranty for the Class Vehicles because:

a.     The airbag inflators have latent defects which have a dangerous propensity to cause the inflators to rupture and eject metal shrapnel, subjecting Plaintiffs and Class Members to the risk of loss and injury; and

b.     The Automaker Defendants denied, concealed, and misrepresented the Inflator Defect, in the process refusing to pay for or provide in a reasonably timely fashion the needed repairs and replacements for Plaintiffs and Class Members.

2156. The Automaker Defendants knew or should have known that the

warranties were false and/or misleading. Specifically, the Automaker Defendants were aware of the Inflator Defect in the Class Vehicles, which made the vehicles inherently defective and dangerous at the time that they were sold and leased to Plaintiffs and Class Members.

2157. Plaintiffs and Class Members were exposed to the Automaker Defendants' misrepresentations, and they had no way of discerning that the Automaker Defendants' representations were false and misleading or otherwise learning the material facts that the Automaker Defendants had concealed or failed to disclose. Accordingly, Plaintiffs and Class Members reasonably relied on the Automaker Defendants' express warranties when purchasing or leasing their Class Vehicles.

2158. Plaintiffs and Class Members timely provided the Automaker Defendants notice of the issues raised in this count and this Complaint and an opportunity to cure, as alleged in the paragraphs addressing Defendants' notice above.

2159. Alternatively, Plaintiffs and Class Members were excused from providing the Automaker Defendants with notice and an opportunity to cure the breach, because it would have been futile. As alleged above, the Automaker Defendants knew about the Defective Inflators for years; however, to date, the

Automaker Defendants have not instituted a recall or any other repair program with respect to all of the Class Vehicles, or even acknowledged that the Inflator Defect exists in all of the Class Vehicles. Therefore, they have refused to recall or repair defective vehicles. Moreover, to the extent the Automaker Defendants have issued recalls, those recalls are inadequate because, *inter alia*: (a) they are belated because the Automaker Defendants knew about the Defective Inflators for years and did nothing to recall or remedy the serious safety defect; (b) with tens of millions of vehicles impacted in existing and potential future recalls, as a result of the Automaker Defendants' concealment of the Inflator Defect, the recalls cannot be implemented effectively due to supply constraints and resulting delays; (c) the recalls are incomplete, and apply to only a subset of the Class Vehicles.

2160. As a direct and proximate result of the Automaker Defendants' breach of their express warranties, the Class Vehicles were and are defective and the Inflator Defect was not remedied. Therefore, Plaintiff and Class Members have been damaged, in an amount to be proven at trial, through their overpayment at the time of purchase or lease for the Class Vehicles with an undisclosed safety defect that would not be remedied.

   **b.**  **Minnesota Count 2: Breach of Implied Warranty of Merchantability (Minn. Stat. §§ 336.2-314 and 336.2A-212) Against the Automaker Defendants.**

2161. Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

2162. The Minnesota Plaintiffs bring this count under Minnesota law, individually and on behalf of the other members of the Minnesota Subclasses against the Automaker Defendants for their respective Class Vehicles. For the remaining Automaker Defendants, Plaintiffs who purchased or leased their Class Vehicles in states with materially similar laws may represent Subclasses under this count against all other Automaker Defendants.

2163. For purposes of this count, members of the Minnesota Subclass shall be referred to as "Class Members."

2164. A warranty that the Class Vehicles were in merchantable condition and fit for the ordinary purpose for which such goods are used is implied by law pursuant to Minn. Stat. §§ 336.2-314 and 336.2A-212.

2165. The Automaker Defendants are and were at all relevant times "merchants" with respect to motor vehicles under Minn. Stat. §§ 336.2-104(1) and 336.2A-103(3), and "sellers" of motor vehicles under § 336.2-103(1)(d).

2166. With respect to leases, the Automaker Defendants are and were at all

relevant times "lessors" of motor vehicles under Minn. Stat. § 336.2A-103(1)(p).

2167. All Class Members who purchased Class Vehicles in Minnesota are "buyers" within the meaning of Minn. Stat. § 336.2-103(1)(a),

2168. All Class Members who leased Class Vehicles in Minnesota are "lessees" within the meaning of Minn. Stat. § 336.2A-103(1)(n).

2169. The Class Vehicles are and were at all relevant times "goods" within the meaning of Minn. Stat. §§ 336.2-105(1) and 336.2A-103(1)(h).

2170. The Class Vehicles are not merchantable, and as such the Automaker Defendants breached their implied warranties, because at the time of sale and all times thereafter:

  a.   The Class Vehicles would not pass without objection in the automotive trade given the Inflator Defect;

  b.   The Inflator Defect renders the Class Vehicles unsafe to drive and unfit for ordinary purposes;

  c.   The Class Vehicles and the airbags therein were inadequately labeled as safe and reliable, and the labeling failed to disclose the Inflator Defect; and

  d.   The Class Vehicles do not conform to their labeling, which represents that the vehicles are safe and suitable for their intended use.

554

2171. Plaintiffs and Class Members timely provided the Automaker Defendants notice of the issues raised in this count and this Complaint and an opportunity to cure, as alleged in the paragraphs addressing Defendants' notice above.

2172. Alternatively, Plaintiffs and Class Members were excused from providing the Automaker Defendants with notice and an opportunity to cure the breach because it would have been futile. As alleged above, the Automaker Defendants have long known that the Class Vehicles contained the Defective Inflators, and that the Defective Inflators have caused airbags to malfunction in crashes involving the Class Vehicles; however, to date, the Automaker Defendants have not instituted a recall or any other repair program with respect to all of the Class Vehicles, or even acknowledged that the Inflator Defect exists in all of those Class Vehicles. Moreover, to the extent the Automaker Defendants have issued recalls, those recalls are inadequate because, inter alia: (a) they are belated because the Automaker Defendants knew about the Defective Inflators for years and did nothing to recall or remedy the serious safety defect; (b) with tens of millions of vehicles impacted in existing and potential future recalls, as a result of the Automaker Defendants' concealment of the Inflator Defect, the recalls cannot be implemented effectively due to supply constraints and resulting delays; (c) the recalls are

incomplete, and apply to only a subset of the Class Vehicles.

2173. Plaintiffs, individually and on behalf of Class Members, seek all available monetary damages (including actual, compensatory, and punitive damages), injunctive and equitable relief, and attorneys' fees and costs.

### c. Minnesota Count 3: Violation of the Minnesota Prevention of Consumer Fraud Act (Minn. Stat. § 325F.68, *et seq*., and Minn. Stat. § 8.31, subd. 3a) Against the Automaker Defendants.

2174. Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

2175. The Minnesota Plaintiffs bring this count under Minnesota law, individually and on behalf of the other members of the Minnesota Subclasses against the Automaker Defendants for their respective Class Vehicles. For the remaining Automaker Defendants, Plaintiffs who purchased or leased their Class Vehicles in states with materially similar laws may represent Subclasses under this count against all other Automaker Defendants.

2176. For purposes of this count, members of the Minnesota Subclass shall be referred to as "Class Members."

2177. Defendants, Plaintiffs, and the Class Members are "persons" within the meaning of Minn. Stat. § 325F.68(3).

2178. The Class Vehicles are "merchandise" within the meaning of Minn.

Stat. § 325F.68(2).

2179. The Minnesota Prevention of Consumer Fraud Act ("Minnesota CFA") prohibits "act, use, or employment by any person of any fraud, false pretense, false promise, misrepresentation, misleading statement or deceptive practice, with the intent that others rely thereon in connection with the sale of any merchandise, whether or not any person has in fact been misled, deceived, or damaged[.]" Minn. Stat. § 325F.69(1).

2180. In the course of their business, the Automaker Defendants, through their agents, employees, and/or subsidiaries, violated the Minnesota CFA by knowingly and intentionally misrepresenting, omitting, concealing, and/or failing to disclose material facts regarding the quality, reliability, and safety of the Class Vehicles and the Inflator Defect, as detailed above.

2181. The Automaker Defendants had an ongoing duty to Plaintiffs and Class Members to refrain from unfair or deceptive practices under the Minnesota CFA in the course of their business. Specifically, they owed Plaintiffs and Class Members a duty to disclose all the material facts concerning the Inflator Defect in the Class Vehicles because:

  a.   Given the Automaker Defendants' role in the design, manufacture, testing, and sale of Class Vehicles and Defective Inflators, and their

experience and knowledge as experts and long-time veterans of the automotive industry, they, along with ARC and the Airbag Module Defendants, possessed exclusive access to and were in a superior position to know the true facts about the Defective Inflators;

b. Given the Inflator Defect's hidden and technical nature, Plaintiffs and Class Members lack the sophisticated expertise in vehicle components and technology that would be necessary to discover the Inflator Defect on their own;

c. Defendants knew that the Inflator Defect gave rise to serious safety concerns for the consumers who purchased and leased the Class Vehicles;

d. The Inflator Defect poses a severe risk of harm in that, among other things, the metal shrapnel can puncture and stab the occupants, causing severe and potentially fatal injuries;

e. Defendants knew about and investigated the Inflator Defect, but then did not notify consumers about it, disclose the Inflator Defect to NHTSA, and the Automaker Defendants did not launch a comprehensive recall for all Class Vehicles, all of which individually and together deprived Plaintiffs of an opportunity that otherwise could

have led them to discover the truth about the Inflator Defect in their Class Vehicles; and

f.   The Automaker Defendants made, helped to make, or conspired to make incomplete representations about the safety and reliability of the Class Vehicles and their airbags, while purposefully withholding material facts about a known safety defect. Because they volunteered to provide information about the Class Vehicles that they marketed and offered for sale and lease to consumers, the Automaker Defendants had the duty to disclose the whole truth.

2182. By misrepresenting the Class Vehicles as safe and reliable and the airbags installed in them as properly-functioning and free from defects, and/or by failing to disclose and actively concealing the dangers and risk posed by the Inflator Defect to both consumers and NHTSA, the Automaker Defendants engaged in untrue and misleading advertising prohibited by Minn. Stat. § 325F.69, including the use, or employment by any person of any fraud, false pretense, false promise, misrepresentation, misleading statement or deceptive practice, with the intent that others rely thereon in connection with the sale of any merchandise.

2183. The Automaker Defendants made or caused to be made and disseminated throughout Minnesota advertising, marketing, labeling, and other

publications containing numerous statements that were untrue or misleading, and which were known, or which by the exercise of reasonable care they should have been known to be untrue and misleading to consumers, including Plaintiffs and Class Members.

2184. The Automaker Defendants' unfair or deceptive acts or practices, including their misrepresentations, concealments, omissions, and/or suppressions of material facts, were designed to mislead and had a tendency or capacity to mislead and create a false impression in consumers that the Class Vehicles had properly-functioning and reliable airbags. Indeed, those misrepresentations, concealments, omissions, and suppressions of material facts did in fact deceive reasonable consumers, including Plaintiffs and Class Members, about the true safety and reliability of the Class Vehicles and/or the Defective Inflators installed in them, the quality of the Class Vehicles, and the true value of the Class Vehicles.

2185. The Automaker Defendants intended for Plaintiffs and Class Members to rely on their misrepresentations, omissions, and concealment—which they did by purchasing and leasing the Class Vehicles at the prices they paid believing that their vehicles would not have an Inflator Defect that would affect the quality, reliability, and safety of the Class Vehicles and their airbags.

2186. The Automaker Defendants' misrepresentations, concealments,

560

omissions, and suppressions of material facts regarding the Inflator Defect and true characteristics of the Class Vehicles were material to the decisions of Plaintiffs and Class Members to purchase and lease those vehicles, as the Automaker Defendants intended. Plaintiffs and Class Members were exposed to those misrepresentations, concealments, omissions, and suppressions of material facts, and relied on the Automaker Defendants' misrepresentations that the Class Vehicles and their airbags were safe and reliable in deciding to purchase and lease the Class Vehicles.

2187. Plaintiffs' and Class Members' reliance was reasonable, as they had no way of discerning that the Automaker Defendants' representations were false and misleading, or otherwise learning the facts that the Automaker Defendants had concealed or failed to disclose. Plaintiffs and Class Members did not, and could not, unravel the Automaker Defendants' deception on their own.

2188. Had they known the truth about the Inflator Defect, Plaintiffs and Class Members would not have purchased or leased the Class Vehicles, or would have paid significantly less for them.

2189. As a direct and proximate result of the Automaker Defendants' deceptive practices, Plaintiffs and Class Members have sustained economic injury and loss—either by purchasing a vehicle they otherwise would not have purchased or paying more than they otherwise would have as a result of the Automaker

Defendants' actions and omissions alleged above—that first occurred at the time each Class Vehicle was purchased or leased.

2190. The Automaker Defendants' violations present a continuing risk to Plaintiffs and Class Members, as well as to the general public, because the Class Vehicles remain unsafe due to the Defective Inflators therein. The Automaker Defendants' unlawful acts and practices complained of herein affect the public interest.

2191. Pursuant to Minn. Stat. §§ 8.31(3a) and 549.20(1)(a), Plaintiffs and Class Members seek an order enjoining Defendants' unfair or deceptive acts or practices and awarding damages and any other just and proper relief available under the Minnesota CFA.

> **d.  Minnesota Count 4: Violations of Minnesota's Uniform Deceptive Trade Practices Act (Minn. Stat. § 325D.44, Subd. 1, *et seq.*) Against All Defendants.[26]**

2192. Plaintiffs reallege and incorporate by reference the allegations in Volume 1 of the Consolidated Class Action Complaint as though fully set forth herein.

2193. The Minnesota Plaintiffs bring this count under Minnesota law,

---

[26] Plaintiffs bring this count against ARC and the Airbag Module Defendants based on their omissions and concealment of material facts only.

562

individually and on behalf of the other members of the Minnesota Subclasses against the Automaker Defendants and Airbag Module Defendants for their respective Class Vehicles, and ARC. For the remaining Defendants, Plaintiffs who purchased or leased their Class Vehicles in states with materially similar laws may represent Subclasses under this count against all other Defendants and ARC.

2194. For purposes of this count, members of the Minnesota Subclass shall be referred to as "Class Members."

2195. For purposes of this count, ARC, the Automaker Defendants, and the Airbag Module Defendants shall be referred to as "Defendants."

2196. The Minnesota Deceptive Trade Practices Act ("Minnesota DTPA") prohibits deceptive trade practices in the course of a business, vocation, or occupation. Minn. Stat. § 325D.44, Subd. 1.

2197. Defendants, through their agents, employees, and/or subsidiaries, violated the Minnesota DTPA by knowingly and intentionally misrepresenting, omitting, concealing, and/or failing to disclose material facts regarding the reliability, safety, and performance of the Class Vehicles and the Defective Inflators, as detailed above.

2198. Defendants had an ongoing duty to Plaintiffs and Class Members to refrain from unfair or deceptive practices under the Minnesota DTPA in the course

of their business. Specifically, Defendants owed Plaintiffs and Class Members a duty to disclose all the material facts concerning the Defective Inflators in the Class Vehicles because:

a.  Given ARC's design, development, testing and manufacture of the Defective Inflators and its experience and knowledge as experts and long-time veterans of the automotive industry, it, along with the Automaker Defendants and the Airbag Module Defendants, possessed exclusive access to and was in a superior position to know the true facts about the Defective Inflators;

b.  Given the Airbag Module Defendants' role in the design, manufacture, and testing of the airbag modules with the Defective Inflators installed in them, and their experience and knowledge as experts and long-time veterans of the automotive industry, they, along with ARC and the Automaker Defendants, possessed exclusive access to and were in a superior position to know the true facts about the Defective Inflators;

c.  Given the Automaker Defendants' role in the design, manufacture, testing, and sale of Class Vehicles and Defective Inflators, and their experience and knowledge as experts and long-time veterans of the automotive industry, they, along with ARC and the Airbag Module

564

Defendants, possessed exclusive access to and were in a superior position to know the true facts about the Defective Inflators;

d.      Given the Inflator Defect's hidden and technical nature, Plaintiffs and Class Members lack the sophisticated expertise in vehicle components and technology that would be necessary to discover the Inflator Defect on their own;

e.      Defendants knew that the Inflator Defect gave rise to serious safety concerns for the consumers who purchased and leased the Class Vehicles;

f.      The Inflator Defect poses a severe risk of harm in that, among other things, the metal shrapnel can puncture and stab the occupants, causing severe and potentially fatal injuries;

g.      Defendants knew about and investigated the Inflator Defect, but then did not notify consumers about it or disclose the Inflator Defect to NHTSA, and the Automaker Defendants did not launch a comprehensive recall for all Class Vehicles, all of which individually and together deprived Plaintiffs of an opportunity that otherwise could have led them to discover the truth about the Inflator Defect in their Class Vehicles; and

565

h.     The Automaker Defendants made, helped to make, or conspired to make incomplete representations about the safety and reliability of the Class Vehicles and their airbags, while purposefully withholding material facts about a known safety defect. Because they volunteered to provide information about the Class Vehicles that they marketed and offered for sale and lease to consumers, the Automaker Defendants had the duty to disclose the whole truth.

2199. By misrepresenting the Class Vehicles as safe and reliable and the airbags installed in them as properly functioning and free from defects, and/or by failing to disclose and actively concealing the dangers and risk posed by the Inflator Defect to both consumers and NHTSA, Defendants engaged in one or more of the following unfair or deceptive business practices prohibited by Minn. Stat. § 325D.44, Subd. 1:

a.     Causing likelihood of confusion or misunderstanding as the approval or certification of the Class Vehicles and the airbags installed in them;

b.     Representing that the Class Vehicles and/or the Defective Inflators had a characteristic that they did not actually have—*i.e.*, that the vehicles were safe and suitable for use on the roadway, when, in fact, they were not because their airbag inflators were defectively designed such that

566

they had an unreasonably dangerous propensity to rupture, causing severe and fatal injuries;

c.      Representing that the Class Vehicles and the Defective Inflators installed in them were of a particular quality, grade, or standard when, in fact, they were not of that quality, grade, or standard;

d.      Failing to market, distribute, sell, and lease the Class Vehicles equipped with Defective Inflators in accordance with Defendants' previous representations—i.e., that the Class Vehicles were safe and suitable for their intended use, when, in fact, they were not because of the Inflator Defect; and

e.      Engaging in any other conduct which similarly creates a likelihood of confusion or of misunderstanding.

Minn. Stat. §§ 325D.44, Subd. 1(1) (5), (7), (9), and (13).

2200. Defendants' unfair or deceptive acts or practices, including their misrepresentations, concealments, omissions, and/or suppressions of material facts, were designed to mislead and had a tendency or capacity to mislead and create a false impression in consumers that the Class Vehicles had properly-functioning and reliable airbags. Indeed, those misrepresentations, concealments, omissions, and

567

suppressions of material facts did in fact deceive reasonable consumers, including Plaintiffs and Class Members, about the true safety and reliability of the Class Vehicles and/or the Defective Inflators installed in them, the quality of the Class Vehicles, and the true value of the Class Vehicles.

2201. Defendants intended for Plaintiffs and Class Members to rely on their misrepresentations, omissions, and concealment—which they did by purchasing and leasing the Class Vehicles at the prices they paid believing that their vehicles would not have an Inflator Defect that would affect the quality, reliability, and safety of the Class Vehicles and their airbags.

2202. Defendants' misrepresentations, concealments, omissions, and suppressions of material facts regarding the Inflator Defect and true characteristics of the Class Vehicles were material to the decisions of Plaintiffs and Class Members to purchase and lease those vehicles, as Defendants intended. Plaintiffs and Class Members were exposed to those misrepresentations, concealments, omissions, and suppressions of material facts, and relied on Defendants' misrepresentations that the Class Vehicles and their airbags were safe and reliable in deciding to purchase and lease the Class Vehicles.

2203. Plaintiffs' and Class Members' reliance was reasonable, as they had no way of discerning that Defendants' representations were false and misleading, or

otherwise learning the facts that Defendants had concealed or failed to disclose. Plaintiffs and Class Members did not, and could not, unravel Defendants' deception on their own.

2204. Had they known the truth about the Inflator Defect, Plaintiffs and Class Members would not have purchased or leased the Class Vehicles, or would have paid significantly less for them.

2205. As a direct and proximate result of Defendants' deceptive practices, Plaintiffs and Class Members have sustained economic injury and loss—either by purchasing a vehicle they otherwise would not have purchased or paying more than they otherwise would have as a result of Defendants' actions and omissions alleged above—that first occurred at the time each Class Vehicle was purchased or leased.

2206. Defendants' violations present a continuing risk to Plaintiffs and Class Members, as well as to the general public, because the Class Vehicles remain unsafe due to the Defective Inflators therein. Defendants' unlawful acts and practices complained of herein affect the public interest.

2207. Pursuant to Minn. Stat. §§ 8.31(3a), 325D.45, and 549.20(1)(a), Plaintiffs and Class Members seek an order enjoining Defendants' unfair and/or deceptive acts or practices, any such orders or judgments as may be necessary to restore to them any money acquired by unfair competition, including restitution

and/or restitutionary disgorgement, and any other just and proper relief available under the Minnesota DTPA.

2208. Plaintiffs plead this claim separately as well as in the alternative to their claims for damages under Fed. R. Civ. P. 8(a)(3), because if the Court dismisses Plaintiffs' claims for damages enters judgment on them in favor of the Defendants, Plaintiffs will have no adequate legal remedy.

      **e.    Minnesota Count 5: Fraud by Omission and Concealment Against All Defendants.**

2209. Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

2210. The Minnesota Plaintiffs bring this count under Minnesota law, individually and on behalf of the other members of the Minnesota Subclasses against the Automaker Defendants and Airbag Module Defendants for their respective Class Vehicles, and ARC. For the remaining Defendants, Plaintiffs who purchased or leased their Class Vehicles in states with materially similar laws may represent Subclasses under this count against all other Defendants and ARC.

2211. For purposes of this count, members of the Minnesota Subclass shall be referred to as "Class Members."

2212. For purposes of this count, ARC, the Automaker Defendants, and the Airbag Module Defendants shall be referred to as "Defendants."

2213. Defendants are liable for both fraudulent concealment and non-disclosure. *See, e.g.*, Restatement (Second) of Torts §§ 550-51 (1977).

2214. Defendants owed Plaintiffs and Class Members a duty to disclose all the material facts concerning the Defective Inflators in the Class Vehicles because:

a. Given the Automaker Defendants' role in the design, manufacture, testing, and sale of Class Vehicles and Defective Inflators, and their experience and knowledge as experts and long-time veterans of the automotive industry, they, along with ARC and the Airbag Module Defendants, possessed exclusive access to and were in a superior position to know the true facts about the Defective Inflators;

b. Given ARC's design, development, testing and manufacture of the Defective Inflators and its experience and knowledge as experts and long-time veterans of the automotive industry, it, along with the Automaker Defendants and the Airbag Module Defendants, possessed exclusive access to and was in a superior position to know the true facts about the Defective Inflators;

c. Given the Airbag Module Defendants' role in the design, manufacture, and testing of the airbag modules with the Defective Inflators installed in them, and their experience and knowledge as experts and long-time

veterans of the automotive industry, they, along with ARC and the Automaker Defendants, possessed exclusive access to and were in a superior position to know the true facts about the Defective Inflators;

d.    Given the Inflator Defect's hidden and technical nature, Plaintiffs and Class Members lack the sophisticated expertise in vehicle components and technology that would be necessary to discover the Inflator Defect on their own;

e.    Defendants knew that the Inflator Defect gave rise to serious safety concerns for the consumers who purchased and leased the Class Vehicles;

f.    The Inflator Defect poses a severe risk of harm in that, among other things, the metal shrapnel can puncture and stab the occupants, causing severe and potentially fatal injuries;

g.    Defendants knew about and investigated the Inflator Defect, but then did not notify consumers about it, disclose the Inflator Defect to NHTSA, and the Automaker Defendants did not launch a comprehensive recall for all Class Vehicles, all of which individually and together deprived Plaintiffs of an opportunity that otherwise could have led them to discover the truth about the Inflator Defect in their

Class Vehicles; and

h.   The Automaker Defendants made, helped to make, or conspired to make incomplete representations about the safety and reliability of the Class Vehicles and their airbags, while purposefully withholding material facts about a known safety defect. Because they volunteered to provide information about the Class Vehicles that they marketed and offered for sale and lease to consumers, the Automaker Defendants had the duty to disclose the whole truth.

2215. In breach of their duties, Defendants failed to disclose the Inflator Defect and that the Class Vehicles' airbags were not safe and reliable to Plaintiffs and Class Members in connection with the sale of the Class Vehicles.

2216. The Inflator Defect within the Class Vehicles is material to the sale of the Class Vehicles because a reasonable person would find it important in purchasing, leasing, or retaining a new or used motor vehicle and because it directly impacts the value of the Class Vehicles purchased or leased by Plaintiffs and Class Members.

2217. Defendants intended for Plaintiffs and Class Members to rely on their omissions and concealment—which they did by purchasing and leasing the Class Vehicles at the prices they paid believing that their vehicles would not have an

Inflator Defect that would affect the quality, reliability, and safety of the Class Vehicles and their airbags.

2218. Plaintiffs' and Class Members' reliance was reasonable because a reasonable consumer would not have expected that the Class Vehicles contained a safety defect that poses such a serious risk. They had no way of learning the facts that Defendants had concealed or failed to disclose. Plaintiffs and Class Members did not, and could not, unravel Defendants' deception on their own.

2219. Defendants actively concealed and suppressed these material facts, in whole or in part, to maintain a market for the Class Vehicles and the Defective Inflators installed in them, to protect profits, and to avoid costly recalls that would expose them to liability for those expenses and harm the commercial reputations of Defendants and their products. They did so at the expense of Plaintiffs and Class Members.

2220. If Defendants had fully and adequately disclosed the Inflator Defect to consumers, Plaintiffs and Class Members would have seen such a disclosure.

2221. Through their omissions and concealment with respect to the Inflator Defect within the Class Vehicles, Defendants intended to induce, and did induce, Plaintiffs and Class Members to either purchase a Class Vehicle that they otherwise would not have purchased, or pay more for a Class Vehicle than they otherwise

would have paid.

2222. Had Plaintiffs and Class Members known of the Inflator Defect within the Class Vehicles, they would not have purchased the Class Vehicles or would have paid less for them.

2223. As a direct and proximate result of Defendants' omissions and concealment, Plaintiffs and other Class Members either overpaid for the Class Vehicles or would not have purchased the Class Vehicles at all if the Inflator Defect had been disclosed to them. Accordingly, Defendants are liable to Plaintiffs and Class Members for their damages in an amount to be proven at trial.

2224. Defendants acted maliciously, oppressively, deliberately, with intent to defraud; in reckless disregard of the Plaintiffs' and Class Members' rights and well-being; and to enrich themselves. Defendants' misconduct warrants an assessment of punitive damages, as permitted by law, in an amount sufficient to deter such conduct in the future, which amount shall be determined according to proof at trial.

### f.    Minnesota Count 6: Unjust Enrichment Against the Automaker Defendants.

2225. Plaintiffs reallege and incorporate by reference all allegations in Volume 1 of the Consolidated Class Action Complaint as though fully set forth herein.

2226. The Minnesota Plaintiffs bring this count under Minnesota law,

575

individually and on behalf of the other members of the Minnesota Subclasses against the Automaker Defendants for their respective Class Vehicles. For the remaining Automaker Defendants, Plaintiffs who purchased or leased their Class Vehicles in states with materially similar laws may represent Subclasses under this count against all other Automaker Defendants.

2227. For purposes of this count, members of the Minnesota Subclass shall be referred to as "Class Members."

2228. When they purchased and leased the Class Vehicles, Plaintiffs and Class Members conferred tangible and material economic benefits upon the Automaker Defendants, who readily accepted and retained these benefits.

2229. Plaintiffs and Class Members would not have purchased or leased their Class Vehicles, or would have paid less for them, had they known of the Inflator Defect at the time of purchase or lease. Therefore, the Automaker Defendants profited from the sale and lease of the Class Vehicles to the detriment and expense of Plaintiffs and Class Members.

2230. The Automaker Defendants appreciated these economic benefits. These benefits were the expected result of the Automaker Defendants acting in their pecuniary interest at the expense of their customers. They knew of these benefits because they were aware of the Inflator Defect, yet they failed to disclose this

knowledge and misled the Plaintiffs and Class Members regarding the nature and quality of the Class Vehicles while profiting from this deception.

2231. It would be unjust, inequitable, and unconscionable for the Automaker Defendants to retain these benefits, including because they were procured as a result of their wrongful conduct alleged above.

2232. Plaintiffs and Class Members are entitled to restitution of the benefits the Automaker Defendants unjustly retained and/or any amounts necessary to return Plaintiffs and Class Members to the position they occupied prior to dealing with those Defendants, with such amounts to be determined at trial.

2233. Plaintiffs plead this claim separately as well as in the alternative to their claims for damages under Fed. R. Civ. P. 8(a)(3), because if the Court dismisses Plaintiffs' claims for damages enters judgment on them in favor of the Automaker Defendants, Plaintiffs will have no adequate legal remedy.

**25.   Mississippi**

    **a.   Mississippi Count 1: Breach of Express Warranty (Miss. Code §§ 75-2-313 and 75-2A-210) Against the Automaker Defendants.**

2234. Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

2235. The Mississippi Plaintiffs bring this count under Mississippi law,

individually and on behalf of the other members of the Mississippi Subclasses against the Automaker Defendants for their respective Class Vehicles. For the remaining Automaker Defendants, Plaintiffs who purchased or leased their Class Vehicles in states with materially similar laws may represent Subclasses under this count against all other Automaker Defendants.

2236. For purposes of this count, members of the Mississippi Subclass shall be referred to as "Class Members."

2237. The Automaker Defendants are and were at all relevant times "merchants" with respect to motor vehicles under Miss. Code § 75-2-104(1) and "sellers" of motor vehicles under § 75-2-103(1)(d).

2238. With respect to leases, the Automaker Defendants are and were at all relevant times "lessors" of motor vehicles under Miss. Code § 75-2A-103(1)(p).

2239. The Class Vehicles are and were at all relevant times "goods" within the meaning of Miss. Code §§ 75-2-105(1) and 75-2A-103(1)(h).

2240. The Automaker Defendants issued an express written warranty for each defective Class Vehicle they sold, including that:

a.      The Class Vehicles would be free of defects in materials and workmanship at the time of sale; and

b.      The Class Vehicles were safe and reliable, and their airbags would

578

function properly in the event of a crash.

2241. The warranties listed above formed the basis of the bargain with regard to Plaintiffs' and Class Members' purchase and lease of the Class Vehicles.

2242. The Automaker Defendants knowingly breached their warranty for the Class Vehicles because:

a.    The airbag inflators have latent defects which have a dangerous propensity to cause the inflators to rupture and eject metal shrapnel, subjecting Plaintiffs and Class Members to the risk of loss and injury; and

b.    The Automaker Defendants denied, concealed, and misrepresented the Inflator Defect, in the process refusing to pay for or provide in a reasonably timely fashion the needed repairs and replacements for Plaintiffs and Class Members.

2243. The Automaker Defendants knew or should have known that the warranties were false and/or misleading. Specifically, the Automaker Defendants were aware of the Inflator Defect in the Class Vehicles, which made the vehicles inherently defective and dangerous at the time that they were sold and leased to Plaintiffs and Class Members.

2244. Plaintiffs and Class Members were exposed to the Automaker

Defendants' misrepresentations, and they had no way of discerning that the Automaker Defendants' representations were false and misleading or otherwise learning the material facts that the Automaker Defendants had concealed or failed to disclose. Accordingly, Plaintiffs and Class Members reasonably relied on the Automaker Defendants' express warranties when purchasing or leasing their Class Vehicles.

2245. Plaintiffs and Class Members timely provided the Automaker Defendants notice of the issues raised in this count and this Complaint and an opportunity to cure, as alleged in the paragraphs addressing Defendants' notice above.

2246. Alternatively, Plaintiffs and Class Members were excused from providing the Automaker Defendants with notice and an opportunity to cure the breach, because it would have been futile. As alleged above, the Automaker Defendants knew about the Defective Inflators for years; however, to date, the Automaker Defendants have not instituted a recall or any other repair program with respect to all of the Class Vehicles, or even acknowledged that the Inflator Defect exists in all of the Class Vehicles. Therefore, they have refused to recall or repair defective vehicles. Moreover, to the extent the Automaker Defendants have issued recalls, those recalls are inadequate because, *inter alia*: (a) they are belated because

the Automaker Defendants knew about the Defective Inflators for years and did nothing to recall or remedy the serious safety defect; (b) with tens of millions of vehicles impacted in existing and potential future recalls, as a result of the Automaker Defendants' concealment of the Inflator Defect, the recalls cannot be implemented effectively due to supply constraints and resulting delays; (c) the recalls are incomplete, and apply to only a subset of the Class Vehicles.

2247. As a direct and proximate result of the Automaker Defendants' breach of their express warranties, the Class Vehicles were and are defective and the Inflator Defect was not remedied. Therefore, Plaintiff and Class Members have been damaged, in an amount to be proven at trial, through their overpayment at the time of purchase or lease for the Class Vehicles with an undisclosed safety defect that would not be remedied.

> **b.    Mississippi Count 2: Breach of Implied Warranty of Merchantability (Miss. Code §§ 75-2-314 and 75-2A-212) Against the Automaker Defendants.**

2248. Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

2249. The Mississippi Plaintiffs bring this count under Mississippi law, individually and on behalf of the other members of the Mississippi Subclasses against the Automaker Defendants for their respective Class Vehicles. For the

remaining Automaker Defendants, Plaintiffs who purchased or leased their Class Vehicles in states with materially similar laws may represent Subclasses under this count against all other Automaker Defendants.

2250. For purposes of this count, members of the Mississippi Subclass shall be referred to as "Class Members."

2251. The Automaker Defendants were at all relevant times "merchants" with respect to motor vehicles under Miss. Code § 75-2-104(1) and "sellers" of motor vehicles under § 75-2-103(1)(d).

2252. With respect to leases, the Automaker Defendants are and were at all relevant times "lessors" of motor vehicles under Miss. Code § 75-2A-103(1)(p).

2253. The Class Vehicles are and were at all relevant times "goods" within the meaning of Miss. Code §§ 75-2-105(1) and 75-2A-103(1)(h).

2254. A warranty that the Class Vehicles were in merchantable condition and fit for the ordinary purpose for which vehicles are used is implied by law pursuant to Miss. Code §§ 75-2- 314 and 75-2A-212.

2255. The Class Vehicles are not merchantable, and as such the Automaker Defendants breached their implied warranties, because at the time of sale and all times thereafter:

a.    The Class Vehicles would not pass without objection in the automotive

trade given the Inflator Defect;

b.      The Inflator Defect renders the Class Vehicles unsafe to drive and unfit for ordinary purposes;

c.      The Class Vehicles and the airbags therein were inadequately labeled as safe and reliable, and the labeling failed to disclose the Inflator Defect; and

d.      The Class Vehicles do not conform to their labeling, which represents that the vehicles are safe and suitable for their intended use.

2256. Plaintiffs and Class Members timely provided the Automaker Defendants notice of the issues raised in this count and this Complaint and an opportunity to cure, as alleged in the paragraphs addressing Defendants' notice above.

2257. Alternatively, Plaintiffs and Class Members were excused from providing the Automaker Defendants with notice and an opportunity to cure the breach because it would have been futile. As alleged above, the Automaker Defendants have long known that the Class Vehicles contained the Defective Inflators, and that the Defective Inflators have caused airbags to malfunction in crashes involving the Class Vehicles; however, to date, the Automaker Defendants have not instituted a recall or any other repair program with respect to all of the Class

Vehicles, or even acknowledged that the Inflator Defect exists in all of those Class Vehicles. Moreover, to the extent the Automaker Defendants have issued recalls, those recalls are inadequate because, inter alia: (a) they are belated because the Automaker Defendants knew about the Defective Inflators for years and did nothing to recall or remedy the serious safety defect; (b) with tens of millions of vehicles impacted in existing and potential future recalls, as a result of the Automaker Defendants' concealment of the Inflator Defect, the recalls cannot be implemented effectively due to supply constraints and resulting delays; (c) the recalls are incomplete, and apply to only a subset of the Class Vehicles.

2258. Plaintiffs, individually and on behalf of Class Members, seek all available monetary damages (including actual, compensatory, and punitive damages), injunctive and equitable relief, and attorneys' fees and costs.

> ### c. Mississippi Count 3: Violations of Mississippi's Consumer Protection Act (Miss. Code. Ann. § 75-24-1, *et seq.*) Against All Defendants.[27]

2259. Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

2260. The Mississippi Plaintiffs bring this count under Mississippi law,

---

[27] Plaintiffs bring this count against ARC and the Airbag Module Defendants based on their omissions and concealment of material facts only.

individually and on behalf of the other members of the Mississippi Subclasses against the Automaker Defendants and Airbag Module Defendants for their respective Class Vehicles, and ARC. For the remaining Defendants, Plaintiffs who purchased or leased their Class Vehicles in states with materially similar laws may represent Subclasses under this count against all other Defendants and ARC.

2261. For purposes of this count, members of the Mississippi Subclass shall be referred to as "Class Members."

2262. For purposes of this count, ARC, the Automaker Defendants, and the Airbag Module Defendants shall be referred to as "Defendants."

2263. Defendants, Plaintiffs and Class Members are "persons" within the meaning of Miss. Code Ann. § 75-24-3(a).

2264. Defendants are engaged in "trade" and "commerce" within the meaning of Miss. Code Ann. § 75-24-3(b).

2265. The Mississippi Consumer Protection Act ("Miss. CPA") states that "[u]nfair methods of competition affecting commerce and unfair or deceptive trade practices in or affecting commerce are prohibited." Miss. Code Ann. § 75-24-5(1).

2266. Defendants, through their agents, employees, and/or subsidiaries, violated the Miss. CPA by knowingly and intentionally misrepresenting, omitting, concealing, and/or failing to disclose material facts regarding the reliability, safety,

and performance of the Class Vehicles and the Defective Inflators, as detailed above.

2267. Defendants had an ongoing duty to Plaintiffs and Class Members to refrain from unfair or deceptive practices under the Miss. CPA in the course of their business. Specifically, Defendants owed Plaintiffs and Class Members a duty to disclose all the material facts concerning the Defective Inflators in the Class Vehicles because:

a.   Given ARC's design, development, testing and manufacture of the Defective Inflators and its experience and knowledge as experts and long-time veterans of the automotive industry, it, along with the Automaker Defendants and the Airbag Module Defendants, possessed exclusive access to and was in a superior position to know the true facts about the Defective Inflators;

b.   Given the Airbag Module Defendants' role in the design, manufacture, and testing of the airbag modules with the Defective Inflators installed in them, and their experience and knowledge as experts and long-time veterans of the automotive industry, they, along with ARC and the Automaker Defendants, possessed exclusive access to and were in a superior position to know the true facts about the Defective Inflators;

c.   Given the Automaker Defendants' role in the design, manufacture,

586

testing, and sale of Class Vehicles and Defective Inflators, and their experience and knowledge as experts and long-time veterans of the automotive industry, they, along with ARC and the Airbag Module Defendants, possessed exclusive access to and were in a superior position to know the true facts about the Defective Inflators;

d.    Given the Inflator Defect's hidden and technical nature, Plaintiffs and Class Members lack the sophisticated expertise in vehicle components and technology that would be necessary to discover the Inflator Defect on their own;

e.    Defendants knew that the Inflator Defect gave rise to serious safety concerns for the consumers who purchased and leased the Class Vehicles;

f.    The Inflator Defect poses a severe risk of harm in that, among other things, the metal shrapnel can puncture and stab the occupants, causing severe and potentially fatal injuries;

g.    Defendants knew about and investigated the Inflator Defect, but then did not notify consumers about it or disclose the Inflator Defect to NHTSA, and the Automaker Defendants did not launch a comprehensive recall for all Class Vehicles, all of which individually

and together deprived Plaintiffs of an opportunity that otherwise could have led them to discover the truth about the Inflator Defect in their Class Vehicles; and

h.    The Automaker Defendants made, helped to make, or conspired to make incomplete representations about the safety and reliability of the Class Vehicles and their airbags, while purposefully withholding material facts about a known safety defect. Because they volunteered to provide information about the Class Vehicles that they marketed and offered for sale and lease to consumers, the Automaker Defendants had the duty to disclose the whole truth.

2268. By misrepresenting the Class Vehicles as safe and reliable and the airbags installed in them as properly functioning and free from defects, and/or by failing to disclose and actively concealing the dangers and risk posed by the Inflator Defect to both consumers and NHTSA, Defendants engaged in one or more of the following unfair or deceptive business practices prohibited by Miss. Code Ann. § 75-24-5:

a.    Misrepresenting the approval or certification of the Class Vehicles and Defective Inflators installed in them;

b.    Representing that the Class Vehicles and/or the Defective Inflators had

a characteristic that they did not actually have—*i.e.*, that the vehicles were safe and suitable for use on the roadway, when, in fact, they were not because their airbag inflators were defectively designed such that they had an unreasonably dangerous propensity to rupture, causing severe and fatal injuries;

c.      Representing that the Class Vehicles and the Defective Inflators installed in them were of a particular quality, grade, or standard when, in fact, they were not of that quality, grade, or standard; and

d.      Failing to market, distribute, sell, and lease the Class Vehicles equipped with Defective Inflators in accordance with Defendants' previous representations—i.e., that the Class Vehicles were safe and suitable for their intended use, when, in fact, they were not because of the Inflator Defect.

Miss. Code Ann. § 75-24-5(2)(b), (e), (g), and (i).

2269. Defendants' unfair or deceptive acts or practices, including their misrepresentations, concealments, omissions, and/or suppressions of material facts, were designed to mislead and had a tendency or capacity to mislead and create a false impression in consumers that the Class Vehicles had properly-functioning and reliable airbags. Indeed, those misrepresentations, concealments, omissions, and

589

suppressions of material facts did in fact deceive reasonable consumers, including Plaintiffs and Class Members, about the true safety and reliability of the Class Vehicles and/or the Defective Inflators installed in them, the quality of the Class Vehicles, and the true value of the Class Vehicles.

2270. Defendants intended for Plaintiffs and Class Members to rely on their misrepresentations, omissions, and concealment—which they did by purchasing and leasing the Class Vehicles at the prices they paid believing that their vehicles would not have an Inflator Defect that would affect the quality, reliability, and safety of the Class Vehicles and their airbags.

2271. Defendants'    misrepresentations,    concealments,    omissions,    and suppressions of material facts regarding the Inflator Defect and true characteristics of the Class Vehicles were material to the decisions of Plaintiffs and Class Members to purchase and lease those vehicles, as Defendants intended. Plaintiffs and Class Members were exposed to those misrepresentations, concealments, omissions, and suppressions of material facts, and relied on Defendants' misrepresentations that the Class Vehicles and their airbags were safe and reliable in deciding to purchase and lease the Class Vehicles.

2272. Plaintiffs' and Class Members' reliance was reasonable, as they had no way of discerning that Defendants' representations were false and misleading, or

otherwise learning the facts that Defendants had concealed or failed to disclose. Plaintiffs and Class Members did not, and could not, unravel Defendants' deception on their own.

2273. Had they known the truth about the Inflator Defect, Plaintiffs and Class Members would not have purchased or leased the Class Vehicles, or would have paid significantly less for them.

2274. As a direct and proximate result of Defendants' deceptive practices, Plaintiffs and Class Members have sustained economic injury and loss—either by purchasing a vehicle they otherwise would not have purchased or paying more than they otherwise would have as a result of Defendants' actions and omissions alleged above—that first occurred at the time each Class Vehicle was purchased or leased.

2275. Defendants' violations present a continuing risk to Plaintiffs and Class Members, as well as to the general public, because the Class Vehicles remain unsafe due to the Defective Inflators therein. Defendants' unlawful acts and practices complained of herein affect the public interest.

2276. Plaintiffs and Class Members timely provided Defendants notice of the issues raised in this count and this Complaint and an opportunity to cure, as alleged in the paragraphs addressing Defendants' notice above. Because Defendants failed to adequately remedy their unlawful conduct, Plaintiffs seek all damages and relief

to which Plaintiffs and Class Members are entitled.

2277. Alternatively, Plaintiffs and Class Members were excused from providing the Defendants with notice and an opportunity to cure the Inflator Defect, because it would have been futile. As alleged above, the Defendants knew about the Defective Inflators for years; however, to date, the Automaker Defendants have not instituted a recall or any other repair program with respect to all of the Class Vehicles, or even acknowledged that the Inflator Defect exists in all of the Class Vehicles. Therefore, they have refused to recall or repair defective vehicles. Moreover, to the extent the Automaker Defendants have issued recalls, those recalls are inadequate because, *inter alia*: (a) they are belated because the Automaker Defendants knew about the Defective Inflators for years and did nothing to recall or remedy the serious safety defect; (b) with tens of millions of vehicles impacted in existing and potential future recalls, as a result of the Automaker Defendants' concealment of the Inflator Defect, the recalls cannot be implemented effectively due to supply constraints and resulting delays; (c) the recalls are incomplete, and apply to only a subset of the Class Vehicles.

2278. Pursuant to Miss Code Ann. §§ 75-24-9, -11, and -15, Plaintiffs and Class Members seek an order enjoining Defendants' unfair and/or deceptive acts or practices, any such orders or judgments as may be necessary to restore to them any

money acquired by unfair competition, including restitution and/or restitutionary disgorgement, and any other just and proper relief available under the Mississippi CPA.

        **d.**       **Mississippi Count 4: Fraud by Omission and Concealment Against All Defendants.**

2279. Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

2280. The Mississippi Plaintiffs bring this count under Mississippi law, individually and on behalf of the other members of the Mississippi Subclasses against the Automaker Defendants and Airbag Module Defendants for their respective Class Vehicles, and ARC. For the remaining Defendants, Plaintiffs who purchased or leased their Class Vehicles in states with materially similar laws may represent Subclasses under this count against all other Defendants and ARC.

2281. For purposes of this count, members of the Mississippi Subclass shall be referred to as "Class Members."

2282. For purposes of this count, ARC, the Automaker Defendants, and the Airbag Module Defendants shall be referred to as "Defendants."

2283. Defendants are liable for both fraudulent concealment and non-disclosure. *See, e.g.*, Restatement (Second) of Torts §§ 550-51 (1977).

2284. Defendants owed Plaintiffs and Class Members a duty to disclose all

the material facts concerning the Defective Inflators in the Class Vehicles because:

    a.    Given the Automaker Defendants' role in the design, manufacture, testing, and sale of Class Vehicles and Defective Inflators, and their experience and knowledge as experts and long-time veterans of the automotive industry, they, along with ARC and the Airbag Module Defendants, possessed exclusive access to and were in a superior position to know the true facts about the Defective Inflators;

    b.    Given ARC's design, development, testing and manufacture of the Defective Inflators and its experience and knowledge as experts and long-time veterans of the automotive industry, it, along with the Automaker Defendants and the Airbag Module Defendants, possessed exclusive access to and was in a superior position to know the true facts about the Defective Inflators;

    c.    Given the Airbag Module Defendants' role in the design, manufacture, and testing of the airbag modules with the Defective Inflators installed in them, and their experience and knowledge as experts and long-time veterans of the automotive industry, they, along with ARC and the Automaker Defendants, possessed exclusive access to and were in a

594

superior position to know the true facts about the Defective Inflators;

d.      Given the Inflator Defect's hidden and technical nature, Plaintiffs and Class Members lack the sophisticated expertise in vehicle components and technology that would be necessary to discover the Inflator Defect on their own;

e.      Defendants knew that the Inflator Defect gave rise to serious safety concerns for the consumers who purchased and leased the Class Vehicles;

f.      The Inflator Defect poses a severe risk of harm in that, among other things, the metal shrapnel can puncture and stab the occupants, causing severe and potentially fatal injuries;

g.      Defendants knew about and investigated the Inflator Defect, but then did not notify consumers about it, disclose the Inflator Defect to NHTSA, and the Automaker Defendants did not launch a comprehensive recall for all Class Vehicles, all of which individually and together deprived Plaintiffs of an opportunity that otherwise could have led them to discover the truth about the Inflator Defect in their Class Vehicles; and

h.      The Automaker Defendants made, helped to make, or conspired to

595

make incomplete representations about the safety and reliability of the Class Vehicles and their airbags, while purposefully withholding material facts about a known safety defect. Because they volunteered to provide information about the Class Vehicles that they marketed and offered for sale and lease to consumers, the Automaker Defendants had the duty to disclose the whole truth.

2285. In breach of their duties, Defendants failed to disclose the Inflator Defect and that the Class Vehicles' airbags were not safe and reliable to Plaintiffs and Class Members in connection with the sale of the Class Vehicles.

2286. The Inflator Defect within the Class Vehicles is material to the sale of the Class Vehicles because a reasonable person would find it important in purchasing, leasing, or retaining a new or used motor vehicle and because it directly impacts the value of the Class Vehicles purchased or leased by Plaintiffs and Class Members.

2287. Defendants intended for Plaintiffs and Class Members to rely on their omissions and concealment—which they did by purchasing and leasing the Class Vehicles at the prices they paid believing that their vehicles would not have an Inflator Defect that would affect the quality, reliability, and safety of the Class Vehicles and their airbags.

596

2288. Plaintiffs' and Class Members' reliance was reasonable because a reasonable consumer would not have expected that the Class Vehicles contained a safety defect that poses such a serious risk. They had no way of learning the facts that Defendants had concealed or failed to disclose. Plaintiffs and Class Members did not, and could not, unravel Defendants' deception on their own.

2289. Defendants actively concealed and suppressed these material facts, in whole or in part, to maintain a market for the Class Vehicles and the Defective Inflators installed in them, to protect profits, and to avoid costly recalls that would expose them to liability for those expenses and harm the commercial reputations of Defendants and their products. They did so at the expense of Plaintiffs and Class Members.

2290. If Defendants had fully and adequately disclosed the Inflator Defect to consumers, Plaintiffs and Class Members would have seen such a disclosure.

2291. Through their omissions and concealment with respect to the Inflator Defect within the Class Vehicles, Defendants intended to induce, and did induce, Plaintiffs and Class Members to either purchase a Class Vehicle that they otherwise would not have purchased, or pay more for a Class Vehicle than they otherwise would have paid.

2292. Had Plaintiffs and Class Members known of the Inflator Defect within

the Class Vehicles, they would not have purchased the Class Vehicles or would have paid less for them.

2293. As a direct and proximate result of Defendants' omissions and concealment, Plaintiffs and other Class Members either overpaid for the Class Vehicles or would not have purchased the Class Vehicles at all if the Inflator Defect had been disclosed to them. Accordingly, Defendants are liable to Plaintiffs and Class Members for their damages in an amount to be proven at trial.

2294. Defendants acted maliciously, oppressively, deliberately, with intent to defraud; in reckless disregard of the Plaintiffs' and Class Members' rights and well-being; and to enrich themselves. Defendants' misconduct warrants an assessment of punitive damages, as permitted by law, in an amount sufficient to deter such conduct in the future, which amount shall be determined according to proof at trial.

### e.   Mississippi Count 5: Unjust Enrichment Against the Automaker Defendants.

2295. Plaintiffs reallege and incorporate by reference all allegations in Volume 1 of the Consolidated Class Action Complaint as though fully set forth herein.

2296. The Mississippi Plaintiffs bring this count under Mississippi law, individually and on behalf of the other members of the Mississippi Subclasses against the Automaker Defendants for their respective Class Vehicles. For the

remaining Automaker Defendants, Plaintiffs who purchased or leased their Class Vehicles in states with materially similar laws may represent Subclasses under this count against all other Automaker Defendants.

2297. For purposes of this count, members of the Mississippi Subclass shall be referred to as "Class Members."

2298. When they purchased and leased the Class Vehicles, Plaintiffs and Class Members conferred tangible and material economic benefits upon the Automaker Defendants, who readily accepted and retained these benefits.

2299. Plaintiffs and Class Members would not have purchased or leased their Class Vehicles, or would have paid less for them, had they known of the Inflator Defect at the time of purchase or lease. Therefore, the Automaker Defendants profited from the sale and lease of the Class Vehicles to the detriment and expense of Plaintiffs and Class Members.

2300. The Automaker Defendants appreciated these economic benefits. These benefits were the expected result of the Automaker Defendants acting in their pecuniary interest at the expense of their customers. They knew of these benefits because they were aware of the Inflator Defect, yet they failed to disclose this knowledge and misled the Plaintiffs and Class Members regarding the nature and quality of the Class Vehicles while profiting from this deception.

2301. It would be unjust, inequitable, and unconscionable for the Automaker Defendants to retain these benefits, including because they were procured as a result of their wrongful conduct alleged above.

2302. Plaintiffs and Class Members are entitled to restitution of the benefits the Automaker Defendants unjustly retained and/or any amounts necessary to return Plaintiffs and Class Members to the position they occupied prior to dealing with those Defendants, with such amounts to be determined at trial.

2303. Plaintiffs plead this claim separately as well as in the alternative to their claims for damages under Fed. R. Civ. P. 8(a)(3), because if the Court dismisses Plaintiffs' claims for damages enters judgment on them in favor of the Automaker Defendants, Plaintiffs will have no adequate legal remedy.

### 26.   Missouri

#### a.   Missouri Count 1: Breach of Express Warranty (Mo. Rev. Stat. §§ 400.2-313 and 400.2A-210) Against the Automaker Defendants.

2304. Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

2305. The Missouri Plaintiff brings this count under Missouri law, individually and on behalf of the other members of the Missouri Subclasses against the Automaker Defendants for his or her respective Class Vehicle(s). For the

remaining Automaker Defendants, Plaintiffs who purchased or leased their Class Vehicles in states with materially similar laws may represent Subclasses under this count against all other Automaker Defendants.

2306. For purposes of this count, members of the Missouri Subclass shall be referred to as "Class Members."

2307. The Automaker Defendants are and were at all relevant times "merchants" with respect to motor vehicles under Mo. Rev. Stat. §§ 400.2-104(1) and 400.2A- 103(3), and "sellers" of motor vehicles under § 400.2-103(1)(d).

2308. With respect to leases, the Automaker Defendants are and were at all relevant times "lessors" of motor vehicles under Mo. Rev. Stat. § 400.2A-103(1)(p).

2309. All Class Members who purchased Class Vehicles in Missouri are "buyers" within the meaning of Mo. Rev. Stat. § 400.2-103(1)(a).

2310. All Class Members who leased Class Vehicles in Missouri are "lessees" within the meaning of Mo. Rev. Stat. § 400.2A-103(1)(n).

2311. The Class Vehicles are and were at all relevant times "goods" within the meaning of Mo. Rev. Stat. §§ 400.2-105(1) and 400.2A-103(1)(h).

2312. The Automaker Defendants issued an express written warranty for each defective Class Vehicle they sold, including that:

    a.    The Class Vehicles would be free of defects in materials and

workmanship at the time of sale; and

b. The Class Vehicles were safe and reliable, and their airbags would function properly in the event of a crash.

2313. The warranties listed above formed the basis of the bargain with regard to Plaintiffs' and Class Members' purchase and lease of the Class Vehicles.

2314. The Automaker Defendants knowingly breached their warranty for the Class Vehicles because:

a. The airbag inflators have latent defects which have a dangerous propensity to cause the inflators to rupture and eject metal shrapnel, subjecting Plaintiffs and Class Members to the risk of loss and injury; and

b. The Automaker Defendants denied, concealed, and misrepresented the Inflator Defect, in the process refusing to pay for or provide in a reasonably timely fashion the needed repairs and replacements for Plaintiffs and Class Members.

2315. The Automaker Defendants knew or should have known that the warranties were false and/or misleading. Specifically, the Automaker Defendants were aware of the Inflator Defect in the Class Vehicles, which made the vehicles inherently defective and dangerous at the time that they were sold and leased to

Plaintiffs and Class Members.

2316. Plaintiffs and Class Members were exposed to the Automaker Defendants' misrepresentations, and they had no way of discerning that the Automaker Defendants' representations were false and misleading or otherwise learning the material facts that the Automaker Defendants had concealed or failed to disclose. Accordingly, Plaintiffs and Class Members reasonably relied on the Automaker Defendants' express warranties when purchasing or leasing their Class Vehicles.

2317. Plaintiffs and Class Members timely provided the Automaker Defendants notice of the issues raised in this count and this Complaint and an opportunity to cure, as alleged in the paragraphs addressing Defendants' notice above.

2318. Alternatively, Plaintiffs and Class Members were excused from providing the Automaker Defendants with notice and an opportunity to cure the breach, because it would have been futile. As alleged above, the Automaker Defendants knew about the Defective Inflators for years; however, to date, the Automaker Defendants have not instituted a recall or any other repair program with respect to all of the Class Vehicles, or even acknowledged that the Inflator Defect exists in all of the Class Vehicles. Therefore, they have refused to recall or repair

defective vehicles. Moreover, to the extent the Automaker Defendants have issued recalls, those recalls are inadequate because, *inter alia*: (a) they are belated because the Automaker Defendants knew about the Defective Inflators for years and did nothing to recall or remedy the serious safety defect; (b) with tens of millions of vehicles impacted in existing and potential future recalls, as a result of the Automaker Defendants' concealment of the Inflator Defect, the recalls cannot be implemented effectively due to supply constraints and resulting delays; (c) the recalls are incomplete, and apply to only a subset of the Class Vehicles.

2319. As a direct and proximate result of the Automaker Defendants' breach of their express warranties, the Class Vehicles were and are defective and the Inflator Defect was not remedied. Therefore, Plaintiff and Class Members have been damaged, in an amount to be proven at trial, through their overpayment at the time of purchase or lease for the Class Vehicles with an undisclosed safety defect that would not be remedied.

    **b.**  **Missouri Count 2: Breach of Implied Warranty of Merchantability (Mo. Rev. Stat. §§ 400.2-314 and 400.2A-212) Against the Automaker Defendants.**

2320. Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

2321. The Missouri Plaintiff brings this count under Missouri law,

individually and on behalf of the other members of the Missouri Subclasses against the Automaker Defendants for his or her respective Class Vehicle(s). For the remaining Automaker Defendants, Plaintiffs who purchased or leased their Class Vehicles in states with materially similar laws may represent Subclasses under this count against all other Automaker Defendants.

2322.  For purposes of this count, members of the Missouri Subclass shall be referred to as "Class Members."

2323.  A warranty that the Class Vehicles were in merchantable condition and fit for the ordinary purpose for which such goods are used is implied by law pursuant to Mo. Rev. Stat. §§ 400.2-314 and 400.2A-212.

2324.  The Automaker Defendants are and were at all relevant times "merchants" with respect to motor vehicles under Mo. Rev. Stat. §§ 400.2-104(1) and 400.2A-103(3), and "sellers" of motor vehicles under § 400.2-103(1)(d).

2325.  With respect to leases, the Automaker Defendants are and were at all relevant times "lessors" of motor vehicles under Mo. Rev. Stat. § 400.2A-103(1)(p).

2326.  Class Members who purchased Class Vehicles in Missouri are "buyers" within the meaning of Mo. Rev. Stat. § 400.2-103(1)(a).

2327.  Class Members who leased Class Vehicles in Missouri are "lessees" within the meaning of Mo. Rev. Stat. § 400.2A-103(1)(n).

2328. The Class Vehicles are and were at all relevant times "goods" within the meaning of Mo. Rev. Stat. §§ 400.2-105(1) and 400.2A-103(1)(h).

2329. The Class Vehicles are not merchantable, and as such the Automaker Defendants breached their implied warranties, because at the time of sale and all times thereafter:

a.      The Class Vehicles would not pass without objection in the automotive trade given the Inflator Defect;

b.      The Inflator Defect renders the Class Vehicles unsafe to drive and unfit for ordinary purposes;

c.      The Class Vehicles and the airbags therein were inadequately labeled as safe and reliable, and the labeling failed to disclose the Inflator Defect; and

d.      The Class Vehicles do not conform to their labeling, which represents that the vehicles are safe and suitable for their intended use.

2330. Plaintiffs and Class Members timely provided the Automaker Defendants notice of the issues raised in this count and this Complaint and an opportunity to cure, as alleged in the paragraphs addressing Defendants' notice above.

2331. Alternatively, Plaintiffs and Class Members were excused from

providing the Automaker Defendants with notice and an opportunity to cure the breach because it would have been futile. As alleged above, the Automaker Defendants have long known that the Class Vehicles contained the Defective Inflators, and that the Defective Inflators have caused airbags to malfunction in crashes involving the Class Vehicles; however, to date, the Automaker Defendants have not instituted a recall or any other repair program with respect to all of the Class Vehicles, or even acknowledged that the Inflator Defect exists in all of those Class Vehicles. Moreover, to the extent the Automaker Defendants have issued recalls, those recalls are inadequate because, inter alia: (a) they are belated because the Automaker Defendants knew about the Defective Inflators for years and did nothing to recall or remedy the serious safety defect; (b) with tens of millions of vehicles impacted in existing and potential future recalls, as a result of the Automaker Defendants' concealment of the Inflator Defect, the recalls cannot be implemented effectively due to supply constraints and resulting delays; (c) the recalls are incomplete, and apply to only a subset of the Class Vehicles.

2332. Plaintiffs, individually and on behalf of Class Members, seek all available monetary damages (including actual, compensatory, and punitive damages), injunctive and equitable relief, and attorneys' fees and costs.

c.     **Missouri Count 3: Violations of the Missouri Merchandising Practices Act (Mo. Rev. Stat. § 407.010, *et seq*.) Against All Defendants.[28]**

2333. Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

2334. The Missouri Plaintiff brings this count under Missouri law, individually and on behalf of the other members of the Missouri Subclasses against the Automaker Defendants and Airbag Module Defendants for his or her respective Class Vehicle(s), and ARC. For the remaining Defendants, Plaintiffs who purchased or leased their Class Vehicles in states with materially similar laws may represent Subclasses under this count against all other Defendants and ARC.

2335. For purposes of this count, members of the Missouri Subclass shall be referred to as "Class Members."

2336. For purposes of this count, ARC, the Automaker Defendants, and the Airbag Module Defendants shall be referred to as "Defendants."

2337. Defendants, Plaintiffs, and Class Members are "persons" within the meaning of Mo. Rev. Stat. § 407.010(5).

2338. Defendants were and are engaged in "trade or commerce" within the

---

[28] Plaintiffs bring this count against ARC and the Airbag Module Defendants based on their omissions and concealment of material facts only.

meaning of Mo. Rev. Stat. § 407.010(7).

2339. The Class Vehicles are "merchandise" within the meaning of Mo. Rev. Sta. § 407.010(4). The sale or lease of the Class Vehicles is a "sale" within the meaning of Mo. Rev. Stat. § 407.010(6).

2340. The Missouri Merchandising Practices Act ("Missouri MPA") states that "[t]he act, use or employment by any person of any deception, fraud, false pretense, false promise, misrepresentation, unfair practice or the concealment, suppression, or omission of any material fact in connection with the sale or advertisement of any merchandise in trade or commerce . . . is declared to be an unlawful practice." Mo. Rev. Stat. § 407.020(1).

2341. Defendants, through their agents, employees, and/or subsidiaries, violated the Missouri MMPA by knowingly and intentionally misrepresenting, omitting, concealing, and/or failing to disclose material facts regarding the reliability, safety, and performance of the Class Vehicles and the Defective Inflators, as detailed above.

2342. Defendants had an ongoing duty to Plaintiffs and Class Members to refrain from unfair or deceptive practices under the Missouri MMPA in the course of their business. Specifically, Defendants owed Plaintiffs and Class Members a duty to disclose all the material facts concerning the Defective Inflators in the Class

Vehicles because:

    a.    Given ARC's design, development, testing and manufacture of the Defective Inflators and its experience and knowledge as experts and long-time veterans of the automotive industry, it, along with the Automaker Defendants and the Airbag Module Defendants, possessed exclusive access to and was in a superior position to know the true facts about the Defective Inflators;

    b.    Given the Airbag Module Defendants' role in the design, manufacture, and testing of the airbag modules with the Defective Inflators installed in them, and their experience and knowledge as experts and long-time veterans of the automotive industry, they, along with ARC and the Automaker Defendants, possessed exclusive access to and were in a superior position to know the true facts about the Defective Inflators;

    c.    Given the Automaker Defendants' role in the design, manufacture, testing, and sale of Class Vehicles and Defective Inflators, and their experience and knowledge as experts and long-time veterans of the automotive industry, they, along with ARC and the Airbag Module Defendants, possessed exclusive access to and were in a superior position to know the true facts about the Defective Inflators;

610

d.     Given the Inflator Defect's hidden and technical nature, Plaintiffs and Class Members lack the sophisticated expertise in vehicle components and technology that would be necessary to discover the Inflator Defect on their own;

e.     Defendants knew that the Inflator Defect gave rise to serious safety concerns for the consumers who purchased and leased the Class Vehicles;

f.     The Inflator Defect poses a severe risk of harm in that, among other things, the metal shrapnel can puncture and stab the occupants, causing severe and potentially fatal injuries;

g.     Defendants knew about and investigated the Inflator Defect, but then did not notify consumers about it or disclose the Inflator Defect to NHTSA, and the Automaker Defendants did not launch a comprehensive recall for all Class Vehicles, all of which individually and together deprived Plaintiffs of an opportunity that otherwise could have led them to discover the truth about the Inflator Defect in their Class Vehicles; and

h.     The Automaker Defendants made, helped to make, or conspired to make incomplete representations about the safety and reliability of the

611

Class Vehicles and their airbags, while purposefully withholding material facts about a known safety defect. Because they volunteered to provide information about the Class Vehicles that they marketed and offered for sale and lease to consumers, the Automaker Defendants had the duty to disclose the whole truth.

2343. By misrepresenting the Class Vehicles as safe and reliable and the airbags installed in them as properly-functioning and free from defects, and/or by failing to disclose and actively concealing the dangers and risk posed by the Inflator Defect to both consumers and NHTSA, Defendants engaged in one or more of the following unfair or deceptive business practices prohibited by Mo. Rev. Stat. § 407.020(1): using or employing deception, fraud, false pretense, false promise or misrepresentation, unfair practice or the concealment, suppression or omission of a material fact with intent that others rely upon such concealment, suppression or omission, in connection with the sale or advertisement of the Class Vehicles in trade or commerce.

2344. Defendants' unfair or deceptive acts or practices, including their misrepresentations, concealments, omissions, and/or suppressions of material facts, were designed to mislead and had a tendency or capacity to mislead and create a false impression in consumers that the Class Vehicles had properly-functioning and

reliable airbags. Indeed, those misrepresentations, concealments, omissions, and suppressions of material facts did in fact deceive reasonable consumers, including Plaintiffs and Class Members, about the true safety and reliability of the Class Vehicles and/or the Defective Inflators installed in them, the quality of the Class Vehicles, and the true value of the Class Vehicles.

2345. Defendants intended for Plaintiffs and Class Members to rely on their misrepresentations, omissions, and concealment—which they did by purchasing and leasing the Class Vehicles at the prices they paid believing that their vehicles would not have an Inflator Defect that would affect the quality, reliability, and safety of the Class Vehicles and their airbags.

2346. Defendants' misrepresentations, concealments, omissions, and suppressions of material facts regarding the Inflator Defect and true characteristics of the Class Vehicles were material to the decisions of Plaintiffs and Class Members to purchase and lease those vehicles, as Defendants intended. Plaintiffs and Class Members were exposed to those misrepresentations, concealments, omissions, and suppressions of material facts, and relied on Defendants' misrepresentations that the Class Vehicles and their airbags were safe and reliable in deciding to purchase and lease the Class Vehicles.

2347. Plaintiffs' and Class Members' reliance was reasonable, as they had no

way of discerning that Defendants' representations were false and misleading, or otherwise learning the facts that Defendants had concealed or failed to disclose. Plaintiffs and Class Members did not, and could not, unravel Defendants' deception on their own.

2348. Had they known the truth about the Inflator Defect, Plaintiffs and Class Members would not have purchased or leased the Class Vehicles, or would have paid significantly less for them.

2349. As a direct and proximate result of Defendants' deceptive practices, Plaintiffs and Class Members have sustained economic injury and loss—either by purchasing a vehicle they otherwise would not have purchased or paying more than they otherwise would have as a result of Defendants' actions and omissions alleged above—that first occurred at the time each Class Vehicle was purchased or leased.

2350. Defendants' violations present a continuing risk to Plaintiffs and Class Members, as well as to the general public, because the Class Vehicles remain unsafe due to the Defective Inflators therein. Defendants' unlawful acts and practices complained of herein affect the public interest.

2351. Pursuant to Mo. Rev. Stat. § 407.025, Plaintiffs and Class Members seek an order enjoining Defendants' unfair and/or deceptive acts or practices, any such orders or judgments as may be necessary to restore to them any money acquired

by unfair competition, including restitution and/or restitutionary disgorgement, and any other just and proper relief available under the Missouri MMPA.

### d. Missouri Count 4: Fraud by Omission and Concealment Against All Defendants.

2352. Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

2353. The Missouri Plaintiff brings this count under Missouri law, individually and on behalf of the other members of the Missouri Subclasses against the Automaker Defendants and Airbag Module Defendants for his or her respective Class Vehicle(s), and ARC. For the remaining Defendants, Plaintiffs who purchased or leased their Class Vehicles in states with materially similar laws may represent Subclasses under this count against all other Defendants and ARC.

2354. For purposes of this count, members of the Missouri Subclass shall be referred to as "Class Members."

2355. For purposes of this count, ARC, the Automaker Defendants, and the Airbag Module Defendants shall be referred to as "Defendants."

2356. Defendants are liable for both fraudulent concealment and non-disclosure. *See, e.g.*, Restatement (Second) of Torts §§ 550-51 (1977).

2357. Defendants owed Plaintiffs and Class Members a duty to disclose all the material facts concerning the Defective Inflators in the Class Vehicles because:

a.  Given the Automaker Defendants' role in the design, manufacture, testing, and sale of Class Vehicles and Defective Inflators, and their experience and knowledge as experts and long-time veterans of the automotive industry, they, along with ARC and the Airbag Module Defendants, possessed exclusive access to and were in a superior position to know the true facts about the Defective Inflators;

b.  Given ARC's design, development, testing and manufacture of the Defective Inflators and its experience and knowledge as experts and long-time veterans of the automotive industry, it, along with the Automaker Defendants and the Airbag Module Defendants, possessed exclusive access to and was in a superior position to know the true facts about the Defective Inflators;

c.  Given the Airbag Module Defendants' role in the design, manufacture, and testing of the airbag modules with the Defective Inflators installed in them, and their experience and knowledge as experts and long-time veterans of the automotive industry, they, along with ARC and the Automaker Defendants, possessed exclusive access to and were in a superior position to know the true facts about the Defective Inflators;

d.  Given the Inflator Defect's hidden and technical nature, Plaintiffs and

616

Class Members lack the sophisticated expertise in vehicle components and technology that would be necessary to discover the Inflator Defect on their own;

e.    Defendants knew that the Inflator Defect gave rise to serious safety concerns for the consumers who purchased and leased the Class Vehicles;

f.    The Inflator Defect poses a severe risk of harm in that, among other things, the metal shrapnel can puncture and stab the occupants, causing severe and potentially fatal injuries;

g.    Defendants knew about and investigated the Inflator Defect, but then did not notify consumers about it or disclose the Inflator Defect to NHTSA, and the Automaker Defendants did not launch a comprehensive recall for all Class Vehicles, all of which individually and together deprived Plaintiffs of an opportunity that otherwise could have led them to discover the truth about the Inflator Defect in their Class Vehicles; and

h.    The Automaker Defendants made, helped to make, or conspired to make incomplete representations about the safety and reliability of the Class Vehicles and their airbags, while purposefully withholding

617

material facts about a known safety defect. Because they volunteered to provide information about the Class Vehicles that they marketed and offered for sale and lease to consumers, the Automaker Defendants had the duty to disclose the whole truth.

2358. In breach of their duties, Defendants failed to disclose the Inflator Defect and that the Class Vehicles' airbags were not safe and reliable to Plaintiffs and Class Members in connection with the sale of the Class Vehicles.

2359. The Inflator Defect within the Class Vehicles is material to the sale of the Class Vehicles because a reasonable person would find it important in purchasing, leasing, or retaining a new or used motor vehicle and because it directly impacts the value of the Class Vehicles purchased or leased by Plaintiffs and Class Members.

2360. Defendants intended for Plaintiffs and Class Members to rely on their omissions and concealment—which they did by purchasing and leasing the Class Vehicles at the prices they paid believing that their vehicles would not have an Inflator Defect that would affect the quality, reliability, and safety of the Class Vehicles and their airbags.

2361. Plaintiffs' and Class Members' reliance was reasonable because a reasonable consumer would not have expected that the Class Vehicles contained a

safety defect that poses such a serious risk. They had no way of learning the facts that Defendants had concealed or failed to disclose. Plaintiffs and Class Members did not, and could not, unravel Defendants' deception on their own.

2362. Defendants actively concealed and suppressed these material facts, in whole or in part, to maintain a market for the Class Vehicles and the Defective Inflators installed in them, to protect profits, and to avoid costly recalls that would expose them to liability for those expenses and harm the commercial reputations of Defendants and their products. They did so at the expense of Plaintiffs and Class Members.

2363. If Defendants had fully and adequately disclosed the Inflator Defect to consumers, Plaintiffs and Class Members would have seen such a disclosure.

2364. Through their omissions and concealment with respect to the Inflator Defect within the Class Vehicles, Defendants intended to induce, and did induce, Plaintiffs and Class Members to either purchase a Class Vehicle that they otherwise would not have purchased, or pay more for a Class Vehicle than they otherwise would have paid.

2365. Had Plaintiffs and Class Members known of the Inflator Defect within the Class Vehicles, they would not have purchased the Class Vehicles or would have paid less for them.

2366. As a direct and proximate result of Defendants' omissions and concealment, Plaintiffs and other Class Members either overpaid for the Class Vehicles or would not have purchased the Class Vehicles at all if the Inflator Defect had been disclosed to them. Accordingly, Defendants are liable to Plaintiffs and Class Members for their damages in an amount to be proven at trial.

2367. Defendants acted maliciously, oppressively, deliberately, with intent to defraud; in reckless disregard of the Plaintiffs' and Class Members' rights and well-being; and to enrich themselves. Defendants' misconduct warrants an assessment of punitive damages, as permitted by law, in an amount sufficient to deter such conduct in the future, which amount shall be determined according to proof at trial.

> e.   **Missouri Count 5: Unjust Enrichment Against the Automaker Defendants.**

2368. Plaintiffs reallege and incorporate by reference all allegations in Volume 1 of the Consolidated Class Action Complaint as though fully set forth herein.

2369. The Missouri Plaintiff brings this count under Missouri law, individually and on behalf of the other members of the Missouri Subclasses against the Automaker Defendants for his or her respective Class Vehicle(s). For the remaining Automaker Defendants, Plaintiffs who purchased or leased their Class Vehicles in states with materially similar laws may represent Subclasses under this

count against all other Automaker Defendants.

2370. For purposes of this count, members of the Missouri Subclass shall be referred to as "Class Members."

2371. When they purchased and leased the Class Vehicles, Plaintiffs and Class Members conferred tangible and material economic benefits upon the Automaker Defendants, who readily accepted and retained these benefits.

2372. Plaintiffs and Class Members would not have purchased or leased their Class Vehicles, or would have paid less for them, had they known of the Inflator Defect at the time of purchase or lease. Therefore, the Automaker Defendants profited from the sale and lease of the Class Vehicles to the detriment and expense of Plaintiffs and Class Members.

2373. The Automaker Defendants appreciated these economic benefits. These benefits were the expected result of the Automaker Defendants acting in their pecuniary interest at the expense of their customers. They knew of these benefits because they were aware of the Inflator Defect, yet they failed to disclose this knowledge and misled the Plaintiffs and Class Members regarding the nature and quality of the Class Vehicles while profiting from this deception.

2374. It would be unjust, inequitable, and unconscionable for the Automaker Defendants to retain these benefits, including because they were procured as a result

of their wrongful conduct alleged above.

2375. Plaintiffs and Class Members are entitled to restitution of the benefits the Automaker Defendants unjustly retained and/or any amounts necessary to return Plaintiffs and Class Members to the position they occupied prior to dealing with those Defendants, with such amounts to be determined at trial.

2376. Plaintiffs plead this claim separately as well as in the alternative to their claims for damages under Fed. R. Civ. P. 8(a)(3), because if the Court dismisses Plaintiffs' claims for damages enters judgment on them in favor of the Automaker Defendants, Plaintiffs will have no adequate legal remedy.

### 27.   Montana

####   a.   Montana Count 1: Breach of Express Warranty (Mont. Code §§ 30-2-313 and 30-2A-210) Against the Automaker Defendants.

2377. Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

2378. The Montana Plaintiff brings this count under Montana law, individually and on behalf of the other members of the Montana Subclasses against the Automaker Defendants for his or her respective Class Vehicle(s). For the remaining Automaker Defendants, Plaintiffs who purchased or leased their Class Vehicles in states with materially similar laws may represent subclasses under this

count against those Automaker Defendants.

2379. For purposes of this count, members of the Montana Subclasses shall be referred to as "Class Members."

2380. The Class Vehicles are "goods" under Mont. Code §§ 30-2-105(1) and 30-2A-103(1)(h).

2381. The Automaker Defendants are "merchants" of the Class Vehicles under Mont. Code § 30-2-104(1), "sellers" under § 30-2-103(1)(d), and "lessors" under § 30-2A-103(1)(p).

2382. Plaintiffs and Class Members who purchased and leased the Class Vehicles in Montana are "buyers" under Mont. Code § 30-2-103(1)(a) and "lessees" under § 30-2A-103(n).

2383. The Automaker Defendants issued an express written warranty for each defective Class Vehicle they sold, including that:

a. The Class Vehicles would be free of defects in materials and workmanship at the time of sale; and

b. The Class Vehicles were safe and reliable, and their airbags would function properly in the event of a crash.

2384. The warranties listed above formed the basis of the bargain with regard to Plaintiffs and Class Members' purchase and lease of the Class Vehicles.

2385. The Automaker Defendants knowingly breached their warranty for the Class Vehicles because:

a.   The airbag inflators have latent defects which have a dangerous propensity to cause the inflators to rupture and eject metal shrapnel, subjecting Plaintiffs and Class Members to the risk of loss and injury; and

b.   The Automaker Defendants denied, concealed, and misrepresented the Inflator Defect, in the process refusing to pay for or provide in a reasonably timely fashion the needed repairs and replacements for Plaintiffs and Class Members.

2386. The Automaker Defendants knew or should have known that the warranties were false and/or misleading. Specifically, the Automaker Defendants were aware of the Inflator Defect in the Class Vehicles, which made the vehicles inherently defective and dangerous at the time that they were sold and leased to Plaintiffs and Class Members.

2387. Plaintiffs and Class Members were exposed to the Automaker Defendants' misrepresentations, and they had no way of discerning that the Automaker Defendants' representations were false and misleading or otherwise learning the material facts that the Automaker Defendants had concealed or failed to

disclose. Accordingly, Plaintiffs and Class Members reasonably relied on the Automaker Defendants' express warranties when purchasing or leasing their Class Vehicles.

2388. Plaintiffs and Class Members timely provided the Automaker Defendants notice of the issues raised in this count and this Complaint and an opportunity to cure, as alleged in the paragraphs addressing Defendants' notice above.

2389. Alternatively, Plaintiffs and Class Members were excused from providing the Automaker Defendants with notice and an opportunity to cure the breach, because it would have been futile. As alleged above, the Automaker Defendants knew about the Defective Inflators for years; however, to date, the Automaker Defendants have not instituted a recall or any other repair program with respect to all of the Class Vehicles, or even acknowledged that the Inflator Defect exists in all of the Class Vehicles. Therefore, they have refused to recall or repair defective vehicles. Moreover, to the extent the Automaker Defendants have issued recalls, those recalls are inadequate because, *inter alia*: (a) they are belated because the Automaker Defendants knew about the Defective Inflators for years and did nothing to recall or remedy the serious safety defect; (b) with tens of millions of vehicles impacted in existing and potential future recalls, as a result of the

Automaker Defendants' concealment of the Inflator Defect, the recalls cannot be implemented effectively due to supply constraints and resulting delays; (c) the recalls are incomplete, and apply to only a subset of the Class Vehicles.

2390. As a direct and proximate result of the Automaker Defendants' breach of their express warranties, the Class Vehicles were and are defective and the Inflator Defect was not remedied. Therefore, Plaintiff and Class Members have been damaged, in an amount to be proven at trial, through their overpayment at the time of purchase or lease for the Class Vehicles with an undisclosed safety defect that would not be remedied.

     **b.**     **Montana Count 2: Breach of Implied Warranty of Merchantability (Mont. Code §§ 30-2-314 and 30-2A-212) Against the Automaker Defendants.**

2391. Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

2392. The Montana Plaintiff brings this count under Montana law, individually and on behalf of the other members of the Montana Classes against the Automaker Defendants for his or her respective Class Vehicle(s). For the remaining Automaker Defendants, Plaintiffs who purchased or leased their Class Vehicles in states with materially similar laws may represent subclasses under this count against those Automaker Defendants.

2393. For purposes of this count, members of the Montana Subclasses shall be referred to as "Class Members."

2394. The Class Vehicles are "goods" under Mont. Code §§ 30-2-105(1) and 30-2A-103(1)(h).

2395. The Automaker Defendants are "merchants" of the Class Vehicles under Mont. Code § 30-2-104(1), "sellers" under § 30-2-103(1)(d), and "lessors" under § 30-2A-103(1)(p).

2396. Plaintiffs and Class Members who purchased and leased the Class Vehicles in Montana are "buyers" under Mont. Code § 30-2-103(1)(a) and "lessees" under § 30-2A-103(n).

2397. Montana law conferred an implied warranty that the Class Vehicles were in merchantable condition and fit for the ordinary purpose for which they were to be used pursuant to Mont. Code §§ 30-2-314 and 30-2A-212.

2398. The Class Vehicles are not merchantable, and as such the Automaker Defendants breached their implied warranties, because at the time of sale and all times thereafter:

a.      The Class Vehicles would not pass without objection in the automotive trade given the Inflator Defect;

b.      The Inflator Defect renders the Class Vehicles unsafe to drive and unfit

for ordinary purposes;

c.    The Class Vehicles and the airbags therein were inadequately labeled as safe and reliable, and the labeling failed to disclose the Inflator Defect; and

d.    The Class Vehicles do not conform to their labeling, which represents that the vehicles are safe and suitable for their intended use.

2399. Plaintiffs and Class Members timely provided the Automaker Defendants notice of the issues raised in this count and this Complaint and an opportunity to cure, as alleged in the paragraphs addressing Defendants' notice above.

2400. Alternatively, Plaintiffs and Class Members were excused from providing the Automaker Defendants with notice and an opportunity to cure the breach because it would have been futile. As alleged above, the Automaker Defendants have long known that the Class Vehicles contained the Defective Inflators, and that the Defective Inflators have caused airbags to malfunction in crashes involving the Class Vehicles; however, to date, the Automaker Defendants have not instituted a recall or any other repair program with respect to all of the Class Vehicles, or even acknowledged that the Inflator Defect exists in all of those Class

Vehicles. Moreover, to the extent the Automaker Defendants have issued recalls, those recalls are inadequate because, inter alia: (a) they are belated because the Automaker Defendants knew about the Defective Inflators for years and did nothing to recall or remedy the serious safety defect; (b) with tens of millions of vehicles impacted in existing and potential future recalls, as a result of the Automaker Defendants' concealment of the Inflator Defect, the recalls cannot be implemented effectively due to supply constraints and resulting delays; (c) the recalls are incomplete, and apply to only a subset of the Class Vehicles.

2401. Plaintiffs, individually and on behalf of Class Members, seek all available monetary damages (including actual, compensatory, and punitive damages), injunctive and equitable relief, and attorneys' fees and costs.

      **c.    Montana Count 3: Violation of the Montana Unfair Trade Practices Act of 1973 (Mont. Code § 30-14-101, *et seq.*) Against All Defendants.[29]**

2402. Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

2403. The Montana Plaintiff brings this count under Montana law, individually and on behalf of the other members of the Montana Subclasses against

---

[29] Plaintiffs bring this count against ARC and the Airbag Module Defendants based on their omissions and concealment of material facts only.

the Automaker Defendants and Airbag Module Defendants for his or her respective Class Vehicle(s), and ARC. For the remaining Defendants, Plaintiffs who purchased or leased their Class Vehicles in states with materially similar laws may represent subclasses under this count against all other Defendants and ARC.

2404. For purposes of this count, members of the Montana Subclasses shall be referred to as "Class Members."

2405. For purposes of this count, ARC, the Automaker Defendants, and the Airbag Module Defendants shall be referred to as "Defendants."

2406. Defendants, Plaintiffs, and Class Members are "persons" under Mont. Code § 30-14-102(6).

2407. Defendants were and are engaged in "trade" or "commerce" within the meaning of Mont. Code § 30-14-102(1).

2408. The Montana Unfair Trade Practices and Consumer Protection Act ("Montana CPA") states that "unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce are unlawful." Mont. Code § 30-14-103.

2409. Defendants' violations of the Montana CPA occurred repeatedly in trade or commerce—including the design, manufacture, distribution, marketing, sale, and lease of the Defective Inflators and the Class Vehicles.

2410. Defendants, through their agents, employees, and/or subsidiaries, violated the Montana CPA by knowingly and intentionally misrepresenting, omitting, concealing, and/or failing to disclose material facts regarding the reliability, safety, and performance of the Class Vehicles and the Defective Inflators, as detailed above.

2411. Defendants had an ongoing duty to Plaintiffs and Class Members to refrain from unfair or deceptive practices under the Montana CPA in the course of their business. Specifically, Defendants owed Plaintiffs and Class Members a duty to disclose all the material facts concerning the Defective Inflators in the Class Vehicles because:

a. Given ARC's design, development, testing and manufacture of the Defective Inflators and its experience and knowledge as experts and long-time veterans of the automotive industry, it, along with the Automaker Defendants and the Airbag Module Defendants, possessed exclusive access to and was in a superior position to know the true facts about the Defective Inflators;

b. Given the Airbag Module Defendants' role in the design, manufacture, and testing of the airbag modules with the Defective Inflators installed in them, and their experience and knowledge as experts and long-time

631

veterans of the automotive industry, they, along with ARC and the Automaker Defendants, possessed exclusive access to and were in a superior position to know the true facts about the Defective Inflators;

c.   Given the Automaker Defendants' role in the design, manufacture, testing, and sale of Class Vehicles and Defective Inflators, and their experience and knowledge as experts and long-time veterans of the automotive industry, they, along with ARC and the Airbag Module Defendants, possessed exclusive access to and were in a superior position to know the true facts about the Defective Inflators;

d.   Given the Inflator Defect's hidden and technical nature, Plaintiffs and Class Members lack the sophisticated expertise in vehicle components and technology that would be necessary to discover the Inflator Defect on their own;

e.   Defendants knew that the Inflator Defect gave rise to serious safety concerns for the consumers who purchased and leased the Class Vehicles;

f.   The Inflator Defect poses a severe risk of harm in that, among other things, the metal shrapnel can puncture and stab the occupants, causing severe and potentially fatal injuries;

632

g.    Defendants knew about and investigated the Inflator Defect, but then did not notify consumers about it or disclose the Inflator Defect to NHTSA, and the Automaker Defendants did not launch a comprehensive recall for all Class Vehicles, all of which individually and together deprived Plaintiffs of an opportunity that otherwise could have led them to discover the truth about the Inflator Defect in their Class Vehicles; and

h.    The Automaker Defendants made, helped to make, or conspired to make incomplete representations about the safety and reliability of the Class Vehicles and their airbags, while purposefully withholding material facts about a known safety defect. Because they volunteered to provide information about the Class Vehicles that they marketed and offered for sale and lease to consumers, the Automaker Defendants had the duty to disclose the whole truth.

2412. By misrepresenting the Class Vehicles as safe and reliable and the airbags installed in them as properly functioning and free from defects, and/or by failing to disclose and actively concealing the dangers and risk posed by the Inflator Defect to both consumers and NHTSA, Defendants engaged in one or more of the unfair or deceptive business practices in violation of Mont. Code § 30-14-103.

633

2413. Defendants' unfair or deceptive acts or practices, including their misrepresentations, concealments, omissions, and/or suppressions of material facts, were designed to mislead and had a tendency or capacity to mislead and create a false impression in consumers that the Class Vehicles had properly-functioning and reliable airbags. Indeed, those misrepresentations, concealments, omissions, and suppressions of material facts did in fact deceive reasonable consumers, including Plaintiffs and Class Members, about the true safety and reliability of the Class Vehicles and/or the Defective Inflators installed in them, the quality of the Class Vehicles, and the true value of the Class Vehicles.

2414. Defendants intended for Plaintiffs and Class Members to rely on their misrepresentations, omissions, and concealment—which they did by purchasing and leasing the Class Vehicles at the prices they paid believing that their vehicles would not have an Inflator Defect that would affect the quality, reliability, and safety of the Class Vehicles and their airbags.

2415. Defendants' misrepresentations, concealments, omissions, and suppressions of material facts regarding the Inflator Defect and true characteristics of the Class Vehicles were material to the decisions of Plaintiffs and Class Members to purchase and lease those vehicles, as Defendants intended. Plaintiffs and Class Members were exposed to those misrepresentations, concealments, omissions, and

suppressions of material facts, and relied on Defendants' misrepresentations that the Class Vehicles and their airbags were safe and reliable in deciding to purchase and lease the Class Vehicles.

2416. Plaintiffs' and Class Members' reliance was reasonable, as they had no way of discerning that Defendants' representations were false and misleading, or otherwise learning the facts that Defendants had concealed or failed to disclose. Plaintiffs and Class Members did not, and could not, unravel Defendants' deception on their own.

2417. Had they known the truth about the Inflator Defect, Plaintiffs and Class Members would not have purchased or leased the Class Vehicles, or would have paid significantly less for them.

2418. As a direct and proximate result of Defendants' deceptive practices, Plaintiffs and Class Members have sustained economic injury and loss—either by purchasing a vehicle they otherwise would not have purchased or paying more than they otherwise would have as a result of Defendants' actions and omissions alleged above—that first occurred at the time each Class Vehicle was purchased or leased.

2419. Defendants' violations present a continuing risk to Plaintiffs and Class Members, as well as to the general public, because the Class Vehicles remain unsafe due to the Defective Inflators therein. Defendants' unlawful acts and practices

complained of herein affect the public interest.

2420. Pursuant to Mont. Code § 30-14-133, Plaintiffs and Class Members seek an order enjoining the above unfair or deceptive acts or practices and awarding actual damages, punitive damages, and any other just and proper relief available under the Montana CPA against all Defendants.

### d. Montana Count 4: Fraud by Omission and Concealment Against All Defendants.

2421. Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

2422. The Montana Plaintiff brings this count under Montana law, individually and on behalf of the other members of the Montana Subclasses against the Automaker Defendants and Airbag Module Defendants for his or her respective Class Vehicle(s), and ARC. For the remaining Defendants, Plaintiffs who purchased or leased their Class Vehicles in states with materially similar laws may represent subclasses under this count against all other Defendants and ARC.

2423. For purposes of this count, members of the Montana Subclasses shall be referred to as "Class Members."

2424. For purposes of this count, ARC, the Automaker Defendants, and the Airbag Module Defendants shall be referred to as "Defendants."

2425. Defendants are liable for both fraudulent concealment and non-disclosure. *See, e.g.*, Restatement (Second) of Torts §§ 550-51 (1977).

2426. Defendants owed Plaintiffs and Class Members a duty to disclose all the material facts concerning the Defective Inflators in the Class Vehicles because:

a.  Given the Automaker Defendants' role in the design, manufacture, testing, and sale of Class Vehicles and Defective Inflators, and their experience and knowledge as experts and long-time veterans of the automotive industry, they, along with ARC and the Airbag Module Defendants, possessed exclusive access to and were in a superior position to know the true facts about the Defective Inflators;

b.  Given ARC's design, development, testing and manufacture of the Defective Inflators and its experience and knowledge as experts and long-time veterans of the automotive industry, it, along with the Automaker Defendants and the Airbag Module Defendants, possessed exclusive access to and was in a superior position to know the true facts about the Defective Inflators;

c.  Given the Airbag Module Defendants' role in the design, manufacture, and testing of the airbag modules with the Defective Inflators installed in them, and their experience and knowledge as experts and long-time

veterans of the automotive industry, they, along with ARC and the Automaker Defendants, possessed exclusive access to and were in a superior position to know the true facts about the Defective Inflators;

d.     Given the Inflator Defect's hidden and technical nature, Plaintiffs and Class Members lack the sophisticated expertise in vehicle components and technology that would be necessary to discover the Inflator Defect on their own;

e.     Defendants knew that the Inflator Defect gave rise to serious safety concerns for the consumers who purchased and leased the Class Vehicles;

f.     The Inflator Defect poses a severe risk of harm in that, among other things, the metal shrapnel can puncture and stab the occupants, causing severe and potentially fatal injuries;

g.     Defendants knew about and investigated the Inflator Defect, but then did not notify consumers about it, disclose the Inflator Defect to NHTSA, or further launch a comprehensive recall for all Class Vehicles, which individually and together deprived Plaintiffs of an opportunity that otherwise could have led them to discover the truth about the Inflator Defect in their Class Vehicles; and

h.      The Automaker Defendants made, helped to make, or conspired to make incomplete representations about the safety and reliability of the Class Vehicles and their airbags, while purposefully withholding material facts about a known safety defect. Because they volunteered to provide information about the Class Vehicles that they marketed and offered for sale and lease to consumers, the Automaker Defendants had the duty to disclose the whole truth.

2427. In breach of their duties, Defendants failed to disclose the Inflator Defect and that the Class Vehicles' airbags were not safe and reliable to Plaintiffs and Class Members in connection with the sale of the Class Vehicles.

2428. The Inflator Defect within the Class Vehicles is material to the sale of the Class Vehicles because a reasonable person would find it important in purchasing, leasing, or retaining a new or used motor vehicle and because it directly impacts the value of the Class Vehicles purchased or leased by Plaintiffs and Class Members.

2429. Defendants intended for Plaintiffs and Class Members to rely on their omissions and concealment—which they did by purchasing and leasing the Class Vehicles at the prices they paid believing that their vehicles would not have an Inflator Defect that would affect the quality, reliability, and safety of the Class

639

Vehicles and their airbags.

2430. Plaintiffs' and Class Members' reliance was reasonable because a reasonable consumer would not have expected that the Class Vehicles contained a safety defect that poses such a serious risk. They had no way of learning the facts that Defendants had concealed or failed to disclose. Plaintiffs and Class Members did not, and could not, unravel Defendants' deception on their own.

2431. Defendants actively concealed and suppressed these material facts, in whole or in part, to maintain a market for the Class Vehicles and the Defective Inflators installed in them, to protect profits, and to avoid costly recalls that would expose them to liability for those expenses and harm the commercial reputations of Defendants and their products. They did so at the expense of Plaintiffs and Class Members.

2432. If Defendants had fully and adequately disclosed the Inflator Defect to consumers, Plaintiffs and Class Members would have seen such a disclosure.

2433. Through their omissions and concealment with respect to the Inflator Defect within the Class Vehicles, Defendants intended to induce, and did induce, Plaintiffs and Class Members to either purchase a Class Vehicle that they otherwise would not have purchased, or pay more for a Class Vehicle than they otherwise would have paid.

2434. Had Plaintiffs and Class Members known of the Inflator Defect within the Class Vehicles, they would not have purchased the Class Vehicles or would have paid less for them.

2435. As a direct and proximate result of Defendants' omissions and concealment, Plaintiffs and other Class Members either overpaid for the Class Vehicles or would not have purchased the Class Vehicles at all if the Inflator Defect had been disclosed to them. Accordingly, Defendants are liable to Plaintiffs and Class Members for their damages in an amount to be proven at trial.

2436. Defendants acted maliciously, oppressively, deliberately, with intent to defraud; in reckless disregard of the Plaintiffs' and Class Members' rights and well-being; and to enrich themselves. Defendants' misconduct warrants an assessment of punitive damages, as permitted by law, in an amount sufficient to deter such conduct in the future, which amount shall be determined according to proof at trial.

      e.    **Montana Count 5: Unjust Enrichment Against the Automaker Defendants.**

2437. Plaintiffs reallege and incorporate by reference all allegations in Volume 1 of the Consolidated Class Action Complaint as though fully set forth herein.

2438. The Montana Plaintiff brings this count under Montana law,

individually and on behalf of the other members of the Montana Subclasses against the Automaker Defendants for his or her respective Class Vehicle(s). For the remaining Automaker Defendants, Plaintiffs who purchased or leased their Class Vehicles in states with materially similar laws may represent subclasses under this count against those Automaker Defendants.

2439. For purposes of this count, members of the Montana Subclasses shall be referred to as "Class Members."

2440. When they purchased and leased the Class Vehicles, Plaintiffs and Class Members conferred tangible and material economic benefits upon the Automaker Defendants, who readily accepted and retained these benefits.

2441. Plaintiffs and Class Members would not have purchased or leased their Class Vehicles, or would have paid less for them, had they known of the Inflator Defect at the time of purchase or lease. Therefore, the Automaker Defendants profited from the sale and lease of the Class Vehicles to the detriment and expense of Plaintiffs and Class Members.

2442. The Automaker Defendants appreciated these economic benefits. These benefits were the expected result of the Automaker Defendants acting in their pecuniary interest at the expense of their customers. They knew of these benefits because they were aware of the Inflator Defect, yet they failed to disclose this

knowledge and misled the Plaintiffs and Class Members regarding the nature and quality of the Class Vehicles while profiting from this deception.

2443. It would be unjust, inequitable, and unconscionable for the Automaker Defendants to retain these benefits, including because they were procured as a result of their wrongful conduct alleged above.

2444. Plaintiffs and Class Members are entitled to restitution of the benefits the Automaker Defendants unjustly retained and/or any amounts necessary to return Plaintiffs and Class Members to the position they occupied prior to dealing with those Defendants, with such amounts to be determined at trial.

2445. Plaintiffs plead this claim separately as well as in the alternative to their claims for damages under Fed. R. Civ. P. 8(a)(3), because if the Court dismisses Plaintiffs' claims for damages enters judgment on them in favor of the Automaker Defendants, Plaintiffs will have no adequate legal remedy.

### 28. Nebraska

    **a.** **Nebraska Count 1: Breach of Express Warranty (Neb. Rev. Stat. U.C.C. §§ 2-313 and 2A-210) Against the Automaker Defendants.**

2446. Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

2447. The Nebraska Plaintiffs bring this count under Nebraska law, individually and on behalf of the other members of the Nebraska Subclasses against the Automaker Defendants for their respective Class Vehicles. For the remaining Automaker Defendants, Plaintiffs who purchased or leased their Class Vehicles in states with materially similar laws may represent subclasses under this count against those Automaker Defendants.

2448. For purposes of this count, members of the Nebraska Subclasses shall be referred to as "Class Members."

2449. The Class Vehicles are "goods" under Neb. Rev. Stat. U.C.C. §§ 2-105(1) and 2A-103(1)(h).

2450. The Automaker Defendants are "merchants" of the Class Vehicles under Neb. Rev. Stat. U.C.C. § 2-104(1), "sellers" under § 2-103(1)(d), and "lessors" under § 2A-103(1)(p).

2451. Plaintiffs and Class Members who purchased and leased the Class Vehicles in Nebraska are "buyers" under Neb. Rev. Stat. U.C.C. § 2-103(1)(a) and "lessees" under § 2A-103(n).

2452. The Automaker Defendants issued an express written warranty for each defective Class Vehicle they sold, including that:

a.    The Class Vehicles would be free of defects in materials and

644

workmanship at the time of sale; and

b.  The Class Vehicles were safe and reliable, and their airbags would function properly in the event of a crash.

2453. The warranties listed above formed the basis of the bargain with regard to Plaintiffs and Class Members' purchase and lease of the Class Vehicles.

2454. The Automaker Defendants knowingly breached their warranty for the Class Vehicles because:

a.  The airbag inflators have latent defects which have a dangerous propensity to cause the inflators to rupture and eject metal shrapnel, subjecting Plaintiffs and Class Members to the risk of loss and injury; and

b.  The Automaker Defendants denied, concealed, and misrepresented the Inflator Defect, in the process refusing to pay for or provide in a reasonably timely fashion the needed repairs and replacements for Plaintiffs and Class Members.

2455. The Automaker Defendants knew or should have known that the warranties were false and/or misleading. Specifically, the Automaker Defendants were aware of the Inflator Defect in the Class Vehicles, which made the vehicles inherently defective and dangerous at the time that they were sold and leased to

Plaintiffs and Class Members.

2456. Plaintiffs and Class Members were exposed to the Automaker Defendants' misrepresentations, and they had no way of discerning that the Automaker Defendants' representations were false and misleading or otherwise learning the material facts that the Automaker Defendants had concealed or failed to disclose. Accordingly, Plaintiffs and Class Members reasonably relied on the Automaker Defendants' express warranties when purchasing or leasing their Class Vehicles.

2457. Plaintiffs and Class Members timely provided the Automaker Defendants notice of the issues raised in this count and this Complaint and an opportunity to cure, as alleged in the paragraphs addressing Defendants' notice above.

2458. Alternatively, Plaintiffs and Class Members were excused from providing the Automaker Defendants with notice and an opportunity to cure the breach, because it would have been futile. As alleged above, the Automaker Defendants knew about the Defective Inflators for years; however, to date, the Automaker Defendants have not instituted a recall or any other repair program with respect to all of the Class Vehicles, or even acknowledged that the Inflator Defect exists in all of the Class Vehicles. Therefore, they have refused to recall or repair

646

defective vehicles. Moreover, to the extent the Automaker Defendants have issued recalls, those recalls are inadequate because, *inter alia*: (a) they are belated because the Automaker Defendants knew about the Defective Inflators for years and did nothing to recall or remedy the serious safety defect; (b) with tens of millions of vehicles impacted in existing and potential future recalls, as a result of the Automaker Defendants' concealment of the Inflator Defect, the recalls cannot be implemented effectively due to supply constraints and resulting delays; (c) the recalls are incomplete, and apply to only a subset of the Class Vehicles.

2459. As a direct and proximate result of the Automaker Defendants' breach of their express warranties, the Class Vehicles were and are defective and the Inflator Defect was not remedied. Therefore, Plaintiff and Class Members have been damaged, in an amount to be proven at trial, through their overpayment at the time of purchase or lease for the Class Vehicles with an undisclosed safety defect that would not be remedied.

> **b.    Nebraska Count 2: Breach of Implied Warranty of Merchantability (Neb. Rev. Stat. U.C.C. §§ 30-2-314 and 30-2A-212) Against the Automaker Defendants.**

2460. Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

2461. The Nebraska Plaintiffs bring this count under Nebraska law,

individually and on behalf of the other members of the Nebraska Classes against the Automaker Defendants for their respective Class Vehicles. For the remaining Automaker Defendants, Plaintiffs who purchased or leased their Class Vehicles in states with materially similar laws may represent subclasses under this count against those Automaker Defendants.

2462. For purposes of this count, members of the Nebraska Subclasses shall be referred to as "Class Members."

2463. The Class Vehicles are "goods" under Neb. Rev. Stat. U.C.C. §§ 2-105(1) and 2A-103(1)(h).

2464. The Automaker Defendants are "merchants" of the Class Vehicles under Neb. Rev. Stat. U.C.C. § 2-104(1), "sellers" under § 2-103(1)(d), and "lessors" under § 2A-103(1)(p).

2465. Plaintiffs and Class Members who purchased and leased the Class Vehicles in Nebraska are "buyers" under Neb. Rev. Stat. U.C.C. § 2-103(1)(a) and "lessees" under § 2A-103(n).

2466. Nebraska law conferred an implied warranty that the Class Vehicles were in merchantable condition and fit for the ordinary purpose for which they were to be used pursuant to Neb. Rev. Stat. U.C.C. §§ 2-314 and 2A-212.

2467. The Class Vehicles are not merchantable, and as such the Automaker

Defendants breached their implied warranties, because at the time of sale and all times thereafter:

a. The Class Vehicles would not pass without objection in the automotive trade given the Inflator Defect;

b. The Inflator Defect renders the Class Vehicles unsafe to drive and unfit for ordinary purposes;

c. The Class Vehicles and the airbags therein were inadequately labeled as safe and reliable, and the labeling failed to disclose the Inflator Defect; and

d. The Class Vehicles do not conform to their labeling, which represents that the vehicles are safe and suitable for their intended use.

2468. Plaintiffs and Class Members timely provided the Automaker Defendants notice of the issues raised in this count and this Complaint and an opportunity to cure, as alleged in the paragraphs addressing Defendants' notice above.

2469. Alternatively, Plaintiffs and Class Members were excused from providing the Automaker Defendants with notice and an opportunity to cure the breach because it would have been futile. As alleged above, the Automaker Defendants have long known that the Class Vehicles contained the Defective

Inflators, and that the Defective Inflators have caused airbags to malfunction in crashes involving the Class Vehicles; however, to date, the Automaker Defendants have not instituted a recall or any other repair program with respect to all of the Class Vehicles, or even acknowledged that the Inflator Defect exists in all of those Class Vehicles. Moreover, to the extent the Automaker Defendants have issued recalls, those recalls are inadequate because, inter alia: (a) they are belated because the Automaker Defendants knew about the Defective Inflators for years and did nothing to recall or remedy the serious safety defect; (b) with tens of millions of vehicles impacted in existing and potential future recalls, as a result of the Automaker Defendants' concealment of the Inflator Defect, the recalls cannot be implemented effectively due to supply constraints and resulting delays; (c) the recalls are incomplete, and apply to only a subset of the Class Vehicles.

2470. Plaintiffs, individually and on behalf of Class Members, seek all available monetary damages (including actual, compensatory, and punitive damages), injunctive and equitable relief, and attorneys' fees and costs.

### c. Nebraska Count 3: Violation of the Nebraska Consumer Practices Act (Neb. Rev. Stat. § 59-1601, *et seq.*) Against All Defendants.[30]

2471. Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

2472. The Nebraska Plaintiffs bring this count under Nebraska law, individually and on behalf of the other members of the Nebraska Classes against the Automaker Defendants and Airbag Module Defendants for their respective Class Vehicles, and ARC. For the remaining Defendants, Plaintiffs who purchased or leased their Class Vehicles in states with materially similar laws may represent subclasses under this count against all other Defendants and ARC.

2473. For purposes of this count, members of the Nebraska Subclasses shall be referred to as "Class Members."

2474. For purposes of this count, ARC, the Automaker Defendants, and the Airbag Module Defendants shall be referred to as "Defendants."

2475. The Class Vehicles are "assets" under Neb. Rev. Stat. § 59-1601(3).

2476. Defendants, Plaintiffs, and Class Members are "persons" under Neb. Rev. Stat. § 59-1601(1).

---

[30] Plaintiffs bring this count against ARC and the Airbag Module Defendants based on their omissions and concealment of material facts only.

2477. Defendants were and are engaged in "trade" and "commerce" within the meaning of Neb. Rev. Stat. § 59-1601(2).

2478. The Nebraska Unfair Trade Practices and Consumer Protection Act ("Nebraska CPA") declares that "unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce shall be unlawful." Neb Rev. Stat. § 59-1602.

2479. Defendants' violations of the Nebraska CPA occurred repeatedly in trade or commerce—including the design, manufacture, distribution, marketing, sale, and lease of the Defective Inflators and the Class Vehicles.

2480. Defendants, through their agents, employees, and/or subsidiaries, violated the Nebraska CPA by knowingly and intentionally misrepresenting, omitting, concealing, and/or failing to disclose material facts regarding the reliability, safety, and performance of the Class Vehicles and the Defective Inflators, as detailed above.

2481. Defendants had an ongoing duty to Plaintiffs and Class Members to refrain from unfair or deceptive practices under the Nebraska CPA in the course of their business. Specifically, Defendants owed Plaintiffs and Class Members a duty to disclose all the material facts concerning the Defective Inflators in the Class Vehicles because:

a.  Given ARC's design, development, testing and manufacture of the Defective Inflators and its experience and knowledge as experts and long-time veterans of the automotive industry, it, along with the Automaker Defendants and the Airbag Module Defendants, possessed exclusive access to and was in a superior position to know the true facts about the Defective Inflators;

b.  Given the Airbag Module Defendants' role in the design, manufacture, and testing of the airbag modules with the Defective Inflators installed in them, and their experience and knowledge as experts and long-time veterans of the automotive industry, they, along with ARC and the Automaker Defendants, possessed exclusive access to and were in a superior position to know the true facts about the Defective Inflators;

c.  Given the Automaker Defendants' role in the design, manufacture, testing, and sale of Class Vehicles and Defective Inflators, and their experience and knowledge as experts and long-time veterans of the automotive industry, they, along with ARC and the Airbag Module Defendants, possessed exclusive access to and were in a superior position to know the true facts about the Defective Inflators;

d.  Given the Inflator Defect's hidden and technical nature, Plaintiffs and

653

Class Members lack the sophisticated expertise in vehicle components and technology that would be necessary to discover the Inflator Defect on their own;

e.    Defendants knew that the Inflator Defect gave rise to serious safety concerns for the consumers who purchased and leased the Class Vehicles;

f.    The Inflator Defect poses a severe risk of harm in that, among other things, the metal shrapnel can puncture and stab the occupants, causing severe and potentially fatal injuries;

g.    Defendants knew about and investigated the Inflator Defect, but then did not notify consumers about it or disclose the Inflator Defect to NHTSA, and the Automaker Defendants did not launch a comprehensive recall for all Class Vehicles, all of which individually and together deprived Plaintiffs of an opportunity that otherwise could have led them to discover the truth about the Inflator Defect in their Class Vehicles; and

h.    The Automaker Defendants made, helped to make, or conspired to make incomplete representations about the safety and reliability of the Class Vehicles and their airbags, while purposefully withholding

material facts about a known safety defect. Because they volunteered to provide information about the Class Vehicles that they marketed and offered for sale and lease to consumers, the Automaker Defendants had the duty to disclose the whole truth.

2482. By misrepresenting the Class Vehicles as safe and reliable and the airbags installed in them as properly functioning and free from defects, and/or by failing to disclose and actively concealing the dangers and risk posed by the Inflator Defect to both consumers and NHTSA, Defendants engaged in one or more of the unfair or deceptive business practices in violation of Neb. Rev. Stat. § 59-1602.

2483. Defendants' unfair or deceptive acts or practices, including their misrepresentations, concealments, omissions, and/or suppressions of material facts, were designed to mislead and had a tendency or capacity to mislead and create a false impression in consumers that the Class Vehicles had properly-functioning and reliable airbags. Indeed, those misrepresentations, concealments, omissions, and suppressions of material facts did in fact deceive reasonable consumers, including Plaintiffs and Class Members, about the true safety and reliability of the Class Vehicles and/or the Defective Inflators installed in them, the quality of the Class Vehicles, and the true value of the Class Vehicles.

2484. Defendants intended for Plaintiffs and Class Members to rely on their

misrepresentations, omissions, and concealment—which they did by purchasing and leasing the Class Vehicles at the prices they paid believing that their vehicles would not have an Inflator Defect that would affect the quality, reliability, and safety of the Class Vehicles and their airbags.

2485. Defendants' misrepresentations, concealments, omissions, and suppressions of material facts regarding the Inflator Defect and true characteristics of the Class Vehicles were material to the decisions of Plaintiffs and Class Members to purchase and lease those vehicles, as Defendants intended. Plaintiffs and Class Members were exposed to those misrepresentations, concealments, omissions, and suppressions of material facts, and relied on Defendants' misrepresentations that the Class Vehicles and their airbags were safe and reliable in deciding to purchase and lease the Class Vehicles.

2486. Plaintiffs' and Class Members' reliance was reasonable, as they had no way of discerning that Defendants' representations were false and misleading, or otherwise learning the facts that Defendants had concealed or failed to disclose. Plaintiffs and Class Members did not, and could not, unravel Defendants' deception on their own.

2487. Had they known the truth about the Inflator Defect, Plaintiffs and Class Members would not have purchased or leased the Class Vehicles, or would have

paid significantly less for them.

2488. As a direct and proximate result of Defendants' deceptive practices, Plaintiffs and Class Members have sustained economic injury and loss—either by purchasing a vehicle they otherwise would not have purchased or paying more than they otherwise would have as a result of Defendants' actions and omissions alleged above—that first occurred at the time each Class Vehicle was purchased or leased.

2489. Defendants' violations present a continuing risk to Plaintiffs and Class Members, as well as to the general public, because the Class Vehicles remain unsafe due to the Defective Inflators therein. Defendants' unlawful acts and practices complained of herein affect the public interest.

2490. Pursuant to Neb. Rev. Stat. § 59-1609, Plaintiffs and Class Members seek an order enjoining the above unfair or deceptive acts or practices and awarding actual damages, punitive damages, and any other just and proper relief available under the Nebraska CPA against all Defendants.

### d. Nebraska Count 4: Fraud by Omission and Concealment Against All Defendants.

2491. Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

2492. The Nebraska Plaintiffs bring this count under Nebraska law,

individually and on behalf of the other members of the Nebraska Subclasses against the Automaker Defendants and Airbag Module Defendants for their respective Class Vehicles, and ARC. For the remaining Defendants, Plaintiffs who purchased or leased their Class Vehicles in states with materially similar laws may represent subclasses under this count against all other Defendants and ARC.

2493. For purposes of this count, members of the Nebraska Subclasses shall be referred to as "Class Members."

2494. For purposes of this count, ARC, the Automaker Defendants, and the Airbag Module Defendants shall be referred to as "Defendants."

2495. Defendants are liable for both fraudulent concealment and non-disclosure. *See, e.g.*, Restatement (Second) of Torts §§ 550-51 (1977).

2496. Defendants owed Plaintiffs and Class Members a duty to disclose all the material facts concerning the Defective Inflators in the Class Vehicles because:

   a.   Given the Automaker Defendants' role in the design, manufacture, testing, and sale of Class Vehicles and Defective Inflators, and their experience and knowledge as experts and long-time veterans of the automotive industry, they, along with ARC and the Airbag Module Defendants, possessed exclusive access to and were in a superior position to know the true facts about the Defective Inflators;

b.     Given ARC's design, development, testing and manufacture of the Defective Inflators and its experience and knowledge as experts and long-time veterans of the automotive industry, it, along with the Automaker Defendants and the Airbag Module Defendants, possessed exclusive access to and was in a superior position to know the true facts about the Defective Inflators;

c.     Given the Airbag Module Defendants' role in the design, manufacture, and testing of the airbag modules with the Defective Inflators installed in them, and their experience and knowledge as experts and long-time veterans of the automotive industry, they, along with ARC and the Automaker Defendants, possessed exclusive access to and were in a superior position to know the true facts about the Defective Inflators;

d.     Given the Inflator Defect's hidden and technical nature, Plaintiffs and Class Members lack the sophisticated expertise in vehicle components and technology that would be necessary to discover the Inflator Defect on their own;

e.     Defendants knew that the Inflator Defect gave rise to serious safety concerns for the consumers who purchased and leased the Class Vehicles;

659

f.     The Inflator Defect poses a severe risk of harm in that, among other things, the metal shrapnel can puncture and stab the occupants, causing severe and potentially fatal injuries;

g.     Defendants knew about and investigated the Inflator Defect, but then did not notify consumers about it, disclose the Inflator Defect to NHTSA, or further launch a comprehensive recall for all Class Vehicles, which individually and together deprived Plaintiffs of an opportunity that otherwise could have led them to discover the truth about the Inflator Defect in their Class Vehicles; and

h.     The Automaker Defendants made, helped to make, or conspired to make incomplete representations about the safety and reliability of the Class Vehicles and their airbags, while purposefully withholding material facts about a known safety defect. Because they volunteered to provide information about the Class Vehicles that they marketed and offered for sale and lease to consumers, the Automaker Defendants had the duty to disclose the whole truth.

2497. In breach of their duties, Defendants failed to disclose the Inflator Defect and that the Class Vehicles' airbags were not safe and reliable to Plaintiffs

660

and Class Members in connection with the sale of the Class Vehicles.

2498. The Inflator Defect within the Class Vehicles is material to the sale of the Class Vehicles because a reasonable person would find it important in purchasing, leasing, or retaining a new or used motor vehicle and because it directly impacts the value of the Class Vehicles purchased or leased by Plaintiffs and Class Members.

2499. Defendants intended for Plaintiffs and Class Members to rely on their omissions and concealment—which they did by purchasing and leasing the Class Vehicles at the prices they paid believing that their vehicles would not have an Inflator Defect that would affect the quality, reliability, and safety of the Class Vehicles and their airbags.

2500. Plaintiffs' and Class Members' reliance was reasonable because a reasonable consumer would not have expected that the Class Vehicles contained a safety defect that poses such a serious risk. They had no way of learning the facts that Defendants had concealed or failed to disclose. Plaintiffs and Class Members did not, and could not, unravel Defendants' deception on their own.

2501. Defendants actively concealed and suppressed these material facts, in whole or in part, to maintain a market for the Class Vehicles and the Defective Inflators installed in them, to protect profits, and to avoid costly recalls that would

expose them to liability for those expenses and harm the commercial reputations of Defendants and their products. They did so at the expense of Plaintiffs and Class Members.

2502. If Defendants had fully and adequately disclosed the Inflator Defect to consumers, Plaintiffs and Class Members would have seen such a disclosure.

2503. Through their omissions and concealment with respect to the Inflator Defect within the Class Vehicles, Defendants intended to induce, and did induce, Plaintiffs and Class Members to either purchase a Class Vehicle that they otherwise would not have purchased, or pay more for a Class Vehicle than they otherwise would have paid.

2504. Had Plaintiffs and Class Members known of the Inflator Defect within the Class Vehicles, they would not have purchased the Class Vehicles or would have paid less for them.

2505. As a direct and proximate result of Defendants' omissions and concealment, Plaintiffs and other Class Members either overpaid for the Class Vehicles or would not have purchased the Class Vehicles at all if the Inflator Defect had been disclosed to them. Accordingly, Defendants are liable to Plaintiffs and Class Members for their damages in an amount to be proven at trial.

2506. Defendants acted maliciously, oppressively, deliberately, with intent to

defraud; in reckless disregard of the Plaintiffs' and Class Members' rights and well-being; and to enrich themselves. Defendants' misconduct warrants an assessment of punitive damages, as permitted by law, in an amount sufficient to deter such conduct in the future, which amount shall be determined according to proof at trial.

> **e.    Nebraska Count 5: Unjust Enrichment Against the Automaker Defendants.**

2507. Plaintiffs reallege and incorporate by reference all allegations in Volume 1 of the Consolidated Class Action Complaint as though fully set forth herein.

2508. The Nebraska Plaintiffs bring this count under Nebraska law, individually and on behalf of the other members of the Nebraska Subclasses against the Automaker Defendants for their respective Class Vehicles. For the remaining Automaker Defendants, Plaintiffs who purchased or leased their Class Vehicles in states with materially similar laws may represent subclasses under this count against those Automaker Defendants.

2509. For purposes of this count, members of the Nebraska Subclasses shall be referred to as "Class Members."

2510. When they purchased and leased the Class Vehicles, Plaintiffs and Class Members conferred tangible and material economic benefits upon the

Automaker Defendants, who readily accepted and retained these benefits.

2511. Plaintiffs and Class Members would not have purchased or leased their Class Vehicles, or would have paid less for them, had they known of the Inflator Defect at the time of purchase or lease. Therefore, the Automaker Defendants profited from the sale and lease of the Class Vehicles to the detriment and expense of Plaintiffs and Class Members.

2512. The Automaker Defendants appreciated these economic benefits. These benefits were the expected result of the Automaker Defendants acting in their pecuniary interest at the expense of their customers. They knew of these benefits because they were aware of the Inflator Defect, yet they failed to disclose this knowledge and misled the Plaintiffs and Class Members regarding the nature and quality of the Class Vehicles while profiting from this deception.

2513. It would be unjust, inequitable, and unconscionable for the Automaker Defendants to retain these benefits, including because they were procured as a result of their wrongful conduct alleged above.

2514. Plaintiffs and Class Members are entitled to restitution of the benefits the Automaker Defendants unjustly retained and/or any amounts necessary to return Plaintiffs and Class Members to the position they occupied prior to dealing with those Defendants, with such amounts to be determined at trial.

2515. Plaintiffs plead this claim separately as well as in the alternative to their claims for damages under Fed. R. Civ. P. 8(a)(3), because if the Court dismisses Plaintiffs' claims for damages enters judgment on them in favor of the Automaker Defendants, Plaintiffs will have no adequate legal remedy.

### 29. Nevada

### a. Nevada Count 1: Breach of Express Warranty (Nev. Rev. Stat. §§ 104.2313 and 104A.2210) Against the Automaker Defendants.

2516. Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

2517. The Nevada Plaintiffs bring this count under Nevada law, individually and on behalf of the other members of the Nevada Subclasses against the Automaker Defendants for their respective Class Vehicles. For the remaining Automaker Defendants, Plaintiffs who purchased or leased their Class Vehicles in states with materially similar laws may represent subclasses under this count against those Automaker Defendants.

2518. For purposes of this count, members of the Nevada Subclasses shall be referred to as "Class Members."

2519. The Class Vehicles are "goods" under Nev. Rev. Stat. §§ 104.2105(1) and 104A.2103(1)(h).

2520. The Automaker Defendants are "merchants" of the Class Vehicles under Nev. Rev. Stat. §§ 104.2104(1) and 104A.2103(3), "sellers" under § 104.2103(1)(c), and "lessors" under § 104A.2103(1)(p).

2521. Plaintiffs and Class Members who purchased and leased the Class Vehicles in Nevada are "buyers" under Nev. Rev. Stat. § 104.2103(1)(a) and "lessees" under § 104A.2103(n).

2522. The Automaker Defendants issued an express written warranty for each defective Class Vehicle they sold, including that:

a.     The Class Vehicles would be free of defects in materials and workmanship at the time of sale; and

b.     The Class Vehicles were safe and reliable, and their airbags would function properly in the event of a crash.

2523. The warranties listed above formed the basis of the bargain with regard to Plaintiffs and Class Members' purchase and lease of the Class Vehicles.

2524. The Automaker Defendants knowingly breached their warranty for the Class Vehicles because:

a.     The airbag inflators have latent defects which have a dangerous propensity to cause the inflators to rupture and eject metal shrapnel, subjecting Plaintiffs and Class Members to the risk of loss and injury;

and

    b.    The Automaker Defendants denied, concealed, and misrepresented the Inflator Defect, in the process refusing to pay for or provide in a reasonably timely fashion the needed repairs and replacements for Plaintiffs and Class Members.

2525. The Automaker Defendants knew or should have known that the warranties were false and/or misleading. Specifically, the Automaker Defendants were aware of the Inflator Defect in the Class Vehicles, which made the vehicles inherently defective and dangerous at the time that they were sold and leased to Plaintiffs and Class Members.

2526. Plaintiffs and Class Members were exposed to the Automaker Defendants' misrepresentations, and they had no way of discerning that the Automaker Defendants' representations were false and misleading or otherwise learning the material facts that the Automaker Defendants had concealed or failed to disclose. Accordingly, Plaintiffs and Class Members reasonably relied on the Automaker Defendants' express warranties when purchasing or leasing their Class Vehicles.

2527. Plaintiffs and Class Members timely provided the Automaker Defendants notice of the issues raised in this count and this Complaint and an

opportunity to cure, as alleged in the paragraphs addressing Defendants' notice above.

2528. Alternatively, Plaintiffs and Class Members were excused from providing the Automaker Defendants with notice and an opportunity to cure the breach, because it would have been futile. As alleged above, the Automaker Defendants knew about the Defective Inflators for years; however, to date, the Automaker Defendants have not instituted a recall or any other repair program with respect to all of the Class Vehicles, or even acknowledged that the Inflator Defect exists in all of the Class Vehicles. Therefore, they have refused to recall or repair defective vehicles. Moreover, to the extent the Automaker Defendants have issued recalls, those recalls are inadequate because, *inter alia*: (a) they are belated because the Automaker Defendants knew about the Defective Inflators for years and did nothing to recall or remedy the serious safety defect; (b) with tens of millions of vehicles impacted in existing and potential future recalls, as a result of the Automaker Defendants' concealment of the Inflator Defect, the recalls cannot be implemented effectively due to supply constraints and resulting delays; (c) the recalls are incomplete, and apply to only a subset of the Class Vehicles.

2529. As a direct and proximate result of the Automaker Defendants' breach of their express warranties, the Class Vehicles were and are defective and the Inflator

Defect was not remedied. Therefore, Plaintiff and Class Members have been damaged, in an amount to be proven at trial, through their overpayment at the time of purchase or lease for the Class Vehicles with an undisclosed safety defect that would not be remedied.

  **b. Nevada Count 2: Breach of Implied Warranty of Merchantability (Nev. Rev. Stat. §§ 104.2314 and 104A.2212) Against the Automaker Defendants.**

2530. Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

2531. The Nevada Plaintiffs bring this count under Nevada law, individually and on behalf of the other members of the Nevada Subclasses against the Automaker Defendants for their respective Class Vehicles. For the remaining Automaker Defendants, Plaintiffs who purchased or leased their Class Vehicles in states with materially similar laws may represent subclasses under this count against those Automaker Defendants.

2532. For purposes of this count, members of the Nevada Subclasses shall be referred to as "Class Members."

2533. The Class Vehicles are "goods" under Nev. Rev. Stat. §§ 104.2105(1) and 104A.2103(1)(h).

2534. The Automaker Defendants are "merchants" of the Class Vehicles

under Nev. Rev. Stat. §§ 104.2104(1) and 104A.2103(3), "sellers" under § 104.2103(1)(c), and "lessors" under § 104A.2103(1)(p).

2535. Plaintiffs and Class Members who purchased and leased the Class Vehicles in Nevada are "buyers" under Nev. Rev. Stat. § 104.2103(1)(a) and "lessees" under § 104A.2103(n).

2536. Nevada law conferred an implied warranty that the Class Vehicles were in merchantable condition and fit for the ordinary purpose for which they were to be used pursuant to Nev. Rev. Stat. §§ 104.2314 and 104A.2212.

2537. The Class Vehicles are not merchantable, and as such the Automaker Defendants breached their implied warranties, because at the time of sale and all times thereafter:

a.   The Class Vehicles would not pass without objection in the automotive trade given the Inflator Defect;

b.   The Inflator Defect renders the Class Vehicles unsafe to drive and unfit for ordinary purposes;

c.   The Class Vehicles and the airbags therein were inadequately labeled as safe and reliable, and the labeling failed to disclose the Inflator Defect; and

d.   The Class Vehicles do not conform to their labeling, which represents

670

that the vehicles are safe and suitable for their intended use.

2538. Plaintiffs and Class Members timely provided the Automaker Defendants notice of the issues raised in this count and this Complaint and an opportunity to cure, as alleged in the paragraphs addressing Defendants' notice above.

2539. Alternatively, Plaintiffs and Class Members were excused from providing the Automaker Defendants with notice and an opportunity to cure the breach because it would have been futile. As alleged above, the Automaker Defendants have long known that the Class Vehicles contained the Defective Inflators, and that the Defective Inflators have caused airbags to malfunction in crashes involving the Class Vehicles; however, to date, the Automaker Defendants have not instituted a recall or any other repair program with respect to all of the Class Vehicles, or even acknowledged that the Inflator Defect exists in all of those Class Vehicles. Moreover, to the extent the Automaker Defendants have issued recalls, those recalls are inadequate because, inter alia: (a) they are belated because the Automaker Defendants knew about the Defective Inflators for years and did nothing to recall or remedy the serious safety defect; (b) with tens of millions of vehicles impacted in existing and potential future recalls, as a result of the Automaker Defendants' concealment of the Inflator Defect, the recalls cannot be implemented

effectively due to supply constraints and resulting delays; (c) the recalls are incomplete, and apply to only a subset of the Class Vehicles.

2540. Plaintiffs, individually and on behalf of Class Members, seek all available monetary damages (including actual, compensatory, and punitive damages), injunctive and equitable relief, and attorneys' fees and costs.

### c.   Nevada Count 3: Violation of the Nevada Consumer Practices Act (Nev. Rev. Stat. § 598.0903, *et seq.*) Against All Defendants.[31]

2541. Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

2542. The Nevada Plaintiffs bring this count under Nevada law, individually and on behalf of the other members of the Nevada Subclasses against the Automaker Defendants and Airbag Module Defendants for their respective Class Vehicles, and ARC. For the remaining Defendants, Plaintiffs who purchased or leased their Class Vehicles in states with materially similar laws may represent subclasses under this count against all other Defendants and ARC.

2543. For purposes of this count, members of the Nevada Subclasses shall be referred to as "Class Members."

---

[31] Plaintiffs bring this count against ARC and the Airbag Module Defendants based on their omissions and concealment of material facts only.

2544. For purposes of this count, ARC, the Automaker Defendants, and the Airbag Module Defendants shall be referred to as "Defendants."

2545. The Nevada Deceptive Trade Practices Act ("Nevada DTPA"), Nev. Rev. Stat. § 598.0903, et. seq. prohibits the use of deceptive trade practices in the course of business and occupation.

2546. In the course of their business, Defendants, through their agents, employees, and/or subsidiaries, violated the Nevada DTPA by knowingly and intentionally misrepresenting, omitting, concealing, and/or failing to disclose material facts regarding the reliability, safety, and performance of the Class Vehicles and the Defective Inflators, as detailed above.

2547. Defendants had an ongoing duty to Plaintiffs and Class Members to refrain from unfair or deceptive practices under the Nevada DTPA in the course of their business. Specifically, Defendants owed Plaintiffs and Class Members a duty to disclose all the material facts concerning the Defective Inflators in the Class Vehicles because:

    a.    Given ARC's design, development, testing and manufacture of the Defective Inflators and its experience and knowledge as experts and long-time veterans of the automotive industry, it, along with the Automaker Defendants and the Airbag Module Defendants, possessed

exclusive access to and was in a superior position to know the true facts about the Defective Inflators;

b.       Given the Airbag Module Defendants' role in the design, manufacture, and testing of the airbag modules with the Defective Inflators installed in them, and their experience and knowledge as experts and long-time veterans of the automotive industry, they, along with ARC and the Automaker Defendants, possessed exclusive access to and were in a superior position to know the true facts about the Defective Inflators;

c.       Given the Automaker Defendants' role in the design, manufacture, testing, and sale of Class Vehicles and Defective Inflators, and their experience and knowledge as experts and long-time veterans of the automotive industry, they, along with ARC and the Airbag Module Defendants, possessed exclusive access to and were in a superior position to know the true facts about the Defective Inflators;

d.       Given the Inflator Defect's hidden and technical nature, Plaintiffs and Class Members lack the sophisticated expertise in vehicle components and technology that would be necessary to discover the Inflator Defect on their own;

e.       Defendants knew that the Inflator Defect gave rise to serious safety

concerns for the consumers who purchased and leased the Class Vehicles;

f.      The Inflator Defect poses a severe risk of harm in that, among other things, the metal shrapnel can puncture and stab the occupants, causing severe and potentially fatal injuries;

g.      Defendants knew about and investigated the Inflator Defect, but then did not notify consumers about it or disclose the Inflator Defect to NHTSA, and the Automaker Defendants did not launch a comprehensive recall for all Class Vehicles, all of which individually and together deprived Plaintiffs of an opportunity that otherwise could have led them to discover the truth about the Inflator Defect in their Class Vehicles; and

h.      The Automaker Defendants made, helped to make, or conspired to make incomplete representations about the safety and reliability of the Class Vehicles and their airbags, while purposefully withholding material facts about a known safety defect. Because they volunteered to provide information about the Class Vehicles that they marketed and offered for sale and lease to consumers, the Automaker Defendants had the duty to disclose the whole truth.

2548. By misrepresenting the Class Vehicles as safe and reliable and the airbags installed in them as properly functioning and free from defects, and/or by failing to disclose and actively concealing the dangers and risk posed by the Inflator Defect to both consumers and NHTSA, Defendants engaged in one or more of the unfair or deceptive business practices in violation of the Nevada DTPA:

    a.    Representing that the Class Vehicles and/or the Defective Inflators installed in them have certifications which they do not have;

    b.    Representing that the Class Vehicles and/or the Defective Inflators installed in them have characteristics, uses, benefits, and qualities which they do not have;

    c.    Representing that the Class Vehicles and/or the Defective Inflators installed in them are of a particular standard, quality, and grade when they are not;

    d.    Advertising the Class Vehicles and/or the Defective Inflators installed in them with the intent not to sell or lease them as advertised;

    e.    Failing to disclose the Defective Inflators in connection with the sale of the Class Vehicles; and

    f.    Making an assertion of scientific fact in an advertisement which would cause a reasonable person to believe that the assertion is true.

676

Nev. Rev. Stat. §§ 598.0915(5), (7), (9), (15), 598.0923(2), and 598.0925.

2549. Defendants' unfair or deceptive acts or practices, including their misrepresentations, concealments, omissions, and/or suppressions of material facts, were designed to mislead and had a tendency or capacity to mislead and create a false impression in consumers that the Class Vehicles had properly-functioning and reliable airbags. Indeed, those misrepresentations, concealments, omissions, and suppressions of material facts did in fact deceive reasonable consumers, including Plaintiffs and Class Members, about the true safety and reliability of the Class Vehicles and/or the Defective Inflators installed in them, the quality of the Class Vehicles, and the true value of the Class Vehicles.

2550. Defendants intended for Plaintiffs and Class Members to rely on their misrepresentations, omissions, and concealment—which they did by purchasing and leasing the Class Vehicles at the prices they paid believing that their vehicles would not have an Inflator Defect that would affect the quality, reliability, and safety of the Class Vehicles and their airbags.

2551. Defendants' misrepresentations, concealments, omissions, and suppressions of material facts regarding the Inflator Defect and true characteristics of the Class Vehicles were material to the decisions of Plaintiffs and Class Members to purchase and lease those vehicles, as Defendants intended. Plaintiffs and Class

Members were exposed to those misrepresentations, concealments, omissions, and suppressions of material facts, and relied on Defendants' misrepresentations that the Class Vehicles and their airbags were safe and reliable in deciding to purchase and lease the Class Vehicles.

2552. Plaintiffs' and Class Members' reliance was reasonable, as they had no way of discerning that Defendants' representations were false and misleading, or otherwise learning the facts that Defendants had concealed or failed to disclose. Plaintiffs and Class Members did not, and could not, unravel Defendants' deception on their own.

2553. Had they known the truth about the Inflator Defect, Plaintiffs and Class Members would not have purchased or leased the Class Vehicles, or would have paid significantly less for them.

2554. As a direct and proximate result of Defendants' deceptive practices, Plaintiffs and Class Members have sustained economic injury and loss—either by purchasing a vehicle they otherwise would not have purchased or paying more than they otherwise would have as a result of Defendants' actions and omissions alleged above—that first occurred at the time each Class Vehicle was purchased or leased.

2555. Defendants' violations present a continuing risk to Plaintiffs and Class Members, as well as to the general public, because the Class Vehicles remain unsafe

due to the Defective Inflators therein. Defendants' unlawful acts and practices complained of herein affect the public interest.

2556.  Pursuant to Nev. Rev. Stat. § 41.600, Plaintiffs and Class Members seek an order enjoining the above unfair or deceptive acts or practices and awarding actual damages, punitive damages, and any other just and proper relief available under the Nevada DTPA against all Defendants.

### d.    Nevada Count 4: Fraud by Omission and Concealment Against All Defendants.

2557. Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

2558.  The Nevada Plaintiffs bring this count under Nevada law, individually and on behalf of the other members of the Nevada Subclasses against the Automaker Defendants and Airbag Module Defendants for their respective Class Vehicles, and ARC. For the remaining Defendants, Plaintiffs who purchased or leased their Class Vehicles in states with materially similar laws may represent subclasses under this count against all other Defendants and ARC.

2559.  For purposes of this count, members of the Nevada Subclasses shall be referred to as "Class Members."

2560.  For purposes of this count, ARC, the Automaker Defendants, and the

679

Airbag Module Defendants shall be referred to as "Defendants."

2561. Defendants are liable for both fraudulent concealment and non-disclosure. *See, e.g.*, Restatement (Second) of Torts §§ 550-51 (1977).

2562. Defendants owed Plaintiffs and Class Members a duty to disclose all the material facts concerning the Defective Inflators in the Class Vehicles because:

a.  Given the Automaker Defendants' role in the design, manufacture, testing, and sale of Class Vehicles and Defective Inflators, and their experience and knowledge as experts and long-time veterans of the automotive industry, they, along with ARC and the Airbag Module Defendants, possessed exclusive access to and were in a superior position to know the true facts about the Defective Inflators;

b.  Given ARC's design, development, testing and manufacture of the Defective Inflators and its experience and knowledge as experts and long-time veterans of the automotive industry, it, along with the Automaker Defendants and the Airbag Module Defendants, possessed exclusive access to and was in a superior position to know the true facts about the Defective Inflators;

c.  Given the Airbag Module Defendants' role in the design, manufacture, and testing of the airbag modules with the Defective Inflators installed

in them, and their experience and knowledge as experts and long-time veterans of the automotive industry, they, along with ARC and the Automaker Defendants, possessed exclusive access to and were in a superior position to know the true facts about the Defective Inflators;

d.    Given the Inflator Defect's hidden and technical nature, Plaintiffs and Class Members lack the sophisticated expertise in vehicle components and technology that would be necessary to discover the Inflator Defect on their own;

e.    Defendants knew that the Inflator Defect gave rise to serious safety concerns for the consumers who purchased and leased the Class Vehicles;

f.    The Inflator Defect poses a severe risk of harm in that, among other things, the metal shrapnel can puncture and stab the occupants, causing severe and potentially fatal injuries;

g.    Defendants knew about and investigated the Inflator Defect, but then did not notify consumers about it, disclose the Inflator Defect to NHTSA, or further launch a comprehensive recall for all Class Vehicles, which individually and together deprived Plaintiffs of an opportunity that otherwise could have led them to discover the truth

about the Inflator Defect in their Class Vehicles; and

h.    The Automaker Defendants made, helped to make, or conspired to make incomplete representations about the safety and reliability of the Class Vehicles and their airbags, while purposefully withholding material facts about a known safety defect. Because they volunteered to provide information about the Class Vehicles that they marketed and offered for sale and lease to consumers, the Automaker Defendants had the duty to disclose the whole truth.

2563. In breach of their duties, Defendants failed to disclose the Inflator Defect and that the Class Vehicles' airbags were not safe and reliable to Plaintiffs and Class Members in connection with the sale of the Class Vehicles.

2564. The Inflator Defect within the Class Vehicles is material to the sale of the Class Vehicles because a reasonable person would find it important in purchasing, leasing, or retaining a new or used motor vehicle and because it directly impacts the value of the Class Vehicles purchased or leased by Plaintiffs and Class Members.

2565. Defendants intended for Plaintiffs and Class Members to rely on their omissions and concealment—which they did by purchasing and leasing the Class Vehicles at the prices they paid believing that their vehicles would not have an

Inflator Defect that would affect the quality, reliability, and safety of the Class Vehicles and their airbags.

2566. Plaintiffs' and Class Members' reliance was reasonable because a reasonable consumer would not have expected that the Class Vehicles contained a safety defect that poses such a serious risk. They had no way of learning the facts that Defendants had concealed or failed to disclose. Plaintiffs and Class Members did not, and could not, unravel Defendants' deception on their own.

2567. Defendants actively concealed and suppressed these material facts, in whole or in part, to maintain a market for the Class Vehicles and the Defective Inflators installed in them, to protect profits, and to avoid costly recalls that would expose them to liability for those expenses and harm the commercial reputations of Defendants and their products. They did so at the expense of Plaintiffs and Class Members.

2568. If Defendants had fully and adequately disclosed the Inflator Defect to consumers, Plaintiffs and Class Members would have seen such a disclosure.

2569. Through their omissions and concealment with respect to the Inflator Defect within the Class Vehicles, Defendants intended to induce, and did induce, Plaintiffs and Class Members to either purchase a Class Vehicle that they otherwise would not have purchased, or pay more for a Class Vehicle than they otherwise

would have paid.

2570. Had Plaintiffs and Class Members known of the Inflator Defect within the Class Vehicles, they would not have purchased the Class Vehicles or would have paid less for them.

2571. As a direct and proximate result of Defendants' omissions and concealment, Plaintiffs and other Class Members either overpaid for the Class Vehicles or would not have purchased the Class Vehicles at all if the Inflator Defect had been disclosed to them. Accordingly, Defendants are liable to Plaintiffs and Class Members for their damages in an amount to be proven at trial.

2572. Defendants acted maliciously, oppressively, deliberately, with intent to defraud; in reckless disregard of the Plaintiffs' and Class Members' rights and well-being; and to enrich themselves. Defendants' misconduct warrants an assessment of punitive damages, as permitted by law, in an amount sufficient to deter such conduct in the future, which amount shall be determined according to proof at trial.

      e.    **Nevada Count 5: Unjust Enrichment Against the Automaker Defendants.**

2573. Plaintiffs reallege and incorporate by reference all allegations in Volume 1 of the Consolidated Class Action Complaint as though fully set forth herein.

2574. The Nevada Plaintiffs bring this count under Nevada law, individually and on behalf of the other members of the Nevada Subclasses against the Automaker Defendants for their respective Class Vehicles. For the remaining Automaker Defendants, Plaintiffs who purchased or leased their Class Vehicles in states with materially similar laws may represent subclasses under this count against those Automaker Defendants.

2575. For purposes of this count, members of the Nevada Subclasses shall be referred to as "Class Members."

2576. When they purchased and leased the Class Vehicles, Plaintiffs and Class Members conferred tangible and material economic benefits upon the Automaker Defendants, who readily accepted and retained these benefits.

2577. Plaintiffs and Class Members would not have purchased or leased their Class Vehicles, or would have paid less for them, had they known of the Inflator Defect at the time of purchase or lease. Therefore, the Automaker Defendants profited from the sale and lease of the Class Vehicles to the detriment and expense of Plaintiffs and Class Members.

2578. The Automaker Defendants appreciated these economic benefits. These benefits were the expected result of the Automaker Defendants acting in their pecuniary interest at the expense of their customers. They knew of these benefits

because they were aware of the Inflator Defect, yet they failed to disclose this knowledge and misled the Plaintiffs and Class Members regarding the nature and quality of the Class Vehicles while profiting from this deception.

2579. It would be unjust, inequitable, and unconscionable for the Automaker Defendants to retain these benefits, including because they were procured as a result of their wrongful conduct alleged above.

2580. Plaintiffs and Class Members are entitled to restitution of the benefits the Automaker Defendants unjustly retained and/or any amounts necessary to return Plaintiffs and Class Members to the position they occupied prior to dealing with those Defendants, with such amounts to be determined at trial.

2581. Plaintiffs plead this claim separately as well as in the alternative to their claims for damages under Fed. R. Civ. P. 8(a)(3), because if the Court dismisses Plaintiffs' claims for damages enters judgment on them in favor of the Automaker Defendants, Plaintiffs will have no adequate legal remedy.

## 30. New Hampshire

### a. New Hampshire Count 1: Breach of Express Warranty (N.H. Rev. Stat. §§ 382-A:2-313 and 382-A:2A-210) Against the Automaker Defendants.

2582. Plaintiffs reallege and incorporate by reference all preceding

allegations as though fully set forth herein.

2583. The New Hampshire Plaintiff brings this count under New Hampshire law, individually and on behalf of the other members of the New Hampshire Subclasses against the Automaker Defendants for his or her respective Class Vehicle(s). For the remaining Automaker Defendants, Plaintiffs who purchased or leased their Class Vehicles in states with materially similar laws may represent subclasses under this count against those Automaker Defendants.

2584. For purposes of this count, members of the New Hampshire Subclasses shall be referred to as "Class Members."

2585. The Class Vehicles are "goods" under N.H. Rev. Stat. §§ 382-A:2-105(1) and 382-A:2A-103(1)(h).

2586. The Automaker Defendants are "merchants" of the Class Vehicles under N.H. Rev. Stat. § 382-A:2-104(1), "sellers" under § 382-A:2-103(1)(d), and "lessors" under § 382-A:2A-103(1)(p).

2587. Plaintiffs and Class Members who purchased and leased the Class Vehicles in New Hampshire are "buyers" under N.H. Rev. Stat. § 382-A:2-103(1)(a) and "lessees" under § 382-A:2A-103(n).

2588. The Automaker Defendants issued an express written warranty for each defective Class Vehicle they sold, including that:

a.     The Class Vehicles would be free of defects in materials and workmanship at the time of sale; and

b.     The Class Vehicles were safe and reliable, and their airbags would function properly in the event of a crash.

2589. The warranties listed above formed the basis of the bargain with regard to Plaintiffs and Class Members' purchase and lease of the Class Vehicles.

2590. The Automaker Defendants knowingly breached their warranty for the Class Vehicles because:

a.     The airbag inflators have latent defects which have a dangerous propensity to cause the inflators to rupture and eject metal shrapnel, subjecting Plaintiffs and Class Members to the risk of loss and injury; and

b.     The Automaker Defendants denied, concealed, and misrepresented the Inflator Defect, in the process refusing to pay for or provide in a reasonably timely fashion the needed repairs and replacements for Plaintiffs and Class Members.

2591. The Automaker Defendants knew or should have known that the warranties were false and/or misleading. Specifically, the Automaker Defendants were aware of the Inflator Defect in the Class Vehicles, which made the vehicles

inherently defective and dangerous at the time that they were sold and leased to Plaintiffs and Class Members.

2592. Plaintiffs and Class Members were exposed to the Automaker Defendants' misrepresentations, and they had no way of discerning that the Automaker Defendants' representations were false and misleading or otherwise learning the material facts that the Automaker Defendants had concealed or failed to disclose. Accordingly, Plaintiffs and Class Members reasonably relied on the Automaker Defendants' express warranties when purchasing or leasing their Class Vehicles.

2593. Plaintiffs and Class Members timely provided the Automaker Defendants notice of the issues raised in this count and this Complaint and an opportunity to cure, as alleged in the paragraphs addressing Defendants' notice above.

2594. Alternatively, Plaintiffs and Class Members were excused from providing the Automaker Defendants with notice and an opportunity to cure the breach, because it would have been futile. As alleged above, the Automaker Defendants knew about the Defective Inflators for years; however, to date, the Automaker Defendants have not instituted a recall or any other repair program with respect to all of the Class Vehicles, or even acknowledged that the Inflator Defect

exists in all of the Class Vehicles. Therefore, they have refused to recall or repair defective vehicles. Moreover, to the extent the Automaker Defendants have issued recalls, those recalls are inadequate because, *inter alia*: (a) they are belated because the Automaker Defendants knew about the Defective Inflators for years and did nothing to recall or remedy the serious safety defect; (b) with tens of millions of vehicles impacted in existing and potential future recalls, as a result of the Automaker Defendants' concealment of the Inflator Defect, the recalls cannot be implemented effectively due to supply constraints and resulting delays; (c) the recalls are incomplete, and apply to only a subset of the Class Vehicles.

2595. As a direct and proximate result of the Automaker Defendants' breach of their express warranties, the Class Vehicles were and are defective and the Inflator Defect was not remedied. Therefore, Plaintiff and Class Members have been damaged, in an amount to be proven at trial, through their overpayment at the time of purchase or lease for the Class Vehicles with an undisclosed safety defect that would not be remedied.

> **b.    New Hampshire Count 2: Breach of Implied Warranty of Merchantability (N.H. Rev. Stat. §§ 382-A:2-314 and 382-A:2A-212) Against the Automaker Defendants.**

2596. Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

2597. The New Hampshire Plaintiff brings this count under New Hampshire law, individually and on behalf of the other members of the New Hampshire Subclasses against the Automaker Defendants for his or her respective Class Vehicle(s). For the remaining Automaker Defendants, Plaintiffs who purchased or leased their Class Vehicles in states with materially similar laws may represent subclasses under this count against those Automaker Defendants.

2598. For purposes of this count, members of the New Hampshire Subclasses shall be referred to as "Class Members."

2599. The Class Vehicles are "goods" under N.H. Rev. Stat. §§ 382-A:2-105(1) and 382-A:2A-103(1)(h).

2600. The Automaker Defendants are "merchants" of the Class Vehicles under N.H. Rev. Stat. § 382-A:2-104(1), "sellers" under § 382-A:2-103(1)(d), and "lessors" under § 382-A:2A-103(1)(p).

2601. Plaintiffs and Class Members who purchased and leased the Class Vehicles in New Hampshire are "buyers" under N.H. Rev. Stat. § 382-A:2-103(1)(a) and "lessees" under § 382-A:2A-103(n).

2602. New Hampshire law conferred an implied warranty that the Class Vehicles were in merchantable condition and fit for the ordinary purpose for which they were to be used pursuant to N.H. Rev. Stat. §§ 382-A:2-314 and 382-A:2A-

691

212.

2603. The Class Vehicles are not merchantable, and as such the Automaker Defendants breached their implied warranties, because at the time of sale and all times thereafter:

a. The Class Vehicles would not pass without objection in the automotive trade given the Inflator Defect;

b. The Inflator Defect renders the Class Vehicles unsafe to drive and unfit for ordinary purposes;

c. The Class Vehicles and the airbags therein were inadequately labeled as safe and reliable, and the labeling failed to disclose the Inflator Defect; and

d. The Class Vehicles do not conform to their labeling, which represents that the vehicles are safe and suitable for their intended use.

2604. Plaintiffs and Class Members timely provided the Automaker Defendants notice of the issues raised in this count and this Complaint and an opportunity to cure, as alleged in the paragraphs addressing Defendants' notice above.

2605. Alternatively, Plaintiffs and Class Members were excused from providing the Automaker Defendants with notice and an opportunity to cure the

breach because it would have been futile. As alleged above, the Automaker Defendants have long known that the Class Vehicles contained the Defective Inflators, and that the Defective Inflators have caused airbags to malfunction in crashes involving the Class Vehicles; however, to date, the Automaker Defendants have not instituted a recall or any other repair program with respect to all of the Class Vehicles, or even acknowledged that the Inflator Defect exists in all of those Class Vehicles. Moreover, to the extent the Automaker Defendants have issued recalls, those recalls are inadequate because, inter alia: (a) they are belated because the Automaker Defendants knew about the Defective Inflators for years and did nothing to recall or remedy the serious safety defect; (b) with tens of millions of vehicles impacted in existing and potential future recalls, as a result of the Automaker Defendants' concealment of the Inflator Defect, the recalls cannot be implemented effectively due to supply constraints and resulting delays; (c) the recalls are incomplete, and apply to only a subset of the Class Vehicles.

2606. Plaintiffs, individually and on behalf of Class Members, seek all available monetary damages (including actual, compensatory, and punitive damages), injunctive and equitable relief, and attorneys' fees and costs.

### c. New Hampshire Count 3: Violation of the New Hampshire Consumer Practices Act (N.H. Rev. Stat. § 358-A:1, *et seq.*) Against All Defendants.[32]

2607. Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

2608. The New Hampshire Plaintiff brings this count under New Hampshire law, individually and on behalf of the other members of the New Hampshire Subclasses against the Automaker Defendants and Airbag Module Defendants for his or her respective Class Vehicle(s), and ARC. For the remaining Defendants, Plaintiffs who purchased or leased their Class Vehicles in states with materially similar laws may represent subclasses under this count against all other Defendants and ARC.

2609. For purposes of this count, members of the New Hampshire Subclasses shall be referred to as "Class Members."

2610. For purposes of this count, ARC, the Automaker Defendants, and the Airbag Module Defendants shall be referred to as "Defendants."

2611. Defendants, Plaintiffs, and Class Members are "persons" under N.H. Rev. Stat. § 358-A:1.

---

[32] Plaintiffs bring this count against ARC and the Airbag Module Defendants based on their omissions and concealment of material facts only.

694

2612. Defendants engaged in "trade" and "commerce" under N.H. Rev. Stat. § 358-A:1.

2613. The New Hampshire Consumer Protection Act ("New Hampshire CPA") declares it unlawful "for any person to use any unfair method of competition or any unfair or deceptive act or practice in the conduct of any trade or commerce within this state." N.H. Rev. Stat. § 358-A:2.

2614. In the course of their business, Defendants, through their agents, employees, and/or subsidiaries, violated the New Hampshire CPA by knowingly and intentionally misrepresenting, omitting, concealing, and/or failing to disclose material facts regarding the reliability, safety, and performance of the Class Vehicles and the Defective Inflators, as detailed above.

2615. Defendants had an ongoing duty to Plaintiffs and Class Members to refrain from unfair or deceptive practices under the New Hampshire CPA in the course of their business. Specifically, Defendants owed Plaintiffs and Class Members a duty to disclose all the material facts concerning the Defective Inflators in the Class Vehicles because:

a. Given ARC's design, development, testing and manufacture of the Defective Inflators and its experience and knowledge as experts and long-time veterans of the automotive industry, it, along with the

695

Automaker Defendants and the Airbag Module Defendants, possessed exclusive access to and was in a superior position to know the true facts about the Defective Inflators;

b.  Given the Airbag Module Defendants' role in the design, manufacture, and testing of the airbag modules with the Defective Inflators installed in them, and their experience and knowledge as experts and long-time veterans of the automotive industry, they, along with ARC and the Automaker Defendants, possessed exclusive access to and were in a superior position to know the true facts about the Defective Inflators;

c.  Given the Automaker Defendants' role in the design, manufacture, testing, and sale of Class Vehicles and Defective Inflators, and their experience and knowledge as experts and long-time veterans of the automotive industry, they, along with ARC and the Airbag Module Defendants, possessed exclusive access to and were in a superior position to know the true facts about the Defective Inflators;

d.  Given the Inflator Defect's hidden and technical nature, Plaintiffs and Class Members lack the sophisticated expertise in vehicle components and technology that would be necessary to discover the Inflator Defect on their own;

696

e. Defendants knew that the Inflator Defect gave rise to serious safety concerns for the consumers who purchased and leased the Class Vehicles;

f. The Inflator Defect poses a severe risk of harm in that, among other things, the metal shrapnel can puncture and stab the occupants, causing severe and potentially fatal injuries;

g. Defendants knew about and investigated the Inflator Defect, but then did not notify consumers about it or disclose the Inflator Defect to NHTSA, and the Automaker Defendants did not launch a comprehensive recall for all Class Vehicles, all of which individually and together deprived Plaintiffs of an opportunity that otherwise could have led them to discover the truth about the Inflator Defect in their Class Vehicles; and

h. The Automaker Defendants made, helped to make, or conspired to make incomplete representations about the safety and reliability of the Class Vehicles and their airbags, while purposefully withholding material facts about a known safety defect. Because they volunteered to provide information about the Class Vehicles that they marketed and offered for sale and lease to consumers, the Automaker Defendants had

the duty to disclose the whole truth.

2616. By misrepresenting the Class Vehicles as safe and reliable and the airbags installed in them as properly functioning and free from defects, and/or by failing to disclose and actively concealing the dangers and risk posed by the Inflator Defect to both consumers and NHTSA, Defendants engaged in one or more of the unfair or deceptive business practices in violation of the New Hampshire CPA:

a.   Representing that the Class Vehicles and/or the Defective Inflators installed in them have characteristics, uses, benefits, or qualities which they do not have;

b.   Representing that the Class Vehicles and/or the Defective Inflators installed in them are of a particular standard, quality, and grade when they are not;

c.   Advertising the Class Vehicles and/or the Defective Inflators installed in them with the intent not to sell or lease them as advertised.

N.H. Rev. Stat. §§ 358-A:2(III), (VII), (IX).

2617. Defendants' unfair or deceptive acts or practices, including their misrepresentations, concealments, omissions, and/or suppressions of material facts, were designed to mislead and had a tendency or capacity to mislead and create a false impression in consumers that the Class Vehicles had properly-functioning and

reliable airbags. Indeed, those misrepresentations, concealments, omissions, and suppressions of material facts did in fact deceive reasonable consumers, including Plaintiffs and Class Members, about the true safety and reliability of the Class Vehicles and/or the Defective Inflators installed in them, the quality of the Class Vehicles, and the true value of the Class Vehicles.

2618. Defendants intended for Plaintiffs and Class Members to rely on their misrepresentations, omissions, and concealment—which they did by purchasing and leasing the Class Vehicles at the prices they paid believing that their vehicles would not have an Inflator Defect that would affect the quality, reliability, and safety of the Class Vehicles and their airbags.

2619. Defendants' misrepresentations, concealments, omissions, and suppressions of material facts regarding the Inflator Defect and true characteristics of the Class Vehicles were material to the decisions of Plaintiffs and Class Members to purchase and lease those vehicles, as Defendants intended. Plaintiffs and Class Members were exposed to those misrepresentations, concealments, omissions, and suppressions of material facts, and relied on Defendants' misrepresentations that the Class Vehicles and their airbags were safe and reliable in deciding to purchase and lease the Class Vehicles.

2620. Plaintiffs' and Class Members' reliance was reasonable, as they had no

way of discerning that Defendants' representations were false and misleading, or otherwise learning the facts that Defendants had concealed or failed to disclose. Plaintiffs and Class Members did not, and could not, unravel Defendants' deception on their own.

2621. Had they known the truth about the Inflator Defect, Plaintiffs and Class Members would not have purchased or leased the Class Vehicles, or would have paid significantly less for them.

2622. As a direct and proximate result of Defendants' deceptive practices, Plaintiffs and Class Members have sustained economic injury and loss—either by purchasing a vehicle they otherwise would not have purchased or paying more than they otherwise would have as a result of Defendants' actions and omissions alleged above—that first occurred at the time each Class Vehicle was purchased or leased.

2623. Defendants' violations present a continuing risk to Plaintiffs and Class Members, as well as to the general public, because the Class Vehicles remain unsafe due to the Defective Inflators therein. Defendants' unlawful acts and practices complained of herein affect the public interest.

2624. Pursuant to N.H. Rev. Stat. § 358-A:10, Plaintiffs and Class Members seek an order enjoining the above unfair or deceptive acts or practices and awarding actual damages, punitive damages, and any other just and proper relief available

under the New Hampshire CPA against all Defendants.

### d. New Hampshire Count 4: Fraud by Omission and Concealment Against All Defendants.

2625. Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

2626. The New Hampshire Plaintiff brings this count under New Hampshire law, individually and on behalf of the other members of the New Hampshire Subclasses against the Automaker Defendants and Airbag Module Defendants for his or her respective Class Vehicle(s), and ARC. For the remaining Defendants, Plaintiffs who purchased or leased their Class Vehicles in states with materially similar laws may represent subclasses under this count against all other Defendants and ARC.

2627. For purposes of this count, members of the New Hampshire Subclasses shall be referred to as "Class Members."

2628. For purposes of this count, ARC, the Automaker Defendants, and the Airbag Module Defendants shall be referred to as "Defendants."

2629. Defendants are liable for both fraudulent concealment and non-disclosure. *See, e.g.*, Restatement (Second) of Torts §§ 550-51 (1977).

2630. Defendants owed Plaintiffs and Class Members a duty to disclose all

701

the material facts concerning the Defective Inflators in the Class Vehicles because:

a.  Given the Automaker Defendants' role in the design, manufacture, testing, and sale of Class Vehicles and Defective Inflators, and their experience and knowledge as experts and long-time veterans of the automotive industry, they, along with ARC and the Airbag Module Defendants, possessed exclusive access to and were in a superior position to know the true facts about the Defective Inflators;

b.  Given ARC's design, development, testing and manufacture of the Defective Inflators and its experience and knowledge as experts and long-time veterans of the automotive industry, it, along with the Automaker Defendants and the Airbag Module Defendants, possessed exclusive access to and was in a superior position to know the true facts about the Defective Inflators;

c.  Given the Airbag Module Defendants' role in the design, manufacture, and testing of the airbag modules with the Defective Inflators installed in them, and their experience and knowledge as experts and long-time veterans of the automotive industry, they, along with ARC and the Automaker Defendants, possessed exclusive access to and were in a superior position to know the true facts about the Defective Inflators;

d.      Given the Inflator Defect's hidden and technical nature, Plaintiffs and Class Members lack the sophisticated expertise in vehicle components and technology that would be necessary to discover the Inflator Defect on their own;

e.      Defendants knew that the Inflator Defect gave rise to serious safety concerns for the consumers who purchased and leased the Class Vehicles;

f.      The Inflator Defect poses a severe risk of harm in that, among other things, the metal shrapnel can puncture and stab the occupants, causing severe and potentially fatal injuries;

g.      Defendants knew about and investigated the Inflator Defect, but then did not notify consumers about it, disclose the Inflator Defect to NHTSA, or further launch a comprehensive recall for all Class Vehicles, which individually and together deprived Plaintiffs of an opportunity that otherwise could have led them to discover the truth about the Inflator Defect in their Class Vehicles; and

h.      The Automaker Defendants made, helped to make, or conspired to make incomplete representations about the safety and reliability of the Class Vehicles and their airbags, while purposefully withholding

material facts about a known safety defect. Because they volunteered to provide information about the Class Vehicles that they marketed and offered for sale and lease to consumers, the Automaker Defendants had the duty to disclose the whole truth.

2631. In breach of their duties, Defendants failed to disclose the Inflator Defect and that the Class Vehicles' airbags were not safe and reliable to Plaintiffs and Class Members in connection with the sale of the Class Vehicles.

2632. The Inflator Defect within the Class Vehicles is material to the sale of the Class Vehicles because a reasonable person would find it important in purchasing, leasing, or retaining a new or used motor vehicle and because it directly impacts the value of the Class Vehicles purchased or leased by Plaintiffs and Class Members.

2633. Defendants intended for Plaintiffs and Class Members to rely on their omissions and concealment—which they did by purchasing and leasing the Class Vehicles at the prices they paid believing that their vehicles would not have an Inflator Defect that would affect the quality, reliability, and safety of the Class Vehicles and their airbags.

2634. Plaintiffs' and Class Members' reliance was reasonable because a reasonable consumer would not have expected that the Class Vehicles contained a

safety defect that poses such a serious risk. They had no way of learning the facts that Defendants had concealed or failed to disclose. Plaintiffs and Class Members did not, and could not, unravel Defendants' deception on their own.

2635. Defendants actively concealed and suppressed these material facts, in whole or in part, to maintain a market for the Class Vehicles and the Defective Inflators installed in them, to protect profits, and to avoid costly recalls that would expose them to liability for those expenses and harm the commercial reputations of Defendants and their products. They did so at the expense of Plaintiffs and Class Members.

2636. If Defendants had fully and adequately disclosed the Inflator Defect to consumers, Plaintiffs and Class Members would have seen such a disclosure.

2637. Through their omissions and concealment with respect to the Inflator Defect within the Class Vehicles, Defendants intended to induce, and did induce, Plaintiffs and Class Members to either purchase a Class Vehicle that they otherwise would not have purchased, or pay more for a Class Vehicle than they otherwise would have paid.

2638. Had Plaintiffs and Class Members known of the Inflator Defect within the Class Vehicles, they would not have purchased the Class Vehicles or would have paid less for them.

2639. As a direct and proximate result of Defendants' omissions and concealment, Plaintiffs and other Class Members either overpaid for the Class Vehicles or would not have purchased the Class Vehicles at all if the Inflator Defect had been disclosed to them. Accordingly, Defendants are liable to Plaintiffs and Class Members for their damages in an amount to be proven at trial.

2640. Defendants acted maliciously, oppressively, deliberately, with intent to defraud; in reckless disregard of the Plaintiffs' and Class Members' rights and well-being; and to enrich themselves. Defendants' misconduct warrants an assessment of punitive damages, as permitted by law, in an amount sufficient to deter such conduct in the future, which amount shall be determined according to proof at trial.

e.    **New Hampshire Count 5: Unjust Enrichment Against the Automaker Defendants.**

2641. Plaintiffs reallege and incorporate by reference all allegations in Volume 1 of the Consolidated Class Action Complaint as though fully set forth herein.

2642. The New Hampshire Plaintiff brings this count under New Hampshire law, individually and on behalf of the other members of the New Hampshire Classes against the Automaker Defendants for his or her respective Class Vehicle(s). For the remaining Automaker Defendants, Plaintiffs who purchased or leased their Class

Vehicles in states with materially similar laws may represent subclasses under this count against those Automaker Defendants.

2643. For purposes of this count, members of the New Hampshire Subclasses shall be referred to as "Class Members."

2644. When they purchased and leased the Class Vehicles, Plaintiffs and Class Members conferred tangible and material economic benefits upon the Automaker Defendants, who readily accepted and retained these benefits.

2645. Plaintiffs and Class Members would not have purchased or leased their Class Vehicles, or would have paid less for them, had they known of the Inflator Defect at the time of purchase or lease. Therefore, the Automaker Defendants profited from the sale and lease of the Class Vehicles to the detriment and expense of Plaintiffs and Class Members.

2646. The Automaker Defendants appreciated these economic benefits. These benefits were the expected result of the Automaker Defendants acting in their pecuniary interest at the expense of their customers. They knew of these benefits because they were aware of the Inflator Defect, yet they failed to disclose this knowledge and misled the Plaintiffs and Class Members regarding the nature and quality of the Class Vehicles while profiting from this deception.

2647. It would be unjust, inequitable, and unconscionable for the Automaker

Defendants to retain these benefits, including because they were procured as a result of their wrongful conduct alleged above.

2648. Plaintiffs and Class Members are entitled to restitution of the benefits the Automaker Defendants unjustly retained and/or any amounts necessary to return Plaintiffs and Class Members to the position they occupied prior to dealing with those Defendants, with such amounts to be determined at trial.

2649. Plaintiffs plead this claim separately as well as in the alternative to their claims for damages under Fed. R. Civ. P. 8(a)(3), because if the Court dismisses Plaintiffs' claims for damages enters judgment on them in favor of the Automaker Defendants, Plaintiffs will have no adequate legal remedy.

2650. The Utah Truth in Advertising Law makes unlawful any deceptive practice undertaken in the course of a person's business. Utah Code Ann. § 13-11a-3.

2651. In the course of their business, Defendants, through their agents, employees, and/or subsidiaries, violated the Utah Truth in Advertising Law by knowingly and intentionally misrepresenting, omitting, concealing, and/or failing to disclose material facts regarding the reliability, safety, and performance of the Class Vehicles and the Defective Inflators, as detailed above.

2652. Defendants had an ongoing duty to Plaintiffs and Class Members to

refrain from unfair or deceptive practices under the Utah Truth in Advertising Law in the course of their business. Specifically, Defendants owed Plaintiffs and Class Members a duty to disclose all the material facts concerning the Defective Inflators in the Class Vehicles because:

    a.    Given ARC's design, development, testing and manufacture of the Defective Inflators and its experience and knowledge as experts and long-time veterans of the automotive industry, it, along with the Automaker Defendants and the Airbag Module Defendants, possessed exclusive access to and was in a superior position to know the true facts about the Defective Inflators;

    b.    Given the Airbag Module Defendants' role in the design, manufacture, and testing of the airbag modules with the Defective Inflators installed in them, and their experience and knowledge as experts and long-time veterans of the automotive industry, they, along with ARC and the Automaker Defendants, possessed exclusive access to and were in a superior position to know the true facts about the Defective Inflators;

    c.    Given the Automaker Defendants' role in the design, manufacture, testing, and sale of Class Vehicles and Defective Inflators, and their experience and knowledge as experts and long-time veterans of the

automotive industry, they, along with ARC and the Airbag Module Defendants, possessed exclusive access to and were in a superior position to know the true facts about the Defective Inflators;

d.    Given the Inflator Defect's hidden and technical nature, Plaintiffs and Class Members lack the sophisticated expertise in vehicle components and technology that would be necessary to discover the Inflator Defect on their own;

e.    Defendants knew that the Inflator Defect gave rise to serious safety concerns for the consumers who purchased and leased the Class Vehicles;

f.    The Inflator Defect poses a severe risk of harm in that, among other things, the metal shrapnel can puncture and stab the occupants, causing severe and potentially fatal injuries;

g.    Defendants knew about and investigated the Inflator Defect, but then did not notify consumers about it or disclose the Inflator Defect to NHTSA, and the Automaker Defendants did not launch a comprehensive recall for all Class Vehicles, all of which individually and together deprived Plaintiffs of an opportunity that otherwise could have led them to discover the truth about the Inflator Defect in their

710

Class Vehicles; and

h.      The Automaker Defendants made, helped to make, or conspired to make incomplete representations about the safety and reliability of the Class Vehicles and their airbags, while purposefully withholding material facts about a known safety defect. Because they volunteered to provide information about the Class Vehicles that they marketed and offered for sale and lease to consumers, the Automaker Defendants had the duty to disclose the whole truth.

2653. By misrepresenting the Class Vehicles as safe and reliable and the airbags installed in them as properly functioning and free from defects, and/or by failing to disclose and actively concealing the dangers and risk posed by the Inflator Defect to both consumers and NHTSA, Defendants engaged in one or more of the following unfair or deceptive business practices in violation of the Utah Truth in Advertising Law:

a.      Causing likelihood of confusion or of misunderstanding as to the approval or certification of the Class Vehicles and the Defective Inflators installed in them.

b.      Representing that the Class Vehicles and the Defective Inflators installed in them have approval, characteristics, uses, or benefits that

they do not have;

c.      Representing that the Class Vehicles and the Defective Inflators installed in them were of a particular quality, grade, or standard when, in fact, they were not of that quality, grade, or standard;

d.      Advertising the Class Vehicles and the Defective Inflators installed in them with the intent not to sell or lease them as advertised; and

e.      Engaging in other conduct which created a likelihood of confusion or misunderstanding about the true characteristics of the Class Vehicles and the Defective Inflators installed in them.

Utah Code Ann. § 13-11a-3.

2654. Defendants' unfair or deceptive acts or practices, including their misrepresentations, concealments, omissions, and/or suppressions of material facts, were designed to mislead and had a tendency or capacity to mislead and create a false impression in consumers that the Class Vehicles had properly-functioning and reliable airbags. Indeed, those misrepresentations, concealments, omissions, and suppressions of material facts did in fact deceive reasonable consumers, including Plaintiffs and Class Members, about the true safety and reliability of the Class Vehicles and/or the Defective Inflators installed in them, the quality of the Class Vehicles, and the true value of the Class Vehicles.

712

2655. Defendants' misrepresentations, concealments, omissions, and suppressions of material facts regarding the Inflator Defect and true characteristics of the Class Vehicles were material to the decisions of Plaintiffs and Class Members to purchase and lease those vehicles, as Defendants intended. Plaintiffs and Class Members were exposed to those misrepresentations, concealments, omissions, and suppressions of material facts, and relied on Defendants' misrepresentations that the Class Vehicles and their airbags were safe and reliable in deciding to purchase and lease the Class Vehicles.

2656. Plaintiffs' and Class Members' reliance was reasonable, as they had no way of discerning that Defendants' representations were false and misleading, or otherwise learning the facts that Defendants had concealed or failed to disclose. Plaintiffs and Class Members did not, and could not, unravel Defendants' deception on their own.

2657. Had they known the truth about the Inflator Defect, Plaintiffs and Class Members would not have purchased or leased the Class Vehicles, or would have paid significantly less for them.

2658. As a direct and proximate result of Defendants' deceptive practices, Plaintiffs and Class Members have sustained economic injury and loss—either by purchasing a vehicle they otherwise would not have purchased or paying more than

713

they otherwise would have as a result of Defendants' actions and omissions alleged above—that first occurred at the time each Class Vehicle was purchased or leased.

2659. Defendants' violations present a continuing risk to Plaintiffs and Class Members, as well as to the general public, because the Class Vehicles remain unsafe due to the Defective Inflators therein. Defendants' unlawful acts and practices complained of herein affect the public interest.

2660. Pursuant to Utah Code Ann. § 13-11a-4, Plaintiffs and Class Members seek an order enjoining the above unfair or deceptive acts or practices and awarding actual damages, punitive damages, and any other just and proper relief available under the Utah CSPA against all Defendants.

### 31.    New Jersey

#### a.    New Jersey Count 1: Breach of Express Warranty (N.J. Stat. Ann. §§ 12A:2-313 and 12A:2A-210) Against the Automaker Defendants.

2661. Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

2662. The New Jersey Plaintiffs bring this count under New Jersey law, individually and on behalf of the other members of the New Jersey Subclasses against the Automaker Defendants for their respective Class Vehicles. For the remaining Automaker Defendants, Plaintiffs who purchased or leased their Class

Vehicles in states with materially similar laws may represent subclasses under this count against those Automaker Defendants.

2663.  For purposes of this count, members of the New Jersey Subclasses shall be referred to as "Class Members."

2664.  The Class Vehicles are "goods" under N.J. Stat. Ann. §§ 12A:2-105(1) and 12A:2A-103(1)(h).

2665.  The Automaker Defendants are "merchants" of the Class Vehicles under N.J. Stat. Ann. §§ 12A:2-104(1) and 12A:2A-103(3), "sellers" under § 12A:2-103(1)(d), and "lessors" under § 12A:2A-103(1)(p).

2666.  Plaintiffs and Class Members who purchased and leased the Class Vehicles in New Jersey are "buyers" under N.J. Stat. Ann. § 12A:2-103(1)(a) and "lessees" under § 12A:2A-103(1)(n).

2667.  The Automaker Defendants issued an express written warranty for each defective Class Vehicle they sold, including that:

a.    The Class Vehicles would be free of defects in materials and workmanship at the time of sale; and

b.    The Class Vehicles were safe and reliable, and their airbags would function properly in the event of a crash.

2668.  The warranties listed above formed the basis of the bargain with regard

715

to Plaintiffs and Class Members' purchase and lease of the Class Vehicles.

2669. The Automaker Defendants knowingly breached their warranty for the Class Vehicles because:

a.     The airbag inflators have latent defects which have a dangerous propensity to cause the inflators to rupture and eject metal shrapnel, subjecting Plaintiffs and Class Members to the risk of loss and injury; and

b.     The Automaker Defendants denied, concealed, and misrepresented the Inflator Defect, in the process refusing to pay for or provide in a reasonably timely fashion the needed repairs and replacements for Plaintiffs and Class Members.

2670. The Automaker Defendants knew or should have known that the warranties were false and/or misleading. Specifically, the Automaker Defendants were aware of the Inflator Defect in the Class Vehicles, which made the vehicles inherently defective and dangerous at the time that they were sold and leased to Plaintiffs and Class Members.

2671. Plaintiffs and Class Members were exposed to the Automaker Defendants' misrepresentations, and they had no way of discerning that the Automaker Defendants' representations were false and misleading or otherwise

learning the material facts that the Automaker Defendants had concealed or failed to disclose. Accordingly, Plaintiffs and Class Members reasonably relied on the Automaker Defendants' express warranties when purchasing or leasing their Class Vehicles.

2672. Plaintiffs and Class Members timely provided the Automaker Defendants notice of the issues raised in this count and this Complaint and an opportunity to cure, as alleged in the paragraphs addressing Defendants' notice above.

2673. Alternatively, Plaintiffs and Class Members were excused from providing the Automaker Defendants with notice and an opportunity to cure the breach, because it would have been futile. As alleged above, the Automaker Defendants knew about the Defective Inflators for years; however, to date, the Automaker Defendants have not instituted a recall or any other repair program with respect to all of the Class Vehicles, or even acknowledged that the Inflator Defect exists in all of the Class Vehicles. Therefore, they have refused to recall or repair defective vehicles. Moreover, to the extent the Automaker Defendants have issued recalls, those recalls are inadequate because, *inter alia*: (a) they are belated because the Automaker Defendants knew about the Defective Inflators for years and did nothing to recall or remedy the serious safety defect; (b) with tens of millions of

vehicles impacted in existing and potential future recalls, as a result of the Automaker Defendants' concealment of the Inflator Defect, the recalls cannot be implemented effectively due to supply constraints and resulting delays; (c) the recalls are incomplete, and apply to only a subset of the Class Vehicles.

2674. As a direct and proximate result of the Automaker Defendants' breach of their express warranties, the Class Vehicles were and are defective and the Inflator Defect was not remedied. Therefore, Plaintiff and Class Members have been damaged, in an amount to be proven at trial, through their overpayment at the time of purchase or lease for the Class Vehicles with an undisclosed safety defect that would not be remedied.

> **b.   New Jersey Count 2: Breach of Implied Warranty of Merchantability (N.J. Stat. Ann. §§ 12A:2-314 and 12A:2A-212) Against the Automaker Defendants.**

2675. Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

2676. The New Jersey Plaintiffs bring this count under New Jersey law, individually and on behalf of the other members of the New Jersey Subclasses against the Automaker Defendants for their respective Class Vehicles. For the remaining Automaker Defendants, Plaintiffs who purchased or leased their Class Vehicles in states with materially similar laws may represent subclasses under this

count against those Automaker Defendants.

2677.  For purposes of this count, members of the New Jersey Subclasses shall be referred to as "Class Members."

2678.  The Class Vehicles are "goods" under N.J. Stat. Ann. §§ 12A:2-105(1) and 12A:2A-103(1)(h).

2679.  The Automaker Defendants are "merchants" of the Class Vehicles under N.J. Stat. Ann. § 12A:2-104(1), "sellers" under § 12A:2-103(1)(d), and "lessors" under § 12A:2A-103(1)(p).

2680.  Plaintiffs and Class Members who purchased and leased the Class Vehicles in New Jersey are "buyers" under N.J. Stat. Ann. § 12A:2-103(1)(a) and "lessees" under § 12A:2A-103(1)(n).

2681.  New Jersey law conferred an implied warranty that the Class Vehicles were in merchantable condition and fit for the ordinary purpose for which they were to be used pursuant to N.J. Stat. Ann. §§ 12A:2-314 and 12A:2A-212.

2682.  The Class Vehicles are not merchantable, and as such the Automaker Defendants breached their implied warranties, because at the time of sale and all times thereafter:

a.      The Class Vehicles would not pass without objection in the automotive trade given the Inflator Defect;

719

b.      The Inflator Defect renders the Class Vehicles unsafe to drive and unfit for ordinary purposes;

c.      The Class Vehicles and the airbags therein were inadequately labeled as safe and reliable, and the labeling failed to disclose the Inflator Defect; and

d.      The Class Vehicles do not conform to their labeling, which represents that the vehicles are safe and suitable for their intended use.

2683. Plaintiffs and Class Members timely provided the Automaker Defendants notice of the issues raised in this count and this Complaint and an opportunity to cure, as alleged in the paragraphs addressing Defendants' notice above.

2684. Alternatively, Plaintiffs and Class Members were excused from providing the Automaker Defendants with notice and an opportunity to cure the breach because it would have been futile. As alleged above, the Automaker Defendants have long known that the Class Vehicles contained the Defective Inflators, and that the Defective Inflators have caused airbags to malfunction in crashes involving the Class Vehicles; however, to date, the Automaker Defendants have not instituted a recall or any other repair program with respect to all of the Class Vehicles, or even acknowledged that the Inflator Defect exists in all of those Class

Vehicles. Moreover, to the extent the Automaker Defendants have issued recalls, those recalls are inadequate because, inter alia: (a) they are belated because the Automaker Defendants knew about the Defective Inflators for years and did nothing to recall or remedy the serious safety defect; (b) with tens of millions of vehicles impacted in existing and potential future recalls, as a result of the Automaker Defendants' concealment of the Inflator Defect, the recalls cannot be implemented effectively due to supply constraints and resulting delays; (c) the recalls are incomplete, and apply to only a subset of the Class Vehicles.

2685. Plaintiffs, individually and on behalf of Class Members, seek all available monetary damages (including actual, compensatory, and punitive damages), injunctive and equitable relief, and attorneys' fees and costs.

### c. New Jersey Count 3: Violation of the New Jersey Consumer Fraud Act (N.J. Stat. Ann. § 56:8-1, *et seq.*) Against All Defendants.[33]

2686. Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

2687. The New Jersey Plaintiffs bring this count under New Jersey law, individually and on behalf of the other members of the New Jersey Subclasses

---

[33] Plaintiffs bring this count against ARC and the Airbag Module Defendants based on their omissions and concealment of material facts only.

against the Automaker Defendants and Airbag Module Defendants for their respective Class Vehicles, and ARC. For the remaining Defendants, Plaintiffs who purchased or leased their Class Vehicles in states with materially similar laws may represent subclasses under this count against all other Defendants and ARC.

2688. For purposes of this count, members of the New Jersey Subclasses shall be referred to as "Class Members."

2689. For purposes of this count, ARC, the Automaker Defendants, and the Airbag Module Defendants shall be referred to as "Defendants."

2690. Defendants, Plaintiffs, and Class Members are "persons" under N.J. Stat. Ann. § 56:8-1(d).

2691. The Class Vehicles and the Defective Inflators installed in them are "merchandise" under N.J. Stat. Ann. § 56:8-1(c).

2692. The New Jersey Consumer Fraud Act ("New Jersey CFA") prohibits unlawful practices. N.J. Stat. Ann. § 56:8-2.

2693. In the course of their business, Defendants, through their agents, employees, and/or subsidiaries, violated the New Jersey CFA by knowingly and intentionally misrepresenting, omitting, concealing, and/or failing to disclose material facts regarding the reliability, safety, and performance of the Class Vehicles and the Defective Inflators, as detailed above.

722

2694. Defendants had an ongoing duty to Plaintiffs and Class Members to refrain from unfair or deceptive practices under the New Jersey CFA in the course of their business. Specifically, Defendants owed Plaintiffs and Class Members a duty to disclose all the material facts concerning the Defective Inflators in the Class Vehicles because:

a.   Given ARC's design, development, testing and manufacture of the Defective Inflators and its experience and knowledge as experts and long-time veterans of the automotive industry, it, along with the Automaker Defendants and the Airbag Module Defendants, possessed exclusive access to and was in a superior position to know the true facts about the Defective Inflators;

b.   Given the Airbag Module Defendants' role in the design, manufacture, and testing of the airbag modules with the Defective Inflators installed in them, and their experience and knowledge as experts and long-time veterans of the automotive industry, they, along with ARC and the Automaker Defendants, possessed exclusive access to and were in a superior position to know the true facts about the Defective Inflators;

c.   Given the Automaker Defendants' role in the design, manufacture, testing, and sale of Class Vehicles and Defective Inflators, and their

723

experience and knowledge as experts and long-time veterans of the automotive industry, they, along with ARC and the Airbag Module Defendants, possessed exclusive access to and were in a superior position to know the true facts about the Defective Inflators;

d.      Given the Inflator Defect's hidden and technical nature, Plaintiffs and Class Members lack the sophisticated expertise in vehicle components and technology that would be necessary to discover the Inflator Defect on their own;

e.      Defendants knew that the Inflator Defect gave rise to serious safety concerns for the consumers who purchased and leased the Class Vehicles;

f.      The Inflator Defect poses a severe risk of harm in that, among other things, the metal shrapnel can puncture and stab the occupants, causing severe and potentially fatal injuries;

g.      Defendants knew about and investigated the Inflator Defect, but then did not notify consumers about it or disclose the Inflator Defect to NHTSA, and the Automaker Defendants did not launch a comprehensive recall for all Class Vehicles, all of which individually and together deprived Plaintiffs of an opportunity that otherwise could

have led them to discover the truth about the Inflator Defect in their Class Vehicles; and

h.    The Automaker Defendants made, helped to make, or conspired to make incomplete representations about the safety and reliability of the Class Vehicles and their airbags, while purposefully withholding material facts about a known safety defect. Because they volunteered to provide information about the Class Vehicles that they marketed and offered for sale and lease to consumers, the Automaker Defendants had the duty to disclose the whole truth.

2695. By misrepresenting the Class Vehicles as safe and reliable and the airbags installed in them as properly-functioning and free from defects, and/or by failing to disclose and actively concealing the dangers and risk posed by the Inflator Defect to both consumers and NHTSA, Defendants engaged in one or more of the unfair or deceptive business practices prohibited by N.J. Stat. Ann. §56:8-2: using or employing deception, fraud, false pretense, false promise or misrepresentation, or the concealment, suppression or omission of a material fact with intent that others rely upon such concealment, suppression or omission, in connection with the advertisement and sale/lease of the Class Vehicles, whether or not any person has in fact been misled, deceived or damaged thereby.

725

2696. Defendants' unfair or deceptive acts or practices, including their misrepresentations, concealments, omissions, and/or suppressions of material facts, were designed to mislead and had a tendency or capacity to mislead and create a false impression in consumers that the Class Vehicles had properly-functioning and reliable airbags. Indeed, those misrepresentations, concealments, omissions, and suppressions of material facts did in fact deceive reasonable consumers, including Plaintiffs and Class Members, about the true safety and reliability of the Class Vehicles and/or the Defective Inflators installed in them, the quality of the Class Vehicles, and the true value of the Class Vehicles.

2697. Defendants intended for Plaintiffs and Class Members to rely on their misrepresentations, omissions, and concealment—which they did by purchasing and leasing the Class Vehicles at the prices they paid believing that their vehicles would not have an Inflator Defect that would affect the quality, reliability, and safety of the Class Vehicles and their airbags.

2698. Defendants' misrepresentations, concealments, omissions, and suppressions of material facts regarding the Inflator Defect and true characteristics of the Class Vehicles were material to the decisions of Plaintiffs and Class Members to purchase and lease those vehicles, as Defendants intended. Plaintiffs and Class Members were exposed to those misrepresentations, concealments, omissions, and

suppressions of material facts, and relied on Defendants' misrepresentations that the Class Vehicles and their airbags were safe and reliable in deciding to purchase and lease the Class Vehicles.

2699. Plaintiffs' and Class Members' reliance was reasonable, as they had no way of discerning that Defendants' representations were false and misleading, or otherwise learning the facts that Defendants had concealed or failed to disclose. Plaintiffs and Class Members did not, and could not, unravel Defendants' deception on their own.

2700. Had they known the truth about the Inflator Defect, Plaintiffs and Class Members would not have purchased or leased the Class Vehicles, or would have paid significantly less for them.

2701. As a direct and proximate result of Defendants' deceptive practices, Plaintiffs and Class Members have sustained economic injury and loss—either by purchasing a vehicle they otherwise would not have purchased or paying more than they otherwise would have as a result of Defendants' actions and omissions alleged above—that first occurred at the time each Class Vehicle was purchased or leased.

2702. Defendants' violations present a continuing risk to Plaintiffs and Class Members, as well as to the general public, because the Class Vehicles remain unsafe due to the Defective Inflators therein. Defendants' unlawful acts and practices

complained of herein affect the public interest.

2703.  Pursuant to N.J. Stat. Ann. § 56:8-19, Plaintiffs and Class Members seek an order enjoining the above unfair or deceptive acts or practices and awarding actual damages, punitive damages, and any other just and proper relief available under the New Jersey CFA against all Defendants.

### d.   New Jersey Count 4: Fraud by Omission and Concealment Against All Defendants.

2704.  Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

2705.  The New Jersey Plaintiffs bring this count under New Jersey law, individually and on behalf of the other members of the New Jersey Subclasses against the Automaker Defendants and Airbag Module Defendants for their respective Class Vehicles, and ARC. For the remaining Defendants, Plaintiffs who purchased or leased their Class Vehicles in states with materially similar laws may represent subclasses under this count against all other Defendants and ARC.

2706.  For purposes of this count, members of the New Jersey Subclasses shall be referred to as "Class Members."

2707.  For purposes of this count, ARC, the Automaker Defendants, and the Airbag Module Defendants shall be referred to as "Defendants."

2708. Defendants are liable for both fraudulent concealment and non-disclosure. *See, e.g.*, Restatement (Second) of Torts §§ 550-51 (1977).

2709. Defendants owed Plaintiffs and Class Members a duty to disclose all the material facts concerning the Defective Inflators in the Class Vehicles because:

a.      Given the Automaker Defendants' role in the design, manufacture, testing, and sale of Class Vehicles and Defective Inflators, and their experience and knowledge as experts and long-time veterans of the automotive industry, they, along with ARC and the Airbag Module Defendants, possessed exclusive access to and were in a superior position to know the true facts about the Defective Inflators;

b.      Given ARC's design, development, testing and manufacture of the Defective Inflators and its experience and knowledge as experts and long-time veterans of the automotive industry, it, along with the Automaker Defendants and the Airbag Module Defendants, possessed exclusive access to and was in a superior position to know the true facts about the Defective Inflators;

c.      Given the Airbag Module Defendants' role in the design, manufacture, and testing of the airbag modules with the Defective Inflators installed in them, and their experience and knowledge as experts and long-time

veterans of the automotive industry, they, along with ARC and the Automaker Defendants, possessed exclusive access to and were in a superior position to know the true facts about the Defective Inflators;

d.    Given the Inflator Defect's hidden and technical nature, Plaintiffs and Class Members lack the sophisticated expertise in vehicle components and technology that would be necessary to discover the Inflator Defect on their own;

e.    Defendants knew that the Inflator Defect gave rise to serious safety concerns for the consumers who purchased and leased the Class Vehicles;

f.    The Inflator Defect poses a severe risk of harm in that, among other things, the metal shrapnel can puncture and stab the occupants, causing severe and potentially fatal injuries;

g.    Defendants knew about and investigated the Inflator Defect, but then did not notify consumers about it, disclose the Inflator Defect to NHTSA, or further launch a comprehensive recall for all Class Vehicles, which individually and together deprived Plaintiffs of an opportunity that otherwise could have led them to discover the truth about the Inflator Defect in their Class Vehicles; and

h.   The Automaker Defendants made, helped to make, or conspired to make incomplete representations about the safety and reliability of the Class Vehicles and their airbags, while purposefully withholding material facts about a known safety defect. Because they volunteered to provide information about the Class Vehicles that they marketed and offered for sale and lease to consumers, the Automaker Defendants had the duty to disclose the whole truth.

2710. In breach of their duties, Defendants failed to disclose the Inflator Defect and that the Class Vehicles' airbags were not safe and reliable to Plaintiffs and Class Members in connection with the sale of the Class Vehicles.

2711. The Inflator Defect within the Class Vehicles is material to the sale of the Class Vehicles because a reasonable person would find it important in purchasing, leasing, or retaining a new or used motor vehicle and because it directly impacts the value of the Class Vehicles purchased or leased by Plaintiffs and Class Members.

2712. Defendants intended for Plaintiffs and Class Members to rely on their omissions and concealment—which they did by purchasing and leasing the Class Vehicles at the prices they paid believing that their vehicles would not have an Inflator Defect that would affect the quality, reliability, and safety of the Class

Vehicles and their airbags.

2713. Plaintiffs' and Class Members' reliance was reasonable because a reasonable consumer would not have expected that the Class Vehicles contained a safety defect that poses such a serious risk. They had no way of learning the facts that Defendants had concealed or failed to disclose. Plaintiffs and Class Members did not, and could not, unravel Defendants' deception on their own.

2714. Defendants actively concealed and suppressed these material facts, in whole or in part, to maintain a market for the Class Vehicles and the Defective Inflators installed in them, to protect profits, and to avoid costly recalls that would expose them to liability for those expenses and harm the commercial reputations of Defendants and their products. They did so at the expense of Plaintiffs and Class Members.

2715. If Defendants had fully and adequately disclosed the Inflator Defect to consumers, Plaintiffs and Class Members would have seen such a disclosure.

2716. Through their omissions and concealment with respect to the Inflator Defect within the Class Vehicles, Defendants intended to induce, and did induce, Plaintiffs and Class Members to either purchase a Class Vehicle that they otherwise would not have purchased, or pay more for a Class Vehicle than they otherwise would have paid.

2717. Had Plaintiffs and Class Members known of the Inflator Defect within the Class Vehicles, they would not have purchased the Class Vehicles or would have paid less for them.

2718. As a direct and proximate result of Defendants' omissions and concealment, Plaintiffs and other Class Members either overpaid for the Class Vehicles or would not have purchased the Class Vehicles at all if the Inflator Defect had been disclosed to them. Accordingly, Defendants are liable to Plaintiffs and Class Members for their damages in an amount to be proven at trial.

2719. Defendants acted maliciously, oppressively, deliberately, with intent to defraud; in reckless disregard of the Plaintiffs' and Class Members' rights and well-being; and to enrich themselves. Defendants' misconduct warrants an assessment of punitive damages, as permitted by law, in an amount sufficient to deter such conduct in the future, which amount shall be determined according to proof at trial.

e. **New Jersey Count 5: Unjust Enrichment Against the Automaker Defendants.**

2720. Plaintiffs reallege and incorporate by reference all allegations in Volume 1 of the Consolidated Class Action Complaint as though fully set forth herein.

2721. The New Jersey Plaintiffs bring this count under New Jersey law,

individually and on behalf of the other members of the New Jersey Subclasses against the Automaker Defendants for their respective Class Vehicles. For the remaining Automaker Defendants, Plaintiffs who purchased or leased their Class Vehicles in states with materially similar laws may represent subclasses under this count against those Automaker Defendants.

2722. For purposes of this count, members of the New Jersey Subclasses shall be referred to as "Class Members."

2723. When they purchased and leased the Class Vehicles, Plaintiffs and Class Members conferred tangible and material economic benefits upon the Automaker Defendants, who readily accepted and retained these benefits.

2724. Plaintiffs and Class Members would not have purchased or leased their Class Vehicles, or would have paid less for them, had they known of the Inflator Defect at the time of purchase or lease. Therefore, the Automaker Defendants profited from the sale and lease of the Class Vehicles to the detriment and expense of Plaintiffs and Class Members.

2725. The Automaker Defendants appreciated these economic benefits. These benefits were the expected result of the Automaker Defendants acting in their pecuniary interest at the expense of their customers. They knew of these benefits because they were aware of the Inflator Defect, yet they failed to disclose this

knowledge and misled the Plaintiffs and Class Members regarding the nature and quality of the Class Vehicles while profiting from this deception.

2726. It would be unjust, inequitable, and unconscionable for the Automaker Defendants to retain these benefits, including because they were procured as a result of their wrongful conduct alleged above.

2727. Plaintiffs and Class Members are entitled to restitution of the benefits the Automaker Defendants unjustly retained and/or any amounts necessary to return Plaintiffs and Class Members to the position they occupied prior to dealing with those Defendants, with such amounts to be determined at trial.

2728. Plaintiffs plead this claim separately as well as in the alternative to their claims for damages under Fed. R. Civ. P. 8(a)(3), because if the Court dismisses Plaintiffs' claims for damages enters judgment on them in favor of the Automaker Defendants, Plaintiffs will have no adequate legal remedy.

### 32.   New Mexico

#### a.   New Mexico Count 1: Breach of Express Warranty (N.M. Stat. §§ 55-2-313 and 55-2A-210) Against the Automaker Defendants.

2729. Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

2730. The New Mexico Plaintiffs bring this count under New Mexico law,

individually and on behalf of the other members of the New Mexico Subclasses against the Automaker Defendants for their respective Class Vehicles. For the remaining Automaker Defendants, Plaintiffs who purchased or leased their Class Vehicles in states with materially similar laws may represent subclasses under this count against those Automaker Defendants.

2731. For purposes of this count, members of the New Mexico Subclasses shall be referred to as "Class Members."

2732. The Class Vehicles are "goods" under N.M. Stat. §§ 55-2-105(1) and 55-2A-103(1)(h).

2733. The Automaker Defendants are "merchants" of the Class Vehicles under N.M. Stat. § 55-2-104(1), "sellers" under § 55-2-103(1)(d), and "lessors" under § 55-2A-103(1)(p).

2734. Plaintiffs and Class Members who purchased and leased the Class Vehicles in New Mexico are "buyers" under N.M. Stat. § 55-2-103(1)(a) and "lessees" under § 55-2A-103(1)(n).

2735. The Automaker Defendants issued an express written warranty for each defective Class Vehicle they sold, including that:

a.    The Class Vehicles would be free of defects in materials and workmanship at the time of sale; and

b.    The Class Vehicles were safe and reliable, and their airbags would function properly in the event of a crash.

2736. The warranties listed above formed the basis of the bargain with regard to Plaintiffs and Class Members' purchase and lease of the Class Vehicles.

2737. The Automaker Defendants knowingly breached their warranty for the Class Vehicles because:

a.    The airbag inflators have latent defects which have a dangerous propensity to cause the inflators to rupture and eject metal shrapnel, subjecting Plaintiffs and Class Members to the risk of loss and injury; and

b.    The Automaker Defendants denied, concealed, and misrepresented the Inflator Defect, in the process refusing to pay for or provide in a reasonably timely fashion the needed repairs and replacements for Plaintiffs and Class Members.

2738. The Automaker Defendants knew or should have known that the warranties were false and/or misleading. Specifically, the Automaker Defendants were aware of the Inflator Defect in the Class Vehicles, which made the vehicles inherently defective and dangerous at the time that they were sold and leased to Plaintiffs and Class Members.

737

2739. Plaintiffs and Class Members were exposed to the Automaker Defendants' misrepresentations, and they had no way of discerning that the Automaker Defendants' representations were false and misleading or otherwise learning the material facts that the Automaker Defendants had concealed or failed to disclose. Accordingly, Plaintiffs and Class Members reasonably relied on the Automaker Defendants' express warranties when purchasing or leasing their Class Vehicles.

2740. Plaintiffs and Class Members timely provided the Automaker Defendants notice of the issues raised in this count and this Complaint and an opportunity to cure, as alleged in the paragraphs addressing Defendants' notice above.

2741. Alternatively, Plaintiffs and Class Members were excused from providing the Automaker Defendants with notice and an opportunity to cure the breach, because it would have been futile. As alleged above, the Automaker Defendants knew about the Defective Inflators for years; however, to date, the Automaker Defendants have not instituted a recall or any other repair program with respect to all of the Class Vehicles, or even acknowledged that the Inflator Defect exists in all of the Class Vehicles. Therefore, they have refused to recall or repair defective vehicles. Moreover, to the extent the Automaker Defendants have issued

recalls, those recalls are inadequate because, *inter alia*: (a) they are belated because the Automaker Defendants knew about the Defective Inflators for years and did nothing to recall or remedy the serious safety defect; (b) with tens of millions of vehicles impacted in existing and potential future recalls, as a result of the Automaker Defendants' concealment of the Inflator Defect, the recalls cannot be implemented effectively due to supply constraints and resulting delays; (c) the recalls are incomplete, and apply to only a subset of the Class Vehicles.

2742. As a direct and proximate result of the Automaker Defendants' breach of their express warranties, the Class Vehicles were and are defective and the Inflator Defect was not remedied. Therefore, Plaintiff and Class Members have been damaged, in an amount to be proven at trial, through their overpayment at the time of purchase or lease for the Class Vehicles with an undisclosed safety defect that would not be remedied.

> **b.    New Mexico Count 2: Breach of Implied Warranty of Merchantability (N.M. Stat. §§ 55-2-314 and 55-2A-212) Against the Automaker Defendants.**

2743. Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

2744. The New Mexico Plaintiffs bring this count under New Mexico law, individually and on behalf of the other members of the New Mexico Subclasses

against the Automaker Defendants for their respective Class Vehicles. For the remaining Automaker Defendants, Plaintiffs who purchased or leased their Class Vehicles in states with materially similar laws may represent subclasses under this count against those Automaker Defendants.

2745. For purposes of this count, members of the New Mexico Subclasses shall be referred to as "Class Members."

2746. The Class Vehicles are "goods" under N.M. Stat. §§ 55-2-105(1) and 55-2A-103(1)(h).

2747. The Automaker Defendants are "merchants" of the Class Vehicles under N.M. Stat. § 55-2-104(1), "sellers" under § 55-2-103(1)(d), and "lessors" under § 55-2A-103(1)(p).

2748. Plaintiffs and Class Members who purchased and leased the Class Vehicles in New Mexico are "buyers" under N.M. Stat. § 55-2-103(1)(a) and "lessees" under § 55-2A-103(1)(n).

2749. New Mexico law conferred an implied warranty that the Class Vehicles were in merchantable condition and fit for the ordinary purpose for which they were to be used pursuant to N.M. Stat. §§ 55-2-314 and 55-2A-212.

2750. The Class Vehicles are not merchantable, and as such the Automaker Defendants breached their implied warranties, because at the time of sale and all

times thereafter:

    a.    The Class Vehicles would not pass without objection in the automotive trade given the Inflator Defect;

    b.    The Inflator Defect renders the Class Vehicles unsafe to drive and unfit for ordinary purposes;

    c.    The Class Vehicles and the airbags therein were inadequately labeled as safe and reliable, and the labeling failed to disclose the Inflator Defect; and

    d.    The Class Vehicles do not conform to their labeling, which represents that the vehicles are safe and suitable for their intended use.

2751. Plaintiffs and Class Members timely provided the Automaker Defendants notice of the issues raised in this count and this Complaint and an opportunity to cure, as alleged in the paragraphs addressing Defendants' notice above.

2752. Alternatively, Plaintiffs and Class Members were excused from providing the Automaker Defendants with notice and an opportunity to cure the breach because it would have been futile. As alleged above, the Automaker Defendants have long known that the Class Vehicles contained the Defective Inflators, and that the Defective Inflators have caused airbags to malfunction in

crashes involving the Class Vehicles; however, to date, the Automaker Defendants have not instituted a recall or any other repair program with respect to all of the Class Vehicles, or even acknowledged that the Inflator Defect exists in all of those Class Vehicles. Moreover, to the extent the Automaker Defendants have issued recalls, those recalls are inadequate because, inter alia: (a) they are belated because the Automaker Defendants knew about the Defective Inflators for years and did nothing to recall or remedy the serious safety defect; (b) with tens of millions of vehicles impacted in existing and potential future recalls, as a result of the Automaker Defendants' concealment of the Inflator Defect, the recalls cannot be implemented effectively due to supply constraints and resulting delays; (c) the recalls are incomplete, and apply to only a subset of the Class Vehicles.

2753. Plaintiffs, individually and on behalf of Class Members, seek all available monetary damages (including actual, compensatory, and punitive damages), injunctive and equitable relief, and attorneys' fees and costs.

### c. New Mexico Count 3: Violation of the New Mexico Unfair Trade Practices Act (N.M. Stat. § 57-12-1, *et seq.*) Against All Defendants.[34]

2754. Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

2755. The New Mexico Plaintiffs bring this count under New Mexico law, individually and on behalf of the other members of the New Mexico Subclasses against the Automaker Defendants and Airbag Module Defendants for their respective Class Vehicles, and ARC. For the remaining Defendants, Plaintiffs who purchased or leased their Class Vehicles in states with materially similar laws may represent subclasses under this count against all other Defendants and ARC.

2756. For purposes of this count, members of the New Mexico Subclasses shall be referred to as "Class Members."

2757. For purposes of this count, ARC, the Automaker Defendants, and the Airbag Module Defendants shall be referred to as "Defendants."

2758. Defendants, Plaintiffs, and Class Members are "persons" under N.M. Stat. § 57-12-1(d).

2759. Defendants are engaged in "trade" or "commerce" under N.M. Stat. §

---

[34] Plaintiffs bring this count against ARC and the Airbag Module Defendants based on their omissions and concealment of material facts only.

57-12-2.

2760. The New Mexico Unfair Trade Practices Act ("New Mexico UTPA") makes unlawful any "[u]nfair methods or deceptive trade practices and unconscionable trade practices[.]" N.M. Stat. § 57-12-3.

2761. In the course of their business, Defendants, through their agents, employees, and/or subsidiaries, violated the New Mexico UTPA by knowingly and intentionally misrepresenting, omitting, concealing, and/or failing to disclose material facts regarding the reliability, safety, and performance of the Class Vehicles and the Defective Inflators, as detailed above.

2762. Defendants had an ongoing duty to Plaintiffs and Class Members to refrain from unfair or deceptive practices under the New Mexico UTPA in the course of their business. Specifically, Defendants owed Plaintiffs and Class Members a duty to disclose all the material facts concerning the Defective Inflators in the Class Vehicles because:

    a.    Given ARC's design, development, testing and manufacture of the Defective Inflators and its experience and knowledge as experts and long-time veterans of the automotive industry, it, along with the Automaker Defendants and the Airbag Module Defendants, possessed exclusive access to and was in a superior position to know the true facts

about the Defective Inflators;

b.     Given the Airbag Module Defendants' role in the design, manufacture, and testing of the airbag modules with the Defective Inflators installed in them, and their experience and knowledge as experts and long-time veterans of the automotive industry, they, along with ARC and the Automaker Defendants, possessed exclusive access to and were in a superior position to know the true facts about the Defective Inflators;

c.     Given the Automaker Defendants' role in the design, manufacture, testing, and sale of Class Vehicles and Defective Inflators, and their experience and knowledge as experts and long-time veterans of the automotive industry, they, along with ARC and the Airbag Module Defendants, possessed exclusive access to and were in a superior position to know the true facts about the Defective Inflators;

d.     Given the Inflator Defect's hidden and technical nature, Plaintiffs and Class Members lack the sophisticated expertise in vehicle components and technology that would be necessary to discover the Inflator Defect on their own;

e.     Defendants knew that the Inflator Defect gave rise to serious safety concerns for the consumers who purchased and leased the Class

Vehicles;

f.    The Inflator Defect poses a severe risk of harm in that, among other things, the metal shrapnel can puncture and stab the occupants, causing severe and potentially fatal injuries;

g.    Defendants knew about and investigated the Inflator Defect, but then did not notify consumers about it or disclose the Inflator Defect to NHTSA, and the Automaker Defendants did not launch a comprehensive recall for all Class Vehicles, all of which individually and together deprived Plaintiffs of an opportunity that otherwise could have led them to discover the truth about the Inflator Defect in their Class Vehicles; and

h.    The Automaker Defendants made, helped to make, or conspired to make incomplete representations about the safety and reliability of the Class Vehicles and their airbags, while purposefully withholding material facts about a known safety defect. Because they volunteered to provide information about the Class Vehicles that they marketed and offered for sale and lease to consumers, the Automaker Defendants had the duty to disclose the whole truth.

2763.  By misrepresenting the Class Vehicles as safe and reliable and the

746

airbags installed in them as properly functioning and free from defects, and/or by failing to disclose and actively concealing the dangers and risk posed by the Inflator Defect to both consumers and NHTSA, Defendants engaged in one or more of the unfair or deceptive business practices prohibited by N.M. Stat. § 57-12-3:

    a.    Causing likelihood of confusion or of misunderstanding as to the approval or certification of the Class Vehicles;

    b.    Representing that the Class Vehicles have approval, characteristics, uses, or benefits that they do not have;

    c.    Representing that the Class Vehicles are of a particular standard, quality, and grade when they are not;

    d.    Taking advantage of the lack of knowledge, ability, experience, or capacity of a person to grossly unfair degree; and

    e.    Resulting in a gross disparity between the value received by a person and the price paid.

N.M. Stat. § 57-12-2(D)(2), (5), (7); (E)(1)–(2).

2764. Defendants' unfair or deceptive acts or practices, including their misrepresentations, concealments, omissions, and/or suppressions of material facts, were designed to mislead and had a tendency or capacity to mislead and create a false impression in consumers that the Class Vehicles had properly-functioning and

reliable airbags. Indeed, those misrepresentations, concealments, omissions, and suppressions of material facts did in fact deceive reasonable consumers, including Plaintiffs and Class Members, about the true safety and reliability of the Class Vehicles and/or the Defective Inflators installed in them, the quality of the Class Vehicles, and the true value of the Class Vehicles.

2765. Defendants intended for Plaintiffs and Class Members to rely on their misrepresentations, omissions, and concealment—which they did by purchasing and leasing the Class Vehicles at the prices they paid believing that their vehicles would not have an Inflator Defect that would affect the quality, reliability, and safety of the Class Vehicles and their airbags.

2766. Defendants' misrepresentations, concealments, omissions, and suppressions of material facts regarding the Inflator Defect and true characteristics of the Class Vehicles were material to the decisions of Plaintiffs and Class Members to purchase and lease those vehicles, as Defendants intended. Plaintiffs and Class Members were exposed to those misrepresentations, concealments, omissions, and suppressions of material facts, and relied on Defendants' misrepresentations that the Class Vehicles and their airbags were safe and reliable in deciding to purchase and lease the Class Vehicles.

2767. Plaintiffs' and Class Members' reliance was reasonable, as they had no

748

way of discerning that Defendants' representations were false and misleading, or otherwise learning the facts that Defendants had concealed or failed to disclose. Plaintiffs and Class Members did not, and could not, unravel Defendants' deception on their own.

2768. Had they known the truth about the Inflator Defect, Plaintiffs and Class Members would not have purchased or leased the Class Vehicles, or would have paid significantly less for them.

2769. As a direct and proximate result of Defendants' deceptive practices, Plaintiffs and Class Members have sustained economic injury and loss—either by purchasing a vehicle they otherwise would not have purchased or paying more than they otherwise would have as a result of Defendants' actions and omissions alleged above—that first occurred at the time each Class Vehicle was purchased or leased.

2770. Defendants' violations present a continuing risk to Plaintiffs and Class Members, as well as to the general public, because the Class Vehicles remain unsafe due to the Defective Inflators therein. Defendants' unlawful acts and practices complained of herein affect the public interest.

2771. Pursuant to N.M. Stat. § 57-12-10, Plaintiffs and Class Members seek an order enjoining the above unfair or deceptive acts or practices and awarding actual damages, punitive damages, and any other just and proper relief available under the

New Mexico UTPA against all Defendants.

### d. New Mexico Count 4: Fraud by Omission and Concealment Against All Defendants.

2772. Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

2773. The New Mexico Plaintiffs bring this count under New Mexico law, individually and on behalf of the other members of the New Mexico Subclasses against the Automaker Defendants and Airbag Module Defendants for their respective Class Vehicles, and ARC. For the remaining Defendants, Plaintiffs who purchased or leased their Class Vehicles in states with materially similar laws may represent subclasses under this count against all other Defendants and ARC.

2774. For purposes of this count, members of the New Mexico Subclasses shall be referred to as "Class Members."

2775. For purposes of this count, ARC, the Automaker Defendants, and the Airbag Module Defendants shall be referred to as "Defendants."

2776. Defendants are liable for both fraudulent concealment and non-disclosure. *See, e.g.*, Restatement (Second) of Torts §§ 550-51 (1977).

2777. Defendants owed Plaintiffs and Class Members a duty to disclose all the material facts concerning the Defective Inflators in the Class Vehicles because:

a.   Given the Automaker Defendants' role in the design, manufacture, testing, and sale of Class Vehicles and Defective Inflators, and their experience and knowledge as experts and long-time veterans of the automotive industry, they, along with ARC and the Airbag Module Defendants, possessed exclusive access to and were in a superior position to know the true facts about the Defective Inflators;

b.   Given ARC's design, development, testing and manufacture of the Defective Inflators and its experience and knowledge as experts and long-time veterans of the automotive industry, it, along with the Automaker Defendants and the Airbag Module Defendants, possessed exclusive access to and was in a superior position to know the true facts about the Defective Inflators;

c.   Given the Airbag Module Defendants' role in the design, manufacture, and testing of the airbag modules with the Defective Inflators installed in them, and their experience and knowledge as experts and long-time veterans of the automotive industry, they, along with ARC and the Automaker Defendants, possessed exclusive access to and were in a superior position to know the true facts about the Defective Inflators;

d.   Given the Inflator Defect's hidden and technical nature, Plaintiffs and

751

Class Members lack the sophisticated expertise in vehicle components and technology that would be necessary to discover the Inflator Defect on their own;

e.  Defendants knew that the Inflator Defect gave rise to serious safety concerns for the consumers who purchased and leased the Class Vehicles;

f.  The Inflator Defect poses a severe risk of harm in that, among other things, the metal shrapnel can puncture and stab the occupants, causing severe and potentially fatal injuries;

g.  Defendants knew about and investigated the Inflator Defect, but then did not notify consumers about it, disclose the Inflator Defect to NHTSA, or further launch a comprehensive recall for all Class Vehicles, which individually and together deprived Plaintiffs of an opportunity that otherwise could have led them to discover the truth about the Inflator Defect in their Class Vehicles; and

h.  The Automaker Defendants made, helped to make, or conspired to make incomplete representations about the safety and reliability of the Class Vehicles and their airbags, while purposefully withholding material facts about a known safety defect. Because they volunteered

to provide information about the Class Vehicles that they marketed and offered for sale and lease to consumers, the Automaker Defendants had the duty to disclose the whole truth.

2778. In breach of their duties, Defendants failed to disclose the Inflator Defect and that the Class Vehicles' airbags were not safe and reliable to Plaintiffs and Class Members in connection with the sale of the Class Vehicles.

2779. The Inflator Defect within the Class Vehicles is material to the sale of the Class Vehicles because a reasonable person would find it important in purchasing, leasing, or retaining a new or used motor vehicle and because it directly impacts the value of the Class Vehicles purchased or leased by Plaintiffs and Class Members.

2780. Defendants intended for Plaintiffs and Class Members to rely on their omissions and concealment—which they did by purchasing and leasing the Class Vehicles at the prices they paid believing that their vehicles would not have an Inflator Defect that would affect the quality, reliability, and safety of the Class Vehicles and their airbags.

2781. Plaintiffs' and Class Members' reliance was reasonable because a reasonable consumer would not have expected that the Class Vehicles contained a safety defect that poses such a serious risk. They had no way of learning the facts

that Defendants had concealed or failed to disclose. Plaintiffs and Class Members did not, and could not, unravel Defendants' deception on their own.

2782. Defendants actively concealed and suppressed these material facts, in whole or in part, to maintain a market for the Class Vehicles and the Defective Inflators installed in them, to protect profits, and to avoid costly recalls that would expose them to liability for those expenses and harm the commercial reputations of Defendants and their products. They did so at the expense of Plaintiffs and Class Members.

2783. If Defendants had fully and adequately disclosed the Inflator Defect to consumers, Plaintiffs and Class Members would have seen such a disclosure.

2784. Through their omissions and concealment with respect to the Inflator Defect within the Class Vehicles, Defendants intended to induce, and did induce, Plaintiffs and Class Members to either purchase a Class Vehicle that they otherwise would not have purchased, or pay more for a Class Vehicle than they otherwise would have paid.

2785. Had Plaintiffs and Class Members known of the Inflator Defect within the Class Vehicles, they would not have purchased the Class Vehicles or would have paid less for them.

2786. As a direct and proximate result of Defendants' omissions and

concealment, Plaintiffs and other Class Members either overpaid for the Class Vehicles or would not have purchased the Class Vehicles at all if the Inflator Defect had been disclosed to them. Accordingly, Defendants are liable to Plaintiffs and Class Members for their damages in an amount to be proven at trial.

2787. Defendants acted maliciously, oppressively, deliberately, with intent to defraud; in reckless disregard of the Plaintiffs' and Class Members' rights and well-being; and to enrich themselves. Defendants' misconduct warrants an assessment of punitive damages, as permitted by law, in an amount sufficient to deter such conduct in the future, which amount shall be determined according to proof at trial.

      **e.**    **New Mexico Count 5: Unjust Enrichment Against the Automaker Defendants.**

2788. Plaintiffs reallege and incorporate by reference all allegations in Volume 1 of the Consolidated Class Action Complaint as though fully set forth herein.

2789. The New Mexico Plaintiffs bring this count under New Mexico law, individually and on behalf of the other members of the New Mexico Subclasses against the Automaker Defendants for their respective Class Vehicles. For the remaining Automaker Defendants, Plaintiffs who purchased or leased their Class Vehicles in states with materially similar laws may represent subclasses under this

count against those Automaker Defendants.

2790. For purposes of this count, members of the New Mexico Subclasses shall be referred to as "Class Members."

2791. When they purchased and leased the Class Vehicles, Plaintiffs and Class Members conferred tangible and material economic benefits upon the Automaker Defendants, who readily accepted and retained these benefits.

2792. Plaintiffs and Class Members would not have purchased or leased their Class Vehicles, or would have paid less for them, had they known of the Inflator Defect at the time of purchase or lease. Therefore, the Automaker Defendants profited from the sale and lease of the Class Vehicles to the detriment and expense of Plaintiffs and Class Members.

2793. The Automaker Defendants appreciated these economic benefits. These benefits were the expected result of the Automaker Defendants acting in their pecuniary interest at the expense of their customers. They knew of these benefits because they were aware of the Inflator Defect, yet they failed to disclose this knowledge and misled the Plaintiffs and Class Members regarding the nature and quality of the Class Vehicles while profiting from this deception.

2794. It would be unjust, inequitable, and unconscionable for the Automaker Defendants to retain these benefits, including because they were procured as a result

of their wrongful conduct alleged above.

2795. Plaintiffs and Class Members are entitled to restitution of the benefits the Automaker Defendants unjustly retained and/or any amounts necessary to return Plaintiffs and Class Members to the position they occupied prior to dealing with those Defendants, with such amounts to be determined at trial.

2796. Plaintiffs plead this claim separately as well as in the alternative to their claims for damages under Fed. R. Civ. P. 8(a)(3), because if the Court dismisses Plaintiffs' claims for damages enters judgment on them in favor of the Automaker Defendants, Plaintiffs will have no adequate legal remedy.

### 33.  New York

#### a.  New York Count 1: Breach of Express Warranty (N.Y. U.C.C. §§ 2-313 and 2A-210) Against the Automaker Defendants.

2797. Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

2798. The New York Plaintiffs bring this count under New York law, individually and on behalf of the other members of the New York Subclasses against the Automaker Defendants for their respective Class Vehicles. For the remaining Automaker Defendants, Plaintiffs who purchased or leased their Class Vehicles in states with materially similar laws may represent subclasses under this count against those Automaker Defendants.

2799. For purposes of this count, members of the New York Subclasses shall be referred to as "Class Members."

2800. The Class Vehicles are "goods" under N.Y. U.C.C. §§ 2-105(1) and 2A-103(1)(h).

2801. The Automaker Defendants are "merchants" of the Class Vehicles under N.Y. U.C.C. § 2-104(1), "sellers" under § 2-103(1)(d), and "lessors" under § 2A-103(1)(p).

2802. Plaintiffs and Class Members who purchased and leased the Class Vehicles in New York are "buyers" under N.Y. U.C.C. § 2-103(1)(a) and "lessees" under § 2A-103(1)(n).

2803. The Automaker Defendants issued an express written warranty for each defective Class Vehicle they sold, including that:

a.    The Class Vehicles would be free of defects in materials and workmanship at the time of sale; and

b.    The Class Vehicles were safe and reliable, and their airbags would function properly in the event of a crash.

2804. The warranties listed above formed the basis of the bargain with regard to Plaintiffs and Class Members' purchase and lease of the Class Vehicles.

2805. The Automaker Defendants knowingly breached their warranty for the

758

Class Vehicles because:

    a.    The airbag inflators have latent defects which have a dangerous propensity to cause the inflators to rupture and eject metal shrapnel, subjecting Plaintiffs and Class Members to the risk of loss and injury; and

    b.    The Automaker Defendants denied, concealed, and misrepresented the Inflator Defect, in the process refusing to pay for or provide in a reasonably timely fashion the needed repairs and replacements for Plaintiffs and Class Members.

2806. The Automaker Defendants knew or should have known that the warranties were false and/or misleading. Specifically, the Automaker Defendants were aware of the Inflator Defect in the Class Vehicles, which made the vehicles inherently defective and dangerous at the time that they were sold and leased to Plaintiffs and Class Members.

2807. Plaintiffs and Class Members were exposed to the Automaker Defendants' misrepresentations, and they had no way of discerning that the Automaker Defendants' representations were false and misleading or otherwise learning the material facts that the Automaker Defendants had concealed or failed to disclose. Accordingly, Plaintiffs and Class Members reasonably relied on the

Automaker Defendants' express warranties when purchasing or leasing their Class Vehicles.

2808. Plaintiffs and Class Members timely provided the Automaker Defendants notice of the issues raised in this count and this Complaint and an opportunity to cure, as alleged in the paragraphs addressing Defendants' notice above.

2809. Alternatively, Plaintiffs and Class Members were excused from providing the Automaker Defendants with notice and an opportunity to cure the breach, because it would have been futile. As alleged above, the Automaker Defendants knew about the Defective Inflators for years; however, to date, the Automaker Defendants have not instituted a recall or any other repair program with respect to all of the Class Vehicles, or even acknowledged that the Inflator Defect exists in all of the Class Vehicles. Therefore, they have refused to recall or repair defective vehicles. Moreover, to the extent the Automaker Defendants have issued recalls, those recalls are inadequate because, *inter alia*: (a) they are belated because the Automaker Defendants knew about the Defective Inflators for years and did nothing to recall or remedy the serious safety defect; (b) with tens of millions of vehicles impacted in existing and potential future recalls, as a result of the Automaker Defendants' concealment of the Inflator Defect, the recalls cannot be

implemented effectively due to supply constraints and resulting delays; (c) the recalls are incomplete, and apply to only a subset of the Class Vehicles.

2810. As a direct and proximate result of the Automaker Defendants' breach of their express warranties, the Class Vehicles were and are defective and the Inflator Defect was not remedied. Therefore, Plaintiff and Class Members have been damaged, in an amount to be proven at trial, through their overpayment at the time of purchase or lease for the Class Vehicles with an undisclosed safety defect that would not be remedied.

> **b.    New York Count 2: Breach of Implied Warranty of Merchantability (N.Y. U.C.C. §§ 2-314 and 2A-212) Against the Automaker Defendants.**

2811. Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

2812. The New York Plaintiffs bring this count under New York law, individually and on behalf of the other members of the New York Subclasses against the Automaker Defendants for their respective Class Vehicles. For the remaining Automaker Defendants, Plaintiffs who purchased or leased their Class Vehicles in states with materially similar laws may represent subclasses under this count against those Automaker Defendants.

2813. For purposes of this count, members of the New York Subclasses shall

be referred to as "Class Members."

2814. The Class Vehicles are "goods" under N.Y. U.C.C. §§ 2-105(1) and 2A-103(1)(h).

2815. The Automaker Defendants are "merchants" of the Class Vehicles under N.Y. U.C.C. § 2-104(1), "sellers" under § 2-103(1)(d), and "lessors" under § 2A-103(1)(p).

2816. Plaintiffs and Class Members who purchased and leased the Class Vehicles in New York are "buyers" under N.Y. U.C.C. § 2-103(1)(a) and "lessees" under § 2A-103(1)(n).

2817. New York law conferred an implied warranty that the Class Vehicles were in merchantable condition and fit for the ordinary purpose for which they were to be used pursuant to N.Y. U.C.C. §§ 2-314 and 2A-212.

2818. The Class Vehicles are not merchantable, and as such the Automaker Defendants breached their implied warranties, because at the time of sale and all times thereafter:

    a.    The Class Vehicles would not pass without objection in the automotive trade given the Inflator Defect;

    b.    The Inflator Defect renders the Class Vehicles unsafe to drive and unfit for ordinary purposes;

762

c.      The Class Vehicles and the airbags therein were inadequately labeled as safe and reliable, and the labeling failed to disclose the Inflator Defect; and

d.      The Class Vehicles do not conform to their labeling, which represents that the vehicles are safe and suitable for their intended use.

2819. Plaintiffs and Class Members timely provided the Automaker Defendants notice of the issues raised in this count and this Complaint and an opportunity to cure, as alleged in the paragraphs addressing Defendants' notice above.

2820. Alternatively, Plaintiffs and Class Members were excused from providing the Automaker Defendants with notice and an opportunity to cure the breach because it would have been futile. As alleged above, the Automaker Defendants have long known that the Class Vehicles contained the Defective Inflators, and that the Defective Inflators have caused airbags to malfunction in crashes involving the Class Vehicles; however, to date, the Automaker Defendants have not instituted a recall or any other repair program with respect to all of the Class Vehicles, or even acknowledged that the Inflator Defect exists in all of those Class Vehicles. Moreover, to the extent the Automaker Defendants have issued recalls, those recalls are inadequate because, inter alia: (a) they are belated because the

763

Automaker Defendants knew about the Defective Inflators for years and did nothing to recall or remedy the serious safety defect; (b) with tens of millions of vehicles impacted in existing and potential future recalls, as a result of the Automaker Defendants' concealment of the Inflator Defect, the recalls cannot be implemented effectively due to supply constraints and resulting delays; (c) the recalls are incomplete, and apply to only a subset of the Class Vehicles.

2821. Plaintiffs, individually and on behalf of Class Members, seek all available monetary damages (including actual, compensatory, and punitive damages), injunctive and equitable relief, and attorneys' fees and costs.

> **c.  New York Count 3: Violation of New York General Business Law § 349 (N.Y. Gen. Bus. Law § 349, *et seq.*) Against All Defendants.**[35]

2822. Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

2823. The New York Plaintiffs bring this count under New York law, individually and on behalf of the other members of the New York Subclasses against the Automaker Defendants and Airbag Module Defendants for their respective Class Vehicles, and ARC. For the remaining Defendants, Plaintiffs who purchased or

---

[35] Plaintiffs bring this count against ARC and the Airbag Module Defendants based on their omissions and concealment of material facts only.

leased their Class Vehicles in states with materially similar laws may represent subclasses under this count against all other Defendants and ARC.

2824. For purposes of this count, members of the New York Subclasses shall be referred to as "Class Members."

2825. For purposes of this count, ARC, the Automaker Defendants, and the Airbag Module Defendants shall be referred to as "Defendants."

2826. Plaintiffs and Class Members are "persons" under N.Y. Gen. Bus. Law § 349(h).

2827. Defendants are each a "person," "firm," "corporation," or "association" under N.Y. Gen. Bus. Law § 349.

2828. The New York Deceptive Acts and Practices Act ("New York DAPA") prohibits "[d]eceptive acts or practices in the conduct of any business, trade or commerce[.]" N.Y. Gen. Bus. Law § 349.

2829. In the course of their business, Defendants, through their agents, employees, and/or subsidiaries, violated the New York DAPA by knowingly and intentionally misrepresenting, omitting, concealing, and/or failing to disclose material facts regarding the reliability, safety, and performance of the Class Vehicles and the Defective Inflators, as detailed above.

2830. Defendants had an ongoing duty to Plaintiffs and Class Members to

refrain from unfair or deceptive practices under the New York DAPA in the course of their business. Specifically, Defendants owed Plaintiffs and Class Members a duty to disclose all the material facts concerning the Defective Inflators in the Class Vehicles because:

a.   Given ARC's design, development, testing and manufacture of the Defective Inflators and its experience and knowledge as experts and long-time veterans of the automotive industry, it, along with the Automaker Defendants and the Airbag Module Defendants, possessed exclusive access to and was in a superior position to know the true facts about the Defective Inflators;

b.   Given the Airbag Module Defendants' role in the design, manufacture, and testing of the airbag modules with the Defective Inflators installed in them, and their experience and knowledge as experts and long-time veterans of the automotive industry, they, along with ARC and the Automaker Defendants, possessed exclusive access to and were in a superior position to know the true facts about the Defective Inflators;

c.   Given the Automaker Defendants' role in the design, manufacture, testing, and sale of Class Vehicles and Defective Inflators, and their experience and knowledge as experts and long-time veterans of the

automotive industry, they, along with ARC and the Airbag Module Defendants, possessed exclusive access to and were in a superior position to know the true facts about the Defective Inflators;

d.      Given the Inflator Defect's hidden and technical nature, Plaintiffs and Class Members lack the sophisticated expertise in vehicle components and technology that would be necessary to discover the Inflator Defect on their own;

e.      Defendants knew that the Inflator Defect gave rise to serious safety concerns for the consumers who purchased and leased the Class Vehicles;

f.      The Inflator Defect poses a severe risk of harm in that, among other things, the metal shrapnel can puncture and stab the occupants, causing severe and potentially fatal injuries;

g.      Defendants knew about and investigated the Inflator Defect, but then did not notify consumers about it or disclose the Inflator Defect to NHTSA, and the Automaker Defendants did not launch a comprehensive recall for all Class Vehicles, all of which individually and together deprived Plaintiffs of an opportunity that otherwise could have led them to discover the truth about the Inflator Defect in their

767

Class Vehicles; and

h.    The Automaker Defendants made, helped to make, or conspired to make incomplete representations about the safety and reliability of the Class Vehicles and their airbags, while purposefully withholding material facts about a known safety defect. Because they volunteered to provide information about the Class Vehicles that they marketed and offered for sale and lease to consumers, the Automaker Defendants had the duty to disclose the whole truth.

2831. By misrepresenting the Class Vehicles as safe and reliable and the airbags installed in them as properly-functioning and free from defects, and/or by failing to disclose and actively concealing the dangers and risk posed by the Inflator Defect to both consumers and NHTSA, Defendants engaged in deceptive acts or practices in the conduct of business, trade or commerce, and/or in the furnishing of any service, as prohibited by N.Y. Gen. Bus. Law § 349

2832. Defendants' unfair or deceptive acts or practices, including their misrepresentations, concealments, omissions, and/or suppressions of material facts, were designed to mislead and had a tendency or capacity to mislead and create a false impression in consumers that the Class Vehicles had properly-functioning and reliable airbags. Indeed, those misrepresentations, concealments, omissions, and

suppressions of material facts did in fact deceive reasonable consumers, including Plaintiffs and Class Members, about the true safety and reliability of the Class Vehicles and/or the Defective Inflators installed in them, the quality of the Class Vehicles, and the true value of the Class Vehicles.

2833. Defendants intended for Plaintiffs and Class Members to rely on their misrepresentations, omissions, and concealment—which they did by purchasing and leasing the Class Vehicles at the prices they paid believing that their vehicles would not have an Inflator Defect that would affect the quality, reliability, and safety of the Class Vehicles and their airbags.

2834. Defendants' misrepresentations, concealments, omissions, and suppressions of material facts regarding the Inflator Defect and true characteristics of the Class Vehicles were material to the decisions of Plaintiffs and Class Members to purchase and lease those vehicles, as Defendants intended. Plaintiffs and Class Members were exposed to those misrepresentations, concealments, omissions, and suppressions of material facts, and relied on Defendants' misrepresentations that the Class Vehicles and their airbags were safe and reliable in deciding to purchase and lease the Class Vehicles.

2835. Plaintiffs' and Class Members' reliance was reasonable, as they had no way of discerning that Defendants' representations were false and misleading, or

otherwise learning the facts that Defendants had concealed or failed to disclose. Plaintiffs and Class Members did not, and could not, unravel Defendants' deception on their own.

2836. Had they known the truth about the Inflator Defect, Plaintiffs and Class Members would not have purchased or leased the Class Vehicles, or would have paid significantly less for them.

2837. As a direct and proximate result of Defendants' deceptive practices, Plaintiffs and Class Members have sustained economic injury and loss—either by purchasing a vehicle they otherwise would not have purchased or paying more than they otherwise would have as a result of Defendants' actions and omissions alleged above—that first occurred at the time each Class Vehicle was purchased or leased.

2838. Defendants' violations present a continuing risk to Plaintiffs and Class Members, as well as to the general public, because the Class Vehicles remain unsafe due to the Defective Inflators therein. Defendants' unlawful acts and practices complained of herein affect the public interest.

2839. Pursuant to N.Y. Gen. Bus. Law § 349, Plaintiffs and Class Members seek an order enjoining the above unfair or deceptive acts or practices and awarding actual damages, punitive damages, and any other just and proper relief available under the New York DAPA against all Defendants.

770

> **d.      New York Count 4: Violation of New York General Business Law § 350 (N.Y. Gen. Bus. Law § 350, *et seq.*) Against All Defendants.[36]**

2840. Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

2841. The New York Plaintiffs bring this count under New York law, individually and on behalf of the other members of the New York Subclasses against the Automaker Defendants and Airbag Module Defendants for their respective Class Vehicles, and ARC. For the remaining Defendants, Plaintiffs who purchased or leased their Class Vehicles in states with materially similar laws may represent subclasses under this count against all other Defendants and ARC.

2842. For purposes of this count, members of the New York Subclasses shall be referred to as "Class Members."

2843. For purposes of this count, ARC, the Automaker Defendants, and the Airbag Module Defendants shall be referred to as "Defendants."

2844. Defendants were and are engaged in "conduct of business, trade or commerce" within the meaning of N.Y. Gen. Bus. Law § 350.

2845. The New York False Advertising Act ("New York FAA") prohibits

---

[36] Plaintiffs bring this count against ARC and the Airbag Module Defendants based on their omissions and concealment of material facts only.

"[f]alse advertising in the conduct of any business, trade or commerce." N.Y. Gen. Bus. Law § 350.

2846. Defendants caused to be made or disseminated through New York, through advertising, marketing, and other publications, statements that were untrue or misleading, and which were known, or which by exercise of reasonable care should have been known by them to be untrue and misleading to consumers, including Plaintiffs and Class Members. Numerous examples of these statements and advertisements appear in the preceding paragraphs throughout this Complaint.

2847. In the course of their business, Defendants, through their agents, employees, and/or subsidiaries, violated the New York FAA by knowingly and intentionally misrepresenting, omitting, concealing, and/or failing to disclose material facts regarding the reliability, safety, and performance of the Class Vehicles and the Defective Inflators, as detailed above.

2848. Defendants had an ongoing duty to Plaintiffs and Class Members to refrain from unfair or deceptive practices under the New York FAA in the course of their business. Specifically, Defendants owed Plaintiffs and Class Members a duty to disclose all the material facts concerning the Defective Inflators in the Class Vehicles because:

    a.    Given ARC's design, development, testing and manufacture of the

Defective Inflators and its experience and knowledge as experts and long-time veterans of the automotive industry, it, along with the Automaker Defendants and the Airbag Module Defendants, possessed exclusive access to and was in a superior position to know the true facts about the Defective Inflators;

b.     Given the Airbag Module Defendants' role in the design, manufacture, and testing of the airbag modules with the Defective Inflators installed in them, and their experience and knowledge as experts and long-time veterans of the automotive industry, they, along with ARC and the Automaker Defendants, possessed exclusive access to and were in a superior position to know the true facts about the Defective Inflators;

c.     Given the Automaker Defendants' role in the design, manufacture, testing, and sale of Class Vehicles and Defective Inflators, and their experience and knowledge as experts and long-time veterans of the automotive industry, they, along with ARC and the Airbag Module Defendants, possessed exclusive access to and were in a superior position to know the true facts about the Defective Inflators;

d.     Given the Inflator Defect's hidden and technical nature, Plaintiffs and

773

Class Members lack the sophisticated expertise in vehicle components and technology that would be necessary to discover the Inflator Defect on their own;

e.   Defendants knew that the Inflator Defect gave rise to serious safety concerns for the consumers who purchased and leased the Class Vehicles;

f.   The Inflator Defect poses a severe risk of harm in that, among other things, the metal shrapnel can puncture and stab the occupants, causing severe and potentially fatal injuries;

g.   Defendants knew about and investigated the Inflator Defect, but then did not notify consumers about it or disclose the Inflator Defect to NHTSA, and the Automaker Defendants did not launch a comprehensive recall for all Class Vehicles, all of which individually and together deprived Plaintiffs of an opportunity that otherwise could have led them to discover the truth about the Inflator Defect in their Class Vehicles; and

h.   The Automaker Defendants made, helped to make, or conspired to make incomplete representations about the safety and reliability of the Class Vehicles and their airbags, while purposefully withholding

material facts about a known safety defect. Because they volunteered to provide information about the Class Vehicles that they marketed and offered for sale and lease to consumers, the Automaker Defendants had the duty to disclose the whole truth.

2849. By misrepresenting the Class Vehicles as safe and reliable and the airbags installed in them as properly functioning and free from defects, and/or by failing to disclose and actively concealing the dangers and risk posed by the Inflator Defect to both consumers and NHTSA, Defendants engaged in the false and misleading advertising practices prohibited by N.Y. Gen. Bus. Law § 350

2850. Defendants' unfair or deceptive acts or practices, including their misrepresentations, concealments, omissions, and/or suppressions of material facts, were designed to mislead and had a tendency or capacity to mislead and create a false impression in consumers that the Class Vehicles had properly-functioning and reliable airbags. Indeed, those misrepresentations, concealments, omissions, and suppressions of material facts did in fact deceive reasonable consumers, including Plaintiffs and Class Members, about the true safety and reliability of the Class Vehicles and/or the Defective Inflators installed in them, the quality of the Class Vehicles, and the true value of the Class Vehicles.

2851. Defendants intended for Plaintiffs and Class Members to rely on their

misrepresentations, omissions, and concealment—which they did by purchasing and leasing the Class Vehicles at the prices they paid believing that their vehicles would not have an Inflator Defect that would affect the quality, reliability, and safety of the Class Vehicles and their airbags.

2852. Defendants' misrepresentations, concealments, omissions, and suppressions of material facts regarding the Inflator Defect and true characteristics of the Class Vehicles were material to the decisions of Plaintiffs and Class Members to purchase and lease those vehicles, as Defendants intended. Plaintiffs and Class Members were exposed to those misrepresentations, concealments, omissions, and suppressions of material facts, and relied on Defendants' misrepresentations that the Class Vehicles and their airbags were safe and reliable in deciding to purchase and lease the Class Vehicles.

2853. Plaintiffs' and Class Members' reliance was reasonable, as they had no way of discerning that Defendants' representations were false and misleading, or otherwise learning the facts that Defendants had concealed or failed to disclose. Plaintiffs and Class Members did not, and could not, unravel Defendants' deception on their own.

2854. Had they known the truth about the Inflator Defect, Plaintiffs and Class Members would not have purchased or leased the Class Vehicles, or would have

paid significantly less for them.

2855. As a direct and proximate result of Defendants' deceptive practices, Plaintiffs and Class Members have sustained economic injury and loss—either by purchasing a vehicle they otherwise would not have purchased or paying more than they otherwise would have as a result of Defendants' actions and omissions alleged above—that first occurred at the time each Class Vehicle was purchased or leased.

2856. Defendants' violations present a continuing risk to Plaintiffs and Class Members, as well as to the general public, because the Class Vehicles remain unsafe due to the Defective Inflators therein. Defendants' unlawful acts and practices complained of herein affect the public interest.

2857. Pursuant to N.Y. Gen. Bus. Law § 350, Plaintiffs and Class Members seek an order enjoining the above unfair or deceptive acts or practices and awarding actual damages, punitive damages, and any other just and proper relief available under the New York FAA against all Defendants.

### e. New York Count 5: Fraud by Omission and Concealment Against All Defendants.

2858. Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

2859. The New York Plaintiffs bring this count under New York law,

individually and on behalf of the other members of the New York Subclasses against the Automaker Defendants and Airbag Module Defendants for their respective Class Vehicles, and ARC. For the remaining Defendants, Plaintiffs who purchased or leased their Class Vehicles in states with materially similar laws may represent subclasses under this count against all other Defendants and ARC.

2860. For purposes of this count, members of the New York Subclasses shall be referred to as "Class Members."

2861. For purposes of this count, ARC, the Automaker Defendants, and the Airbag Module Defendants shall be referred to as "Defendants."

2862. Defendants are liable for both fraudulent concealment and non-disclosure. *See, e.g.*, Restatement (Second) of Torts §§ 550-51 (1977).

2863. Defendants owed Plaintiffs and Class Members a duty to disclose all the material facts concerning the Defective Inflators in the Class Vehicles because:

    a.    Given the Automaker Defendants' role in the design, manufacture, testing, and sale of Class Vehicles and Defective Inflators, and their experience and knowledge as experts and long-time veterans of the automotive industry, they, along with ARC and the Airbag Module Defendants, possessed exclusive access to and were in a superior position to know the true facts about the Defective Inflators;

b.  Given ARC's design, development, testing and manufacture of the Defective Inflators and its experience and knowledge as experts and long-time veterans of the automotive industry, it, along with the Automaker Defendants and the Airbag Module Defendants, possessed exclusive access to and was in a superior position to know the true facts about the Defective Inflators;

c.  Given the Airbag Module Defendants' role in the design, manufacture, and testing of the airbag modules with the Defective Inflators installed in them, and their experience and knowledge as experts and long-time veterans of the automotive industry, they, along with ARC and the Automaker Defendants, possessed exclusive access to and were in a superior position to know the true facts about the Defective Inflators;

d.  Given the Inflator Defect's hidden and technical nature, Plaintiffs and Class Members lack the sophisticated expertise in vehicle components and technology that would be necessary to discover the Inflator Defect on their own;

e.  Defendants knew that the Inflator Defect gave rise to serious safety concerns for the consumers who purchased and leased the Class Vehicles;

779

f.  The Inflator Defect poses a severe risk of harm in that, among other things, the metal shrapnel can puncture and stab the occupants, causing severe and potentially fatal injuries;

g.  Defendants knew about and investigated the Inflator Defect, but then did not notify consumers about it, disclose the Inflator Defect to NHTSA, or further launch a comprehensive recall for all Class Vehicles, which individually and together deprived Plaintiffs of an opportunity that otherwise could have led them to discover the truth about the Inflator Defect in their Class Vehicles; and

h.  The Automaker Defendants made, helped to make, or conspired to make incomplete representations about the safety and reliability of the Class Vehicles and their airbags, while purposefully withholding material facts about a known safety defect. Because they volunteered to provide information about the Class Vehicles that they marketed and offered for sale and lease to consumers, the Automaker Defendants had the duty to disclose the whole truth.

2864. In breach of their duties, Defendants failed to disclose the Inflator Defect and that the Class Vehicles' airbags were not safe and reliable to Plaintiffs and Class Members in connection with the sale of the Class Vehicles.

2865. The Inflator Defect within the Class Vehicles is material to the sale of the Class Vehicles because a reasonable person would find it important in purchasing, leasing, or retaining a new or used motor vehicle and because it directly impacts the value of the Class Vehicles purchased or leased by Plaintiffs and Class Members.

2866. Defendants intended for Plaintiffs and Class Members to rely on their omissions and concealment—which they did by purchasing and leasing the Class Vehicles at the prices they paid believing that their vehicles would not have an Inflator Defect that would affect the quality, reliability, and safety of the Class Vehicles and their airbags.

2867. Plaintiffs' and Class Members' reliance was reasonable because a reasonable consumer would not have expected that the Class Vehicles contained a safety defect that poses such a serious risk. They had no way of learning the facts that Defendants had concealed or failed to disclose. Plaintiffs and Class Members did not, and could not, unravel Defendants' deception on their own.

2868. Defendants actively concealed and suppressed these material facts, in whole or in part, to maintain a market for the Class Vehicles and the Defective Inflators installed in them, to protect profits, and to avoid costly recalls that would expose them to liability for those expenses and harm the commercial reputations of

Defendants and their products. They did so at the expense of Plaintiffs and Class Members.

2869. If Defendants had fully and adequately disclosed the Inflator Defect to consumers, Plaintiffs and Class Members would have seen such a disclosure.

2870. Through their omissions and concealment with respect to the Inflator Defect within the Class Vehicles, Defendants intended to induce, and did induce, Plaintiffs and Class Members to either purchase a Class Vehicle that they otherwise would not have purchased, or pay more for a Class Vehicle than they otherwise would have paid.

2871. Had Plaintiffs and Class Members known of the Inflator Defect within the Class Vehicles, they would not have purchased the Class Vehicles or would have paid less for them.

2872. As a direct and proximate result of Defendants' omissions and concealment, Plaintiffs and other Class Members either overpaid for the Class Vehicles or would not have purchased the Class Vehicles at all if the Inflator Defect had been disclosed to them. Accordingly, Defendants are liable to Plaintiffs and Class Members for their damages in an amount to be proven at trial.

2873. Defendants acted maliciously, oppressively, deliberately, with intent to defraud; in reckless disregard of the Plaintiffs' and Class Members' rights and well-

being; and to enrich themselves. Defendants' misconduct warrants an assessment of punitive damages, as permitted by law, in an amount sufficient to deter such conduct in the future, which amount shall be determined according to proof at trial.

### f.   New York Count 6: Unjust Enrichment Against the Automaker Defendants.

2874. Plaintiffs reallege and incorporate by reference all allegations in Volume 1 of the Consolidated Class Action Complaint as though fully set forth herein.

2875. The New York Plaintiffs bring this count under New York law, individually and on behalf of the other members of the New York Subclasses against the Automaker Defendants for their respective Class Vehicles. For the remaining Automaker Defendants, Plaintiffs who purchased or leased their Class Vehicles in states with materially similar laws may represent subclasses under this count against those Automaker Defendants.

2876. For purposes of this count, members of the New York Subclasses shall be referred to as "Class Members."

2877. When they purchased and leased the Class Vehicles, Plaintiffs and Class Members conferred tangible and material economic benefits upon the Automaker Defendants, who readily accepted and retained these benefits.

2878. Plaintiffs and Class Members would not have purchased or leased their Class Vehicles, or would have paid less for them, had they known of the Inflator Defect at the time of purchase or lease. Therefore, the Automaker Defendants profited from the sale and lease of the Class Vehicles to the detriment and expense of Plaintiffs and Class Members.

2879. The Automaker Defendants appreciated these economic benefits. These benefits were the expected result of the Automaker Defendants acting in their pecuniary interest at the expense of their customers. They knew of these benefits because they were aware of the Inflator Defect, yet they failed to disclose this knowledge and misled the Plaintiffs and Class Members regarding the nature and quality of the Class Vehicles while profiting from this deception.

2880. It would be unjust, inequitable, and unconscionable for the Automaker Defendants to retain these benefits, including because they were procured as a result of their wrongful conduct alleged above.

2881. Plaintiffs and Class Members are entitled to restitution of the benefits the Automaker Defendants unjustly retained and/or any amounts necessary to return Plaintiffs and Class Members to the position they occupied prior to dealing with those Defendants, with such amounts to be determined at trial.

2882. Plaintiffs plead this claim separately as well as in the alternative to their

claims for damages under Fed. R. Civ. P. 8(a)(3), because if the Court dismisses Plaintiffs' claims for damages enters judgment on them in favor of the Automaker Defendants, Plaintiffs will have no adequate legal remedy.

### 34.   North Carolina

#### a.   North Carolina Count 1: Breach of Express Warranty (N.C. Gen. Stat. §§ 25-2-313 and 25-2A-210) Against the Automaker Defendants.

2883. Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

2884. The North Carolina Plaintiffs bring this count under North Carolina law, individually and on behalf of the other members of the North Carolina Subclasses against the Automaker Defendants for their respective Class Vehicles. For the remaining Automaker Defendants, Plaintiffs who purchased or leased their Class Vehicles in states with materially similar laws may represent subclasses under this count against those Automaker Defendants.

2885. For purposes of this count, members of the North Carolina Subclasses shall be referred to as "Class Members."

2886. The Class Vehicles are "goods" under N.C. Gen. Stat. §§ 25-2-105(1) and 25-2A-103(1)(h).

2887. The Automaker Defendants are "merchants" of the Class Vehicles

under N.C. Gen. Stat. §§ 25-2-104(1) and 25-2A-103(3), "sellers" under § 25-2-103(1)(d), and "lessors" under § 25-2A-103(1)(p).

2888. Plaintiffs and Class Members who purchased and leased the Class Vehicles in North Carolina are "buyers" under N.C. Gen. Stat. § 25-2-103(1)(a) and "lessees" under § 25-2A-103(1)(n).

2889. The Automaker Defendants issued an express written warranty for each defective Class Vehicle they sold, including that:

a.      The Class Vehicles would be free of defects in materials and workmanship at the time of sale; and

b.      The Class Vehicles were safe and reliable, and their airbags would function properly in the event of a crash.

2890. The warranties listed above formed the basis of the bargain with regard to Plaintiffs and Class Members' purchase and lease of the Class Vehicles.

2891. The Automaker Defendants knowingly breached their warranty for the Class Vehicles because:

a.      The airbag inflators have latent defects which have a dangerous propensity to cause the inflators to rupture and eject metal shrapnel, subjecting Plaintiffs and Class Members to the risk of loss and injury; and

786

b.     The Automaker Defendants denied, concealed, and misrepresented the Inflator Defect, in the process refusing to pay for or provide in a reasonably timely fashion the needed repairs and replacements for Plaintiffs and Class Members.

2892. The Automaker Defendants knew or should have known that the warranties were false and/or misleading. Specifically, the Automaker Defendants were aware of the Inflator Defect in the Class Vehicles, which made the vehicles inherently defective and dangerous at the time that they were sold and leased to Plaintiffs and Class Members.

2893. Plaintiffs and Class Members were exposed to the Automaker Defendants' misrepresentations, and they had no way of discerning that the Automaker Defendants' representations were false and misleading or otherwise learning the material facts that the Automaker Defendants had concealed or failed to disclose. Accordingly, Plaintiffs and Class Members reasonably relied on the Automaker Defendants' express warranties when purchasing or leasing their Class Vehicles.

2894. Plaintiffs and Class Members timely provided the Automaker Defendants notice of the issues raised in this count and this Complaint and an opportunity to cure, as alleged in the paragraphs addressing Defendants' notice

above.

2895. Alternatively, Plaintiffs and Class Members were excused from providing the Automaker Defendants with notice and an opportunity to cure the breach, because it would have been futile. As alleged above, the Automaker Defendants knew about the Defective Inflators for years; however, to date, the Automaker Defendants have not instituted a recall or any other repair program with respect to all of the Class Vehicles, or even acknowledged that the Inflator Defect exists in all of the Class Vehicles. Therefore, they have refused to recall or repair defective vehicles. Moreover, to the extent the Automaker Defendants have issued recalls, those recalls are inadequate because, *inter alia*: (a) they are belated because the Automaker Defendants knew about the Defective Inflators for years and did nothing to recall or remedy the serious safety defect; (b) with tens of millions of vehicles impacted in existing and potential future recalls, as a result of the Automaker Defendants' concealment of the Inflator Defect, the recalls cannot be implemented effectively due to supply constraints and resulting delays; (c) the recalls are incomplete, and apply to only a subset of the Class Vehicles.

2896. As a direct and proximate result of the Automaker Defendants' breach of their express warranties, the Class Vehicles were and are defective and the Inflator Defect was not remedied. Therefore, Plaintiff and Class Members have been

damaged, in an amount to be proven at trial, through their overpayment at the time of purchase or lease for the Class Vehicles with an undisclosed safety defect that would not be remedied.

> **b.** **North Carolina Count 2: Breach of Implied Warranty of Merchantability (N.C. Gen. Stat. §§ 25-2-314 and 25-2A-212) Against the Automaker Defendants.**

2897. Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

2898. The North Carolina Plaintiffs bring this count under North Carolina law, individually and on behalf of the other members of the North Carolina Subclasses against the Automaker Defendants for their respective Class Vehicles. For the remaining Automaker Defendants, Plaintiffs who purchased or leased their Class Vehicles in states with materially similar laws may represent subclasses under this count against those Automaker Defendants.

2899. For purposes of this count, members of the North Carolina Subclasses shall be referred to as "Class Members."

2900. The Class Vehicles are "goods" under N.C. Gen. Stat. §§ 25-2-105(1) and 25-2A-103(1)(h).

2901. The Automaker Defendants are "merchants" of the Class Vehicles under N.C. Gen. Stat. § 25-2-104(1), "sellers" under § 25-2-103(1)(d), and "lessors"

under § 25-2A-103(1)(p).

2902. Plaintiffs and Class Members who purchased and leased the Class Vehicles in North Carolina are "buyers" under N.C. Gen. Stat. § 25-2-103(1)(a) and "lessees" under § 25-2A-103(1)(n).

2903. North Carolina law conferred an implied warranty that the Class Vehicles were in merchantable condition and fit for the ordinary purpose for which they were to be used pursuant to N.C. Gen. Stat. §§ 25-2-314 and 25-2A-212.

2904. The Class Vehicles are not merchantable, and as such the Automaker Defendants breached their implied warranties, because at the time of sale and all times thereafter:

a.    The Class Vehicles would not pass without objection in the automotive trade given the Inflator Defect;

b.    The Inflator Defect renders the Class Vehicles unsafe to drive and unfit for ordinary purposes;

c.    The Class Vehicles and the airbags therein were inadequately labeled as safe and reliable, and the labeling failed to disclose the Inflator Defect; and

d.    The Class Vehicles do not conform to their labeling, which represents that the vehicles are safe and suitable for their intended use.

2905. Plaintiffs and Class Members timely provided the Automaker Defendants notice of the issues raised in this count and this Complaint and an opportunity to cure, as alleged in the paragraphs addressing Defendants' notice above.

2906. Alternatively, Plaintiffs and Class Members were excused from providing the Automaker Defendants with notice and an opportunity to cure the breach because it would have been futile. As alleged above, the Automaker Defendants have long known that the Class Vehicles contained the Defective Inflators, and that the Defective Inflators have caused airbags to malfunction in crashes involving the Class Vehicles; however, to date, the Automaker Defendants have not instituted a recall or any other repair program with respect to all of the Class Vehicles, or even acknowledged that the Inflator Defect exists in all of those Class Vehicles. Moreover, to the extent the Automaker Defendants have issued recalls, those recalls are inadequate because, inter alia: (a) they are belated because the Automaker Defendants knew about the Defective Inflators for years and did nothing to recall or remedy the serious safety defect; (b) with tens of millions of vehicles impacted in existing and potential future recalls, as a result of the Automaker Defendants' concealment of the Inflator Defect, the recalls cannot be implemented effectively due to supply constraints and resulting delays; (c) the recalls are

incomplete, and apply to only a subset of the Class Vehicles.

2907. Plaintiffs, individually and on behalf of Class Members, seek all available monetary damages (including actual, compensatory, and punitive damages), injunctive and equitable relief, and attorneys' fees and costs.

> **c.      North Carolina Count 3: Violation of the North Carolina Unfair and Deceptive Trade Practices Act (N.C. Gen. Stat. § 75-1.1, *et seq.*) Against All Defendants.[37]**

2908. Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

2909. The North Carolina Plaintiffs bring this count under North Carolina law, individually and on behalf of the other members of the North Carolina Subclasses against the Automaker Defendants and Airbag Module Defendants for their respective Class Vehicles, and ARC. For the remaining Defendants, Plaintiffs who purchased or leased their Class Vehicles in states with materially similar laws may represent subclasses under this count against all other Defendants and ARC.

2910. For purposes of this count, members of the North Carolina Subclasses shall be referred to as "Class Members."

---

[37] Plaintiffs bring this count against ARC and the Airbag Module Defendants based on their omissions and concealment of material facts only.

2911. For purposes of this count, ARC, the Automaker Defendants, and the Airbag Module Defendants shall be referred to as "Defendants."

2912. Defendants are engaged in "commerce" under N.C. Gen. Stat. § 75-1.1(b).

2913. The North Carolina Unfair and Deceptive Trade Practices Act ("North Carolina UDTPA") makes unlawful any "[u]nfair methods of competition in or affecting commerce, and unfair or deceptive acts or practices in or affecting commerce." N.C. Gen. Stat. § 75-1.1(a).

2914. In the course of their business, Defendants, through their agents, employees, and/or subsidiaries, violated the North Carolina UDTPA by knowingly and intentionally misrepresenting, omitting, concealing, and/or failing to disclose material facts regarding the reliability, safety, and performance of the Class Vehicles and the Defective Inflators, as detailed above.

2915. Defendants had an ongoing duty to Plaintiffs and Class Members to refrain from unfair or deceptive practices under the North Carolina UDTPA in the course of their business. Specifically, Defendants owed Plaintiffs and Class Members a duty to disclose all the material facts concerning the Defective Inflators in the Class Vehicles because:

a.      Given ARC's design, development, testing and manufacture of the

793

Defective Inflators and its experience and knowledge as experts and long-time veterans of the automotive industry, it, along with the Automaker Defendants and the Airbag Module Defendants, possessed exclusive access to and was in a superior position to know the true facts about the Defective Inflators;

b.  Given the Airbag Module Defendants' role in the design, manufacture, and testing of the airbag modules with the Defective Inflators installed in them, and their experience and knowledge as experts and long-time veterans of the automotive industry, they, along with ARC and the Automaker Defendants, possessed exclusive access to and were in a superior position to know the true facts about the Defective Inflators;

c.  Given the Automaker Defendants' role in the design, manufacture, testing, and sale of Class Vehicles and Defective Inflators, and their experience and knowledge as experts and long-time veterans of the automotive industry, they, along with ARC and the Airbag Module Defendants, possessed exclusive access to and were in a superior position to know the true facts about the Defective Inflators;

d.  Given the Inflator Defect's hidden and technical nature, Plaintiffs and Class Members lack the sophisticated expertise in vehicle components

and technology that would be necessary to discover the Inflator Defect on their own;

e.    Defendants knew that the Inflator Defect gave rise to serious safety concerns for the consumers who purchased and leased the Class Vehicles;

f.    The Inflator Defect poses a severe risk of harm in that, among other things, the metal shrapnel can puncture and stab the occupants, causing severe and potentially fatal injuries;

g.    Defendants knew about and investigated the Inflator Defect, but then did not notify consumers about it or disclose the Inflator Defect to NHTSA, and the Automaker Defendants did not launch a comprehensive recall for all Class Vehicles, all of which individually and together deprived Plaintiffs of an opportunity that otherwise could have led them to discover the truth about the Inflator Defect in their Class Vehicles; and

h.    The Automaker Defendants made, helped to make, or conspired to make incomplete representations about the safety and reliability of the Class Vehicles and their airbags, while purposefully withholding material facts about a known safety defect. Because they volunteered

to provide information about the Class Vehicles that they marketed and offered for sale and lease to consumers, the Automaker Defendants had the duty to disclose the whole truth.

2916. By misrepresenting the Class Vehicles as safe and reliable and the airbags installed in them as properly-functioning and free from defects, and/or by failing to disclose and actively concealing the dangers and risk posed by the Inflator Defect to both consumers and NHTSA, Defendants engaged in unfair methods of competition in or affective commerce, and unfair or deceptive acts or practices in or affecting commerce prohibited by N.C. Gen. Stat. § 75-1.1.

2917. Defendants' unfair or deceptive acts or practices, including their misrepresentations, concealments, omissions, and/or suppressions of material facts, were designed to mislead and had a tendency or capacity to mislead and create a false impression in consumers that the Class Vehicles had properly-functioning and reliable airbags. Indeed, those misrepresentations, concealments, omissions, and suppressions of material facts did in fact deceive reasonable consumers, including Plaintiffs and Class Members, about the true safety and reliability of the Class Vehicles and/or the Defective Inflators installed in them, the quality of the Class Vehicles, and the true value of the Class Vehicles.

2918. Defendants intended for Plaintiffs and Class Members to rely on their

796

misrepresentations, omissions, and concealment—which they did by purchasing and leasing the Class Vehicles at the prices they paid believing that their vehicles would not have an Inflator Defect that would affect the quality, reliability, and safety of the Class Vehicles and their airbags.

2919. Defendants' misrepresentations, concealments, omissions, and suppressions of material facts regarding the Inflator Defect and true characteristics of the Class Vehicles were material to the decisions of Plaintiffs and Class Members to purchase and lease those vehicles, as Defendants intended. Plaintiffs and Class Members were exposed to those misrepresentations, concealments, omissions, and suppressions of material facts, and relied on Defendants' misrepresentations that the Class Vehicles and their airbags were safe and reliable in deciding to purchase and lease the Class Vehicles.

2920. Plaintiffs' and Class Members' reliance was reasonable, as they had no way of discerning that Defendants' representations were false and misleading, or otherwise learning the facts that Defendants had concealed or failed to disclose. Plaintiffs and Class Members did not, and could not, unravel Defendants' deception on their own.

2921. Had they known the truth about the Inflator Defect, Plaintiffs and Class Members would not have purchased or leased the Class Vehicles, or would have

paid significantly less for them.

2922. As a direct and proximate result of Defendants' deceptive practices, Plaintiffs and Class Members have sustained economic injury and loss—either by purchasing a vehicle they otherwise would not have purchased or paying more than they otherwise would have as a result of Defendants' actions and omissions alleged above—that first occurred at the time each Class Vehicle was purchased or leased.

2923. Defendants' violations present a continuing risk to Plaintiffs and Class Members, as well as to the general public, because the Class Vehicles remain unsafe due to the Defective Inflators therein. Defendants' unlawful acts and practices complained of herein affect the public interest.

2924. Pursuant to N.C. Gen. Stat. § 75-16, Plaintiffs and Class Members seek an order enjoining the above unfair or deceptive acts or practices and awarding actual damages, punitive damages, and any other just and proper relief available under the North Carolina UDTPA against all Defendants.

### d.   North Carolina Count 4: Fraud by Omission and Concealment Against All Defendants.

2925. Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

2926. The North Carolina Plaintiffs bring this count under North Carolina

law, individually and on behalf of the other members of the North Carolina Subclasses against the Automaker Defendants and Airbag Module Defendants for their respective Class Vehicles, and ARC. For the remaining Defendants, Plaintiffs who purchased or leased their Class Vehicles in states with materially similar laws may represent subclasses under this count against all other Defendants and ARC.

2927. For purposes of this count, members of the North Carolina Subclasses shall be referred to as "Class Members."

2928. For purposes of this count, ARC, the Automaker Defendants, and the Airbag Module Defendants shall be referred to as "Defendants."

2929. Defendants are liable for both fraudulent concealment and non-disclosure. *See, e.g.*, Restatement (Second) of Torts §§ 550-51 (1977).

2930. Defendants owed Plaintiffs and Class Members a duty to disclose all the material facts concerning the Defective Inflators in the Class Vehicles because:

a.      Given the Automaker Defendants' role in the design, manufacture, testing, and sale of Class Vehicles and Defective Inflators, and their experience and knowledge as experts and long-time veterans of the automotive industry, they, along with ARC and the Airbag Module Defendants, possessed exclusive access to and were in a superior position to know the true facts about the Defective Inflators;

b. Given ARC's design, development, testing and manufacture of the Defective Inflators and its experience and knowledge as experts and long-time veterans of the automotive industry, it, along with the Automaker Defendants and the Airbag Module Defendants, possessed exclusive access to and was in a superior position to know the true facts about the Defective Inflators;

c. Given the Airbag Module Defendants' role in the design, manufacture, and testing of the airbag modules with the Defective Inflators installed in them, and their experience and knowledge as experts and long-time veterans of the automotive industry, they, along with ARC and the Automaker Defendants, possessed exclusive access to and were in a superior position to know the true facts about the Defective Inflators;

d. Given the Inflator Defect's hidden and technical nature, Plaintiffs and Class Members lack the sophisticated expertise in vehicle components and technology that would be necessary to discover the Inflator Defect on their own;

e. Defendants knew that the Inflator Defect gave rise to serious safety concerns for the consumers who purchased and leased the Class Vehicles;

800

f.    The Inflator Defect poses a severe risk of harm in that, among other things, the metal shrapnel can puncture and stab the occupants, causing severe and potentially fatal injuries;

g.    Defendants knew about and investigated the Inflator Defect, but then did not notify consumers about it, disclose the Inflator Defect to NHTSA, or further launch a comprehensive recall for all Class Vehicles, which individually and together deprived Plaintiffs of an opportunity that otherwise could have led them to discover the truth about the Inflator Defect in their Class Vehicles; and

h.    The Automaker Defendants made, helped to make, or conspired to make incomplete representations about the safety and reliability of the Class Vehicles and their airbags, while purposefully withholding material facts about a known safety defect. Because they volunteered to provide information about the Class Vehicles that they marketed and offered for sale and lease to consumers, the Automaker Defendants had the duty to disclose the whole truth.

2931. In breach of their duties, Defendants failed to disclose the Inflator Defect and that the Class Vehicles' airbags were not safe and reliable to Plaintiffs and Class Members in connection with the sale of the Class Vehicles.

2932. The Inflator Defect within the Class Vehicles is material to the sale of the Class Vehicles because a reasonable person would find it important in purchasing, leasing, or retaining a new or used motor vehicle and because it directly impacts the value of the Class Vehicles purchased or leased by Plaintiffs and Class Members.

2933. Defendants intended for Plaintiffs and Class Members to rely on their omissions and concealment—which they did by purchasing and leasing the Class Vehicles at the prices they paid believing that their vehicles would not have an Inflator Defect that would affect the quality, reliability, and safety of the Class Vehicles and their airbags.

2934. Plaintiffs' and Class Members' reliance was reasonable because a reasonable consumer would not have expected that the Class Vehicles contained a safety defect that poses such a serious risk. They had no way of learning the facts that Defendants had concealed or failed to disclose. Plaintiffs and Class Members did not, and could not, unravel Defendants' deception on their own.

2935. Defendants actively concealed and suppressed these material facts, in whole or in part, to maintain a market for the Class Vehicles and the Defective Inflators installed in them, to protect profits, and to avoid costly recalls that would expose them to liability for those expenses and harm the commercial reputations of

Defendants and their products. They did so at the expense of Plaintiffs and Class Members.

2936. If Defendants had fully and adequately disclosed the Inflator Defect to consumers, Plaintiffs and Class Members would have seen such a disclosure.

2937. Through their omissions and concealment with respect to the Inflator Defect within the Class Vehicles, Defendants intended to induce, and did induce, Plaintiffs and Class Members to either purchase a Class Vehicle that they otherwise would not have purchased, or pay more for a Class Vehicle than they otherwise would have paid.

2938. Had Plaintiffs and Class Members known of the Inflator Defect within the Class Vehicles, they would not have purchased the Class Vehicles or would have paid less for them.

2939. As a direct and proximate result of Defendants' omissions and concealment, Plaintiffs and other Class Members either overpaid for the Class Vehicles or would not have purchased the Class Vehicles at all if the Inflator Defect had been disclosed to them. Accordingly, Defendants are liable to Plaintiffs and Class Members for their damages in an amount to be proven at trial.

2940. Defendants acted maliciously, oppressively, deliberately, with intent to defraud; in reckless disregard of the Plaintiffs' and Class Members' rights and well-

being; and to enrich themselves. Defendants' misconduct warrants an assessment of punitive damages, as permitted by law, in an amount sufficient to deter such conduct in the future, which amount shall be determined according to proof at trial.

### e. North Carolina Count 5: Unjust Enrichment Against the Automaker Defendants.

2941. Plaintiffs reallege and incorporate by reference all allegations in Volume 1 of the Consolidated Class Action Complaint as though fully set forth herein.

2942. The North Carolina Plaintiffs bring this count under North Carolina law, individually and on behalf of the other members of the North Carolina Subclasses against the Automaker Defendants for their respective Class Vehicles. For the remaining Automaker Defendants, Plaintiffs who purchased or leased their Class Vehicles in states with materially similar laws may represent subclasses under this count against those Automaker Defendants.

2943. For purposes of this count, members of the North Carolina Subclasses shall be referred to as "Class Members."

2944. When they purchased and leased the Class Vehicles, Plaintiffs and Class Members conferred tangible and material economic benefits upon the Automaker Defendants, who readily accepted and retained these benefits.

2945. Plaintiffs and Class Members would not have purchased or leased their Class Vehicles, or would have paid less for them, had they known of the Inflator Defect at the time of purchase or lease. Therefore, the Automaker Defendants profited from the sale and lease of the Class Vehicles to the detriment and expense of Plaintiffs and Class Members.

2946. The Automaker Defendants appreciated these economic benefits. These benefits were the expected result of the Automaker Defendants acting in their pecuniary interest at the expense of their customers. They knew of these benefits because they were aware of the Inflator Defect, yet they failed to disclose this knowledge and misled the Plaintiffs and Class Members regarding the nature and quality of the Class Vehicles while profiting from this deception.

2947. It would be unjust, inequitable, and unconscionable for the Automaker Defendants to retain these benefits, including because they were procured as a result of their wrongful conduct alleged above.

2948. Plaintiffs and Class Members are entitled to restitution of the benefits the Automaker Defendants unjustly retained and/or any amounts necessary to return Plaintiffs and Class Members to the position they occupied prior to dealing with those Defendants, with such amounts to be determined at trial.

2949. Plaintiffs plead this claim separately as well as in the alternative to their

claims for damages under Fed. R. Civ. P. 8(a)(3), because if the Court dismisses Plaintiffs' claims for damages enters judgment on them in favor of the Automaker Defendants, Plaintiffs will have no adequate legal remedy.

### 35.   North Dakota

####    a.   North Dakota Count 1: Breach of Express Warranty (N.D. Cent. Code §§ 41-02-30 and 41-02.1-19) Against the Automaker Defendants.

2950. Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

2951. The North Dakota Plaintiffs bring this count under North Dakota law, individually and on behalf of the other members of the North Dakota Subclasses against the Automaker Defendants for their respective Class Vehicles. For the remaining Automaker Defendants, Plaintiffs who purchased or leased their Class Vehicles in states with materially similar laws may represent subclasses under this count against those Automaker Defendants.

2952. For purposes of this count, members of the North Dakota Subclasses shall be referred to as "Class Members."

2953. The Class Vehicles are "goods" under N.D. Cent. Code §§ 41-02-05(2) and 41-02.1-03(1)(h).

2954. The Automaker Defendants are "merchants" of the Class Vehicles under N.D. Cent. Code § 41-02-04(3), "sellers" under § 41-02-03(1)(d), and "lessors" under § 41-02.1-03(1)(p).

2955. Plaintiffs and Class Members who purchased and leased the Class Vehicles in North Dakota are "buyers" under N.D. Cent. Code § 41-02-03(1)(a) and "lessees" under § 41-02.1-03(1)(n).

2956. The Automaker Defendants issued an express written warranty for each defective Class Vehicle they sold, including that:

a.    The Class Vehicles would be free of defects in materials and workmanship at the time of sale; and

b.    The Class Vehicles were safe and reliable, and their airbags would function properly in the event of a crash.

2957. The warranties listed above formed the basis of the bargain with regard to Plaintiffs and Class Members' purchase and lease of the Class Vehicles.

2958. The Automaker Defendants knowingly breached their warranty for the Class Vehicles because:

a.    The airbag inflators have latent defects which have a dangerous propensity to cause the inflators to rupture and eject metal shrapnel, subjecting Plaintiffs and Class Members to the risk of loss and injury;

and

b.   The Automaker Defendants denied, concealed, and misrepresented the Inflator Defect, in the process refusing to pay for or provide in a reasonably timely fashion the needed repairs and replacements for Plaintiffs and Class Members.

2959. The Automaker Defendants knew or should have known that the warranties were false and/or misleading. Specifically, the Automaker Defendants were aware of the Inflator Defect in the Class Vehicles, which made the vehicles inherently defective and dangerous at the time that they were sold and leased to Plaintiffs and Class Members.

2960. Plaintiffs and Class Members were exposed to the Automaker Defendants' misrepresentations, and they had no way of discerning that the Automaker Defendants' representations were false and misleading or otherwise learning the material facts that the Automaker Defendants had concealed or failed to disclose. Accordingly, Plaintiffs and Class Members reasonably relied on the Automaker Defendants' express warranties when purchasing or leasing their Class Vehicles.

2961. Plaintiffs and Class Members timely provided the Automaker Defendants notice of the issues raised in this count and this Complaint and an

opportunity to cure, as alleged in the paragraphs addressing Defendants' notice above.

2962. Alternatively, Plaintiffs and Class Members were excused from providing the Automaker Defendants with notice and an opportunity to cure the breach, because it would have been futile. As alleged above, the Automaker Defendants knew about the Defective Inflators for years; however, to date, the Automaker Defendants have not instituted a recall or any other repair program with respect to all of the Class Vehicles, or even acknowledged that the Inflator Defect exists in all of the Class Vehicles. Therefore, they have refused to recall or repair defective vehicles. Moreover, to the extent the Automaker Defendants have issued recalls, those recalls are inadequate because, *inter alia*: (a) they are belated because the Automaker Defendants knew about the Defective Inflators for years and did nothing to recall or remedy the serious safety defect; (b) with tens of millions of vehicles impacted in existing and potential future recalls, as a result of the Automaker Defendants' concealment of the Inflator Defect, the recalls cannot be implemented effectively due to supply constraints and resulting delays; (c) the recalls are incomplete, and apply to only a subset of the Class Vehicles.

2963. As a direct and proximate result of the Automaker Defendants' breach of their express warranties, the Class Vehicles were and are defective and the Inflator

Defect was not remedied. Therefore, Plaintiff and Class Members have been damaged, in an amount to be proven at trial, through their overpayment at the time of purchase or lease for the Class Vehicles with an undisclosed safety defect that would not be remedied.

> **b.** **North Dakota Count 2: Breach of Implied Warranty of Merchantability (N.D. Cent. Code §§ 41-02-31 and 41-02.1-21) Against the Automaker Defendants.**

2964. Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

2965. The North Dakota Plaintiffs bring this count under North Dakota law, individually and on behalf of the other members of the North Dakota Subclasses against the Automaker Defendants for their respective Class Vehicles. For the remaining Automaker Defendants, Plaintiffs who purchased or leased their Class Vehicles in states with materially similar laws may represent subclasses under this count against those Automaker Defendants.

2966. For purposes of this count, members of the North Dakota Subclasses shall be referred to as "Class Members."

2967. The Class Vehicles are "goods" under N.D. Cent. Code §§ 41-02-05(2) and 41-02.1-03(1)(h).

2968. The Automaker Defendants are "merchants" of the Class Vehicles

under N.D. Cent. Code § 41-02-04(3), "sellers" under § 41-02-03(1)(d), and "lessors" under § 41-02.1-03(1)(p).

2969. Plaintiffs and Class Members who purchased and leased the Class Vehicles in North Dakota are "buyers" under N.D. Cent. Code § 41-02-03(1)(a) and "lessees" under § 41-02.1-03(1)(n).

2970. North Dakota law conferred an implied warranty that the Class Vehicles were in merchantable condition and fit for the ordinary purpose for which they were to be used pursuant to N.D. Cent. Code §§ 41-02-31 and 41-02.1-21.

2971. The Class Vehicles are not merchantable, and as such the Automaker Defendants breached their implied warranties, because at the time of sale and all times thereafter:

a.   The Class Vehicles would not pass without objection in the automotive trade given the Inflator Defect;

b.   The Inflator Defect renders the Class Vehicles unsafe to drive and unfit for ordinary purposes;

c.   The Class Vehicles and the airbags therein were inadequately labeled as safe and reliable, and the labeling failed to disclose the Inflator Defect; and

d.   The Class Vehicles do not conform to their labeling, which represents

811

that the vehicles are safe and suitable for their intended use.

2972. Plaintiffs and Class Members timely provided the Automaker Defendants notice of the issues raised in this count and this Complaint and an opportunity to cure, as alleged in the paragraphs addressing Defendants' notice above.

2973. Alternatively, Plaintiffs and Class Members were excused from providing the Automaker Defendants with notice and an opportunity to cure the breach because it would have been futile. As alleged above, the Automaker Defendants have long known that the Class Vehicles contained the Defective Inflators, and that the Defective Inflators have caused airbags to malfunction in crashes involving the Class Vehicles; however, to date, the Automaker Defendants have not instituted a recall or any other repair program with respect to all of the Class Vehicles, or even acknowledged that the Inflator Defect exists in all of those Class Vehicles. Moreover, to the extent the Automaker Defendants have issued recalls, those recalls are inadequate because, inter alia: (a) they are belated because the Automaker Defendants knew about the Defective Inflators for years and did nothing to recall or remedy the serious safety defect; (b) with tens of millions of vehicles impacted in existing and potential future recalls, as a result of the Automaker Defendants' concealment of the Inflator Defect, the recalls cannot be implemented

effectively due to supply constraints and resulting delays; (c) the recalls are incomplete, and apply to only a subset of the Class Vehicles.

2974. Plaintiffs, individually and on behalf of Class Members, seek all available monetary damages (including actual, compensatory, and punitive damages), injunctive and equitable relief, and attorneys' fees and costs.

### c. North Dakota Count 3: Violation of the North Dakota Consumer Fraud Act (N.D. Cent. Code § 51-15-02, *et seq.*) Against All Defendants.[38]

2975. Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

2976. The North Dakota Plaintiffs bring this count under North Dakota law, individually and on behalf of the other members of the North Dakota Subclasses against the Automaker Defendants and Airbag Module Defendants for their respective Class Vehicles, and ARC. For the remaining Defendants, Plaintiffs who purchased or leased their Class Vehicles in states with materially similar laws may represent subclasses under this count against all other Defendants and ARC.

2977. For purposes of this count, members of the North Dakota Subclasses shall be referred to as "Class Members."

---

[38] Plaintiffs bring this count against ARC and the Airbag Module Defendants based on their omissions and concealment of material facts only.

2978. For purposes of this count, ARC, the Automaker Defendants, and the Airbag Module Defendants shall be referred to as "Defendants."

2979. Defendants, Plaintiffs, and Class Members are "persons" under N.D. Cent. Code § 51-15-02(4).

2980. Defendants are engaged in the "sale" of "merchandise" under N.D. Cent. Code § 51-15-02(3), (5).

2981. The North Dakota Consumer Fraud Act ("North Dakota CFA") makes unlawful "[t]he act, use, or employment by any person of any deceptive act or practice, fraud, false pretense, false promise, or misrepresentation, with the intent that others rely thereon in connection with the sale or advertisement of any merchandise…." N.D. Cent. Code § 51-15-02.

2982. In the course of their business, Defendants, through their agents, employees, and/or subsidiaries, violated the North Dakota CFA by knowingly and intentionally misrepresenting, omitting, concealing, and/or failing to disclose material facts regarding the reliability, safety, and performance of the Class Vehicles and the Defective Inflators, as detailed above.

2983. Defendants had an ongoing duty to Plaintiffs and Class Members to refrain from unfair or deceptive practices under the North Dakota CFA in the course of their business. Specifically, Defendants owed Plaintiffs and Class Members a duty

to disclose all the material facts concerning the Defective Inflators in the Class Vehicles because:

    a.    Given ARC's design, development, testing and manufacture of the Defective Inflators and its experience and knowledge as experts and long-time veterans of the automotive industry, it, along with the Automaker Defendants and the Airbag Module Defendants, possessed exclusive access to and was in a superior position to know the true facts about the Defective Inflators;

    b.    Given the Airbag Module Defendants' role in the design, manufacture, and testing of the airbag modules with the Defective Inflators installed in them, and their experience and knowledge as experts and long-time veterans of the automotive industry, they, along with ARC and the Automaker Defendants, possessed exclusive access to and were in a superior position to know the true facts about the Defective Inflators;

    c.    Given the Automaker Defendants' role in the design, manufacture, testing, and sale of Class Vehicles and Defective Inflators, and their experience and knowledge as experts and long-time veterans of the automotive industry, they, along with ARC and the Airbag Module Defendants, possessed exclusive access to and were in a superior

815

position to know the true facts about the Defective Inflators;

d.      Given the Inflator Defect's hidden and technical nature, Plaintiffs and Class Members lack the sophisticated expertise in vehicle components and technology that would be necessary to discover the Inflator Defect on their own;

e.      Defendants knew that the Inflator Defect gave rise to serious safety concerns for the consumers who purchased and leased the Class Vehicles;

f.      The Inflator Defect poses a severe risk of harm in that, among other things, the metal shrapnel can puncture and stab the occupants, causing severe and potentially fatal injuries;

g.      Defendants knew about and investigated the Inflator Defect, but then did not notify consumers about it or disclose the Inflator Defect to NHTSA, and the Automaker Defendants did not launch a comprehensive recall for all Class Vehicles, all of which individually and together deprived Plaintiffs of an opportunity that otherwise could have led them to discover the truth about the Inflator Defect in their Class Vehicles; and

816

h.      The Automaker Defendants made, helped to make, or conspired to make incomplete representations about the safety and reliability of the Class Vehicles and their airbags, while purposefully withholding material facts about a known safety defect. Because they volunteered to provide information about the Class Vehicles that they marketed and offered for sale and lease to consumers, the Automaker Defendants had the duty to disclose the whole truth.

2984. By misrepresenting the Class Vehicles as safe and reliable and the airbags installed in them as properly-functioning and free from defects, and/or by failing to disclose and actively concealing the dangers and risk posed by the Inflator Defect to both consumers and NHTSA, Defendants engaged in one or more of the following unfair methods of competition in or affective commerce, and unfair or deceptive acts or practices in or affecting commerce prohibited by N.D. Cent. Code § 51-15-02: using or employing deception, fraud, false pretense, false promise or misrepresentation, with intent that others rely thereon, in connection with the advertisement and sale/lease of the Class Vehicles, whether or not any person has in fact been misled, deceived or damaged thereby.

2985. Defendants' unfair or deceptive acts or practices, including their misrepresentations, concealments, omissions, and/or suppressions of material facts,

were designed to mislead and had a tendency or capacity to mislead and create a false impression in consumers that the Class Vehicles had properly-functioning and reliable airbags. Indeed, those misrepresentations, concealments, omissions, and suppressions of material facts did in fact deceive reasonable consumers, including Plaintiffs and Class Members, about the true safety and reliability of the Class Vehicles and/or the Defective Inflators installed in them, the quality of the Class Vehicles, and the true value of the Class Vehicles.

2986. Defendants intended for Plaintiffs and Class Members to rely on their misrepresentations, omissions, and concealment—which they did by purchasing and leasing the Class Vehicles at the prices they paid believing that their vehicles would not have an Inflator Defect that would affect the quality, reliability, and safety of the Class Vehicles and their airbags.

2987. Defendants' misrepresentations, concealments, omissions, and suppressions of material facts regarding the Inflator Defect and true characteristics of the Class Vehicles were material to the decisions of Plaintiffs and Class Members to purchase and lease those vehicles, as Defendants intended. Plaintiffs and Class Members were exposed to those misrepresentations, concealments, omissions, and suppressions of material facts, and relied on Defendants' misrepresentations that the Class Vehicles and their airbags were safe and reliable in deciding to purchase and

lease the Class Vehicles.

2988. Plaintiffs' and Class Members' reliance was reasonable, as they had no way of discerning that Defendants' representations were false and misleading, or otherwise learning the facts that Defendants had concealed or failed to disclose. Plaintiffs and Class Members did not, and could not, unravel Defendants' deception on their own.

2989. Had they known the truth about the Inflator Defect, Plaintiffs and Class Members would not have purchased or leased the Class Vehicles, or would have paid significantly less for them.

2990. As a direct and proximate result of Defendants' deceptive practices, Plaintiffs and Class Members have sustained economic injury and loss—either by purchasing a vehicle they otherwise would not have purchased or paying more than they otherwise would have as a result of Defendants' actions and omissions alleged above—that first occurred at the time each Class Vehicle was purchased or leased.

2991. Defendants' violations present a continuing risk to Plaintiffs and Class Members, as well as to the general public, because the Class Vehicles remain unsafe due to the Defective Inflators therein. Defendants' unlawful acts and practices complained of herein affect the public interest.

2992. Pursuant to N.D. Cent. Code §§ 51-15-07 and 51-15-09, Plaintiffs and Class Members seek an order enjoining the above unfair or deceptive acts or practices and awarding actual damages, punitive damages, and any other just and proper relief available under the North Dakota CFA against all Defendants.

### d.  North Dakota Count 4: Fraud by Omission and Concealment Against All Defendants.

2993. Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

2994. The North Dakota Plaintiffs bring this count under North Dakota law, individually and on behalf of the other members of the North Dakota Subclasses against the Automaker Defendants and Airbag Module Defendants for their respective Class Vehicles, and ARC. For the remaining Defendants, Plaintiffs who purchased or leased their Class Vehicles in states with materially similar laws may represent subclasses under this count against all other Defendants and ARC.

2995. For purposes of this count, members of the North Dakota Subclasses shall be referred to as "Class Members."

2996. For purposes of this count, ARC, the Automaker Defendants, and the Airbag Module Defendants shall be referred to as "Defendants."

2997. Defendants are liable for both fraudulent concealment and non-

820

disclosure. *See, e.g.*, Restatement (Second) of Torts §§ 550-51 (1977).

2998. Defendants owed Plaintiffs and Class Members a duty to disclose all the material facts concerning the Defective Inflators in the Class Vehicles because:

a.   Given the Automaker Defendants' role in the design, manufacture, testing, and sale of Class Vehicles and Defective Inflators, and their experience and knowledge as experts and long-time veterans of the automotive industry, they, along with ARC and the Airbag Module Defendants, possessed exclusive access to and were in a superior position to know the true facts about the Defective Inflators;

b.   Given ARC's design, development, testing and manufacture of the Defective Inflators and its experience and knowledge as experts and long-time veterans of the automotive industry, it, along with the Automaker Defendants and the Airbag Module Defendants, possessed exclusive access to and was in a superior position to know the true facts about the Defective Inflators;

c.   Given the Airbag Module Defendants' role in the design, manufacture, and testing of the airbag modules with the Defective Inflators installed in them, and their experience and knowledge as experts and long-time veterans of the automotive industry, they, along with ARC and the

Automaker Defendants, possessed exclusive access to and were in a superior position to know the true facts about the Defective Inflators;

d.   Given the Inflator Defect's hidden and technical nature, Plaintiffs and Class Members lack the sophisticated expertise in vehicle components and technology that would be necessary to discover the Inflator Defect on their own;

e.   Defendants knew that the Inflator Defect gave rise to serious safety concerns for the consumers who purchased and leased the Class Vehicles;

f.   The Inflator Defect poses a severe risk of harm in that, among other things, the metal shrapnel can puncture and stab the occupants, causing severe and potentially fatal injuries;

g.   Defendants knew about and investigated the Inflator Defect, but then did not notify consumers about it, disclose the Inflator Defect to NHTSA, or further launch a comprehensive recall for all Class Vehicles, which individually and together deprived Plaintiffs of an opportunity that otherwise could have led them to discover the truth about the Inflator Defect in their Class Vehicles; and

h.   The Automaker Defendants made, helped to make, or conspired to

make incomplete representations about the safety and reliability of the Class Vehicles and their airbags, while purposefully withholding material facts about a known safety defect. Because they volunteered to provide information about the Class Vehicles that they marketed and offered for sale and lease to consumers, the Automaker Defendants had the duty to disclose the whole truth.

2999. In breach of their duties, Defendants failed to disclose the Inflator Defect and that the Class Vehicles' airbags were not safe and reliable to Plaintiffs and Class Members in connection with the sale of the Class Vehicles.

3000. The Inflator Defect within the Class Vehicles is material to the sale of the Class Vehicles because a reasonable person would find it important in purchasing, leasing, or retaining a new or used motor vehicle and because it directly impacts the value of the Class Vehicles purchased or leased by Plaintiffs and Class Members.

3001. Defendants intended for Plaintiffs and Class Members to rely on their omissions and concealment—which they did by purchasing and leasing the Class Vehicles at the prices they paid believing that their vehicles would not have an Inflator Defect that would affect the quality, reliability, and safety of the Class Vehicles and their airbags.

3002. Plaintiffs' and Class Members' reliance was reasonable because a reasonable consumer would not have expected that the Class Vehicles contained a safety defect that poses such a serious risk. They had no way of learning the facts that Defendants had concealed or failed to disclose. Plaintiffs and Class Members did not, and could not, unravel Defendants' deception on their own.

3003. Defendants actively concealed and suppressed these material facts, in whole or in part, to maintain a market for the Class Vehicles and the Defective Inflators installed in them, to protect profits, and to avoid costly recalls that would expose them to liability for those expenses and harm the commercial reputations of Defendants and their products. They did so at the expense of Plaintiffs and Class Members.

3004. If Defendants had fully and adequately disclosed the Inflator Defect to consumers, Plaintiffs and Class Members would have seen such a disclosure.

3005. Through their omissions and concealment with respect to the Inflator Defect within the Class Vehicles, Defendants intended to induce, and did induce, Plaintiffs and Class Members to either purchase a Class Vehicle that they otherwise would not have purchased, or pay more for a Class Vehicle than they otherwise would have paid.

3006. Had Plaintiffs and Class Members known of the Inflator Defect within

the Class Vehicles, they would not have purchased the Class Vehicles or would have paid less for them.

3007. As a direct and proximate result of Defendants' omissions and concealment, Plaintiffs and other Class Members either overpaid for the Class Vehicles or would not have purchased the Class Vehicles at all if the Inflator Defect had been disclosed to them. Accordingly, Defendants are liable to Plaintiffs and Class Members for their damages in an amount to be proven at trial.

3008. Defendants acted maliciously, oppressively, deliberately, with intent to defraud; in reckless disregard of the Plaintiffs' and Class Members' rights and well-being; and to enrich themselves. Defendants' misconduct warrants an assessment of punitive damages, as permitted by law, in an amount sufficient to deter such conduct in the future, which amount shall be determined according to proof at trial.

### e. North Dakota Count 5: Unjust Enrichment Against the Automaker Defendants.

3009. Plaintiffs reallege and incorporate by reference all allegations in Volume 1 of the Consolidated Class Action Complaint as though fully set forth herein.

3010. The North Dakota Plaintiffs bring this count under North Dakota law, individually and on behalf of the other members of the North Dakota Subclasses

against the Automaker Defendants for their respective Class Vehicles. For the remaining Automaker Defendants, Plaintiffs who purchased or leased their Class Vehicles in states with materially similar laws may represent subclasses under this count against those Automaker Defendants.

3011. For purposes of this count, members of the North Dakota Subclasses shall be referred to as "Class Members."

3012. When they purchased and leased the Class Vehicles, Plaintiffs and Class Members conferred tangible and material economic benefits upon the Automaker Defendants, who readily accepted and retained these benefits.

3013. Plaintiffs and Class Members would not have purchased or leased their Class Vehicles, or would have paid less for them, had they known of the Inflator Defect at the time of purchase or lease. Therefore, the Automaker Defendants profited from the sale and lease of the Class Vehicles to the detriment and expense of Plaintiffs and Class Members.

3014. The Automaker Defendants appreciated these economic benefits. These benefits were the expected result of the Automaker Defendants acting in their pecuniary interest at the expense of their customers. They knew of these benefits because they were aware of the Inflator Defect, yet they failed to disclose this knowledge and misled the Plaintiffs and Class Members regarding the nature and

quality of the Class Vehicles while profiting from this deception.

3015. It would be unjust, inequitable, and unconscionable for the Automaker Defendants to retain these benefits, including because they were procured as a result of their wrongful conduct alleged above.

3016. Plaintiffs and Class Members are entitled to restitution of the benefits the Automaker Defendants unjustly retained and/or any amounts necessary to return Plaintiffs and Class Members to the position they occupied prior to dealing with those Defendants, with such amounts to be determined at trial.

3017. Plaintiffs plead this claim separately as well as in the alternative to their claims for damages under Fed. R. Civ. P. 8(a)(3), because if the Court dismisses Plaintiffs' claims for damages enters judgment on them in favor of the Automaker Defendants, Plaintiffs will have no adequate legal remedy.

### 36.   Ohio

#### a.   Ohio Count 1: Breach of Express Warranty (Ohio Rev. Code Ann. §§ 1302.26 and 1310.17) Against the Automaker Defendants.

3018. Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

3019. The Ohio Plaintiffs bring this count under Ohio law, individually and on behalf of the other members of the Ohio Subclasses against the Automaker

Defendants for their respective Class Vehicles. For the remaining Automaker Defendants, Plaintiffs who purchased or leased their Class Vehicles in states with materially similar laws may represent subclasses under this count against those Automaker Defendants.

3020. For purposes of this count, members of the Ohio Subclasses shall be referred to as "Class Members."

3021. The Class Vehicles are "goods" under Ohio Rev. Code Ann. §§ 1302.01(8) and 1310.01(A)(8)

3022. The Automaker Defendants are "merchants" of the Class Vehicles under Ohio Rev. Code Ann. §§ 1302.01(5) and 1310.01(A)(2), "sellers" under § 1302.01(4), and "lessors" under § 1310.01(A)(20).

3023. Plaintiffs and Class Members who purchased and leased the Class Vehicles in Ohio are "buyers" under Ohio Rev. Code Ann. § 1302.01(A)(1) and "lessees" under § 1310.01(A)(14).

3024. The Automaker Defendants issued an express written warranty for each defective Class Vehicle they sold, including that:

a. The Class Vehicles would be free of defects in materials and workmanship at the time of sale; and

b. The Class Vehicles were safe and reliable, and their airbags would

function properly in the event of a crash.

3025.  The warranties listed above formed the basis of the bargain with regard to Plaintiffs and Class Members' purchase and lease of the Class Vehicles.

3026.  The Automaker Defendants knowingly breached their warranty for the Class Vehicles because:

a.   The airbag inflators have latent defects which have a dangerous propensity to cause the inflators to rupture and eject metal shrapnel, subjecting Plaintiffs and Class Members to the risk of loss and injury; and

b.   The Automaker Defendants denied, concealed, and misrepresented the Inflator Defect, in the process refusing to pay for or provide in a reasonably timely fashion the needed repairs and replacements for Plaintiffs and Class Members.

3027. The Automaker Defendants knew or should have known that the warranties were false and/or misleading. Specifically, the Automaker Defendants were aware of the Inflator Defect in the Class Vehicles, which made the vehicles inherently defective and dangerous at the time that they were sold and leased to Plaintiffs and Class Members.

3028. Plaintiffs  and  Class  Members  were  exposed  to  the  Automaker

Defendants' misrepresentations, and they had no way of discerning that the Automaker Defendants' representations were false and misleading or otherwise learning the material facts that the Automaker Defendants had concealed or failed to disclose. Accordingly, Plaintiffs and Class Members reasonably relied on the Automaker Defendants' express warranties when purchasing or leasing their Class Vehicles.

3029. Plaintiffs and Class Members timely provided the Automaker Defendants notice of the issues raised in this count and this Complaint and an opportunity to cure, as alleged in the paragraphs addressing Defendants' notice above.

3030. Alternatively, Plaintiffs and Class Members were excused from providing the Automaker Defendants with notice and an opportunity to cure the breach, because it would have been futile. As alleged above, the Automaker Defendants knew about the Defective Inflators for years; however, to date, the Automaker Defendants have not instituted a recall or any other repair program with respect to all of the Class Vehicles, or even acknowledged that the Inflator Defect exists in all of the Class Vehicles. Therefore, they have refused to recall or repair defective vehicles. Moreover, to the extent the Automaker Defendants have issued recalls, those recalls are inadequate because, *inter alia*: (a) they are belated because

830

the Automaker Defendants knew about the Defective Inflators for years and did nothing to recall or remedy the serious safety defect; (b) with tens of millions of vehicles impacted in existing and potential future recalls, as a result of the Automaker Defendants' concealment of the Inflator Defect, the recalls cannot be implemented effectively due to supply constraints and resulting delays; (c) the recalls are incomplete, and apply to only a subset of the Class Vehicles.

3031. As a direct and proximate result of the Automaker Defendants' breach of their express warranties, the Class Vehicles were and are defective and the Inflator Defect was not remedied. Therefore, Plaintiff and Class Members have been damaged, in an amount to be proven at trial, through their overpayment at the time of purchase or lease for the Class Vehicles with an undisclosed safety defect that would not be remedied.

> **b.     Ohio Count 2: Breach of Implied Warranty of Merchantability (Ohio Rev. Code Ann. §§ 1302.27 and 1310.19) Against the Automaker Defendants.**

3032. Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

3033. The Ohio Plaintiffs bring this count under Ohio law, individually and on behalf of the other members of the Ohio Subclasses against the Automaker Defendants for their respective Class Vehicles. For the remaining Automaker

Defendants, Plaintiffs who purchased or leased their Class Vehicles in states with materially similar laws may represent subclasses under this count against those Automaker Defendants.

3034. For purposes of this count, members of the Ohio Subclasses shall be referred to as "Class Members."

3035. The Class Vehicles are "goods" under Ohio Rev. Code Ann. §§ 1302.01(8) and 1310.01(A)(8)

3036. The Automaker Defendants are "merchants" of the Class Vehicles under Ohio Rev. Code Ann. §§ 1302.01(5) and 1310.01(A)(2), "sellers" under § 1302.01(4), and "lessors" under § 1310.01(A)(20).

3037. Plaintiffs and Class Members who purchased and leased the Class Vehicles in Ohio are "buyers" under Ohio Rev. Code Ann. § 1302.01(A)(1) and "lessees" under § 1310.01(A)(14).

3038. Ohio law conferred an implied warranty that the Class Vehicles were in merchantable condition and fit for the ordinary purpose for which they were to be used pursuant to Ohio Rev. Code Ann. §§ 1302.27 and 1310.19.

3039. The Class Vehicles are not merchantable, and as such the Automaker Defendants breached their implied warranties, because at the time of sale and all times thereafter:

a.   The Class Vehicles would not pass without objection in the automotive trade given the Inflator Defect;

b.   The Inflator Defect renders the Class Vehicles unsafe to drive and unfit for ordinary purposes;

c.   The Class Vehicles and the airbags therein were inadequately labeled as safe and reliable, and the labeling failed to disclose the Inflator Defect; and

d.   The Class Vehicles do not conform to their labeling, which represents that the vehicles are safe and suitable for their intended use.

3040. Plaintiffs and Class Members timely provided the Automaker Defendants notice of the issues raised in this count and this Complaint and an opportunity to cure, as alleged in the paragraphs addressing Defendants' notice above.

3041. Alternatively, Plaintiffs and Class Members were excused from providing the Automaker Defendants with notice and an opportunity to cure the breach because it would have been futile. As alleged above, the Automaker Defendants have long known that the Class Vehicles contained the Defective Inflators, and that the Defective Inflators have caused airbags to malfunction in crashes involving the Class Vehicles; however, to date, the Automaker Defendants

have not instituted a recall or any other repair program with respect to all of the Class Vehicles, or even acknowledged that the Inflator Defect exists in all of those Class Vehicles. Moreover, to the extent the Automaker Defendants have issued recalls, those recalls are inadequate because, inter alia: (a) they are belated because the Automaker Defendants knew about the Defective Inflators for years and did nothing to recall or remedy the serious safety defect; (b) with tens of millions of vehicles impacted in existing and potential future recalls, as a result of the Automaker Defendants' concealment of the Inflator Defect, the recalls cannot be implemented effectively due to supply constraints and resulting delays; (c) the recalls are incomplete, and apply to only a subset of the Class Vehicles.

3042. Plaintiffs, individually and on behalf of Class Members, seek all available monetary damages (including actual, compensatory, and punitive damages), injunctive and equitable relief, and attorneys' fees and costs.

c.    **Ohio Count 3: Violation of the Ohio Consumer Sales Practices Act (Ohio Rev. Code Ann. § 1345.01, *et seq.*) Against All Defendants.**[39]

3043. Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

---

[39] Plaintiffs bring this count against ARC and the Airbag Module Defendants based on their omissions and concealment of material facts only.

3044. The Ohio Plaintiffs bring this count under Ohio law, individually and on behalf of the other members of the Ohio Subclasses against the Automaker Defendants and Airbag Module Defendants for their respective Class Vehicles, and ARC. For the remaining Defendants, Plaintiffs who purchased or leased their Class Vehicles in states with materially similar laws may represent subclasses under this count against all other Defendants and ARC.

3045. For purposes of this count, members of the Ohio Subclasses shall be referred to as "Class Members."

3046. For purposes of this count, ARC, the Automaker Defendants, and the Airbag Module Defendants shall be referred to as "Defendants."

3047. Defendants, Plaintiffs, and Class Members are "persons" under Ohio Rev. Code Ann. § 1345.01(B). Defendants are also "suppliers" under Ohio Rev. Code Ann. § 1345.01(C).

3048. Plaintiffs and Class Members are "consumers" under Ohio Rev. Code Ann. § 1345.01(D), and their purchases and leases of the Class Vehicles are "consumer transactions" within the meaning of Ohio Rev. Code Ann. § 1345.01(A).

3049. The Ohio Consumer Sales Practices Act ("Ohio CSPA") prohibits unfair or deceptive acts or practices in connection with a consumer transaction. Ohio Rev. Code Ann. § 1345.02.

3050. In the course of their business, Defendants, through their agents, employees, and/or subsidiaries, violated the Ohio CSPA by knowingly and intentionally misrepresenting, omitting, concealing, and/or failing to disclose material facts regarding the reliability, safety, and performance of the Class Vehicles and the Defective Inflators, as detailed above.

3051. Defendants had an ongoing duty to Plaintiffs and Class Members to refrain from unfair or deceptive practices under the Ohio CSPA in the course of their business. Specifically, Defendants owed Plaintiffs and Class Members a duty to disclose all the material facts concerning the Defective Inflators in the Class Vehicles because:

a.   Given ARC's design, development, testing and manufacture of the Defective Inflators and its experience and knowledge as experts and long-time veterans of the automotive industry, it, along with the Automaker Defendants and the Airbag Module Defendants, possessed exclusive access to and was in a superior position to know the true facts about the Defective Inflators;

b.   Given the Airbag Module Defendants' role in the design, manufacture, and testing of the airbag modules with the Defective Inflators installed in them, and their experience and knowledge as experts and long-time

veterans of the automotive industry, they, along with ARC and the Automaker Defendants, possessed exclusive access to and were in a superior position to know the true facts about the Defective Inflators;

c.   Given the Automaker Defendants' role in the design, manufacture, testing, and sale of Class Vehicles and Defective Inflators, and their experience and knowledge as experts and long-time veterans of the automotive industry, they, along with ARC and the Airbag Module Defendants, possessed exclusive access to and were in a superior position to know the true facts about the Defective Inflators;

d.   Given the Inflator Defect's hidden and technical nature, Plaintiffs and Class Members lack the sophisticated expertise in vehicle components and technology that would be necessary to discover the Inflator Defect on their own;

e.   Defendants knew that the Inflator Defect gave rise to serious safety concerns for the consumers who purchased and leased the Class Vehicles;

f.   The Inflator Defect poses a severe risk of harm in that, among other things, the metal shrapnel can puncture and stab the occupants, causing severe and potentially fatal injuries;

g.    Defendants knew about and investigated the Inflator Defect, but then did not notify consumers about it or disclose the Inflator Defect to NHTSA, and the Automaker Defendants did not launch a comprehensive recall for all Class Vehicles, all of which individually and together deprived Plaintiffs of an opportunity that otherwise could have led them to discover the truth about the Inflator Defect in their Class Vehicles; and

h.    The Automaker Defendants made, helped to make, or conspired to make incomplete representations about the safety and reliability of the Class Vehicles and their airbags, while purposefully withholding material facts about a known safety defect. Because they volunteered to provide information about the Class Vehicles that they marketed and offered for sale and lease to consumers, the Automaker Defendants had the duty to disclose the whole truth.

3052. By misrepresenting the Class Vehicles as safe and reliable and the airbags installed in them as properly-functioning and free from defects, and/or by failing to disclose and actively concealing the dangers and risk posed by the Inflator Defect to both consumers and NHTSA, Defendants engaged in one or more of the following unfair methods of competition in or affective commerce, and unfair or

deceptive acts or practices in or affecting commerce prohibited by Ohio CSPA:

    a.    Representing that the Class Vehicles have characteristics, uses, benefits, and qualities which they do not have; and

    b.    Representing that the Class Vehicles are of a particular standard, quality, and grade when they are not.

Ohio Rev. Code Ann. § 1345.02.

3053. Defendants' unfair or deceptive acts or practices, including their misrepresentations, concealments, omissions, and/or suppressions of material facts, were designed to mislead and had a tendency or capacity to mislead and create a false impression in consumers that the Class Vehicles had properly-functioning and reliable airbags. Indeed, those misrepresentations, concealments, omissions, and suppressions of material facts did in fact deceive reasonable consumers, including Plaintiffs and Class Members, about the true safety and reliability of the Class Vehicles and/or the Defective Inflators installed in them, the quality of the Class Vehicles, and the true value of the Class Vehicles.

3054. Defendants intended for Plaintiffs and Class Members to rely on their misrepresentations, omissions, and concealment—which they did by purchasing and leasing the Class Vehicles at the prices they paid believing that their vehicles would not have an Inflator Defect that would affect the quality, reliability, and safety of the

Class Vehicles and their airbags.

3055. Defendants' misrepresentations, concealments, omissions, and suppressions of material facts regarding the Inflator Defect and true characteristics of the Class Vehicles were material to the decisions of Plaintiffs and Class Members to purchase and lease those vehicles, as Defendants intended. Plaintiffs and Class Members were exposed to those misrepresentations, concealments, omissions, and suppressions of material facts, and relied on Defendants' misrepresentations that the Class Vehicles and their airbags were safe and reliable in deciding to purchase and lease the Class Vehicles.

3056. Plaintiffs' and Class Members' reliance was reasonable, as they had no way of discerning that Defendants' representations were false and misleading, or otherwise learning the facts that Defendants had concealed or failed to disclose. Plaintiffs and Class Members did not, and could not, unravel Defendants' deception on their own.

3057. Had they known the truth about the Inflator Defect, Plaintiffs and Class Members would not have purchased or leased the Class Vehicles, or would have paid significantly less for them.

3058. As a direct and proximate result of Defendants' deceptive practices, Plaintiffs and Class Members have sustained economic injury and loss—either by

purchasing a vehicle they otherwise would not have purchased or paying more than they otherwise would have as a result of Defendants' actions and omissions alleged above—that first occurred at the time each Class Vehicle was purchased or leased.

3059. Defendants' violations present a continuing risk to Plaintiffs and Class Members, as well as to the general public, because the Class Vehicles remain unsafe due to the Defective Inflators therein. Defendants' unlawful acts and practices complained of herein affect the public interest.

3060. Pursuant to Ohio Rev. Code Ann. § 1345.09, Plaintiffs and Class Members seek an order enjoining the above unfair or deceptive acts or practices and awarding actual damages, punitive damages, and any other just and proper relief available under the Ohio CSPA against all Defendants.

> **d. Ohio Count 4: Violation of the Ohio Deceptive Trade Practices Act (Ohio Rev. Code Ann. § 4165.01, *et seq.*) Against All Defendants.[40]**

3061. Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

3062. The Ohio Plaintiffs bring this count under Ohio law, individually and on behalf of the other members of the Ohio Subclasses against the Automaker

---

[40] Plaintiffs bring this count against ARC and the Airbag Module Defendants based on their omissions and concealment of material facts only.

Defendants and Airbag Module Defendants for their respective Class Vehicles, and ARC. For the remaining Defendants, Plaintiffs who purchased or leased their Class Vehicles in states with materially similar laws may represent subclasses under this count against all other Defendants and ARC.

3063. For purposes of this count, members of the Ohio Subclasses shall be referred to as "Class Members."

3064. For purposes of this count, ARC, the Automaker Defendants, and the Airbag Module Defendants shall be referred to as "Defendants."

3065. Defendants, Plaintiffs, and Class Members are "persons" under Ohio Rev. Code Ann. § 4165.01(D).

3066. Defendants are engaged in "the course of [their] business] under Ohio Rev. Code Ann. § 4165.02(A).

3067. The Ohio Deceptive Trade Practices Act ("Ohio DTPA") makes unlawful deceptive trade practices. Ohio Rev. Code Ann. § 4165.02(A).

3068. In the course of their business, Defendants, through their agents, employees, and/or subsidiaries, violated the Ohio DTPA by knowingly and intentionally misrepresenting, omitting, concealing, and/or failing to disclose material facts regarding the reliability, safety, and performance of the Class Vehicles and the Defective Inflators, as detailed above.

3069. Defendants had an ongoing duty to Plaintiffs and Class Members to refrain from unfair or deceptive practices under the Ohio DTPA in the course of their business. Specifically, Defendants owed Plaintiffs and Class Members a duty to disclose all the material facts concerning the Defective Inflators in the Class Vehicles because:

a.   Given ARC's design, development, testing and manufacture of the Defective Inflators and its experience and knowledge as experts and long-time veterans of the automotive industry, it, along with the Automaker Defendants and the Airbag Module Defendants, possessed exclusive access to and was in a superior position to know the true facts about the Defective Inflators;

b.   Given the Airbag Module Defendants' role in the design, manufacture, and testing of the airbag modules with the Defective Inflators installed in them, and their experience and knowledge as experts and long-time veterans of the automotive industry, they, along with ARC and the Automaker Defendants, possessed exclusive access to and were in a superior position to know the true facts about the Defective Inflators;

c.   Given the Automaker Defendants' role in the design, manufacture, testing, and sale of Class Vehicles and Defective Inflators, and their

experience and knowledge as experts and long-time veterans of the automotive industry, they, along with ARC and the Airbag Module Defendants, possessed exclusive access to and were in a superior position to know the true facts about the Defective Inflators;

d.      Given the Inflator Defect's hidden and technical nature, Plaintiffs and Class Members lack the sophisticated expertise in vehicle components and technology that would be necessary to discover the Inflator Defect on their own;

e.      Defendants knew that the Inflator Defect gave rise to serious safety concerns for the consumers who purchased and leased the Class Vehicles;

f.      The Inflator Defect poses a severe risk of harm in that, among other things, the metal shrapnel can puncture and stab the occupants, causing severe and potentially fatal injuries;

g.      Defendants knew about and investigated the Inflator Defect, but then did not notify consumers about it or disclose the Inflator Defect to NHTSA, and the Automaker Defendants did not launch a comprehensive recall for all Class Vehicles, all of which individually and together deprived Plaintiffs of an opportunity that otherwise could

have led them to discover the truth about the Inflator Defect in their Class Vehicles; and

h.     The Automaker Defendants made, helped to make, or conspired to make incomplete representations about the safety and reliability of the Class Vehicles and their airbags, while purposefully withholding material facts about a known safety defect. Because they volunteered to provide information about the Class Vehicles that they marketed and offered for sale and lease to consumers, the Automaker Defendants had the duty to disclose the whole truth.

3070. By misrepresenting the Class Vehicles as safe and reliable and the airbags installed in them as properly-functioning and free from defects, and/or by failing to disclose and actively concealing the dangers and risk posed by the Inflator Defect to both consumers and NHTSA, Defendants engaged in one or more of the following unfair methods of competition in or affective commerce, and unfair or deceptive acts or practices in or affecting commerce prohibited by Ohio DTPA:

a.     Causing likelihood of confusion or of misunderstanding as to the approval or certification of the Class Vehicles;

b.     Representing that the Class Vehicles have characteristics, uses, benefits, and qualities which they do not have;

c.    Representing that the Class Vehicles are of a particular standard, quality, and grade when they are not; and

d.    Advertising the Class Vehicles with the intent not to sell or lease them as advertised.

Ohio Rev. Code Ann. § 4165.02(A).

3071. Defendants' unfair or deceptive acts or practices, including their misrepresentations, concealments, omissions, and/or suppressions of material facts, were designed to mislead and had a tendency or capacity to mislead and create a false impression in consumers that the Class Vehicles had properly-functioning and reliable airbags. Indeed, those misrepresentations, concealments, omissions, and suppressions of material facts did in fact deceive reasonable consumers, including Plaintiffs and Class Members, about the true safety and reliability of the Class Vehicles and/or the Defective Inflators installed in them, the quality of the Class Vehicles, and the true value of the Class Vehicles.

3072. Defendants intended for Plaintiffs and Class Members to rely on their misrepresentations, omissions, and concealment—which they did by purchasing and leasing the Class Vehicles at the prices they paid believing that their vehicles would not have an Inflator Defect that would affect the quality, reliability, and safety of the Class Vehicles and their airbags.

846

3073. Defendants' misrepresentations, concealments, omissions, and suppressions of material facts regarding the Inflator Defect and true characteristics of the Class Vehicles were material to the decisions of Plaintiffs and Class Members to purchase and lease those vehicles, as Defendants intended. Plaintiffs and Class Members were exposed to those misrepresentations, concealments, omissions, and suppressions of material facts, and relied on Defendants' misrepresentations that the Class Vehicles and their airbags were safe and reliable in deciding to purchase and lease the Class Vehicles.

3074. Plaintiffs' and Class Members' reliance was reasonable, as they had no way of discerning that Defendants' representations were false and misleading, or otherwise learning the facts that Defendants had concealed or failed to disclose. Plaintiffs and Class Members did not, and could not, unravel Defendants' deception on their own.

3075. Had they known the truth about the Inflator Defect, Plaintiffs and Class Members would not have purchased or leased the Class Vehicles, or would have paid significantly less for them.

3076. As a direct and proximate result of Defendants' deceptive practices, Plaintiffs and Class Members have sustained economic injury and loss—either by purchasing a vehicle they otherwise would not have purchased or paying more than

they otherwise would have as a result of Defendants' actions and omissions alleged above—that first occurred at the time each Class Vehicle was purchased or leased.

3077. Defendants' violations present a continuing risk to Plaintiffs and Class Members, as well as to the general public, because the Class Vehicles remain unsafe due to the Defective Inflators therein. Defendants' unlawful acts and practices complained of herein affect the public interest.

3078. Pursuant to Ohio Rev. Code Ann. §§ 2727.02 and 4165.03, Plaintiffs and Class Members seek an order enjoining the above unfair or deceptive acts or practices and awarding actual damages, punitive damages, and any other just and proper relief available under the Ohio DTPA against all Defendants.

### e.    Ohio Count 5: Fraud by Omission and Concealment Against All Defendants.

3079. Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

3080. The Ohio Plaintiffs bring this count under Ohio law, individually and on behalf of the other members of the Ohio Subclasses against the Automaker Defendants and Airbag Module Defendants for their respective Class Vehicles, and ARC. For the remaining Defendants, Plaintiffs who purchased or leased their Class Vehicles in states with materially similar laws may represent subclasses under this

count against all other Defendants and ARC.

3081. For purposes of this count, members of the Ohio Subclasses shall be referred to as "Class Members."

3082. For purposes of this count, ARC, the Automaker Defendants, and the Airbag Module Defendants shall be referred to as "Defendants."

3083. Defendants are liable for both fraudulent concealment and non-disclosure. *See, e.g.*, Restatement (Second) of Torts §§ 550-51 (1977).

3084. Defendants owed Plaintiffs and Class Members a duty to disclose all the material facts concerning the Defective Inflators in the Class Vehicles because:

a.      Given the Automaker Defendants' role in the design, manufacture, testing, and sale of Class Vehicles and Defective Inflators, and their experience and knowledge as experts and long-time veterans of the automotive industry, they, along with ARC and the Airbag Module Defendants, possessed exclusive access to and were in a superior position to know the true facts about the Defective Inflators;

b.      Given ARC's design, development, testing and manufacture of the Defective Inflators and its experience and knowledge as experts and long-time veterans of the automotive industry, it, along with the Automaker Defendants and the Airbag Module Defendants, possessed

849

exclusive access to and was in a superior position to know the true facts about the Defective Inflators;

c.    Given the Airbag Module Defendants' role in the design, manufacture, and testing of the airbag modules with the Defective Inflators installed in them, and their experience and knowledge as experts and long-time veterans of the automotive industry, they, along with ARC and the Automaker Defendants, possessed exclusive access to and were in a superior position to know the true facts about the Defective Inflators;

d.    Given the Inflator Defect's hidden and technical nature, Plaintiffs and Class Members lack the sophisticated expertise in vehicle components and technology that would be necessary to discover the Inflator Defect on their own;

e.    Defendants knew that the Inflator Defect gave rise to serious safety concerns for the consumers who purchased and leased the Class Vehicles;

f.    The Inflator Defect poses a severe risk of harm in that, among other things, the metal shrapnel can puncture and stab the occupants, causing severe and potentially fatal injuries;

g.    Defendants knew about and investigated the Inflator Defect, but then

850

did not notify consumers about it, disclose the Inflator Defect to NHTSA, or further launch a comprehensive recall for all Class Vehicles, which individually and together deprived Plaintiffs of an opportunity that otherwise could have led them to discover the truth about the Inflator Defect in their Class Vehicles; and

h.      The Automaker Defendants made, helped to make, or conspired to make incomplete representations about the safety and reliability of the Class Vehicles and their airbags, while purposefully withholding material facts about a known safety defect. Because they volunteered to provide information about the Class Vehicles that they marketed and offered for sale and lease to consumers, the Automaker Defendants had the duty to disclose the whole truth.

3085. In breach of their duties, Defendants failed to disclose the Inflator Defect and that the Class Vehicles' airbags were not safe and reliable to Plaintiffs and Class Members in connection with the sale of the Class Vehicles.

3086. The Inflator Defect within the Class Vehicles is material to the sale of the Class Vehicles because a reasonable person would find it important in purchasing, leasing, or retaining a new or used motor vehicle and because it directly impacts the value of the Class Vehicles purchased or leased by Plaintiffs and Class

Members.

3087. Defendants intended for Plaintiffs and Class Members to rely on their omissions and concealment—which they did by purchasing and leasing the Class Vehicles at the prices they paid believing that their vehicles would not have an Inflator Defect that would affect the quality, reliability, and safety of the Class Vehicles and their airbags.

3088. Plaintiffs' and Class Members' reliance was reasonable because a reasonable consumer would not have expected that the Class Vehicles contained a safety defect that poses such a serious risk. They had no way of learning the facts that Defendants had concealed or failed to disclose. Plaintiffs and Class Members did not, and could not, unravel Defendants' deception on their own.

3089. Defendants actively concealed and suppressed these material facts, in whole or in part, to maintain a market for the Class Vehicles and the Defective Inflators installed in them, to protect profits, and to avoid costly recalls that would expose them to liability for those expenses and harm the commercial reputations of Defendants and their products. They did so at the expense of Plaintiffs and Class Members.

3090. If Defendants had fully and adequately disclosed the Inflator Defect to consumers, Plaintiffs and Class Members would have seen such a disclosure.

3091. Through their omissions and concealment with respect to the Inflator Defect within the Class Vehicles, Defendants intended to induce, and did induce, Plaintiffs and Class Members to either purchase a Class Vehicle that they otherwise would not have purchased, or pay more for a Class Vehicle than they otherwise would have paid.

3092. Had Plaintiffs and Class Members known of the Inflator Defect within the Class Vehicles, they would not have purchased the Class Vehicles or would have paid less for them.

3093. As a direct and proximate result of Defendants' omissions and concealment, Plaintiffs and other Class Members either overpaid for the Class Vehicles or would not have purchased the Class Vehicles at all if the Inflator Defect had been disclosed to them. Accordingly, Defendants are liable to Plaintiffs and Class Members for their damages in an amount to be proven at trial.

3094. Defendants acted maliciously, oppressively, deliberately, with intent to defraud; in reckless disregard of the Plaintiffs' and Class Members' rights and well-being; and to enrich themselves. Defendants' misconduct warrants an assessment of punitive damages, as permitted by law, in an amount sufficient to deter such conduct in the future, which amount shall be determined according to proof at trial.

f.      **Ohio Count 6: Unjust Enrichment Against the Automaker Defendants.**

3095. Plaintiffs reallege and incorporate by reference all allegations in Volume 1 of the Consolidated Class Action Complaint as though fully set forth herein.

3096. The Ohio Plaintiffs bring this count under Ohio law, individually and on behalf of the other members of the Ohio Subclasses against the Automaker Defendants for their respective Class Vehicles. For the remaining Automaker Defendants, Plaintiffs who purchased or leased their Class Vehicles in states with materially similar laws may represent subclasses under this count against those Automaker Defendants.

3097. For purposes of this count, members of the Ohio Subclasses shall be referred to as "Class Members."

3098. When they purchased and leased the Class Vehicles, Plaintiffs and Class Members conferred tangible and material economic benefits upon the Automaker Defendants, who readily accepted and retained these benefits.

3099. Plaintiffs and Class Members would not have purchased or leased their Class Vehicles, or would have paid less for them, had they known of the Inflator Defect at the time of purchase or lease. Therefore, the Automaker Defendants profited from the sale and lease of the Class Vehicles to the detriment and expense

854

of Plaintiffs and Class Members.

3100.  The Automaker Defendants appreciated these economic benefits. These benefits were the expected result of the Automaker Defendants acting in their pecuniary interest at the expense of their customers. They knew of these benefits because they were aware of the Inflator Defect, yet they failed to disclose this knowledge and misled the Plaintiffs and Class Members regarding the nature and quality of the Class Vehicles while profiting from this deception.

3101. It would be unjust, inequitable, and unconscionable for the Automaker Defendants to retain these benefits, including because they were procured as a result of their wrongful conduct alleged above.

3102. Plaintiffs and Class Members are entitled to restitution of the benefits the Automaker Defendants unjustly retained and/or any amounts necessary to return Plaintiffs and Class Members to the position they occupied prior to dealing with those Defendants, with such amounts to be determined at trial.

3103.  Plaintiffs plead this claim separately as well as in the alternative to their claims for damages under Fed. R. Civ. P. 8(a)(3), because if the Court dismisses Plaintiffs' claims for damages enters judgment on them in favor of the Automaker Defendants, Plaintiffs will have no adequate legal remedy.

**37.    Oklahoma**

a.      **Oklahoma Count 1: Breach of Express Warranty (Okla. Stat. Ann. tit. 12A, §§ 2-313 and 2A-210) Against the Automaker Defendants.**

3104. Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

3105. The Oklahoma Plaintiffs bring this count under Oklahoma law, individually and on behalf of the other members of the Oklahoma Subclasses against the Automaker Defendants for their respective Class Vehicles. For the remaining Automaker Defendants, Plaintiffs who purchased or leased their Class Vehicles in states with materially similar laws may represent subclasses under this count against those Automaker Defendants.

3106. For purposes of this count, members of the Oklahoma Subclasses shall be referred to as "Class Members."

3107. The Class Vehicles are "goods" under Okla. Stat. Ann. tit. 12, §§ 2-105(1) and 2A-103(1)(h).

3108. The Automaker Defendants are "merchants" of the Class Vehicles under Okla. Stat. Ann. tit. 12, §§ 2-104(1) and 2A-103(3), "sellers" under § 2-103(1)(d), and "lessors" under § 2A-103(1)(p).

3109. Plaintiffs and Class Members who purchased and leased the Class Vehicles in Oklahoma are "buyers" under Okla. Stat. Ann. tit. 12, § 2-103(1)(a) and

"lessees" under § 2A-103(1)(n).

3110. The Automaker Defendants issued an express written warranty for each defective Class Vehicle they sold, including that:

a.     The Class Vehicles would be free of defects in materials and workmanship at the time of sale; and

b.     The Class Vehicles were safe and reliable, and their airbags would function properly in the event of a crash.

3111. The warranties listed above formed the basis of the bargain with regard to Plaintiffs and Class Members' purchase and lease of the Class Vehicles.

3112. The Automaker Defendants knowingly breached their warranty for the Class Vehicles because:

a.     The airbag inflators have latent defects which have a dangerous propensity to cause the inflators to rupture and eject metal shrapnel, subjecting Plaintiffs and Class Members to the risk of loss and injury; and

b.     The Automaker Defendants denied, concealed, and misrepresented the Inflator Defect, in the process refusing to pay for or provide in a reasonably timely fashion the needed repairs and replacements for Plaintiffs and Class Members.

857

3113. The Automaker Defendants knew or should have known that the warranties were false and/or misleading. Specifically, the Automaker Defendants were aware of the Inflator Defect in the Class Vehicles, which made the vehicles inherently defective and dangerous at the time that they were sold and leased to Plaintiffs and Class Members.

3114. Plaintiffs and Class Members were exposed to the Automaker Defendants' misrepresentations, and they had no way of discerning that the Automaker Defendants' representations were false and misleading or otherwise learning the material facts that the Automaker Defendants had concealed or failed to disclose. Accordingly, Plaintiffs and Class Members reasonably relied on the Automaker Defendants' express warranties when purchasing or leasing their Class Vehicles.

3115. Plaintiffs and Class Members timely provided the Automaker Defendants notice of the issues raised in this count and this Complaint and an opportunity to cure, as alleged in the paragraphs addressing Defendants' notice above.

3116. Alternatively, Plaintiffs and Class Members were excused from providing the Automaker Defendants with notice and an opportunity to cure the breach, because it would have been futile. As alleged above, the Automaker

Defendants knew about the Defective Inflators for years; however, to date, the Automaker Defendants have not instituted a recall or any other repair program with respect to all of the Class Vehicles, or even acknowledged that the Inflator Defect exists in all of the Class Vehicles. Therefore, they have refused to recall or repair defective vehicles. Moreover, to the extent the Automaker Defendants have issued recalls, those recalls are inadequate because, *inter alia*: (a) they are belated because the Automaker Defendants knew about the Defective Inflators for years and did nothing to recall or remedy the serious safety defect; (b) with tens of millions of vehicles impacted in existing and potential future recalls, as a result of the Automaker Defendants' concealment of the Inflator Defect, the recalls cannot be implemented effectively due to supply constraints and resulting delays; (c) the recalls are incomplete, and apply to only a subset of the Class Vehicles.

3117. As a direct and proximate result of the Automaker Defendants' breach of their express warranties, the Class Vehicles were and are defective and the Inflator Defect was not remedied. Therefore, Plaintiff and Class Members have been damaged, in an amount to be proven at trial, through their overpayment at the time of purchase or lease for the Class Vehicles with an undisclosed safety defect that would not be remedied.

859

b. **Oklahoma Count 2: Breach of Implied Warranty of Merchantability (Okla. Stat. Ann., tit. 12A §§ 2-314 and 2A-212) Against the Automaker Defendants.**

3118. Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

3119. The Oklahoma Plaintiffs bring this count under Oklahoma law, individually and on behalf of the other members of the Oklahoma Subclasses against the Automaker Defendants for their respective Class Vehicles. For the remaining Automaker Defendants, Plaintiffs who purchased or leased their Class Vehicles in states with materially similar laws may represent subclasses under this count against those Automaker Defendants.

3120. For purposes of this count, members of the Oklahoma Subclasses shall be referred to as "Class Members."

3121. The Class Vehicles are "goods" under Okla. Stat. Ann. tit. 12, §§ 2-105(1) and 2A-103(1)(h).

3122. The Automaker Defendants are "merchants" of the Class Vehicles under Okla. Stat. Ann. tit. 12, §§ 2-104(1) and 2A-103(3), "sellers" under § 2-103(1)(d), and "lessors" under § 2A-103(1)(p).

3123. Plaintiffs and Class Members who purchased and leased the Class Vehicles in Oklahoma are "buyers" under Okla. Stat. Ann. tit. 12, § 2-103(1)(a) and

"lessees" under § 2A-103(1)(n).

3124. Oklahoma law conferred an implied warranty that the Class Vehicles were in merchantable condition and fit for the ordinary purpose for which they were to be used pursuant to Okla. Stat. Ann. tit. 12A, §§ 2-314 and 2A-212.

3125. The Class Vehicles are not merchantable, and as such the Automaker Defendants breached their implied warranties, because at the time of sale and all times thereafter:

   a.   The Class Vehicles would not pass without objection in the automotive trade given the Inflator Defect;

   b.   The Inflator Defect renders the Class Vehicles unsafe to drive and unfit for ordinary purposes;

   c.   The Class Vehicles and the airbags therein were inadequately labeled as safe and reliable, and the labeling failed to disclose the Inflator Defect; and

   d.   The Class Vehicles do not conform to their labeling, which represents that the vehicles are safe and suitable for their intended use.

3126. Plaintiffs and Class Members timely provided the Automaker Defendants notice of the issues raised in this count and this Complaint and an

opportunity to cure, as alleged in the paragraphs addressing Defendants' notice above.

3127. Alternatively, Plaintiffs and Class Members were excused from providing the Automaker Defendants with notice and an opportunity to cure the breach because it would have been futile. As alleged above, the Automaker Defendants have long known that the Class Vehicles contained the Defective Inflators, and that the Defective Inflators have caused airbags to malfunction in crashes involving the Class Vehicles; however, to date, the Automaker Defendants have not instituted a recall or any other repair program with respect to all of the Class Vehicles, or even acknowledged that the Inflator Defect exists in all of those Class Vehicles. Moreover, to the extent the Automaker Defendants have issued recalls, those recalls are inadequate because, inter alia: (a) they are belated because the Automaker Defendants knew about the Defective Inflators for years and did nothing to recall or remedy the serious safety defect; (b) with tens of millions of vehicles impacted in existing and potential future recalls, as a result of the Automaker Defendants' concealment of the Inflator Defect, the recalls cannot be implemented effectively due to supply constraints and resulting delays; (c) the recalls are incomplete, and apply to only a subset of the Class Vehicles.

3128. Plaintiffs, individually and on behalf of Class Members, seek all

available monetary damages (including actual, compensatory, and punitive damages), injunctive and equitable relief, and attorneys' fees and costs.

  c.  **Oklahoma Count 3: Violation of the Oklahoma Consumer Protection Act (Okla. Stat. Ann. tit. 15, § 751, *et seq.*) Against All Defendants.[41]**

3129. Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

3130. The Oklahoma Plaintiffs bring this count under Oklahoma law, individually and on behalf of the other members of the Oklahoma Subclasses against the Automaker Defendants and Airbag Module Defendants for their respective Class Vehicles, and ARC. For the remaining Defendants, Plaintiffs who purchased or leased their Class Vehicles in states with materially similar laws may represent subclasses under this count against all other Defendants and ARC.

3131. For purposes of this count, members of the Oklahoma Subclasses shall be referred to as "Class Members."

3132. For purposes of this count, ARC, the Automaker Defendants, and the Airbag Module Defendants shall be referred to as "Defendants."

3133. Defendants, Plaintiffs, and Class Members are "persons" under Okla.

---

[41] Plaintiffs bring this count against ARC and the Airbag Module Defendants based on their omissions and concealment of material facts only.

Stat. Ann. tit. 15, § 752(a).

3134. Defendants are engaged in "consumer transactions" under Okla. Stat. Ann. tit. 15, § 752(2).

3135. The Class Vehicles and the Defective Inflators installed in them are "merchandise" under Okla. Stat. Ann. tit. 15, § 752(7).

3136. The Oklahoma Consumer Protection Act ("Oklahoma CPA") prohibits deceptive and unfair trade practices. Okla. Stat. Ann. tit. 15, § 753.

3137. In the course of their business, Defendants, through their agents, employees, and/or subsidiaries, violated the Oklahoma CPA by knowingly and intentionally misrepresenting, omitting, concealing, and/or failing to disclose material facts regarding the reliability, safety, and performance of the Class Vehicles and the Defective Inflators, as detailed above.

3138. Defendants had an ongoing duty to Plaintiffs and Class Members to refrain from unfair or deceptive practices under the Oklahoma CPA in the course of their business. Specifically, Defendants owed Plaintiffs and Class Members a duty to disclose all the material facts concerning the Defective Inflators in the Class Vehicles because:

    a.    Given ARC's design, development, testing and manufacture of the Defective Inflators and its experience and knowledge as experts and

long-time veterans of the automotive industry, it, along with the Automaker Defendants and the Airbag Module Defendants, possessed exclusive access to and was in a superior position to know the true facts about the Defective Inflators;

b.    Given the Airbag Module Defendants' role in the design, manufacture, and testing of the airbag modules with the Defective Inflators installed in them, and their experience and knowledge as experts and long-time veterans of the automotive industry, they, along with ARC and the Automaker Defendants, possessed exclusive access to and were in a superior position to know the true facts about the Defective Inflators;

c.    Given the Automaker Defendants' role in the design, manufacture, testing, and sale of Class Vehicles and Defective Inflators, and their experience and knowledge as experts and long-time veterans of the automotive industry, they, along with ARC and the Airbag Module Defendants, possessed exclusive access to and were in a superior position to know the true facts about the Defective Inflators;

d.    Given the Inflator Defect's hidden and technical nature, Plaintiffs and Class Members lack the sophisticated expertise in vehicle components and technology that would be necessary to discover the Inflator Defect

865

on their own;

e.     Defendants knew that the Inflator Defect gave rise to serious safety concerns for the consumers who purchased and leased the Class Vehicles;

f.     The Inflator Defect poses a severe risk of harm in that, among other things, the metal shrapnel can puncture and stab the occupants, causing severe and potentially fatal injuries;

g.     Defendants knew about and investigated the Inflator Defect, but then did not notify consumers about it or disclose the Inflator Defect to NHTSA, and the Automaker Defendants did not launch a comprehensive recall for all Class Vehicles, all of which individually and together deprived Plaintiffs of an opportunity that otherwise could have led them to discover the truth about the Inflator Defect in their Class Vehicles; and

h.     The Automaker Defendants made, helped to make, or conspired to make incomplete representations about the safety and reliability of the Class Vehicles and their airbags, while purposefully withholding material facts about a known safety defect. Because they volunteered to provide information about the Class Vehicles that they marketed and

866

offered for sale and lease to consumers, the Automaker Defendants had the duty to disclose the whole truth.

3139. By misrepresenting the Class Vehicles as safe and reliable and the airbags installed in them as properly functioning and free from defects, and/or by failing to disclose and actively concealing the dangers and risk posed by the Inflator Defect to both consumers and NHTSA, Defendants engaged in one or more of the following unfair or deceptive business practices prohibited by Okla. Stat. Ann. Tit. 15, § 753:

a.   Representing that the Class Vehicles and/or the Defective Inflators installed in them are approved and certified as safe and reliable;

b.   Representing that the Class Vehicles and/or the Defective Inflators installed in them are of a particular standard, quality, and grade when they are not;

c.   Advertising the Class Vehicles and/or the Defective Inflators installed in them as safe and free from defects, with the intent not to sell or lease them as advertised; and

d.   Engaging in the immoral, unethical, oppressive, unscrupulous, or substantially injurious to consumers described above, which offends established public policy.

867

Okla. Stat. Ann. tit. 15, § 753(5), (7), (8), and (20).

3140. Defendants' unfair or deceptive acts or practices, including their misrepresentations, concealments, omissions, and/or suppressions of material facts, were designed to mislead and had a tendency or capacity to mislead and create a false impression in consumers that the Class Vehicles had properly-functioning and reliable airbags. Indeed, those misrepresentations, concealments, omissions, and suppressions of material facts did in fact deceive reasonable consumers, including Plaintiffs and Class Members, about the true safety and reliability of the Class Vehicles and/or the Defective Inflators installed in them, the quality of the Class Vehicles, and the true value of the Class Vehicles.

3141. Defendants intended for Plaintiffs and Class Members to rely on their misrepresentations, omissions, and concealment—which they did by purchasing and leasing the Class Vehicles at the prices they paid believing that their vehicles would not have an Inflator Defect that would affect the quality, reliability, and safety of the Class Vehicles and their airbags.

3142. Defendants' misrepresentations, concealments, omissions, and suppressions of material facts regarding the Inflator Defect and true characteristics of the Class Vehicles were material to the decisions of Plaintiffs and Class Members to purchase and lease those vehicles, as Defendants intended. Plaintiffs and Class

Members were exposed to those misrepresentations, concealments, omissions, and suppressions of material facts, and relied on Defendants' misrepresentations that the Class Vehicles and their airbags were safe and reliable in deciding to purchase and lease the Class Vehicles.

3143. Plaintiffs' and Class Members' reliance was reasonable, as they had no way of discerning that Defendants' representations were false and misleading, or otherwise learning the facts that Defendants had concealed or failed to disclose. Plaintiffs and Class Members did not, and could not, unravel Defendants' deception on their own.

3144. Had they known the truth about the Inflator Defect, Plaintiffs and Class Members would not have purchased or leased the Class Vehicles, or would have paid significantly less for them.

3145. As a direct and proximate result of Defendants' deceptive practices, Plaintiffs and Class Members have sustained economic injury and loss—either by purchasing a vehicle they otherwise would not have purchased or paying more than they otherwise would have as a result of Defendants' actions and omissions alleged above—that first occurred at the time each Class Vehicle was purchased or leased.

3146. Defendants' violations present a continuing risk to Plaintiffs and Class Members, as well as to the general public, because the Class Vehicles remain unsafe

due to the Defective Inflators therein. Defendants' unlawful acts and practices complained of herein affect the public interest.

3147. Pursuant to Okla. Stat. Ann. tit. 15, § 761.1, Plaintiffs and Class Members seek an order enjoining the above unfair or deceptive acts or practices and awarding actual damages, punitive damages, and any other just and proper relief available under the Oklahoma CPA against all Defendants.

### d.  Oklahoma Count 4: Fraud by Omission and Concealment Against All Defendants.

3148. Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

3149. The Oklahoma Plaintiffs bring this count under Oklahoma law, individually and on behalf of the other members of the Oklahoma Subclasses against the Automaker Defendants and Airbag Module Defendants for their respective Class Vehicles, and ARC. For the remaining Defendants, Plaintiffs who purchased or leased their Class Vehicles in states with materially similar laws may represent subclasses under this count against all other Defendants and ARC.

3150. For purposes of this count, members of the Oklahoma Subclasses shall be referred to as "Class Members."

3151. For purposes of this count, ARC, the Automaker Defendants, and the

Airbag Module Defendants shall be referred to as "Defendants."

3152. Defendants are liable for both fraudulent concealment and non-disclosure. *See, e.g.*, Restatement (Second) of Torts §§ 550-51 (1977).

3153. Defendants owed Plaintiffs and Class Members a duty to disclose all the material facts concerning the Defective Inflators in the Class Vehicles because:

    a.    Given the Automaker Defendants' role in the design, manufacture, testing, and sale of Class Vehicles and Defective Inflators, and their experience and knowledge as experts and long-time veterans of the automotive industry, they, along with ARC and the Airbag Module Defendants, possessed exclusive access to and were in a superior position to know the true facts about the Defective Inflators;

    b.    Given ARC's design, development, testing and manufacture of the Defective Inflators and its experience and knowledge as experts and long-time veterans of the automotive industry, it, along with the Automaker Defendants and the Airbag Module Defendants, possessed exclusive access to and was in a superior position to know the true facts about the Defective Inflators;

    c.    Given the Airbag Module Defendants' role in the design, manufacture, and testing of the airbag modules with the Defective Inflators installed

in them, and their experience and knowledge as experts and long-time veterans of the automotive industry, they, along with ARC and the Automaker Defendants, possessed exclusive access to and were in a superior position to know the true facts about the Defective Inflators;

d.    Given the Inflator Defect's hidden and technical nature, Plaintiffs and Class Members lack the sophisticated expertise in vehicle components and technology that would be necessary to discover the Inflator Defect on their own;

e.    Defendants knew that the Inflator Defect gave rise to serious safety concerns for the consumers who purchased and leased the Class Vehicles;

f.    The Inflator Defect poses a severe risk of harm in that, among other things, the metal shrapnel can puncture and stab the occupants, causing severe and potentially fatal injuries;

g.    Defendants knew about and investigated the Inflator Defect, but then did not notify consumers about it, disclose the Inflator Defect to NHTSA, or further launch a comprehensive recall for all Class Vehicles, which individually and together deprived Plaintiffs of an opportunity that otherwise could have led them to discover the truth

about the Inflator Defect in their Class Vehicles; and

h.    The Automaker Defendants made, helped to make, or conspired to make incomplete representations about the safety and reliability of the Class Vehicles and their airbags, while purposefully withholding material facts about a known safety defect. Because they volunteered to provide information about the Class Vehicles that they marketed and offered for sale and lease to consumers, the Automaker Defendants had the duty to disclose the whole truth.

3154. In breach of their duties, Defendants failed to disclose the Inflator Defect and that the Class Vehicles' airbags were not safe and reliable to Plaintiffs and Class Members in connection with the sale of the Class Vehicles.

3155. The Inflator Defect within the Class Vehicles is material to the sale of the Class Vehicles because a reasonable person would find it important in purchasing, leasing, or retaining a new or used motor vehicle and because it directly impacts the value of the Class Vehicles purchased or leased by Plaintiffs and Class Members.

3156. Defendants intended for Plaintiffs and Class Members to rely on their omissions and concealment—which they did by purchasing and leasing the Class Vehicles at the prices they paid believing that their vehicles would not have an

Inflator Defect that would affect the quality, reliability, and safety of the Class Vehicles and their airbags.

3157. Plaintiffs' and Class Members' reliance was reasonable because a reasonable consumer would not have expected that the Class Vehicles contained a safety defect that poses such a serious risk. They had no way of learning the facts that Defendants had concealed or failed to disclose. Plaintiffs and Class Members did not, and could not, unravel Defendants' deception on their own.

3158. Defendants actively concealed and suppressed these material facts, in whole or in part, to maintain a market for the Class Vehicles and the Defective Inflators installed in them, to protect profits, and to avoid costly recalls that would expose them to liability for those expenses and harm the commercial reputations of Defendants and their products. They did so at the expense of Plaintiffs and Class Members.

3159. If Defendants had fully and adequately disclosed the Inflator Defect to consumers, Plaintiffs and Class Members would have seen such a disclosure.

3160. Through their omissions and concealment with respect to the Inflator Defect within the Class Vehicles, Defendants intended to induce, and did induce, Plaintiffs and Class Members to either purchase a Class Vehicle that they otherwise would not have purchased, or pay more for a Class Vehicle than they otherwise

would have paid.

3161. Had Plaintiffs and Class Members known of the Inflator Defect within the Class Vehicles, they would not have purchased the Class Vehicles or would have paid less for them.

3162. As a direct and proximate result of Defendants' omissions and concealment, Plaintiffs and other Class Members either overpaid for the Class Vehicles or would not have purchased the Class Vehicles at all if the Inflator Defect had been disclosed to them. Accordingly, Defendants are liable to Plaintiffs and Class Members for their damages in an amount to be proven at trial.

3163. Defendants acted maliciously, oppressively, deliberately, with intent to defraud; in reckless disregard of the Plaintiffs' and Class Members' rights and well-being; and to enrich themselves. Defendants' misconduct warrants an assessment of punitive damages, as permitted by law, in an amount sufficient to deter such conduct in the future, which amount shall be determined according to proof at trial.

e.   **Oklahoma Count 5: Unjust Enrichment Against the Automaker Defendants.**

3164. Plaintiffs reallege and incorporate by reference all allegations in Volume 1 of the Consolidated Class Action Complaint as though fully set forth herein.

3165. The Oklahoma Plaintiffs bring this count under Oklahoma law, individually and on behalf of the other members of the Oklahoma Subclasses against the Automaker Defendants for their respective Class Vehicles. For the remaining Automaker Defendants, Plaintiffs who purchased or leased their Class Vehicles in states with materially similar laws may represent subclasses under this count against those Automaker Defendants.

3166. For purposes of this count, members of the Oklahoma Subclasses shall be referred to as "Class Members."

3167. When they purchased and leased the Class Vehicles, Plaintiffs and Class Members conferred tangible and material economic benefits upon the Automaker Defendants, who readily accepted and retained these benefits.

3168. Plaintiffs and Class Members would not have purchased or leased their Class Vehicles, or would have paid less for them, had they known of the Inflator Defect at the time of purchase or lease. Therefore, the Automaker Defendants profited from the sale and lease of the Class Vehicles to the detriment and expense of Plaintiffs and Class Members.

3169. The Automaker Defendants appreciated these economic benefits. These benefits were the expected result of the Automaker Defendants acting in their pecuniary interest at the expense of their customers. They knew of these benefits

because they were aware of the Inflator Defect, yet they failed to disclose this knowledge and misled the Plaintiffs and Class Members regarding the nature and quality of the Class Vehicles while profiting from this deception.

3170. It would be unjust, inequitable, and unconscionable for the Automaker Defendants to retain these benefits, including because they were procured as a result of their wrongful conduct alleged above.

3171. Plaintiffs and Class Members are entitled to restitution of the benefits the Automaker Defendants unjustly retained and/or any amounts necessary to return Plaintiffs and Class Members to the position they occupied prior to dealing with those Defendants, with such amounts to be determined at trial.

3172. Plaintiffs plead this claim separately as well as in the alternative to their claims for damages under Fed. R. Civ. P. 8(a)(3), because if the Court dismisses Plaintiffs' claims for damages enters judgment on them in favor of the Automaker Defendants, Plaintiffs will have no adequate legal remedy.

38. **Oregon**

  a. **Oregon Count 1: Breach of Express Warranty (Or. Rev. Stat. §§ 72.3130 and 72A.2100) Against the Automaker Defendants.**

3173. Plaintiffs reallege and incorporate by reference all preceding

877

allegations as though fully set forth herein.

3174. The Oregon Plaintiffs bring this count under Oregon law, individually and on behalf of the other members of the Oregon Subclasses against the Automaker Defendants for their respective Class Vehicles. For the remaining Automaker Defendants, Plaintiffs who purchased or leased their Class Vehicles in states with materially similar laws may represent subclasses under this count against those Automaker Defendants.

3175. For purposes of this count, members of the Oregon Subclasses shall be referred to as "Class Members."

3176. The Class Vehicles are "goods" under Or. Rev. Stat. §§ 72.1050(1) and 72A.1030(1)(h).

3177. The Automaker Defendants are "merchants" of the Class Vehicles under Or. Rev. Stat. §§ 72.1040(1) and 721.1030(1)(t), "sellers" under § 72.1030(1)(d), and "lessors" under § 72A.1030(1)(p).

3178. Plaintiffs and Class Members who purchased and leased the Class Vehicles in Oregon are "buyers" under Or. Rev. Stat. § 72.1030(1)(a) and "lessees" under § 72A.1030(1)(n).

3179. The Automaker Defendants issued an express written warranty for each defective Class Vehicle they sold, including that:

a.  The Class Vehicles would be free of defects in materials and workmanship at the time of sale; and

b.  The Class Vehicles were safe and reliable, and their airbags would function properly in the event of a crash.

3180. The warranties listed above formed the basis of the bargain with regard to Plaintiffs and Class Members' purchase and lease of the Class Vehicles.

3181. The Automaker Defendants knowingly breached their warranty for the Class Vehicles because:

a.  The airbag inflators have latent defects which have a dangerous propensity to cause the inflators to rupture and eject metal shrapnel, subjecting Plaintiffs and Class Members to the risk of loss and injury; and

b.  The Automaker Defendants denied, concealed, and misrepresented the Inflator Defect, in the process refusing to pay for or provide in a reasonably timely fashion the needed repairs and replacements for Plaintiffs and Class Members.

3182. The Automaker Defendants knew or should have known that the warranties were false and/or misleading. Specifically, the Automaker Defendants were aware of the Inflator Defect in the Class Vehicles, which made the vehicles

inherently defective and dangerous at the time that they were sold and leased to Plaintiffs and Class Members.

3183. Plaintiffs and Class Members were exposed to the Automaker Defendants' misrepresentations, and they had no way of discerning that the Automaker Defendants' representations were false and misleading or otherwise learning the material facts that the Automaker Defendants had concealed or failed to disclose. Accordingly, Plaintiffs and Class Members reasonably relied on the Automaker Defendants' express warranties when purchasing or leasing their Class Vehicles.

3184. Plaintiffs and Class Members timely provided the Automaker Defendants notice of the issues raised in this count and this Complaint and an opportunity to cure, as alleged in the paragraphs addressing Defendants' notice above.

3185. Alternatively, Plaintiffs and Class Members were excused from providing the Automaker Defendants with notice and an opportunity to cure the breach, because it would have been futile. As alleged above, the Automaker Defendants knew about the Defective Inflators for years; however, to date, the Automaker Defendants have not instituted a recall or any other repair program with respect to all of the Class Vehicles, or even acknowledged that the Inflator Defect

exists in all of the Class Vehicles. Therefore, they have refused to recall or repair defective vehicles. Moreover, to the extent the Automaker Defendants have issued recalls, those recalls are inadequate because, *inter alia*: (a) they are belated because the Automaker Defendants knew about the Defective Inflators for years and did nothing to recall or remedy the serious safety defect; (b) with tens of millions of vehicles impacted in existing and potential future recalls, as a result of the Automaker Defendants' concealment of the Inflator Defect, the recalls cannot be implemented effectively due to supply constraints and resulting delays; (c) the recalls are incomplete, and apply to only a subset of the Class Vehicles.

3186. As a direct and proximate result of the Automaker Defendants' breach of their express warranties, the Class Vehicles were and are defective and the Inflator Defect was not remedied. Therefore, Plaintiff and Class Members have been damaged, in an amount to be proven at trial, through their overpayment at the time of purchase or lease for the Class Vehicles with an undisclosed safety defect that would not be remedied.

**b.    Oregon Count 2: Breach of Implied Warranty of Merchantability (Or. Rev. Stat. §§ 72.3140 and 72A.2120) Against the Automaker Defendants.**

3187. Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

3188. The Oregon Plaintiffs bring this count under Oregon law, individually and on behalf of the other members of the Oregon Subclasses against the Automaker Defendants for their respective Class Vehicles. For the remaining Automaker Defendants, Plaintiffs who purchased or leased their Class Vehicles in states with materially similar laws may represent subclasses under this count against those Automaker Defendants.

3189. For purposes of this count, members of the Oregon Subclasses shall be referred to as "Class Members."

3190. The Class Vehicles are "goods" under Or. Rev. Stat. §§ 25-2-105(1) and 25-2A-103(1)(h).

3191. The Automaker Defendants are "merchants" of the Class Vehicles under Or. Rev. Stat. §§ 72.1040(1) and 721.1030(1)(t), "sellers" under § 72.1030(1)(d), and "lessors" under § 72A.1030(1)(p).

3192. Plaintiffs and Class Members who purchased and leased the Class Vehicles in Oregon are "buyers" under Or. Rev. Stat. § 72.1030(1)(a) and "lessees" under § 72A.1030(1)(n).

3193. Oregon law conferred an implied warranty that the Class Vehicles were in merchantable condition and fit for the ordinary purpose for which they were to be used pursuant to Or. Rev. Stat. §§ 72.3140 and 72A.2120.

3194. The Class Vehicles are not merchantable, and as such the Automaker Defendants breached their implied warranties, because at the time of sale and all times thereafter:

    a.    The Class Vehicles would not pass without objection in the automotive trade given the Inflator Defect;

    b.    The Inflator Defect renders the Class Vehicles unsafe to drive and unfit for ordinary purposes;

    c.    The Class Vehicles and the airbags therein were inadequately labeled as safe and reliable, and the labeling failed to disclose the Inflator Defect; and

    d.    The Class Vehicles do not conform to their labeling, which represents that the vehicles are safe and suitable for their intended use.

3195. Plaintiffs and Class Members timely provided the Automaker Defendants notice of the issues raised in this count and this Complaint and an opportunity to cure, as alleged in the paragraphs addressing Defendants' notice above.

3196. Alternatively, Plaintiffs and Class Members were excused from providing the Automaker Defendants with notice and an opportunity to cure the breach because it would have been futile. As alleged above, the Automaker

Defendants have long known that the Class Vehicles contained the Defective Inflators, and that the Defective Inflators have caused airbags to malfunction in crashes involving the Class Vehicles; however, to date, the Automaker Defendants have not instituted a recall or any other repair program with respect to all of the Class Vehicles, or even acknowledged that the Inflator Defect exists in all of those Class Vehicles. Moreover, to the extent the Automaker Defendants have issued recalls, those recalls are inadequate because, inter alia: (a) they are belated because the Automaker Defendants knew about the Defective Inflators for years and did nothing to recall or remedy the serious safety defect; (b) with tens of millions of vehicles impacted in existing and potential future recalls, as a result of the Automaker Defendants' concealment of the Inflator Defect, the recalls cannot be implemented effectively due to supply constraints and resulting delays; (c) the recalls are incomplete, and apply to only a subset of the Class Vehicles.

3197. Plaintiffs, individually and on behalf of Class Members, seek all available monetary damages (including actual, compensatory, and punitive damages), injunctive and equitable relief, and attorneys' fees and costs.

   c.  **Oregon Count 3: Violation of the Oregon Unlawful Trade Practices Act (Or. Rev. Stat. § 646.605, *et seq.*) Against All Defendants.**[42]

3198. Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

3199. The Oregon Plaintiffs bring this count under Oregon law, individually and on behalf of the other members of the Oregon Subclasses against the Automaker Defendants and Airbag Module Defendants for their respective Class Vehicles, and ARC. For the remaining Defendants, Plaintiffs who purchased or leased their Class Vehicles in states with materially similar laws may represent subclasses under this count against all other Defendants and ARC.

3200. For purposes of this count, members of the Oregon Subclasses shall be referred to as "Class Members."

3201. For purposes of this count, ARC, the Automaker Defendants, and the Airbag Module Defendants shall be referred to as "Defendants."

3202. Defendants, Plaintiffs, and Class Members are "persons" under Or. Rev. Stat. § 646.605(4).

3203. Defendants are engaged in "trade" and "commerce" under Or. Rev.

---

[42] Plaintiffs bring this count against ARC and the Airbag Module Defendants based on their omissions and concealment of material facts only.

Stat. § 646.605(8).

3204.  The Oregon Unlawful Trade Practices Act ("Oregon UTPA") prohibits unlawful practice in the course of business. Or. Rev. Stat. § 646.608(1).

3205.  In the course of their business, Defendants, through their agents, employees, and/or subsidiaries, violated the Oregon UTPA by knowingly and intentionally misrepresenting, omitting, concealing, and/or failing to disclose material facts regarding the reliability, safety, and performance of the Class Vehicles and the Defective Inflators, as detailed above.

3206.  Defendants had an ongoing duty to Plaintiffs and Class Members to refrain from unfair or deceptive practices under the Oregon UTPA in the course of their business. Specifically, Defendants owed Plaintiffs and Class Members a duty to disclose all the material facts concerning the Defective Inflators in the Class Vehicles because:

    a.    Given ARC's design, development, testing and manufacture of the Defective Inflators and its experience and knowledge as experts and long-time veterans of the automotive industry, it, along with the Automaker Defendants and the Airbag Module Defendants, possessed exclusive access to and was in a superior position to know the true facts about the Defective Inflators;

886

b.  Given the Airbag Module Defendants' role in the design, manufacture, and testing of the airbag modules with the Defective Inflators installed in them, and their experience and knowledge as experts and long-time veterans of the automotive industry, they, along with ARC and the Automaker Defendants, possessed exclusive access to and were in a superior position to know the true facts about the Defective Inflators;

c.  Given the Automaker Defendants' role in the design, manufacture, testing, and sale of Class Vehicles and Defective Inflators, and their experience and knowledge as experts and long-time veterans of the automotive industry, they, along with ARC and the Airbag Module Defendants, possessed exclusive access to and were in a superior position to know the true facts about the Defective Inflators;

d.  Given the Inflator Defect's hidden and technical nature, Plaintiffs and Class Members lack the sophisticated expertise in vehicle components and technology that would be necessary to discover the Inflator Defect on their own;

e.  Defendants knew that the Inflator Defect gave rise to serious safety concerns for the consumers who purchased and leased the Class Vehicles;

f.  The Inflator Defect poses a severe risk of harm in that, among other things, the metal shrapnel can puncture and stab the occupants, causing severe and potentially fatal injuries;

g.  Defendants knew about and investigated the Inflator Defect, but then did not notify consumers about it or disclose the Inflator Defect to NHTSA, and the Automaker Defendants did not launch a comprehensive recall for all Class Vehicles, all of which individually and together deprived Plaintiffs of an opportunity that otherwise could have led them to discover the truth about the Inflator Defect in their Class Vehicles; and

h.  The Automaker Defendants made, helped to make, or conspired to make incomplete representations about the safety and reliability of the Class Vehicles and their airbags, while purposefully withholding material facts about a known safety defect. Because they volunteered to provide information about the Class Vehicles that they marketed and offered for sale and lease to consumers, the Automaker Defendants had the duty to disclose the whole truth.

3207. By misrepresenting the Class Vehicles as safe and reliable and the airbags installed in them as properly functioning and free from defects, and/or by

failing to disclose and actively concealing the dangers and risk posed by the Inflator

Defect to both consumers and NHTSA, Defendants engaged in one or more of the

following unfair or deceptive business practices prohibited by Or. Rev. Stat. §

646.608(1):

a.   Causing likelihood of confusion or of misunderstanding as to the
     approval or certification of the Class Vehicles;

b.   Representing that the Class Vehicles have approval, characteristics,
     uses, or benefits that they do not have;

c.   Representing that the Class Vehicles are of a particular standard,
     quality, and grade when they are not; and/or

d.   Advertising the Class Vehicles with the intent not to sell or lease them
     as advertised.

Or. Rev. Stat. § 646.608(1)(b), (e), (g), (*i*).

3208. Defendants' unfair or deceptive acts or practices, including their

misrepresentations, concealments, omissions, and/or suppressions of material facts,

were designed to mislead and had a tendency or capacity to mislead and create a

false impression in consumers that the Class Vehicles had properly-functioning and

reliable airbags. Indeed, those misrepresentations, concealments, omissions, and

suppressions of material facts did in fact deceive reasonable consumers, including

889

Plaintiffs and Class Members, about the true safety and reliability of the Class Vehicles and/or the Defective Inflators installed in them, the quality of the Class Vehicles, and the true value of the Class Vehicles.

3209. Defendants intended for Plaintiffs and Class Members to rely on their misrepresentations, omissions, and concealment—which they did by purchasing and leasing the Class Vehicles at the prices they paid believing that their vehicles would not have an Inflator Defect that would affect the quality, reliability, and safety of the Class Vehicles and their airbags.

3210. Defendants' misrepresentations, concealments, omissions, and suppressions of material facts regarding the Inflator Defect and true characteristics of the Class Vehicles were material to the decisions of Plaintiffs and Class Members to purchase and lease those vehicles, as Defendants intended. Plaintiffs and Class Members were exposed to those misrepresentations, concealments, omissions, and suppressions of material facts, and relied on Defendants' misrepresentations that the Class Vehicles and their airbags were safe and reliable in deciding to purchase and lease the Class Vehicles.

3211. Plaintiffs' and Class Members' reliance was reasonable, as they had no way of discerning that Defendants' representations were false and misleading, or otherwise learning the facts that Defendants had concealed or failed to disclose.

Plaintiffs and Class Members did not, and could not, unravel Defendants' deception on their own.

3212. Had they known the truth about the Inflator Defect, Plaintiffs and Class Members would not have purchased or leased the Class Vehicles, or would have paid significantly less for them.

3213. As a direct and proximate result of Defendants' deceptive practices, Plaintiffs and Class Members have sustained economic injury and loss—either by purchasing a vehicle they otherwise would not have purchased or paying more than they otherwise would have as a result of Defendants' actions and omissions alleged above—that first occurred at the time each Class Vehicle was purchased or leased.

3214. Defendants' violations present a continuing risk to Plaintiffs and Class Members, as well as to the general public, because the Class Vehicles remain unsafe due to the Defective Inflators therein. Defendants' unlawful acts and practices complained of herein affect the public interest.

3215. Pursuant to Or. Rev. Stat. § 646.638, Plaintiffs and Class Members seek an order enjoining the above unfair or deceptive acts or practices and awarding actual damages, punitive damages, and any other just and proper relief available under the Oregon UTPA against all Defendants.

### d.     Oregon Count 4: Fraud by Omission and Concealment Against All Defendants.

3216. Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

3217. The Oregon Plaintiffs bring this count under Oregon law, individually and on behalf of the other members of the Oregon Subclasses against the Automaker Defendants and Airbag Module Defendants for their respective Class Vehicles, and ARC. For the remaining Defendants, Plaintiffs who purchased or leased their Class Vehicles in states with materially similar laws may represent subclasses under this count against all other Defendants and ARC.

3218. For purposes of this count, members of the Oregon Subclasses shall be referred to as "Class Members."

3219. For purposes of this count, ARC, the Automaker Defendants, and the Airbag Module Defendants shall be referred to as "Defendants."

3220. Defendants are liable for both fraudulent concealment and non-disclosure. *See, e.g.*, Restatement (Second) of Torts §§ 550-51 (1977).

3221. Defendants owed Plaintiffs and Class Members a duty to disclose all the material facts concerning the Defective Inflators in the Class Vehicles because:

a.     Given the Automaker Defendants' role in the design, manufacture, testing, and sale of Class Vehicles and Defective Inflators, and their

892

experience and knowledge as experts and long-time veterans of the automotive industry, they, along with ARC and the Airbag Module Defendants, possessed exclusive access to and were in a superior position to know the true facts about the Defective Inflators;

b.    Given ARC's design, development, testing and manufacture of the Defective Inflators and its experience and knowledge as experts and long-time veterans of the automotive industry, it, along with the Automaker Defendants and the Airbag Module Defendants, possessed exclusive access to and was in a superior position to know the true facts about the Defective Inflators;

c.    Given the Airbag Module Defendants' role in the design, manufacture, and testing of the airbag modules with the Defective Inflators installed in them, and their experience and knowledge as experts and long-time veterans of the automotive industry, they, along with ARC and the Automaker Defendants, possessed exclusive access to and were in a superior position to know the true facts about the Defective Inflators;

d.    Given the Inflator Defect's hidden and technical nature, Plaintiffs and Class Members lack the sophisticated expertise in vehicle components and technology that would be necessary to discover the Inflator Defect

on their own;

e.   Defendants knew that the Inflator Defect gave rise to serious safety concerns for the consumers who purchased and leased the Class Vehicles;

f.   The Inflator Defect poses a severe risk of harm in that, among other things, the metal shrapnel can puncture and stab the occupants, causing severe and potentially fatal injuries;

g.   Defendants knew about and investigated the Inflator Defect, but then did not notify consumers about it, disclose the Inflator Defect to NHTSA, or further launch a comprehensive recall for all Class Vehicles, which individually and together deprived Plaintiffs of an opportunity that otherwise could have led them to discover the truth about the Inflator Defect in their Class Vehicles; and

h.   The Automaker Defendants made, helped to make, or conspired to make incomplete representations about the safety and reliability of the Class Vehicles and their airbags, while purposefully withholding material facts about a known safety defect. Because they volunteered to provide information about the Class Vehicles that they marketed and offered for sale and lease to consumers, the Automaker Defendants had

the duty to disclose the whole truth.

3222. In breach of their duties, Defendants failed to disclose the Inflator Defect and that the Class Vehicles' airbags were not safe and reliable to Plaintiffs and Class Members in connection with the sale of the Class Vehicles.

3223. The Inflator Defect within the Class Vehicles is material to the sale of the Class Vehicles because a reasonable person would find it important in purchasing, leasing, or retaining a new or used motor vehicle and because it directly impacts the value of the Class Vehicles purchased or leased by Plaintiffs and Class Members.

3224. Defendants intended for Plaintiffs and Class Members to rely on their omissions and concealment—which they did by purchasing and leasing the Class Vehicles at the prices they paid believing that their vehicles would not have an Inflator Defect that would affect the quality, reliability, and safety of the Class Vehicles and their airbags.

3225. Plaintiffs' and Class Members' reliance was reasonable because a reasonable consumer would not have expected that the Class Vehicles contained a safety defect that poses such a serious risk. They had no way of learning the facts that Defendants had concealed or failed to disclose. Plaintiffs and Class Members did not, and could not, unravel Defendants' deception on their own.

3226. Defendants actively concealed and suppressed these material facts, in whole or in part, to maintain a market for the Class Vehicles and the Defective Inflators installed in them, to protect profits, and to avoid costly recalls that would expose them to liability for those expenses and harm the commercial reputations of Defendants and their products. They did so at the expense of Plaintiffs and Class Members.

3227. If Defendants had fully and adequately disclosed the Inflator Defect to consumers, Plaintiffs and Class Members would have seen such a disclosure.

3228. Through their omissions and concealment with respect to the Inflator Defect within the Class Vehicles, Defendants intended to induce, and did induce, Plaintiffs and Class Members to either purchase a Class Vehicle that they otherwise would not have purchased, or pay more for a Class Vehicle than they otherwise would have paid.

3229. Had Plaintiffs and Class Members known of the Inflator Defect within the Class Vehicles, they would not have purchased the Class Vehicles or would have paid less for them.

3230. As a direct and proximate result of Defendants' omissions and concealment, Plaintiffs and other Class Members either overpaid for the Class Vehicles or would not have purchased the Class Vehicles at all if the Inflator Defect

had been disclosed to them. Accordingly, Defendants are liable to Plaintiffs and Class Members for their damages in an amount to be proven at trial.

3231. Defendants acted maliciously, oppressively, deliberately, with intent to defraud; in reckless disregard of the Plaintiffs' and Class Members' rights and well-being; and to enrich themselves. Defendants' misconduct warrants an assessment of punitive damages, as permitted by law, in an amount sufficient to deter such conduct in the future, which amount shall be determined according to proof at trial.

### e.      Oregon Count 5: Unjust Enrichment Against the Automaker Defendants.

3232. Plaintiffs reallege and incorporate by reference all allegations in Volume 1 of the Consolidated Class Action Complaint as though fully set forth herein.

3233. The Oregon Plaintiffs bring this count under Oregon law, individually and on behalf of the other members of the Oregon Subclasses against the Automaker Defendants for their respective Class Vehicles. For the remaining Automaker Defendants, Plaintiffs who purchased or leased their Class Vehicles in states with materially similar laws may represent subclasses under this count against those Automaker Defendants.

3234. For purposes of this count, members of the Oregon Subclasses shall be

referred to as "Class Members."

3235. When they purchased and leased the Class Vehicles, Plaintiffs and Class Members conferred tangible and material economic benefits upon the Automaker Defendants, who readily accepted and retained these benefits.

3236. Plaintiffs and Class Members would not have purchased or leased their Class Vehicles, or would have paid less for them, had they known of the Inflator Defect at the time of purchase or lease. Therefore, the Automaker Defendants profited from the sale and lease of the Class Vehicles to the detriment and expense of Plaintiffs and Class Members.

3237. The Automaker Defendants appreciated these economic benefits. These benefits were the expected result of the Automaker Defendants acting in their pecuniary interest at the expense of their customers. They knew of these benefits because they were aware of the Inflator Defect, yet they failed to disclose this knowledge and misled the Plaintiffs and Class Members regarding the nature and quality of the Class Vehicles while profiting from this deception.

3238. It would be unjust, inequitable, and unconscionable for the Automaker Defendants to retain these benefits, including because they were procured as a result of their wrongful conduct alleged above.

3239. Plaintiffs and Class Members are entitled to restitution of the benefits

the Automaker Defendants unjustly retained and/or any amounts necessary to return Plaintiffs and Class Members to the position they occupied prior to dealing with those Defendants, with such amounts to be determined at trial.

3240. Plaintiffs plead this claim separately as well as in the alternative to their claims for damages under Fed. R. Civ. P. 8(a)(3), because if the Court dismisses Plaintiffs' claims for damages enters judgment on them in favor of the Automaker Defendants, Plaintiffs will have no adequate legal remedy.

### 39.    Pennsylvania

####   a.    Pennsylvania Count 1: Breach of Express Warranty (13 Pa. Cons. Stat. §§ 2313 and 2A210) Against the Automaker Defendants.

3241. Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

3242. The Pennsylvania Plaintiffs bring this count under Pennsylvania law, individually and on behalf of the other members of the Pennsylvania Subclasses against the Automaker Defendants for their respective Class Vehicles. For the remaining Automaker Defendants, Plaintiffs who purchased or leased their Class Vehicles in states with materially similar laws may represent subclasses under this

count against those Automaker Defendants.

3243. For purposes of this count, members of the Pennsylvania Subclasses shall be referred to as "Class Members."

3244. The Class Vehicles are "goods" under 13 Pa. Cons. Stat. §§ 2105(1) and 2A103(a).

3245. The Automaker Defendants are "merchants" of the Class Vehicles under 13 Pa. Cons. Stat. §§ 2104 and 2A103(c), "sellers" under § 2103(a), and "lessors" under § 2A103(a).

3246. Plaintiffs and Class Members who purchased and leased the Class Vehicles in Pennsylvania are "buyers" under 13 Pa. Cons. Stat. § 2103(a) and "lessees" under § 2A103(a).

3247. The Automaker Defendants issued an express written warranty for each defective Class Vehicle they sold, including that:

a.  The Class Vehicles would be free of defects in materials and workmanship at the time of sale; and

b.  The Class Vehicles were safe and reliable, and their airbags would function properly in the event of a crash.

3248. The warranties listed above formed the basis of the bargain with regard to Plaintiffs and Class Members' purchase and lease of the Class Vehicles.

900

3249. The Automaker Defendants knowingly breached their warranty for the Class Vehicles because:

a.  The airbag inflators have latent defects which have a dangerous propensity to cause the inflators to rupture and eject metal shrapnel, subjecting Plaintiffs and Class Members to the risk of loss and injury; and

b.  The Automaker Defendants denied, concealed, and misrepresented the Inflator Defect, in the process refusing to pay for or provide in a reasonably timely fashion the needed repairs and replacements for Plaintiffs and Class Members.

3250. The Automaker Defendants knew or should have known that the warranties were false and/or misleading. Specifically, the Automaker Defendants were aware of the Inflator Defect in the Class Vehicles, which made the vehicles inherently defective and dangerous at the time that they were sold and leased to Plaintiffs and Class Members.

3251. Plaintiffs and Class Members were exposed to the Automaker Defendants' misrepresentations, and they had no way of discerning that the Automaker Defendants' representations were false and misleading or otherwise learning the material facts that the Automaker Defendants had concealed or failed to

disclose. Accordingly, Plaintiffs and Class Members reasonably relied on the Automaker Defendants' express warranties when purchasing or leasing their Class Vehicles.

3252. Plaintiffs and Class Members timely provided the Automaker Defendants notice of the issues raised in this count and this Complaint and an opportunity to cure, as alleged in the paragraphs addressing Defendants' notice above.

3253. Alternatively, Plaintiffs and Class Members were excused from providing the Automaker Defendants with notice and an opportunity to cure the breach, because it would have been futile. As alleged above, the Automaker Defendants knew about the Defective Inflators for years; however, to date, the Automaker Defendants have not instituted a recall or any other repair program with respect to all of the Class Vehicles, or even acknowledged that the Inflator Defect exists in all of the Class Vehicles. Therefore, they have refused to recall or repair defective vehicles. Moreover, to the extent the Automaker Defendants have issued recalls, those recalls are inadequate because, *inter alia*: (a) they are belated because the Automaker Defendants knew about the Defective Inflators for years and did nothing to recall or remedy the serious safety defect; (b) with tens of millions of vehicles impacted in existing and potential future recalls, as a result of the

Automaker Defendants' concealment of the Inflator Defect, the recalls cannot be implemented effectively due to supply constraints and resulting delays; (c) the recalls are incomplete, and apply to only a subset of the Class Vehicles.

3254. As a direct and proximate result of the Automaker Defendants' breach of their express warranties, the Class Vehicles were and are defective and the Inflator Defect was not remedied. Therefore, Plaintiff and Class Members have been damaged, in an amount to be proven at trial, through their overpayment at the time of purchase or lease for the Class Vehicles with an undisclosed safety defect that would not be remedied.

> **b.    Pennsylvania Count 2: Breach of Implied Warranty of Merchantability (13 Pa. Cons. Stat. §§ 2314 and 2A212) Against the Automaker Defendants.**

3255. Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

3256. The Pennsylvania Plaintiffs bring this count under Pennsylvania law, individually and on behalf of the other members of the Pennsylvania Subclasses against the Automaker Defendants for their respective Class Vehicles. For the remaining Automaker Defendants, Plaintiffs who purchased or leased their Class Vehicles in states with materially similar laws may represent subclasses under this count against those Automaker Defendants.

3257. For purposes of this count, members of the Pennsylvania Subclasses shall be referred to as "Class Members."

3258. The Class Vehicles are "goods" under 13 Pa. Cons. Stat. §§ 2105(1) and 2A103(a).

3259. The Automaker Defendants are "merchants" of the Class Vehicles under 13 Pa. Cons. Stat. §§ 2104 and 2A103(c), "sellers" under § 2103(a), and "lessors" under § 2A103(a).

3260. Plaintiffs and Class Members who purchased and leased the Class Vehicles in Pennsylvania are "buyers" under 13 Pa. Cons. Stat. § 2103(a) and "lessees" under § 2A103(a).

3261. Pennsylvania law conferred an implied warranty that the Class Vehicles were in merchantable condition and fit for the ordinary purpose for which they were to be used pursuant to 13 Pa. Cons. Stat. §§ 2314 and 2A212.

3262. The Class Vehicles are not merchantable, and as such the Automaker Defendants breached their implied warranties, because at the time of sale and all times thereafter:

a.   The Class Vehicles would not pass without objection in the automotive trade given the Inflator Defect;

b.   The Inflator Defect renders the Class Vehicles unsafe to drive and unfit

904

for ordinary purposes;

c.    The Class Vehicles and the airbags therein were inadequately labeled as safe and reliable, and the labeling failed to disclose the Inflator Defect; and

d.    The Class Vehicles do not conform to their labeling, which represents that the vehicles are safe and suitable for their intended use.

3263. Plaintiffs and Class Members timely provided the Automaker Defendants notice of the issues raised in this count and this Complaint and an opportunity to cure, as alleged in the paragraphs addressing Defendants' notice above.

3264. Alternatively, Plaintiffs and Class Members were excused from providing the Automaker Defendants with notice and an opportunity to cure the breach because it would have been futile. As alleged above, the Automaker Defendants have long known that the Class Vehicles contained the Defective Inflators, and that the Defective Inflators have caused airbags to malfunction in crashes involving the Class Vehicles; however, to date, the Automaker Defendants have not instituted a recall or any other repair program with respect to all of the Class Vehicles, or even acknowledged that the Inflator Defect exists in all of those Class Vehicles. Moreover, to the extent the Automaker Defendants have issued recalls,

those recalls are inadequate because, inter alia: (a) they are belated because the Automaker Defendants knew about the Defective Inflators for years and did nothing to recall or remedy the serious safety defect; (b) with tens of millions of vehicles impacted in existing and potential future recalls, as a result of the Automaker Defendants' concealment of the Inflator Defect, the recalls cannot be implemented effectively due to supply constraints and resulting delays; (c) the recalls are incomplete, and apply to only a subset of the Class Vehicles.

3265. Plaintiffs, individually and on behalf of Class Members, seek all available monetary damages (including actual, compensatory, and punitive damages), injunctive and equitable relief, and attorneys' fees and costs.

### c.    Pennsylvania Count 3: Violation of the Pennsylvania Unfair Trade Practices and Consumer Protection Law (73 Pa. Cons. Stat. § 201-1, *et seq.*) Against All Defendants.[43]

3266. Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

3267. The Pennsylvania Plaintiffs bring this count under Pennsylvania law, individually and on behalf of the other members of the Pennsylvania Subclasses against the Automaker Defendants and Airbag Module Defendants for their

---

[43] Plaintiffs bring this count against ARC and the Airbag Module Defendants based on their omissions and concealment of material facts only.

respective Class Vehicles, and ARC. For the remaining Defendants, Plaintiffs who purchased or leased their Class Vehicles in states with materially similar laws may represent subclasses under this count against all other Defendants and ARC.

3268. For purposes of this count, members of the Pennsylvania Subclasses shall be referred to as "Class Members."

3269. For purposes of this count, ARC, the Automaker Defendants, and the Airbag Module Defendants shall be referred to as "Defendants."

3270. Defendants, Plaintiffs, and Class Members are "persons" under 73 Pa. Cons. Stat. § 201-2(2).

3271. Plaintiffs and Class Members purchased their Class Vehicles primarily for personal, family, or household purposes within the meaning of 73 Pa. Cons. Stat. § 201-9.2(a).

3272. Defendants are engaged in "trade" and "commerce" under 73 Pa. Cons. Stat. § 201-2(3).

3273. The Pennsylvania Unfair Trade Practices and Consumer Protection Law ("Pennsylvania CPL") prohibits "unfair or deceptive acts or practices in the course of any trade or commerce[.]" 73 Pa. Cons. Stat. § 201-3.

3274. In the course of their business, Defendants, through their agents, employees, and/or subsidiaries, violated the Pennsylvania CPL by knowingly and

intentionally misrepresenting, omitting, concealing, and/or failing to disclose material facts regarding the reliability, safety, and performance of the Class Vehicles and the Defective Inflators, as detailed above.

3275. Defendants had an ongoing duty to Plaintiffs and Class Members to refrain from unfair or deceptive practices under the Pennsylvania CPL in the course of their business. Specifically, Defendants owed Plaintiffs and Class Members a duty to disclose all the material facts concerning the Defective Inflators in the Class Vehicles because:

   a.   Given ARC's design, development, testing and manufacture of the Defective Inflators and its experience and knowledge as experts and long-time veterans of the automotive industry, it, along with the Automaker Defendants and the Airbag Module Defendants, possessed exclusive access to and was in a superior position to know the true facts about the Defective Inflators;

   b.   Given the Airbag Module Defendants' role in the design, manufacture, and testing of the airbag modules with the Defective Inflators installed in them, and their experience and knowledge as experts and long-time veterans of the automotive industry, they, along with ARC and the Automaker Defendants, possessed exclusive access to and were in a

superior position to know the true facts about the Defective Inflators;

c.     Given the Automaker Defendants' role in the design, manufacture, testing, and sale of Class Vehicles and Defective Inflators, and their experience and knowledge as experts and long-time veterans of the automotive industry, they, along with ARC and the Airbag Module Defendants, possessed exclusive access to and were in a superior position to know the true facts about the Defective Inflators;

d.     Given the Inflator Defect's hidden and technical nature, Plaintiffs and Class Members lack the sophisticated expertise in vehicle components and technology that would be necessary to discover the Inflator Defect on their own;

e.     Defendants knew that the Inflator Defect gave rise to serious safety concerns for the consumers who purchased and leased the Class Vehicles;

f.     The Inflator Defect poses a severe risk of harm in that, among other things, the metal shrapnel can puncture and stab the occupants, causing severe and potentially fatal injuries;

g.     Defendants knew about and investigated the Inflator Defect, but then did not notify consumers about it or disclose the Inflator Defect to

NHTSA, and the Automaker Defendants did not launch a comprehensive recall for all Class Vehicles, all of which individually and together deprived Plaintiffs of an opportunity that otherwise could have led them to discover the truth about the Inflator Defect in their Class Vehicles; and

h.   The Automaker Defendants made, helped to make, or conspired to make incomplete representations about the safety and reliability of the Class Vehicles and their airbags, while purposefully withholding material facts about a known safety defect. Because they volunteered to provide information about the Class Vehicles that they marketed and offered for sale and lease to consumers, the Automaker Defendants had the duty to disclose the whole truth.

3276. By misrepresenting the Class Vehicles as safe and reliable and the airbags installed in them as properly functioning and free from defects, and/or by failing to disclose and actively concealing the dangers and risk posed by the Inflator Defect to both consumers and NHTSA, Defendants engaged in one or more of the following unfair or deceptive business practices prohibited by the Pennsylvania CPL:

a.   Representing that the Class Vehicles and/or the Defective Inflators

installed in them have characteristics, uses, benefits, and qualities which they do not have.

b.  Representing that the Class Vehicles and/or the Defective Inflators installed in them are of a particular standard, quality, and grade when they are not.

c.  Advertising the Class Vehicles and/or the Defective Inflators installed in them with the intent not to sell or lease them as advertised.

d.  Engaging in any other fraudulent or deceptive conduct which creates a likelihood of confusion or of misunderstanding.

73 Pa. Cons. Stat. § 201-2(4)(v), (vii), (ix), and (xxi).

3277.  Defendants' unfair or deceptive acts or practices, including their misrepresentations, concealments, omissions, and/or suppressions of material facts, were designed to mislead and had a tendency or capacity to mislead and create a false impression in consumers that the Class Vehicles had properly-functioning and reliable airbags. Indeed, those misrepresentations, concealments, omissions, and suppressions of material facts did in fact deceive reasonable consumers, including Plaintiffs and Class Members, about the true safety and reliability of the Class Vehicles and/or the Defective Inflators installed in them, the quality of the Class Vehicles, and the true value of the Class Vehicles.

911

3278. Defendants intended for Plaintiffs and Class Members to rely on their misrepresentations, omissions, and concealment—which they did by purchasing and leasing the Class Vehicles at the prices they paid believing that their vehicles would not have an Inflator Defect that would affect the quality, reliability, and safety of the Class Vehicles and their airbags.

3279. Defendants' misrepresentations, concealments, omissions, and suppressions of material facts regarding the Inflator Defect and true characteristics of the Class Vehicles were material to the decisions of Plaintiffs and Class Members to purchase and lease those vehicles, as Defendants intended. Plaintiffs and Class Members were exposed to those misrepresentations, concealments, omissions, and suppressions of material facts, and relied on Defendants' misrepresentations that the Class Vehicles and their airbags were safe and reliable in deciding to purchase and lease the Class Vehicles.

3280. Plaintiffs' and Class Members' reliance was reasonable, as they had no way of discerning that Defendants' representations were false and misleading, or otherwise learning the facts that Defendants had concealed or failed to disclose. Plaintiffs and Class Members did not, and could not, unravel Defendants' deception on their own.

3281. Had they known the truth about the Inflator Defect, Plaintiffs and Class

Members would not have purchased or leased the Class Vehicles, or would have paid significantly less for them.

3282. As a direct and proximate result of Defendants' deceptive practices, Plaintiffs and Class Members have sustained economic injury and loss—either by purchasing a vehicle they otherwise would not have purchased or paying more than they otherwise would have as a result of Defendants' actions and omissions alleged above—that first occurred at the time each Class Vehicle was purchased or leased.

3283. Defendants' violations present a continuing risk to Plaintiffs and Class Members, as well as to the general public, because the Class Vehicles remain unsafe due to the Defective Inflators therein. Defendants' unlawful acts and practices complained of herein affect the public interest.

3284. Pursuant to 73 Pa. Cons. Stat. § 201-9.2(a), Plaintiffs and Class Members seek an order enjoining the above unfair or deceptive acts or practices and awarding actual damages, punitive damages, and any other just and proper relief available under the Pennsylvania CPL against all Defendants.

### d.  Pennsylvania Count 4: Fraud by Omission and Concealment Against All Defendants.

3285. Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

913

3286. The Pennsylvania Plaintiffs bring this count under Pennsylvania law, individually and on behalf of the other members of the Pennsylvania Subclasses against the Automaker Defendants and Airbag Module Defendants for their respective Class Vehicles, and ARC. For the remaining Defendants, Plaintiffs who purchased or leased their Class Vehicles in states with materially similar laws may represent subclasses under this count against all other Defendants and ARC.

3287. For purposes of this count, members of the Pennsylvania Subclasses shall be referred to as "Class Members."

3288. For purposes of this count, ARC, the Automaker Defendants, and the Airbag Module Defendants shall be referred to as "Defendants."

3289. Defendants are liable for both fraudulent concealment and non-disclosure. *See, e.g.*, Restatement (Second) of Torts §§ 550-51 (1977).

3290. Defendants owed Plaintiffs and Class Members a duty to disclose all the material facts concerning the Defective Inflators in the Class Vehicles because:

a.   Given the Automaker Defendants' role in the design, manufacture, testing, and sale of Class Vehicles and Defective Inflators, and their experience and knowledge as experts and long-time veterans of the automotive industry, they, along with ARC and the Airbag Module Defendants, possessed exclusive access to and were in a superior

914

position to know the true facts about the Defective Inflators;

b.      Given ARC's design, development, testing and manufacture of the Defective Inflators and its experience and knowledge as experts and long-time veterans of the automotive industry, it, along with the Automaker Defendants and the Airbag Module Defendants, possessed exclusive access to and was in a superior position to know the true facts about the Defective Inflators;

c.      Given the Airbag Module Defendants' role in the design, manufacture, and testing of the airbag modules with the Defective Inflators installed in them, and their experience and knowledge as experts and long-time veterans of the automotive industry, they, along with ARC and the Automaker Defendants, possessed exclusive access to and were in a superior position to know the true facts about the Defective Inflators;

d.      Given the Inflator Defect's hidden and technical nature, Plaintiffs and Class Members lack the sophisticated expertise in vehicle components and technology that would be necessary to discover the Inflator Defect on their own;

e.      Defendants knew that the Inflator Defect gave rise to serious safety concerns for the consumers who purchased and leased the Class

915

Vehicles;

f.    The Inflator Defect poses a severe risk of harm in that, among other things, the metal shrapnel can puncture and stab the occupants, causing severe and potentially fatal injuries;

g.    Defendants knew about and investigated the Inflator Defect, but then did not notify consumers about it, disclose the Inflator Defect to NHTSA, or further launch a comprehensive recall for all Class Vehicles, which individually and together deprived Plaintiffs of an opportunity that otherwise could have led them to discover the truth about the Inflator Defect in their Class Vehicles; and

h.    The Automaker Defendants made, helped to make, or conspired to make incomplete representations about the safety and reliability of the Class Vehicles and their airbags, while purposefully withholding material facts about a known safety defect. Because they volunteered to provide information about the Class Vehicles that they marketed and offered for sale and lease to consumers, the Automaker Defendants had the duty to disclose the whole truth.

3291. In breach of their duties, Defendants failed to disclose the Inflator Defect and that the Class Vehicles' airbags were not safe and reliable to Plaintiffs

and Class Members in connection with the sale of the Class Vehicles.

3292. The Inflator Defect within the Class Vehicles is material to the sale of the Class Vehicles because a reasonable person would find it important in purchasing, leasing, or retaining a new or used motor vehicle and because it directly impacts the value of the Class Vehicles purchased or leased by Plaintiffs and Class Members.

3293. Defendants intended for Plaintiffs and Class Members to rely on their omissions and concealment—which they did by purchasing and leasing the Class Vehicles at the prices they paid believing that their vehicles would not have an Inflator Defect that would affect the quality, reliability, and safety of the Class Vehicles and their airbags.

3294. Plaintiffs' and Class Members' reliance was reasonable because a reasonable consumer would not have expected that the Class Vehicles contained a safety defect that poses such a serious risk. They had no way of learning the facts that Defendants had concealed or failed to disclose. Plaintiffs and Class Members did not, and could not, unravel Defendants' deception on their own.

3295. Defendants actively concealed and suppressed these material facts, in whole or in part, to maintain a market for the Class Vehicles and the Defective Inflators installed in them, to protect profits, and to avoid costly recalls that would

expose them to liability for those expenses and harm the commercial reputations of Defendants and their products. They did so at the expense of Plaintiffs and Class Members.

3296. If Defendants had fully and adequately disclosed the Inflator Defect to consumers, Plaintiffs and Class Members would have seen such a disclosure.

3297. Through their omissions and concealment with respect to the Inflator Defect within the Class Vehicles, Defendants intended to induce, and did induce, Plaintiffs and Class Members to either purchase a Class Vehicle that they otherwise would not have purchased, or pay more for a Class Vehicle than they otherwise would have paid.

3298. Had Plaintiffs and Class Members known of the Inflator Defect within the Class Vehicles, they would not have purchased the Class Vehicles or would have paid less for them.

3299. As a direct and proximate result of Defendants' omissions and concealment, Plaintiffs and other Class Members either overpaid for the Class Vehicles or would not have purchased the Class Vehicles at all if the Inflator Defect had been disclosed to them. Accordingly, Defendants are liable to Plaintiffs and Class Members for their damages in an amount to be proven at trial.

3300. Defendants acted maliciously, oppressively, deliberately, with intent to

defraud; in reckless disregard of the Plaintiffs' and Class Members' rights and well-being; and to enrich themselves. Defendants' misconduct warrants an assessment of punitive damages, as permitted by law, in an amount sufficient to deter such conduct in the future, which amount shall be determined according to proof at trial.

> **e.    Pennsylvania Count 5: Unjust Enrichment Against the Automaker Defendants.**

3301. Plaintiffs reallege and incorporate by reference all allegations in Volume 1 of the Consolidated Class Action Complaint as though fully set forth herein.

3302. The Pennsylvania Plaintiffs bring this count under Pennsylvania law, individually and on behalf of the other members of the Pennsylvania Subclasses against the Automaker Defendants for their respective Class Vehicles. For the remaining Automaker Defendants, Plaintiffs who purchased or leased their Class Vehicles in states with materially similar laws may represent subclasses under this count against those Automaker Defendants.

3303. For purposes of this count, members of the Pennsylvania Subclasses shall be referred to as "Class Members."

3304. When they purchased and leased the Class Vehicles, Plaintiffs and Class Members conferred tangible and material economic benefits upon the

Automaker Defendants, who readily accepted and retained these benefits.

3305.  Plaintiffs and Class Members would not have purchased or leased their Class Vehicles, or would have paid less for them, had they known of the Inflator Defect at the time of purchase or lease. Therefore, the Automaker Defendants profited from the sale and lease of the Class Vehicles to the detriment and expense of Plaintiffs and Class Members.

3306.  The Automaker Defendants appreciated these economic benefits. These benefits were the expected result of the Automaker Defendants acting in their pecuniary interest at the expense of their customers. They knew of these benefits because they were aware of the Inflator Defect, yet they failed to disclose this knowledge and misled the Plaintiffs and Class Members regarding the nature and quality of the Class Vehicles while profiting from this deception.

3307.  It would be unjust, inequitable, and unconscionable for the Automaker Defendants to retain these benefits, including because they were procured as a result of their wrongful conduct alleged above.

3308.  Plaintiffs and Class Members are entitled to restitution of the benefits the Automaker Defendants unjustly retained and/or any amounts necessary to return Plaintiffs and Class Members to the position they occupied prior to dealing with those Defendants, with such amounts to be determined at trial.

3309. Plaintiffs plead this claim separately as well as in the alternative to their claims for damages under Fed. R. Civ. P. 8(a)(3), because if the Court dismisses Plaintiffs' claims for damages enters judgment on them in favor of the Automaker Defendants, Plaintiffs will have no adequate legal remedy.

**40.  Rhode Island**

    **a.  Rhode Island Count 1: Breach of Express Warranty (R.I. Gen. Laws §§ 6A-2-313 and 6A-2.1-210) Against the Automaker Defendants.**

3310. Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

3311. The Rhode Island Plaintiffs bring this count under Rhode Island law, individually and on behalf of the other members of the Rhode Island Subclasses against the Automaker Defendants for their respective Class Vehicles. For the remaining Automaker Defendants, Plaintiffs who purchased or leased their Class Vehicles in states with materially similar laws may represent subclasses under this count against those Automaker Defendants.

3312. For purposes of this count, members of the Rhode Island Subclasses shall be referred to as "Class Members."

3313. The Class Vehicles are "goods" under R.I. Gen. Laws §§ 6A-2-105(1)

and 6A-2.1-103(1)(h).

3314. The Automaker Defendants are "merchants" of the Class Vehicles under R.I. Gen. Laws §§ 6A-2-104(1) and 6A-2.1-103(1)(t), "sellers" under § 6A-2-103(a)(4), and "lessors" under § 6A-2.1-103(1)(p).

3315. Plaintiffs and Class Members who purchased and leased the Class Vehicles in Rhode Island are "buyers" under R.I. Gen. Laws §§ 6A-2-103(a)(1) and "lessees" under § 6A-2.1-103(1)(n).

3316. The Automaker Defendants issued an express written warranty for each defective Class Vehicle they sold, including that:

a.     The Class Vehicles would be free of defects in materials and workmanship at the time of sale; and

b.     The Class Vehicles were safe and reliable, and their airbags would function properly in the event of a crash.

3317. The warranties listed above formed the basis of the bargain with regard to Plaintiffs and Class Members' purchase and lease of the Class Vehicles.

3318. The Automaker Defendants knowingly breached their warranty for the Class Vehicles because:

a.     The airbag inflators have latent defects which have a dangerous propensity to cause the inflators to rupture and eject metal shrapnel,

subjecting Plaintiffs and Class Members to the risk of loss and injury; and

b.      The Automaker Defendants denied, concealed, and misrepresented the Inflator Defect, in the process refusing to pay for or provide in a reasonably timely fashion the needed repairs and replacements for Plaintiffs and Class Members.

3319. The Automaker Defendants knew or should have known that the warranties were false and/or misleading. Specifically, the Automaker Defendants were aware of the Inflator Defect in the Class Vehicles, which made the vehicles inherently defective and dangerous at the time that they were sold and leased to Plaintiffs and Class Members.

3320. Plaintiffs and Class Members were exposed to the Automaker Defendants' misrepresentations, and they had no way of discerning that the Automaker Defendants' representations were false and misleading or otherwise learning the material facts that the Automaker Defendants had concealed or failed to disclose. Accordingly, Plaintiffs and Class Members reasonably relied on the Automaker Defendants' express warranties when purchasing or leasing their Class Vehicles.

3321. Plaintiffs and Class Members timely provided the Automaker

Defendants notice of the issues raised in this count and this Complaint and an opportunity to cure, as alleged in the paragraphs addressing Defendants' notice above.

3322. Alternatively, Plaintiffs and Class Members were excused from providing the Automaker Defendants with notice and an opportunity to cure the breach, because it would have been futile. As alleged above, the Automaker Defendants knew about the Defective Inflators for years; however, to date, the Automaker Defendants have not instituted a recall or any other repair program with respect to all of the Class Vehicles, or even acknowledged that the Inflator Defect exists in all of the Class Vehicles. Therefore, they have refused to recall or repair defective vehicles. Moreover, to the extent the Automaker Defendants have issued recalls, those recalls are inadequate because, *inter alia*: (a) they are belated because the Automaker Defendants knew about the Defective Inflators for years and did nothing to recall or remedy the serious safety defect; (b) with tens of millions of vehicles impacted in existing and potential future recalls, as a result of the Automaker Defendants' concealment of the Inflator Defect, the recalls cannot be implemented effectively due to supply constraints and resulting delays; (c) the recalls are incomplete, and apply to only a subset of the Class Vehicles.

3323. As a direct and proximate result of the Automaker Defendants' breach

of their express warranties, the Class Vehicles were and are defective and the Inflator Defect was not remedied. Therefore, Plaintiff and Class Members have been damaged, in an amount to be proven at trial, through their overpayment at the time of purchase or lease for the Class Vehicles with an undisclosed safety defect that would not be remedied.

> **b.      Rhode Island Count 2: Breach of Implied Warranty of Merchantability (R.I. Gen. Laws §§ 6A-2-314 and 6A-2.1-212) Against the Automaker Defendants.**

3324. Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

3325. The Rhode Island Plaintiffs bring this count under Rhode Island law, individually and on behalf of the other members of the Rhode Island Subclasses against the Automaker Defendants for their respective Class Vehicles. For the remaining Automaker Defendants, Plaintiffs who purchased or leased their Class Vehicles in states with materially similar laws may represent subclasses under this count against those Automaker Defendants.

3326. For purposes of this count, members of the Rhode Island Subclasses shall be referred to as "Class Members."

3327. The Class Vehicles are "goods" under R.I. Gen. Laws §§ 6A-2-105(1) and 6A-2.1-103(1)(h).

3328. The Automaker Defendants are "merchants" of the Class Vehicles under R.I. Gen. Laws §§ 6A-2-104(1) and 6A-2.1-103(1)(t), "sellers" under § 6A-2-103(a)(4), and "lessors" under § 6A-2.1-103(1)(p).

3329. Plaintiffs and Class Members who purchased and leased the Class Vehicles in Rhode Island are "buyers" under R.I. Gen. Laws §§ 6A-2-103(a)(1) and "lessees" under § 6A-2.1-103(1)(n).

3330. Rhode Island law conferred an implied warranty that the Class Vehicles were in merchantable condition and fit for the ordinary purpose for which they were to be used pursuant to R.I. Gen. Laws §§ 6A-2-314 and 6A-2.1-212.

3331. The Class Vehicles are not merchantable, and as such the Automaker Defendants breached their implied warranties, because at the time of sale and all times thereafter:

a.  The Class Vehicles would not pass without objection in the automotive trade given the Inflator Defect;

b.  The Inflator Defect renders the Class Vehicles unsafe to drive and unfit for ordinary purposes;

c.  The Class Vehicles and the airbags therein were inadequately labeled as safe and reliable, and the labeling failed to disclose the Inflator Defect; and

926

    d.      The Class Vehicles do not conform to their labeling, which represents that the vehicles are safe and suitable for their intended use.

3332. Plaintiffs and Class Members timely provided the Automaker Defendants notice of the issues raised in this count and this Complaint and an opportunity to cure, as alleged in the paragraphs addressing Defendants' notice above.

3333. Alternatively, Plaintiffs and Class Members were excused from providing the Automaker Defendants with notice and an opportunity to cure the breach because it would have been futile. As alleged above, the Automaker Defendants have long known that the Class Vehicles contained the Defective Inflators, and that the Defective Inflators have caused airbags to malfunction in crashes involving the Class Vehicles; however, to date, the Automaker Defendants have not instituted a recall or any other repair program with respect to all of the Class Vehicles, or even acknowledged that the Inflator Defect exists in all of those Class Vehicles. Moreover, to the extent the Automaker Defendants have issued recalls, those recalls are inadequate because, inter alia: (a) they are belated because the Automaker Defendants knew about the Defective Inflators for years and did nothing to recall or remedy the serious safety defect; (b) with tens of millions of vehicles impacted in existing and potential future recalls, as a result of the Automaker

927

Defendants' concealment of the Inflator Defect, the recalls cannot be implemented effectively due to supply constraints and resulting delays; (c) the recalls are incomplete, and apply to only a subset of the Class Vehicles.

3334. Plaintiffs, individually and on behalf of Class Members, seek all available monetary damages (including actual, compensatory, and punitive damages), injunctive and equitable relief, and attorneys' fees and costs.

### c.   Rhode Island Count 3: Violation of the Rhode Island Deceptive Trade Practices Act (R.I. Gen. Laws § 6-13.1, *et seq.*) Against All Defendants.[44]

3335. Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

3336. The Rhode Island Plaintiffs bring this count under Rhode Island law, individually and on behalf of the other members of the Rhode Island Subclasses against the Automaker Defendants and Airbag Module Defendants for their respective Class Vehicles, and ARC. For the remaining Defendants, Plaintiffs who purchased or leased their Class Vehicles in states with materially similar laws may represent subclasses under this count against all other Defendants and ARC.

---

[44] Plaintiffs bring this count against ARC and the Airbag Module Defendants based on their omissions and concealment of material facts only.

928

3337. For purposes of this count, members of the Rhode Island Subclasses shall be referred to as "Class Members."

3338. For purposes of this count, ARC, the Automaker Defendants, and the Airbag Module Defendants shall be referred to as "Defendants."

3339. Defendants, Plaintiffs, and Class Members are "persons" under R.I. Gen. Laws § 6-13.1-1(3).

3340. Defendants are engaged in "trade" and "commerce" under R.I. Gen. Laws § 6-13.1-1(5).

3341. The Rhode Island Deceptive Trade Practices Act ("Rhode Island DTPA") prohibits "unfair or deceptive acts or practices in the conduct of any trade or commerce." R.I. Gen. Laws § 6-13.1-2.

3342. In the course of their business, Defendants, through their agents, employees, and/or subsidiaries, violated the Rhode Island DTPA by knowingly and intentionally misrepresenting, omitting, concealing, and/or failing to disclose material facts regarding the reliability, safety, and performance of the Class Vehicles and the Defective Inflators, as detailed above.

3343. Defendants had an ongoing duty to Plaintiffs and Class Members to refrain from unfair or deceptive practices under the Rhode Island DTPA in the course of their business. Specifically, Defendants owed Plaintiffs and Class Members a duty

929

to disclose all the material facts concerning the Defective Inflators in the Class Vehicles because:

a. Given ARC's design, development, testing and manufacture of the Defective Inflators and its experience and knowledge as experts and long-time veterans of the automotive industry, it, along with the Automaker Defendants and the Airbag Module Defendants, possessed exclusive access to and was in a superior position to know the true facts about the Defective Inflators;

b. Given the Airbag Module Defendants' role in the design, manufacture, and testing of the airbag modules with the Defective Inflators installed in them, and their experience and knowledge as experts and long-time veterans of the automotive industry, they, along with ARC and the Automaker Defendants, possessed exclusive access to and were in a superior position to know the true facts about the Defective Inflators;

c. Given the Automaker Defendants' role in the design, manufacture, testing, and sale of Class Vehicles and Defective Inflators, and their experience and knowledge as experts and long-time veterans of the automotive industry, they, along with ARC and the Airbag Module Defendants, possessed exclusive access to and were in a superior

930

position to know the true facts about the Defective Inflators;

d.   Given the Inflator Defect's hidden and technical nature, Plaintiffs and Class Members lack the sophisticated expertise in vehicle components and technology that would be necessary to discover the Inflator Defect on their own;

e.   Defendants knew that the Inflator Defect gave rise to serious safety concerns for the consumers who purchased and leased the Class Vehicles;

f.   The Inflator Defect poses a severe risk of harm in that, among other things, the metal shrapnel can puncture and stab the occupants, causing severe and potentially fatal injuries;

g.   Defendants knew about and investigated the Inflator Defect, but then did not notify consumers about it or disclose the Inflator Defect to NHTSA, and the Automaker Defendants did not launch a comprehensive recall for all Class Vehicles, all of which individually and together deprived Plaintiffs of an opportunity that otherwise could have led them to discover the truth about the Inflator Defect in their Class Vehicles; and

h.   The Automaker Defendants made, helped to make, or conspired to

931

make incomplete representations about the safety and reliability of the Class Vehicles and their airbags, while purposefully withholding material facts about a known safety defect. Because they volunteered to provide information about the Class Vehicles that they marketed and offered for sale and lease to consumers, the Automaker Defendants had the duty to disclose the whole truth.

3344. By misrepresenting the Class Vehicles as safe and reliable and the airbags installed in them as properly functioning and free from defects, and/or by failing to disclose and actively concealing the dangers and risk posed by the Inflator Defect to both consumers and NHTSA, Defendants engaged in one or more of the following unfair or deceptive business practices prohibited by R.I. Gen. Laws § 13.1-1(6):

a.   Causing likelihood of confusion or of misunderstanding as to the approval or certification of the Class Vehicles and/or Defective Inflators;

b.   Representing that the Class Vehicles and/or the Defective Inflators had a characteristic that they did not actually have—*i.e.*, that the vehicles were safe and suitable for use on the roadway, when, in fact, they were not because their airbag inflators were defectively designed such that

932

they had an unreasonably dangerous propensity to rupture, causing severe and fatal injuries;

c.    Representing that the Class Vehicles and the Defective Inflators installed in them were of a particular quality, grade, or standard when, in fact, they were not of that quality, grade, or standard;

d.    Advertising the Class Vehicles with the intent not to sell or lease them as advertised; and/or

e.    Engaging in other conduct which created a likelihood of confusion or of misunderstanding.

3345. Defendants' unfair or deceptive acts or practices, including their misrepresentations, concealments, omissions, and/or suppressions of material facts, were designed to mislead and had a tendency or capacity to mislead and create a false impression in consumers that the Class Vehicles had properly-functioning and reliable airbags. Indeed, those misrepresentations, concealments, omissions, and suppressions of material facts did in fact deceive reasonable consumers, including Plaintiffs and Class Members, about the true safety and reliability of the Class Vehicles and/or the Defective Inflators installed in them, the quality of the Class Vehicles, and the true value of the Class Vehicles.

3346. Defendants intended for Plaintiffs and Class Members to rely on their

misrepresentations, omissions, and concealment—which they did by purchasing and leasing the Class Vehicles at the prices they paid believing that their vehicles would not have an Inflator Defect that would affect the quality, reliability, and safety of the Class Vehicles and their airbags.

3347. Defendants' misrepresentations, concealments, omissions, and suppressions of material facts regarding the Inflator Defect and true characteristics of the Class Vehicles were material to the decisions of Plaintiffs and Class Members to purchase and lease those vehicles, as Defendants intended. Plaintiffs and Class Members were exposed to those misrepresentations, concealments, omissions, and suppressions of material facts, and relied on Defendants' misrepresentations that the Class Vehicles and their airbags were safe and reliable in deciding to purchase and lease the Class Vehicles.

3348. Plaintiffs' and Class Members' reliance was reasonable, as they had no way of discerning that Defendants' representations were false and misleading, or otherwise learning the facts that Defendants had concealed or failed to disclose. Plaintiffs and Class Members did not, and could not, unravel Defendants' deception on their own.

3349. Had they known the truth about the Inflator Defect, Plaintiffs and Class Members would not have purchased or leased the Class Vehicles, or would have

paid significantly less for them.

3350. As a direct and proximate result of Defendants' deceptive practices, Plaintiffs and Class Members have sustained economic injury and loss—either by purchasing a vehicle they otherwise would not have purchased or paying more than they otherwise would have as a result of Defendants' actions and omissions alleged above—that first occurred at the time each Class Vehicle was purchased or leased.

3351. Defendants' violations present a continuing risk to Plaintiffs and Class Members, as well as to the general public, because the Class Vehicles remain unsafe due to the Defective Inflators therein. Defendants' unlawful acts and practices complained of herein affect the public interest.

3352. Pursuant to R.I. Gen. Laws § 6-13.1-5.2(a), Plaintiffs and Class Members seek an order enjoining the above unfair or deceptive acts or practices and awarding actual damages, punitive damages, and any other just and proper relief available under the Rhode Island DTPA against all Defendants.

> ### d.   Rhode Island Count 4: Fraud by Omission and Concealment Against All Defendants.

3353. Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

3354. The Rhode Island Plaintiffs bring this count under Rhode Island law,

individually and on behalf of the other members of the Rhode Island Subclasses against the Automaker Defendants and Airbag Module Defendants for their respective Class Vehicles, and ARC. For the remaining Defendants, Plaintiffs who purchased or leased their Class Vehicles in states with materially similar laws may represent subclasses under this count against all other Defendants and ARC.

3355. For purposes of this count, members of the Rhode Island Subclasses shall be referred to as "Class Members."

3356. For purposes of this count, ARC, the Automaker Defendants, and the Airbag Module Defendants shall be referred to as "Defendants."

3357. Defendants are liable for both fraudulent concealment and non-disclosure. *See, e.g.*, Restatement (Second) of Torts §§ 550-51 (1977).

3358. Defendants owed Plaintiffs and Class Members a duty to disclose all the material facts concerning the Defective Inflators in the Class Vehicles because:

    a.    Given the Automaker Defendants' role in the design, manufacture, testing, and sale of Class Vehicles and Defective Inflators, and their experience and knowledge as experts and long-time veterans of the automotive industry, they, along with ARC and the Airbag Module Defendants, possessed exclusive access to and were in a superior position to know the true facts about the Defective Inflators;

936

b.    Given ARC's design, development, testing and manufacture of the Defective Inflators and its experience and knowledge as experts and long-time veterans of the automotive industry, it, along with the Automaker Defendants and the Airbag Module Defendants, possessed exclusive access to and was in a superior position to know the true facts about the Defective Inflators;

c.    Given the Airbag Module Defendants' role in the design, manufacture, and testing of the airbag modules with the Defective Inflators installed in them, and their experience and knowledge as experts and long-time veterans of the automotive industry, they, along with ARC and the Automaker Defendants, possessed exclusive access to and were in a superior position to know the true facts about the Defective Inflators;

d.    Given the Inflator Defect's hidden and technical nature, Plaintiffs and Class Members lack the sophisticated expertise in vehicle components and technology that would be necessary to discover the Inflator Defect on their own;

e.    Defendants knew that the Inflator Defect gave rise to serious safety concerns for the consumers who purchased and leased the Class Vehicles;

937

f.   The Inflator Defect poses a severe risk of harm in that, among other things, the metal shrapnel can puncture and stab the occupants, causing severe and potentially fatal injuries;

g.   Defendants knew about and investigated the Inflator Defect, but then did not notify consumers about it, disclose the Inflator Defect to NHTSA, or further launch a comprehensive recall for all Class Vehicles, which individually and together deprived Plaintiffs of an opportunity that otherwise could have led them to discover the truth about the Inflator Defect in their Class Vehicles; and

h.   The Automaker Defendants made, helped to make, or conspired to make incomplete representations about the safety and reliability of the Class Vehicles and their airbags, while purposefully withholding material facts about a known safety defect. Because they volunteered to provide information about the Class Vehicles that they marketed and offered for sale and lease to consumers, the Automaker Defendants had the duty to disclose the whole truth.

3359. In breach of their duties, Defendants failed to disclose the Inflator Defect and that the Class Vehicles' airbags were not safe and reliable to Plaintiffs and Class Members in connection with the sale of the Class Vehicles.

3360. The Inflator Defect within the Class Vehicles is material to the sale of the Class Vehicles because a reasonable person would find it important in purchasing, leasing, or retaining a new or used motor vehicle and because it directly impacts the value of the Class Vehicles purchased or leased by Plaintiffs and Class Members.

3361. Defendants intended for Plaintiffs and Class Members to rely on their omissions and concealment—which they did by purchasing and leasing the Class Vehicles at the prices they paid believing that their vehicles would not have an Inflator Defect that would affect the quality, reliability, and safety of the Class Vehicles and their airbags.

3362. Plaintiffs' and Class Members' reliance was reasonable because a reasonable consumer would not have expected that the Class Vehicles contained a safety defect that poses such a serious risk. They had no way of learning the facts that Defendants had concealed or failed to disclose. Plaintiffs and Class Members did not, and could not, unravel Defendants' deception on their own.

3363. Defendants actively concealed and suppressed these material facts, in whole or in part, to maintain a market for the Class Vehicles and the Defective Inflators installed in them, to protect profits, and to avoid costly recalls that would expose them to liability for those expenses and harm the commercial reputations of

Defendants and their products. They did so at the expense of Plaintiffs and Class Members.

3364. If Defendants had fully and adequately disclosed the Inflator Defect to consumers, Plaintiffs and Class Members would have seen such a disclosure.

3365. Through their omissions and concealment with respect to the Inflator Defect within the Class Vehicles, Defendants intended to induce, and did induce, Plaintiffs and Class Members to either purchase a Class Vehicle that they otherwise would not have purchased, or pay more for a Class Vehicle than they otherwise would have paid.

3366. Had Plaintiffs and Class Members known of the Inflator Defect within the Class Vehicles, they would not have purchased the Class Vehicles or would have paid less for them.

3367. As a direct and proximate result of Defendants' omissions and concealment, Plaintiffs and other Class Members either overpaid for the Class Vehicles or would not have purchased the Class Vehicles at all if the Inflator Defect had been disclosed to them. Accordingly, Defendants are liable to Plaintiffs and Class Members for their damages in an amount to be proven at trial.

3368. Defendants acted maliciously, oppressively, deliberately, with intent to defraud; in reckless disregard of the Plaintiffs' and Class Members' rights and well-

being; and to enrich themselves. Defendants' misconduct warrants an assessment of punitive damages, as permitted by law, in an amount sufficient to deter such conduct in the future, which amount shall be determined according to proof at trial.

>    **e.    Rhode Island Count 5: Unjust Enrichment Against the Automaker Defendants.**

3369. Plaintiffs reallege and incorporate by reference all allegations in Volume 1 of the Consolidated Class Action Complaint as though fully set forth herein.

3370. The Rhode Island Plaintiffs bring this count under Rhode Island law, individually and on behalf of the other members of the Rhode Island Subclasses against the Automaker Defendants for their respective Class Vehicles. For the remaining Automaker Defendants, Plaintiffs who purchased or leased their Class Vehicles in states with materially similar laws may represent subclasses under this count against those Automaker Defendants.

3371. For purposes of this count, members of the Rhode Island Subclasses shall be referred to as "Class Members."

3372. When they purchased and leased the Class Vehicles, Plaintiffs and Class Members conferred tangible and material economic benefits upon the Automaker Defendants, who readily accepted and retained these benefits.

3373. Plaintiffs and Class Members would not have purchased or leased their Class Vehicles, or would have paid less for them, had they known of the Inflator Defect at the time of purchase or lease. Therefore, the Automaker Defendants profited from the sale and lease of the Class Vehicles to the detriment and expense of Plaintiffs and Class Members.

3374. The Automaker Defendants appreciated these economic benefits. These benefits were the expected result of the Automaker Defendants acting in their pecuniary interest at the expense of their customers. They knew of these benefits because they were aware of the Inflator Defect, yet they failed to disclose this knowledge and misled the Plaintiffs and Class Members regarding the nature and quality of the Class Vehicles while profiting from this deception.

3375. It would be unjust, inequitable, and unconscionable for the Automaker Defendants to retain these benefits, including because they were procured as a result of their wrongful conduct alleged above.

3376. Plaintiffs and Class Members are entitled to restitution of the benefits the Automaker Defendants unjustly retained and/or any amounts necessary to return Plaintiffs and Class Members to the position they occupied prior to dealing with those Defendants, with such amounts to be determined at trial.

3377. Plaintiffs plead this claim separately as well as in the alternative to their

claims for damages under Fed. R. Civ. P. 8(a)(3), because if the Court dismisses Plaintiffs' claims for damages enters judgment on them in favor of the Automaker Defendants, Plaintiffs will have no adequate legal remedy.

**41.   South Carolina**

    **a.   South Carolina Count 1: Breach of Express Warranty (S.C. Code Ann. §§ 36-2-313 and 36-2A-210) Against the Automaker Defendants.**

3378. Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

3379. The South Carolina Plaintiffs bring this count under South Carolina law, individually and on behalf of the other members of the South Carolina Subclasses against the Automaker Defendants for their respective Class Vehicles. For the remaining Automaker Defendants, Plaintiffs who purchased or leased their Class Vehicles in states with materially similar laws may represent subclasses under this count against those Automaker Defendants.

3380. For purposes of this count, members of the South Carolina Subclasses shall be referred to as "Class Members."

3381. The Class Vehicles are "goods" under S.C. Code Ann. §§ 36-2-105(1) and 36-2A-103(1)(h).

3382. The Automaker Defendants are "merchants" of the Class Vehicles

under S.C. Code Ann. §§ 36-2-104(1) and 36-2A-103(3), "sellers" under § 36-2-103(1)(d), and "lessors" under § 36-2A-103(1)(p).

3383. Plaintiffs and Class Members who purchased and leased the Class Vehicles in South Carolina are "buyers" under S.C. Code Ann. §§ 36-2-103(1)(a) and "lessees" under § 36-2A-103(1)(n).

3384. The Automaker Defendants issued an express written warranty for each defective Class Vehicle they sold, including that:

a.    The Class Vehicles would be free of defects in materials and workmanship at the time of sale; and

b.    The Class Vehicles were safe and reliable, and their airbags would function properly in the event of a crash.

3385. The warranties listed above formed the basis of the bargain with regard to Plaintiffs and Class Members' purchase and lease of the Class Vehicles.

3386. The Automaker Defendants knowingly breached their warranty for the Class Vehicles because:

a.    The airbag inflators have latent defects which have a dangerous propensity to cause the inflators to rupture and eject metal shrapnel, subjecting Plaintiffs and Class Members to the risk of loss and injury; and

944

b. The Automaker Defendants denied, concealed, and misrepresented the Inflator Defect, in the process refusing to pay for or provide in a reasonably timely fashion the needed repairs and replacements for Plaintiffs and Class Members.

3387. The Automaker Defendants knew or should have known that the warranties were false and/or misleading. Specifically, the Automaker Defendants were aware of the Inflator Defect in the Class Vehicles, which made the vehicles inherently defective and dangerous at the time that they were sold and leased to Plaintiffs and Class Members.

3388. Plaintiffs and Class Members were exposed to the Automaker Defendants' misrepresentations, and they had no way of discerning that the Automaker Defendants' representations were false and misleading or otherwise learning the material facts that the Automaker Defendants had concealed or failed to disclose. Accordingly, Plaintiffs and Class Members reasonably relied on the Automaker Defendants' express warranties when purchasing or leasing their Class Vehicles.

3389. Plaintiffs and Class Members timely provided the Automaker Defendants notice of the issues raised in this count and this Complaint and an opportunity to cure, as alleged in the paragraphs addressing Defendants' notice

945

above.

3390. Alternatively, Plaintiffs and Class Members were excused from providing the Automaker Defendants with notice and an opportunity to cure the breach, because it would have been futile. As alleged above, the Automaker Defendants knew about the Defective Inflators for years; however, to date, the Automaker Defendants have not instituted a recall or any other repair program with respect to all of the Class Vehicles, or even acknowledged that the Inflator Defect exists in all of the Class Vehicles. Therefore, they have refused to recall or repair defective vehicles. Moreover, to the extent the Automaker Defendants have issued recalls, those recalls are inadequate because, *inter alia*: (a) they are belated because the Automaker Defendants knew about the Defective Inflators for years and did nothing to recall or remedy the serious safety defect; (b) with tens of millions of vehicles impacted in existing and potential future recalls, as a result of the Automaker Defendants' concealment of the Inflator Defect, the recalls cannot be implemented effectively due to supply constraints and resulting delays; (c) the recalls are incomplete, and apply to only a subset of the Class Vehicles.

3391. As a direct and proximate result of the Automaker Defendants' breach of their express warranties, the Class Vehicles were and are defective and the Inflator Defect was not remedied. Therefore, Plaintiff and Class Members have been

damaged, in an amount to be proven at trial, through their overpayment at the time of purchase or lease for the Class Vehicles with an undisclosed safety defect that would not be remedied.

> **b.      South Carolina Count 2: Breach of Implied Warranty of Merchantability (S.C. Code Ann. §§ 36-2-314 and 36-2A-212) Against the Automaker Defendants.**

3392. Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

3393. The South Carolina Plaintiffs bring this count under South Carolina law, individually and on behalf of the other members of the South Carolina Subclasses against the Automaker Defendants for their respective Class Vehicles. For the remaining Automaker Defendants, Plaintiffs who purchased or leased their Class Vehicles in states with materially similar laws may represent subclasses under this count against those Automaker Defendants.

3394. For purposes of this count, members of the South Carolina Subclasses shall be referred to as "Class Members."

3395. The Class Vehicles are "goods" under S.C. Code Ann. §§ 36-2-105(1) and 36-2A-103(1)(h).

3396. The Automaker Defendants are "merchants" of the Class Vehicles under S.C. Code Ann. §§ 36-2-104(1) and 36-2A-103(1)(t), "sellers" under § 36-2-

103(a)(4), and "lessors" under § 36-2A-103(1)(p).

3397. Plaintiffs and Class Members who purchased and leased the Class Vehicles in South Carolina are "buyers" under S.C. Code Ann. §§ 36-2-103(a)(1) and "lessees" under § 36-2A-103(1)(n).

3398. South Carolina law conferred an implied warranty that the Class Vehicles were in merchantable condition and fit for the ordinary purpose for which they were to be used pursuant to S.C. Code Ann. §§ 36-2-314 and 36-2A-212.

3399. The Class Vehicles are not merchantable, and as such the Automaker Defendants breached their implied warranties, because at the time of sale and all times thereafter:

a. The Class Vehicles would not pass without objection in the automotive trade given the Inflator Defect;

b. The Inflator Defect renders the Class Vehicles unsafe to drive and unfit for ordinary purposes;

c. The Class Vehicles and the airbags therein were inadequately labeled as safe and reliable, and the labeling failed to disclose the Inflator Defect; and

d. The Class Vehicles do not conform to their labeling, which represents

that the vehicles are safe and suitable for their intended use.

3400. Plaintiffs and Class Members timely provided the Automaker Defendants notice of the issues raised in this count and this Complaint and an opportunity to cure, as alleged in the paragraphs addressing Defendants' notice above.

3401. Alternatively, Plaintiffs and Class Members were excused from providing the Automaker Defendants with notice and an opportunity to cure the breach because it would have been futile. As alleged above, the Automaker Defendants have long known that the Class Vehicles contained the Defective Inflators, and that the Defective Inflators have caused airbags to malfunction in crashes involving the Class Vehicles; however, to date, the Automaker Defendants have not instituted a recall or any other repair program with respect to all of the Class Vehicles, or even acknowledged that the Inflator Defect exists in all of those Class Vehicles. Moreover, to the extent the Automaker Defendants have issued recalls, those recalls are inadequate because, inter alia: (a) they are belated because the Automaker Defendants knew about the Defective Inflators for years and did nothing to recall or remedy the serious safety defect; (b) with tens of millions of vehicles impacted in existing and potential future recalls, as a result of the Automaker Defendants' concealment of the Inflator Defect, the recalls cannot be implemented

effectively due to supply constraints and resulting delays; (c) the recalls are incomplete, and apply to only a subset of the Class Vehicles.

3402. Plaintiffs, individually and on behalf of Class Members, seek all available monetary damages (including actual, compensatory, and punitive damages), injunctive and equitable relief, and attorneys' fees and costs.

      **c.**    **South Carolina Count 3: Violation of the South Carolina Unfair Trade Practices Act (S.C. Code Ann. § 39-5-10, *et seq.*) Against All Defendants.[45]**

3403. Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

3404. The South Carolina Plaintiffs bring this count under South Carolina law, individually and on behalf of the other members of the South Carolina Subclasses against the Automaker Defendants and Airbag Module Defendants for their respective Class Vehicles, and ARC. For the remaining Defendants, Plaintiffs who purchased or leased their Class Vehicles in states with materially similar laws may represent subclasses under this count against all other Defendants and ARC.

3405. For purposes of this count, members of the South Carolina Subclasses shall be referred to as "Class Members."

---

[45] Plaintiffs bring this count against ARC and the Airbag Module Defendants based on their omissions and concealment of material facts only.

3406. For purposes of this count, ARC, the Automaker Defendants, and the Airbag Module Defendants shall be referred to as "Defendants."

3407. Defendants are engaged in "trade" and "commerce" under S.C. Code Ann. § 39-5-10(b).

3408. The South Carolina Unfair Trade Practices Act ("South Carolina UTPA") prohibits "unfair or deceptive acts or practices in the conduct of any trade or commerce." S.C. Code Ann. § 6-13.1-2.

3409. In the course of their business, Defendants, through their agents, employees, and/or subsidiaries, violated the South Carolina UTPA by knowingly and intentionally misrepresenting, omitting, concealing, and/or failing to disclose material facts regarding the reliability, safety, and performance of the Class Vehicles and the Defective Inflators, as detailed above.

3410. Defendants had an ongoing duty to Plaintiffs and Class Members to refrain from unfair or deceptive practices under the South Carolina UTPA in the course of their business. Specifically, Defendants owed Plaintiffs and Class Members a duty to disclose all the material facts concerning the Defective Inflators in the Class Vehicles because:

a. Given ARC's design, development, testing and manufacture of the Defective Inflators and its experience and knowledge as experts and

951

long-time veterans of the automotive industry, it, along with the Automaker Defendants and the Airbag Module Defendants, possessed exclusive access to and was in a superior position to know the true facts about the Defective Inflators;

b.   Given the Airbag Module Defendants' role in the design, manufacture, and testing of the airbag modules with the Defective Inflators installed in them, and their experience and knowledge as experts and long-time veterans of the automotive industry, they, along with ARC and the Automaker Defendants, possessed exclusive access to and were in a superior position to know the true facts about the Defective Inflators;

c.   Given the Automaker Defendants' role in the design, manufacture, testing, and sale of Class Vehicles and Defective Inflators, and their experience and knowledge as experts and long-time veterans of the automotive industry, they, along with ARC and the Airbag Module Defendants, possessed exclusive access to and were in a superior position to know the true facts about the Defective Inflators;

d.   Given the Inflator Defect's hidden and technical nature, Plaintiffs and Class Members lack the sophisticated expertise in vehicle components and technology that would be necessary to discover the Inflator Defect

on their own;

e.  Defendants knew that the Inflator Defect gave rise to serious safety concerns for the consumers who purchased and leased the Class Vehicles;

f.  The Inflator Defect poses a severe risk of harm in that, among other things, the metal shrapnel can puncture and stab the occupants, causing severe and potentially fatal injuries;

g.  Defendants knew about and investigated the Inflator Defect, but then did not notify consumers about it or disclose the Inflator Defect to NHTSA, and the Automaker Defendants did not launch a comprehensive recall for all Class Vehicles, all of which individually and together deprived Plaintiffs of an opportunity that otherwise could have led them to discover the truth about the Inflator Defect in their Class Vehicles; and

h.  The Automaker Defendants made, helped to make, or conspired to make incomplete representations about the safety and reliability of the Class Vehicles and their airbags, while purposefully withholding material facts about a known safety defect. Because they volunteered to provide information about the Class Vehicles that they marketed and

offered for sale and lease to consumers, the Automaker Defendants had the duty to disclose the whole truth.

3411. By misrepresenting the Class Vehicles as safe and reliable and the airbags installed in them as properly functioning and free from defects, and/or by failing to disclose and actively concealing the dangers and risk posed by the Inflator Defect to both consumers and NHTSA, Defendants engaged in unfair or deceptive business practices prohibited by S.C. Code Ann. § 39-5-20(a).

3412. Defendants' unfair or deceptive acts or practices, including their misrepresentations, concealments, omissions, and/or suppressions of material facts, were designed to mislead and had a tendency or capacity to mislead and create a false impression in consumers that the Class Vehicles had properly-functioning and reliable airbags. Indeed, those misrepresentations, concealments, omissions, and suppressions of material facts did in fact deceive reasonable consumers, including Plaintiffs and Class Members, about the true safety and reliability of the Class Vehicles and/or the Defective Inflators installed in them, the quality of the Class Vehicles, and the true value of the Class Vehicles.

3413. Defendants intended for Plaintiffs and Class Members to rely on their misrepresentations, omissions, and concealment—which they did by purchasing and leasing the Class Vehicles at the prices they paid believing that their vehicles would

not have an Inflator Defect that would affect the quality, reliability, and safety of the Class Vehicles and their airbags.

3414. Defendants' misrepresentations, concealments, omissions, and suppressions of material facts regarding the Inflator Defect and true characteristics of the Class Vehicles were material to the decisions of Plaintiffs and Class Members to purchase and lease those vehicles, as Defendants intended. Plaintiffs and Class Members were exposed to those misrepresentations, concealments, omissions, and suppressions of material facts, and relied on Defendants' misrepresentations that the Class Vehicles and their airbags were safe and reliable in deciding to purchase and lease the Class Vehicles.

3415. Plaintiffs' and Class Members' reliance was reasonable, as they had no way of discerning that Defendants' representations were false and misleading, or otherwise learning the facts that Defendants had concealed or failed to disclose. Plaintiffs and Class Members did not, and could not, unravel Defendants' deception on their own.

3416. Had they known the truth about the Inflator Defect, Plaintiffs and Class Members would not have purchased or leased the Class Vehicles, or would have paid significantly less for them.

3417. As a direct and proximate result of Defendants' deceptive practices,

Plaintiffs and Class Members have sustained economic injury and loss—either by purchasing a vehicle they otherwise would not have purchased or paying more than they otherwise would have as a result of Defendants' actions and omissions alleged above—that first occurred at the time each Class Vehicle was purchased or leased.

3418. Defendants' violations present a continuing risk to Plaintiffs and Class Members, as well as to the general public, because the Class Vehicles remain unsafe due to the Defective Inflators therein. Defendants' unlawful acts and practices complained of herein affect the public interest.

3419. Pursuant to S.C. Code Ann. § 39-5-140(a), Plaintiffs and Class Members seek an order enjoining the above unfair or deceptive acts or practices and awarding actual damages, punitive damages, and any other just and proper relief available under the South Carolina UTPA against all Defendants.

> **d.     South Carolina Count 4: Violation of the South Carolina Regulation of Manufacturers, Distributors, and Dealers Act (S.C. Code Ann. § 56-15-10, *et seq.*) Against All Defendants.[46]**

3420. Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

---

[46] Plaintiffs bring this count against ARC and the Airbag Module Defendants based on their omissions and concealment of material facts only.

3421. The South Carolina Plaintiffs bring this count under South Carolina law, individually and on behalf of the other members of the South Carolina Subclasses against the Automaker Defendants and Airbag Module Defendants for their respective Class Vehicles, and ARC. For the remaining Defendants, Plaintiffs who purchased or leased their Class Vehicles in states with materially similar laws may represent subclasses under this count against all other Defendants and ARC.

3422. For purposes of this count, members of the South Carolina Subclasses shall be referred to as "Class Members."

3423. For purposes of this count, ARC, the Automaker Defendants, and the Airbag Module Defendants shall be referred to as "Defendants."

3424. Defendants are "manufacturers" under S.C. Code Ann. § 56-15-10(b), as they were engaged in the business of manufacturing or assembling new and unused motor vehicles. Defendants are also "distributors" and/or "wholesalers" under S.C. Code Ann. § 56-15-10(g), (p).

3425. The South Carolina Regulation of Manufacturers, Distributors, and Dealers Act ("Manufacturers Act") prohibits "unfair or deceptive acts or practices" as defined in S.C. Code Ann. § 56-15-40. S.C. Code Ann. § 56-15-30(a). Accordingly, the Manufacturers Act prohibits any manufacturer from engaging in bad faith and unconscionable actions that cause damage to the parties or the public;

it also prohibits manufacturers from using false or misleading advertising in connection with their business. S.C. Code Ann. § 56-15-40(1), (3)(d).

3426. As detailed above, the information concerning the Inflator Defect was known to Defendants at the time of advertising and selling the Class Vehicles, all of which was intended to induce consumers to purchase the Class Vehicles.

3427. By misrepresenting the Class Vehicles as safe and reliable and free from defects, and by failing to disclose and actively concealing the dangers and risk posed by the Inflator Defect, Defendants engaged in unfair or deceptive business practices by committing bad faith and unconscionable actions prohibited by the Manufacturers Act.

3428. Defendants intended for Plaintiffs and Class Members to rely on their misrepresentations, omissions, and concealment—which they did by purchasing and leasing the Class Vehicles at the prices they paid believing that their vehicles would not have an Inflator Defect that would affect the quality, reliability, and safety of the Class Vehicles and their airbags.

3429. Defendants' unfair or deceptive acts or practices were designed to mislead and had a tendency or capacity to mislead and create a false impression in consumers that the Class Vehicles had adequate anti-theft protection, and that the Class Vehicles were not affected by the Inflator Defect. Indeed, those

misrepresentations, concealments, omissions, and suppressions of material facts did in fact deceive reasonable consumers, including Plaintiffs and Class Members, about the true safety and reliability of Class Vehicles, the quality of the Class Vehicles, and the true value of the Class Vehicles.

3430. Defendants' misrepresentations, omissions, and concealment of material facts regarding the Inflator Defect and true characteristics of the Class Vehicles were material to the decisions of Plaintiffs and Class Members to purchase and lease those vehicles, as Defendants intended. Plaintiffs and Class Members were exposed to those misrepresentations, concealments, omissions, and suppressions of material facts, and relied on Defendants' misrepresentations that the Class Vehicles were safe and reliable in deciding to purchase and lease Class Vehicles.

3431. Plaintiffs' and Class Members' reliance was reasonable, as they had no way of discerning Defendants' representations were false and misleading, or otherwise learning that the Class Vehicles contained the Inflator Defect, as alleged above. Plaintiffs and Class Members did not, and could not, unravel Defendants' deception on their own.

3432. Had they known the truth about the Inflator Defect, Plaintiffs and Class Members would not have purchased or leased the Class Vehicles, or would have

paid significantly less for them.

3433. Plaintiffs and Class Members suffered ascertainable losses and actual damages as a direct and proximate result of Defendants' concealment, misrepresentations, and/or failure to disclose material information.

3434. Defendants' violations present a continuing risk to Plaintiffs and Class Members, as well as to the general public, because the Class Vehicles remain unsafe due to the Inflator Defect. Defendants' unlawful acts and practices complained of herein affect the public interest.

3435. Plaintiffs and the Class Members are entitled to double their actual damages, the cost of the suit, attorney's fees pursuant to S.C. Code Ann. § 56-15-110. Plaintiffs also seek injunctive relief under S.C. Code Ann. § 56-15-110. Plaintiffs also seek treble damages because the Defendants acted maliciously.

> **e.  South Carolina Count 5: Fraud by Omission and Concealment Against All Defendants.**

3436. Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

3437. The South Carolina Plaintiffs bring this count under South Carolina law, individually and on behalf of the other members of the South Carolina Subclasses against the Automaker Defendants and Airbag Module Defendants for

their respective Class Vehicles, and ARC. For the remaining Defendants, Plaintiffs who purchased or leased their Class Vehicles in states with materially similar laws may represent subclasses under this count against all other Defendants and ARC.

3438. For purposes of this count, members of the South Carolina Subclasses shall be referred to as "Class Members."

3439. For purposes of this count, ARC, the Automaker Defendants, and the Airbag Module Defendants shall be referred to as "Defendants."

3440. Defendants are liable for both fraudulent concealment and non-disclosure. *See, e.g.*, Restatement (Second) of Torts §§ 550-51 (1977).

3441. Defendants owed Plaintiffs and Class Members a duty to disclose all the material facts concerning the Defective Inflators in the Class Vehicles because:

a. Given the Automaker Defendants' role in the design, manufacture, testing, and sale of Class Vehicles and Defective Inflators, and their experience and knowledge as experts and long-time veterans of the automotive industry, they, along with ARC and the Airbag Module Defendants, possessed exclusive access to and were in a superior position to know the true facts about the Defective Inflators;

b. Given ARC's design, development, testing and manufacture of the Defective Inflators and its experience and knowledge as experts and

961

long-time veterans of the automotive industry, it, along with the Automaker Defendants and the Airbag Module Defendants, possessed exclusive access to and was in a superior position to know the true facts about the Defective Inflators;

c. Given the Airbag Module Defendants' role in the design, manufacture, and testing of the airbag modules with the Defective Inflators installed in them, and their experience and knowledge as experts and long-time veterans of the automotive industry, they, along with ARC and the Automaker Defendants, possessed exclusive access to and were in a superior position to know the true facts about the Defective Inflators;

d. Given the Inflator Defect's hidden and technical nature, Plaintiffs and Class Members lack the sophisticated expertise in vehicle components and technology that would be necessary to discover the Inflator Defect on their own;

e. Defendants knew that the Inflator Defect gave rise to serious safety concerns for the consumers who purchased and leased the Class Vehicles;

f. The Inflator Defect poses a severe risk of harm in that, among other things, the metal shrapnel can puncture and stab the occupants, causing

962

severe and potentially fatal injuries;

g.      Defendants knew about and investigated the Inflator Defect, but then did not notify consumers about it, disclose the Inflator Defect to NHTSA, or further launch a comprehensive recall for all Class Vehicles, which individually and together deprived Plaintiffs of an opportunity that otherwise could have led them to discover the truth about the Inflator Defect in their Class Vehicles; and

h.      The Automaker Defendants made, helped to make, or conspired to make incomplete representations about the safety and reliability of the Class Vehicles and their airbags, while purposefully withholding material facts about a known safety defect. Because they volunteered to provide information about the Class Vehicles that they marketed and offered for sale and lease to consumers, the Automaker Defendants had the duty to disclose the whole truth.

3442. In breach of their duties, Defendants failed to disclose the Inflator Defect and that the Class Vehicles' airbags were not safe and reliable to Plaintiffs and Class Members in connection with the sale of the Class Vehicles.

3443. The Inflator Defect within the Class Vehicles is material to the sale of the Class Vehicles because a reasonable person would find it important in

963

purchasing, leasing, or retaining a new or used motor vehicle and because it directly impacts the value of the Class Vehicles purchased or leased by Plaintiffs and Class Members.

3444. Defendants intended for Plaintiffs and Class Members to rely on their omissions and concealment—which they did by purchasing and leasing the Class Vehicles at the prices they paid believing that their vehicles would not have an Inflator Defect that would affect the quality, reliability, and safety of the Class Vehicles and their airbags.

3445. Plaintiffs' and Class Members' reliance was reasonable because a reasonable consumer would not have expected that the Class Vehicles contained a safety defect that poses such a serious risk. They had no way of learning the facts that Defendants had concealed or failed to disclose. Plaintiffs and Class Members did not, and could not, unravel Defendants' deception on their own.

3446. Defendants actively concealed and suppressed these material facts, in whole or in part, to maintain a market for the Class Vehicles and the Defective Inflators installed in them, to protect profits, and to avoid costly recalls that would expose them to liability for those expenses and harm the commercial reputations of Defendants and their products. They did so at the expense of Plaintiffs and Class Members.

3447. If Defendants had fully and adequately disclosed the Inflator Defect to consumers, Plaintiffs and Class Members would have seen such a disclosure.

3448. Through their omissions and concealment with respect to the Inflator Defect within the Class Vehicles, Defendants intended to induce, and did induce, Plaintiffs and Class Members to either purchase a Class Vehicle that they otherwise would not have purchased, or pay more for a Class Vehicle than they otherwise would have paid.

3449. Had Plaintiffs and Class Members known of the Inflator Defect within the Class Vehicles, they would not have purchased the Class Vehicles or would have paid less for them.

3450. As a direct and proximate result of Defendants' omissions and concealment, Plaintiffs and other Class Members either overpaid for the Class Vehicles or would not have purchased the Class Vehicles at all if the Inflator Defect had been disclosed to them. Accordingly, Defendants are liable to Plaintiffs and Class Members for their damages in an amount to be proven at trial.

3451. Defendants acted maliciously, oppressively, deliberately, with intent to defraud; in reckless disregard of the Plaintiffs' and Class Members' rights and well-being; and to enrich themselves. Defendants' misconduct warrants an assessment of punitive damages, as permitted by law, in an amount sufficient to deter such conduct

in the future, which amount shall be determined according to proof at trial.

   f. **South Carolina Count 6: Unjust Enrichment Against the Automaker Defendants.**

3452. Plaintiffs reallege and incorporate by reference all allegations in Volume 1 of the Consolidated Class Action Complaint as though fully set forth herein.

3453. The South Carolina Plaintiffs bring this count under South Carolina law, individually and on behalf of the other members of the South Carolina Subclasses against the Automaker Defendants for their respective Class Vehicles. For the remaining Automaker Defendants, Plaintiffs who purchased or leased their Class Vehicles in states with materially similar laws may represent subclasses under this count against those Automaker Defendants.

3454. For purposes of this count, members of the South Carolina Subclasses shall be referred to as "Class Members."

3455. When they purchased and leased the Class Vehicles, Plaintiffs and Class Members conferred tangible and material economic benefits upon the Automaker Defendants, who readily accepted and retained these benefits.

3456. Plaintiffs and Class Members would not have purchased or leased their Class Vehicles, or would have paid less for them, had they known of the Inflator

Defect at the time of purchase or lease. Therefore, the Automaker Defendants profited from the sale and lease of the Class Vehicles to the detriment and expense of Plaintiffs and Class Members.

3457.  The Automaker Defendants appreciated these economic benefits. These benefits were the expected result of the Automaker Defendants acting in their pecuniary interest at the expense of their customers. They knew of these benefits because they were aware of the Inflator Defect, yet they failed to disclose this knowledge and misled the Plaintiffs and Class Members regarding the nature and quality of the Class Vehicles while profiting from this deception.

3458.  It would be unjust, inequitable, and unconscionable for the Automaker Defendants to retain these benefits, including because they were procured as a result of their wrongful conduct alleged above.

3459.  Plaintiffs and Class Members are entitled to restitution of the benefits the Automaker Defendants unjustly retained and/or any amounts necessary to return Plaintiffs and Class Members to the position they occupied prior to dealing with those Defendants, with such amounts to be determined at trial.

3460.  Plaintiffs plead this claim separately as well as in the alternative to their claims for damages under Fed. R. Civ. P. 8(a)(3), because if the Court dismisses Plaintiffs' claims for damages enters judgment on them in favor of the Automaker

Defendants, Plaintiffs will have no adequate legal remedy.

42.   **South Dakota**

   a.   **South Dakota Count 1: Breach of Express Warranty (S.D. Codified Laws §§ 57A-2-313 and 57A-2A-210) Against the Automaker Defendants.**

3461. Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

3462. The South Dakota Plaintiff brings this count under South Dakota law, individually and on behalf of the other members of the South Dakota Subclasses against the Automaker Defendants for his or her respective Class Vehicle(s). For the remaining Automaker Defendants, Plaintiffs who purchased or leased their Class Vehicles in states with materially similar laws may represent subclasses under this count against those Automaker Defendants.

3463. For purposes of this count, members of the South Dakota Subclasses shall be referred to as "Class Members."

3464. The Class Vehicles are "goods" under S.D. Codified Laws §§ 57A-2-105(1) and 57A-2A-103(1)(h).

3465. The Automaker Defendants are "merchants" of the Class Vehicles under S.D. Codified Laws §§ 57A-2-104(1) and 57A-2A-103(3), "sellers" under § 57A-2-103(1)(d), and "lessors" under § 57A-2A-103(1)(p).

3466. Plaintiffs and Class Members who purchased and leased the Class Vehicles in South Dakota are "buyers" under S.D. Codified Laws §§ 57A-2-103(1)(a) and "lessees" under § 57A-2A-103(1)(n).

3467. The Automaker Defendants issued an express written warranty for each defective Class Vehicle they sold, including that:

a.    The Class Vehicles would be free of defects in materials and workmanship at the time of sale; and

b.    The Class Vehicles were safe and reliable, and their airbags would function properly in the event of a crash.

3468. The warranties listed above formed the basis of the bargain with regard to Plaintiffs and Class Members' purchase and lease of the Class Vehicles.

3469. The Automaker Defendants knowingly breached their warranty for the Class Vehicles because:

a.    The airbag inflators have latent defects which have a dangerous propensity to cause the inflators to rupture and eject metal shrapnel, subjecting Plaintiffs and Class Members to the risk of loss and injury; and

b.    The Automaker Defendants denied, concealed, and misrepresented the Inflator Defect, in the process refusing to pay for or provide in a

969

reasonably timely fashion the needed repairs and replacements for Plaintiffs and Class Members.

3470. The Automaker Defendants knew or should have known that the warranties were false and/or misleading. Specifically, the Automaker Defendants were aware of the Inflator Defect in the Class Vehicles, which made the vehicles inherently defective and dangerous at the time that they were sold and leased to Plaintiffs and Class Members.

3471. Plaintiffs and Class Members were exposed to the Automaker Defendants' misrepresentations, and they had no way of discerning that the Automaker Defendants' representations were false and misleading or otherwise learning the material facts that the Automaker Defendants had concealed or failed to disclose. Accordingly, Plaintiffs and Class Members reasonably relied on the Automaker Defendants' express warranties when purchasing or leasing their Class Vehicles.

3472. Plaintiffs and Class Members timely provided the Automaker Defendants notice of the issues raised in this count and this Complaint and an opportunity to cure, as alleged in the paragraphs addressing Defendants' notice above.

3473. Alternatively, Plaintiffs and Class Members were excused from

providing the Automaker Defendants with notice and an opportunity to cure the breach, because it would have been futile. As alleged above, the Automaker Defendants knew about the Defective Inflators for years; however, to date, the Automaker Defendants have not instituted a recall or any other repair program with respect to all of the Class Vehicles, or even acknowledged that the Inflator Defect exists in all of the Class Vehicles. Therefore, they have refused to recall or repair defective vehicles. Moreover, to the extent the Automaker Defendants have issued recalls, those recalls are inadequate because, *inter alia*: (a) they are belated because the Automaker Defendants knew about the Defective Inflators for years and did nothing to recall or remedy the serious safety defect; (b) with tens of millions of vehicles impacted in existing and potential future recalls, as a result of the Automaker Defendants' concealment of the Inflator Defect, the recalls cannot be implemented effectively due to supply constraints and resulting delays; (c) the recalls are incomplete, and apply to only a subset of the Class Vehicles.

3474. As a direct and proximate result of the Automaker Defendants' breach of their express warranties, the Class Vehicles were and are defective and the Inflator Defect was not remedied. Therefore, Plaintiff and Class Members have been damaged, in an amount to be proven at trial, through their overpayment at the time of purchase or lease for the Class Vehicles with an undisclosed safety defect that

would not be remedied.

      **b.**      **South Dakota Count 2: Breach of Implied Warranty of Merchantability (S.D. Codified Laws §§ 57A-2-314 and 57A-2A-212) Against the Automaker Defendants.**

3475. Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

3476. The South Dakota Plaintiff brings this count under South Dakota law, individually and on behalf of the other members of the South Dakota Subclasses against the Automaker Defendants for his or her respective Class Vehicle(s). For the remaining Automaker Defendants, Plaintiffs who purchased or leased their Class Vehicles in states with materially similar laws may represent subclasses under this count against those Automaker Defendants.

3477. For purposes of this count, members of the South Dakota Subclasses shall be referred to as "Class Members."

3478. The Class Vehicles are "goods" under S.D. Codified Laws §§ 57A-2-105(1) and 57A-2A-103(1)(h).

3479. The Automaker Defendants are "merchants" of the Class Vehicles under S.D. Codified Laws §§ 57A-2-104(1) and 57A-2A-103(3), "sellers" under § 57A-2-103(a)(4), and "lessors" under § 57A-2A-103(1)(p).

3480. Plaintiffs and Class Members who purchased and leased the Class

Vehicles in South Dakota are "buyers" under S.D. Codified Laws §§ 57A-2-103(a)(1) and "lessees" under § 57A-2A-103(1)(n).

3481. South Dakota law conferred an implied warranty that the Class Vehicles were in merchantable condition and fit for the ordinary purpose for which they were to be used pursuant to S.D. Codified Laws §§ 57A-2-314 and 57A-2A-212.

3482. The Class Vehicles are not merchantable, and as such the Automaker Defendants breached their implied warranties, because at the time of sale and all times thereafter:

    a.    The Class Vehicles would not pass without objection in the automotive trade given the Inflator Defect;

    b.    The Inflator Defect renders the Class Vehicles unsafe to drive and unfit for ordinary purposes;

    c.    The Class Vehicles and the airbags therein were inadequately labeled as safe and reliable, and the labeling failed to disclose the Inflator Defect; and

    d.    The Class Vehicles do not conform to their labeling, which represents that the vehicles are safe and suitable for their intended use.

3483. Plaintiffs and Class Members timely provided the Automaker

Defendants notice of the issues raised in this count and this Complaint and an opportunity to cure, as alleged in the paragraphs addressing Defendants' notice above.

3484. Alternatively, Plaintiffs and Class Members were excused from providing the Automaker Defendants with notice and an opportunity to cure the breach because it would have been futile. As alleged above, the Automaker Defendants have long known that the Class Vehicles contained the Defective Inflators, and that the Defective Inflators have caused airbags to malfunction in crashes involving the Class Vehicles; however, to date, the Automaker Defendants have not instituted a recall or any other repair program with respect to all of the Class Vehicles, or even acknowledged that the Inflator Defect exists in all of those Class Vehicles. Moreover, to the extent the Automaker Defendants have issued recalls, those recalls are inadequate because, inter alia: (a) they are belated because the Automaker Defendants knew about the Defective Inflators for years and did nothing to recall or remedy the serious safety defect; (b) with tens of millions of vehicles impacted in existing and potential future recalls, as a result of the Automaker Defendants' concealment of the Inflator Defect, the recalls cannot be implemented effectively due to supply constraints and resulting delays; (c) the recalls are incomplete, and apply to only a subset of the Class Vehicles.

3485. Plaintiffs, individually and on behalf of Class Members, seek all available monetary damages (including actual, compensatory, and punitive damages), injunctive and equitable relief, and attorneys' fees and costs.

      c.      **South Dakota Count 3: Violation of the South Dakota Deceptive Trade Practices and Consumer Protection Law (S.D. Codified Laws § 37-24-1, *et seq.*) Against All Defendants.**[47]

3486. Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

3487. The South Dakota Plaintiff brings this count under South Dakota law, individually and on behalf of the other members of the South Dakota Subclasses against the Automaker Defendants and Airbag Module Defendants for his or her respective Class Vehicle(s), and ARC. For the remaining Defendants, Plaintiffs who purchased or leased their Class Vehicles in states with materially similar laws may represent subclasses under this count against all other Defendants and ARC.

3488. For purposes of this count, members of the South Dakota Subclasses shall be referred to as "Class Members."

---

[47] Plaintiffs bring this count against ARC and the Airbag Module Defendants based on their omissions and concealment of material facts only.

975

3489. For purposes of this count, ARC, the Automaker Defendants, and the Airbag Module Defendants shall be referred to as "Defendants."

3490. Defendants, Plaintiffs, and Class Members are "persons" under S.D. Codified Laws § 37-24-1(8).

3491. The Class Vehicles and Defective Inflators are "merchandise" under S.D. Codified Laws § 37-24-1(7).

3492. Defendants are engaged in "trade" and "commerce" under S.D. Codified Laws § 37-24-1(13).

3493. The South Dakota Deceptive Trade Practices and Consumer Protection Law ("South Dakota DTPA") prohibits "deceptive acts or practices." S.D. Codified Laws § 37-24-6(1).

3494. In the course of their business, Defendants, through their agents, employees, and/or subsidiaries, violated the South Dakota DTPA by knowingly and intentionally misrepresenting, omitting, concealing, and/or failing to disclose material facts regarding the reliability, safety, and performance of the Class Vehicles and the Defective Inflators, as detailed above.

3495. Defendants had an ongoing duty to Plaintiffs and Class Members to refrain from unfair or deceptive practices under the South Dakota DTPA in the course of their business. Specifically, Defendants owed Plaintiffs and Class

Members a duty to disclose all the material facts concerning the Defective Inflators in the Class Vehicles because:

a. Given ARC's design, development, testing and manufacture of the Defective Inflators and its experience and knowledge as experts and long-time veterans of the automotive industry, it, along with the Automaker Defendants and the Airbag Module Defendants, possessed exclusive access to and was in a superior position to know the true facts about the Defective Inflators;

b. Given the Airbag Module Defendants' role in the design, manufacture, and testing of the airbag modules with the Defective Inflators installed in them, and their experience and knowledge as experts and long-time veterans of the automotive industry, they, along with ARC and the Automaker Defendants, possessed exclusive access to and were in a superior position to know the true facts about the Defective Inflators;

c. Given the Automaker Defendants' role in the design, manufacture, testing, and sale of Class Vehicles and Defective Inflators, and their experience and knowledge as experts and long-time veterans of the automotive industry, they, along with ARC and the Airbag Module Defendants, possessed exclusive access to and were in a superior

977

position to know the true facts about the Defective Inflators;

d.      Given the Inflator Defect's hidden and technical nature, Plaintiffs and Class Members lack the sophisticated expertise in vehicle components and technology that would be necessary to discover the Inflator Defect on their own;

e.      Defendants knew that the Inflator Defect gave rise to serious safety concerns for the consumers who purchased and leased the Class Vehicles;

f.      The Inflator Defect poses a severe risk of harm in that, among other things, the metal shrapnel can puncture and stab the occupants, causing severe and potentially fatal injuries;

g.      Defendants knew about and investigated the Inflator Defect, but then did not notify consumers about it or disclose the Inflator Defect to NHTSA, and the Automaker Defendants did not launch a comprehensive recall for all Class Vehicles, all of which individually and together deprived Plaintiffs of an opportunity that otherwise could have led them to discover the truth about the Inflator Defect in their Class Vehicles; and

h.      The Automaker Defendants made, helped to make, or conspired to

978

make incomplete representations about the safety and reliability of the

Class Vehicles and their airbags, while purposefully withholding

material facts about a known safety defect. Because they volunteered

to provide information about the Class Vehicles that they marketed and

offered for sale and lease to consumers, the Automaker Defendants had

the duty to disclose the whole truth.

3496. By misrepresenting the Class Vehicles as safe and reliable and the

airbags installed in them as properly functioning and free from defects, and/or by

failing to disclose and actively concealing the dangers and risk posed by the Inflator

Defect to both consumers and NHTSA, Defendants engaged in unfair or deceptive

business practices prohibited by S.D. Codified Laws § 37-24-6(1).

3497. Defendants' unfair or deceptive acts or practices, including their

misrepresentations, concealments, omissions, and/or suppressions of material facts,

were designed to mislead and had a tendency or capacity to mislead and create a

false impression in consumers that the Class Vehicles had properly-functioning and

reliable airbags. Indeed, those misrepresentations, concealments, omissions, and

suppressions of material facts did in fact deceive reasonable consumers, including

Plaintiffs and Class Members, about the true safety and reliability of the Class

Vehicles and/or the Defective Inflators installed in them, the quality of the Class

979

Vehicles, and the true value of the Class Vehicles.

3498. Defendants intended for Plaintiffs and Class Members to rely on their misrepresentations, omissions, and concealment—which they did by purchasing and leasing the Class Vehicles at the prices they paid believing that their vehicles would not have an Inflator Defect that would affect the quality, reliability, and safety of the Class Vehicles and their airbags.

3499. Defendants' misrepresentations, concealments, omissions, and suppressions of material facts regarding the Inflator Defect and true characteristics of the Class Vehicles were material to the decisions of Plaintiffs and Class Members to purchase and lease those vehicles, as Defendants intended. Plaintiffs and Class Members were exposed to those misrepresentations, concealments, omissions, and suppressions of material facts, and relied on Defendants' misrepresentations that the Class Vehicles and their airbags were safe and reliable in deciding to purchase and lease the Class Vehicles.

3500. Plaintiffs' and Class Members' reliance was reasonable, as they had no way of discerning that Defendants' representations were false and misleading, or otherwise learning the facts that Defendants had concealed or failed to disclose. Plaintiffs and Class Members did not, and could not, unravel Defendants' deception on their own.

3501. Had they known the truth about the Inflator Defect, Plaintiffs and Class Members would not have purchased or leased the Class Vehicles, or would have paid significantly less for them.

3502. As a direct and proximate result of Defendants' deceptive practices, Plaintiffs and Class Members have sustained economic injury and loss—either by purchasing a vehicle they otherwise would not have purchased or paying more than they otherwise would have as a result of Defendants' actions and omissions alleged above—that first occurred at the time each Class Vehicle was purchased or leased.

3503. Defendants' violations present a continuing risk to Plaintiffs and Class Members, as well as to the general public, because the Class Vehicles remain unsafe due to the Defective Inflators therein. Defendants' unlawful acts and practices complained of herein affect the public interest.

3504. Pursuant to S.D. Codified Laws § 37-24-31, Plaintiffs and Class Members seek an order enjoining the above unfair or deceptive acts or practices and awarding actual damages, punitive damages, and any other just and proper relief available under the South Dakota DTPA against all Defendants.

### d.   South Dakota Count 4: Fraud by Omission and Concealment Against All Defendants.

3505. Plaintiffs reallege and incorporate by reference all preceding

allegations as though fully set forth herein.

3506. The South Dakota Plaintiff brings this count under South Dakota law, individually and on behalf of the other members of the South Dakota Subclasses against the Automaker Defendants and Airbag Module Defendants for their respective Class Vehicle(s), and ARC. For the remaining Defendants, Plaintiffs who purchased or leased their Class Vehicles in states with materially similar laws may represent subclasses under this count against all other Defendants and ARC.

3507. For purposes of this count, members of the South Dakota Subclasses shall be referred to as "Class Members."

3508. For purposes of this count, ARC, the Automaker Defendants, and the Airbag Module Defendants shall be referred to as "Defendants."

3509. Defendants are liable for both fraudulent concealment and non-disclosure. *See, e.g.*, Restatement (Second) of Torts §§ 550-51 (1977).

3510. Defendants owed Plaintiffs and Class Members a duty to disclose all the material facts concerning the Defective Inflators in the Class Vehicles because:

a.   Given the Automaker Defendants' role in the design, manufacture, testing, and sale of Class Vehicles and Defective Inflators, and their experience and knowledge as experts and long-time veterans of the automotive industry, they, along with ARC and the Airbag Module

982

Defendants, possessed exclusive access to and were in a superior position to know the true facts about the Defective Inflators;

b.  Given ARC's design, development, testing and manufacture of the Defective Inflators and its experience and knowledge as experts and long-time veterans of the automotive industry, it, along with the Automaker Defendants and the Airbag Module Defendants, possessed exclusive access to and was in a superior position to know the true facts about the Defective Inflators;

c.  Given the Airbag Module Defendants' role in the design, manufacture, and testing of the airbag modules with the Defective Inflators installed in them, and their experience and knowledge as experts and long-time veterans of the automotive industry, they, along with ARC and the Automaker Defendants, possessed exclusive access to and were in a superior position to know the true facts about the Defective Inflators;

d.  Given the Inflator Defect's hidden and technical nature, Plaintiffs and Class Members lack the sophisticated expertise in vehicle components and technology that would be necessary to discover the Inflator Defect on their own;

e.  Defendants knew that the Inflator Defect gave rise to serious safety

983

concerns for the consumers who purchased and leased the Class Vehicles;

f.    The Inflator Defect poses a severe risk of harm in that, among other things, the metal shrapnel can puncture and stab the occupants, causing severe and potentially fatal injuries;

g.    Defendants knew about and investigated the Inflator Defect, but then did not notify consumers about it, disclose the Inflator Defect to NHTSA, or further launch a comprehensive recall for all Class Vehicles, which individually and together deprived Plaintiffs of an opportunity that otherwise could have led them to discover the truth about the Inflator Defect in their Class Vehicles; and

h.    The Automaker Defendants made, helped to make, or conspired to make incomplete representations about the safety and reliability of the Class Vehicles and their airbags, while purposefully withholding material facts about a known safety defect. Because they volunteered to provide information about the Class Vehicles that they marketed and offered for sale and lease to consumers, the Automaker Defendants had the duty to disclose the whole truth.

3511.  In breach of their duties, Defendants failed to disclose the Inflator

Defect and that the Class Vehicles' airbags were not safe and reliable to Plaintiffs and Class Members in connection with the sale of the Class Vehicles.

3512. The Inflator Defect within the Class Vehicles is material to the sale of the Class Vehicles because a reasonable person would find it important in purchasing, leasing, or retaining a new or used motor vehicle and because it directly impacts the value of the Class Vehicles purchased or leased by Plaintiffs and Class Members.

3513. Defendants intended for Plaintiffs and Class Members to rely on their omissions and concealment—which they did by purchasing and leasing the Class Vehicles at the prices they paid believing that their vehicles would not have an Inflator Defect that would affect the quality, reliability, and safety of the Class Vehicles and their airbags.

3514. Plaintiffs' and Class Members' reliance was reasonable because a reasonable consumer would not have expected that the Class Vehicles contained a safety defect that poses such a serious risk. They had no way of learning the facts that Defendants had concealed or failed to disclose. Plaintiffs and Class Members did not, and could not, unravel Defendants' deception on their own.

3515. Defendants actively concealed and suppressed these material facts, in whole or in part, to maintain a market for the Class Vehicles and the Defective

985

Inflators installed in them, to protect profits, and to avoid costly recalls that would expose them to liability for those expenses and harm the commercial reputations of Defendants and their products. They did so at the expense of Plaintiffs and Class Members.

3516. If Defendants had fully and adequately disclosed the Inflator Defect to consumers, Plaintiffs and Class Members would have seen such a disclosure.

3517. Through their omissions and concealment with respect to the Inflator Defect within the Class Vehicles, Defendants intended to induce, and did induce, Plaintiffs and Class Members to either purchase a Class Vehicle that they otherwise would not have purchased, or pay more for a Class Vehicle than they otherwise would have paid.

3518. Had Plaintiffs and Class Members known of the Inflator Defect within the Class Vehicles, they would not have purchased the Class Vehicles or would have paid less for them.

3519. As a direct and proximate result of Defendants' omissions and concealment, Plaintiffs and other Class Members either overpaid for the Class Vehicles or would not have purchased the Class Vehicles at all if the Inflator Defect had been disclosed to them. Accordingly, Defendants are liable to Plaintiffs and Class Members for their damages in an amount to be proven at trial.

3520. Defendants acted maliciously, oppressively, deliberately, with intent to defraud; in reckless disregard of the Plaintiffs' and Class Members' rights and well-being; and to enrich themselves. Defendants' misconduct warrants an assessment of punitive damages, as permitted by law, in an amount sufficient to deter such conduct in the future, which amount shall be determined according to proof at trial.

     **e.**     **South Dakota Count 6: Unjust Enrichment Against the Automaker Defendants.**

3521. Plaintiffs reallege and incorporate by reference all allegations in Volume 1 of the Consolidated Class Action Complaint as though fully set forth herein.

3522. The South Dakota Plaintiff brings this count under South Dakota law, individually and on behalf of the other members of the South Dakota Subclasses against the Automaker Defendants for his or her respective Class Vehicle(s). For the remaining Automaker Defendants, Plaintiffs who purchased or leased their Class Vehicles in states with materially similar laws may represent subclasses under this count against those Automaker Defendants.

3523. For purposes of this count, members of the South Dakota Subclasses shall be referred to as "Class Members."

3524. When they purchased and leased the Class Vehicles, Plaintiffs and

Class Members conferred tangible and material economic benefits upon the Automaker Defendants, who readily accepted and retained these benefits.

3525. Plaintiffs and Class Members would not have purchased or leased their Class Vehicles, or would have paid less for them, had they known of the Inflator Defect at the time of purchase or lease. Therefore, the Automaker Defendants profited from the sale and lease of the Class Vehicles to the detriment and expense of Plaintiffs and Class Members.

3526. The Automaker Defendants appreciated these economic benefits. These benefits were the expected result of the Automaker Defendants acting in their pecuniary interest at the expense of their customers. They knew of these benefits because they were aware of the Inflator Defect, yet they failed to disclose this knowledge and misled the Plaintiffs and Class Members regarding the nature and quality of the Class Vehicles while profiting from this deception.

3527. It would be unjust, inequitable, and unconscionable for the Automaker Defendants to retain these benefits, including because they were procured as a result of their wrongful conduct alleged above.

3528. Plaintiffs and Class Members are entitled to restitution of the benefits the Automaker Defendants unjustly retained and/or any amounts necessary to return Plaintiffs and Class Members to the position they occupied prior to dealing with

those Defendants, with such amounts to be determined at trial.

3529. Plaintiffs plead this claim separately as well as in the alternative to their claims for damages under Fed. R. Civ. P. 8(a)(3), because if the Court dismisses Plaintiffs' claims for damages enters judgment on them in favor of the Automaker Defendants, Plaintiffs will have no adequate legal remedy.

### 43.   Tennessee

#### a.   Tennessee Count 1: Breach of Express Warranty (Tenn. Code §§ 47-2-313 and 47-2A-210) Against the Automaker Defendants.

3530. Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

3531. The Tennessee Plaintiffs bring this count under Tennessee law, individually and on behalf of the other members of the Tennessee Subclasses against the Automaker Defendants for their respective Class Vehicles. For the remaining Automaker Defendants, Plaintiffs who purchased or leased their Class Vehicles in states with materially similar laws may represent subclasses under this count against those Automaker Defendants.

3532. For purposes of this count, members of the Tennessee Subclasses shall be referred to as "Class Members."

3533. The Class Vehicles are "goods" under Tenn. Code §§ 47-2-105(1) and

47-2A-103(1)(h).

3534. The Automaker Defendants are "merchants" of the Class Vehicles under Tenn. Code §§ 47-2-104(1) and 47-2A-103(1)(t), "sellers" under § 47-2-103(1)(d), and "lessors" under § 47-2A-103(1)(p).

3535. Plaintiffs and Class Members who purchased and leased the Class Vehicles in Tennessee are "buyers" under Tenn. Code §§ 47-2-103(1)(a) and "lessees" under § 47-2A-103(1)(n).

3536. The Automaker Defendants issued an express written warranty for each defective Class Vehicle they sold, including that:

3537.

    a.    The Class Vehicles would be free of defects in materials and workmanship at the time of sale; and

    b.    The Class Vehicles were safe and reliable, and their airbags would function properly in the event of a crash.

3538. The warranties listed above formed the basis of the bargain with regard to Plaintiffs and Class Members' purchase and lease of the Class Vehicles.

3539. The Automaker Defendants knowingly breached their warranty for the Class Vehicles because:

    a.    The airbag inflators have latent defects which have a dangerous

propensity to cause the inflators to rupture and eject metal shrapnel, subjecting Plaintiffs and Class Members to the risk of loss and injury; and

b.     The Automaker Defendants denied, concealed, and misrepresented the Inflator Defect, in the process refusing to pay for or provide in a reasonably timely fashion the needed repairs and replacements for Plaintiffs and Class Members.

3540. The Automaker Defendants knew or should have known that the warranties were false and/or misleading. Specifically, the Automaker Defendants were aware of the Inflator Defect in the Class Vehicles, which made the vehicles inherently defective and dangerous at the time that they were sold and leased to Plaintiffs and Class Members.

3541. Plaintiffs and Class Members were exposed to the Automaker Defendants' misrepresentations, and they had no way of discerning that the Automaker Defendants' representations were false and misleading or otherwise learning the material facts that the Automaker Defendants had concealed or failed to disclose. Accordingly, Plaintiffs and Class Members reasonably relied on the Automaker Defendants' express warranties when purchasing or leasing their Class Vehicles.

3542. Plaintiffs and Class Members timely provided the Automaker Defendants notice of the issues raised in this count and this Complaint and an opportunity to cure, as alleged in the paragraphs addressing Defendants' notice above.

3543. Alternatively, Plaintiffs and Class Members were excused from providing the Automaker Defendants with notice and an opportunity to cure the breach, because it would have been futile. As alleged above, the Automaker Defendants knew about the Defective Inflators for years; however, to date, the Automaker Defendants have not instituted a recall or any other repair program with respect to all of the Class Vehicles, or even acknowledged that the Inflator Defect exists in all of the Class Vehicles. Therefore, they have refused to recall or repair defective vehicles. Moreover, to the extent the Automaker Defendants have issued recalls, those recalls are inadequate because, *inter alia*: (a) they are belated because the Automaker Defendants knew about the Defective Inflators for years and did nothing to recall or remedy the serious safety defect; (b) with tens of millions of vehicles impacted in existing and potential future recalls, as a result of the Automaker Defendants' concealment of the Inflator Defect, the recalls cannot be implemented effectively due to supply constraints and resulting delays; (c) the recalls are incomplete, and apply to only a subset of the Class Vehicles.

3544. As a direct and proximate result of the Automaker Defendants' breach of their express warranties, the Class Vehicles were and are defective and the Inflator Defect was not remedied. Therefore, Plaintiff and Class Members have been damaged, in an amount to be proven at trial, through their overpayment at the time of purchase or lease for the Class Vehicles with an undisclosed safety defect that would not be remedied.

### b. Tennessee Count 2: Breach of Implied Warranty of Merchantability (Tenn. Code §§ 47-2-314 and 47-2A-212) Against the Automaker Defendants.

3545. Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

3546. The Tennessee Plaintiffs bring this count under Tennessee law, individually and on behalf of the other members of the Tennessee Subclasses against the Automaker Defendants for their respective Class Vehicles. For the remaining Automaker Defendants, Plaintiffs who purchased or leased their Class Vehicles in states with materially similar laws may represent subclasses under this count against those Automaker Defendants.

3547. For purposes of this count, members of the Tennessee Subclasses shall be referred to as "Class Members."

3548. The Class Vehicles are "goods" under Tenn. Code §§ 47-2-105(1) and

993

47-2A-103(1)(h).

3549. The Automaker Defendants are "merchants" of the Class Vehicles under Tenn. Code §§ 47-2-104(1) and 47-2A-103(1)(t), "sellers" under § 47-2-103(1)(d), and "lessors" under § 47-2A-103(1)(p).

3550. Plaintiffs and Class Members who purchased and leased the Class Vehicles in Tennessee are "buyers" under Tenn. Code §§ 47-2-103(a)(1) and "lessees" under § 47-2A-103(1)(n).

3551. Tennessee law conferred an implied warranty that the Class Vehicles were in merchantable condition and fit for the ordinary purpose for which they were to be used pursuant to Tenn. Code §§ 47-2-314 and 47-2A-212.

3552. The Class Vehicles are not merchantable, and as such the Automaker Defendants breached their implied warranties, because at the time of sale and all times thereafter:

a.   The Class Vehicles would not pass without objection in the automotive trade given the Inflator Defect;

b.   The Inflator Defect renders the Class Vehicles unsafe to drive and unfit for ordinary purposes;

c.   The Class Vehicles and the airbags therein were inadequately labeled as safe and reliable, and the labeling failed to disclose the Inflator

994

Defect; and

d.     The Class Vehicles do not conform to their labeling, which represents that the vehicles are safe and suitable for their intended use.

3553. Plaintiffs and Class Members timely provided the Automaker Defendants notice of the issues raised in this count and this Complaint and an opportunity to cure, as alleged in the paragraphs addressing Defendants' notice above.

3554. Alternatively, Plaintiffs and Class Members were excused from providing the Automaker Defendants with notice and an opportunity to cure the breach because it would have been futile. As alleged above, the Automaker Defendants have long known that the Class Vehicles contained the Defective Inflators, and that the Defective Inflators have caused airbags to malfunction in crashes involving the Class Vehicles; however, to date, the Automaker Defendants have not instituted a recall or any other repair program with respect to all of the Class Vehicles, or even acknowledged that the Inflator Defect exists in all of those Class Vehicles. Moreover, to the extent the Automaker Defendants have issued recalls, those recalls are inadequate because, inter alia: (a) they are belated because the Automaker Defendants knew about the Defective Inflators for years and did nothing to recall or remedy the serious safety defect; (b) with tens of millions of vehicles

995

impacted in existing and potential future recalls, as a result of the Automaker Defendants' concealment of the Inflator Defect, the recalls cannot be implemented effectively due to supply constraints and resulting delays; (c) the recalls are incomplete, and apply to only a subset of the Class Vehicles.

3555. Plaintiffs, individually and on behalf of Class Members, seek all available monetary damages (including actual, compensatory, and punitive damages), injunctive and equitable relief, and attorneys' fees and costs.

        **c.**     **Tennessee Count 3: Violation of the Tennessee Consumer Protection Act of 1977 (Tenn. Code § 47-18-101, *et seq.*) Against All Defendants.[48]**

3556. Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

3557. The Tennessee Plaintiffs bring this count under Tennessee law, individually and on behalf of the other members of the Tennessee Subclasses against the Automaker Defendants and Airbag Module Defendants for their respective Class Vehicles, and ARC. For the remaining Defendants, Plaintiffs who purchased or leased their Class Vehicles in states with materially similar laws may represent subclasses under this count against all other Defendants and ARC.

---

[48] Plaintiffs bring this count against ARC and the Airbag Module Defendants based on their omissions and concealment of material facts only.

3558. For purposes of this count, members of the Tennessee Subclasses shall be referred to as "Class Members."

3559. For purposes of this count, ARC, the Automaker Defendants, and the Airbag Module Defendants shall be referred to as "Defendants."

3560. Defendants, Plaintiffs, and Class Members are "persons" under Tenn. Code § 47-18-103(18).

3561. Plaintiffs and Class Members are "consumers" under Tenn. Code § 47-18-103(6).

3562. The Class Vehicles and Defective Inflators are "goods" under Tenn. Code § 47-18-103(12).

3563. Defendants are engaged in "trade, commerce, or consumer transactions" under Tenn. Code § 47-18-103(24).

3564. The Tennessee Consumer Protection Act ("Tennessee CPA") prohibits "[u]nfair or deceptive acts or practices." Tenn. Code § 47-18-104.

3565. In the course of their business, Defendants, through their agents, employees, and/or subsidiaries, violated the Tennessee CPA by knowingly and intentionally misrepresenting, omitting, concealing, and/or failing to disclose material facts regarding the reliability, safety, and performance of the Class Vehicles and the Defective Inflators, as detailed above.

997

3566. Defendants had an ongoing duty to Plaintiffs and Class Members to refrain from unfair or deceptive practices under the Tennessee CPA in the course of their business. Specifically, Defendants owed Plaintiffs and Class Members a duty to disclose all the material facts concerning the Defective Inflators in the Class Vehicles because:

a.     Given ARC's design, development, testing and manufacture of the Defective Inflators and its experience and knowledge as experts and long-time veterans of the automotive industry, it, along with the Automaker Defendants and the Airbag Module Defendants, possessed exclusive access to and was in a superior position to know the true facts about the Defective Inflators;

b.     Given the Airbag Module Defendants' role in the design, manufacture, and testing of the airbag modules with the Defective Inflators installed in them, and their experience and knowledge as experts and long-time veterans of the automotive industry, they, along with ARC and the Automaker Defendants, possessed exclusive access to and were in a superior position to know the true facts about the Defective Inflators;

c.     Given the Automaker Defendants' role in the design, manufacture, testing, and sale of Class Vehicles and Defective Inflators, and their

experience and knowledge as experts and long-time veterans of the automotive industry, they, along with ARC and the Airbag Module Defendants, possessed exclusive access to and were in a superior position to know the true facts about the Defective Inflators;

d.     Given the Inflator Defect's hidden and technical nature, Plaintiffs and Class Members lack the sophisticated expertise in vehicle components and technology that would be necessary to discover the Inflator Defect on their own;

e.     Defendants knew that the Inflator Defect gave rise to serious safety concerns for the consumers who purchased and leased the Class Vehicles;

f.     The Inflator Defect poses a severe risk of harm in that, among other things, the metal shrapnel can puncture and stab the occupants, causing severe and potentially fatal injuries;

g.     Defendants knew about and investigated the Inflator Defect, but then did not notify consumers about it or disclose the Inflator Defect to NHTSA, and the Automaker Defendants did not launch a comprehensive recall for all Class Vehicles, all of which individually and together deprived Plaintiffs of an opportunity that otherwise could

have led them to discover the truth about the Inflator Defect in their Class Vehicles; and

h. The Automaker Defendants made, helped to make, or conspired to make incomplete representations about the safety and reliability of the Class Vehicles and their airbags, while purposefully withholding material facts about a known safety defect. Because they volunteered to provide information about the Class Vehicles that they marketed and offered for sale and lease to consumers, the Automaker Defendants had the duty to disclose the whole truth.

3567. By misrepresenting the Class Vehicles as safe and reliable and the airbags installed in them as properly functioning and free from defects, and/or by failing to disclose and actively concealing the dangers and risk posed by the Inflator Defect to both consumers and NHTSA, Defendants engaged in one or more of the following unfair or deceptive business practices prohibited by Tenn. Code § 47-18-104:

a. Causing likelihood of confusing or misunderstanding as to the approval or certification of the Class Vehicles and the Defective Inflators installed in them;

b. Representing that the Class Vehicles and the Defective Inflators

1000

installed in them have approval, characteristics, uses, or benefits that they do not have;

c.     Representing that the Class Vehicles and the Defective Inflators installed in them were of a particular quality, grade, or standard when, in fact, they were not of that quality, grade, or standard;

d.     Advertising the Class Vehicles and the Defective Inflators with the intent not to sell or lease them as advertised;

e.     Engaging in other conduct which created a likelihood of confusion or of misunderstanding; and/or

f.     Using or employing deception, fraud, false pretense, false promise or misrepresentation, or the concealment, suppression, or omission of a material fact with intent that others rely upon such concealment, suppression or omission, in connection with the advertisement and sale/lease of the Class Vehicles, whether or not any person has in fact been misled, deceived or damaged thereby.

Tenn. Code § 47-18-104(2), (5), (7), (9), and (27).

3568. Defendants' unfair or deceptive acts or practices, including their misrepresentations, concealments, omissions, and/or suppressions of material facts, were designed to mislead and had a tendency or capacity to mislead and create a

1001

false impression in consumers that the Class Vehicles had properly-functioning and reliable airbags. Indeed, those misrepresentations, concealments, omissions, and suppressions of material facts did in fact deceive reasonable consumers, including Plaintiffs and Class Members, about the true safety and reliability of the Class Vehicles and/or the Defective Inflators installed in them, the quality of the Class Vehicles, and the true value of the Class Vehicles.

3569. Defendants intended for Plaintiffs and Class Members to rely on their misrepresentations, omissions, and concealment—which they did by purchasing and leasing the Class Vehicles at the prices they paid believing that their vehicles would not have an Inflator Defect that would affect the quality, reliability, and safety of the Class Vehicles and their airbags.

3570. Defendants' misrepresentations, concealments, omissions, and suppressions of material facts regarding the Inflator Defect and true characteristics of the Class Vehicles were material to the decisions of Plaintiffs and Class Members to purchase and lease those vehicles, as Defendants intended. Plaintiffs and Class Members were exposed to those misrepresentations, concealments, omissions, and suppressions of material facts, and relied on Defendants' misrepresentations that the Class Vehicles and their airbags were safe and reliable in deciding to purchase and lease the Class Vehicles.

3571. Plaintiffs' and Class Members' reliance was reasonable, as they had no way of discerning that Defendants' representations were false and misleading, or otherwise learning the facts that Defendants had concealed or failed to disclose. Plaintiffs and Class Members did not, and could not, unravel Defendants' deception on their own.

3572. Had they known the truth about the Inflator Defect, Plaintiffs and Class Members would not have purchased or leased the Class Vehicles, or would have paid significantly less for them.

3573. As a direct and proximate result of Defendants' deceptive practices, Plaintiffs and Class Members have sustained economic injury and loss—either by purchasing a vehicle they otherwise would not have purchased or paying more than they otherwise would have as a result of Defendants' actions and omissions alleged above—that first occurred at the time each Class Vehicle was purchased or leased.

3574. Defendants' violations present a continuing risk to Plaintiffs and Class Members, as well as to the general public, because the Class Vehicles remain unsafe due to the Defective Inflators therein. Defendants' unlawful acts and practices complained of herein affect the public interest.

3575. Pursuant to Tenn. Code § 47-10-108, 47-18-109, and 47-18-109(a)(3), Plaintiffs and Class Members seek an order enjoining the above unfair or deceptive

acts or practices and awarding actual damages, punitive damages, and any other just and proper relief available under the Tennessee CPA against all Defendants.

3576.  Plaintiffs plead this claim separately as well as in the alternative to their claims for damages under Fed. R. Civ. P. 8(a)(3), because if Plaintiffs' claims for damages are dismissed or judgment is entered in favor of Defendants, Plaintiffs will have no adequate legal remedy.

### d. Tennessee Count 4: Fraud by Omission and Concealment Against All Defendants.

3577. Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

3578. The Tennessee Plaintiffs bring this count under Tennessee law, individually and on behalf of the other members of the Tennessee Subclasses against the Automaker Defendants and Airbag Module Defendants for their respective Class Vehicles, and ARC. For the remaining Defendants, Plaintiffs who purchased or leased their Class Vehicles in states with materially similar laws may represent subclasses under this count against all other Defendants and ARC.

3579. For purposes of this count, members of the Tennessee Subclasses shall be referred to as "Class Members."

3580. For purposes of this count, ARC, the Automaker Defendants, and the

1004

Airbag Module Defendants shall be referred to as "Defendants."

3581. Defendants are liable for both fraudulent concealment and non-disclosure. *See, e.g.*, Restatement (Second) of Torts §§ 550-51 (1977).

3582. Defendants owed Plaintiffs and Class Members a duty to disclose all the material facts concerning the Defective Inflators in the Class Vehicles because:

a.   Given the Automaker Defendants' role in the design, manufacture, testing, and sale of Class Vehicles and Defective Inflators, and their experience and knowledge as experts and long-time veterans of the automotive industry, they, along with ARC and the Airbag Module Defendants, possessed exclusive access to and were in a superior position to know the true facts about the Defective Inflators;

b.   Given ARC's design, development, testing and manufacture of the Defective Inflators and its experience and knowledge as experts and long-time veterans of the automotive industry, it, along with the Automaker Defendants and the Airbag Module Defendants, possessed exclusive access to and was in a superior position to know the true facts about the Defective Inflators;

c.   Given the Airbag Module Defendants' role in the design, manufacture, and testing of the airbag modules with the Defective Inflators installed

1005

in them, and their experience and knowledge as experts and long-time veterans of the automotive industry, they, along with ARC and the Automaker Defendants, possessed exclusive access to and were in a superior position to know the true facts about the Defective Inflators;

d.     Given the Inflator Defect's hidden and technical nature, Plaintiffs and Class Members lack the sophisticated expertise in vehicle components and technology that would be necessary to discover the Inflator Defect on their own;

e.     Defendants knew that the Inflator Defect gave rise to serious safety concerns for the consumers who purchased and leased the Class Vehicles;

f.     The Inflator Defect poses a severe risk of harm in that, among other things, the metal shrapnel can puncture and stab the occupants, causing severe and potentially fatal injuries;

g.     Defendants knew about and investigated the Inflator Defect, but then did not notify consumers about it, disclose the Inflator Defect to NHTSA, or further launch a comprehensive recall for all Class Vehicles, which individually and together deprived Plaintiffs of an opportunity that otherwise could have led them to discover the truth

about the Inflator Defect in their Class Vehicles; and

h.   The Automaker Defendants made, helped to make, or conspired to make incomplete representations about the safety and reliability of the Class Vehicles and their airbags, while purposefully withholding material facts about a known safety defect. Because they volunteered to provide information about the Class Vehicles that they marketed and offered for sale and lease to consumers, the Automaker Defendants had the duty to disclose the whole truth.

3583. In breach of their duties, Defendants failed to disclose the Inflator Defect and that the Class Vehicles' airbags were not safe and reliable to Plaintiffs and Class Members in connection with the sale of the Class Vehicles.

3584. The Inflator Defect within the Class Vehicles is material to the sale of the Class Vehicles because a reasonable person would find it important in purchasing, leasing, or retaining a new or used motor vehicle and because it directly impacts the value of the Class Vehicles purchased or leased by Plaintiffs and Class Members.

3585. Defendants intended for Plaintiffs and Class Members to rely on their omissions and concealment—which they did by purchasing and leasing the Class Vehicles at the prices they paid believing that their vehicles would not have an

Inflator Defect that would affect the quality, reliability, and safety of the Class Vehicles and their airbags.

3586. Plaintiffs' and Class Members' reliance was reasonable because a reasonable consumer would not have expected that the Class Vehicles contained a safety defect that poses such a serious risk. They had no way of learning the facts that Defendants had concealed or failed to disclose. Plaintiffs and Class Members did not, and could not, unravel Defendants' deception on their own.

3587. Defendants actively concealed and suppressed these material facts, in whole or in part, to maintain a market for the Class Vehicles and the Defective Inflators installed in them, to protect profits, and to avoid costly recalls that would expose them to liability for those expenses and harm the commercial reputations of Defendants and their products. They did so at the expense of Plaintiffs and Class Members.

3588. If Defendants had fully and adequately disclosed the Inflator Defect to consumers, Plaintiffs and Class Members would have seen such a disclosure.

3589. Through their omissions and concealment with respect to the Inflator Defect within the Class Vehicles, Defendants intended to induce, and did induce, Plaintiffs and Class Members to either purchase a Class Vehicle that they otherwise would not have purchased, or pay more for a Class Vehicle than they otherwise

would have paid.

3590. Had Plaintiffs and Class Members known of the Inflator Defect within the Class Vehicles, they would not have purchased the Class Vehicles or would have paid less for them.

3591. As a direct and proximate result of Defendants' omissions and concealment, Plaintiffs and other Class Members either overpaid for the Class Vehicles or would not have purchased the Class Vehicles at all if the Inflator Defect had been disclosed to them. Accordingly, Defendants are liable to Plaintiffs and Class Members for their damages in an amount to be proven at trial.

3592. Defendants acted maliciously, oppressively, deliberately, with intent to defraud; in reckless disregard of the Plaintiffs' and Class Members' rights and well-being; and to enrich themselves. Defendants' misconduct warrants an assessment of punitive damages, as permitted by law, in an amount sufficient to deter such conduct in the future, which amount shall be determined according to proof at trial.

e. **Tennessee Count 5: Unjust Enrichment Against the Automaker Defendants.**

3593. Plaintiffs reallege and incorporate by reference all allegations in Volume 1 of the Consolidated Class Action Complaint as though fully set forth herein.

3594. The Tennessee Plaintiffs bring this count under Tennessee law, individually and on behalf of the other members of the Tennessee Subclasses against the Automaker Defendants for their respective Class Vehicles. For the remaining Automaker Defendants, Plaintiffs who purchased or leased their Class Vehicles in states with materially similar laws may represent subclasses under this count against those Automaker Defendants.

3595. For purposes of this count, members of the Tennessee Subclasses shall be referred to as "Class Members."

3596. When they purchased and leased the Class Vehicles, Plaintiffs and Class Members conferred tangible and material economic benefits upon the Automaker Defendants, who readily accepted and retained these benefits.

3597. Plaintiffs and Class Members would not have purchased or leased their Class Vehicles, or would have paid less for them, had they known of the Inflator Defect at the time of purchase or lease. Therefore, the Automaker Defendants profited from the sale and lease of the Class Vehicles to the detriment and expense of Plaintiffs and Class Members.

3598. The Automaker Defendants appreciated these economic benefits. These benefits were the expected result of the Automaker Defendants acting in their pecuniary interest at the expense of their customers. They knew of these benefits

because they were aware of the Inflator Defect, yet they failed to disclose this knowledge and misled the Plaintiffs and Class Members regarding the nature and quality of the Class Vehicles while profiting from this deception.

3599. It would be unjust, inequitable, and unconscionable for the Automaker Defendants to retain these benefits, including because they were procured as a result of their wrongful conduct alleged above.

3600. Plaintiffs and Class Members are entitled to restitution of the benefits the Automaker Defendants unjustly retained and/or any amounts necessary to return Plaintiffs and Class Members to the position they occupied prior to dealing with those Defendants, with such amounts to be determined at trial.

3601. Plaintiffs plead this claim separately as well as in the alternative to their claims for damages under Fed. R. Civ. P. 8(a)(3), because if the Court dismisses Plaintiffs' claims for damages enters judgment on them in favor of the Automaker Defendants, Plaintiffs will have no adequate legal remedy.

### 44. Texas

#### a. Texas Count 1: Breach of Express Warranty (Tex. Bus. & Com. Code Ann. §§ 2.313 and 2A.210) Against the Automaker Defendants.

3602. Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

1011

3603. The Texas Plaintiff brings this count under Texas law, individually and on behalf of the other members of the Texas Subclasses against the Automaker Defendants for his or her respective Class Vehicle(s). For the remaining Automaker Defendants, Plaintiffs who purchased or leased their Class Vehicles in states with materially similar laws may represent subclasses under this count against those Automaker Defendants.

3604. For purposes of this count, members of the Texas Subclasses shall be referred to as "Class Members."

3605. The Class Vehicles are "goods" under Tex. Bus. & Com. Code Ann. §§ 2.105(a) and 2A.103(a)(h).

3606. The Automaker Defendants are "merchants" of the Class Vehicles under Tex. Bus. & Com. Code Ann. §§ 2.104(a) and 2A.103(c), "sellers" under § 2.103(a)(4), and "lessors" under § 2A.103(a)(16).

3607. Plaintiffs and Class Members who purchased and leased the Class Vehicles in Texas are "buyers" under Tex. Bus. & Com. Code Ann. §§ 2.103(a)(1) and "lessees" under § 2A.103(a)(14).

3608. The Automaker Defendants issued an express written warranty for each defective Class Vehicle they sold, including that:

a.     The Class Vehicles would be free of defects in materials and

workmanship at the time of sale; and

b.     The Class Vehicles were safe and reliable, and their airbags would function properly in the event of a crash.

3609. The warranties listed above formed the basis of the bargain with regard to Plaintiffs and Class Members' purchase and lease of the Class Vehicles.

3610. The Automaker Defendants knowingly breached their warranty for the Class Vehicles because:

a.     The airbag inflators have latent defects which have a dangerous propensity to cause the inflators to rupture and eject metal shrapnel, subjecting Plaintiffs and Class Members to the risk of loss and injury; and

b.     The Automaker Defendants denied, concealed, and misrepresented the Inflator Defect, in the process refusing to pay for or provide in a reasonably timely fashion the needed repairs and replacements for Plaintiffs and Class Members.

3611. The Automaker Defendants knew or should have known that the warranties were false and/or misleading. Specifically, the Automaker Defendants were aware of the Inflator Defect in the Class Vehicles, which made the vehicles inherently defective and dangerous at the time that they were sold and leased to

Plaintiffs and Class Members.

3612. Plaintiffs and Class Members were exposed to the Automaker Defendants' misrepresentations, and they had no way of discerning that the Automaker Defendants' representations were false and misleading or otherwise learning the material facts that the Automaker Defendants had concealed or failed to disclose. Accordingly, Plaintiffs and Class Members reasonably relied on the Automaker Defendants' express warranties when purchasing or leasing their Class Vehicles.

3613. Plaintiffs and Class Members timely provided the Automaker Defendants notice of the issues raised in this count and this Complaint and an opportunity to cure, as alleged in the paragraphs addressing Defendants' notice above.

3614. Alternatively, Plaintiffs and Class Members were excused from providing the Automaker Defendants with notice and an opportunity to cure the breach, because it would have been futile. As alleged above, the Automaker Defendants knew about the Defective Inflators for years; however, to date, the Automaker Defendants have not instituted a recall or any other repair program with respect to all of the Class Vehicles, or even acknowledged that the Inflator Defect exists in all of the Class Vehicles. Therefore, they have refused to recall or repair

1014

defective vehicles. Moreover, to the extent the Automaker Defendants have issued recalls, those recalls are inadequate because, *inter alia*: (a) they are belated because the Automaker Defendants knew about the Defective Inflators for years and did nothing to recall or remedy the serious safety defect; (b) with tens of millions of vehicles impacted in existing and potential future recalls, as a result of the Automaker Defendants' concealment of the Inflator Defect, the recalls cannot be implemented effectively due to supply constraints and resulting delays; (c) the recalls are incomplete, and apply to only a subset of the Class Vehicles.

3615. As a direct and proximate result of the Automaker Defendants' breach of their express warranties, the Class Vehicles were and are defective and the Inflator Defect was not remedied. Therefore, Plaintiff and Class Members have been damaged, in an amount to be proven at trial, through their overpayment at the time of purchase or lease for the Class Vehicles with an undisclosed safety defect that would not be remedied.

      b.      **Texas Count 2: Breach of Implied Warranty of Merchantability (Tex. Bus. & Com. Code Ann. §§ 2.314 and 2A.212) Against the Automaker Defendants.**

3616. Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

3617. The Texas Plaintiff brings this count under Texas law, individually and

1015

on behalf of the other members of the Texas Subclasses against the Automaker Defendants for his or her respective Class Vehicle(s). For the remaining Automaker Defendants, Plaintiffs who purchased or leased their Class Vehicles in states with materially similar laws may represent subclasses under this count against those Automaker Defendants.

3618. For purposes of this count, members of the Texas Subclasses shall be referred to as "Class Members."

3619. The Class Vehicles are "goods" under Tex. Bus. & Com. Code Ann. §§ 2.105(a) and 2A.103(a)(h).

3620. The Automaker Defendants are "merchants" of the Class Vehicles under Tex. Bus. & Com. Code Ann. §§ 2.104(a) and 2A.103(c), "sellers" under § 2.103(a)(4), and "lessors" under § 2A.103(a)(16).

3621. Plaintiffs and Class Members who purchased and leased the Class Vehicles in Texas are "buyers" under Tex. Bus. & Com. Code Ann. §§ 2.103(a)(1) and "lessees" under § 2A.103(a)(14).

3622. Texas law conferred an implied warranty that the Class Vehicles were in merchantable condition and fit for the ordinary purpose for which they were to be used pursuant to Tex. Bus. & Com. Code Ann. §§ 2.314 and 2A.212.

3623. The Class Vehicles are not merchantable, and as such the Automaker

Defendants breached their implied warranties, because at the time of sale and all times thereafter:

    a.    The Class Vehicles would not pass without objection in the automotive trade given the Inflator Defect;

    b.    The Inflator Defect renders the Class Vehicles unsafe to drive and unfit for ordinary purposes;

    c.    The Class Vehicles and the airbags therein were inadequately labeled as safe and reliable, and the labeling failed to disclose the Inflator Defect; and

    d.    The Class Vehicles do not conform to their labeling, which represents that the vehicles are safe and suitable for their intended use.

3624. Plaintiffs and Class Members timely provided the Automaker Defendants notice of the issues raised in this count and this Complaint and an opportunity to cure, as alleged in the paragraphs addressing Defendants' notice above.

3625. Alternatively, Plaintiffs and Class Members were excused from providing the Automaker Defendants with notice and an opportunity to cure the breach because it would have been futile. As alleged above, the Automaker

1017

Defendants have long known that the Class Vehicles contained the Defective Inflators, and that the Defective Inflators have caused airbags to malfunction in crashes involving the Class Vehicles; however, to date, the Automaker Defendants have not instituted a recall or any other repair program with respect to all of the Class Vehicles, or even acknowledged that the Inflator Defect exists in all of those Class Vehicles. Moreover, to the extent the Automaker Defendants have issued recalls, those recalls are inadequate because, inter alia: (a) they are belated because the Automaker Defendants knew about the Defective Inflators for years and did nothing to recall or remedy the serious safety defect; (b) with tens of millions of vehicles impacted in existing and potential future recalls, as a result of the Automaker Defendants' concealment of the Inflator Defect, the recalls cannot be implemented effectively due to supply constraints and resulting delays; (c) the recalls are incomplete, and apply to only a subset of the Class Vehicles.

3626. Plaintiffs, individually and on behalf of Class Members, seek all available monetary damages (including actual, compensatory, and punitive damages), injunctive and equitable relief, and attorneys' fees and costs.

      c.      **Texas Count 3: Violation of the Texas Consumer Protection Act of 1977 (Tex. Bus. & Com. Code Ann. § 17.41, *et seq.*) Against All Defendants.[49]**

3627. Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

3628. The Texas Plaintiff brings this count under Texas law, individually and on behalf of the other members of the Texas Subclasses against Automaker Defendants and Airbag Module Defendants for his or her respective Class Vehicle(s), and ARC. For the remaining Defendants, Plaintiffs who purchased or leased their Class Vehicles in states with materially similar laws may represent subclasses under this count against all other Defendants and ARC.

3629. For purposes of this count, members of the Texas Subclasses shall be referred to as "Class Members."

3630. For purposes of this count, ARC, the Automaker Defendants, and the Airbag Module Defendants shall be referred to as "Defendants."

3631. Defendants, Plaintiffs, and Class Members are "persons" under Tex. Bus. & Com. Code Ann. § 17.45(3).

3632. Plaintiffs and Class Members are "consumers" under Tex. Bus. & Com.

---

[49] Plaintiffs bring this count against ARC and the Airbag Module Defendants based on their omissions and concealment of material facts only.

Code Ann. § 17.45(4).

3633.  The Class Vehicles and Defective Inflators are "goods" under Tex. Bus. & Com. Code Ann. § 17.45(1).

3634.  Defendants are engaged in "trade" or "commerce" under Tex. Bus. & Com. Code Ann. § 17.45(6).

3635.  The Deceptive Trade Practices-Consumer Protection Act ("Texas DTPA") prohibits "[f]alse, misleading, or deceptive acts or practices in the conduct of any trade or commerce[,]" Tex. Bus. & Com. Code Ann. § 17.46(a), and an "unconscionable action or course of action[,]" Tex. Bus. & Com. Code Ann. §§ 17.45(5) and 17.50(a)(3).

3636.  In the course of their business, Defendants, through their agents, employees, and/or subsidiaries, violated the Texas DTPA by knowingly and intentionally misrepresenting, omitting, concealing, and/or failing to disclose material facts regarding the reliability, safety, and performance of the Class Vehicles and the Defective Inflators, as detailed above.

3637.  Defendants had an ongoing duty to Plaintiffs and Class Members to refrain from unfair or deceptive practices under the Texas DTPA in the course of their business. Specifically, Defendants owed Plaintiffs and Class Members a duty to disclose all the material facts concerning the Defective Inflators in the Class

1020

Vehicles because:

a.     Given ARC's design, development, testing and manufacture of the Defective Inflators and its experience and knowledge as experts and long-time veterans of the automotive industry, it, along with the Automaker Defendants and the Airbag Module Defendants, possessed exclusive access to and was in a superior position to know the true facts about the Defective Inflators;

b.     Given the Airbag Module Defendants' role in the design, manufacture, and testing of the airbag modules with the Defective Inflators installed in them, and their experience and knowledge as experts and long-time veterans of the automotive industry, they, along with ARC and the Automaker Defendants, possessed exclusive access to and were in a superior position to know the true facts about the Defective Inflators;

c.     Given the Automaker Defendants' role in the design, manufacture, testing, and sale of Class Vehicles and Defective Inflators, and their experience and knowledge as experts and long-time veterans of the automotive industry, they, along with ARC and the Airbag Module Defendants, possessed exclusive access to and were in a superior position to know the true facts about the Defective Inflators;

d.      Given the Inflator Defect's hidden and technical nature, Plaintiffs and Class Members lack the sophisticated expertise in vehicle components and technology that would be necessary to discover the Inflator Defect on their own;

e.      Defendants knew that the Inflator Defect gave rise to serious safety concerns for the consumers who purchased and leased the Class Vehicles;

f.      The Inflator Defect poses a severe risk of harm in that, among other things, the metal shrapnel can puncture and stab the occupants, causing severe and potentially fatal injuries;

g.      Defendants knew about and investigated the Inflator Defect, but then did not notify consumers about it or disclose the Inflator Defect to NHTSA, and the Automaker Defendants did not launch a comprehensive recall for all Class Vehicles, all of which individually and together deprived Plaintiffs of an opportunity that otherwise could have led them to discover the truth about the Inflator Defect in their Class Vehicles; and

h.      The Automaker Defendants made, helped to make, or conspired to make incomplete representations about the safety and reliability of the

Class Vehicles and their airbags, while purposefully withholding material facts about a known safety defect. Because they volunteered to provide information about the Class Vehicles that they marketed and offered for sale and lease to consumers, the Automaker Defendants had the duty to disclose the whole truth.

3638. By misrepresenting the Class Vehicles as safe and reliable and the airbags installed in them as properly functioning and free from defects, and/or by failing to disclose and actively concealing the dangers and risk posed by the Inflator Defect to both consumers and NHTSA, Defendants engaged in one or more of the following unfair or deceptive business practices prohibited by the Texas DTPA:

a.   Representing that the Class Vehicles and the Defective Inflators installed in them have characteristics, uses, or benefits that they do not have;

b.   Representing that the Class Vehicles and the Defective Inflators installed in them were of a particular quality, grade, or standard when, in fact, they were not of that quality, grade, or standard; and

c.   Advertising the Class Vehicles and the Defective Inflators with the intent not to sell or lease them as advertised.

Tex. Bus. & Com. Code Ann. § 17.46(5), (7), and (9).

1023

3639. Defendants' unfair or deceptive acts or practices, including their misrepresentations, concealments, omissions, and/or suppressions of material facts, were designed to mislead and had a tendency or capacity to mislead and create a false impression in consumers that the Class Vehicles had properly-functioning and reliable airbags. Indeed, those misrepresentations, concealments, omissions, and suppressions of material facts did in fact deceive reasonable consumers, including Plaintiffs and Class Members, about the true safety and reliability of the Class Vehicles and/or the Defective Inflators installed in them, the quality of the Class Vehicles, and the true value of the Class Vehicles.

3640. Defendants intended for Plaintiffs and Class Members to rely on their misrepresentations, omissions, and concealment—which they did by purchasing and leasing the Class Vehicles at the prices they paid believing that their vehicles would not have an Inflator Defect that would affect the quality, reliability, and safety of the Class Vehicles and their airbags.

3641. Defendants' misrepresentations, concealments, omissions, and suppressions of material facts regarding the Inflator Defect and true characteristics of the Class Vehicles were material to the decisions of Plaintiffs and Class Members to purchase and lease those vehicles, as Defendants intended. Plaintiffs and Class Members were exposed to those misrepresentations, concealments, omissions, and

suppressions of material facts, and relied on Defendants' misrepresentations that the Class Vehicles and their airbags were safe and reliable in deciding to purchase and lease the Class Vehicles.

3642. Plaintiffs' and Class Members' reliance was reasonable, as they had no way of discerning that Defendants' representations were false and misleading, or otherwise learning the facts that Defendants had concealed or failed to disclose. Plaintiffs and Class Members did not, and could not, unravel Defendants' deception on their own.

3643. Had they known the truth about the Inflator Defect, Plaintiffs and Class Members would not have purchased or leased the Class Vehicles, or would have paid significantly less for them.

3644. As a direct and proximate result of Defendants' deceptive practices, Plaintiffs and Class Members have sustained economic injury and loss—either by purchasing a vehicle they otherwise would not have purchased or paying more than they otherwise would have as a result of Defendants' actions and omissions alleged above—that first occurred at the time each Class Vehicle was purchased or leased.

3645. Defendants' violations present a continuing risk to Plaintiffs and Class Members, as well as to the general public, because the Class Vehicles remain unsafe due to the Defective Inflators therein. Defendants' unlawful acts and practices

complained of herein affect the public interest.

3646. Plaintiffs and Class Members timely provided Defendants notice of the issues raised in this count and this Complaint and an opportunity to cure, as alleged in the paragraphs addressing Defendants' notice above. Because Defendants failed to adequately remedy their unlawful conduct within the requisite time period, Plaintiffs seek all damages and relief to which Plaintiffs and State Class members are entitled.

3647. Alternatively, any requirement to give notice to the Defendants under Tex. Bus. & Com. Code Ann. § 17.505(a) is excused because, *inter alia*, notice was impracticable due to the necessity of filing suit in order to prevent the expiration of the statute of limitations on certain Plaintiffs and Class Members' claims. Additionally, Plaintiffs and Class Members were excused from providing the Defendants with notice and an opportunity to cure the Inflator Defect, because it would have been futile. As alleged above, the Defendants knew about the Defective Inflators for years; however, to date, the Automaker Defendants have not instituted a recall or any other repair program with respect to all of the Class Vehicles, or even acknowledged that the Inflator Defect exists in all of the Class Vehicles. Therefore, they have refused to recall or repair defective vehicles. Moreover, to the extent the Automaker Defendants have issued recalls, those recalls are inadequate because,

*inter alia*: (a) they are belated because the Automaker Defendants knew about the Defective Inflators for years and did nothing to recall or remedy the serious safety defect; (b) with tens of millions of vehicles impacted in existing and potential future recalls, as a result of the Automaker Defendants' concealment of the Inflator Defect, the recalls cannot be implemented effectively due to supply constraints and resulting delays; (c) the recalls are incomplete, and apply to only a subset of the Class Vehicles.

3648. Pursuant to Tex. Bus. & Com. Code Ann. § 17.50, Plaintiffs and Class Members seek an order enjoining the above unfair or deceptive acts or practices and awarding actual damages, punitive damages, and any other just and proper relief available under the Texas DTPA against all Defendants.

### d.   Texas Count 4: Fraud by Omission and Concealment Against All Defendants.

3649. Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

3650. The Texas Plaintiff brings this count under Texas law, individually and on behalf of the other members of the Texas Subclasses against Automaker Defendants and Airbag Module Defendants for his or her respective Class Vehicle(s), and ARC. For the remaining Defendants, Plaintiffs who purchased or

leased their Class Vehicles in states with materially similar laws may represent subclasses under this count against all other Defendants and ARC.

3651. For purposes of this count, members of the Texas Subclasses shall be referred to as "Class Members."

3652. For purposes of this count, ARC, the Automaker Defendants, and the Airbag Module Defendants shall be referred to as "Defendants."

3653. Defendants are liable for both fraudulent concealment and non-disclosure. *See, e.g.*, Restatement (Second) of Torts §§ 550-51 (1977).

3654. Defendants owed Plaintiffs and Class Members a duty to disclose all the material facts concerning the Defective Inflators in the Class Vehicles because:

a.      Given the Automaker Defendants' role in the design, manufacture, testing, and sale of Class Vehicles and Defective Inflators, and their experience and knowledge as experts and long-time veterans of the automotive industry, they, along with ARC and the Airbag Module Defendants, possessed exclusive access to and were in a superior position to know the true facts about the Defective Inflators;

b.      Given ARC's design, development, testing and manufacture of the Defective Inflators and its experience and knowledge as experts and long-time veterans of the automotive industry, it, along with the

1028

Automaker Defendants and the Airbag Module Defendants, possessed exclusive access to and was in a superior position to know the true facts about the Defective Inflators;

c.      Given the Airbag Module Defendants' role in the design, manufacture, and testing of the airbag modules with the Defective Inflators installed in them, and their experience and knowledge as experts and long-time veterans of the automotive industry, they, along with ARC and the Automaker Defendants, possessed exclusive access to and were in a superior position to know the true facts about the Defective Inflators;

d.      Given the Inflator Defect's hidden and technical nature, Plaintiffs and Class Members lack the sophisticated expertise in vehicle components and technology that would be necessary to discover the Inflator Defect on their own;

e.      Defendants knew that the Inflator Defect gave rise to serious safety concerns for the consumers who purchased and leased the Class Vehicles;

f.      The Inflator Defect poses a severe risk of harm in that, among other things, the metal shrapnel can puncture and stab the occupants, causing severe and potentially fatal injuries;

1029

g.　　Defendants knew about and investigated the Inflator Defect, but then did not notify consumers about it, disclose the Inflator Defect to NHTSA, or further launch a comprehensive recall for all Class Vehicles, which individually and together deprived Plaintiffs of an opportunity that otherwise could have led them to discover the truth about the Inflator Defect in their Class Vehicles; and

h.　　The Automaker Defendants made, helped to make, or conspired to make incomplete representations about the safety and reliability of the Class Vehicles and their airbags, while purposefully withholding material facts about a known safety defect. Because they volunteered to provide information about the Class Vehicles that they marketed and offered for sale and lease to consumers, the Automaker Defendants had the duty to disclose the whole truth.

3655. In breach of their duties, Defendants failed to disclose the Inflator Defect and that the Class Vehicles' airbags were not safe and reliable to Plaintiffs and Class Members in connection with the sale of the Class Vehicles.

3656. The Inflator Defect within the Class Vehicles is material to the sale of the Class Vehicles because a reasonable person would find it important in purchasing, leasing, or retaining a new or used motor vehicle and because it directly

impacts the value of the Class Vehicles purchased or leased by Plaintiffs and Class Members.

3657. Defendants intended for Plaintiffs and Class Members to rely on their omissions and concealment—which they did by purchasing and leasing the Class Vehicles at the prices they paid believing that their vehicles would not have an Inflator Defect that would affect the quality, reliability, and safety of the Class Vehicles and their airbags.

3658. Plaintiffs' and Class Members' reliance was reasonable because a reasonable consumer would not have expected that the Class Vehicles contained a safety defect that poses such a serious risk. They had no way of learning the facts that Defendants had concealed or failed to disclose. Plaintiffs and Class Members did not, and could not, unravel Defendants' deception on their own.

3659. Defendants actively concealed and suppressed these material facts, in whole or in part, to maintain a market for the Class Vehicles and the Defective Inflators installed in them, to protect profits, and to avoid costly recalls that would expose them to liability for those expenses and harm the commercial reputations of Defendants and their products. They did so at the expense of Plaintiffs and Class Members.

3660. If Defendants had fully and adequately disclosed the Inflator Defect to

consumers, Plaintiffs and Class Members would have seen such a disclosure.

3661. Through their omissions and concealment with respect to the Inflator Defect within the Class Vehicles, Defendants intended to induce, and did induce, Plaintiffs and Class Members to either purchase a Class Vehicle that they otherwise would not have purchased, or pay more for a Class Vehicle than they otherwise would have paid.

3662. Had Plaintiffs and Class Members known of the Inflator Defect within the Class Vehicles, they would not have purchased the Class Vehicles or would have paid less for them.

3663. As a direct and proximate result of Defendants' omissions and concealment, Plaintiffs and other Class Members either overpaid for the Class Vehicles or would not have purchased the Class Vehicles at all if the Inflator Defect had been disclosed to them. Accordingly, Defendants are liable to Plaintiffs and Class Members for their damages in an amount to be proven at trial.

3664. Defendants acted maliciously, oppressively, deliberately, with intent to defraud; in reckless disregard of the Plaintiffs' and Class Members' rights and well-being; and to enrich themselves. Defendants' misconduct warrants an assessment of punitive damages, as permitted by law, in an amount sufficient to deter such conduct in the future, which amount shall be determined according to proof at trial.

### e.   Texas Count 5: Unjust Enrichment Against the Automaker Defendants.

3665. Plaintiffs reallege and incorporate by reference all allegations in Volume 1 of the Consolidated Class Action Complaint as though fully set forth herein.

3666. The Texas Plaintiff brings this count under Texas law, individually and on behalf of the other members of the Texas Subclasses against the Automaker Defendants for his or her respective Class Vehicle(s). For the remaining Automaker Defendants, Plaintiffs who purchased or leased their Class Vehicles in states with materially similar laws may represent subclasses under this count against those Automaker Defendants.

3667. For purposes of this count, members of the Texas Subclasses shall be referred to as "Class Members."

3668. When they purchased and leased the Class Vehicles, Plaintiffs and Class Members conferred tangible and material economic benefits upon the Automaker Defendants, who readily accepted and retained these benefits.

3669. Plaintiffs and Class Members would not have purchased or leased their Class Vehicles, or would have paid less for them, had they known of the Inflator Defect at the time of purchase or lease. Therefore, the Automaker Defendants profited from the sale and lease of the Class Vehicles to the detriment and expense

1033

of Plaintiffs and Class Members.

3670. The Automaker Defendants appreciated these economic benefits. These benefits were the expected result of the Automaker Defendants acting in their pecuniary interest at the expense of their customers. They knew of these benefits because they were aware of the Inflator Defect, yet they failed to disclose this knowledge and misled the Plaintiffs and Class Members regarding the nature and quality of the Class Vehicles while profiting from this deception.

3671. It would be unjust, inequitable, and unconscionable for the Automaker Defendants to retain these benefits, including because they were procured as a result of their wrongful conduct alleged above.

3672. Plaintiffs and Class Members are entitled to restitution of the benefits the Automaker Defendants unjustly retained and/or any amounts necessary to return Plaintiffs and Class Members to the position they occupied prior to dealing with those Defendants, with such amounts to be determined at trial.

3673. Plaintiffs plead this claim separately as well as in the alternative to their claims for damages under Fed. R. Civ. P. 8(a)(3), because if the Court dismisses Plaintiffs' claims for damages enters judgment on them in favor of the Automaker Defendants, Plaintiffs will have no adequate legal remedy.

**45.    Utah**

1034

### a. Utah Count 1: Breach of Express Warranty (Utah Code Ann. §§ 70A-2-313 and 70A-2A-210) Against the Automaker Defendants.

3674. Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

3675. The Utah Plaintiffs bring this count under Utah law, individually and on behalf of the other members of the Utah Subclasses against the Automaker Defendants for their respective Class Vehicles. For the remaining Automaker Defendants, Plaintiffs who purchased or leased their Class Vehicles in states with materially similar laws may represent subclasses under this count against those Automaker Defendants.

3676. For purposes of this count, members of the Utah Subclasses shall be referred to as "Class Members."

3677. The Class Vehicles are "goods" under Utah Code Ann. §§ 70A-2-105(1) and 70A-2A-103(1)(h).

3678. The Automaker Defendants are "merchants" of the Class Vehicles under Utah Code Ann. §§ 70A-2-104(1) and 70A-2A-103(1)(t), "sellers" under § 70A-2-103(1)(d), and "lessors" under § 70A-2A-103(1)(p).

3679. Plaintiffs and Class Members who purchased and leased the Class Vehicles in Utah are "buyers" under Utah Code Ann. §§ 70A-2-103(1)(a) and

"lessees" under § 70A-2A-103(1)(n).

3680. The Automaker Defendants issued an express written warranty for each defective Class Vehicle they sold, including that:

a.     The Class Vehicles would be free of defects in materials and workmanship at the time of sale; and

b.     The Class Vehicles were safe and reliable, and their airbags would function properly in the event of a crash.

3681. The warranties listed above formed the basis of the bargain with regard to Plaintiffs and Class Members' purchase and lease of the Class Vehicles.

3682. The Automaker Defendants knowingly breached their warranty for the Class Vehicles because:

a.     The airbag inflators have latent defects which have a dangerous propensity to cause the inflators to rupture and eject metal shrapnel, subjecting Plaintiffs and Class Members to the risk of loss and injury; and

b.     The Automaker Defendants denied, concealed, and misrepresented the Inflator Defect, in the process refusing to pay for or provide in a reasonably timely fashion the needed repairs and replacements for Plaintiffs and Class Members.

3683. The Automaker Defendants knew or should have known that the warranties were false and/or misleading. Specifically, the Automaker Defendants were aware of the Inflator Defect in the Class Vehicles, which made the vehicles inherently defective and dangerous at the time that they were sold and leased to Plaintiffs and Class Members.

3684. Plaintiffs and Class Members were exposed to the Automaker Defendants' misrepresentations, and they had no way of discerning that the Automaker Defendants' representations were false and misleading or otherwise learning the material facts that the Automaker Defendants had concealed or failed to disclose. Accordingly, Plaintiffs and Class Members reasonably relied on the Automaker Defendants' express warranties when purchasing or leasing their Class Vehicles.

3685. Plaintiffs and Class Members timely provided the Automaker Defendants notice of the issues raised in this count and this Complaint and an opportunity to cure, as alleged in the paragraphs addressing Defendants' notice above.

3686. Alternatively, Plaintiffs and Class Members were excused from providing the Automaker Defendants with notice and an opportunity to cure the breach, because it would have been futile. As alleged above, the Automaker

Defendants knew about the Defective Inflators for years; however, to date, the Automaker Defendants have not instituted a recall or any other repair program with respect to all of the Class Vehicles, or even acknowledged that the Inflator Defect exists in all of the Class Vehicles. Therefore, they have refused to recall or repair defective vehicles. Moreover, to the extent the Automaker Defendants have issued recalls, those recalls are inadequate because, *inter alia*: (a) they are belated because the Automaker Defendants knew about the Defective Inflators for years and did nothing to recall or remedy the serious safety defect; (b) with tens of millions of vehicles impacted in existing and potential future recalls, as a result of the Automaker Defendants' concealment of the Inflator Defect, the recalls cannot be implemented effectively due to supply constraints and resulting delays; (c) the recalls are incomplete, and apply to only a subset of the Class Vehicles.

3687. As a direct and proximate result of the Automaker Defendants' breach of their express warranties, the Class Vehicles were and are defective and the Inflator Defect was not remedied. Therefore, Plaintiff and Class Members have been damaged, in an amount to be proven at trial, through their overpayment at the time of purchase or lease for the Class Vehicles with an undisclosed safety defect that would not be remedied.

1038

b.   **Utah Count 2: Breach of Implied Warranty of Merchantability (Utah Code Ann. §§ 70A-2-314 and 70A-2A-212) Against the Automaker Defendants.**

3688. Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

3689. The Utah Plaintiffs bring this count under Utah law, individually and on behalf of the other members of the Utah Subclasses against the Automaker Defendants for their respective Class Vehicles. For the remaining Automaker Defendants, Plaintiffs who purchased or leased their Class Vehicles in states with materially similar laws may represent subclasses under this count against those Automaker Defendants.

3690. For purposes of this count, members of the Utah Subclasses shall be referred to as "Class Members."

3691. The Class Vehicles are "goods" under Utah Code Ann. §§ 70A-2-105(1) and 70A-2A-103(1)(h).

3692. The Automaker Defendants are "merchants" of the Class Vehicles under Utah Code Ann. §§ 70A-2-104(1) and 70A-2A-103(1)(t), "sellers" under § 70A-2-103(1)(d), and "lessors" under § 70A-2A-103(1)(p).

3693. Plaintiffs and Class Members who purchased and leased the Class Vehicles in Utah are "buyers" under Utah Code Ann. §§ 70A-2-103(a)(1) and

"lessees" under § 70A-2A-103(1)(n).

3694. Utah law conferred an implied warranty that the Class Vehicles were in merchantable condition and fit for the ordinary purpose for which they were to be used pursuant to Utah Code Ann. §§ 70A-2-314 and 70A-2A-212.

3695. The Class Vehicles are not merchantable, and as such the Automaker Defendants breached their implied warranties, because at the time of sale and all times thereafter:

   a.   The Class Vehicles would not pass without objection in the automotive trade given the Inflator Defect;

   b.   The Inflator Defect renders the Class Vehicles unsafe to drive and unfit for ordinary purposes;

   c.   The Class Vehicles and the airbags therein were inadequately labeled as safe and reliable, and the labeling failed to disclose the Inflator Defect; and

   d.   The Class Vehicles do not conform to their labeling, which represents that the vehicles are safe and suitable for their intended use.

3696. Plaintiffs and Class Members timely provided the Automaker Defendants notice of the issues raised in this count and this Complaint and an opportunity to cure, as alleged in the paragraphs addressing Defendants' notice

above.

3697. Alternatively, Plaintiffs and Class Members were excused from providing the Automaker Defendants with notice and an opportunity to cure the breach because it would have been futile. As alleged above, the Automaker Defendants have long known that the Class Vehicles contained the Defective Inflators, and that the Defective Inflators have caused airbags to malfunction in crashes involving the Class Vehicles; however, to date, the Automaker Defendants have not instituted a recall or any other repair program with respect to all of the Class Vehicles, or even acknowledged that the Inflator Defect exists in all of those Class Vehicles. Moreover, to the extent the Automaker Defendants have issued recalls, those recalls are inadequate because, inter alia: (a) they are belated because the Automaker Defendants knew about the Defective Inflators for years and did nothing to recall or remedy the serious safety defect; (b) with tens of millions of vehicles impacted in existing and potential future recalls, as a result of the Automaker Defendants' concealment of the Inflator Defect, the recalls cannot be implemented effectively due to supply constraints and resulting delays; (c) the recalls are incomplete, and apply to only a subset of the Class Vehicles.

3698. Plaintiffs, individually and on behalf of Class Members, seek all available monetary damages (including actual, compensatory, and punitive

damages), injunctive and equitable relief, and attorneys' fees and costs.

      c.      **Utah Count 3: Violation of the Utah Consumer Sales Practices Act (Utah Code Ann. § 13-11-1, *et seq.*) Against All Defendants.[50]**

3699. Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

3700. The Utah Plaintiffs bring this count under Utah law, individually and on behalf of the other members of the Utah Subclasses against the Automaker Defendants and Airbag Module Defendants for their respective Class Vehicles, and ARC. For the remaining Defendants, Plaintiffs who purchased or leased their Class Vehicles in states with materially similar laws may represent subclasses under this count against all other Defendants and ARC.

3701. For purposes of this count, members of the Utah Subclasses shall be referred to as "Class Members."

3702. For purposes of this count, ARC, the Automaker Defendants, and the Airbag Module Defendants shall be referred to as "Defendants."

3703. Defendants are "suppliers" under Utah Code Ann. § 13-11-3(6).

3704. Plaintiffs and Class Members are "persons" under Utah Code Ann. §

---

[50] Plaintiffs bring this count against ARC and the Airbag Module Defendants based on their omissions and concealment of material facts only.

13-11-3(5).

3705. The sales and leases of the Class Vehicles to Plaintiffs and Class Members were "consumer transactions" under Utah Code Ann. § 13-11-3(2).

3706. The Utah Consumer Sales Practices Act ("Utah CSPA") makes unlawful any "deceptive act or practice by a supplier in connection with a consumer transaction." Utah Code Ann. § 13-11-4. "An unconscionable act or practice by a supplier in connection with a consumer transaction" also violates the Utah CSPA. Utah Code Ann. § 13-11-5.

3707. In the course of their business, Defendants, through their agents, employees, and/or subsidiaries, violated the Utah CSPA by knowingly and intentionally misrepresenting, omitting, concealing, and/or failing to disclose material facts regarding the reliability, safety, and performance of the Class Vehicles and the Defective Inflators, as detailed above.

3708. Defendants had an ongoing duty to Plaintiffs and Class Members to refrain from unfair or deceptive practices under the Utah CSPA in the course of their business. Specifically, Defendants owed Plaintiffs and Class Members a duty to disclose all the material facts concerning the Defective Inflators in the Class Vehicles because:

a.      Given ARC's design, development, testing and manufacture of the

1043

Defective Inflators and its experience and knowledge as experts and long-time veterans of the automotive industry, it, along with the Automaker Defendants and the Airbag Module Defendants, possessed exclusive access to and was in a superior position to know the true facts about the Defective Inflators;

b.      Given the Airbag Module Defendants' role in the design, manufacture, and testing of the airbag modules with the Defective Inflators installed in them, and their experience and knowledge as experts and long-time veterans of the automotive industry, they, along with ARC and the Automaker Defendants, possessed exclusive access to and were in a superior position to know the true facts about the Defective Inflators;

c.      Given the Automaker Defendants' role in the design, manufacture, testing, and sale of Class Vehicles and Defective Inflators, and their experience and knowledge as experts and long-time veterans of the automotive industry, they, along with ARC and the Airbag Module Defendants, possessed exclusive access to and were in a superior position to know the true facts about the Defective Inflators;

d.      Given the Inflator Defect's hidden and technical nature, Plaintiffs and Class Members lack the sophisticated expertise in vehicle components

1044

and technology that would be necessary to discover the Inflator Defect on their own;

e.     Defendants knew that the Inflator Defect gave rise to serious safety concerns for the consumers who purchased and leased the Class Vehicles;

f.     The Inflator Defect poses a severe risk of harm in that, among other things, the metal shrapnel can puncture and stab the occupants, causing severe and potentially fatal injuries;

g.     Defendants knew about and investigated the Inflator Defect, but then did not notify consumers about it or disclose the Inflator Defect to NHTSA, and the Automaker Defendants did not launch a comprehensive recall for all Class Vehicles, all of which individually and together deprived Plaintiffs of an opportunity that otherwise could have led them to discover the truth about the Inflator Defect in their Class Vehicles; and

h.     The Automaker Defendants made, helped to make, or conspired to make incomplete representations about the safety and reliability of the Class Vehicles and their airbags, while purposefully withholding material facts about a known safety defect. Because they volunteered

to provide information about the Class Vehicles that they marketed and offered for sale and lease to consumers, the Automaker Defendants had the duty to disclose the whole truth.

3709. By misrepresenting the Class Vehicles as safe and reliable and the airbags installed in them as properly functioning and free from defects, and/or by failing to disclose and actively concealing the dangers and risk posed by the Inflator Defect to both consumers and NHTSA, Defendants engaged in one or more of the following unfair or deceptive business practices in violation of the Utah CSPA:

a.    Indicating that the Class Vehicles and the Defective Inflators installed in them have characteristics, uses, or benefits that they do not have;

b.    Indicating that the Class Vehicles and the Defective Inflators installed in them were of a particular quality, grade, or standard when, in fact, they were not of that quality, grade, or standard;

c.    Indicating that the Class Vehicles and the Defective Inflators installed in them were supplied in accordance with Defendants' prior representations, although they were not as represented.

Utah Code Ann. § 13-11-4.

3710. Defendants' unfair or deceptive acts or practices, including their misrepresentations, concealments, omissions, and/or suppressions of material facts,

1046

were designed to mislead and had a tendency or capacity to mislead and create a false impression in consumers that the Class Vehicles had properly-functioning and reliable airbags. Indeed, those misrepresentations, concealments, omissions, and suppressions of material facts did in fact deceive reasonable consumers, including Plaintiffs and Class Members, about the true safety and reliability of the Class Vehicles and/or the Defective Inflators installed in them, the quality of the Class Vehicles, and the true value of the Class Vehicles.

3711. Defendants intended for Plaintiffs and Class Members to rely on their misrepresentations, omissions, and concealment—which they did by purchasing and leasing the Class Vehicles at the prices they paid believing that their vehicles would not have an Inflator Defect that would affect the quality, reliability, and safety of the Class Vehicles and their airbags.

3712. Defendants' misrepresentations, concealments, omissions, and suppressions of material facts regarding the Inflator Defect and true characteristics of the Class Vehicles were material to the decisions of Plaintiffs and Class Members to purchase and lease those vehicles, as Defendants intended. Plaintiffs and Class Members were exposed to those misrepresentations, concealments, omissions, and suppressions of material facts, and relied on Defendants' misrepresentations that the Class Vehicles and their airbags were safe and reliable in deciding to purchase and

1047

lease the Class Vehicles.

3713. Plaintiffs' and Class Members' reliance was reasonable, as they had no way of discerning that Defendants' representations were false and misleading, or otherwise learning the facts that Defendants had concealed or failed to disclose. Plaintiffs and Class Members did not, and could not, unravel Defendants' deception on their own.

3714. Had they known the truth about the Inflator Defect, Plaintiffs and Class Members would not have purchased or leased the Class Vehicles, or would have paid significantly less for them.

3715. As a direct and proximate result of Defendants' deceptive practices, Plaintiffs and Class Members have sustained economic injury and loss—either by purchasing a vehicle they otherwise would not have purchased or paying more than they otherwise would have as a result of Defendants' actions and omissions alleged above—that first occurred at the time each Class Vehicle was purchased or leased.

3716. Defendants' violations present a continuing risk to Plaintiffs and Class Members, as well as to the general public, because the Class Vehicles remain unsafe due to the Defective Inflators therein. Defendants' unlawful acts and practices complained of herein affect the public interest.

3717. Defendants had prior notice that their deceptive acts and practices

violated the Utah CSPA by virtue of the notice provided by Plaintiffs, complaints to NHTSA, and prior rules and/or case decisions regarding the deceptive acts and practices described herein.

3718. Plaintiffs and Class Members seek an order enjoining the above unfair or deceptive acts or practices and awarding actual damages, punitive damages, and any other just and proper relief available under the Utah CSPA against all Defendants.

### d. Utah Count 4: Violation of the Utah Truth in Advertising Law (Utah Code Ann. § 13-11a-1, *et seq.*) Against All Defendants.[51]

3719. Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

3720. The Utah Plaintiffs bring this count under Utah law, individually and on behalf of the other members of the Utah Subclasses against the Automaker Defendants and Airbag Module Defendants for their respective Class Vehicles, and ARC. For the remaining Defendants, Plaintiffs who purchased or leased their Class Vehicles in states with materially similar laws may represent subclasses under this count against all other Defendants and ARC.

---

[51] Plaintiffs bring this count against ARC and the Airbag Module Defendants based on their omissions and concealment of material facts only.

1049

3721. For purposes of this count, members of the Utah Subclasses shall be referred to as "Class Members."

3722. For purposes of this count, ARC, the Automaker Defendants, and the Airbag Module Defendants shall be referred to as "Defendants."

3723. Plaintiffs, Defendants, and Class Members are "persons" under Utah Code Ann. § 13-11a-1(7).

3724. The Utah Truth in Advertising Law makes unlawful any deceptive practice undertaken in the course of a person's business. Utah Code Ann. § 13-11a-3.

3725. In the course of their business, Defendants, through their agents, employees, and/or subsidiaries, violated the Utah Truth in Advertising Law by knowingly and intentionally misrepresenting, omitting, concealing, and/or failing to disclose material facts regarding the reliability, safety, and performance of the Class Vehicles and the Defective Inflators, as detailed above.

3726. Defendants had an ongoing duty to Plaintiffs and Class Members to refrain from unfair or deceptive practices under the Utah Truth in Advertising Law in the course of their business. Specifically, Defendants owed Plaintiffs and Class Members a duty to disclose all the material facts concerning the Defective Inflators in the Class Vehicles because:

1050

a.   Given ARC's design, development, testing and manufacture of the Defective Inflators and its experience and knowledge as experts and long-time veterans of the automotive industry, it, along with the Automaker Defendants and the Airbag Module Defendants, possessed exclusive access to and was in a superior position to know the true facts about the Defective Inflators;

b.   Given the Airbag Module Defendants' role in the design, manufacture, and testing of the airbag modules with the Defective Inflators installed in them, and their experience and knowledge as experts and long-time veterans of the automotive industry, they, along with ARC and the Automaker Defendants, possessed exclusive access to and were in a superior position to know the true facts about the Defective Inflators;

c.   Given the Automaker Defendants' role in the design, manufacture, testing, and sale of Class Vehicles and Defective Inflators, and their experience and knowledge as experts and long-time veterans of the automotive industry, they, along with ARC and the Airbag Module Defendants, possessed exclusive access to and were in a superior position to know the true facts about the Defective Inflators;

d.   Given the Inflator Defect's hidden and technical nature, Plaintiffs and

1051

Class Members lack the sophisticated expertise in vehicle components and technology that would be necessary to discover the Inflator Defect on their own;

e.    Defendants knew that the Inflator Defect gave rise to serious safety concerns for the consumers who purchased and leased the Class Vehicles;

f.    The Inflator Defect poses a severe risk of harm in that, among other things, the metal shrapnel can puncture and stab the occupants, causing severe and potentially fatal injuries;

g.    Defendants knew about and investigated the Inflator Defect, but then did not notify consumers about it or disclose the Inflator Defect to NHTSA, and the Automaker Defendants did not launch a comprehensive recall for all Class Vehicles, all of which individually and together deprived Plaintiffs of an opportunity that otherwise could have led them to discover the truth about the Inflator Defect in their Class Vehicles; and

h.    The Automaker Defendants made, helped to make, or conspired to make incomplete representations about the safety and reliability of the Class Vehicles and their airbags, while purposefully withholding

1052

material facts about a known safety defect. Because they volunteered to provide information about the Class Vehicles that they marketed and offered for sale and lease to consumers, the Automaker Defendants had the duty to disclose the whole truth.

3727. By misrepresenting the Class Vehicles as safe and reliable and the airbags installed in them as properly functioning and free from defects, and/or by failing to disclose and actively concealing the dangers and risk posed by the Inflator Defect to both consumers and NHTSA, Defendants engaged in one or more of the following unfair or deceptive business practices in violation of the Utah Truth in Advertising Law:

    a.    Causing likelihood of confusion or of misunderstanding as to the approval or certification of the Class Vehicles and the Defective Inflators installed in them.

    b.    Representing that the Class Vehicles and the Defective Inflators installed in them have approval, characteristics, uses, or benefits that they do not have;

    c.    Representing that the Class Vehicles and the Defective Inflators installed in them were of a particular quality, grade, or standard when, in fact, they were not of that quality, grade, or standard;

    d.     Advertising the Class Vehicles and the Defective Inflators installed in them with the intent not to sell or lease them as advertised; and

    e.     Engaging in other conduct which created a likelihood of confusion or misunderstanding about the true characteristics of the Class Vehicles and the Defective Inflators installed in them.

Utah Code Ann. § 13-11a-3.

3728. Defendants' unfair or deceptive acts or practices, including their misrepresentations, concealments, omissions, and/or suppressions of material facts, were designed to mislead and had a tendency or capacity to mislead and create a false impression in consumers that the Class Vehicles had properly-functioning and reliable airbags. Indeed, those misrepresentations, concealments, omissions, and suppressions of material facts did in fact deceive reasonable consumers, including Plaintiffs and Class Members, about the true safety and reliability of the Class Vehicles and/or the Defective Inflators installed in them, the quality of the Class Vehicles, and the true value of the Class Vehicles.

3729. Defendants intended for Plaintiffs and Class Members to rely on their misrepresentations, omissions, and concealment—which they did by purchasing and leasing the Class Vehicles at the prices they paid believing that their vehicles would not have an Inflator Defect that would affect the quality, reliability, and safety of the

Class Vehicles and their airbags.

3730. Defendants' misrepresentations, concealments, omissions, and suppressions of material facts regarding the Inflator Defect and true characteristics of the Class Vehicles were material to the decisions of Plaintiffs and Class Members to purchase and lease those vehicles, as Defendants intended. Plaintiffs and Class Members were exposed to those misrepresentations, concealments, omissions, and suppressions of material facts, and relied on Defendants' misrepresentations that the Class Vehicles and their airbags were safe and reliable in deciding to purchase and lease the Class Vehicles.

3731. Plaintiffs' and Class Members' reliance was reasonable, as they had no way of discerning that Defendants' representations were false and misleading, or otherwise learning the facts that Defendants had concealed or failed to disclose. Plaintiffs and Class Members did not, and could not, unravel Defendants' deception on their own.

3732. Had they known the truth about the Inflator Defect, Plaintiffs and Class Members would not have purchased or leased the Class Vehicles, or would have paid significantly less for them.

3733. As a direct and proximate result of Defendants' deceptive practices, Plaintiffs and Class Members have sustained economic injury and loss—either by

1055

purchasing a vehicle they otherwise would not have purchased or paying more than they otherwise would have as a result of Defendants' actions and omissions alleged above—that first occurred at the time each Class Vehicle was purchased or leased.

3734. Defendants' violations present a continuing risk to Plaintiffs and Class Members, as well as to the general public, because the Class Vehicles remain unsafe due to the Defective Inflators therein. Defendants' unlawful acts and practices complained of herein affect the public interest.

3735. Pursuant to Utah Code Ann. § 13-11a-4, Plaintiffs and Class Members seek an order enjoining the above unfair or deceptive acts or practices and awarding actual damages, punitive damages, and any other just and proper relief available under the Utah CSPA against all Defendants.

e.    **Utah Count 5: Fraud by Omission and Concealment Against All Defendants.**

3736. Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

3737. The Utah Plaintiffs bring this count under Utah law, individually and on behalf of the other members of the Utah Subclasses against the Automaker Defendants and Airbag Module Defendants for their respective Class Vehicles, and ARC. For the remaining Defendants, Plaintiffs who purchased or leased their Class

Vehicles in states with materially similar laws may represent subclasses under this count against all other Defendants and ARC.

3738. For purposes of this count, members of the Utah Subclasses shall be referred to as "Class Members."

3739. For purposes of this count, ARC, the Automaker Defendants, and the Airbag Module Defendants shall be referred to as "Defendants."

3740. Defendants are liable for both fraudulent concealment and non-disclosure. *See, e.g.*, Restatement (Second) of Torts §§ 550-51 (1977).

3741. Defendants owed Plaintiffs and Class Members a duty to disclose all the material facts concerning the Defective Inflators in the Class Vehicles because:

    a.    Given the Automaker Defendants' role in the design, manufacture, testing, and sale of Class Vehicles and Defective Inflators, and their experience and knowledge as experts and long-time veterans of the automotive industry, they, along with ARC and the Airbag Module Defendants, possessed exclusive access to and were in a superior position to know the true facts about the Defective Inflators;

    b.    Given ARC's design, development, testing and manufacture of the Defective Inflators and its experience and knowledge as experts and long-time veterans of the automotive industry, it, along with the

Automaker Defendants and the Airbag Module Defendants, possessed exclusive access to and was in a superior position to know the true facts about the Defective Inflators;

c.    Given the Airbag Module Defendants' role in the design, manufacture, and testing of the airbag modules with the Defective Inflators installed in them, and their experience and knowledge as experts and long-time veterans of the automotive industry, they, along with ARC and the Automaker Defendants, possessed exclusive access to and were in a superior position to know the true facts about the Defective Inflators;

d.    Given the Inflator Defect's hidden and technical nature, Plaintiffs and Class Members lack the sophisticated expertise in vehicle components and technology that would be necessary to discover the Inflator Defect on their own;

e.    Defendants knew that the Inflator Defect gave rise to serious safety concerns for the consumers who purchased and leased the Class Vehicles;

f.    The Inflator Defect poses a severe risk of harm in that, among other things, the metal shrapnel can puncture and stab the occupants, causing severe and potentially fatal injuries;

1058

g.  Defendants knew about and investigated the Inflator Defect, but then did not notify consumers about it, disclose the Inflator Defect to NHTSA, or further launch a comprehensive recall for all Class Vehicles, which individually and together deprived Plaintiffs of an opportunity that otherwise could have led them to discover the truth about the Inflator Defect in their Class Vehicles; and

h.  The Automaker Defendants made, helped to make, or conspired to make incomplete representations about the safety and reliability of the Class Vehicles and their airbags, while purposefully withholding material facts about a known safety defect. Because they volunteered to provide information about the Class Vehicles that they marketed and offered for sale and lease to consumers, the Automaker Defendants had the duty to disclose the whole truth.

3742. In breach of their duties, Defendants failed to disclose the Inflator Defect and that the Class Vehicles' airbags were not safe and reliable to Plaintiffs and Class Members in connection with the sale of the Class Vehicles.

3743. The Inflator Defect within the Class Vehicles is material to the sale of the Class Vehicles because a reasonable person would find it important in purchasing, leasing, or retaining a new or used motor vehicle and because it directly

impacts the value of the Class Vehicles purchased or leased by Plaintiffs and Class Members.

3744. Defendants intended for Plaintiffs and Class Members to rely on their omissions and concealment—which they did by purchasing and leasing the Class Vehicles at the prices they paid believing that their vehicles would not have an Inflator Defect that would affect the quality, reliability, and safety of the Class Vehicles and their airbags.

3745. Plaintiffs' and Class Members' reliance was reasonable because a reasonable consumer would not have expected that the Class Vehicles contained a safety defect that poses such a serious risk. They had no way of learning the facts that Defendants had concealed or failed to disclose. Plaintiffs and Class Members did not, and could not, unravel Defendants' deception on their own.

3746. Defendants actively concealed and suppressed these material facts, in whole or in part, to maintain a market for the Class Vehicles and the Defective Inflators installed in them, to protect profits, and to avoid costly recalls that would expose them to liability for those expenses and harm the commercial reputations of Defendants and their products. They did so at the expense of Plaintiffs and Class Members.

3747. If Defendants had fully and adequately disclosed the Inflator Defect to

consumers, Plaintiffs and Class Members would have seen such a disclosure.

3748. Through their omissions and concealment with respect to the Inflator Defect within the Class Vehicles, Defendants intended to induce, and did induce, Plaintiffs and Class Members to either purchase a Class Vehicle that they otherwise would not have purchased, or pay more for a Class Vehicle than they otherwise would have paid.

3749. Had Plaintiffs and Class Members known of the Inflator Defect within the Class Vehicles, they would not have purchased the Class Vehicles or would have paid less for them.

3750. As a direct and proximate result of Defendants' omissions and concealment, Plaintiffs and other Class Members either overpaid for the Class Vehicles or would not have purchased the Class Vehicles at all if the Inflator Defect had been disclosed to them. Accordingly, Defendants are liable to Plaintiffs and Class Members for their damages in an amount to be proven at trial.

3751. Defendants acted maliciously, oppressively, deliberately, with intent to defraud; in reckless disregard of the Plaintiffs' and Class Members' rights and well-being; and to enrich themselves. Defendants' misconduct warrants an assessment of punitive damages, as permitted by law, in an amount sufficient to deter such conduct in the future, which amount shall be determined according to proof at trial.

### f.    Utah Count 6: Unjust Enrichment Against the Automaker Defendants.

3752. Plaintiffs reallege and incorporate by reference all allegations in Volume 1 of the Consolidated Class Action Complaint as though fully set forth herein.

3753. The Utah Plaintiffs bring this count under Utah law, individually and on behalf of the other members of the Utah Subclasses against the Automaker Defendants for their respective Class Vehicles. For the remaining Automaker Defendants, Plaintiffs who purchased or leased their Class Vehicles in states with materially similar laws may represent subclasses under this count against those Automaker Defendants.

3754. For purposes of this count, members of the Utah Subclasses shall be referred to as "Class Members."

3755. When they purchased and leased the Class Vehicles, Plaintiffs and Class Members conferred tangible and material economic benefits upon the Automaker Defendants, who readily accepted and retained these benefits.

3756. Plaintiffs and Class Members would not have purchased or leased their Class Vehicles, or would have paid less for them, had they known of the Inflator Defect at the time of purchase or lease. Therefore, the Automaker Defendants profited from the sale and lease of the Class Vehicles to the detriment and expense

1062

of Plaintiffs and Class Members.

3757. The Automaker Defendants appreciated these economic benefits. These benefits were the expected result of the Automaker Defendants acting in their pecuniary interest at the expense of their customers. They knew of these benefits because they were aware of the Inflator Defect, yet they failed to disclose this knowledge and misled the Plaintiffs and Class Members regarding the nature and quality of the Class Vehicles while profiting from this deception.

3758. It would be unjust, inequitable, and unconscionable for the Automaker Defendants to retain these benefits, including because they were procured as a result of their wrongful conduct alleged above.

3759. Plaintiffs and Class Members are entitled to restitution of the benefits the Automaker Defendants unjustly retained and/or any amounts necessary to return Plaintiffs and Class Members to the position they occupied prior to dealing with those Defendants, with such amounts to be determined at trial.

3760. Plaintiffs plead this claim separately as well as in the alternative to their claims for damages under Fed. R. Civ. P. 8(a)(3), because if the Court dismisses Plaintiffs' claims for damages enters judgment on them in favor of the Automaker Defendants, Plaintiffs will have no adequate legal remedy.

**46.    Vermont**

    **a.    Vermont Count 1: Breach of Express Warranty (Vt. Stat. Ann. Tit. 9A, §§ 2-313 and 2A-210) Against the Automaker Defendants.**

3761. Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

3762. The Vermont Plaintiff brings this count under Vermont law, individually and on behalf of the other members of the Vermont Subclasses against the Automaker Defendants for his or her respective Class Vehicle(s). For the remaining Automaker Defendants, Plaintiffs who purchased or leased their Class Vehicles in states with materially similar laws may represent subclasses under this count against those Automaker Defendants.

3763. For purposes of this count, members of the Vermont Subclasses shall be referred to as "Class Members."

3764. The Class Vehicles are "goods" under Vt. Stat. Ann. Tit. 9A, §§ 2-105(1) and 2A-103(1)(h).

3765. The Automaker Defendants are "merchants" of the Class Vehicles under Vt. Stat. Ann. Tit. 9A, §§ 2-104(1) and 2A-103(1)(t), "sellers" under § 2-103(1)(d), and "lessors" under § 2A-103(1)(p).

1064

3766. Plaintiffs and Class Members who purchased and leased the Class Vehicles in Vermont are "buyers" under Vt. Stat. Ann. Tit. 9A, §§ 2-103(1)(a) and "lessees" under § 2A-103(1)(n).

3767. The Automaker Defendants issued an express written warranty for each defective Class Vehicle they sold, including that:

a.   The Class Vehicles would be free of defects in materials and workmanship at the time of sale; and

b.   The Class Vehicles were safe and reliable, and their airbags would function properly in the event of a crash.

3768. The warranties listed above formed the basis of the bargain with regard to Plaintiffs and Class Members' purchase and lease of the Class Vehicles.

3769. The Automaker Defendants knowingly breached their warranty for the Class Vehicles because:

a.   The airbag inflators have latent defects which have a dangerous propensity to cause the inflators to rupture and eject metal shrapnel, subjecting Plaintiffs and Class Members to the risk of loss and injury; and

b.   The Automaker Defendants denied, concealed, and misrepresented the Inflator Defect, in the process refusing to pay for or provide in a

1065

reasonably timely fashion the needed repairs and replacements for Plaintiffs and Class Members.

3770. The Automaker Defendants knew or should have known that the warranties were false and/or misleading. Specifically, the Automaker Defendants were aware of the Inflator Defect in the Class Vehicles, which made the vehicles inherently defective and dangerous at the time that they were sold and leased to Plaintiffs and Class Members.

3771. Plaintiffs and Class Members were exposed to the Automaker Defendants' misrepresentations, and they had no way of discerning that the Automaker Defendants' representations were false and misleading or otherwise learning the material facts that the Automaker Defendants had concealed or failed to disclose. Accordingly, Plaintiffs and Class Members reasonably relied on the Automaker Defendants' express warranties when purchasing or leasing their Class Vehicles.

3772. Plaintiffs and Class Members timely provided the Automaker Defendants notice of the issues raised in this count and this Complaint and an opportunity to cure, as alleged in the paragraphs addressing Defendants' notice above.

3773. Alternatively, Plaintiffs and Class Members were excused from

1066

providing the Automaker Defendants with notice and an opportunity to cure the breach, because it would have been futile. As alleged above, the Automaker Defendants knew about the Defective Inflators for years; however, to date, the Automaker Defendants have not instituted a recall or any other repair program with respect to all of the Class Vehicles, or even acknowledged that the Inflator Defect exists in all of the Class Vehicles. Therefore, they have refused to recall or repair defective vehicles. Moreover, to the extent the Automaker Defendants have issued recalls, those recalls are inadequate because, *inter alia*: (a) they are belated because the Automaker Defendants knew about the Defective Inflators for years and did nothing to recall or remedy the serious safety defect; (b) with tens of millions of vehicles impacted in existing and potential future recalls, as a result of the Automaker Defendants' concealment of the Inflator Defect, the recalls cannot be implemented effectively due to supply constraints and resulting delays; (c) the recalls are incomplete, and apply to only a subset of the Class Vehicles.

3774. As a direct and proximate result of the Automaker Defendants' breach of their express warranties, the Class Vehicles were and are defective and the Inflator Defect was not remedied. Therefore, Plaintiff and Class Members have been damaged, in an amount to be proven at trial, through their overpayment at the time of purchase or lease for the Class Vehicles with an undisclosed safety defect that

would not be remedied.

> **b.    Vermont Count 2: Breach of Implied Warranty of Merchantability (Vt. Stat. Ann. Tit. 9A, §§ 2-314 and 2A-212) Against the Automaker Defendants.**

3775. Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

3776. The Vermont Plaintiff brings this count under Vermont law, individually and on behalf of the other members of the Vermont Subclasses against the Automaker Defendants for his or her respective Class Vehicle(s). For the remaining Automaker Defendants, Plaintiffs who purchased or leased their Class Vehicles in states with materially similar laws may represent subclasses under this count against those Automaker Defendants.

3777. For purposes of this count, members of the Vermont Subclasses shall be referred to as "Class Members."

3778. The Class Vehicles are "goods" under Vt. Stat. Ann. Tit. 9A, §§ 2-105(1) and 2A-103(1)(h).

3779. The Automaker Defendants are "merchants" of the Class Vehicles under Vt. Stat. Ann. Tit. 9A, §§ 2-104(1) and 2A-103(1)(t), "sellers" under § 2-103(1)(d), and "lessors" under § 2A-103(1)(p).

3780. Plaintiffs and Class Members who purchased and leased the Class

Vehicles in Vermont are "buyers" under Vt. Stat. Ann. Tit. 9A, §§ 2-103(a)(1) and "lessees" under § 2A-103(1)(n).

3781. Vermont law conferred an implied warranty that the Class Vehicles were in merchantable condition and fit for the ordinary purpose for which they were to be used pursuant to Vt. Stat. Ann. Tit. 9A, §§ 2-314 and 2A-212.

3782. The Class Vehicles are not merchantable, and as such the Automaker Defendants breached their implied warranties, because at the time of sale and all times thereafter:

a.  The Class Vehicles would not pass without objection in the automotive trade given the Inflator Defect;

b.  The Inflator Defect renders the Class Vehicles unsafe to drive and unfit for ordinary purposes;

c.  The Class Vehicles and the airbags therein were inadequately labeled as safe and reliable, and the labeling failed to disclose the Inflator Defect; and

d.  The Class Vehicles do not conform to their labeling, which represents that the vehicles are safe and suitable for their intended use.

3783. Plaintiffs and Class Members timely provided the Automaker Defendants notice of the issues raised in this count and this Complaint and an

opportunity to cure, as alleged in the paragraphs addressing Defendants' notice above.

3784. Alternatively, Plaintiffs and Class Members were excused from providing the Automaker Defendants with notice and an opportunity to cure the breach because it would have been futile. As alleged above, the Automaker Defendants have long known that the Class Vehicles contained the Defective Inflators, and that the Defective Inflators have caused airbags to malfunction in crashes involving the Class Vehicles; however, to date, the Automaker Defendants have not instituted a recall or any other repair program with respect to all of the Class Vehicles, or even acknowledged that the Inflator Defect exists in all of those Class Vehicles. Moreover, to the extent the Automaker Defendants have issued recalls, those recalls are inadequate because, inter alia: (a) they are belated because the Automaker Defendants knew about the Defective Inflators for years and did nothing to recall or remedy the serious safety defect; (b) with tens of millions of vehicles impacted in existing and potential future recalls, as a result of the Automaker Defendants' concealment of the Inflator Defect, the recalls cannot be implemented effectively due to supply constraints and resulting delays; (c) the recalls are incomplete, and apply to only a subset of the Class Vehicles.

3785. Plaintiffs, individually and on behalf of Class Members, seek all

available monetary damages (including actual, compensatory, and punitive damages), injunctive and equitable relief, and attorneys' fees and costs.

      c.    **Vermont Count 3: Violation of the Vermont Consumer Protection Act (Vt. Stat. Ann. Tit. 9, § 13-11-1, *et seq.*) Against All Defendants.[52]**

3786. Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

3787. The Vermont Plaintiff brings this count under Vermont law, individually and on behalf of the other members of the Vermont Subclasses against the Automaker Defendants and Airbag Module Defendants for his or her respective Class Vehicle(s), and ARC. For the remaining Defendants, Plaintiffs who purchased or leased their Class Vehicles in states with materially similar laws may represent subclasses under this count against all other Defendants and ARC.

3788. For purposes of this count, members of the Vermont Subclasses shall be referred to as "Class Members."

3789. For purposes of this count, ARC, the Automaker Defendants, and the Airbag Module Defendants shall be referred to as "Defendants."

3790. Plaintiffs and Class Members are "consumers" under Vt. Stat. Ann. Tit.

---

[52] Plaintiffs bring this count against ARC and the Airbag Module Defendants based on their omissions and concealment of material facts only.

9, § 2451a(1).

3791. The Class Vehicles are "goods" under Vt. Stat. Ann. Tit. 9, § 2451a(2).

3792. The Vermont Consumer Protection Act ("Vermont CPA") prohibits "[u]nfair methods of competition . . . and unfair or deceptive acts or practices." Vt. Stat. Ann. Tit. 9, § 2453(a).

3793. In the course of their business, Defendants, through their agents, employees, and/or subsidiaries, violated the Vermont CPA by knowingly and intentionally misrepresenting, omitting, concealing, and/or failing to disclose material facts regarding the reliability, safety, and performance of the Class Vehicles and the Defective Inflators, as detailed above.

3794. Defendants had an ongoing duty to Plaintiffs and Class Members to refrain from unfair or deceptive practices under the Vermont CPA in the course of their business. Specifically, Defendants owed Plaintiffs and Class Members a duty to disclose all the material facts concerning the Defective Inflators in the Class Vehicles because:

    a.    Given ARC's design, development, testing and manufacture of the Defective Inflators and its experience and knowledge as experts and long-time veterans of the automotive industry, it, along with the Automaker Defendants and the Airbag Module Defendants, possessed

exclusive access to and was in a superior position to know the true facts about the Defective Inflators;

b.      Given the Airbag Module Defendants' role in the design, manufacture, and testing of the airbag modules with the Defective Inflators installed in them, and their experience and knowledge as experts and long-time veterans of the automotive industry, they, along with ARC and the Automaker Defendants, possessed exclusive access to and were in a superior position to know the true facts about the Defective Inflators;

c.      Given the Automaker Defendants' role in the design, manufacture, testing, and sale of Class Vehicles and Defective Inflators, and their experience and knowledge as experts and long-time veterans of the automotive industry, they, along with ARC and the Airbag Module Defendants, possessed exclusive access to and were in a superior position to know the true facts about the Defective Inflators;

d.      Given the Inflator Defect's hidden and technical nature, Plaintiffs and Class Members lack the sophisticated expertise in vehicle components and technology that would be necessary to discover the Inflator Defect on their own;

e.      Defendants knew that the Inflator Defect gave rise to serious safety

concerns for the consumers who purchased and leased the Class Vehicles;

f.    The Inflator Defect poses a severe risk of harm in that, among other things, the metal shrapnel can puncture and stab the occupants, causing severe and potentially fatal injuries;

g.    Defendants knew about and investigated the Inflator Defect, but then did not notify consumers about it or disclose the Inflator Defect to NHTSA, and the Automaker Defendants did not launch a comprehensive recall for all Class Vehicles, all of which individually and together deprived Plaintiffs of an opportunity that otherwise could have led them to discover the truth about the Inflator Defect in their Class Vehicles; and

h.    The Automaker Defendants made, helped to make, or conspired to make incomplete representations about the safety and reliability of the Class Vehicles and their airbags, while purposefully withholding material facts about a known safety defect. Because they volunteered to provide information about the Class Vehicles that they marketed and offered for sale and lease to consumers, the Automaker Defendants had the duty to disclose the whole truth.

1074

3795. By misrepresenting the Class Vehicles as safe and reliable and the airbags installed in them as properly functioning and free from defects, and/or by failing to disclose and actively concealing the dangers and risk posed by the Inflator Defect to both consumers and NHTSA, Defendants engaged in one or more of the following unfair or deceptive business practices in violation of the Vermont CPA:

    a.    Causing likelihood of confusion or of misunderstanding as to the approval or certification of the Class Vehicles and the Defective Inflators installed in them;

    b.    Representing that the Class Vehicles and the Defective Inflators had a characteristic that they did not actually have—*i.e.*, that the vehicles were safe and suitable for use on the roadway, when, in fact, they were not because their airbag inflators were defectively designed such that they had an unreasonably dangerous propensity to rupture, causing severe and fatal injuries;

    c.    Representing that the Class Vehicles and the Defective Inflators installed in them were of a particular quality, grade, or standard when, in fact, they were not of that quality, grade, or standard;

    d.    Advertising the Class Vehicles and the Defective Inflators installed in them with the intent not to sell or lease them as advertised;

      e.      Engaging in other conduct which created a likelihood of confusion or of misunderstanding; and

      f.      Using or employing deception, fraud, false pretense, false promise or misrepresentation, or the concealment, suppression, or omission of a material fact with intent that others rely upon such concealment, suppression, or omission, in connection with the advertisement and sale/lease of the Class Vehicles and the Defective Inflators installed in them, whether or not any person has in fact been misled, deceived or damaged thereby.

Vt. Stat. Ann. Tit. 9, § 2453(a).

3796. Defendants' unfair or deceptive acts or practices, including their misrepresentations, concealments, omissions, and/or suppressions of material facts, were designed to mislead and had a tendency or capacity to mislead and create a false impression in consumers that the Class Vehicles had properly-functioning and reliable airbags. Indeed, those misrepresentations, concealments, omissions, and suppressions of material facts did in fact deceive reasonable consumers, including Plaintiffs and Class Members, about the true safety and reliability of the Class Vehicles and/or the Defective Inflators installed in them, the quality of the Class Vehicles, and the true value of the Class Vehicles.

3797. Defendants intended for Plaintiffs and Class Members to rely on their misrepresentations, omissions, and concealment—which they did by purchasing and leasing the Class Vehicles at the prices they paid believing that their vehicles would not have an Inflator Defect that would affect the quality, reliability, and safety of the Class Vehicles and their airbags.

3798. Defendants' misrepresentations, concealments, omissions, and suppressions of material facts regarding the Inflator Defect and true characteristics of the Class Vehicles were material to the decisions of Plaintiffs and Class Members to purchase and lease those vehicles, as Defendants intended. Plaintiffs and Class Members were exposed to those misrepresentations, concealments, omissions, and suppressions of material facts, and relied on Defendants' misrepresentations that the Class Vehicles and their airbags were safe and reliable in deciding to purchase and lease the Class Vehicles.

3799. Plaintiffs' and Class Members' reliance was reasonable, as they had no way of discerning that Defendants' representations were false and misleading, or otherwise learning the facts that Defendants had concealed or failed to disclose. Plaintiffs and Class Members did not, and could not, unravel Defendants' deception on their own.

3800. Had they known the truth about the Inflator Defect, Plaintiffs and Class

Members would not have purchased or leased the Class Vehicles, or would have paid significantly less for them.

3801. As a direct and proximate result of Defendants' deceptive practices, Plaintiffs and Class Members have sustained economic injury and loss—either by purchasing a vehicle they otherwise would not have purchased or paying more than they otherwise would have as a result of Defendants' actions and omissions alleged above—that first occurred at the time each Class Vehicle was purchased or leased.

3802. Defendants' violations present a continuing risk to Plaintiffs and Class Members, as well as to the general public, because the Class Vehicles remain unsafe due to the Defective Inflators therein. Defendants' unlawful acts and practices complained of herein affect the public interest.

3803. Pursuant to Vt. Stat. Ann. Tit. 9, § 2461(a), Plaintiffs and Class Members seek an order enjoining the above unfair or deceptive acts or practices and awarding actual damages, punitive damages, and any other just and proper relief available under the Vermont CPA against all Defendants.

### d.    Vermont Count 4: Fraud by Omission and Concealment Against All Defendants.

3804. Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

3805. The Vermont Plaintiff brings this count under Vermont law, individually and on behalf of the other members of the Vermont Subclasses against the Automaker Defendants and Airbag Module Defendants for his or her respective Class Vehicle(s), and ARC. For the remaining Defendants, Plaintiffs who purchased or leased their Class Vehicles in states with materially similar laws may represent subclasses under this count against all other Defendants and ARC.

3806. For purposes of this count, members of the Vermont Subclasses shall be referred to as "Class Members."

3807. For purposes of this count, ARC, the Automaker Defendants, and the Airbag Module Defendants shall be referred to as "Defendants."

3808. Defendants are liable for both fraudulent concealment and non-disclosure. *See, e.g.*, Restatement (Second) of Torts §§ 550-51 (1977).

3809. Defendants owed Plaintiffs and Class Members a duty to disclose all the material facts concerning the Defective Inflators in the Class Vehicles because:

a.  Given the Automaker Defendants' role in the design, manufacture, testing, and sale of Class Vehicles and Defective Inflators, and their experience and knowledge as experts and long-time veterans of the automotive industry, they, along with ARC and the Airbag Module Defendants, possessed exclusive access to and were in a superior

1079

position to know the true facts about the Defective Inflators;

b.  Given ARC's design, development, testing and manufacture of the Defective Inflators and its experience and knowledge as experts and long-time veterans of the automotive industry, it, along with the Automaker Defendants and the Airbag Module Defendants, possessed exclusive access to and was in a superior position to know the true facts about the Defective Inflators;

c.  Given the Airbag Module Defendants' role in the design, manufacture, and testing of the airbag modules with the Defective Inflators installed in them, and their experience and knowledge as experts and long-time veterans of the automotive industry, they, along with ARC and the Automaker Defendants, possessed exclusive access to and were in a superior position to know the true facts about the Defective Inflators;

d.  Given the Inflator Defect's hidden and technical nature, Plaintiffs and Class Members lack the sophisticated expertise in vehicle components and technology that would be necessary to discover the Inflator Defect on their own;

e.  Defendants knew that the Inflator Defect gave rise to serious safety concerns for the consumers who purchased and leased the Class

Vehicles;

f.    The Inflator Defect poses a severe risk of harm in that, among other things, the metal shrapnel can puncture and stab the occupants, causing severe and potentially fatal injuries;

g.    Defendants knew about and investigated the Inflator Defect, but then did not notify consumers about it, disclose the Inflator Defect to NHTSA, or further launch a comprehensive recall for all Class Vehicles, which individually and together deprived Plaintiffs of an opportunity that otherwise could have led them to discover the truth about the Inflator Defect in their Class Vehicles; and

h.    The Automaker Defendants made, helped to make, or conspired to make incomplete representations about the safety and reliability of the Class Vehicles and their airbags, while purposefully withholding material facts about a known safety defect. Because they volunteered to provide information about the Class Vehicles that they marketed and offered for sale and lease to consumers, the Automaker Defendants had the duty to disclose the whole truth.

3810.   In breach of their duties, Defendants failed to disclose the Inflator

Defect and that the Class Vehicles' airbags were not safe and reliable to Plaintiffs and Class Members in connection with the sale of the Class Vehicles.

3811. The Inflator Defect within the Class Vehicles is material to the sale of the Class Vehicles because a reasonable person would find it important in purchasing, leasing, or retaining a new or used motor vehicle and because it directly impacts the value of the Class Vehicles purchased or leased by Plaintiffs and Class Members.

3812. Defendants intended for Plaintiffs and Class Members to rely on their omissions and concealment—which they did by purchasing and leasing the Class Vehicles at the prices they paid believing that their vehicles would not have an Inflator Defect that would affect the quality, reliability, and safety of the Class Vehicles and their airbags.

3813. Plaintiffs' and Class Members' reliance was reasonable because a reasonable consumer would not have expected that the Class Vehicles contained a safety defect that poses such a serious risk. They had no way of learning the facts that Defendants had concealed or failed to disclose. Plaintiffs and Class Members did not, and could not, unravel Defendants' deception on their own.

3814. Defendants actively concealed and suppressed these material facts, in whole or in part, to maintain a market for the Class Vehicles and the Defective

Inflators installed in them, to protect profits, and to avoid costly recalls that would expose them to liability for those expenses and harm the commercial reputations of Defendants and their products. They did so at the expense of Plaintiffs and Class Members.

3815. If Defendants had fully and adequately disclosed the Inflator Defect to consumers, Plaintiffs and Class Members would have seen such a disclosure.

3816. Through their omissions and concealment with respect to the Inflator Defect within the Class Vehicles, Defendants intended to induce, and did induce, Plaintiffs and Class Members to either purchase a Class Vehicle that they otherwise would not have purchased, or pay more for a Class Vehicle than they otherwise would have paid.

3817. Had Plaintiffs and Class Members known of the Inflator Defect within the Class Vehicles, they would not have purchased the Class Vehicles or would have paid less for them.

3818. As a direct and proximate result of Defendants' omissions and concealment, Plaintiffs and other Class Members either overpaid for the Class Vehicles or would not have purchased the Class Vehicles at all if the Inflator Defect had been disclosed to them. Accordingly, Defendants are liable to Plaintiffs and Class Members for their damages in an amount to be proven at trial.

3819. Defendants acted maliciously, oppressively, deliberately, with intent to defraud; in reckless disregard of the Plaintiffs' and Class Members' rights and well-being; and to enrich themselves. Defendants' misconduct warrants an assessment of punitive damages, as permitted by law, in an amount sufficient to deter such conduct in the future, which amount shall be determined according to proof at trial.

### e.     Vermont Count 5: Unjust Enrichment Against the Automaker Defendants.

3820. Plaintiffs reallege and incorporate by reference all allegations in Volume 1 of the Consolidated Class Action Complaint as though fully set forth herein.

3821. The Vermont Plaintiff brings this count under Vermont law, individually and on behalf of the other members of the Vermont Subclasses against the Automaker Defendants for his or her respective Class Vehicle(s). For the remaining Automaker Defendants, Plaintiffs who purchased or leased their Class Vehicles in states with materially similar laws may represent subclasses under this count against those Automaker Defendants.

3822. For purposes of this count, members of the Vermont Subclasses shall be referred to as "Class Members."

3823. When they purchased and leased the Class Vehicles, Plaintiffs and

1084

Class Members conferred tangible and material economic benefits upon the Automaker Defendants, who readily accepted and retained these benefits.

3824. Plaintiffs and Class Members would not have purchased or leased their Class Vehicles, or would have paid less for them, had they known of the Inflator Defect at the time of purchase or lease. Therefore, the Automaker Defendants profited from the sale and lease of the Class Vehicles to the detriment and expense of Plaintiffs and Class Members.

3825. The Automaker Defendants appreciated these economic benefits. These benefits were the expected result of the Automaker Defendants acting in their pecuniary interest at the expense of their customers. They knew of these benefits because they were aware of the Inflator Defect, yet they failed to disclose this knowledge and misled the Plaintiffs and Class Members regarding the nature and quality of the Class Vehicles while profiting from this deception.

3826. It would be unjust, inequitable, and unconscionable for the Automaker Defendants to retain these benefits, including because they were procured as a result of their wrongful conduct alleged above.

3827. Plaintiffs and Class Members are entitled to restitution of the benefits the Automaker Defendants unjustly retained and/or any amounts necessary to return

1085

Plaintiffs and Class Members to the position they occupied prior to dealing with those Defendants, with such amounts to be determined at trial.

3828. Plaintiffs plead this claim separately as well as in the alternative to their claims for damages under Fed. R. Civ. P. 8(a)(3), because if the Court dismisses Plaintiffs' claims for damages enters judgment on them in favor of the Automaker Defendants, Plaintiffs will have no adequate legal remedy.

### 47.   Virginia

#### a.   Virginia Count 1: Breach of Express Warranty (Va. Code Ann. §§ 8.2-313 and 8.2A-210) Against the Automaker Defendants.

3829. Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

3830. The Virginia Plaintiff brings this count under Virginia law, individually and on behalf of the other members of the Virginia Subclasses against the Automaker Defendants for his or her respective Class Vehicle(s). For the remaining Automaker Defendants, Plaintiffs who purchased or leased their Class Vehicles in states with materially similar laws may represent subclasses under this count against those Automaker Defendants.

3831. For purposes of this count, members of the Virginia Subclasses shall be

1086

referred to as "Class Members."

3832. The Class Vehicles are "goods" under Va. Code Ann. §§ 8.2-105(1) and 8.2A-103(1)(h).

3833. The Automaker Defendants are "merchants" of the Class Vehicles under Va. Code Ann. §§ 8.2-104(1) and 8.2A-103(1)(t), "sellers" under § 8.2-103(1)(d), and "lessors" under § 8.2A-103(1)(p).

3834. Plaintiffs and Class Members who purchased and leased the Class Vehicles in Virginia are "buyers" under Va. Code Ann. §§ 8.2-103(1)(a) and "lessees" under § 8.2A-103(1)(n).

3835. The Automaker Defendants issued an express written warranty for each defective Class Vehicle they sold, including that:

a.    The Class Vehicles would be free of defects in materials and workmanship at the time of sale; and

b.    The Class Vehicles were safe and reliable, and their airbags would function properly in the event of a crash.

3836. The warranties listed above formed the basis of the bargain with regard to Plaintiffs and Class Members' purchase and lease of the Class Vehicles.

3837. The Automaker Defendants knowingly breached their warranty for the

1087

Class Vehicles because:

  a.  The airbag inflators have latent defects which have a dangerous propensity to cause the inflators to rupture and eject metal shrapnel, subjecting Plaintiffs and Class Members to the risk of loss and injury; and

  b.  The Automaker Defendants denied, concealed, and misrepresented the Inflator Defect, in the process refusing to pay for or provide in a reasonably timely fashion the needed repairs and replacements for Plaintiffs and Class Members.

3838. The Automaker Defendants knew or should have known that the warranties were false and/or misleading. Specifically, the Automaker Defendants were aware of the Inflator Defect in the Class Vehicles, which made the vehicles inherently defective and dangerous at the time that they were sold and leased to Plaintiffs and Class Members.

3839. Plaintiffs and Class Members were exposed to the Automaker Defendants' misrepresentations, and they had no way of discerning that the Automaker Defendants' representations were false and misleading or otherwise learning the material facts that the Automaker Defendants had concealed or failed to disclose. Accordingly, Plaintiffs and Class Members reasonably relied on the

Automaker Defendants' express warranties when purchasing or leasing their Class Vehicles.

3840. Plaintiffs and Class Members timely provided the Automaker Defendants notice of the issues raised in this count and this Complaint and an opportunity to cure, as alleged in the paragraphs addressing Defendants' notice above.

3841. Alternatively, Plaintiffs and Class Members were excused from providing the Automaker Defendants with notice and an opportunity to cure the breach, because it would have been futile. As alleged above, the Automaker Defendants knew about the Defective Inflators for years; however, to date, the Automaker Defendants have not instituted a recall or any other repair program with respect to all of the Class Vehicles, or even acknowledged that the Inflator Defect exists in all of the Class Vehicles. Therefore, they have refused to recall or repair defective vehicles. Moreover, to the extent the Automaker Defendants have issued recalls, those recalls are inadequate because, *inter alia*: (a) they are belated because the Automaker Defendants knew about the Defective Inflators for years and did nothing to recall or remedy the serious safety defect; (b) with tens of millions of vehicles impacted in existing and potential future recalls, as a result of the Automaker Defendants' concealment of the Inflator Defect, the recalls cannot be

implemented effectively due to supply constraints and resulting delays; (c) the recalls are incomplete, and apply to only a subset of the Class Vehicles.

3842. As a direct and proximate result of the Automaker Defendants' breach of their express warranties, the Class Vehicles were and are defective and the Inflator Defect was not remedied. Therefore, Plaintiff and Class Members have been damaged, in an amount to be proven at trial, through their overpayment at the time of purchase or lease for the Class Vehicles with an undisclosed safety defect that would not be remedied.

> **b.   Virginia Count 2: Breach of Implied Warranty of Merchantability (Va. Code Ann. §§ 8.2-314 and 8.2A-212) Against the Automaker Defendants.**

3843. Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

3844. The Virginia Plaintiff brings this count under Virginia law, individually and on behalf of the other members of the Virginia Subclasses against the Automaker Defendants for his or her respective Class Vehicle(s). For the remaining Automaker Defendants, Plaintiffs who purchased or leased their Class Vehicles in states with materially similar laws may represent subclasses under this count against those Automaker Defendants.

3845. For purposes of this count, members of the Virginia Subclasses shall be

referred to as "Class Members."

3846. The Class Vehicles are "goods" under Va. Code Ann. §§ 8.2-105(1) and 8.2A-103(1)(h).

3847. The Automaker Defendants are "merchants" of the Class Vehicles under Va. Code Ann. §§ 8.2-104(1) and 8.2A-103(1)(t), "sellers" under § 8.2-103(1)(d), and "lessors" under § 8.2A-103(1)(p).

3848. Plaintiffs and Class Members who purchased and leased the Class Vehicles in Virginia are "buyers" under Va. Code Ann. §§ 8.2-103(a)(1) and "lessees" under § 8.2A-103(1)(n).

3849. Virginia law conferred an implied warranty that the Class Vehicles were in merchantable condition and fit for the ordinary purpose for which they were to be used pursuant to Va. Code Ann. §§ 8.2-314 and 8.2A-212.

3850. The Class Vehicles are not merchantable, and as such the Automaker Defendants breached their implied warranties, because at the time of sale and all times thereafter:

a.   The Class Vehicles would not pass without objection in the automotive trade given the Inflator Defect;

b.   The Inflator Defect renders the Class Vehicles unsafe to drive and unfit for ordinary purposes;

1091

    c.      The Class Vehicles and the airbags therein were inadequately labeled as safe and reliable, and the labeling failed to disclose the Inflator Defect; and

    d.      The Class Vehicles do not conform to their labeling, which represents that the vehicles are safe and suitable for their intended use.

3851. Plaintiffs and Class Members timely provided the Automaker Defendants notice of the issues raised in this count and this Complaint and an opportunity to cure, as alleged in the paragraphs addressing Defendants' notice above.

3852. Alternatively, Plaintiffs and Class Members were excused from providing the Automaker Defendants with notice and an opportunity to cure the breach because it would have been futile. As alleged above, the Automaker Defendants have long known that the Class Vehicles contained the Defective Inflators, and that the Defective Inflators have caused airbags to malfunction in crashes involving the Class Vehicles; however, to date, the Automaker Defendants have not instituted a recall or any other repair program with respect to all of the Class Vehicles, or even acknowledged that the Inflator Defect exists in all of those Class Vehicles. Moreover, to the extent the Automaker Defendants have issued recalls, those recalls are inadequate because, inter alia: (a) they are belated because the

Automaker Defendants knew about the Defective Inflators for years and did nothing to recall or remedy the serious safety defect; (b) with tens of millions of vehicles impacted in existing and potential future recalls, as a result of the Automaker Defendants' concealment of the Inflator Defect, the recalls cannot be implemented effectively due to supply constraints and resulting delays; (c) the recalls are incomplete, and apply to only a subset of the Class Vehicles.

3853. Plaintiffs, individually and on behalf of Class Members, seek all available monetary damages (including actual, compensatory, and punitive damages), injunctive and equitable relief, and attorneys' fees and costs.

> **c.** **Virginia Count 3: Violation of the Virginia Consumer Protection Act (Va. Code Ann. § 59.1-196, *et seq.*) Against All Defendants.[53]**

3854. Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

3855. The Virginia Plaintiff brings this count under Virginia law, individually and on behalf of the other members of the Virginia Subclasses against the Automaker Defendants and Airbag Module Defendants for his or her respective Class Vehicle(s), and ARC. For the remaining Defendants, Plaintiffs who purchased or leased their

---

[53] Plaintiffs bring this count against ARC and the Airbag Module Defendants based on their omissions and concealment of material facts only.

Class Vehicles in states with materially similar laws may represent subclasses under this count against all other Defendants and ARC.

3856. For purposes of this count, members of the Virginia Subclasses shall be referred to as "Class Members."

3857. For purposes of this count, ARC, the Automaker Defendants, and the Airbag Module Defendants shall be referred to as "Defendants."

3858. Defendants, Plaintiffs, and Class Members are "persons" under Va. Code Ann. § 59.1-198.

3859. Defendants are "suppliers" under Va. Code Ann. § 59.1-198.

3860. The Virginia Consumer Protection Act ("Virginia CPA") makes unlawful "fraudulent acts or practices." Va. Code Ann. § 59.1-200(A).

3861. In the course of their business, Defendants, through their agents, employees, and/or subsidiaries, violated the Virginia CPA by knowingly and intentionally misrepresenting, omitting, concealing, and/or failing to disclose material facts regarding the reliability, safety, and performance of the Class Vehicles and the Defective Inflators, as detailed above.

3862. Defendants had an ongoing duty to Plaintiffs and Class Members to refrain from unfair or deceptive practices under the Virginia CPA in the course of their business. Specifically, Defendants owed Plaintiffs and Class Members a duty

1094

to disclose all the material facts concerning the Defective Inflators in the Class Vehicles because:

a. Given ARC's design, development, testing and manufacture of the Defective Inflators and its experience and knowledge as experts and long-time veterans of the automotive industry, it, along with the Automaker Defendants and the Airbag Module Defendants, possessed exclusive access to and was in a superior position to know the true facts about the Defective Inflators;

b. Given the Airbag Module Defendants' role in the design, manufacture, and testing of the airbag modules with the Defective Inflators installed in them, and their experience and knowledge as experts and long-time veterans of the automotive industry, they, along with ARC and the Automaker Defendants, possessed exclusive access to and were in a superior position to know the true facts about the Defective Inflators;

c. Given the Automaker Defendants' role in the design, manufacture, testing, and sale of Class Vehicles and Defective Inflators, and their experience and knowledge as experts and long-time veterans of the automotive industry, they, along with ARC and the Airbag Module Defendants, possessed exclusive access to and were in a superior

1095

position to know the true facts about the Defective Inflators;

d.     Given the Inflator Defect's hidden and technical nature, Plaintiffs and Class Members lack the sophisticated expertise in vehicle components and technology that would be necessary to discover the Inflator Defect on their own;

e.     Defendants knew that the Inflator Defect gave rise to serious safety concerns for the consumers who purchased and leased the Class Vehicles;

f.     The Inflator Defect poses a severe risk of harm in that, among other things, the metal shrapnel can puncture and stab the occupants, causing severe and potentially fatal injuries;

g.     Defendants knew about and investigated the Inflator Defect, but then did not notify consumers about it or disclose the Inflator Defect to NHTSA, and the Automaker Defendants did not launch a comprehensive recall for all Class Vehicles, all of which individually and together deprived Plaintiffs of an opportunity that otherwise could have led them to discover the truth about the Inflator Defect in their Class Vehicles; and

h.     The Automaker Defendants made, helped to make, or conspired to

1096

make incomplete representations about the safety and reliability of the Class Vehicles and their airbags, while purposefully withholding material facts about a known safety defect. Because they volunteered to provide information about the Class Vehicles that they marketed and offered for sale and lease to consumers, the Automaker Defendants had the duty to disclose the whole truth.

3863. By misrepresenting the Class Vehicles as safe and reliable and the airbags installed in them as properly functioning and free from defects, and/or by failing to disclose and actively concealing the dangers and risk posed by the Inflator Defect to both consumers and NHTSA, Defendants engaged in one or more of the following unfair or deceptive business practices in violation of the Virginia CPA:

a. Representing that the Class Vehicles and the Defective Inflators had a characteristic that they did not actually have—*i.e.*, that the vehicles were safe and suitable for use on the roadway, when, in fact, they were not because their airbag inflators were defectively designed such that they had an unreasonably dangerous propensity to rupture, causing severe and fatal injuries;

b. Representing that the Class Vehicles and the Defective Inflators installed in them were of a particular quality, grade, or standard when,

1097

in fact, they were not of that quality, grade, or standard; and

c.    Advertising the Class Vehicles and the Defective Inflators installed in
      them with the intent not to sell or lease them as advertised.

Va. Code Ann. § 59.1-200(A).

3864. Defendants' unfair or deceptive acts or practices, including their misrepresentations, concealments, omissions, and/or suppressions of material facts, were designed to mislead and had a tendency or capacity to mislead and create a false impression in consumers that the Class Vehicles had properly-functioning and reliable airbags. Indeed, those misrepresentations, concealments, omissions, and suppressions of material facts did in fact deceive reasonable consumers, including Plaintiffs and Class Members, about the true safety and reliability of the Class Vehicles and/or the Defective Inflators installed in them, the quality of the Class Vehicles, and the true value of the Class Vehicles.

3865. Defendants intended for Plaintiffs and Class Members to rely on their misrepresentations, omissions, and concealment—which they did by purchasing and leasing the Class Vehicles at the prices they paid believing that their vehicles would not have an Inflator Defect that would affect the quality, reliability, and safety of the Class Vehicles and their airbags.

3866. Defendants'   misrepresentations,   concealments,   omissions,   and

suppressions of material facts regarding the Inflator Defect and true characteristics of the Class Vehicles were material to the decisions of Plaintiffs and Class Members to purchase and lease those vehicles, as Defendants intended. Plaintiffs and Class Members were exposed to those misrepresentations, concealments, omissions, and suppressions of material facts, and relied on Defendants' misrepresentations that the Class Vehicles and their airbags were safe and reliable in deciding to purchase and lease the Class Vehicles.

3867. Plaintiffs' and Class Members' reliance was reasonable, as they had no way of discerning that Defendants' representations were false and misleading, or otherwise learning the facts that Defendants had concealed or failed to disclose. Plaintiffs and Class Members did not, and could not, unravel Defendants' deception on their own.

3868. Had they known the truth about the Inflator Defect, Plaintiffs and Class Members would not have purchased or leased the Class Vehicles, or would have paid significantly less for them.

3869. As a direct and proximate result of Defendants' deceptive practices, Plaintiffs and Class Members have sustained economic injury and loss—either by purchasing a vehicle they otherwise would not have purchased or paying more than they otherwise would have as a result of Defendants' actions and omissions alleged

above—that first occurred at the time each Class Vehicle was purchased or leased.

3870. Defendants' violations present a continuing risk to Plaintiffs and Class Members, as well as to the general public, because the Class Vehicles remain unsafe due to the Defective Inflators therein. Defendants' unlawful acts and practices complained of herein affect the public interest.

3871. Pursuant to Va. Code Ann. § 59.1-204(A)–(B), Plaintiffs and Class Members seek an order enjoining the above unfair or deceptive acts or practices and awarding actual damages, punitive damages, and any other just and proper relief available under the Virginia CPA against all Defendants.

### d.   Virginia Count 4: Fraud by Omission and Concealment Against All Defendants.

3872. Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

3873. The Virginia Plaintiff brings this count under Virginia law, individually and on behalf of the other members of the Virginia Subclasses against the Automaker Defendants and Airbag Module Defendants for his or her respective Class Vehicle(s), and ARC. For the remaining Defendants, Plaintiffs who purchased or leased their Class Vehicles in states with materially similar laws may represent subclasses under this count against all other Defendants and ARC.

1100

3874. For purposes of this count, members of the Virginia Subclasses shall be referred to as "Class Members."

3875. For purposes of this count, ARC, the Automaker Defendants, and the Airbag Module Defendants shall be referred to as "Defendants."

3876. Defendants are liable for both fraudulent concealment and non-disclosure. *See, e.g.*, Restatement (Second) of Torts §§ 550-51 (1977).

3877. Defendants owed Plaintiffs and Class Members a duty to disclose all the material facts concerning the Defective Inflators in the Class Vehicles because:

    a.    Given the Automaker Defendants' role in the design, manufacture, testing, and sale of Class Vehicles and Defective Inflators, and their experience and knowledge as experts and long-time veterans of the automotive industry, they, along with ARC and the Airbag Module Defendants, possessed exclusive access to and were in a superior position to know the true facts about the Defective Inflators;

    b.    Given ARC's design, development, testing and manufacture of the Defective Inflators and its experience and knowledge as experts and long-time veterans of the automotive industry, it, along with the Automaker Defendants and the Airbag Module Defendants, possessed exclusive access to and was in a superior position to know the true facts

about the Defective Inflators;

c.  Given the Airbag Module Defendants' role in the design, manufacture, and testing of the airbag modules with the Defective Inflators installed in them, and their experience and knowledge as experts and long-time veterans of the automotive industry, they, along with ARC and the Automaker Defendants, possessed exclusive access to and were in a superior position to know the true facts about the Defective Inflators;

d.  Given the Inflator Defect's hidden and technical nature, Plaintiffs and Class Members lack the sophisticated expertise in vehicle components and technology that would be necessary to discover the Inflator Defect on their own;

e.  Defendants knew that the Inflator Defect gave rise to serious safety concerns for the consumers who purchased and leased the Class Vehicles;

f.  The Inflator Defect poses a severe risk of harm in that, among other things, the metal shrapnel can puncture and stab the occupants, causing severe and potentially fatal injuries;

g.  Defendants knew about and investigated the Inflator Defect, but then did not notify consumers about it, disclose the Inflator Defect to

NHTSA, or further launch a comprehensive recall for all Class Vehicles, which individually and together deprived Plaintiffs of an opportunity that otherwise could have led them to discover the truth about the Inflator Defect in their Class Vehicles; and

h.   The Automaker Defendants made, helped to make, or conspired to make incomplete representations about the safety and reliability of the Class Vehicles and their airbags, while purposefully withholding material facts about a known safety defect. Because they volunteered to provide information about the Class Vehicles that they marketed and offered for sale and lease to consumers, the Automaker Defendants had the duty to disclose the whole truth.

3878. In breach of their duties, Defendants failed to disclose the Inflator Defect and that the Class Vehicles' airbags were not safe and reliable to Plaintiffs and Class Members in connection with the sale of the Class Vehicles.

3879. The Inflator Defect within the Class Vehicles is material to the sale of the Class Vehicles because a reasonable person would find it important in purchasing, leasing, or retaining a new or used motor vehicle and because it directly impacts the value of the Class Vehicles purchased or leased by Plaintiffs and Class Members.

1103

3880. Defendants intended for Plaintiffs and Class Members to rely on their omissions and concealment—which they did by purchasing and leasing the Class Vehicles at the prices they paid believing that their vehicles would not have an Inflator Defect that would affect the quality, reliability, and safety of the Class Vehicles and their airbags.

3881. Plaintiffs' and Class Members' reliance was reasonable because a reasonable consumer would not have expected that the Class Vehicles contained a safety defect that poses such a serious risk. They had no way of learning the facts that Defendants had concealed or failed to disclose. Plaintiffs and Class Members did not, and could not, unravel Defendants' deception on their own.

3882. Defendants actively concealed and suppressed these material facts, in whole or in part, to maintain a market for the Class Vehicles and the Defective Inflators installed in them, to protect profits, and to avoid costly recalls that would expose them to liability for those expenses and harm the commercial reputations of Defendants and their products. They did so at the expense of Plaintiffs and Class Members.

3883. If Defendants had fully and adequately disclosed the Inflator Defect to consumers, Plaintiffs and Class Members would have seen such a disclosure.

3884. Through their omissions and concealment with respect to the Inflator

Defect within the Class Vehicles, Defendants intended to induce, and did induce, Plaintiffs and Class Members to either purchase a Class Vehicle that they otherwise would not have purchased, or pay more for a Class Vehicle than they otherwise would have paid.

3885. Had Plaintiffs and Class Members known of the Inflator Defect within the Class Vehicles, they would not have purchased the Class Vehicles or would have paid less for them.

3886. As a direct and proximate result of Defendants' omissions and concealment, Plaintiffs and other Class Members either overpaid for the Class Vehicles or would not have purchased the Class Vehicles at all if the Inflator Defect had been disclosed to them. Accordingly, Defendants are liable to Plaintiffs and Class Members for their damages in an amount to be proven at trial.

3887. Defendants acted maliciously, oppressively, deliberately, with intent to defraud; in reckless disregard of the Plaintiffs' and Class Members' rights and well-being; and to enrich themselves. Defendants' misconduct warrants an assessment of punitive damages, as permitted by law, in an amount sufficient to deter such conduct in the future, which amount shall be determined according to proof at trial.

### e.   Virginia Count 5: Unjust Enrichment Against the Automaker Defendants.

3888. Plaintiffs reallege and incorporate by reference all allegations in Volume 1 of the Consolidated Class Action Complaint as though fully set forth herein.

3889. The Virginia Plaintiff brings this count under Virginia law, individually and on behalf of the other members of the Virginia Subclasses against the Automaker Defendants for his or her respective Class Vehicle(s). For the remaining Automaker Defendants, Plaintiffs who purchased or leased their Class Vehicles in states with materially similar laws may represent subclasses under this count against those Automaker Defendants.

3890. For purposes of this count, members of the Virginia Subclasses shall be referred to as "Class Members."

3891. When they purchased and leased the Class Vehicles, Plaintiffs and Class Members conferred tangible and material economic benefits upon the Automaker Defendants, who readily accepted and retained these benefits.

3892. Plaintiffs and Class Members would not have purchased or leased their Class Vehicles, or would have paid less for them, had they known of the Inflator Defect at the time of purchase or lease. Therefore, the Automaker Defendants profited from the sale and lease of the Class Vehicles to the detriment and expense

1106

of Plaintiffs and Class Members.

3893. The Automaker Defendants appreciated these economic benefits. These benefits were the expected result of the Automaker Defendants acting in their pecuniary interest at the expense of their customers. They knew of these benefits because they were aware of the Inflator Defect, yet they failed to disclose this knowledge and misled the Plaintiffs and Class Members regarding the nature and quality of the Class Vehicles while profiting from this deception.

3894. It would be unjust, inequitable, and unconscionable for the Automaker Defendants to retain these benefits, including because they were procured as a result of their wrongful conduct alleged above.

3895. Plaintiffs and Class Members are entitled to restitution of the benefits the Automaker Defendants unjustly retained and/or any amounts necessary to return Plaintiffs and Class Members to the position they occupied prior to dealing with those Defendants, with such amounts to be determined at trial.

3896. Plaintiffs plead this claim separately as well as in the alternative to their claims for damages under Fed. R. Civ. P. 8(a)(3), because if the Court dismisses Plaintiffs' claims for damages enters judgment on them in favor of the Automaker Defendants, Plaintiffs will have no adequate legal remedy.

**48.    Washington**

1107

a. **Washington Count 1: Breach of Express Warranty (Wash. Rev. Code §§ 62A.2-313 and 62A.2A-210) Against the Automaker Defendants.**

3897. Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

3898. The Washington Plaintiffs bring this count under Washington law, individually and on behalf of the other members of the Washington Subclasses against the Automaker Defendants for their respective Class Vehicles. For the remaining Automaker Defendants, Plaintiffs who purchased or leased their Class Vehicles in states with materially similar laws may represent subclasses under this count against those Automaker Defendants.

3899. For purposes of this count, members of the Washington Subclasses shall be referred to as "Class Members."

3900. The Class Vehicles are "goods" under Wash. Rev. Code §§ 62A.2-105(1) and 62A.2A-103(1)(h).

3901. The Automaker Defendants are "merchants" of the Class Vehicles under Wash. Rev. Code §§ 62A.2-104(1) and 62A.2A-103(1)(t), "sellers" under § 62A.2-103(1)(d), and "lessors" under § 62A.2A-103(1)(p).

3902. Plaintiffs and Class Members who purchased and leased the Class Vehicles in Washington are "buyers" under Wash. Rev. Code §§ 62A.2-103(1)(a)

and "lessees" under § 62A.2A-103(1)(n).

3903. The Automaker Defendants issued an express written warranty for each defective Class Vehicle they sold, including that:

a.   The Class Vehicles would be free of defects in materials and workmanship at the time of sale; and

b.   The Class Vehicles were safe and reliable, and their airbags would function properly in the event of a crash.

3904. The warranties listed above formed the basis of the bargain with regard to Plaintiffs and Class Members' purchase and lease of the Class Vehicles.

3905. The Automaker Defendants knowingly breached their warranty for the Class Vehicles because:

a.   The airbag inflators have latent defects which have a dangerous propensity to cause the inflators to rupture and eject metal shrapnel, subjecting Plaintiffs and Class Members to the risk of loss and injury; and

b.   The Automaker Defendants denied, concealed, and misrepresented the Inflator Defect, in the process refusing to pay for or provide in a reasonably timely fashion the needed repairs and replacements for Plaintiffs and Class Members.

1109

3906. The Automaker Defendants knew or should have known that the warranties were false and/or misleading. Specifically, the Automaker Defendants were aware of the Inflator Defect in the Class Vehicles, which made the vehicles inherently defective and dangerous at the time that they were sold and leased to Plaintiffs and Class Members.

3907. Plaintiffs and Class Members were exposed to the Automaker Defendants' misrepresentations, and they had no way of discerning that the Automaker Defendants' representations were false and misleading or otherwise learning the material facts that the Automaker Defendants had concealed or failed to disclose. Accordingly, Plaintiffs and Class Members reasonably relied on the Automaker Defendants' express warranties when purchasing or leasing their Class Vehicles.

3908. Plaintiffs and Class Members timely provided the Automaker Defendants notice of the issues raised in this count and this Complaint and an opportunity to cure, as alleged in the paragraphs addressing Defendants' notice above.

3909. Alternatively, Plaintiffs and Class Members were excused from providing the Automaker Defendants with notice and an opportunity to cure the breach, because it would have been futile. As alleged above, the Automaker

Defendants knew about the Defective Inflators for years; however, to date, the Automaker Defendants have not instituted a recall or any other repair program with respect to all of the Class Vehicles, or even acknowledged that the Inflator Defect exists in all of the Class Vehicles. Therefore, they have refused to recall or repair defective vehicles. Moreover, to the extent the Automaker Defendants have issued recalls, those recalls are inadequate because, *inter alia*: (a) they are belated because the Automaker Defendants knew about the Defective Inflators for years and did nothing to recall or remedy the serious safety defect; (b) with tens of millions of vehicles impacted in existing and potential future recalls, as a result of the Automaker Defendants' concealment of the Inflator Defect, the recalls cannot be implemented effectively due to supply constraints and resulting delays; (c) the recalls are incomplete, and apply to only a subset of the Class Vehicles.

3910. As a direct and proximate result of the Automaker Defendants' breach of their express warranties, the Class Vehicles were and are defective and the Inflator Defect was not remedied. Therefore, Plaintiff and Class Members have been damaged, in an amount to be proven at trial, through their overpayment at the time of purchase or lease for the Class Vehicles with an undisclosed safety defect that would not be remedied.

b.      **Washington Count 2: Breach of Implied Warranty of Merchantability (Wash. Rev. Code §§ 62A.2-314 and 62A.2A-212) Against the Automaker Defendants.**

3911. Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

3912. The Washington Plaintiffs bring this count under Washington law, individually and on behalf of the other members of the Washington Subclasses against the Automaker Defendants for their respective Class Vehicles. For the remaining Automaker Defendants, Plaintiffs who purchased or leased their Class Vehicles in states with materially similar laws may represent subclasses under this count against those Automaker Defendants.

3913. For purposes of this count, members of the Washington Subclasses shall be referred to as "Class Members."

3914. The Class Vehicles are "goods" under Wash. Rev. Code §§ 62A.2-105(1) and 62A.2A-103(1)(h).

3915. The Automaker Defendants are "merchants" of the Class Vehicles under Wash. Rev. Code §§ 62A.2-104(1) and 62A.2A-103(1)(t), "sellers" under § 62A.2-103(1)(d), and "lessors" under § 62A.2A-103(1)(p).

3916. Plaintiffs and Class Members who purchased and leased the Class Vehicles in Washington are "buyers" under Wash. Rev. Code §§ 62A.2-103(a)(1)

1112

and "lessees" under § 62A.2A-103(1)(n).

3917. Washington law conferred an implied warranty that the Class Vehicles were in merchantable condition and fit for the ordinary purpose for which they were to be used pursuant to Wash. Rev. Code §§ 62A.2-314 and 62A.2A-212.

3918. The Class Vehicles are not merchantable, and as such the Automaker Defendants breached their implied warranties, because at the time of sale and all times thereafter:

a.   The Class Vehicles would not pass without objection in the automotive trade given the Inflator Defect;

b.   The Inflator Defect renders the Class Vehicles unsafe to drive and unfit for ordinary purposes;

c.   The Class Vehicles and the airbags therein were inadequately labeled as safe and reliable, and the labeling failed to disclose the Inflator Defect; and

d.   The Class Vehicles do not conform to their labeling, which represents that the vehicles are safe and suitable for their intended use.

3919. Plaintiffs and Class Members timely provided the Automaker Defendants notice of the issues raised in this count and this Complaint and an opportunity to cure, as alleged in the paragraphs addressing Defendants' notice

above.

3920. Alternatively, Plaintiffs and Class Members were excused from providing the Automaker Defendants with notice and an opportunity to cure the breach because it would have been futile. As alleged above, the Automaker Defendants have long known that the Class Vehicles contained the Defective Inflators, and that the Defective Inflators have caused airbags to malfunction in crashes involving the Class Vehicles; however, to date, the Automaker Defendants have not instituted a recall or any other repair program with respect to all of the Class Vehicles, or even acknowledged that the Inflator Defect exists in all of those Class Vehicles. Moreover, to the extent the Automaker Defendants have issued recalls, those recalls are inadequate because, inter alia: (a) they are belated because the Automaker Defendants knew about the Defective Inflators for years and did nothing to recall or remedy the serious safety defect; (b) with tens of millions of vehicles impacted in existing and potential future recalls, as a result of the Automaker Defendants' concealment of the Inflator Defect, the recalls cannot be implemented effectively due to supply constraints and resulting delays; (c) the recalls are incomplete, and apply to only a subset of the Class Vehicles.

3921. Plaintiffs, individually and on behalf of Class Members, seek all available monetary damages (including actual, compensatory, and punitive

1114

damages), injunctive and equitable relief, and attorneys' fees and costs.

      c.      **Washington Count 3: Violation of the Washington Consumer Protection Act (Wash. Rev. Code § 19.86.010, *et seq.*) Against All Defendants.[54]**

3922. Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

3923. The Washington Plaintiffs bring this count under Washington law, individually and on behalf of the other members of the Washington Subclasses against the Automaker Defendants and Airbag Module Defendants for their respective Class Vehicles, and ARC. For the remaining Defendants, Plaintiffs who purchased or leased their Class Vehicles in states with materially similar laws may represent subclasses under this count against all other Defendants and ARC.

3924. For purposes of this count, members of the Washington Subclasses shall be referred to as "Class Members."

3925. For purposes of this count, ARC, the Automaker Defendants, and the Airbag Module Defendants shall be referred to as "Defendants."

3926. Defendants, Plaintiffs, and Class Members are "persons" under Wash. Rev. Code § 19.86.010(1)

---

[54] Plaintiffs bring this count against ARC and the Airbag Module Defendants based on their omissions and concealment of material facts only.

3927. The Class Vehicles and the Defective Inflators installed in them are "assets" under Wash. Rev. Code § 19.86.010(3).

3928. Defendants are engaged in "trade" or "commerce" under Wash. Rev. Code § 19.86.010(2).

3929. The Washington Consumer Protection Act ("Washington CPA") prohibits "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce[.]." Wash. Rev. Code § 19.86.020.

3930. In the course of their business, Defendants, through their agents, employees, and/or subsidiaries, violated the Washington CPA by knowingly and intentionally misrepresenting, omitting, concealing, and/or failing to disclose material facts regarding the reliability, safety, and performance of the Class Vehicles and the Defective Inflators, as detailed above.

3931. Defendants had an ongoing duty to Plaintiffs and Class Members to refrain from unfair or deceptive practices under the Washington CPA in the course of their business. Specifically, Defendants owed Plaintiffs and Class Members a duty to disclose all the material facts concerning the Defective Inflators in the Class Vehicles because:

a.      Given ARC's design, development, testing and manufacture of the Defective Inflators and its experience and knowledge as experts and

long-time veterans of the automotive industry, it, along with the Automaker Defendants and the Airbag Module Defendants, possessed exclusive access to and was in a superior position to know the true facts about the Defective Inflators;

b.    Given the Airbag Module Defendants' role in the design, manufacture, and testing of the airbag modules with the Defective Inflators installed in them, and their experience and knowledge as experts and long-time veterans of the automotive industry, they, along with ARC and the Automaker Defendants, possessed exclusive access to and were in a superior position to know the true facts about the Defective Inflators;

c.    Given the Automaker Defendants' role in the design, manufacture, testing, and sale of Class Vehicles and Defective Inflators, and their experience and knowledge as experts and long-time veterans of the automotive industry, they, along with ARC and the Airbag Module Defendants, possessed exclusive access to and were in a superior position to know the true facts about the Defective Inflators;

d.    Given the Inflator Defect's hidden and technical nature, Plaintiffs and Class Members lack the sophisticated expertise in vehicle components and technology that would be necessary to discover the Inflator Defect

1117

on their own;

e.      Defendants knew that the Inflator Defect gave rise to serious safety concerns for the consumers who purchased and leased the Class Vehicles;

f.      The Inflator Defect poses a severe risk of harm in that, among other things, the metal shrapnel can puncture and stab the occupants, causing severe and potentially fatal injuries;

g.      Defendants knew about and investigated the Inflator Defect, but then did not notify consumers about it or disclose the Inflator Defect to NHTSA, and the Automaker Defendants did not launch a comprehensive recall for all Class Vehicles, all of which individually and together deprived Plaintiffs of an opportunity that otherwise could have led them to discover the truth about the Inflator Defect in their Class Vehicles; and

h.      The Automaker Defendants made, helped to make, or conspired to make incomplete representations about the safety and reliability of the Class Vehicles and their airbags, while purposefully withholding material facts about a known safety defect. Because they volunteered to provide information about the Class Vehicles that they marketed and

offered for sale and lease to consumers, the Automaker Defendants had the duty to disclose the whole truth.

3932. By misrepresenting the Class Vehicles as safe and reliable and the airbags installed in them as properly functioning and free from defects, and/or by failing to disclose and actively concealing the dangers and risk posed by the Inflator Defect to both consumers and NHTSA, Defendants engaged in unfair or deceptive business practices prohibited by Wash. Rev. Code § 19.86.020.

3933. Defendants' unfair or deceptive acts or practices, including their misrepresentations, concealments, omissions, and/or suppressions of material facts, were designed to mislead and had a tendency or capacity to mislead and create a false impression in consumers that the Class Vehicles had properly-functioning and reliable airbags. Indeed, those misrepresentations, concealments, omissions, and suppressions of material facts did in fact deceive reasonable consumers, including Plaintiffs and Class Members, about the true safety and reliability of the Class Vehicles and/or the Defective Inflators installed in them, the quality of the Class Vehicles, and the true value of the Class Vehicles.

3934. Defendants intended for Plaintiffs and Class Members to rely on their misrepresentations, omissions, and concealment—which they did by purchasing and leasing the Class Vehicles at the prices they paid believing that their vehicles would

1119

not have an Inflator Defect that would affect the quality, reliability, and safety of the Class Vehicles and their airbags.

3935. Defendants' misrepresentations, concealments, omissions, and suppressions of material facts regarding the Inflator Defect and true characteristics of the Class Vehicles were material to the decisions of Plaintiffs and Class Members to purchase and lease those vehicles, as Defendants intended. Plaintiffs and Class Members were exposed to those misrepresentations, concealments, omissions, and suppressions of material facts, and relied on Defendants' misrepresentations that the Class Vehicles and their airbags were safe and reliable in deciding to purchase and lease the Class Vehicles.

3936. Plaintiffs' and Class Members' reliance was reasonable, as they had no way of discerning that Defendants' representations were false and misleading, or otherwise learning the facts that Defendants had concealed or failed to disclose. Plaintiffs and Class Members did not, and could not, unravel Defendants' deception on their own.

3937. Had they known the truth about the Inflator Defect, Plaintiffs and Class Members would not have purchased or leased the Class Vehicles, or would have paid significantly less for them.

3938. As a direct and proximate result of Defendants' deceptive practices,

Plaintiffs and Class Members have sustained economic injury and loss—either by purchasing a vehicle they otherwise would not have purchased or paying more than they otherwise would have as a result of Defendants' actions and omissions alleged above—that first occurred at the time each Class Vehicle was purchased or leased.

3939. Defendants' violations present a continuing risk to Plaintiffs and Class Members, as well as to the general public, because the Class Vehicles remain unsafe due to the Defective Inflators therein. Defendants' unlawful acts and practices complained of herein affect the public interest.

3940. Pursuant to Wash. Rev. Code § 19.86.090, Plaintiffs and Class Members seek an order enjoining the above unfair or deceptive acts or practices and awarding actual damages, punitive damages, and any other just and proper relief available under the Washington CPA against all Defendants.

### d. Washington Count 4: Fraud by Omission and Concealment Against All Defendants.

3941. Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

3942. The Washington Plaintiffs bring this count under Washington law, individually and on behalf of the other members of the Washington Subclasses against the Automaker Defendants and Airbag Module Defendants for their

respective Class Vehicles, and ARC. For the remaining Defendants, Plaintiffs who purchased or leased their Class Vehicles in states with materially similar laws may represent subclasses under this count against all other Defendants and ARC.

3943. For purposes of this count, members of the Washington Subclasses shall be referred to as "Class Members."

3944. For purposes of this count, ARC, the Automaker Defendants, and the Airbag Module Defendants shall be referred to as "Defendants."

3945. Defendants are liable for both fraudulent concealment and non-disclosure. *See, e.g.*, Restatement (Second) of Torts §§ 550-51 (1977).

3946. Defendants owed Plaintiffs and Class Members a duty to disclose all the material facts concerning the Defective Inflators in the Class Vehicles because:

a.      Given the Automaker Defendants' role in the design, manufacture, testing, and sale of Class Vehicles and Defective Inflators, and their experience and knowledge as experts and long-time veterans of the automotive industry, they, along with ARC and the Airbag Module Defendants, possessed exclusive access to and were in a superior position to know the true facts about the Defective Inflators;

b.      Given ARC's design, development, testing and manufacture of the Defective Inflators and its experience and knowledge as experts and

1122

long-time veterans of the automotive industry, it, along with the Automaker Defendants and the Airbag Module Defendants, possessed exclusive access to and was in a superior position to know the true facts about the Defective Inflators;

c.      Given the Airbag Module Defendants' role in the design, manufacture, and testing of the airbag modules with the Defective Inflators installed in them, and their experience and knowledge as experts and long-time veterans of the automotive industry, they, along with ARC and the Automaker Defendants, possessed exclusive access to and were in a superior position to know the true facts about the Defective Inflators;

d.      Given the Inflator Defect's hidden and technical nature, Plaintiffs and Class Members lack the sophisticated expertise in vehicle components and technology that would be necessary to discover the Inflator Defect on their own;

e.      Defendants knew that the Inflator Defect gave rise to serious safety concerns for the consumers who purchased and leased the Class Vehicles;

f.      The Inflator Defect poses a severe risk of harm in that, among other things, the metal shrapnel can puncture and stab the occupants, causing

1123

severe and potentially fatal injuries;

g.   Defendants knew about and investigated the Inflator Defect, but then did not notify consumers about it, disclose the Inflator Defect to NHTSA, or further launch a comprehensive recall for all Class Vehicles, which individually and together deprived Plaintiffs of an opportunity that otherwise could have led them to discover the truth about the Inflator Defect in their Class Vehicles; and

h.   The Automaker Defendants made, helped to make, or conspired to make incomplete representations about the safety and reliability of the Class Vehicles and their airbags, while purposefully withholding material facts about a known safety defect. Because they volunteered to provide information about the Class Vehicles that they marketed and offered for sale and lease to consumers, the Automaker Defendants had the duty to disclose the whole truth.

3947. In breach of their duties, Defendants failed to disclose the Inflator Defect and that the Class Vehicles' airbags were not safe and reliable to Plaintiffs and Class Members in connection with the sale of the Class Vehicles.

3948. The Inflator Defect within the Class Vehicles is material to the sale of the Class Vehicles because a reasonable person would find it important in

1124

purchasing, leasing, or retaining a new or used motor vehicle and because it directly impacts the value of the Class Vehicles purchased or leased by Plaintiffs and Class Members.

3949. Defendants intended for Plaintiffs and Class Members to rely on their omissions and concealment—which they did by purchasing and leasing the Class Vehicles at the prices they paid believing that their vehicles would not have an Inflator Defect that would affect the quality, reliability, and safety of the Class Vehicles and their airbags.

3950. Plaintiffs' and Class Members' reliance was reasonable because a reasonable consumer would not have expected that the Class Vehicles contained a safety defect that poses such a serious risk. They had no way of learning the facts that Defendants had concealed or failed to disclose. Plaintiffs and Class Members did not, and could not, unravel Defendants' deception on their own.

3951. Defendants actively concealed and suppressed these material facts, in whole or in part, to maintain a market for the Class Vehicles and the Defective Inflators installed in them, to protect profits, and to avoid costly recalls that would expose them to liability for those expenses and harm the commercial reputations of Defendants and their products. They did so at the expense of Plaintiffs and Class Members.

3952. If Defendants had fully and adequately disclosed the Inflator Defect to consumers, Plaintiffs and Class Members would have seen such a disclosure.

3953. Through their omissions and concealment with respect to the Inflator Defect within the Class Vehicles, Defendants intended to induce, and did induce, Plaintiffs and Class Members to either purchase a Class Vehicle that they otherwise would not have purchased, or pay more for a Class Vehicle than they otherwise would have paid.

3954. Had Plaintiffs and Class Members known of the Inflator Defect within the Class Vehicles, they would not have purchased the Class Vehicles or would have paid less for them.

3955. As a direct and proximate result of Defendants' omissions and concealment, Plaintiffs and other Class Members either overpaid for the Class Vehicles or would not have purchased the Class Vehicles at all if the Inflator Defect had been disclosed to them. Accordingly, Defendants are liable to Plaintiffs and Class Members for their damages in an amount to be proven at trial.

3956. Defendants acted maliciously, oppressively, deliberately, with intent to defraud; in reckless disregard of the Plaintiffs' and Class Members' rights and well-being; and to enrich themselves. Defendants' misconduct warrants an assessment of punitive damages, as permitted by law, in an amount sufficient to deter such conduct

1126

in the future, which amount shall be determined according to proof at trial.

### e.     Washington Count 5: Unjust Enrichment Against the Automaker Defendants.

3957. Plaintiffs reallege and incorporate by reference all allegations in Volume 1 of the Consolidated Class Action Complaint as though fully set forth herein.

3958. The Washington Plaintiffs bring this count under Washington law, individually and on behalf of the other members of the Washington Subclasses against the Automaker Defendants for their respective Class Vehicles. For the remaining Automaker Defendants, Plaintiffs who purchased or leased their Class Vehicles in states with materially similar laws may represent subclasses under this count against those Automaker Defendants.

3959. For purposes of this count, members of the Washington Subclasses shall be referred to as "Class Members."

3960. When they purchased and leased the Class Vehicles, Plaintiffs and Class Members conferred tangible and material economic benefits upon the Automaker Defendants, who readily accepted and retained these benefits.

3961. Plaintiffs and Class Members would not have purchased or leased their Class Vehicles, or would have paid less for them, had they known of the Inflator

Defect at the time of purchase or lease. Therefore, the Automaker Defendants profited from the sale and lease of the Class Vehicles to the detriment and expense of Plaintiffs and Class Members.

3962. The Automaker Defendants appreciated these economic benefits. These benefits were the expected result of the Automaker Defendants acting in their pecuniary interest at the expense of their customers. They knew of these benefits because they were aware of the Inflator Defect, yet they failed to disclose this knowledge and misled the Plaintiffs and Class Members regarding the nature and quality of the Class Vehicles while profiting from this deception.

3963. It would be unjust, inequitable, and unconscionable for the Automaker Defendants to retain these benefits, including because they were procured as a result of their wrongful conduct alleged above.

3964. Plaintiffs and Class Members are entitled to restitution of the benefits the Automaker Defendants unjustly retained and/or any amounts necessary to return Plaintiffs and Class Members to the position they occupied prior to dealing with those Defendants, with such amounts to be determined at trial.

3965. Plaintiffs plead this claim separately as well as in the alternative to their claims for damages under Fed. R. Civ. P. 8(a)(3), because if the Court dismisses Plaintiffs' claims for damages enters judgment on them in favor of the Automaker

Defendants, Plaintiffs will have no adequate legal remedy.

### 49.    West Virginia

#### a.    West Virginia Count 1: Breach of Express Warranty (W. Va. Code §§ 46-2-313 and 46-2A-210) Against the Automaker Defendants.

3966. Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

3967. The West Virginia Plaintiffs bring this count under West Virginia law, individually and on behalf of the other members of the West Virginia Subclasses against the Automaker Defendants for their respective Class Vehicles. For the remaining Automaker Defendants, Plaintiffs who purchased or leased their Class Vehicles in states with materially similar laws may represent subclasses under this count against those Automaker Defendants.

3968. For purposes of this count, members of the West Virginia Subclasses shall be referred to as "Class Members."

3969. The Class Vehicles are "goods" under W. Va. Code §§ 46-2-105(1) and 46-2A-103(1)(h).

3970. The Automaker Defendants are "merchants" of the Class Vehicles under W. Va. Code §§ 46-2-104(1) and 46-2A-103(1)(t), "sellers" under § 46-2-103(1)(d), and "lessors" under § 46-2A-103(1)(p).

3971. Plaintiffs and Class Members who purchased and leased the Class Vehicles in West Virginia are "buyers" under W. Va. Code §§ 46-2-103(1)(a) and "lessees" under § 46-2A-103(1)(n).

3972. The Automaker Defendants issued an express written warranty for each defective Class Vehicle they sold, including that:

a.     The Class Vehicles would be free of defects in materials and workmanship at the time of sale; and

b.     The Class Vehicles were safe and reliable, and their airbags would function properly in the event of a crash.

3973. The warranties listed above formed the basis of the bargain with regard to Plaintiffs and Class Members' purchase and lease of the Class Vehicles.

3974. The Automaker Defendants knowingly breached their warranty for the Class Vehicles because:

a.     The airbag inflators have latent defects which have a dangerous propensity to cause the inflators to rupture and eject metal shrapnel, subjecting Plaintiffs and Class Members to the risk of loss and injury;

1130

and

b.  The Automaker Defendants denied, concealed, and misrepresented the Inflator Defect, in the process refusing to pay for or provide in a reasonably timely fashion the needed repairs and replacements for Plaintiffs and Class Members.

3975. The Automaker Defendants knew or should have known that the warranties were false and/or misleading. Specifically, the Automaker Defendants were aware of the Inflator Defect in the Class Vehicles, which made the vehicles inherently defective and dangerous at the time that they were sold and leased to Plaintiffs and Class Members.

3976. Plaintiffs and Class Members were exposed to the Automaker Defendants' misrepresentations, and they had no way of discerning that the Automaker Defendants' representations were false and misleading or otherwise learning the material facts that the Automaker Defendants had concealed or failed to disclose. Accordingly, Plaintiffs and Class Members reasonably relied on the Automaker Defendants' express warranties when purchasing or leasing their Class Vehicles.

3977. Plaintiffs and Class Members timely provided the Automaker Defendants notice of the issues raised in this count and this Complaint and an

opportunity to cure, as alleged in the paragraphs addressing Defendants' notice above.

3978. Alternatively, Plaintiffs and Class Members were excused from providing the Automaker Defendants with notice and an opportunity to cure the breach, because it would have been futile. As alleged above, the Automaker Defendants knew about the Defective Inflators for years; however, to date, the Automaker Defendants have not instituted a recall or any other repair program with respect to all of the Class Vehicles, or even acknowledged that the Inflator Defect exists in all of the Class Vehicles. Therefore, they have refused to recall or repair defective vehicles. Moreover, to the extent the Automaker Defendants have issued recalls, those recalls are inadequate because, *inter alia*: (a) they are belated because the Automaker Defendants knew about the Defective Inflators for years and did nothing to recall or remedy the serious safety defect; (b) with tens of millions of vehicles impacted in existing and potential future recalls, as a result of the Automaker Defendants' concealment of the Inflator Defect, the recalls cannot be implemented effectively due to supply constraints and resulting delays; (c) the recalls are incomplete, and apply to only a subset of the Class Vehicles.

3979. As a direct and proximate result of the Automaker Defendants' breach of their express warranties, the Class Vehicles were and are defective and the Inflator

Defect was not remedied. Therefore, Plaintiff and Class Members have been damaged, in an amount to be proven at trial, through their overpayment at the time of purchase or lease for the Class Vehicles with an undisclosed safety defect that would not be remedied.

> **b.**   **West Virginia Count 2: Breach of Implied Warranty of Merchantability (W. Va. Code §§ 46-2-314 and 46-2A-212) Against the Automaker Defendants.**

3980. Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

3981. The West Virginia Plaintiffs bring this count under West Virginia law, individually and on behalf of the other members of the West Virginia Subclasses against the Automaker Defendants for their respective Class Vehicles. For the remaining Automaker Defendants, Plaintiffs who purchased or leased their Class Vehicles in states with materially similar laws may represent subclasses under this count against those Automaker Defendants.

3982. For purposes of this count, members of the West Virginia Subclasses shall be referred to as "Class Members."

3983. The Class Vehicles are "goods" under W. Va. Code §§ 46-2-105(1) and 46-2A-103(1)(h).

3984. The Automaker Defendants are "merchants" of the Class Vehicles

1133

under W. Va. Code §§ 46-2-104(1) and 46-2A-103(1)(t), "sellers" under § 46-2-103(1)(d), and "lessors" under § 46-2A-103(1)(p).

3985. Plaintiffs and Class Members who purchased and leased the Class Vehicles in West Virginia are "buyers" under W. Va. Code §§ 46-2-103(a)(1) and "lessees" under § 46-2A-103(1)(n).

3986. West Virginia law conferred an implied warranty that the Class Vehicles were in merchantable condition and fit for the ordinary purpose for which they were to be used pursuant to W. Va. Code §§ 46-2-314 and 46-2A-212.

3987. The Class Vehicles are not merchantable, and as such the Automaker Defendants breached their implied warranties, because at the time of sale and all times thereafter:

    a.    The Class Vehicles would not pass without objection in the automotive trade given the Inflator Defect;

    b.    The Inflator Defect renders the Class Vehicles unsafe to drive and unfit for ordinary purposes;

    c.    The Class Vehicles and the airbags therein were inadequately labeled as safe and reliable, and the labeling failed to disclose the Inflator Defect; and

    d.    The Class Vehicles do not conform to their labeling, which represents

1134

that the vehicles are safe and suitable for their intended use.

3988. Plaintiffs and Class Members timely provided the Automaker Defendants notice of the issues raised in this count and this Complaint and an opportunity to cure, as alleged in the paragraphs addressing Defendants' notice above.

3989. Alternatively, Plaintiffs and Class Members were excused from providing the Automaker Defendants with notice and an opportunity to cure the breach because it would have been futile. As alleged above, the Automaker Defendants have long known that the Class Vehicles contained the Defective Inflators, and that the Defective Inflators have caused airbags to malfunction in crashes involving the Class Vehicles; however, to date, the Automaker Defendants have not instituted a recall or any other repair program with respect to all of the Class Vehicles, or even acknowledged that the Inflator Defect exists in all of those Class Vehicles. Moreover, to the extent the Automaker Defendants have issued recalls, those recalls are inadequate because, inter alia: (a) they are belated because the Automaker Defendants knew about the Defective Inflators for years and did nothing to recall or remedy the serious safety defect; (b) with tens of millions of vehicles impacted in existing and potential future recalls, as a result of the Automaker Defendants' concealment of the Inflator Defect, the recalls cannot be implemented

effectively due to supply constraints and resulting delays; (c) the recalls are incomplete, and apply to only a subset of the Class Vehicles.

3990. Plaintiffs, individually and on behalf of Class Members, seek all available monetary damages (including actual, compensatory, and punitive damages), injunctive and equitable relief, and attorneys' fees and costs.

### c. West Virginia Count 3: Violation of the West Virginia Consumer Credit and Protection Act (W. Va. Code § 46A-1-101, *et seq.*) Against All Defendants.[55]

3991. Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

3992. The West Virginia Plaintiffs bring this count under West Virginia law, individually and on behalf of the other members of the West Virginia Subclasses against the Automaker Defendants and Airbag Module Defendants for their respective Class Vehicles, and ARC. For the remaining Defendants, Plaintiffs who purchased or leased their Class Vehicles in states with materially similar laws may represent subclasses under this count against all other Defendants and ARC.

3993. For purposes of this count, members of the West Virginia Subclasses shall be referred to as "Class Members."

---

[55] Plaintiffs bring this count against ARC and the Airbag Module Defendants based on their omissions and concealment of material facts only.

3994. For purposes of this count, ARC, the Automaker Defendants, and the Airbag Module Defendants shall be referred to as "Defendants."

3995. Defendants, Plaintiffs, and Class Members are "persons" under W. Va. Code § 46A-1-102(31).

3996. Plaintiffs and Class Members are "consumers" under W. Va. Code §§ 46A-6-102(2) and 46A-1-102(12).

3997. Defendants are engaged in "trade" or "commerce" under W. Va. Code § 46A-6-102(6).

3998. The West Virginia Consumer Credit and Protection Act ("West Virginia CCPA") prohibits "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce[.]." W. Va. Code § 46A-6-104.

3999. In the course of their business, Defendants, through their agents, employees, and/or subsidiaries, violated the West Virginia CCPA by knowingly and intentionally misrepresenting, omitting, concealing, and/or failing to disclose material facts regarding the reliability, safety, and performance of the Class Vehicles and the Defective Inflators, as detailed above.

4000. Defendants had an ongoing duty to Plaintiffs and Class Members to refrain from unfair or deceptive practices under the West Virginia CCPA in the

1137

course of their business. Specifically, Defendants owed Plaintiffs and Class Members a duty to disclose all the material facts concerning the Defective Inflators in the Class Vehicles because:

a. Given ARC's design, development, testing and manufacture of the Defective Inflators and its experience and knowledge as experts and long-time veterans of the automotive industry, it, along with the Automaker Defendants and the Airbag Module Defendants, possessed exclusive access to and was in a superior position to know the true facts about the Defective Inflators;

b. Given the Airbag Module Defendants' role in the design, manufacture, and testing of the airbag modules with the Defective Inflators installed in them, and their experience and knowledge as experts and long-time veterans of the automotive industry, they, along with ARC and the Automaker Defendants, possessed exclusive access to and were in a superior position to know the true facts about the Defective Inflators;

c. Given the Automaker Defendants' role in the design, manufacture, testing, and sale of Class Vehicles and Defective Inflators, and their experience and knowledge as experts and long-time veterans of the automotive industry, they, along with ARC and the Airbag Module

1138

Defendants, possessed exclusive access to and were in a superior position to know the true facts about the Defective Inflators;

d.     Given the Inflator Defect's hidden and technical nature, Plaintiffs and Class Members lack the sophisticated expertise in vehicle components and technology that would be necessary to discover the Inflator Defect on their own;

e.     Defendants knew that the Inflator Defect gave rise to serious safety concerns for the consumers who purchased and leased the Class Vehicles;

f.     The Inflator Defect poses a severe risk of harm in that, among other things, the metal shrapnel can puncture and stab the occupants, causing severe and potentially fatal injuries;

g.     Defendants knew about and investigated the Inflator Defect, but then did not notify consumers about it or disclose the Inflator Defect to NHTSA, and the Automaker Defendants did not launch a comprehensive recall for all Class Vehicles, all of which individually and together deprived Plaintiffs of an opportunity that otherwise could have led them to discover the truth about the Inflator Defect in their Class Vehicles; and

1139

h.   The Automaker Defendants made, helped to make, or conspired to make incomplete representations about the safety and reliability of the Class Vehicles and their airbags, while purposefully withholding material facts about a known safety defect. Because they volunteered to provide information about the Class Vehicles that they marketed and offered for sale and lease to consumers, the Automaker Defendants had the duty to disclose the whole truth.

4001. By misrepresenting the Class Vehicles as safe and reliable and the airbags installed in them as properly-functioning and free from defects, and/or by failing to disclose and actively concealing the dangers and risk posed by the Inflator Defect to both consumers and NHTSA, Defendants engaged in one or more of the following unfair or deceptive business practices prohibited by W. Va. Code § 46A-6-102)7):

a.   Representing that the Class Vehicles and the Defective Inflators had a characteristic that they did not actually have—*i.e.*, that the vehicles were safe and suitable for use on the roadway, when, in fact, they were not because their airbag inflators were defectively designed such that they had an unreasonably dangerous propensity to rupture, causing severe and fatal injuries;

1140

b.  Representing that the Class Vehicles and the Defective Inflators installed in them were of a particular quality, grade, or standard when, in fact, they were not of that quality, grade, or standard;

c.  Advertising the Class Vehicles and the Defective Inflators installed in them with the intent not to sell or lease them as advertised;

d.  Engaging in any other conduct which similarly creates a likelihood of confusion; and

e.  Using or employing deception, fraud, false pretense, false promise or misrepresentation, or the concealment, suppression, or omission of a material fact with intent that others rely upon such concealment, suppression or omission, in connection with the advertisement and sale/lease of the Class Vehicles and the Defective Inflators installed in them, whether or not any person has in fact been misled, deceived or damaged thereby.

4002. Defendants' unfair or deceptive acts or practices, including their misrepresentations, concealments, omissions, and/or suppressions of material facts, were designed to mislead and had a tendency or capacity to mislead and create a false impression in consumers that the Class Vehicles had properly-functioning and reliable airbags. Indeed, those misrepresentations, concealments, omissions, and

1141

suppressions of material facts did in fact deceive reasonable consumers, including Plaintiffs and Class Members, about the true safety and reliability of the Class Vehicles and/or the Defective Inflators installed in them, the quality of the Class Vehicles, and the true value of the Class Vehicles.

4003. Defendants intended for Plaintiffs and Class Members to rely on their misrepresentations, omissions, and concealment—which they did by purchasing and leasing the Class Vehicles at the prices they paid believing that their vehicles would not have an Inflator Defect that would affect the quality, reliability, and safety of the Class Vehicles and their airbags.

4004. Defendants' misrepresentations, concealments, omissions, and suppressions of material facts regarding the Inflator Defect and true characteristics of the Class Vehicles were material to the decisions of Plaintiffs and Class Members to purchase and lease those vehicles, as Defendants intended. Plaintiffs and Class Members were exposed to those misrepresentations, concealments, omissions, and suppressions of material facts, and relied on Defendants' misrepresentations that the Class Vehicles and their airbags were safe and reliable in deciding to purchase and lease the Class Vehicles.

4005. Plaintiffs' and Class Members' reliance was reasonable, as they had no way of discerning that Defendants' representations were false and misleading, or

1142

otherwise learning the facts that Defendants had concealed or failed to disclose. Plaintiffs and Class Members did not, and could not, unravel Defendants' deception on their own.

4006. Had they known the truth about the Inflator Defect, Plaintiffs and Class Members would not have purchased or leased the Class Vehicles, or would have paid significantly less for them.

4007. As a direct and proximate result of Defendants' deceptive practices, Plaintiffs and Class Members have sustained economic injury and loss—either by purchasing a vehicle they otherwise would not have purchased or paying more than they otherwise would have as a result of Defendants' actions and omissions alleged above—that first occurred at the time each Class Vehicle was purchased or leased.

4008. Defendants' violations present a continuing risk to Plaintiffs and Class Members, as well as to the general public, because the Class Vehicles remain unsafe due to the Defective Inflators therein. Defendants' unlawful acts and practices complained of herein affect the public interest.

4009. Plaintiffs and Class Members timely provided Defendants notice of the issues raised in this count and this Complaint and an opportunity to cure, as alleged in the paragraphs addressing Defendants' notice above. Because Defendants failed to adequately remedy their unlawful conduct, Plaintiffs seek all damages and relief

1143

to which Plaintiffs and Class Members are entitled.

4010. Alternatively, Plaintiffs and Class Members were excused from providing the Defendants with notice and an opportunity to cure the Inflator Defect, because it would have been futile. As alleged above, the Defendants knew about the Defective Inflators for years; however, to date, the Automaker Defendants have not instituted a recall or any other repair program with respect to all of the Class Vehicles, or even acknowledged that the Inflator Defect exists in all of the Class Vehicles. Therefore, they have refused to recall or repair defective vehicles. Moreover, to the extent the Automaker Defendants have issued recalls, those recalls are inadequate because, *inter alia*: (a) they are belated because the Automaker Defendants knew about the Defective Inflators for years and did nothing to recall or remedy the serious safety defect; (b) with tens of millions of vehicles impacted in existing and potential future recalls, as a result of the Automaker Defendants' concealment of the Inflator Defect, the recalls cannot be implemented effectively due to supply constraints and resulting delays; (c) the recalls are incomplete, and apply to only a subset of the Class Vehicles.

4011. Pursuant to W. Va. Code § 46A-6-106(a), Plaintiffs and Class Members seek an order enjoining the above unfair or deceptive acts or practices and awarding actual damages, punitive damages, and any other just and proper relief available

1144

under the West Virginia CCPA against all Defendants.

> **d.** **West Virginia Count 4: Fraud by Omission and Concealment Against All Defendants.**

4012. Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

4013. The West Virginia Plaintiffs bring this count under West Virginia law, individually and on behalf of the other members of the West Virginia Subclasses against the Automaker Defendants and Airbag Module Defendants for their respective Class Vehicles, and ARC. For the remaining Defendants, Plaintiffs who purchased or leased their Class Vehicles in states with materially similar laws may represent subclasses under this count against all other Defendants and ARC.

4014. For purposes of this count, members of the West Virginia Subclasses shall be referred to as "Class Members."

4015. For purposes of this count, ARC, the Automaker Defendants, and the Airbag Module Defendants shall be referred to as "Defendants."

4016. Defendants are liable for both fraudulent concealment and non-disclosure. *See, e.g.*, Restatement (Second) of Torts §§ 550-51 (1977).

4017. Defendants owed Plaintiffs and Class Members a duty to disclose all the material facts concerning the Defective Inflators in the Class Vehicles because:

1145

a.    Given the Automaker Defendants' role in the design, manufacture, testing, and sale of Class Vehicles and Defective Inflators, and their experience and knowledge as experts and long-time veterans of the automotive industry, they, along with ARC and the Airbag Module Defendants, possessed exclusive access to and were in a superior position to know the true facts about the Defective Inflators;

b.    Given ARC's design, development, testing and manufacture of the Defective Inflators and its experience and knowledge as experts and long-time veterans of the automotive industry, it, along with the Automaker Defendants and the Airbag Module Defendants, possessed exclusive access to and was in a superior position to know the true facts about the Defective Inflators;

c.    Given the Airbag Module Defendants' role in the design, manufacture, and testing of the airbag modules with the Defective Inflators installed in them, and their experience and knowledge as experts and long-time veterans of the automotive industry, they, along with ARC and the Automaker Defendants, possessed exclusive access to and were in a superior position to know the true facts about the Defective Inflators;

d.    Given the Inflator Defect's hidden and technical nature, Plaintiffs and

1146

Class Members lack the sophisticated expertise in vehicle components and technology that would be necessary to discover the Inflator Defect on their own;

e.   Defendants knew that the Inflator Defect gave rise to serious safety concerns for the consumers who purchased and leased the Class Vehicles;

f.   The Inflator Defect poses a severe risk of harm in that, among other things, the metal shrapnel can puncture and stab the occupants, causing severe and potentially fatal injuries;

g.   Defendants knew about and investigated the Inflator Defect, but then did not notify consumers about it, disclose the Inflator Defect to NHTSA, or further launch a comprehensive recall for all Class Vehicles, which individually and together deprived Plaintiffs of an opportunity that otherwise could have led them to discover the truth about the Inflator Defect in their Class Vehicles; and

h.   The Automaker Defendants made, helped to make, or conspired to make incomplete representations about the safety and reliability of the Class Vehicles and their airbags, while purposefully withholding material facts about a known safety defect. Because they volunteered

1147

to provide information about the Class Vehicles that they marketed and offered for sale and lease to consumers, the Automaker Defendants had the duty to disclose the whole truth.

4018. In breach of their duties, Defendants failed to disclose the Inflator Defect and that the Class Vehicles' airbags were not safe and reliable to Plaintiffs and Class Members in connection with the sale of the Class Vehicles.

4019. The Inflator Defect within the Class Vehicles is material to the sale of the Class Vehicles because a reasonable person would find it important in purchasing, leasing, or retaining a new or used motor vehicle and because it directly impacts the value of the Class Vehicles purchased or leased by Plaintiffs and Class Members.

4020. Defendants intended for Plaintiffs and Class Members to rely on their omissions and concealment—which they did by purchasing and leasing the Class Vehicles at the prices they paid believing that their vehicles would not have an Inflator Defect that would affect the quality, reliability, and safety of the Class Vehicles and their airbags.

4021. Plaintiffs' and Class Members' reliance was reasonable because a reasonable consumer would not have expected that the Class Vehicles contained a safety defect that poses such a serious risk. They had no way of learning the facts

that Defendants had concealed or failed to disclose. Plaintiffs and Class Members did not, and could not, unravel Defendants' deception on their own.

4022. Defendants actively concealed and suppressed these material facts, in whole or in part, to maintain a market for the Class Vehicles and the Defective Inflators installed in them, to protect profits, and to avoid costly recalls that would expose them to liability for those expenses and harm the commercial reputations of Defendants and their products. They did so at the expense of Plaintiffs and Class Members.

4023. If Defendants had fully and adequately disclosed the Inflator Defect to consumers, Plaintiffs and Class Members would have seen such a disclosure.

4024. Through their omissions and concealment with respect to the Inflator Defect within the Class Vehicles, Defendants intended to induce, and did induce, Plaintiffs and Class Members to either purchase a Class Vehicle that they otherwise would not have purchased, or pay more for a Class Vehicle than they otherwise would have paid.

4025. Had Plaintiffs and Class Members known of the Inflator Defect within the Class Vehicles, they would not have purchased the Class Vehicles or would have paid less for them.

4026. As a direct and proximate result of Defendants' omissions and

1149

concealment, Plaintiffs and other Class Members either overpaid for the Class Vehicles or would not have purchased the Class Vehicles at all if the Inflator Defect had been disclosed to them. Accordingly, Defendants are liable to Plaintiffs and Class Members for their damages in an amount to be proven at trial.

4027. Defendants acted maliciously, oppressively, deliberately, with intent to defraud; in reckless disregard of the Plaintiffs' and Class Members' rights and well-being; and to enrich themselves. Defendants' misconduct warrants an assessment of punitive damages, as permitted by law, in an amount sufficient to deter such conduct in the future, which amount shall be determined according to proof at trial.

### e. West Virginia Count 5: Unjust Enrichment Against the Automaker Defendants.

4028. Plaintiffs reallege and incorporate by reference all allegations in Volume 1 of the Consolidated Class Action Complaint as though fully set forth herein.

4029. The West Virginia Plaintiffs bring this count under West Virginia law, individually and on behalf of the other members of the West Virginia Subclasses against the Automaker Defendants for their respective Class Vehicles. For the remaining Automaker Defendants, Plaintiffs who purchased or leased their Class Vehicles in states with materially similar laws may represent subclasses under this

count against those Automaker Defendants.

4030. For purposes of this count, members of the West Virginia Subclasses shall be referred to as "Class Members."

4031. When they purchased and leased the Class Vehicles, Plaintiffs and Class Members conferred tangible and material economic benefits upon the Automaker Defendants, who readily accepted and retained these benefits.

4032. Plaintiffs and Class Members would not have purchased or leased their Class Vehicles, or would have paid less for them, had they known of the Inflator Defect at the time of purchase or lease. Therefore, the Automaker Defendants profited from the sale and lease of the Class Vehicles to the detriment and expense of Plaintiffs and Class Members.

4033. The Automaker Defendants appreciated these economic benefits. These benefits were the expected result of the Automaker Defendants acting in their pecuniary interest at the expense of their customers. They knew of these benefits because they were aware of the Inflator Defect, yet they failed to disclose this knowledge and misled the Plaintiffs and Class Members regarding the nature and quality of the Class Vehicles while profiting from this deception.

4034. It would be unjust, inequitable, and unconscionable for the Automaker Defendants to retain these benefits, including because they were procured as a result

1151

of their wrongful conduct alleged above.

4035. Plaintiffs and Class Members are entitled to restitution of the benefits the Automaker Defendants unjustly retained and/or any amounts necessary to return Plaintiffs and Class Members to the position they occupied prior to dealing with those Defendants, with such amounts to be determined at trial.

4036. Plaintiffs plead this claim separately as well as in the alternative to their claims for damages under Fed. R. Civ. P. 8(a)(3), because if the Court dismisses Plaintiffs' claims for damages enters judgment on them in favor of the Automaker Defendants, Plaintiffs will have no adequate legal remedy.

### 50.   Wisconsin

#### a.   Wisconsin Count 1: Breach of Express Warranty (Wis. Stat. §§ 402.313 and 411.210) Against the Automaker Defendants.

4037. Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

4038. The Wisconsin Plaintiff brings this count under Wisconsin law, individually and on behalf of the other members of the Wisconsin Subclasses against the Automaker Defendants for his or her respective Class Vehicle(s). For the remaining Automaker Defendants, Plaintiffs who purchased or leased their Class Vehicles in states with materially similar laws may represent subclasses under this count against those Automaker Defendants.

1152

4039. For purposes of this count, members of the Wisconsin Subclasses shall be referred to as "Class Members."

4040. The Class Vehicles are "goods" under Wis. Stat. §§ 402.105(1) and 411.103(1)(h).

4041. The Automaker Defendants are "merchants" of the Class Vehicles under Wis. Stat. §§ 402.104(3) and 411.103(1)(t), "sellers" under § 402.103(1)(d), and "lessors" under § 411.103(1)(p).

4042. Plaintiffs and Class Members who purchased and leased the Class Vehicles in Wisconsin are "buyers" under Wis. Stat. §§ 402.103(1)(a) and "lessees" under § 411.103(1)(n).

4043. The Automaker Defendants issued an express written warranty for each defective Class Vehicle they sold, including that:

a.   The Class Vehicles would be free of defects in materials and workmanship at the time of sale; and

b.   The Class Vehicles were safe and reliable, and their airbags would function properly in the event of a crash.

4044. The warranties listed above formed the basis of the bargain with regard to Plaintiffs and Class Members' purchase and lease of the Class Vehicles.

4045. The Automaker Defendants knowingly breached their warranty for the

1153

Class Vehicles because:

   a.   The airbag inflators have latent defects which have a dangerous propensity to cause the inflators to rupture and eject metal shrapnel, subjecting Plaintiffs and Class Members to the risk of loss and injury; and

   b.   The Automaker Defendants denied, concealed, and misrepresented the Inflator Defect, in the process refusing to pay for or provide in a reasonably timely fashion the needed repairs and replacements for Plaintiffs and Class Members.

4046. The Automaker Defendants knew or should have known that the warranties were false and/or misleading. Specifically, the Automaker Defendants were aware of the Inflator Defect in the Class Vehicles, which made the vehicles inherently defective and dangerous at the time that they were sold and leased to Plaintiffs and Class Members.

4047. Plaintiffs and Class Members were exposed to the Automaker Defendants' misrepresentations, and they had no way of discerning that the Automaker Defendants' representations were false and misleading or otherwise learning the material facts that the Automaker Defendants had concealed or failed to disclose. Accordingly, Plaintiffs and Class Members reasonably relied on the

1154

Automaker Defendants' express warranties when purchasing or leasing their Class Vehicles.

4048. Plaintiffs and Class Members timely provided the Automaker Defendants notice of the issues raised in this count and this Complaint and an opportunity to cure, as alleged in the paragraphs addressing Defendants' notice above.

4049. Alternatively, Plaintiffs and Class Members were excused from providing the Automaker Defendants with notice and an opportunity to cure the breach, because it would have been futile. As alleged above, the Automaker Defendants knew about the Defective Inflators for years; however, to date, the Automaker Defendants have not instituted a recall or any other repair program with respect to all of the Class Vehicles, or even acknowledged that the Inflator Defect exists in all of the Class Vehicles. Therefore, they have refused to recall or repair defective vehicles. Moreover, to the extent the Automaker Defendants have issued recalls, those recalls are inadequate because, *inter alia*: (a) they are belated because the Automaker Defendants knew about the Defective Inflators for years and did nothing to recall or remedy the serious safety defect; (b) with tens of millions of vehicles impacted in existing and potential future recalls, as a result of the Automaker Defendants' concealment of the Inflator Defect, the recalls cannot be

implemented effectively due to supply constraints and resulting delays; (c) the recalls are incomplete, and apply to only a subset of the Class Vehicles.

4050. As a direct and proximate result of the Automaker Defendants' breach of their express warranties, the Class Vehicles were and are defective and the Inflator Defect was not remedied. Therefore, Plaintiff and Class Members have been damaged, in an amount to be proven at trial, through their overpayment at the time of purchase or lease for the Class Vehicles with an undisclosed safety defect that would not be remedied.

> **b.    Wisconsin Count 2: Breach of Implied Warranty of Merchantability (Wis. Stat. §§ 402.314 and 411.212) Against the Automaker Defendants.**

4051. Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

4052. The Wisconsin Plaintiff brings this count under Wisconsin law, individually and on behalf of the other members of the Wisconsin Subclasses against the Automaker Defendants for his or her respective Class Vehicle(s). For the remaining Automaker Defendants, Plaintiffs who purchased or leased their Class Vehicles in states with materially similar laws may represent subclasses under this count against those Automaker Defendants.

4053. For purposes of this count, members of the Wisconsin Subclasses shall

be referred to as "Class Members."

4054. The Class Vehicles are "goods" under Wis. Stat. §§ 402.105(1) and 411.103(1)(h).

4055. The Automaker Defendants are "merchants" of the Class Vehicles under Wis. Stat. §§ 402.104(3) and 411.103(1)(t), "sellers" under § 402.103(1)(d), and "lessors" under § 411.103(1)(p).

4056. Plaintiffs and Class Members who purchased and leased the Class Vehicles in Wisconsin are "buyers" under Wis. Stat. §§ 402.103(a)(1) and "lessees" under § 411.103(1)(n).

4057. Wisconsin law conferred an implied warranty that the Class Vehicles were in merchantable condition and fit for the ordinary purpose for which they were to be used pursuant to Wis. Stat. §§ 402.314 and 411.212.

4058. The Class Vehicles are not merchantable, and as such the Automaker Defendants breached their implied warranties, because at the time of sale and all times thereafter:

 a. The Class Vehicles would not pass without objection in the automotive trade given the Inflator Defect;

 b. The Inflator Defect renders the Class Vehicles unsafe to drive and unfit for ordinary purposes;

1157

c.      The Class Vehicles and the airbags therein were inadequately labeled as safe and reliable, and the labeling failed to disclose the Inflator Defect; and

d.      The Class Vehicles do not conform to their labeling, which represents that the vehicles are safe and suitable for their intended use.

4059. Plaintiffs and Class Members timely provided the Automaker Defendants notice of the issues raised in this count and this Complaint and an opportunity to cure, as alleged in the paragraphs addressing Defendants' notice above.

4060. Alternatively, Plaintiffs and Class Members were excused from providing the Automaker Defendants with notice and an opportunity to cure the breach because it would have been futile. As alleged above, the Automaker Defendants have long known that the Class Vehicles contained the Defective Inflators, and that the Defective Inflators have caused airbags to malfunction in crashes involving the Class Vehicles; however, to date, the Automaker Defendants have not instituted a recall or any other repair program with respect to all of the Class Vehicles, or even acknowledged that the Inflator Defect exists in all of those Class Vehicles. Moreover, to the extent the Automaker Defendants have issued recalls, those recalls are inadequate because, inter alia: (a) they are belated because the

Automaker Defendants knew about the Defective Inflators for years and did nothing to recall or remedy the serious safety defect; (b) with tens of millions of vehicles impacted in existing and potential future recalls, as a result of the Automaker Defendants' concealment of the Inflator Defect, the recalls cannot be implemented effectively due to supply constraints and resulting delays; (c) the recalls are incomplete, and apply to only a subset of the Class Vehicles.

4061. Plaintiffs, individually and on behalf of Class Members, seek all available monetary damages (including actual, compensatory, and punitive damages), injunctive and equitable relief, and attorneys' fees and costs.

> c.    **Wisconsin Count 3: Violation of the Wisconsin Deceptive Trade Practices Act (Wis. Stat. § 100.18, *et seq.*) Against All Defendants.**[56]

4062. Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

4063. The Wisconsin Plaintiff brings this count under Wisconsin law, individually and on behalf of the other members of the Wisconsin Subclasses against the Automaker Defendants and Airbag Module Defendants for his or her respective Class Vehicle(s), and ARC. For the remaining Automaker Defendants, Plaintiffs who

---

[56] Plaintiffs bring this count against ARC and the Airbag Module Defendants based on their omissions and concealment of material facts only.

purchased or leased their Class Vehicles in states with materially similar laws may represent subclasses under this count against all other Defendants and ARC.

4064. For purposes of this count, members of the Wisconsin Subclasses shall be referred to as "Class Members."

4065. For purposes of this count, ARC, the Automaker Defendants, and the Airbag Module Defendants shall be referred to as "Defendants."

4066. Defendants are "person[s], firm[s], corporation[s], or association[s]" under Wis. Stat. § 100.18(1).

4067. Plaintiffs and Class Members are members of "the public" under Wis. Stat. § 100.18(1).

4068. The Class Vehicles and the Defective Inflators installed in them are "merchandise" under Wis. Stat. § 100.18(1).

4069. The Wisconsin Deceptive Trade Practices Act ("Wisconsin DTPA") prohibits any "assertion, representation or statement of fact which is untrue, deceptive or misleading." Wis. Stat. § 100.18(1).

4070. In the course of their business, Defendants, through their agents, employees, and/or subsidiaries, violated the Wisconsin DTPA by knowingly and intentionally misrepresenting, omitting, concealing, and/or failing to disclose material facts regarding the reliability, safety, and performance of the Class Vehicles

1160

and the Defective Inflators, as detailed above.

4071. Defendants had an ongoing duty to Plaintiffs and Class Members to refrain from unfair or deceptive practices under the Wisconsin DTPA in the course of their business. Specifically, Defendants owed Plaintiffs and Class Members a duty to disclose all the material facts concerning the Defective Inflators in the Class Vehicles because:

a.    Given ARC's design, development, testing and manufacture of the Defective Inflators and its experience and knowledge as experts and long-time veterans of the automotive industry, it, along with the Automaker Defendants and the Airbag Module Defendants, possessed exclusive access to and was in a superior position to know the true facts about the Defective Inflators;

b.    Given the Airbag Module Defendants' role in the design, manufacture, and testing of the airbag modules with the Defective Inflators installed in them, and their experience and knowledge as experts and long-time veterans of the automotive industry, they, along with ARC and the Automaker Defendants, possessed exclusive access to and were in a superior position to know the true facts about the Defective Inflators;

c.    Given the Automaker Defendants' role in the design, manufacture,

1161

testing, and sale of Class Vehicles and Defective Inflators, and their experience and knowledge as experts and long-time veterans of the automotive industry, they, along with ARC and the Airbag Module Defendants, possessed exclusive access to and were in a superior position to know the true facts about the Defective Inflators;

d.     Given the Inflator Defect's hidden and technical nature, Plaintiffs and Class Members lack the sophisticated expertise in vehicle components and technology that would be necessary to discover the Inflator Defect on their own;

e.     Defendants knew that the Inflator Defect gave rise to serious safety concerns for the consumers who purchased and leased the Class Vehicles;

f.     The Inflator Defect poses a severe risk of harm in that, among other things, the metal shrapnel can puncture and stab the occupants, causing severe and potentially fatal injuries;

g.     Defendants knew about and investigated the Inflator Defect, but then did not notify consumers about it or disclose the Inflator Defect to NHTSA, and the Automaker Defendants did not launch a comprehensive recall for all Class Vehicles, all of which individually

1162

and together deprived Plaintiffs of an opportunity that otherwise could have led them to discover the truth about the Inflator Defect in their Class Vehicles; and

h.    The Automaker Defendants made, helped to make, or conspired to make incomplete representations about the safety and reliability of the Class Vehicles and their airbags, while purposefully withholding material facts about a known safety defect. Because they volunteered to provide information about the Class Vehicles that they marketed and offered for sale and lease to consumers, the Automaker Defendants had the duty to disclose the whole truth.

4072. By misrepresenting the Class Vehicles as safe and reliable and the airbags installed in them as properly-functioning and free from defects, and/or by failing to disclose and actively concealing the dangers and risk posed by the Inflator Defect to both consumers and NHTSA, Defendants violated the Wisconsin DTPA by making assertions, representations and statements of fact which are untrue, deceptive or misleading, as prohibited by Wis. Stat. § 100.18(1).

4073. Defendants' unfair or deceptive acts or practices, including their misrepresentations, concealments, omissions, and/or suppressions of material facts, were designed to mislead and had a tendency or capacity to mislead and create a

false impression in consumers that the Class Vehicles had properly-functioning and reliable airbags. Indeed, those misrepresentations, concealments, omissions, and suppressions of material facts did in fact deceive reasonable consumers, including Plaintiffs and Class Members, about the true safety and reliability of the Class Vehicles and/or the Defective Inflators installed in them, the quality of the Class Vehicles, and the true value of the Class Vehicles.

4074. Defendants intended for Plaintiffs and Class Members to rely on their misrepresentations, omissions, and concealment—which they did by purchasing and leasing the Class Vehicles at the prices they paid believing that their vehicles would not have an Inflator Defect that would affect the quality, reliability, and safety of the Class Vehicles and their airbags.

4075. Defendants' misrepresentations, concealments, omissions, and suppressions of material facts regarding the Inflator Defect and true characteristics of the Class Vehicles were material to the decisions of Plaintiffs and Class Members to purchase and lease those vehicles, as Defendants intended. Plaintiffs and Class Members were exposed to those misrepresentations, concealments, omissions, and suppressions of material facts, and relied on Defendants' misrepresentations that the Class Vehicles and their airbags were safe and reliable in deciding to purchase and lease the Class Vehicles.

4076. Plaintiffs' and Class Members' reliance was reasonable, as they had no way of discerning that Defendants' representations were false and misleading, or otherwise learning the facts that Defendants had concealed or failed to disclose. Plaintiffs and Class Members did not, and could not, unravel Defendants' deception on their own.

4077. Had they known the truth about the Inflator Defect, Plaintiffs and Class Members would not have purchased or leased the Class Vehicles, or would have paid significantly less for them.

4078. As a direct and proximate result of Defendants' deceptive practices, Plaintiffs and Class Members have sustained economic injury and loss—either by purchasing a vehicle they otherwise would not have purchased or paying more than they otherwise would have as a result of Defendants' actions and omissions alleged above—that first occurred at the time each Class Vehicle was purchased or leased.

4079. Defendants' violations present a continuing risk to Plaintiffs and Class Members, as well as to the general public, because the Class Vehicles remain unsafe due to the Defective Inflators therein. Defendants' unlawful acts and practices complained of herein affect the public interest.

4080. Pursuant to Wis. Stat. § 100.18(11)(b)(2), Plaintiffs and Class Members seek an order enjoining the above unfair or deceptive acts or practices and awarding

1165

actual damages, punitive damages, and any other just and proper relief available under the Wisconsin DTPA against all Defendants.

      **d.**    **Wisconsin Count 4: Fraud by Omission and Concealment Against All Defendants.**

4081. Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

4082. The Wisconsin Plaintiff brings this count under Wisconsin law, individually and on behalf of the other members of the Wisconsin Subclasses against the Automaker Defendants and Airbag Module Defendants for his or her respective Class Vehicle(s). For the remaining Automaker Defendants, and ARC. For the remaining Defendants, Plaintiffs who purchased or leased their Class Vehicles in states with materially similar laws may represent subclasses under this count against all other Defendants and ARC.

4083. For purposes of this count, members of the Wisconsin Subclasses shall be referred to as "Class Members."

4084. For purposes of this count, ARC, the Automaker Defendants, and the Airbag Module Defendants shall be referred to as "Defendants."

4085. Defendants are liable for both fraudulent concealment and non-disclosure. *See, e.g.*, Restatement (Second) of Torts §§ 550-51 (1977).

1166

4086. Defendants owed Plaintiffs and Class Members a duty to disclose all the material facts concerning the Defective Inflators in the Class Vehicles because:

a.  Given the Automaker Defendants' role in the design, manufacture, testing, and sale of Class Vehicles and Defective Inflators, and their experience and knowledge as experts and long-time veterans of the automotive industry, they, along with ARC and the Airbag Module Defendants, possessed exclusive access to and were in a superior position to know the true facts about the Defective Inflators;

b.  Given ARC's design, development, testing and manufacture of the Defective Inflators and its experience and knowledge as experts and long-time veterans of the automotive industry, it, along with the Automaker Defendants and the Airbag Module Defendants, possessed exclusive access to and was in a superior position to know the true facts about the Defective Inflators;

c.  Given the Airbag Module Defendants' role in the design, manufacture, and testing of the airbag modules with the Defective Inflators installed in them, and their experience and knowledge as experts and long-time veterans of the automotive industry, they, along with ARC and the Automaker Defendants, possessed exclusive access to and were in a

superior position to know the true facts about the Defective Inflators;

d.  Given the Inflator Defect's hidden and technical nature, Plaintiffs and Class Members lack the sophisticated expertise in vehicle components and technology that would be necessary to discover the Inflator Defect on their own;

e.  Defendants knew that the Inflator Defect gave rise to serious safety concerns for the consumers who purchased and leased the Class Vehicles;

f.  The Inflator Defect poses a severe risk of harm in that, among other things, the metal shrapnel can puncture and stab the occupants, causing severe and potentially fatal injuries;

g.  Defendants knew about and investigated the Inflator Defect, but then did not notify consumers about it, disclose the Inflator Defect to NHTSA, or further launch a comprehensive recall for all Class Vehicles, which individually and together deprived Plaintiffs of an opportunity that otherwise could have led them to discover the truth about the Inflator Defect in their Class Vehicles; and

h.  The Automaker Defendants made, helped to make, or conspired to make incomplete representations about the safety and reliability of the

1168

Class Vehicles and their airbags, while purposefully withholding material facts about a known safety defect. Because they volunteered to provide information about the Class Vehicles that they marketed and offered for sale and lease to consumers, the Automaker Defendants had the duty to disclose the whole truth.

4087. In breach of their duties, Defendants failed to disclose the Inflator Defect and that the Class Vehicles' airbags were not safe and reliable to Plaintiffs and Class Members in connection with the sale of the Class Vehicles.

4088. The Inflator Defect within the Class Vehicles is material to the sale of the Class Vehicles because a reasonable person would find it important in purchasing, leasing, or retaining a new or used motor vehicle and because it directly impacts the value of the Class Vehicles purchased or leased by Plaintiffs and Class Members.

4089. Defendants intended for Plaintiffs and Class Members to rely on their omissions and concealment—which they did by purchasing and leasing the Class Vehicles at the prices they paid believing that their vehicles would not have an Inflator Defect that would affect the quality, reliability, and safety of the Class Vehicles and their airbags.

4090. Plaintiffs' and Class Members' reliance was reasonable because a

1169

reasonable consumer would not have expected that the Class Vehicles contained a safety defect that poses such a serious risk. They had no way of learning the facts that Defendants had concealed or failed to disclose. Plaintiffs and Class Members did not, and could not, unravel Defendants' deception on their own.

4091. Defendants actively concealed and suppressed these material facts, in whole or in part, to maintain a market for the Class Vehicles and the Defective Inflators installed in them, to protect profits, and to avoid costly recalls that would expose them to liability for those expenses and harm the commercial reputations of Defendants and their products. They did so at the expense of Plaintiffs and Class Members.

4092. If Defendants had fully and adequately disclosed the Inflator Defect to consumers, Plaintiffs and Class Members would have seen such a disclosure.

4093. Through their omissions and concealment with respect to the Inflator Defect within the Class Vehicles, Defendants intended to induce, and did induce, Plaintiffs and Class Members to either purchase a Class Vehicle that they otherwise would not have purchased, or pay more for a Class Vehicle than they otherwise would have paid.

4094. Had Plaintiffs and Class Members known of the Inflator Defect within the Class Vehicles, they would not have purchased the Class Vehicles or would have

1170

paid less for them.

4095. As a direct and proximate result of Defendants' omissions and concealment, Plaintiffs and other Class Members either overpaid for the Class Vehicles or would not have purchased the Class Vehicles at all if the Inflator Defect had been disclosed to them. Accordingly, Defendants are liable to Plaintiffs and Class Members for their damages in an amount to be proven at trial.

4096. Defendants acted maliciously, oppressively, deliberately, with intent to defraud; in reckless disregard of the Plaintiffs' and Class Members' rights and well-being; and to enrich themselves. Defendants' misconduct warrants an assessment of punitive damages, as permitted by law, in an amount sufficient to deter such conduct in the future, which amount shall be determined according to proof at trial.

> **e.    Wisconsin Count 5: Unjust Enrichment Against the Automaker Defendants.**

4097. Plaintiffs reallege and incorporate by reference all allegations in Volume 1 of the Consolidated Class Action Complaint as though fully set forth herein.

4098. The Wisconsin Plaintiff brings this count under Wisconsin law, individually and on behalf of the other members of the Wisconsin Subclasses against the Automaker Defendants for his or her respective Class Vehicle(s). For the

remaining Automaker Defendants, Plaintiffs who purchased or leased their Class Vehicles in states with materially similar laws may represent subclasses under this count against those Automaker Defendants.

4099. For purposes of this count, members of the Wisconsin Subclasses shall be referred to as "Class Members."

4100. When they purchased and leased the Class Vehicles, Plaintiffs and Class Members conferred tangible and material economic benefits upon the Automaker Defendants, who readily accepted and retained these benefits.

4101. Plaintiffs and Class Members would not have purchased or leased their Class Vehicles, or would have paid less for them, had they known of the Inflator Defect at the time of purchase or lease. Therefore, the Automaker Defendants profited from the sale and lease of the Class Vehicles to the detriment and expense of Plaintiffs and Class Members.

4102. The Automaker Defendants appreciated these economic benefits. These benefits were the expected result of the Automaker Defendants acting in their pecuniary interest at the expense of their customers. They knew of these benefits because they were aware of the Inflator Defect, yet they failed to disclose this knowledge and misled the Plaintiffs and Class Members regarding the nature and quality of the Class Vehicles while profiting from this deception.

1172

4103. It would be unjust, inequitable, and unconscionable for the Automaker Defendants to retain these benefits, including because they were procured as a result of their wrongful conduct alleged above.

4104. Plaintiffs and Class Members are entitled to restitution of the benefits the Automaker Defendants unjustly retained and/or any amounts necessary to return Plaintiffs and Class Members to the position they occupied prior to dealing with those Defendants, with such amounts to be determined at trial.

4105. Plaintiffs plead this claim separately as well as in the alternative to their claims for damages under Fed. R. Civ. P. 8(a)(3), because if the Court dismisses Plaintiffs' claims for damages enters judgment on them in favor of the Automaker Defendants, Plaintiffs will have no adequate legal remedy.

## 51. Wyoming

### a. Wyoming Count 1: Breach of Express Warranty (Wyo. Stat. §§ 34.1-2-313 and 34.1-2.A-210) Against the Automaker Defendants.

4106. Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

4107. The Wyoming Plaintiffs bring this count under Wyoming law,

individually and on behalf of the other members of the Wyoming Subclasses against the Automaker Defendants for their respective Class Vehicles. For the remaining Automaker Defendants, Plaintiffs who purchased or leased their Class Vehicles in states with materially similar laws may represent subclasses under this count against those Automaker Defendants.

4108. For purposes of this count, members of the Wyoming Subclasses shall be referred to as "Class Members."

4109. The Class Vehicles are "goods" under Wyo. Stat. §§ 34.1-2-105(a) and 34.1-2.A-103(a)(viii).

4110. The Automaker Defendants are "merchants" of the Class Vehicles under Wyo. Stat. §§ 34.1-2-104(a) and 34.1-2.A-103(a)(xx), "sellers" under § 34.1-2-103(a)(iv), and "lessors" under § 34.1-2.A-103(a)(xvi).

4111. Plaintiffs and Class Members who purchased and leased the Class Vehicles in Wyoming are "buyers" under Wyo. Stat. §§ 34.1-2-103(a)(i) and "lessees" under § 34.1-2.A-103(a)(xiv).

4112. The Automaker Defendants issued an express written warranty for each defective Class Vehicle they sold, including that:

a.   The Class Vehicles would be free of defects in materials and workmanship at the time of sale; and

1174

b.     The Class Vehicles were safe and reliable, and their airbags would function properly in the event of a crash.

4113. The warranties listed above formed the basis of the bargain with regard to Plaintiffs and Class Members' purchase and lease of the Class Vehicles.

4114. The Automaker Defendants knowingly breached their warranty for the Class Vehicles because:

a.     The airbag inflators have latent defects which have a dangerous propensity to cause the inflators to rupture and eject metal shrapnel, subjecting Plaintiffs and Class Members to the risk of loss and injury; and

b.     The Automaker Defendants denied, concealed, and misrepresented the Inflator Defect, in the process refusing to pay for or provide in a reasonably timely fashion the needed repairs and replacements for Plaintiffs and Class Members.

4115. The Automaker Defendants knew or should have known that the warranties were false and/or misleading. Specifically, the Automaker Defendants were aware of the Inflator Defect in the Class Vehicles, which made the vehicles inherently defective and dangerous at the time that they were sold and leased to Plaintiffs and Class Members.

1175

4116. Plaintiffs and Class Members were exposed to the Automaker Defendants' misrepresentations, and they had no way of discerning that the Automaker Defendants' representations were false and misleading or otherwise learning the material facts that the Automaker Defendants had concealed or failed to disclose. Accordingly, Plaintiffs and Class Members reasonably relied on the Automaker Defendants' express warranties when purchasing or leasing their Class Vehicles.

4117. Plaintiffs and Class Members timely provided the Automaker Defendants notice of the issues raised in this count and this Complaint and an opportunity to cure, as alleged in the paragraphs addressing Defendants' notice above.

4118. Alternatively, Plaintiffs and Class Members were excused from providing the Automaker Defendants with notice and an opportunity to cure the breach, because it would have been futile. As alleged above, the Automaker Defendants knew about the Defective Inflators for years; however, to date, the Automaker Defendants have not instituted a recall or any other repair program with respect to all of the Class Vehicles, or even acknowledged that the Inflator Defect exists in all of the Class Vehicles. Therefore, they have refused to recall or repair defective vehicles. Moreover, to the extent the Automaker Defendants have issued

1176

recalls, those recalls are inadequate because, *inter alia*: (a) they are belated because the Automaker Defendants knew about the Defective Inflators for years and did nothing to recall or remedy the serious safety defect; (b) with tens of millions of vehicles impacted in existing and potential future recalls, as a result of the Automaker Defendants' concealment of the Inflator Defect, the recalls cannot be implemented effectively due to supply constraints and resulting delays; (c) the recalls are incomplete, and apply to only a subset of the Class Vehicles.

4119. As a direct and proximate result of the Automaker Defendants' breach of their express warranties, the Class Vehicles were and are defective and the Inflator Defect was not remedied. Therefore, Plaintiff and Class Members have been damaged, in an amount to be proven at trial, through their overpayment at the time of purchase or lease for the Class Vehicles with an undisclosed safety defect that would not be remedied.

> **b.    Wyoming Count 2: Breach of Implied Warranty of Merchantability (Wyo. Stat. §§ 34.1-2-314 and 34.1-2.A-212) Against the Automaker Defendants.**

4120. Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

4121. The Wyoming Plaintiffs bring this count under Wyoming law, individually and on behalf of the other members of the Wyoming Subclasses against

the Automaker Defendants for their respective Class Vehicles. For the remaining Automaker Defendants, Plaintiffs who purchased or leased their Class Vehicles in states with materially similar laws may represent subclasses under this count against those Automaker Defendants.

4122. For purposes of this count, members of the Wyoming Subclasses shall be referred to as "Class Members."

4123. The Class Vehicles are "goods" under Wyo. Stat. §§ 34.1-2-105(a) and 34.1-2.A-103(a)(viii).

4124. The Automaker Defendants are "merchants" of the Class Vehicles under Wyo. Stat. §§ 34.1-2-104(a) and 34.1-2.A-103(a)(xx), "sellers" under § 34.1-2-103(a)(iv), and "lessors" under § 34.1-2.A-103(a)(xvi).

4125. Plaintiffs and Class Members who purchased and leased the Class Vehicles in Wyoming are "buyers" under Wyo. Stat. §§ 34.1-2-103(a)(i) and "lessees" under § 34.1-2.A-103(a)(xiv).

4126. Wyoming law conferred an implied warranty that the Class Vehicles were in merchantable condition and fit for the ordinary purpose for which they were to be used pursuant to Wyo. Stat. §§ 34.1-2-314 and 34.1-2.A-212.

4127. The Class Vehicles are not merchantable, and as such the Automaker Defendants breached their implied warranties, because at the time of sale and all

1178

times thereafter:

    a.    The Class Vehicles would not pass without objection in the automotive trade given the Inflator Defect;

    b.    The Inflator Defect renders the Class Vehicles unsafe to drive and unfit for ordinary purposes;

    c.    The Class Vehicles and the airbags therein were inadequately labeled as safe and reliable, and the labeling failed to disclose the Inflator Defect; and

    d.    The Class Vehicles do not conform to their labeling, which represents that the vehicles are safe and suitable for their intended use.

4128. Plaintiffs and Class Members timely provided the Automaker Defendants notice of the issues raised in this count and this Complaint and an opportunity to cure, as alleged in the paragraphs addressing Defendants' notice above.

4129. Alternatively, Plaintiffs and Class Members were excused from providing the Automaker Defendants with notice and an opportunity to cure the breach because it would have been futile. As alleged above, the Automaker Defendants have long known that the Class Vehicles contained the Defective Inflators, and that the Defective Inflators have caused airbags to malfunction in

crashes involving the Class Vehicles; however, to date, the Automaker Defendants have not instituted a recall or any other repair program with respect to all of the Class Vehicles, or even acknowledged that the Inflator Defect exists in all of those Class Vehicles. Moreover, to the extent the Automaker Defendants have issued recalls, those recalls are inadequate because, inter alia: (a) they are belated because the Automaker Defendants knew about the Defective Inflators for years and did nothing to recall or remedy the serious safety defect; (b) with tens of millions of vehicles impacted in existing and potential future recalls, as a result of the Automaker Defendants' concealment of the Inflator Defect, the recalls cannot be implemented effectively due to supply constraints and resulting delays; (c) the recalls are incomplete, and apply to only a subset of the Class Vehicles.

4130. Plaintiffs, individually and on behalf of Class Members, seek all available monetary damages (including actual, compensatory, and punitive damages), injunctive and equitable relief, and attorneys' fees and costs.

    c.        **Wyoming Count 3: Violation of the Wyoming Consumer Protection Act (Wyo. Stat. § 40-12-101, *et seq.*) Against All Defendants.[57]**

4131. Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

4132. The Wyoming Plaintiffs bring this count under Wyoming law, individually and on behalf of the other members of the Wyoming Subclasses against the Automaker Defendants and Airbag Module Defendants for their respective Class Vehicles, and ARC. For the remaining Defendants, Plaintiffs who purchased or leased their Class Vehicles in states with materially similar laws may represent subclasses under this count against all other Defendants and ARC.

4133. For purposes of this count, members of the Wyoming Subclasses shall be referred to as "Class Members."

4134. For purposes of this count, ARC, the Automaker Defendants, and the Airbag Module Defendants shall be referred to as "Defendants."

4135. Defendants, Plaintiffs, and Class Members are "persons" under Wyo. Stat. § 40-12-102(a)(i).

4136. The Class Vehicles and the Defective Inflators installed in them are

---

[57] Plaintiffs bring this count against ARC and the Airbag Module Defendants based on their omissions and concealment of material facts only.

"merchandise" under Wyo. Stat. § 40-12-102(a)(vi).

4137. Each sale or lease of a Class Vehicle to Plaintiffs or Class Members was a "consumer transaction" under Wyo. Stat. § 40-12-102(a)(ii). These consumer transactions occurred "in the course of [Defendants'] business" under Wyo. Stat. § 40-12-105(a).

4138. The Wyoming Consumer Protection Act ("Wyoming CPA") prohibits deceptive trade practices. Wyo. Stat. § 40-12-105(a).

4139. In the course of their business, Defendants, through their agents, employees, and/or subsidiaries, violated the Wyoming CPA by knowingly and intentionally misrepresenting, omitting, concealing, and/or failing to disclose material facts regarding the reliability, safety, and performance of the Class Vehicles and the Defective Inflators, as detailed above.

4140. Defendants had an ongoing duty to Plaintiffs and Class Members to refrain from unfair or deceptive practices under the Wyoming CPA in the course of their business. Specifically, Defendants owed Plaintiffs and Class Members a duty to disclose all the material facts concerning the Defective Inflators in the Class Vehicles because:

   a.    Given ARC's design, development, testing and manufacture of the
         Defective Inflators and its experience and knowledge as experts and

long-time veterans of the automotive industry, it, along with the Automaker Defendants and the Airbag Module Defendants, possessed exclusive access to and was in a superior position to know the true facts about the Defective Inflators;

b.  Given the Airbag Module Defendants' role in the design, manufacture, and testing of the airbag modules with the Defective Inflators installed in them, and their experience and knowledge as experts and long-time veterans of the automotive industry, they, along with ARC and the Automaker Defendants, possessed exclusive access to and were in a superior position to know the true facts about the Defective Inflators;

c.  Given the Automaker Defendants' role in the design, manufacture, testing, and sale of Class Vehicles and Defective Inflators, and their experience and knowledge as experts and long-time veterans of the automotive industry, they, along with ARC and the Airbag Module Defendants, possessed exclusive access to and were in a superior position to know the true facts about the Defective Inflators;

d.  Given the Inflator Defect's hidden and technical nature, Plaintiffs and Class Members lack the sophisticated expertise in vehicle components and technology that would be necessary to discover the Inflator Defect

on their own;

e.       Defendants knew that the Inflator Defect gave rise to serious safety concerns for the consumers who purchased and leased the Class Vehicles;

f.       The Inflator Defect poses a severe risk of harm in that, among other things, the metal shrapnel can puncture and stab the occupants, causing severe and potentially fatal injuries;

g.       Defendants knew about and investigated the Inflator Defect, but then did not notify consumers about it or disclose the Inflator Defect to NHTSA, and the Automaker Defendants did not launch a comprehensive recall for all Class Vehicles, all of which individually and together deprived Plaintiffs of an opportunity that otherwise could have led them to discover the truth about the Inflator Defect in their Class Vehicles; and

h.       The Automaker Defendants made, helped to make, or conspired to make incomplete representations about the safety and reliability of the Class Vehicles and their airbags, while purposefully withholding material facts about a known safety defect. Because they volunteered to provide information about the Class Vehicles that they marketed and

1184

offered for sale and lease to consumers, the Automaker Defendants had the duty to disclose the whole truth.

4141. By misrepresenting the Class Vehicles as safe and reliable and the airbags installed in them as properly functioning and free from defects, and/or by failing to disclose and actively concealing the dangers and risk posed by the Inflator Defect to both consumers and NHTSA, Defendants engaged in one or more of the following unfair or deceptive acts or practices as defined in Wyo. Stat. § 40-12-105(a):

    a.    Representing that the Class Vehicles and the Defective Inflators had a characteristic that they did not actually have—*i.e.*, that the vehicles were safe and suitable for use on the roadway, when, in fact, they were not because their airbag inflators were defectively designed such that they had an unreasonably dangerous propensity to rupture, causing severe and fatal injuries;

    b.    Representing that the Class Vehicles and the Defective Inflators installed in them were of a particular quality, grade, or standard when, in fact, they were not of that quality, grade, or standard;

    c.    Advertising the Class Vehicles and the Defective Inflators installed in them with the intent not to sell or lease them as advertised; and

1185

    d.     Representing that the subject of a transaction has been supplied in accordance with a previous representation when it has not.

4142. Defendants' unfair or deceptive acts or practices, including their misrepresentations, concealments, omissions, and/or suppressions of material facts, were designed to mislead and had a tendency or capacity to mislead and create a false impression in consumers that the Class Vehicles had properly-functioning and reliable airbags. Indeed, those misrepresentations, concealments, omissions, and suppressions of material facts did in fact deceive reasonable consumers, including Plaintiffs and Class Members, about the true safety and reliability of the Class Vehicles and/or the Defective Inflators installed in them, the quality of the Class Vehicles, and the true value of the Class Vehicles.

4143. Defendants intended for Plaintiffs and Class Members to rely on their misrepresentations, omissions, and concealment—which they did by purchasing and leasing the Class Vehicles at the prices they paid believing that their vehicles would not have an Inflator Defect that would affect the quality, reliability, and safety of the Class Vehicles and their airbags.

4144. Defendants' misrepresentations, concealments, omissions, and suppressions of material facts regarding the Inflator Defect and true characteristics of the Class Vehicles were material to the decisions of Plaintiffs and Class Members

to purchase and lease those vehicles, as Defendants intended. Plaintiffs and Class Members were exposed to those misrepresentations, concealments, omissions, and suppressions of material facts, and relied on Defendants' misrepresentations that the Class Vehicles and their airbags were safe and reliable in deciding to purchase and lease the Class Vehicles.

4145. Plaintiffs' and Class Members' reliance was reasonable, as they had no way of discerning that Defendants' representations were false and misleading, or otherwise learning the facts that Defendants had concealed or failed to disclose. Plaintiffs and Class Members did not, and could not, unravel Defendants' deception on their own.

4146. Had they known the truth about the Inflator Defect, Plaintiffs and Class Members would not have purchased or leased the Class Vehicles, or would have paid significantly less for them.

4147. As a direct and proximate result of Defendants' deceptive practices, Plaintiffs and Class Members have sustained economic injury and loss—either by purchasing a vehicle they otherwise would not have purchased or paying more than they otherwise would have as a result of Defendants' actions and omissions alleged above—that first occurred at the time each Class Vehicle was purchased or leased.

4148. Defendants' violations present a continuing risk to Plaintiffs and Class

Members, as well as to the general public, because the Class Vehicles remain unsafe due to the Defective Inflators therein. Defendants' unlawful acts and practices complained of herein affect the public interest.

4149. Plaintiffs and Class Members timely provided Defendants notice of the issues raised in this count and this Complaint and an opportunity to cure, as alleged in the paragraphs addressing Defendants' notice above. Because Defendants failed to adequately remedy their unlawful conduct, Plaintiffs seek all damages and relief to which Plaintiffs and Class Members are entitled.

4150. Alternatively, Plaintiffs and Class Members were excused from providing the Defendants with notice and an opportunity to cure the Inflator Defect, because it would have been futile. As alleged above, the Defendants knew about the Defective Inflators for years; however, to date, the Automaker Defendants have not instituted a recall or any other repair program with respect to all of the Class Vehicles, or even acknowledged that the Inflator Defect exists in all of the Class Vehicles. Therefore, they have refused to recall or repair defective vehicles. Moreover, to the extent the Automaker Defendants have issued recalls, those recalls are inadequate because, *inter alia*: (a) they are belated because the Automaker Defendants knew about the Defective Inflators for years and did nothing to recall or remedy the serious safety defect; (b) with tens of millions of vehicles impacted in

existing and potential future recalls, as a result of the Automaker Defendants' concealment of the Inflator Defect, the recalls cannot be implemented effectively due to supply constraints and resulting delays; (c) the recalls are incomplete, and apply to only a subset of the Class Vehicles.

4151. Pursuant to Wyo. Stat. § 40-12-108(a) and (b), Plaintiffs and Class Members seek an order enjoining the above unfair or deceptive acts or practices and awarding actual damages, punitive damages, and any other just and proper relief available under the Wyoming CPA against all Defendants.

### d.   Wyoming Count 4: Fraud by Omission and Concealment Against All Defendants.

4152. Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

4153. The Alabama Plaintiffs bring this count under Wyoming law, individually and on behalf of the other members of the Wyoming Subclasses against the Automaker Defendants for their respective Class Vehicles. For the remaining Automaker Defendants, Plaintiffs who purchased or leased their Class Vehicles in states with materially similar laws may represent subclasses under this count against all other Defendants and ARC.

4154. For purposes of this count, members of the Wyoming Subclasses shall

1189

be referred to as "Class Members."

4155. For purposes of this count, ARC, the Automaker Defendants, and the Airbag Module Defendants shall be referred to as "Defendants."

4156. Defendants are liable for both fraudulent concealment and non-disclosure. *See, e.g.*, Restatement (Second) of Torts §§ 550-51 (1977).

4157. Defendants owed Plaintiffs and Class Members a duty to disclose all the material facts concerning the Defective Inflators in the Class Vehicles because:

a. Given the Automaker Defendants' role in the design, manufacture, testing, and sale of Class Vehicles and Defective Inflators, and their experience and knowledge as experts and long-time veterans of the automotive industry, they, along with ARC and the Airbag Module Defendants, possessed exclusive access to and were in a superior position to know the true facts about the Defective Inflators;

b. Given ARC's design, development, testing and manufacture of the Defective Inflators and its experience and knowledge as experts and long-time veterans of the automotive industry, it, along with the Automaker Defendants and the Airbag Module Defendants, possessed exclusive access to and was in a superior position to know the true facts about the Defective Inflators;

1190

c.    Given the Airbag Module Defendants' role in the design, manufacture, and testing of the airbag modules with the Defective Inflators installed in them, and their experience and knowledge as experts and long-time veterans of the automotive industry, they, along with ARC and the Automaker Defendants, possessed exclusive access to and were in a superior position to know the true facts about the Defective Inflators;

d.    Given the Inflator Defect's hidden and technical nature, Plaintiffs and Class Members lack the sophisticated expertise in vehicle components and technology that would be necessary to discover the Inflator Defect on their own;

e.    Defendants knew that the Inflator Defect gave rise to serious safety concerns for the consumers who purchased and leased the Class Vehicles;

f.    The Inflator Defect poses a severe risk of harm in that, among other things, the metal shrapnel can puncture and stab the occupants, causing severe and potentially fatal injuries;

g.    Defendants knew about and investigated the Inflator Defect, but then did not notify consumers about it, disclose the Inflator Defect to NHTSA, or further launch a comprehensive recall for all Class

Vehicles, which individually and together deprived Plaintiffs of an opportunity that otherwise could have led them to discover the truth about the Inflator Defect in their Class Vehicles; and

h.     The Automaker Defendants made, helped to make, or conspired to make incomplete representations about the safety and reliability of the Class Vehicles and their airbags, while purposefully withholding material facts about a known safety defect. Because they volunteered to provide information about the Class Vehicles that they marketed and offered for sale and lease to consumers, the Automaker Defendants had the duty to disclose the whole truth.

4158. In breach of their duties, Defendants failed to disclose the Inflator Defect and that the Class Vehicles' airbags were not safe and reliable to Plaintiffs and Class Members in connection with the sale of the Class Vehicles.

4159. The Inflator Defect within the Class Vehicles is material to the sale of the Class Vehicles because a reasonable person would find it important in purchasing, leasing, or retaining a new or used motor vehicle and because it directly impacts the value of the Class Vehicles purchased or leased by Plaintiffs and Class Members.

4160. Defendants intended for Plaintiffs and Class Members to rely on their

omissions and concealment—which they did by purchasing and leasing the Class Vehicles at the prices they paid believing that their vehicles would not have an Inflator Defect that would affect the quality, reliability, and safety of the Class Vehicles and their airbags.

4161. Plaintiffs' and Class Members' reliance was reasonable because a reasonable consumer would not have expected that the Class Vehicles contained a safety defect that poses such a serious risk. They had no way of learning the facts that Defendants had concealed or failed to disclose. Plaintiffs and Class Members did not, and could not, unravel Defendants' deception on their own.

4162. Defendants actively concealed and suppressed these material facts, in whole or in part, to maintain a market for the Class Vehicles and the Defective Inflators installed in them, to protect profits, and to avoid costly recalls that would expose them to liability for those expenses and harm the commercial reputations of Defendants and their products. They did so at the expense of Plaintiffs and Class Members.

4163. If Defendants had fully and adequately disclosed the Inflator Defect to consumers, Plaintiffs and Class Members would have seen such a disclosure.

4164. Through their omissions and concealment with respect to the Inflator Defect within the Class Vehicles, Defendants intended to induce, and did induce,

1193

Plaintiffs and Class Members to either purchase a Class Vehicle that they otherwise would not have purchased, or pay more for a Class Vehicle than they otherwise would have paid.

4165. Had Plaintiffs and Class Members known of the Inflator Defect within the Class Vehicles, they would not have purchased the Class Vehicles or would have paid less for them.

4166. As a direct and proximate result of Defendants' omissions and concealment, Plaintiffs and other Class Members either overpaid for the Class Vehicles or would not have purchased the Class Vehicles at all if the Inflator Defect had been disclosed to them. Accordingly, Defendants are liable to Plaintiffs and Class Members for their damages in an amount to be proven at trial.

4167. Defendants acted maliciously, oppressively, deliberately, with intent to defraud; in reckless disregard of the Plaintiffs' and Class Members' rights and well-being; and to enrich themselves. Defendants' misconduct warrants an assessment of punitive damages, as permitted by law, in an amount sufficient to deter such conduct in the future, which amount shall be determined according to proof at trial.

### e. Wyoming Count 5: Unjust Enrichment Against the Automaker Defendants.

4168. Plaintiffs reallege and incorporate by reference all allegations in

1194

Volume 1 of the Consolidated Class Action Complaint as though fully set forth herein.

4169. Wyoming Plaintiffs bring this count under Wyoming law, individually and on behalf of the other members of the Wyoming Subclasses against the Automaker Defendants for their respective Class Vehicles. For the remaining Automaker Defendants, Plaintiffs who purchased or leased their Class Vehicles in states with materially similar laws may represent subclasses under this count against those Automaker Defendants.

4170. For purposes of this count, members of the Wyoming Subclasses shall be referred to as "Class Members."

4171. When they purchased and leased the Class Vehicles, Plaintiffs and Class Members conferred tangible and material economic benefits upon the Automaker Defendants, who readily accepted and retained these benefits.

4172. Plaintiffs and Class Members would not have purchased or leased their Class Vehicles, or would have paid less for them, had they known of the Inflator Defect at the time of purchase or lease. Therefore, the Automaker Defendants profited from the sale and lease of the Class Vehicles to the detriment and expense of Plaintiffs and Class Members.

4173. The Automaker Defendants appreciated these economic benefits. These

benefits were the expected result of the Automaker Defendants acting in their pecuniary interest at the expense of their customers. They knew of these benefits because they were aware of the Inflator Defect, yet they failed to disclose this knowledge and misled the Plaintiffs and Class Members regarding the nature and quality of the Class Vehicles while profiting from this deception.

4174. It would be unjust, inequitable, and unconscionable for the Automaker Defendants to retain these benefits, including because they were procured as a result of their wrongful conduct alleged above.

4175. Plaintiffs and Class Members are entitled to restitution of the benefits the Automaker Defendants unjustly retained and/or any amounts necessary to return Plaintiffs and Class Members to the position they occupied prior to dealing with those Defendants, with such amounts to be determined at trial.

4176. Plaintiffs plead this claim separately as well as in the alternative to their claims for damages under Fed. R. Civ. P. 8(a)(3), because if the Court dismisses Plaintiffs' claims for damages enters judgment on them in favor of the Automaker Defendants, Plaintiffs will have no adequate legal remedy.

## IX.   PRAYER FOR RELIEF

Plaintiffs, on behalf of themselves and all others similarly situated, request the Court to enter judgment in favor of Plaintiffs and against the Defendants and grant the following relief:

A.    An order certifying the proposed Class and/or State Subclasses designating named Plaintiffs as the named representative of the relevant classes and designating the undersigned as Class Counsel for all classes;

B.    A declaration that the airbags in Class Vehicles are defective;

C.    A declaration that the Defendants are financially responsible for notifying all Class Members about the defective nature of the Class Vehicles;

D.    An order enjoining Defendants to desist from further deceptive distribution, sales, and lease practices with respect to the Class Vehicles and directing Defendants to permanently, expeditiously, and completely repair the Class Vehicles;

E.    An award to Plaintiffs and Class Members of compensatory, exemplary, and statutory penalties, damages, including interest, in an amount to be proven at trial;

F.     An award to Plaintiffs and Class Members for the return of the purchase price of the Class Vehicles, with interest from the time it was paid, the reimbursement of the reasonable expenses occasioned by the sale, and damages;

G.     A Defendant-funded program, using transparent, consistent, and reasonable protocols, under which out-of-pocket expenses and damages claims associated with the Defective Inflators in Plaintiffs' and Class Members' Class Vehicles, can be made and paid, such that Defendants, not the Class Members, absorb the losses and expenses fairly traceable to the recall of the vehicles and correction of the Defective Inflators;

H.     A declaration that the Defendants must disgorge, for the benefit of Plaintiffs and Class Members, all or part of the ill-gotten profits it received from the sale or lease of the Class Vehicles, or make full restitution to Plaintiffs and Class Members;

I.     An award of attorneys' fees and costs, as allowed by law;

J.     An award of pre-judgment and post-judgment interest, as provided by law;

K.     Leave to amend this Complaint to conform to the evidence produced at trial; and

L.     Such other relief as may be appropriate under the circumstances.

1198

## X.  DEMAND FOR JURY TRIAL

Pursuant to Federal Rules of Civil Procedure 38(b), Plaintiffs demand a jury trial as to all issues triable by a jury.

Dated: August 28, 2023

*/s/Roland Tellis*
Roland Tellis (CA Bar 186269)
rtellis@baronbudd.com
David Fernandes (CA Bar 280944)
dfernandes@baronbudd.com
Adam Tamburelli (CA Bar 301902)
atamburelli@baronbudd.com
Jay Lichter (CA Bar 266960)
jlichter@baronbudd.com
**BARON & BUDD, P.C.**
15910 Ventura Blvd #1600
Encino, California 91436
Telephone: (818) 839-2333
Facsimile: (818) 986-9698

*/s/ Demet Basar*
W. Daniel "Dee" Miles, III (ASB 7656-M75W)
dee.Miles@Beasleyallen.com
Demet Basar (NYS 2486710)
demet.Basar@Beasleyallen.com
J. Mitch Williams (ASB 8560X19D)
mitch.Williams@Beasleyallen.com
Dylan T. Martin (ASB 2336B15S)
dylan.Martin@Beasleyallen.com
**BEASLEY, ALLEN, CROW, METHVIN, PORTIS & MILES, P.C.**
272 Commerce Street
Montgomery, Alabama 36104
Telephone number: (334) 269-2343
Facsimile number: (334) 954-7555

H. Clay Barnett, III (GA Bar 174058)
Clay.Barnett@Beasleyallen.com
Thomas P. Willingham (GA Bar 235049)
Tom.Willingham@Beasleyallen.com
**BEASLEY, ALLEN, CROW, METHVIN, PORTIS & MILES, P.C.**
Overlook II
2839 Paces Ferry Rd SE, Suite 400
Atlanta, GA 30339
Telephone number: (404) 751-1162
Facsimile number: (334) 954-7555

*/s/ James E. Cecchi*
James E. Cecchi (NJ Bar 030861989)
jcecchi@carellabyrne.com
**CARELLA, BYRNE, CECCHI,
BRODY & AGNELLO, P.C.**
5 Becker Farm Road
Roseland, New Jersey 07068
Telephone number: (973) 994-1700
Facsimile number: (973) 994-1744

Zachary Jacobs (IL Bar 6294345)
zjacobs@carellabyrne.com
**CARELLA, BYRNE, CECCHI,
BRODY & AGNELLO, P.C.**
222 South Riverside Plaza
Chicago, Illinois 60606
Telephone number: (973) 994-1700
Facsimile number: (973) 994-1744

Lindsey H. Taylor (FL Bar 1027908)
ltaylor@carellabyrne.com
Zachary J. Bower (FL Bar 0017506)
zbower@carellabyrne.com
**CARELLA, BYRNE, CECCHI,
BRODY & AGNELLO, P.C.**
2222 Ponce De Leon Blvd.
Miami, Florida 33134
Telephone number: (973) 994-1700
Facsimile number: (973) 994-1744

*/s/ Elizabeth T. Castillo*
Niall P. McCarthy (Cal. Bar 160175)
nmccarthy@cpmlegal.com
Elizabeth T. Castillo (Cal. Bar 280502)
ecastillo@cpmlegal.com
Kevin J. Boutin (Cal. Bar 334965)
kboutin@cpmlegal.com
**COTCHETT, PITRE &
McCARTHY, LLP**
840 Malcolm Road
Burlingame, CA 94010
Telephone: (650) 697-6000

Hannah K. Brown (Cal. Bar 337592)
hbrown@cpmlegal.com
Theresa E. Vitale (Cal. Bar 333993)
tvitale@cpmlegal.com
**COTCHETT, PITRE &
McCARTHY, LLP**
2716 Ocean Park Blvd., Suite 3088
Santa Monica, CA 90405
Telephone: (310) 392-2008

*/s/ Matthew D. Schultz*
Matthew D. Schultz (*pro hac vice*)
mschultz@levinlaw.com
William F. Cash (*pro hac vice*)
bcash@levinlaw.com
Scott Warrick (*pro hac vice*)
swarrick@levinlaw.com
**LEVIN, PAPANTONIO,
RAFFERTY, PROCTOR,
BUCHANAN, O'BRIEN, BARR &
MOUGEY, P.A.**
316 S. Baylen St., Suite 600
Pensacola, FL 32502
Tel: (850) 435-7140

1201

*/s/ David S. Stellings*

David S. Stellings (NY Bar 2635282)
dstellings@lchb.com
Katherine I. McBride (NY Bar 5452388)
kmcbride@lchb.com
Gabriel A. Panek (NY Bar 5605472)
gpanek@lchb.com
**LIEFF CABRASER HEIMANN & BERNSTEIN, LLP**
250 Hudson Street, 8th Floor
New York, NY 10013-1413
Telephone: (212) 355-9500
Facsimile: (212) 355-9592

Nimish R. Desai (CA Bar 244953)
ndesai@lchb.com
**LIEFF CABRASER HEIMANN & BERNSTEIN, LLP**
275 Battery Street, 29th Floor
San Francisco, California 94111
Telephone: (415) 956-1000
Facsimile: (415) 956-1008

*/s/ Kevin R. Dean*

Kevin R. Dean (GA Bar No. 214855)
kdean@motleyrice.com
Ann K. Ritter
aritter@motleyrice.com
Lance V. Oliver
loliver@motleyrice.com
Sara O. Couch
scouch@motleyrice.com
**MOTLEY RICE LLC**
28 Bridgeside Boulevard
Mount Pleasant, South Carolina 29464
Phone: (843) 216-9000
Fax: (843) 216-9450

***Leadership Committee for Plaintiffs and the Proposed Classes***

*/s/ Michael A. Caplan*

Michael A. Caplan (GA Bar 601039)
**CAPLAN COBB LLC**
75 Fourteenth Street NE, Suite 2700
Atlanta, Georgia 30309
Tel: (404) 596-5600
Fax: (404) 596-5604
mcaplan@caplancobb.com

*/s/ M.J. Blakely*

M.J. Blakely (GA Bar 708906)
mjblakely@blakelyfirm.com
**THE BLAKELY FIRM, L.L.C.**
P.O. Box 3314
Decatur, GA 30031
Telephone number: (404) 491-0617

***Co-Liaison Counsel for Plaintiffs and the Proposed Classes***

1202