**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF GEORGIA**
**ATLANTA DIVISION**

| | |
|---|---|
| IN RE: ARC AIRBAG INFLATORS PRODUCTS LIABILITY LITIGATION | MDL No. 3051<br><br>Case No: 1:22-md-03051-ELR |

**MEMORANDUM IN SUPPORT OF DEFENDANTS'**
**MOTION TO DISMISS PLAINTIFFS' CORRECTED**
<u>**CONSOLIDATED CLASS ACTION COMPLAINT**</u>

CROWELL & MORING LLP
April N. Ross
Mohamed Awan
Emily Tucker
1001 Pennsylvania Avenue NW
Washington, D.C. 20004
Telephone: (202) 624-2500
aross@crowell.com
mawan@crowell.com
etucker@crowell.com

*Counsel for General Motors LLC*

# TABLE OF CONTENTS

INTRODUCTION ................................................................................................. 1

FACTUAL BACKGROUND ............................................................................... 3

ARGUMENT ....................................................................................................... 6

I.     PLAINTIFFS LACK STANDING TO ASSERT CERTAIN
       CLAIMS. ..................................................................................................... 6

II.    THE "NATIONWIDE" CLAIMS FAIL FOR ADDITIONAL
       REASONS. ................................................................................................... 8

III.   PLAINTIFFS' EXPRESS WARRANTY CLAIMS FAIL. ......................... 10

       A.     Plaintiffs Do Not Allege A Defect Covered By The Express
              Warranties. ....................................................................................... 10

       B.     Plaintiffs Fail to Allege Manifestation of a Defect During
              the Applicable Warranty Periods. .................................................... 12

       C.     Plaintiffs Do Not Allege Presenting Their Cars For
              Repairs During The Warranty Periods. ............................................ 13

IV.    PLAINTIFFS' IMPLIED WARRANTY CLAIMS FAIL. ........................... 14

       A.     The Implied Warranty Claims Fail for Lack of Privity. .................. 14

       B.     Implied Warranty Claims Fail for Lack of Pre-Suit Notice ............ 15

       C.     Plaintiffs Fail to Allege Unmerchantability. ................................... 17

       D.     Plaintiffs' Implied Warranty Claims Are Subject To The
              Same Limitations As Their Express Warranty Claims. ................... 19

V.     PLAINTIFFS' FRAUD-BASED CLAIMS SHOULD BE
       DISMISSED. ............................................................................................. 20

       A.     Plaintiffs Fail To Plead Their Fraud-Based Claims With
              Particularity. .................................................................................... 21

       B.     The Economic Loss Rule Bars Many Claims .................................. 23

       C.     Certain Claims Are Barred By State-Law Manifestation
              Requirements. ................................................................................... 23

       D.     Plaintiffs Fail to Allege That Defendants Knew of the
              Alleged Defect Before Plaintiffs Acquired Their Vehicles. ........... 24

       E.     Plaintiffs Fail to Allege a Duty to Disclose. ................................... 27

       F.     Plaintiffs Do Not Allege Active Concealment By
              Defendants. ....................................................................................... 30

i

G.     Plaintiffs Fail to Plausibly Allege Reliance and/or Causation. ............. 31

H.     Plaintiffs' Fraud-Based Claims Should be Dismissed for Other State-Specific Reasons. ............................................................ 32

     1.     Certain States Preclude Omission-Based Claims. ................. 32

     2.     Certain States Require Intent to Defraud. ................................ 33

     3.     Certain States Preclude Injunctive Relief. ................................ 34

     4.     Ohio's Consumer Protection Statute Precludes Class Claims Where Plaintiffs Do Not Allege A Previous Violation. ................................................................................. 34

     5.     Certain States Exempt Motor Vehicle Sales. ............................ 34

     6.     Certain States Bar Claims Where There Are Adequate Legal Remedies. ........................................................ 35

     7.     Certain States Require Adequate Pre-Suit Notice. .................... 36

     8.     Certain States Require Allegations of Actual And Tangible Financial Loss. .......................................................... 36

VI.    MANY PLAINTIFFS' CLAIMS ARE UNTIMELY ................................... 37

A.     Plaintiffs' Warranty Claims Are Untimely. ......................................... 38

B.     Plaintiffs' Common-Law Fraud Claims Are Untimely. ....................... 38

C.     Plaintiffs' Unjust Enrichment Claims Are Untimely. .......................... 39

D.     Plaintiffs' Consumer Protection Claims Are Untimely. ....................... 39

E.     Fraudulent Concealment Tolling Does Not Save Untimely Claims. ................................................................................................ 39

VII.   THE UNJUST ENRICHMENT CLAIMS SHOULD BE DISMISSED. .............................................................................................. 41

VIII. THE COURT SHOULD DISMISS PLAINTIFFS' EQUITABLE CLAIMS FOR RESTITUTION. ................................................................... 44

IX.    NHTSA—NOT THIS COURT—SHOULD ADDRESS PLAINTIFFS' RECALL-RELATED INJUNCTIVE RELIEF. .................... 44

A.     The Court Should Defer to NTHSA's Primary Jurisdiction Over Plaintiffs' Request for a Recall and Related Relief. ................... 45

B.     The Safety Act Preempts Recall-Related Relief. ................................. 48

C.     Plaintiffs' Request For Recall-Related Relief Improperly
       Circumvents the Absence of a Private Right of Action
       Under the Safety Act. .......................................................................... 49

CONCLUSION ........................................................................................................ 50

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*AAL USA, Inc. v. Black Hall Aerospace, Inc.*,
2018 WL 1157201 (N.D. Ala. Mar. 5, 2018) ....................................................41

*Ace Tree Surgery, Inc. v. Terex Corp.*,
2018 WL 11350262 (N.D. Ga. Dec. 10, 2018) .................................................21

*Ace, Inc. v. Maynard*,
423 S.E.2d 504 (N.C. Ct. App. 1992)................................................................33

*Adams v. Crown Asset Mgmt., LLC*,
2011 WL 13318846 (N.D. Ga. Aug. 11, 2011) ................................................41

*AFSCME v. Ortho–McNeil–Janssen Pharm., Inc.*,
2010 WL 891150 (E.D.Pa. Mar. 11, 2010) ......................................................15

*Agostino v. Quest Diagnostics Inc.*,
256 F.R.D. 437 (D.N.J. 2009).............................................................................10

*Am. Aerial Servs., Inc. v. Terex USA, LLC*,
39 F.Supp. 3d 95 (D. Me. 2014) .......................................................................16

*Aprigliano v. Am. Honda Motor Co.*,
979 F. Supp. 2d 1331 (S.D. Fla. 2013) .............................................................12

*Auto. Sales, Inc. v. Freet*,
725 N.E.2d 955 (Ind.Ct.App. 2000) ..................................................................39

*Ayres v. General Motors Corp.*,
234 F.3d 514 (11th Cir. 2000) ...........................................................................49

*Barge v. Bristol-Myers Squibb Co.*,
2009 WL 5206127 (D.N.J. 2009) .......................................................................31

*Beck v. FCA US LLC*,
273 F. Supp. 3d 735 (E.D.Mich. 2017)..............................................................26

*Benjamin v. Shellpoint Mortg. Servicing*,
2018 WL 1631381 (S.D. Ga. Apr. 4, 2018) ...............................................20, 21

iv

*Black Stone Auto Export, Inc.*, 2021 WL 1748385,  (N.D.Ga. Mar. 31,
    2021), *aff'd, Black Stone Auto Export, Inc.*, 2021 WL 6102499
    (11thCir. Jan. 23, 2021) .........................................................................50

*Blissard v. FCA US LLC*,
    2018 WL 6177295 (C.D. Cal. 2018) ..................................................26

*Boardman Petroleum v. Federated Mut. Ins. Co.*,
    135 F.3d 750 (11th Cir. 1998) ............................................................8

*Brand v. Hyundai Motor America*,
    226 Cal. App. 4th 1538 (2014) .........................................................17

*Brogdon ex rel. Cline v. Nat'l Healthcare Corp.*,
    103 F. Supp. 2d 1322 (N.D.Ga. 2000).................................................35

*Budach v. NIBCO, Inc.*,
    2015 WL 6870145 (W.D.Mo. Nov. 6, 2015) ....................................16

*Bunn v. Navistar, Inc.*,
    797 F. App'x 247 (6th Cir. 2020) ......................................................16

*Bussian v. DaimlerChrysler Corp.*,
    411 F. Supp. 2d 614 (M.D.N.C. 2006) ..............................................47

*Callen v. Daimler*,
    2021 WL 4523436 (N.D. Ga. Oct. 4, 2021) ....................................6, 8

*Campbell v. Upjohn Co.*,
    498 F. Supp. 722 (W.D.Mich. 1980), *aff'd*, 676 F.2d 1122 (6th Cir.
    1982) ...................................................................................................40

*Car Transp. Brokerage Co. v. Blue Bird Body Co.*,
    322 F. App'x 891 (11th Cir. 2009) ....................................................13

*Carder v. Graco Children's Prods., Inc.*,
    558 F. Supp. 3d 1290 (N.D. Ga. 2021)...............................................34

*Castano v. Am. Tobacco Co.*,
    84 F.3d 734 (5th Cir. 1996) ...............................................................10

*Chiappetta v. Kellogg Sales Co.*,
    2022 WL 602505 (N.D. Ill. Mar. 1, 2022) ........................................17

*Cincinnati Life Ins. Co. v. Beyrer*,
722 F.3d 939 (7th Cir. 2013) .............................................................................41

*Coker v. DaimlerChrysler Corp.*,
2004 WL 32676 (N.C. Super. Jan. 5, 2004) .....................................46, 47, 48, 49

*Dearmey v. Hawaiian Isles Kona Coffee Co.*,
2019 WL 6723413 (C.D.Cal. July 22, 2019).....................................................10

*Deburro v. Apple, Inc.*,
2013 WL 5917665 (W.D. Tex. Oct. 31, 2013)....................................................20

*Dinwiddie v. Suzuki Motor of Am., Inc.*,
111 F. Supp. 3d 1202 (W.D. Okla. 2015)............................................................35

*Dorgan v. Ethicon, Inc.*,
2020 WL 5372134 (W.D.Mo. 2020).......................................................................33

*Doss v. Gen. Mills, Inc.*,
816 F. App'x 312 (11th Cir. 2020) ......................................................................6

*Durso v. Samsung Elecs. Am., Inc.*,
2013 WL 5947005 (D.N.J. Nov. 6, 2013) .........................................................26

*El Toro Grp., LLC v. Bareburger Grp., LLC*,
141 N.Y.S.3d 3 (N.Y. Sup. Ct. App. Div. 2021)...................................................35

*Espineli v. Toyota Motor Sales, U.S.A., Inc.*,
2019 WL 2249605 (E.D. Cal. 2019)..................................................................26

*Evans v. Trinity Indus., Inc.*,
137 F. Supp. 3d 877 (E.D.Va. 2015) ................................................................40

*Famigletti v. Ethicon, Inc.*,
2019 WL 7370670 (N.D.Tex. 2019) ..................................................................33

*Fox v. Saginaw Cnty., Michigan*,
67 F.4th 284 (6th Cir. 2023) .............................................................................7

*Foxworthy, Inc. v. CMG Life Servs., Inc.*,
2012 WL 1269127 (N.D. Ga. 2012) ..................................................................23

*Gasbi, LLC v. Sanders*,
   120 N.E.3d 614 (Ind. Ct. App. 2019) ...................................................33

*Gen. Insulation Co. v. Eckman Const.*,
   992 A.2d 613 (N.H. 2010) ....................................................................42

*Georgia Power Co. v. Charter Commc'ns, LLC*,
   2013 WL 12247036 (N.D. Ga. May 28, 2013)......................................45

*Gibson v. Equifax Info. Servs., LLC*,
   2019 WL 4731957 (M.D. Ga. July 2, 2019)..........................................20

*Goldstein v. The Home Depot, U.S.A., Inc.*,
   609 F.Supp.2d 1340 (N.D.Ga.2009)......................................................43

*Granillo v. FCA US LLC*,
   2016 WL 9405772 (D.N.J. Aug. 29, 2016) ...........................................27

*Grodzitsky v. Am. Honda Motor Co.*,
   2013 WL 690822 (C.D. Cal. Feb. 19, 2013) .........................................27

*Hancock v. Chi. Title Ins. Co.*,
   635 F. Supp. 2d 539 (N.D.Tex. 2009) ...................................................42

*Harman v. Taurus Int'l Mfg., Inc.*,
   586 F. Supp. 3d 1155 (M.D. Ala. 2022).................................................23

*Helpling v. Rheem Mfg. Co.*,
   2016 WL 1222264 (N.D. Ga. 2016) ......................................................13

*Hernandez v. Apple Auto Wholesalers of Waterbury LLC*,
   460 F. Supp. 3d 164 (D. Conn. 2020).....................................................18

*Holmes v. Behr Process Corp.*,
   2015 WL 7252662 (N.D. Ala. Nov. 17, 2015) .......................................35

*Horsley v. Univ. of Ala.*,
   564 F.App'x 1006 (11th Cir. 2014) ........................................................40

*Hyder v. United States*,
   2020 WL 127661 (M.D. Tenn. Jan. 10, 2020) .......................................30

*In re Abilify (Aripiprazole) Prods. Liab. Litig.*,
2021 WL 3869752 (N.D. Fla. July 27, 2021) .......................................................8

*In re Atlas Roofing Corp. Chalet Shingle Prod. Liab. Litig.*,
2018 WL 2765961 (N.D.Ga. June 8, 2018)..........................................................23

*In re Bridgestone/Firestone, Inc. Tires Products Liab. Litig.*,
153 F. Supp. 2d 935 (S.D. Ind. 2001).............................................................48, 49

*In re Ford Motor Co. Vehicle Paint Litig.*,
182 F.R.D. 214 (E.D.La. 1998) ...........................................................................10

*In re Ford Tailgate Litig.*,
2014 WL 1007066 (N.D.Cal. Mar. 12, 2014) ......................................................42

*In re Gen. Motors Air Conditioning Mktg. & Sales Pracs. Litig.*,
406 F. Supp. 3d 618 (E.D. Mich. 2019) ...............................................................43

*In re Gen. Motors Corp. Anti-Lock Brake Prods. Liab. Litig.*,
966 F. Supp. 1525 (E.D. Mo. 1997), *aff'd sub nom, Briehl v. Gen.
Motors Corp.*, 172 F.3d 623 (8th Cir. 1999) ......................................................18

*In re Gen. Motors LLC Ignition Switch Litig.*,
2016 WL 3920353 (S.D.N.Y. July 15, 2016).......................................................23

*In re Gen. Motors LLC Ignition Switch Litig.*,
257 F. Supp. 3d 372 (S.D.N.Y. 2017), *modified on reconsideration
by* 2017 WL 3443623 (S.D.N.Y. Aug. 9, 2017)..................................................26

*In re Horizon Organic Milk Plus DHA Omega-r Mktg. & Sales
Practice Litig.*,
955 F. Supp. 2d 1311 (S.D. Fla. 2013) ................................................................46

*In re Int'l Admin. Servs., Inc.*,
408 F.3d 689 (11th Cir. 2005) .............................................................................40

*In re My Ford Touch Consumer Litig.*,
46 F. Supp. 3d 936 (N.D.Cal. 2014)....................................................................13

*In re OnStar Cont. Litig.*,
2010 WL 3516691 ..................................................................................................9

*In re OnStar Contract Litigation*,
    600 F. Supp. 2d 861 (E.D. Mich. 2009) ...........................................................13

*In re Porsche Cars N. Am., Inc.*,
    880 F. Supp. 2d 801 (S.D. Ohio 2012) ............................................................43

*In re Takata Airbag Prods. Liab. Litig.*,
    2016 WL 1266609 (S.D.Fla. Mar. 11, 2016) .................................................6, 7

*In re Takata Airbag Prods. Liab. Litig.*,
    255 F. Supp. 3d 1241 (S.D.Fla. 2017) ..............................................................44

*In re Takata Airbag Prods. Liab. Litig.*,
    462 F. Supp. 3d 1304 (S.D. Fla. 2020) ...............................................................6

*Incubadora Mexicana, SA de CV v. Zoetis, Inc.*,
    310 F.R.D. 166 (E.D. Pa. 2015) .......................................................................16

*Int'l Paper Co. v. Oullette*,
    479 U.S. 481 (1987)...........................................................................................48

*Jackson v. Astrue*,
    506 F.3d 1349 (11th Cir. 2007) ........................................................................40

*Jimenez v. Ford Motor Credit Co.*,
    2015 WL 9318913 (Mich. App. Dec. 22, 2015)................................................34

*Kavon v. BMW of N. Am., LLC*,
    605 F. Supp. 3d 622 (D.N.J. 2022) ..................................................................12

*Lanfear v. Home Depot, Inc.*,
    536 F.3d 1217 (11th Cir. 2008) ........................................................................21

*Lewis Tree Serv. v. Lucent Techs., Inc.*,
    211 F.R.D. 228 (S.D.N.Y. 2002) .....................................................................10

*Lewis v. Mercedes-Benz U.S.*,
    530 F.Supp.3d 1183 (S.D. Fla. 2021) .......................................................6, 8, 25

*Licul v. Volkswagen Grp. of Am.*,
    2013 WL 6328734 (S.D. Fla. Dec. 5, 2013).....................................................12

*Lilly v. Ford Motor Co.*,
  2002 WL 84603 (N.D. Ill. Jan. 22, 2002) ....................................................48, 49

*Lowe v. Letsinger*,
  772 F.2d 308 (7th Cir. 1985) ...............................................................30

*Mandani v. Volkswagen Grp. of Am., Inc.*,
  2019 WL 652867 (N.D. Cal. Feb. 15, 2019) ...................................................25

*McBride v. Boughton*,
  123 Cal. App. 4th 379 (2004) ...............................................................42

*McCabe v. Daimler AG*,
  160 F. Supp. 3d 1337 (N.D. Ga. 2015) .................................................21, 50

*McCabe v. Daimler AG*,
  948 F. Supp. 2d 1347 (N.D. Ga. 2013) ....................................................50

*McCalley v. Samsung Elecs. Am., Inc.*,
  2008 WL 878402 (D.N.J. Mar. 31, 2008) .................................................20

*McKinney v. State*,
  693 N.E.2d 65 (Ind. 1998) .................................................................34

*Meserole v. Sony Corp. of Am., Inc.*,
  2009 WL 1403933 (S.D.N.Y. May 19, 2009) ...............................................20

*Mest v. Cabot Corp.*,
  449 F.3d 502 (3d Cir. 2006) ...............................................................40

*Mexia v. Rinker Boat Co.*,
  174 Cal.App. 4th 1297 (2009) .............................................................38

*Miller v. Gen. Motors, LLC*,
  2018 WL 2740240 (E.D. Mich. June 7, 2018) .............................................20

*Miller v. GMC*,
  2003 WL 168626 (N.D.Ill. Jan. 26, 2003) ................................................10

*Mitchell v. Gen. Motors LLC*,
  2014 WL 1319519 (W.D. Ky. Mar. 31, 2014) .............................................43

*Morrow v. Bank of Am., N.A.*,
324 P.3d 1167 (Mont. 2014) ............................................................... 29

*Namovicz v. Cooper Tire & Rubber Co.*,
225 F. Supp. 2d 582 (D. Md. 2001) ..................................................... 49

*Nathan v. Whirlpool Corp.*,
492 F. Supp. 3d 747 (S.D.Ohio 2000) ................................................. 17

*Nelson v. Forest River, Inc.*,
2023 WL 2610769 (D.Mont. 2023) ...................................................... 33

*Parnell v. FanDuel, Inc.*,
591 S.W.3d 315 (Ark. 2019) ............................................................... 37

*Pate v. Cent. Flying Serv., Inc.*,
2006 WL 3388340 (E.D.Ark. 2006) ..................................................... 33

*Pedraza v. United Guar. Corp.*,
114 F. Supp. 2d 1347 (S.D. Ga. 2000) ................................................ 41

*Phillips Petroleum Co. v. Shutts*,
472 U.S. 797 (1985) ............................................................................... 9

*Prado-Steiman v. Bush*,
221 F.3d 1266 (11th Cir. 2000) ............................................................. 7

*Pulmonary Assocs. of Charleston PLLC v. Greenway Health, LLC*,
2020 WL 9073551 (N.D. Ga. June 29, 2020) ...................................... 22

*Radford v. Daimler Chrysler Corp.*,
168 F. Supp. 2d 751 (N.D. Ohio 2001) ............................................... 31

*Rahamankhan Tobacco Enters. Pvt. Ltd. v. Evans MacTavish
Agricraft, Inc.*,
989 F. Supp. 2d 471 (E.D.N.C. 2013) ................................................. 33

*Rana Fin., LLC v. City Nat'l Bank of New Jersey*,
347 F. Supp. 3d 1147 (S.D. Fla. 2018) ............................................... 41

*Ray v. Spirit Airlines, Inc.*,
2015 WL 11143079 (S.D. Fla. June 4, 2015), *aff'd,* 836 F.3d 1340
(11th Cir. 2016) .................................................................................... 22

*Red Roof Franchising, LLC v. Riverside Macon Grp., LLC*,
  2020 WL 2494462 (S.D. Ohio May 14, 2020) .................................................30

*Regalado v. Dir., Ctr. for Disease Control*,
  2023 WL 239989 (11th Cir. Jan. 18, 2023) ......................................................6

*Resnick v. Hyundai Motor Am., Inc.*,
  2016 WL 9455016 (C.D.Cal. Nov. 14, 2016) ..................................................26

*Rodi v. S. New England Sch. Of L.*,
  389 F.3d 5 (1st Cir. 2004)................................................................................36

*Romero v. Toyota Motor Corp.*,
  916 F. Supp. 2d 1301 (S.D.Fla. 2013) .............................................................30

*Rose v. Ferrari N. Am., Inc.*,
  2022 WL 14558880 (D.N.J. Oct. 25, 2022) .....................................................27

*Sater v. Chrysler Grp. LLC*,
  2015 WL 736273 (C.D .Cal. Feb. 20, 2015) ...............................................10, 11

*Schmidt v. Ford Motor Co.*,
  972 F. Supp. 2d 712 (E.D.Pa. 2013)................................................................17

*Silvas v. General Motors, LLC*,
  2014 WL 1572590 (S.D. Tex. Apr. 17, 2014)..................................................47

*Skelton v. Gen. Motors Corp.*,
  500 F. Supp. 1181 (N.D. Ill. 1980), *rev'd on other grounds*, 660
  F.2d 311 (7th Cir. 1981) .................................................................................18

*Sloan v. Gen. Motors LLC*,
  2017 WL 3283998 (N.D. Cal. 2017) ...............................................................26

*Sloan v. Gen. Motors LLC*,
  2020 WL 1955643 (N.D. Cal. 2020) ...............................................................43

*Smith v. Apple, Inc.*,
  2009 WL 3958096 (M.D.Ala. Nov. 4, 2009) .............................................15, 16

*Sonner v. Premier Nutrition Corp.*,
  971 F.3d 834 (9th Cir. 2020) ..........................................................................44

*Sonneveldt v. Mazda Motor of Am., Inc.*,
   2021 WL 62502 (C.D.Cal. 2021) .......................................................13

*Soto v. CarMax Auto Superstores, Inc.*,
   271 Ga. App. 813 (2005) ...................................................................18

*Standard Structural Steel Co. v. Bethlehem Steel Corp.*,
   597 F. Supp. 164 (D .Conn. 1984).....................................................18

*Stevenson v. Mazda Motor of Am., Inc.*,
   2015 WL 3487756 (D.N.J. June 2, 2015)..........................................26

*Stockinger v. Toyota Motor Sales USA, Inc.*,
   2017 WL 10574372 (C.D.Cal. July 7, 2017)......................................13

*Storey v. Attends Healthcare Prod., Inc.*,
   2016 WL 3125210 (E.D. Mich. June 3, 2016) ...................................43

*SunGard Pub. Sector, Inc. v. Innoprise Software, Inc.*,
   2012 WL 360170 (M.D. Fla. 2012) ....................................................32

*Taragan v. Nissan N. Am., Inc.*,
   2013 WL 3157918 (N.D. Cal. June 20, 2013).....................................30

*Tenet Healthsystem Desert, Inc. v. Blue Cross of California*,
   245 Cal. App. 4th 821 (Cal. App. 2016).......................................28, 29

*Terry Barr Sales Agency, Inc. v. All-Lock Co., Inc.*,
   96 F.3d 174 (6th Cir. 1996) ...............................................................43

*Tibbetts v. Sight
   'n Sound Appliance Ctrs., Inc.*, 77 P.3d 1042 (Okla. 2003), *as
   corrected* (Sept. 30, 2003)................................................................34

*Troup v. Toyota Motor Co.*,
   545 F. App'x 668 (9th Cir. 2013) .......................................................11

*Turk v. Morris, Manning & Martin, LLP*,
   593 F. Supp. 3d 1258 (N.D. Ga. 2022)..............................................24

*Varner v. Domestic Corp.*,
   2017 WL 3730618 (S.D. Fla. Feb. 7, 2017) .......................................24

*Wallace v. SharkNinja Operating, LLC,*
    2020 WL 1139649 (N.D. Cal. Mar. 9, 2020) .................................................... 33

*Walters v. Vitamin Shoppe Indus.,*
    2018 WL 2424132 (D.Or. May 8, 2018) ........................................................... 10

*Wolfe v. Flathead Elec. Coop., Inc.,*
    431 P.3d 327 (Mont. 2018) ............................................................................... 40

*Zapata Fonseca v. Goya Foods Inc.,*
    2016 WL 4698942 (N.D.Cal. Sep. 8, 2016) ..................................................... 35

*Zuanich v. Hankook Tire Am. Corp.,*
    2018 WL 6709466 (M.D. Ala. Dec. 20, 2018) ................................................. 22

## Statutes

49 U.S.C. § 30101, *et seq.* ................................................................................. 46

49 U.S.C. § 30118 ............................................................................................... 49

49 U.S.C. § 30120 ............................................................................................... 49

49 U.S.C. § 30120(a)(1)(i) .................................................................................. 50

49 U.S.C. § 30162 ............................................................................................... 49

49 U.S.C. § 30162(a)(2) ...................................................................................... 46

Cal.Civ.Code §§ 1790, *et seq.* ........................................................................... 38

Cal. Com. Code § 2725(1) .................................................................................. 38

Okla. Stat. Ann. tit. 15, § 754(2) ........................................................................ 35

UCC § 2–316 ....................................................................................................... 19

UCC § 2-314 ........................................................................................................ 17

UCC § 2-314(2)(c).16 ......................................................................................... 17

UCC § 2-725 (2) .................................................................................................. 38

UCC § 2A-212(2)(c) ........................................................................................... 17

**Regulations**

49 C.F.R. § 501.2 ...........................................................................................49

49 C.F.R. §§ 554.6–554.7 ...........................................................................49

**Rules**

Fed. R. Civ. P. 9(b) ...........................................................................*passim*

Fed. R. Civ. P. 12(b)(6)...............................................................................20

# INTRODUCTION

Plaintiffs allege that they—and tens of millions of other people nationwide—overpaid for vehicles they have driven for many years and many thousands of miles because the vehicles allegedly contain defective airbag inflators. No Plaintiff has experienced an inflator rupture or other airbag issue, and no Plaintiff claims physical injury or property damage.[1] None of the moving Defendants[2] manufactured the inflators at issue, or the airbag modules in which they were installed. And Plaintiffs allege no facts plausibly suggesting that any of the moving Defendants knew of any alleged defect in those components, much less that they concealed a material defect from consumers.

Instead, Plaintiffs seek compensation for an alleged safety risk that they admit is not present in all vehicles, and that never materialized in their own vehicles. Plaintiffs say the airbag inflators manufactured by ARC Automotive, Inc. and installed in vehicles manufactured or distributed by certain moving Defendants (the "Class Vehicles") suffer from a "design defect" that *may* cause (but has not caused) the inflators to rupture upon deployment, ejecting metal shrapnel that can endanger or kill vehicle occupants. To be clear, safety is of paramount importance to the moving Defendants. But whether the

---

[1] Underscoring the purely economic nature of their claims, Plaintiffs exclude from their proposed classes "any person who asserts a personal injury or wrongful death claim caused by the Defective Inflator." Compl. ¶ 387.

[2] BMW of North America, LLC; FCA US LLC; Ford Motor Company; General Motors LLC; Kia America, Inc.; Hyundai Motor America; Porsche Cars North America, Inc.; Audi of America, LLC; Volkswagen Group of America, Inc., and certain related entities (collectively, "Defendants").

ARC-manufactured inflators at issue have a safety defect, and whether they should be recalled or replaced, is a question for the National Highway Traffic Safety Administration ("NHTSA"), not this Court. This civil litigation is not about safety; it is about money.

Plaintiffs' sprawling 1,200-page Corrected Class Action Complaint ("Complaint" or "Compl.") asserts fraud-based claims (including common-law fraud, unjust enrichment, and statutory consumer protection claims) and warranty claims under the laws of all 50 states and the District of Columbia. All of those claims should be dismissed.

Plaintiffs' non-warranty claims sound in fraud and thus must satisfy the heightened pleading requirements of Rule 9(b). But Plaintiffs have not alleged, with respect to their particular transactions, the basic "who, what, when, where, and how" of any alleged misconduct. Despite its length, the Complaint contains no details about any of the allegedly fraudulent transactions, much less about any Defendant's supposed pre-sale knowledge or concealment of a defect. Conclusory allegations like those in the Complaint do not add up to viable fraud claims.

Plaintiffs' warranty claims fare no better. The express warranty claims fail because they do not allege a defect covered by any Defendant's warranties, which are limited to defects in material and workmanship, not the design defects supposedly at issue here.[3] Even if Plaintiffs had alleged a defect covered by the warranty, the express warranty

---

[3] As will become clear if the case progresses, any issue here is a manufacturing issue, not a design defect, but for purposes of this motion the Defendants treat the "design defect" allegation as true, as the Court must at this stage.

claims would still fail because Plaintiffs do not allege that they presented their vehicles to Defendants for repairs during the warranty period. Nor do Plaintiffs claim that the alleged defect manifested in their vehicles during the warranty period.

Plaintiffs' implied warranty claims similarly fail because Plaintiffs lack contractual privity with Defendants and failed to provide them with pre-suit notice. In addition, no Plaintiffs allege that their vehicles actually experienced the alleged defect, nor have they pled other facts to show that their vehicles were unmerchantable.

Plaintiffs' claims also fail for other reasons: Some are untimely, others seek equitable remedies despite the availability of adequate legal remedies, and still others seek classwide relief foreclosed by law.

For the reasons set forth here and in Defendants' individual briefs, the Court should dismiss the Complaint.

## **FACTUAL BACKGROUND**

Plaintiffs are 115 residents of 36 states[4] who purchased, leased, or inherited new and used vehicles of over 100 different makes, models, and model years manufactured and/or distributed by Defendants. *See* Compl. ¶¶ 142-255. Plaintiffs allege that their vehicles are equipped with defective airbag inflators manufactured by ARC Automotive,

---

[4] No Plaintiffs allege that they reside in or purchased their vehicles in Alaska, Colorado, Hawaii, Louisiana, Maine, Nebraska, New Mexico, North Dakota, Oklahoma, Oregon, Rhode Island, Utah, West Virginia, Wyoming, or the District of Columbia. Additionally, no Plaintiff resides in Maryland or Texas.

Inc. *Id.*; *see also id.* ¶ 375. Plaintiffs allege that, in rare circumstances, the defect causes the inflator to rupture when the airbag deploys, with internal components of the inflator, such as metal fragments, being ejected into the passenger compartment. *Id.* ¶¶ 2, 295, 332. In total, Plaintiffs have identified 10 field ruptures of ARC inflators. *Id.* ¶ 6. Out of the 67 million allegedly defective inflators,[5] *id.* ¶¶ 1, 262, that amounts to a 0.000015% manifestation rate. Most airbags never deploy during the life of a vehicle, and NHTSA recently calculated that the predicted rate of airbag inflator rupture is one in approximately every 370,000 deployments, or 0.00027%.

In 2015, after two field ruptures, NHTSA opened an investigation into ARC inflators made between 2001 and 2004. *Id.* ¶ 308. ARC and various automakers cooperated with NHTSA to test a sample of inflators. *Id.* ¶ 311. None of the inflators ruptured during this testing. *Id.* ¶ 313. NHTSA's investigation expanded to include additional ARC inflators, and in 2023, after additional ruptures in the marketplace, NHTSA asked ARC to recall 67 million inflators. *Id.* ¶ 330. Defendants have fully cooperated with NHTSA's investigation, *see id.* ¶¶ 311, 325, 329, and have issued recalls of vehicles containing inflators from the same lots as any failed inflator. *Id.* ¶¶ 333, 342, 343, 347, 350, 356, 359, 361, 363, 368.

Plaintiffs generally allege that Defendants "knew about the defect" and "were

---

[5] NHTSA estimates the number of allegedly defective inflators to be 52 million. For purposes of this motion, Defendants use the figure alleged in the Complaint.

made aware" of inflator failures, *id.* ¶ 10, but they plead no facts to support those allegations and they do not explain how the small number of field ruptures could have put Defendants on notice of a common defect in every ARC inflator years before ruptures occurred.

For each named Plaintiff, the Complaint repeats boilerplate language, generally alleging that the Plaintiff was aware of a Defendant's "uniform and pervasive marketing message that its vehicles are safe and dependable, which was material to his [or her] decision to purchase the Class Vehicle." Compl. ¶¶ 142-255. Yet Plaintiffs do not identify any specific advertisements or promotional materials they claim to have seen, and do not plead that they relied on any specific materials in deciding to buy their cars. *See id.* All Plaintiffs uniformly contend, with no supporting facts, that the value of their Class Vehicle "has been diminished as a result of the Inflator Defect" and that, "[i]f Plaintiff had known about the Inflator Defect, he [or she] either would have not purchased the Class Vehicle, or would have paid less to do so." *Id.*

Plaintiffs allege 263 separate causes of action for fraudulent omission and concealment, unjust enrichment, breach of express warranty, breach of the implied warranty of merchantability, and violation of consumer protection and other statutes under the laws of all 50 states and the District of Columbia, including states where no Plaintiff lives or purchased a vehicle. Plaintiffs seek to represent a nationwide class and state subclasses of purchasers, owners, lessees, and former lessees of Class Vehicles that

contain an allegedly defective airbag inflator manufactured by ARC between 2001 and 2018. Compl. ¶¶ 20-21, 388.

## ARGUMENT

## I.   PLAINTIFFS LACK STANDING TO ASSERT CERTAIN CLAIMS.

Plaintiffs bear the burden of establishing standing. *Regalado v. Dir., Ctr. for Disease Control*, 2023 WL 239989, at *2 (11th Cir. Jan. 18, 2023). Whether a party has Article III standing to bring a particular claim is a threshold jurisdictional issue that must be resolved before a federal court can reach the merits. *Doss v. Gen. Mills, Inc.*, 816 F. App'x 312, 313 (11th Cir. 2020). "Because standing is a threshold issue, courts in this circuit routinely resolve it on a motion to dismiss, rather than waiting for class certification." *Callen v. Daimler*, 2021 WL 4523436, at *3 (N.D. Ga. Oct. 4, 2021).[6] Here, Plaintiffs lack standing to bring claims arising under the laws of states in which they do not reside and did not sustain any injury, and for their "nationwide" claims.

Putative class plaintiffs have "time and again, been prohibited from asserting claims under a state law other than that which the plaintiff's own claim arises"—*i.e.*, in states where they neither reside nor sustained injury. *Id.* (citations omitted); *see also In*

---

[6] *See also Lewis v. Mercedes-Benz U.S.*, 530 F.Supp.3d 1183, 1204 (S.D. Fla. 2021) ("[T]he Eleventh Circuit's standing jurisprudence compels the conclusion that standing is hardly an issue the Court can decide to hold in abeyance until a later date."); *In re Takata Airbag Prods. Liab. Litig.*, 462 F. Supp. 3d 1304, 1335 (S.D. Fla. 2020) (finding "no reason to wait until the class certification stage to decide whether the named-Plaintiffs of only a handful of states can establish standing for putative class members of several unrepresented states.").

*re Takata Airbag Prods. Liab. Litig.*, 2016 WL 1266609, at *4 (S.D.Fla. Mar. 11, 2016) ("A named plaintiff lacks standing to assert legal claims on behalf of a putative class pursuant to state law under which the named plaintiff's own claims do not arise.").

> It is not enough that a named plaintiff can establish a case or controversy between himself and the defendant by virtue of having standing as to one of many claims he wishes to assert. Rather, "each claim must be analyzed separately, and a claim cannot be asserted on behalf of a class unless at least one named plaintiff has suffered the injury that gives rise to that claim."

*Prado-Steiman v. Bush*, 221 F.3d 1266, 1280 (11th Cir. 2000) (citations omitted).

Plaintiffs' claims are based on alleged economic injuries arising out of the purchase or lease of their vehicles; as a result, they cannot show that they sustained injury in a state other than where those transactions occurred. Compl. ¶¶ 142-255. No Plaintiff has any connection to the claims asserted under the laws of 14 states (Alaska, Colorado, Hawaii, Louisiana, Maine, Nebraska, New Mexico, North Dakota, Oklahoma, Oregon, Rhode Island, Utah, West Virginia, and Wyoming) or the District of Columbia.[7] *Id.* Those claims should be dismissed for lack of standing. *See In re Takata Airbag Prods. Liab. Litig*, 2016 WL 1266609, at *4.

Plaintiffs likewise lack standing for their "nationwide counts" for fraudulent concealment and unjust enrichment, which they purport to bring on behalf of a

---

[7] Each plaintiff also lacks standing to sue Defendants with no connection to that particular plaintiff's vehicle or transaction (e.g. the owner of a Ford vehicle lacks standing to sue GM or Volkswagen). *Fox v. Saginaw Cnty.*, *Michigan*, 67 F.4th 284, 288 (6th Cir. 2023) (class representative lacks standing to assert claims against defendants "that did not injure him").

nationwide class. These claims arise under state law, and they include states where no Plaintiff lives or bought their vehicle. *See* Compl., ¶¶ 408-433; *Callen*, 2021 WL 4523436, at *3-4 (dismissing nationwide claims because plaintiff could not assert claim under the law of any state where her own claims did not arise); *Lewis*, 530 F. Supp. 3d at 1205 (residents of four states lacked standing to bring a nationwide unjust enrichment claim since the claim was actually fifty claims—one for each state).

## II.    THE "NATIONWIDE" CLAIMS FAIL FOR ADDITIONAL REASONS.

The nationwide claims must also be dismissed because Plaintiffs improperly seek to apply Georgia law outside the state. Georgia's common law of fraud and unjust enrichment cannot be applied uniformly for three independent reasons.

First, Plaintiffs and putative class members who did not purchase or lease a vehicle in Georgia cannot have sustained any injury under Georgia law. *Callen*, 2021 WL 4523436, at *3-4.

Second, Georgia common law cannot be applied uniformly under choice of law rules applicable to MDL proceedings. While a federal court sitting in diversity usually applies the choice of law rules of the state in which it sits, *Boardman Petroleum v. Federated Mut. Ins. Co.*, 135 F.3d 750, 752 (11th Cir. 1998), that is not true in MDL proceedings. "In MDL cases, the choice of law rules of the forum that the individual complaint was or would have been brought in typically apply, rather than the law of the MDL forum." *In re Abilify (Aripiprazole) Prods. Liab. Litig.*, 2021 WL 3869752, *1

(N.D. Fla. July 27, 2021). That means the governing choice of law rules from each transferee court must be applied, which will require the application of state law other than Georgia. For example, many Plaintiffs originally filed their claims in Michigan, while others filed in California, so Michigan and California choice of law rules apply to their respective claims. In other automotive MDLs, courts applying Michigan and California choice of law rules have held that the substantive law of the state of purchase usually applies. *See, e.g., In re OnStar Cont. Litig.*, 2010 WL 3516691, at \*8-20.

Third, the Court cannot apply Georgia law to the claims of Plaintiffs and putative class members who purchased or leased their vehicles in other states because those individuals have no meaningful connection to Georgia. To apply the law of one state to a nationwide class—an extraordinarily rare circumstance—that state "must have a significant contact or significant aggregation of contacts to the claims asserted by each member of the plaintiff class." *Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 821-22 (1985). Plaintiffs have not shown that Georgia has sufficient contacts with each vehicle purchase or lease to export Georgia law to cover claims of a nationwide class.

Plaintiffs allege in the alternative that the nationwide fraud claim can be asserted under the "common law" because "there are no true conflicts among the states' laws of fraudulent concealment." Compl. ¶ 410. Notably, Plaintiffs make no such allegation with regard to the unjust enrichment claim, implicitly conceding that the law of unjust enrichment varies by jurisdiction. But common law fraud has the same lack of

uniformity. Numerous courts have found material differences in the law of fraud among states. *See, e.g., Castano v. Am. Tobacco Co.*, 84 F.3d 734, 742 n.15 (5th Cir. 1996); *Dearmey v. Hawaiian Isles Kona Coffee Co.*, 2019 WL 6723413, at *3 (C.D.Cal. July 22, 2019) (common law of fraud "varies materially from state to state.").[8] The fraud claim should also be dismissed to the extent Plaintiffs have alternatively pled it under the "common law."

## III.    PLAINTIFFS' EXPRESS WARRANTY CLAIMS FAIL.

### A.    Plaintiffs Do Not Allege A Defect Covered By The Express Warranties.

There are two distinct categories of product defects: manufacturing defects (*i.e.*, defects in materials or workmanship) and design defects. A manufacturing defect "is often demonstrated by showing the product performed differently from other ostensibly identical units of the same product line.'" *Sater v. Chrysler Grp. LLC*, 2015 WL 736273,

---

[8] *See also Walters v. Vitamin Shoppe Indus.*, 2018 WL 2424132, at *8 (D.Or. May 8, 2018) ("state law on fraud varies materially" and citing differences in requirements for scienter, burden of proof, and statute of limitations); *Agostino v. Quest Diagnostics Inc.*, 256 F.R.D. 437, 464 (D.N.J. 2009) ("States apply materially different standards of claim accrual, statutes of limitations, tolling economic loss requirements, burdens of proof, scienter and reliance to common law fraud claims."); *Miller v. GMC*, 2003 WL 168626, at *2 (N.D.Ill. Jan. 26, 2003) ("No court has held that the fifty states' . . . common laws of fraudulent omission are so similar that a single forum state's law could be applied to a multi-state class."); *Lewis Tree Serv. v. Lucent Techs., Inc.*, 211 F.R.D. 228, 236 (S.D.N.Y. 2002) ("The elements of fraud vary greatly from state to state, with respect to elements including mitigation, causation, damages, reliance, and the duty to disclose."); *In re Ford Motor Co. Vehicle Paint Litig.*, 182 F.R.D. 214, 222 (E.D.La. 1998) (fraudulent concealment laws vary on such issues as "the burden of proof, the duty to disclose, materiality, reliance, and the measure of damages").

at *4 (C.D .Cal. Feb. 20, 2015) (citation omitted). A design defect, in contrast, is found when the product is built in accordance with its intended specifications, but the design itself is inherently defective." *Id*. (cleaned up).

Plaintiffs allege that each Defendant "issued an express written warranty for each defective Class Vehicle they sold," providing that the Class Vehicles "would be free of ***defects in materials and workmanship*** at the time of sale." *E.g.*, Compl. ¶ 440 (emphasis added.) Thus, Plaintiffs concede that the warranties are limited to manufacturing defects. Yet Plaintiffs base their express warranty claims on an alleged ***design*** defect that is not covered by the express warranties. *See, e.g.*, *id*. ¶ 283 ("[*A]ll* ARC's Defective Inflators had a serious ***design defect*** [that] causes the ruptures . . . ." (emphasis added)); *id.* ¶ 297 ("This is a ***design defect***" (emphasis added)); *id.* ¶ 336 ("These facts strongly suggest a ***systemic design defect in the inflators rather than a manufacturing defect***" (emphasis added)); *see also id.* ¶ 11 & n.13.

Whether Plaintiffs are right about their "design defect" characterization or not, they are stuck with it for purposes of this motion. Because Plaintiffs allege that each express warranty covers only defects in "materials and workmanship," the warranties are not triggered, much less breached, by allegations of a design defect. *Troup v. Toyota Motor Co.*, 545 F. App'x 668, 669 (9th Cir. 2013) ("express warranties covering defects in materials and workmanship exclude defects in design").[9]

---

[9] *See* Ex. A.1 for additional state-specific case law.

**B.      Plaintiffs Fail to Allege Manifestation of a Defect During the Applicable Warranty Periods.**

Even if Defendants' respective express warranties applied to Plaintiffs' design defect claims (and they do not), no Plaintiff claims to have experienced a product malfunction in need of repair during the applicable warranty period. Compl. ¶¶ 142-255. For many Plaintiffs, the warranty had already expired when they purchased their cars, which means their warranty claims cannot proceed.[10] *Aprigliano v. Am. Honda Motor Co.*, 979 F. Supp. 2d 1331, 1340 (S.D. Fla. 2013) (dismissing claims of plaintiffs who purchased vehicles after expiration of the express warranty).

Further, no Plaintiff claims to have experienced any airbag problem, much less one that a Defendant failed to repair. Compl. ¶¶ 142-255. If the product does not malfunction during the warranty period, there is no warrantable repair. *See, e.g.*, *Licul v. Volkswagen Grp. of Am.*, 2013 WL 6328734, at *4 (S.D. Fla. Dec. 5, 2013) (dismissing express warranty claim where alleged defect "did not manifest prior to the expiration of the warranty"); *Kavon v. BMW of N. Am., LLC*, 605 F. Supp. 3d 622, 636-39 (D.N.J. 2022) (dismissing express warranty claims under CA, TX, and MN law where plaintiffs failed to allege manifestation of defect).[11]

---

[10] *See, e.g.*, Compl. ¶¶ 142, 147, 149, 152, 153, 155, 159, 160, 162, 163, 164, 165, 168, 169, 172, 173, 175, 178, 179, 181, 183, 191, 197, 198, 199, 210, 211, 214, 217, 219, 220, 223, 224, 226, 227, 229, 230, 232, 234, 235, 239, 244, 245, 248, 249, 250, 252, 253, 254, 255 (alleging used car purchases between four to *seventeen* years after the car was first sold as new).

[11] *See also* Ex. A.1 for additional state-specific case law.

**C.    Plaintiffs Do Not Allege Presenting Their Cars For Repairs During The Warranty Periods.**

Plaintiffs' failure to present their vehicles for repair within the warranty periods provides a third independent reason to dismiss their express warranty claims. *In re OnStar Contract Litigation*, 600 F. Supp. 2d 861, 877 (E.D. Mich. 2009). No Plaintiff claims to have taken his or her car to a dealership to seek repairs. Compl. ¶¶ 142-255.[12] Nor can Plaintiffs sidestep this requirement by claiming they were "excused from providing the Automaker Defendants with notice and an opportunity to cure the breach, because it would have been futile."[13] Courts have consistently rejected futility as an excuse for the presentation requirement. *See, e.g.*, *Stockinger v. Toyota Motor Sales USA, Inc.*, 2017 WL 10574372, at *6-7 (C.D.Cal. July 7, 2017); *In re My Ford Touch Consumer Litig.*, 46 F. Supp. 3d 936, 970 (N.D.Cal. 2014).[14] That approach is particularly

---

[12] *See Helpling v. Rheem Mfg. Co.*, 2016 WL 1222264, *6 (N.D. Ga. 2016) ("[A] written warranty that provides for repair or replacement of parts imposes . . . conditions to recovery for breach of warranty," including "[that] the warrantor must have also had a reasonable opportunity to repair the defect." (internal quotation marks and citations omitted)).

[13] Compl. ¶¶ 446, 457, 480, 519, 530, 588, 599, 657, 668, 726, 737, 842, 853, 911, 921, 979, 990, 1067, 1078, 1138, 1149, 1207, 1218, 1258, 1297, 1308, 1368, 1379, 1439, 1452, 1475, 1531, 1544, 1603, 1614, 1675, 1686, 1744, 1755, 1810, 1869, 1880, 1900, 1941, 1954, 2014, 2027, 2046, 2087, 2100, 2159, 2172, 2246, 2257, 2277, 2318, 2331, 2389, 2400, 2458, 2469, 2528, 2539, 2594, 2605, 2673, 2684, 2741, 2752, 2809, 2820, 2895, 2906, 2962, 2973, 3030, 3041, 3116, 3127, 3185, 3196, 3253, 3264, 3322, 3333, 3390, 3401, 3473, 3484, 3543, 3554, 3614, 3625, 3647, 3686, 3697, 3773, 3784, 3841, 3852, 3909, 3920, 3978, 3989, 4010, 4049, 4060, 4118, 4129, 4150.

[14] *Car Transp. Brokerage Co. v. Blue Bird Body Co*., 322 F. App'x 891, 897–98 & n.3 (11th Cir. 2009) (futility allegation sufficient only where plaintiff alleges providing defendant two attempts to cure); *Sonneveldt v. Mazda Motor of Am., Inc*., 2021 WL 62502, *12-14 (C.D.Cal. 2021) (rejecting futility exception and dismissing CA, CO, FL,

suitable here, where no Plaintiff's vehicle manifested the alleged defect within the warranty period. Plaintiffs' futility argument is an unsupported conclusory allegation that cannot excuse them from presenting and seeking repairs under a valid warranty.

## IV.    PLAINTIFFS' IMPLIED WARRANTY CLAIMS FAIL

### A.    The Implied Warranty Claims Fail for Lack of Privity.

In many states, implied warranties do not flow all the way up a distribution chain; instead, the warranty is made by the ultimate seller to the consumer. Contractual privity is a prerequisite for implied warranty claims under the laws of Alabama, Arizona, California, Connecticut, Florida, Georgia, Idaho, Illinois, Iowa, Kansas, Kentucky, Michigan, New York, North Carolina, Ohio, Oregon, Rhode Island, Tennessee, Vermont, Virginia, Washington, West Virginia, and Wisconsin (the "Privity States").[15] Here, *none* of the Plaintiffs is in vertical privity with *any* of the Defendants, because no Plaintiff allegedly bought or leased a vehicle directly from a Defendant. To the contrary, Plaintiffs allege that they bought or leased their vehicles from other sources:

---

IL, MA, MO, NC, OH, PA, TX, and VA express warranty claims without prejudice, but with prejudice as to pleading futility argument).

[15] *See* Ex. B.1 for additional state-specific case law.

independent, third-party dealerships,[16] CarMax or Carvana,[17] other used car sellers,[18] or unspecified sellers.[19] One Plaintiff received his vehicle via inheritance. Compl. ¶ 233. Because Plaintiffs have not alleged privity with any of the Defendants, the breach of implied warranty claims under the laws of the Privity States must be dismissed.

### B.      Implied Warranty Claims Fail for Lack of Pre-Suit Notice.

Pre-suit notice of an implied warranty claim is required under the laws of 42 states.[20] The notice requirement "allow[s] the seller an opportunity to resolve the dispute regarding an alleged breach before the buyer initiates a lawsuit." *AFSCME v. Ortho–McNeil–Janssen Pharm., Inc.,* 2010 WL 891150, at *6 (E.D.Pa. Mar. 11, 2010); *see also Smith v. Apple, Inc.*, 2009 WL 3958096, *2 (M.D.Ala. Nov. 4, 2009) (pre-suit notice encourages "settlement through negotiation between the parties" and "minimizes the possibility of prejudice to the seller by giving him a chance to cure or take any act

---

[16] Compl. ¶¶ 143-148, 150-152, 154, 156, 157, 168-177, 180-208, 211- 216, 218, 219, 222, 227, 228, 230, 231, 236-238, 240- 244, 246, 247, 249, 251-252, 255. In several instances, Plaintiffs bought used vehicles manufactured by one automaker from third-party dealerships authorized to sell vehicles manufactured by other automakers (*e.g.*, a used Chevrolet from a Hyundai dealership). Compl. ¶¶ 181, 183, 204, 213, 214, 227, 236, 247, 249.

[17] Compl. ¶¶ 149, 153, 158, 159, 166, 221, 245.

[18] Compl. ¶¶ 179 (Macon Trading Center), 209 (Steven Lust Automotive), 210 (Glockenspiel Chevy Used Cars), 217 (United Auto Wholesalers), 220 (West Covina Auto Exchange), 223 (Carbiz), 224 (Fruendly Auto Source), 225 (Keyser Auto), 226 (Next Owner Automotive), 229 (Jim Juliani Motors), 232 (Lara's Trucks), 235 (Mid-State Auto Sales), 239 (Dave Smith CDA); 178 (from the "original owner").

[19] Compl. ¶¶ 142, 155, 160, 161, 162, 163, 164, 165, 167, 234, 248, 253, 254.

[20] *See* Ex. B.1 for additional state-specific case law.

necessary to defend himself or minimize damages" (citation omitted)).

None of the named Plaintiffs allege pre-suit notice. At most, they allege generically that they "timely provided the Automaker Defendants notice of the issues raised in this count and this Complaint and an opportunity to cure, as alleged in the paragraphs addressing Defendants' notice." Compl. ¶ 456.[21] But the Complaint never alleges that any Plaintiff personally provided notice of a claimed breach to any Defendant, much less that Plaintiffs provided any opportunity to cure or negotiate a resolution.[22]

Plaintiffs effectively concede their failure to provide notice by asserting that they had no obligation to do so "because it would have been futile." Compl. ¶ 446. As discussed above, courts routinely reject a futility exception in automotive cases. *See* § III.A, *supra* (discussing express warranty claims). And even if courts were to recognize

---

[21] Plaintiffs do not identify the "paragraphs addressing Defendants' notice," but to the extent they are referring to Defendants' supposed knowledge of an issue with the subject inflators, alleging awareness of a defect is no substitute for actual pre-suit notice. *See Budach v. NIBCO, Inc.*, 2015 WL 6870145, at *5 (W.D.Mo. Nov. 6, 2015) (general awareness of a product line's defects because of similar lawsuits does not suffice); *Smith*, 2009 WL 3958096 at *2 (manufacturer's general awareness of product problems does not excuse pre-suit notice); *Am. Aerial Servs., Inc. v. Terex USA, LLC*, 39 F.Supp. 3d 95, 104 (D. Me. 2014) ("even if the seller knows of defects in the goods, the buyer must notify the seller of the buyer's claim that the defects constitute a breach"); *Incubadora Mexicana, SA de CV v. Zoetis, Inc.*, 310 F.R.D. 166, 174 (E.D. Pa. 2015); *Bunn v. Navistar, Inc.*, 797 F. App'x 247, 252-55 (6th Cir. 2020).

[22] For many of the proposed state classes—Colorado, Hawaii, Maine, Maryland, Nebraska, New Mexico, North Dakota, Oklahoma, Oregon, Rhode Island, Texas, Utah, and Wyoming—Plaintiffs fail to even identify a named plaintiff who **could** have provided pre-suit notice.

16

a futility exception, Plaintiffs fail to show futility. They claim that Defendants "have not instituted a recall or any other repair program with respect to all of the Class Vehicles, or even acknowledged that the Inflator Defect exists in all of the Class Vehicles." Compl. ¶ 446. But these general allegations are meaningless—proper pre-suit notice requires each named Plaintiff to provide notice and an opportunity to cure as to his or her own claim. *See Nathan v. Whirlpool Corp.*, 492 F. Supp. 3d 747, 755 (S.D.Ohio 2000); *Schmidt v. Ford Motor Co.*, 972 F. Supp. 2d 712, 718-19 (E.D.Pa. 2013). And while Plaintiffs speculate that Defendants would be incapable of replacing airbag modules in "tens of millions of vehicles impacted" by "potential" recalls, Compl. ¶ 457, that again misses the point: Plaintiffs are obliged to show that ***they*** provided pre-suit notice and gave the alleged warrantor an opportunity to address the issue. The only claims at issue at this stage are the claims of 115 individual Plaintiffs, not the world at large.

### C. Plaintiffs Fail to Allege Unmerchantability.

Plaintiffs base their implied warranty claims on their respective states' incorporation and modification of the implied warranty provisions of the Uniform Commercial Code. *E.g.*, UCC §§ 2-314 & 2A-212(2)(c). Although states vary in their approaches to adopting these UCC provisions, Plaintiffs' allegations fall short of even the most lenient standard. To be merchantable, goods must be "fit for the ordinary purposes for which such goods are used." *Id.* § 2-314(2)(c).16; *see also Brand v. Hyundai Motor America*, 226 Cal. App. 4th 1538 (2014); *Chiappetta v. Kellogg Sales Co.*, 2022

17

WL 602505, at *5 (N.D. Ill. Mar. 1, 2022). The implied warranty of merchantability "provides for a minimum level of quality;" it does not "impose a general requirement that goods precisely fulfill the expectation of the buyer." *Skelton v. Gen. Motors Corp.*, 500 F. Supp. 1181, 1191 (N.D. Ill. 1980), *rev'd on other grounds*, 660 F.2d 311 (7th Cir. 1981). Thus, a product may fall "considerably short of perfection" and still be merchantable. *See Standard Structural Steel Co. v. Bethlehem Steel Corp.*, 597 F. Supp. 164, 188 (D .Conn. 1984).

In the automotive context, a vehicle is unmerchantable only if it is not "capable of being driven, the ordinary purpose for which vehicles are used." *Soto v. CarMax Auto Superstores, Inc.*, 271 Ga. App. 813, 815 (2005); *see also Hernandez v. Apple Auto Wholesalers of Waterbury LLC,* 460 F. Supp. 3d 164, 179 (D. Conn. 2020) ("[a] car's ordinary purpose is normal and reliable driving"). Applying this standard, the "implied warranty of merchantability can only be breached when the vehicle manifests a defect that is so basic it renders the vehicle unfit for its ordinary purpose of providing transportation." *In re Gen. Motors Corp. Anti-Lock Brake Prods. Liab. Litig.*, 966 F. Supp. 1525, 1533 (E.D. Mo. 1997), *aff'd sub nom, Briehl v. Gen. Motors Corp.*, 172 F.3d 623 (8th Cir. 1999).

Plaintiffs claim that their vehicles are unmerchantable because they are

supposedly "unsafe to drive,"[23] yet they fail to support this conclusory claim with any factual allegations. Rather, the Complaint makes clear that Plaintiffs (and prior owners) have driven their vehicles for years—in some cases decades—without incident. Indeed, 41 of the vehicles listed in the Complaint date from 2013 or earlier.[24] Those vehicles have been on the roads for ten years or more, with some dating back nearly *two decades*, to 2004. Even the newest vehicles listed in the Complaint have been in service for several years with no reported issue. Despite the post-hoc allegation that the vehicles have been unsafe all this time, no named Plaintiff claims to have stopped driving their vehicle, even after learning of the supposed defect. Since the putative class excludes anyone who was injured, it follows that Plaintiffs have continued driving their vehicles without incident.

### D. Plaintiffs' Implied Warranty Claims Are Subject To The Same Limitations As Their Express Warranty Claims.

Under UCC § 2–316, a seller of goods may exclude or modify an implied warranty in whole or in part, provided the seller does so in writing using conspicuous language. Consistent with this provision, manufacturers may limit implied warranties to the terms

---

[23] Compl. ¶¶ 455(b), 528(b), 597(b), 666(b), 735(b), 746(b), 851(b), 919(b), 988(b), 1076(b), 1147(b), 1216(b), 1306(b), 1377(b), 1450(b), 1542(b), 1612(b), 1684(b), 1753(b), 1808(b), 1878(b), 1952(b), 2025(b), 2098(b), 2170(b), 2255(b), 2329(b), 2398(b), 2467(b), 2537(b), 2603(b), 2682(b), 2750(b), 2818(b), 2904(b), 2971(b), 3039(b), 3125(b), 3194(b), 3262(b), 3331(b), 3399(b), 3482(b), 3552(b), 3623(b), 3695(b), 3782(b), 3850(b), 3918(b), 3987(b), 4058(b), 4127(b).

[24] Compl. ¶¶ 145, 147, 149, 152, 155, 160, 161, 163, 164, 165, 166, 175, 177, 179, 191, 194, 197, 201, 204, 214, 215, 217, 219, 223, 225, 227, 230, 231, 233, 234, 235, 239, 240, 244, 247, 248, 250, 252, 253, 254, 255.

and duration of their express warranty.[25] Plaintiffs' implied warranty claims fail for the same reason as their express warranty claims—they do not allege that the defect manifested within the time and mileage limits of their respective express warranties, or that they presented their vehicles to a dealership for repair. *See* Ex. F (Express Warranties).[26] Those limitations apply equally to their implied warranty claims. *See*, *e.g.*, *Miller v. Gen. Motors, LLC*, 2018 WL 2740240, at *8 (E.D. Mich. June 7, 2018).

## V.   PLAINTIFFS' FRAUD-BASED CLAIMS SHOULD BE DISMISSED.

Plaintiffs' claims for fraudulent concealment, breach of state consumer protection statutes, and unjust enrichment all sound in fraud. Accordingly, Plaintiffs must allege them with the particularity required by Rule 9(b). *Benjamin v. Shellpoint Mortg. Servicing*, 2018 WL 1631381, at *1 (S.D. Ga. Apr. 4, 2018). Plaintiffs must plausibly allege that (1) Defendants knew of and omitted or concealed a material fact from a specific communication prior to sale; (2) Plaintiffs justifiably relied on the omission to their detriment and/or the omission caused their injuries; and (3) in the case of an

---

[25] *See, e.g.*, *Deburro v. Apple, Inc.*, 2013 WL 5917665, at *6 (W.D. Tex. Oct. 31, 2013); *Meserole v. Sony Corp. of Am., Inc.*, 2009 WL 1403933, at *9 (S.D.N.Y. May 19, 2009); *McCalley v. Samsung Elecs. Am., Inc.*, 2008 WL 878402, at *7 (D.N.J. Mar. 31, 2008).
[26] The Court may consider Defendants' express warranties without converting this motion into one for summary judgment because the Complaint specifically references the warranties, and they are the basis for many of Plaintiffs' claims. *See Gibson v. Equifax Info. Servs., LLC*, 2019 WL 4731957, at *2 (M.D. Ga. July 2, 2019) ("[w]hen a plaintiff refers to certain documents in the complaint and they are central to the plaintiff's claim[s], then the Court may consider the documents part of the pleadings for purposes of Rule 12(b)(6) dismissal") (citation omitted).

"omissions" theory, Defendants had a duty to disclose any allegedly omitted material fact. *See, e.g.*, *McCabe v. Daimler AG*, 160 F. Supp. 3d 1337, 1350 (N.D. Ga. 2015). Plaintiffs do not allege facts supporting any of these elements, much less with the particularity required by Rule 9(b).

### A. Plaintiffs Fail To Plead Their Fraud-Based Claims With Particularity.

In the MDL context, the law of the transferee court applies to issues of federal law; therefore, Plaintiffs must satisfy the pleading requirements of Rule 9(b) as interpreted by this Court. *See Ace Tree Surgery, Inc. v. Terex Corp.*, 2018 WL 11350262, at *14 (N.D. Ga. Dec. 10, 2018) (*citing Lanfear v. Home Depot, Inc.*, 536 F.3d 1217, 1223 (11th Cir. 2008)). Courts in the Eleventh Circuit apply Rule 9(b) stringently. Plaintiffs "must state with particularity the circumstances constituting fraud," and their allegations must "set forth (1) precisely what statements or omissions were made in which documents or oral representations; (2) the time and place of each such statement and the person responsible for making (or, in the case of omissions, not making) them; (3) the content of such statements and the manner in which they misled the plaintiff; and (4) what the defendant obtained as a consequence of the fraud." *Benjamin*, 2018 WL 1631381, at *1 (citation omitted). Plaintiffs' allegations fall far short of these standards.

Nowhere do Plaintiffs allege having encountered, read, or relied on *any* specific statements or omissions from *any* Defendant in *any* specific document, advertisement, or conversation. Instead, each Plaintiff generically alleges that at unspecified times they

21

were "aware of [Defendant's] uniform and pervasive marketing message that its vehicles are safe and dependable, which was material to his [or her] decision to purchase the Class Vehicle." Compl. ¶¶ 142-255. These vague and conclusory allegations, devoid of any factual underpinning, fall well short of Rule 9(b)'s requirements. *Zuanich v. Hankook Tire Am. Corp.*, 2018 WL 6709466, at *5 (M.D. Ala. Dec. 20, 2018) (dismissing fraudulent concealment claims where the "complaint does not: (1) name any persons responsible for making fraudulent omissions; (2) state in what context these misrepresentations occurred (*e.g.*, orally, in an advertisement, or in another document); or (3) identify any specific time and place where the omissions were made."); *Ray v. Spirit Airlines, Inc.*, 2015 WL 11143079, at *5 (S.D. Fla. June 4, 2015) (dismissing fraud claims where "Plaintiffs do not plead the precise statements made in [Defendant]'s advertisements, fail to include examples of advertisements, or when they saw advertisements."), *aff'd*, 836 F.3d 1340 (11th Cir. 2016); *Pulmonary Assocs. of Charleston PLLC v. Greenway Health, LLC*, 2020 WL 9073551, at *11 (N.D. Ga. June 29, 2020) (noting plaintiffs' failure to allege "the specific date" that misrepresentations were made, "who was responsible for the dissemination of misinformation," and "what misinformation [plaintiffs] actually viewed and relied upon") (citations and quotation omitted).[27]

---

[27] To the extent Plaintiffs rely on statements in Defendants' marketing or advertising materials about general vehicle performance, durability, or safety, as a matter of law those

**B.      The Economic Loss Rule Bars Many Claims.**

With nuances that vary from state to state, the economic loss doctrine prohibits a purchaser of a defective product from using tort law to recover purely economic losses. *See, e.g., Harman v. Taurus Int'l Mfg., Inc.*, 586 F. Supp. 3d 1155, 1165 (M.D. Ala. 2022) ("The economic-loss rule prevents tort recovery when a product damages itself, causing economic loss, but does not cause personal injury or damage to any property other than itself.") (internal citation omitted). Plaintiffs seek to recover only economic damages for the alleged inflator defect; they allege no personal injury or property damage. *See generally* Compl.; *see also id.* ¶ 387(c) ("any person who asserts a personal injury or wrongful death claim" is excluded from the proposed class). The economic loss rule bars Plaintiffs' common law fraud claims in 27 states.[28] *E.g., Foxworthy, Inc. v. CMG Life Servs., Inc.*, 2012 WL 1269127, *3 (N.D. Ga. 2012) ("Plaintiff's … fraud claims are barred by the economic loss rule").[29] And in ten of these states, the rule also bars Plaintiffs' statutory fraud and consumer protection claims.[30]

**C.      Certain   Claims   Are   Barred   By   State-Law   Manifestation**

---

are puffery and cannot form the basis of a fraud claim. *See In re Atlas Roofing Corp. Chalet Shingle Prod. Liab. Litig.*, 2018 WL 2765961, at *8 (N.D.Ga. June 8, 2018) (statements that shingles were "quality" items that would hold up well were non-actionable puffery); *see also In re Gen. Motors LLC Ignition Switch Litig.*, 2016 WL 3920353, at *10 (S.D.N.Y. July 15, 2016) (statements about "quality, or a product's safety, are too vague or lacking in factual content to be actionable") (citation omitted).

[28] AL, AR, AZ, CA, CO, FL, GA, IL, KY, ME, MD, MI, MN, MO, NE, NH, NJ, NY, NC, OK, PA, SC, SD, TN, TX, UT, WI.

[29] *See* Ex. C.1 for additional state-specific case law.

[30] FL, MD, MI, MO, NY, NC, PA, OK, TN, WI. *See* n. 37, *supra*.

Requirements.

Sixteen states preclude statutory fraud and consumer protection claims when an alleged defect has not manifested.[31] Because no named Plaintiff alleges they experienced an inflator malfunction or rupture, their claims under the consumer protection laws of these states should be dismissed.

### D.   Plaintiffs Fail to Allege That Defendants Knew of the Alleged Defect Before Plaintiffs Acquired Their Vehicles.

Plaintiffs' fraudulent concealment and statutory fraud claims fail because they do not sufficiently allege that any Defendant knew about the alleged defect before Plaintiffs bought their cars. Plaintiffs are required to show that Defendants knew of a defect at the time of each Plaintiff's vehicle purchase or lease. *See, e.g., Turk v. Morris, Manning & Martin, LLP*, 593 F. Supp. 3d 1258, 1301 (N.D. Ga. 2022) ("[a]n essential element of any fraud claim is that defendant knew his representation was false"); *Varner v. Domestic Corp.*, 2017 WL 3730618, at *15 (S.D. Fla. Feb. 7, 2017) (dismissing consumer protection claims under the laws of seven states where plaintiffs did not plead facts sufficient to show defendant's knowledge of alleged omission).[32]

Plaintiffs allege that Defendants have "long known that ARC inflators are

---

[31] AL, AR, CA, FL, GA, IL, MA, MD, MI, MT, NJ, NY, NC, OK, OR, TX, WA. *See* Ex. C.1 for state-specific case law.

[32] All of the states at issue in this case require Plaintiffs to allege that Defendants knew about the allegedly omitted information. Ex. C.1 for state-specific case law.

defective" because they "require testing of the ARC inflators" and were "made aware of multiple LAT failures where the inflator ruptured during testing." Compl. ¶¶ 8-10. Yet Plaintiffs concede that Defendants recalled the inflators from the lots that housed the inflators that ruptured during testing. *Id.* ¶¶ 6, 10-11. Further, Plaintiffs plead no facts regarding the details of this testing, including any information to suggest that the test results would alert Defendants to a defect in all ARC inflators. These generic, conclusory allegations are insufficient to establish pre-sale knowledge. *Lewis*, 530 F. Supp. 3d at 1220 ("[A]ssertions regarding testing, reports, data, and analyses do not elaborate whatsoever as to what that information actually showed," and thus "do not make it more plausible that Defendants knew the AHR defect existed"); *Mandani v. Volkswagen Grp. of Am., Inc.*, 2019 WL 652867, at *8 (N.D. Cal. Feb. 15, 2019) ("[C]onclusory allegations of pre-purchase knowledge based on 'pre-sale design and testing' are insufficient.").

Second, Plaintiffs allege that Defendants were aware of the defect because "ARC was regularly in touch with" them throughout NHTSA's investigation of the inflators. Compl. ¶ 12. But Plaintiffs fail to plead with any specificity the contents of any communications between ARC and any Defendant, or what information in those communications, or from NHTSA's investigation, would have alerted Defendants to a defect in *all* ARC inflators before Plaintiffs purchased or leased their vehicles. *See Lewis*, 530 F. Supp. 3d at 1220. And in any event, NHTSA's investigation began in July 2015. *Id.* at ¶ 308—at minimum, making it impossible for Defendants to have known about the

alleged defect relative to any Class Vehicle manufactured before that date.

Third, Plaintiffs allege that Defendants were aware of the alleged defect because of the 10 alleged field ruptures of ARC inflators. *Id.* ¶¶ 6, 10. This is plainly insufficient to establish that Defendants knew of a defect in *all* ARC inflators. *See Resnick v. Hyundai Motor Am., Inc.*, 2016 WL 9455016, at \*13 (C.D.Cal. Nov. 14, 2016) ("these complaints merely establish that several customers had issues with their specific vehicles, not that there was a widespread defect affecting all Hyundais"); *Espineli v. Toyota Motor Sales, U.S.A., Inc.*, 2019 WL 2249605, \*7 (E.D. Cal. 2019) (thirteen complaints insufficient to establish knowledge); *Blissard v. FCA US LLC*, 2018 WL 6177295, \*13 (C.D. Cal. 2018) (plaintiffs must allege that the defendant itself saw the number of complaints as "significant" and "beyond the norm"); *Sloan v. Gen. Motors LLC*, 2017 WL 3283998, \*7 (N.D. Cal. 2017) (81 complaints posted over seven years were insufficient to show knowledge).

Finally, to the extent that these ruptures occurred *after* Plaintiffs acquired their vehicles, which is the case for the vast majority of Plaintiffs, those ruptures cannot plausibly suggest knowledge of a defect at the time of acquisition. *See*, *e.g.*, *In re Gen. Motors LLC Ignition Switch Litig.*, 257 F. Supp. 3d 372, 412 (S.D.N.Y. 2017), *modified on reconsideration by* 2017 WL 3443623 (S.D.N.Y. Aug. 9, 2017); *Beck v. FCA US LLC*, 273 F. Supp. 3d 735 (E.D.Mich. 2017); *Stevenson v. Mazda Motor of Am., Inc.*, 2015 WL 3487756, at \*7 (D.N.J. June 2, 2015); *Durso v. Samsung Elecs. Am., Inc.*, 2013

WL 5947005, at *10 (D.N.J. Nov. 6, 2013); *Grodzitsky v. Am. Honda Motor Co.*, 2013 WL 690822, at *6-7 (C.D. Cal. Feb. 19, 2013); *Granillo v. FCA US LLC*, 2016 WL 9405772, at *9 (D.N.J. Aug. 29, 2016) (reviews post-dating purchase could not show pre-sale knowledge).

### E.     Plaintiffs Fail to Allege a Duty to Disclose.

Plaintiffs' consumer protection and fraudulent concealment claims are based on Defendants' purported omissions.[33] Most of the consumer protection claims, and all of the fraudulent concealment claims, require Plaintiffs to allege facts showing that Defendants had a duty to disclose. While what establishes this duty differs from state to state, Plaintiffs fail to plead facts establishing a duty under the laws of any state.

*Fiduciary or Contractual Relationship*: Alabama, Arizona, Arkansas, Florida, Georgia, Illinois, Kentucky, Michigan, Missouri, New Jersey, Ohio, South Carolina, Texas, and Virginia fraudulent concealment claims and Arkansas and Georgia consumer protection claims[34] each impose a duty to disclose ***only***[35] if there is a fiduciary or other

---

[33] *See* Compl., ¶¶ 468, 609, 678, 776. 785, 931, 1002, 1019, 1159, 1227, 1247, 1389, 1464, 1482, 1555, 1624, 1696, 1764, 1964, 2035, 2109, 2180, 2197, 2266, 2341, 2546, 2614, 2693, 2829, 2847, 2914, 3050, 3068, 3274, 3409, 3494, 3565, 3636, 3793, 3861, 3930, 4070.

[34] Georgia Plaintiffs' Unfair and Deceptive Trade Practices Act claims also fail, except as to Plaintiff Yerger, because, even if a duty to disclose could otherwise arise under the circumstances, it can never arise for a used vehicle purchase. *See Rose v. Ferrari N. Am., Inc.,* 2022 WL 14558880, at *7-8 (D.N.J. Oct. 25, 2022). Every Georgia Plaintiff but Yerger alleges purchasing a used vehicle. *See* Compl., ¶¶ 165, 178, 202, 232, 236, 242, 245.

[35] The remainder of the states recognize such a relationship as sufficient to trigger a duty

relationship of trust or confidence between the parties, or decline to impose a duty to disclose because the state's courts have never recognized one in an arms-length transaction, or both.[36] Plaintiffs' claims fail because they allege no such relationship between themselves and Defendants. *See, generally*, Compl.

<u>*Partial Misleading Representation*</u>: The California and Montana fraudulent concealment *and* consumer protection claims,[37] and the Indiana, Massachusetts, and New York fraudulent concealment/omission claims,[38] each require that, absent a fiduciary relationship, a duty to disclose may be triggered where the defendant made a misleading partial misrepresentation ***to the plaintiff***.[39] *E.g., Tenet Healthsystem Desert, Inc. v. Blue Cross of California*, 245 Cal. App. 4th 821, 844 (Cal. App. 2016) (a duty to disclose may arise when "the defendant makes representations but does not disclose facts which materially qualify the facts disclosed, or which render his disclosure likely to mislead"). But no named Plaintiff from these states—and, indeed, no named Plaintiff at all—alleges that he or she encountered, much less relied upon, a specific, misleading statement from Defendants.[40] Rather each offers only the same, vague reference to "exposure to [the

---

to disclose but recognize alternate means to trigger a duty as well. *See infra.*

[36] *See* Ex. C.1 for state-specific case law.

[37] CA Counts 4, 5, 6, 7; MT Counts 3, 4; NY Counts 3, 4, 5.

[38] IN Count 4; MA Count 4.

[39] *See* Ex. C.1 for state-specific case law.

[40] *See* Compl., ¶¶ 143, 154, 156, 169, 176, 181, 182, 186, 189, 190, 203, 211, 212, 215, 220, 222, 225, 240, 244, 252, 254.

Defendant's] advertisements, promotional materials and other public statements," *id.*, without ever specifying *which* materials they encountered, let alone when and where, or how they were misleading. This does not suffice under Rule 9(b) and is thus insufficient to plead a duty to disclose. *See* Arg. § IV.A, *supra*; *see also* Arg. § IV.G, *infra*.

*Exclusive/Superior Knowledge of a Material Fact*: The California, New York, and North Carolina fraudulent concealment *and* consumer protection claims,[41] and the Iowa, Massachusetts, Montana, and Vermont fraudulent concealment/omission claims,[42] each provide that a duty to disclose may be triggered where plaintiff has alleged that the defendant had exclusive or superior knowledge of a material fact.[43] *E.g.*, *Morrow v. Bank of Am., N.A.*, 324 P.3d 1167, 1184 (Mont. 2014). Plaintiffs offer no such allegations. *See* § IV.D, *supra*.

*Active Concealment*: California and North Carolina fraudulent concealment and consumer protection claims[44] provide that a duty to disclose may also be triggered where a plaintiff alleges defendant actively concealed material information.[45] *Tenet*, 245 Cal. App. 4th at 844 ("a cause of action for non-disclosure of material facts may arise … [where] defendant actively conceals discovery from the plaintiff.'"). But that is not the

---

[41]CA Counts 4, 5, 6, 7; NY Counts 3, 4, 5; NC Counts 3, 4.

[42]IA Count 4; MA Count 4; MT Count 4; VT Count 4.

[43]*See* Ex. C.1 for state-specific case law.

[44]CA Counts 4, 5, 6, 7; NC Counts 3, 4.

[45]*See* Ex. C.1 for state-specific case law.

case here either, as Plaintiffs fail to plead knowledge, the facts of Defendants' purported omissions, or any act of affirmative concealment with sufficient specificity under Rule 9(b), *see* § IV.A, *supra*, and thus, cannot invoke a duty on this basis.

### F. Plaintiffs Do Not Allege Active Concealment By Defendants.

To state a fraudulent concealment claim under Arizona, Florida, Indiana, and Massachusetts law,[46] Plaintiffs must plausibly allege that Defendants engaged in affirmative acts of active concealment.[47] "An allegation of active concealment must plead more than an omission; rather, a plaintiff must assert affirmative acts of concealment; e.g., that the defendant sought to suppress information in the public domain or obscure the consumers' ability to discover it." *Taragan v. Nissan N. Am., Inc.*, 2013 WL 3157918, at *7 (N.D. Cal. June 20, 2013) (quotations omitted). But, again, Plaintiffs fail to plead Defendants' purported omissions with sufficient specificity under Rule 9(b). *See* § V.A, *supra*. Further, it is axiomatic that "one cannot conceal what one does not know." *Romero v. Toyota Motor Corp.*, 916 F. Supp. 2d 1301, 1313 (S.D.Fla. 2013) (citations and brackets omitted)); *accord Lowe v. Letsinger*, 772 F.2d 308, 314 (7th Cir. 1985); *Red Roof Franchising, LLC v. Riverside Macon Grp., LLC*, 2020 WL 2494462, at *7 (S.D. Ohio May 14, 2020); *Hyder v. United States*, 2020 WL 127661, at *10 (M.D. Tenn. Jan. 10, 2020). Here, there are no plausible allegations that Defendants knew of the purported

---

[46] AZ Count 4; FL Count 4; IN Count 4; MA Count 4.

[47] *See* Ex. C.1 for state-specific case law.

defect at the time Plaintiffs purchased or leased their vehicles. *See* § V.D, *supra*. Thus, Plaintiffs have not alleged active concealment, and their fraudulent concealment claims under Arizona, Florida, Indiana, and Massachusetts law should be dismissed.

Similarly, Plaintiffs' Ohio Consumer Sales Practices Act claim (OH Count 3) fails because the "mere non-disclosure of a defect without more [*e.g.* active concealment], does not fall within the purview of deceptive or unconscionable practices prohibited by the Act." *Radford v. Daimler Chrysler Corp.*, 168 F. Supp. 2d 751, 754 (N.D. Ohio 2001) (quotation omitted)).

### G.      Plaintiffs Fail to Plausibly Allege Reliance and/or Causation.

Fraud-based claims under Alabama, Arizona, Arkansas, California, D.C., Georgia, Indiana, Illinois, Kansas, Maryland, Michigan, Montana, Nevada, New Hampshire, New York, Pennsylvania, South Dakota, Texas, Vermont, and Virginia law require both causation and reliance.[48] Thus, Plaintiffs must allege that they were aware of, and relied upon, specific misrepresentations or omissions, and that this reliance caused their damages.[49] *E.g., Barge v. Bristol-Myers Squibb Co*., 2009 WL 5206127, *10 (D.N.J. 2009) (applying Georgia law) (plaintiff's failure to allege "causation and reliance with regard to his own experiences [with] Defendant's purported false and misleading

---

[48]AL Counts 3, 4; AR Counts 3, 4, CA Counts 4, 5, 6, 7; GA Counts 3, 4, 5; IL Counts 3, 4, 5; ME Counts 3, 4; MD Counts 3, 4; MT Counts 3, 4; NV Counts 3, 4; NH Counts 3, 4; NY Counts 3, 4, 5; PA Counts 3, 4.

[49] *See* Ex. C.1 for state-specific case law.

promotional materials and practices [was] fatal to his claim"). Yet, here, no Plaintiff alleges facts showing causation or reliance on any specific statement or material from any Defendant.[50] Those claims should be dismissed.[51]

While Plaintiffs' Arkansas, Colorado, Connecticut, Delaware, Florida, Georgia, Hawaii, Idaho, Iowa, Kentucky, Massachusetts, Minnesota, Missouri, Montana, New Jersey, North Carolina, Oklahoma, Oregon, Rhode Island, South Carolina, Tennessee, Washington, West Virginia, and Utah consumer protection claims[52] do not require reliance, all require causation.[53] *E.g., SunGard Pub. Sector, Inc. v. Innoprise Software, Inc.*, 2012 WL 360170, *5 (M.D. Fla. 2012) (requiring causation to "to be alleged to establish a claim pursuant to" Deceptive and Unfair Trade Practices Act). Again, no Plaintiff plausibly alleges causation.[54]

### H.    Plaintiffs' Fraud-Based Claims Should be Dismissed for Other State-Specific Reasons.

#### 1.    Certain States Preclude Omission-Based Claims.

The Court should dismiss Plaintiffs' fraudulent concealment or omission claims

---

[50] Compl., ¶¶ 459-97, 601-35, 670-704, 749-820, 1220-75, 1454-1508, 1956-90, 2402-36, 2541-72, 2607-40, 2822-73, 3266-3300.

[51] AL Counts 3, 4; AZ Counts 3, 4, CA Counts 4, 5, 6, 7; GA Counts 3, 4, 5; IL Counts 3, 4, 5; ME Counts 3, 4; MD Counts 3, 4; MT Counts 3, 4; NV Counts 3, 4; NH Counts 3, 4; NY Counts 3, 4, 5; and PA Counts 3, 4.

[52] CT Count 3; DE Count 3, FL Count 3; ID Count 3, IA Count 3; LA Count 2, MA Count 3, MN Counts 3, 4; NJ Count 3.

[53] *See* Ex. C.1 for state-specific case law.

[54] CT Count 3, DE Count 3, FL Count 3, ID Count 3, IA Count 3, LA Count 2, MA Count 3, MN Counts 3, 4; and NJ Count 3, all should be dismissed.

32

under the laws of Arkansas, Missouri, Montana, and Texas[55] because none of these states recognize fraudulent concealment/omission as an independent cause of action.[56] Likewise, Plaintiffs' California False Advertising Law claim (CA Count 5) should be dismissed because omission-based claims may not be asserted under that statute. *Wallace v. SharkNinja Operating, LLC*, 2020 WL 1139649, at *12 (N.D. Cal. Mar. 9, 2020).

### 2.    Certain States Require Intent to Defraud.

Plaintiffs' North Carolina Uniform Deceptive Trade Practices Act claim (NC Count 3) fails because non-disclosure constitutes fraud under the statute **only if** the plaintiff can show scienter—that concealment was made with the specific intent to deceive. The Complaint contains no scienter allegations. *See Ace, Inc. v. Maynard*, 423 S.E.2d 504, 510 (N.C. Ct. App. 1992); *Rahamankhan Tobacco Enters. Pvt. Ltd. v. Evans MacTavish Agricraft, Inc.*, 989 F. Supp. 2d 471, 476 (E.D.N.C. 2013). Plaintiffs' Indiana Deceptive Consumer Sales Act claim (IN Count 3) similarly fails because that statute applies only to incurable or uncured deceptive acts. *Gasbi, LLC v. Sanders*, 120 N.E.3d

---

[55] AR Count 4; MO Count 4; MT Count 4; TX Count 4.

[56] **AR**: *Pate v. Cent. Flying Serv., Inc.*, 2006 WL 3388340, *1 n.1 (E.D.Ark. 2006) ("There is no separate cause of action for fraudulent concealment under Arkansas law."). **MO**: *Dorgan v. Ethicon, Inc.*, 2020 WL 5372134, *3 (W.D.Mo. 2020) ("Under Missouri law, fraudulent concealment is not an independent cause of action."). **MT**: *Nelson v. Forest River, Inc.*, 2023 WL 2610769, *6 (D.Mont. 2023) (dismissing because "Montana caselaw reveals that fraudulent concealment does not operate as a standalone claim"). **TX**: *Famigletti v. Ethicon, Inc.*, 2019 WL 7370670, *2 (N.D.Tex. 2019) ("Texas law does not recognize fraudulent concealment as an independent cause of action"). (All citations omitted.)

614, 618 (Ind. Ct. App. 2019) (subsequent proceedings omitted). An intent to defraud is an essential element of "incurable" deceptive acts under the statute. *McKinney v. State*, 693 N.E.2d 65 (Ind. 1998). Here, Plaintiffs have not even adequately pled Defendants' pre-suit knowledge, much less any intent to defraud. *See* § IV.D, *supra*.

### 3. Certain States Preclude Injunctive Relief.

There is no private right of action for injunctive relief under the consumer protection statutes in North Dakota, and Oklahoma.[57] *Tibbetts v. Sight 'n Sound Appliance Ctrs., Inc.*, 77 P.3d 1042, 1052–53 (Okla. 2003), *as corrected* (Sept. 30, 2003); *see* N.D.Cent. Code Ann. § 51-15-09. These claims should be dismissed.

### 4. Ohio's Consumer Protection Statute Precludes Class Claims Where Plaintiffs Do Not Allege A Previous Violation.

To pursue a class action under the Ohio Consumer Sales Practices Act (OH Count 4), Plaintiffs must show that Defendants knew that the alleged conduct had previously been deemed deceptive or unconscionable. *Carder v. Graco Children's Prods., Inc.*, 558 F. Supp. 3d 1290, 1330–31 & n.6 (N.D. Ga. 2021). Plaintiffs offer no such allegations. Compl., ¶¶ 3056-73. Thus, Ohio Count 4 should be dismissed.

### 5. Certain States Exempt Motor Vehicle Sales.

Plaintiffs' Michigan Consumer Protection Act claim (MI Count 3) should be dismissed because motor vehicle sales are exempt from the statute's purview. *Jimenez v. Ford Motor Credit Co.*, 2015 WL 9318913, at *6-7 (Mich. App. Dec. 22, 2015).

---

[57] LA Count 2, ND Count 3, OK Count 3.

Likewise, Oklahoma Consumer Protection Act claims (OK Count 3) are preempted if based on transactions governed under other regulatory schemes. Okla. Stat. Ann. tit. 15, § 754(2); *Dinwiddie v. Suzuki Motor of Am., Inc.*, 111 F. Supp. 3d 1202, 1216 (W.D. Okla. 2015). The automotive industry is heavily regulated, as evidenced by Plaintiffs' own allegations. *E.g.*, Compl., ¶¶ 308-29.

### 6.    Certain States Bar Claims Where There Are Adequate Legal Remedies.

To the extent they seek equitable relief, the California, Georgia, and New York consumer protection claims[58] should be dismissed because Plaintiffs have an adequate remedy at law through their other claims.[59] Compl., ¶¶ 800-24, 1190-1232, 1255-79, 2792-2816, 2853-68, 2869-77. And Plaintiffs' Alabama Deceptive Trade Practices Act claim (AL Count 3) should be dismissed because Alabama forbids plaintiffs from pursuing such claims where, as here, the plaintiff is also pursuing other fraud-based claims. *Holmes v. Behr Process Corp.*, 2015 WL 7252662, *2 (N.D. Ala. Nov. 17, 2015);

---

[58] CA Counts 4, 5, 6; GA Count 4; NY Counts 3 and 4.

[59] **CA**: *Zapata Fonseca v. Goya Foods Inc*., 2016 WL 4698942, *7 (N.D.Cal. Sep. 8, 2016) (dismissing claims for equitable relief under the CLRA, UCL, and FAL because plaintiff pled five other claims which presented her an adequate remedy at law). **GA (GFBPA)**: *Brogdon ex rel. Cline v. Nat'l Healthcare Corp.*, 103 F. Supp. 2d 1322, 1336 (N.D.Ga. 2000) (dismissing claim after acknowledging "[d]efendants['] argu[ment] that … statute is simply a 'gap filling' statute, and does not provide a cause of action when adequate administrative or legal remedies exist."). **NY**: *El Toro Grp., LLC v. Bareburger Grp., LLC*, 141 N.Y.S.3d 3, 4–5 (N.Y. Sup. Ct. App. Div. 2021) ("The [GBL] cause of action seeks … equitable remed][ies] … and must be dismissed because plaintiffs have a complete and adequate remedy at law, which is the damages they seek in [another] cause of action" (cleaned up)).

Compl., ¶¶ 477-92.

### 7.    Certain States Require Adequate Pre-Suit Notice.

Plaintiffs' Alabama, California, Georgia, Massachusetts, and Ohio consumer protection claims[60] should be dismissed because each statute requires plaintiffs to allege they provided defendants with adequate pre-suit notice.[61] *E.g., Rodi v. S. New England Sch. Of L.*, 389 F.3d 5, 19 (1st Cir. 2004) (Before suing, "a plaintiff must mail to the defendant a written demand for relief, identifying the claimant and reasonably describing the unfair or deceptive act or practice relied upon"). Plaintiffs identify no pre-suit notice, instead directing the Court to unspecified "paragraphs addressing Defendants' notice above" to justify their conclusory allegations of having "timely provided Defendants notice of the issues raised in this count and this Complaint." *See* Compl., ¶¶ 474, 763, 1252, 2040, 4004; *see also id.* at 789-99 (no notice at all as to UCL claim). But nowhere does the Complaint contain allegations confirming that these Plaintiffs notified these Defendants about these potential claims. This bars their claims, as each state construes the statutory notice requirement literally, requiring individual plaintiffs to notify the defendant of the purported violation; a defendant's supposed awareness of general issues in the marketplace is irrelevant.

### 8.    Certain States Require Allegations of Actual And Tangible

---

[60]AL Count 3; CA Counts 4, 5, 6, 7; GA Count 4; MA Count 3; OH Count 3.

[61]*See* Ex. C.1 for state-specific case law.

**Financial Loss.**

Plaintiffs' Arkansas, Georgia, Illinois, New York, and Montana consumer protection claims[62] require allegations of ***actual and tangible financial loss***—an alleged diminution in value is insufficient.[63] *E.g., Parnell v. FanDuel, Inc*., 591 S.W.3d 315, 318–19 (Ark. 2019) ("[W]here the only alleged injury is the diminution in the value of the product, a private cause of action is not cognizable under the ADTPA.") Plaintiffs here offer no such allegations.[64]

## VI.   MANY PLAINTIFFS' CLAIMS ARE UNTIMELY

The statute of limitations has already run on many of the asserted claims, which are based on transactions that occurred many years—sometimes more than a decade—before the underlying complaints were filed. *E.g.*, Compl. ¶ 164 (Plaintiff Hall-Hudson purchased a 2007 Chevrolet Tahoe in approximately 2011). Plaintiffs' vague and conclusory allegations of fraud do not change the fact that many of these claims, including breach of warranty, accrued on the date of the transaction. Even for claims where Plaintiffs could plausibly plead that a claim accrued upon discovery, they fail to allege when discovery was or reasonably should have occurred.

---

[62]AR Count 3; GA Count 4; IL Counts 3, 4; NY Counts 3, 4; and MT Count 3.

[63]*See* Ex. C.1 for state-specific case law.

[64]Compl., ¶¶ 454-76, 1233-54, 1449-71, 1472-87, 2817-34, 2835-52.

### A.    Plaintiffs' Warranty Claims Are Untimely.

Under the UCC, a breach of warranty claim accrues upon delivery of the goods, "regardless of the aggrieved party's lack of knowledge of the breach." UCC § 2-725, (2). Most states have adopted § 2-725 and apply it to the sale of vehicles. Specifically, Alabama, Arizona, California, Connecticut, Georgia, Illinois, Indiana, Kansas, Maryland, Massachusetts, Michigan, Minnesota, Missouri, Montana, Nevada, New Jersey, New York, North Carolina, Pennsylvania, South Dakota, Tennessee, Texas, Vermont, Virginia, Washington, Colorado, Florida, Oklahoma, South Carolina, and Wisconsin have adopted the UCC's date-of-delivery accrual rule, with almost all adopting a four-year statute of limitations for such claims (exceptions noted below).[65] That limitations period has already run for many of Plaintiffs' warranty claims. Plaintiffs' claims under California's Song-Beverly Consumer Warranty Act, Cal.Civ.Code §§ 1790, *et seq* (West). (CA Count 3), are also untimely, as the Song-Beverly Act has no separate statute of limitations—it is coextensive with the underlying four-year statute of limitations under Cal. Com. Code § 2725(1) (West). *See Mexia v. Rinker Boat Co.*, 174 Cal.App. 4th 1297, 1305-06 (2009). As detailed in Defendants' individual briefs, many named Plaintiffs did not timely bring their warranty claims, requiring dismissal.

### B.    Plaintiffs' Common-Law Fraud Claims Are Untimely.

Plaintiffs allege common-law fraud on behalf of a nationwide class and the state

---

[65] *See* Ex. E.

subclasses. *See generally* Compl. Vol. II. Plaintiffs' nationwide fraud claim fails for the reasons discussed in Section II, *supra*. For Plaintiffs' common law fraud claims, most of the relevant states have statutes of limitations of two to four years.[66] As detailed in Defendants' individual briefs, many Plaintiffs' claims are time-barred.

### C.    Plaintiffs' Unjust Enrichment Claims Are Untimely.

Similar to their fraud claims, Plaintiffs' nationwide unjust enrichment claims fail for the reasons discussed in Section I.B. And most of their state-specific unjust enrichment claims are likewise subject to limitations periods of two to four years[67] and are also untimely (as detailed in Defendants' individual briefs).

### D.    Plaintiffs' Consumer Protection Claims Are Untimely.

Plaintiffs' claims under the state consumer protection acts of California, Connecticut, Florida, Indiana, Kansas, Minnesota, New York, Tennessee, and Wisconsin accrue "at the occurrence of the deceptive act," *i.e.*, the time of purchase or lease.[68] *A.J.'s Auto. Sales, Inc. v. Freet*, 725 N.E.2d 955, 965 (Ind.Ct.App. 2000). As detailed in Defendants' individual briefs, many of the named Plaintiffs did not bring their claims in a timely manner. Those claims too must be dismissed.

### E.    Fraudulent Concealment Tolling Does Not Save Untimely Claims.

Fraudulent concealment tolling does not preserve Plaintiffs' untimely claims

---

[66] *See* Ex. E.
[67] *See* Ex. E.
[68] *See* Ex. E.

because there are no allegations showing the requisite active concealment. To toll the statute of limitations, a plaintiff must allege the existence of a special relationship imposing a duty to disclose or active concealment of the alleged defect. *See*, *e.g.*, *Jackson v. Astrue*, 506 F.3d 1349, 1356 (11th Cir. 2007) ("[C]ourts usually require some affirmative misconduct, such as deliberate concealment" to toll limitations period) (citations omitted); *Campbell v. Upjohn Co.*, 498 F. Supp. 722, 728 (W.D.Mich. 1980), *aff'd*, 676 F.2d 1122 (6th Cir. 1982); *see also Wolfe v. Flathead Elec. Coop., Inc.*, 431 P.3d 327, 330 (Mont. 2018); *Mest v. Cabot Corp.*, 449 F.3d 502, 517 (3d Cir. 2006) (applying Pennsylvania law); *Evans v. Trinity Indus., Inc.*, 137 F. Supp. 3d 877, 882 (E.D.Va. 2015). Active concealment occurs only if the defendant engaged in an "affirmative" and "deliberate" act of concealment to prevent plaintiffs from discovering their causes of action. *Horsley v. Univ. of Ala.*, 564 F.App'x 1006, 1009 (11th Cir. 2014); *In re Int'l Admin. Servs., Inc.*, 408 F.3d 689, 701 (11th Cir. 2005). Here, Plaintiffs allege no facts showing "active" concealment or a duty to disclose. *See generally* Compl.; *see* Section V.E, *supra*. Far from "active" concealment, Plaintiffs allege that Defendants cooperated with NHTSA's investigation beginning in 2015. Compl. ¶¶ 308, 311.

Further, "a plaintiff must satisfy [Rule 9(b)'s] requirement to plead with particularity in her complaint the facts giving rise to a claim of fraudulent concealment before a federal court will toll the statute of limitations. This includes alleging the specific conduct of the defendant that entitles the plaintiff to toll the statute against that

defendant." *Adams v. Crown Asset Mgmt., LLC*, 2011 WL 13318846, at *2 (N.D. Ga. Aug. 11, 2011) (quoting *Pedraza v. United Guar. Corp.*, 114 F. Supp. 2d 1347, 1355-56 (S.D. Ga. 2000)). Plaintiffs' fraudulent concealment allegations fall far short of the particularity required by Rule 9(b). *See* Section V.A; *see also* Section V.E.

## VII. THE UNJUST ENRICHMENT CLAIMS SHOULD BE DISMISSED.

Plaintiffs allege a claim for unjust enrichment under Georgia law on behalf of a nationwide class, as well as claims for unjust enrichment under the laws of each state on behalf of the state-specific subclasses. Compl. ¶¶ 425-433. Because Plaintiffs' unjust enrichment claims are grounded in fraud, they are subject to Rule 9(b)'s heightened pleading standard. *See, e.g.*, *Cincinnati Life Ins. Co. v. Beyrer*, 722 F.3d 939, 949 (7th Cir. 2013) ("unjust enrichment claims 'sound in fraud'" and thus must be plead with particularity under Rule 9(b)); *Rana Fin., LLC v. City Nat'l Bank of New Jersey*, 347 F. Supp. 3d 1147, 1155 (S.D. Fla. 2018) (applying Rule 9(b) when "fraud is the source of the alleged inequity"); *AAL USA, Inc. v. Black Hall Aerospace, Inc.*, 2018 WL 1157201, at *9 (N.D. Ala. Mar. 5, 2018) (same).

In every one of their unjust enrichment counts, Plaintiffs repeat the same vague allegation that "Plaintiffs and Class Members conferred tangible and material economic benefits upon [Defendants], who readily accepted and retained these benefits." These generic allegations do nothing more than parrot the elements of the cause of action and are insufficient to state claims for unjust enrichment.

Plaintiffs' generic pleading for each individual state claim also ignores the variations in those laws. California, New Hampshire, and Texas, for example, do not recognize unjust enrichment as a stand-alone cause of action. *See, e.g.*, *McBride v. Boughton*, 123 Cal. App. 4th 379, 387-88 (2004)); *Gen. Insulation Co. v. Eckman Const.*, 992 A.2d 613, 620–21 (N.H. 2010) ("unjust enrichment generally does not form an independent basis for a cause of action" (citations omitted)); *Hancock v. Chi. Title Ins. Co.*, 635 F. Supp. 2d 539, 561 (N.D.Tex. 2009) ("Texas courts "have consistently held that unjust enrichment is not an independent cause of action.").

Many states require the plaintiff to show, as a precondition for unjust enrichment, that there is no adequate remedy at law. *See, e.g.*, *In re Ford Tailgate Litig.*, 2014 WL 1007066, at *5 (N.D.Cal. Mar. 12, 2014) (an unjust enrichment claim that relies on the same factual predicates as a legal claim is duplicative of that legal claim, not a true alternative theory).[69] Plaintiffs' unjust enrichment claims are barred by the existence of adequate legal remedies under their other claims based on the same alleged conduct.

Additionally, courts in Alabama, Arkansas, California, Colorado, Connecticut, Florida, Georgia, Illinois, Idaho, Indiana, Iowa, Kansas, Kentucky, Maryland, Massachusetts, Michigan, Mississippi, Missouri, Minnesota, Nebraska, New Jersey, New York, New Hampshire, New Mexico, North Carolina, North Dakota, Rhode Island, Pennsylvania, Ohio, Oklahoma, Oregon, South Carolina, Texas, Tennessee, Virginia,

---

[69] *See* Ex. D.1 for state-specific case law.

Washington, West Virginia, and Wisconsin do not recognize unjust enrichment claims when an express agreement defines the parties' rights.[70] Here, Plaintiffs allege that express warranties determine which party bears the financial burden of vehicle repairs. Courts "have regularly dismissed unjust enrichment claims filed against automobile manufacturers where a valid, enforceable express warranty covers the same subject matter as plaintiffs' unjust enrichment claims." *In re Gen. Motors Air Conditioning Mktg. & Sales Pracs. Litig.*, 406 F. Supp. 3d 618, 634 (E.D. Mich. 2019) (collecting cases); *see also In re Porsche Cars N. Am., Inc.,* 880 F. Supp. 2d 801, 852 (S.D. Ohio 2012) (dismissing unjust enrichment claims asserted under Georgia, Illinois, and New York law because express contract governed parties' relationship).[71]

Finally, the unjust enrichment claims fail because Plaintiffs do not allege that Defendants unjustly received or retained any benefit from Plaintiffs. Defendants are manufacturers and/or distributors that do not deal directly with consumers, or receive any benefit directly from consumers.[72] *See, e.g., Storey v. Attends Healthcare Prod., Inc.,*

---

[70] *See* Ex. D.1 for state-specific case law.

[71] *See also Goldstein v. The Home Depot, U.S.A., Inc.,* 609 F.Supp.2d 1340, 1347 (N.D.Ga.2009) (plaintiff is precluded from pursuing an unjust enrichment claim where a valid contract governs the subject matter in dispute); *Terry Barr Sales Agency, Inc. v. All-Lock Co., Inc.,* 96 F.3d 174, 181 (6th Cir. 1996); *Sloan v. Gen. Motors LLC,* 2020 WL 1955643, *27 (N.D. Cal. 2020) (collecting cases for proposition that "the mere existence of a contract that defines the parties' rights bars a claim for unjust enrichment"); *Mitchell v. Gen. Motors LLC,* 2014 WL 1319519, at *15 (W.D. Ky. Mar. 31, 2014) (where parties do not dispute existence of express warranty, "Plaintiff is not permitted to plead claim breach of express warranty claims and unjust enrichment in the alternative").

[72] *See* Ex. D.1 for state-specific case law.

2016 WL 3125210, at *12-13 (E.D. Mich. June 3, 2016) (conferral of indirect benefit actionable only where parties had direct interaction). And Plaintiffs who did not purchase or lease their vehicle directly from a dealership affiliated with a Defendant certainly cannot state an unjust enrichment claim. *See In re Takata Airbag Prods. Liab. Litig.*, 255 F. Supp. 3d 1241, 1260 (S.D.Fla. 2017).[73]

## VIII.   THE COURT SHOULD DISMISS PLAINTIFFS' EQUITABLE CLAIMS FOR RESTITUTION.

Plaintiffs ask the Court to award them restitution pursuant to the consumer protection laws of all 50 states. *See, e.g.*, Compl. ¶ 481. However, a federal court sitting in diversity may not award equitable restitution to a plaintiff under a state statute when the plaintiff has an adequate remedy at law. *See, e.g.*, *Sonner v. Premier Nutrition Corp.*, 971 F.3d 834, 841 (9th Cir. 2020). Throughout the Complaint, Plaintiffs insist that they suffered monetary damages based on diminution of the value of their vehicles. *See, e.g.*, Compl. ¶ 247. There are no allegations in the Complaint raising a plausible inference that Plaintiffs could not be fully compensated for any alleged harm with monetary relief.

## IX.   NHTSA—NOT THIS COURT—SHOULD ADDRESS PLAINTIFFS' RECALL-RELATED INJUNCTIVE RELIEF.

---

[73] Plaintiffs Anderson, Fett, Harpey-Bey, Hartman, Isbister, Lesesne, McKenn, Mitchell, Polo, Clark, Ford, Hall-Hudson, Hudson-Battie, Jo, Herrera, Miles, Victory, Winslow, Felice, Jacinto, Schu, Valenzuela, Belhadj, Blumberg, Chambliss, Diaz, Eiland, Fernandez, Graff, Hall, Hamner, Hochstetler, Komoroski, Owens, Petschen, Reddick, Sorenson, Thomas, Duran, Long, Lovett, Mobley, White, and Wilson. Compl. ¶¶ 142, 146, 149, 150, 153, 155, 158-160, 162-166, 173, 175, 179, 181, 183, 186, 197, 204, 213, 214, 217, 220, 221, 223-227, 229, 234-236, 239, 245, 247-250, 253, 254.

In addition to monetary damages, Plaintiffs purport to seek far-reaching equitable relief. Compl. Sec. IX, ¶ E. Among other things, they ask this Court to order Defendants to "remove the dangerous Defective Inflators off the road and install airbags with demonstrably safe inflators in the Class Vehicles," *id.* ¶ 19, and order a speedy repair of all affected vehicles, *id.* ¶ 24. *See, e.g.*, *id.*, Sec. IX, ¶ D. Plaintiffs also demand a sprawling "Defendant-funded program" with "transparent, consistent, and reasonable protocols" to "absorb the losses and expenses fairly traceable to the recall of the vehicles and correction of the Defective Inflators." *Id.*, Sec. IX, ¶ G. In other words, Plaintiffs want the Court to order, and then oversee, a nationwide safety recall of tens of millions of airbag inflators.

It is not clear whether Plaintiffs are serious about these requests—they have not moved for injunctive relief or expressed any intention to do so. Whether serious or not, these requests for relief should be dismissed. A recall is a complex process that falls squarely and exclusively within the province of NHTSA, which is already considering these issues.

### A.   The Court Should Defer to NTHSA's Primary Jurisdiction Over Plaintiffs' Request for a Recall and Related Relief.

Under the primary jurisdiction doctrine, courts decline to consider claims when they implicate "some issue within the special competence of an administrative agency." *Georgia Power Co. v. Charter Commc'ns, LLC*, 2013 WL 12247036, at *12 (N.D. Ga. May 28, 2013). To decide whether the doctrine applies, courts consider "(1) the need to

45

resolve an issue that (2) has been placed by Congress within the jurisdiction of an administrative body having regulatory authority (3) pursuant to a statute that subjects an industry or activity to a comprehensive regulatory authority that (4) requires expertise or uniformity in administration." *In re Horizon Organic Milk Plus DHA Omega-r Mktg. & Sales Practice Litig.*, 955 F. Supp. 2d 1311, 1348 (S.D. Fla. 2013).

Plaintiffs' request for recall-related injunctive relief falls squarely within NHTSA's primary jurisdiction. By enacting the Motor Vehicle Safety Act, 49 U.S.C. § 30101, *et seq.*, Congress entrusted NHTSA with determining whether a recall is necessary and, if it is, overseeing any such recall. *See, e.g.*, 49 U.S.C. § 30162(a)(2) (authorizing Secretary of Transportation to "order the manufacturer to recall the vehicle or equipment" upon a determination "that the vehicle or equipment contains the defect or does not comply"); *see also Coker v. DaimlerChrysler Corp.*, 2004 WL 32676, at *5 (N.C. Super. Jan. 5, 2004) ("The Safety Act and its subsequent amendments provide a process that empowers NHTSA to both investigate and remedy design defects in automobiles."). This is precisely the role NHTSA is playing here regarding the subject inflators. As Plaintiffs allege, NHTSA has been actively investigating ARC's airbag inflators for nearly a decade. Compl. ¶ 6. NHTSA has conducted a formal engineering analysis, which Plaintiffs describe as an "in-depth, detailed investigation" that draws on information from various Defendants. *Id.* ¶¶ 314–16. NHTSA issued a tentative conclusion about the inflators to ARC on April 27, 2023. *Id.* ¶ 1. More recently, on

September 5, 2023, NHTSA preliminarily concluded that "approximately 52 million inflators" may need to recalled, and it held a public meeting on the topic on October 5, 2023. NHTSA is currently considering how to proceed, and will likely issue a final determination before this motion is resolved. At the same time, multiple voluntary recalls are already underway, with several manufacturers having initiated them for production lots of affected inflators. *See, e.g.*, *id.* ¶¶ 6–7 (describing recalls by BMW, Ford, and Volkswagen and GM's "recall of 994,000" vehicles). NHTSA is aware of those recalls. *Id.* ¶ 333.

The Court should reject Plaintiffs' efforts to usurp the agency's authority. There is broad consensus among courts that NHTSA is "far better equipped" to supervise "the broad and complex issues of automotive safety and the regulation of automotive companies in connection with a nationwide recall." *Silvas v. General Motors, LLC*, 2014 WL 1572590, at *3 (S.D. Tex. Apr. 17, 2014) (rejecting requested injunctive relief); *Coker*, 2004 WL 32676, at *5 (observing that unlike NHTSA, "the Court does not have the resources to scientifically determine the danger that the absence of an interlock system poses to consumers, nor does the Court have in place a system to order a nationwide recall to retrofit the vehicle as efficiently as NHTSA"). Courts routinely decline to entertain requests like Plaintiffs' requested injunctive relief. *See Silvas*, 2014 WL 1572590, at *3; *Bussian v. DaimlerChrysler Corp.*, 411 F. Supp. 2d 614 (M.D.N.C. 2006) (dismissing claims involving vehicles subject to an ongoing recall in deference to

NHTSA); *Coker*, 2004 WL 32676, at *5 (denying injunctive relief in deference to NHTSA).

Plaintiffs' requests for injunctive relief invade the province of NHTSA and would create unnecessary conflicts between NHTSA and this Court. Defendants would face the potentially impossible task of harmonizing overlapping or conflicting instructions from NHTSA and the Court as to whether and how to conduct any recalls. Conflicting or overlapping directions would impede the very relief Plaintiffs claim to seek. The Court should defer to NHTSA's primary jurisdiction and dismiss the requests for a recall and related injunctive relief. NHTSA will at some point issue its final decision, and any challenge by Defendants to that decision would be brought in an appropriate forum and would be strictly between Defendants and NHTSA.

### B.     The Safety Act Preempts Recall-Related Relief.

Federal law preempts state law when the state law would impede the "accomplishment and execution" of a federal law's purposes and objectives. *Int'l Paper Co. v. Oullette*, 479 U.S. 481, 492–93 (1987). Plaintiffs' requested relief does exactly that by interfering with the purposes and objectives of the Safety Act. *In re Bridgestone/Firestone, Inc. Tires Products Liab. Litig.*, 153 F. Supp. 2d 935, 943–44, 946 (S.D. Ind. 2001).

As with primary jurisdiction, courts have found that recall-related injunctive relief would frustrate the purposes of the Safety Act. *Lilly v. Ford Motor Co.*, 2002 WL 84603,

at *5 (N.D. Ill. Jan. 22, 2002); *Namovicz v. Cooper Tire & Rubber Co.*, 225 F. Supp. 2d 582, 584–85 (D. Md. 2001); *In re Bridgestone/Firestone, Inc.*, 153 F. Supp. 2d at 944–946. This is because "the comprehensive nature of the federal administrative scheme" shows that Congress intended for NHTSA, not courts, to have authority to require vehicle safety recalls. *See In re Bridgestone/Firestone, Inc.*, 153 F. Supp. 2d at 944; *Lilly*, 2002 WL 84603, at *5.[74] This congressional intent is corroborated by the statutes granting NHTSA authority to investigate defects and decide whether a recall is necessary. 49 U.S.C. §§ 30118, 30120, 30162; 49 C.F.R. §§ 554.6–554.7 (regulations on opening investigations), 556.4–556.8 (regulations on exemptions from Safety Act remedies), 557.1–557.8 (regulations on initiating hearings as to notice or remedy process); *see In re Bridgestone/Firestone, Inc.*, 153 F. Supp. 2d at 946; *Lilly*, 2002 WL 84603, at *5; *Coker*, 2004 WL 32676, at *4.

### C. Plaintiffs' Request For Recall-Related Relief Improperly Circumvents the Absence of a Private Right of Action Under the Safety Act.

The Safety Act provides no private right of action. *See Ayres v. General Motors Corp.*, 234 F.3d 514, 522 (11th Cir. 2000). Plaintiffs' claims for recall-related injunctive relief are effectively requests for relief that only NHTSA can demand under the Safety Act. Plaintiffs rely on state law to ask this Court to recall vehicles and create a "Defendant-funded program" to address related costs. But these are remedies the Safety

---

[74] Some cases discuss the Secretary of Transportation, who has delegated this authority to NHTSA. *See* 49 C.F.R. § 501.2

Act provides *without* granting a private right of action.

Under similar circumstances, courts in this district have twice dismissed claims that, while given different labels, were effectively pursuing a private right of action under the Safety Act. *See McCabe v. Daimler AG*, 948 F. Supp. 2d 1347, 1354, 1365–66 (N.D. Ga. 2013) (dismissing unjust enrichment claim brought by plaintiffs seeking to force defendants to cover the cost of replacement parts after recall allegedly failed to fix gasoline leaks because the claim sought "to enforce the [Safety Act's] recall mandate"); *Black Stone Auto Export, Inc.*, 2021 WL 1748385, (N.D.Ga. Mar. 31, 2021) (rejecting claims amounting to "a recall remedy under the Safety Act."), *aff'd, Black Stone Auto Export, Inc.*, 2021 WL 6102499 (11th Cir. Jan. 23, 2021) ("Plaintiff's attempt to recover damages caused by Hyundai's refusal to compensate Plaintiff for seven of the recalled Sonatas constituted an attempt to enforce a recall remedy under the Safety Act.").

Just as in *McCabe* and *Black Stone*, Plaintiffs' request for a recall and related relief is a "recall remedy under the Safety Act." *Black Stone Auto Export, Inc.*, 2021 WL 1748385, at *1; *see* 49 U.S.C. § 30120(a)(1)(i). Because courts cannot "recognize a private right of action Congress declined to create," those requests should be dismissed. *McCabe*, 948 F. Supp. 2d at 1366.

## CONCLUSION

For these reasons, Defendants respectfully request that the Court grant this motion and dismiss the Complaint in its entirety.

Dated: October 18, 2023                    Respectfully submitted,

                                           /s/ April N. Ross
                                           CROWELL & MORING LLP
                                           April N. Ross
                                           Mohamed Awan
                                           Emily Tucker
                                           1001 Pennsylvania Avenue NW
                                           Washington, D.C. 20004
                                           Telephone: (202) 624-2500
                                           aross@crowell.com
                                           mawan@crowell.com
                                           etucker@crowell.com

                                           BAKER, DONELSON, BEARMAN,
                                           CALDWELL & BERKOWITZ, PC
                                           Linda Ann Klein
                                           3414 Peachtree Road, Northeast
                                           Monarch Plaza, Suite 1500
                                           Atlanta, GA 30326-1164
                                           404-577-6000
                                           Email: lklein@bakerdonelson.com

                                           *Counsel for General Motors LLC*

                                           /s/ Perry W. Miles
                                           MCGUIREWOODS LLP
                                           Perry W. Miles
                                           Brian D. Schmalzbach
                                           800 East Canal Street
                                           Richmond, VA 23219
                                           Tel: (804) 775-1000
                                           Fax: (804) 775-1061
                                           pmiles@mcguirewoods.com
                                           bschmalzbach@mcguirewoods.com

                                           Abigail A. Golden
                                           201 North Tryon Street
                                           Suite 3000
                                           Charlotte, NC 28202

Tel: (704) 343-2000
Fax: (704) 343-2300
agolden@mcguirewoods.com

WATSON SPENCE LLP
Michael R. Boorman
Phillip A. Henderson
999 Peachtree St NE
Suite 1130
Atlanta, GA 30309
Tel: (678) 433-6586
Fax: (229) 436-6358
mboorman@watsonspence.com
phenderson@watsonspence.com

*Counsel for Ford Motor Company*


/s/ Eric Y. Kizirian
LEWIS BRISBOIS
BISGAARD & SMITH LLP
Eric Y. Kizirian
Zourik Zarifian
633 W. Fifth Street, Suite 4000
Los Angeles, CA 90071
Telephone: (213) 250-1800
eric.kizirian@lewisbrisbois.com
Zourik.Zarifian@lewisbrisbois.com

*Counsel for BMW of North America, LLC
and BMW Manufacturing Co., LLC*


/s/ Stephen A. D'Aunoy
THOMPSON COBURN LLP
Stephen D'Aunoy
Thomas L. Azar, Jr.
One US Bank Plaza
St. Louis, Missouri 63101
Phone: (314) 552-6000
sdaunoy@thompsoncoburn.com

tazar@thompsoncoburn.com

KLEIN THOMAS LEE & FRESARD
Fred J. Fresard
Ian K. Edwards
Lauren Fibel
101 W. Big Beaver Road
Suite 1400
Troy, MI 48084
Phone: (248) 509-9270
Fred.Fresard@kleinthomaslaw.com
Ian.Edwards@kleinthomaslaw.com
Lauren.Fibel@kleinthomaslaw.com

*Attorneys for FCA US LLC*

/s/ Eric S. Matson
SIDLEY AUSTIN LLP
Eric S. Mattson
Kendra Stead
Ankur Shingal
One South Dearborn St.
Chicago, IL 60603
Telephone: (312) 853-7000
Facsimile: (312) 853-7036
emattson@sidley.com
kstead@sidley.com
ashingal@sidley.com

Ellyce R. Cooper
1999 Avenue of the Stars
17th Floor
Los Angeles, CA 90067
Telephone: (213) 896-6000
Facsimile: (213) 896 6600
ecooper@sidley.com

NELSON MULLINS RILEY &
SCARBOROUGH LLP
Anita Wallace Thomas

Suite 1700
201 17th Street, N.W.
Atlanta, GA 30363
404-322-6000
Fax: 404-322-6050
anita.thomas@nelsonmullins.com

BOWMAN AND BROOKE
Joel H. Smith
Patrick J. Cleary
1441 Main St., Ste. 1200
Columbia, SC 29201
Telephone: +1 (803) 726-7422
Fax: +1 (803) 726-7421
Joel.smith@bowmanandbrooke.com
patrick.cleary@bowmanandbrooke.com

DYKEMA GOSSETT, PLLC-MI
James P. Feeney
Suite # 300
39577 Woodward Avenue
Bloomfield Hills, MI 48304
248-203-0841
Fax: 855-243-9885
Email: jfeeney@dykema.com

*Counsel for Kia America, Inc. and
Hyundai Motor America*

/s/ Michael B. Shortnacy
KING & SPALDING LLP
Livia M. Kiser
Michael B. Shortnacy
Susan V. Vargas
633 West Fifth Street, Suite 1600
Los Angeles, CA 90071
Telephone: +1 213 443 4355
Facsimile: +1 213 443 4310
lkiser@kslaw.com
mshortnacy@kslaw.com

54

svargas@kslaw.com

*Counsel for Volkswagen Group of
America, Inc. and
Audi of America, LLC*

/s/ David S. Killoran
Derek S. Whitefield
David S. Killoran
DYKEMA GOSSETT LLP
444 S. Flower Street, Suite 2200
Los Angeles, CA 90071
Telephone: (213) 457-1800
Facsimile: (213) 457-1850
E-Mail: dwhitefield@dykema.com
E-Mail: dkilloran@dykema.com

*Counsel for Porsche Cars North America,
Inc.*

## RULE 7.1D CERTIFICATE

The undersigned hereby certifies that the foregoing brief was prepared using 14-point Times New Roman font, in accordance with Local Rule 5.1C.

Dated this 18th day of October, 2023.

/s/ April N. Ross

CROWELL & MORING LLP
April N. Ross
Mohamed Awan
Emily Tucker
1001 Pennsylvania Avenue NW
Washington, D.C. 20004
Telephone: (202) 624-2500
aross@crowell.com
mawan@crowell.com
etucker@crowell.com

*Counsel for General Motors LLC*

## CERTIFICATE OF SERVICE

I certify that on October 18, 2023, a copy of the foregoing Motion was served electronically through the Court's electronic filing system upon all parties appearing on the court's ECF service list.

/s/ April N. Ross

CROWELL & MORING LLP
April N. Ross
Mohamed Awan
Emily Tucker
1001 Pennsylvania Avenue NW
Washington, D.C. 20004
Telephone: (202) 624-2500
aross@crowell.com
mawan@crowell.com
etucker@crowell.com

*Counsel for General Motors LLC*