## UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

| | |
|---|---|
| IN RE: ARC AIRBAG INFLATORS PRODUCTS LIABILITY LITIGATION<br><br>This Document Relates to:<br><br>ALL CASES | MDL DOCKET NO. 3051 ALL CASES<br><br>Civ. No: 1:22-MD-03051-ELR<br><br>Honorable Eleanor L. Ross |

## ARC'S REPLY MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION TO DISMISS PLAINTIFFS' CORRECTED CONSOLIDATED CLASS ACTION COMPLAINT AND JOINDER OF DEFENDANTS' MOTIONS TO DISMISS

# TABLE OF CONTENTS

Introduction ...................................................................................................1

Factual Background ........................................................................................1

Argument.........................................................................................................4

I.      Plaintiffs Do Not Contest That Personal Jurisdiction Over ARC Is Lacking In Cases Filed Outside Of Tennessee. ...............................................4

II.     Plaintiffs Failed To Properly Serve ARC In Multiple Cases. ........................7

III.    Many Of Plaintiffs' Common-Law And Consumer Protection Act Claims Are Time-Barred............................................................................8

       A.    Voluminous NHTSA Public Statements Put Plaintiffs On Notice Of The Alleged Defect. ...........................................................9

       B.    Plaintiffs Fail To Adequately Allege Fraudulent Concealment. ...........13

IV.    Plaintiff's Claims Against ARC Should Be Dismissed For The Reasons Set Forth In The Other Defendants' Motions To Dismiss. .................................15

Conclusion ....................................................................................................15

Certificate of Compliance .............................................................................17

Certificate of Service ....................................................................................18

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Bettles v. Toyota Motor Corp.*,
645 F. Supp. 3d 978 (C.D. Cal. 2022) ............................................................9, 10

*In re Air Crash Disaster Near Chicago, Ill. on May 25, 1979*,
644 F.2d 594 (7th Cir. 1981) ...................................................................................6

*In re Delta Dental Antitrust Litig.*,
509 F. Supp. 3d 1377 (J.P.M.L. 2020)..................................................................6, 7

*In re FCA US LLC Monostable Elec. Gearshift Litig.*,
No. 16-md-02744, 2017 WL 6402992 (E.D. Mich. Mar. 21, 2017) .....................6

*In re Ford Motor Co. DPS6 Powershift Transmission Prods. Liab. Litig.*,
No. ML 18-02814 AB (FFMx), 2019 WL 6998668 (C.D. Cal. Sept. 5, 2019)...12

*In re Refrigerant Compressors Antitrust Litig.,*
731 F.3d 586 (6th Cir. 2013) ...................................................................................5

*In re Takata Airbag Prods. Liab. Litig.*,
193 F. Supp. 3d 1324 (S.D. Fla. 2016) .................................................................14

*In re Takata Airbag Prods. Liab. Litig.*,
396 F. Supp. 3d 1101 (S.D. Fla. 2019) ...................................................................7

*In re Takata Airbag Prods. Liab. Litig.*,
MDL No. 2599, 2017 WL 2406711 (S.D. Fla. Jun. 1, 2017)...............................14

*In re Temporomandibular Joint (TMJ) Implants Prods. Liab. Litig.*,
97 F.3d 1050 (8th Cir. 1996) ...................................................................................6

*Insurance Corp. of Ireland, Ltd. v. Compagnie des Bauxites de Guinee*,
456 U.S. 694 (1982)..................................................................................................5

*Kain v. Bluemound E. Indus. Park, Inc.*,
2001 WI App 230, 248 Wis. 2d 172, 635 N.W.2d 640 ..........................................9

*Murphy Bros., Inc. v. Michetti Pipe Stringing, Inc.*,
    526 U.S. 344 (1999) ..................................................................................8

*Nguyen v. Nissan N. Am., Inc.*,
    487 F. Supp. 3d 845 (N.D. Cal. 2020) ...................................................10

*Padilla v. Porsche Cars N. Am., Inc.*,
    No. 18-24988-CIV-MORENO, 2020 WL 1472301 (S.D. Fla. Mar. 26, 2020) ....9

*Pardazi v. Cullman Med. Ctr.*,
    896 F.2d 1313 (11th Cir. 1990) ..............................................................5

*Smith v. K-V Pharm. Co.*,
    No. 1:09-cv-1020-WSD, 2009 WL 10665762 (N.D. Ga. Sept. 24, 2009) ..........14

*U.S. v. General Motors Corp.*,
    518 F.2d 420 (D.C. Cir. 1975)..................................................................3

*Vee Bar, Ltd. v. N. Nat. Gas Co.*,
    No. 4:16-CV-015-DAE, 2016 U.S. Dist. LEXIS 96729 (W.D. Tex. Jul. 25,
    2016) ........................................................................................................9

**Statutes**

Wis. Stat. § 100.18 ...........................................................................................9

Wis. Stat. § 100.18(11)(b)(3) ..........................................................................9

**Rules**

Fed. R. Civ. P. 12(b) ............................................................................... 4, 5, 8

Fed. R. Civ. P. 9(b) ................................................................................ 14, 15

## INTRODUCTION

ARC's Motion to Dismiss (Dkt. 179) and supporting Memorandum (Dkt. 179-1) ("ARC MTD") raised specific, appropriate, and timely objections to Plaintiffs' ability to pursue their claims against ARC and their ability to pursue them in particular transferor courts. The gravamen of Plaintiffs' Memorandum of Law in Opposition (Dkt. 219) ("Pls.' ARC Br.") is the suggestion that issues central to this case should simply await resolution for another day, or even by the transferor courts.

Delaying ruling on these issues, however, is inconsistent with this Court's role as a transferee court, the Federal Rules of Civil Procedure, and well-established precedent. These issues are properly before this Court and should be resolved now.

## FACTUAL BACKGROUND

Before turning to the specific arguments raised in Plaintiffs' ARC Opposition, the record with respect to the on-going NHTSA investigation must be clarified. Plaintiffs suggest that the issue of whether a systemic defect exists in the vehicles' airbag inflators has been resolved, and hope that this will deflect from the legal arguments supporting dismissal. Plaintiffs do this by discussing at length NHTSA's September 5, 2023, Initial Decision (the "Initial Decision"), but they omit discussion of the responses to the Initial Decision by ARC, certain Supplier Defendants, and the OEM Defendants addressing the problems with the Initial Decision. These responses were all submitted well before Plaintiffs filed their Opposition.

This Court is aware that many of the Defendants, including ARC, have been working with NHTSA for nearly nine years on safety issues relating to airbag inflators. NHTSA's eventual final decision, including whether there will be any additional recalls required, will be resolved by NHTSA and possibly a reviewing court. But that process is separate from Plaintiffs' claims for economic damages.

On December 18, 2023, ARC, certain Supplier Defendants, and the OEM Defendants each submitted responses to the Initial Decision.[1] ARC's response highlighted that NHTSA's Initial Decision "boils down to a simple proposition that is unsupported by relevant case law or the investigation records: that the seven field ruptures involving [ARC] inflators somehow evidences a systemic defect among the approximately 52 million subject driver and passenger inflators." (Ex. A at 2.)

Indeed, there are numerous shortcomings in NHTSA's preliminary analysis of the investigation data. For example, NHTSA's reliance on seven ruptures is itself faulty, as "weld slag," which is Plaintiffs' theory of a potential defect in this case, was ruled out as a "root cause in two of the[] seven ruptures." (Compl. Ex. B. p. 2.) No root cause was determined for the other five ruptures. (Ex. A at 27–28.) Further, the 52 million total population of inflators that NHTSA asserts contain a safety defect includes inflators in vehicles manufactured by OEMs which have experienced

---

[1] The responses of ARC, certain Supplier Defendants, and the OEM Defendants are available at https://www.regulations.gov/document/NHTSA-2023-0038-0001/comment. ARC's response is attached hereto as Exhibit A.

zero, or only one, inflator rupture. These inflators were manufactured over an eighteen-year period—with some vehicles at issue now being on the road for nearly twenty-three years. (*Id.* at 2–3.) Moreover, the Initial Decision ignores variation across the subject population of inflators. (*Id*. at 3, 14–17.)

ARC takes seriously any potential malfunction with its air bag inflators. However, even assuming NHTSA's statistical analysis is accurate, as several responses noted, NHTSA's initial decision was based on a *predicted three additional ruptures over the next thirty-three years*.[2] That falls well below the standard for non-*de minimis* risk or an "unreasonable risk to motor vehicle safety" that the courts have recognized is required for NHTSA to justify such a sweeping recall. *U.S. v. General Motors Corp.*, 518 F.2d 420, 436 (D.C. Cir. 1975) (*Wheels*) ("While some margin of safety must be built-in to protect against failures during day-to-day operation, manufacturers are not required to design vehicles or components that never fail.").

Critically, none of the manufacturers that responded to the Initial Decision agreed with NHTSA's conclusion that there is evidence of a safety-related defect, especially one that would justify such a large-scale recall.

---

[2] *Id.* at 2–3; *see, e.g.,* Written Comments of General Motors LLC, Docket NHTSA-2023-0038, at 17; Comment of Volkswagen Group of America on NHTSA's September 5, 2023 Initial Decision Concerning ARC Hybrid, Toroidal Inflators Manufactures from 2000 to Early 2018, Appendix A at 1; Comments of FCA US LLC Regarding Initial Decision Docket No. NHTSA-2023-0038, at 10; Comments of Mercedes-Benz USA, LLC, at 21; Comments of Autoliv, Inc. and Autoliv ASP, Inc., at 12.

# ARGUMENT

## I.   Plaintiffs Do Not Contest That Personal Jurisdiction Over ARC Is Lacking In Cases Filed Outside Of Tennessee.

Plaintiffs do not contest the only argument ARC raised regarding personal jurisdiction: that personal jurisdiction over ARC is lacking in the underlying cases filed in federal courts in states other than Tennessee. To be clear, ARC does not contest—as Plaintiffs' straw-man argument suggests—this Court's authority to oversee the MDL cases for consolidated pretrial proceedings. Rather, ARC is raising in its opening responsive motion, as it must pursuant to Fed. R. Civ. P. 12(b)(2), an objection to the lack of personal jurisdiction in the courts where Plaintiffs chose to file their underlying cases, other than those filed in ARC's home state of Tennessee. (*See* ARC MTD at 9 n.3 (collecting cases).)

Plaintiffs do not dispute that ARC is not subject to general jurisdiction outside of its home state, Tennessee, or its state of incorporation, Delaware. Plaintiffs also do not dispute that they failed to allege facts to show that ARC has sufficient contacts with any other state with respect to Plaintiffs' claims that would confer specific jurisdiction in any other state. (ARC MTD at 8–14.) Thus, any of the transferred cases against ARC filed in states other than Tennessee must be dismissed. (*Id*.)

Plaintiffs suggest that this Court should simply defer the personal jurisdiction issue until the cases are remanded. (*See* Pl.'s ARC Br. at 13 (suggesting ARC raise the objection "when this Court remands those cases to their transferor courts").) The

4

only case Plaintiffs cite in support, *In re Refrigerant Compressors Antitrust Litigation*, is inapposite, holding only that an order dismissing claims raised by some plaintiffs in a consolidated complaint is not final for purposes of appeal. 731 F.3d 586, 588 (6th Cir. 2013). By contrast, governing rules and case law support that this issue can and should be resolved now.

First, Fed. R. Civ. P. 12(b) *requires* that the defense of lack of personal jurisdiction be raised promptly and made by motion "before pleading if a responsive pleading is allowed" (Fed. R. Civ. P. 12(b)) and such an objection can be waived if the party simply participates in the litigation. *See, e.g., Insurance Corp. of Ireland, Ltd. v. Compagnie des Bauxites de Guinee*, 456 U.S. 694, 702-03 (1982); *Pardazi v. Cullman Med. Ctr.*, 896 F.2d 1313, 1317 (11th Cir. 1990) ("A party that fails to raise a defense of lack of personal jurisdiction at the appropriate time is deemed to have conferred personal jurisdiction on the court by consent."). ARC has done just that by objecting to personal jurisdiction in cases transferred from courts outside of Tennessee in its Motion to Dismiss.

Second, as an MDL, there will be numerous and critical choice-of-law issues to address in these proceedings that will hinge on whether the transferor courts had personal jurisdiction over ARC and the other Defendants. As the Eighth Circuit explained, "[w]hen considering questions of state law . . . the [MDL] transferee court must apply the state law that would have applied to the individual cases had they not

5

been transferred for consolidation." *In re Temporomandibular Joint (TMJ) Implants Prods. Liab. Litig.*, 97 F.3d 1050, 1055 (8th Cir. 1996). In other words, "the transferee court must apply the 'choice-of-law rules of the states where the actions were originally filed." *Id.* (citing *In re Air Crash Disaster Near Chicago, Ill. On May 25, 1979*, 644 F.2d 594, 610 (7th Cir. 1981)). If personal jurisdiction is lacking in a transferor court, then this Court should not be applying choice-of-law rules as if the case was properly being pursued in that transferor court. Plaintiffs are pursuing state law claims in each of the fifty states and the District of Columbia. With proper resolution of personal jurisdiction issues at this juncture, this Court would then only apply choice-of-law rules to claims against ARC as though the only transferor court was in Tennessee and not in any of the other transferor courts. *See id.* at 1055. Thus, it is critical to resolve the personal jurisdiction objections at the outset of this MDL process.

Third, this Court's obligation as the MDL transferee court is to resolve pretrial issues. (*See* Dkt. 2; *see also In re FCA US LLC Monostable Elec. Gearshift Litig.*, No. 16-md-02744, 2017 WL 6402992, at *3 (E.D. Mich. Mar. 21, 2017) ("[T]he role of a transferee court is to act as a judicial caretaker of actions that come from somewhere else, manage those actions to ready them for trial (or until they are resolved by motion or settlement), and then send them back for trial.").) Whether personal jurisdiction exists in the transferor court is a fundamental question that must

6

be resolved at the earliest possible time, and certainly pretrial. *See In re Delta Dental Antitrust Litig.*, 509 F. Supp. 3d 1377, 1380 (J.P.M.L. 2020) ("Parties can and do challenge jurisdiction in the transferor court after Section 1407 transfer (*i.e.*, in the transferee court)."); *In re Takata Airbag Prods. Liab. Litig.*, 396 F. Supp. 3d 1101, 1137 (S.D. Fla. 2019) ("[T]he Court must determine whether the transferor district courts had general jurisdiction over the corresponding [defendants].").

Plaintiffs give no compelling reason why the Court should not rule on this motion at this time. They also give no reason why one hundred sixteen of the named Plaintiffs, who filed claims in federal courts in Tennessee but also filed those same claims in another transferee court, should be able to pursue claims in multiple federal courts. For all these reasons, the time to resolve the personal jurisdiction issue is now. Because Plaintiffs have failed to provide any support for a finding of personal jurisdiction over ARC in the thirteen cases listed in footnote 3 of ARC's Opening Brief (ARC MTD at 9 n.3), those cases should be dismissed at this time.

## II.    Plaintiffs Failed To Properly Serve ARC In Multiple Cases.

In its Motion, its first response to any complaint filed in this action, ARC raised that Plaintiffs failed to effectuate personal service on ARC (often not even having a summons issued) in nine transferred cases. (ARC MTD at 14 n.5.) Plaintiffs do not dispute that they failed to serve ARC in these nine cases and offer no explanation for this failure. Instead, they suggest that ARC "forfeited any challenge"

to the lack of proper service by "substantially participat[ing] in the litigation." (Pls.' ARC Br. at 14 (quotation marks and citations omitted).) That argument is meritless. ARC preserved all its objections to jurisdiction and service issues when it filed the initial reports required by this Court. (Dkt. 29.) Further, ARC raised these deficiencies in its first response to the Consolidated Complaint, as required by Fed. R. Civ. P. 12(b) and the Court's Case Management Orders (Dkt. 51, 91).

ARC raised the lack of service issue, as it has a right to do, to highlight that the fact that these cases are proceeding as part of an MDL does not absolve Plaintiffs from complying with the federal rules or from establishing this Court's authority over the specific claims raised in each transferred case. Actual notice of the filing of a complaint also does not absolve Plaintiffs of the obligation to properly effectuate service. *Murphy Bros., Inc. v. Michetti Pipe Stringing, Inc.*, 526 U.S. 344, 350–51 (1999). Nonetheless, ARC has agreed to Plaintiffs' counsel's belated request, made well after ARC's motion to dismiss was filed, and agreed to waive service in the nine underlying cases where proper service was at issue.

## III. Many Of Plaintiffs' Common-Law And Consumer Protection Act Claims Are Time-Barred.

Plaintiffs do not dispute that the statutes of limitations have run on many of their claims. (ARC MTD at 16–19.) Plaintiffs seek to evade the limitations periods by arguing for the application of the discovery rule or equitable tolling. (Pls' ARC Br. at 18–23; Plaintiffs' Mem. of Law in Opp'n to the Automaker Defs.' Mot. to

Dismiss (Dkt. 221) at 31.) They argue that their claims did not accrue until, at the earliest, August 18, 2020, when a NHTSA publication put them on notice of their claims (Pls' ARC Br. at 19.), and that the relevant statutes of limitations were tolled by ARC's alleged fraudulent concealment. (Pls' ARC Br. 20–23.) For the reasons discussed below, Plaintiffs are wrong on both counts.

Of course, neither the discovery rule nor equitable tolling impact statutes of repose. Accordingly, claims raised in states that apply a statute of repose that runs from the date of Plaintiffs' purchase of their vehicles are barred. *See* Wis. Stat. § 100.18(11)(b)(3). The statute of repose thus bars Plaintiff Kenneth Allen's Wis. Stat. § 100.18 claim. *Kain v. Bluemound E. Indus. Park, Inc.*, 2001 WI App 230, ¶ 15, 248 Wis. 2d 172, 635 N.W.2d 640; *see also* ARC MTD at 19.

### A.    Voluminous NHTSA Public Statements Put Plaintiffs On Notice Of The Alleged Defect.

Voluminous NHTSA public statements over an eight-year period put Plaintiffs on notice of their potential claims against ARC prior to NHTSA's August 2020 information request. Courts across multiple jurisdictions have held that public statements regarding a defendant's alleged conduct, especially those made by regulators, are sufficient to put plaintiffs on notice of their claims for the statute of limitations to run.[3]

---

[3] *Padilla v. Porsche Cars N. Am., Inc.*, Case No. 18-24988-CIV-MORENO, 2020 WL 1472301, at *6 (S.D. Fla. Mar. 26, 2020) (holding on motion to dismiss that

Plaintiffs state that the trigger date for the statute of limitations on their fraud and consumer protection claims "could not possibly be before August 2020, when NHTSA announced it was investigating 'toroidal shaped hybrid air bag inflators, both passenger and driver side,' and requested additional information from ARC 'to facilitate its investigation of the potential risk of deployment-related field rupture.'" (Pls.' ARC Br. at 19 (quoting Compl. ¶ 383).) However, this August 2020 request was but one in a long string of NHTSA public pronouncements regarding its investigation of ARC inflators dating back to 2015 that voiced similar concerns and would similarly affect Plaintiffs' statute of limitations trigger date. For example:

a.   **On July 13, 2015**, NHTSA's Office of Defects Investigation ("ODI") opened a Preliminary Evaluation ("PE") related to 2002 and 2004 driver-side inflators manufactured by ARC, stating that it opened the inquiry because "[t]he driver inflator may rupture during frontal airbag deployment resulting in metal

---

plaintiff could have discovered the NHTSA ODI Opening Resume regarding the alleged defect through reasonable diligence); *Bettles v. Toyota Motor Corp.*, 645 F. Supp. 3d 978, 984 (C.D. Cal. 2022) (granting motion to dismiss where plaintiff "charged with presumptive knowledge of information that he could have obtained from sources open to his investigation," including complaints published on NHTSA website); *Vee Bar, Ltd. v. N. Nat. Gas Co.*, No. 4:16-CV-015-DAE, 2016 U.S. Dist. LEXIS 96729, at *12 (W.D. Tex. Jul. 25, 2016) (partially granting motion to dismiss where defendant's FERC filings "were public documents and Plaintiffs could— through exercise of due diligence—have discovered" the alleged violation during the limitations period); *see also Nguyen v. Nissan N. Am., Inc.*, 487 F. Supp. 3d 845, 857 n.4 (N.D. Cal. 2020) (plaintiff may have been on inquiry notice of claims based on publications on NHTSA website).

fragments being propelled into the passenger compartment." *See* NHTSA PE15-027, Opening Resume, https://static.nhtsa.gov/odi/inv/2015/INOA-PE15027-7281.PDF.

   *b.*      NHTSA issued two formal information requests to ARC under PE 15-027—***one on July 17, 2015*** (https://static.nhtsa.gov/odi/inv/2015/INIR-PE15027-62381.pdf) and ***one on August 25, 2015*** (https://static.nhtsa.gov/odi/inv/2015/INIS-PE15027-62540.pdf) "to investigate allegations of air bag inflator ruptures involving driver air bag inflators manufactured by ARC."

   *c.*      ***On July 27, 2015***, NHTSA issued a standing general order ("SGO") under the same PE15-027 directing vehicle manufacturers (SGO 2015-01, https://static.nhtsa.gov/odi/inv/2015/INLM-EA15001-62639.pdf) and original equipment suppliers of airbag modules and inflators (SGO 2015-02, https://static.nhtsa.gov/odi/inv/2015/INLM-PE15027-62615.pdf) to report certain field incidents related to inflator ruptures.

   *d.*      ***On August 17, 2015***, NHTSA superseded SGO 2015-01 with SGO 2015-01A  (https://static.nhtsa.gov/odi/inv/2015/INLM-EA15001-62640.pdf)  and SGO 2015-02 with SGO 2015-02A (https://static.nhtsa.gov/odi/inv/2015/INLM-EA15001-62642.pdf), which required the identified inflator manufacturers (including ARC) to report certain information related to alleged field ruptures.

   *e.*      On ***August 4, 2016***, NHTSA upgraded its investigation inflators from a PE to an Engineering Analysis ("EA") and expanded the scope of the investigation

to "various models equipped with ARC air bag inflators." NHTSA No. EA 16-003, Opening Resume (https://static.nhtsa.gov/odi/inv/2016/INOA-EA16003-7740.PDF). NHTSA issued a formal information request under EA 16-003 on August 9, 2016 (https://static.nhtsa.gov/odi/inv/2016/INIM-EA16003-64858.pdf).

The ***August 18, 2020*** NHTSA information request noted in Plaintiffs' Opposition (Pls.' ARC Br. at 19) (https://static.nhtsa.gov/odi/inv/2016/INIM-EA16003-79932.pdf) was at least the tenth[4] such public statement by NHTSA over a five-year period specifically requesting information from ARC in connection with NHTSA's investigation of ruptures of ARC-manufactured inflators.

Each of the documents cited above was available on NHTSA's public website at the time and in the very same location as the August 18, 2020 document on which Plaintiffs' rely. Rather than reflecting "'some public knowledge somewhere in the world regarding an alleged wrong'" that Plaintiffs needed to "'scour the internet'" to find (Pls.' ARC Br. at 20 (quoting *In re Ford Motor Co. DPS6 Powershift Transmission Prods. Liab. Litig.*, No. ML 18-02814 AB (FFMx), 2019 WL 6998668, at *3 (C.D. Cal. Sept. 5, 2019)), these public pronouncements were by a federal regulator and available to Plaintiffs at the time they were made and of the type that other courts have held was sufficient to put the public on notice. *See supra*

---

[4] NHTSA also made numerous other public pronouncements regarding its investigation of ARC prior to its August 2020 information request.

at 9–10. The older NHTSA public statements are of the same type and in the same location as the August 18, 2020 statement on which Plaintiffs selectively choose to rely.

While ultimately unwarranted, these NHTSA publications going back to 2015 were sufficient to give Plaintiffs notice of their claims, and thus the running of the applicable statutes of limitations should not be delayed until 2020. Indeed, the August 9, 2016 Opening Resume for EA16-003 plainly stated that NHTSA was investigating "various models equipped with ARC air bag inflators" because "[t]he driver inflator may rupture during frontal air bag deployment," though the earlier pronouncements referenced above also clearly identified ARC airbag inflators as the subject of NHTSA's investigations. Given these early public statements, the latest possible statute of limitations trigger date for Plaintiffs' claims against ARC is the date Plaintiffs purchased or leased their vehicles, which means that many of Plaintiffs' claims against ARC are time barred. (ARC MTD at 16–19.)

## B.     Plaintiffs Fail To Adequately Allege Fraudulent Concealment.

Plaintiffs' reliance on decisions from the *Takata* matter does nothing to preserve their conclusory assertion that their untimely claims are saved by fraudulent concealment tolling. Plaintiffs fail to identify any affirmative statement or representation by ARC relating to airbag inflators and double down on a purely omissions-based theory of fraudulent concealment without establishing that ARC

owed Plaintiffs any duty to disclose. Indeed, omissions-based claims are still subject to Fed. R. Civ. P. 9(b), and Plaintiffs fail to allege with specificity the substance of the claimed omissions. *See Smith v. K-V Pharm. Co.*, No. 1:09-cv-1020-WSD, 2009 WL 10665762, at *4 (N.D. Ga. Sept. 24, 2009) (applying Fed. R. Civ. P. 9(b) to omissions-based fraudulent concealment claim).

The *Takata* litigation decisions are inapposite. In each, the plaintiffs had adequately alleged that the defendants owed them a duty to disclose based on partial representations. *In re Takata Airbag Prods. Liab. Litig.*, MDL No. 2599, 2017 WL 2406711, at *5 (S.D. Fla. Jun. 1, 2017) ("[B]ecause Plaintiffs allege that Takata made these incomplete representations, the Court finds that Plaintiffs sufficiently allege that Takata had a duty to disclose additional facts about the safety of its airbags."); *In re Takata Airbag Prods. Liab. Litig.*, 193 F. Supp. 3d 1324, 1337 (S.D. Fla. 2016) ("At this motion to dismiss stage, because Plaintiffs have alleged that Mazda made these incomplete statements, the Court finds Plaintiffs have sufficiently alleged Mazda had a duty to disclose additional facts…").

Plaintiffs do not (and cannot) argue that they alleged partial representations by ARC and, instead, incongruously claim that the absence of such allegations is irrelevant. (Pls.' ARC Br. at 21–22.) Plaintiffs do not advance any other theory to support their assertion that ARC owed them a duty to disclose, and therefore concede that there is no support for such a duty. Absent a duty to disclose, Plaintiffs cannot

14

establish fraudulent concealment tolling based on omissions alone. *Smith*, 2009 WL 10665762, at *4 (plaintiff failed to meet Rule 9(b) pleading standards because she did "not articulate[] any details regarding the alleged fraudulent omissions" nor did she "allege facts supporting her claim that Defendants had a duty to disclose the information she alleges was concealed").

## IV.   Plaintiff's Claims Against ARC Should Be Dismissed For The Reasons Set Forth In The Other Defendants' Motions To Dismiss.

The Defendants endeavored to consolidate their arguments where appropriate to avoid undue repetition. For that reason, ARC incorporated by reference certain arguments by other Defendants. ARC also hereby incorporates by reference those Defendants' reply briefs, which demonstrate that Plaintiffs' claims against ARC are also subject to dismissal for the reasons set forth in the Supplier Defendants' Reply Brief at Sections II, III, IV, V, and VI and the OEM Defendants' Reply Brief at Sections I, II, V, VII, and VIII.

## CONCLUSION

For the reasons stated above, the Court should dismiss with prejudice all cases identified in footnote 3 of ARC's Opening Brief for lack of personal jurisdiction over ARC, dismiss with prejudice each of Plaintiffs' claims identified in Section IV of ARC's Opening Brief as time-barred, and dismiss the claims listed in Section V of ARC's Opening Brief for the reasons set forth in co-defendants' respective Motions to Dismiss.

15

Dated: February 16, 2024

**FOLEY & LARDNER LLP**

/s/ *Michael D. Leffel*

Michael D. Leffel
150 East Gilman Street, Suite 5000
Madison, WI 53703
Telephone: (608) 257-5035
Facsimile: (608) 258-4258
mleffel@foley.com

Jeffrey A. Soble
Lauren M. Loew
321 North Clark, Suite 3000
Chicago, IL 60654
Telephone: (312) 832-4500
Facsimile: (312) 832-4700
jsoble@foley.com
lloew@foley.com

John J. Atallah
Kendall E. Waters
555 South Flower Street, Suite 3500
Los Angeles, CA 90071
Telephone: (213) 972-4500
Facsimile: (213) 486-0065
jatallah@foley.com
kwaters@foley.com

Counsel for Defendant ARC Automotive, Inc.

## CERTIFICATE OF COMPLIANCE

Pursuant to Local Rule 7.1(D), the undersigned certifies that the foregoing complies with the font and point selections permitted by Local Rule 5.1. This motion was prepared on a computer using the Times New Roman font (14 point).

*/s/ Michael D. Leffel*
Michael D. Leffel

## CERTIFICATE OF SERVICE

I certify that on February 16, 2024, a copy of the foregoing ARC's Reply Memorandum of Law In Support of its Motion to Dismiss Plaintiffs' Corrected Consolidated Class Action Complaint and Joinder of Defendants' Motions To Dismiss, was served electronically through the Court's electronic filing system upon all parties appearing on the court's ECF service list.

*/s/ Michael D. Leffel*
Michael D. Leffel
