# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF GEORGIA
# ATLANTA DIVISION

|  |  |
|---|---|
| IN RE: ARC AIRBAG INFLATORS PRODUCT LIABILITY LITIGATION | MDL No. 3051 |
|  | Case No. 1:22-md-03051-ELR |
|  | District Judge Eleanor L. Ross |

## TIER 1 SUPPLIERS' REPLY BRIEF IN SUPPORT OF THEIR MOTION TO DISMISS THE CONSOLIDATED CLASS ACTION COMPLAINT

## <u>TABLE OF CONTENTS</u>

**Page**

INTRODUCTION ..................................................................................1

ARGUMENT .......................................................................................1

I.    The CAC Is an Improper Shotgun Pleading .........................................1

II.   Plaintiffs Lack Article III Standing to Sue the Tier 1 Suppliers ...........4

III.  The CAC Does Not Satisfy Rule 9(b).................................................5

IV.   Plaintiffs Fail to Allege Knowledge.....................................................9

V.    The Tier 1 Suppliers Owe No Duty to Plaintiffs ...............................10

    A.   No Duty Exists for Plaintiffs' Common Law Claims...............12

    B.   Plaintiffs' Statutory Consumer Fraud Claims Also Fail..........16

    C.   Other Statutory Claims Fail for Varying Reasons...................18

VI.   Plaintiffs Failed to Provide Pre-suit Notice .......................................19

CONCLUSION ....................................................................................20

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Ambrosia Coal & Construction Co. v. Pages Morales*,
    482 F.3d 1309 (11th Cir. 2007) ...................................................................6, 7

*Anderson v. Dist. Bd. of Trs. of Cent. Fla. Cmty. Coll.*,
    77 F.3d 364 (11th Cir. 1996) ...........................................................................4

*Antonyan v. Ford Motor Co.*,
    2022 WL 1299964 (C.D. Cal. Mar. 30, 2022)...............................................17

*Bunge Corp. v. GATX Corp.*,
    557 So. 2d 1376 (La. 1990) ...........................................................................14

*Callen v. Daimler AG*,
    2020 WL 10090879 (N.D. Ga. June 17, 2020) ..............................................13

*Chapman v. Gen. Motors LLC*,
    531 F. Supp. 3d 1257 (E.D. Mich. 2021) ......................................................14

*Chen v. Wow Rest. TH LLC*,
    2023 WL 3092618 (M.D. Fla. Apr. 26, 2023)................................................20

*In re Chrysler-Dodge-Jeep EcoDiesel Marketing, Sales Practices &
    Prods. Liab. Litig.*,
    295 F. Supp. 3d 927 (N.D. Cal. 2018)......................................................*passim*

*Citizens Bank v. FDIC*,
    639 F. Supp. 758 (W.D. Okla. 1986)..............................................................14

*U.S. ex rel. Clausen v. Lab. Corp. of Am.*,
    290 F.3d 1301 (11th Cir. 2002) .......................................................................6

*Cohen v. Blessing*,
    192 S.E.2d 204 (S.C. 1972) ...........................................................................14

*Cohen v. Subaru of Am., Inc.*,
    2022 WL 714795 (D.N.J. 2022) .....................................................................15

*Cyr v. Ford Motor Co.*,
   2019 WL 7206100 (Mich. App. Dec. 26, 2019)....................................................19

*David v. Am. Suzuki Motor Corp.*,
   629 F. Supp. 2d 1309 (S.D. Fla. 2009) ..................................................................20

*Divis v. Gen. Motors, LLC*,
   2019 WL 4735405 (E.D. Mich. Sept. 27, 2019) ...................................................18

*Douse v. Bos. Sci. Corp.*,
   314 F. Supp. 3d 1251 (M.D. Fla. 2018).................................................................7

*In re E. I. du Pont de Nemours & Co. C-8 Pers. Inj. Litig.*,
   87 F.4th 315 (6th Cir. 2023) ...........................................................................4, 5

*Elfaridi v. Mercedes-Benz USA*,
   2018 WL 4071155 (E.D. Mo. Aug. 27, 2018)........................................................10

*Falls Church Grp., Ltd. v. Tyler, Cooper & Alcorn, LLP*,
   874 A.2d 266 (Conn. Ct. App. 2005) .....................................................................15

*In re Galectin Therap., Inc. Sec. Litig.*,
   843 F.3d 1257 (11th Cir. 2016) ..............................................................................6

*Gant v. Ford Motor Co.*,
   517 F. Supp. 3d 707 (E.D. Mich. 2021) ..........................................................18, 19

*Garrett-Alfred v. Facebook, Inc.*,
   540 F. Supp. 3d 1129 (M.D. Fla. 2021)..................................................................7

*In re GM Ignition Switch Litig.*,
   257 F. Supp. 3d 372 (S.D.N.Y. 2017) ...................................................................16

*Gnagey Gas & Oil Co. v. Pa. Underg. Storage Tank Indem. Fund*,
   82 A.3d 485 (Pa. Commw. Ct. 2013) .....................................................................16

*Gregorio v. Ford Motor Co.*,
   522 F. Supp. 3d 264 (E.D. Mich. 2021) .................................................................18

*Hill v. Morehouse Medical Assoc.*,
   2003 WL 22019936 (11th Cir. 2003), OEM Opp. 25-26 ......................................6

*In re Gen. Motors Air Conditioning Mktg. & Sales Pracs. Litig.*,
    Opp. 22 n.10 (citing 406 F. Supp. 3d 618, 638 (E.D. Mich. 2019).....................12

*Ingaharro v. Blanchette*,
    440 A.2d 445 (N.H. 1982) .........................................................................14

*Intelect Corp. v. Cellco P'ship*,
    160 F. Supp. 3d 157 (D.D.C. 2016)............................................................14

*Jackson v. Bank of Am., N.A.*,
    898 F.3d 1348 (11th Cir. 2018) ...................................................................1

*Jackson v. Wellington & Assocs., LLC*,
    389 F. Supp. 3d 1199 (N.D. Ga. 2019) (Ross, J.)..................................12, 17, 19

*Johnson v. Belcher*,
    564 F. Supp. 3d 1334 (N.D. Ga. 2021).......................................................2, 3

*Lincoln Life & Annuity Co. of N.Y. v. Bernstein*,
    2009 WL 1912468 (N.Y. 2009).................................................................18

*Liss v. Lewiston-Richards, Inc.*,
    732 N.W.2d 514 (Mich. 2007)..................................................................18

*Martinez v. Lewis*
    969 P.2d 213 (Colo. 1998)........................................................................16

*Matanky v. General Motors LLC*,
    370 F. Supp. 3d (E.D. Mich. 2019).............................................................14

*McCabe v. Daimler AG*
    948 F. Supp. 2d 1347, 1367 (N.D. Ga. 2013)..................................................7

*McCabe v. Daimler AG*,
    160 F. Supp. 3d 1337 (N.D. Ga. 2015)....................................................11, 13

*Monopoli v. Mercedes-Benz USA*,
    2022 WL 409484 (N.D. Ga. Feb. 10, 2022)..................................................13

*Moore v. Mylan, Inc.*,
    840 F. Supp. 2d 1337 (N.D. Ga. 2012)..........................................................7

*Morris v. Osmose Wood Preserving*,
  667 A.2d 624 (Md. 1995) ..................................................................................17, 18

*Morrow v. Bank of Am.*,
  324 P.3d 1167 (Mont. 2014)................................................................................14

*Ollerman v. O'Rourke Co.*,
  288 N.W.2d 95 (Wis. 1980)................................................................................14

*Pack & Process, Inc. v. Celotex Corp.*,
  503 A.2d 646 (Del. Super. Ct. 1985)...................................................................18

*Packrite v. Graphic Packag. Int'l*,
  2020 WL 7060395 (M.D.N.C. Dec. 2, 2020)......................................................16

*Park 80 Hotels, LLC v. Holiday Hosp. Franchising, LLC*,
  2023 WL 2445437 (N.D. Ga. Feb. 16, 2023) (Ross, J.)........................................4

*Parrish v. Bentonville Sch. Dist.*,
  2017 WL 507231 (W.D. Ark. Feb.7, 2017) ........................................................15

*Pinon v. Daimler AG*,
  2019 WL 11648560 (N.D. Ga. Nov. 4, 2019) ....................................................13

*In re Platinum-Beechwood Litig.*,
  427 F. Supp. 3d 395 (S.D.N.Y 2019) ...................................................................9

*In re Porsche Cars N.A., Inc.*,
  880 F. Supp. 2d 801 (S.D. Ohio 2012) ................................................................18

*Quality Auto Painting Ctr. of Roselle, Inc. v. State Farm Indem. Co.*,
  917 F.3d 1249 (11th Cir. 2019) .............................................................................3

*Raynaldo v. Am. Honda Motor Co.*,
  2022 WL 4358096 (N.D. Cal. Sept. 20, 2022)....................................................15

*Rhee v. Highland Dev. Corp.*,
  958 A.2d 385 (Md. Ct. Spec. App. 2008)............................................................14

*Ridge Seneca Plaza v. BP Prods. N. Am.*,
  820 F. Supp. 2d 461 (W.D.N.Y. 2011)................................................................16

*Roe v. Ford Motor Co.*,
  2021 WL 2529825 (E.D. Mich. June 21, 2021) ...................................................14

*Sayres v. Fuentes*,
  2021 WL 8315238 (Va. Cir. Ct. Apr. 9, 2021)...................................................16

*Sloan v. Gen. Motors LLC*,
  287 F. Supp. 3d 840 (N.D. Cal. 2018)...................................................8

*Sowards v. Rathbun*,
  8 P.3d 1245 (Idaho 2000) ...................................................14

*Spindler v. Gen. Motors, LLC*,
  616 F. Supp. 3d 943 (N.D. Cal. 2022)...................................................20

*Stevens v. Osuna*,
  877 F.3d 1293 (11th Cir. 2017) ...................................................5

*Sutton v. David Stanley Chevrolet, Inc.*,
  475 P.3d 847 (Okla. 2020)...................................................14

*In re Takata Airbag Prod. Liab. Litig.*,
  193 F. Supp. 3d 1324 (S.D. Fla. 2016)...................................................7, 8, 11

*Tavilla v. Cephalon, Inc.*,
  870 F. Supp. 2d 759 (D. Ariz. 2012) ...................................................16

*Taylor v. Am. Honda Motor Co.*,
  555 F. Supp. 59 (M.D. Fla. 1982)...................................................11

*In re Toyota Motor Corp. Unintended Acc'n Mktg., Sales Practices, &*
  *Prods. Liab. Litig.*,
  754 F. Supp. 2d 1145 (C.D. Cal. 2010) ...................................................15

*Vinci v. V.F. Corp.*,
  2018 WL 1027429 (D. Vt. Feb. 21, 2018)...................................................14, 16

*In re Volkswagen Timing and Chain Prod. Liab. Litig.*,
  2017 WL 1902160 (D.N.J. May 8, 2017) ...................................................13, 14

*W. Coast Roofing & Waterproofing, Inc. v. Johns Manville, Inc.*,
  287 F. App'x 81 (11th Cir. 2008) ...................................................2, 6

*Weiland v. Palm Beach Cty. Sheriff's Office*,
792 F.3d 1313 (11th Cir. 2015) ..........................................................3, 4

*Wu v. Del. Tech. Cmty. Coll.*,
2022 WL 122140 (Del. Super. Ct. Jan. 13, 2022) ..............................15

*Young v. Cmty. Health Sys., Inc.*,
2023 WL 6121795 (11th Cir. Sept. 19, 2023) ....................................12

**Statutes**

Conn. Gen. Stat. § 42-110c(a) ..................................................................19

**Other Authorities**

49 C.F.R. § 577.1, *et seq.*.........................................................................10

Fed. R. Civ. P. 10 .......................................................................................2

Fed. R. Civ. P. 8 ..................................................................................2, 4, 6

Fed. R. Civ. P. 9(b) ...........................................................................5, 6, 8

## INTRODUCTION

Plaintiffs' Consolidated Class Action Complaint ("CAC") lacks *factual* allegations specific to any Tier 1 Supplier supporting its sweeping accusations of fraud. Plaintiffs' Opposition highlights these deficiencies and cannot save Plaintiffs' claims. For example, Plaintiffs do not dispute that they fail to plead allegations specific to any Tier 1 Supplier, constructing an impermissible shotgun pleading that will create a "garbage in, garbage out" problem polluting everything that follows. *Jackson v. Bank of Am., N.A.*, 898 F.3d 1348, 1357 (11th Cir. 2018). And Plaintiffs further concede that as intermediaries in the automotive industry, the Tier 1 Suppliers never sold or advertised their products to Plaintiffs and they did not manufacture the airbag inflators at issue in this litigation.

Tellingly, Plaintiffs cite *no* authority finding that intermediaries in a similar position as the Tier 1 Suppliers owe a legal duty to end-consumers and no such duty exists under the state laws cited in the CAC. For this reason (and other reasons discussed herein, and set forth in the OEM's and ARC's briefs), Plaintiffs cannot state a cognizable claim against the Tier 1 Suppliers, and Plaintiffs' claims should be dismissed with prejudice.

## ARGUMENT

### I.    The CAC Is an Improper Shotgun Pleading

Plaintiffs concede that the CAC fails to make "specific allegations with respect to each defendant," and instead asserts "generalized allegations 'lumping'

multiple defendants together." *W. Coast Roofing & Waterproofing, Inc. v. Johns Manville, Inc.*, 287 F. App'x 81, 86 (11th Cir. 2008) (holding that such "insufficient" complaints should be dismissed). Plaintiffs try to justify their shotgun pleading by arguing that the Tier 1 Suppliers are "similarly situated" in the supply chain, and so must be "similarly situated" in their misconduct. Opp. 6. (Therefore, according to Plaintiffs, specific allegations are not necessary.) This conclusion is illogical. Plaintiffs cite nothing to support that the Tier 1 Suppliers (who are *competitors*) can be legally treated as joint actors just because they all sell airbag modules. *See Johnson v. Belcher*, 564 F. Supp. 3d 1334, 1342 (N.D. Ga. 2021) (dismissing claims against all defendants under FRCP 8 and 10 because plaintiffs "fail[ed] to specify which [defendant] committed which improper action").

Nor do the facts support Plaintiffs' theory. The Tier 1 Suppliers are four distinct corporate families that used different ARC Inflators at different time periods, sold different airbag modules to different OEMs, and had different interactions with ARC, the OEMs, and NHTSA. The CAC does not allege otherwise. For example, none of the field or testing ruptures of ARC Inflators involved airbag modules manufactured by the Autoliv Defendants. *See* CAC ¶¶ 339-366. And certain Tier 1 Suppliers, including the ZF, Autoliv, and Toyoda Gosei Defendants, did not participate in the "ARC Joint Task Force." *See* Tier 1 Br. 10 n.5.

Moreover, Plaintiffs admit that the CAC does not state which Tier 1 Supplier

each plaintiff is suing, Opp. 10, in violation of Eleventh Circuit law. *Weiland v. Palm Beach Cty. Sheriff's Office*, 792 F.3d 1313, 1323 (11th Cir. 2015) (finding it improper to assert claims "against multiple defendants without specifying" "which of the defendants the claim is brought against"). Instead, Plaintiffs impermissibly attempt to shift the burden to the Tier 1 Suppliers to "identify . . . the relevant Defendant for each Plaintiff." Opp. 10. But telling Defendants "to go search for crucial details . . . is not a substitute for a proper pleading and does not cure Plaintiffs' failure to tie any factual allegations to any particular Defendant," nor does it "give the defendant fair notice of what the claim is[.]" *Johnson*, 564 F. Supp. 3d at 1339-40, 1342. Plaintiffs cite no cases excusing this fatal pleading deficiency.[1]

Further, Plaintiffs concede that the CAC incorporates allegations inapplicable to the Tier 1 Suppliers into each count alleged against them, but assert that this Court should ignore their "technical[]" violation of Eleventh Circuit law prohibiting such pleadings. Opp. 7. Plaintiffs argue circularly that the CAC provides adequate notice because the Tier 1 Suppliers were able to file a motion to dismiss. But they fail to acknowledge that because the CAC does not clearly identify which Plaintiffs (from

---

[1] Most cases Plaintiffs cite involve only one injured party suing multiple defendants, so it is obvious which plaintiff is suing them: the only one. Plaintiffs cite only one multi-plaintiff case, *Quality Auto Painting Ctr. of Roselle, Inc. v. State Farm Indem. Co.*, 917 F.3d 1249 (11th Cir. 2019); there, all plaintiffs sued all defendants. *Id.* at 1275. Here, Plaintiffs concede that *no* Plaintiff is suing *all* Tier 1 Suppliers, Opp. 9, because no Plaintiff has standing to sue all of them, *see* § II, *infra*.

which states) are suing which of the Tier 1 Suppliers, all of the Tier 1 Suppliers must explain how *every* claim fails for *every* Plaintiff across *every* proposed class under *every* state's laws. This is precisely what the controlling law aims to avoid, because it is wasteful and unnecessary and impedes the swift resolution of this case. *Anderson v. Dist. Bd. of Trs. of Cent. Fla. Cmty. Coll.*, 77 F.3d 364, 367 (11th Cir. 1996).[2] Plaintiffs cannot ignore controlling Eleventh Circuit precedent against shotgun pleadings. The Court should dismiss the CAC.[3]

## II. Plaintiffs Lack Article III Standing to Sue the Tier 1 Suppliers

"[S]tanding is not dispensed in gross . . . [A] plaintiff cannot sue [multiple] defendants—by lumping them all together in his allegations—when the more particular facts would allow him to proceed against only one. (Much less none.)." *In re E. I. du Pont de Nemours & Co. C-8 Pers. Inj. Litig.,* 87 F.4th 315, 320 (6th Cir. 2023). To establish standing, each Plaintiff must allege an injury fairly traceable to

---

[2] *Park 80 Hotels, LLC v. Holiday Hosp. Franchising, LLC*, 2023 WL 2445437 (N.D. Ga. Feb. 16, 2023) (Ross, J.) does not help Plaintiffs. There, the plaintiffs' complaint "clearly identif[ied] which causes of action they asserted against which Defendants," by identifying each defendant by name in the cause of action and specified "the factual underpinning of each substantive action" alleged against each defendant by name. *Id.* at *3; *see also Park 80 Hotels*, No. 1:21-cv-4650-ELR, Compl. [Dkt. No. 65] ¶¶ 215, 218, 224, 233. That is not the case here.

[3] Plaintiffs suggest that Defendants should have moved for a more definite statement. Opp. 8. That is wrong. Shotgun pleadings violate Rule 8. *Weiland*, 792 F.3d at 1318. Therefore, while shotgun pleadings *may* be challenged in a motion for a more definite statement, the Eleventh Circuit has held that dismissal is also a proper remedy. *Id*. at n.10.

a particular Tier 1 Supplier. *See Stevens v. Osuna*, 877 F.3d 1293, 1311 (11th Cir. 2017). Even if this Court were to find that some of the Plaintiffs meet this actual injury requirement—which the Tier 1 Suppliers contest—each "plaintiff must tie his [or her] injury to [a particular] defendant."[4] *C-8 Pers. Inj. Litig.*, 87 F.4th at 320.

Plaintiffs do not dispute that the CAC fails to identify the Tier 1 Supplier for each Plaintiff's vehicle. Opp. 9-10. Instead, they ask this Court to shift the burden to the Tier 1 Suppliers, claiming it is "easy" for the Tier 1 Suppliers to provide that information. *Id.* at 10. But Plaintiffs do not cite a single case that supports shifting this burden. Suffering an alleged injury does not give a plaintiff the right to sue a whole industry, and then require that industry (and the presiding court) to determine which defendant may be liable. *See C-8 Pers. Inj. Litig.*, 87 F.4th at 320. A complaint should not set forth a puzzle for defendants and this Court to jigsaw together. Plaintiffs have the burden of establishing Article III standing with respect to each Tier 1 Supplier and they have failed to do so. *See id.*

## III.   The CAC Does Not Satisfy Rule 9(b)

Plaintiffs concede that Rule 9(b) applies to all of their claims against the Tier 1 Suppliers, but seem to seek a more lenient standard because those claims are omissions-based. Opp. 11. The Eleventh Circuit has not adopted a lower standard of

---

[4] For example, the CAC does not name any particular vehicle that contained an airbag module manufactured by the Autoliv Defendants, let alone allege a plaintiff who purchased such a vehicle.

particularity for omissions. Rule 9(b) requires pleadings to set forth "***precisely what***
statements or ***omissions were made in which documents*** or oral representations,"
and "the ***time and place*** of each such statement and the person responsible for
making ***(or, in the case of omissions, not making)*** them." *In re Galectin Therap.,
Inc. Sec. Litig.*, 843 F.3d 1257, 1269 (11th Cir. 2016) (emphasis added).[5]

Plaintiffs' conclusory allegations and shotgun pleading fail to satisfy Rule 8,
let alone Rule 9(b). Plaintiffs admit that they allege the "who" of the fraud as "the
Airbag Module Defendants." Opp. 11-12. But under Rule 9(b), the complaint must
"contain specific allegations with respect to ***each*** defendant." *W. Coast Roofing &
Waterproofing*, 287 F. App'x at 88 (emphasis added). Plaintiffs cannot "lump[]
together all of the defendants in their allegations of fraud." *Ambrosia Coal &
Construction Co. v. Pages Morales*, 482 F.3d 1309, 1317 (11th Cir. 2007). The 80+
paragraphs of the CAC that Plaintiffs claim satisfy Rule 9(b) fail to allege any
specific fraudulent conduct by any specific Tier 1 Supplier. *See* Opp. 12 (citing CAC
¶¶ 30-77, 283-307, 376-82, 414-21). The CAC is "devoid of specific allegations with
respect to each defendant" and must be dismissed. *Ambrosia Coal*, 482 F.3d at 1317.

---

[5] Plaintiffs' reliance on the unpublished decision *Hill v. Morehouse Medical Assoc.*,
2003 WL 22019936 (11th Cir. 2003), OEM Opp. 25-26, is misplaced. The Eleventh
Circuit never held that a lower standard applies to omission-based claims, but simply
mentioned in *dicta* that a lower standard *may* apply under certain circumstances, *see
id.* at *3. It has refused to apply a lower standard under those very circumstances.
*See U.S. ex rel. Clausen v. Lab. Corp. of Am.*, 290 F.3d 1301 (11th Cir. 2002).

Plaintiffs also fail to allege the "what" and "when" with particularity. They do not cite any "***specific*** concealed information" that the Tier 1 Suppliers allegedly failed to disclose. *See Douse v. Bos. Sci. Corp.*, 314 F. Supp. 3d 1251, 1263 (M.D. Fla. 2018) (emphasis added). And they do not plead with particularity when any Tier 1 Supplier (i) communicated to them, and (ii) omitted information in its communication. *Moore v. Mylan, Inc.*, 840 F. Supp. 2d 1337, 1350 (N.D. Ga. 2012).[6]

Plaintiffs' failure to identify the "where" of the alleged omission is particularly problematic given the role of the Tier 1 Suppliers in the supply chain: Tier 1 Suppliers do not advertise to or communicate with consumers. Plaintiffs vaguely characterize the "where" as "channels in which [the Tier 1 Suppliers] could have disclosed" the alleged defect, Opp. 12, but Plaintiffs must identify what those channels are: they "must plead with particularity the omissions that were made ***in which documents or oral representations***." *Garrett-Alfred v. Facebook, Inc.*, 540 F. Supp. 3d 1129, 1138 (M.D. Fla. 2021) (emphasis added). Plaintiffs' own caselaw—which mostly involves omissions claims against OEMs—supports this. *See, e.g., In re Takata Airbag Prod. Liab. Litig.*, 193 F. Supp. 3d 1324, 1337 (S.D. Fla. 2016) (plaintiffs cited specific statements from Mazda's websites and brochures

---

[6] Plaintiffs' reliance on *McCabe v. Daimler AG* is misplaced; there, the plaintiffs identified a precise time of alleged communication: the time of sale. *See* 948 F. Supp. 2d 1347, 1367 (N.D. Ga. 2013). Plaintiffs here do not allege that any Tier 1 Supplier communicated with them at the time of sale (nor could they, because they did not interact with each other) or any other time.

to show Mazda made incomplete representations about vehicle safety).

The only "channel" Plaintiffs allege they were exposed to involves unspecified "informational materials" from OEMs (CAC ¶ 377). Plaintiffs do not and cannot allege the Tier 1 Suppliers created or disseminated any information to them. Plaintiffs claim they need not "allege these Defendants communicated with them or wrote the vehicle brochures," Opp. 13, relying on *Takata*, 2017 WL 2406711 (S.D. Fla. June 1, 2017). But that opinion concerned Takata's duty to disclose, not Rule 9(b).[7] Moreover, Plaintiffs' own caselaw instructs that "[t]he proper focus in an omission case" is "what channels of information customers depend upon and whether the defendant could have taken action to disseminate information through those channels." *Sloan v. Gen. Motors LLC*, 287 F. Supp. 3d 840, 875 (N.D. Cal. 2018). Plaintiffs allege no such channel of information between the Tier 1 Suppliers and Plaintiffs. And they cite nothing to support their apparent view that such a channel should essentially be assumed for an intermediary in the supply chain.

---

[7] And as discussed below, its holding on duty is distinguishable as Takata made the allegedly defective product, while the Tier 1 Suppliers here did not. *See infra* § V. Plaintiffs' only other case involving a claim against a supplier—*In re Chrysler-Dodge-Jeep EcoDiesel Marketing, Sales Practices & Prods. Liab. Litig.,* 295 F. Supp. 3d 927 (N.D. Cal. 2018)—is likewise distinguishable because none of the defendants were intermediaries in the supply chain like the Tier 1 Suppliers.

### IV.   Plaintiffs Fail to Allege Knowledge

Plaintiffs concede that their claims require them to plausibly allege the Tier 1 Suppliers were aware of the defect before Plaintiffs purchased their vehicles. Opp. 15. For the reasons discussed in the OEM's Reply Brief § V.B, the CAC fails to do so. Indeed, Plaintiffs' failure to plead knowledge of the Tier 1 Suppliers, either pre-sale or at any relevant time, is even more egregious. Plaintiffs point to allegations that (1) the Tier 1 Suppliers worked closely with ARC to design and test the inflators, (2) they required ARC to conduct specified testing and evaluations of the inflators, and (3) ARC shared its DFMEA analysis and testing results with the Tier 1 Suppliers. Opp. 15-16 (citing CAC ¶¶ 9-10, 15-16, 264-66). Notably absent in these allegations, however, is any indication that ARC ever informed any Tier 1 Supplier of any defect or potential defect in the inflators. Indeed, outside of the foregoing routine testing procedures, the CAC alleges ARC did *not* "notify its customers," *i.e.*, the Tier 1 Suppliers, "of the danger related to their inflators."  CAC ¶ 15.

Moreover, for the Tier 1 Suppliers, Plaintiffs allege knowledge collectively, citing each purported source of information about the alleged defect as evidence of *all* Tier 1 Suppliers' knowledge. *See, e.g.*, *id*. ¶¶ 263-69. That is not enough. *See In re Platinum-Beechwood Litig.*, 427 F. Supp. 3d 395, 453-54 (S.D.N.Y 2019) (dismissing claim where allegations of knowledge relied "exclusively" on group pleading). For example, Plaintiffs do not allege any specific ruptures during ARC's

internal product testing that any specific Tier 1 Supplier was "made aware of" by ARC. CAC ¶ 10. And a few isolated incidents of ruptures in the field do not plausibly suggest *any* Tier 1 Supplier had knowledge of a systemic defect affecting millions of inflators manufactured over almost two decades, let alone that they *all* had such knowledge. *See Elfaridi v. Mercedes-Benz USA*, 2018 WL 4071155, at *5 (E.D. Mo. Aug. 27, 2018) ("Twelve monitored complaints . . . are insufficient to infer defendants' knowledge of a defect affecting thousands of vehicles.").

## V.   The Tier 1 Suppliers Owe No Duty to Plaintiffs

It is undisputed that the Tier 1 Suppliers had no relationship and, in fact, had no contact at all, with Plaintiffs. *See, e.g.*, CAC ¶ 263 (Tier 1 Suppliers' roles limited to supplying OEMs with completed airbag modules containing ARC Inflators); Opp. 21 (admitting that Tier 1 Suppliers "were not Plaintiffs' fiduciaries and did not transact with them"). Most states do not require a defendant to speak unless a plaintiff pleads a confidential, fiduciary, or transactional relationship, or a defendant affirmatively misrepresented material facts. *See* Tier 1 Br. 27-30; *id.*, Ex. 2. Even in states that might find a duty to disclose under "special" or "peculiar" circumstances, the case law foundationally relies on the existence of *some* relationship between the parties.[8] As Plaintiffs concede, they have failed to plead *any* relationship or

---

[8] The law recognizes that any duty to disclose defects to consumers most appropriately lies with the party with the practical ability to effect the disclosure, not a component parts manufacturer like the Tier 1 Suppliers. *See* 49 C.F.R. § 577.1, *et*

interaction with the Tier 1 Suppliers.

Plaintiffs rely heavily on *Takata* and *EcoDiesel*. These cases involved claims against the manufacturer of the allegedly defective component product, who (as the product's manufacturer) allegedly possessed "*exclusive* knowledge" of dangers and risks, and, moreover, "made incomplete representations" about the product. *See Takata*, 2017 WL 2406711, at *5; *EcoDiesel*, 295 F. Supp. 3d at 1012. Not so here. *Takata* does not support Plaintiffs' duty argument as to the Tier 1 Suppliers, because they did not manufacture the allegedly defective ARC Inflators.[9]

Without analogous cases recognizing a duty, Plaintiffs effectively ask this Court to create new law out of whole cloth for all 50 states and D.C. The Court should reject this invitation. Because Plaintiffs do not and cannot allege a duty, the Court should dismiss each claim against the Tier 1 Suppliers with prejudice.

---

*seq.*; *McCabe v. Daimler AG*, 160 F. Supp. 3d 1337, 1358 (N.D. Ga. 2015) (rejecting argument that "[seller defendant] owed an obligation to the general public" to disclose defects); *Taylor v. Am. Honda Motor Co.*, 555 F. Supp. 59, 64 (M.D. Fla. 1982) (dismissing complaint that failed to allege any sales transaction between plaintiff and manufacturer: "No Florida case has gone so far as to impose upon merchants a duty to disclose information to the public at large, and this Court declines to do so today.").

[9] *EcoDiesel* is even further afield. There, plaintiffs brought fraudulent concealment claims against the manufacturer of software designed to modify engine performance during emissions tests (an emissions test "defeat device"). 295 F. Supp. 3d at 943. The court reasoned that the defeat device manufacturer had a duty to disclose because its device was *inherently deceptive*. *Id*. at 1012 (it "purposeful[ly] manipulat[ed]" vehicles' systems to "achieve the deceptive result"). The CAC makes no such allegations against the Tier 1 Suppliers (nor could it), as neither the airbag inflators nor airbag modules are inherently deceptive.

### A.    No Duty Exists for Plaintiffs' Common Law Claims

Plaintiffs offer three exceptions to "the general rule that a duty to disclose does not arise absent a confidential relationship or direct interaction." Opp. 22. None saves Plaintiffs' claims.[10]

**No "Critical Safety" Exception.** It is immaterial whether Plaintiffs have adequately pled that the alleged defect "created safety concerns" (they have not) because the CAC fails to allege *any* relationship between the Tier 1 Suppliers and Plaintiffs, as required under the laws of the states Plaintiffs cite for a duty to disclose to exist. *See* Opp. 22 & n.10. For example, the court in *In re Gen. Motors Air Conditioning Mktg. & Sales Pracs. Litig.*, recognized that a "buyer-seller relationship[]" is necessary to sustain a fraudulent concealment claim under Florida law. *See* Opp. 22 n.10 (citing 406 F. Supp. 3d 618, 638 (E.D. Mich. 2019)).[11] And

---

[10] Plaintiffs only cite caselaw regarding: (a) "critical safety" exception for 9 states (AL, FL, GA, IL, OH, PA, SC, TX, VA); (b) "superior knowledge" exception for 25 states (AL, AR, CT, DC, FL, ID, IN, LA, MA, ME, MD, MI, MT, NC, NJ, NH, NV, NY, OH, OK, SC, TX, WI, VT, VA); and (c) "active concealment" exception for 10 states (AR, CT, DE, IL, NY, NC, OR, PA, VT, VA). Thus, even if this Court accepts that one of these exceptions applies, the Court should dismiss fraud claims brought under the laws of states not addressed. *See Jackson v. Wellington & Assocs., LLC*, 389 F. Supp. 3d 1199, 1208 n.7 (N.D. Ga. 2019) (Ross, J.) ("[F]ailure to address or respond to [an] argument . . . constitutes abandonment of that claim."). In total, due to overlap, Plaintiffs fail to assert *any* applicable exception for 21 states (AK, AZ, CA, CO, HI, IA, KS, KY, MN, MS, MO, NE, NM, ND, RI, SD, TN, UT, WA, WV, WY). These claims should be dismissed with prejudice.

[11] *See also Young v. Cmty. Health Sys., Inc.*, 2023 WL 6121795, at *4 (11th Cir. Sept. 19, 2023) (duty to disclose under FL law only "arises when one party has

under Georgia law, "[t]he cases finding a duty to disclose" "involve[] some sort of a relationship between the parties"; where no such relationship exists, no duty to disclose arises even between a plaintiff and an OEM (let alone a further removed intermediary like the Tier 1 Suppliers). *See McCabe*, 160 F. Supp. 3d at 1352.[12] Tellingly, Plaintiffs fail to cite a single case against an automotive component parts manufacturer recognizing this exception.[13]

**No "Superior Knowledge" Exception.** As discussed above, Plaintiffs fail to plead the Tier 1 Suppliers' knowledge of the alleged defect, so this exception does not apply. *See supra* § IV. Moreover, Plaintiffs' caselaw shows that absent a relationship with a plaintiff, even allegations of "superior knowledge" (which Plaintiffs fail to plead), do not give rise to a duty to disclose. For 14 states (AL, AR, CT, FL, MA, ME, MI, NC, NJ, NV, NY, SC, TX, and VA), Plaintiffs cite only cases

---

information which the other party has a right to know because there is a fiduciary or other relation of trust or confidence between the two parties").

[12] Other states Plaintiffs contend recognize the "critical safety" exception find that even OEMs do not have a duty to disclose under circumstances where the OEM and plaintiffs lack a relationship. *See Monopoli v. Mercedes-Benz USA*, 2022 WL 409484, at *11 (N.D. Ga. Feb. 10, 2022) (citing *Callen v. Daimler AG*, 2020 WL 10090879, at *18 (N.D. Ga. June 17, 2020) (NC, OH, VA, and PA law); *Pinon v. Daimler AG*, 2019 WL 11648560, at *16 (N.D. Ga. Nov. 4, 2019) (AL, AR, LA, NC, and TN law)). The Tier 1 Suppliers are even further removed and have no relationship with end-consumers that would support the imposition of a duty.

[13] *E.g.*, Opp. 22 (citing *In re Volkswagen Timing and Chain Prod. Liab. Litig.*, 2017 WL 1902160 (D.N.J. May 8, 2017) (IL, SC, & TX law)).

against OEMs, or rely on *EcoDiesel* (which is inapposite, as described above).[14]

Those cases do not support imposing a duty here. And Plaintiffs' case law for 11

other states involves inherently contractual relationships which, unlike here, provide

some transaction, relationship or contact to support a duty to disclose. *See, e.g.*,

Opp. 24 n.11 (citing *Matanky v. General Motors LLC*, 370 F. Supp. 3d 772, 795

(E.D. Mich. 2019) ("[D]uty to disclose [under NV law] requires, at a minimum,

some form of relationship between the parties.")).[15]

**No "Active Concealment" Exception.** Plaintiffs contend that in 10 states, a

---

[14] *See* Opp. 23 n.11. These cases are also distinguishable for other reasons. *See, e.g.*, *Roe v. Ford Motor Co.*, 2021 WL 2529825, at *12 (E.D. Mich. June 21, 2021) (**AR** plaintiff did not allege common law fraud);*Volkswagen Timing Chain.*, 2017 WL 1902160, at *20 (plaintiffs alleged partial disclosure of information in owner manuals); *Chapman v. Gen. Motors LLC*, 531 F. Supp. 3d 1257, 1291 (E.D. Mich. 2021) (despite "superior knowledge" allegations, dismissing fraud claims under **OH**, **NJ**, and **SC** law as "superior knowledge" is not enough to create a duty).

[15] *See* Opp. 23 n.11: **ID**: *Sowards v. Rathbun*, 8 P.3d 1245, 1250 (Idaho 2000) (in real estate context, duty to disclose where superior knowledge would otherwise void "the contract"); **LA**: *Bunge Corp. v. GATX Corp.*, 557 So. 2d 1376, 1384 (La. 1990) (duty to disclose based on superior knowledge in vendor/vendee context); **VT**: *Vinci v. V.F. Corp.*, 2018 WL 1027429, at *9 (D. Vt. Feb. 21, 2018) (in wholesale clothing contract, duty to disclose must "aris[e] from the relations of the parties," including "in an ordinary business transaction"); **MD**: *Rhee v. Highland Dev. Corp.*, 958 A.2d 385, 389-91 (Md. Ct. Spec. App. 2008) (real estate transaction); **NH**: *Ingaharro v. Blanchette*, 440 A.2d 445, 447 (N.H. 1982) (same); **SC**: *Cohen v. Blessing*, 192 S.E.2d 204, 205-06 (S.C. 1972) (same); **WI**: *Ollerman v. O'Rourke Co.*, 288 N.W.2d 95, 99-111 (Wis. 1980) (same); **MT**: *Morrow v. Bank of Am.*, 324 P.3d 1167, 1184 (Mont. 2014) (mortgage); **DC**: *Intelect Corp. v. Cellco P'ship*, 160 F. Supp. 3d 157, 187 (D.D.C. 2016) (construction contract); **OK**: *Citizens Bank v. FDIC*, 639 F. Supp. 758, 759, 763 (W.D. Okla. 1986) (commercial bank transaction); *Sutton v. David Stanley Chevrolet, Inc.*, 475 P.3d 847, 849-50, 854 (Okla. 2020) (arbitration clause in lending contract).

duty to disclose arises if a defendant "actively concealed the defect from plaintiffs." Opp. 25. But "[a]n allegation of active concealment must plead more than an omission; rather, a plaintiff must assert affirmative acts of concealment; e.g., that the defendant sought to suppress information [from] the public domain or obscure the consumers' ability to discover it." *Raynaldo v. Am. Honda Motor Co*., 2022 WL 4358096, at *9 (N.D. Cal. Sept. 20, 2022). The CAC fails this standard. It contains *no* well-pleaded factual allegations that any Tier 1 Supplier undertook specific affirmative acts of concealment.[16] Indeed, Plaintiffs concede that the CAC rests on "pure omissions." Opp. 30 n.15. This pleading defect is underscored by Plaintiffs' inapposite case law, where the plaintiffs provided extensive, specific allegations of concealment acts. *See EcoDiesel*, 295 F. Supp. 3d at 1012; *In re Toyota Motor Corp. Unintended Acc'n Mktg., Sales Practices, & Prods. Liab. Litig.*, 754 F. Supp. 2d 1145, 1192 (C.D. Cal. 2010).[17]

---

[16] The CAC's conclusory allegation that all Defendants did not "disclose the Inflator Defect to NHTSA," ¶ 414(f), should be ignored as unsupported. Moreover, it is contradicted by other allegations in the CAC, *see* ¶¶ 311, 325 (admitting that the Tier 1 Suppliers complied with NHTSA's investigation).

[17] Plaintiffs' other caselaw is inapposite, including for the reason described above—a duty arose only from the parties' relationship, where none exists here. *Compare Cohen v. Subaru of Am., Inc.,* 2022 WL 714795, *25 (D.N.J. 2022) (relying on *Falls Church Grp., Ltd. v. Tyler, Cooper & Alcorn, LLP*, 874 A.2d 266, 277-78 (Conn. Ct. App. 2005) (cited by Plaintiffs), to dismiss fraudulent concealment claim brought against component part supplier) *with* Opp. 25 n.12 (**AR**: *Parrish v. Bentonville Sch. Dist.*, 2017 WL 507231, at *1-2 (W.D. Ark. Feb.7, 2017) (parent/school district); **CT**: *Falls Church Grp.*, at 277-78 (statutory disclosure duty specific to continuing care facilities); **DE**: *Wu v. Del. Tech. Cmty. Coll.*, 2022 WL 122140, at *2 (Del.

**B.      Plaintiffs' Statutory Consumer Fraud Claims Also Fail**

Buried in a footnote, Plaintiffs withdraw their claims under IL and WI law because Plaintiffs admit those statutes do not recognize "pure omissions" claims. Opp. 29 n.15. In addition to dismissing the IL and WI claims with prejudice, this Court should dismiss Plaintiffs' other statutory claims against the Tier 1 Suppliers because (as Plaintiffs concede) they had no relationship or contact with Plaintiffs.

Plaintiffs contend 12 states' consumer protection laws do not require a duty to disclose. Opp. 27 n.13. Not so. *See* Tier 1 Br. 30-32 & Ex. 2. For five states (AZ, CO, DE, NV, VA), Plaintiffs' cited cases either *require* a duty or do not address the issue.[18] And Plaintiffs do not even attempt to rebut five other states' laws that

---

Super. Ct. Jan. 13, 2022) (no duty between university and individual defrauded by imposter using university's email domain); **IL**: *In re GM Ignition Switch Litig.*, 257 F. Supp. 3d 372, 414 (S.D.N.Y. 2017) (consumer/OEM; court relied on OEM's affirmative representations); **NY**: *Ridge Seneca Plaza v. BP Prods. N. Am.*, 820 F. Supp. 2d 461, 467-68 (W.D.N.Y. 2011) (real estate buyer/seller); **NC**: *Packrite v. Graphic Packag. Int'l*, 2020 WL 7060395, at *3-4 (M.D.N.C. Dec. 2, 2020) (vendor/vendee); **OR**: *EcoDiesel*, 295 F. Supp. 3d 927 (inapposite, *see supra*); **PA**: *Gnagey Gas & Oil Co. v. Pa. Underg. Storage Tank Indem. Fund*, 82 A.3d 485, 500-04 (Pa. Commw. Ct. 2013) (remediation contractor/remediation fund; relying on the Restatement of Contracts, which assumes transactional relationship); **VT**: *Vinci*, 2018 WL 1027429, at *9 (vendee/vendor); **VA**: *Sayres v. Fuentes*, 2021 WL 8315238, at *3 (Va. Cir. Ct. Apr. 9, 2021) (real estate buyer/seller)).

[18] *See, e.g.*, Opp. 27 n.13 (**AZ**: *Tavilla v. Cephalon, Inc.*, 870 F. Supp. 2d 759, 779 (D. Ariz. 2012) ("[T]he Court cannot conclude that the common law distinction— which generally requires a duty to disclose before an omission becomes actionable— does not apply under the CFA"); **CO**: *Martinez v. Lewis* 969 P.2d 213, 221 (Colo. 1998) (court did not address duty because claim failed on other grounds)). For six states (IL, MD, MI, NJ, NY, TX), Plaintiffs cite cases where a supplier manufactured the allegedly defective part, or the parties had direct contact. *See* Opp. 27 n.13. These

specifically require a duty to disclose (CT, NC, OR, PA, and SC); these claims should be dismissed with prejudice. *See* Tier 1 Br. 30, n.14; *Jackson*, 389 F. Supp. 3d at 1208 n.7.

Additionally, Plaintiffs' Opposition ignores that certain states require a plaintiff to plead a transaction or interaction with the consumer-plaintiff in order to state a claim (even if not explicitly labeled as a "duty to disclose") against component manufacturers such as the Tier 1 Suppliers. *See, e.g.*, Tier 1 Br. 31-32 & Ex. 2 (citing cases). Because the CAC does not plead the requisite transaction or interaction, these claims should be dismissed. *Id*.[19]

Plaintiffs assert that some state statutes do not require privity. Opp. 28 n.14. But the Tier 1 Suppliers never argued they did. Regardless of privity, Plaintiffs fail to point to *any case* recognizing a consumer fraud claim against a component manufacturer absent allegations of *some* type of relationship, affirmative statement, or conduct with respect to a plaintiff. For example, Plaintiffs strangely cite *Morris v. Osmose Wood Preserving*, 667 A.2d 624 (Md. 1995), Opp. 29 n.14, but this case articulates the Tier 1 Suppliers' argument. It affirmed dismissal of plaintiffs' claims

---

situations are not analogous, as described in Section V.A. And, for one state (AR), Plaintiffs merely cite the statutory language without case law explaining why the facts alleged in the CAC support imposing a duty (they do not).

[19] And Plaintiffs' California FAL claim fails because it does not plausibly allege knowledge of the supposed defect. *See supra*, § IV; *Antonyan v. Ford Motor Co*., 2022 WL 1299964, at *4 (C.D. Cal. Mar. 30, 2022).

under the MD statute because the component supplier defendant did not market or sell to the end-consumer plaintiffs. *Id.* at 636.[20]

## C.   Other Statutory Claims Fail for Varying Reasons

MI, CT, MA, TN: Four statutory claims fail because the manufacture and sale of motor vehicles is governmentally regulated. Contrary to Plaintiffs' suggestion, *see* Opp. 30-32, Defendants are not required to identify a regulation that authorizes the sale or manufacture of defective parts. Rather, "the relevant inquiry is whether the general transaction is specifically authorized by law, regardless of whether the specific misconduct alleged is prohibited." *Liss v. Lewiston-Richards, Inc.*, 732 N.W.2d 514, 516 (Mich. 2007).[21] The CAC alleges that Plaintiffs purchased vehicles with allegedly defective airbag inflators. The manufacture and sale of Plaintiffs' vehicles is the relevant "general transaction . . . authorized by law." *Gant v. Ford Motor Co.*, 517 F. Supp. 3d 707, 719 (E.D. Mich. 2021).[22] Moreover, Plaintiffs cite no binding precedent that the analysis would be different under CT, MA and TN's

---

[20] The other cases in footnote 14 of the Opposition do not support Plaintiffs' claims as they address, *e.g.*, affirmative misrepresentations (not omissions), *Pack & Process, Inc. v. Celotex Corp.*, 503 A.2d 646, 657 (Del. Super. Ct. 1985), transactional relationships, *Lincoln Life & Annuity Co. of N.Y. v. Bernstein*, 2009 WL 1912468, at *1, *6 (N.Y. Sup. Ct. 2009), or cases against an OEM, *In re Porsche Cars N.A., Inc.*, 880 F. Supp. 2d 801, 812 (S.D. Ohio 2012).
[21] *Divis v. Gen. Motors, LLC*, 2019 WL 4735405, at *9 (E.D. Mich. Sept. 27, 2019) (the exemption is construed broadly and looks to the "general transaction.").
[22] *See also Gregorio v. Ford Motor Co.*, 522 F. Supp. 3d 264, 276 (E.D. Mich. 2021) (dismissing MCPA claims because "Ford's manufacture, sale, and lease of cars . . . was specifically authorized under [**MI**] state and federal law").

consumer-protection statutes. Indeed, the *Gant* court dismissed car owners' statutory consumer fraud claims under MI, MA, and TN law, noting that "the language of some of those statutes closely tracks the scheme in Michigan[.]" *Id.* at 720.[23]

GA: Plaintiffs' Georgia UDTPA claim (Count 11(c)) fails because Plaintiffs do not plead any likelihood of future harm—a prerequisite to injunctive relief (the sole remedy afforded under the statute). *See* Tier 1 Br. 33. Plaintiffs do not address this argument, and thus dismissal is proper. *Jackson*, 389 F. Supp. 3d at 1208 n.7.

SC: Plaintiffs acknowledge that South Carolina's RMDD Act (Count 41(d)) allows claims only against "person[s] engaged in the business of manufacturing or assembling new and unused motor vehicles." Opp. 33. Plaintiffs' attempt to create a factual ambiguity warranting discovery is baseless. Discovery is unnecessary to establish what the CAC alleges: the Tier 1 Suppliers made airbag modules, and the OEMs manufactured and assembled motor vehicles. *See, e.g.*, CAC ¶¶ 30-78.

## VI.   Plaintiffs Failed to Provide Pre-suit Notice

Under nine state consumer protection statutes,[24] Plaintiffs' claims should be

---

[23] While the court in *Gant* did not address the **CT** consumer protection statute, that statute's exemption provision closely tracks the scheme in Michigan. *See* Conn. Gen. Stat. § 42-110c(a). Further, given the extensive "regulatory and licensing framework of the automotive industry under state and federal law," Plaintiffs cannot plausibly argue that such conduct is not "specifically authorized under state and federal law." *Cyr v. Ford Motor Co.*, 2019 WL 7206100, at *3 (Mich. App. Dec. 26, 2019).
[24] *See* Tier 1 Br. 33 n.18 (AL, CA (CLRA), GA, IN, MA, ME, TX, WV, WY).

dismissed for lack of pre-suit notice.[25] Plaintiffs do not dispute that they provided notice to the Tier 1 Suppliers only *after* filing their complaints. Opp. 33. Instead, they point out that they did eventually send Notice Letters: "most" before filing the CAC (and to ZF "soon thereafter"). *Id.* Plaintiffs cite no cases finding that late notice solves the problem under these states' statutory regimes.[26]

Plaintiffs complain that it would be "inefficien[t]" to dismiss their claims for lack of pre-suit notice, referencing an inapposite case where the plaintiff actually *did* provide notice to the defendant before filing suit, *Spindler v. Gen. Motors, LLC*, 616 F. Supp. 3d 943, 950 (N.D. Cal. 2022). Opp. 34. But the purpose of these statutes' notice provisions "may only be accomplished by a literal application of the notice provisions," and "failure to comply with the notice requirement necessitates dismissal[.]" *David v. Am. Suzuki Motor Corp.*, 629 F. Supp. 2d 1309, 1325-26 (S.D. Fla. 2009) (dismissing claim under California's CLRA). Further, for the reasons stated previously, Plaintiffs' Notice Letters failed to reasonably describe their claims against the Tier 1 Suppliers. *See* Tier 1 Br. 34-35. This warrants dismissal.

## CONCLUSION

The Court should dismiss and/or strike the CAC in its entirety.

---

[25] Contrary to Plaintiffs' assertion, pre-suit notice provisions required under state law *do* apply here. *See* OEM Reply § V.G.7.

[26] Plaintiffs cite *Chen v. Wow Rest. TH LLC*, 2023 WL 3092618, at *4 (M.D. Fla. Apr. 26, 2023) for the proposition that they "have cured the defect." Opp. 34. But that case involved proper notice under a Florida statute not at issue here.

Respectfully submitted this 16th day of February, 2024.

| | |
|---|---|
| */s/ Joseph G. Petrosinelli* | */s/ Benjamin W. Jeffers* |

Joseph G. Petrosinelli
J. Liat Rome
Jami M. King
WILLIAMS AND CONNOLLY LLP
680 Maine Avenue, S.W.
Washington, DC 20024
Telephone: (202) 434-5000
Facsimile: (202) 434-5029
jpetrosinelli@wc.com
jrome@wc.com
jking@wc.com

Cari K. Dawson
Georgia Bar No. 213490
Kara F. Kennedy
Georgia Bar No. 926006
ALSTON & BIRD LLP
One Atlantic Center
1201 West Peachtree Street
Atlanta, GA 30309
Phone: (404) 881-7000
Fax: (404) 881-7777
cari.dawson@alston.com
kara.kennedy@alston.com

*Counsel for Defendants Autoliv, Inc. and Autoliv ASP, Inc.*

HICKEY HAUCK BISHOFF JEFFERS & SEABOLT, PLLC
Benjamin W. Jeffers
Benjamin I. Shipper
Andrew M. Gonyea
I Woodward Avenue, Suite 2000
Detroit, MI 48226
Telephone: (313) 964-8600
Facsimile: (313) 964-8601
bjeffers@hhbjs.com
bshipper@hhbjs.com
agonyea@hhbjs.com

*Counsel for Defendant Key Safety Systems, Inc. d/b/a Joyson Safety Systems*

| | |
|---|---|
| */s/ Sean M. Berkowitz* | */s/ Joseph C. Weinstein* |

Sean M. Berkowitz
Arthur F. Foerster
Johanna Spellman
LATHAM & WATKINS LLP
330 North Wabash Street, Suite 2800
Chicago, IL 60611
Telephone: 312.876.7700
Facsimile: 312.993.9767

Joseph C. Weinstein
Ohio Bar No: 23504
Roger M. Gold
Ohio Bar No: 55905
Squire Patton Boggs (US) LLP
1000 Key Tower
127 Public Square
Cleveland, OH 44114-1304

Sean P. McNally
TROUTMAN PEPPER HAMILTON
SANDER LLP
4000 Town Center, Suite 1800
Southfield, MI 48075
Telephone: 248.359.7317
Facsimile: 248.359.7700
Lindsey B. Mann
TROUTMAN PEPPER HAMILTON
SANDER LLP
600 Peachtree Street, Suite 3000
Atlanta, GA 30308
Telephone: 404.885.2743
Facsimile: 404.962.6538

*Counsel for ZF Active Safety and
Electronics US LLC, ZF Passive Safety
Systems US Inc., ZF Automotive US
Inc., and ZF TRW Automotive Holdings
Corp.*

Telephone: (216) 479-8500
Facsimile: (216) 479-8780
Email:  joe.weinstein@squirepb.com
         roger.gold@squirepb.com

Dara D. Mann
Georgia Bar No. 469065
Deborah Lempogo
Georgia Bar No. 277943
Squire Patton Boggs (US) LLP
1201 W. Peachtree Street NW,
Suite 3150
Atlanta, GA 30309
Telephone: (678) 272-3222
Facsimile: (678) 272-3211
Email: dara.mann@squirepb.com
         deborah.lempogo@squirepb.com

Daniel C. Harkins
NY Bar No. 5179312
Squire Patton Boggs (US) LLP
1211 Avenue of the Americas, Fl. 26
New York, NY 10036-8705
Telephone: (212) 872-9890
Facsimile: (212) 872-9815
Email:  daniel.harkins@squirepb.com

*Counsel for TG Missouri Corporation*

## <u>RULE 7.1D CERTIFICATE</u>

The undersigned hereby certifies that the foregoing brief was prepared using

14-point Times New Roman font, in accordance with Local Rule 5.1C.

Dated this 16th day of February, 2024.

*/s/ Joseph C. Weinstein*

## **CERTIFICATE OF SERVICE**

I hereby certify that on February 16, 2024, I electronically filed the foregoing document with the Clerk of the Court using the ECF system which will send notification of such filing to all counsel of record.

*/s/ Joseph C. Weinstein*
Joseph C. Weinstein