## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

IN RE: ARC AIRBAG INFLATORS
PRODUCTS LIABILITY LITIGATION

MDL No. 3051

Case No: 1:22-md-03051-ELR

## REPLY IN SUPPORT OF CERTAIN DEFENDANTS'[1]
## MOTION TO DISMISS PLAINTIFFS' CORRECTED
## <u>CONSOLIDATED CLASS ACTION COMPLAINT</u>

CROWELL & MORING LLP
April N. Ross
Mohamed Awan
Emily Tucker
1001 Pennsylvania Avenue NW
Washington, D.C. 20004
Telephone: (202) 624-2500
aross@crowell.com
mawan@crowell.com
etucker@crowell.com

*Counsel for General Motors LLC*

[Additional Counsel on Signature Page]

---

[1] BMW of North America, LLC; FCA US LLC; Ford Motor Company; General Motors LLC; Kia America, Inc.; Hyundai Motor America; Porsche Cars North America, Inc.; Audi of America, LLC; Volkswagen Group of America, Inc., and certain related entities.

# **TABLE OF CONTENTS**

INTRODUCTION ................................................................................ 1

ARGUMENT ..................................................................................... 2

I.      Plaintiffs Cannot Pursue Claims In States Where They Have No
        Injury............................................................................................... 2

II.     Plaintiffs' "Nationwide Claims" Should Be Dismissed. ............... 4

III.    Plaintiffs Fail to State Valid Express Warranty Claims. .............. 5

        A.      Plaintiffs Do Not Allege a Covered Defect......................... 5

        B.      Representations of "Safety" and "Reliability" are Non-
                actionable Puffery.............................................................. 6

        C.      Plaintiffs Fail to Allege the Manifestation of Any Defect
                During the Warranty Periods.............................................. 7

        D.      Plaintiffs Concede That They Did Not Present Their
                Vehicles For Warranty Repair Within The Warranty
                Term. ................................................................................. 9

IV.     Plaintiffs Fail to State Valid Implied Warranty Claims. ............ 10

        A.      Plaintiffs Fail to Allege Privity. ...................................... 10

        B.      Plaintiffs Do Not Allege Pre-Suit Notice......................... 12

        C.      Plaintiffs Have Not Sufficiently Alleged
                Unmerchantability. .......................................................... 14

        D.      Plaintiffs Do Not Allege Unconscionability And Cannot
                Override The Durational Limitations On Their Implied
                Warranty Claims............................................................... 15

V.      Plaintiffs Fail to State Valid Fraud Claims................................. 16

        A.      Plaintiffs Do Not Satisfy Rule 9(b)................................. 16

        B.      Plaintiffs Fail to Allege Pre-Sale Knowledge. ................ 16

        C.      Plaintiffs Do Not Plausibly Allege a Duty to Disclose.... 18

        D.      Plaintiffs Fail to Allege Reliance or Causation................ 20

        E.      The Economic Loss Rule Bars Plaintiffs' Claims. .......... 22

        F.      Manifestation Requirements Bar Many of Plaintiffs'
                Claims............................................................................... 22

        G.      Other State-Specific Issues Bar Plaintiffs' Fraud-Based
                Claims............................................................................... 23

|   |   | 1. | Fraudulent Concealment/Omission Not a Cause of Action. | 23 |
|---|---|---|---|---|
|   |   | 2. | No Intent to Defraud. | 24 |
|   |   | 3. | Certain States Preclude Injunctive Relief. | 24 |
|   |   | 4. | Ohio Requires Notice of a Previous Violation. | 24 |
|   |   | 5. | Michigan and Oklahoma Exempt Motor Vehicle Sales. | 25 |
|   |   | 6. | Adequate Legal Remedies Bar Certain Equitable Claims. | 25 |
|   |   | 7. | Certain States Require Adequate Pre-Suit Notice. | 26 |
|   |   | 8. | Certain States Require Actual and Tangible Financial Loss. | 27 |
| VI. | Plaintiffs' Unjust Enrichment Claims Fail. | | | 28 |
| VII. | Plaintiffs' Claims for Restitution Should be Dismissed. | | | 29 |
| VIII. | Many Plaintiffs' Claims Are Untimely | | | 29 |
| CONCLUSION | | | | 30 |

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Abraham v. Volkswagen of Am., Inc.*,
  795 F.2d 238 (2d Cir. 1986) ...............................................................................8

*Ace Am. Ins. Co. v. Grand Banks Yachts, Ltd.*,
  587 F. Supp. 2d 697 (D. Md. 2008) ...................................................................11

*Aiking-Taylor v. Serang*,
  485 P.3d 746 (Mont. 2021), *cert. denied.*, 144 S. Ct. 216 (2023) .....................27

*Albright v. Christensen*,
  24 F.4th 1039 (6th Cir. 2022) ............................................................................13

*Ambrose v. Gen. Motors LLC*,
  2022 WL 3701946 (E.D. Mich. Aug. 26, 2022)................................................18

*Aprigliano v. Am. Honda Motor Co.*,
  979 F. Supp. 2d 1331 (S.D. Fla. 2013) ................................................................7

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009) ..............................................................................................1

*Barre v. Hoffman*,
  326 S.W.3d 415 (Ark. 2009) ..............................................................................23

*Blackman v. Boston Whaler, Inc.*,
  649 F. Supp. 3d 142 (E.D.N.C. 2023) ...............................................................11

*Blanco v. Baxter Healthcare Corp.*,
  158 Cal. App. 4th 1039 (2008) ..........................................................................10

*Braco v. Super. Court*,
  2002 WL 472257 (Cal. App. 2002) ...................................................................26

*Brady v. Basic Rsch., L.L.C.*,
  101 F. Supp. 3d 217 (E.D.N.Y. 2015) ...............................................................28

*Brogdon v. Nat'l Healthcare Corp.*,
  103 F. Supp. 2d 1322 (N.D. Ga. 2000)..............................................................26

*Cervantes v. Invesco Holding Co. (US), Inc.*,
   2019 WL 5067202 (N.D. Ga. Sept. 25, 2019) ..................................................4

*Chapman v. Gen. Motors LLC*,
   531 F. Supp. 3d 1257 (E.D. Mich. 2021) ........................................................24

*Chapman v. Tristar Prods., Inc.*,
   2016 WL 6216135 (N.D. Ohio Oct. 25, 2016) ................................................25

*Clark v. Am. Honda Motor Co.*,
   528 F. Supp. 3d 1108 (C.D. Cal. 2021) ..........................................................10

*Clemens v. DaimlerChrysler Corp.*,
   534 F.3d 1017 (9th Cir. 2008) ..........................................................................7

*Coleman v. Burger King Corp.*,
   2023 WL 5507730 (S.D. Fla. Aug. 25, 2023) ...............................................3, 4

*Connick v. Suzuki Motor Co.*,
   675 N.E.2d 584 (Ill. 1996) ..............................................................................27

*Daugherty v. Am. Honda Motor Co.*,
   144 Cal. App. 4th 824 (2006) .........................................................................7, 8

*De Bouse v. Bayer*,
   922 N.E.2d 309 (Ill. 2009) ..............................................................................21

*Deras v. Volkswagen Grp. Of Am., Inc.*,
   2018 WL 2267448 (N.D. Cal. May 17, 2018) ................................................26

*Doll v. Ford Motor Co.*,
   814 F. Supp. 2d 526 (D. Md. 2011) ................................................................12

*Edel v. Southtowne Motors of Newnan II, Inc.*,
   789 S.E.2d 224 (Ga. Ct. App. 2016) ...............................................................27

*Ford Motor Co. v. Sperau*,
   708 So. 2d 111 (Ala. 1997) .............................................................................26

*Gaona v. Garland Surgicare Partners, Ltd.*,
   2016 WL 4189343 (Tex. Ct. App. 2016) .........................................................23

*Gen. Insulation Co. v. Eckman Const.*,
992 A.2d 613 (N.H. 2010) ...................................................................28

*Gertz v. Toyota Motor Corp.*,
2011 WL 3681647 (C.D. Cal. Aug. 22, 2011) ......................................6

*Gonzalez v. Pepsico, Inc.*,
489 F. Supp. 2d 1233 (D. Kan. 2007)...................................................11

*Gunn v. Simpson, Schulman & Beard, LLC*,
2011 WL 4431739 (N.C. Super. Ct. 2011)...........................................24

*Hall v. Gen. Motors, LLC*,
2020 WL 1285636 (E.D. Mich. Mar. 18, 2020)...................................17

*Harden v. JP Morgan Chase Bank, N.A.*,
2014 WL 836013 (N.D. Ga. Mar. 4, 2014) ..........................................16

*Hess v. Chase Manhattan Bank, USA, N.A.*,
220 S.W.3d 758 (Mo. 2007) ................................................................23

*Hild v. Cal. Sup. Ct.*,
2008 WL 544469 (N.D. Cal. Feb. 26, 2008) ........................................26

*Ibarra v. Pharmagenics LLC*,
660 F. Supp. 3d 914 (C.D. Cal. 2023) .................................................26

*In re FCA US LLC Monostable Elec. Gearshift Litig.*,
280 F. Supp. 3d 975 (E.D. Mich. 2017) ...............................................27

*In re FCA US LLC Monostable Elec. Gearshift Litig.*,
355 F. Supp. 3d 582,594 (E.D. Mich. 2018) ........................................12

*In re Ford Motor Co., Spark Plug & 3-Valve Engine Prods. Liab. Litig.*,
2014 WL 3778592 (N.D. Ohio July 30, 2014)........................................9

*In re Gen. Motors LLC Ignition Switch Litigation*,
257 F. Supp. 3d 372 (S.D.N.Y. 2017) (Opp. )..................................8, 22

*In re Gen. Motors LLC Ignition Switch Litigation*,
339 F. Supp. 3d 262 (S.D.N.Y. 2018) ..................................................22

*In re Marriott Int'l, Inc., Customer Data Sec. Breach Litig.*,
  341 F.R.D. 128 (D.Md. 2022) ...................................................................21

*In re MyFord Touch Consumer Litigation*,
  46 F. Supp. 3d 936,980 (N.D. Cal. 2014)..............................................14

*In re Porsche Cars N. Am., Inc.*,
  880 F. Supp. 2d 801 (S.D. Ohio 2012) ...................................................28

*In re Takata Airbag Prods. Liab. Litig.*,
  193 F. Supp. 3d 1324 (S.D. Fla. 2016).............................................8, 20

*In re Takata Airbag Prods. Liab. Litig.*,
  524 F. Supp. 3d 1266 (S.D. Fla. 2021)...........................................19, 20

*In re Zantac (Ranitidine) Products Liability Litigation*,
  2022 WL 16729170 (11th Cir. Nov. 7, 2022) (per curiam) .................3

*In re ZF-TRW Airbag Control Units Prods. Liab. Litig.*,
  601 F. Supp. 3d 625 (C.D. Cal. 2022).............................................11, 12

*Jamison v. Summer Infant (USA), Inc.*,
  778 F. Supp. 2d 900 (N.D. Ill. 2011).....................................................27

*Kahn v. Volkswagen of Am., Inc.*,
  2008 WL 590469 (Conn. Super. Ct. Feb. 13, 2008)..........................12

*Kilgore v. Bos. Sci. Corp.*,
  2015 WL 5838513 (S.D. W. Va. Oct. 5, 2015)...................................10

*Kimball v. Volkswagen Grp. of Am., Inc.*,
  2023 WL 5533343 (D.N.J. Aug. 28, 2023) ...........................................8

*Klein v. Ljubljana Inter Auto d.o.o.*,
  2021 WL 6424917 (C.D. Cal. Sept. 13, 2021) ...................................14

*Lamb v. Graco Children's Prods. Inc.*,
  2012 WL 12871963 (N.D. Fla. Jan. 24, 2012) ...................................13

*Lassen v. Nissan N. Am., Inc.*,
  211 F. Supp. 3d 1267 (C.D. Cal. 2016) ...............................................19

*Lewis v. Mercedes-Benz United States*,
530 F. Supp. 3d 1183 (S.D. Fla. 2021) ....................................................8

*Madden v. Sheehy Ford of Marlow Hts., Inc.*,
2023 WL 5218103 (Md. App. Ct. Aug. 15, 2023) ...............................22

*Madrigal v. Hint, Inc.*,
2017 WL 6940534 (C.D. Cal. Dec. 14, 2017)......................................28

*Mandani v. Volkswagen Grp. of Am., Inc.*,
2019 WL 652867 (N.D. Cal. Feb. 15, 2019) ...............................16, 17

*Matanky v. Gen. Motors LLC*,
370 F. Supp. 3d 772 (E.D. Mich. 2019) ..............................................25

*McBride v. Boughton*,
20 Cal. Rptr. 3d 115 (Cal. Ct. App. 2004)...........................................28

*McCabe v. Daimler AG*,
160 F. Supp. 3d 1337 (N.D. Ga. 2015)...................................18, 19, 20

*McCabe v. Daimler AG*,
948 F. Supp. 2d 1347 (N.D. Ga. 2013)..................................................19

*Napoli-Bosse v. Gen. Motors LLC*,
2022 WL 3585769 (D. Conn. Aug. 22, 2022), *aff'd*, 2023 WL
7485796 (2d Cir. Nov. 13, 2023).............................................................12

*Nuwer v. FCA US Ltd. Liab. Co.*,
552 F. Supp. 3d 1344 (S.D. Fla. 2021) ...................................................9

*Parnell v. FanDuel, Inc.*,
591 S.W.3d 315 (Ark. 2019) ..................................................................27

*Peterson v. Aaron's, Inc.*,
2017 WL 364094 (N.D. Ga. Jan. 25, 2017)............................................5

*Philippine Nat'l Oil Co. v. Garrett Corp.*,
724 F.2d 803 (9th Cir. 1984) ...................................................................9

*Phillips Petroleum Co. v. Shutts*,
472 U.S. 797 (1985)....................................................................................5

*Phillips v. Philip Morris Cos. Inc.*,
   290 F.R.D. 476 (N.D. Ohio 2013) ..................................................................25

*Pledger v. Lynch*,
   5 F.4th 511 (2d Cir. 2021) ..............................................................................13

*Prado-Steiman v. Bush*,
   221 F.3d 1266 (11th Cir. 2000) ........................................................................3

*Puryer v. HSBC Bank USA, Nat'l Ass'n*,
   419 P.3d 105 (Mont. 2018)..............................................................................27

*Rath* v*. BHP Billiton Petroleum (Ark.), Inc.*,
   2013 WL 6632273 (E.D. Ark. 2013)................................................................23

*Redtail Leasing, Inc. v. Bellezza*,
   1997 WL 603496 (S.D.N.Y. 1997)...................................................................21

*Resnick v. Hyundai Motor Am., Inc.*,
   2016 WL 9455016 (C.D. Cal. Nov. 14, 2016) .................................................18

*Rollolazo v. BMW of N. Am., LLC*,
   2017 WL 6888501 (C.D. Cal. May 2, 2017) ......................................................9

*Russ v. Apollo Grp., Inc.*,
   2010 WL 11515297 (C.D. Cal. 2010) ..............................................................21

*Sater v. Chrysler Grp. LLC*,
   2015 WL 736273 (C.D. Cal. Feb. 20, 2015) ....................................................15

*Sheris v. Nissan N. Am., Inc.*,
   2008 WL 2354908 (D.N.J. June 2, 2008)..........................................................14

*Sloan v. Gen. Motors LLC*,
   2017 WL 3283998 (N.D. Cal. 2017) ................................................................18

*Sloan v. Gen. Motors LLC*,
   287 F. Supp. 3d 840 (N.D. Cal. 2018)..............................................................14

*Smith v. LG Elecs. U.S.A., Inc.*,
   2014 WL 989742 (N.D. Cal. Mar. 11, 2014) .....................................................7

*Sonner v. Premier Nutrition Corp.*,
971 F.3d 834 (9th Cir. 2020) .......................................................26, 29

*Sotelo v. Rawlings Sporting Goods Co., Inc.*,
2020 WL 6694333 (C.D. Cal. 2020) ................................................21

*St. Clair v. Kroger Co.*,
581 F. Supp. 2d 896 (N.D. Ohio 2008) ............................................25

*Stafford v. Rite Aid Corp.*,
2023 WL 2876109 (S.D. Cal. Apr. 10, 2023) ...................................29

*Stemm v. Tootsie Roll Indus., Inc.*,
374 F. Supp. 3d 734 (N.D. Ill. 2019)................................................27

*Sw. Bell Tel. Co. v. Mktg. on Hold Inc.*,
308 S.W.3d 909 (Tex. 2010) .............................................................28

*Sweeny v. Toyota Motor Sales, U.S.A., Inc.*,
2023 WL 2628697 (C.D. Cal. Feb. 9, 2023) .....................................25

*Szep v. General Motors LLC*,
491 F. Supp. 3d 280 (N.D. Ohio 2020) ............................................15

*Szymczak v. Nissan N. Am., Inc.*,
2011 WL 7095432 (S.D.N.Y. Dec. 16, 2011) ...................................14

*Turk v. Morris, Manning & Martin, LLP*,
593 F. Supp. 3d 1258 (N.D. Ga. 2022)..............................................16

*United States v. Gen. Motors Corp.*,
518 F.2d 420 (D.C. Cir. 1975).........................................................17

*United States v. Gen. Motors Corp.*,
656 F. Supp. 1555 (D.D.C. 1987), *aff'd*, 841 F.2d 400 (D.C. Cir.
1988) .................................................................................................17

*Wolfe v. Flathead Electric Cooperative, Inc.*,
431 P.3d 327 (Mont. 2018).................................................................23

*Yumul v. Smart Balance, Inc.*,
733 F. Supp. 2d 1117 (C.D. Cal. 2010) .............................................30

*Zeagler v. Custom Auto, Inc.*,
    880 F.2d 1284 (11th Cir. 1989) ............................................................................26

**Statutes**

N.D. Cent. Code § 51-15-07 ..............................................................................24

U.C.C. § 2-725(2) ..............................................................................................29

**Rules**

Fed. R. Civ. P. 3 ................................................................................................12

Fed. R. Civ. P. 3 ................................................................................................13

Fed. R. Civ. P. 9(b) .............................................................................1, 16, 28, 29

Fed. R. Civ. P. 9(c)............................................................................................12

Fed. R. Civ. P. 12 ..................................................................................................1

Fed. R. Civ. P. 12(b)(6)....................................................................................3, 4

Fed. R. Civ. P. 23 ................................................................................................3

# INTRODUCTION

Plaintiffs' Opposition confirms that they have not pled viable claims. Unable to counter the majority of Defendants' arguments, Plaintiffs insist the Court should defer ruling on key threshold issues, such as standing, or should allow Plaintiffs to proceed "in the alternative" on implausible claims. And Plaintiffs argue that the Rule 12 standard requires inferences in their favor, but they allege no facts from which these inferences could be drawn, much less the particular facts demanded by Rule 9(b) for many of their claims. Rule 12 does not "unlock the doors of discovery for a plaintiff armed with nothing more than conclusions."[2] The Complaint should be dismissed.[3]

*First*, Plaintiffs lack standing to bring claims in states where they did not purchase vehicles and sustained no injury, and they cannot pursue "nationwide" claims under Georgia law. Plaintiffs suggest these threshold jurisdictional questions should be deferred, but courts routinely and appropriately dismiss such claims on the pleadings.

*Second*, Plaintiffs cannot salvage their express warranty claims. Plaintiffs have not alleged a defect covered by any Defendant's warranty. Nor have they alleged that any such defect ever manifested in their vehicles, much less in the tens of millions of vehicles covered

---

[2] *Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009).

[3] The moving defendants are BMW of North America, LLC ("BMW"); FCA US LLC ("FCA US"); Ford Motor Company ("Ford"); General Motors LLC ("GM"); Kia America, Inc. ("Kia"); Hyundai Motor America ("Hyundai"); Porsche Cars North America, Inc. ("PCNA"); Audi of America, LLC ("Audi"); Volkswagen Group of America, Inc. ("VWGoA"), and certain related entities (collectively "Defendants").

1

by their class claims. Plaintiffs also cannot overcome the fact that they never presented their vehicles to Defendants for repairs during the applicable warranty period.

*Third*, as to their implied warranty claims, Plaintiffs cannot overcome privity and pre-suit notice requirements, and fail to even respond to most of Defendants' authorities on these points. Plaintiffs also cannot dispute that their vehicles have been and remain merchantable, given that no defect has ever manifested and Plaintiffs' allegations that they have driven their vehicles for years—even decades—without ever experiencing a defect.

*Fourth*, Plaintiffs' fraud claims fail to meet Rule 9(b)'s heightened pleading standard. They also fail to plausibly allege Defendants' pre-sale knowledge of an airbag inflator defect in millions of vehicles, or a duty to disclose under applicable state law. No presumptions of reliance or causation arise on these facts, and the economic loss rule, manifestation requirements, and other state-law requirements bar many of the fraud-based claims.

Finally, Plaintiffs' claims should not proceed for myriad other reasons, including that some are time-barred; that they seek unavailable forms of remedies; or that they are barred by state law. For these reasons and others detailed here and in Defendants' opening brief, Plaintiffs' claims should be dismissed.[4]

## ARGUMENT

### I.    Plaintiffs Cannot Pursue Claims In States Where They Have No Injury.

---

[4] Plaintiffs concede they are not entitled to obtain from this Court any recall-related injunctive relief because that would interfere with NHTSA's primary jurisdiction and exclusive authority to order such a remedy. Opp. at 49-50.

Plaintiffs bring a host of claims under the laws of states with no connection to their own vehicle purchases and experiences. Plaintiffs argue that under *In re Zantac (Ranitidine) Products Liability Litigation*, 2022 WL 16729170, at *4 (11th Cir. Nov. 7, 2022) (per curiam), this is not a question of Article III standing, but rather of typicality or commonality for class certification under Rule 23. But as Plaintiffs acknowledge, the unpublished decision in *Zantac* is at most "persuasive authority," Pls.' Memo in Opp. to Motion to Dismiss ("Opp.") at 5, n.3, and it has little precedential value in light of the binding Eleventh Circuit authority holding that plaintiffs cannot assert claims under the laws of a state unless at least one named plaintiff has suffered injury there.[5] This dooms Plaintiffs' "nationwide" claims and their claims under 14 states and the District of Columbia, where there is no corresponding plaintiff with standing.[6]

Even under *Zantac*'s reasoning, the Court can still consider, and dismiss, these unrepresented claims at the pleading stage. In *Zantac*, the court held that the question of whether plaintiffs could bring claims under laws of states in which they neither resided nor sustained injury was not a question of standing, but instead "a Rule 12(b)(6) merits issue." *In re Zantac*, 2022 WL 16729170, at *5. Thus, in *Coleman v. Burger King Corp.* (also cited by Plaintiffs), the court applied *Zantac* to find that plaintiffs could not state a claim under the laws of a state with no connection to their alleged injuries:

But that's not to say that a named Florida plaintiff can assert a stand-alone count

---

[5] *See* Memo. in Support of Defendants' Joint Motion to Dismiss ("Motion" or "Mot."), ECF No. 181-1, at 6-8 (citing *Prado-Steiman v. Bush*, 221 F.3d 1266, 1280 (11th Cir. 2000)).

[6] Plaintiffs fail to address (and thus concede) Defendants' argument that they lack standing to assert "nationwide" fraudulent concealment and unjust enrichment counts. Opp. at 4-6.

> under, for instance, Georgia's consumer-protection statute—and on behalf of Georgia consumers—*without* having purchased the Defendant's products (or seen the Defendant's ads) in Georgia. Such a count (it seems to us) would fail to state a viable claim under Rule 12(b)(6) . . . because [the named Florida plaintiff will] have failed to show any connection between his injury and any activity by the defendant in the State of Georgia. So, too, here.

*Coleman v. Burger King Corp.*, 2023 WL 5507730, at \*3 (S.D. Fla. Aug. 25, 2023). The Court should dismiss all claims arising under the laws of unrepresented states because, whether applying Article III or Rule 12(b)(6), Plaintiffs fail to show any connection between their claimed injuries and any activity by Defendants in those states.[7]

## II.    Plaintiffs' "Nationwide Claims" Should Be Dismissed.

Plaintiffs argue that the Court should defer the question of whether Georgia law applies to their "nationwide" claims until after discovery. *See* Opp. at 6-10. But no amount of discovery will change the fact that Plaintiffs and putative class members who did not purchase or lease their vehicles in Georgia did not sustain any injury under Georgia law. *See* Mot. at 8-9.[8] Plaintiffs improperly conflate personal jurisdiction with choice of law principles, claiming that because all Defendants (other than Audi) are registered to do business in Georgia, they are subject to general jurisdiction here, and therefore that Georgia law applies to their claims. Opp.

---

[7]   Plaintiffs also cite *Cervantes v. Invesco Holding Co. (US), Inc.*, 2019 WL 5067202 (N.D. Ga. Sept. 25, 2019), but the court in that case dismissed plaintiff's claims on other grounds and was "unable to reach the question of Plaintiff's standing." *Cervantes*, 2019 WL 5067202, at \*9.

[8]   Plaintiffs argue that their fraud claims can "alternatively" proceed under the "common law" of every state. Opp. at 9. Numerous courts have held otherwise, because the elements of fraud differ greatly amongst the states, as Plaintiffs concede. *See* Mot. at 10, Opp. at 9-10.

at 8. Not so. Even if Defendants were subject to general jurisdiction in Georgia *courts* (they are not), that would not support application of Georgia *law*. A state "must have a significant contact or significant aggregation of contacts ***to the claims asserted*** by each member of the plaintiff class" for that state's law to apply. *Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 821-22 (1985) (emphasis added). Plaintiffs cite no authority holding that business registration suffices as "significant contact," nor do they explain how a Defendant's business registration in Georgia has any connection to any particular Plaintiff's out-of-state vehicle purchase. Even when a defendant is *headquartered* in Georgia, Georgia law does not apply to claims that otherwise lack any connection to the state. *See Peterson v. Aaron's, Inc*., 2017 WL 364094, at *6 (N.D. Ga. Jan. 25, 2017) (Georgia headquarters "insufficient contact[]" to apply Georgia law).

## III.   Plaintiffs Fail to State Valid Express Warranty Claims.

### A.   Plaintiffs Do Not Allege a Covered Defect.

Again seeking to delay scrutiny of their allegations, Plaintiffs argue that the Court cannot decide at this stage whether their alleged defect is covered by the warranties that they invoke because (a) they need "discovery regarding Plaintiffs' *actual* warranty terms or their validity," and (b) they should not be held to the design defect theory alleged in their Complaint. Opp. at 10-12. But Plaintiffs *already received* the warranties applicable to their vehicles at the time of sale, and thus there is no need for discovery. And Plaintiffs pled the terms of those warranties in the Complaint, alleging that each Defendant "issued an express written warranty

for each defective Class Vehicle they sold," providing that the Class Vehicles "would be free of ***defects in materials and workmanship*** at the time of sale[.]" *E.g.*, Compl. ¶ 440 (emphasis added).[9] Plaintiffs cannot escape the warranty terms that they alleged.

Nor should the Court credit Plaintiffs' attempt to distance themselves from their design defect allegations. *See* Opp. at 12. Plaintiffs repeatedly allege that *all* Class Vehicles are equally affected by the alleged defect. Where a defect allegedly extends to *all* products, rather than just the product a plaintiff owns, the claim alleges a "defect in design." *Gertz v. Toyota Motor Corp.*, 2011 WL 3681647, at *3 (C.D. Cal. Aug. 22, 2011). Since design defects fall outside the scope of the warranties, the Court has all it needs to dismiss Plaintiffs' express warranty claims on the pleadings.[10]

## B.  Representations of "Safety" and "Reliability" are Non-actionable Puffery.

Recognizing that the alleged design defect is not covered under the Defendants' "materials and workmanship" warranties, Plaintiffs pivot, arguing that Defendants breached unidentified "warranties that the Class Vehicles were 'safe and reliable, and [that] their airbags

---

[9] Plaintiffs argue that *Defendants* concede the warranties cover the alleged defect because *Defendants* characterize the alleged defect as a "manufacturing issue" in their motion to dismiss. Opp. at 11-12. But what matters at this stage is the Complaint, and Plaintiffs clearly allege a design defect that is not covered by the express warranties, not a manufacturing issue that affects an infinitesimal percentage of vehicles.

[10] GM, Ford, and VWGoA address, in their individual briefs, Plaintiffs' argument that courts have determined that the warranty terms of these three Defendants cover design defects. *See* Opp. at 11 n.7.

would function properly.'"[11] Opp. at 11. But Plaintiffs do not identify the sources of these purported warranties, nor do they allege that any Plaintiff's airbag has not "functioned properly," or been safe and reliable. At best, they speculate about the potential non-performance of airbags in the *future*, which cannot support a *present* breach of warranty. In any event, the so-called "warranties" they invoke—general statements about "safety" and "reliability"—are non-actionable sales puffery that cannot create an express warranty. *See Aprigliano v. Am. Honda Motor Co.*, 979 F. Supp. 2d 1331, 1341 (S.D. Fla. 2013); *Smith v. LG Elecs. U.S.A., Inc.*, 2014 WL 989742, at *5-6 (N.D. Cal. Mar. 11, 2014) (describing words like "reliable" and "safety" as inherently vague and "therefore are non-actionable"); *see also* Mot. at 22 & n. 27, ECF No. 181-3 at 7-8.

## C. Plaintiffs Fail to Allege the Manifestation of Any Defect During the Warranty Periods.

Plaintiffs claim it does not matter that no defect manifested during the warranty period, because they allegedly purchased cars with a "latent defect." *See* Opp. at 13-15. Plaintiffs are wrong for at least two reasons.

*First*, a latent defect discovered outside the warranty period cannot form the basis for a breach of express warranty claim. *See Daugherty v. Am. Honda Motor Co.*, 144 Cal. App. 4th 824, 830 (2006); *Clemens v. DaimlerChrysler Corp.*, 534 F.3d 1017, 1023 (9th Cir. 2008) (affirming dismissal of express warranty claims because repairs "were made after the

---

[11] *See e.g.*, Compl. ¶¶ 440, 513, 582, 651, 720, 836, 905, 973, 1061.

warranty period expired."); *Kimball v. Volkswagen Grp. of Am., Inc.*, 2023 WL 5533343, at *4 (D.N.J. Aug. 28, 2023) (express warranty does not cover repairs made after the warranty period or "latent defect[s] that did not manifest during the useful life of the product."); *see also* Mot. at 12 & ECF No. 181-3 at 3-5. This is because all vehicle parts "will wear out sooner or later and thus have a limited effective life." *Daugherty*, 144 Cal. App. 4th at 830 (quoting *Abraham v. Volkswagen of Am., Inc.*, 795 F.2d 238, 249-50 (2d Cir. 1986)). Because "[m]anufacturers always have knowledge regarding the effective life of particular parts and the likelihood of their failing within a particular period of time[, they] can always be said to 'know' that many parts will fail after the warranty period has expired." *Id.* A rule that makes "failure of a part actionable based on such 'knowledge' would render meaningless time/mileage limitations in warranty coverage." *Id.*

*Second*, Plaintiffs rely on cases that analyze defect manifestation in the context of statutory consumer protection claims—not express warranty claims. For example, in *In re Gen. Motors LLC Ignition Switch Litigation*, 257 F. Supp. 3d 372 (S.D.N.Y. 2017) (Opp. at 13), the Court analyzed manifestation in the context of Wisconsin's consumer protection statute, not an express warranty claim. *Id.* at 458 n.30. The court also noted that the allegations were sufficient to show that plaintiffs experienced the alleged defect during the warranty period. *Id.* at 456-60 & n.30. By contrast, Plaintiffs here make no similar allegation.[12]

---

[12] The remaining authorities that Plaintiffs rely on are likewise inapposite. *See, e.g.*, *Lewis v. Mercedes-Benz United States*, 530 F. Supp. 3d 1183, 1203 (S.D. Fla. 2021) (analyzing manifestation in the context of standing, not express warranty claims); *In re Takata Airbag*

### D.      Plaintiffs Concede That They Did Not Present Their Vehicles For Warranty Repair Within The Warranty Term.

To try to justify their failure to present their vehicles to Defendants for repair, Plaintiffs argue that (1) Defendants "had ample chance" to offer repairs yet "have not issued comprehensive recalls," Opp. at 16; (2) "Plaintiffs do not have to comply with presentment requirements for warranties that fail their essential purpose[,]" *id.* at 17; and (3) "presentment would be futile," *id.* at 18. None of these arguments have merit.

Defendants had no opportunity to repair a car that was never presented to them. While Plaintiffs assert that Defendants could have performed repairs "at regular service appointments," *id*. at 16, that standard would shift to manufacturers an affirmative obligation to divine and proactively address any potential future problem whenever a vehicle was brought in for an oil change. Plaintiffs cite no law to support such an obligation. As to Plaintiffs' argument that the express warranties failed in their essential purpose, Plaintiffs do not (and cannot) allege that there were repeated unsuccessful attempts to repair their vehicles. *Philippine Nat'l Oil Co. v. Garrett Corp.*, 724 F.2d 803, 808 (9th Cir. 1984) (warranty fails essential purpose "only if repeated repair attempts are unsuccessful").[13] Nor do Plaintiffs plead

---

*Prods. Liab. Litig.*, 193 F. Supp. 3d 1324, 1335 (S.D. Fla. 2016) (manifestation in the context of damages); *Nuwer v. FCA US Ltd. Liab. Co.*, 552 F. Supp. 3d 1344, 1353-54 (S.D. Fla. 2021) (manifestation in the context of standing); *see also In re Ford Motor Co., Spark Plug & 3-Valve Engine Prods. Liab. Litig.*, 2014 WL 3778592, at *32-33 (N.D. Ohio July 30, 2014) (plaintiffs argued that defect was present during the express warranty period, and that it also manifested during that period).

[13] This argument was rejected in a case with nearly identical warranty terms. *See Rollolazo v. BMW of N. Am., LLC*, 2017 WL 6888501, at *10-11 (C.D. Cal. May 2, 2017).

any facts to support their claim that presentment would be futile—it is pure speculation for Plaintiffs to declare futility by fiat, without ever attempting to present their vehicles for repair (particularly where some vehicles are subject to recall and thus eligible for repairs). *See, e.g.*, *Clark v. Am. Honda Motor Co.*, 528 F. Supp. 3d 1108, 1118 (C.D. Cal. 2021) (dismissal of warranty claims justified by failure to present vehicles for repair).

## IV.   Plaintiffs Fail to State Valid Implied Warranty Claims.

### A.   Plaintiffs Fail to Allege Privity.

Plaintiffs do not dispute (and thus concede) that 20 of the 25 states identified by Defendants require vertical contractual privity, which they lack. Opp. at 19. They do not argue that any Plaintiff bought or leased vehicles directly from any Defendant. Instead, Plaintiffs argue that privity is not required in five states—California, North Carolina, Kansas, Rhode Island, and West Virginia[14]—and that in certain other states, their alleged purchases fall within exceptions to the privity rule.[15] Plaintiffs are wrong on all counts.

In California, while privity is not required for claims under the Song-Beverly Act, Plaintiffs are asserting an implied warranty claim under § 2314 of the California Commercial Code, which *does* require privity. *See Blanco v. Baxter Healthcare Corp.*, 158 Cal. App. 4th 1039, 1058-59 (2008). For North Carolina and Rhode Island, Plaintiffs cite statutory

---

[14] No Plaintiff resides or purchased a vehicle in Rhode Island or West Virginia.

[15] Plaintiffs argue that privity is a fact issue that cannot be resolved on the pleadings, citing *Kilgore v. Bos. Sci. Corp.*, 2015 WL 5838513, at *4-5 (S.D. W. Va. Oct. 5, 2015). Opp. at 20 n.25. *Kilgore* is a summary judgment motion ruling—it does not address whether privity can be decided on the pleadings. It can be and routinely is. *See* ECF No. 181-5 at 6-7.

provisions that purportedly relax the vertical privity requirements in certain contexts, but both states require privity for claims based on economic loss. *See Blackman v. Boston Whaler, Inc.*, 649 F. Supp. 3d 142, 149-50 (E.D.N.C. 2023); *Ace Am. Ins. Co. v. Grand Banks Yachts, Ltd.*, 587 F. Supp. 2d 697, 708 (D. Md. 2008) (applying Rhode Island law). And the Kansas Supreme Court has resolved any uncertainty about the privity requirement in Kansas. Plaintiffs rely on *Gonzalez v. Pepsico, Inc.*, 489 F. Supp. 2d 1233, 1246 (D. Kan. 2007), which holds that the Kansas Product Liability Law overrides the Kansas UCC and eliminates the privity requirement in consumer transactions. But *Gonzalez* acknowledged that it was simply predicting how the Kansas Supreme Court would rule. *Id.* at 1243-46. The Kansas Supreme Court has repeatedly held that privity is required for implied warranty claims seeking economic damages under the Kansas UCC. *See* ECF No. 181-5 at 6.

Plaintiffs are also wrong that exceptions permit them to bring implied warranty claims despite their lack of privity. None of the invoked exceptions apply or are supported by plausible allegations.

- **Third-Party Beneficiary:** Plaintiffs claim that six states recognize a third-party beneficiary exception to privity, but they plead no facts to establish that they qualify as third-party beneficiaries of contracts between Defendants and the independent dealerships that sold new vehicles. Nor do Plaintiffs show that any such contracts exist between any Defendant and the unrelated third parties that sold used vehicles to other Plaintiffs, like CarMax, Carvana, original vehicle owners, unspecified sellers, and others. *See* Mot. at 14-15.[16] The third-party beneficiary exception accordingly does not apply. *See In re ZF-TRW Airbag Control Units Prods. Liab. Litig.*, 601 F. Supp. 3d 625, 808-809 (C.D. Cal. 2022) (dismissing warranty claims for failing to allege plaintiffs were intended beneficiaries).

---

[16] The Opposition points to ¶¶ 440-41, 1132-33, 1201-02 of the Complaint, but those allegations are unrelated to third-party beneficiary status. Opp. at 19.

- **Agency:** Plaintiffs argue that other states allow agency relationships to obviate privity requirements and that independent car dealers are agents of Defendants. Opp. at 19. But Plaintiffs have not alleged facts to plausibly suggest an agency relationship between Defendants and any dealerships, which are independent third-party businesses.[17] Nor could Plaintiffs plead an agency relationship between any Defendant and the unrelated sellers from whom many Plaintiffs purchased used vehicles. While Plaintiffs characterize agency as a fact issue that cannot be resolved on the pleadings, dismissal is warranted where, as here, a plaintiff fails to plausibly allege agency to begin with. *See Kahn v. Volkswagen of Am., Inc.*, 2008 WL 590469, at *8 (Conn. Super. Ct. Feb. 13, 2008); *Napoli-Bosse v. Gen. Motors LLC*, 2022 WL 3585769, at *7 (D. Conn. Aug. 22, 2022), *aff'd*, 2023 WL 7485796 (2d Cir. Nov. 13, 2023) (plaintiff failed to show agency because he did "not make any effort to satisfy [the agency] elements").

- **Express Warranties:** Next, Plaintiffs argue that the privity requirement is "relaxed" in Illinois, Ohio, Tennessee, and Washington because Defendants "issued express warranties." Opp. at 20; App'x A, Chart 3. Plaintiffs are wrong. *See* Reply Ex. 1.

- **New York:** Plaintiffs attempt to raise a purported "dangerous products" exception under New York law, citing *Doll v. Ford Motor Co.*, 814 F. Supp. 2d 526, 540-41 (D. Md. 2011). But the authority that case relies upon has been rejected by numerous courts in New York. *See In re ZF-TRW*, 601 F. Supp. 3d at 834-35 (citing authorities).

- **Arizona:** Plaintiffs argue that Arizona law recognizes an exception to the privity rule in cases of fraud. But their cited case, *In re FCA US LLC Monostable Elec. Gearshift Litig.*, 355 F. Supp. 3d 582,594 (E.D. Mich. 2018), does not address an implied warranty claim under Arizona law, and Plaintiffs do not cite any other case applying a fraud exception to implied warranty claims.

## B.    Plaintiffs Do Not Allege Pre-Suit Notice.

Plaintiffs contend that state law pre-suit notice requirements violate Federal Rules of Civil Procedure 3 and 9(c), but federal courts routinely dismiss implied warranty claims for lack of pre-suit notice. Defendants cited 39 federal decisions dismissing (or affirming the

---

[17] The Opposition cites ¶¶ 440, 905, 1362, 1597, 1738, and 4043 of the Complaint, but again, these paragraphs say nothing about agency Opp. at 19. *See* Reply Ex. 1.

dismissal of) implied warranty claims on this basis, and Plaintiffs rebut none of them. Plaintiffs' suggestion that all of these courts got it wrong—and consistently misapplied the Federal Rules of Civil Procedure in the process—is not credible.[18]

Plaintiffs also argue that "many states only require notice for sellers," not manufacturers like Defendants. Opp. at 21. But Plaintiffs allege Defendants *are* "sellers" with respect to the implied warranty.[19] Plaintiffs are accordingly required to plead pre-suit notice regardless of how they choose to characterize Defendants. *See also* Reply Ex. 1.

Plaintiffs claim next that service of a complaint suffices as notice of an implied warranty claim in 13 states, that notice is excused because Defendants had "actual knowledge" of the alleged defect, and that a pre-suit demand would have been futile. As discussed below, Plaintiffs have not plausibly alleged actual knowledge. With respect to whether filing a complaint is sufficient notice, Plaintiffs are incorrect about the law or, at most, identify a split of authority within certain jurisdictions. *See* Reply Ex. 1. The weight of authority and public policy underlying notice requirements require Plaintiffs to provide notice *before* filing suit. *See Lamb v. Graco Children's Prods. Inc.*, 2012 WL 12871963, at *2 (N.D. Fla. Jan. 24, 2012) (goal of requirement is to give an opportunity to cure); *see* Reply Ex. 1.

Finally, Plaintiffs allege no facts to suggest that pre-suit notice would have been futile.

---

[18] Plaintiffs argue that state pre-suit notice requirements for warranty claims are displaced by Rule 3, but rely on irrelevant medical malpractice cases addressing whether an affidavit of merit from a medical provider is required for a complaint in federal court. *See, e.g., Albright v. Christensen*, 24 F.4th 1039 (6th Cir. 2022); *Pledger v. Lynch*, 5 F.4th 511 (2d Cir. 2021).
[19] *See, e.g.*, Compl. ¶¶ 458; 526; 595; 663; 733; 848; 917; 985; 1073; 1144; 1213; 1303.

They speculate that Defendants could not have replaced the airbag inflators in their vehicles or that they would not have taken other steps to resolve Plaintiffs' concerns. Plaintiffs make no effort to address or distinguish the authorities cited by Defendants, which reject these kinds of speculative, conclusory allegations. Mot. at 16-17. And because Plaintiffs have never sought repairs, Plaintiffs' cited authorities are inapposite. *See Sloan v. Gen. Motors LLC*, 287 F. Supp. 3d 840, 884 (N.D. Cal. 2018) (pre-suit demand futile where plaintiffs alleged GM failed to cure defects or damage caused when plaintiffs sought repairs).

### C.   Plaintiffs Have Not Sufficiently Alleged Unmerchantability.

Plaintiffs concede that they have driven their vehicles for years—in some cases decades—without incident, yet maintain that their vehicles have been "unsafe to drive" all along. This claim contravenes the weight of authority holding that "an automobile that was driven for years without problems [is] merchantable and fit for its ordinary use at the time of sale." *Szymczak v. Nissan N. Am., Inc.*, 2011 WL 7095432, at *11 (S.D.N.Y. Dec. 16, 2011); *Sheris v. Nissan N. Am., Inc.,* 2008 WL 2354908, at *6 (D.N.J. June 2, 2008).

Plaintiffs argue that a vehicle must be safe and reliable at the time of sale to qualify as fit for its ordinary purpose. Yet they allege no safety incidents or reliability issues regarding their vehicles. Plaintiffs cite *In re MyFord Touch Consumer Litigation*, 46 F. Supp. 3d 936, 980 (N.D. Cal. 2014), but the plaintiffs in that case claimed to have experienced the defect that allegedly rendered their vehicles unsafe. Speculation about the *potential* for future safety issues does not establish unmerchantability. *See Klein v. Ljubljana Inter Auto d.o.o.*, 2021 WL

14

6424917, at *4 (C.D. Cal. Sept. 13, 2021) (without manifestation a defect "cannot form the basis of a breach of the implied warranty"); *Szep v. General Motors LLC*, 491 F. Supp. 3d 280, 292-93 (N.D. Ohio 2020) (rejecting warranty claim where plaintiff alleged a safety risk but no manifestation).

### D.   Plaintiffs Do Not Allege Unconscionability And Cannot Override The Durational Limitations On Their Implied Warranty Claims.

Plaintiffs argue that the durational limitations on Defendants' implied warranties are unconscionable and unenforceable. But the Complaint contains no allegations about unconscionability—Plaintiffs say nothing about disparate bargaining power, a lack of meaningful choice in negotiating warranties, or any supposed inability to review or digest the terms of the warranties when they bought their cars. Opp. at 24. To the contrary, Plaintiffs allege that they read the express warranties, relied on them, and viewed their terms as part of the basis of the bargain.[20] These allegations foreclose the *post hoc* unconscionability argument Plaintiffs introduce in their Opposition. *See Sater v. Chrysler Grp. LLC*, 2015 WL 736273, at *5, *7 (C.D. Cal. Feb. 20, 2015) (rejecting argument that disclaimer in warranty was unconscionable where plaintiffs alleged they reviewed and relied on the warranty in making their purchase).

Plaintiffs also argue that "[e]ven if the durational limits *were* valid, the defective inflators were present in the Class Vehicles at the point of sale, when the breach of implied

---

[20] *See, e.g.*, Compl. ¶¶ 441, 444, 514, 517, 583, 586, 652, 655, 720, 724, 837, 840, 906, 909, 974, 977, 1062, 1065, 1133, 1136, 1202, 1205, 1292, 1295, 1363, 1366, 1434, 1437.

warranty occurred." Opp. at 24 n.29. But implied warranty claims accrue on the date of delivery. § VIII, *infra*. Claims brought outside the warranty period are untimely.[21]

## V. Plaintiffs Fail to State Valid Fraud Claims.

### A. Plaintiffs Do Not Satisfy Rule 9(b).

The Complaint does not identify *any* specific statements or omissions from *any* Defendant in *any* specific document, advertisement, or conversation at *any* time. This is a classic example of failure to meet the requirements of Rule 9(b). *See Harden v. JP Morgan Chase Bank, N.A.*, 2014 WL 836013, at *5 (N.D. Ga. Mar. 4, 2014) (plaintiffs must specify (1) "what omissions were made"; (2) "the time and place of each such statement and the person responsible for making (or, in the case of omissions, not making) same"; (3) "the content of such statements and the manner in which they misled the plaintiff"; and (4) "what the defendants obtained as a consequence of the fraud.") (citation omitted).

### B. Plaintiffs Fail to Allege Pre-Sale Knowledge.

Plaintiffs fail to plausibly allege that Defendants knew of the alleged defect in Plaintiffs' vehicles at the time of sale, which is fatal to their fraud claims—there is no duty to disclose the unknown. *See Turk v. Morris, Manning & Martin, LLP*, 593 F. Supp. 3d 1258, 1301 (N.D. Ga. 2022); *Mandani v. Volkswagen Grp. of Am., Inc.*, 2019 WL 652867, at *8 (N.D. Cal. Feb.

---

[21] Plaintiffs provided a list of statutes in their Appendix A, but its utility is limited by the lack of supporting explanation, analysis, or application to the facts of this case. For example, that 34 states recognize unconscionability says nothing about whether the durational limitations at issue here are unconscionable. And Plaintiffs do not argue that the remaining 16 states recognize unconscionability, so the Court should reject their argument as to those states.

15, 2019). Plaintiffs do not dispute Defendants' arguments that knowledge cannot be inferred based on (1) NHTSA's investigation, which began in July 2015; or (2) ten field ruptures, most of which occurred after Plaintiffs' vehicle purchases, and which are insufficient in number to establish knowledge of a systemic defect in millions of vehicles *See* Mot. at 24-27.[22]

Instead, Plaintiffs contend that their allegations about the design and testing of the subject inflators are sufficient to show Defendants' pre-sale "knowledge" of a defect in millions of vehicles. Opp. at 29-30. But these allegations lack specificity on the details of the design and testing, including any information to suggest that supposed involvement in the design or test results would alert Defendants to a defect in "all" ARC inflators. *Mandani v. Volkswagen Grp. of Am., Inc.*, 2019 WL 652867, at *8 (N.D. Cal. Feb. 15, 2019) (conclusory allegations of knowledge based on pre-sale design and testing are insufficient); *Hall v. Gen. Motors, LLC*, 2020 WL 1285636, at *3 (E.D. Mich. Mar. 18, 2020) (dismissing fraud claim because plaintiffs failed to "allege any facts about GM's pre-production testing, any particular

---

[22] Plaintiffs lean heavily on their assertion that NHTSA "found" the alleged defect to be a critical safety risk, and allege that Defendants made "representations concealing [that] critical safety risk." *See, e.g.*, Opp. at 29. But Plaintiffs concede that NHTSA's defect conclusion is "preliminary," and that NHTSA still has not found, and may never find, any non-*de minimis* safety risk in many of the subject vehicles. Opp. at 33. And NHTSA's "preliminary" finding was issued in September 2023, long after Plaintiffs purchased their vehicles and long after this litigation began. Additionally, NHTSA recently supplemented its findings with its own analyses predicting that, among 52 million ARC inflators, there will be fewer than three ruptures in the next 30 years, a failure rate courts have held to be *de minimis*—and therefore not a safety defect—*as a matter of law. See, e.g.*, *United States v. Gen. Motors Corp.*, 518 F.2d 420, 438 n.84 (D.C. Cir. 1975); *United States v. Gen. Motors Corp.*, 656 F. Supp. 1555, 1558 (D.D.C. 1987), *aff'd*, 841 F.2d 400 (D.C. Cir. 1988).

analysis GM completed based on that testing, or GM's repair order and parts data that, if proven, would establish GM's pre-sale knowledge[.]"); *Ambrose v. Gen. Motors LLC*, 2022 WL 3701946, at *18 (E.D. Mich. Aug. 26, 2022) (allegations about GM's unspecified testing and analysis of its parts insufficient to support a plausible inference that GM had pre-sale knowledge of the alleged defect). The single field rupture Plaintiffs cite is insufficient to show knowledge of a systemic design defect across all manufacturers, vehicles, makes, and models.[23] *See Resnick v. Hyundai Motor Am., Inc.*, 2016 WL 9455016, at *13 (C.D. Cal. Nov. 14, 2016) (customer complaints showed issues with specific cars, not widespread defect); *Sloan v. Gen. Motors LLC*, 2017 WL 3283998 (N.D. Cal. 2017) (81 complaints over seven years is insufficient to establish knowledge).

## C.    Plaintiffs Do Not Plausibly Allege a Duty to Disclose.

None of Plaintiffs' arguments support a duty to disclose.[24]

***No Superior Pre-Sale Knowledge.*** As explained above, Plaintiffs do not adequately allege that Defendants had knowledge—much less superior knowledge—of a defect, which is required to trigger the duty to disclose in certain states. *See* § V.B *supra*. Nor have they plausibly alleged an agency relationship between Defendants and independent auto

---

[23] Indeed, FCA US did not even *exist* at the time of this rupture.

[24] Plaintiffs' claim that "neither Arizona nor Maine requires a duty to disclose[,]" citing their Appendix B. Opp. 31, n. 34. But Appendix B contains only two tables, neither of which relates to the duty to disclose. And while Plaintiffs claim that Georgia Plaintiffs who purchased used vehicles have a sufficient relationship to trigger a duty to disclose, Georgia courts say otherwise. *See McCabe v. Daimler AG*, 160 F. Supp. 3d 1337, 1352 (N.D. Ga. 2015) (no duty to disclose to purchasers of used vehicles).

dealerships. *See* § IV.A, *supra.*

**No "Safety Defect" Exception.** Plaintiffs claim that courts "routinely" impose a duty to disclose in the context of a safety defect, Opp. at 33, but they cite no support for such an exception in the vast majority of states at issue. The few authorities Plaintiffs do provide do not impose a duty to disclose under the allegations here. For example, *McCabe v. Daimler AG*, 948 F. Supp. 2d 1347 (N.D. Ga. 2013), involved a defect the plaintiffs alleged they actually experienced (a noticeable gas leak), *id.* at 1354, and even based on these allegations, the court found the defendant had a duty to disclose in some but not all jurisdictions at issue. *Id.* at 1370-71 (no duty to disclose under Florida and Illinois law). Plaintiffs here do not claim that the alleged defect manifested in their vehicles, or even that it will ever manifest. And in Plaintiffs' other case, *Lassen v. Nissan N. Am., Inc.*, 211 F. Supp. 3d 1267 (C.D. Cal. 2016), the court *granted* the automakers' motion and dismissed fraud claims based on an alleged safety defect, without leave to amend, *id.* at 1286-87, because "[n]one of the states whose law is implicated in these actions appear to impose a general duty to disclose." *Id.* at 1284-88.

Finally, Plaintiffs rely on language from *In re Takata Airbag Prods. Liab. Litig.*, 524 F. Supp. 3d 1266 (S.D. Fla. 2021), suggesting that the "hidden nature" of a defect is a "special circumstance" that triggers a duty to disclose (*id* .at 1289). Opp. at 33. But this holding—which is limited to Georgia law—was based on a prior ruling in the case, which the court acknowledged did not "specifically analyze" Georgia law. *Takata*, 524 F. Supp. 3d at 1289. The court recognized that its holding contravened existing authority, *McCabe v. Daimler AG*,

160 F. Supp. 3d 1337, 1351 (N.D. Ga. 2015), which imposes no duty to disclose "outside of a confidential or special relationship." *Takata*, 524 F. Supp. 3d at 1288-89. On this point, this Court should follow the more persuasive *McCabe*, not *Takata*.

*No Active Concealment.* Plaintiffs argue that Arizona, Florida, Indiana, Massachusetts, and Ohio impose a duty to disclose if a defendant actively conceals material information. Opp. at 34, n.37. But Plaintiffs provide no case law in support of this proposition. While they cite their Appendix B, that appendix addresses only the economic loss doctrine and manifestation in the context of fraud claims, not the duty to disclose. *See* n.24 *supra*. Nor do Plaintiffs distinguish the Defendants' authority in Appendix C.1 to their Brief. Regardless, Plaintiffs fail to allege active concealment by any Defendant, much less with particularity. *See* § V.A *supra*.

*No Partial Misrepresentation.* Plaintiffs contend that their allegations "give rise to a duty to disclose under numerous states' laws," citing Appendix B. But again, that appendix does not address the duty to disclose or partial misrepresentations. *See* n.24 *supra*. Nor do Plaintiffs distinguish the duty-to-disclose case law Defendants cite in Appendix C.1 to their opening brief. Plaintiffs fail to allege *any* misrepresentation (partial or otherwise) by *any* Defendant that might trigger a duty to disclose in certain states. *See* § V.A *supra*.

## D.   Plaintiffs Fail to Allege Reliance or Causation.

Plaintiffs mistakenly claim that, under California, Illinois, Maryland, and New York law, reliance on omissions is presumed. But Illinois and New York recognize no such

presumption.[25] And to the extent California and Maryland do allow a presumption, it is limited to omissions that are *uniform*.[26] Plaintiffs cannot plausibly show "uniform" marketing by claiming, in conclusory terms, that all Class Vehicles suffer from the same alleged defect and were all marketed in the same way. *See, e.g.*, *Sotelo v. Rawlings Sporting Goods Co., Inc.*, 2020 WL 6694333, at *6 (C.D. Cal. 2020) (plaintiff could not show "uniform" misrepresentations by claiming that defendant intentionally misrepresented the weights of all of its bats, across all models; plaintiff was required to allege the specific weight discrepancy that applied to each model). Despite bringing their fraud claims "Against the Automaker Defendants" collectively (*see, e.g.* Compl. ¶¶ 107-33 (emphasis added)), Plaintiffs never allege that Defendants' advertisements of their different vehicle makes and models—*collectively*—are uniform. *Id.* at ¶¶ 142-255. Nor can Plaintiffs credibly claim that marketing was "uniform" *within* each Defendant, where they define "Class Vehicles" to include scores of makes and models produced over years or even decades. Nor do they plausibly allege that all Plaintiffs were exposed to any uniform marketing, especially where the Plaintiffs include purchasers of used vehicles. No presumption of reliance or causation applies.

---

[25] *See De Bouse v. Bayer*, 922 N.E.2d 309, 316 (Ill. 2009) (ICFA claim requires that plaintiff be actually deceived by an omission by the defendant); *Redtail Leasing, Inc. v. Bellezza*, 1997 WL 603496, at *7 (S.D.N.Y. 1997) ("[C]ommon law fraud claims do not enjoy a presumption of reliance once a material omission [is] sufficiently pleaded.").

[26] *Russ v. Apollo Grp., Inc.*, 2010 WL 11515297, at *6 (C.D. Cal. 2010) (no reliance presumption unless plaintiffs can show a uniform omission is made to each class member); *see In re Marriott Int'l, Inc., Customer Data Sec. Breach Litig.*, 341 F.R.D. 128, 160 (D.Md. 2022) (a uniform omission is "uniformly applicable" to the putative class).

### E.    The Economic Loss Rule Bars Plaintiffs' Claims.

Plaintiffs do not dispute that in 27 states, the economic loss rule applies to their fraud-based claims, and they do not dispute that they seek to recover only economic loss here. Mot. at 23. Plaintiffs rely on purported exceptions to that rule (*see* Opp. App'x B) but fail to meaningfully distinguish Defendants' cases[27] and otherwise rely on inapposite authority.[28]

### F.    Manifestation Requirements Bar Many of Plaintiffs' Claims.

Plaintiffs argue that the majority of relevant jurisdictions "do not require manifestation" for fraud and consumer protection claims, relying on *In re Gen. Motors LLC Ignition Switch Litigation*, 339 F. Supp. 3d 262, 276 (S.D.N.Y. 2018). Opp. at 37-38. But far from holding that a majority of jurisdictions do not require manifestation, the *Ignition Switch* court addressed the narrower question of whether manifestation was required for consumer protection claims in 21 states[29] and common law fraud claims in 23 states.[30] *Ignition Switch*, 229 F. Supp. 3d at 277-301. Only five of these states[31] were among those identified by Defendants as not requiring manifestation. Mot. at 23-24. Even for these states, the court declined to impose a manifestation requirement "absent state law to the contrary," *id.* at 277, and here Defendants

---

[27] Plaintiffs' attempts to distinguish Defendants' cases largely miss the mark. *See* Opp. at 37, n.42. For example, Plaintiffs challenge *Madden v. Sheehy Ford of Marlow Hts., Inc.*, 2023 WL 5218103, at *16 (Md. App. Ct. Aug. 15, 2023) but Defendants never cited that case.

[28] *See* Reply Ex. 2, refuting Plaintiffs' authorities.

[29] AK, AZ, CO, CT, IA, KS, KY, MS, MT, NV, NJ, NM, ME, NE, OH, OR, RI, SD, TN, WA, and WV.

[30] AK, AZ, CO, CT, GA, ID, IN, IA, KS, MN, MS, MT, NE, NJ, NM, NV, OR, RI, SD, TN, VT, WA, and WV.

[31] AL, MT, NJ, OR, and WA.

have identified the "state law to the contrary." Mot. at App'x. C.1; Reply Ex. 2.

### G.     Other State-Specific Issues Bar Plaintiffs' Fraud-Based Claims.

#### 1.     Fraudulent Concealment/Omission Not a Cause of Action.

Plaintiffs cite federal cases from Arkansas, Missouri, Montana, and Texas to argue that these states recognize fraudulent concealment or omission as a stand-alone claim. But the defendants in those cases never challenged the propriety of fraudulent concealment as a stand-alone claim,[32] so the issue was not before the court. The state supreme courts in all four states have specifically held that fraudulent concealment is ***not*** a stand-alone claim.[33] Plaintiffs also argue that the California False Advertising Law allows omission-based claims where the omission is "contrary to a representation actually made by the defendant" or "a fact the defendant was obliged to disclose." Opp., at 38-39. But no California Plaintiff alleges exposure to, much less reliance on, any ***specific*** representation from any Defendant; instead, they offer the same boilerplate allegations. *See, e.g.,* Compl., ¶¶ 156, 169, 176, 181, 182, 186, 220, 222, 240, 244; Mot. at 31-32. Nor do Plaintiffs adequately allege a duty to disclose. *See* Mot. at 27-30; § V.C, *supra*.

---

[32] *Rath* v. *BHP Billiton Petroleum (Ark.), Inc.*, 2013 WL 6632273 (E.D. Ark. 2013). **MO**: *Pollard v. Remington Arms Co., LLC*, No. 4:13-cv-0086 (W.D. Mo. Apr. 1, 2013), ECF No. 25 at7-9.   **MT**: *Northland Cas. Co. v. Mulroy*, No. 9:13-cv-232 (D. Mont. May 30, 2014), ECF No. 12 at 8-9.   **TX**: *Renteria v. Pennloma, LLC*, No. 3:17-cv-00358 (W.D. Tex. Feb. 23, 2018), ECF No. 30, pp. 6-10.

[33] *Barre v. Hoffman*, 326 S.W.3d 415 (Ark. 2009) (fraudulent concealment not a cause of action); *Hess v. Chase Manhattan Bank, USA, N.A.*, 220 S.W.3d 758 (Mo. 2007) (same); *Wolfe v. Flathead Electric Cooperative, Inc.*, 431 P.3d 327 (Mont. 2018) (same); *Gaona v. Garland Surgicare Partners, Ltd.*, 2016 WL 4189343, *3 (Tex. Ct. App. 2016) (same).

### 2.    No Intent to Defraud.

For North Carolina, Plaintiffs argue that their allegations about Defendants' knowledge of the alleged defect "afford a plausible inference of intent." Opp. at 39. But for the reasons already explained, Plaintiffs have not plausibly alleged Defendants' pre-sale knowledge, much less any specific intent to deceive. Plaintiffs' claims are predicated on Defendants' purported breaches of warranty (Compl. ¶¶ 2883-96), but North Carolina requires allegations of "egregious or aggravating circumstance" showing Defendants "made false and misleading statements" that were intended to be relied upon. *Gunn v. Simpson, Schulman & Beard, LLC*, 2011 WL 4431739, at *12 (N.C. Super. Ct. 2011). Plaintiffs offer no such allegations here.[34]

### 3.    Certain States Preclude Injunctive Relief.

Plaintiffs ignore that injunctive relieve is unavailable in Oklahoma and North Dakota.

- **Oklahoma**: Plaintiffs correctly state that the Oklahoma Consumer Protection Act does not expressly bar injunctive relief, Opp. at 39, but they ignore that this relief is available only to the Attorney General in an enforcement action. *See* Okla. Stat. Ann. tit. 15, § 756.1.A.

- **North Dakota**: The North Dakota Consumer Fraud Act specifies that injunctive relief is available to the "attorney general" under N.D. Cent. Code § 51-15-07. That provision does not permit private parties to obtain injunctive relief. At least one court has dismissed an NDCFA claim on the basis that it does not allow private parties to obtain injunctive relief. *See Chapman v. Gen. Motors LLC*, 531 F. Supp. 3d 1257, 1302–03 (E.D. Mich. 2021).

### 4.    Ohio Requires Notice of a Previous Violation.

Plaintiffs' cited authority establishes that the notice requirement of the Ohio Consumer

---

[34] Plaintiffs fail to dispute, and thus concede, that their claim under the Indiana Deceptive Consumer Sales Act (IN Count 3) must be dismissed. *See* Opp. at 39.

Sales Practices Act is satisfied only where a plaintiff provides defendant prior notice that substantially similar conduct is deceptive or unconscionable "as declared by either (1) a rule adopted by the Ohio Attorney General, or (2) an Ohio state court holding." *Chapman v. Tristar Prods., Inc.*, 2016 WL 6216135, at *3 (N.D. Ohio Oct. 25, 2016). The Complaint never alleges that Defendants engaged in conduct meeting either criterion. *Phillips v. Philip Morris Cos. Inc.*, 290 F.R.D. 476, 478-82 (N.D. Ohio 2013) (holding that the OCSPA's notice provision is not preempted). The rule Plaintiffs cite in their Opposition is not specific enough to put Defendants on notice. *Compare* Opp. at 40, *with St. Clair v. Kroger Co.*, 581 F. Supp. 2d 896, 901 n.5 (N.D. Ohio 2008) (denying leave to amend as futile where rule did not refer to particular acts and thus was "too generic" to provide notice).

### 5. Michigan and Oklahoma Exempt Motor Vehicle Sales.

- **Michigan**: Plaintiffs argue that motor vehicle sales are not exempted from the MCPA and that Defendants "fail to identify any statute or regulation encompassing Plaintiffs' claims." Opp. at 41. To clarify, the pertinent statute is the Michigan Motor Vehicle Code, which authorizes and regulates "the sale of a new car by a licensed dealer"—the conduct at issue here. *See Matanky v. Gen. Motors LLC*, 370 F. Supp. 3d 772, 800 (E.D. Mich. 2019). The MCPA claim is plainly exempted. *See id.* (dismissing MCPA claim at the pleadings stage).

- **Oklahoma**: Plaintiffs argue that the OCPA does not exempt motor vehicle sales because Defendants' cited case held that Oklahoma's regulatory scheme covered the "mishandling of a recall," which is not currently at issue here. Opp. at 41 n.47. But Plaintiffs ignore other authority finding that "misrepresentations in the advertising of motor vehicles are governed by this provision and are thus exempt from the [OCPA]." *See Sweeny v. Toyota Motor Sales, U.S.A., Inc.*, 2023 WL 2628697, at *14 (C.D. Cal. Feb. 9, 2023).

### 6. Adequate Legal Remedies Bar Certain Equitable Claims.

Plaintiffs concede they have adequate legal remedies, but claim a right to pursue equitable relief under California, Georgia, New York, and Alabama law. They are mistaken.

- **California:** Plaintiffs cite *Braco v. Super. Court,* 2002 WL 472257, at *2 (Cal. App. 2002), but that case is unpublished and thus not precedential. *See Hild v. Cal. Sup. Ct.*, 2008 WL 544469, at *3 (N.D. Cal. Feb. 26, 2008). And *Deras v. Volkswagen Grp. Of Am., Inc.*, 2018 WL 2267448, at *6 (N.D. Cal. May 17, 2018), was overruled by *Sonner v. Premier Nutrition Corp.*, 971 F.3d 834, 844 (9th Cir. 2020), which held that plaintiffs seeking equitable relief under the UCL or CLRA must show that they lack an adequate remedy at law. *See Ibarra v. Pharmagenics LLC*, 660 F. Supp. 3d 914, 922-23 (C.D. Cal. 2023) (applying *Sonner* to dismiss claims for failure to allege a lack of an adequate legal remedy).

- **Georgia:** Plaintiffs argue that *Brogdon v. Nat'l Healthcare Corp.*, 103 F. Supp. 2d 1322, 1336 (N.D. Ga. 2000), does not foreclose alternative remedies (Opp. at 42), but *Brogdon* held that the Georgia Fair Business Practices Act "does not provide a cause of action when adequate administrative or legal remedies exist." *Brogdon*, 103 F. Supp. 2d at 1336.

- **New York:** Plaintiffs concede that "equitable relief" is unavailable in New York without alleging the lack of an adequate legal remedy. Opp. at 42. Plaintiffs assert that "injunctive relief" does not constitute "equitable relief," but cite no authority in support.

- **Alabama:** While some federal courts have allowed Alabama Deceptive Trade Practices Act and common law fraud claims to proceed in the alternative (Opp. at 42 n.48), the Alabama Supreme Court made clear, "the remedies under the [ADTPA] and those otherwise available are mutually exclusive." *Ford Motor Co. v. Sperau*, 708 So. 2d 111, 122 n.7 (Ala. 1997); *Zeagler v. Custom Auto, Inc.*, 880 F.2d 1284 (11th Cir. 1989) (same).

## 7.    Certain States Require Adequate Pre-Suit Notice.

Plaintiffs suggest that they complied with the pre-suit notice requirements under the state consumer protection laws of Alabama, California, Georgia, Massachusetts, and Ohio, citing ¶¶ 456, 529, and 768 of the Complaint. Opp. at 43. But those paragraphs simply refer to other unspecified "paragraphs addressing Defendants' notice, above"—which appear nowhere in the Complaint—and, in any event, say nothing about *when* any notice was provided. Plaintiffs also direct the Court to "detailed pre-suit notice letters in June 2023" (Opp. at 43)—after this litigation was filed—but again, the Complaint does not mention these letters.

Finally, Plaintiffs argue that the notice requirements do not apply to certain of their

claims. They argue that in *In re FCA US LLC Monostable Elec. Gearshift Litig.*, 280 F. Supp. 3d 975, 1004 (E.D. Mich. 2017), the court held that the California law does not require pre-suit notice. Opp. at 43. But the court so held only because the defendant never identified any of the many authorities that mandated pre-suit notice. 280 F. Supp. 3d at 1004. By contrast, Defendants here have cited ample authority. *See* ECF No. 181-7 at 20.

### 8.    Certain States Require Actual and Tangible Financial Loss.

Plaintiffs say they allege "cognizable losses" under the consumer protection laws of Arkansas, Georgia, Illinois, New York, and Montana. Opp. at 44-45. They are wrong.

- **Arkansas**: Plaintiffs do not argue that they were denied the benefit of their bargain, *i.e.* their vehicles. *Compare* Compl, ¶ 685, *with Parnell v. FanDuel, Inc.*, 591 S.W.3d 315, 319–20 (Ark. 2019). Instead, they claim their vehicles "had less economic value than represented by" Defendants. *Id.* This fails to state an ADTPA claim because Plaintiffs do not allege that they tried and failed to resell their vehicles at market value. *Id.* at 320.

- **Georgia:** Plaintiffs argue that *Edel v. Southtowne Motors of Newnan II, Inc.*, 789 S.E.2d 224, 228 (Ga. Ct. App. 2016), reversed summary judgment because plaintiffs alleged they would not have purchased their vehicles had the information been disclosed. Opp. at 44. But this language speaks to *reliance*. 789 S.E.2d at 228. Plaintiffs ignore the part of *Edel*'s separate holding affirming summary judgment for lack of actual damages. *Id.*

- **Illinois:** Plaintiffs' reliance on *Connick v. Suzuki Motor Co.* is misplaced, as it deals with materiality rather than damages. 675 N.E.2d 584, 595 (Ill. 1996). And *Jamison v. Summer Infant (USA), Inc.,* 778 F. Supp. 2d 900 (N.D. Ill. 2011), is an outlier. *Compare Stemm v. Tootsie Roll Indus., Inc.*, 374 F. Supp. 3d 734, 743-44 (N.D. Ill. 2019) (ICFA claim not salvaged by allegations that knowledge of the defect would have prevented purchase).

- **Montana:** Plaintiffs rely on *Puryer v. HSBC Bank USA, Nat'l Ass'n*, 419 P.3d 105, 115 (Mont. 2018), but that case was decided three years before *Aiking-Taylor v. Serang*, 485 P.3d 746 (Mont. 2021), *cert. denied.*, 144 S. Ct. 216 (2023), and the latter controls. No Plaintiff has tried and failed to sell his or her vehicle for the purchase price (minus depreciation), as required under *Aiking-Taylor*.

- **New York:** Plaintiffs fail to address *Brady v. Basic Rsch., L.L.C.*, which "specifically reject[s] the argument that consumers 'who buy a product that they would not have purchased, absent a manufacturer's deceptive commercial practices, have suffered an injury.'" 101 F. Supp. 3d 217, 236 (E.D.N.Y. 2015) (dismissing claim for lack of injury).

## VI.   Plaintiffs' Unjust Enrichment Claims Fail.

Plaintiffs do not address any of the fatal flaws in their unjust enrichment claims. *First*, these claims sound in fraud, yet Plaintiffs fail to satisfy Rule 9(b). Mot. at 41; *see* § V.A, *supra*. *Second*, California, New Hampshire, and Texas do not recognize unjust enrichment as a stand-alone cause of action. Mot. at 42; ECF No. 181-9 at 6.[35] *Third*, many states reject unjust enrichment where, as here, there is an adequate remedy at law. Mot. at 42; ECF No. 181-9 at 2-4. While Plaintiffs insist they can plead these claims in the alternative, they ignore (and thus concede) Defendants' state-specific authority requiring dismissal of unjust enrichment claims that (as here) are based on the same allegations as legal claims or governed by an express agreement. *See Madrigal v. Hint, Inc.*, 2017 WL 6940534, at *5 (C.D. Cal. Dec. 14, 2017) (a failed contract or tort claim does not mean a legal remedy is unavailable).[36] *Fourth*,

---

[35] Plaintiffs' cited cases (Opp. at 45-46) actually support Defendants' position or are otherwise distinguishable. *McBride v. Boughton*, 20 Cal. Rptr. 3d 115, 121-22 (Cal. Ct. App. 2004) (unjust enrichment not a cause of action or a remedy, "but rather 'a general principle, underlying various legal doctrines and remedies'"); *Gen. Insulation Co. v. Eckman Const.*, 992 A.2d 613, 620-21 (N.H. 2010) (unjust enrichment not an independent cause of action)); *Sw. Bell Tel. Co. v. Mktg. on Hold Inc.*, 308 S.W.3d 909, 923 (Tex. 2010) (same).

[36] Plaintiffs argue that their unjust enrichment claims can proceed because they dispute applicability of the written warranties. Opp. at 47. But this doctrine is meant to prevent plaintiffs from using unjust enrichment to create more rights than the parties expressly agreed to—where a contract (here the express warranty) is not disputed, it bars claims for unjust enrichment under the states listed in Defendants' Motion (some of which Plaintiffs do not address). *See, e.g.*, *In re Porsche Cars N. Am., Inc.*, 880 F. Supp. 2d 801 (S.D. Ohio 2012).

Defendants—remote manufacturers—retained no direct benefit from consumers with whom they do not directly interact. Mot. at 43-44. Plaintiffs do not respond to the state-specific cases finding their contrary assertions unsupported under the relevant states' laws. *See* Mot. at 43-44; ECF No. 181-9. *Last*, Plaintiffs offer no explanation for how purchasers of used vehicles could confer a benefit on the original manufacturer. *See id.*

## VII.   Plaintiffs' Claims for Restitution Should be Dismissed.

Plaintiffs concede they have adequate legal remedies, but insist they can claim restitution in the alternative. Opp. at 48-49. Each Plaintiff fails "to allege that he lacks an adequate remedy at law," so those "alternative" claims are properly dismissed. *Stafford v. Rite Aid Corp.*, 2023 WL 2876109, at *4-6 (S.D. Cal. Apr. 10, 2023) (citing *Sonner*, 971 F.3d 834).

## VIII.   Many Plaintiffs' Claims Are Untimely[37]

Plaintiffs' warranty claims are time-barred based on the face of the Complaint (Mot. at 37–39), and they cite no allegations to the contrary. Warranty claims accrue "when tender of delivery is made," "**regardless of the aggrieved party's lack of knowledge of the breach**," except where a warranty "explicitly extends to future performance[.]" U.C.C. § 2-725(2) (emphasis added). The discovery rule thus does not apply to the warranty claims here because none of the warranties extends to future performance.[38]

---

[37] Specific Plaintiffs' claims against Defendants are addressed in their individual briefs.

[38] Plaintiffs also claim that, despite having no duty to disclose the alleged defect, Defendants took steps to "actively conceal" it. But the Complaint contains no plausible allegations showing active concealment. *See generally* Compl.; Opp.; *see also* Mot. at 27-30; § V.C, *supra*. And, in any event, Plaintiffs still do not satisfy Rule 9(b), which applies to their

## **CONCLUSION**

For these reasons, Defendants respectfully request that the Court dismiss Plaintiffs' claims with prejudice.

Dated: February 16, 2024

        Respectfully Submitted,

        */s/ April N. Ross*

        CROWELL & MORING LLP
        April N. Ross
        Mohamed Awan
        Emily Tucker
        1001 Pennsylvania Avenue NW
        Washington, D.C. 20004
        Telephone: (202) 624-2500
        aross@crowell.com
        mawan@crowell.com
        etucker@crowell.com

        BAKER, DONELSON, BEARMAN,
        CALDWELL & BERKOWITZ, PC
        Linda Ann Klein
        3414 Peachtree Road, Northeast
        Monarch Plaza, Suite 1500
        Atlanta, GA 30326-1164
        404-577-6000
        Email: lklein@bakerdonelson.com

        *Counsel for General Motors LLC*

        */s/ Michael B. Shortnacy*

        SHOOK, HARDY & BACON L.L.P.

---

fraudulent concealment tolling theory, nor have they alleged facts showing knowledge, a prerequisite for concealment. *See, e.g., Yumul v. Smart Balance, Inc*., 733 F. Supp. 2d 1117, 1132-33 (C.D. Cal. 2010); *supra* Section V.A.

Michael B. Shortnacy
2049 Century Park East, Suite 3000
Los Angeles, CA 90067
Telephone: 424.324.3494
Facsimile: 424.204.9093
mshortnacy@shb.com

KING & SPALDING LLP
Livia M. Kiser
Susan V. Vargas
633 West Fifth Street, Suite 1600
Los Angeles, CA 90071
Telephone: 213.443.4355
Facsimile: 213.443.4310
lkiser@kslaw.com
svargas@kslaw.com

*COUNSEL FOR DEFENDANTS AUDI
OF AMERICA, LLC AND
VOLKSWAGEN GROUP OF
AMERICA, INC.*

*/s/ Eric Y. Kizirian*

LEWIS  BRISBOIS  BISGAARD
& SMITH, LLP
Eric Y. Kizirian
Zourik Zarifian
633 West 5th Street, Suite 4000
Los Angeles, CA 90071
Telephone: (213) 250-1800
Facsimile: (213) 250-7900
eric.Kizirian@lewisbrisbois.com
zourik.Zarifian@lewisbrisbois.com

*COUNSEL FOR DEFENDANTS
BMW OF NORTH AMERICA,
LLC AND BMW
MANUFACTURING CO., LLC.*

31

*/s/ David S. Killoran*

DYKEMA GOSSETT LLP
David S. Killoran
444 S. Flower, Suite 2200
Los Angeles, CA 90071
(213) 457-1800
dkilloran@dykema.com

DYKEMA GOSSETT PLLC
Eric Tew
1301 K Street NW
Suite 1100 West
Washington, D.C. 20005
(202) 906-8600
etew@dykema.com

*COUNSEL FOR DEFENDANT*
*PORSCHE CARS NORTH AMERICA,*
*INC.*

*/s/ Stephen A. D'Aunoy*

THOMPSON COBURN LLP
Stephen A. D'Aunoy
Thomas L. Azar, Jr.
One US Bank Plaza
St. Louis, MO 63101
(314) 552-6000
sdaunoy@thompsoncoburn.com
tazar@thompsoncoburn.com

KLEIN THOMAS LEE & FRESARD
Fred Fresard
Ian Edwards
Lauren Fibel
101 W. Big Beaver Road, Ste. 1400
Troy, MI 48084
Phone: (248) 509-9270
Fred.Fresard@kleinthomaslaw.com
Ian.Edwards@kleinthomaslaw.com
Lauren.Fibel@kleinthomaslaw.com

32

*COUNSEL FOR DEFENDANT FCA US LLC*

*/s/ Perry W. Miles IV*

MCGUIREWOODS LLP
Perry W. Miles IV
Brian D. Schmalzbach
800 East Canal Street
Richmond, VA 23219
Tel: (804) 775-1000
Fax: (804) 775-1061
pmiles@mcguirewoods.com
bschmalzbach@mcguirewoods.com

Lee K. Royster
201 North Tryon Street
Suite 3000
Charlotte, NC 28202
Tel: (704)-343-2000
Fax: (704) 343-2300
lroyster@mcguirewoods.com

WATSON SPENCE LLP
Michael R. Boorman
Phillip A. Henderson
999 Peachtree St NE
Suite 1130
Atlanta, GA 30309
Tel: (678) 433-6586
Fax: (229) 436-6358
mboorman@watsonspence.com
phenderson@watsonspence.com

*COUNSEL FOR DEFENDANT FORD MOTOR COMPANY*

*/s/ Eric S. Mattson*

SIDLEY AUSTIN LLP
Eric S. Mattson
Kendra Stead
Ankur Shingal
One South Dearborn St.
Chicago, IL 60603
Telephone: (312) 853-7000
Fax: (312) 853-7036
emattson@sidley.com
kstead@sidley.com
ashingal@sidley.com

Ellyce R. Cooper
1999 Avenue of the Stars
17th Floor
Los Angeles, CA 90067
Telephone: (213) 896-6000
Fax: (213) 896-6600
ecooper@sidley.com

BOWMAN AND BROOKE
Joel H. Smith
Patrick J. Cleary
1441 Main St., Ste. 1200
Columbia, SC 29201
Telephone: (803) 726-7422
Fax: (803) 726-7421
Joel.smith@bowmanandbrooke.com
patrick.cleary@bowmanandbrooke.com

DYKEMA GOSSETT, PLLC-MI
James P. Feeney
Suite # 300
39577 Woodward Avenue
Bloomfield Hills, MI 48304
Telephone: (248) 203-0841
Fax: (855) 243-9885
Email: jfeeney@dykema.com

NELSON MULLINS RILEY &
SCARBOROUGH LLP
Anita Wallace Thomas
Suite 1700
201 17th Street, N.W.
Atlanta, GA 30363
Telephone: (404) 322-6000
Fax: (404) 322-6050
anita.thomas@nelsonmullins.com

*COUNSEL FOR DEFENDANTS KIA
AMERICA, INC. AND HYUNDAI MOTOR
AMERICA*

## **RULE 7.1D CERTIFICATE**

The undersigned hereby certifies that the foregoing brief was prepared using 14-point Times New Roman font, in accordance with Local Rule 5.1C.

Dated this 16th day of February, 2024.

/s/ April N. Ross

CROWELL & MORING LLP
April N. Ross
Mohamed Awan
Emily Tucker
1001 Pennsylvania Avenue NW
Washington, D.C. 20004
Telephone: (202) 624-2500
aross@crowell.com
mawan@crowell.com
etucker@crowell.com

*Counsel for General Motors LLC*

## **CERTIFICATE OF SERVICE**

I certify that on February 16, 2024, a copy of the foregoing Reply was served electronically through the Court's electronic filing system upon all parties appearing on the court's ECF service list.

<div style="margin-left: 40%;">

/s/ April N. Ross

CROWELL & MORING LLP
April N. Ross
Mohamed Awan
Emily Tucker
1001 Pennsylvania Avenue NW
Washington, D.C. 20004
Telephone: (202) 624-2500
aross@crowell.com
mawan@crowell.com
etucker@crowell.com

*Counsel for General Motors LLC*

</div>