# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

| | |
|---|---|
| IN RE: ARC AIRBAG INFLATORS PRODUCTS LIABILITY LITIGATION | MDL No. 3051<br>Case No. 1:22-md-03051-ELR<br><br>**PLAINTIFFS' OPPOSITION TO HYUNDAI MOTOR COMPANY AND KIA CORPORATION'S MOTION TO DISMISS THE CONSOLIDATED CLASS ACTION COMPLAINT** |

## **TABLE OF CONTENTS**

PRELIMINARY STATEMENT ................................................................1

FACTS SPECIFIC TO HYUNDAI KOREA AND KIA KOREA ...........................3

ARGUMENT ...............................................................................5

  I.    THE COMPLAINT AFFORDS HYUNDAI KOREA AND KIA KOREA FAIR NOTICE OF THE BASIS OF THEIR LIABILITY. ...................................6

  II.    HYUNDAI KOREA AND KIA KOREA'S SUBSTANTIVE CHALLENGES TO PLAINTFFS' CLAIMS LIKEWISE LACK MERIT..........10

    A.    Plaintiffs State Actionable Claims for Breach of Express and Implied Warranty. ...............................................................11

    B.    Plaintiffs Sufficiently Plead All of Their Other Claims...........................13

    C.    In Support of Their Unjust Enrichment Claims, Plaintiffs Allege Hyundai Korea and Kia Korea Received a Benefit. ......................................17

    D.    Hyundai Korea and Kia Korea's Additional Challenges Fail for the Same Reasons Detailed in Plaintiffs' Oppositions to Other Defendants' Motions to Dismiss. ...............................................................19

CONCLUSION ...............................................................19

# TABLE OF AUTHORITIES

**Page**

**Cases**

*Amin v. Mercedes-Benz USA, LLC*,
   349 F. Supp. 3d 1338 (N.D. Ga. 2018) ...............................................................10

*In re Atomica Design Grp., Inc.*,
   556 B.R. 125 (Bankr. E.D. Pa. 2016)...................................................................18

*In re Auto. Parts Antitrust Litig.*,
   50 F. Supp. 3d 836 (E.D. Mich. 2014) ...............................................................18

*In re Auto. Parts Antitrust Litig.*,
   50 F. Supp. 3d 869 (E.D. Mich. 2014) ...............................................................18

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007) ..............................................................................................6

*Bolling v. Mercedes-Benz USA, LLC*,
   2024 WL 3972987 (N.D. Ga. Aug. 27, 2024)............................................*passim*

*Butler v. Porsche Cars N. Am., Inc.*,
   2016 WL 4474630 (N.D. Cal. Aug. 25, 2016)...................................................12

*Cirulli v. Hyundai Motor Co.*,
   2009 WL 4288367 (C.D. Cal. Nov. 9, 2009) .......................................................9

*In re ConAgra Peanut Butter Prods. Liab. Litig.*,
   2008 WL 2132233 (N.D. Ga. May 21, 2008) ....................................................18

*Deras v. Volkswagen Grp. of Am., Inc.*,
   2019 WL 935130 (N.D. Cal. Feb. 26, 2019)......................................................17

*Dicks v. Deployed Data Sols., LLC*,
   2019 WL 13210557 (N.D. Ga. July 29, 2019).................................................5, 6

*Ford v. Hyundai Motor America*,
   2021 WL 7448507 (C.D. Cal. Oct. 5, 2021) .............................................6, 7, 15

*Francis v. Gen. Motors, LLC*,
   504 F. Supp. 3d 659 (E.D. Mich. 2020) .............................................................18

ii

**TABLE OF AUTHORITIES**
(continued)

Page

*Freeman Indus., LLC v. Eastman Chem. Co.*,
    172 S.W.3d 512 (Tenn. 2005) ........................................................................18

*Gazzola v. NCL (Bahamas) Ltd.*,
    2019 WL 3067506 (S.D. Fla. July 12, 2019) ...................................................10

*In re Gen. Motors Air Conditioning Mktg. & Sales Practices Litig.*,
    406 F. Supp. 3d 618 (E.D. Mich. 2019) ...........................................................15

*In re Generic Pharms. Pricing Antitrust Litig.*,
    368 F. Supp. 3d 814 (E.D. Pa. 2019) ...............................................................18

*Ghee v. Georgia*,
    2018 WL 11483423 (N.D. Ga. Dec. 11, 2018) .................................................10

*Gonzalez v. Am. Honda Motor Co.*,
    2024 WL 1107438 (C.D. Cal. Mar. 8, 2024) ....................................................18

*Harris v. Nordyne, LLC*,
    2014 WL 12516076 (S.D. Fla. Nov. 14, 2014) .................................................13

*Hi-Tech Pharms., Inc. v. HBS Int'l Corp.*,
    910 F.3d 1186 (11th Cir. 2018) ..................................................................11, 13

*In re HomeBanc Corp. Sec. Litig.*,
    706 F. Supp. 2d 1336 (N.D. Ga. 2010) .............................................................2

*IOU Central, Inc. v. Embryolisse USA, Inc.*,
    2021 WL 2557501 (N.D. Ga. Mar. 22, 2021) ..................................................10

*Kyle K v. Chapman*,
    208 F. 3d 940 (11th Cir. 2000) ..........................................................................7

*Lewis Lumber & Milling, Inc., v. Mereen-Johnson, LLC*,
    2018 WL 6181356 (M.D. Tenn. Nov. 27, 2018) ..............................................12

*Magluta v. Samples*,
    256 F.3d 1282 (11th Cir. 2001) ........................................................................10

**TABLE OF AUTHORITIES**
(continued)

Page

*Munning v. Gap, Inc.*,
    2016 WL 6393550 (N.D. Cal. Oct. 28, 2016) ......................................................9

*New Restoration & Recovery Servs., LLC v. Dragonfly Pond Works,*
    *LLC*,
    2023 WL 4025890 (N.C. Super. June 15, 2023) ................................................18

*Northbound Group, Inc. v. Norvax, Inc.*,
    795 F.3d 647 (7th Cir. 2015) ..............................................................................13

*State, Dep't of Human Servs. ex rel. Palmer v. Unisys Corp.*,
    637 N.W.2d 142 (Iowa 2001) ............................................................................18

*People Home Health, LLC v. Covenant Home Health Care, LLC*,
    2020 WL 12309341 (N.D. Fla. Oct. 15, 2020) ...................................................9

*Pereda v. Gen. Motors LLC*,
    2022 WL 19975388 (N.D. Cal. Dec. 9, 2022) .....................................................9

*Quality Auto Painting Ctr. Of Roselle, Inc. v. State Farm Indem. Co.*,
    917 F. 3d 1249 (11th Cir. 2019) (en banc) ..........................................................7

*Schmidt v. Ford Motor Co.*,
    198 F. Supp. 3d 511 (E.D. Pa. 2016) .................................................................18

*Song v. City of Elyria*,
    985 F.2d 840 (6th Cir. 1993) ..............................................................................12

*Stanley v. Nissan North America, Inc.*,
    2024 WL 814496 (M.D. Tenn. Feb. 27, 2024) .............................................15, 16

*In re Static Random Access Memory (SRAM) Antitrust Litig.*,
    2010 WL 5094289 (N.D. Cal. Dec. 8, 2010) .....................................................18

*Stewart v. Electrolux Home Prods., Inc.*,
    304 F. Supp. 3d 894 (E.D. Cal. 2018) ...............................................................11

**TABLE OF AUTHORITIES**
(continued)

Page

*In re Suboxone (Buprenorphine Hydrochloride & Naloxone) Antitrust Litig.*,
     64 F. Supp. 3d 665 (E.D. Pa. 2014) ...................................................................18

*Symphony, LLC v. Romeu*,
     2019 WL 2107288 (S.D. Fla. Mar. 13, 2019) ..................................................14

*Thompson v. Bayer Corp.*,
     2009 WL 362982 (E.D. Ark. Feb. 12, 2009) ....................................................18

*Turocy v. El Pollo Loco Holdings, Inc.*,
     2016 WL 4056209 (C.D. Cal. July 25, 2016) .....................................................2

*In re Volkswagen Timing Chain Prod. Liab. Litig.*,
     2017 WL 1902160 (D.N.J. May 8, 2017) ............................................................9

*Weiland v. Palm Beach Cnty. Sheriff's Office*,
     792 F.3d 1313 (11th Cir. 2015)..................................................................8, 10

## Court Rules

Fed. R. Civ. P. 9(b)......................................................................3, 13, 14, 15

Fed. R. Civ. P. 12(b)(6) ..........................................................................11

Fed. R. Civ. P. 12(d) ...............................................................................12

Fed. R. Civ. P. 12(e) .................................................................................8

## Other Authorities

Hyundai Motor Corporation and Its Subsidiaries, Consolidated
     Financial Statements as of and for the Years Ended December 31,
     2018 and 2017, at 14, available at
     https://www.hyundai.com/worldwide/en/company/ir/financial-
     information/quarterly-earnings;............................................................1

## PRELIMINARY STATEMENT

Defendants Hyundai Motor Company ("Hyundai Korea") and Kia Corporation ("Kia Korea") portray themselves as passive bystanders with little or no connection to the manufacture, distribution, or sale of the Class Vehicles or the Inflator Defect. Plaintiffs' allegations—plus these Defendants' own statements—show that's false. Of particular note, Defendant Hyundai Motor Group (the general partnership composed of Hyundai Korea, Kia Korea, and other related entities) refers to the companies on its official websites and in press releases as the "Hyundai Kia Automotive Group" and lists their U.S. facilities as part of that collective. ¶ 116.[1] Further, Hyundai Korea has repeatedly declared in its financial statements that "[Hyundai Korea] and its subsidiaries (the 'Group')"—including Defendant Hyundai Motor America ("Hyundai America"), of which Hyundai Korea owns 100%—"manufacture[] and distribute[] motor vehicles and parts."[2]

---

[1] Unless otherwise indicated, "¶ __" refers to paragraphs of the Corrected Consolidated Class Action Complaint (Doc. 157, "Complaint"). Additionally, unless otherwise indicated, all capitalized terms are taken from the Complaint, all internal citations and quotation marks have been omitted from this brief, and all emphasis has been added.

[2] Hyundai Motor Corporation and Its Subsidiaries, Consolidated Financial Statements as of and for the Years Ended December 31, 2018 and 2017, at 14, available at https://www.hyundai.com/worldwide/en/company/ir/financial-information/quarterly-earnings; *see also* Hyundai Motor Corporation and Its Subsidiaries, Consolidated Financial Statements as of and for the Six-Month Periods Ended June 30, 2024 and 2023, at 9 ("[Hyundai Korea] and its subsidiaries (the 'Group') manufacture and distribute motor vehicles and parts"). The Court can take

Together, Hyundai Korea, Kia Korea, and their subsidiaries manufacture, distribute, market, sell, and repair the Class Vehicles, and coordinate with the National Highway Transportation Safety Association ("NHTSA") on matters related to the Class Vehicles and the Inflator Defect. ¶¶ 117-18, 309-12.

Hyundai Korea and Kia Korea have been at the heart of the Inflator Defect story from the start. They were among the first automakers to use ARC's Defective Inflators in their Class Vehicles in 2001, and one of their vehicles (a 2004 Kia Optima) was among the first to suffer an airbag rupture in the field. ¶¶ 308, 341. Given the extensive corporate links among the Hyundai-Kia Defendants as well as Plaintiffs' allegations that *all of these Defendants* participated in manufacturing the Defective Inflators, knew about the Inflator Defect, failed to inform Plaintiffs of it, and benefited from sales of the Class Vehicles to Plaintiffs, Hyundai Korea and Kia Korea's assertion that the Complaint deprives them of "fair notice of their alleged wrongdoing" (Doc. 272-1, at 2) rings hollow.

Hyundai Korea and Kia Korea's other challenges to Plaintiffs' claims fall flat. The Complaint is replete with particularized facts that demonstrate these Defendants' fraudulent concealment of the Inflator Defect, breaches of express and

---

judicial notice of these publicly available financial disclosure documents. *Turocy v. El Pollo Loco Holdings, Inc.*, 2016 WL 4056209, at *7 (C.D. Cal. July 25, 2016); *In re HomeBanc Corp. Sec. Litig.*, 706 F. Supp. 2d 1336, 1341 n.1 (N.D. Ga. 2010).

implied warranties owed to Plaintiffs, violation of statutory consumer protection laws, and unjust enrichment at Plaintiffs' expense. Plaintiffs' allegations thus comply with Federal Rule of Civil Procedure 9(b) (where necessary) and *Twombly*'s plausibility requirement. Hyundai Korea and Kia Korea's reliance on arguments advanced by other Defendants in prior motions to dismiss is likewise unavailing, for all the reasons detailed in Plaintiffs' oppositions to those motions. *See* Docs. 219-229, 256-1. The Court should deny Hyundai Korea and Kia Korea's motion as well.

### <u>FACTS SPECIFIC TO HYUNDAI KOREA AND KIA KOREA</u>[3]

Hyundai Korea is the parent of Defendant Hyundai America, and Kia Korea is the parent of Defendant Kia America, Inc. ("Kia America"). ¶ 116. Hyundai Korea, Hyundai America, Kia Korea, and Kia America together comprise Hyundai Motor Group ("HMG"). ¶ 110. As discussed above, Hyundai Korea and Kia Korea are both part of "the Hyundai Kia Automotive Group," which is the umbrella term that HMG uses to refer to these subsidiaries. ¶¶ 110-18.[4]

---

[3] In addition to the below facts, Plaintiffs incorporate the statements of facts set forth in their opposition to ARC's motion to dismiss (Doc. 219, at 3-12) and in their opposition to Hyundai America and Kia America's motion to dismiss (Doc. 229 ("U.S. Hyundai-Kia Opp."), at 2-4).

[4] Plaintiffs and Defendants Hyundai America, Kia America, Hyundai Korea, and Kia Korea jointly moved to dismiss Hyundai Motor Group as a defendant on the ground that it is not a legal entity with the capacity to sue and be sued. Doc. 261. The dismissing "Hyundai/Kia Defendants" are all represented by the same counsel. *Id.* The Court granted the joint motion on June 14, 2024. Doc. 263.

Their Class Vehicles include the Hyundai Accent, Azera, Elantra, Genesis, Genesis Coup, Sonata, Tiburon, Tucson, XG50, Equus, and Entourage, and the Kia Amanti, Optima, Rio, Rondo, Sedona, and Sportage, encompassing model year 2002-2017 (Hyundai) and 2001-2016 (Kia). Compl. Ex. E. Numerous Plaintiffs purchased Hyundai and Kia Class Vehicles that were equipped with defective ARC inflators. ¶¶ 144-45, 152, 157, 163, 168, 174-75, 177-79, 196, 201, 206, 252, 283-307.

Hyundai Korea and Kia Korea knew about the Inflator Defect before Plaintiffs purchased the Class Vehicles. Specifically:

- Hyundai Korea and Kia Korea were among the first Automaker Defendants to use the Defective Inflators in model year 2001 and 2002 vehicles and approved the Defective Inflator's design for use in their Class Vehicles, including the use of friction welding without a process for inspecting for excess weld flash. ¶¶ 266-68, 291.

- As a result of collaborating with ARC on the specifications, design, and process validation testing for the Defective Inflators, Hyundai Korea and Kia Korea knew of the Inflator Defect and that some ARC inflators ruptured during pre-release testing in the design and development stage. ¶¶ 10, 263-69.

- In April 2014, an ARC inflator ruptured in a 2004 Kia Optima. The driver suffered serious injuries from the rupture and filed suit against Kia Korea and Kia America. The companies quickly paid to settle the case. ¶ 341.

- In July 2015, NHTSA launched its formal investigation into the Inflator Defect, precipitated by the 2014 Kia inflator rupture. The agency or ARC informed Hyundai Korea and Kia Korea of the reason for the investigation. Indeed, NHTSA asked Hyundai-Kia directly for information about the defect. ¶¶ 308-09.

- As part of its investigation, in March 2016, NHTSA met with ARC and Hyundai-Kia representatives at ARC's Knoxville, Tennessee headquarters. ¶ 310.

- Hyundai Korea and Kia Korea continued to meet with NHTSA and ARC, and developed a program to collect and test ARC inflators from the field. ¶¶ 311-12.

- In July 2016, an ARC inflator ruptured in a 2009 Hyundai Elantra in Canada, resulting in the driver's death. ¶ 342.

- Hyundai recalled 2,022 model year 2009 Elantra vehicles in Canada in April 2018. No similar recall for vehicles with the same Defective Inflators followed in the United States. ¶ 342.

- Hyundai Korea and Kia Korea gained further knowledge of the Inflator Defect through public recall announcements from other Automaker Defendants due to the same defect present in their Class Vehicles. This included recalls by BMW and Ford in 2017; GM in 2019, 2021, 2022, and 2023; and Volkswagen in 2022. ¶¶ 335-65.

Hyundai Korea and Kia Korea concealed what they knew about the Inflator Defect for years, which caused Plaintiffs to overpay for Class Vehicles with Defective Inflators. ¶¶ 144-45, 152, 57, 163, 166, 168, 174-175, 177-179, 196, 201, 206, 377-379.

## **ARGUMENT**

When evaluating a motion to dismiss, "the Court must accept as true the allegations in the complaint drawing all reasonable inferences in the light most favorable to the plaintiff." *Dicks v. Deployed Data Sols., LLC*, 2019 WL 13210557, at *1 (N.D. Ga. July 29, 2019) (Ross, J.). The Complaint must "contain sufficient factual matter, accepted as true, 'to state a claim to relief that is plausible on its

face,'" that is, to "'allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Id.* (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). This is not, however, "akin to a probability requirement." *Id.* Rather, Plaintiffs "must allege sufficient facts such that it is reasonable to expect that discovery will lead to evidence supporting the claim." *Id.* Plaintiffs' allegations amply satisfy these modest requirements.

## I.   THE COMPLAINT AFFORDS HYUNDAI KOREA AND KIA KOREA FAIR NOTICE OF THE BASIS OF THEIR LIABILITY.

Attempting to portray the Complaint as an impermissible "shotgun pleading" that "lump[s]" Hyundai Korea and Kia Korea with their U.S. subsidiaries (Hyundai Korea-Kia Korea Br. 3), these Defendants overlook the many allegations relevant specifically to them. ¶¶ 110-21, 266, 310, 314, 322, 327, 341-42, 366. Courts have rejected similar "lumping" arguments based on similar allegations, including specifically as to Hyundai Korea. In *Ford v. Hyundai Motor America*, Hyundai Korea and Hyundai America contended the complaint "fail[ed] to differentiate between HMC [Hyundai Korea] and HMA [i.e., Hyundai America] and improperly 'lump[ed]' both Defendants together for every allegation." 2021 WL 7448507, at *18 (C.D. Cal. Oct. 5, 2021). But the court observed:

> The [complaint] alleges "HMC [Hyundai Korea], through its various entities, designs, manufactures, markets distributes, and sells Hyundai automobiles . . . in the United States." According to Plaintiffs, over 50% of Hyundai vehicles sold worldwide are sold in the United

States. Plaintiffs further allege HMA is a fully owned subsidiary of Hyundai Korea and that HMA acts as Hyundai Korea's United States sales and marketing division, overseeing sales and other operations across the United States. On information and belief, Plaintiffs allege HMC [Hyundai Korea] communicates with HMA concerning virtually all aspects of the Hyundai products it distributes within the United States and that Defendants jointly designed and manufactured the vehicles, developed the post-purchase owner's manuals and warranty booklets for the Class Vehicle, and made decisions regarding the alleged Defect. Plaintiffs further allege HMC [Hyundai Korea] and HMA each knew of and ratified the acts and omissions of the other and conclude that there existed a unity of ownership between Hyundai Korea and HMA that they were alter egos.

*Id.* at *19. The court accordingly concluded plaintiffs "state[d] sufficient facts regarding HMC [Hyundai Korea] and HMA's corporate relationship to plead that HMA is either the agent or alter ego of Hyundai Korea." *Id.* So too, here.

Further, given the facts underlying this litigation, allegations against "all Defendants" are permissible because the Complaint gives "fair notice that 'each and every' one of [the Defendants] is alleged to have" engaged in the conduct at issue: making products and vehicles with a safety defect, and concealing the defect from consumers. *Quality Auto Painting Ctr. Of Roselle, Inc. v. State Farm Indem. Co.*, 917 F. 3d 1249, 1275 (11th Cir. 2019) (en banc). That Plaintiffs allege Defendants other than Hyundai Korea and Kia Korea engaged in similar misconduct does not render the allegations against these Defendants deficient. *See Kyle K v. Chapman*, 208 F. 3d 940, 944 (11th Cir. 2000) ("The fact that defendants are accused collectively does

not render the complaint deficient. The complaint can be fairly read to aver that all defendants are responsible for the alleged conduct."). This is particularly so given that Hyundai Korea and Kia Korea never suggest they *actually* lack notice of the claims or allegations against them. *Cf. Weiland v. Palm Beach Cnty. Sheriff's Office*, 792 F.3d 1313, 1323 (11th Cir. 2015) ("The unifying characteristic of all types of shotgun pleadings is that they fail to one degree or another, and in one way or another, to give the defendants adequate notice of the claims against them and the grounds upon which each claim rests."). Tellingly, Hyundai Korea and Kia Korea chose not to seek a more definite statement under Rule 12(e). *See id.* at 1324 (noting the asserted pleading deficiency did not "materially increase[] the burden of understanding the factual allegations underlying each count," which "may explain why the defendants did not move for a more definite statement under Federal Rule of Civil Procedure 12(e) or otherwise assert that they were having difficulty knowing what they were alleged to have done and why they were liable for doing it").

Recently rejecting a similar "shotgun pleading" argument in *Bolling v. Mercedes-Benz USA, LLC*, Judge Thrash of this District explained that the defendants—Mercedes-Benz Group AG and Mercedes-Benz USA, LLC—"are related entities" and "Plaintiffs are likely to experience difficulty in obtaining information regarding Defendants' internal policies." 2024 WL 3972987, at *7 (N.D. Ga. Aug. 27, 2024). Here, as there, Plaintiffs "cannot be expected to know the exact

corporate structure and degree of each Defendant's involvement, at this stage in the litigation and prior to discovery." *Id.*; *see also Pereda v. Gen. Motors LLC*, 2022 WL 19975388, at *10 (N.D. Cal. Dec. 9, 2022) (rejecting "group pleading" challenge where defendants were "related entities" and plaintiffs were "likely to experience difficulty in obtaining information regarding Defendants' internal policies"); *People Home Health, LLC v. Covenant Home Health Care, LLC*, 2020 WL 12309341, at *2 (N.D. Fla. Oct. 15, 2020) (concluding plaintiffs need not provide "specific parsing of the individualized misconduct" committed by "a group of related defendant entities with overlapping levels of control" at the pleading stage); *In re Volkswagen Timing Chain Prod. Liab. Litig.*, 2017 WL 1902160, at *9 (D.N.J. May 8, 2017) ("Plaintiffs cannot be expected to know the exact corporate structure and degree of each Defendant's involvement, at this stage in the litigation and prior to discovery."); *Cirulli v. Hyundai Motor Co.*, 2009 WL 4288367, at *4 (C.D. Cal. Nov. 9, 2009) (grouping of defendants Hyundai America and Hyundai Korea was permissible because the complaint put defendants on notice of claims against them). Indeed, "because [Hyundai Korea and Kia Korea] . . . share a [corporate] relationship" and "are represented by the same counsel," "frustration of notice of the claims to each defendant is unlikely." *Munning v. Gap, Inc.*, 2016 WL 6393550, at *3 (N.D. Cal.

Oct. 28, 2016).[5]

Ultimately, "discovery will allow Plaintiff[s] to be more specific about which Defendant did what." *Amin v. Mercedes-Benz USA, LLC*, 349 F. Supp. 3d 1338, 1353 (N.D. Ga. 2018). Dismissal of Plaintiffs' claims is unwarranted.

## II.   HYUNDAI KOREA AND KIA KOREA'S SUBSTANTIVE CHALLENGES TO PLAINTFFS' CLAIMS LIKEWISE LACK MERIT.

Hyundai Korea and Kia Korea assert (1) Plaintiffs' express warranty claims fail because these Defendants are not parties to the warranties that purportedly govern these claims, and implied warranty claims cannot lie because these Defendants were not in privity with Plaintiffs; (2) Plaintiffs fail to plead their

---

[5] The cases Hyundai Korea and Kia Korea cite are distinguishable or otherwise inapposite. In *Weiland*, the Eleventh Circuit *rejected* defendants' shotgun-pleading argument. 792 F.3d at 1326 (holding "the district court abused its discretion when it dismissed Weiland's count one and count three claims against Fleming and Johnson on the ground that those counts did not comply with Rules 8(a)(2) and 10(b)"). In *Magluta v. Samples*, plaintiff named fourteen defendants, all of whom were charged in each count, and did not specify each defendant's role or conduct. 256 F.3d 1282, 1284 (11th Cir. 2001). Likewise, in *IOU Central, Inc. v. Embryolisse USA, Inc.*, plaintiff included all defendants in all counts and never specified each defendant's role or conduct. 2021 WL 2557501, at *5 (N.D. Ga. Mar. 22, 2021). The complaint in *Gazzola v. NCL (Bahamas) Ltd.* was similarly flawed, as plaintiff brought negligence claims against multiple defendants without specifying their negligent conduct or duties. 2019 WL 3067506, at *2 (S.D. Fla. July 12, 2019). And in *Ghee v. Georgia*, plaintiff never identified the actions police officers took that caused his injuries. 2018 WL 11483423, at *3 (N.D. Ga. Dec. 11, 2018). Unlike each of those cases, Plaintiffs here clearly identify which claims apply to Hyundai Korea and Kia Korea as well as the bases for those defendants' liability.

claims for fraudulent concealment, violation of statutory consumer protection laws, and unjust enrichment with particularity under Rule 9(b); (3) Plaintiffs do not allege Hyundai Korea or Kia Korea received any benefit constituting unjust enrichment; and (4) arguments advanced by other Defendants likewise undermine these claims. Hyundai Korea and Kia Korea are wrong on all counts.

### A.     Plaintiffs State Actionable Claims for Breach of Express and Implied Warranty.

#### 1.     Hyundai Korea and Kia Korea raise an improper factual challenge to Plaintiffs' express warranty claims.

Relying on exhibits submitted by their U.S. subsidiaries that purport to show written warranties issued by Hyundai America and Kia America, Hyundai Korea and Kia Korea argue they cannot be liable for a breach of express warranty because neither of them "issued any warranties relevant to Plaintiffs' claims." Doc. 272-1, at 5. But this "is a dispute about the veracity of the allegations, not the sufficiency of the pleading," and entails a factual determination "not appropriate for decision on a motion to dismiss." *Stewart v. Electrolux Home Prods., Inc.*, 304 F. Supp. 3d 894, 911-12 (E.D. Cal. 2018).

Additionally, Defendants' attempt to put the purported warranties before the Court at this stage is improper. On a Rule 12(b)(6) motion, a court can consider a document outside of the complaint only if the document is "referred to in the complaint, central to the plaintiff's claim, *and of undisputed authenticity*." *Hi-Tech*

*Pharms., Inc. v. HBS Int'l Corp.*, 910 F.3d 1186, 1189 (11th Cir. 2018); *cf. Bolling*, 2024 WL 3972987, at *8 n.7 (taking judicial notice of new vehicle limited warranty where plaintiffs "d[id] not dispute its contents"). As Plaintiffs have already pointed out, they have had no opportunity to test the authenticity of these exhibits, meaning Defendants cannot rely on them at this stage. Doc. 229, at 4. Further, "a court may not consider materials outside the pleading that 'rebut, challenge, or contradict anything in the plaintiffs' complaint' without converting the motion to one for summary judgment." *Lewis Lumber & Milling, Inc., v. Mereen-Johnson, LLC*, 2018 WL 6181356, at *2 (M.D. Tenn. Nov. 27, 2018) (*quoting Song v. City of Elyria,* 985 F.2d 840, 842 (6th Cir. 1993)); *see also* Fed. R. Civ. P. 12(d).

In any event, these exhibits do not appear to relate to *all* Hyundai-Kia Plaintiffs' vehicles. Furthermore, there has been no discovery of the actual warranties issued to Plaintiffs because Defendants actively opposed virtually all discovery during the pendency of their motions to dismiss. Hyundai Korea and Kia Korea's attempt to dismiss Plaintiffs' express warranty claims on the ground that these Defendants purportedly did not issue warrants relating to the Class Vehicles thus fails. *See Butler v. Porsche Cars N. Am., Inc.*, 2016 WL 4474630, at *1 n.1 (N.D. Cal. Aug. 25, 2016) (denying defendant's request for judicial notice of terms of Porsche Cars North America Limited Warranty because "[t]he Limited Warranty that covered Plaintiff's specific car is neither generally known within this Court's

territorial jurisdiction nor capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned"); *Harris v. Nordyne, LLC*, 2014 WL 12516076, at *8 (S.D. Fla. Nov. 14, 2014) ("Defendant has not established that the document they submit is the precise warranty which covered Plaintiffs or the putative class members").[6]

### 2.    Plaintiffs' implied warranty claims either do not require privity or are subject to exceptions that apply here.

Relying entirely on the Automaker Defendants' joint motion to dismiss, Hyundai Korea and Kia Korea assert "most states do not allow implied warranty claims to flow beyond the seller and up a distribution chain." Doc. 272-1, at 6. But as Plaintiffs explained in their opposition to the Automaker Defendants' joint motion to dismiss ("Joint Automaker Opposition"), more than half of the states do not require privity for implied warranty claims and the rest of the states apply one or more exceptions to privity requirements, which apply here. Doc. 221, at 19-20.

### B.    Plaintiffs Sufficiently Plead All of Their Other Claims.

Hyundai Korea and Kia Korea contend Plaintiffs fail to satisfy Rule 9(b) for their unjust enrichment, fraud, and consumer protection claims. They are mistaken.

---

[6] Defendants' reliance on *Hi-Tech Pharmaceuticals* is misplaced, as the marketing label at issue there was "undisputed." 910 F.3d at 1189. And *Northbound Group, Inc. v. Norvax, Inc.*, which Hyundai Korea and Kia Korea also cite, addressed a post-discovery motion for *summary judgment*. 795 F.3d 647, 649 (7th Cir. 2015).

As an initial matter, Rule 9(b) does not apply to Plaintiffs' unjust enrichment claims, which are not grounded in fraud but rather arise from the "tangible and material economic benefits" conferred on Hyundai Korea and Kia Korea. ¶ 2877; *see also Symphony, LLC v. Romeu*, 2019 WL 2107288, at *3 (S.D. Fla. Mar. 13, 2019) ("This Court has explicitly rejected the dismissal of claims due to a defendant's failure to explain why those claims sound in fraud.").

The Complaint amply satisfies Rule 9(b) with respect to Plaintiffs' other claims (as well as their unjust enrichment claim, should the Court determine Rule 9(b) applies to it). Plaintiffs allege the "who" (Hyundai Korea and Kia Korea), "what" (failure to disclose the Inflator Defect), "when" (prior to the sale of Class Vehicles), "where" (the channels through which Plaintiffs purchased the Class Vehicles), and "how" (by concealing material facts regarding the defect and their awareness of it). ¶¶ 110-21, 376-79. These allegations are sufficiently particularized, especially given that "in cases where the fraud alleged is the fraudulent omission of information within the exclusive control of the Defendant, the [Rule 9(b)] standard is relaxed." *Bolling*, 2024 WL 3972987, at *14 (alteration in original).

Additionally, Hyundai Korea and Kia Korea erroneously contend the unjust enrichment, fraud, and consumer protection claims fail because these Defendants purportedly had no contact with Plaintiffs. As Judge Thrash recently explained (consistent with other courts' reasoning), "[b]ecause of the nature of" claims for

fraudulent concealment, "it is enough for plaintiffs to allege that a fact was material and that it could have, and should have, been disclosed prior to the time plaintiffs acted upon the omission." *Bolling*, 2024 WL 3972987, at *14. As in *Bolling*, Plaintiffs here allege "the Defendants had exclusive control over information about the . . . defect and never told the Plaintiffs about it"—which is sufficient. *Id.*; *see also In re Gen. Motors Air Conditioning Mktg. & Sales Practices Litig.*, 406 F. Supp. 3d 618, 641 (E.D. Mich. 2019) (holding fraudulent omission claim could proceed notwithstanding that plaintiffs did not identify specific advertisements on which they relied). Indeed, the court in *Ford* upheld similar allegations against Hyundai Korea (and Hyundai America):

> The [complaint] pleads Hyundai (who), failed to disclose a safety defect related to the Class Vehicle's windshield (what), through its authorized dealers and its marketing materials (where), prior to and at the point of sale of the vehicles (when). Plaintiffs further allege Hyundai had knowledge of the alleged Defect through pre-sale durability resting and early consumer complaints with [NHTSA].

2021 WL 7448507, at *23. The court explained that "[v]iewing the allegations of the [complaint] in the most favorable to Plaintiffs, these allegations are sufficiently particular to satisfy the requirements of Rule 9(b) for fraudulent omission claims." *Id.* The same is true with respect to Hyundai Korea and Kia Korea.

Defendants' reliance on *Stanley v. Nissan North America, Inc.*, is misplaced—and actually supports Plaintiffs—as the court there dismissed claims against "the

manufacturer of the engine incorporating the [allegedly defective fuel injection pump]," distinguishing them from "claims against . . . vehicle manufacturers" such as "GM, Ford, and FCA." 2024 WL 814496, at *22 (M.D. Tenn. Feb. 27, 2024). Here, unlike in *Stanley*, Hyundai Korea and Kia Korea *are* vehicle manufacturers who advertised and marketed Class Vehicles to Plaintiffs and sold them throughout the United States. ¶¶ 117-18.

Plaintiffs also sufficiently plead the other elements of fraud-based claims. Hyundai Korea and Kia Korea were directly involved in the ARC inflator design process and knew from the start the inflators required a design sufficient to mitigate the risk of over-pressurization from ammonium nitrate. *E.g.*, ¶¶ 10, 264-69, 291-305. Hyundai Korea and Kia Korea nevertheless approved an inflator design they knew was prone to blockage and over-pressurization. ¶¶ 283, 285. Hyundai Korea and Kia Korea thus knowingly misrepresented the reliability, safety, and performance of the Class Vehicles. ¶¶ 469, 609, 678, 1227, 1247, 1464, 1483-84, 1624, 2109, 2847, 2914-16, 3409-14, 3427-30, 3565-70, 3236-41, 3793-98, 3861-66; *see also Bolling*, 2024 WL 3972987, at *15 (plaintiffs' allegations collectively "support[ed] a reasonable inference that the Defendants knew of the alleged defect," where plaintiffs alleged, *inter alia*, "the Defendants conducted pre-sale durability testing

on its sunroofs that would have revealed the alleged defect").[7] Moreover, each Plaintiff alleges they were exposed to Hyundai Korea and Kia Korea's fraud through advertisements, promotional materials, and other public statements. ¶¶ 144-45, 152, 157, 163, 166, 168, 174-75, 177-79, 196, 201, 206; *see also Bolling*, 2024 WL 3972987, at *17 (where plaintiffs alleged "(1) the Defendants knew about the defect, (2) the Defendants failed to disclose the defect, and (3) . . . Plaintiffs would not have paid as much for the Class Vehicles or would not have purchased them at all" absent the defect, plaintiffs "sufficiently alleged justifiable reliance"). Plaintiffs' detailed allegations, "taken as a whole and viewed in a light most favorable to Plaintiffs," are sufficient at this stage. *Deras v. Volkswagen Grp. of Am., Inc.*, 2019 WL 935130, at *3 (N.D. Cal. Feb. 26, 2019).

### C.   In Support of Their Unjust Enrichment Claims, Plaintiffs Allege Hyundai Korea and Kia Korea Received a Benefit.

Hyundai Korea and Kia Korea contend Plaintiffs fail to allege these Defendants "received a benefit from the sales [of Class Vehicles] to Plaintiffs." Doc. 272-1, at 7. Not so.

---

[7] Indeed, the allegations in this case are even stronger than those in *Bolling*, as NHTSA's investigation report relating to the vehicle sunroofs at issue there "did not conclude there was a defect." 2024 WL 3972987, at *15 (noting plaintiffs "fail[ed] to explain how an investigation that did not find a defect . . . and centered around other types of vehicles shows that the Defendants knew about a defect in the Class vehicles"). Not so, here. *See* Doc. 267-1 (NHTSA supplemental initial decision detailing findings with respect to Inflator Defect).

As an initial matter, most states require only an indirect benefit to state an actionable claim for unjust enrichment. *See* Doc. 221, at 47.[8] In any event, Hyundai Korea and Kia Korea ignore Plaintiffs' allegations that these Defendants profited from the sale through their dealerships of cars with Defective Inflators.[9] Moreover, courts have rejected Hyundai Korea and Kia Korea's argument that Plaintiffs who did not purchase directly from a dealership cannot assert an unjust enrichment claim against a manufacturer. *See Francis v. Gen. Motors, LLC*, 504 F. Supp. 3d 659, 693-94 (E.D. Mich. 2020) (viable unjust enrichment claim despite no dealings with automaker); *In re Auto. Parts Antitrust Litig.*, 50 F. Supp. 3d 869, 897 (E.D. Mich. 2014); *In re Generic Pharms. Pricing Antitrust Litig.*, 368 F. Supp. 3d 814, 851 (E.D. Pa. 2019) ("At this stage of the litigation, the connection between the EPPs [End-

---

[8] *New Restoration & Recovery Servs., LLC v. Dragonfly Pond Works, LLC*, 2023 WL 4025890, at *9 (N.C. Super. June 15, 2023) **(NC)**; *In re Static Random Access Memory (SRAM) Antitrust Litig.*, 2010 WL 5094289, at *7 (N.D. Cal. Dec. 8, 2010) **(MI)**; *In re Suboxone (Buprenorphine Hydrochloride & Naloxone) Antitrust Litig.*, 64 F. Supp. 3d 665, 710 (E.D. Pa. 2014) **(NY, VA, AL)**; *State, Dep't of Human Servs. ex rel. Palmer v. Unisys Corp.*, 637 N.W.2d 142, 155 (Iowa 2001) **(IA)**; *In re ConAgra Peanut Butter Prods. Liab. Litig.*, 2008 WL 2132233, at *3 (N.D. Ga. May 21, 2008) **(GA)**; *In re Auto. Parts Antitrust Litig.*, 50 F. Supp. 3d 836, 864-65 (E.D. Mich. 2014) **(AZ)**; *Freeman Indus., LLC v. Eastman Chem. Co.*, 172 S.W.3d 512, 516 (Tenn. 2005) **(TN)**; *Thompson v. Bayer Corp.*, 2009 WL 362982, at *5 (E.D. Ark. Feb. 12, 2009) **(AR)**; *Schmidt v. Ford Motor Co.*, 198 F. Supp. 3d 511, 529 (E.D. Pa. 2016) **(IL)**; *In re Atomica Design Grp., Inc.*, 556 B.R. 125, 177 (Bankr. E.D. Pa. 2016) **(PA)**; *Gonzalez v. Am. Honda Motor Co.*, 2024 WL 1107438, at *10 (C.D. Cal. Mar. 8, 2024) **(SC)**.

[9] ¶¶ 117-18, 144-45, 152, 157, 163, 166, 168, 174, 177-79, 194, 196, 201, 206, 252.

Payer Plaintiffs] and IRPs [Indirect-Reseller Plaintiffs] and the Defendants is not so attenuated as to render implausible Group 1 EPPs' or IRPs' claims for unjust enrichment. This conclusion arguably comports with the equitable purpose of an unjust enrichment claim."). Plaintiffs have sufficiently alleged Hyundai Korea and Kia Korea received a benefit from sales of the Class Vehicles plagued by the Inflator Defect. The Court should therefore uphold Plaintiffs' unjust enrichment claims against these Defendants.

**D.    Hyundai Korea and Kia Korea's Additional Challenges Fail for the Same Reasons Detailed in Plaintiffs' Oppositions to Other Defendants' Motions to Dismiss.**

Finally, Hyundai Korea and Kia Korea broadly rely on the Automaker Defendants' joint motion to dismiss and the U.S. Hyundai-Kia defendants' motion to dismiss. These arguments fail based on the extensive arguments and authorities detailed in the U.S. Hyundai-Kia Opposition and the Joint Automaker Opposition, including the accompanying materials.

## CONCLUSION

For the foregoing reasons, as well as those detailed in Plaintiffs' previously filed oppositions to Defendants' motions to dismiss, the Court should deny Hyundai Korea and Kia Korea's motion. Should the Court dismiss all or part of these claims, Plaintiffs respectfully request leave to amend.

Dated: October 15, 2024

Respectfully submitted,

*/s/Roland Tellis*
Roland Tellis (CA Bar 186269)
rtellis@baronbudd.com
David Fernandes (CA Bar 280944)
dfernandes@baronbudd.com
Adam Tamburelli (CA Bar 301902)
atamburelli@baronbudd.com
Jay Lichter (CA Bar 266960)
jlichter@baronbudd.com
**BARON & BUDD, P.C.**
15910 Ventura Blvd #1600
Encino, California 91436
Telephone: (818) 839-2333

*/s/ Demet Basar*
W. Daniel "Dee" Miles, III (ASB 7656-M75W)
dee.Miles@Beasleyallen.com
Demet Basar (NYS 2486710)
demet.Basar@Beasleyallen.com
J. Mitch Williams (ASB 8560X19D)
mitch.Williams@Beasleyallen.com
Dylan T. Martin (ASB 2336B15S)
dylan.Martin@Beasleyallen.com
**BEASLEY, ALLEN, CROW, METHVIN, PORTIS & MILES, P.C.**
272 Commerce Street
Montgomery, Alabama 36104
Telephone number: (334) 269-2343

H. Clay Barnett, III (GA Bar 174058)
Clay.Barnett@Beasleyallen.com
Thomas P. Willingham (GA Bar 235049)
Tom.Willingham@Beasleyallen.com
**BEASLEY, ALLEN, CROW, METHVIN, PORTIS & MILES, P.C.**
Overlook II
2839 Paces Ferry Rd SE, Suite 400
Atlanta, GA 30339
Telephone number: (404) 751-1162

*/s/ James E. Cecchi*
James E. Cecchi (NJ Bar 030861989)
jcecchi@carellabyrne.com
**CARELLA, BYRNE, CECCHI,**

*/s/ Elizabeth T. Castillo*
Niall P. McCarthy (Cal. Bar 160175)
nmccarthy@cpmlegal.com
Elizabeth T. Castillo (Cal. Bar 280502)

**BRODY & AGNELLO, P.C.**
5 Becker Farm Road
Roseland, New Jersey 07068
Telephone number: (973) 994-1700

Zachary Jacobs (IL Bar 6294345)
zjacobs@carellabyrne.com
**CARELLA, BYRNE, CECCHI,**
**BRODY & AGNELLO, P.C.**
222 South Riverside Plaza
Chicago, Illinois 60606
Telephone number: (973) 994-1700

Lindsey H. Taylor (FL Bar 1027908)
ltaylor@carellabyrne.com
Zachary J. Bower (FL Bar 0017506)
zbower@carellabyrne.com
**CARELLA, BYRNE, CECCHI,**
**BRODY & AGNELLO, P.C.**
2222 Ponce De Leon Blvd.
Miami, Florida 33134
Telephone number: (973) 994-1700

ecastillo@cpmlegal.com
Kevin J. Boutin (Cal. Bar 334965)
kboutin@cpmlegal.com
**COTCHETT, PITRE &**
**McCARTHY, LLP**
840 Malcolm Road
Burlingame, CA 94010
Telephone: (650) 697-6000

Theresa E. Vitale (Cal. Bar 333993)
tvitale@cpmlegal.com
**COTCHETT, PITRE &**
**McCARTHY, LLP**
2716 Ocean Park Blvd., Suite 3088
Santa Monica, CA 90405
Telephone: (310) 392-2008

*/s/ Matthew D. Schultz*
Matthew D. Schultz (*pro hac vice*)
mschultz@levinlaw.com
William F. Cash (*pro hac vice*)
bcash@levinlaw.com
Scott Warrick (*pro hac vice*)
swarrick@levinlaw.com
**LEVIN, PAPANTONIO,**
**RAFFERTY, PROCTOR,**
**BUCHANAN, O'BRIEN, BARR &**
**MOUGEY, P.A.**
316 S. Baylen St., Suite 600
Pensacola, FL 32502
Tel: (850) 435-7140

*/s/ Kevin R. Dean*
Kevin R. Dean (GA Bar No. 214855)
kdean@motleyrice.com
Ann K. Ritter
aritter@motleyrice.com
Lance V. Oliver
loliver@motleyrice.com
Sara O. Couch

*/s/ David S. Stellings*
David S. Stellings (NY Bar 2635282)
dstellings@lchb.com
Michael J. Miarmi (NY Bar 4440400)
mmiarmi@lchb.com

21

Katherine I. McBride (NY Bar 5452388)
kmcbride@lchb.com
Gabriel A. Panek (NY Bar 5605472)
gpanek@lchb.com
**LIEFF CABRASER HEIMANN & BERNSTEIN, LLP**
250 Hudson Street, 8th Floor
New York, NY 10013-1413
Telephone: (212) 355-9500

Nimish R. Desai (CA Bar 244953)
ndesai@lchb.com
**LIEFF CABRASER HEIMANN & BERNSTEIN, LLP**
275 Battery Street, 29th Floor
San Francisco, California 94111
Telephone: (415) 956-1000

scouch@motleyrice.com
**MOTLEY RICE LLC**
28 Bridgeside Boulevard
Mount Pleasant, South Carolina 29464
Phone: (843) 216-9000

*Leadership Committee for Plaintiffs and the Proposed Classes*

/s/ Michael A. Caplan
Michael A. Caplan (GA Bar 601039)
**CAPLAN COBB LLC**
75 Fourteenth Street NE, Suite 2700
Atlanta, Georgia 30309
Tel: (404) 596-5600
Fax: (404) 596-5604
mcaplan@caplancobb.com

/s/ M.J. Blakely
M.J. Blakely (GA Bar 708906)
mjblakely@blakelyfirm.com
**THE BLAKELY FIRM, L.L.C.**
P.O. Box 3314
Decatur, GA 30031
Telephone number: (404) 491-0617

*Co-Liaison Counsel for Plaintiffs and the Proposed Classes*

22

## **<u>CERTIFICATION</u>**

Pursuant to Civil Local Rule 7.1, the undersigned counsel certifies that this brief has been prepared with one of the font and point selections approved by the Court in Civil Local Rule 5.1.

*/s/ Michael A. Caplan*
Michael A. Caplan
Georgia Bar No. 601039

## <u>CERTIFICATE OF SERVICE</u>

On October 15, 2024, I hereby certify that I have caused a true and correct copy of the foregoing to be filed with the Clerk of the Court using the CM/ECF system, which will send a notification of such filing to all counsel of record.

<u>/s/ Michael A. Caplan</u>
Michael A. Caplan
Georgia Bar No. 601039