# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

IN RE: ARC AIRBAG INFLATORS
PRODUCTS LIABILITY
LITIGATION

MDL No. 3051

Case No. 1:22-md-03051-ELR

District Judge Eleanor L. Ross

# MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT
## ZF FRIEDRICHSHAFEN AG'S MOTION TO DISMISS PLAINTIFFS'
## <u>CONSOLIDATED CLASS ACTION COMPLAINT</u>

## <u>Table of Contents</u>

<u>Page</u>

INTRODUCTION ...................................................................................................1

FACTUAL BACKGROUND RELEVANT TO MOTION ......................................3

LEGAL STANDARD ...........................................................................................5

ARGUMENT .......................................................................................................7

I.     Plaintiffs Have Not Sufficiently Pleaded Specific Jurisdiction Over
ZF Friedrichshafen.....................................................................................8

     A.    Michigan's Long-Arm Statute Does Not Permit Jurisdiction..............8
     B.    Personal Jurisdiction Does Not Comport With Due Process .............10

II.    Plaintiffs Have Not Sufficiently Alleged Alter Ego ......................................16

     A.    Plaintiffs Fail To Allege Injustice Or Contravention of
Public Policy...............................................................................18
     B.    The Domestic ZF/TRW Defendants Are Not "Mere
Instrumentalities" Of ZF Friedrichshafen ...........................................18

CONCLUSION ...................................................................................................24

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*Alexander Assocs., Inc. v. FCMP, Inc.*,
  2012 WL 1033464 (E.D. Mich. Mar. 27, 2012) .................................................23

*Anwar v. Dow Chem. Co.*,
  2016 WL 5070269 (E.D. Mich. Sep. 20, 2016) .....................................21, 22, 23

*Aronson v. Celebrity Cruises, Inc.*,
  30 F. Supp. 3d 1379 (S.D. Fla. 2014) .................................................................11

*Asahi Metal Indus. Co. v. Superior Ct. of California, Solano Cnty.*,
  480 U.S. 102 (1987) ..............................................................................................6

*Barantsevich v. VTB Bank*,
  954 F. Supp. 2d 972 (C.D. Cal. 2013) ................................................................13

*Bryant v. Rich*, 530 F.3d 1368 (11th Cir. 2008) .......................................................4

*Butler Auto Recycling, Inc. v. Honda Motor Co. (In re Takata Airbag Prods. Liab. Litig.)*,
  524 F. Supp. 3d 1266 (S.D. Fla. 2021) .................................................................6

*Catalyst Pharms., Inc. v. Fullerton*,
  748 Fed. Appx. 944 (11th Cir. 2018) ....................................................................6

*Consol. Dev. Corp. v. Sherritt, Inc.*,
  216 F.3d 1286 (11th Cir. 2000) ..........................................................................17

*EBG Holdings LLC v. Vredezicht's Gravenhage 109 B.V.*,
  2008 WL 4057745 (Del. Ch. Sep. 2, 2008) ........................................................18

*Gianetta v. Marmel*,
  2021 WL 2954084 (C.D. Cal. Mar. 26, 2021) ....................................................17

*Glenn v. TPI Petro., Inc.*,
  305 Mich. App. 698 (2014) .................................................................................18

*Herederos De Roberto Gomez Cabrera, LLC v. Teck Res. Ltd.*,
  43 F.4th 1303 (11th Cir. 2022) ...................................................8, 11, 12

*In re Auto. Parts Antitrust Litig.*,
  2013 WL 2456610 (E.D. Mich. June 6, 2013) ............................................21, 22

*In re Banco Santander Sec.-Optimal Litig.*,
  732 F. Supp. 2d 1305 (S.D. Fla. 2010) ...................................................19

*In re Takata Airbag Prod. Liab. Litig.*,
  396 F. Supp. 3d 1101 (S.D. Fla. 2019) ...................................................6, 12

*In re ZF-TRW Airbag Control Units Prods. Liab. Litig.*,
  2022 WL 19432575 (C.D. Cal. Aug. 15, 2022) ...................................................14

*In re ZF-TRW Airbag Control Units Prods. Liab. Litig.*,
  2022 WL 522484 (C.D. Cal. Feb. 9, 2022) ...................................................23

*In Re: ZF-TRW Airbag Control Units Prods. Liab. Litig.*,
  Case No. 2:19-ml-02905-JAK-MRW (C.D. Cal.) (Dkt. 573) ...................................................2

*Lafarge Corp. v. Altech Env't, U.S.A.*,
  220 F. Supp. 2d 823 (E.D. Mich. 2002) ...................................................8, 9

*Lamensdorf v. New York Univ.*,
  2010 WL 11519546 (M.D. Ga. Mar. 24, 2010)...................................................13

*Madara v. Hall*,
  916 F.2d 1510 (11th Cir. 1990) ...................................................10

*Melgarejo v. Pycsa Panama, S.A.*,
  537 Fed. App'x 852 (11th Cir. 2013) ...................................................8, 9, 10

*Mother Doe I v. Maktoum*,
  632 F. Supp. 2d 1130 (S.D. Fla. 2007) ...................................................19

*RMS Titanic, Inc. v. Zaller*,
  978 F. Supp. 2d 1275 (N.D. Ga. 2013)...................................................19

*Singh v. Daimler, AG*,
  902 F. Supp. 2d 974 (E.D. Mich. 2012) ...................................................17

*Smith v. Amada Mach. Tools Am. Inc.*,
   2017 WL 4339328 (E.D. Mich. June 12, 2017) ...........................................20, 21

*Snow v. DirecTV, Inc.*,
   450 F.3d 1314 (11th Cir. 2006) ...............................................................................6

*Thornton v. Bayerische Motoren Werke AG*,
   439 F. Supp. 3d 1303 (N.D. Ala. 2020).......................................................17, 22

*United Am. Corp. v. Bitmain, Inc.*,
   530 F. Supp. 3d 1241 (S.D. Fla. 2021) ..............................................................14

*United Ins. Grp. Agency v. Patterson*,
   2011 WL 5067251 (Mich. Ct. App. Oct. 25, 2011) .........................18, 19, 20, 22

*Walden v. Fiore*,
   571 U.S. 277 (2014)......................................................................................12, 14

*Zanakis v. Scanreco, Inc.*,
   2019 WL 2211872 (S.D. Fla. Feb. 6, 2019) ........................................................6

## STATUTES

Mich. Comp. Laws
   § 600.711............................................................................................................9
   § 600.715.....................................................................................................9, 10

## RULES

Fed. R. Civ. P. 4(k)(2)............................................................................................12

iv

Pursuant to Federal Rule of Civil Procedure 12(b)(2) and 12(b)(6), Defendant ZF Friedrichshafen AG ("ZF Friedrichshafen") *specially appears*[1] and respectfully submits this Memorandum of Law in Support of its Motion to Dismiss Plaintiffs' Corrected Consolidated Class Action Complaint.[2]

## INTRODUCTION

ZF Friedrichshafen is a German corporation. Its only relation to this dispute is its indirect corporate affiliation with certain U.S.-based defendants. But that corporate affiliation did not exist until 2015, *years after* the Domestic ZF/TRW Defendants[3] are alleged to have supplied airbag modules containing certain airbag inflators manufactured by ARC Automotive Inc. (the "Subject Inflators"). And nowhere in the Corrected Consolidated Class Action Complaint's (the "CAC's") more than 1,500 pages do Plaintiffs allege any fact plausibly suggesting that ZF Friedrichshafen engaged in claim-related conduct, much less conduct that occurred in, or was directed at, the transferor forum, Michigan.

---

[1] In filing this Motion, ZF AG does not waive, and expressly reserves, its right to Rule 12(b) defenses and any due process arguments, should it need to invoke them.

[2] On November 4, 2024, the District Court of Freiburg, Baden-Württemberg, Germany served ZF Friedrichshafen with summons and the CAC pursuant to the *Hague Convention on the Service Abroad of Judicial and Extrajudicial Documents in Civil or Commercial Matters*.

[3] The Domestic ZF/TRW Defendants include ZF Active Safety and Electronics US LLC, ZF Passive Safety Systems US LLC, ZF Automotive US Inc., and ZF TRW Automotive Holdings Corp.

Because there are no facts plausibly suggesting ZF Friedrichshafen engaged in claim-related conduct, Plaintiffs also try to impute the Domestic ZF/TRW Defendants' conduct to ZF Friedrichshafen under an "alter ego" theory of personal jurisdiction.  That, too, is meritless.  The CAC does not allege facts plausibly suggesting that the Domestic ZF/TRW Defendants failed to maintain separate corporate identities from their indirect grandparent.  Nor do Plaintiffs even attempt to allege that ZF Friedrichshafen misused the corporate form to perpetrate injustice or wrongdoing.  That failure alone precludes alter ego jurisdiction.

Plaintiffs offer no reason why ZF Friedrichshafen should be before this Court, besides generic, conclusory allegations that fail to establish claim-related forum contacts and improperly conflate ZF Friedrichshafen with domestic affiliates. Indeed, most of Plaintiffs' allegations against ZF Friedrichshafen are ***identical*** to allegations made in a separate, unrelated class action in the Central District of California involving different parties, claims, and products.[4]  A plaintiff seeking to establish personal jurisdiction must show that a foreign defendant directed claim-related conduct to the forum state.  Instead, Plaintiffs simply copied-and-pasted their jurisdictional allegations from an unrelated California complaint.

At bottom, Plaintiffs ask this Court to hale a foreign entity into sprawling,

---

[4] *See* Consolidated Am. Class Action Compl., *In Re: ZF-TRW Airbag Control Units Prods. Liab. Litig.*, Case No. 2:19-ml-02905-JAK-MRW (C.D. Cal.) (Dkt. 573) (the "California ACU Litigation").

costly litigation based on copied allegations from an unrelated lawsuit, allegations which are untethered to the claims against ZF Friedrichshafen here, insufficiently detailed to satisfy pleadings standards, and simply factually incorrect. As a result, the Court should dismiss ZF Friedrichshafen.[5]

## FACTUAL BACKGROUND RELEVANT TO MOTION

The CAC asserts state-law consumer claims against a host of automobile manufacturers and parts suppliers, including the Domestic ZF/TRW Defendants. Each of the Domestic ZF/TRW Defendants is organized in Delaware and headquartered in Michigan. CAC ¶¶ 53-56 (Dkt. 157). Plaintiffs allege the Domestic ZF/TRW Defendants designed, made or sold some airbag modules that incorporated ARC's inflators. *See id.* Plaintiffs assert that Michigan has general jurisdiction over the Domestic ZF/TRW Defendants "due to the location of their headquarters in Michigan[.]" *Id.*

Plaintiffs also name ZF Friedrichshafen, a corporation organized and existing under the laws of the Federal Republic of Germany, with its principal place of business and corporate headquarters also in Germany. *See* CAC ¶ 58. ZF Friedrichshafen is not incorporated or qualified to do business in the U.S., has no

---

[5] Plaintiffs' claims should also be dismissed for the reasons set forth in the Tier 1 Suppliers' Motion to Dismiss (Dkt. 178, 246). The instant Motion focuses on ZF Friedrichshafen's lack of personal jurisdiction, but the company incorporates the arguments made in the earlier motion as well.

general agent for service of process in the U.S., and is not a taxpayer anywhere in the U.S.  Declaration of Kelly Laliberte ("Laliberte Decl.") ¶ 11.[6]  ZF Friedrichshafen does not maintain any office, factory, warehouse, research facility, or other place of business, nor own or lease any real property, in the U.S.  *Id.* ¶ 12.  It does not have any sales, leasing, or distribution forces in the U.S.[7]  *Id.* ¶ 13.  And it does not design, manufacture, sell, or distribute any products in the U.S., and has never done so at any time relevant to the CAC.  *Id.* ¶ 14.

In May 2015, MSNA, Inc., an indirect, special purpose *subsidiary* of ZF Friedrichshafen merged with TRW Automotive Holdings Corp. ("TRW").  Laliberte Decl. ¶ 8; *see also* CAC ¶ 60.  TRW was the surviving entity and changed its name to ZF TRW Automotive Holdings Corp., a named defendant.  CAC ¶ 60.  All the Domestic ZF/TRW Defendants are Delaware entities with their principal places of business in Michigan.  *Id.* ¶¶ 53-56.  None of them are directly owned by ZF Friedrichshafen.  In fact, ZF Friedrichshafen is only the **great** or **great-great**

---

[6] The Court may consider facts outside the pleadings on a Rule 12(b)(2) motion to dismiss for lack of personal jurisdiction.  *See Bryant v. Rich*, 530 F.3d 1368, 1376 (11th Cir. 2008).

[7] Plaintiffs allege that ZF Friedrichshafen "already had a significant presence in the United States before acquiring TRW Automotive Holdings Corp." and that "[a]s of 2013, ZF [Friedrichshafen] and its subsidiaries had about 3,700 employees in the United States, including roughly 1,000 employees at three facilities in Michigan."  CAC ¶ 70.  Plaintiffs fail to allege any relation between the claims at issue and ZF Friedrichshafen's supposed "presence in the United States" prior to its acquisition of TRW through the merger of TRW and MSNA, Inc.

***grandparent*** of the Domestic ZF/TRW Defendants, which are separated from ZF Friedrichshafen by two other subsidiaries—ZF North America, Inc. and ZF Holdings B.V.—neither of whom are named as defendants. Laliberte Decl. ¶ 9. No Domestic ZF/TRW Defendant conducts business on behalf of ZF Friedrichshafen, and ZF Friedrichshafen does not conduct business on behalf of any Domestic ZF/TRW Defendant. *Id.* ¶ 15(f).

Even Plaintiffs acknowledge that ZF Friedrichshafen did not have any connection with TRW until May 2015, which is ***three years after*** the last model year in which the ARC inflators at issue in this case were supplied by TRW. *See* CAC ¶¶ 60, 350.[8] As Plaintiffs allege, the then-TRW entities were merged into one or more of the ***U.S.-based*** Domestic ZF/TRW Defendants, not the German ZF Friedrichshafen. *See* CAC ¶¶ 60, 66. Given the timing of these transactions, ZF Friedrichshafen itself could not have had any involvement in the design, manufacture, or sale of airbag modules with the relevant ARC inflators.

## LEGAL STANDARD

Courts in this Circuit "have repeatedly declined to exercise specific jurisdiction over a nonresident defendant on the basis of generalized and conclusory allegations." *In re Takata Airbag Prod. Liab. Litig.*, 396 F. Supp. 3d 1101, 1142

---

[8] TRW only used the relevant ARC inflators in driver airbag modules for the 2008-2012 model year Chevy Malibu. *See* Laliberte Decl. ¶ 16; *see also* CAC ¶ 350.

(S.D. Fla. 2019).[9]  The bar for establishing jurisdiction over a non-U.S. entity is even higher.  *See Zanakis v. Scanreco, Inc.*, 2019 WL 2211872, at *15 (S.D. Fla. Feb. 6, 2019) ("The unique burdens placed upon one who must defend oneself in a foreign legal system should have significant weight in assessing the reasonableness of stretching the long arm of personal jurisdiction over national borders.").  The Supreme Court has instructed that "[g]reat care and reserve should be exercised when extending our notions of personal jurisdiction into the international field." *Asahi Metal Indus. Co. v. Superior Ct. of California, Solano Cnty.*, 480 U.S. 102, 115 (1987).

MDL courts are entitled to exercise personal jurisdiction over a defendant ***only*** to the same degree that the original transferor court could have done.  *See Butler Auto Recycling, Inc. v. Honda Motor Co. (In re Takata Airbag Prods. Liab. Litig.)*, 524 F. Supp. 3d 1266, 1276 (S.D. Fla. 2021) (noting "the transferee judge has all the jurisdiction and powers over pretrial proceedings … that the transferor judge would have had").  Here, the relevant transferor court is in Michigan.

---

[9] *See also Catalyst Pharms., Inc. v. Fullerton*, 748 Fed. Appx. 944, 946 (11th Cir. 2018) ("Vague and conclusory allegations do not satisfy" a plaintiff's burden to "make out a prima facie case of jurisdiction[.]"); *Snow v. DirecTV, Inc.*, 450 F.3d 1314, 1318 (11th Cir. 2006) (finding "vague and conclusory allegations … insufficient to establish a prima facie case of personal jurisdiction").

## ARGUMENT

Plaintiffs allege two personal jurisdiction theories. Neither has merit. *First*, Plaintiffs assert specific jurisdiction based on conclusory allegations about ZF Friedrichshafen's: (i) alleged contacts with the U.S. to sell airbag modules incorporating the ARC inflators (CAC ¶ 62); (ii) alleged involvement in communications the Domestic ZF/TRW Defendants made to NHTSA and/or the OEMs about ARC's inflators (*id.* ¶¶ 63, 76); and (iii) alleged involvement in monitoring field incidents and compliance involving the ARC inflators (*id.* ¶ 75). These generalized allegations about ZF Friedrichshafen's purported oversight of its domestic affiliates are insufficient to establish jurisdiction under either Michigan's long-arm statute or federal due process requirements, especially because Plaintiffs fail to allege that ZF Friedrichshafen directed any claim-related conduct at Michigan.[10]

*Second*, Plaintiffs attempt to impute the forum-related contacts of the domestic defendants to ZF Friedrichshafen, based on ZF Friedrichshafen's purported "substantial control" over its U.S.-based, indirect subsidiaries. *Id.* ¶¶ 64-76. This "alter ego" theory is also deficient. Plaintiffs do not sufficiently allege that the Domestic ZF/TRW Defendants lack separate corporate identities from ZF

---

[10] The few "facts" that Plaintiffs do allege are not just defectively vague—they are factually incorrect. Submitted concurrently with this Motion is the Declaration of Kelly Laliberte, which provides factual support refuting the CAC's allegations.

Friedrichshafen, and they do not even *attempt* to allege that ZF Friedrichshafen misused the corporate form to perpetrate injustice or wrongdoing.

## I. PLAINTIFFS HAVE NOT SUFFICIENTLY PLEADED SPECIFIC JURISDICTION OVER ZF FRIEDRICHSHAFEN

The CAC does not allege facts sufficient to confer specific/limited jurisdiction. Under both Michigan and federal law, a court is entitled to exercise personal jurisdiction *only* if the defendant has engaged in forum-related conduct that gives rise to the specific claims at issue. *See, e.g., Lafarge Corp. v. Altech Env't, U.S.A.*, 220 F. Supp. 2d 823, 828 (E.D. Mich. 2002); *Herederos De Roberto Gomez Cabrera, LLC v. Teck Res. Ltd.*, 43 F.4th 1303, 1310 (11th Cir. 2022). Assessing whether specific jurisdiction exists in Michigan involves a two-step inquiry, under which both Michigan's long-arm statute and federal due process standards must be met. *See Melgarejo v. Pycsa Panama, S.A.*, 537 Fed. App'x 852, 858-59 (11th Cir. 2013). Plaintiffs do not meet their burden here, and thus, the CAC must be dismissed.

### A. Michigan's Long-Arm Statute Does Not Permit Jurisdiction

The Court must first determine whether exercising personal jurisdiction is permitted by Michigan's long-arm statute.[11] *Melgarejo*, 537 Fed. App'x at 858-59. Michigan permits "limited" jurisdiction only over actions arising out of or creating

---

[11] Specific jurisdiction is referred to under the Michigan statute as "limited" personal jurisdiction. *See* Mich. Comp. Laws §§ 600.711, 600.715.

specific enumerated relationships **with Michigan**, including the transaction of business within the state, and in actions for tort, where the tortious act or injury occurs in Michigan. *See* Mich. Comp. Laws § 600.715.

The CAC fails to establish limited jurisdiction under Michigan's long-arm statute. *First*, Plaintiffs do not allege any facts establishing that ZF Friedrichshafen transacted business relevant to their claims in Michigan. *Second*, the CAC does not allege that ZF Friedrichshafen committed any tortious act relevant to Plaintiffs' claims, or caused any injury, **in Michigan**. As such, Plaintiffs' claims do not "arise out of" any actions performed in Michigan. *See Lafarge*, 220 F. Supp. 2d at 830 (finding Michigan long-arm statute not satisfied where claim did not arise from alleged business transacted in Michigan).

At best, the CAC recites generic and irrelevant allegations about ZF Friedrichshafen's corporate dealings and affiliations with its Delaware-organized U.S. indirect subsidiaries. *See* CAC ¶¶ 57-61, 64-74. A few of these allegations cursorily reference ZF Friedrichshafen's supposed interactions with Michigan.[12] But those allegations fall far short of describing any transaction of business or other

---

[12] *See id.* ¶ 68 (alleging that one ZF Friedrichshafen Board member is based in Michigan); *id.* ¶ 70 (alleging the activities of U.S. entities were brought together "under one roof" in Michigan); *id.* (alleging that ZF Friedrichshafen's *subsidiaries* had employees in Michigan *prior to its acquisition of TRW*).

conduct by ZF Friedrichshafen *in Michigan* that relates to the subject matter of Plaintiffs' claims.

Further, none of the 115 named Plaintiffs claim that they suffered any injury *in Michigan* because of ZF Friedrichshafen's alleged conduct. Only two named Plaintiffs allege that they purchased a Chevrolet Malibu. Neither alleges that their vehicle contained an airbag module manufactured by ZF Friedrichshafen, and neither alleges that they reside in or purchased their vehicle in Michigan. *See id.* ¶¶ 149, 250. Thus, Plaintiffs fail to establish long-arm jurisdiction in Michigan.

### B.    Personal Jurisdiction Does Not Comport With Due Process

The CAC also fails to establish that exercising jurisdiction would comport with federal due process standards. *Melgarejo*, 537 Fed. App'x at 858-59. Due process requires Plaintiffs to show that ZF Friedrichshafen had "fair warning" that it might be subject to jurisdiction in this action. *Madara v. Hall*, 916 F.2d 1510, 1516 (11th Cir. 1990). This requirement is satisfied if (i) the defendant purposefully directed its conduct at, or purposefully availed itself of the privilege of conducting activities in, the forum; (ii) the claim "arises out of or relates to" that conduct; *and* (iii) the exercise of jurisdiction comports with "traditional notions of fair play and substantial justice." *See Herederos*, 43 F.4th at 1310. Courts "look to the affiliation between the forum and the underlying controversy, focusing on any activity or occurrence that took place in the forum.'" *Id.* at 1310–11. Here, the CAC pleads no

facts suggesting that Plaintiffs' claims arise out of any acts ZF Friedrichshafen purposefully directed at Michigan.

*First*, Plaintiffs allege that ZF Friedrichshafen "is subject to the Court's specific jurisdiction because it has pervasive contacts with the U.S. and exerts substantial control over its domestic subsidiaries." CAC ¶ 62. That is purely conclusory and should be disregarded. *See Aronson v. Celebrity Cruises, Inc.*, 30 F. Supp. 3d 1379, 1385 (S.D. Fla. 2014) (plaintiff's "cursory, conclusory argument" that the defendant's conduct "meets the criteria for specific jurisdiction" is not enough). A foreign defendant's contacts *with the U.S. generally* are irrelevant: what matters for specific jurisdiction to exist is the foreign defendant's claim-related contacts *with the forum state* (here, Michigan).[13] *See Walden v. Fiore*, 571 U.S. 277, 284 (2014) ("The relationship must arise out of contacts that the defendant himself creates with the forum State"). And, the fact that a foreign company has a domestic affiliate in the forum state is not legally sufficient. *See Takata*, 396 F. Supp. 3d at 1141-42 ("[A] parent corporation is not subject to the jurisdiction of a forum state

---

[13] As explained above, most of Plaintiffs' allegations against ZF Friedrichshafen— including those alleging "contacts with the U.S."—are lifted from the complaint in the California ACU Litigation. *See supra* n. 2. Unlike here, the plaintiffs there asserted federal causes of action against ZF Friedrichshafen, in which case, a foreign defendant's nationwide contacts could be potentially relevant. *See* Fed. R. Civ. P. 4(k)(2). But those copied-and-pasted allegations of nationwide contacts have no relevance here, where Plaintiffs only assert state-law claims.

merely because a subsidiary is doing business there.").

*Second*, Plaintiffs allege that "ZF [Friedrichshafen] had contacts with the United States to sell the relevant airbag modules incorporating ARC's inflators for vehicles in the U.S. market, and these contacts give rise, or relate, to Plaintiffs' claims." CAC ¶ 62. Once again Plaintiffs fail to allege any specific contact with Michigan. In truth, ZF Friedrichshafen does not market, sell, lease, distribute, warrant, design, or manufacture any products anywhere in the U.S., including in Michigan. Laliberte Decl. ¶ 14. These facts weigh heavily against the generic and conclusory statements in the CAC. *See Herederos*, 43 F.4th at 1307 n.1; *see also Barantsevich v. VTB Bank*, 954 F. Supp. 2d 972, 983 (C.D. Cal. 2013) (courts need not accept jurisdictional allegations controverted by sworn affidavits).

Further, as the CAC acknowledges, when the TRW predecessors allegedly supplied airbag modules containing the ARC inflators, ZF Friedrichshafen had ***no corporate affiliation whatsoever*** with any entity involved in those activities. ZF Friedrichshafen was not affiliated with ZF TRW Corp. (then known as TRW) and its subsidiaries until May 2015. CAC ¶ 66. Thus, Plaintiffs' own allegations demonstrate that ZF Friedrichshafen cannot have "had contacts with the United States to sell the relevant airbag modules," (CAC ¶ 62), because the only airbag modules equipped with ARC inflators were all manufactured and sold for vehicles in model-years 2008 through 2012—***three years before*** there was any affiliation

between a subsidiary of ZF Friedrichshafen and TRW.  *See* Laliberte Decl. ¶ 16; *see also Lamensdorf v. New York Univ.*, 2010 WL 11519546, at *6 (M.D. Ga. Mar. 24, 2010) ("Only contacts occurring prior to the event causing the litigation may be considered.").

*Third*, Plaintiffs allege that ZF Friedrichshafen "reviews and approves the statements its domestic subsidiaries make to NHTSA regarding airbag module design and failure."  CAC ¶ 63.  Plaintiffs fail to allege, however, whether these *unidentified* statements to NHTSA concerned the ARC inflators at issue, which specific "domestic subsidiaries" made the supposed statements, or when or where those statements purportedly occurred.  Moreover, Plaintiffs do not allege that ZF Friedrichshafen directed any conduct **at Michigan** through these purported statements to NHTSA (which is based in Washington, D.C.).  *See Walden*, 571 U.S. at 284.

*Fourth*, Plaintiffs allege, on information and belief, that ZF Friedrichshafen "reviews and approves reports of any airbag failures related to ARC's Defective

Inflators before transmission to any [OEM]." CAC ¶ 63.[14]  But, "information and belief" allegations "are not entitled to a presumption of truth." *See United Am. Corp.*, 530 F. Supp. 3d at 1261 n.21.  Paragraph 63 fails to specify any relevant details about the conduct alleged—for example, who purportedly transmitted reports to OEMs, when or where such transmissions occurred, what specific reports were allegedly reviewed and approved by ZF Friedrichshafen, or when ZF Friedrichshafen allegedly reviewed and approved them.  And once again, Plaintiffs fail to allege that ZF Friedrichshafen directed any of this supposed conduct at Michigan.

*Fifth*, Plaintiffs allege on "information and belief" that ZF Friedrichshafen "controlled all ZF-branded company communications relating to the airbag modules in the Class Vehicles following its acquisition of TRW in 2015," and thus had "final approval over the statements contained in those presentations." CAC ¶ 76.  Again, Plaintiffs supply no factual support.  They do not cite any examples of "ZF-branded

---

[14] The allegations in Paragraph 63 are nearly identical to those made against ZF Friedrichshafen in the California ACU Litigation. *Cf. In re ZF-TRW Airbag Control Units Prods. Liab. Litig.*, 2022 WL 19432575, at *1, *7 (C.D. Cal. Aug. 15, 2022) (considering allegation that ZF Friedrichshafen "reviewed and approved the presentations for NHTSA").  After **dismissing** the claims against ZF Friedrichshafen for lack of personal jurisdiction, the court there also **denied the plaintiffs' request for jurisdictional discovery**, considering evidence that ZF Friedrichshafen "exercises only limited oversight over domestic entities' communications with NHTSA," and finding this evidence "clearly refute[d] any involvement by ZF [Friedrichshafen] with respect to" those communications. *See id.* at *6.

company communications," when or where those communications occurred, or whether those communications had any relation to the alleged inflator defect at issue. Nor do Plaintiffs attempt to allege any connection between any "ZF-branded company communications" and Michigan.

*Finally*, Plaintiffs allege that ZF Friedrichshafen "was actively involved in monitoring the global field incidents involving ARC's Defective Inflators and whether the ZF airbag modules complied with safety standards in the United States and the legal risks arising therefrom."  CAC ¶ 75.  That conclusion is purportedly based on "information and belief," and on a series of public statements by ZF Friedrichshafen relating to the following:

- ZF Friedrichshafen's efforts to integrate the business activities of ZF TRW after its acquisition in 2015—*e.g.*, materials procurement, development of new technologies (*id.* ¶¶ 69, 71);

- The integration of North American physical locations (*id.* ¶ 70);

- The consolidation of service activities of ZF and TRW into a combined "ZF Aftermarket"[15] organization (*id.* ¶ 72); and

- The existence of organization-wide policies for the compliance, human resources, and governance functions (*id.* ¶¶ 73-74).

But these generalized public statements about corporate organization and intra-company interactions have nothing to do with the assertion that ZF Friedrichshafen

---

[15] This statement refers only to aftermarket operations, which do not relate in any way to the ARC inflators.  *See* Laliberte Decl. ¶ 17.

was "actively involved in monitoring the global field incidents" relating to the ARC inflators,[16] much less with any claim-related conduct specifically directed at Michigan.

In sum, the CAC's allegations about ZF Friedrichshafen's conduct hardly relate to the subject matter of this litigation at all. The scant few allegations that *do* border on relevance do not articulate any connection between that alleged conduct, the forum, and the claims Plaintiffs have asserted against ZF Friedrichshafen. The claims should be dismissed for lack of specific jurisdiction.

## II.    PLAINTIFFS HAVE NOT SUFFICIENTLY ALLEGED ALTER EGO

Recognizing, perhaps, that they cannot plead claim-related facts to establish specific jurisdiction, Plaintiffs rely largely on generalized statements about ZF Friedrichshafen's purported relationship to its indirect subsidiaries, theorizing that those indirect subsidiaries' "contacts are properly imputed onto ZF [Friedrichshafen] for the purposes of establishing personal jurisdiction." CAC ¶ 64. But those allegations fall far short of the requirements to establish jurisdiction based on imputation or "alter ego."

It is "well established that as long as a parent and a subsidiary are separate and distinct corporate entities, the presence of one in a forum state may not be

---

[16] Again, most of these allegations are lifted verbatim from the complaint in the California ACU Litigation, which explains why they are unrelated to the subject matter of this litigation. *See supra*, at 14 n.11.

attributed to the other." *Consol. Dev. Corp. v. Sherritt, Inc.*, 216 F.3d 1286, 1293 (11th Cir. 2000).  Imputation of jurisdictional contacts is a form of corporate veil-piercing—a power that courts in this Circuit and elsewhere seldom exercise.  *See, e.g.*, *Thornton v. Bayerische Motoren Werke AG*, 439 F. Supp. 3d 1303, 1312 (N.D. Ala. 2020) (noting courts "do not exercise the power to pierce the corporate veil lightly"); *see also Gianetta v. Marmel*, 2021 WL 2954084, at *2 (C.D. Cal. Mar. 26, 2021) (noting alter ego is "an extreme remedy, sparingly used").

Under Michigan law, it is "presume[d] that, absent some abuse of corporate form, parent and subsidiary corporations are separate and distinct entities." *Singh v. Daimler, AG*, 902 F. Supp. 2d 974, 981 (E.D. Mich. 2012).  Alter ego jurisdiction requires showing that (1) treating the corporations as separate will "be[] used to subvert justice or cause a result that [is] contrary to some other clearly overriding public policy" ***and*** (2) the subsidiary is "a mere instrumentality" of the parent. *United Ins. Grp. Agency v. Patterson*, 2011 WL 5067251, at *2 (Mich. Ct. App. Oct. 25, 2011).[17]  Plaintiffs fail on both counts.

---

[17] The same requirements exist under the law of Delaware, the state where each Domestic ZF/TRW Defendant is organized or incorporated. *See, e.g.*, *EBG Holdings LLC v. Vredezicht's Gravenhage 109 B.V.*, 2008 WL 4057745, at *10 (Del. Ch. Sep. 2, 2008) ("[C]ourts will ignore the corporate boundaries between parent and subsidiary on an alter ego theory only if fraud or inequity is shown.").

### A.    Plaintiffs Fail To Allege Injustice Or Contravention of Public Policy

Nothing in the CAC suggests that treating ZF Friedrichshafen and the Domestic ZF/TRW Defendants as separate corporate entities will "be[] used to subvert justice or cause a result that [is] contrary to some other clearly overriding public policy." *United Ins. Grp. Agency*, 2011 WL 5067251, at *2. Plaintiffs ignore the element altogether. That failure is dispositive. *See, e.g.*, *Glenn v. TPI Petro., Inc.*, 305 Mich. App. 698, 717 (2014) ("[P]iercing of the corporate veil is appropriate *only* when a parent company is abusing its corporate shield for its own purposes.") (emphasis added).

### B.    The Domestic ZF/TRW Defendants Are Not "Mere Instrumentalities" Of ZF Friedrichshafen

Plaintiffs also cannot establish that any Domestic ZF/TRW Defendant operates as a "mere instrumentality" of ZF Friedrichshafen. Courts routinely reject attempts to establish alter ego jurisdiction based on generic or conclusory allegations

of an "instrumentality"-type relationship.[18]  The Court should do the same here.  For example, Plaintiffs do not suggest that all ZF Friedrichshafen's revenue comes from the Domestic ZF/TRW Defendants; that ZF Friedrichshafen provides all their capital; that ZF Friedrichshafen is their exclusive supplier; that any Domestic ZF/TRW Defendant is undercapitalized; that ZF Friedrichshafen provides gratuitous services; or that ZF Friedrichshafen handles their payroll.  *See United Ins. Grp. Agency*, 2011 WL 5067251, at *2 (setting forth relevant factors).

The few allegations that attempt to establish "instrumentality" factors are facially defective.

*First*, Plaintiffs allege that ZF Friedrichshafen "integrated its physical locations with ZF TRW Corp. and its subsidiaries" after acquiring TRW Automotive Holdings Corp., and that it "re-align[ed] its North American activities [to] bring[] the businesses together 'under one roof' in the former TRW headquarters" in

---

[18] *See, e.g.*, *RMS Titanic, Inc. v. Zaller*, 978 F. Supp. 2d 1275, 1291 (N.D. Ga. 2013) (finding that "conclusory statements and broad characterizations" of an alter ego relationship "do not offer well-pleaded facts to support a claim that [parent] used [subsidiary's] corporate form for fraudulent or improper purposes"); *In re Banco Santander Sec.-Optimal Litig.*, 732 F. Supp. 2d 1305, 1313 (S.D. Fla. 2010) (dismissing claims where plaintiffs "fail to substantiate their jurisdictional claims with evidence of agency or alter ego relationships sufficient to impute the conduct of other persons or entities to the Defendants challenging personal jurisdiction"); *Mother Doe I v. Maktoum*, 632 F. Supp. 2d 1130, 1141 (S.D. Fla. 2007) (rejecting alter ego jurisdiction where plaintiffs did not allege facts showing defendants "failed to properly observe the corporate form").

Michigan. CAC ¶ 70. But what matters is whether ZF Friedrichshafen shared principal offices with its indirect subsidiaries, not whether those subsidiaries shared offices among themselves. *United Ins. Grp. Agency*, 2011 WL 5067251, at *2 (considering facts including whether "the parent and subsidiary share principal offices"). They did not: as Plaintiffs themselves allege, ZF Friedrichshafen's headquarters are in Germany (*id.* ¶ 58), while each Domestic ZF/TRW Defendant is headquartered in Michigan (*id.* ¶ 61). *See Smith v. Amada Mach. Tools Am. Inc.*, 2017 WL 4339328, at *6 (E.D. Mich. June 12, 2017) ("It is hard to conceive of two entities as alter egos of one another when they maintain principal places of business separately, on opposite sides of the planet.").

*Second*, Plaintiffs cannot establish an alter ego relationship by alleging that ZF Friedrichshafen and its indirect subsidiaries have shared certain common board members and managers from time to time (*see* CAC ¶ 67). As courts applying Michigan law have recognized, such facts do not warrant disregarding corporate separateness. *See Amada Mach. Tools,* 2017 WL 4339328, at *6 ("[Plaintiff] offers no authority suggesting that because a few of many officers and directors at two

affiliates overlapped over several decades, the Court should disregard the entities' separate corporate existence.").[19]

*Third*, Plaintiffs allege that ZF Friedrichshafen has "exercised significant control over the day-to-day operations of the Domestic [ZF/TRW] Defendants," based solely on the allegation that a "member of ZF AG's Board of Management who is also the president of *ZF North America, Inc.* [] is permanently based in Michigan." CAC ¶ 68. But ZF North America, Inc. is *not* a party to this case. Plaintiffs' reference to the management personnel for that entity is irrelevant. *See In re Auto. Parts Antitrust Litig.,* 2013 WL 2456610, at *5 (E.D. Mich. June 6, 2013) ("Plaintiffs' reliance on intermingling between a party and nonparty to give credence to its alter ego theory relative to [defendant] is misplaced."). Moreover, even if Plaintiffs had alleged that ZF Friedrichshafen shared certain executive personnel with the domestic affiliates that *are* named defendants, that fact would not support alter ego jurisdiction. *See Dow Chem. Co.*, 2016 WL 5070269, at *4 (no alter ego where two corporations were in a common enterprise, shared some board members, and had some managers with "[g]lobal [r]oles" between entities).

---

[19] *See also Anwar v. Dow Chem. Co.*, 2016 WL 5070269, at *4 (E.D. Mich. Sep. 20, 2016) ("[Plaintiff argues] that, because the entities share common board members and managers, unity of ownership and interest should be presumed. The Supreme Court has rejected such a presumption.").

*Fourth,* Plaintiffs allege that ZF Friedrichshafen "has authority over the Domestic [ZF/TRW] Defendants because it *directly or indirectly* owns and controls the voting power over [them]." CAC ¶ 65 (emphasis added). But ZF Friedrichshafen does not "directly" own or control any Domestic ZF/TRW Defendant. All are separated from ZF Friedrichshafen by at least two intermediate entities that are not defendants. *See supra*, at 4; *see also Thornton*, 439 F. Supp. 3d at 1312 (declining to exercise alter ego jurisdiction where "four intermediate companies separate" the foreign parent). Moreover, a parent's voting power does not equate to "direct[ing] the policies and decisions of" its subsidiaries—if it did, every subsidiary would be an "instrumentality" of its parent. *United Ins. Grp. Agency*, 2011 WL 5067251, at *2.

*Fifth*, Plaintiffs allege that ZF Friedrichshafen and its indirect subsidiaries share some legal and compliance policies and functions. *See* CAC ¶ 73-74. But the existence of centralized business and administrative functions does not suggest that ZF Friedrichshafen's relationship with its indirect subsidiaries "exceed[s] a typical corporation relationship." *See In re Auto. Parts Antitrust Litig.*, 2013 WL 2456610, at *5 (finding "[c]entralized research and development, purchasing, and logistical activities are not indicative" of an alter ego relationship).

*Finally*, Plaintiffs allege that ZF Friedrichshafen and its indirect subsidiaries held themselves out as one entity. But it is typical for members of a corporate family

to have a "common pattern and practice of describing [themselves] as a single, unified entity," and to tout a common "brand image." *See* CAC ¶ 71.    These statements (even if true) only suggest a common enterprise, not that ZF Friedrichshafen "controls [its subsidiaries] to such a degree as to render [them] mere instrumentalit[ies]." *Anwar*, 2016 WL 5070269, at *3.  This is especially true where, as here, the domestic entities are only indirect subsidiaries of the foreign great (or great-great) grandparent entity. *See Alexander Assocs., Inc. v. FCMP, Inc*., 2012 WL 1033464, at *18 (E.D. Mich. Mar. 27, 2012) (holding that allegations that related entities held themselves out as a single enterprise were insufficient).

In sum, Plaintiffs fail to establish the existence of an alter ego relationship, and provide no basis for the Court to disregard the Domestic ZF/TRW Defendants' distinct corporate identities for purposes of jurisdiction.  The Central District of California rejected a similar "alter ego" theory of personal jurisdiction over ZF Friedrichshafen based on the U.S. contacts of its indirect subsidiaries. *See In re ZF-TRW Airbag Control Units Prods. Liab. Litig.*, 2022 WL 522484, at *724 (C.D. Cal. Feb. 9, 2022) (finding "[t]he relevant case law does not support" Plaintiffs' theory "that the activities of a subsidiary of one entity can be imputed to … the [corporate] grandparent").  The Court should do the same here.

## <u>CONCLUSION</u>

For the reasons set forth in this memorandum, the Court should dismiss Plaintiffs' claims against ZF Friedrichshafen.

Dated: November 25, 2024

Respectfully submitted,

*/s/ Sean M. Berkowitz*
LATHAM & WATKINS LLP

Sean M. Berkowitz
Illinois Bar No. 6209701
Arthur F. Foerster
Illinois Bar No. 6271201
Johanna Spellman
Illinois Bar No. 6293851
330 North Wabash Street, Suite 2800
Chicago, IL 60611
Telephone: 312.876.7700
Facsimile: 312.993.9767

Sean P. McNally
Michigan Bar No. 66292
Troutman Pepper Hamilton Sanders LLP
4000 Town Center, Suite 1800
Southfield, MI 48075
Telephone: 248.359.7317
Facsimile: 248.359.7700

Lindsey B. Mann
Georgia Bar No. 431819
Troutman Pepper Hamilton Sanders LLP
600 Peachtree Street, Suite 3000
Atlanta, GA 30308
Telephone: 404.885.2743
Facsimile: 404.962.6538

*Counsel for ZF Friedrichshafen AG*

**<u>CERTIFICATE OF COMPLIANCE WITH LOCAL RULE 7.1</u>**

The undersigned hereby certifies that this filing was prepared using one of the font and point selections approved by this Court in Local Rule 5.1. Specifically, Times New Roman font was used in 14 point.

Dated: November 25, 2024          */s/ Sean M. Berkowitz*
                                      Sean M. Berkowitz
                                      Illinois Bar No. 6209701