**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF GEORGIA**
**ATLANTA DIVISION**

| | |
|---|---|
| IN RE: ARC AIRBAG INFLATORS PRODUCTS LIABILITY LITIGATION | MDL No. 3051<br><br>Case No: 1:22-md-03051-ELR |

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT BAYERISCHE MOTOREN WERKE AKTIENGESELLSCHAFT'S MOTION, BY *SPECIAL APPEARANCE*, TO DISMISS PLAINTIFFS' CORRECTED CONSOLIDATED CLASS ACTION COMPLAINT FOR LACK OF <u>PERSONAL JURISDICTION PURSUANT TO FED. R. CIV. P. 12(b)(2)</u>**

## **TABLE OF CONTENTS**

INTRODUCTION ...................................................................................1

FACTUAL BACKGROUND .................................................................4

LEGAL STANDARD.............................................................................9

ARGUMENT .......................................................................................11

I.   Plaintiffs Allege No Plausible Jurisdictional Facts in the CCAC to Make Out a *Prima Facie* Case of Personal Jurisdiction Over BMW AG. ..................................12

II.   This Court Lacks General Jurisdiction Over BMW AG. ..................................15

III.   This Court Also Lacks Specific Jurisdiction Over BMW AG.....................19

  1.   BMW AG Lacks Minimum Contacts With South Carolina or New Jersey for Specific Jurisdiction. ...................................................................19

    (a)   BMW AG Has Not Purposefully Directed Its Activities at South Carolina or New Jersey.....................................................................19

    (b)   Plaintiffs' Consumer Protection Claims Do Not Arise Out of or Relate to Any BMW AG South Carolina or New Jersey Activities.......................22

  2.   The Exercise of Personal Jurisdiction Over BMW AG Would Offend German Sovereignty and Traditional Notions of Fair Play and Substantial Justice.......................................................................24

CONCLUSION ....................................................................................25

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Alexander v. Bayerische Motoren Werke AG,*
2020 U.S. Dist. LEXIS 77183 (D.S.C. May 1, 2020) ......................16, 17, 18, 20

*Asahi Metal Indus. Co. v. Superior Ct. of California, Solano Cnty.,*
480 U.S. 102 (1987).........................................................................10, 21, 24, 25

*Braman Motors, Inc. v. BMW of N. Am., LLC,*
2019 U.S. Dist. LEXIS 174561 (S.D. Fla. Sep. 30, 2019) .................................18

*Brown v. BMW of N. Am., LLC,*
2016 U.S. Dist. LEXIS 13209 (S.D. Ind. Feb. 4, 2016) .....................................18

*Butler Auto Recycling, Inc. v. Honda Motor Co. (In re Takata Airbag
Prods. Liab. Litig.),*
524 F. Supp. 3d 1266 (S.D. Fla. 2021) ..............................................................11

*Catalyst Pharms., Inc. v. Fullerton,*
748 Fed. Appx. 944 (11th Cir. 2018)..................................................................10

*Chernus v. Logitech, Inc.,*
2018 U.S. Dist. LEXIS 70784 (D.N.J. Apr. 27, 2018)........................................19

*Consol. Dev. Corp. v. Sherritt, Inc.,*
216 F.3d 1286 (11th Cir. 2000) ..........................................................................14

*Daimler AG v. Bauman,*
571 U.S. 117 (2014)......................................................................................*passim*

*Eaves v. Pirelli Tire, LLC,*
2014 U.S. Dist. LEXIS 64866 (D. Kan. May 12, 2014) .....................................21

*Fischer v. BMW of N. Am., LLC,*
376 F. Supp. 3d 1178 (D. Colo. 2019)....................................................13, 18, 22

*Guldenzoph v. Indigo Rd. Hosp. Grp.,*
2024 U.S. Dist. LEXIS 98989 (D.S.C. June 4, 2024) ........................................16

*Int'l Shoe Co. v. Washington*,
    326 U.S. 310 (1945)..............................................................................24

*J. McIntyre Mach., Ltd. v. Nicastro*,
    564 U.S. 873 (2011)..............................................................................21

*Kearney v. Bayerische Motoren Werke Aktiengesellschaft*,
    2021 U.S. Dist. LEXIS 62356 (D.N.J. Mar. 31, 2021) .....................................17

*LifeBrite Labs., LLC v. Blue Cross & Blue Shield of Fla., Inc.*,
    2024 U.S. Dist. LEXIS 107242 (N.D. Ga. June 17, 2024)................................12

*Madden v. Petland Summerville, LLC*,
    2021 U.S. Dist. LEXIS 232951 (D.S.C. Dec. 6, 2021) ......................................4

*Maseng v. Lenox Corp.*,
    483 F. Supp. 3d 360 (D.S.C. 2020) ..........................................................15, 19

*Oliver v. Funai Corp.*,
    2015 U.S. Dist. LEXIS 169998 (D.N.J. Dec. 21, 2015)...........................*passim*

*Polywad, Inc. v. Able's Sporting, Inc.*,
    2024 U.S. Dist. LEXIS 74059 (M.D. Ga. Apr. 23, 2024) .............................9, 10

*Rano v. Sipa Press, Inc.*,
    987 F.2d 580 (9th Cir. 1993) .......................................................................25

*Remick v. Manfredy*,
    238 F.3d 248 (3d Cir. 2001) .........................................................................22

*Rose v. Cont'l Aktiengesellschaft*,
    2001 U.S. Dist. LEXIS 24099 (E.D. Pa. Oct. 17, 2001) ...........................*passim*

*Rush v. Savchuk*,
    444 U.S. 320 (1980)..................................................................................15

*Seltzer v. I.C. Optics, Ltd.*,
    339 F. Supp. 2d 601 (D.N.J. 2004)...........................................................4, 6, 13

*Snow v. DirecTV, Inc.*,
    450 F.3d 1314 (11th Cir. 2006) ....................................................................10

iv

*Tagayun v. Lever & Stolzenberg*,
    2007 U.S. Dist. LEXIS 94444 (D.N.J. Dec. 27, 2007) ........................................ 11

*In re Takata Airbag Prod. Liab. Litig.*,
    396 F. Supp. 3d 1101 (S.D. Fla. 2019) ................................................................ 10

*In re Takata Airbag Prods. Liab. Litig.*,
    2019 U.S. Dist. LEXIS 184046 (S.D. Fla. Sep. 25, 2019) ................................. 18

*Thornton v. BMW AG*,
    2020 U.S. Dist. LEXIS 25168 (N.D. Ala. Feb. 13, 2020) ........................... 15, 22

*Zanakis v. Scanreco, Inc.*,
    2019 WL 2211872 (S.D. Fla. Feb. 6, 2019) ....................................................... 10

*Zelma v. Burke*,
    2017 U.S. Dist. LEXIS 1209 (D.N.J. Jan. 4, 2017) ........................................... 12

## Statutes / Rules

S.C. Code Ann. § 36-2-802 ...................................................................................... 3, 11

Fed. R. Civ. P. 12(b)(2) ............................................................................................. 1, 9

N.J. Court Rules, R. 4:4-4 ........................................................................................ 3, 11

Pursuant to Fed. R. Civ. P. 12(b)(2), defendant Bayerische Motoren Werke Aktiengesellschaft ("BMW AG") *specially appears*[1] and files this Motion to Dismiss Plaintiffs' Corrected Consolidated Class Action Complaint ("CCAC" or "Operative Complaint") (Dkt. 157) for lack of Personal Jurisdiction.

## INTRODUCTION

Plaintiffs Ryan Clark and Kristen Luiz (hereinafter, "Plaintiffs") are South Carolina and Massachusetts residents, respectively, who each purchased *used* 2015 BMW X5 vehicles from third party dealerships.[2] They sued BMW AG, the German manufacturer of BMW and MINI brand vehicles, and assert fraud, consumer protection, and breach of warranty claims.[3] Plaintiffs bring these claims on behalf of themselves and a putative class of consumers who purchased certain BMW and MINI brand vehicles with purportedly defective airbag inflators. (CCAC, Ex. E,

---

[1] This Motion is not intended to waive any arguments BMW AG may have under Rule 12(b)(6). If the Court does not dismiss BMW AG for lack of personal jurisdiction, BMW AG reserves its right to then file a Rule 12(b)(6) motion for failure to state a claim.

[2] While the 1,500-page/4,000 paragraph CCAC includes nearly 100 Plaintiffs asserting fraud-based claims and warranty claims under 50 states' laws multiple vehicle manufacturers and distributors and parts suppliers, only the claims of the two BMW plaintiffs (Ryan Clark and Kristen Luiz) are relevant to this motion. (CCAC ¶¶ 163, 190). References to "Plaintiffs" here are to BMW plaintiffs Clark and Luiz.

[3] Plaintiffs initially sued BMW Manufacturing Co., LLC ("BMW MC") and BMW AG in the District of South Carolina (Case No. 7:23-cv-03151-BHH) and BMW of North America, LLC ("BMW NA") and BMW AG in the District of New Jersey (Case No. 2:23-cv-03552-KM). Clark also sued BMW NA and BMW AG in the N.D. of California (Case No. 3:22-cv-03053-TLT), but dismissed that case.

Dkt. 157-2 at p.56).  BMW AG moves to dismiss Plaintiffs' transnational claims against it because this Court does not have personal jurisdiction over it.

The CCAC focuses exclusively on the alleged conduct of co-defendant BMW NA and other co-defendants collectively.  Indeed, Plaintiffs do not allege a single non-generic fact pertaining to *BMW AG*'s alleged conduct, much less facts that could remotely support or provide a basis for general or specific jurisdiction over a Germany entity headquartered in Germany.  This is unsurprising—BMW AG did not sell, market, distribute, or warrant Plaintiffs' cars or any of the putative class vehicles.[4]  Nor did it place Plaintiffs' cars or the putative class vehicles into the U.S. stream of commerce.  This was all done by *BMW NA*—the exclusive U.S. distributor of BMW/MINI brand cars, a fact Plaintiffs recognize.  (*See, e.g.*, CCAC ¶ 79) (alleging BMW NA "imports, promotes, advertises, distributes, and sells BMW AG and/or BMW brand cars, trucks, and sport utility vehicles in the United States.").  Even then, BMW NA's alleged activities are limited to *new* vehicle sales (not used vehicles, like Plaintiffs' cars).  While Plaintiffs' fraud, consumer protection, and breach of warranty claims have no merit, to the extent they can be asserted at all, they only apply to BMW NA's alleged conduct, not BMW AG's.

---

[4] The BMW / MINI vehicles in the putative Class Vehicles definition are 2014-2017 Mini Cooper 2 Door; 2015-2017 Mini Cooper 4 Door; 2016-2017 Mini Cooper Convertible; 2014-2017 BMW i3; 2016-2017 BMW X1 SAV; 2014-2017 BMW X5 SAV; 2015-2017 BMW X6 SAV; and 2015-2019 BMW X5.  (CCAC, Ex. E, Dkt. 157-2 at p.56).

The transferor forums, South Carolina and New Jersey, both have long-arm statutes that authorize personal jurisdiction over a non-resident defendant to the extent permissible under the Due Process Clause of the U.S. Constitution. *See* S.C. Code Ann. § 36-2-802; N.J. Court Rules, R. 4:4-4. Thus, the Court must inquire whether its exercise of jurisdiction over BMW AG would "comport[] with the limits imposed by federal due process." *Daimler AG v. Bauman*, 571 U.S. 117, 125 (2014). Constitutional due process requires BMW AG to "have certain minimum contacts" with the forum state "such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice." *Id.* at 126. The "minimum contacts" analysis is satisfied by general or specific jurisdiction. Neither exists here.

BMW AG is a German corporation headquartered in Munich, Germany. It is not, under any measure, "essentially at home" in South Carolina or New Jersey, as required for general jurisdiction. Nor do Plaintiffs' claims arise out of or relate to BMW AG's contacts with either state, as required for specific jurisdiction. Indeed, Plaintiffs fail to plausibly allege *any* contact between BMW AG and these States, let alone contact directed at the States that are related or give rise to their claims. Their claims, while lacking merit, arise only out of *BMW NA*'s alleged marketing and warranty activities which are attenuated since they bought *used* cars.

Nor is there any factual or legal support that contacts between BMW NA and Plaintiffs can somehow be imputed to BMW AG. As detailed herein, BMW AG and

BMW NA have always been and remain two distinct and separate entities with very different operations and roles. BMW AG does not control BMW NA such that BMW NA can be considered BMW AG's "agent" or "alter ego." And case law from South Carolina and New Jersey is clear that the alleged contacts of a subsidiary with the forum alone cannot confer jurisdiction on the parent. *See, e.g.*, *Madden v. Petland Summerville, LLC*, 2021 U.S. Dist. LEXIS 232951, at *9 (D.S.C. Dec. 6, 2021); *Seltzer v. I.C. Optics, Ltd.*, 339 F. Supp. 2d 601, 610 (D.N.J. 2004).

Ultimately, any exercise of jurisdiction over BMW AG on such cursory allegations and tenuous facts would offend German sovereignty and traditional notions of fair play and substantial justice. For these and other reasons discussed herein, Plaintiffs' claims against BMW AG should be dismissed.

## FACTUAL BACKGROUND

Plaintiff Clark resides in Mount Pleasant, South Carolina and bought a *used* 2015 BMW X5 in November 2019. (CCAC ¶ 162). Plaintiff Luiz resides in Rutland, Massachusetts and bought a *used* 2015 BMW X5 on August 29, 2017. (*Id.* ¶ 190). Plaintiffs allege their cars are equipped with defective airbag inflators manufactured by ARC Automotive, Inc. (*Id.* ¶¶ 162, 190, 375). They further allege that, in rare circumstances, the claimed defect can cause the inflator to rupture when the airbag deploys and metal fragments may enter the passenger compartment. (*Id.* ¶¶ 2, 295, 332). Plaintiffs claim the "Automaker Defendants" "knew about the defect" and "were

4

made aware" of inflator failures. (*Id.* ¶ 10). Neither Plaintiff alleges experiencing any issues with the airbags in their 2015 BMW X5.

Plaintiffs uniformly parrot the same language and further allege: (1) "Plaintiff's X5 was covered by a written warranty" (issued by BMW NA); (2) "Plaintiff purchased [the] Class Vehicle without knowledge of the Inflator Defect"; (3) through "exposure to BMW's advertisements, promotional materials and other public statements, Plaintiff was aware of BMW's uniform and pervasive marketing message that its vehicles are safe and dependable, which was material to [Plaintiff's] decision to purchase the Class Vehicle"; (4) "[a]t no point before Plaintiff purchased [the] Class Vehicle did BMW disclose that it was not safe or dependable, or that it was equipped with an airbag containing a Defective Inflator"; (5) "[h]ad Defendants disclosed their knowledge of the defect, Plaintiff would have heard, seen, and been aware of it"; (6) "Plaintiff had no way of knowing when [they] purchased [the] Class Vehicle that it contained an airbag with a Defective Inflator and only recently learned of the presence of the Inflator Defect in [the] Class Vehicle in 2022, shortly before commencing [this] lawsuit"; and (7) "[t]o Plaintiff's knowledge, the airbag with the Defective Inflator in [the] Class Vehicle has not been repaired or replaced." (CCAC ¶¶ 162, 190). Yet none of these claims are specific to or apply to BMW AG.

Plaintiffs do not identify a single specific advertisement or promotional material they claim to have seen, let alone any advertising by BMW AG, and do not plead they

relied on any specific materials in deciding to purchase their cars. (*See id.* ¶¶ 162, 190). They uniformly contend without support that the value of their cars "has been diminished as a result of the Inflator Defect" and that, "[i]f Plaintiff had known about the Inflator Defect, [they] either would have not purchased the Class Vehicle, or would have paid less to do so." (*Id.*).

Plaintiffs assert 263 separate causes of action for fraudulent omission and concealment, unjust enrichment, breach of express and implied warranty, and violation of consumer protection and other statutes under the laws of all 50 states and the District of Columbia, including states where no plaintiff lives or purchased a vehicle. Plaintiffs seek to represent nationwide and state classes of consumers with Class Vehicles equipped with inflators ARC manufactured from 2001-2018. (CCAC ¶¶ 20-21, 388).

Notably, the CCAC contains no allegations that BMW AG engaged in any conduct in South Carolina or New Jersey. This is unsurprising because no such facts exist. The only BMW AG specific fact is in Paragraph 80, which states "Defendant [BMW AG] is incorporated under the laws of Germany and maintains its principal place of business in Germany." (*Id.* ¶ 80). This single BMW AG specific fact alone shows this Court *lacks* personal jurisdiction over BMW AG.

The remaining omnibus allegations in the CCAC lump BMW NA, BMW MC, and BMW AG together as the "BMW Defendants" as if they are the same company. (*See, e.g.*, *id.* ¶ 81). For example, Plaintiffs allege "the BMW Defendants deliver

their products into the stream of commerce with the expectation that they will be purchased by consumers in all of the United States, purposefully avail themselves of the laws of each state and territory of the United States, and receive financial benefit and profits as a result of designing, manufacturing, testing, marketing, distributing, storing, and/or selling the Class Vehicles, either directly or through subsidiaries, within each state and territory of the United States." (*Id.* ¶ 83). They compound this problem by then lumping the "BMW Defendants" into a larger, omnibus "Automaker Defendants" moniker. For example, Plaintiffs allege that the "Automaker Defendants have long known that ARC inflators are defective" (*id.* ¶ 8), yet fail to allege anything specific as to BMW AG.

These summary allegations and collective references to the activities of *all* "Defendants" are legally improper and factually incorrect. Indeed, while Plaintiffs make some attempt to plead the roles of BMW MC and BMW NA (CCAC ¶¶ 78-79), they only plead BMW AG's place of incorporation and principal place of business, without a single additional fact. (*Id.* ¶ 80).

But as the declaration of Ronny Löwa makes clear, the term "BMW Defendants" does not refer to a cognizable legal entity. (*See* Declaration of Ronny Löwa ("Löwa Decl.") ¶ 5). BMW NA, BMW MC, and BMW AG are distinct and separate legal entities. (*Id.* ¶¶ 5, 22). As relevant here, BMW NA is a U.S. legal entity organized under the laws of the State of Delaware, and has its principal place

of business in New Jersey.  (*Id.* ¶ 23).  BMW NA is the *exclusive* distributor of new BMW and MINI brand motor vehicles to the public in the U.S. and is solely responsible for marketing, advertising, selling, and warranting new BMW and MINI vehicles in the U.S.  (*Id.* ¶ 27).  Indeed, BMW AG does not sell, market, distribute, or warrant goods or services in the U.S. (*id.* ¶ 16), does not control the distribution of BMW and MINI vehicles in the U.S. (*id.* ¶ 27), and it does not control the operations of BMW NA (*id.* ¶¶ 25, 30).

In contrast, BMW AG is a corporation organized and existing under the laws of the Federal Republic of Germany, with its principal place of business and headquarters in Munich, Germany.  (*Id.* ¶ 6).  BMW AG is not incorporated in any U.S. state and is not qualified to do business in any U.S. state.  (*Id.* ¶ 7).  BMW AG designs and manufactures BMW and MINI brand cars in Germany, but conducts no such activity in the U.S.  (*Id.* ¶ 12).  BMW AG does not sell or distribute BMW or MINI brand cars directly to dealers or to the general public in the U.S. (*Id.*).  Rather, BMW AG sells cars to BMW NA, on an "Ex works" basis in Germany.  (*Id.* ¶ 29).

Critical here to this consumer-protection case, BMW AG does not market or advertise goods or services in the U.S. and does not provide any warranties for goods in the U.S.  (*Id.* ¶ 16).  Marketing decisions directed toward U.S. consumers are made exclusively by BMW NA.  (*Id.* ¶ 27).  BMW AG does not maintain sales forces in the U.S. either.  (*Id.* ¶ 19).  Moreover, BMW AG does not conduct sales campaigns

of its vehicles directed at the general public in any U.S. state.  (*Id.* ¶ 14).  On the other hand, BMW NA markets and distributes vehicles that are certified for use on public streets, roads, and highways of the U.S. (*Id.* ¶ 29).

BMW AG is a distinct legal entity separated from BMW NA by five intermediary entities.  (*Id.* ¶¶ 23-24).  Each company has separate procedures and policies for its respective operations.  (*Id.* ¶ 30).  BMW AG does not have day-to-day control of the internal affairs or operations of BMW NA.  (*Id.* ¶ 25).  As the distributor of BMW and MINI brand motor vehicles in North America, BMW NA has separate corporate interests from BMW AG, the manufacturer.  (*Id.* ¶ 30).  Importantly for this Motion, BMW AG has no agent for service of legal process in any U.S. state and has not designated any entity as its agent for service of legal process anywhere in the U.S. (*Id.* ¶ 8).

## LEGAL STANDARD

FRCP 12(b)(2) governs motions to dismiss for lack of personal jurisdiction. "It is essential for the Court to make this determination [of personal jurisdiction] before it can do anything in this case."  *Polywad, Inc. v. Able's Sporting, Inc.*, 2024 U.S. Dist. LEXIS 74059, at *6 (M.D. Ga. Apr. 23, 2024).  Plaintiffs seeking the exercise of jurisdiction over a nonresident defendant "bear[] the initial burden of alleging in the complaint sufficient facts to make out a prima facie case of jurisdiction."  *Id.* (citing *United Techs. Corp. v. Mazer*, 556 F.3d 1260, 1274 (11th

Cir. 2009)). If defendant "refutes personal jurisdiction by—as here—submitting affidavit evidence in support of its position, the burden shifts back to the plaintiff to substantiate its jurisdictional allegations through affidavits, testimony, or other evidence of its own." *Polywad, Inc.*, 2024 U.S. Dist. LEXIS 74059, at *6 (citing *Future Tech. Today, Inc. v. OSF Healthcare Sys.*, 218 F.3d 1247 (11th Cir. 2000)).

Courts in this Circuit "have repeatedly declined to exercise specific jurisdiction over a nonresident defendant on the basis of generalized and conclusory allegations." *In re Takata Airbag Prod. Liab. Litig.,* 396 F. Supp. 3d 1101, 1142 (S.D. Fla. 2019).[5] And the bar for establishing jurisdiction over a non-U.S. entity is even higher. *See Zanakis v. Scanreco, Inc.,* 2019 WL 2211872, at *15 (S.D. Fla. Feb. 6, 2019) ("The unique burdens placed upon one who must defend oneself in a foreign legal system should have significant weight in assessing the reasonableness of stretching the long arm of personal jurisdiction over national borders."). The Supreme Court has instructed that "[g]reat care and reserve should be exercised when extending our notions of personal jurisdiction into the international field." *Asahi Metal Indus. Co. v. Superior Ct. of California, Solano Cnty.,* 480 U.S. 102, 115 (1987).

---

[5] *See also Catalyst Pharms., Inc. v. Fullerton*, 748 Fed. Appx. 944, 946 (11th Cir. 2018) ("Vague and conclusory allegations do not satisfy" a plaintiff's burden to "make out a prima facie case of jurisdiction[.]"); *Snow v. DirecTV, Inc.*, 450 F.3d 1314, 1318 (11th Cir. 2006) (finding "vague and conclusory allegations …insufficient to establish a prima facie case of personal jurisdiction").

MDL courts are entitled to exercise personal jurisdiction over a defendant ***only*** to the same degree that the original transferor court could have done. *See Butler Auto Recycling, Inc. v. Honda Motor Co. (In re Takata Airbag Prods. Liab. Litig.),* 524 F. Supp. 3d 1266, 1276 (S.D. Fla. 2021). Here, the relevant transferor courts are South Carolina and New Jersey and their laws require that BMW AG be dismissed.

## ARGUMENT

A federal court sitting in diversity must conduct a two-step analysis to determine whether personal jurisdiction exists over a defendant. *Tagayun v. Lever & Stolzenberg,* 2007 U.S. Dist. LEXIS 94444, at *8-9 (D.N.J. Dec. 27, 2007). First, the court "must look to the forum state's long-arm statute to determine if personal jurisdiction is permitted over the defendant." *Id.* at *9. Second, the court "must determine whether the exercise of personal jurisdiction would be repugnant to the Due Process Clause of the Fourteenth Amendment." *Id.* Given South Carolina and New Jersey's long-arm statutes permit the exercise of personal jurisdiction consistent with due process of law (S.C. Code Ann. § 36-2-802; N.J. Court Rules, R. 4:4-4), the Court must combine these inquiries into a single step and must inquire whether its exercise of jurisdiction over BMW AG would "comport[] with the limits imposed by federal due process." *Bauman,* 571 U.S. at 125.

Constitutional due process requires a non-resident defendant to have "'certain minimum contacts with [the State] such that the maintenance of the suit does not

offend 'traditional notions of fair play and substantial justice.'" *Id.* at 127 (citations omitted).  In determining whether personal jurisdiction comports with due process, courts "'recogniz[e] two kinds of personal jurisdiction: general (sometimes called all-purpose) jurisdiction and specific (sometimes called case-linked) jurisdiction.'" *LifeBrite Labs., LLC v. Blue Cross & Blue Shield of Fla., Inc.*, 2024 U.S. Dist. LEXIS 107242, at *13-14 (N.D. Ga. June 17, 2024) (citation omitted).

As discussed below, Plaintiffs fail to plead any plausible jurisdictional facts to make out a *prima facie* case of personal jurisdiction over BMW AG, and the few allegations in the CCAC are not enough for either general or specific jurisdiction over BMW AG.  Further, even if Plaintiffs had carried their burden, which they have not, the exercise of personal jurisdiction over BMW AG would offend both German sovereignty and traditional notions of fair play and substantial justice.

## I.    Plaintiffs Allege No Plausible Jurisdictional Facts in the CCAC to Make Out a *Prima Facie* Case of Personal Jurisdiction Over BMW AG.

The CCAC does not plead *any* plausible jurisdictional facts to establish a *prima facie* case of personal jurisdiction over BMW AG.  *Zelma v. Burke*, 2017 U.S. Dist. LEXIS 1209, at *6-9 (D.N.J. Jan. 4, 2017) (dismissing based on lack of personal jurisdiction where "viewed in the light most favorable to Plaintiffs, the Complaint does not allege with sufficient particularity conduct performed by the [Defendants]" to establish the court's personal jurisdiction over them).  Out of the 1,500-page, 4,000+ paragraphs in the CCAC, just *three* even mention BMW AG:

(1) Par. 79, which alleges BMW NA "imports, promotes, advertises, distributes, and sells BMW AG and/or BMW brand cars, trucks, and sport utility vehicles in the United States" (CCAC ¶ 79); (2) Par. 80, which states BMW AG "is incorporated under the laws of Germany and maintains its principal place of business in Germany" (*id.* ¶ 80); and (3) Par. 81, which states "BMW AG, BMW Mfg., and BMW America are collectively referred to as the 'BMW Defendants.'" (*Id.* ¶ 81). The Par. 80 allegation alone *highlights* the threshold lack of personal jurisdiction since Plaintiffs confirm BMW AG is not incorporated in New Jersey or South Carolina and does not have its principal place of business in those states. (*Id.* ¶ 80).

While Plaintiffs do not even attempt to allege the relationship between parent BMW AG and subsidiaries BMW NA and BMW MC, a parent-subsidiary relationship alone would not be enough in the first instance to confer jurisdiction over BMW AG. *See, e.g.*, *Seltzer v. I.C. Optics, Ltd.*, 339 F. Supp. 2d 601, 610 (D.N.J. 2004) (refusing to find the local subsidiary was the "alter ego" of the foreign parent and holding that "[i]n New Jersey, a subsidiary will be deemed to be the alter ego or 'mere instrumentality' of its parent if 'the parent so dominated the subsidiary that it had no separate existence but was merely a conduit for the parent.'"); *Fischer v. BMW of N. Am., LLC*, 376 F. Supp. 3d 1178, 1189 (D. Colo. 2019) ("the mere existence of a parent-subsidiary relationship will not suffice" to support a finding

"that BMW NA is the general agent or alter ego of [BMW AG]."). [6] Yet this is all Plaintiffs could offer here (which they do not).

Plaintiffs also do not allege any facts to show BMW NA is BMW AG's "alter ego" (for purposes of personal jurisdiction or otherwise). Nor could they: BMW AG is a distinct legal entity that is separated from BMW NA by five intermediary entities. (Löwa Decl. ¶¶ 23-24). Also, BMW AG and BMW NA have entirely different and separate operations (*id.* ¶¶ 4, 10-12, 14-17, 25-28, 30) and BMW AG does not have day-to-day control of the internal affairs or operations of BMW NA (*id.* ¶ 25). Thus, Plaintiffs cannot plausibly claim that BMW NA is the "alter ego" of BMW AG. *See Rose v. Cont'l Aktiengesellschaft*, 2001 U.S. Dist. LEXIS 24099, at *7-12 (E.D. Pa. Oct. 17, 2001) (granting BMW AG's motion to dismiss and rejecting plaintiff's argument that "the contacts of BMW NA should be attributed to BMW AG for the purpose of personal jurisdiction," and questioning how "any further discovery could realistically be expected to produce [sufficient] evidence").

Plaintiffs improperly seek to meet their pleading burden through an omnibus "BMW Defendants" moniker. (*See, e.g.*, CCAC ¶ 81). But this pleading approach is inadequate, especially in jurisdictional allegations. It is "plainly unconstitutional" to consider the "defending parties" together and aggregate their forum contacts,

---

[6] *See also, e.g.*, *Consol. Dev. Corp. v. Sherritt, Inc.*, 216 F.3d 1286, 1293 (11th Cir. 2000) ("[A] foreign parent corporation is not subject to the jurisdiction of a forum state merely because a subsidiary is doing business there.").

because the requirement of "minimum contacts" must be met "as to each defendant over whom a state court exercises jurisdiction." *Rush v. Savchuk,* 444 U.S. 320, 331-32 (1980) (rejecting attempt to attribute one defendant's contacts to another where parties were grouped together as "defending parties"). BMW AG and BMW NA are not one and the same. (Löwa Decl. Decl. ¶ 5). "Defendants" or "BMW" does not refer to a legally cognizable entity, but rather refers to two distinctly separate legal entities. (*Id.*). Jurisdictional allegations made against the "BMW Defendants" do not identify the minimum contacts attributable to *BMW AG.*

In short, Plaintiffs have not alleged any plausible jurisdictional facts to support the exercise of general or specific jurisdiction over foreign defendant BMW AG in any U.S. forum, let alone South Carolina and New Jersey. Because Plaintiffs have not met their burden to even plead a *prima facie* case of personal jurisdiction over BMW AG in the CCAC, this case against BMW AG must be dismissed.

## II.     This Court Lacks General Jurisdiction Over BMW AG.

Even *if* Plaintiffs had pled *some* plausible jurisdictional facts in the CCAC, the concurrently-filed Löwa declaration shows this Court lacks both general and specific jurisdiction over BMW AG. To establish the Court's general jurisdiction over BMW AG, Plaintiffs must demonstrate BMW AG had "systematic and continuous" contacts with New Jersey and South Carolina. *Oliver v. Funai Corp.*, 2015 U.S. Dist. LEXIS 169998, at *17 (D.N.J. Dec. 21, 2015); *Maseng v. Lenox*

*Corp.*, 483 F. Supp. 3d 360, 368-69 (D.S.C. 2020).  But the "systematic and continuous" contacts standard requires a more precise showing that the corporation is "essentially at home" in the forum state to establish general jurisdiction.  *Oliver*, 2015 U.S. Dist. LEXIS 169998, at *19; *Guldenzoph v. Indigo Rd. Hosp. Grp.*, 2024 U.S. Dist. LEXIS 98989, at *27 (D.S.C. June 4, 2024).  Indeed, general jurisdiction refers to a court's power to "hear any and all claims" against an out-of-state entity when its "affiliations with the State are so 'continuous and systematic' as to render [it] essentially at home in the forum state."  *Daimler AG*, 571 U.S. at 139 (citing *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011)).

    BMW AG is not "essentially at home" in New Jersey or South Carolina, and the CCAC alleges no facts to establish general jurisdiction over BMW AG.  BMW NA's presence in New Jersey and BMW MC's presence in South Carolina do not change this.  Indeed, in another case against BMW AG and BMW MC, the plaintiffs there tried to "tie Defendant BMW AG to [BMW MC] … through the 'BMW Group' label" and argued general jurisdiction exists over BMW AG in South Carolina because "BMW AG and its subsidiaries do business as 'BMW Group'" in South Carolina.  *Alexander v. Bayerische Motoren Werke AG*, 2020 U.S. Dist. LEXIS 77183, at *15 (D.S.C. May 1, 2020).  But the court held BMW MC's contacts with the forum state "fail[] to show that Defendant *BMW AG's* contacts with South Carolina are so continuous and systematic as to render it essentially at home in South

Carolina." *Id.* at *15-16 (emphasis added). Similarly in *Kearney v. Bayerische Motoren Werke Aktiengesellschaft*, 2021 U.S. Dist. LEXIS 62356 (D.N.J. Mar. 31, 2021), the plaintiffs argued the New Jersey district court has jurisdiction over BMW AG because of BMW NA's contacts with the forum. *Id.* at *8. The court disagreed and held that "[d]espite the common ownership between BMW NA and BMW AG" there was nothing to suggest that BMW NA's contacts with New Jersey can be imputed to BMW AG. *Id.* at *8-9.

The analysis should be no different here: BMW NA's New Jersey contacts and BMW MC's South Carolina contacts do not dictate the separate jurisdictional analysis that is necessary to establish jurisdiction over BMW AG. Plaintiffs' only BMW AG-specific allegation is that BMW AG "is incorporated under the laws of Germany and maintains its principal place of business in Germany." (CCAC ¶ 80). Of course, this only proves that BMW AG is "at home" in Munich, Germany. *Daimler AG*, 571 U.S. at 137 (holding the paradigmatic fora in which a corporate defendant can be said to be "at home" are its "place of incorporation and principal place of business"); *Oliver*, 2015 U.S. Dist. LEXIS 169998, at *26 ("Plaintiffs cannot show general jurisdiction under the paradigmatic examples noted in *Bauman*" because "[b]y Plaintiffs own account, [Defendant] is a Japanese company with its headquarters in Japan.").

17

Plaintiffs do not plead any other allegations that possibly show BMW AG is "essentially at home" in New Jersey or South Carolina. *Daimler AG*, 571 U.S. at 137.[7] Numerous other district courts have held there is no general jurisdiction over BMW AG under similar facts.[8] Not surprisingly, after *Daimler* many plaintiffs in cases similar to this one have conceded there can be no general jurisdiction over BMW AG.[9]

In short, the CCAC alleges no facts that support the exercise of general jurisdiction over BMW AG. Nor will Plaintiffs be able to adduce any facts showing

---

[7] While BMW NA purchases vehicles from BMW AG, it does so on an "ex works" basis *in Germany*. (Löwa Decl. ¶ 29). Indeed, "[o]nce BMW NA purchase[s] the subject vehicle[s] from BMW AG *in Germany*, BMW AG no longer ha[s] any ownership or control over the subject vehicle[s]." *See Alexander*, 2020 U.S. Dist. LEXIS 77183, at *22. Thus, even BMW NA's purchase of vehicles from BMW AG occurs outside of New Jersey.

[8] *See, e.g.*, *Alexander*, 2020 U.S. Dist. LEXIS 77183, at *16 (holding "[t]here is no evidence in the record that Defendant BMW AG has any substantial contacts with South Carolina, much less the type of continuous and systematic contacts required to support a finding of general jurisdiction"); *In re Takata Airbag Prods. Liab. Litig.*, 2019 U.S. Dist. LEXIS 184046, at *120-21 (S.D. Fla. Sep. 25, 2019) (holding "the Court lacks general jurisdiction because the [] Plaintiffs' Complaint does not allege factual matter demonstrating BMW AG's affiliations with the United States are 'so continuous and systematic as to render [them] essentially at home' in the United States") (citations omitted); *Rose*, 2001 U.S. Dist. LEXIS 24099, at *7 (holding that "BMW AG clearly is not subject to general personal jurisdiction in Pennsylvania by virtue of its contacts with the Commonwealth.").

[9] *See, e.g.*, *Braman Motors, Inc. v. BMW of N. Am., LLC*, 2019 U.S. Dist. LEXIS 174561, at *7 (S.D. Fla. Sep. 30, 2019) (dismissing BMW AG for lack of general and specific jurisdiction and stating that "[b]oth parties agree[d] that personal jurisdiction could only attach through specific jurisdiction"); *Fischer*, 376 F. Supp. 3d at 1182 ("Plaintiff does not argue that defendant [BMW AG] is subject to general jurisdiction in Colorado"); *see also Brown v. BMW of N. Am., LLC*, 2016 U.S. Dist. LEXIS 13209, at *9 (S.D. Ind. Feb. 4, 2016) (plaintiff did "not respond to BMW AG's argument that no general jurisdiction exists.")

that BMW AG is "essentially at home" in New Jersey or South Carolina, given (1) Plaintiffs' admission that BMW AG is a Germany entity with its principal place of business in Germany, and (2) Mr. Löwa's confirmation that BMW AG lacks contacts with New Jersey and South Carolina, let alone any systemic or continuous contacts.

**III.    This Court Also Lacks Specific Jurisdiction Over BMW AG.**

> **1.    *BMW AG Lacks Minimum Contacts With South Carolina or New Jersey for Specific Jurisdiction.***

The CCAC likewise does not provide a sufficient basis for the Court to exercise specific jurisdiction over BMW AG. "Specific jurisdiction is established when a non-resident defendant has 'purposefully directed his activities at a resident of the forum and the injury arises from or is related to those activities.'" *Oliver*, 2015 U.S. Dist. LEXIS 169998, at *20 (citations omitted); *Maseng*, 483 F. Supp. 3d 360, 369-71 (holding same). Plaintiffs must show that (1) BMW AG purposefully directed its activities at South Carolina and New Jersey, (2) this litigation arises out of or relates to those activities, and (3) if the first two requirements are met, that specific jurisdiction comports with traditional notions of fair play and substantial justice. *Chernus v. Logitech, Inc.*, 2018 U.S. Dist. LEXIS 70784, at *13 (D.N.J. Apr. 27, 2018). Plaintiffs have not established any of these elements.

> **(a)    BMW AG Has Not Purposefully Directed Its Activities at South Carolina or New Jersey.**

Plaintiffs do not allege BMW AG engaged in *any* activities in the U.S., South Carolina, or New Jersey, let alone that it purposefully directed its activities there.

The CCAC only contains general assertions that the omnibus "BMW Defendants" "were authorized to conduct and did engage in substantial business within each state and territory of the United States and supplied products within them, including the states of South Carolina and New Jersey, such that they should anticipate being haled into Court there." (CCAC ¶ 82). The Court need not decide whether such summary, collective assertions could suffice to support the exercise of specific jurisdiction over BMW AG; the record shows those assertions are false as to that entity.

BMW NA is the *exclusive* U.S. distributor of BMW and MINI brand cars. It alone distributed, marketed, advertised, warranted, and sold Plaintiffs' and other BMW/MINI cars to U.S. dealerships *when the cars were new*. (Löwa Decl. ¶¶ 14-16, 27, 29). Even Plaintiffs admit *BMW NA* "imports, promotes, advertises, distributes, and sells BMW AG and/or BMW brand cars, trucks, and sport utility vehicles in the United States." (CCAC ¶ 79). The CCAC does not even try to allege BMW AG engaged in activities in South Carolina or New Jersey; indeed, BMW AG did not do so. (*See* Löwa Decl. ¶¶ 7, 9-19, 14-19, 21, 27) (BMW AG has *not* purposefully directed activities in or towards any of the U.S. states and in particular, New Jersey or South Carolina). Specific jurisdiction is lacking where a plaintiff "has not articulated what affirmative step Defendant BMW AG took to purposefully direct any activity towards [the forum state]." *See, e.g.*, *Alexander*, 2020 U.S. Dist.

20

LEXIS 77183, at *22 (observing numerous courts addressed personal jurisdiction over BMW AG and reached the same conclusion) (citing cases).

Even accepting as true Plaintiffs' false allegation that the "BMW Defendants" sold vehicles throughout the U.S. (CCAC ¶¶ 82-83) and attributing this allegation to BMW AG, simply placing products into the stream of commerce is not enough. Rather, the defendant must have done *something more* to purposefully avail itself of the forum's market. *J. McIntyre Mach., Ltd. v. Nicastro*, 564 U.S. 873, 884-86 (2011); *Eaves v. Pirelli Tire, LLC*, 2014 U.S. Dist. LEXIS 64866, at *35-36 (D. Kan. May 12, 2014). The fact that "it may be foreseeable to BMW AG that BMW NA may sell some of its [cars] in [the forum state] is [] insufficient to subject BMW AG to jurisdiction [in the forum state]." *Rose*, 2001 U.S. Dist. LEXIS 24099, at *9 n.4; *see also Asahi*, 480 U.S. at 112 (the mere fact that a corporation has "awareness" its products may end up in a given state does not show an "act purposefully directed toward the forum State.").

Any argument that *BMW NA*'s alleged activities as a distributor of new cars somehow confers specific jurisdiction over BMW AG is unavailing. BMW AG does not control BMW NA's operations (Löwa Decl. ¶ 25), has no day-to-day control of BMW NA's internal affairs (*id.* ¶¶ 25-26), does not control distribution of BMW and MINI brand cars in the U.S. (*id.* ¶ 27), and does not direct BMW NA to sell cars to dealers in any particular state (*id.*). The Court cannot impute BMW NA's

activities to BMW AG to exercise specific jurisdiction over it. *Thornton v. BMW AG*, 2020 U.S. Dist. LEXIS 25168, at *12 (N.D. Ala. Feb. 13, 2020) (holding no specific jurisdiction over BMW AG in AL and rejecting argument that BMW AG "exerts complete control over BMW NA"); *Fischer*, 376 F. Supp. 3d at 1187 (rejecting argument that BMW NA was BMW AG's "sales agent" in CO for purposes of specific jurisdiction where plaintiff had "not made any allegations or presented any evidence showing that defendant [BMW AG] exercised control over BMW NA's distribution efforts in the [U.S.]."); *Rose*, 2001 U.S. Dist. LEXIS 24099, at *8 ("That the companies [BMW NA and BMW AG] may have a close relationship or may coordinate and cooperate…is not sufficient to impute forum contacts.").

> **(b)** **Plaintiffs' Consumer Protection Claims Do Not Arise Out of or Relate to Any BMW AG South Carolina or New Jersey Activities.**

Plaintiffs also have not shown any BMW AG activity in the forum states relate to their *used* car purchases or their consumer protection and warranty causes of action in this litigation. *See, e.g.*, *Remick v. Manfredy*, 238 F.3d 248, 255 (3d Cir. 2001) (requiring a "claim-specific analysis" for personal jurisdiction). The crux of their claims is that their "X5 was ***covered by a written warranty***" (which is issued by BMW NA); "Plaintiff purchased [the] Class Vehicle without knowledge of the Inflator Defect"; through "exposure to BMW's ***advertisements, promotional materials and other public statements***, Plaintiff was aware of BMW's uniform and pervasive

marketing message that its vehicles are safe and dependable, which was material to [Plaintiff's] decision to purchase the Class Vehicle"; and "[a]t no point before Plaintiff purchased [the] Class Vehicle did BMW disclose that it was not safe or dependable, or that it was equipped with an airbag containing a Defective Inflator." (CCAC ¶¶ 162, 190). As such, their causes of action consist of fraud, state consumer protection, and warranty claims. (*Id.* ¶¶ 408-4176). But only BMW NA (not BMW AG) markets, advertises, and warrants new BMW and MINI cars in the U.S. (Löwa Decl. ¶ 27). Plaintiffs have at most established *BMW NA*'s contacts with New Jersey and South Carolina, which (as already noted) does not, by imputation or otherwise, create a basis on which to exercise jurisdiction over BMW AG. *See Rose*, 2001 U.S. Dist. LEXIS 24099, at *8. And even these contacts themselves are tenuous given Plaintiffs purchased *used* BMW vehicles from third party dealerships. (CCAC ¶¶ 162, 190).

Equally dispositive is that neither Plaintiff claims (1) to be a New Jersey resident, (2) to have purchased a car in New Jersey, or (3) the incidents alleged in the CCAC occurred in New Jersey. (*Id.*). The CCAC thus *disclaims* any connection between BMW AG's purported contacts with New Jersey (even *if* there were any) and the purported claims against BMW AG. *Oliver*, 2015 U.S. Dist. LEXIS 169998, at *33-34 (declining to exercise specific jurisdiction over non-resident defendant where plaintiffs were not New Jersey residents, did not purchase product there, or had any other New Jersey related contacts). This conclusion would not change even

if one of the Plaintiffs was from New Jersey. There would still be no specific jurisdiction over BMW AG because Plaintiffs can never show their claims arise out of or relate to BMW AG's purported contacts with the state (which are non-existent).

### 2. The Exercise of Personal Jurisdiction Over BMW AG Would Offend German Sovereignty and Traditional Notions of Fair Play and Substantial Justice.

Regardless of whether Plaintiffs seek to establish general or specific jurisdiction over BMW AG, the CCAC does not satisfy the further requirement of demonstrating that maintenance of this suit would not "offend traditional notions of fair play and substantial justice." *Int'l Shoe Co. v. Washington,* 326 U.S. 310, 316 (1945). The factors this Court must weigh in this regard include: the burden on BMW AG, the interests of New Jersey and South Carolina, and Plaintiffs' interest in obtaining relief. *Asahi*, 480 U.S. at 113 (O'Connor, J.) (plurality opinion). The Supreme Court has urged caution be taken with respect to foreign defendants, warning that "[t]he unique burdens placed upon one who must defend oneself in a foreign legal system should have significant weight in assessing the reasonableness of stretching the long arm of personal jurisdiction over national borders." *Id.* at 114.

The exercise of personal jurisdiction over BMW AG by this Court would offend traditional notions of fair play and substantial justice for two primary reasons. *First*, BMW AG would be forced to shoulder a tremendous burden if required to defend itself half a world away in a state in which it has no contacts, and certainly

none relating to Plaintiffs' claims in this litigation.  All of BMW AG's evidence and witnesses (if any) would be located in Germany.  Distance aside, there are also linguistic, cultural, and jurisprudential differences.   And BMW AG has not anticipated being summoned into this Court or any other U.S. court.

*Second*, exercising jurisdiction over BMW AG would create significant conflict with the sovereignty of Germany in direct contravention of the Supreme Court's admonitions in *Asahi*.  *See* 480 U.S. at 115 ("Great care and reserve should be exercised when extending our notions of personal jurisdiction into the international field.") (citations omitted).  This is why "litigation against an alien defendant requires a higher jurisdictional barrier than litigation against a citizen from a sister state."  *Rano v. Sipa Press, Inc.*, 987 F.2d 580, 588 (9th Cir. 1993).  Indeed, the paucity of allegations specific to BMW AG alone make clear that this Court's exercise of jurisdiction over BMW AG would conflict with the sovereignty of Germany and BMW AG's business decision to maintain its presence in Germany.

## CONCLUSION

For these reasons, BMW AG respectfully requests the Court grant its Motion and dismiss the CCAC in its entirety as against BMW AG for lack of personal jurisdiction.

Dated: December 19, 2024                    Respectfully submitted,

                                            */s/ Eric Y. Kizirian*

                                            LEWIS BRISBOIS BISGAARD &
                                            SMITH, LLP
                                            Eric Y. Kizirian
                                            Zourik Zarifian
                                            633 West 5th Street, Suite 4000
                                            Los Angeles, CA 90071
                                            (213) 250-1800
                                            Fax: (213) 250-7900
                                            eric.kizirian@lewisbrisbois.com
                                            zourik.zarifian@lewisbrisbois.com

                                            *Counsel (Specially Appearing) for
                                            Defendant Bayerische Motoren
                                            Werke Aktiengesellschaft*

## <u>CERTIFICATE OF COMPLIANCE WITH LOCAL RULE 5.1</u>

The undersigned hereby certifies that this filing was prepared using one of the font and point selections approved by this Court in Local Rule 5.1. Specifically, Times New Roman font was used in 14 point.

Dated: December 19, 2024             Respectfully submitted,

                            */s/ Eric Y. Kizirian*

                            LEWIS BRISBOIS BISGAARD &
                            SMITH, LLP
                            Eric Y. Kizirian
                            Zourik Zarifian
                            633 West 5th Street, Suite 4000
                            Los Angeles, CA 90071
                            (213) 250-1800
                            Fax: (213) 250-7900
                            eric.kizirian@lewisbrisbois.com
                            zourik.zarifian@lewisbrisbois.com

                            *Counsel (Specially Appearing) for*
                            *Defendant Bayerische Motoren*
                            *Werke Aktiengesellschaft*