# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
### ATLANTA DIVISION

IN RE: ARC AIRBAG INFLATORS
PRODUCTS LIABILITY
LITIGATION

MDL No. 3051
Case No. 1:22-md-03051-ELR

**PLAINTIFFS' MEMORANDUM OF LAW IN OPPOSITION TO
DEFENDANT ZF FRIEDRICHSHAFEN AG'S MOTION TO DISMISS
<u>PLAINTIFFS' CONSOLIDATED CLASS ACTION COMPLAINT</u>**

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ............................................................1

RELEVANT FACTUAL AND PROCEDURAL BACKGROUND .......................2

ARGUMENT ......................................................................................3

I.  The Court Has Specific Personal Jurisdiction over ZF Germany. ................4

    A.  Plaintiffs' Claims Satisfy Michigan's Long-Arm Statute...................4

        1.  Section 600.715(1): Plaintiffs' claims arise out of "any business" ZF Germany transacted in Michigan.......................5

        2.  Section 600.715(2): Plaintiffs' claims also arise out of tortious acts and consequences caused by ZF Germany............6

    B.  Exercising Jurisdiction Over ZF Germany Comports with Constitutional Due Process. ....................................................8

        1.  Plaintiffs' claims arise out of or relate to ZF Germany's contacts with Michigan. ................................................8

        2.  ZF Germany purposefully availed itself of conducting business in Michigan.................................................10

        3.  The exercise of personal jurisdiction over ZF Germany is reasonable.................................................................12

II.  Exercising Personal Jurisdiction Is Also Proper Because Plaintiffs Sufficiently Allege the Domestic ZF Defendants Are ZF Germany's Alter Egos. .................................................................................13

    A.  The Domestic ZF Defendants Are Mere Instrumentalities of ZF Germany. ......................................................................14

    B.  ZF Germany Used Its Domestic Subsidiaries to Commit a Fraud or Wrong. ...............................................................19

    C.  Plaintiffs Allege an Unjust Loss or Injury. .......................20

III.  In the Alternative, the Court Should Hold This Motion in Abeyance and Permit Jurisdictional Discovery............................................21

CONCLUSION ................................................................................23

# TABLE OF AUTHORITIES

**Page**

## Cases

*ACLU of Fla., Inc. v. City of Sarasota*,
  859 F.3d 1337 (11th Cir. 2017) .........................................................21

*Alexander Associates, Inc. v. FCMP, Inc.*,
  2012 WL 1033464 (E.D. Mich. Mar. 27, 2012)................................18

*Anwar v. Dow Chemical Co.*,
  2016 WL 5070269 (E.D. Mich. Sept. 20, 2016) ...............................15

*Avent v. Pirrello*,
  2017 WL 1062372 (N.D. Ga. Mar. 20, 2017) ...................................13

*Carrier Corp. v. Outokumpu Ojy*,
  673 F.3d 430 (6th Cir. 2012) .......................................................4, 13

*Conley v. MLT, Inc.*,
  2012 WL 1893509 (E.D. Mich. May 23, 2012) ................................16

*DAGS II, LLC v. Huntington Nat'l Bank*,
  616 F. App'x 830 (6th Cir. 2015)...............................................15, 20

*Doherty-Heinze v. Chrisley*,
  2021 WL 12149533 (N.D. Ga. Dec. 21, 2021) .................................21

*Eaton v. Dorchester Dev., Inc.*,
  692 F.2d 727 (11th Cir. 1982) .........................................................22

*Ford Motor Co. v. Mont. Eighth Jud. Dist.*,
  592 U.S. 351 (2021)...........................................................................8

*Franklin Cap. Funding, LLC v. Austin Bus. Fin., LLC*,
  676 F. Supp. 3d 515 (E.D. Mich. 2023) ...........................................16

*Glenn v. TPI Petroleum, Inc.*,
  854 N.W.2d 509 (Mich. Ct. App. 2014)............................................19

*Indusource, Inc. v. Sandvik Tooling Fr. S.A.S.*,
  2016 WL 6216003 (E.D. Mich. Oct. 25, 2016)..................4, 13, 16, 17

*J.A. Besteman Co. v. Carter's Inc.*,
  2008 WL 2037289 (W.D. Mich. May 12, 2008)................................19

# TABLE OF AUTHORITIES
## (continued)

Page

*Jeffrey v. Rapid Am. Corp.*,
  529 N.W.2d 644 (Mich. 1995)................................................................10, 11, 12

*In re Auto. Parts Antitrust Litig.*,
  2014 WL 3671031 (E.D. Mich. July 23, 2014)..................................................18

*In re Automotive Parts Antitrust Litigation*,
  2013 WL 2456610 (E.D. Mich. June 6, 2013) ...........................................17, 18

*In re JUUL Labs, Inc., Mktg., Sales Pracs. & Prods. Liab. Litig.*,
  497 F. Supp. 3d 552 (N.D. Cal. 2020)..................................................................4

*In re Takata Airbag Prods. Liab. Litig.*,
  396 F. Supp. 3d 1101 (S.D. Fla. 2019).................................................................3

*Louis Vuitton Malletier, S.A. v. Mosseri*,
  736 F.3d 1339 (11th Cir. 2013) ..............................................................*passim*

*Luc v. Korean Air Lines Co.*,
  2019 WL 7824584 (N.D. Ga. June 4, 2019).......................................................22

*Nationwide Motorist Ass'n of Mich., Inc. v. Nationwide Motorist Ass'n, Inc.*,
  244 F. Supp. 490 (W.D. Mich. 1965) ...................................................................6

*Posner v. Essex Ins. Co.*,
  178 F.3d 1209 (11th Cir. 1999) ............................................................................9

*Schneider v. Linkfield*,
  198 N.W.2d 834 (Mich. Ct. App. 1972)................................................................4

*Seiz v. Quirk*,
  2013 WL 12290850 (N.D. Ga. Jan. 3, 2013).....................................................22

*Servo Kinetics, Inc. v. Tokyo Precision Instrs. Co.*,
  475 F.3d 783 (6th Cir. 2007) ................................................................14, 19, 20

*SkyHop Techs., Inc. v. Narra*,
  58 F.4th 1211 (11th Cir. 2023) ...............................................................8, 10, 12

*Smith v. Amada Machine Tools America Inc.*,
  2017 WL 4339328 (E.D. Mich. June 12, 2017) ................................................15

**TABLE OF AUTHORITIES**
**(continued)**

**Page**

*Sullivan v. LG Chem, Ltd.*,
    79 F.4th 651 (6th Cir. 2023) ..........................................................................*passim*

**Statutes**

Mich. Comp. Laws § 600.715.....................................................................................4

Mich. Comp. Laws § 600.715(1) ...........................................................................4, 6

Mich. Comp. Laws § 600.715(2) ...........................................................................6, 7

**Court Rules**

Fed. R. Civ. P. 12(b)(2)............................................................................................16

## **PRELIMINARY STATEMENT**

Plaintiffs allege foreign Defendant ZF Friedrichshafen AG ("ZF Germany"),[1] along with four domestic subsidiaries (the "Domestic ZF Defendants," and together with ZF Germany, the "ZF Defendants"), designed and manufactured airbag modules that contain defective ARC inflators. Plaintiffs allege the ZF Defendants worked closely with ARC to develop the inflators; knew about actual inflator ruptures in testing situations and in the field; and understood the over-pressurization danger posed by the inflators' design and the attendant risks due to the inflators' use of volatile ammonium nitrate. Plaintiffs also allege ZF Germany, a foreign corporation, integrated its operations closely with those of its domestic subsidiaries.

Given this pattern of active control of its domestic subsidiaries and conduct relevant to Plaintiffs' claims, ZF Germany is subject to this Court's personal jurisdiction. ZF Germany has sufficient ties with Michigan, the relevant state, and the Domestic ZF Defendants are alter egos of their foreign parent. Even if the Court were to determine Plaintiffs' allegations do not make out a prima facie case of personal jurisdiction over ZF Germany, the facts are sufficient to warrant

---

[1] While the motion refers to the defendant as "ZF Friedrichshafen," Plaintiffs retain the designation used in the Consolidated Class Action Complaint ("Complaint") (Docs. 157, 157-1), as with other capitalized terms. Additionally, unless otherwise indicated, "¶ __" refers to paragraphs of the Complaint, all emphasis has been added, and all internal citations and quotation marks have been omitted.

jurisdictional discovery. Plaintiffs accordingly request that the Court deny the motion or, in the alternative, hold the motion in abeyance and grant Plaintiffs jurisdictional discovery into ZF Germany's relationship with its domestic subsidiaries.

## **RELEVANT FACTUAL AND PROCEDURAL BACKGROUND**

ZF Germany is a German corporation headquartered in Germany. ¶ 58. Each of the four Domestic ZF Defendants—ZF Electronics USA, ZF Passive Safety USA, ZF Automotive USA, and ZF TRW Corp.—are headquartered in Michigan. ¶¶ 53-56.

ZF Germany is the parent owner of the four Domestic ZF Defendants. ¶ 58. ZF Germany acquired Michigan-based ZF TRW Corp. in 2015. ¶ 66. ZF TRW Corp. wholly owns Michigan-based ZF Automotive USA, and ZF Automotive USA wholly owns Michigan-based ZF Electronics USA and ZF Passive Safety USA. ¶¶ 55-56. As specified below, ZF Germany controls the Domestic ZF Defendants' corporate activities in the United States, including in Michigan. ¶¶ 53-56, 58, 62. The ZF Defendants, like the other Airbag Module Defendants, worked with ARC to develop inflators to their (and the Automaker Defendants') specifications. ¶¶ 264-66.

The ZF Defendants were also involved in testing and quality control processes for the inflators and their modules, and communicated with ARC and the

Automakers about the results, including ruptures. For instance, on September 22, 2017, an ARC inflator installed in a 2011 Chevrolet Malibu ruptured during a crash. ¶ 350. The airbag module was manufactured by TRW Automotive Holdings Corp., which has since been acquired by ZF Germany. *Id.*

The Domestic ZF Defendants appeared in this action and, along with the other Airbag Module Defendants, moved to dismiss the Complaint for failure to state a claim. Doc. 178. Plaintiffs, meanwhile, served ZF Germany through the Hague Service Convention, which was effectuated on November 4, 2024. Doc. 279-1 ("MTD Br.") 1 n.2. ZF Germany moved to dismiss for lack of personal jurisdiction on November 25, 2024. Doc. 279.

## ARGUMENT

Plaintiffs have met their burden of demonstrating "sufficient facts to make out a prima facie case of" personal jurisdiction over ZF Germany. *Louis Vuitton Malletier, S.A. v. Mosseri*, 736 F.3d 1339, 1350 (11th Cir. 2013). Plaintiffs' allegations sufficiently demonstrate that specific jurisdiction over ZF Germany exists under the Michigan long-arm statute and that exercising jurisdiction over ZF Germany comports with the Fourteenth Amendment's Due Process Clause. *Sullivan v. LG Chem, Ltd.*, 79 F.4th 651, 664 (6th Cir. 2023).[2] Alternatively,

---

[2] Michigan law applies here because Michigan is the transferor forum and this transferee Court is sitting in diversity. *See In re Takata Airbag Prods. Liab. Litig.*, 396 F. Supp. 3d 1101, 1137 (S.D. Fla. 2019) ("[F]ollowing transfer under Section

jurisdiction is proper under an "alter ego" theory because ZF Germany "exerts so much control over" the Domestic ZF Defendants that they "do not exist as separate entities but are one and the same for purposes of jurisdiction." *Indusource, Inc. v. Sandvik Tooling Fr. S.A.S.*, 2016 WL 6216003, at *4 (E.D. Mich. Oct. 25, 2016) (quoting *Carrier Corp. v. Outokumpu Ojy*, 673 F.3d 430, 450–51 (6th Cir. 2012)).

## I.    The Court Has Specific Personal Jurisdiction over ZF Germany.

### A.    Plaintiffs' Claims Satisfy Michigan's Long-Arm Statute.

Michigan's long-arm statute "allows courts . . . to exercise personal jurisdiction over a defendant when a 'plaintiff shows that their cause of action arose out of one of the relationships enumerated in the statute.'" *Sullivan*, 79 F.4th at 667 (alterations adopted) (quoting *Schneider v. Linkfield*, 198 N.W.2d 834, 835-36 (Mich. Ct. App. 1972)); *see* Mich. Comp. Laws § 600.715. At least two subsections of § 600.715 support the exercise of personal jurisdiction over ZF Germany.

---

1407, the transferee judge has all the jurisdiction and powers over pretrial proceedings in the actions transferred to him that the transferor judge would have had in the absence of transfer."). In determining whether exercising personal jurisdiction over ZF Germany satisfies constitutional due process, however, the Court applies the law as articulated by the Eleventh Circuit. *In re JUUL Labs, Inc., Mktg., Sales Pracs. & Prods. Liab. Litig.*, 497 F. Supp. 3d 552, 674 (N.D. Cal. 2020) (stating that a court analyzing "federal due process" with respect to personal jurisdiction "will look to its own circuit as the source for federal law").

### 1.    Section 600.715(1): Plaintiffs' claims arise out of "any business" ZF Germany transacted in Michigan.

Section 600.715(1) is satisfied because ZF Germany engages in the "transaction of any business within the state." Mich. Comp. Laws § 600.715(1). Plaintiffs make extensive allegations that ZF Germany transacts business in Michigan. Its CEO Stefan Sommer publicly affirmed in an interview that ZF Germany was realigning its North American activities and bringing its U.S. subsidiaries together "under one roof" in the former TRW headquarters in Livonia, Michigan. ¶¶ 70-71.

Similarly, ZF Germany made concerted efforts to have the public and its employees identify itself and the Domestic ZF Defendants "as a combined company under ZF." ¶ 71. ZF Germany's efforts to maintain voting power and appoint board members to the boards of the Domestic ZF Defendants reflect its public statements about ZF and the Domestic ZF Defendants acting as a "single, unified entity" and "one company." ¶¶ 58, 65, 67, 71. For example, ZF Germany appointed divisions to manage its business in Michigan, in particular the "Active & Passive Safety Technology Division," to ensure top quality. ¶ 69. ZF Germany publicly acknowledged it merged ZF and ZF TRW's compliance areas to ensure "the company's long-term success." ¶ 73. ZF Germany, along with the ZF Domestic Defendants, was thus "actively involved in" monitoring the global field incidents involving the Defective Inflators rupturing in the field, the ZF airbag

modules' purported compliance with safety standards in the United States, and the legal risks arising from their failure to comply—all of which occurred in Michigan. ¶ 75.

These allegations are far from "generic and irrelevant" (MTD Br. 9). Further, the statutory provision "is broad, and the word 'any' means just what it says." *Sullivan*, 79 F.4th at 667 (alteration adopted). "Thus, when a defendant conducts even the slightest act of business in Michigan, a sufficient transaction of business occurs under § 600.715(1)." *Id.* (alteration adopted). Because Plaintiffs' claims indisputably arise out of ZF Germany's alleged concealment of material safety effects, which occurred in connection with business it conducted in Michigan with its Michigan-based subsidiaries, this subsection of the long-arm statute is satisfied.

### 2. Section 600.715(2): Plaintiffs' claims also arise out of tortious acts and consequences caused by ZF Germany.

Additionally, § 600.715(2) is satisfied because ZF Germany "[did] or caus[ed] any act to be done, or consequences to occur, in the state resulting in an action for tort." Mich. Comp. Laws § 600.715(2). While ZF Germany contends "none of the 115 named Plaintiffs claim that they suffered any injury *in Michigan* because of ZF [Germany]'s alleged conduct" (MTD Br. 10), that is both factually incorrect and the wrong inquiry.

Where, as here, the tort in question is fraud, jurisdiction lies if the allegedly fraudulent activities "occur[ed] in Michigan." *Nationwide Motorist Ass'n of Mich., Inc. v. Nationwide Motorist Ass'n, Inc.*, 244 F. Supp. 490, 493 (W.D. Mich. 1965). ZF Germany's proposed rule, by contrast, contravenes § 600.715(2), which is not limited "to instances in which a defendant causes a consequence to occur in Michigan that results in a tort action only when the defendant has some role in causing its product to be used in Michigan." *Sullivan*, 79 F.4th at 669. In other words, that no Plaintiff "alleges that they reside in or purchased their vehicle" that contained a Defective Inflator installed by the ZF Defendants "in Michigan" (MTD Br. 10) is irrelevant. Plaintiffs allege ZF Germany participated in a fraud that occurred in part in Michigan, causing harm to Plaintiffs and other Class Members. That is all § 600.715(2) requires.

Even if § 600.715(2) required a Michigan-based plaintiff to have suffered harm in Michigan, that occurred here. There are five named Plaintiffs from Michigan and the Complaint asserts claims against ZF Germany under Michigan law. ¶¶ 145, 147, 161, 233, 237; *see also* ¶¶ 2103, 2121, 2137. Although each Plaintiff does not yet know which Airbag Module Defendant manufactured each airbag module, that fact should be revealed with simple discovery—which Plaintiffs have not yet been permitted to take. At this stage, Plaintiffs sufficiently

allege they suffered harm in Michigan caused by concealments and other unjust

actions by ZF Germany and its subsidiaries in Michigan.

**B.    Exercising Jurisdiction Over ZF Germany Comports with Constitutional Due Process.**

The exercise of jurisdiction over ZF Germany comports with due process. In

making this determination, courts examine three factors:

> (1) whether the plaintiff's claims arise out of or relate to at least one of the defendant's contacts with the forum; (2) whether the nonresident defendant purposefully availed himself of the privilege of conducting activities within the forum state, thus invoking the benefit of the forum state's laws; and (3) whether the exercise of personal jurisdiction comports with traditional notions of fair play and substantial justice.

*Louis Vuitton Malletier*, 736 F.3d at 1355 (alteration adopted). Although Plaintiffs

bear the burden of establishing the first two requirements, ZF Germany must

"make a compelling case" that the third requirement is not satisfied. *Id.* All three

factors are satisfied here.

**1.    Plaintiffs' claims arise out of or relate to ZF Germany's contacts with Michigan.**

The first requirement is satisfied by even one "activity or . . . occurrence that

takes place in the forum State and is therefore subject to the State's regulation."

*SkyHop Techs., Inc. v. Narra*, 58 F.4th 1211, 1229 (11th Cir. 2023) (quoting *Ford*

*Motor Co. v. Mont. Eighth Jud. Dist.*, 592 U.S. 351, 359–60 (2021)). There are

many such connections between ZF Germany and Michigan. As discussed above,

these include ZF Germany's exercise of control over the Domestic ZF Defendants'

leadership and policies (¶¶ 64-68, 73-74), its management of the Domestic ZF

Defendants' "Active & Passive Safety Technology Division" (¶ 69), and ZF

Germany's decision to integrate itself with the Domestic ZF Defendants and hold

themselves out as a "single, unified entity" and "one company" (¶¶ 69-72). These

activities culminated in the ZF Defendants' Michigan-based concealment of

material safety information from Plaintiffs, some of whom were located and

injured in Michigan. ¶¶ 75-76, 145, 147, 161, 233, 237, 2103, 2121, 2137.

ZF Germany contends it "does not market, sell, lease, distribute, warrant,

design, or manufacture any products anywhere in the U.S., including in Michigan."

MTD Br. 12 (citing Decl. of Kelly Laliberte (Doc. 279-2) ¶ 14). ZF Germany

cannot escape jurisdiction through "conclusory" denials that it did not engage in

"any . . . actions that would bring [it] within the ambit of the [Michigan] long-arm

statute." *Posner v. Essex Ins. Co.*, 178 F.3d 1209, 1215 (11th Cir. 1999).

Regardless, this response is misdirection. Plaintiffs allege ZF Germany's pervasive

control and supervision of its domestic subsidiaries obligated it to disclose material

safety information about the Defective Inflators the ZF Defendants installed in

Class Vehicles. ¶ 63 ("ZF Germany reviews and approves the statements its

domestic subsidiaries make to NHTSA regarding airbag module design and

failure."); ¶ 64 ("ZF Germany is a parent company that exerts substantial control

over its U.S. subsidiaries headquartered in Michigan . . . ."). And Plaintiffs allege

ZF Germany assisted in the sale within Michigan of airbag modules that contained Defective Inflators. ¶ 62. ZF Germany's declaration thus does not "controvert[]" anything in the Complaint (MTD Br. 12).

ZF Germany also claims "the only [ZF] airbag modules equipped with ARC inflators were all manufactured and sold for vehicles in model-years 2008 through 2012" but ZF Germany "was not affiliated with ZF TRW Corp. (then known as TRW) and its subsidiaries until May 2015." *Id.* This assertion, even if true, is meaningless if ZF Germany assumed the liabilities of the entities it purchased. *Jeffrey v. Rapid Am. Corp.*, 529 N.W.2d 644, 655 (Mich. 1995) (this prong of due-process analysis "is easily disposed of" where allegations relate to predecessor company's "distribution of asbestos-containing products in Michigan"). Further, discovery in this case has not opened, so Plaintiffs have been unable to test the veracity of ZF Germany's assertions.

### 2. ZF Germany purposefully availed itself of conducting business in Michigan.

In intentional-tort cases like this, there are two ways to determine whether purposeful availment occurred: "the effects test and the traditional minimum-contacts test." *SkyHop*, 58 F.4th at 1230. While meeting either is sufficient, they are both satisfied here. *Id.*

The effects test is satisfied because ZF Germany committed a "single tortious act in the forum state." *Id.* Following its merger with TRW in 2015, ZF

Germany assumed control over the Domestic ZF Defendants, which are still headquartered in Michigan. ¶¶ 53-56. At ZF Germany's direction, the Domestic ZF Defendants deliberately delivered products such as airbag modules, which could be purchased by consumers, including those in Michigan. ¶¶ 61-62. These Michigan-based activities, combined with ZF Germany's failure to disclose the Inflator Defect, give rise to its liability for consumer-protection violations and consumer fraud.

The purposeful availment test is also satisfied. *First*, ZF Germany's control over its Michigan-based subsidiaries, including its decision to unify the operations of the ZF Defendants in Michigan, is "related to [Plaintiffs'] cause[s] of action." *Louis Vuitton Malletier*, 736 F.3d at 1357. *Second*, Plaintiffs' claims "involve some act by which [ZF Germany] purposefully availed [it]self of the privileges of doing business within the forum," *id.*, specifically its assumption of TRW Corp.'s liabilities and the sale of vehicles containing ZF-manufactured airbag modules to Michigan residents. *See Jeffrey*, 529 N.W.2d at 655 (defendant "purposefully availed itself of the privilege of conducting activities in Michigan through its assumption of [the predecessor entity]'s assets and liabilities"). *Third*, ZF Germany's contacts with Michigan "are such that [it] should reasonably anticipate being haled into court in the forum." *Louis Vuitton Malletier*, 736 F.3d at 1357. Not only did ZF Germany purchase the assets and liabilities of a Michigan-based

company, *Jeffrey*, 529 N.W.2d at 655, but it actively carries out business in Michigan that relates to the subject matter of this action. ¶¶ 62-71.

**3.    The exercise of personal jurisdiction over ZF Germany is reasonable.**

In determining whether exercising jurisdiction comports with traditional notions of fair plan and substantial justice, courts assess (1) "the burden on the defendant"; (2) "the forum's interest in adjudicating the dispute"; (3) "the plaintiff's interest in obtaining convenient and effective relief"; and (4) "the judicial system's interest in resolving the dispute." *SkyHop*, 58 F.4th at 1231. ZF Germany "bears the burden of making 'a compelling case' that the exercise of jurisdiction is improper." *Id.* (quoting *Louis Vuitton Malletier*, 736 F.3d at 1355).

ZF Germany does not address any of these factors. That failure, by itself, means ZF Germany cannot make a "compelling case" that it would not be reasonable for the Court to exercise personal jurisdiction over the company. *Id.*

Regardless, these factors are easily satisfied here. *First*, there is no burden on ZF Germany to appear in the forum given its extensive Michigan operations. *Second*, Michigan—and, by extension, this Court as the transferee court—has a strong interest in adjudicating claims against ZF Germany for injuries caused to Plaintiffs by products sold in Michigan. *See Sullivan*, 79 F.4th at 674 ("Michigan . . . has a strong interest in providing a forum for lawsuits relating to their residents' injuries allegedly caused by these products."). *Third*, Plaintiffs, who include

Michigan residents, have "an undeniable interest in litigating the case in [their]
chosen forum." *Louis Vuitton Malletier*, 736 F.3d at 1358. *Finally*, the forum state
has an unrebutted "interest in resolving the dispute" given ZF Germany's extensive
ties to Michigan, the presence of Michigan plaintiffs in this litigation, and the
absence of any "fundamental social policies that counsel against [the court]
exercising jurisdiction." *Avent v. Pirrello*, 2017 WL 1062372, at *5 (N.D. Ga. Mar.
20, 2017) (Thrash, J.).

## II.    Exercising Personal Jurisdiction Is Also Proper Because Plaintiffs Sufficiently Allege the Domestic ZF Defendants Are ZF Germany's Alter Egos.

Even if ZF Germany were not subject to personal jurisdiction under
Michigan's long-arm statute, this Court could still exercise jurisdiction because ZF
Germany "exerts so much control over [the Domestic ZF Defendants] that [they]
do not exist as separate entities but are one and the same for the purpose of
jurisdiction." *Indusource*, 2016 WL 6216003, at *4 (quoting *Carrier Corp.*, 673
F.3d at 450-51). Michigan law prescribes a three-part inquiry: (1) the domestic
corporation must be "a mere instrumentality" of its foreign parent; (2) the foreign
parent must have used its domestic affiliate "to commit a fraud or wrong"; and (3)
the plaintiff must have "suffered an unjust loss." *Id.* The analysis "is highly
dependent on the equities of the situation, and the inquiry tends to be intensively

fact-driven." *Servo Kinetics, Inc. v. Tokyo Precision Instrs. Co.*, 475 F.3d 783, 798

(6th Cir. 2007). Here, all three aspects of the alter-ego test are satisfied.

## A. The Domestic ZF Defendants Are Mere Instrumentalities of ZF Germany.

Plaintiffs' allegations demonstrate the Domestic ZF Defendants are "mere

instrumentalities" of their foreign parent, which subjects ZF Germany to personal

jurisdiction in this Court. Numerous allegations in the Complaint support

exercising jurisdiction on this basis.

*First*, ZF Germany "exercise[s] significant control over the day-to-day

operations of the Domestic ZF Defendants in the United States." ¶ 68. Among

other things, ZF Germany regularly appoints executives and board members for all

the Domestic ZF Defendants. ¶¶ 66–67. "The overlap between . . . directors" of a

parent and its subsidiary is "relevant to the question of whether [the subsidiary]

was a mere instrumentality." *Servo*, 475 F.3d at 799. Shortly after ZF Germany

acquired TRW Corporation in 2015, ZF Germany appointed Dr. Franz Kleiner, a

member of ZF Germany's Board of Management, to run its new domestic

subsidiary. ¶ 67. After Dr. Kleiner retired, ZF Germany appointed Dr. Martin

Fischer to replace him both on the ZF Board of Management and with respect to

his day-to-day responsibilities for the Domestic ZF Defendants. ¶ 67.

Although a member of ZF Germany's Board of Management, Dr. Fischer

continues to serve as the president of ZF North America, Inc. and is permanently

based in Michigan, where the Domestic ZF Defendants are all located. ¶ 68. ZF

Germany thus "appoints its officers as officers of" its domestic subsidiaries, which

suffices to pierce the corporate veil under Michigan law. *DAGS II, LLC v.

Huntington Nat'l Bank*, 616 F. App'x 830, 838 (6th Cir. 2015).

 ZF Germany emphasizes that ZF North America, Inc. is not a party to this

litigation. But Plaintiffs allege Dr. Fischer played a day-to-day role in the

operations of ZF Germany and the Domestic ZF Defendants, who *are* parties to

these proceedings. ¶ 67. Further, ZF North America, Inc. directly or indirectly

controls all of the Domestic ZF Defendants. ECF No. 128 (Corporate Disclosure

Statement) at 2-3.

 Plaintiffs' extensive and specific allegations are a far cry from *Smith v.

Amada Machine Tools America Inc.*, on which ZF Germany relies. The alleged

overlap there involved only "a few of many officers and directors" over a period of

"several decades." 2017 WL 4339328, at *6 (E.D. Mich. June 12, 2017).[3]

 *Second*, ZF Germany and its domestic subsidiaries "share[] the same office

space." *DAGS II*, 616 F. App'x at 838. In 2016, shortly after ZF Germany acquired

TRW Corporation, the parent company's then-CEO stated the combined entity was

---

[3] In the other case ZF Germany cites, *Anwar v. Dow Chemical Co.*, plaintiff
alleged merely that "the entities share[d] common board members and managers."
2016 WL 5070269, at *4 (E.D. Mich. Sept. 20, 2016). As set out below, other facts
in this case demonstrate the Domestic ZF Defendants are mere instrumentalities of
ZF Germany.

realigning its North American activities and bringing the businesses together "under one roof" in the former TRW headquarters in Livonia, Michigan. ¶ 70. Contrary to ZF Germany's contention, this allegation is not limited to a claim that *the Domestic ZF Defendants* share office space. Rather, Plaintiffs allege *ZF Germany and the Domestic ZF Defendants* "operate at the same location[ and] work in the same industry," which supports a finding of alter-ego status. *Franklin Cap. Funding, LLC v. Austin Bus. Fin., LLC*, 676 F. Supp. 3d 515, 527 (E.D. Mich. 2023) (alterations adopted). ZF Germany's observation that its "headquarters are in Germany, while each Domestic ZF/TRW Defendant is headquartered in Michigan" (MTD Br. 20), essentially boils down to a claim that alter-ego liability can *never* attach to foreign corporations because they are based abroad. But the law allows for alter-ego jurisdiction even where the parent is based overseas. *See, e.g.*, *Indusource*, 2016 WL 6216003, at *1, *6 (denying Rule 12(b)(2) motion where foreign parent was based in Sweden and domestic subsidiary was based in New Jersey); *Conley v. MLT, Inc.*, 2012 WL 1893509, at *1, *4 (E.D. Mich. May 23, 2012) (same, for foreign parent based in Spain and domestic subsidiary based in Florida).

*Third*, ZF Germany "determines the policies and decisions of" the Domestic ZF Defendants. *Indusource*, 2016 WL 6216003, at *5. In 2015, ZF Germany touted its purchase of TRW as "generating new synergies through the integration

of ZF TRW." ¶ 69. The company added: "Knowledge sharing and the further development of common standards will improve the quality of our products even further. Materials procurement of the two companies is also being merged—with positive repercussions for the cost structure." *Id.* In the years since, ZF Germany has regularly described itself and its subsidiaries as a single, unified entity. ¶ 71. Dr. Kleiner said in 2017, "Now we believe the public, and employees, understand and identify with the organization as a combined company under ZF." *Id.* ZF Germany CEO Wolf-Henning Scheider said much the same in 2018: "An important operational highlight to mention is the integration of TRW into the ZF Group. . . . ZF is now 'one company.'" *Id.*

ZF Germany also directs the policies of the Domestic ZF Defendants. For instance, in 2018 ZF Germany issued a companywide compliance guide that governs the "standards of legal and ethical conduct" across all the Domestic ZF Defendants. ¶ 74. ZF Germany is also responsible for enforcing those standards. *Id.*

ZF Germany offers the conclusory assertion that these facts do "not suggest that ZF [Germany]'s relationship with its indirect subsidiaries 'exceed[s] a typical corporation relationship.'" MTD Br. 22 (second alteration in original). In *In re Automotive Parts Antitrust Litigation*, on which ZF Germany relies, there was no evidence the parent company "supervised management, controlled the budget,

rendered decisions on a subsidiary's behalf, and invaded corporate boundaries."
2013 WL 2456610, at *5 (E.D. Mich. June 6, 2013). This case, on the other hand,
checks all of those boxes. *E.g.*, ¶ 68 ("Following the May 15, 2015 acquisition of
ZF TRW Corp., ZF Germany exercised significant control over the day-to-day
operations of the Domestic ZF Defendants in the United States."); ¶ 73 ("ZF
Germany controls and develops the policies for the senior executives of the merged
compliance, human resources, and governance functions of all the Domestic ZF
Defendants.").

Further, while ZF Germany attempts to minimize the fact that it and the
Domestic ZF Defendants "held themselves out as one entity," it acknowledges
Plaintiffs' allegations "suggest a common enterprise." MTD Br. 22-23. This is a
significant concession given the well-settled principle that when a parent holds
itself and its subsidiaries out "as a single enterprise with overlapping executives,"
the court may pierce the corporate veil. *In re Auto. Parts Antitrust Litig.*, 2014 WL
3671031, at *3 (E.D. Mich. July 23, 2014). In *Alexander Associates, Inc. v. FCMP,
Inc.*, by contrast, there was no evidence that the domestic entity even "*was* the
subsidiary of" the foreign companies. 2012 WL 1033464, at *18 (E.D. Mich. Mar.
27, 2012). ZF Germany does not dispute that the Domestic ZF Defendants are its
subsidiaries, but simply notes these entities may be "indirect subsidiaries." MTD
Br. 23. This distinction is of no legal consequence given the particularized

allegations demonstrating the close relationship between ZF Germany and the Domestic ZF Defendants, as well as ZF Germany's acknowledgment that it controls those domestic entities. ¶ 64.

### B.    ZF Germany Used Its Domestic Subsidiaries to Commit a Fraud or Wrong.

Plaintiffs also satisfy the second element of the alter-ego test because they allege ZF Germany used its domestic subsidiaries to commit a "fraud or wrong." Plaintiffs' claims of fraud and consumer protection plainly "constitute a 'fraud or wrong' for the purpose of veil-piercing liability." *Servo*, 475 F.3d at 799-800; *see also J.A. Besteman Co. v. Carter's Inc.*, 2008 WL 2037289, at *7 (W.D. Mich. May 12, 2008) (fraud-or-wrong element satisfied where defendant allegedly engaged in "deceptive" conduct).

ZF Germany relies almost exclusively on a case where the Michigan Court of Appeals concluded veil piercing "is appropriate only when a parent company is abusing its corporate shield for its own purposes." *Glenn v. TPI Petroleum, Inc.*, 854 N.W.2d 509, 521 (Mich. Ct. App. 2014). But in *Glenn*, there was no evidence that the defendant "engaged or participated in any wrongful act," and "[g]iven the absence of any wrongful conduct . . . , there [was] no justification to pierce the corporate veil." *Id.* at 520-21. That is much unlike this case, where Plaintiffs allege that ZF Germany "was actively involved in monitoring the global field incidents involving ARC's Defective Inflators and whether the ZF airbag modules complied

with safety standards in the United States and the legal risks arising therefrom,"

and that ZF Germany "controlled all ZF-branded company communications

relating to the airbag modules in the Class Vehicles." ¶¶ 75-76.[4]

### C.    Plaintiffs Allege an Unjust Loss or Injury.

ZF Germany does not address the final element of the alter-ego test: whether

Plaintiffs suffered an unjust loss or injury. Its silence is dispositive. *See Servo*, 475

F.3d at 800 ("The parties do not seriously contest the issue of whether an unjust

loss has occurred. Accordingly, we hold that if a reasonable jury finds that the

other elements of veil-piercing liability are satisfied, the fact that [plaintiff]

suffered losses from [defendant's] breach of contract is sufficient to constitute an

unjust loss for the purpose of veil-piercing liability."). In any event, Plaintiffs

sufficiently allege they suffered losses caused by fraud or deception. ¶¶ 376-79;

*DAGS II*, 616 F. App'x at 841.

---

[4] ZF Germany suggests Plaintiffs must show, in addition to this element of the alter-ego test, that treating ZF Germany and the Domestic ZF Defendants as separate entities "will be used to subvert justice or cause a result that is contrary to some other clearly overriding public policy." MTD Br. 18 (alterations adopted). But that language merely summarizes the alter-ego test and does not embody a distinct requirement Plaintiffs must satisfy. *See DAGS II*, 616 F. App'x at 837 (using same language to describe when it is proper to pierce the corporate veil).

## III.    In the Alternative, the Court Should Hold This Motion in Abeyance and Permit Jurisdictional Discovery.

If the Court determines Plaintiffs have not made a prima facie case of personal jurisdiction over ZF Germany, it should permit Plaintiffs to conduct limited jurisdictional discovery regarding ZF Germany's relationship with the Domestic ZF Defendants and their respective roles with respect to the Defective Inflators. Specifically, Plaintiffs would take limited discovery to examine the extent to which, among other things, (1) ZF Germany oversaw the Domestic ZF Defendants' design, manufacture, or sale of airbag modules in the United States; (2) ZF Germany supervised ZF TRW Corp.'s safety testing of airbag modules; (3) ZF Germany knew of the risks posed by airbags that contained Defective Inflators; and (4) ZF Germany assumed the liabilities of ZF TRW Corp. when purchasing its predecessor, TRW Automotive Holdings Corp., in 2015.[5]

Courts generally permit jurisdictional discovery if "there is a genuine dispute as to whether exercising personal jurisdiction . . . would be appropriate." *Doherty-Heinze v. Chrisley*, 2021 WL 12149533, at *5 (N.D. Ga. Dec. 21, 2021) (Batten, C.J.). Although this Court ordinarily enjoys "broad discretion" over matters relating to discovery, "'jurisdictional discovery is not entirely discretionary.'" *ACLU of Fla., Inc. v. City of Sarasota*, 859 F.3d 1337, 1340 (11th

---

[5] Plaintiffs are concurrently moving in the alternative for leave to take limited jurisdictional discovery.

Cir. 2017) (quoting *Eaton v. Dorchester Dev., Inc.*, 692 F.2d 727, 729 (11th Cir. 1982)). Where a genuine dispute exists, "a plaintiff faced with a motion to dismiss for lack of personal jurisdiction is entitled to reasonable discovery, lest the defendant defeat the jurisdiction of a federal court by withholding information on its contacts with the forum." *Seiz v. Quirk*, 2013 WL 12290850, at *2 (N.D. Ga. Jan. 3, 2013) (Murphy, J.).

The subjects of discovery Plaintiffs would seek are similar to those courts routinely allow. For instance, in *Luc v. Korean Air Lines Co.*, Judge May of this District permitted discovery "on the narrow issue of jurisdiction; specifically, whether [a domestic subsidiary] has sufficient contacts with Georgia and whether [the subsidiary] is the alter ego or wholly owned subsidiary of [its foreign parent]." 2019 WL 7824584, at *4 (N.D. Ga. June 4, 2019) (May, J.). There, as here, the case was "still early in discovery" and the plaintiff had "not yet had an opportunity to discover all potential facts relating to these theories." *Id.* at *3. As Plaintiffs have specified their proposed discovery and demonstrated why this information would be "relevant" to ZF Germany's arguments for dismissal, jurisdictional discovery would be appropriate if the Court determines Plaintiffs have not at this point made a prima facie case for personal jurisdiction. *Seiz*, 2013 WL 12290850, at *6.

## <u>CONCLUSION</u>

For the foregoing reasons, the Court should deny ZF Germany's motion to dismiss or, in the alternative, hold the motion in abeyance and permit Plaintiffs to take discrete jurisdictional discovery.

Dated: December 23, 2024

Respectfully submitted,

*/s/Roland Tellis*
Roland Tellis
rtellis@baronbudd.com
David Fernandes
dfernandes@baronbudd.com
Adam Tamburelli
atamburelli@baronbudd.com
Jay Lichter
jlichter@baronbudd.com
Sterling Cluff
scluff@baronbudd.com
**BARON & BUDD, P.C.**
15910 Ventura Blvd #1600
Encino, California 91436
Tel: (818) 839-2333

*/s/ Demet Basar*
Demet Basar
demet.basar@beasleyallen.com
W. Daniel "Dee" Miles, III
dee.miles@beasleyallen.com
J. Mitch Williams
mitch.williams@beasleyallen.com
Dylan T. Martin
dylan.martin@beasleyallen.com
**BEASLEY, ALLEN, CROW,
METHVIN, PORTIS & MILES,
P.C.**
272 Commerce Street
Montgomery, Alabama 36104
Tel: (334) 269-2343

H. Clay Barnett, III (GA Bar 174058)
clay.barnett@beasleyallen.com
Thomas P. Willingham (GA Bar
235049)
tom.willingham@beasleyallen.com
**BEASLEY, ALLEN, CROW,
METHVIN, PORTIS & MILES,
P.C.**
Overlook II
2839 Paces Ferry Rd SE, Suite 400
Atlanta, GA 30339
Tel: (404) 751-1162

*/s/ James E. Cecchi*
James E. Cecchi
jcecchi@carellabyrne.com
**CARELLA, BYRNE, CECCHI,
BRODY & AGNELLO, P.C.**
5 Becker Farm Road
Roseland, New Jersey 07068
Tel: (973) 994-1700

Zachary Jacobs
zjacobs@carellabyrne.com
**CARELLA, BYRNE, CECCHI,
BRODY & AGNELLO, P.C.**
222 South Riverside Plaza
Chicago, Illinois 60606
Tel: (973) 994-1700

Jason H. Alperstein
jalperstein@carellabyrne.com
Zachary J. Bower
zbower@carellabyrne.com
**CARELLA, BYRNE, CECCHI,
BRODY & AGNELLO, P.C.**
2222 Ponce De Leon Blvd.
Miami, Florida 33134
Tel: (973) 994-1700

*/s/ Elizabeth T. Castillo*
Niall P. McCarthy
nmccarthy@cpmlegal.com
Elizabeth T. Castillo
ecastillo@cpmlegal.com
David G. Hollenberg
dhollenberg@cpmlegal.com
**COTCHETT, PITRE &
McCARTHY, LLP**
840 Malcolm Road
Burlingame, CA 94010
Tel: (650) 697-6000

Theresa E. Vitale
tvitale@cpmlegal.com
**COTCHETT, PITRE &
McCARTHY, LLP**
2716 Ocean Park Blvd., Suite 3088
Santa Monica, CA 90405
Tel: (310) 392-2008

*/s/ David Stellings*
David Stellings
dstellings@lchb.com
Michael J. Miarmi
mmiarmi@lchb.com
Katherine I. McBride
kmcbride@lchb.com
Gabriel A. Panek
gpanek@lchb.com
**LIEFF CABRASER HEIMANN &
BERNSTEIN, LLP**
250 Hudson Street, 8th Floor
New York, New York 10013-1413
Tel: (212) 355-9500

Nimish R. Desai
ndesai@lchb.com
**LIEFF CABRASER HEIMANN &
BERNSTEIN, LLP**
275 Battery Street, 29th Floor
San Francisco, California 94111
Tel: (415) 956-1000

*/s/ Kevin R. Dean*
Kevin R. Dean (GA Bar 214855)
kdean@motleyrice.com
Ann K. Ritter
aritter@motleyrice.com
Lance V. Oliver
loliver@motleyrice.com
Sara O. Couch
scouch@motleyrice.com
**MOTLEY RICE LLC**
28 Bridgeside Boulevard
Mount Pleasant, South Carolina 29464
Tel: (843) 216-9000

*/s/ Matthew D. Schultz*
Matthew D. Schultz
mschultz@levinlaw.com
William F. Cash
bcash@levinlaw.com
**LEVIN, PAPANTONIO,
RAFFERTY, PROCTOR,
BUCHANAN, O'BRIEN, BARR &
MOUGEY, P.A.**
316 S. Baylen St., Suite 600
Pensacola, FL 32502
Tel: (850) 435-7140

***Leadership Committee for Plaintiffs and the Proposed Classes***

- 26 -

*/s/ Michael A. Caplan*
Michael A. Caplan (GA Bar 601039)
mcaplan@caplancobb.com
T. Brandon Waddell (GA Bar 252639)
bwaddell@caplancobb.com
Ashley C. Brown (GA Bar 287373)
abrown@caplancobb.com
**CAPLAN COBB LLC**
75 Fourteenth Street NE, Suite 2700
Atlanta, Georgia 30309
Tel: (404) 596-5600

*/s/ M.J. Blakely*
M.J. Blakely (GA Bar 708906)
mjblakely@blakelyfirm.com
**THE BLAKELY FIRM, L.L.C.**
P.O. Box 3314
Decatur, GA 30031
Tel: (404) 491-0617

*Liaison Counsel for Plaintiffs and the Proposed Classes*

## **CERTIFICATION**

Pursuant to Civil Local Rule 7.1(D), the undersigned counsel certifies that this brief has been prepared with 14-point Times New Roman, as approved by the Court in Civil Local Rule 5.1(C).

*/s/ David Stellings*
David Stellings