# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

IN RE: ARC AIRBAG INFLATORS
PRODUCTS LIABILITY
LITIGATION

MDL No. 3051

Case No. 1:22-md-03051-ELR

District Judge Eleanor L. Ross

## REPLY IN SUPPORT OF DEFENDANT
## ZF FRIEDRICHSHAFEN AG'S MOTION TO DISMISS PLAINTIFFS'
## <u>CONSOLIDATED CLASS ACTION COMPLAINT</u>

# **TABLE OF CONTENTS**

**Page**

INTRODUCTION ..................................................................................................1

ARGUMENT .......................................................................................................3

I.    Plaintiffs Fail to Allege Specific Jurisdiction ...................................................3

    A.    Plaintiffs Have Not Satisfied Michigan's Long-Arm Statute. ..............3

    B.    Plaintiffs Do Not Meet Due Process Standards ...................................6

        1.    Plaintiffs Do Not Allege Michigan Claim-Related Contacts......................................................................................6

        2.    Plaintiffs Do Not Sufficiently Allege Purposeful Availment .................................................................................9

II.    Plaintiffs Fail to Establish Alter Ego Jurisdiction .........................................10

    A.    Plaintiffs Do Not Allege Misuse of the Corporate Form ...................11

    B.    The Domestic ZF Defendants Are Not "Mere Instrumentalities" ......12

CONCLUSION ...................................................................................................15

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*In re Auto. Parts Antitrust Litig.*,
  2013 WL 2456610 (E.D. Mich. June 6, 2013) ...........................................14, 15

*In re Auto. Parts Antitrust Litig.*,
  2014 WL 3671031 (E.D. Mich. July 23, 2014) ..................................................15

*In Re: ZF-TRW Airbag Control Units Prods. Liab. Litig.*,
  2022 WL 522484 (C.D. Cal. Feb. 9, 2022) ................................................3, 4, 7

*Conley v. MLT, Inc.*,
  2012 WL 1893509 (E.D. Mich. May 23, 2012) .................................................14

*DAGS II, LLC v. Huntington Nat'l Bank*,
  616 F. App'x 830 (6th Cir. 2015) ......................................................................14

*Don't Look Media LLC v. Fly Victor Ltd.*,
  999 F.3d 1284 (11th Cir. 2021) ...........................................................................3

*Franklin Cap. Funding, LLC v. Austin Bus. Fin., LLC*,
  676 F. Supp. 3d 515 (E.D. Mich. 2023) ...........................................................14

*Glenn v. TPI Petro., Inc.*,
  854 N.W.2d 509 (Mich. App. 2014).......................................................6, 11, 12

*Indusource, Inc. v. Sandvik Tolling France SAS*,
  2016 WL 6216003 (E.D. Mich. Oct. 25, 2016)..................................................14

*J.A. Besteman Co. v. Carter's Inc.*,
  2008 WL 2037289 (W.D. Mich. May 12, 2008).........................................11, 12

*Jeffrey v. Rapid American Corp.*,
  529 N.W. 2d 644 (Mich. 1995)............................................................................9

*Lafarge Corp. v. Altech Env't U.S.A.*,
  220 F. Supp. 2d 823 (E.D. Mich. 2002) ..............................................................4

*Nationwide Motorist Ass'n of Michigan v. Nationwide Motorist Ass'n*,
   244 F. Supp. 490 (W.D. Mich. 1965) ................................................................5, 6

*Posner v. Essex Insurance Co.*,
   178 F.3d 1209 (11th Cir. 1999) ............................................................................7

*RDM Holdings, Ltd. v. Cont'l Plastics Co.*,
   281 Mich. App. 678 (2008) ...............................................................................15

*Servo Kinetics, Inc. v. Tokyo Precision Instruments Co.*,
   475 F.3d 783 (6th Cir. 2007) .............................................................................12

*Smith v. Amada Machine Tools America Inc.*,
   2017 WL 4339328 (E.D. Mich. June 12, 2017) ...............................................13

*Sullivan v. LG Chem, Ltd.*,
   79 F.4th 651 (6th Cir. 2023) ...........................................................................3, 5

*United Am. Corp. v. Bitmain, Inc.*,
   530 F. Supp. 3d 1241 (S.D. Fla. 2021) ...............................................................7

*United Ins. Grp. Agency v. Patterson*,
   2011 WL 5067251 (Mich. App. Oct. 25, 2011) .........................................12, 14

*Walden v. Fiore*,
   571 U.S. 277 (2014)..............................................................................................7

*Walker v. Shield Acq. Corp.*,
   145 F. Supp. 2d 1360 (N.D. Ga. 2001) ...............................................................9

*In Re: ZF-TRW Airbag Control Units Prods. Liab. Litig.*,
   Case No. 2:19-ml-02905-JAK-MRW (C.D. Cal.)...............................................3

## Statutes

42 CFR § 600.715(1) ..............................................................................................3, 4

42 CFR § 600.715(2) ..............................................................................................3, 5

## INTRODUCTION

Plaintiffs' Opposition underscores why this Court has no personal jurisdiction over ZF Friedrichshafen AG.  It points to no allegations in the Corrected Consolidated Class Action Complaint ("CAC") (Dkt. 157) of any claim-related conduct by ZF Friedrichshafen directed at the forum state of Michigan.  Nor does it provide any basis to impute the Domestic ZF Defendants' forum contacts to the German corporation.  Instead, the Opposition attempts to rewrite the CAC's allegations, intentionally confuses the separate corporate identities of the ZF Defendants, and misstates inapplicable case law in a futile effort to bolster Plaintiffs' novel theories on personal jurisdiction.  Plaintiffs' tactics fail to remedy the holes in their jurisdictional theories, and this Court should dismiss ZF Friedrichshafen for lack of personal jurisdiction.[1]

*First*, Plaintiffs acknowledge that to establish *specific jurisdiction* they must show their claims arise out of Michigan-directed conduct by ZF Friedrichshafen. Opp. at 8.  But the CAC just describes the claim-related conduct of *other* ZF Defendants that it loosely attributes to ZF Friedrichshafen under an unsupported theory of "control."  CAC ¶ 64.  Rather than cure the CAC's deficiencies, the Opposition relies on purported post-merger activities integrating global operations rather than Michigan-directed conduct by ZF Friedrichshafen related to the claims.

---

[1] ZF Friedrichshafen is filing a separate opposition to Plaintiffs' discovery motion.

This does not suffice for jurisdiction, as Plaintiffs' own cited cases demonstrate.

*Second*, as to *alter ego*, Plaintiffs do not dispute they failed to allege *any* abuse of the corporate form by ZF Friedrichshafen. That failure is dispositive. Plaintiffs also failed to rebut the sworn Declaration of Kelly Laliberte (Dkt. 279-2), who attests to facts showing that ZF Friedrichshafen is separate from and does not control its domestic affiliates. Laliberte Decl. ¶¶ 15-18. The Opposition retreats to "control" but relies on supposition and inapposite cases to cobble together a nonsensical theory of veil-piercing. Speculation is insufficient to overcome the unrebutted facts in the Laliberte Declaration.

ZF Friedrichshafen is a distant German entity who sits atop a corporate chain with hundreds of entities across the globe. It is at best the great-great grandparent of the domestic entities who supplied TRW airbags with ARC Inflators *years before* ZF Friedrichshafen had any affiliation with them. None of the named Plaintiffs in Michigan is alleged to have purchased such a vehicle. Indeed, out of the 4,000+ paragraphs that make up the CAC, only *three* paragraphs that touch the claim also mention ZF Friedrichshafen—all on only "information and belief." CAC ¶¶ 63, 75-76. None describe conduct directed at (or that occurred in) Michigan. And nowhere does the Opposition address the fact that the CAC's jurisdictional allegations are a copy-paste from an entirely different case, which dismissed ZF Friedrichshafen for

2

lack of personal jurisdiction and twice denied requests for jurisdictional discovery.[2]

The Court should do the same here.

## ARGUMENT

## I.    PLAINTIFFS FAIL TO ALLEGE SPECIFIC JURISDICTION

Plaintiffs bear the burden of establishing a *prima facie* case of personal jurisdiction.  Where, as here, a defendant submits an affidavit controverting the complaint's allegations, a plaintiff must submit evidence (not supposition) supporting personal jurisdiction.  *See Don't Look Media LLC v. Fly Victor Ltd.*, 999 F.3d 1284, 1292 (11th Cir. 2021).  Plaintiffs have not done so here.

### A.    Plaintiffs Have Not Satisfied Michigan's Long-Arm Statute.

Plaintiffs rely on two prongs of the Michigan long-arm statute: § 600.715(1) ("[t]he transaction of any business within the state") and § 600.715(2) ("[t]he doing or causing any act to be done, or consequences to occur, in the state resulting in an action for tort").  However, the CAC fails to meet statutory requirements because it ignores that the statute "exposes a non resident to suit in Michigan *only* for a cause which *arose out of* the relationship serving as a basis for such jurisdiction." *Sullivan v. LG Chem, Ltd.*, 79 F.4th 651, 667 (6th Cir. 2023).[3]

Plaintiffs suggest that § 600.715(1) is met as to *any* claim if the defendant

---

[2] *See In Re: ZF-TRW Airbag Control Units Prods. Liab. Litig.* (the "*California ACU Litigation*"), 2022 WL 522484, at *724-25 (C.D. Cal. Feb. 9, 2022); Aug. 15, 2022 Order (Dkt. 546), attached hereto as **Exhibit 1**.

[3] All emphasis is supplied and internal quotations omitted unless otherwise noted.

transacts *any* business in the state. Opp. at 5-6. Not so. Plaintiffs must establish that their claims "arose out of" business transacted in Michigan. *See Lafarge Corp. v. Altech Env't U.S.A.*, 220 F. Supp. 2d 823, 828-29 (E.D. Mich. 2002) (statute not met where claim did not arise from business in Michigan). The Opposition just repackages the CAC's general allegations about integrating post-merger operations and ZF Friedrichshafen's corporate oversight of Michigan-based subsidiaries. Opp. at 5. Plaintiffs' only allegations that remotely touch their claims appear at CAC ¶¶ 63, 75-76, but reviewing reports, monitoring global incidents, and unspecified communications (all based on "*information and belief*") are not the sort of claim-related conduct directed at (much less occurring in) Michigan that is required.[4] *See Lafarge*, 220 F. Supp. 2d at 826, 828-30 (no personal jurisdiction over foreign parent whose only involvement in transaction was supply of component parts to a domestic subsidiary, not ultimate purchaser); *see also California ACU Litig.*, 2022 WL 522484, at *724-25 (no specific jurisdiction despite allegations of general communications with NHTSA and investigating crashes).

The Opposition says the claims arise out of the concealment of defects that

---

[4] CAC ¶ 63 ("ZF Germany reviews and approves the statements its domestic subsidiaries make to NHTSA"); ¶ 75 ("ZF Germany was actively involved in monitoring the global field incidents involving [ARC Inflators] and whether the ZF airbag modules complied with safety standards"); ¶ 76 ("ZF Germany controlled all ZF-branded company communications relating to . . . the Class Vehicles").

occurred in connection with business ZF Friedrichshafen conducted in Michigan, but never explains how that is true (*e.g.*, how a CEO's alleged interview comment about bringing "U.S. subsidiaries together 'under one roof'" after a merger (Opp. at 5) has anything to do with concealing ARC Inflators). The CAC certainly does not make the connection that the Opposition attempts to draw.

Long-arm jurisdiction also is lacking under § 600.715(2), which requires that the act or consequence occur in Michigan. The Opposition says it is "irrelevant" that not a single named Plaintiff who purchased a vehicle containing a TRW airbag alleges they were injured in Michigan, because "ZF Germany participated in a fraud that occurred in part in Michigan, causing harm to Plaintiffs and other Class Members."[5] Opp. at 7. But that theory requires an inferential leap between their allegations of non-claim-related forum contacts (CAC ¶¶ 66-74) and their conclusory allegations of claim-related conduct (*id.* ¶¶ 63, 75-76).

The two cases Plaintiffs rely on to support this leap are inapposite. In *Sullivan v. LG Chem, Ltd.*, a foreign defendant was subject to jurisdiction where batteries manufactured by the defendant exploded in the plaintiff's pocket *in Michigan*. 79 F. 4th 651 at 669. In *Nationwide Motorist Ass'n of Michigan v. Nationwide Motorist Ass'n*, the court found jurisdiction where the defendant allegedly met with the

---

[5] Plaintiffs assert they do not "know which Airbag Module Defendant manufactured each airbag module." Opp. at 7. That is not true here. *See* disc. *infra*, at 9.

plaintiff, made false statements, and distributed fraudulent materials to the plaintiff *in Michigan*.  244 F. Supp. 490, 491, 494 (W.D. Mich. 1965).  Those facts bear no resemblance to the CAC, which fails to describe any claim-related conduct by ZF Friedrichshafen in Michigan.  Plaintiffs instead point to public statements of corporate connections between ZF Friedrichshafen and the domestic entities.  *See* Opp. at 5.  That is not sufficient.  *See Glenn v. TPI Petro., Inc.*, 854 N.W.2d 509, 518 (Mich. App. 2014) (no long-arm jurisdiction where complaint was "silent with regard to any specific act . . . resulting in an action for tort").

### B.    Plaintiffs Do Not Meet Due Process Standards

As with the Michigan long-arm statute, the Opposition glosses over the CAC's deficiencies under due process standards by focusing on ZF Friedrichshafen's purported corporate contacts with Michigan, rather than whether Plaintiffs' claims *arise out of* those activities.  *See* Opp. at 8-10.  This, too, fails.

### 1.    Plaintiffs Do Not Allege Michigan Claim-Related Contacts

The Opposition asserts due process is met because the CAC alleges ZF Friedrichshafen exercises control over its domestic affiliates' "leadership and policies," manages "the Domestic ZF Defendants' Active & Passive Safety Technology Division," and holds itself out as a "single, unified entity."  Opp. at 8-9.  According to Plaintiffs, the facts alleged in CAC ¶¶ 64-74 "culminated in the ZF Defendants' Michigan-based concealment of material safety information from Plaintiffs."  *Id.*  But none of the referenced allegations even mention the ARC

Inflators, much less any claim-related conduct by ZF Friedrichshafen in Michigan. Instead, the CAC makes generalized allegations of corporate connections between domestic subsidiaries and their foreign great, great grandparent. But Plaintiffs cite no cases holding that common corporate relationships satisfy due process limits.

As discussed above, the only allegations of potential claim-related conduct are assertions made on *information and belief* in CAC ¶¶ 63, 75-76.[6] Not only are these allegations vague and unspecific—*e.g.*, no actual report or communication is specified—they do not evince conduct directed at Michigan. *Walden v. Fiore*, 571 U.S. 277, 284 (2014) ("[t]he relationship must arise out of contacts that the defendant himself creates with the forum State"). In fact, as noted, such allegations in the *California ACU Litigation* fell short of mandatory due process requirements. 2022 WL 522484, at *724-725 (holding allegations of investigating U.S. crashes were insufficient minimum contacts).

Because they have no answer, Plaintiffs attempt to dismiss as "conclusory" Ms. Laliberte's sworn declaration by relying on inapposite case law. In *Posner v. Essex Insurance Co.*, the defendant submitted an affidavit that was an "essentially verbatim" recitation of the Florida long-arm statute. 178 F.3d 1209, 1215 (11th Cir. 1999) (holding to be "legal conclusions"). By contrast, Ms. Laliberte sets forth

---

[6] Information and belief allegations are "*not entitled to a presumption of truth*." *United Am. Corp. v. Bitmain, Inc.*, 530 F. Supp. 3d 1241, 1261 n.21 (S.D. Fla. 2021).

detailed facts based on personal knowledge regarding the respective ZF Defendants' roles and corporate identities.  *See* Laliberte Decl. ¶¶ 4-18 (domestic defendants maintain separate management, separate books/financials, are capitalized, have their own facilities, and do not conduct business on behalf of ZF Friedrichshafen).

Plaintiffs also claim Ms. Laliberte's declaration "does not controvert anything in the Complaint."  Opp. at 10.  To the contrary:

- Plaintiffs' conclusion that "ZF Germany . . . exerts substantial control" (CAC ¶ 64) is controverted by Ms. Laliberte's Declaration, which sets forth evidence regarding how each ZF Defendant maintains corporate formalities (Laliberte Decl. ¶¶ 15-18).

- Plaintiffs' claim that "ZF Germany had contacts with the United States to sell the relevant airbag modules" (CAC ¶ 62) is contradicted by Ms. Laliberte's Declaration that ZF Friedrichshafen "does not design, manufacture, sell, or distribute any products in the United States, and has never done so at any time relevant to this litigation" (Laliberte Decl. ¶ 14).

Plaintiffs also fail to rebut that TRW modules equipped with ARC Inflators were supplied *years before* there was any affiliation with ZF Friedrichshafen.  *See* Mot. at 12-13; Laliberte Decl. ¶ 16.  Plaintiffs claim this fact is "meaningless" *if* ZF Friedrichshafen "assumed the liabilities of the entities it purchased."  Opp. at 10.  This is pure misdirection.  The publicly available merger agreement makes clear that TRW's pre-merger liabilities remained with TRW (renamed ZF TRW Automotive Holdings Corp.) as the surviving entity.  There is no evidence (and no allegations in

the CAC) that ZF Friedrichshafen assumed any liabilities of TRW.[7]  *See also*

Laliberte ¶ 8; CAC ¶ 66.  As a result, Plaintiffs' citation to *Jeffrey v. Rapid American*

*Corp.*—where the defendant *expressly* assumed the liabilities of an absorbed

corporate entity—is unavailing.  529 N.W. 2d 644, 655 (Mich. 1995).

Plaintiffs claim they need discovery to "test the veracity" of the assertion that

the only TRW airbag modules equipped with ARC inflators were in the MY 2008-

2012 Chevy Malibu.  Opp. at 10; *see also id.* at 7.  But that claim rings hollow, as it

ignores that the Domestic ZF Defendants already produced documents that confirm

these precise facts.[8]

### 2.    Plaintiffs Do Not Sufficiently Allege Purposeful Availment

Plaintiffs also fail to meet either the "effects test" or the "traditional minimum-

contacts test."  Opp. at 10.  As to the effects test, the Opposition does not point to

any alleged conduct that occurred or caused effects *in the forum state* (Michigan).

Instead, the Opposition just rehashes generalized allegations that ZF Friedrichshafen

---

[7] *See* Agreement & Plan of Merger (Sept. 15, 2014) at § 1.1, *available at* https://www.sec.gov/Archives/edgar/data/1267097/000110465914066397/a14-20989_1ex2d1.htm ("[T]he separate corporate existence of [TRW] . . . shall continue unaffected by the Merger . . . . [A]ll claims, obligations, debts, liabilities and duties of [TRW] and [MSNA Inc.] shall become the claims, obligations, debts, liabilities and duties of [TRW] as the Surviving Corporation."); *see also Walker v. Shield Acq. Corp.*, 145 F. Supp. 2d 1360, 1366 (N.D. Ga. 2001) (taking judicial notice of merger agreement filed with SEC).

[8] The referenced documents were produced at Bates ZFUS_ARCMDL00000032 - 0037 (confidential but available to the Court upon request).

"assumed control" over its domestic affiliates and asserts, for the first time in the Opposition (not in the CAC), that ZF Friedrichshafen directed its domestic affiliates to "deliberately deliver[] products such as airbag modules, which could be purchased by consumers, including those in Michigan." Opp. at 11. But that claim is directly contradicted by both the CAC, which admits ZF Friedrichshafen was not affiliated with TRW until 2015 (CAC ¶ 66), and also by sworn testimony that ZF Friedrichshafen has never "delivered products" in Michigan and that the TRW modules with ARC Inflators were supplied only until 2012, years before ZF Friedrichshafen ever entered the picture. *See* Laliberte Decl. ¶ 16.

As to minimum contacts, Plaintiffs' theory hinges entirely on two contentions. The first is that ZF Friedrichshafen "purchase[d] the assets and liabilities of a Michigan-based company." Opp. at 12. That is not true, as set forth above. *See* disc. *supra*, at 8-9. The second is that ZF Friedrichshafen "actively carries out business in Michigan that relates to the subject matter of this action." Opp. at 11-12. But, Plaintiffs cannot rehabilitate the CAC's defectively generic allegations about the ZF Defendants' intra-company organizations with a conclusory statement that these allegations "relate[] to the subject matter of this action." Opp. at 12.

## II.    PLAINTIFFS FAIL TO ESTABLISH ALTER EGO JURISDICTION

Plaintiffs also fail to establish that the Michigan contacts of the Domestic ZF/TRW Defendants should be imputed to ZF Friedrichshafen. *First*, the CAC does

not allege any abuse of the corporate form, which is required to establish alter ego. *Second*, the CAC falls short of establishing that the Domestic ZF/TRW Defendants are "mere instrumentalities" of ZF Friedrichshafen.

### A.    Plaintiffs Do Not Allege Misuse of the Corporate Form

Plaintiffs cannot avoid a long line of well-settled case law holding that "[p]iercing of the corporate veil is *appropriate only when* a parent company is abusing its corporate shield for its own purposes." *Glenn*, 854 N.W.2d at 521. The Opposition asserts this element is met because "Plaintiffs' claims of fraud and consumer protection plainly constitute a fraud or wrong." Opp. at 19. Under Plaintiffs' theory, *any* fraud alleged against a foreign affiliate is enough to disregard corporate identities and subject the foreign company to jurisdiction. That is obviously not the law. *See* Mot. at 18 (citing cases).

Indeed, Plaintiffs' own cited cases contravene their theory. In *J.A. Besteman Co. v. Carter's Inc.*, the court emphasized that the corporate veil may be pierced "when *recognizing the separation between two corporations* will work a fraud upon the law." 2008 WL 2037289, at *7 (W.D. Mich. May 12, 2008); *see also id.* at *6 (veil may be pierced "only where an otherwise separate corporate existence has been used to subvert justice"). In *Besteman*, the court pierced the veil applying a prior judgment against an affiliate when the affiliate and its sister company represented their assets as one in related proceedings and the affiliate otherwise blurred

separateness.  *Besteman*, 2008 WL 2037289, at *7 (defendant admitted two companies run as one).  And in *Servo Kinetics, Inc. v. Tokyo Precision Instruments Co.*, the court pierced the veil where the defendant stripped its affiliate of assets, customers, and employees without compensation and to commit a wrong.  475 F.3d 783, 799-800 (6th Cir. 2007).  By contrast, Plaintiffs have failed to allege that ZF Friedrichshafen "abus[ed] its corporate shield for its own purposes."  *Glenn*, 854 N.W.2d at 521 (declining to attach alter ego jurisdiction to foreign parent who maintained offices at a shared address with domestic subsidiary but gave no indication that separate corporate formalities had not been maintained).

## B.    The Domestic ZF Defendants Are Not "Mere Instrumentalities"

The Opposition also wrongly claims the CAC sufficiently alleges that the Domestic ZF/TRW Defendants are "mere instrumentalities" of ZF Friedrichshafen. Tellingly, this section of the Opposition does not reference—much less attempt to rebut—Ms. Laliberte's Declaration, which contradicts Plaintiffs' conclusions that ZF Friedrichshafen had "significant control over the day-to-day operations of the Domestic ZF Defendants in the United States."  Opp. at 14.

The Opposition's attempt to embellish the CAC's allegations falls flat.  At bottom, the CAC's allegations show nothing more than indicia of corporate ownership, which is not sufficient to pierce the corporate veil.  *See United Ins. Grp. Agency v. Patterson*, 2011 WL 5067251, at *2 (Mich. App. Oct. 25, 2011) (a parent's

12

voting power does not render its subsidiaries mere instrumentalities).  For example, the Opposition asserts that "ZF Germany *regularly appoints* executives and board members for *all* the Domestic ZF Defendants" (Opp. at 14).  But the CAC only states that ZF Friedrichshafen "has had the power" to appoint board members and cites only two instances where directors on ZF Friedrichshafen's Board "took over" unspecified responsibilities for unspecified domestic affiliates.[9]  CAC ¶ 67.  As such, Plaintiffs' attempt to distinguish *Smith v. Amada Machine Tools America Inc.*, 2017 WL 4339328, at *6 (E.D. Mich. June 12, 2017), is misplaced.  Opp. at 15.  As Plaintiffs admit, "the alleged overlap [in that case] involved only a few of many officers and directors over a period of several decades."  *Id.*  Plaintiffs' purportedly "extensive and specific allegations" on this point (Opp. at 15) amount to *two* overlapping officers and directors in a decade since the merger.

The Opposition also asserts that ZF Friedrichshafen and its domestic affiliates "share the same office space," citing the CAC's vague description of alleged statements by ZF Friedrichshafen's CEO that, following the acquisition of TRW, "the company was bringing the businesses together 'under one roof'" in Michigan. Opp. at 15; CAC ¶ 70.  But, they offer nothing more specific to rebut Ms. Laliberte's

---

[9] Plaintiffs note that one member of ZF Friedrichshafen's Board serves as the president of ZF North America, Inc., who *is not a defendant.*  The Opposition tries to cover, claiming the CAC "allege[s] Dr. Fischer played a day-to-day role in . . . the Domestic ZF Defendants[.]" Opp. at 15.  Not true.  The CAC alleges nothing about the supposed "day-to-day role" in any *specific* ZF entity.

sworn statements to the contrary.  *See* Laliberte Decl. ¶ 15.  Moreover, case law makes clear that what matters is whether two affiliates share the same *principal* office, not whether they share *any* office.  *See United Ins. Grp. Agency*, 2011 WL 5067251, at *2.  None of the cases Plaintiffs cite support the proposition that sharing of office space is sufficient to pierce the corporate veil.[10]

The Opposition's contention that ZF Friedrichshafen "determines the policies and decisions of the Domestic ZF Defendants" relies on the CAC's conclusory allegations that ZF Friedrichshafen and its domestic affiliates share certain legal and compliance functions.  Opp. at 16-17.  As explained in the Motion, those allegations do not justify veil-piercing.  Mot. at 21-22; *see also In re Auto. Parts Antitrust Litig.*, 2013 WL 2456610, at *5 (E.D. Mich. June 6, 2013) (finding "[c]entralized research and development, purchasing, and logistical activities are *not* indicative" of an alter ego relationship).  Plaintiffs attempt to distinguish *In re Auto. Parts*, asserting "there was no evidence the parent company 'supervised management, controlled the

---

[10] *DAGS II, LLC v. Huntington Nat'l Bank*, 616 F. App'x 830, 838 (6th Cir. 2015) (considering shared employees, combined payment of expenses, combined payroll, and commingling of funds); *Franklin Cap. Funding, LLC v. Austin Bus. Fin., LLC*, 676 F. Supp. 3d 515, 527 (E.D. Mich. 2023) (entity had no employees and relied entirely on the other's employees and resources); *Indusource, Inc. v. Sandvik Tolling France SAS*, 2016 WL 6216003, at *1, *3 (E.D. Mich. Oct. 25, 2016) (emails and letters showed no respect for corporate formalities); *Conley v. MLT, Inc.*, 2012 WL 1893509, at *1, *4 (E.D. Mich. May 23, 2012) (domestic subsidiary was "not designed to earn a profit" and served as parent's "marketing department").

budget, rendered decisions on a subsidiary's behalf, and invaded corporate boundaries.'" Opp. at 17-18. But the same is true here. *See* Laliberte Decl. ¶ 15.[11]

Finally, Plaintiffs contend that ZF Friedrichshafen makes a "significant concession" by acknowledging that the CAC's allegations suggest a common brand or enterprise. Plaintiffs appeal to the purportedly "well-settled principle that when a parent holds itself and its subsidiaries out as a single enterprise with overlapping executives, the court may pierce the corporate veil." Opp. at 18 (citing *In re Auto. Parts Antitrust Litig.*, 2014 WL 3671031, at *3 (E.D. Mich. July 23, 2014)). That is neither a well-settled principle nor an accurate statement of the case. *In re Auto. Parts* analyzed whether plaintiffs were required to allege the role of a foreign parent corporation in an antitrust conspiracy. *See* 2014 WL 3671031, at *3. However, as set forth in the Motion (pp. 22-23), which cites cases on point, having a common brand or enterprise is not sufficient to pierce the veil. Plaintiffs' view would pierce the veil for nearly every parent and its subsidiaries. That has never been the law.[12]

## CONCLUSION

For the reasons set forth in this Reply and the Motion, the Court should dismiss Plaintiffs' claims against ZF Friedrichshafen.

---

[11] Even after considering that the parent "manages the group" of affiliates, *In re Auto. Parts* rejected alter ego, finding "[m]anagement, alone, is not a basis for disregarding separate corporate existence." 2013 WL 2456610, at *5.

[12] Plaintiffs claim "unjust loss," but that is only relevant if the first two factors are met. *RDM Holdings, Ltd. v. Cont'l Plastics Co.*, 281 Mich. App. 678, 702 (2008).

Dated: January 21, 2025              Respectfully submitted,

*/s/ Sean M. Berkowitz*
LATHAM & WATKINS LLP

Sean M. Berkowitz
Illinois Bar No. 6209701
Arthur F. Foerster
Illinois Bar No. 6271201
Johanna Spellman
Illinois Bar No. 6293851
330 North Wabash Street, Suite 2800
Chicago, IL 60611
Telephone: 312.876.7700
Facsimile: 312.993.9767
Email: sean.berkowitz@lw.com

Sean P. McNally
Michigan Bar No. 66292
Troutman Pepper Hamilton Sanders LLP
4000 Town Center, Suite 1800
Southfield, MI 48075
Telephone: 248.359.7317
Facsimile: 248.359.7700

Lindsey B. Mann
Georgia Bar No. 431819
Troutman Pepper Hamilton Sanders LLP
600 Peachtree Street, Suite 3000
Atlanta, GA 30308
Telephone: 404.885.2743
Facsimile: 404.962.6538

*Counsel for ZF Friedrichshafen AG*

## <u>CERTIFICATE OF COMPLIANCE WITH LOCAL RULE 7.1</u>

The undersigned hereby certifies that this filing was prepared using one of the font and point selections approved by this Court in Local Rule 5.1. Specifically, Times New Roman font was used in 14 point.

Dated: January 21, 2025                     _/s/ Sean M. Berkowitz_____
                                                              Sean M. Berkowitz
                                                              Illinois Bar No. 6209701