# EXHIBIT 1

**UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA**

<u>CIVIL MINUTES-GENERAL</u>

**Case No.: CV 19-ML-2905-JAK (PLAx)**                                   **Date: <u>August 15, 2022</u>**

**Title:    In re:  ZF-TRW Airbag Control Units Products Liability Litigation**

---

**PRESENT:  THE HONORABLE    PAUL L. ABRAMS**
                              **UNITED STATES MAGISTRATE JUDGE**

| <u>Christianna Howard</u> | <u>N/A</u> | <u>N/A</u> |
|---|---|---|
| Deputy Clerk | Court Reporter / Recorder | Tape No. |

**ATTORNEYS PRESENT FOR PLAINTIFF(S):**          **ATTORNEYS PRESENT FOR DEFENDANT(S):**
                NONE                                                           NONE

**PROCEEDINGS:  (IN CHAMBERS)    <u>Plaintiffs' Motion to Compel ZF Friedrichshafen AG to Produce
Jurisdictional Discovery (ECF No. 536)</u>**

On August 3, 2022, the parties in this action filed a Joint Stipulation (alternatively "JS" (ECF No. 536-1)) in support of their positions regarding plaintiffs' Motion to Compel ("Motion" or "Mot." (ECF No. 536)) defendant ZF Friedrichshafen AG ("ZF Germany") "to produce a targeted set of documents in response to Plaintiffs' jurisdictional discovery requests."  (JS at 1).  On August 10, 2022, the parties filed their Supplemental Memoranda (alternatively "Supp'l Mem.").  (ECF Nos. 543, 544).

Having considered the pleadings submitted in connection with the Motion, the Court has concluded that oral argument will not be of material assistance in determining the Motion.  Accordingly, the hearing scheduled for August 24, 2022, is **ordered off calendar**.  <u>See</u> Local Rule 7-15.

**<u>Background</u>**

Plaintiffs state that they are specifically seeking "documents and communications about drafts of just three identified PowerPoint presentations made to the National Highway Traffic Safety Administration ('NHTSA'), and the meetings with NHTSA where those presentations were used."  (JS at 1).  Plaintiffs contend these documents "form the core" of their allegations about ZF Germany's activities, thereby "supporting the exercise of personal jurisdiction over the company in this litigation."  (<u>Id.</u>).  They allege that ZF Germany "reviewed and approved the presentations for NHTSA, and caused their transmission to the U.S. regulator," as evidenced by the fact that the documents "list ZF Germany as a corporate author[1] and attribute the copyright specifically to that entity."  (<u>Id.</u>).  They assert that "[i]n light of ZF Germany's interest in protecting a very recent, and very large, investment in the companies that manufacture the ACU [airbag control unit] at issue, this hands-on role in communications with an important regulator about a key product in its portfolio is not surprising."  (<u>Id.</u>).

---

[1]    Plaintiffs base this assertion on the fact that "[t]wo of the presentations have ZF Germany's name on the title page, where an author is traditionally identified."  (Pls.' Supp'l Mem. at 1).

Plaintiffs observe that in support of their first motion to dismiss in this action, the ZF Defendants[2] "characterize[d] ZF Germany's role in these and other communications with NHTSA as one of 'only limited oversight.'" (Id. at 2 (citing ECF No. 209-4 ¶ 10)). They note that this "vague and self-serving description tells Plaintiffs and the Court very little about what ZF expressly concedes to be at least *some* degree of oversight by ZF Germany in the communications." (Id. (emphasis in original)). Plaintiffs contend that if ZF Germany did cause misleading presentations to be sent to the United States to further a fraudulent scheme, "this would be sufficient to establish personal jurisdiction over the foreign entity," as a defendant's "purposeful direction of misconduct toward the forum supports the exercise of jurisdiction in that forum." (Id.). They submit that they have limited this Motion to a "core set of documents that go to the heart of their allegations of ZF Germany's forum-directed activities, the search for and production of which will undoubtedly contribute to the just, speedy, and relatively inexpensive determination of hotly contested issues in this case." (Id. (citing Fed. R. Civ. P. 1)).

Plaintiffs also rely in part on this Court's March 21, 2022, statements at a status conference, in which the Court summarized the jurisdictional discovery issue:

> [A]s with the parts manufacturer Defendants, there appear to be no currently pending claims as to [ZF Germany and other foreign] Defendants and the claims that were alleged failed to result in an order that jurisdiction or jurisdictional discovery was warranted. So any jurisdictional discovery as to these Defendants would have to wait until there's a live complaint against them. And if there isn't an agreement among the parties at that time about production of jurisdictional discovery, Plaintiffs will be required to make a proper showing as to each Defendant that such discovery is warranted in order to assert jurisdiction against them in an amended complaint.

(Id. at 11-12 (quoting ECF No. 425 (Mar. 21, 2022, H'rg Tr.) at 13:22-14:14)). They state that "[c]onsistent with this Court's instruction 'to wait until there's a live complaint' against ZF Germany before pursuing jurisdictional discovery against ZF Germany, Plaintiffs waited until May 26, 2022, when they re-named ZF Germany as a Defendant in their amended complaint, to renew jurisdictional discovery efforts against ZF Germany." (Id. at 12).

Defendant responds that plaintiffs' Motion ignores the District Judge's prior dismissal order, "the controlling law, and unambiguous sworn testimony from domestic ZF witnesses that confirm Plaintiffs' allegations about ZF's foreign parent company are untrue." (Id. at 3). Thus, it contends that jurisdictional discovery remains inappropriate and unnecessary. (Id.). Defendant also argues that plaintiffs' assertion of jurisdiction over ZF Germany fails for the same reasons it did with respect to defendants' first motion to dismiss, as plaintiffs again fail to plausibly allege that ZF Germany was the "alter ego" of its domestic subsidiaries. (Id. (citation omitted)). It notes that the copyright mark relied on by plaintiffs that appeared in the footer on certain documents presented in the United States cannot establish jurisdiction by law, "and the footer was the result of rote corporate practice, irrespective of the document content, by the domestic entities who prepared the presentations in question." (Id.).

In support, defendant explains that Emanuel Goodman, a domestic ZF employee responsible for preparing and presenting those documents to NHTSA, represented in his recent August 2, 2022, declaration ("Goodman Decl." (ECF No. 528-2)) that ZF Germany had no involvement in the content of the documents. (JS at 3 (citing Goodman Decl. ¶¶ 11, 20)). Mr. Goodman also attested that only domestic ZF employees were present at the meeting with NHTSA; no representative or employee of ZF Germany told any ZF domestic entity what to say in the presentations or otherwise controlled the presentations; and, the corporate logos and copyright information on the presentations "merely reflect the Domestic ZF Entities' standard practice, which included the use of those

---

[2]    The ZF Defendants include four domestic ZF entities as well as ZF Germany. (JS at 28).

marks, when preparing presentations." (Id. at 29-31 (citing Goodman Decl. ¶¶ 11-24; Medley Decl. ¶¶ 5, 6)).

Defendant also explains that Mr. Goodman's statement in an earlier declaration relating to ZF Germany having "only limited oversight over ZF's domestic entities['] communications with NHTSA," was made "without reference to any particular presentation or communication." (Id. at 33). It also contends that "lest there be any doubt as to the 2020 'limited oversight statement,' Mr. Goodman's more recent testimony confirms that ZF [Germany] had *no* involvement in the three specific presentations at issue in this motion." (Id. at 46 (emphasis in original) (citing Goodman Decl. ¶¶ 11, 11(f), 20; Medley Decl. ¶ 5)). Defendant further submits that even if ZF Germany did exercise "limited oversight" over the three presentations, such oversight fails to meet the high bar required to show that ZF Germany purposefully directed activities toward the United States. (Id. at 46-47).

Defendant notes that it also previously submitted the declaration of Michael Way ("Way Decl." (ECF No. 209-5)), in which Mr. Way also explained that ZF Germany does not exercise control over the day-to-day activities of any of the U.S.-based entities, and that the U.S.-based entities "are responsible for making their own pricing decisions, developing their own customer relationships, coordinating shipment of their own products, and setting their own strategy." (JS at 34 (citing Way Decl. ¶ 13)). Defendant asserts that -- other than their reliance on the authorship and copyright mark on the presentations -- plaintiffs have failed to offer any evidence contradicting any of defendant's declarants' sworn statements. It also notes that in connection with ruling on defendant's first motion to dismiss, the District Judge already considered Mr. Goodman's statement regarding "limited oversight," and nevertheless "denied jurisdiction without the need for discovery," and contends that plaintiffs fail to explain here how ZF Germany's "'limited oversight' would confer personal jurisdiction or otherwise affect the outcome of ZF's motion to dismiss." (Id. at 45-46).

Defendant argues that if the Court accepted plaintiffs' "generic speculation" that ZF Germany "would want to 'protect[]' its 'investment' in the U.S. Subsidiaries," this "would entitle jurisdictional discovery in every parent-subsidiary relationship." (Id. at 3-4).

More specifically, defendant states there are three reasons to deny plaintiffs' request for jurisdictional discovery:

First, plaintiffs' allegations that ZF Germany controlled communications relating to the subject defect on behalf of the entire corporate family, "are the same as what Judge Kronstadt rejected in the prior motion to dismiss," and were based -- as here -- on the copyright mark on the NHTSA presentations. (Id.). At that time, the District Judge found that plaintiffs' allegations "[fell] short of establishing purposeful direction" by defendant, and determined that the Court did not need jurisdictional discovery. (Id. at 3 (citation omitted), 28). Defendant notes that the District Judge acknowledged that jurisdictional discovery may be appropriate to resolve any doubts over the Court's jurisdiction over a foreign entity, but did not identify any such doubts with respect to ZF Germany; in contrast, the District Judge did find such discovery warranted with respect to a separate foreign defendant. (Id.).

Second, the District Judge noted that jurisdictional discovery "is 'appropriately granted where pertinent facts bearing on the question of jurisdiction are controverted or where a more satisfactory showing of the facts is necessary.'" (Id. at 4-5 (citing ECF No. 396 at 50)). Defendant states that plaintiffs "ignore this standard," as their only basis for jurisdictional discovery "stems from the aforementioned copyright marks" and, under the relevant case law, a company's "mark or logo *cannot be used* to establish jurisdiction." (Id. at 5 (emphasis in original)). Additionally, as confirmed by Mr. Goodman, the copyright mark and corporate name on the title page "were the result of standard corporate practice that employees of the domestic ZF entities . . . implemented when creating the presentations using the template 'master slides,' and the 'presentations were prepared and approved exclusively by employees of the domestic ZF entities,' and not by ZF [Germany]." (Id.).

Third, defendant argues that any question as to the need for jurisdictional discovery should be decided by the District Judge "concurrently with ZF's motion to dismiss -- just as he did last time." (Id. (citation omitted)). Defendant suggests three possible scenarios, "the first two of which do not require jurisdictional discovery": (1) the District Judge could find again that plaintiffs' allegations do not establish jurisdiction and grant the motion to dismiss; (2) he could conclude that plaintiffs' allegations do establish jurisdiction and deny the motion without the need for discovery; or (3) "he could defer that portion of ZF's motion to dismiss pending a period of jurisdictional discovery, and set the discovery and briefing that may be required as to the Rule 12(b)(2) issues." (Id.). It argues that reserving the question of jurisdictional discovery for the District Judge "is the most efficient path forward for both the parties and the Court." (Id. at 51-51).

Defendant argues, therefore, that because the District Judge can resolve the motion to dismiss "without the requested jurisdictional discovery, it follows that such discovery is not relevant at all." (Id. at 50). It states that even assuming the discovery had "tangential relevance," it is not proportional to the needs of the case. (Id. (citing Fed. R. Civ. P. 26(b)(1)). With respect to the Rule 26 standards for proportionality, defendant contends that the parties possess equal access to information underlying the three presentations containing the copyright mark and the explanation as to why those presentations bore that mark; it would be burdensome to identify custodians, collect communications in Europe, negotiate search terms, and "search and translate the documents -- potentially in German -- *all with the goal of proving a negative* (*i.e.,* that a German great-grandparent company with thousands of employees did not control the content of the presentations)"; plaintiffs inflate the amount in controversy; defendant's assets and revenue are not relevant to whether it is subject to jurisdiction in this Court; and the issues at stake in this litigation are not implicated by plaintiffs' requested discovery, which is unrelated to their substantive allegations concerning airbag safety. (Id. at 50-51 (emphasis in original)).

In their Supplemental Memorandum, plaintiffs respond that if ZF Germany "contemporaneously authorized the transmittal to NHTSA of one or more of the three misleading PowerPoint presentations, that conduct was indisputably 'directed' at the United States and supports the Court's exercise of personal jurisdiction over ZF Germany." (Pls.' Supp'l Mem. at 1). They also assert that if ZF Germany "had no involvement," then it should not have any "contemporaneous drafts of the presentations, or emails that comment on the underlying meetings." (Id.). They suggest that "[i]n that case, an agent of ZF Germany can easily certify that the company conducted a reasonable search and found no responsive documents." (Id.). Plaintiffs state that they asked for such a certification, but defendant "has not provided it"; they conclude, therefore, that defendant's refusal thus "confirms [ZF Germany] is withholding responsive documents covered by Plaintiffs' motion." (Id. (citing Fed. R. Civ. P. 34(b)(2)(C))). They submit the Court should compel ZF Germany to either certify it has no documents, or produce any responsive documents. (Id.).

Plaintiffs also suggest that none of the declarants relied on by defendant (a) "remotely suggests a rogue employee of a domestic subsidiary added ZF Germany's corporate name without the appropriate authorization from ZF Germany to do so"; (b) denies that ZF Germany claims ownership of the content of the presentations through the copyright mark bearing its name; or (c) denies that ZF Germany "contemporaneously received and reviewed drafts of the three deceptive presentations before they were sent to NHTSA." (Id. at 2-3). They state that "these witnesses primarily testify about their individual subjective intent when drafting presentations," which "is not relevant to the parties' jurisdictional dispute"; and "use[] suspicious caveats that strongly indicate ZF Germany did, in fact, make comments on the presentations" (id. (stating, for instance, that ZF Germany "did not draft, edit, or approve the *substantive* content *that I added* to the slides when preparing the February 5, 2016, July 19, 2016, or March 8, 2018 presentations that I created using these master slides" (emphases in original); or stating "that the Domestic ZF companies had responsibility for 'the substantive decisions' relating to potential EOS [electrical overstress]")). Plaintiffs submit, therefore, that the declarants "lack a complete view of ZF Germany's involvement in these presentations" and their proffered testimony "does not support ZF Germany's argument that it 'had no involvement in the three specific presentations at issue in this motion.'" (Id. at 4).

Finally, plaintiffs also argue that the District Judge's prior decision on the motion to dismiss "did not decide this motion," as plaintiffs did not previously allege that the presentations identified ZF Germany as the corporate author, and because the motion was granted as to the ZF Defendants because plaintiffs had grouped all of the ZF Defendants together as "ZF TRW," which is comprised of seven distinct corporate entities. (Id. at 5). They also contend that this Court's previous order relating to "ZF's second motion to stay discovery," found that plaintiffs' amended complaint "includes several changes to deal with the group pleading issue," and specifically stated that "'there is no clear showing that the forthcoming motion to dismiss will be granted with prejudice' in light of 'the more detailed amended allegations.'"[3] (Id. (quoting ECF No. 517 at 4)).

Defendant replies that its submitted declarations confirm ZF Germany's lack of involvement in the three presentations at issue. (Def't's Supp'l Mem. at 2). It asserts that plaintiffs "offer no evidence that contradicts the declarations" and "only repeat their reliance on the copyright marks and slide headers." (Id.). As such, "the uncontroverted evidence shows that jurisdictional discovery is unnecessary." (Id. at 3 (citing cases denying jurisdictional discovery where plaintiff failed to offer evidence contradicting or undercutting the sworn declarations provided by the defendant)).

Defendant further asserts that in the face of the clear law, plaintiffs' "only move is to ask for *another* declaration, this time from" ZF Germany. (Id. at 4 (emphasis in original)). It states that plaintiffs are therefore asking for someone "under oath to prove the *absence* of a fact from personal knowledge: that no employee in Germany ever looked at a single version of those presentations." (Id. (emphasis in original)). Defendant deems this request to be unnecessary and inappropriate because "this Court has sworn testimony from the relevant, involved witnesses" who actually prepared the presentations and interacted with NHTSA; plaintiffs cannot establish personal jurisdiction or entitlement to jurisdictional discovery by "questioning or disagreeing with the sworn testimony of ZF's witnesses"; and because the District Judge already concluded that "limited oversight" of the domestic entities was "insufficient to establish jurisdiction or merit jurisdictional discovery to assess the extent and nature of that oversight." (Id. at 5). It submits that "even if employees of ZF [Germany] received and/or reviewed drafts or copies of the subject presentations, it would not change the jurisdictional analysis at all." (Id.).

## Analysis

The decision whether to grant jurisdictional discovery is within the discretion of the district court. Wells Fargo & Co. v. Wells Fargo Express Co., 556 F.2d 406, 430 n.24 (9th Cir. 1977). "[W]here pertinent facts bearing on the question of jurisdiction are in dispute, discovery should be allowed." Am. W. Airlines, Inc. v. GPA Grp., Ltd., 877 F.2d 793, 801 (9th Cir. 1989). However, "[d]istrict courts in the Ninth Circuit require a plaintiff to

---

[3]    In ruling on defendants' previous motion to dismiss, the District Judge specifically noted that "when Plaintiffs allege that 'ZF TRW' was involved in designing, manufacturing and distributing the Defective ACUs, they are referring to ZF Active Safety Electronics US, and not to any of the Foreign ZF Defendants. Plaintiffs have not presently shown that the Foreign ZF Defendants purposefully directed their conduct toward the United States." (ECF No. 396 at 44).

     Additionally, the prior motion to stay filed by the "ZF Defendants" and considered by this Court, was actually filed only on behalf of the *domestic* ZF defendants -- ZF Germany was not a party to that motion. This Court's comments in its Order against those defendants -- regarding "more detailed" allegations in the amended complaint against those defendants -- were not in any way intended to apply to the question of whether plaintiffs had properly asserted jurisdiction over ZF Germany, or to be an analysis of whether jurisdictional discovery as to ZF Germany is appropriate. (ECF No. 497).

establish a 'colorable basis' for personal jurisdiction before granting jurisdictional discovery." Google Inc., v. Egger, 2009 WL 1228485, *1 (N.D. Cal. Apr. 30, 2009). A colorable basis for personal jurisdiction is "something less than a prima facie showing that requires the plaintiff to come forward with 'some evidence' tending to establish personal jurisdiction over the defendant." HaloSongs, Inc. v. Sheeran, 2017 WL 5198248, *4 (C.D. Cal. Jan. 13, 2017) (citations and some internal quotations omitted).

By contrast, "where a plaintiff's claim of personal jurisdiction appears to be both attenuated and based on bare allegations in the face of specific denials made by the defendants, the Court need not permit even limited discovery." Pebble Beach Co. v. Caddy, 453 F.3d 1151, 1160 (9th Cir. 2006); see also Getz v. Boeing Co., 654 F.3d 852, 860 (9th Cir. 2011) (finding denial of discovery appropriate when plaintiffs "fail[ed] to identify any specific facts, transactions, or conduct that would give rise to personal jurisdiction" and offered only "purely speculative allegations of attenuated jurisdictional contacts"). Moreover, jurisdictional discovery need not be allowed where the request amounts to a "fishing expedition." Johnson v. Mitchell, 2012 WL 1657643, *7 (E.D. Cal. May 10, 2012) (citation omitted); see also Boschetto v. Hansing, 539 F.3d 1011, 1020 (9th Cir. 2008) (affirming denial of request for jurisdictional discovery "based on little more than a hunch that [discovery] might yield jurisdictionally relevant facts"); Butcher's Union Local No. 498, United Food & Commercial Workers v. SDC Inv., Inc., 788 F.2d 535, 540 (9th Cir. 1986) (upholding denial of request for jurisdictional discovery where plaintiffs stated only that they "believed" discovery would enable them to demonstrate sufficient California contacts to establish personal jurisdiction); Videx, Inc. v. Micro Enhanced Tech., Inc., 2012 WL 1597380, *2 (D. Or. May 4, 2012) (denying jurisdictional discovery "[i]n light of [plaintiff's] purely speculative allegations of attenuated jurisdictional contacts").

First, plaintiffs' assertion that this Motion is "consistent" with this Court's March 21, 2022, statements at a status conference is unpersuasive. Although this Court did indicate that plaintiffs would have to wait until there is a live complaint against ZF Germany before pursuing jurisdictional discovery against it, it also clearly indicated that *absent an agreement* to produce jurisdictional discovery (and there has been no such agreement), plaintiffs would *first* be required to make a proper showing that such discovery is warranted in order to assert jurisdiction against ZF Germany (or others) in their amended complaint. (ECF No. 425 at 13:22-14:14). That is, plaintiffs would have to establish a "colorable basis" for personal jurisdiction, as well as the existence of "pertinent facts bearing on the question of jurisdiction [that] are controverted or . . . [a finding that a] more satisfactory showing of the facts is necessary" for the District Court to find, in connection with ZF Germany's pending motion to dismiss, that jurisdictional discovery is warranted.

Plaintiffs are seeking a ruling from this Court that jurisdictional discovery is warranted at this time. For purposes of this Motion, the Court will generally consider whether plaintiffs have demonstrated in their Motion that there are pertinent controverted facts bearing on the question of jurisdiction, or whether a more satisfactory showing of the facts is necessary.

Plaintiffs' evidence that they argue tends to establish the need for jurisdictional discovery consists of the copyright mark attributed to ZF Germany in the footer of all three of the NHTSA presentations, and the fact that ZF Germany's corporate name appears on the title page of two of the three presentations. (JS at 8 (citing Exs. 2, 3, 4)). They conclusorily allege that these marks represent "clear hallmarks of ZF Germany's approval and control of the contents of these misleading presentations." (Id. at 8-9). These appear to be much the same allegations previously considered by the District Judge in connection with ZF Germany's previous motion to dismiss, and for which the District Judge did not find that personal jurisdiction had been sufficiently alleged, and no reason to order jurisdictional discovery.

In connection with its currently pending motion to dismiss, defendant produced declarations from a number of ZF domestic employees (ECF Nos. 528-2 ("Goodman Decl."), 528-3 ("Way Decl."), 528-4 ("Medley Decl.")),

who have explained, among other things, how those marks came to be included on those presentations. Mr. Goodman, for instance, represents that the copyright mark and the corporate name on the title of two of the presentations were the result of creating the presentation using "template 'master' slides"[4] in PowerPoint. (ECF No. 528-2 ¶ 11). He further explains that the copyright mark and corporate name were not included to indicate any role by ZF Germany "in influencing or directing the content of those presentations," which "were prepared and approved exclusively by employees" of the domestic ZF entities. (Id.). He asserts that ZF Germany "played no such role." (Id.). Mr. Goodman also clarified that ZF Germany "exercises only limited oversight over ZF's domestic entities' communications with NHTSA *and did not exercise any oversight over the content of the three presentations . . . .*" (Id. ¶ 26 (emphasis added)).

The subject declarations clearly refute any involvement by ZF Germany with respect to the three presentations, and plaintiffs' speculation that certain wording is "suspicious" is without any evidentiary support. Similarly, plaintiffs' speculation that defendant's interest in protecting its "very recent, and very large investment" in the companies that manufacture the subject ACU means that ZF Germany must have taken a "hands-on role in communications with an important regulator about a key product in its portfolio" is without evidentiary support or basis in law.

Finally, plaintiffs' suggestion that no declarant denied that ZF Germany claims ownership of the content of the presentations, or denies that ZF Germany "received and reviewed drafts," thereby suggesting a greater level of involvement, is again nothing but pure speculation without an evidentiary foundation. Moreover, even if one or more employees of ZF Germany received and reviewed drafts of the presentations, there simply is no evidence that ZF Germany provided any input into the presentations themselves or purposefully directed activities aimed at the United States. As such, no evidence has been presented to this Court that controverts the statements made in the witness declarations.

The facts and arguments presented in the Motion are "both attenuated and based on bare allegations in the face of specific denials made by defendant." The Court finds, therefore, that plaintiffs have not shown this Court a colorable basis for jurisdictional discovery as to ZF Germany, and/or that the facts presented in the declarations in opposition to the Motion are controverted, or need further development.

On this record, plaintiffs' Motion (ECF No. 536) is **denied**.

IT IS SO ORDERED.


cc:     Counsel of Record


Initials of Deputy Clerk _____ ch _____

---

[4]    As Mr. Goodman explains, "'master' templates . . . generate empty slides with pre-set formatting." (ECF No. 528-2 ¶ 11).