# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

| | |
|---|---|
| IN RE: ARC AIRBAG INFLATORS PRODUCTS LIABILITY LITIGATION | MDL No. 3051<br><br>Case No. 1:22-md-03051-ELR<br><br>District Judge Eleanor L. Ross |

# MEMORANDUM OF LAW IN SUPPORT OF
# AUDI AKTIENGESELLSCHAFT'S MOTION TO DISMISS PLAINTIFFS' CONSOLIDATED CLASS ACTION COMPLAINT FOR LACK OF <u>PERSONAL JURISDICTION AND FAILURE TO STATE A CLAIM</u>

# TABLE OF CONTENTS

**Page**

INTRODUCTION ...................................................................................1

FACTUAL BACKGROUND .................................................................4

    I.     Plaintiff Jacinto's Alleged Experience ..................................4

    II.    Jacinto's Jurisdictional Allegations as to AUDI AG ............6

    III.   AUDI AG Is a German Entity That Operates in Germany .................8

LEGAL STANDARD .........................................................................10

ARGUMENT ......................................................................................13

    I.     The Court Lacks General Jurisdiction over AUDI AG Because It Is Not "At Home" in Virginia. ..........................................14

    II.    The Court Lacks Specific Personal Jurisdiction Over AUDI AG Because AUDI AG Lacks the Requisite "Minimum Contacts" with Virginia. ...............................................................14

          A.    The CCAC Fails to Allege Any Conduct by AUDI AG in or Directed to Virginia, Much Less "Purposeful Availment" ...........................................15

          B.    Jacinto's Claims Do Not Arise Out of or Relate to Any (Nonexistent) Activity by AUDI AG in Virginia .....................19

          C.    The Contacts of VWGoA or AoA, LLC Cannot Be Imputed to AUDI AG, a Distinct, Foreign Corporate Entity ...........................................21

          D.    The Exercise of Personal Jurisdiction Over AUDI AG Would Offend Traditional Notions of Fair Play and Substantial Justice ...................................22

    III.   Jacinto Does Not State a Claim Against AUDI AG (F.R. Civ. P. 12(b)(6)) .............................................................23

CONCLUSION ..................................................................................25

i

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Andrews v. Shandong Linglong Tyre Co., Ltd.*,
   2022 WL 2484544 (E.D. Va. July 6, 2022).......................................................19

*Asahi Metal Indus. Co. v. Superior Ct.*,
   480 U.S. 102 (1987)................................................................................13, 23

*Bennett v. OmniSource Corp.*,
   2015 WL 6743866 (W.D. Va. Nov. 4, 2015) ....................................................21

*BNSF Ry. v. Tyrrell*,
   137 S. Ct. 1549,1559 (2017)..........................................................................14

*Burger King Corp. v. Rudzewicz*,
   471 U.S. 462 (1985)......................................................................................15

*Butler Auto Recycling, Inc. v. Honda Motor Co. (In re Takata Airbag
   Prods. Liab. Litig.)*,
   524 F. Supp. 3d 1266 (S.D. Fla. 2021) ............................................................11

*Catalyst Pharms., Inc. v. Fullerton*,
   748 Fed. Appx. 944 (11th Cir. 2018)................................................................12

*In re Celotex Corp.*,
   124 F.3d 619 (4th Cir. 1997) ..........................................................................19

*Colt Defense LLC v. Heckler & Koch Defense, Inc.*,
   2004 WL 7350327 (E.D. Va. Oct. 22, 2004)................................................14, 21

*Consulting Eng'rs Corp v. Geometric Ltd.*,
   561 F.3d 273 (4th Cir. 2009) ......................................................................12, 22

*Del Valle v. Trivago GMBH*,
   56 F.4th 1265 (11th Cir. 2022) ........................................................................12

*In re Ethicon Physiomesh Flexible Composite Hernia Mesh Prods. Liab. Litig.*,
2024 WL 3811994 (N.D. Ga. Aug. 13, 2024) ...................................................11

*FN Hertsal S.A. v. Sirketti*,
2024 WL 4255343 (E.D. Va. Sep. 20, 2024) ...................................................16

*Gatekeeper Inc. v. Stratech Systems, Ltd.*,
718 F. Supp. 2d 664 (E.D. Va. 2010) ...............................................................19

*Goodyear Dunlop Tires Operations, S.A. v. Brown*,
564 U.S. 915 (2011)...............................................................................12, 14

*Grizzard v. LG Chem Ltd.*,
641 F. Supp. 3d 282 (E.D. Va. 2022) ..........................................................22, 23

*Hanson v. Denckla*,
357 U.S. 235 (1958)..........................................................................................16

*Helicopteros Nacionales de Colombia, S.A. v. Hall*,
466 U.S. 408 (1984)..........................................................................................16

*J. McIntyre Mach., Ltd. v. Nicastro*,
564 U.S. 873 (2011)...................................................................................19, 22

*Louis Vuitton Malletier, S.A. v. Mosseri*,
736 F.3d 1339 (11th Cir. 2013) .................................................................11, 15

*Noble Sec., Inc. v. MIZ Engineering, Ltd.*,
611 F. Supp. 2d 513 (E.D. Va. 2009) ........................................................13, 17

*Pollo Compestre, S.A. de C.V. v. Campero, Inc.*,
2018 WL 10436602 (E.D. Va. Dec. 21, 2018)................................................16

*Rush v. Savchuk*,
444 U.S. 320 (1980)..........................................................................................17

*Simone v. VSL Pharamaceuticals, Inc.*,
2017 WL 658711 (D. Md. Feb. 16, 2017)........................................................16

*SkyHop Techs., Inc. v. Narra*,
58 F.4th 1211 (11th Cir. 2023) ........................................................................11

*Snow v. DirecTV, Inc.*,
   450 F.3d 1314 (11th Cir. 2006) ............................................................13

*In re Takata Airbag Prods. Liab. Litig.*,
   396 F. Supp. 3d 1101 (S.D. Fla. 2019) ...............................2, 12, 18, 21

*Virginia Health Corp. v. Virgin Enters. Ltd.*,
   393 F. App'x 623 (11th Cir. 2010) ....................................................11

*Waite v. All Acquisition Corp.*,
   901 F.3d 1307 (11th Cir. 2018) ....................................................14, 15

*Walden v. Fiore*,
   571 U.S. 277 (2014) .......................................................................16, 23

*Wallace v. Yamaha Motors Corp. U.S.A.*,
   2022 WL 61430 (4th Cir. Jan. 6, 2022) ...............................................20

*Zanakis v. Scanreco, Inc.*,
   2019 WL 2211872 (S.D. Fla. Feb. 6, 2019) ........................................13

## Other Authorities

Fed. R. Civ. P. 8 ......................................................................................24

Fed. R. Civ. P. 9(b) .................................................................................24

Fed. R. Civ. P. 12(b)(1)............................................................................1

Fed. R. Civ. P. 12(b)(2)............................................................................1

Fed. R. Civ. P. 12(b)(6)........................................................................1, 23

Pursuant to Federal Rules of Civil Procedure 12(b)(1), 12(b)(2), and 12(b)(6), Specially Appearing Defendant Audi Aktiengesellschaft ("AUDI AG") respectfully submits this Memorandum in Support of its Motion to Dismiss Plaintiffs' Consolidated Class Action Complaint ("CCAC") (ECF 157).[1]

## INTRODUCTION

Eva Jacinto is the only plaintiff in this MDL proceeding who purports to bring claims against AUDI AG, a company incorporated under the laws of Germany with its principal place of business in Ingolstadt, Germany. She alleges she bought a used Audi A3 from an authorized Audi dealership in Rancho Mirage, California and that she somehow "overpaid" for her car because (she alleges) it was equipped with a defective airbag inflator manufactured by ARC Automotive, Inc. ("ARC"). Based on this alleged transaction in California with an independent dealership, Jacinto seeks to sue AUDI AG—the German manufacturer of the vehicle who neither imported nor distributed the vehicle in the United States, nor sold it to the dealership or Jacinto—in Virginia.

Jacinto's claims against AUDI AG should be dismissed for lack of personal jurisdiction. AUDI AG is not found anywhere in the United States. Declaration of Magnus Weiss ("Weiss Dec.") ¶ 5. Volkswagen Group of America, Inc.

---

[1] On December 4, 2024, AUDI AG was served with summons and the CCAC pursuant to the Hague Convention.

("VWGoA")—an indirect subsidiary of Volkswagen Aktiengesellschaft ("VWAG")—is the importer and distributor of the vehicle that Ms. Jacinto purchased used from a third-party Audi dealership, which in turn bought the vehicle from an unknown third party. *Id*. ¶¶ 14, 16.

Moreover, although Jacinto allegedly bought her used vehicle in California, she chose to file against AUDI AG in the Eastern District of Virginia. This MDL Court has jurisdiction only if the transferor court does (it does not). Here, the CCAC acknowledges AUDI AG is incorporated and headquartered in Germany, so general personal jurisdiction does not exist in Virginia (or any other state, for that matter). Plaintiffs concede AUDI AG does not reside in Virginia, or anywhere else in the United States. CCAC ¶ 131.

Instead, Jacinto merely attempts to lump AUDI AG together with other U.S. entities by using generalized terms such as "Audi" and "Audi Defendants," even though federal courts have appropriately rejected this maneuver as an improper basis for exercising personal jurisdiction over non-U.S. entities like AUDI AG. In *In re Takata Airbag Prods. Liab. Litig.*, 396 F. Supp. 3d 1101 (S.D. Fla. 2019), for example, the Court held that there was no personal jurisdiction over AUDI AG because they (as here) lumped AUDI AG together in pleadings with U.S. entities without specifying who supposedly did what. *Id*. at 1149.

Simply put, Jacinto's claims do not arise out of AUDI AG's (nonexistent)

contacts with Virginia. Nor do they arise from Jacinto's (apparently also nonexistent) contacts with Virginia, since she is a California resident who purchased her vehicle in California. CACC ¶ 183. Under governing Supreme Court and Virginia law, exercising personal jurisdiction over AUDI AG would not comport with notions of fair play and substantial justice. The Court may not impose the heavy burden of litigating in a foreign court on AUDI AG and offend German sovereignty, particularly when the transferor court has no concrete interest in the dispute.

In addition, and in the alternative, Jacinto's claims against AUDI AG are subject to dismissal for the reasons discussed in the OEM Defendants' Omnibus Motion to Dismiss (ECF 181) and Audi of America, LLC's ("AoA, LLC's") Motion to Dismiss (ECF 184). Jacinto pleads no facts specific to AUDI AG, instead again resorting to impermissible group pleading. AUDI AG did not issue and does not administer the New Vehicle Limited Warranty ("NVLW") that accompanied Jacinto's vehicle when it was sold to its original owner. VWGoA, the exclusive U.S.-based importer of Volkswagen and Audi brand vehicles into the United States, administers the warranty, and independent dealerships (who themselves have contractual relationships with VWGoA) perform the work. A warranty is a contract. AUDI AG cannot have breached a contract to which it was not a party.

## FACTUAL BACKGROUND

### I.     Plaintiff Jacinto's Alleged Experience

Plaintiff Eva Jacinto resides in Los Angeles, California. CCAC ¶ 186. She claims that she purchased a used 2016 Audi A3 on or about June 26, 2018 from Desert European Motorcars in Rancho Mirage, California that she alleges was equipped with a defective airbag manufactured by ARC. *Id*. However, Jacinto does not allege that she has experienced any concern with her vehicle's airbag.

Jacinto first brought suit against AUDI AG on May 24, 2022 in the action captioned *Britton v. ARC Automotive, Inc.*, No. 3:22-cv-03053 (N.D. Cal.). *Britton* was transferred to this Court under the MDL Transfer Order issued on January 6, 2023. (N.D. Cal. ECF 126.) On July 10, 2023, certain Plaintiffs (including Jacinto) filed a <u>new</u> action captioned *Knapp v. Volkswagen Aktiengesellschaft, et. al.*, No. 1:23-cv-889 in the Eastern District of Virginia, apparently because one of AUDI AG's co-defendants, VWGoA, has its headquarters in northern Virginia. Jacinto, along with the other plaintiffs, dismissed the *Britton* action without prejudice on August 23, 2023. (N.D. Cal. ECF 128.) As a result, *Knapp* is the only remaining action in which AUDI AG is a defendant.

The CCAC filed in the MDL asserts claims against four Volkswagen and Audi entities: VWAG, VWGoA, AUDI AG, and AoA, LLC. Jacinto, however, asserts claims only as to AUDI AG and AoA, LLC. She complains that AUDI AG and AoA,

LLC failed to disclose the alleged defect and breached express and implied warranties relating to her used car. Jacinto alleges that she was exposed "to Audi's advertisements, promotional materials, and other public statements" and that these were "material to her decision to purchase the Class Vehicle" (CCAC ¶ 186). She fails to identify which defendant supposedly issued these (unspecified) advertisements. The fact is, it was neither AoA LLC nor AUDI AG. Weiss Dec. ¶ 14. Nor does she allege any other details, including the content of such advertisements, when she was exposed to them, or how often. Plaintiff further alleges that her vehicle was covered by a written warranty, although she does not specify who issued the warranty. But, again, it was not AoA LLC nor AUDI AG.

Based on these conclusory allegations, Jacinto asserts claims against AUDI AG under California law for fraudulent omission and concealment, unjust enrichment, breach of express and implied warranty, and violation of the Song-Beverly Act, the Consumer Legal Remedies Act, and the Unfair Competition Law. ECF 157-1 at 98-133. She purports to represent a putative class of consumers who purchased certain Audi vehicles with purportedly defective airbag inflators.[2] Notably, none of the other 114 named plaintiffs in the action claims to have bought an Audi, and there is no Audi plaintiff from Virginia. CACC at *passim*.

---

[2] The putative Audi class vehicles are 2015-2020 Audi A3s, 2015-2020 Audi S3s, and 2017-2020 Audi RS3s. ECF 157-2 at p. 56.

## II.    Jacinto's Jurisdictional Allegations as to AUDI AG

The sprawling CCAC has very little to say about AUDI AG. In its 1,200 pages, the CCAC contains just two factual allegations specific to AUDI AG: (1) that "it is incorporated under the laws of Germany and maintains its principal place of business in Germany" (*id.* ¶ 131); and (2) that it "maintains the trademark over the name Audi and the four interconnected rings that form its symbol/logo" (*id.* ¶ 136). While both are true, neither allegation has anything to do with Virginia (or anywhere else in the U.S.), and neither confers personal jurisdiction over AUDI AG here.[3]

The CCAC resorts to boilerplate allegations that the "Volkswagen Group" "designs, develops, manufactures, and/or sells Volkswagen and Audi automobiles and the replacement component parts for these vehicles, such as replacement ARC inflators, in each state and territory of the United States, including New Jersey." CCAC ¶ 133. Plaintiffs expressly (and incorrectly) define the term "Volkswagen Group" to refer to VWAG and VWGoA, so this allegation does not address AUDI AG's activities (of which there are none in the United States). *Id.*; *see also* Weiss

---

[3] AUDI AG registered its trademarks with the U.S. Patent and Trademark Office to prevent misappropriation of its brand and intellectual property by U.S. actors. Weiss Dec. ¶ 13. AUDI AG licenses its trademarks to VWGoA. *Id.* If such were sufficient to convey specific jurisdiction over AUDI AG in Virginia, *any* non-U.S. entity that registered a trademark with the USPTO would be subject to specific jurisdiction in Virginia, regardless of any nexus between the trademark registration and the claims asserted. Of course, that is not the law. *See infra.* p. 16.

Dec. ¶ 6.

Similarly, the CCAC alleges that the "Volkswagen Defendants … deliver their products into the stream of commerce with the expectation that they will be purchased by consumers," "purposefully avail themselves of the laws of each state and territory of the United States," and "receive financial benefit and profits as a result of designing, manufacturing, testing, marketing, distributing, storing, and/or selling the Class Vehicles." CCAC ¶ 137. Once again, these impermissible group pleading allegations fail to specify which entity performed which of these activities (or where). Further, the CCAC expressly (and again, incorrectly) defines the term "Volkswagen Defendants" to mean the same thing as "Volkswagen Group"—VWAG and VWGoA—so these allegations say nothing about AUDI AG. CCAC ¶ 135.

The remaining allegations in the CCAC concern AUDI AG's co-defendants, not AUDI AG. For example, Jacinto alleges that VWAG "ships all vehicles made overseas" to the United States—including Plaintiff's 2016 Audi A3. *Id*. ¶ 136. Although this allegation is factually incorrect—as discussed below, VWGoA (an indirect subsidiary of VWAG) is the exclusive importer of Audi vehicles to the United States—it correctly concedes that *AUDI AG* did not ship Jacinto's or other Audi vehicles to the United States. The CCAC also alleges that AoA, LLC imports and distributes Audi brand vehicles in the United States." CCAC ¶ 132. This allegation, too, is wrong: AoA, LLC, does not import, sell, distribute or service Audi

vehicles in the United States, and has not engaged in such activities in the past. Dkt. 184-2 at ¶ 7. Rather, as discussed below, those activities are performed by VWGoA, doing business as "Audi of America, Inc." Thus, the CCAC concedes that *AUDI AG* does not import or distribute Audi-branded vehicles in the United States. AUDI AG does not even have a direct corporate relationship with VWGoA. Weiss Dec. ¶ 16.[4]

Finally, Jacinto alleges that she was exposed (presumably in California) to "Audi's advertisements, promotional materials and other public statements" and became "aware" (again, presumably in California) of "Audi's uniform and pervasive marketing message that its vehicles are safe and dependable, which was material to her decision to purchase the Class Vehicle." CCAC ¶ 186. She fails to identify which defendant was responsible for the advertisements, promotional materials, and other public statements. Such statements could only have been made, if at all, by VWGoA or independent dealerships who sell the vehicles to consumers and have the right to market and sell such vehicles. Weiss Dec. ¶ 14. It certainly was not AUDI AG, which does not advertise, market or otherwise promote Audi vehicles in the United States, whether new or used. Weiss Dec. ¶ 6.

## III.    AUDI AG Is a German Entity That Operates in Germany

AUDI AG is organized and exists under the laws of the Federal Republic of

---

[4] VWGoA is an indirect subsidiary of VWAG. AUDI AG is a wholly owned subsidiary of VWAG. *See* Ex. 1.

Germany, and its principal place of business is in Germany. Weiss Dec. ¶ 4. It is not incorporated in or registered to do business in Virginia (or anywhere else in the U.S.). *Id.* ¶ 5. AUDI AG does not design or manufacture Audi vehicles in the US. *Id*. ¶ 6. AUDI AG does not import or sell vehicles in the United States, nor does it implement any distribution system, marketing strategy, or marketing campaign for Audi vehicles, or maintain a dealer network, in the United States. *Id.* AUDI AG does not have corporate offices, employees, or real estate in Virginia. *Id.* ¶¶ 9-11.

To the contrary, VWGoA is the exclusive entity that imports, distributes, markets, advertises, and sells AUDI AG-manufactured vehicles in the United States. *Id.* ¶ 14. While VWGoA *does business as* "Audi of America, Inc.," this is not a separate legal entity but merely a trade name and operating unit of VWGoA. *Id.* Thus, it has no direct corporate relationship with AUDI AG. VWGoA is incorporated under the laws of New Jersey, and it is headquartered in Reston, Virginia. *Id.* ¶ 15. It is an indirect subsidiary of VWAG—not of AUDI AG. *Id.*

VWGoA purchases Audi-branded vehicles from AUDI AG, and ownership of those vehicles passes to VWGoA <u>outside the U.S</u>. *Id.* ¶ 17. VWGoA, not AUDI AG, imports Audi vehicles to the U.S. *Id.* VWGoA, in turn, sells Audi vehicles to authorized Audi dealerships, which are independent businesses that sell and lease Audi vehicles to consumers. *Id.* (Here, of course, VWGoA did not directly sell Jacinto's vehicle to the dealership from which she purchased, because it was a used

9

car.) VWGoA, not AUDI AG, holds the dealer agreements with authorized Audi dealers in the United States and determines which dealers are authorized to sell and service Audi vehicles in the United States, including in Virginia. *Id.* After purchasing the vehicles it wants from AUDI AG, VWGoA has complete and exclusive decision-making authority, control, discretion, and oversight concerning which vehicles will be distributed, marketed, and sold to dealerships in Virginia. *Id.* ¶ 19. AUDI AG has neither authority nor control over VWGoA's decisions on these issues. *Id.* ¶ 20.

VWGoA, not AUDI AG, issued the NVLW that accompanied Jacinto's vehicle when it was purchased by its original owner. Dkt. 184-2 (Declaration of Peter Green) at ¶ 8. AUDI AG does not issue or administer warranties in connection with Audi vehicles sold or leased in the United States. Weiss Dec. ¶ 6.

AUDI AG and VWGoA are entirely separate, distinct, and independent corporate business entities. *Id.* ¶ 16. VWGoA's offices, facilities, board of directors, officers, and employees are completely separate from those of AUDI AG. *Id.* ¶ 21. AUDI AG does not manage VWGoA's finances or payroll, and the companies do not share accounts. *Id.* Further, AUDI AG does not exercise day-to-day control over VWGoA or any authorized Audi dealer in the United States. *Id.*

## **LEGAL STANDARD**

To withstand a motion to dismiss for lack of personal jurisdiction, "[t]he plaintiff bears the burden of alleging sufficient jurisdictional facts to make a prima

facie case; if the defendant rebuts with contrary affidavit evidence, the plaintiff reassumes the burden." *Virginia Health Corp. v. Virgin Enters. Ltd.*, 393 F. App'x 623, 625-26 (11th Cir. 2010) (citing *United Techs. Corp. v. Mazer*, 556 F.3d 1260, 1274 (11th Cir. 2009)). To satisfy that burden, the plaintiff must produce evidence supporting jurisdiction. *Louis Vuitton Malletier, S.A. v. Mosseri*, 736 F.3d 1339, 1350 (11th Cir. 2013).

MDL courts are entitled to exercise personal jurisdiction over a defendant only to the extent the original transferor court could do so. *In re Ethicon Physiomesh Flexible Composite Hernia Mesh Prods. Liab. Litig.*, 2024 WL 3811994, at *3 (N.D. Ga. Aug. 13, 2024) ("The parties agree that Florida law applies given that the Southern District of Florida is the transferor court"); *Butler Auto Recycling, Inc. v. Honda Motor Co. (In re Takata Airbag Prods. Liab. Litig.)*, 524 F. Supp. 3d 1266, 1276 (S.D. Fla. 2021) (noting "the transferee judge has all the jurisdiction and powers over pretrial proceedings … that the transferor judge would have had"). Here, as discussed above, the relevant transferor court is the United States District Court for the Eastern District of Virginia.

Courts recognize two types of personal jurisdiction: general (all purpose) jurisdiction and specific (case-linked) jurisdiction. *SkyHop Techs., Inc. v. Narra*, 58 F.4th 1211, 1228 (11th Cir. 2023). General jurisdiction exists when a corporation's "affiliations with the State are so 'continuous and systematic' as to render [it]

essentially at home in the forum State." *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011). To exercise specific jurisdiction over a nonresident defendant, the Court (1) "must determine whether the plaintiff has alleged sufficient facts to subject the defendant to the forum state's long-arm statute" and (2) "must then decide whether the exercise of jurisdiction comports with the Due Process Clause of the Fourteenth Amendment." *Del Valle v. Trivago GMBH*, 56 F.4th 1265, 1272 (11th Cir. 2022).

Virginia has a long-arm statute that authorizes specific personal jurisdiction over a non-resident defendant to the extent permissible under the Due Process Clause of the U.S. Constitution. VA. ST. § 8.01–328.1; *Consulting Eng'rs Corp v. Geometric Ltd.*, 561 F.3d 273, 277 (4th Cir. 2009). As a result, "the statutory inquiry merges with the constitutional inquiry." *Id.* Constitutional due process requires a non-resident defendant to have "certain minimum contacts with [the State] such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *Daimler AG*, 571 U.S. at 127 (citations omitted).

Plaintiffs concede that AUDI AG is not a resident of Virginia. CCAC ¶ 131. And Courts in this Circuit "have repeatedly declined to exercise specific jurisdiction over a nonresident defendant on the basis of generalized and conclusory allegations." *In re Takata*, 396 F. Supp. 3d at 1142. *See also Catalyst Pharms., Inc. v. Fullerton*, 748 Fed. Appx. 944, 946 (11th Cir. 2018) ("[v]ague and conclusory allegations do

not satisfy" a plaintiff's burden to "make out a prima facie case of jurisdiction");
*Snow v. DirecTV, Inc.*, 450 F.3d 1314, 1318 (11th Cir. 2006) (same).

The bar for establishing jurisdiction over a non-U.S. entity is even higher. *See Zanakis v. Scanreco, Inc.*, 2019 WL 2211872, at *15 (S.D. Fla. Feb. 6, 2019) ("The unique burdens placed upon one who must defend oneself in a foreign legal system should have significant weight in assessing the reasonableness of stretching the long arm of personal jurisdiction over national borders"). The Supreme Court has instructed that "[g]reat care and reserve should be exercised when extending our notions of personal jurisdiction into the international field." *Asahi Metal Indus. Co. v. Superior Ct.*, 480 U.S. 102, 115 (1987).

Critically, each defendant's contacts with a forum state must be assessed individually. *Noble Sec., Inc. v. MIZ Engineering, Ltd.*, 611 F. Supp. 2d 513, 527 (E.D. Va. 2009) (citing *Calder v. Jones,* 465 U.S. 783, 790 (1984)). In other words, the inquiry as to whether Virginia courts have jurisdiction over *AUDI AG* must be assessed based solely on AUDI AG's contacts (or here, the utter lack thereof).

## ARGUMENT

This MDL Court lacks general personal jurisdiction over AUDI AG because it is incorporated and has its principal place of business in Germany. It lacks specific personal jurisdiction over AUDI AG because Plaintiffs have pled no facts (and none exist) establishing the requisite minimum contacts between AUDI AG and the

transferee court in Virginia.

I.    **The Court Lacks General Jurisdiction over AUDI AG Because It Is Not "At Home" in Virginia.**

General jurisdiction over a corporation is only permissible when that corporation is "essentially at home in the forum state." *Daimler AG*, 571 U.S. at 139 (quoting *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011)). The "'paradigm all-purpose forums' in which a corporation is at home are the corporation's place of incorporation and its principal place of business." *Waite v. All Acquisition Corp.*, 901 F.3d 1307, 1317 (11th Cir. 2018).

As the CCAC acknowledges, AUDI AG is not "at home" in Virginia, and it is not subject to general jurisdiction there. CCAC ¶ 131; Weiss Dec. ¶ 4; *see also*, *e.g.*, *Colt Defense LLC v. Heckler & Koch Defense, Inc.*, 2004 WL 7350327, at *18 (E.D. Va. Oct. 22, 2004). The CCAC alleges no other facts that would support general jurisdiction in Virginia. *See, e.g., BNSF Ry. v. Tyrrell*, 137 S. Ct. 1549,1559 (2017) (no general jurisdiction over out-of-state railroad company that had 2000 employees and 2000 miles of track in the forum).[5]

II.    **The Court Lacks Specific Personal Jurisdiction Over AUDI AG Because AUDI AG Lacks the Requisite "Minimum Contacts" with Virginia.**

---

[5] AUDI AG is not registered to do business, has no agent for service of legal process, does not pay taxes, does not own, use, or possess any real property or have any office, factory, warehouse, research facility, and has no employees or bank accounts in Virginia.  Weiss Dec. ¶¶ 5, 7-12.

In determining specific jurisdiction, courts apply a three-part test. First, the plaintiff must demonstrate that the defendant "purposefully availed" itself of the privilege of conducting activities within the forum state. *Waite*, 901 F.3d at 1313 (quoting *Louis Vuitton, S.A. v. Mosseri*, 736 F.3d 1339, 1355 (11th Cir. 2013)). Second, plaintiffs must establish that their claims "arise out of or relate to" the defendant's contacts with the forum. *Id*. If, and only if, the plaintiff carries their burden of establishing the first two prongs, the Court next considers whether the exercise of jurisdiction would "violate traditional notions of fair play and substantial justice." *Id*. None of these prongs is satisfied here.

### A. The CCAC Fails to Allege Any Conduct by AUDI AG in or Directed to Virginia, Much Less "Purposeful Availment"

To satisfy the "purposeful availment" requirement, the plaintiff must show that AUDI AG deliberately "engaged in significant activities within a State or has created continuing obligations between [itself] and residents of the forum," such that it should foresee being brought into court there. *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985) (citations and internal quotation marks omitted).

To permit specific jurisdiction, *AUDI AG*—not some third party with whom it allegedly has a relationship—must, by its own actions, have purposefully availed itself of the privilege of conducting activities in Virginia. *Id.* at 474-75 (no specific personal jurisdiction over defendant "solely as a result of … the 'unilateral activity

15

of another party or a third person'"); *Hanson v. Denckla*, 357 U.S. 235, 253 (1958) ("the unilateral activity of those who claim some relationship with a nonresident defendant cannot satisfy the requirement of contact with the forum State"); *Walden v. Fiore*, 571 U.S. 277, 284–285 (2014) ("the relationship must arise out of contacts that the 'defendant *himself*' creates with the forum State") (emphasis in opinion); *Helicopteros Nacionales de Colombia, S.A. v. Hall,* 466 U.S. 408, 417 (1984).

The CCAC makes a total of two non-conclusory allegations regarding AUDI AG, neither of which sufficiently plead a prima facie case that it "purposefully availed" itself of the privilege of conducting activities within Virginia.  (CCAC ¶¶ 131, 136); disc. *supra* at p. 6. Neither incorporation and principal place of business in Germany nor the Audi trademark demonstrate any actions by AUDI AG in or directed towards Virginia, let alone any purposeful availment by AUDI AG of the privilege of conducting business in Virginia. Courts have repeatedly held that registering a trademark with the USPTO is insufficient to confer specific jurisdiction in Virginia. *See Simone v. VSL Pharamaceuticals, Inc.*, 2017 WL 658711, at *6 (D. Md. Feb. 16, 2017) (construing Virginia long-arm statute); *Pollo Compestre, S.A. de C.V. v. Campero, Inc.*, 2018 WL 10436602 (E.D. Va. Dec. 21, 2018); *FN Hertsal S.A. v. Sirketti*, 2024 WL 4255343, at *3 (E.D. Va. Sep. 20, 2024).

AUDI AG is not subject to specific personal jurisdiction in Virginia. It does not sell vehicles in the United States, nor does AUDI AG implement any distribution

system, marketing strategy, or marketing campaign for Audi vehicles in the United States. Weiss Dec., ¶ 6. Those activities are performed by other entities. VWGoA is the exclusive entity that imports, distributes, markets, advertises, and sells AUDI AG-manufactured vehicles in the United States. *Id.* Here, AUDI AG sold the subject Audi Q3 to VWGoA in Germany, and ownership of the vehicle passed to VWGoA in Germany. Weiss Dec. ¶ 17. VWGoA sold it to an authorized Audi dealership, which in turn sold (or leased) it to the initial purchaser. *Id.* In Jacinto's case, the fact that her used A3 was available for purchase at Desert European Motorcars in Rancho Mirage, California, has nothing to do with VWGoA (much less AUDI AG). Plainly the sale of a used Audi by an independent, third-party dealership in California cannot establish that *AUDI AG* purposefully availed itself of the protections of *Virginia* law.

As discussed above, Jacinto's generalized allegations regarding the "Volkswagen Defendants" and "Volkswagen Group" fail to plead a prima facie case regarding *AUDI AG*. First, as discussed above, group pleading is not allowed. ECF 184-1 at 7-8. Second, the "group" that Plaintiffs plead does not even include AUDI AG: the CCAC expressly defines "Volkswagen Defendants" and "Volkswagen Group" to mean VWAG and VWGoA alone. CCAC ¶¶ 133, 135. Third, to meet constitutional due process requirements, the law is clear: *each* defendant's contacts with a forum state must be assessed individually. *Noble Sec., Inc.*, 611 F.Supp.2d at 527; *Rush v. Savchuk,* 444 U.S. 320, 331-32 (1980) (rejecting attempt to attribute

one defendant's contacts to another where parties were grouped together as "defending parties"). Because (other than the fact that AUDI AG is incorporated and located in Germany) Jacinto fails to plead any allegations specific to AUDI AG, AUDI AG is properly dismissed.

Indeed, Plaintiffs' boilerplate allegations are indistinguishable from those rejected as a basis for personal jurisdiction over AUDI AG, VWAG, and other non-U.S. defendants in the *Takata* litigation. *In re Takata*, 396 F. Supp. 3d at 1148-49. There, in an MDL against both U.S. and non-U.S. automotive entities involving different airbag components and different liability theories, plaintiffs lumped together the "domestic and foreign parent corporations" and alleged that they "collectively" "engineered, designed, developed, manufactured, or installed the Defective Airbags" in the class vehicles, "approved the Defective Airbags for use in those vehicles," and "developed, reviewed, and approved the marketing and advertising campaigns designed to sell these Class Vehicles." The court held that these "generalized allegations are devoid of specificity, and thereby fail to establish that the Foreign Defendants 'purposefully availed' themselves of the privileges of conducting activity in … Virginia." *Id*.

Finally, the allegation that the "Volkswagen Defendants … delivered their products into the stream of commerce with the expectation that they will be purchased by consumers" (CCAC ¶ 137) is insufficient to plead a prima facie case

18

of personal jurisdiction over AUDI AG (or any of the other defendants, for that matter). It is well established that simply placing a product into the stream of commerce (in Germany) is not enough to establish minimum contacts (in Virginia). Instead, the defendant must have done something more to purposefully avail itself of the forum's market. *J. McIntyre Mach., Ltd. v. Nicastro*, 564 U.S. 873, 884-86 (2011); *In re Celotex Corp.*, 124 F.3d 619 (4th Cir. 1997); *Andrews v. Shandong Linglong Tyre Co., Ltd.*, 2022 WL 2484544, at *7 (E.D. Va. July 6, 2022). As to AUDI AG, the CCAC alleges nothing of the kind.

### B. Jacinto's Claims Do Not Arise Out of or Relate to Any (Nonexistent) Activity by AUDI AG in Virginia

Plaintiff has also failed to allege any activity by AUDI AG in the forum state that relates to her claims. *Gatekeeper Inc. v. Stratech Systems, Ltd.*, 718 F. Supp. 2d 664, 667-68 (E.D. Va. 2010) (specific jurisdiction is "claim-specific" and requires "each cause of action to arise from the defendant's contacts with the forum state"). The basis for Jacinto's <u>California</u> consumer protection, fraud, and breach of warranty claims are (i) that her "Audi A3 was covered by a written warranty," (ii) that she was "expos[ed] to Audi's advertisements …" and was thus "aware of Audi's uniform and pervasive marketing message that its vehicles are safe and dependable, which was material to her decision to purchase the Class Vehicle," and (iii) that "[a]t no point before Plaintiff purchased her Class Vehicle did Audi disclose that it was not safe or

19

dependable, or that it was equipped with an airbag containing a Defective Inflator." CCAC ¶ 186.

None of these allegations support personal jurisdiction over AUDI AG in Virginia. As noted, AUDI AG is not the warrantor of Jacinto's vehicle. Nor did AUDI AG advertise Audi vehicles at all in the United States. As noted, VWGoA took title to Jacinto's vehicle in Germany and then, in turn, distributed the vehicle to an authorized dealer somewhere in the U.S. Jacinto herself has no connection to Virginia: she is a California resident who purchased her vehicle in California. *Id.* Simply put, Jacinto's claims do not even arise out of ***her own*** contacts with Virginia, let alone AUDI AG's entirely nonexistent contacts.

In short, the CCAC does not allege any AUDI AG activities in Virginia, much less any that would bear in any way on Jacinto's claims, and the evidence submitted with this motion confirms that AUDI AG engaged in no claim-related activities in the U.S., in Virginia or otherwise. The Court lacks personal jurisdiction over AUDI AG. *See Bristol-Myers Squibb Co.*, 582 U.S. at 265 (holding that California courts lacked specific personal jurisdiction over the nonresident plaintiffs' claims because "all the conduct giving rise to the nonresidents' claims occurred elsewhere"); *Wallace v. Yamaha Motors Corp. U.S.A.*, 2022 WL 61430, at *4 (4th Cir. Jan. 6, 2022) (no personal jurisdiction where neither the injury nor defendant's conduct related to the forum state).

20

**C.    The Contacts of VWGoA or AoA, LLC Cannot Be Imputed to AUDI AG, a Distinct, Foreign Corporate Entity**

VWGoA and AoA, LLC are not subsidiaries of AUDI AG. Weiss Dec. ¶ 16; Dkt. 184-2 ¶ 6. Their contacts with Virginia cannot be imputed to AUDI AG. "Virginia's longstanding recognition of the independent existence of a corporate entity is a basic component of corporate law that should only be disregarded under extraordinary circumstances." *Colt Defense LLC*, 2004 WL 7350327, at *15 (citing *Cordova v. Cordova*, 64 Va. Cir. 87, 112 (Va. Cir. 2004)). As a result, imputing any jurisdictional contacts of VWGoA or AoA, LLC to AUDI AG would require evidence that AUDI AG "exercises extraordinary control" over them. *Bennett v. OmniSource Corp.*, 2015 WL 6743866, at *4 (W.D. Va. Nov. 4, 2015); *In re Takata*, 396 F. Supp. 3d at 1149-50 ("It is well established that as long as a parent and subsidiary are separate and distinct corporate entities, the presence of one of them in a forum state may not be attributed to the other").

Here, the evidence is clear that AUDI AG exercises no control whatever over VWGoA or AoA, LLC. Neither VWGoA nor AoA, LLC is a subsidiary of AUDI AG. Weiss Dec. ¶ 20; Dkt. 184-2 ¶ 6. VWGoA is a separate, distinct, and independent corporate business entity from AUDI AG with its own offices, facilities, board of directors, officers, employees, finances, payroll, bank accounts, and policies and procedures. Weiss Dec. ¶¶ 16, 21. AUDI AG does not exercise day-to-

21

day control over VWGoA or any authorized Audi dealer in the U.S. *Id.* ¶ 22.

**D.    The Exercise of Personal Jurisdiction Over AUDI AG Would Offend Traditional Notions of Fair Play and Substantial Justice**

The final prong of the test for specific jurisdiction requires that the exercise of personal jurisdiction "does not offend 'traditional notions of fair play and substantial justice.'" *J. McIntyre Mach., Ltd.*, 564 U.S. at 880 (quoting *Int'l Shoe Co.*, 326 U.S. at 316). The Court need only consider this prong if "it has determined that a defendant has purposefully availed itself of the privilege of doing business" in the forum. *Consulting Eng'rs Corp.*, 561 F.3d at 279. Because AUDI AG does not have the constitutionally required minimum contacts with Virginia, and because none of Jacinto's claims have anything to do with Virginia, the Court need not reach this prong. But to the extent the Court considers it, it would be unreasonable to exercise personal jurisdiction in Virginia over AUDI AG, a nonresident German corporation operating in Germany.

The Court considers the following factors in determining whether this requirement is met: (1) the burden on the defendant in defending the lawsuit; (2) the forum state's interest in adjudicating the dispute; (3) the plaintiff's interest in obtaining convenient and effective relief; (4) the interstate judicial system's interest in obtaining the most efficient resolution of controversies; and (5) the shared interest of the states in furthering fundamental substantive social policies. *Grizzard v. LG*

*Chem Ltd.*, 641 F. Supp. 3d 282, 292 (E.D. Va. 2022) (quoting *Jones v. Frazier*, 2009 WL 2601355, at *7 (E.D. Va. Aug. 18, 2009)). Importantly, "due process limits on the State's adjudicative authority principally protect the liberty of the nonresident defendant—not the convenience of the plaintiffs or third parties." *Id*. (quoting *Walden*, 571 U.S. at 284).

The Supreme Court has counseled that "[t]he unique burdens placed upon one who must defend oneself in a foreign legal system should have significant weight in assessing the reasonableness of stretching the long arm of personal jurisdiction over national borders." *Asahi Metal Indus. Co.*, 480 U.S. at 114. Moreover, Virginia's "legitimate interests in the dispute have considerably diminished" because Plaintiff is not a Virginia resident and did not purchase her vehicle in Virginia, and therefore Virginia does not have an interest in awarding relief in a dispute to which it has no connection. *Id*. As in *Asahi*, the exercise of personal jurisdiction over AUDI AG "would be unreasonably unfair" because of "the international context, the heavy burden on the alien defendant, and the slight interests of the plaintiff and the forum state." *Id*. at 116.

## III. Jacinto Does Not State a Claim Against AUDI AG (F.R. Civ. P. 12(b)(6))

The Court need not reach the claims against AUDI AG because AUDI AG is properly dismissed from this lawsuit for lack of personal jurisdiction. But Plaintiffs fail to state a claim against AUDI AG in any event, and the claims against AUDI AG

fail as a matter of law for the reasons set forth in the Omnibus Motion to Dismiss (ECF 181) and AoA, LLC's Motion to Dismiss (ECF 184), which AUDI AG incorporates by reference.

As the legal authorities cited in those papers establish, the CCAC fails to state a claim as to AUDI AG under Rule 8 or Rule 9(b) because it alleges no facts regarding AUDI AG's conduct and because it relies entirely on impermissible group pleading, as the paucity of citation to AUDI AG in the CCAC makes clear. *See* disc. *supra* at p. 6. Entirely absent from the CCAC are any allegations that AUDI AG made any representations to Jacinto in connection with her used car (it did not), that it engaged in any advertising or marketing in California or elsewhere in the U.S. (it did not), or that it knew of a supposed defect in the airbag inflator in Jacinto's vehicle (or any vehicle) (there is not). In point of fact, AUDI AG did none of these things, a reality that Jacinto seeks to bury using indiscriminate labels such as "Volkswagen Defendants," "Audi Defendants," and "Automaker Defendants."

Jacinto's breach of express warranty claim against AUDI AG also fails (CCAC ¶¶ 714-27). The written warranty that is the basis of Plaintiff's breach of express warranty claim was issued by "Audi of America, Inc., an operating unit of Volkswagen Group of America, Inc." ECF 184-3. Since AUDI AG is not a party to Jacinto's written warranty and made no express warranty to her, she cannot state a claim for breach against AUDI AG. Finally, for the same reasons discussed with

24

respect to AoA, LLC in its motion to dismiss, AUDI AG did not make an implied warranty of merchantability with respect to Jacinto's used car.

## CONCLUSION

For the above reasons, the Court should dismiss Plaintiffs' claims against AUDI AG for lack of personal jurisdiction. Alternatively, and in any event, the claims are also properly dismissed because they fail as a matter of law.

Dated: January 24, 2025                    Respectfully submitted,

*/s/ Livia M. Kiser*

Livia M. Kiser
Susan V. Vargas
**KING & SPALDING LLP**
633 West Fifth Street, Suite 1600
Los Angeles, CA 90071
Telephone: +1 213 443 4355
Facsimile: +1 213 443 4310
lkiser@kslaw.com
svargas@kslaw.com

Michael B. Shortnacy
**SHOOK, HARDY AND BACON L.L.P.**
2049 Century Park East, Suite 3000
Los Angeles, CA 90067
Telephone:   (424) 324-3494
Facsimile:    (424) 204-9093

*Counsel for Specially Appearing Defendant Audi Aktiengesellschaft*

25

## <u>CERTIFICATE OF COMPLIANCE WITH LOCAL RULE 5.1(B) AND 7(D)</u>

I hereby certify that this Memorandum in Support of Volkswagen Group of America, Inc.'s Motion to Dismiss Plaintiffs' Corrected Consolidated Class Action Complaint has been prepared with one of the font and point selections approved by the Court in LR 5.1(B) (Times New Roman, 14 pt.).

Dated: January 24, 2025                                    */s/ Livia M. Kiser*
                                                            Livia M. Kiser

## **CERTIFICATE OF SERVICE**

I hereby certify that on the date specified below, I caused a true and correct copy of the foregoing to be served on lead counsel for Plaintiffs via electronic mail.

Dated: January 24, 2025                    */s/ Livia M. Kiser*
                                           Livia M. Kiser