# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
### ATLANTA DIVISION

| | |
|---|---|
| IN RE: ARC AIRBAG INFLATORS PRODUCTS LIABILITY LITIGATION | MDL No. 3051 <br><br> Case No. 1:22-md-03051-ELR |

**PLAINTIFFS' MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT BAYERISCHE MOTOREN WERKE AKTIENGESELLSCHAFT'S MOTION TO DISMISS <u>PLAINTIFFS' CONSOLIDATED CLASS ACTION COMPLAINT</u>**

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ............................................................................1

RELEVANT FACTUAL BACKGROUND ........................................................2

    A.    BMW AG Holds Its Businesses out to U.S. Consumers and Regulators as a Single Entity—the BMW Group—That It Controls and Operates...........................................................................2

    B.    The U.S. Market is Vital to BMW AG's Business. ...........................4

    C.    BMW AG Purposefully and Intentionally Targets the U.S. Market Through BMW America and BMW Mfg. .........................5

    D.    BMW AG Directly Targets the United States—Including, Specifically, New Jersey and South Carolina—by Communicating with U.S. Regulators and Sending Its Products to Those States. ........7

    E.    The BMW Group Defendants' Contracts with ARC and the Airbag Module Defendants Constitute Additional Contacts with South Carolina and New Jersey..........................................................8

ARGUMENT......................................................................................................9

I.    BMW AG Purposefully Availed Itself of the Privilege of Conducting Business in New Jersey and South Carolina..............................................11

    A.    BMW AG's Contacts with New Jersey and South Carolina Are Material and Enduring. ................................................................11

    B.    BMW AG's Cited Cases Do Not Undermine the Record of Its Extensive Contacts with the Fora Here. .........................................17

II.    Plaintiffs' Claims Arise out of or Relate to BMW AG's Contacts with New Jersey and South Carolina..................................................................18

III.    The Exercise of Personal Jurisdiction over BMW AG is Reasonable.........20

IV.    In the Alternative, the Court Should Hold This Motion in Abeyance and Permit Jurisdictional Discovery. ............................................................23

CONCLUSION ..................................................................................................24

# TABLE OF AUTHORITIES

**Page**

### Cases

*Alexander v. Bayerische Motoren Werke AG*,
2020 WL 2098108 (D.S.C. May 1, 2020) ......................................................18

*Asahi Metal Indus. Co. v. Super. Ct.*,
480 U.S. 102 (1987)................................................................................12, 16

*Bullard v. Jaguar Land Rover Automotive PLC*,
2023 WL 4841610 (D.N.J. July 28, 2023)........................................13, 14, 20

*Burger King Corp. v. Rudzewicz*,
471 U.S. 462 (1985)......................................................................................12

*In re Capacitors Antitrust Litig.*,
2015 WL 3638551 (N.D. Cal. June 11, 2015) ...............................................15

*Daimler AG v. Bauman*,
571 U.S. 117 (2014)......................................................................................12

*Dawsey v. Bayerische Motoren Werke*,
2024 WL 470186 (D.S.C. Feb. 7, 2024)...................................................21, 22

*Diamond Crystal Brands, Inc. v. Food Movers Int'l, Inc.*,
593 F.3d 1249 (11th Cir. 2010) ......................................................................3

*Doherty-Heinze v. Chrisley*,
2021 WL 12149533 (N.D. Ga. Dec. 21, 2021)...............................................23

*Eaves v. Pirelli Tire, LLC*,
2014 WL 1883791 (D. Kan. May 12, 2014)...................................................17

*Emmer v. WABII Branding Inc.*,
2022 WL 22886642 (N.D. Ga. Aug. 8, 2022) ..................................................3

*Fischer v. BMW of N. Am., LLC*,
376 F. Supp. 3d 1178 (D. Colo. 2019) ...........................................................18

*Ford Motor Co. v. Mont. Eighth Jud. Dist. Ct.*,
592 U.S. 351 (2021)................................................................................18, 20

*In re German Auto. Mfrs. Antitrust Litig.*,
392 F. Supp. 3d 1059 (N.D. Cal. 2019)...................................................*passim*

## TABLE OF AUTHORITIES
### (continued)

**Page**

*J. McIntyre Machinery, Ltd. v. Nicastro*,
  564 U.S. 873 (2011)..................................................................17

*Johnson v. Chrysler Can., Inc.*,
  24 F. Supp. 3d 1118 (N.D. Ala. 2014)...................................16, 21, 22

*In re JUUL Labs, Inc. Mktg., Sales Pracs. & Prods. Liab. Litig.*,
  497 F. Supp. 3d 552 (N.D. Cal. 2020).....................................................9

*Kim v. Korean Air Lines Co., Ltd.*,
  513 F. Supp. 3d 462 (D.N.J. 2021)................................................21

*King v. Gen. Motors Corp.*,
  2012 WL 1340066 (N.D. Ala. Apr. 18, 2012)..................................16

*Lewis v. Mercedes-Benz USA, LLC*,
  530 F. Supp. 3d 1183 (S.D. Fla. 2021)....................................16, 19

*Louis Vuitton Malletier, S.A. v. Mosseri*,
  736 F.3d 1339 (11th Cir. 2013)..........................................9, 10, 20

*Madara v. Hall*,
  916 F.2d 1510 (11th Cir. 1990)....................................................10

*Metcalfe v. Renaissance Marine, Inc.*,
  566 F.3d 324 (3d Cir. 2009)...........................................................23

*Miller Yacht Sales, Inc v. Smith*,
  384 F.3d 93 (3d Cir. 2004).............................................................10

*Oliver v. Funai Corp.*,
  2015 WL 9304541 (D.N.J. Dec. 21, 2015).....................................20

*Rickman v. BMW of N. Am. LLC*,
  538 F. Supp. 3d 429 (D.N.J. 2021).........................................*passim*

*Rose v. Cont'l Aktiengesellschaft*,
  2001 U.S. Dist. LEXIS 24099 (E.D. Pa. Oct. 18, 2001) ...................18

*Rush v. Savchuk*,
  444 U.S. 320 (1980)......................................................................17

# TABLE OF AUTHORITIES
## (continued)

**Page**

*Seiz v. Quirk*,
   2013 WL 12290850 (N.D. Ga. Jan. 3, 2013) ...................................................23

*Skyhop Techs., Inc. v. Narra*,
   58 F.4th 1211 (11th Cir. 2023) ..............................................................*passim*

*Sullivan v. Hawker Beechcraft Corp.*,
   723 S.E.2d 835 (S.C. Ct. App. 2012) .............................................................23

*In re Takata Airbag Prods. Liab. Litig.*,
   396 F. Supp. 3d 1101 (S.D. Fla. 2019) .............................................................9

*Thornton v. Bayerische Motoren Werke AG*,
   439 F. Supp. 3d 1303 (N.D. Ala. 2020) ..........................................................18

*Top Gun Ammo Sales, LLC v. COF Techs., LLC*,
   2022 WL 823061 (E.D. Mo. Mar. 18, 2022) ...................................................15

*In re Volkswagen "Clean Diesel" Mktg., Sales Pracs. & Prods. Liab. Litig.*,
   2017 WL 4890594 (N.D. Cal. Oct. 30, 2017)...................................................11

*Walden v. Fiore*,
   571 U.S. 277 (2014)..................................................................................14, 15

*Williams v. Yamaha Motor Co.*,
   851 F.3d 1015 (9th Cir. 2017).........................................................................12

*Young v. F.D.I.C.*,
   103 F.3d 1180 (4th Cir. 1997).........................................................................10

*Young v. Mitsubishi Motors N. Am. Corp.*,
   2020 WL 4584391 (W.D. Wash. Aug. 10, 2020) ............................................16

## PRELIMINARY STATEMENT

This Court has specific personal jurisdiction over BMW AG, the German parent company of the U.S. BMW Defendants.[1] BMW AG purposefully availed itself of the privilege of conducting business in the relevant transferor states: New Jersey and South Carolina. BMW AG designed vehicles in Germany specifically to comply with U.S. safety regulations for the purpose of selling them in the U.S. market; it established, managed, and relied on the U.S. BMW Group Defendants in New Jersey and South Carolina to sell and distribute Class Vehicles throughout the United States; and it shipped its vehicles from Germany into those states so they could be sold to domestic U.S. consumers.

The factual record shows BMW AG's extensive connections with its domestic operations in New Jersey and South Carolina. BMW AG manages its U.S. operations and consumer interactions nationwide through its U.S. subsidiaries. Indeed, BMW America and BMW Mfg. serve as BMW AG's gateways for the marketing, manufacturing, sale, distribution, and warranty of its Class Vehicles in the United States, a critical market for BMW AG and its revenues. Given the importance of the

---

[1] Plaintiffs retain the designations used in the Corrected Consolidated Class Action Complaint ("Complaint"), Dkts. 157, 157-1, as with other capitalized terms except for the term "BMW Group Defendants" used in lieu of "BMW Defendants." Unless otherwise indicated, "¶" refers to paragraphs of the Complaint, all emphasis has been added, and all citations and internal quotation marks have been omitted. All "Ex." citations refer to the exhibits attached to the accompanying Declaration of Roland Tellis.

U.S. market to its bottom line, BMW AG purposefully designed Class Vehicles to comply with U.S. regulations and safety standards so that they could be sold in the United States. And, independent of those contacts, BMW AG ships its products directly into the United States *via New Jersey and South Carolina*. It is no surprise then that BMW AG – through its operating group the BMW Group – has "*long considered the U.S. to be [its] second home*." *See infra* Background § B.

BMW AG does not dispute these facts. Instead, it contends Plaintiffs cannot impute the jurisdictional contacts of the U.S. BMW Defendants to BMW AG. But Plaintiffs do not rely on an alter ego liability theory. Instead, BMW AG has purposefully availed *itself* of doing business in New Jersey and South Carolina, including by establishing BMW and BMW Mfg. there and conducting critical activities through those entities.

The Court should therefore deny BMW AG's motion to dismiss. Alternatively, the Court should hold the motion in abeyance and grant Plaintiffs' request for jurisdictional discovery.

## RELEVANT FACTUAL BACKGROUND

### A.    BMW AG Holds Its Businesses out to U.S. Consumers and Regulators as a Single Entity—the BMW Group—That It Controls and Operates.

BMW AG operates, conducts, and manages all its global business through a single entity—the BMW Group. *See* Ex. 1 ("BMW is a global company with a strong

presence in all relevant economic regions"); Ex. 2 (all subsidiaries use and comply with BMW Group's company-wide compliance network); Ex. 3 (member of the Board of BMW AG describing BMW Group as a single entity).[2] The BMW Group, which includes the BMW, MINI and Rolls-Royce brands, includes not only BMW AG but also BMW America and BMW Mfg. Ex. 1, Ex. 3.

Through the BMW Group, BMW AG, BMW America, and BMW Mfg. hold themselves out as a single entity to the public and to federal regulators. *See* Exs.1 & 3 (member of the Board of BMW AG repeatedly referring to BMW Group without distinguishing BMW AG from BMW America or BMW Mfg.); Ex. 4 ("the BMW Group has a nationwide footprint in the U.S"); Ex. 5 (BMW America responding to NHTSA "on behalf of BMW AG"); Ex. 6 (same); *see also* Ex. 7 ("***BMW AG*** is conducting a Voluntary Safety Recall" due to ARC inflator defect). BMW AG's employees have also served as executives for its subsidiaries, and vice versa. Ex. 9 (May 21, 2021 Press Release announcing the appointment of Sebastian Mackensen as president and CEO of BMW America, in which capacity he would "report[]

---

[2] Because BMW AG submitted "affidavit evidence in support" of its motion (*see* Dkt. 299-1 (Decl. of Ronny Löwa in Supp. of Mot. to Dismiss)), the burden "shifts back to [P]laintiff[s] to produce evidence supporting jurisdiction." *Emmer v. WABII Branding Inc.*, 2022 WL 22886642, at *4 (N.D. Ga. Aug. 8, 2022) (Ross, J.) (quoting *Diamond Crystal Brands, Inc. v. Food Movers Int'l, Inc.*, 593 F.3d 1249, 1257 (11th Cir. 2010)). Plaintiffs have done so, including through the Declaration of Roland Tellis and the attached exhibits.

directly to Pieter Niota, Member of the Board of Management of BMW AG," and disclosing that the former head of BMW America "will return to headquarters in Munich to head the German home market").

Through the BMW Group, BMW AG markets, distributes, and sells Class Vehicles in the United States, including through entities in New Jersey and South Carolina. Among those entities, BMW America, located in Woodcliff Lake, New Jersey, "has been present in the United States since 1975." Ex. 8. And "BMW Manufacturing Co., LLC [i.e., BMW Mfg.] is the BMW Group global center of competence for BMW X models and manufactures the X3, X4, X5, X6 and X7 Sports Activity Vehicles." *Id.* BMW AG closely manages and controls its subsidiaries, which do not operate independently or autonomously. *See, e.g.*, Ex. 1; Ex. 2; Ex. 9 (BMW America's CEO, who oversees marketing, sales, and distribution, reports directly to a BMW AG Board of Management member); Ex. 10 (BMW AG management meeting at BMW Mfg. to discuss business developments in the U.S. market); Ex. 11; Löwa Decl. ¶ 2.

**B.    The U.S. Market is Vital to BMW AG's Business.**

The U.S. market has been vital to BMW AG for decades, as it accounts for a large share of its global sales. Ex. 11 at 2 ("The United States was BMW's largest passenger car market in the early 1990s"); Ex. 3 (the U.S. market accounts for over 20% of the company's sales); Ex. 4 (BMW Group broke records by selling 371,346

BMW vehicles in the United States). Notably, the "BMW Group has long considered the U.S. to be [its] second home." Ex. 8. While BMW AG may design and manufacture the Class Vehicles in Germany (Löwa Decl. ¶ 12), it admits to purposefully designing the Class Vehicles to comply with U.S. regulations and safety standards. This is an important and necessary prerequisite for BMW vehicles to be sold in the United States, as opposed to other markets with different regulatory requirements. *Id.* ¶ 13; Ex. 12 (BMW X5 and X6 make worldwide debut in the United States); Ex. 13 (the release of the 2011 BMW X5). This is not surprising given that "[o]ne of the core principles of the company's philosophy is that 'production follows the market.'" Ex. 11, at 2.

To put it simply, BMW AG manufactures certain vehicles specifically so they can be sold in the United States by BMW AG's fully-owned subsidiaries that were created by BMW AG for the purpose of selling and distributing BMW AG's vehicles in the United States. But BMW AG now seeks to evade the jurisdiction of U.S. courts for defect claims related to the same cars BMW AG caused to be manufactured for U.S. consumers and sold and distributed here through its subsidiaries in New Jersey and South Carolina. Nonsense.

### C.  BMW AG Purposefully and Intentionally Targets the U.S. Market Through BMW America and BMW Mfg.

In 1975, BMW AG "established [its] presence in North America with [its] headquarters in New Jersey." Ex. 14, at 1. To "follow the market" and serve its

"special" relationship with the U.S. market, BMW AG has invested billions of dollars into its business in New Jersey and South Carolina. Ex. 3 (investing $1 billion in the growth and expansion of BMW's business in the United States); Ex. 11; Ex. 14 (investing $5 billion in South Carolina).

BMW America acts as a conduit for BMW AG's marketing and distribution of the Class Vehicles in the United States. Ex. 4 (BMW America "established to support the sales, marketing, and distribution of BMW automobiles . . . in the U.S."); Ex. 9; Ex. 14; Ex. 15 ("BMW [America] was established . . . as the United States importer of BMW luxury/performance vehicles"); *see also* Löwa Decl. ¶ 27; Compl. ¶¶ 79, 82-83. BMW America markets, advertises, warrants, and sells the vehicles it buys from BMW AG throughout the United States from its headquarters in New Jersey. *See* Löwa Decl. ¶¶ 27, 29; Compl. ¶¶ 79, 82-83.

The BMW Group Defendants established a network of distribution through authorized dealerships that flows through New Jersey and reaches throughout the United States, including both new and certified pre-owned dealerships. Ex. 15; Ex. 16. BMW America also offers multiple webpages dedicated to advertising and selling used cars to potential consumers. Ex. 16; Ex. 17.

After decades of targeting the U.S. market with vehicles manufactured in Germany, BMW AG established BMW Mfg. in South Carolina as its first full manufacturing operation outside of Germany. Ex. 4; Ex. 11, at 2; Ex. 14; Ex. 18.

BMW Mfg. is BMW AG's largest manufacturing plant worldwide and serves as the global center for training and quality control. Ex. 4 (assembles over 1,500 vehicles each day and up to 450,000 annually); Ex. 11; ¶ 78. BMW Mfg. is directly linked to BMW AG's global production and distribution network and produces most cars (including certain BMW X Model Class Vehicles) to order with parts from BMW AG. Ex. 11, at 3, 8; Ex. 18 (referring to the "BMW Group plant" that assembles vehicles in South Carolina for worldwide distribution); Ex. 8; ¶¶ 78, 82-83.

Together with its domestic subsidiaries BMW America and BMW Mfg., BMW AG designed, manufactured, assembled, tested, imported, promoted, advertised, distributed, warranted, and sold the Class Vehicles. *See* ¶¶ 78-83, 162, 190. Assembled Class Vehicles were handled and tracked by an in-house enterprise-wide computing system, which is centralized in Germany. Ex. 11, at 8. BMW Mfg. also uses an advanced 3-D program to allow engineers in Germany and production experts in South Carolina to work together and identify assembly problems. *Id.* at 9 (employees from BMW Mfg. regularly travel to Germany to collaborate).

**D.    BMW AG Directly Targets the United States—Including, Specifically, New Jersey and South Carolina—by Communicating with U.S. Regulators and Sending Its Products to Those States.**

BMW AG's contacts with New Jersey and South Carolina do not end with BMW America and BMW Mfg. Despite marketing and distributing its cars through BMW America and manufacturing them through BMW Mfg., BMW AG

communicates directly with U.S. regulators and has conducted safety recalls in the U.S.

Indeed, the recall announcement for the defective ARC inflators states "BMW AG" is "conducting a Voluntary Safety Recall" for "certain air bags from supplier ARC." Ex. 7; *see also* Ex. 5 (BMW America responding to NHTSA "on behalf of BMW AG"); Ex. 6 (same). BMW AG also directly ships its products to the United States—notably, publicly available data shows that New Jersey and South Carolina are BMW AG's top two worldwide shipping destinations, with substantial volumes of shipments sent from BMW AG into these U.S. ports. *See* Ex. 19. BMW AG also relies on its relationship with BMW America, its "exclusive United States distributor of new BMW and Mini brand vehicles," to ship Class Vehicles directly into the U.S. from Germany. Löwa Decl. ¶ 27.

### E. The BMW Group Defendants' Contracts with ARC and the Airbag Module Defendants Constitute Additional Contacts with South Carolina and New Jersey.

Finally, BMW AG also collaborated with ARC and the Airbag Module Defendants to design, develop, test, manufacture, and assemble the Defective Inflators for Class Vehicles to be sold in New Jersey, South Carolina, and elsewhere within the United States. ¶¶ 8-12, 14-15, 27, 263-68, 285. The BMW Group Defendants have contractual relationships with ARC or Airbag Module Defendants to purchase airbag modules with the intent that they be installed in South Carolina

and sold in Class Vehicles. ¶ 82. These contractual relationships are centered in South Carolina due to BMW Mfg.'s residence there, and once the vehicles are fully assembled, they are distributed out of New Jersey. *Id*.

Consistent with its obligation to design Class Vehicles in conformance with U.S. safety regulations, BMW AG knew of testing and field failures and understood the over-pressurization risks from the inflators' use of volatile ammonium nitrate. ¶¶ 9, 10, 263-69, 279-82, 308-74. But BMW AG withheld this information from consumers in the United States, including in New Jersey and South Carolina. *Id*.

## **ARGUMENT**

To defeat BMW AG's motion, Plaintiffs need only establish "sufficient facts to make out a prima facie case of jurisdiction." *Louis Vuitton Malletier, S.A. v. Mosseri*, 736 F.3d 1339, 1350 (11th Cir. 2013). The allegations and additional facts detailed above far surpass that threshold. Specifically, Plaintiffs have established specific jurisdiction over BMW AG under the New Jersey and South Carolina long-arm statutes, and exercising jurisdiction over BMW AG comports with due process.[3]

---

[3] Both New Jersey and South Carolina law apply here because they are the transferor forums, and this transferee court is sitting in diversity. *See In re Takata Airbag Prods. Liab. Litig.*, 396 F. Supp. 3d 1101, 1137 (S.D. Fla. 2019) ("[T]he transferee judge has all the jurisdiction and powers over pretrial proceedings . . . that the transferor judge would have had in the absence of the transfer."). When evaluating whether jurisdiction satisfies due process, this Court applies Eleventh Circuit law. *In re JUUL Labs, Inc. Mktg., Sales Pracs. & Prods. Liab. Litig.*, 497 F. Supp. 3d 552, 674 (N.D. Cal. 2020) (a court analyzing "federal due process" with respect to personal jurisdiction "will look to its own circuit as the source for federal law").

*Skyhop Techs., Inc. v. Narra*, 58 F.4th 1211, 1221 (11th Cir. 2023) (analyzing (1) the state long-arm statute, and (2) due process).

To determine whether the exercise of jurisdiction over BMW AG comports with due process, as well as whether the New Jersey and South Carolina long-arm statutes confer jurisdiction over BMW AG, the Court must examine:

> (1) whether the plaintiff's claims "arise out of or relate to" at least one of the defendant's contacts with the forum; (2) whether the nonresident defendant "purposefully availed" himself of the privilege of conducting activities within the forum state, thus invoking the benefit of the forum state's laws; and (3) whether the exercise of personal jurisdiction comports with "traditional notions of fair play and substantial justice."

*Louis Vuitton*, 736 F.3d at 1355.[4] Although Plaintiffs bear the burden of establishing the first two factors, BMW AG must "make a compelling case" that the third factor is not satisfied. *Louis Vuitton*, 736 F.3d at 1355. The Court resolves conflicting allegations and evidence by construing "all reasonable inferences in favor of the plaintiff." *Madara v. Hall*, 916 F.2d 1510, 1514 (11th Cir. 1990). Plaintiffs' allegations and the evidence before the Court easily satisfy all three factors.

---

[4] Because the New Jersey and South Carolina long-arm statutes both extend personal jurisdiction coextensively with the due process requirements of the United States Constitution, the analysis is effectively merged. *Miller Yacht Sales, Inc v. Smith*, 384 F.3d 93, 96 (3d Cir. 2004) ("New Jersey's long-arm statute provides for jurisdiction coextensive with the due process requirements of the United States Constitution," and noting that a "single contact that creates substantial connection with the forum can be sufficient to support the exercise of personal jurisdiction"); *Young v. F.D.I.C.*, 103 F.3d 1180, 1191 (4th Cir. 1997) (similar, for South Carolina).

## I.    BMW AG Purposefully Availed Itself of the Privilege of Conducting Business in New Jersey and South Carolina.

The purposeful availment test is satisfied where a defendant has contacts with the forum that are their "own choice and not random, isolated, or fortuitous." *SkyHop*, 58 F.4th at 1230. BMW AG availed itself of the relevant fora when it created fully owned subsidiaries for the purpose of selling BMW AG cars in the United States and when it shipped its products from Germany directly into these states.

### A.    BMW AG's Contacts with New Jersey and South Carolina Are Material and Enduring.

BMW AG has longstanding, extensive, and purposeful business contacts in the forum states.

*First*, BMW AG admits that it designs certain vehicles for compliance with U.S. regulations. Löwa Decl. ¶¶ 12-13; *see also supra* Background § B. Thus, there is nothing random or fortuitous about how BMW vehicles ultimately enter into U.S. commerce—they are designed to be sold to U.S. consumers.

BMW AG's targeting the U.S. market, and New Jersey and South Carolina within it, in this way strongly supports specific personal jurisdiction. *See In re Volkswagen "Clean Diesel" Mktg., Sales Pracs. & Prods. Liab. Litig.*, 2017 WL 4890594, at *17-18 (N.D. Cal. Oct. 30, 2017) (designing a product that purports to comply with U.S. regulations specifically targets the U.S.); *In re German Auto. Mfrs.*

*Antitrust Litig.*, 392 F. Supp. 3d 1059, 1067 (N.D. Cal. 2019) (German automakers purposely directed conduct at U.S. based on sale of millions of cars in U.S. and fact that they "designed their products for the market in the" U.S.); *id.* at 1067 n.4 (distinguishing *Williams v. Yamaha Motor Co.*, 851 F.3d 1015 (9th Cir. 2017), based on purposeful design targeting the U.S.); *Asahi Metal Indus. Co. v. Super. Ct.*, 480 U.S. 102, 112 (1987) ("designing the product for the market in the forum" is a factor that supports jurisdiction).

*Second*, BMW AG purposefully structured its corporate organization to conduct a large volume of its business in New Jersey and South Carolina. "[C]orporate relationships may be relevant to the existence of specific jurisdiction." *Rickman*, 538 F. Supp. 3d at 437 (quoting *Daimler AG v. Bauman*, 571 U.S. 117, 136-37 (2014), and collecting cases). "[C]ourts have held that corporate relationships can be used to show that the parent purposefully availed itself of the subsidiary's forum." *Id.* Plaintiffs "must show that the defendant deliberately reached out beyond its home such as by entering a contractual relationship centered in the forum." *SkyHop*, 58 F.4th at 1230; *see also Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 476 (1985) (a foreign defendant is subject to jurisdiction if it "created 'continuing obligations' between [itself] and residents of the forum").

BMW AG purposefully reached out to avail itself of the privilege of conducting business in New Jersey and South Carolina, including through its close

coordination with and dependence on the U.S. BMW Defendants. *See supra* Background § C. To strengthen its footprint in a key market, BMW AG established its prominent U.S. presence in New Jersey (BMW America) and South Carolina (BMW Mfg.), and it has used these states as hubs for the marketing, sale, manufacturing, assembly, and distribution of its vehicles, including the Class Vehicles, throughout the United States. Ex. 14; Ex. 15; Ex. 18. These significant business contacts establish purposeful availment in these fora.

In *Bullard v. Jaguar Land Rover Automotive PLC*, the foreign automakers' contacts with New Jersey included selling vehicles to a New Jersey-based distributor "with the expectation that [it] will service the North American market." 2023 WL 4841610, at *4 (D.N.J. July 28, 2023). Noting that, like here, U.S. sales formed "a relatively large portion [approximately 20%] of [Jaguar's] revenue," the court emphasized that the foreign defendants "structured their organization such that their products and revenues invariably flowed through the New Jersey forum." *Id*.; *see* Ex. 3 (the U.S. market accounts for over 20% of BMW AG's sales).

Like BMW AG's relationship with BMW America, "the UK Defendants purposefully directed the Class Vehicles into New Jersey through [Jaguar Land Rover North America] and a defect in those vehicles allegedly damaged Plaintiffs." *Bullard*, 2023 WL 4841610, at *4-5. Other cases are in accord and support jurisdiction here. *Rickman v. BMW of N. Am. LLC*, 538 F. Supp. 3d 429, 438 (D.N.J.

2021) ("Plaintiffs' allegations and its own evidence show that BMW AG has a significant relationship with BMW NA. That relationship must have entailed contacts with BMW NA in New Jersey, and thus an awareness that New Jersey was the either the gateway or focal point for BMW AG's access to the American market.").

Indeed, BMW AG has achieved significant success in the U.S. market through its business model. In 2024, the BMW Group Defendants sold 371,346 vehicles in the U.S. Ex. 4; *see also Bullard*, 2023 WL 4841610, at *4 (purposeful availment where foreign companies ensured their "products and revenues invariably flowed through the New Jersey forum" with up to 20% of total sales occurring in the United States); *In re German Auto. Mfrs.*, 392 F. Supp. 3d at 1066-67 (exercising jurisdiction where BMW AG sold hundreds of thousands of cars to auto dealers in the United States, designed cars to meet federal and state motor vehicle regulations, and publicly stated that the U.S. market was important and a high priority).

*Third*, BMW AG further availed itself of New Jersey and South Carolina by shipping its vehicles and component parts to New Jersey and South Carolina, including through its exclusive distributor, BMW America. Löwa Decl. ¶¶ 27, 29. Indeed, New Jersey and South Carolina are the two largest receiving ports for shipments originating from BMW AG in Germany. Ex. 19, at 9; *see also Walden v. Fiore*, 571 U.S. 277, 285 (2014) (a defendant's "physical entry" into the forum,

including "through . . . goods, mail, or some other means—is certainly a relevant contact" for jurisdiction); *In re Capacitors Antitrust Litig*., 2015 WL 3638551, at *3 (N.D. Cal. June 11, 2015) (applying *Walden* and affirming jurisdiction where defendant "shipped electrolytic capacitors to the United States"); *Top Gun Ammo Sales, LLC v. COF Techs., LLC*, 2022 WL 823061, at *6 (E.D. Mo. Mar. 18, 2022) (citing *Walden* and upholding jurisdiction where the defendant "organized three shipments of goods to [the forum] and contacted a freight company to place a hold on a shipment . . . in [the forum]").

Far from "random, isolated or fortuitous" contacts or merely placing a product into the stream of commerce, BMW AG "deliberately reached out beyond its home" by choosing to conduct business in New Jersey and South Carolina through its corporate affiliates and shipments. *SkyHop*, 58 F.4th at 1230 (finding purposeful availment where defendant partnered with a Florida-based company and sent emails and made trips to Florida). Indeed, at least one court has determined BMW AG purposefully availed itself of conducting business in New Jersey based on similar facts. *See Rickman*, 538 F. Supp. 3d at 437-38 ("[t]here are no BMW AG-made cars on American roads save those that are here by virtue of the BMW AG/BMW [America] relationship," which "entailed a deliberate choice to enter New Jersey").

And courts have exercised jurisdiction over automakers based on weaker evidence of purposeful availment than BMW AG's conduct here, by focusing on

whether the defendant engaged in "something more" than simply placing its product into the stream of commerce that ultimately brought the product to the forum. *See Lewis v. Mercedes-Benz USA, LLC*, 530 F. Supp. 3d 1183, 1239 (S.D. Fla. 2021) ("Many courts have held that a foreign manufacturer that utilizes an American subsidiary to target distribution of its product to the forum state is appropriately subject to those states' jurisdiction."); *Young v. Mitsubishi Motors N. Am. Corp.*, 2020 WL 4584391, at *3-4 (W.D. Wash. Aug. 10, 2020) (foreign parent company utilized its United States subsidiary to sell vehicles in the United States); *Johnson v. Chrysler Can., Inc.*, 24 F. Supp. 3d 1118, 1139-40 (N.D. Ala. 2014) (manufacturing vehicles to U.S. specifications for distribution by parent company with knowledge that they would be distributed into the U.S. and Alabama was sufficient); *King v. Gen. Motors Corp.*, 2012 WL 1340066, at *4-8 (N.D. Ala. Apr. 18, 2012) (same); *cf. Asahi*, 480 U.S. at 112 (Japanese company shipped its tire valves to company in Taiwan that assembled the valves into finished tire tubes, and thus was divorced from distribution that brought valves to California as part of finished assemblies).

Given this ample caselaw and the relevant facts, BMW AG's effort to depict itself as a remote and uninterested parent company that merely holds an interest in two independent subsidiaries in the United States is unpersuasive.

### B.    BMW AG's Cited Cases Do Not Undermine the Record of Its Extensive Contacts with the Fora Here.

BMW AG's central cases are clearly distinguishable. Both *J. McIntyre Machinery, Ltd. v. Nicastro*, 564 U.S. 873, 884-86 (2011), and *Eaves v. Pirelli Tire, LLC*, 2014 WL 1883791, at *17-18 (D. Kan. May 12, 2014), involved distribution into the United States through an independent third party without any evidence of control, management, or purposeful direction by the defendant. Similarly off point, in *Rush v. Savchuk*, the plaintiff sought to impose *quasi in rem* jurisdiction over a non-resident defendant by garnishing an insurer's obligation to its insured who had no contacts with Minnesota. 444 U.S. 320, 322-27, 331-32 (1980). The Supreme Court held that it was "plainly unconstitutional" to "attribute [an insurer's] contacts to [the insured] by considering the defending parties together and aggregating their forum contacts" because it would permit jurisdiction "based solely on the activities of [the insurer]." *Id.* Here, Plaintiffs ask the Court to consider BMW AG's *own contacts*, including contacts created by its relationships with BMW America and BMW Mfg. in New Jersey and South Carolina. BMW AG's "stream of commerce" argument is misplaced.[5]

---

[5] BMW AG's argument is also undermined by *In re German Automotive Manufacturers*, where the court noted, "20 million cars didn't simply arrive in the United States through the stream of commerce. The German defendants established channels for marketing their products in the United States and they designed their products for the market in the United States." 392 F. Supp. 3d at 1067.

BMW AG's other cases do not address allegations of intentionally concealing a design defect in a vehicle designed and manufactured for sale and distribution in the U.S. Those cases largely turned on whether BMW AG had sufficient control over the distribution of its vehicles into the states in which the named plaintiffs resided *but where BMW AG did not have a corporate presence. Fischer v. BMW of N. Am., LLC*, 376 F. Supp. 3d 1178, 1187–88 (D. Colo. 2019); *Thornton v. Bayerische Motoren Werke AG*, 439 F. Supp. 3d 1303, 1311 (N.D. Ala. 2020); *Rose v. Cont'l Aktiengesellschaft*, 2001 U.S. Dist. LEXIS 24099, at *8–10 (E.D. Pa. Oct. 18, 2001).[6] By contrast, BMW AG directly carries out business operations in the relevant fora that are relevant to the Class Vehicles.

## II.  **Plaintiffs' Claims Arise out of or Relate to BMW AG's Contacts with New Jersey and South Carolina.**

The relatedness prong under the due process analysis is satisfied by even one "activity or an occurrence that takes place in the forum State and is therefore subject to the State's regulation." *SkyHop*, 58 F.4th at 1229 (quoting *Ford Motor Co. v. Mont. Eighth Jud. Dist. Ct.*, 592 U.S. 351, 359–60 (2021)). Notably, "some relationships will support jurisdiction without a causal showing." *Ford Motor Co.*,

---

[6] BMW AG's reliance on *Alexander v. Bayerische Motoren Werke AG*, 2020 WL 2098108, at *1 (D.S.C. May 1, 2020), is also off point. *Alexander* was a personal injury case where the plaintiff's claims did not relate to the contacts between BMW AG and South Carolina.

592 U.S. at 362; *Lewis*, 530 F. Supp. 3d at 1238 ("[S]pecific jurisdiction may also exist where a claim *relates to* the defendant's contacts with the forum.").

BMW AG's substantial contacts with New Jersey and South Carolina related directly to Plaintiffs' claims. No Class Vehicle sales or warranties would have occurred without BMW AG's contacts with New Jersey, as it designed vehicles specifically for the U.S. market, then enlisted BMW America to directly ship and sell its products there. Plaintiffs' consumer protection and fraud claims similarly arise out of or relate to the marketing, distribution, and manufacture of the Class Vehicles through New Jersey and South Carolina because BMW AG managed BMW America and BMW Mfg.

BMW AG provides no legal support for its cursory statement that the connection between Plaintiffs' claims and BMW AG's contacts is tenuous because they purchased used BMW cars. Dkt. 287-1, at 22. As explained above, BMW AG's contacts arise out of its close relationship with and management of BMW America, who imports, sells, and advertises the Class Vehicles, and BMW Mfg., who manufactures some of the Class Vehicles and component parts. That sequence of manufacture and distribution is the same regardless whether a car is resold used.[7]

---

[7] To the extent that BMW AG's arguments overlap with those made by the Automaker Defendants regarding the purchase of used cars, Plaintiffs incorporate their response in opposition. *See* Dkt. 221, at 15, 19 n.20, 32 n.36.

BMW AG relies heavily on *Oliver v. Funai Corp.*, 2015 WL 9304541 (D.N.J. Dec. 21, 2015), but the facts here show a far more extensive relationship between BMW AG and its domestic subsidiaries (and, by extension, their home states). In addition, *Oliver* relied on a "reciprocal principle" theory of jurisdiction the Supreme Court has since rejected. *Id.* at *10; *see also Ford Motor Co.*, 592 U.S. at 362 (explaining there is no causation requirement). More recently, courts in New Jersey have not applied this "reciprocal" test, following the Supreme Court's guidance in *Ford* that "some relationships will support jurisdiction without a causal showing." *See Rickman*, 538 F. Supp. 3d at 441; *Bullard*, 2023 WL 4841610, at *4-5.

## III.    The Exercise of Personal Jurisdiction over BMW AG is Reasonable.

To determine whether exercising personal jurisdiction comports with traditional notions of fair play and substantial justice, courts assess (1) "the burden on the defendant"; (2) "the forum's interest in adjudicating the dispute"; (3) "the plaintiff's interest in obtaining convenient and effective relief"; and (4) "the judicial system's interest in resolving the dispute." *SkyHop*, 58 F.4th at 1231. BMW AG "bears the burden of making 'a compelling case' that the exercise of jurisdiction is improper." *Id.* (quoting *Louis Vuitton*, 736 F.3d at 1355). BMW AG addresses only the first and fourth considerations, but all four weigh in favor of exercising jurisdiction over BMW AG.

*First*, BMW AG cannot credibly claim burden, as it purposefully and extensively targets the U.S. market. Indeed, BMW AG created its marketing and distribution arm in New Jersey and its manufacturing hub in South Carolina. BMW AG's history of litigating in the courts of both states demonstrates that defending this lawsuit would impose minimal burden. *Rickman*, 538 F. Supp. 3d at 443 (denying BMW AG motion for personal jurisdiction under New Jersey law); *Dawsey v. Bayerische Motoren Werke*, 2024 WL 470186, at *6 (D.S.C. Feb. 7, 2024) (same, for South Carolina); *see also Kim v. Korean Air Lines Co., Ltd.*, 513 F. Supp. 3d 462, 472 (D.N.J. 2021) (minimal burden where the foreign defendant had contacts with forum and defended actions there previously). In that same vein, concerns about producing evidence located in Germany are unpersuasive, where discovery is mostly electronic and depositions can be scheduled to accommodate BMW AG's witnesses. *E.g.*, *Johnson*, 24 F. Supp. 3d at 1142 (rejecting this "conclusory" argument and stating that "modern transportation and communication have made it much less burdensome for a party sued to defend [itself] in a State where [it] engages in economic activity"). Executives from the BMW Group Defendants travel between Germany and the U.S. for business, and BMW Mfg. employees have traveled to Germany for training on manufacturing BMW AG's cars. Ex. 1; Ex. 10; Ex. 11.

*Second*, New Jersey and South Carolina—and by extension, this Court as the transferee forum—have a strong interest in adjudicating claims against BMW AG

and ensuring compliance with their laws by companies that maintain a significant corporate presence within their jurisdictions. *See Rickman*, 538 F. Supp. 3d at 443-44. This interest extends to ensuring compliance by those who direct such companies. *Id.* BMW AG has offered no argument on this point, and thus effectively concedes it. *See Johnson*, 24 F. Supp. 3d at 1142.

*Third*, Plaintiffs Luiz and Clark selected New Jersey and South Carolina as the appropriate venues for their claims against BMW AG because their injuries stem from BMW AG's conduct toward and contacts with these states. Both purchased vehicles marketed, distributed, or manufactured through these states as gateways to the U.S. market. ¶¶ 82-83, 162, 190. Additionally, Clark is a South Carolina resident. ¶ 162. These facts give Plaintiffs an undeniably strong interest in litigating in New Jersey and South Carolina. *Rickman*, 538 F. Supp. 3d at 444.

*Lastly*, BMW AG's suggestion that exercising jurisdiction would interfere with Germany's sovereignty is unpersuasive. The District of South Carolina exercised jurisdiction over BMW AG in February 2024, the District of New Jersey exercised personal jurisdiction over BMW AG in May 2021, and the Northern District of California did the same in 2019. *Dawsey*, 2024 WL 470176, at *6; *Rickman*, 538 F. Supp. 3d at 443-44; *In re German Auto. Mfrs.*, 392 F. Supp. 3d at 1068. Germany's sovereignty has remained intact. Further, as the *Rickman* court

noted, litigating Plaintiffs' claims in Germany would be inefficient for the remaining American parties. 538 F. Supp. 3d at 444.

## IV.    In the Alternative, the Court Should Hold This Motion in Abeyance and Permit Jurisdictional Discovery.

Courts have broad discretion to allow jurisdictional discovery and will permit it if "there is a genuine dispute as to whether exercising personal jurisdiction . . . would be appropriate." *Doherty-Heinze v. Chrisley*, 2021 WL 12149533, at *5 (N.D. Ga. Dec. 21, 2021) (Batten, J.). Where a genuine dispute exists, "a plaintiff faced with a motion to dismiss for lack of personal jurisdiction is entitled to reasonable discovery." *Seiz v. Quirk*, 2013 WL 12290850, at *2 (N.D. Ga. Jan. 3, 2013) (Murphy, J.). "[I]f the plaintiff's claim is not clearly frivolous as to the basis for personal jurisdiction, the district court should ordinarily allow discovery on jurisdiction in order to aid the plaintiff in discharging that burden." *Metcalfe v. Renaissance Marine, Inc.*, 566 F.3d 324, 336 (3d Cir. 2009); *see also Sullivan v. Hawker Beechcraft Corp.*, 723 S.E.2d 835, 839 (S.C. Ct. App. 2012).

If the Court is not inclined to deny BMW AG's motion, Plaintiffs respectfully request leave to conduct limited jurisdictional discovery. As explained more fully in the accompanying motion for jurisdictional discovery, discovery will confirm that Plaintiffs' claims arise out of BMW AG's contacts with New Jersey and South Carolina and that BMW AG purposefully availed itself of the privilege of conducting business in these states.

23

## **CONCLUSION**

For the foregoing reasons, the Court should deny BMW AG's motion to dismiss or, in the alternative, hold the motion in abeyance and permit Plaintiffs to take discrete jurisdictional discovery.

Dated: February 7, 2025

*/s/ Roland Tellis*
Roland Tellis
rtellis@baronbudd.com
David Fernandes
dfernandes@baronbudd.com
Adam Tamburelli
atamburelli@baronbudd.com
Sterling Cluff
scluff@baronbudd.com
Kelsey J. Elling
kelling@baronbudd.com
**BARON & BUDD, P.C.**
15910 Ventura Blvd #1600
Encino, California 91436
Tel: (818) 839-2333

Respectfully submitted,

*/s/ Demet Basar*
Demet Basar
demet.basar@beasleyallen.com
W. Daniel "Dee" Miles, III
dee.miles@beasleyallen.com
J. Mitch Williams
mitch.williams@beasleyallen.com
Dylan T. Martin
dylan.martin@beasleyallen.com
**BEASLEY, ALLEN, CROW,
METHVIN, PORTIS & MILES,
P.C.**
272 Commerce Street
Montgomery, Alabama 36104
Tel: (334) 269-2343

H. Clay Barnett, III (GA Bar 174058)
clay.barnett@beasleyallen.com
Thomas P. Willingham (GA Bar 235049)
tom.willingham@beasleyallen.com
**BEASLEY, ALLEN, CROW,
METHVIN, PORTIS & MILES,
P.C.**
Overlook II
2839 Paces Ferry Rd SE, Suite 400
Atlanta, GA 30339
Tel: (404) 751-1162

*/s/ James E. Cecchi*
James E. Cecchi
jcecchi@carellabyrne.com
**CARELLA, BYRNE, CECCHI,
BRODY & AGNELLO, P.C.**
5 Becker Farm Road
Roseland, New Jersey 07068
Tel: (973) 994-1700

Zachary Jacobs
zjacobs@carellabyrne.com
**CARELLA, BYRNE, CECCHI,
BRODY & AGNELLO, P.C.**
222 South Riverside Plaza
Chicago, Illinois 60606
Tel: (973) 994-1700

Jason H. Alperstein
jalperstein@carellabyrne.com
Zachary J. Bower
zbower@carellabyrne.com
**CARELLA, BYRNE, CECCHI,
BRODY & AGNELLO, P.C.**
2222 Ponce De Leon Blvd.
Miami, Florida 33134
Tel: (973) 994-1700

*/s/ Elizabeth T. Castillo*
Niall P. McCarthy
nmccarthy@cpmlegal.com
Elizabeth T. Castillo
ecastillo@cpmlegal.com
David G. Hollenberg
dhollenberg@cpmlegal.com
**COTCHETT, PITRE &
McCARTHY, LLP**
840 Malcolm Road
Burlingame, CA 94010
Tel: (650) 697-6000

Theresa E. Vitale
tvitale@cpmlegal.com
**COTCHETT, PITRE &
McCARTHY, LLP**
2716 Ocean Park Blvd., Suite 3088
Santa Monica, CA 90405
Tel: (310) 392-2008

/s/ David Stellings
David Stellings
dstellings@lchb.com
Michael J. Miarmi
mmiarmi@lchb.com
Katherine I. McBride
kmcbride@lchb.com
Gabriel A. Panek
gpanek@lchb.com
**LIEFF CABRASER HEIMANN &
BERNSTEIN, LLP**
250 Hudson Street, 8th Floor
New York, New York 10013-1413
Tel: (212) 355-9500

Nimish R. Desai
ndesai@lchb.com
**LIEFF CABRASER HEIMANN &
BERNSTEIN, LLP**
275 Battery Street, 29th Floor
San Francisco, California 94111
Tel: (415) 956-1000

/s/ Kevin R. Dean
Kevin R. Dean (GA Bar 214855)
kdean@motleyrice.com
Ann K. Ritter
aritter@motleyrice.com
Lance V. Oliver
loliver@motleyrice.com
Sara O. Couch
scouch@motleyrice.com
**MOTLEY RICE LLC**
28 Bridgeside Boulevard
Mount Pleasant, South Carolina 29464
Tel: (843) 216-9000

/s/ Matthew D. Schultz
Matthew D. Schultz
mschultz@levinlaw.com
William F. Cash
bcash@levinlaw.com
**LEVIN, PAPANTONIO,
RAFFERTY, PROCTOR,
BUCHANAN, O'BRIEN, BARR &
MOUGEY, P.A.**
316 S. Baylen St., Suite 600
Pensacola, FL 32502
Tel: (850) 435-7140

**Leadership Committee for Plaintiffs and the Proposed Classes**

*/s/ Michael A. Caplan*             */s/ M.J. Blakely*

Michael A. Caplan (GA Bar 601039)

mcaplan@caplancobb.com

T. Brandon Waddell (GA Bar 252639)

bwaddell@caplancobb.com

Ashley C. Brown (GA Bar 287373)

abrown@caplancobb.com

**CAPLAN COBB LLC**

75 Fourteenth Street NE, Suite 2700

Atlanta, Georgia 30309

Tel: (404) 596-5600

M.J. Blakely (GA Bar 708906)

mjblakely@blakelyfirm.com

**THE BLAKELY FIRM, L.L.C.**

P.O. Box 3314

Decatur, GA 30031

Tel: (404) 491-0617

*Liaison Counsel for Plaintiffs and the Proposed Classes*

## **CERTIFICATION**

Pursuant to Civil Local Rule 7.1(D), the undersigned counsel certifies that this brief has been prepared with 14-point Times New Roman, as approved by the Court in Civil Local Rule 5.1(C).

*/s/ David Stellings*
David Stellings
