# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF GEORGIA
# ATLANTA DIVISION

|  |  |
|---|---|
| IN RE: ARC AIRBAG INFLATORS PRODUCTS LIABILITY LITIGATION | MDL No. 3051<br><br>Case No: 1:22-md-03051-ELR |

## REPLY IN SUPPORT OF DEFENDANT BAYERISCHE MOTOREN WERKE AKTIENGESELLSCHAFT'S MOTION, BY *SPECIAL APPEARANCE*, TO DISMISS PLAINTIFFS' CORRECTED CONSOLIDATED CLASS ACTION COMPLAINT FOR LACK OF PERSONAL JURISDICTION PURSUANT TO FED. R. CIV. P. 12(b)(2)

## <u>TABLE OF CONTENTS</u>

INTRODUCTION ...................................................................................................1

ARGUMENT ..........................................................................................................2

   I.  Plaintiffs Have Not Made The Required *Prima Facie* Showing........................2

   II.  Plaintiffs' Cited Evidence Is Irrelevant to the Specific Jurisdiction Analysis.....3

   III.    Plaintiffs Fail to Establish the Court's Specific Jurisdiction Over BMW AG.6

   A.  The Evidence Does Not Show BMW AG Purposefully Directed Its Activities at New Jersey or South Carolina............................................................6

      1.  BMW AG's Manufacture of Vehicles for Sale in the U.S. Does Not Equate to Targeting NJ or SC. ...........................................................................7

      2.  BMW NA's and BMW MC's Independent Activities Do Not Establish BMW AG's Targeted NJ or SC. ...................................................................9

   B.  Plaintiffs' Consumer Protection Claims Do Not Arise Out of or Relate to BMW AG's NJ or SC Contacts.................................................................12

   IV.    The Exercise of Personal Jurisdiction Over BMW AG Is Unreasonable......14

   V.  Plaintiffs' Request for Jurisdictional Discovery Should Be Denied.............15

CONCLUSION ....................................................................................................15

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Alexander v. BMW AG*,
 2020 U.S. Dist. LEXIS 77183 (D.S.C. May 1, 2020)............................................................15

*Asahi Metal Indus. Co. v. Sup. Ct.*,
 480 U.S. 102 (1987) ....................................................................................................8, 11, 15

*BMW Mfg. Corp. v. United States*,
 241 F.3d 1357 (Fed. Cir. 2001)......................................................................................11

*Braman Motors, Inc. v. BMW NA*,
 2019 U.S. Dist. LEXIS 174561 (S.D. Fla. Sep. 30, 2019)..............................................10, 15

*Bukuvalas v. CIGNA Corp.*,
 2010 U.S. Dist. LEXIS 127873 (D.N.J. Dec. 3, 2010) ............................................................6

*Eaves v. Pirelli Tire, LLC*,
 2014 U.S. Dist. LEXIS 64866 (D. Kan. May 12, 2014) .....................................................11

*Fischer v. BMW NA*,
 376 F. Supp. 3d 1178 (D. Colo. 2019)................................................................................8, 11

*Ford Motor Co. v. Mont. Eighth Judicial Dist. Court*,
 592 U.S. 351 (2021) ...............................................................................................................12

*In re German Auto. Mfrs. Antitrust Litig.*,
 392 F. Supp. 3d 1059 (N.D. Cal. 2019) .................................................................................9

*Hawaiian Indep. Refinery v. United States*,
 81 Cust. Ct. 117 (U.S. 1978)................................................................................................11

*Int'l Shoe Co. v. Washington*,
 326 U.S. 310 (1945)................................................................................................................14

*Kearney v. BMW AG*,
 2021 U.S. Dist. LEXIS 62356 (D.N.J. March 31, 2021) ....................................................7, 9

*Kearney v. BMW AG*,
 2024 U.S. Dist. LEXIS 239520 (D.N.J. May 16, 2024) ...................................................12, 13

*Levy v. Jaguar Land Rover N. Am., LLC*,
 2020 U.S. Dist. LEXIS 18711 (D.N.J. Feb. 4, 2020) ........................................................9, 10

*Maseng v. Lenox Corp.*,
   483 F. Supp. 3d 360 (D.S.C. 2020)................................................................12

*McClung v. 3M Co.*,
   2019 U.S. Dist. LEXIS 164198 (D.N.J. Sep. 25, 2019) .................................3

*Oliver v. Funai Corp.*,
   2015 U.S. Dist. LEXIS 169998 (D.N.J. Dec. 21, 2015) ...............................12

*Rickman v. BMW of N. Am. LLC*,
   538 F. Supp. 3d 429 (D.N.J. 2021) ...............................................................11

*Rose v. Cont'l Aktiengesellschaft*,
   2001 U.S. Dist. LEXIS 24099 (E.D. Pa. Oct. 17, 2001)...............................10

*Skyhop Techs., Inc. v. Narra*,
   58 F.4th 1211 (11th Cir. 2023) .....................................................................12

*Thornton v. BMW AG*,
   439 F. Supp. 3d 1303 (N.D. Ala. 2020)...............................................4, 6, 14

*In re Volkswagen "Clean Diesel" Mktg.*,
   2017 U.S. Dist. LEXIS 179652 (N.D. Cal. Oct. 30, 2017) .............................8

## Other Authorities

49 C.F.R. § 551.46................................................................................................5

Rule 4(k)(2).......................................................................................................8, 9

Bayerische Motoren Werke Aktiengesellschaft ("BMW AG") *specially appears* to file this reply in support of its motion to dismiss. (Dkt. 287) ("Motion").

## **INTRODUCTION**

At least *six* different district courts (including courts in New Jersey (NJ) and South Carolina (SC)), in *seven* separate cases, have analyzed the same or identical evidence that is before this Court and have held BMW AG is *not* subject to specific jurisdiction.[1] The Opposition (Dkt. 310) ("Opp.") offers no good reason for a different conclusion here. Although Plaintiffs submit "evidence" with their Opposition, none are relevant to specific jurisdiction, the only jurisdictional basis Plaintiffs invoke.[2] Plaintiffs have not shown (1) BMW AG *itself* targeted the forum states ***and*** (2) their claims arise out of those purported contacts, which are required for specific jurisdiction.

Plaintiffs' failure to make a specific jurisdiction showing is unsurprising. Their claims here are for breach of warranty and time-of-purchase consumer protection violations, each claims grounded in purported conduct that could *only* involve the *lone* U.S. marketer, distributor, and warrantor of new BMW brand vehicles, BMW of North America, LLC ("BMW NA"). Thus, Plaintiffs proceed by misdirection and

---

[1] Motion (citing *Kearney v. BMW AG,* 2021 U.S. Dist. LEXIS 62356 (D.N.J. March 31, 2021); *Alexander v. BMW AG*, 2020 U.S. Dist. LEXIS 77183 (D.S.C. May 1, 2020); *Braman Motors, Inc. v. BMW NA*, 2019 U.S. Dist. LEXIS 174561 (S.D. Fla. Sep. 30, 2019); *Brown v. BMW NA*, 2016 U.S. Dist. LEXIS 13209 (S.D. Ind. Feb. 4, 2016); *Fischer v. BMW NA*, 376 F. Supp. 3d 1178 (D. Colo. 2019); *In re Takata Airbag Prod. Liab. Litig.*, 2019 U.S. Dist. LEXIS 184046 (S.D. Fla. Sep. 25, 2019); *Thornton v. BMW AG*, 439 F. Supp. 3d 1303 (N.D. Ala. 2020)).

[2] Plaintiffs' evidence *at best* touches on general jurisdiction and "alter ego" jurisdiction theories, both of which Plaintiffs have abandoned. (Opp. 1, 2.)

attempt to manufacture jurisdiction through "facts" that are either untrue, presented out-of-context, or irrelevant to *specific* jurisdiction.

The actual evidence indisputably shows that BMW AG did not purposefully direct *any* activities at NJ or SC, either by way of *BMW NA*'s distribution of cars or *BMW Manufacturing Co.'s* ("BMW MC") assembly of cars distributed and sold worldwide. Nor is there any evidence that Plaintiffs' claims arise from BMW AG's limited business interactions with BMW NA or BMW MC. In short, the Opposition falls woefully short of establishing *any* jurisdictional basis for BMW AG.

Lastly, the jurisdictional discovery Plaintiffs seek is an unjustified fishing license. Plaintiffs have not even made the required *prima facie* case for the exercise of personal jurisdiction. And as the concurrently-filed Supplemental Declaration of Ronny Löwa ("Suppl. Löwa Decl.") shows, discovery will not change the outcome of the pending Motion, which should be granted.

## **ARGUMENT**

### I.    **Plaintiffs Have Not Made The Required *Prima Facie* Showing.**

Plaintiffs *presume* they met their initial burden to establish a *prima facie* case for personal jurisdiction (Opp. at 9) and try to shift the burden to BMW AG. (Opp. at 10). But as the Motion demonstrates, Plaintiffs' summary allegations in the Corrected Class Action Complaint (Dkt. 157) ("CCAC") *do not establish* a *prima facie* case for personal jurisdiction over BMW AG. (Mot. at 12-15). And even *if* this were not so, BMW AG presented substantial evidence in the Löwa declaration (Dkt.

287-2) ("Löwa Decl.")[3] to show Plaintiffs' allegations are insufficient. The Supplemental Löwa Declaration that responds to Plaintiffs' fanciful rendition of evidence also confirms the Motion should be granted.[4]  As shown below, the 19 Exhibits Plaintiffs submit are mischaracterized, presented out-of-context, or are irrelevant to the *specific* jurisdiction analysis.

## II.    Plaintiffs' Cited Evidence Is Irrelevant to the Specific Jurisdiction Analysis.

Plaintiffs claim "BMW AG operates, conducts, and manages all its global business through a single entity—the BMW Group."  (Opp. at 2).  They lodge 19 Exhibits that purportedly "show[] BMW AG's extensive connections with its domestic operations in New Jersey and South Carolina," and claim BMW NA/BMW MC "serve as BMW AG's gateways for the marketing, manufacturing, sale, distribution, and warranty of its Class Vehicles in the United States."  (Opp. at 1). Yet the actual evidence does not show BMW AG *itself* targeted either NJ or SC.

As a threshold matter, the term "BMW Group" is not a legally cognizable entity.  (Suppl. Löwa Decl. ¶ 4). It is an informal term BMW uses to collectively and colloquially refer to many different entities and brands that include BMW AG, BMW MC, BMW NA, among others.  (*Id.*).  But the "BMW Group" has no legal

---

[3] BMW AG filed a corrected Declaration for Ronny Löwa on January 17, 2025 that fixed a scrivener's error.  (Dkt. 299-1).

[4] *See, e.g.*, *McClung v. 3M Co.*, 2019 U.S. Dist. LEXIS 164198, at *14-15 (D.N.J. Sep. 25, 2019) (insufficient complaint and briefs alone are enough to show Plaintiffs failed to establish a prima facie case for specific personal jurisdiction.).

existence.  (*Id.*).  BMW AG is a separate and distinct legal entity from BMW NA and BMW MC. (Mot. at 7-8) (Löwa Decl. ¶¶ 5, 22).  Thus, jurisdictional evidence must relate to BMW AG's direct contacts with NJ or SC.  Even a cursory review of Plaintiffs' "evidence" shows this is lacking.

> **Exhibits 1, 4, 8, 9, 12, 13, 14, and 18** are **U.S.** Pressclub Articles issued by BMW NA about the BMW global brand, U.S. vehicle sales, model debuts, vehicle distribution centers, and new BMW NA officers. Only BMW NA prepares and issues Press Releases directed at U.S. consumers; BMW AG has no involvement. (Suppl. Löwa Decl. ¶ 19). That these articles refer to a colloquial "BMW Group" label does mean BMW AG was involved. (*Id.* ¶ 4).  Further, these BMW NA-issued Articles say nothing about BMW AG's contacts with NJ or SC.  And even *assuming* they did, "BMW AG's target of the broader United States market … fail[s] to demonstrate BMW AG's connection to [the forum State] ….'" *Thornton*, 439 F. Supp. 3d at 1311 (citation omitted). Also, as to Ex. 9, the appointment of BMW NA's CEO is wholly irrelevant since he is compensated only by BMW NA and holds no concurrent role at BMW AG.  (Suppl. Löwa Decl. ¶¶ 10-13).  And even if any BMW NA employees later go to work for BMW AG, or vice versa, they are released from their employment contracts at the former entity and are hired as employees of and paid by the new entity.  (*Id.* ¶ 13).

*Exhibits 3 and 10* are Global Pressclub Articles issued by BMW AG relating to (1) the December 2009 Los Angeles Auto Show, and (2) a one-off meeting in Spartanburg, SC to discuss the *global* production of cars for distribution both in the U.S. and abroad. Neither exhibit demonstrates BMW AG's contacts with NJ or SC to sell cars specifically in either State. And as discussed further below, even *assuming* an isolated meeting in SC were enough (it is not), nothing suggests that Plaintiffs' claims arise out of this single SC meeting.

*Exhibits 2, 5, and 6* do not help Plaintiffs either. Ex. 2 is a "BMW Group" human resources document. But this is *not* a labor/employment case. And this document says nothing about BMW AG's HR policies or any NJ or SC contacts. Exs. 5 and 6 relate to BMW NA's correspondence with NHTSA on behalf of BMW AG—a setup that exists because the law *requires* it. *See* 49 C.F.R. § 551.46 ("[u]nless and until a foreign manufacturer appoints an agent in accordance with the requirements of this subpart, it may not import motor vehicles or motor vehicle equipment into the United States.") But this fact is academic here since Plaintiffs assert no alter ego or agency theory of jurisdiction.

*Exhibit 7* relates to an ARC airbag recall for *2017* X5's. But Plaintiffs own 2015 BMW X5 vehicles. (CCAC ¶¶ 163, 190). Also, as a manufacturer, BMW AG is responsible for issuing recalls. Ultimately, this recall is not specific to NJ or SC. Plaintiffs' claims do not arise out of this contact either.

*Exhibits 15, 16, and 17* are BMW USA website screenshots.  BMW AG does not maintain this U.S.-facing website or post content on it.  (Suppl. Löwa Decl. ¶ 18).  The website is maintained and hosted by BMW NA in the U.S.  (*Id.*).

*Exhibits 11 and 19* are third party documents. Ex. 11 is a University of South Carolina study on BMW MC's plant in SC.  It does not show BMW AG's contacts with SC or NJ, or establish a tie-in to Plaintiffs' claims.  Ex. 19 is a third party website that purports to show shipments of cars to the U.S. and other countries.  It does not show BMW AG's contacts with SC or NJ.  The mere manufacture of cars that are then sold in the U.S. alone is not enough. *Thornton*, 439 F. Supp. 3d at 1311.

## III.    Plaintiffs Fail to Establish the Court's Specific Jurisdiction Over BMW AG.

### A.    The Evidence Does Not Show BMW AG Purposefully Directed Its Activities at New Jersey or South Carolina.

The Opposition does not credibly dispute BMW AG's evidence that it did not purposefully direct any activities at NJ or SC.  (Mot. Sec. III). Instead, Plaintiffs argue "BMW AG availed itself of the relevant fora when it created fully owned subsidiaries for the purpose of selling BMW AG cars in the United States and when it shipped its products from Germany directly into these states."  (Opp. at 11).  This is factually incorrect. And separately, under this logic, all foreign automotive parents with domestic distributors would be automatically subject to personal jurisdiction. *See Bukuvalas v. CIGNA Corp.*, 2010 U.S. Dist. LEXIS 127873, at *11 (D.N.J. Dec. 3, 2010) ("A district court may not exercise jurisdiction over a defendant … if the

only connection with the state is through that defendant's subsidiaries"). This logic obliterates the first step of the specific jurisdiction analysis in all cases that involve a foreign manufacturer and domestic in-state distributor. Numerous courts have recognized that this is not the standard. (*See supra* n.1). And Plaintiffs do not offer any evidence to show BMW AG's purposeful contacts with NJ and SC (as opposed to a rejected stream of commerce theory), which is alone fully dispositive.

Plaintiffs' other arguments also fail.[5] They claim BMW AG "has longstanding, extensive, and purposeful business contacts in the forum states" because (1) "it designs certain vehicles for compliance with U.S. regulations" and its cars "are designed to be sold to U.S. customers," (2) "BMW AG purposefully structured its corporate organization to conduct a large volume of its business in [NJ] and [SC]," and (3) it "shipp[ed] its vehicles and component parts to New Jersey and South Carolina, including through its exclusive distributor, BMW America." (Opp. at 11-16). As shown below, none of these arguments have merit.

### 1. *BMW AG's Manufacture of Vehicles for Sale in the U.S. Does Not Equate to Targeting NJ or SC.*

That BMW AG designs cars that comply with U.S. regulations and are eventually sold in the broader U.S. market does not equate to targeting a *specific* U.S. state for specific jurisdiction purposes. *See, e.g.*, *Kearney v. BMW AG*, 2021

---

[5] Plaintiffs attempt to distinguish several of BMW AG's cited cases (Opp. at 17-18), but in the process do not even acknowledge, let alone address, the most directly on-point case which undercut a majority of their arguments here. (Mot. at 17) (citing *Kearney*, 2021 U.S. Dist. LEXIS 62356).

U.S. Dist. LEXIS 62356, at *13-14 (D.N.J. Mar. 31, 2021) (rejecting similar argument and noting "Plaintiffs articulate a 'stream of commerce' theory of jurisdiction rejected by the Third Circuit.").  Indeed, BMW NA (not BMW AG) decides where the cars will be distributed and sold after buying them *ex works* from BMW AG.  (Löwa Decl. ¶¶ 14-17, 27, 29; Suppl. Löwa Decl. ¶¶ 5-9).

Although BMW NA is located in New Jersey, there is no evidence BMW AG "purposefully directed" its *own* activities at NJ.  BMW NA distributes vehicles *across the U.S.*—not just in NJ.  (Löwa Decl. ¶¶ 27, 29).  This is why Plaintiffs' reliance on *Asahi Metal Indus. Co. v. Sup. Ct.*, 480 U.S. 102, 112 (1987) (Opp. at 12) is misplaced.  While *Asahi* provides examples of the "something more" for a stream of commerce personal jurisdiction theory, courts interpreting *Asahi*'s holding in factually analogous cases have held BMW NA's role as distributor of BMW vehicles, in NJ or another state, does not confer jurisdiction over BMW AG.  *See, e.g.*, *Fischer v. BMW NA*, 376 F. Supp. 3d 1178 (D. Colo. 2019).

Plaintiffs' reliance on *In re Volkswagen "Clean Diesel" Mktg.*, 2017 U.S. Dist. LEXIS 179652, at *770 (N.D. Cal. Oct. 30, 2017) (Opp. at 11) is also misplaced.  That court analyzed Rule 4(k)(2) personal jurisdiction because plaintiffs pled a federal law claim for violation of RICO.  *Id.* at *769-770.  This analysis necessarily required consideration of defendant Bosch GmbH's contacts with the U.S. as a whole, not a specific state in particular.  *Id.* at *771.  In fact, the court

specifically recognized that "[b]ecause the jurisdictional inquiry here is under Rule 4(k)(2), the proper analogy would be if Bosch GmbH had not specifically targeted the United States." *Id.* (citation omitted).

Plaintiffs' reliance on *In re German Auto. Mfrs. Antitrust Litig.*, 392 F. Supp. 3d 1059, 1065-67 (N.D. Cal. 2019) (Opp. at 11-12, 17, n.5) is misplaced for the same reasons. There the court was addressing federal antitrust claims that also required inquiry into whether defendants' contacts *with the U.S. as a whole* were sufficient for personal jurisdiction. *Id.* at 1066-69. In contrast, this case does not involve any similar federal claims. Thus BMW AG's minimal contacts with the U.S. as a whole do not establish the necessary NJ or SC contacts for specific jurisdiction.

## 2. *BMW NA's and BMW MC's Independent Activities Do Not Establish BMW AG's Targeting NJ or SC.*

BMW AG's corporate organization, including its purported "close coordination with and dependence on the U.S. BMW Defendants" (Opp. at 12-13), also does not show purposeful NJ and SC contacts or grounds for jurisdiction over a foreign parent. *Kearney*, 2021 U.S. Dist. LEXIS 62356, at *14 ("Jurisdiction also cannot be established through a foreign manufacture's decision to contract with an in-state distributor"). Plaintiffs in *Levy v. Jaguar Land Rover N. Am., LLC*, 2020 U.S. Dist. LEXIS 18711, at *18 (D.N.J. Feb. 4, 2020), for example, also relied heavily on the fact that subsidiary Jaguar Land Rover North America, through its Jersey headquarters, "markets and distributes the same or similar cars to [plaintiff's]

car throughout the United States." *Id.* at *17. But the court held "this evidence pertains" to the subsidiary, not the parent corporation Jaguar Land Rover Ltd. *Id.*

The same is true here. BMW NA's vehicle distribution efforts say nothing about BMW AG—BMW NA is a separate and distinct legal entity from BMW AG. (Löwa Decl. ¶¶ 22-25, 27-28, 30; Suppl. Löwa Decl. ¶¶ 14-15). And the mere fact that "it may be foreseeable to BMW AG that BMW NA may sell some of its products in [the forum state] is [] insufficient to subject BMW AG to jurisdiction [in the forum state]." *Rose v. Cont'l Aktiengesellschaft*, 2001 U.S. Dist. LEXIS 24099, at *9 n.4 (E.D. Pa. Oct. 17, 2001); *see also Tomas*, 2018 U.S. Dist. LEXIS 199918, at *6 (no jurisdiction over BMW AG because "'foreseeability' alone has never been a sufficient benchmark for personal jurisdiction" and "target of the broader United States market" is not a meaningful connection to Alabama).

Plaintiffs have no evidence BMW AG specifically targeted NJ because it did not do so. BMW AG sells cars *ex works* to BMW NA abroad or in foreign trade zones (FTZ), and *BMW NA* then distributes the cars from NJ to dealerships across the U.S. (Löwa Decl. ¶¶ 12, 15, 27, 29; Suppl. Löwa Decl. ¶¶ 5-9). Once BMW AG sells cars to BMW NA, by definition, it no longer owns or controls the cars. And there is no evidence BMW NA acts as BMW AG's "sales agent" either—BMW NA makes its own decision as to where to sell the cars it buys from BMW AG. (Löwa

Decl. ¶¶ 25, 27, 30; Suppl. Löwa Decl. ¶¶ 5, 8-9).[6] "Absent direction or control, the mere fact that a distributor sells a defendant's products in the forum state does not support the exercise of jurisdiction." *Fischer*, 376 F. Supp. 3d at 1187.[7]

*Second*, BMW MC is also a separate and distinct legal entity from BMW AG. (Löwa Decl. ¶ 22; Suppl. Löwa Decl. ¶¶ 6-7). That BMW MC has a factory in SC which assembles vehicles for worldwide distribution does not mean BMW AG targeted SC. BMW AG purchases fully-assembled cars from BMW MC for distribution worldwide in transactions that occur in a FTZ (Suppl. Löwa Decl. ¶¶ 6-8), which is subject to special customs treatment in the first place. *See BMW Mfg. Corp. v. United States*, 241 F.3d 1357, 1359 (Fed. Cir. 2001) ("foreign goods imported into th[e] [BMW MC South Carolina] facility, whether complete motor vehicles or automotive components, are [] entitled to receive beneficial FTZ treatment.").[8]  BMW AG then sells cars it purchases from BMW MC to BMW NA,

---

[6] Plaintiffs' citation to *Rickman v. BMW of N. Am. LLC*, 538 F. Supp. 3d 429, 443 (D.N.J. 2021) (Opp. at 13-14) is a red-herring. *Rickman* denied BMW AG's motion to dismiss but granted jurisdictional discovery while specifically holding "[t]his is not to say that Plaintiffs have conclusively proven the existence of specific jurisdiction. … [and] [w]hat discovery may provide is further factual development regarding BMW AG's interactions with BMW NA's marketing team concerning promotion of the vehicles in the U.S." *Id.* at 443.

[7] *See also Eaves v. Pirelli Tire, LLC*, 2014 U.S. Dist. LEXIS 64866, at *52-53 (D. Kan. May 12, 2014) (distributor's role in the sale of defendant's products did not "match[] what Justice O'Connor was describing in *Asahi*" where the distributor "unilaterally decide[d] when and where to distribute [the defendants'] tires").

[8] *See also Hawaiian Indep. Refinery v. United States*, 81 Cust. Ct. 117, 118 (U.S. 1978) (For "entry of foreign merchandise … a foreign trade zone is not considered to be a part of the Customs territory of the United States.").

also in the FTZ. (Suppl. Löwa Decl. ¶¶ 6-8). As discussed below, Plaintiffs' fraud/consumer protection and warranty claims do not relate to these interactions.

> **B.** **Plaintiffs' Consumer Protection Claims Do Not Arise Out of or Relate to BMW AG's NJ or SC Contacts.**

For the second part of the specific jurisdiction analysis, Plaintiffs must demonstrate their claims arise out of or relate to BMW AG's purposeful activities directed at NJ and SC. *Oliver v. Funai Corp.*, 2015 U.S. Dist. LEXIS 169998, at *20 (D.N.J. Dec. 21, 2015); *Maseng v. Lenox Corp.*, 483 F. Supp. 3d 360, 369-71 (D.S.C. 2020). Plaintiffs do not do this. They instead rely on *Skyhop Techs., Inc. v. Narra*, 58 F.4th 1211, 1229 (11th Cir. 2023) and *Ford Motor Co. v. Mont. Eighth Judicial Dist. Court*, 592 U.S. 351, 362 (2021) (Opp. at 18-19) to argue their claims do not need to arise out of (*i.e.*, be caused by) the contacts, but can relate to (*i.e.*, no strict causation needed) BMW AG's contacts with NJ and SC. That distinction, even if adopted by this Court, ultimately does not save Plaintiffs. Indeed, in *Kearney v. BMW AG*, 2024 U.S. Dist. LEXIS 239520 (D.N.J. May 16, 2024), the Court cited *Ford* and reasoned that "Plaintiffs have not adequately demonstrated or alleged that their out-of-state, marketing-related fraud and misrepresentation claims arise out of or relate to [BMW AG's] New Jersey contacts—for example, that BMW NA in fact used any of BMW AG's marketing materials or that BMW AG's marketing materials appeared in the states in which Plaintiffs purchased their respective BMW

vehicles." *Id.* at *6. Plaintiffs here also fail to demonstrate any connection between their claims and BMW AG's minimal NJ and SC contacts.

Even without a strict causation requirement, Plaintiffs' claims still do not relate to BMW AG's limited NJ and SC contacts. The crux of Plaintiffs' argument is that "[n]o Class Vehicle sales or warranties would have occurred without BMW AG's contacts with New Jersey, as it designed vehicles specifically for the U.S. market, then enlisted BMW America to directly ship and sell its products there." (Opp. at 19). They claim their "consumer protection and fraud claims similarly arise out of or relate to the marketing, distribution, and manufacture of the Class Vehicles through New Jersey and South Carolina because BMW AG managed BMW America and BMW Mfg." (*Id.*).

Yet neither of these arguments demonstrates that Plaintiffs' claims arise out of or relate to BMW AG's NJ or SC contracts. As previously set forth in the Löwa Declaration, BMW AG does not advertise or warrant cars in the U.S., period. (Löwa Decl. ¶¶ 14, 16, 17; Suppl. Löwa Decl. ¶¶ 16-17). The warranty manual for Plaintiffs' vehicles unambiguously states BMW NA is the lone warrantor.[9] BMW AG also does not make warranty coverage decisions. (Suppl. Löwa Decl. ¶ 17). Nor does BMW AG dictate or manage the BMW NA's warranty or other responsibilities.

---

[9] *See* https://www.bmwusa.com/content/dam/bmw/common/warranty-books/2015/2015-BMW-X3-X4-X5-X6-Service-Warranty-Information%20(BF03-460).pdf (Owner's Manual for 2015 BMW X5 at p. 20) (*last visited* February 25, 2025) (listing BMW NAas the sole warrantor of the vehicle).

(Suppl. Löwa Decl. ¶¶ 14). Thus, as relevant here, BMW AG does not decide whether a customer's airbag claim is covered by warranty; these decision are made by BMW NA or the dealership that is performing a warranty repair. (*Id.* ¶ 17).

These ordinary (and expected) interactions between BMW AG and BMW NA hardly rise to the level of "management" Plaintiffs portray. (Opp. at 19). The types of interactions Plaintiffs cite simply are not enough to exercise specific jurisdiction over BMW AG. *See, e.g.*, *Thornton*, 439 F. Supp. 3d at 1311 (no specific jurisdiction on claim that "BMW AG exerts complete control over BMW NA, 'made the decision as to how and when to issue a recall on the Subject Vehicle, thus exerting continued control over all of the vehicles subject to the recall ….").

## IV.    The Exercise of Personal Jurisdiction Over BMW AG Is Unreasonable.

Separately, any exercise of jurisdiction here would not "comport with 'fair play and substantial justice.'" *Int'l Shoe Co. v. Washington,* 326 U.S. 310, 316 (1945). Plaintiffs primarily argue BMW AG "purposefully and extensively targets the U.S. market and "cannot credibly claim burden." (Opp. at 21). But as discussed, Plaintiffs fail to show BMW AG had *any* contacts directed at NJ and SC on issues giving rise to the claims here. Therefore, BMW AG could not foresee or expect that it would be hailed into this Court to defend consumer claims by two Plaintiffs who purchased used 2015 X5's in South Carolina (Clark) or Massachusetts (Luiz). Neither Plaintiff bought a car in NJ or suffered harm in NJ, which is critical here

since the conduct giving rise to these claims, if any, is grounded in the alleged NJ activities of *BMW NA*.  The same is true even for SC.  *See Alexander*, 2020 U.S. Dist. LEXIS 77183, at *20 (rejecting argument the suit "arises out of BMW AG's decision to build a manufacturing plant, open dealerships, and sell cars in [SC]").

The Opposition brushes away the considerations and simply concludes they exist in all cases so the exercise of jurisdiction would be unreasonable.  (Opp. at 21-23). This reasoning completely ignores the admonition that "[g]reat care and reserve should be exercised when extending our notions of personal jurisdiction into the international field." *Asahi*, 480 U.S. at 115. Thus, even if the Court had to reach this part of the analysis, BMW AG has already shown these considerations do *not* support the exercise of jurisdiction and would offend traditional notions of fair play and substantial justice.  (Mot. Sec. III.2).

## V.    Plaintiffs' Request for Jurisdictional Discovery Should Be Denied.

Plaintiffs' request for jurisdictional discovery "in the alternative" (Opp. at 23) is a tacit admission their complaint lacks even the most basic facts to make a *prima facie* showing for personal jurisdiction over BMW AG.  Their request for leave to go on a fishing expedition should be denied, as further explained in the concurrently-filed opposition to their separate motion seeking jurisdictional discovery.

## <u>CONCLUSION</u>

For the forgoing reasons, the Motion should be granted in its entirety.

Dated: February 28, 2025                    Respectfully submitted,

*/s/ Eric Y. Kizirian*

LEWIS BRISBOIS BISGAARD &
SMITH, LLP
Eric Y. Kizirian
Zourik Zarifian
633 West 5th Street, Suite 4000
Los Angeles, CA 90071
(213) 250-1800
Fax: (213) 250-7900
eric.kizirian@lewisbrisbois.com
zourik.zarifian@lewisbrisbois.com

*Counsel (Specially Appearing) for*
*Defendant Bayerische Motoren*
*Werke Aktiengesellschaft*

16

## CERTIFICATE OF COMPLIANCE WITH LOCAL RULE 5.1

The undersigned hereby certifies that this filing was prepared using one of the font and point selections approved by this Court in Local Rule 5.1. Specifically, Times New Roman font was used in 14 point.

Dated: February 28, 2025                    Respectfully submitted,

*/s/ Eric Y. Kizirian*

LEWIS BRISBOIS BISGAARD &
SMITH, LLP
Eric Y. Kizirian
Zourik Zarifian
633 West 5th Street, Suite 4000
Los Angeles, CA 90071
(213) 250-1800
Fax: (213) 250-7900
eric.kizirian@lewisbrisbois.com
zourik.zarifian@lewisbrisbois.com

*Counsel (Specially Appearing) for Defendant Bayerische Motoren Werke Aktiengesellschaft*