**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF GEORGIA**
**ATLANTA DIVISION**

| | |
|---|---|
| IN RE: ARC AIRBAG INFLATORS PRODUCTS LIABILITY LITIGATION | MDL No. 3051<br>Case No. 1:22-md-03051-ELR |

**PLAINTIFFS' MEMORANDUM OF LAW IN OPPOSITION TO**
**DEFENDANT AUDI AKTIENGESELLSCHAFT'S MOTION TO DISMISS**

# <u>TABLE OF CONTENTS</u>

<u>**PAGE**</u>

PRELIMINARY STATEMENT ............................................................................1

RELEVANT FACTS ........................................................................................5

    A.    Plaintiff Eva Jacinto Purchased an Audi Class Vehicle with a
Defective Inflator. ................................................................5

    B.    Audi AG Manufactured Audi Class Vehicles and Conducted Its
Business Through Virginia-Based VW America to Market,
Distribute, and Sell Them in the United States. ..................................5

ARGUMENT ...............................................................................................9

I.    The Court Has Specific Personal Jurisdiction Over Audi AG .....................9

    A.    Audi AG Purposefully Availed Itself of the Privilege of
Conducting Business in Virginia. .....................................10

    B.    Plaintiff Jacinto's Claims Arise out of or Relate to Audi AG's
Contacts with Virginia. ....................................................15

    C.    Audi AG Cannot Make a Compelling Case that Exercising
Jurisdiction Would Violate Traditional Notions of Fair Play and
Substantial Justice. ...........................................................17

II.    In The Alternative, The Court Should Permit Jurisdictional Discovery ......20

III.    Audi's Copycat Rule 12(b)(6) Arguments Likewise Fail ...........................20

CONCLUSION ...........................................................................................23

i

# TABLE OF AUTHORITIES

**PAGE**

**Cases**

*Audi AG v. D'Amato*,
    469 F.3d 534 (6th Cir. 2006) ...............................................................18

*Audi AG v. Izumi*,
    204 F. Supp. 2d 1014 (E.D. Mich. 2002) ...........................................18

*Audi AG v. Shokan Coachworks, Inc.*,
    592 F. Supp. 2d 246 (N.D.N.Y. 2008)..................................................18

*Bristol-Myers Squibb Co. v. Superior Court of California*,
    582 U.S. 255 (2017)...............................................................................17

*Butler v. Porsche Cars N. Am., Inc.*,
    2016 WL 4474630 (N.D. Cal. Aug. 25, 2016) .....................................22

*Byrd v. Drive Elec., LLC*,
    2017 WL 2126910 (S.D. Ga. May 16, 2017) .......................................12

*Consulting Eng'rs Corp. v. Geometric Ltd.*,
    561 F.3d 273 (4th Cir. 2009) .................................................................9

*Daimler AG v. Bauman*,
    571 U.S. 117 (2014)...............................................................................10

*Diamond Crystal Brands, Inc. v. Food Movers Int'l, Inc.*,
    593 F.3d 1249 (11th Cir. 2010) ...........................................................17

*Doherty-Heinze v. Chrisley*,
    2021 WL 12149533 (N.D. Ga. Dec. 21, 2021) ...................................20

*Ford Motor Co. v. Montana Eighth Judicial District Court*,
    592 U.S. 351 (2021)........................................................................13, 15

*In re Capacitors Antitrust Litig.*,
    2015 WL 3638551 (N.D. Cal. June 11, 2015).....................................12

**<u>TABLE OF AUTHORITIES</u>**
**(continued)**

**<u>PAGE</u>**

*In re Nexus 6P Prods. Liab. Litig.*,
  293 F. Supp. 3d 888 (N.D. Cal. 2018) .................................................................23

*In re Takata Airbag Prods. Liab. Litig.*,
  396 F. Supp. 3d 1101 (S.D. Fla. 2019) .....................................................9, 13, 14

*In re Volkswagen "Clean Diesel" Litig.*,
  2018 WL 9393018 (Va. Cir. Ct. Oct. 4, 2018) ....................................................17

*Johnson v. Chrysler Can. Inc.*,
  24 F. Supp. 3d 1118 (N.D. Ala. 2014).................................................14, 18, 19

*King v. General Motors Corp.*,
  2012 WL 1340066 (N.D. Ala. Apr. 18, 2012).............................................11, 12

*Knapp, et al. v. Volkswagen Aktiengesellschaft, et al.*,
  No. 1:23-cv-00889-MSN-WEF (E.D. Va. filed July 10, 2023) ...........................9

*L.W. v. Audi AG*,
  108 Cal. App. 5th 95 (2025) ........................................................................*passim*

*Louis Vuitton Malletier, S.A. v. Mosseri*,
  736 F.3d 1339 (11th Cir. 2013) ......................................................................9, 10

*Madara v. Hall*,
  916 F.2d 1510 (11th Cir. 1990) ...........................................................................10

*Murphy v. FDIC*,
  208 F.3d 959 (11th Cir. 2000) .............................................................................15

*Nafta Traders, Inc. v. Corkcicle, LLC*,
  2020 WL 7422061 (M.D. Fla. May 27, 2020) .....................................................21

*Nails v. Swisher Int'l, Inc.*,
  2013 WL 6768229 (M.D. Fla. Dec. 19, 2013) .....................................................22

*Noble Security, Inc. v. MIZ Engineering, Ltd.*.
  611 F. Supp. 2d 513 (E.D. Va. 2009) ..................................................................22

*Opheim v. Volkswagen Aktiengesellschaft*,
  2021 WL 2621689 (D.N.J. June 25, 2021)...........................................11, 18, 19

# TABLE OF AUTHORITIES
## (continued)

**PAGE**

*Patt v. Volkswagen Group of America, Inc.*
  688 F. Supp. 3d 1186 (S.D. Fla. 2023).............................................................13

*Posner v. Essex Ins. Co., Ltd.*,
  178 F.3d 1209 (11th Cir. 1999) .......................................................................20

*Rep. of Panama v. BCCI Holdings (Lux.) S.A.*,
  119 F.3d 935 (11th Cir. 1997) .........................................................................18

*Rickman v. BMW of N. Am. LLC*,
  538 F. Supp. 3d 429 (D.N.J. 2021)...................................................................19

*Robinson v. Giarmarco & Bill, P.C.*,
  74 F.3d 253 (11th Cir. 1996) ...........................................................................18

*ROHM GmbH v. Bronzino*,
  2021 WL 12314430 (N.D. Ga. Nov. 30, 2021) ................................................18

*Seiz v. Quirk*,
  2013 WL 12290850 (N.D. Ga. Jan. 3, 2013).....................................................20

*SkyHop Techs., Inc. v. Narra*,
  58 F.4th 1211 (11th Cir. 2023) .............................................................10, 15, 17

*State v. Volkswagen Aktiengesellschaft*,
  669 S.W.3d 399 (Tex. 2023) ...............................................................................7

*Top Gun Ammo Sales, LLC v. COF Techs., LLC*,
  2022 WL 823061 (E.D. Mo. Mar. 18, 2022).....................................................12

*Volkswagen Grp. of Am., Inc. v. Varona*,
  2021 WL 1997573 (S.D. Fla. May 18, 2021).....................................................18

*Wallace v. Yamaha Motors Corp, U.S.A.*,
  2022 WL 61430 (4th Cir. Jan. 6, 2022).............................................................16

*Weiland v. Palm Beach Cnty. Sheriff's Off.*,
  792 F.3d 1313 (11th Cir. 2015) .......................................................................21

*Young v. Mitsubishi Motors N. Am. Corp.*,
  2020 WL 4584391 (W.D. Wash. Aug. 10, 2020)...............................................12

# TABLE OF AUTHORITIES
## (continued)

**PAGE**

**Statutes**

Va. Code Ann. § 8.01-328.1(A)(1) ............................................................9

**Court Rules**

Fed. R. Civ. P. 8(a)(2) ...........................................................................21

Fed. R. Civ. P. 10(b) .............................................................................21

Fed. R. Civ. P. 12(b)(2)......................................................................9, 13

Fed. R. Civ. P. 12(b)(6).........................................................4, 5, 20, 22

Fed. R. Civ. P. 12(e) .............................................................................21

## PRELIMINARY STATEMENT

In this multidistrict litigation, more than a hundred plaintiffs who own or lease cars with defective airbag inflators manufactured by ARC Automotive, Inc. ("ARC") assert class claims against ARC as well as the vehicle manufacturers and the companies that installed the inflators into the airbag modules. *See generally* Dkt. 157 ("Complaint").[1] Some of these cars were manufactured by Defendant Audi Aktiengesellschaft ("Audi AG"), a German automaker whose vehicles are imported for sale in the United States through its exclusive importer and distributor of Audi-manufactured vehicles in this country, Virginia-based Volkswagen Group of America, Inc. ("VW America"). ¶¶ 131–32, 186. Reasonably believing Audi vehicles were safe and reliable—or at least were free from life-threatening defects—Plaintiff Eva Jacinto purchased an Audi that contains a Defective Inflator. Had Ms. Jacinto known the vehicle's airbag could at any time explode and propel shrapnel at her, she would not have purchased the car (or at least would have paid less for it).

The Court should reject Audi AG's attempts to evade jurisdiction. Audi AG purposefully availed itself of the privilege of conducting business in the transferor forum (Virginia) when it specifically designed vehicles in Germany to be sold in the

---

[1] Unless otherwise indicated, "¶ __" refers to paragraphs of the Complaint, all emphasis has been added, and all internal citations and quotation marks have been omitted. All "Ex." citations refer to the exhibits attached to the accompanying Declaration of James E. Cecchi.

U.S. through its Virginia-based distributor, VW America. And Plaintiff's claims—which are based on Audi AG's manufacture, marketing, distribution, and sale of Class Vehicles—plainly arise out of, or at least *relate to*, its contacts with Virginia. Further, Audi AG cannot make a compelling case that subjecting it to this Court's jurisdiction would offend "traditional notions of fair play and substantial justice." Exercising jurisdiction over Audi AG thus comports with constitutional due process.

A California appellate court recently rejected the same arguments Audi AG advances here and exercised personal jurisdiction over the company. In *L.W. v. Audi AG*, the California Court of Appeal reversed a trial court's order granting Audi AG's motion to quash service of a summons for lack of personal jurisdiction. 108 Cal. App. 5th 95, 100 (2025). There, as here, Audi AG argued jurisdiction did not lie in the forum state (there, California) because VW America, not Audi AG, "was the exclusive entity that acquired Audi-manufactured vehicles from Audi in Germany, imported the vehicles into the United States, marketed the vehicles in the United States, and distributed the vehicles to authorized dealerships in California." *Id.* at 103. In short, Audi AG contended "a foreign manufacturer is not subject to personal jurisdiction in a forum state if it did not conduct activities in that state and did not directly send its products to that state." *Id.* In Audi AG's view, "California could *never* exercise personal jurisdiction over a foreign manufacturer (such as Audi [AG]) when that manufacturer relies on a separate entity (a national distributor such as

2

[VW America]) to distribute, market, and sell its products in that state." *Id.* (emphasis in original).

Rejecting Audi's arguments, the Court of Appeal noted the record "supports the conclusion that Audi intentionally and purposefully engaged a national distributor ([VW America]) to target and exploit the automobile market in California for Audi's economic benefit." *Id.* at 116. The court further explained:

> The record makes clear that there is a "regular flow" of vehicles from Audi to [VW America] to Audi-authorized dealerships across the United States, including California. To the extent Audi concedes there is evidence of sales throughout the United States but then disavows an intent to sell in California, this position appears uninformed if not disingenuous.

*Id.*

Audi AG's disingenuousness is equally on display here. It contends personal jurisdiction cannot lie because Plaintiff "transact[ed] in California with an independent dealership" and Audi AG is "the German manufacturer of the vehicle who neither imported nor distributed the vehicle in the United States, nor sold it to the dealership or Jacinto—in Virginia." Dkt. 305-1 at 1. But the same facts that led the appellate court in *L.W.* to find jurisdiction warrant doing so here. Audi AG's failure even to mention that decision (which was issued before Audi AG filed its motion) speaks volumes.

Nor does the fact that the plaintiff in *L.W.* brought suit in the state where the accident occurred alter the analysis. The court there rejected Audi AG's myopic (and

self-serving) view of what qualifies as "its own actions," and this Court should as well. Indeed, suing Audi AG in the forum where the touchstone of its U.S. contacts—VW America—resides is *at least as* reasonable as bringing a case in the jurisdiction where Plaintiff purchased her vehicle.

Further, Audi AG's perfunctory objection to "the heavy burden of litigating in a foreign court" (*id.* at 3) falls well short of the "compelling showing" it must make to demonstrate that exercising jurisdiction would contravene traditional notions of fair play and substantial justice. Nor does holding Audi AG to account in this Court (as in a Virginia court) risk "offend[ing] German sovereignty" (*id.*). Forcing Audi AG to answer for its role in disseminating life-threatening vehicles throughout this country surely will not disturb the international order.

Audi AG's Rule 12(b)(6) challenge likewise fails. Its summary "shotgun pleading" argument echoes that of other defendants and is equally unavailing. So, too, is Audi AG's attempt to evade liability for its breach of warranty.

The Court should deny the motion in its entirety. Or, at the very least, it should permit Plaintiff to conduct targeted discovery to develop facts in support of jurisdiction.

4

## RELEVANT FACTS

### A.    Plaintiff Eva Jacinto Purchased an Audi Class Vehicle with a Defective Inflator.

Plaintiff Eva Jacinto, a California resident, purchased a used Audi A3 Class Vehicle in California from an authorized Audi dealership. ¶ 186. Audi AG designed and manufactured her Audi A3. ¶¶ 132–33. Plaintiff's vehicle contains defective ARC airbag inflators, "which made the vehicle[] inherently defective and dangerous," ¶¶ 132, 186, 723, 759. When Plaintiff acquired her Audi A3, she believed, based on Audi's uniform and pervasive marketing, she was buying a safe and dependable vehicle. ¶¶ 186, 376–82. But no Defendant, including Audi AG, disclosed the true defective condition of Plaintiff's car. *Id.* Had Ms. Jacinto known about the Inflator Defect, she would not have purchased the vehicle or would have paid less for it. *Id.*

In 2022, following a field rupture, VW America issued a recall for certain Audi vehicles with a defective airbag inflator. ¶ 361. However, it did not recall the Class Vehicles. *Id.*

### B.    Audi AG Manufactured Audi Class Vehicles and Conducted Its Business Through Virginia-Based VW America to Market, Distribute, and Sell Them in the United States.

Audi AG is a German corporation with its principal place of business in Germany. ¶ 131. Defendant Volkswagen Aktiengesellschaft ("VW AG"), Audi

AG's parent company, is a German corporation with its principal place of business in Germany. ¶ 130.

VW AG is the parent company of VW America, a New Jersey corporation headquartered in Virginia. Dkt. 305-3 (Weiss Decl.) ¶ 15. VW America is the exclusive importer and distributor of Audi-manufactured vehicles in the United States. *Id.* ¶¶ 14, 17. In that capacity, VW America "purchases Audi-brand vehicles from [Audi] AG," "imports Audi vehicles to the United States," and "sells Audi vehicles to authorized Audi dealerships." *Id.* ¶ 17. In connection with these activities, VW America does business as "Audi of America, Inc." *Id.* ¶ 14. The record in *L.W. v. Audi AG* "reflects that *Audi [AG] markets its products through [VW America]*, which has agreed to serve as a sales agent in the United States." 108 Cal. App. 5th at 115; *see also* Ex. 1 (Audi AG standards for advertising imposed on business partners and for dealer advertisements).

Audi of America, LLC ("AOA") is a Delaware corporation headquartered in Virginia. ¶ 132. It is also a wholly owned subsidiary of VW AG. Dkt. 305-2. AOA's "primary purpose" is "to allow Audi AG in Germany to recognize the financial results of the Audi business in the United States through a 'control agreement,' whereby Audi AG has the right to designate the directors of Audi of America, LLC." *L.W.*, 108 Cal. App. 5th at 101-02. AOA "also 'acts as the employer of record for most Audi brand employees under [VW America].'" *Id.* at 102. AOA employs a

Brand Content Manager, who "is responsible for overseeing the internal brand content team and delivering inspiring, progressive marketing and social content that drives brand health metrics for Audi." Ex. 2 This manager "[w]orks with Audi AG to activate content production in the U.S." *Id.* Audi AG has identified AOA as one of several "relevant" companies of the Audi Group (Ex. 3 at 9), over which it "exerts control" as a result of "contractual agreements" (Ex. 4 at 184; *see also* Ex. 3, at 201 n.2 ("Audi AG exercises control [over AOA] pursuant to IFRS 10.B38"). Audi AG has included AOA and its profits in its consolidated financial statements. Ex. 3, 4.

Audi AG works on a "highly integrated basis" with its U.S.-based affiliates on the development and planning of new products and technologies for future models in the United States." Ex. 5. Further, Audi of America, Inc. and Audi AG align on a consolidated brand strategy. Ex. 6. Additionally, Hildegard Wortman, a member of Audi AG's Board of Management, has described the President of Audi of America, Inc., Daniel Weissland, as "vital for the U.S. market." Ex. 7.

As part of its relationship with Audi AG, VW America has historically entered into Importer Agreements with Audi AG. Ex. 8.[2] These agreements govern not just

---

[2] Because Audi AG has not yet produced discovery, Plaintiff does not have formal access in this case to non-public agreements or other documents governing the relationship between Audi AG and VW America. Defendants have nonetheless conceded the existence of the Importer Agreements in this case, *see* Dkt. No. 184-2 ¶ 5, and these Agreements "remain in force today" and are part of the record in other cases. *E.g.*, *State v. Volkswagen Aktiengesellschaft*, 669 S.W.3d 399, 407 (Tex. 2023) ("These provisions of the Importer Agreements provide [Audi AG] . . . with

the importation of Audi AG's vehicles, but nearly every phase of the sale of Audi AG vehicles in the U.S. Under the Importer Agreements, Audi AG has extensive responsibility over the marketing, public relations, sale, and warranty process of its vehicles, and delivers vehicles to VW America based on specific orders. *Id.*

Audi AG's and VW America's relationship is expressly "based upon mutual understanding, cooperation, trust, and confidence." *Id.* at 4. To that end, the Importer Agreement obligates Audi AG to, *inter alia*, (1) consult with VW America to develop a "sales network" in the U.S. (*id.* § 10(a)); (2) consult with VW America about agreements with dealerships (*id.* § 10(b));[3] (3) work with VW America "to plan and effectively utilize [Audi AG's] production capacity," (*id.* § 11(a)); (4) deliver products to VW America based on specific purchase orders (*id.* § 11(e)); (5) establish guidelines for VW America's marketing, advertising, and public relations efforts (*id.* §§ 15(a), 15(b)); (6) provide VW America with marketing and public relations plans, concepts and programs (*id.* § 15(a)); (7) agree with VW America on a budget for marketing and advertising (*id.* § 15(c)); (8) design marketing and advertising campaigns or activities that VW America shall consider cooperating in (*id.* § 15(e)); (9) approve terms and conditions for warranties provided to Audi

---

direct and indirect control over VW America and the dealerships for recall, warranty, and other service work.").

[3] The "standard provisions" for VW America's contractual supervision and control over Audi dealers is attached as Ex. 9.

purchasers and monitor warranty activities conducted by VW America on behalf of Audi (*id.* § 19(a)–(h)); and (10) receive reports from VW America regarding business in the American region (*id.* § 21(b)).

## ARGUMENT

## I.    The Court Has Specific Personal Jurisdiction Over Audi AG

To defeat Audi AG's Rule 12(b)(2) motion, Plaintiffs need only establish "sufficient facts to make out a prima facie case of jurisdiction." *Louis Vuitton Malletier, S.A. v. Mosseri*, 736 F.3d 1339, 1350 (11th Cir. 2013). Virginia's long-arm statute, which recognizes jurisdiction "as to a cause of action arising from the person's . . . transacting any business in [Virginia]," Va. Code Ann. § 8.01-328.1(A)(1), extends jurisdiction "to the extent permissible under the due process clause," *Consulting Eng'rs Corp. v. Geometric Ltd.*, 561 F.3d 273, 277 (4th Cir. 2009).[4] As a result, "the statutory inquiry merges with the constitutional inquiry," and personal jurisdiction depends entirely on whether federal due process is satisfied. *Id.*

---

[4] Virginia law determines whether this Court can exercise personal jurisdiction over Audi AG. Following the creation of this multidistrict litigation, Plaintiff Jacinto filed a complaint against Audi AG in the Eastern District of Virginia, which was subsequently transferred to this Court. *Knapp, et al. v. Volkswagen Aktiengesellschaft, et al.*, No. 1:23-cv-00889-MSN-WEF (E.D. Va. filed July 10, 2023). As an MDL transferee court, this Court "has all the jurisdiction and powers over pretrial proceedings in the actions transferred to [it] that the transferor judge would have had in the absence of transfer." *In re Takata Airbag Prods. Liab. Litig.*, 396 F. Supp. 3d 1101, 1137 (S.D. Fla. 2019).

To determine whether the exercise of jurisdiction over Audi AG comports with due process, the Court must examine:

> (1) whether the plaintiff's claims "arise out of or relate to" at least one of the defendant's contacts with the forum; (2) whether the nonresident defendant "purposefully availed" himself of the privilege of conducting activities within the forum state, thus invoking the benefit of the forum state's laws; and (3) whether the exercise of personal jurisdiction comports with "traditional notions of fair play and substantial justice."

*Louis Vuitton*, 736 F.3d at 1355. While Plaintiff bears the burden of satisfying the first two factors, Audi AG must "make a compelling case" that the third factor is not satisfied. *Id.* When addressing conflicting allegations and evidence, the Court must construe "all reasonable inferences in favor of the plaintiff." *Madara v. Hall*, 916 F.2d 1510, 1514 (11th Cir. 1990). Plaintiff's allegations and the other facts in the record easily satisfy all three factors.

### A.    Audi AG Purposefully Availed Itself of the Privilege of Conducting Business in Virginia.

Purposeful availment exists where the defendant's forum contacts are of its "own choice and not random, isolated, or fortuitous." *SkyHop Techs., Inc. v. Narra*, 58 F.4th 1211, 1230 (11th Cir. 2023). Of particular relevance here, "a corporation can purposefully avail itself of a forum by directing *its agents or distributors* to take action there." *Daimler AG v. Bauman*, 571 U.S. 117, 135 n.13 (2014). Audi AG purposefully availed itself of the privilege of doing business in Virginia principally

through its agreements and other interactions with its exclusive importer and distributor of Audi-manufactured vehicles in the U.S., VW America.

As the court in *Opheim v. Volkswagen Aktiengesellschaft* observed in distinguishing between evaluating jurisdiction over Audi AG based on VW America's *incorporation* in New Jersey versus (as here) maintaining its *headquarters* in Virginia:

> [I]t is easier to see deliberate targeting of the forum when the theory of personal jurisdiction is that a foreign defendant worked closely with a defendant headquartered in the forum. One can readily infer that communications were sent into the forum and that the foreign defendant knew it was doing business with a forum-based entity. The physical presence of the co-defendant in the forum means that efforts to contact or work with that defendant are more tied to the forum.

2021 WL 2621689, at *4 (D.N.J. June 25, 2021). While the court determined that plaintiffs, who sued in New Jersey, "at least made out a prima facie showing for purposeful availment" sufficient to permit jurisdictional discovery, its reasoning applies with even more force here, as Plaintiff sued Audi AG in Virginia, where VW America is *headquartered*. *Id.* at *5.

Indeed, courts regularly exercise personal jurisdiction over foreign manufacturers that engage in activities similar to Audi AG's here. For example, in *King v. General Motors Corp.*, the court exercised jurisdiction over a Canadian auto distributor that "specifically sold its products . . . for distribution in the United States." 2012 WL 1340066, at *7 (N.D. Ala. Apr. 18, 2012). The court noted this

11

commercial agreement—much like the one between Audi AG and VW America—
"was clearly not a sale to an end-user," which reinforced the propriety of jurisdiction.
*Id.* Other courts have held similarly. *See, e.g.*, *Byrd v. Drive Elec., LLC*, 2017 WL
2126910, at *4 (S.D. Ga. May 16, 2017) ("A manufacturer [purposefully avails itself
of the privilege of doing business in Georgia] when it 'specifically sells its products
to another for distribution in' the forum state, especially when that distributor is
'clearly not an end-user.'") (quoting *King*, 2012 WL 1340066, at *7); *Young v.
Mitsubishi Motors N. Am. Corp.*, 2020 WL 4584391, at *3 (W.D. Wash. Aug. 10,
2020) (foreign parent company "purposefully directs its sales activities at the United
States" and "utilizes its U.S. subsidiary, MMNA, to implement an integrated
distribution plan designed to sell Mitsubishi vehicles in the U.S."); *In re Capacitors
Antitrust Litig.*, 2015 WL 3638551, at *3 (N.D. Cal. June 11, 2015) (jurisdiction
existed where defendant "shipped electrolytic capacitors to the United States"); *Top
Gun Ammo Sales, LLC v. COF Techs., LLC*, 2022 WL 823061, at *6 (E.D. Mo. Mar.
18, 2022) (finding jurisdiction where the defendant "organized three shipments of
goods to [the forum] and contacted a freight company to place a hold on a shipment
. . . in [the forum]").In finding jurisdiction over Audi AG in *L.W.*, the California
Court of Appeal relied on the fact that "Audi, through its distributor [VW America],
intentionally placed its vehicles into the regular flow of commerce to the United
States, including to California." 108 Cal. App. 5th at 114. Likewise, in *Patt v.

12

*Volkswagen Group of America, Inc.*, the court exercised jurisdiction over Audi AG given the "indisputable" evidence that Audi AG "at least 'indirectly' serves the market of Florida" through its marketing and distribution arrangement with VW America. 688 F. Supp. 3d 1186, 1193 (S.D. Fla. 2023).

That *L.W.* and *Patt* involved personal injury actions brought by plaintiffs in their home states does not undermine the jurisdictional analysis here. Indeed, the jurisdictional hook to the forum state is even stronger here: VW America—the entity whose direct activities in the U.S. and the forum state on behalf of Audi AG supported jurisdiction in *L.W.*—is itself headquartered in Virginia. And the plaintiff in *Patt* purchased his vehicle in California, not Florida (the forum state). Under the Supreme Court's recent decision in *Ford Motor Co. v. Montana Eighth Judicial District Court*, what matters is whether the foreign defendant "systematically serve[s] a market in" the forum state. 592 U.S. 351, 365 (2021). Just as the relationship between Audi AG and its domestic distributor established jurisdiction in *Patt* and *L.W.*, so too does it here.

Ignoring the above authorities, Audi AG instead points to *In re Takata Airbag Products Liability Litigation*, where the court granted a Rule 12(b)(2) motion as to several foreign automakers, including Audi AG. 396 F. Supp. 3d 1101, 1149 (S.D. Fla. 2019). But plaintiffs there alleged jurisdiction based on the "general[]" fact that Audi of America "'engages in business, including the advertising, marketing and

sale of Audi automobiles, in all 50 states.'" *Id.* at 1148 (quoting complaint). That allegation was far less forum-specific than the fact that Audi AG imports and distributes Audi vehicles, including Plaintiff Jacinto's Class Vehicle, through its exclusive distribution agent, the Virginia-based VW America. ¶¶ 132–34. The allegations in Takata were also devoid of specificity and were not supplemented with any evidence, unlike here.

Audi AG also relies on the unremarkable principle—not at issue here—"that simply placing a product into the stream of commerce (in Germany) is not enough to establish minimum contacts (in Virginia)." Doc. 305-1 at 19. The connection between Audi AG's vehicles and Virginia did not arise by mere happenstance; rather it is the intended result of Audi AG's own business decisions. In any event, constitutionally recognized stream-of-commerce theories of jurisdiction *do* support jurisdiction here. *See L.W.*, 108 Cal. App. 5th at 114–17 (stream-of-commerce-plus standard was satisfied because "Audi markets its products through [VW America], which has agreed to serve as a sales agent in the United States"); *Johnson v. Chrysler Can. Inc.*, 24 F. Supp. 3d 1118, 1139–40 (N.D. Ala. 2014) (finding jurisdiction over Chrysler Canada pursuant to the stream-of-commerce-plus approach where the

14

foreign entity "manufactur[ed] the allegedly defective vehicle to the specifications of the United States market, and us[ed] Chrysler United States to distribute it").[5]

**B.    Plaintiff Jacinto's Claims Arise out of or Relate to Audi AG's Contacts with Virginia.**

The relatedness prong under the due process analysis is satisfied by even one "activity or an occurrence that takes place in the forum State and is therefore subject to the State's regulation." *SkyHop*, 58 F.4th at 1229. Notably, "some relationships will support jurisdiction without a causal showing." *Ford*, 592 U.S. at 362; *see also SkyHop*, 58 F.4th at 1229 ("whether the claims 'arise out of or relate to' one of the defendant's contacts—does not require direct causation"). "The principal way to establish this relationship is through an 'activity or an occurrence that takes place in the forum State and is therefore subject to the State's regulation.'" *SkyHop*, 58 F.4th at 1229.

Audi AG's substantial contacts with Virginia relate directly to Plaintiff's claims. As discussed above, Audi AG had substantial involvement and responsibility over numerous aspects of the advertising, sales, marketing, public relations, and regulatory and warranty process for its Audi vehicles—matters that were often

---

[5] Further, most of the cases Audi AG cites arise out of the *Fourth* Circuit. Dkt. 305-1 at 19. But *Eleventh* Circuit case law controls this question. *See Murphy v. FDIC*, 208 F.3d 959, 965-66 (11th Cir. 2000) (agreeing that "in cases where *federal* law is at issue, transferee courts are obligated to follow their own interpretation of the relevant law") (emphasis in original).

carried out by VW America (and Audi of America) at or through VW America's Virginia headquarters. *See supra* at 5–9. These contacts relate directly to Plaintiff's claims, as she alleges Audi AG's marketing and promotional messages induced her to believe its vehicles were safe and dependable, which was material to her decision to purchase her Audi. ¶¶ 186, 376-79; *see also* ¶ 137. Plaintiff's Class Vehicle also came with a warranty, *see* ¶ 186, that she would not have received absent Audi AG's contacts with Virginia. Plaintiff's claims thus arise out of or relate to Audi AG's contacts with Virginia.

The connection between the plaintiff's injuries and the manufacturer's conduct in *Wallace v. Yamaha Motors Corp, U.S.A.*, which Audi AG cites, was far more attenuated than here. In that case, a South Carolina resident who borrowed a motorcycle from an acquaintance in South Carolina got into an accident in Florida. The record did not include any information about how the plaintiff's acquaintance acquired the motorcycle, but it established that Yamaha initially distributed and sold the motorcycle via an authorized dealership in Kansas. 2022 WL 61430, at *1 (4th Cir. Jan. 6, 2022). The Fourth Circuit thus concluded "Yamaha's general contacts with [the forum]—namely, selling the same model motorcycle as the motorcycle from the accident"—did not subject it to jurisdiction in South Carolina. *Id.* at *4. Those "general contacts" are a far cry from the Virginia-specific contacts here.

*Bristol-Myers Squibb Co. v. Superior Court of California* is also inapposite. The Supreme Court there held non-California residents could not sue Bristol-Myers in a state court mass action in California, as the only relevant connection to California was "[t]he mere fact that *other* plaintiffs were prescribed, obtained, and ingested Plavix in California—and allegedly sustained the same injuries as did the nonresidents." 582 U.S. 255, 265 (2017). In other words, "all the conduct giving rise to the nonresidents' claims occurred elsewhere." *Id.* That is not the case here, where Audi AG's Virginia-based advertising, marketing, and distribution of the Class Vehicles is directly related to the harm Plaintiff and other Class Members suffered. *See In re Volkswagen "Clean Diesel" Litig.*, 2018 WL 9393018, at *3 (Va. Cir. Ct. Oct. 4, 2018) (rejecting VW AG and Audi AG's reliance on *Bristol-Myers Squibb* and exerting personal jurisdiction over foreign defendants due to their "marketing and advertising schemes allegedly developed" in Virginia).

## C.    Audi AG Cannot Make a Compelling Case that Exercising Jurisdiction Would Violate Traditional Notions of Fair Play and Substantial Justice.

Audi AG has not carried its burden to make "a compelling case that the exercise of jurisdiction would violate traditional notions of fair play and substantial justice." *Diamond Crystal Brands, Inc. v. Food Movers Int'l, Inc.*, 593 F.3d 1249, 1267 (11th Cir. 2010) . In making this determination, courts assess (1) "the burden on the defendant"; (2) "the forum's interest in adjudicating the dispute"; (3) "the

plaintiff's interest in obtaining convenient and effective relief"; and (4) "the judicial system's interest in resolving the dispute." *SkyHop*, 58 F.4th at 1231. And "it is only in highly unusual cases that inconvenience will rise to a level of constitutional concern." *Rep. of Panama v. BCCI Holdings (Lux.) S.A.*, 119 F.3d 935, 947–48 (11th Cir. 1997).

Audi AG's threadbare burden argument is unavailing. "Although Audi AG is a foreign company, it extensively targets the American market and has a substantial relationship to a [Virginia] company. So it cannot complain of a severe burden." *Opheim*, 2021 WL 2621689, at *6. Indeed, Audi AG has voluntarily litigated other disputes in courts throughout the U.S.[6] While Audi AG argues (in conclusory fashion) it would be burdened if forced to litigate here, it "ha[s] offered no evidence of [its] finances or any other limitations to demonstrate this burden." *ROHM GmbH v. Bronzino*, 2021 WL 12314430, at *7 (N.D. Ga. Nov. 30, 2021) (Thrash, J.). And the burden on Audi AG of defending the suit here is reduced "significantly" by modern "methods of transportation and communication." *Robinson v. Giarmarco & Bill, P.C.*, 74 F.3d 253, 259 (11th Cir. 1996); *see also Johnson*, 24 F. Supp. 3d at 1142 ("modern transportation and communication have made it much less

---

[6] *E.g.*, *Volkswagen Grp. of Am., Inc. v. Varona*, 2021 WL 1997573 (S.D. Fla. May 18, 2021); *Audi AG v. D'Amato*, 469 F.3d 534 (6th Cir. 2006); *Audi AG v. Shokan Coachworks, Inc.*, 592 F. Supp. 2d 246 (N.D.N.Y. 2008); *Audi AG v. Izumi*, 204 F. Supp. 2d 1014 (E.D. Mich. 2002).

burdensome for a party sued to defend [itself] in a State where [it] engages in economic activity").

Additionally, Virginia (and by extension, this Court as the transferee forum) has a strong interest in adjudicating claims against Audi AG and ensuring compliance with its laws by companies who are headquartered or otherwise maintain a strong presence there. *See, e.g.*, *Rickman v. BMW of N. Am. LLC*, 538 F. Supp. 3d 429, 443–44 (D.N.J. 2021) (a forum "has an interest in ensuring that companies headquartered [in that state] comply with its law"). This interest extends to ensuring compliance by those directing such companies. *Id.* "Moreover, Plaintiff[] chose th[e] [Virginia District] Court, as opposed to any other district where a named plaintiff was injured, because of [VW America's] status as the headquarters for [Audi AG's] U.S. sales market and its U.S. marketing campaign." *Id.* at 444.

Audi AG says nothing about the final two factors: Plaintiff's interest in obtaining convenient and effective relief and the judicial system's interest in resolving the dispute. These factors are therefore "either neutral, or weigh in favor of [P]laintiff." *Johnson*, 24 F. Supp. 3d at 1142. Regardless, "the alternative to litigating here would seem to be a separate suit against Audi AG in Germany, and that is plainly inefficient for the remaining parties." *Opheim*, 2021 WL 2621689, at *6. Audi AG "has made no argument that Germany has a stronger interest." *Id.*

19

## II.    In The Alternative, The Court Should Permit Jurisdictional Discovery

Courts have broad discretion to allow jurisdictional discovery and will do so if "there is a genuine dispute as to whether exercising personal jurisdiction . . . would be appropriate." *Doherty-Heinze v. Chrisley*, 2021 WL 12149533, at *5 (N.D. Ga. Dec. 21, 2021) (Batten, C.J.). Plaintiff has a "qualified right to conduct jurisdictional discovery." *Posner v. Essex Ins. Co., Ltd.*, 178 F.3d 1209, 1214 n. 7 (11th Cir. 1999). Where a genuine dispute exists, "a plaintiff faced with a motion to dismiss for lack of personal jurisdiction is entitled to reasonable discovery." *Seiz v. Quirk*, 2013 WL 12290850, at *2 (N.D. Ga. Jan. 3, 2013) (Murphy, J.).

If the Court is not inclined to deny Audi AG's motion, Plaintiff respectfully requests leave to conduct limited jurisdictional discovery. As explained more fully in the accompanying motion for jurisdictional discovery, jurisdictional facts are in genuine dispute and discovery will confirm that Plaintiff's claims arise out of Audi AG's contacts with Virginia and that Audi AG purposefully availed itself of the privilege of doing business in Virginia.

## III.    Audi's Copycat Rule 12(b)(6) Arguments Likewise Fail

At the end of its motion, Audi AG summarily asks the Court to dismiss all claims against it pursuant to Rule 12(b)(6). Its arguments fail for the reasons detailed in Plaintiffs' oppositions to the Automaker Defendants' and AOA's motions to dismiss. *See generally* Dkts. 221, 226.

20

Audi AG also contends Plaintiff engaged in improper "group pleading" by failing to specifically include Audi AG in the Complaint's defined terms "Volkswagen Defendants" and "Volkswagen Group." Dkt. 305-1 at 7. That is incorrect—Plaintiffs allege that "these entities," including Audi AG, AOA, VW AG, and VW America, "operate under the name 'Volkswagen Group'" in which capacity they "jointly actively cultivate[] a market for, design[], develop[], manufacture[], and/or sell[] Volkswagen and Audi automobiles and the replacement component parts for these vehicles, such as replacement ARC inflators, in each state and territory of the United States." ¶¶ 132–33; *see also* ¶ 135 ("Collectively the Volkswagen Group is referred to herein as the 'Volkswagen Defendants.'").

Regardless, "collective pleading" against defendants "does not run afoul" of the federal rules where, as here, "the allegations give the individual defendants sufficient notice" of their alleged misconduct. *Nafta Traders, Inc. v. Corkcicle, LLC*, 2020 WL 7422061, at *2 (M.D. Fla. May 27, 2020). The allegations in the Complaint "give[] [Audi AG] adequate notice of the claims against [it] and the factual allegations that support those claims." *Weiland v. Palm Beach Cnty. Sheriff's Off.*, 792 F.3d 1313, 1325–26 (11th Cir. 2015) (district court abused its discretion in determining complaint violated Rules 8(a)(2) and 10(b), as the subject counts were "informative enough to permit a court to readily determine if they state a claim upon which relief can be granted"). This "may explain why [Audi AG] did not move for

21

a more definite statement under Federal Rule of Civil Procedure 12(e) or otherwise assert that [it] w[as] having difficulty knowing what [it] w[as] alleged to have done and why [it] w[as] liable for doing it." *Id.* at 1324. Audi AG relies on the out-of-circuit case *Noble Security, Inc. v. MIZ Engineering, Ltd.*, where the plaintiff argued that because the court had jurisdiction over one entity, it could likewise exercise jurisdiction over two individuals "in privity" with that entity. 611 F. Supp. 2d 513, 546 (E.D. Va. 2009). By contrast, Plaintiffs here have proffered specific evidence that Audi AG engaged in distinct activities that subject it to jurisdiction and liability.[7]

Audi AG's specific challenge to Plaintiff's warranty claims also lack merit. Audi AG first asserts it is "not a party to Jacinto's written warranty and made no express warranty to her, [so] she cannot state a claim for breach against" Audi AG. Dkt. 305-1 at 24. But Audi AG relies on the partial purported warranty document attached to AOA's motion to dismiss. *Id.* (citing Dkt. 184-3). As Plaintiffs previously explained, the Court cannot take judicial notice of this document because the warranty "that covered Plaintiff's specific car is neither generally known within this Court's territorial jurisdiction nor capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." Dkt. 226 at 8–9 (quoting *Butler v. Porsche Cars N. Am., Inc.*, 2016 WL 4474630, at *1 n.1 (N.D.

---

[7] These arguments apply to Audi AG's arguments regarding personal jurisdiction as well as Rule 12(b)(6).

Cal. Aug. 25, 2016)). Additionally, the purported warranty is incomplete: AOA submitted "only six of at least 22 pages." *Id.* at 8 (citing *Nails v. Swisher Int'l, Inc.*, 2013 WL 6768229, at *1 n.5 (M.D. Fla. Dec. 19, 2013)). Audi AG's perfunctory joinder in its subsidiary's argument does nothing to remedy that deficiency.

Finally, under California law (assuming it applies entirely to the substance of Plaintiff's claims), lack of privity is not a basis to dismiss claims for breach of express or implied warranty against a remote manufacturer. *E.g.*, *In re Nexus 6P Prods. Liab. Litig.*, 293 F. Supp. 3d 888, 922–23 (N.D. Cal. 2018). Dismissal is therefore unwarranted.

## **CONCLUSION**

For the foregoing reasons, the Court should deny Audi AG's motion to dismiss. In the alternative, the Court should permit Plaintiff to take discrete jurisdictional discovery as further specified in her accompanying motion.

Dated: March 10, 2025

Respectfully submitted,

/s/ Roland Tellis
Roland Tellis
rtellis@baronbudd.com
David Fernandes
dfernandes@baronbudd.com
Adam Tamburelli
atamburelli@baronbudd.com
Sterling Cluff
scluff@baronbudd.com
Kelsey J. Elling
kelling@baronbudd.com
**BARON & BUDD, P.C.**
15910 Ventura Blvd #1600
Encino, California 91436
Tel: (818) 839-2333

/s/ Demet Basar
Demet Basar
demet.basar@beasleyallen.com
W. Daniel "Dee" Miles, III
dee.miles@beasleyallen.com
J. Mitch Williams
mitch.williams@beasleyallen.com
Dylan T. Martin
dylan.martin@beasleyallen.com
**BEASLEY, ALLEN, CROW, METHVIN, PORTIS & MILES, P.C.**
272 Commerce Street
Montgomery, Alabama 36104
Tel: (334) 269-2343

H. Clay Barnett, III (GA Bar 174058)
clay.barnett@beasleyallen.com
Thomas P. Willingham (GA Bar 235049)
tom.willingham@beasleyallen.com
**BEASLEY, ALLEN, CROW, METHVIN, PORTIS & MILES, P.C.**
Overlook II
2839 Paces Ferry Rd SE, Suite 400
Atlanta, GA 30339
Tel: (404) 751-1162

24

/s/ James E. Cecchi
James E. Cecchi
jcecchi@carellabyrne.com
**CARELLA, BYRNE, CECCHI,
BRODY & AGNELLO, P.C.**
5 Becker Farm Road
Roseland, New Jersey 07068
Tel: (973) 994-1700

Zachary Jacobs
zjacobs@carellabyrne.com
**CARELLA, BYRNE, CECCHI,
BRODY & AGNELLO, P.C.**
222 South Riverside Plaza
Chicago, Illinois 60606
Tel: (973) 994-1700

Jason H. Alperstein
jalperstein@carellabyrne.com
Zachary J. Bower
zbower@carellabyrne.com
**CARELLA, BYRNE, CECCHI,
BRODY & AGNELLO, P.C.**
2222 Ponce De Leon Blvd.
Miami, Florida 33134
Tel: (973) 994-1700

/s/ Elizabeth T. Castillo
Niall P. McCarthy
nmccarthy@cpmlegal.com
Elizabeth T. Castillo
ecastillo@cpmlegal.com
David G. Hollenberg
dhollenberg@cpmlegal.com
**COTCHETT, PITRE &
McCARTHY, LLP**
840 Malcolm Road
Burlingame, CA 94010
Tel: (650) 697-6000

Theresa E. Vitale
tvitale@cpmlegal.com
**COTCHETT, PITRE &
McCARTHY, LLP**
2716 Ocean Park Blvd., Suite 3088
Santa Monica, CA 90405
Tel: (310) 392-2008

25

/s/ David Stellings
David Stellings
dstellings@lchb.com
Michael J. Miarmi
mmiarmi@lchb.com
Katherine I. McBride
kmcbride@lchb.com
Gabriel A. Panek
gpanek@lchb.com
**LIEFF CABRASER HEIMANN &
BERNSTEIN, LLP**
250 Hudson Street, 8th Floor
New York, New York 10013-1413
Tel: (212) 355-9500

Nimish R. Desai
ndesai@lchb.com
**LIEFF CABRASER HEIMANN &
BERNSTEIN, LLP**
275 Battery Street, 29th Floor
San Francisco, California 94111
Tel: (415) 956-1000

/s/ Kevin R. Dean
Kevin R. Dean (GA Bar 214855)
kdean@motleyrice.com
Ann K. Ritter
aritter@motleyrice.com
Lance V. Oliver
loliver@motleyrice.com
Sara O. Couch
scouch@motleyrice.com
**MOTLEY RICE LLC**
28 Bridgeside Boulevard
Mount Pleasant, South Carolina 29464
Tel: (843) 216-9000

/s/ Matthew D. Schultz
Matthew D. Schultz
mschultz@levinlaw.com
William F. Cash
bcash@levinlaw.com
**LEVIN, PAPANTONIO,
RAFFERTY, PROCTOR,
BUCHANAN, O'BRIEN, BARR &
MOUGEY, P.A.**
316 S. Baylen St., Suite 600
Pensacola, FL 32502
Tel: (850) 435-7140

*Leadership Committee for Plaintiffs and the Proposed Classes*

26

/s/ Michael A. Caplan
Michael A. Caplan (GA Bar 601039)
mcaplan@caplancobb.com
T. Brandon Waddell (GA Bar 252639)
bwaddell@caplancobb.com
Ashley C. Brown (GA Bar 287373)
abrown@caplancobb.com
**CAPLAN COBB LLC**
75 Fourteenth Street NE, Suite 2700
Atlanta, Georgia 30309
Tel: (404) 596-5600

/s/ M.J. Blakely
M.J. Blakely (GA Bar 708906)
mjblakely@blakelyfirm.com
**THE BLAKELY FIRM, L.L.C.**
P.O. Box 3314
Decatur, GA 30031
Tel: (404) 491-0617

*Liaison Counsel for Plaintiffs and the Proposed Classes*

27

## **CERTIFICATION**

Pursuant to Civil Local Rule 7.1(D), the undersigned counsel certifies that this

brief has been prepared with 14-point Times New Roman, as approved by the Court

in Civil Local Rule 5.1(C).

*/s/ David Stellings*
David Stellings

28