**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF GEORGIA**
**ATLANTA DIVISION**

| | |
|---|---|
| IN RE: ARC AIRBAG INFLATORS PRODUCTS LIABILITY LITIGATION | MDL No. 3051 Case No. 1:22-md-03051-ELR |

**PLAINTIFFS' MEMORANDUM OF LAW IN OPPOSITION TO
DEFENDANT VOLKSWAGEN AKTIENGESELLSCHAFT'S
<u>MOTION TO DISMISS</u>**

# <u>TABLE OF CONTENTS</u>

<u>Page</u>

PRELIMINARY STATEMENT ..........................................................................1

RELEVANT FACTS .......................................................................................4

    A.    Plaintiffs Purchased VW Class Vehicles with a Defective
Inflator. .......................................................................................4

    B.    VW AG Manufactured Class Vehicles and Operated Through
VW America in Virginia to Market, Distribute, and Sell Them.........5

ARGUMENT ...............................................................................................9

I.    Plaintiffs Have Made A Prima Facie Case of Jurisdiction Over VW
AG.............................................................................................................9

    A.    VW AG Purposefully Availed Itself of the Privilege of
Conducting Business in Virginia Through Its Exclusive U.S.
Distributor VW America. .................................................................10

    B.    Plaintiffs' Claims Arise out of or Relate to VW AG's Contacts
with Virginia....................................................................................18

    C.    VW AG Cannot Make a Compelling Case that Exercising
Jurisdiction Would Undermine Fair Play and Substantial
Justice. ...........................................................................................20

II.    In The Alternative, The Court Should Permit Jurisdictional Discovery ......22

III.    VW AG's Rule 12(b)(6) Arguments Likewise Lack Merit .........................22

CONCLUSION ...........................................................................................25

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Asahi Metal Indus. Co. v. Superior Ct. of California, Solano Cnty.*,
  480 U.S. 102 (1987)................................................................15

*Betancourt v. Endo Pharms., Inc.*,
  2014 WL 10677480 (N.D. Ga. Dec. 17, 2014) ................................15

*Bristol-Myers Squibb Co. v. Superior Court of California*,
  582 U.S. 255 (2017)................................................................19

*Butler v. Porsche Cars N. Am., Inc.*,
  2016 WL 4474630 (N.D. Cal. Aug. 25, 2016) ................................25

*Byrd v. Drive Elec., LLC*,
  2017 WL 2126910 (S.D. Ga. May 16, 2017) ................................11

*In re Capacitors Antitrust Litig.*,
  2015 WL 3638551 (N.D. Cal. June 11, 2015)................................11

*Consulting Eng'rs Corp. v. Geometric Ltd.*,
  561 F.3d 273 (4th Cir. 2009) ....................................................9

*Daimler AG v. Bauman*,
  571 U.S. 117 (2014)................................................................3

*Doherty-Heinze v. Chrisley*,
  2021 WL 12149533 (N.D. Ga. Dec. 21, 2021) ................................22

*Ford Motor Co. v. Montana Eighth Judicial District Court*,
  592 U.S. 351 (2021)..............................................................2, 13

*Hernandez v. Volkswagen Aktiengesellschaft*,
  2025 WL 879717 (Cal. Ct. App. Mar. 21, 2025) ............................12, 13, 14, 16

*Inland Concrete Enters., Inc. v. Kraft*,
  318 F.R.D. 383 (C.D. Cal. 2016)................................................12

*Johnson v. Chrysler Can. Inc.*,
  24 F. Supp. 3d 1118 (N.D. Ala. 2014)......................................16, 21, 22

*King v. General Motors Corp.*,
  2012 WL 1340066 (N.D. Ala. Apr. 18, 2012)................................11

**TABLE OF AUTHORITIES**
**(continued)**

**Page(s)**

*L.W. v. Audi AG,*
    108 Cal. App. 5th 95 (2025) ............................................................12, 13, 14, 16

*Louis Vuitton Malletier, S.A. v. Mosseri,*
    736 F.3d 1339 (11th Cir. 2013) ....................................................................9, 10

*Madara v. Hall,*
    916 F.2d 1510 (11th Cir. 1990) ..........................................................................9

*Mich. Motor Techs. LLC v. Volkswagen Aktiengesellschaft,*
    2020 WL 3893038 (E.D. Mich. July 10, 2020)................................................13

*Morris v. SSE, Inc.,*
    843 F.2d 489 (11th Cir. 1988) ............................................................................9

*Murphy v. FDIC,*
    208 F.3d 959 (11th Cir. 2000) ..........................................................................10

*Nafta Traders, Inc. v. Corkcicle, LLC,*
    2020 WL 7422061 (M.D. Fla. May 27, 2020) ..................................................23

*Opheim v. Volkswagen Aktiengesellschaft,*
    2021 WL 2621689 (D.N.J. June 25, 2021)......................................10, 13, 20, 22

*Patt v. Volkswagen Group of America, Inc.,*
    688 F. Supp. 3d 1186 (S.D. Fla. 2023) ......................................................13, 14

*Posner v. Essex Ins. Co., Ltd.,*
    178 F.3d 1209 (11th Cir. 1999) ........................................................................22

*Rep. of Panama v. BCCI Holdings (Lux.) S.A.,*
    119 F.3d 935 (11th Cir. 1997) ..........................................................................20

*Rickman v. BMW of N. Am. LLC,*
    538 F. Supp. 3d 429 (D.N.J. 2021)...................................................................21

*Robinson v. Giarmarco & Bill, P.C.,*
    74 F.3d 253 (11th Cir. 1996) ............................................................................21

*ROHM GmbH v. Bronzino,*
    2021 WL 12314430 (N.D. Ga. Nov. 30, 2021) ................................................20

# TABLE OF AUTHORITIES
## (continued)

**Page(s)**

*Schork Grp., Inc. v. Choice! Energy Servs., Retail*, *LP*,
   2022 WL 2905231 (E.D. Pa. July 21, 2022) ......................................24

*Seiz v. Quirk*,
   2013 WL 12290850 (N.D. Ga. Jan. 3, 2013).....................................22

*SkyHop Techs., Inc. v. Narra*,
   58 F.4th 1211 (11th Cir. 2023) ....................................................18, 20

*State by Swanson v. Volkswagen Aktiengesellschaft*,
   2018 WL 6273103 (Minn. Ct. App. Dec. 3, 2018)............................14

*State v. Volkswagen Aktiengesellschaft*,
   669 S.W.3d 399 (Tex. 2023) ...........................................................7

*In re Subaru Battery Drain Prods. Liab. Litig.*,
   2021 WL 1207791 (D.N.J. Mar. 31, 2021) ......................................24

*In re Takata Airbag Products Liability Litigation*,
   396 F. Supp. 3d 1101 (S.D. Fla. 2019)............................................15

*Top Gun Ammo Sales, LLC v. COF Techs., LLC*,
   2022 WL 823061 (E.D. Mo. Mar. 18, 2022)....................................11

*In re Toyota Motor Corp. Unintended Acceleration Mktg., Sales*
*Pracs. & Prods. Liab. Litig.*,
   754 F. Supp. 2d 1145 (C.D. Cal. 2010) ...........................................25

*Vermeulen v. Renault, USA, Inc.*,
   985 F.2d 1534 (11th Cir. 1993) .......................................................15

*Volkswagen AG v. Dorling Kindersley Publ'g, Inc.*,
   614 F. Supp. 2d 793 (E.D. Mich. 2009) ..........................................20

*Volkswagen AG v. iman365-usa*,
   2020 WL 977969 (N.D. Ill. Feb. 28, 2020) .....................................20

*Volkswagen AG v. Iqbal*,
   2018 WL 10426097 (E.D. Va. Apr. 19, 2018) .................................20

*Volkswagen AG v. Verdier Microbus & Camper, Inc.*,
   2009 WL 928130 (N.D. Cal. Apr. 3, 2009).......................................20

# TABLE OF AUTHORITIES
## (continued)

**Page(s)**

*In re Volkswagen "Clean Diesel" Litig.*,
    2018 WL 9393018 (Va. Cir. Ct. Oct. 4, 2018) ..........................................3, 8, 14

*Volkswagen, AG v. Volkswagentalk.Com*,
    584 F. Supp. 2d 879 (E.D. Va. 2008) ...................................................20

*Volkswagenwerk Aktiengesellschaft v. Wheeler*,
    814 F.2d 812 (1st Cir. 1987) .................................................................5

*Walden v. Fiore*,
    571 U.S. 277 (2014) ..............................................................................16

*Wallace v. Yamaha Motors Corp, U.S.A.*,
    2022 WL 61430 (4th Cir. Jan. 6, 2022) ................................................19

*Weiland v. Palm Beach Cnty. Sheriff's Off.*,
    792 F.3d 1313 (11th Cir. 2015) .......................................................23, 24

*World-Wide Volkswagen Corp. v. Woodson*,
    444 U.S. 286 (1980) .................................................................................2

*Young v. Mitsubishi Motors N. Am. Corp.*,
    2020 WL 4584391 (W.D. Wash. Aug. 10, 2020) ...............................11

**Statutes**

Va. Code Ann. § 8.01-328.1(A)(1) ..........................................................9

## <u>PRELIMINARY STATEMENT</u>[1]

Defendant Volkswagen Aktiengesellschaft ("VW AG") designed and manufactured defective VW Class Vehicles with potentially explosive airbag inflators. Though it designs its cars in Germany, VW AG intentionally directs them into the U.S. through its subsidiary Volkswagen Group of America, Inc. ("VW America"), headquartered in Reston, Virginia. ¶¶ 134, 136-37; Dkt. 319-2 (von Bülow Decl.), ¶ 17. Indeed, VW AG uses VW America as "the exclusive entity that imports, distributes, markets, advertises, and sells Volkswagen-branded vehicles in the United States" (Dkt. 319-2, ¶ 16), meaning VW AG's pathway to the lucrative U.S. market quite literally runs through the Eastern District of Virginia. And that is where Plaintiffs Brandy Knapp, Eniko Gedo, Patricia Jones, and Francine Lewis— who purchased or leased VW Class Vehicles at artificially inflated prices due to the concealed inflator defect—properly filed suit.

Despite the pivotal role VW America plays in "helping the [VW] Group seize the historic market opportunities in the U.S.," Ex. 1, at 2, VW AG now seeks to cast its exclusive U.S. distributor as just "some third party with whom it allegedly

---

[1] Unless otherwise indicated, "¶ __" refers to paragraphs of the Corrected Consolidated Class Action Complaint (Dkt. 157), all emphasis has been added, and all internal citations and quotation marks have been omitted. "Ex. __" refers to exhibits to the accompanying Declaration of James E. Cecchi ("Cecchi Decl.").

has a relationship" (Dkt. 319-1, at 15). VW AG's litigation-induced amnesia is belied by the factual record and abundant caselaw.

Indeed, the U.S. Supreme Court has repeatedly recognized that VW AG is subject to specific personal jurisdiction based on its products' ties to the relevant fora. In *World-Wide Volkswagen Corp. v. Woodson*, the Court explained:

> [I]f the sale of a product of a manufacturer or distributor **such as Audi or Volkswagen** is not simply an isolated occurrence, but arises from the efforts of the manufacturer or distributor to serve directly or indirectly, the market for its product in other States, it is not unreasonable to subject it to suit in one of those States if its allegedly defective merchandise has there been the source of injury to its owner or to others.

444 U.S. 286, 297 (1980). More than forty years later, in *Ford Motor Co. v. Montana Eighth Judicial District Court*, the Supreme Court described "the Audi/Volkswagen scenario" as "a paradigm case of specific jurisdiction" and reiterated that jurisdiction lies over a manufacturer that "serve[s], directly or indirectly, the market" in the forum state. 592 U.S. 351, 363, 364 (2021). "As in *World-Wide Volkswagen*, the Court did not limit jurisdiction to where the car was designed, manufactured, or first sold." *Id.* at 364.

In this case, Plaintiffs allege VW AG and VW America "jointly actively cultivate[] a market for, design[], develop[], manufacture[], and/or sell[] Volkswagen and Audi automobiles and the replacement component parts for these vehicles," and VW America's business activities include "the advertising, marketing, and sale of VW automobiles nationwide." ¶¶ 133-34. Further, contrary

- 2 -

to the conclusory and in many instances irrelevant statements of VW AG's declarant, the company's own public statements regarding its relationship with VW America and VW AG's continuous efforts to capitalize on the U.S. market strongly support jurisdiction. In short, VW AG's connection with Virginia "is not incidental," as "Plaintiffs' claims . . . directly involve the misrepresentation of the fraudulent vehicles allegedly marketed and advertised under direction of [VW AG]" from VW America's headquarters there. *In re Volkswagen "Clean Diesel" Litig.*, 2018 WL 9393018, at *4 (Va. Cir. Ct. Oct. 4, 2018) (unpublished) ("*VW Clean Diesel*").

Embodying the adage that "if at once [or twice, or three times] you don't succeed, try, try again," VW AG once again presses its tired challenge to jurisdiction. Its overarching argument is that because VW AG and VW America "are distinct entities with distinct business activities," Plaintiffs "cannot show that VW [AG], as opposed to its independent distributor, has purposefully availed itself of the laws of Virginia." Dkt. 319-1, at 2–3. But as the above decisions and others demonstrate, jurisdiction over VW AG does not turn on whether it physically stepped into Virginia. As the Supreme Court has observed, "a corporation can purposefully avail itself of a forum by directing *its agents or distributors* to take action there." *Daimler AG v. Bauman*, 571 U.S. 117, 135 n.13 (2014). VW AG's Virginia contacts through VW America subject VW AG to jurisdiction there, and it is thus properly before this MDL Court.

VW AG's perfunctory objection to "the heavy burden" of litigating in the U.S. falls well short of the compelling showing it must make to demonstrate that exercising jurisdiction would contravene traditional notions of fair play and substantial justice. Nor does holding VW AG to account for its role in disseminating dangerous vehicles throughout this country risk offending German sovereignty.

VW AG's Rule 12(b)(6) challenge likewise fails. Its summary "group pleading" argument echoes that of other defendants and is equally unavailing. So, too, is VW AG's attempt to evade liability for its breach of warranty.

The Court should deny VW AG's motion in its entirety. In the alternative, at the very least, it should permit Plaintiffs to conduct targeted jurisdictional discovery.

## **RELEVANT FACTS**

### A.    **Plaintiffs Purchased VW Class Vehicles with a Defective Inflator.**

Plaintiffs Brandy Knapp, Eniko Gedo, Patricia Jones, and Francine Lewis each purchased or leased a Volkswagen Class Vehicle from an authorized Volkswagen dealership. ¶¶ 154, 185, 187, 189. Those vehicles are defective and dangerous because they contain defective ARC airbag inflators. ¶¶ 154, 185, 187, 189; *see also* ¶¶ 1158-68, 1463-74, 2830-37, 2409-19. When Plaintiffs acquired their vehicles, they believed, based on VW AG's uniform and pervasive marketing, that the cars were safe and dependable. ¶¶ 154, 185, 187, 189, 376-82. But neither VW AG nor any other Defendant disclosed the Inflator Defect, which rendered those

statements misleading. ¶¶ 376-79, 381. Had Defendants done so, Plaintiffs would not have purchased or leased the vehicles or would have paid a lower price that reflected their true value in light of the defect. ¶¶ 154, 185, 187, 189, 380-823.

In 2022, VW America issued a recall of certain Audi and VW Class Vehicles. ¶ 367. The limited recall does not include these four Plaintiffs' vehicles. *Id.*

### B. VW AG Manufactured Class Vehicles and Operated Through VW America in Virginia to Market, Distribute, and Sell Them.

VW AG is a German corporation with its principal place of business in Germany. ¶ 130. It is the parent company of VW America. ¶ 133; Dkt. 319-2, ¶ 17.

VW AG has "invested substantial time, money, and effort in choosing its distributors and dealers in helping them maintain and improve the quality of services offered by them." *Volkswagenwerk Aktiengesellschaft v. Wheeler*, 814 F.2d 812, 814 (1st Cir. 1987). VW America (d/b/a Audi of America, Inc.), a corporation organized under New Jersey law with headquarters in Virginia (¶ 134), "is the *exclusive* entity that imports, distributes, markets, advertises, and sells Volkswagen-branded vehicles in the United States." Dkt. 319-2, ¶ 16. VW America advertises, markets, and sells VW automobiles nationwide. ¶ 134.

VW AG and VW America operate together under the name "Volkswagen Group." ¶ 133. "Within its brands, the [VW] Group is present in all relevant markets around the world. The key sales markets currently include . . . the USA." Ex. 2, at 103, 116. The Volkswagen Group "want[s] to . . . take advantage of [its] growth

opportunities in North America," with products "tailored to the various requirements of [its] customers in different regions." *Id.* at 6. It "intend[s] North America to become [its] third core region alongside Europe and China by 2030." *Id.* at 96. The VW Group also maintains eight production sites in North America. *Id.* at 178.

Senior VW AG executives have long served in leading roles at VW America, which further demonstrates VW AG's influence over its exclusive U.S. distributor. For example, in 2014 Michael Horn, who previously served as the Global Head of After Sales at VW AG—which included responsibility for the U.S. market—joined VW America as CEO and President. Ex. 3, at 2. In July 2022, the Volkswagen Group announced that Pablo Di Si would take over as CEO for both VW America and the Volkswagen brand in the North American region. Ex. 1, at 2. According to then-Volkswagen Group CEO Herbert Diess, Di Si would "be pivotal in helping the [VW] Group seize the historic market opportunities in the U.S., taking [its] growth strategy in the region to the next level." *Id.* And in December 2024, Kjell Gruner replaced Di Si as president and CEO of VW of America. Ex. 4, at 1. According to Gunnar Kilian, the VW Group Board Member for Human Resources at VW AG: "'Gruner is an absolute expert for the US market. He has over 25 years of experience in the automotive industry and extensive know-how in exploiting and expediting growth opportunities in North America." *Id.* at 2. Kilian added, "Volkswagen AG is

indebted to his predecessor, Pablo Di Si," who "laid the foundation for the positive development of our North American strategy.'" *Id.*

Further, the VW AG Board of Management, which "has sole responsibility for managing the Company in the Company's best interests," includes Dr. Arno Antlitz, who serves both as VW AG's chief finance and operating officer and as chairperson of VW America's supervisory board. Ex. 2, at 43, 56, 102, 103.

To facilitate its distribution, marketing, and sale of Volkswagen vehicles in the U.S., VW AG has entered into importer agreements with VW America.[2] Through those agreements, VW AG participates extensively in the marketing, public relations, sale, and warranty process of its vehicles to U.S. customers, and delivers vehicles to VW America based on specific orders. Ex. 5, at 11-17, 18-21. The agreements provide that VW AG must, among other things, (1) consult with VW America to develop a "sales network" in the U.S. (§ 10(a)); (2) consult with VW America about agreements with dealerships (§ 10(b)); (3) agree with VW America on its "annual sales objectives and delivery schedules," to allow VW America "to exploit market opportunities" (§ 11(a)); (4) deliver products to VW America based on specific purchase orders (§ 11(e)); (5) establish guidelines for VW America's

---

[2] While Plaintiffs do not have access to non-public agreements or other documents governing the relationship between VW AG and VW America, the importer agreement "remain[s] in force today" and is part of the record in other cases. *E.g.*, *State v. Volkswagen Aktiengesellschaft*, 669 S.W.3d 399, 407 (Tex. 2023).

marketing, advertising, and public relations efforts (§§ 15(a), 15(b));[3] (6) provide VW America with marketing and public relations plans, concepts and programs (§ 15(a)); (7) agree with VW America on a budget for marketing and advertising (§ 15(c)); (8) design marketing and advertising campaigns or activities that VW America shall consider cooperating in (§ 15)(e)); (9) approve terms and conditions for written warranties and monitor VW America's warranty activities (§§ 19(a)-(h)); and (10) receive reports from VW America regarding business in the American region (§§ 21(a)-(b)). *Id.* at 11-13, 15, 18-21.

Aided by VW America, VW AG and its affiliates have achieved significant success in pervading the North American and U.S. markets. In fiscal year 2019, for example, the VW Group delivered 654,118 vehicles to the United States (Ex. 6, at 7) and recorded sales revenue of $48.4 billion (USD) in North America (Ex. 7, at 22-23). In fiscal year 2023, "significant or strong growth was reported in the overall markets," including the North America regions, and a "significantly expanding US market than in the previous year." Ex. 2, at 111, 118, 119. That year, VW AG sold 18.6 million passenger and light commercial vehicles in North America, which

---

[3] *See also VW Clean Diesel*, 2018 WL 9393018, at *6 ("language in the importer agreement . . . includes that [VW America] will 'see to it' that all marketing materials comply with VW AG's standards").

generated $76 billion (USD) in sales revenue. *Id.* at 20, 112. This included deliveries of 639,622 passenger cars to customers in the U.S. *Id.* at 120.

## ARGUMENT

### I.    Plaintiffs Have Made A Prima Facie Case of Jurisdiction Over VW AG

At this stage, Plaintiffs need only establish "sufficient facts to make out a prima facie case of jurisdiction." *Louis Vuitton Malletier, S.A. v. Mosseri*, 736 F.3d 1339, 1350 (11th Cir. 2013). When addressing conflicting allegations and evidence, the Court must construe "all reasonable inferences in favor of the plaintiff." *Madara v. Hall*, 916 F.2d 1510, 1514 (11th Cir. 1990). To the extent Plaintiffs' allegations are uncontroverted by evidence proffered by VW AG, the Court must construe the allegations as true. *Morris v. SSE, Inc.*, 843 F.2d 489, 492 (11th Cir. 1988).

Because Plaintiffs filed suit in the Eastern District of Virginia, this Court—in its capacity as the MDL transferee court—must determine whether jurisdiction lies over VW AG in that venue. Virginia's long-arm statute, which recognizes jurisdiction "as to a cause of action arising from the person's . . . [t]ransacting any business in [Virginia]," Va. Code Ann. § 8.01-328.1(A)(1), extends jurisdiction "to the extent permissible under the due process clause," *Consulting Eng'rs Corp. v. Geometric Ltd.*, 561 F.3d 273, 277 (4th Cir. 2009). The statutory question thus "merges with the constitutional inquiry," i.e., whether federal due process is satisfied. *Id.* Eleventh Circuit caselaw (not any of the *Fourth* Circuit decisions VW

AG cites) controls that question. *See Murphy v. FDIC*, 208 F.3d 959, 965-66 (11th Cir. 2000) ("in cases where *federal* law is at issue, transferee courts are obligated to follow their own interpretation of the relevant [federal] law") (emphasis in original). Jurisdiction is proper here because (1) VW AG "purposefully availed" itself of the privilege of conducting business in Virginia, and thus invoked the benefit of its laws; (2) Plaintiffs' claims "arise out of or relate to" VW AG's contacts with Virginia; and (3) VW AG cannot "make a compelling case" that exercising jurisdiction would offend "traditional notions of fair play and substantial justice." *Louis Vuitton*, 736 F.3d at 1355.

### A. VW AG Purposefully Availed Itself of the Privilege of Conducting Business in Virginia Through Its Exclusive U.S. Distributor VW America.

VW AG purposefully availed itself of the privilege of doing business in Virginia principally through its agreements and continuous interactions with VW America. As the court in *Opheim v. Volkswagen Aktiengesellschaft* explained:

> [I]t is easier to see deliberate targeting of the forum when the theory of personal jurisdiction is that a foreign defendant worked closely with a defendant headquartered in the forum. One can readily infer that communications were sent into the forum and that the foreign defendant knew it was doing business with a forum-based entity. The physical presence of the co-defendant in the forum means that efforts to contact or work with that defendant are more tied to the forum.

2021 WL 2621689, at *4 (D.N.J. June 25, 2021). While the court determined that plaintiffs, who sued in New Jersey, "at least made out a prima facie showing for

purposeful availment" sufficient to permit jurisdictional discovery, its reasoning applies with even more force here, as these Plaintiffs sued VW AG in Virginia, where VW America is *headquartered*.

Courts regularly exercise personal jurisdiction over foreign manufacturers that engage in activities similar to VW AG's here. For example, in *King v. General Motors Corp.*, the court exercised jurisdiction over a Canadian auto distributor that "specifically sold its products . . . for distribution in the United States." 2012 WL 1340066, at *7 (N.D. Ala. Apr. 18, 2012). That commercial agreement—much like the one between VW AG and VW America—"was clearly not a sale to an end-user," which reinforced the propriety of jurisdiction. *Id.* Other courts have held similarly. *See, e.g.*, *Byrd v. Drive Elec., LLC*, 2017 WL 2126910, at *4 (S.D. Ga. May 16, 2017) ("A manufacturer [purposefully avails itself of the privilege of doing business in Georgia] when it 'specifically sells its products to another for distribution in' the forum state, especially when that distributor is 'clearly not an end-user.'") (quoting *King*, 2012 WL 1340066, at *7).[4]

---

[4] *See also Young v. Mitsubishi Motors N. Am. Corp.*, 2020 WL 4584391, at *3 (W.D. Wash. Aug. 10, 2020) (foreign company "purposefully directs its sales activities at the United States" and "utilizes its U.S. subsidiary . . . to implement an integrated distribution plan designed to sell Mitsubishi vehicles in the U.S."); *In re Capacitors Antitrust Litig.*, 2015 WL 3638551, at *3 (N.D. Cal. June 11, 2015) (jurisdiction existed where defendant "shipped electrolytic capacitors to the United States"); *Top Gun Ammo Sales, LLC v. COF Techs., LLC*, 2022 WL 823061, at *6 (E.D. Mo. Mar. 18, 2022) (finding jurisdiction where

Indeed, courts have repeatedly determined jurisdiction is proper over *VW AG* in circumstances similar to those here. Most recently, in *Hernandez v. Volkswagen Aktiengesellschaft*, the California Court of Appeal reversed a trial court's order granting VW AG's motion to quash service of a summons for lack of personal jurisdiction. 2025 WL 879717 (Cal. Ct. App. Mar. 21, 2025) (unpublished).[5] VW AG argued jurisdiction did not lie in the forum state (there, California) "because VWAG did not purposefully avail itself of the [forum] market" and VW America, not VW AG, "served the [forum] market during the relevant time period." *Id*. at *1. The Court of Appeal recognized that in a "very similar" case, *L.W. v. Audi AG*, 108 Cal. App. 5th 95 (2025) ("*Audi AG*"), another appellate panel found personal jurisdiction over German car manufacturer Audi AG "because 'Audi [AG], through its distributor'"—also VW America—"'intentionally placed its vehicles into the regular flow of commerce to the United States, including to California.'" *Hernandez*, 2025 WL 879717, at *6. Specifically, "VWAG purposefully availed itself of the California market through the contractual obligations it created with [VW

---

defendant "organized three shipments of goods to [the forum] and contacted a freight company to place a hold on a shipment . . . in [the forum]").

[5] "Although California Rules of Court, [R]ule 8.1115 prohibits citations to unpublished decisions, a federal court exercising diversity jurisdiction is not bound by a state's procedural rules." *Inland Concrete Enters., Inc. v. Kraft*, 318 F.R.D. 383, 405–06 (C.D. Cal. 2016) (alteration in original).

America]"—i.e., the importer agreements—"and its indirect, systematic service of the California market through [VW America]." *Id*. at *7.[6]

Additionally, "[f]ollowing *Ford* and *Audi AG*," the relatedness prong of the due process inquiry "[was] met" because "VWAG's forum contacts were its acts to continually serve the California market with its product through [VW America], and [VW America] undisputedly sold Volkswagen products and established dealerships and repair shops in California during the relevant timeframe." *Id*. at *10. The reasoning in *Hernandez* and *Audi AG*, which echoes decades of Supreme Court precedent, applies equally here.

Similarly, in *Patt v. Volkswagen Group of America, Inc.*, the court exercised jurisdiction over Audi AG, given the "indisputable" evidence that Audi AG "at least 'indirectly' serves the market of Florida" through its marketing and distribution arrangement with VW America. 688 F. Supp. 3d 1186, 1193 (S.D. Fla. 2023); *see also Mich. Motor Techs. LLC v. Volkswagen Aktiengesellschaft*, 2020 WL 3893038, at *6 (E.D. Mich. July 10, 2020) (because "VWAG acted in concert with its wholly-owned subsidiary, Volkswagen Group of America, to ship to and sell thousands of vehicles in the United States . . . [i]ts conduct plainly amounts to 'an action of the

---

[6] That *Hernandez* involved an earlier version of VW AG's importer agreement is irrelevant. *See, e.g.*, *Opheim*, 2021 WL 2621689, at *2–6 (current version of importer agreement between Audi AG and VW America, which is nearly identical to current version of VW AG importer agreement, "indicates that forum-specific facts could exist" and supported personal jurisdiction over Audi AG).

defendant purposefully directed toward the forum.'"). And in *State by Swanson v. Volkswagen Aktiengesellschaft*, the court upheld jurisdiction because VW AG "'purposefully availed itself of the benefits and protection of Minnesota law'" where it "acted with and through its United States affiliates to obtain legal certification to sell its vehicles in the United States, including those registered and operated in Minnesota," "transacted business through at least ten Volkswagen-specific dealerships located in Minnesota," and "oversaw the sales and marketing efforts of its vehicles to Minnesota resident." 2018 WL 6273103, at *4 (Minn. Ct. App. Dec. 3, 2018) (unpublished).

The jurisdictional hook to the forum state is even stronger here than in *Hernandez*, *Audi AG*, and *Patt* (all of which involved personal injury claims) because VW America—whose direct activities in the U.S. and the forum state supported jurisdiction over VW AG and Audi AG in *Hernandez* and *Audi AG*, respectively—is itself headquartered in Virginia. And the plaintiff in *Patt* purchased his vehicle in California, not Florida (the forum state). Further, in *VW Clean Diesel*, a Virginia trial court held personal jurisdiction existed over VW AG with respect to claims by "non-Virginia Plaintiffs." 2018 WL 9393018, at *1. The court rejected VW AG's argument—which it reiterates here—that "there is no connection between themselves and [Virginia]" because plaintiffs' claims "involve conduct initiated by [VW America], and not the German Defendants [including VW AG]." *Id.* The

relationship between VW AG and VW America, as well as VW America's role in distributing, marketing, and selling defective VW Class Vehicles for VW AG, likewise supports jurisdiction in this case.

Ignoring the above authorities, VW AG instead points to *In re Takata Airbag Products Liability Litigation*, where the court dismissed Audi AG and several other foreign automakers. 396 F. Supp. 3d 1101, 1149 (S.D. Fla. 2019). But in contrast to the myriad forum-specific facts Plaintiffs proffer here, the plaintiffs in *Takata* alleged jurisdiction based on the "general[]" fact that Audi of America "'engages in business, including the advertising, marketing and sale of Audi automobiles, in all 50 states.'" *Id.* at 1140 (quoting complaint). And unlike this case, the plaintiffs' allegations in *Takata* were not supplemented with any evidence. *Id.* at 1149.

Plaintiffs do not contend jurisdiction lies over VW AG based on "simply placing a product into the stream of commerce (in Germany)" (Dkt. 319-1, at 16). Rather, jurisdiction results from VW AG's substantial conduct directed at Virginia through its subsidiary there—the "something more" contemplated by *Asahi Metal Indus. Co. v. Superior Ct. of California, Solano Cnty.*, 480 U.S. 102, 111, 112 (1987).[7] Thus, any applicable constitutionally-recognized stream-of-commerce

---

[7] In any event, the Eleventh Circuit has not required the more-stringent stream-of-commerce-plus standard VW AG advocates. *See Vermeulen v. Renault, USA, Inc.*, 985 F.2d 1534, 1548 & n.17 (11th Cir. 1993); *Betancourt v. Endo Pharms., Inc.*, 2014 WL 10677480, at *6 (N.D. Ga. Dec. 17, 2014) (Jones, J.) (because "the Eleventh Circuit has not clearly adopted either the 'stream of commerce' or the

theories of jurisdiction *do* support jurisdiction over VW AG. *See Hernandez*, 2025 WL 879717, at *8 ("[W]e reject VWAG's contention that it merely placed its product into the stream of commerce with awareness that the product would reach California. '[S]omething more' exists here."); *Audi AG*, 108 Cal. App. 5th at 114-17 (stream-of-commerce-plus standard was satisfied because "Audi [AG] markets its products through [VW America], which has agreed to serve as a sales agent in the United States"); *Johnson v. Chrysler Can. Inc.*, 24 F. Supp. 3d 1118, 1139-40 (N.D. Ala. 2014) (finding jurisdiction over Chrysler Canada where foreign entity "manufactur[ed] the allegedly defective vehicle to the specifications of the United States market, and us[ed] Chrysler United States to distribute it").

Finally, that Plaintiff Knapp purchased a used VW Class Vehicle at an authorized VW dealership in Montana is irrelevant, as "the relationship must arise out of contacts that the 'defendant *himself*' creates with the forum State." *Walden v. Fiore*, 571 U.S. 277, 284 (2014) (emphasis in original). VW AG has sufficient forum contacts through its Virginia-based exclusive U.S. distributor, VW America.

None of the carefully worded statements in VW AG's declaration (even assuming they are complete and accurate) undermine the facts and caselaw in

---

'stream of commerce plus' analysis as the appropriate test," the court could not "agree with [defendant]'s assertion that the U.S. Supreme Court rejected the stream of commerce theory in *Asahi*").

support of specific personal jurisdiction. Numerous statements in the declaration go to an alter ego theory or whether *general* personal jurisdiction is appropriate, neither of which Plaintiffs advance. *E.g.*, Dkt. 319-2, ¶¶ 4-6 (stating VW AG is incorporated under the laws of Germany and is not incorporated or headquartered in Virginia); ¶ 13 (stating VW AG does not have an agent for service in Virginia); ¶¶ 23-25 (claiming VW AG has separate offices from VW America and does not manage VW America's finances). These statements have no bearing on whether the Court has specific jurisdiction over VW AG based on its conduct directed to Virginia.

Further, that VW AG itself "does not design or manufacture Volkswagen vehicles in the United States" or "sell vehicles in the United States" (Dkt. 319-2, ¶ 7) does not preclude specific jurisdiction, as demonstrated by the above decisions. Nor does the fact that VW AG has no "office, factory, warehouse, or research facility" in Virginia, employ individuals in Virginia or possess real property there, or maintain bank accounts or pay taxes there (*id.* ¶¶ 9-14) shield it from specific jurisdiction, as those decisions also establish. And whether VW AG "*implement[s]* any distribution system, advertising or marketing strategy, or marketing campaign for Volkswagen vehicles sold or leased in the United States" (*id.* ¶ 7) does not speak to whether VW AG *establishes guidelines for VW America's marketing, advertising, and public relations efforts* (Ex. 5, at 15 (§§ 15(a), 15(b))); provides VW America *with marketing and public relations plans, concepts and programs* (§ 15(a)); agrees

with VW America *on a budget for marketing and advertising* (§ 15(c)); or *designs marketing and advertising campaigns or activities* for VW America (§ 15)(e))—all of which VW AG is obligated to do under its importer agreements with VW America. The declaration thus fails to controvert Plaintiffs' allegations and evidence in support of specific jurisdiction.

### B. Plaintiffs' Claims Arise out of or Relate to VW AG's Contacts with Virginia.

The relatedness prong under the due process analysis is satisfied by even one "activity or an occurrence that takes place in the forum State and is therefore subject to the State's regulation." *SkyHop Techs., Inc. v. Narra*, 58 F.4th 1211, 1229 (11th Cir. 2023). This connection "does not require direct causation." *Id.* And again— contrary to VW AG's suggestion (*see* Dkt. 319-1, at 3, 18), whether *Plaintiffs* had contacts with Virginia is immaterial.

As discussed above, VW AG was closely involved with and responsible for numerous aspects of the advertising, sales, marketing, and regulatory and warranty processes for its VW Class Vehicles, including through its subsidiary VW America. These contacts relate directly to Plaintiffs' allegations that VW AG's marketing and promotional efforts induced them to believe its vehicles were safe and dependable, which was material to their decisions to purchase or lease their VW cars. ¶¶ 154, 185, 187, 189, 376-82.

In *Wallace v. Yamaha Motors Corp, U.S.A.*, which VW AG cites, a South Carolina resident filed suit there based on injuries he sustained in an accident in Florida while riding a motorcycle he borrowed from an acquaintance in South Carolina. 2022 WL 61430, at *1 (4th Cir. Jan. 6, 2022). The court found no connection to South Carolina, as "[t]he motorcycle from the accident was designed elsewhere, manufactured elsewhere, *distributed elsewhere*, and sold elsewhere," and "the record remain[ed] silent as to how the motorcycle—originally purchased by a consumer from an authorized Yamaha dealership in Kansas—ended up in South Carolina." *Id.* at *4. There is no mystery as to how Plaintiffs' Class Vehicles "ended up in" Virginia; VW AG directed them to its exclusive U.S. distributor there.

*Bristol-Myers Squibb Co. v. Superior Court of California* is also inapposite. The Supreme Court there held non-California residents could not sue Bristol-Myers in California state court based on "[t]he mere fact that *other* plaintiffs were prescribed, obtained, and ingested Plavix in California—and allegedly sustained the same injuries as did the nonresidents." 582 U.S. 255, 265 (2017). In other words, "all the conduct giving rise to the nonresidents' claims occurred elsewhere." *Id.* By contrast, VW AG's Virginia-based advertising, marketing, and distribution of Class Vehicles through its key U.S. subsidiary VW America constitute in-forum conduct directly related to the harm Plaintiffs suffered.

### C.    VW AG Cannot Make a Compelling Case that Exercising Jurisdiction Would Undermine Fair Play and Substantial Justice.

VW cannot compellingly demonstrate that (1) "the burden on the defendant," (2) "the forum's interest in adjudicating the dispute," (3) "the plaintiff's interest in obtaining convenient and effective relief," or (4) "the judicial system's interest in resolving the dispute" weigh against jurisdiction. *SkyHop*, 58 F.4th at 1231. This is not, in short, the "highly unusual case[]" where "inconvenience will rise to a level of constitutional concern." *Rep. of Panama v. BCCI Holdings (Lux.) S.A.*, 119 F.3d 935, 947–48 (11th Cir. 1997).

"Although [VW] AG is a foreign company, it extensively targets the American market and has a substantial relationship to a [Virginia] company. So it cannot complain of a severe burden." *Opheim*, 2021 WL 2621689, at *6. Indeed, VW AG has voluntarily litigated other disputes in courts throughout the U.S., including cases *it has filed* in the Eastern District of Virginia.[8] And VW AG "ha[s] offered no evidence of [its] finances or any other limitations to demonstrate this burden." *ROHM GmbH v. Bronzino*, 2021 WL 12314430, at *7 (N.D. Ga. Nov. 30, 2021). Any such burden is, moreover, reduced "significantly" by modern "methods

---

[8]  *See, e.g.*, *Volkswagen AG v. Iqbal*, 2018 WL 10426097, at *2 (E.D. Va. Apr. 19, 2018); *Volkswagen, AG v. Volkswagentalk.Com*, 584 F. Supp. 2d 879, 880 (E.D. Va. 2008); *Volkswagen AG v. iman365-usa*, 2020 WL 977969 (N.D. Ill. Feb. 28, 2020); *Volkswagen AG v. Verdier Microbus & Camper, Inc.*, 2009 WL 928130, at *1 (N.D. Cal. Apr. 3, 2009); *Volkswagen AG v. Dorling Kindersley Publ'g, Inc.*, 614 F. Supp. 2d 793 (E.D. Mich. 2009).

of transportation and communication." *Robinson v. Giarmarco & Bill, P.C.*, 74 F.3d 253, 259 (11th Cir. 1996); *see also Johnson*, 24 F. Supp. 3d at 1142 ("modern transportation and communication have made it much less burdensome for a party sued to defend [itself] in a State where [it] engages in economic activity").

VW AG contends Virginia lacks a significant interest in this dispute because Plaintiffs Knapp, Gedo, Jones, and Lewis do not reside in Virginia and did not purchase or lease their vehicles there. Dkt. 319, at 24. But Virginia has a strong interest in addressing alleged misconduct by a foreign defendant whose exclusive U.S. distributor—with whom the foreign defendant worked closely on matters directly relevant to Plaintiffs' claims—is headquartered in that state. *See Rickman v. BMW of N. Am. LLC*, 538 F. Supp. 3d 429, 443–44 (D.N.J. 2021) (forum "has an interest in ensuring that companies headquartered [in that state] comply with its law"). Indeed, "Plaintiffs chose th[e] [Virginia District] Court . . . because of [VW America's] status as the headquarters for [VW AG's] U.S. sales market and its U.S. marketing campaign." *Id.* at 444.

VW AG does not address Plaintiffs' interest in obtaining convenient and effective relief or the judicial system's interest in resolving the dispute. These factors are therefore "either neutral, or weigh in favor of [P]laintiff[s]." *Johnson*, 24 F. Supp. 3d at 1142. Regardless, "the alternative to litigating here would seem to be a separate suit against [VW] AG in Germany, and that is plainly inefficient for the remaining

parties." *Opheim*, 2021 WL 2621689, at *6. VW AG "has made no argument that Germany has a stronger interest." *Id.*

## II.    In The Alternative, The Court Should Permit Jurisdictional Discovery

Courts have broad discretion to allow jurisdictional discovery and will do so if "there is a genuine dispute as to whether exercising personal jurisdiction . . . would be appropriate." *Doherty-Heinze v. Chrisley*, 2021 WL 12149533, at *5 (N.D. Ga. Dec. 21, 2021) (Batten, C.J.). Plaintiffs have a "qualified right to conduct jurisdictional discovery." *Posner v. Essex Ins. Co., Ltd.*, 178 F.3d 1209, 1214 n.7 (11th Cir. 1999). Where a genuine dispute exists, "a plaintiff faced with a motion to dismiss for lack of personal jurisdiction is entitled to reasonable discovery." *Seiz v. Quirk*, 2013 WL 12290850, at *2 (N.D. Ga. Jan. 3, 2013) (Murphy, J.).

If the Court is not inclined to deny VW AG's motion, Plaintiffs request leave to conduct limited jurisdictional discovery. As detailed in their accompanying motion, jurisdictional facts are in genuine dispute and discovery will confirm that VW AG purposefully availed itself of the privilege of doing business in Virginia and that Plaintiffs' claims arise out of or relate to VW AG's contacts with Virginia.

## III.    VW AG's Rule 12(b)(6) Arguments Likewise Lack Merit

VW AG also summarily asks the Court to dismiss all claims against it pursuant to Rule 12(b)(6). Dkt. 319-1, at 24-25. Its arguments fail for the reasons

detailed in Plaintiffs' oppositions to dismiss of the Automaker Defendants, VW America, and Audi of America (AOA). *See generally* Dkts. 221, 225, 226.

Nor do Plaintiffs engage in improper "group pleading" by referring to "Volkswagen Defendants," the "Volkswagen Group," and "Automaker Defendants." Plaintiffs plausibly allege VW AG and VW America "operate under the name 'Volkswagen Group'" in which capacity they "jointly actively cultivate[] a market for, design[], develop[], manufacture[], and/or sell[] Volkswagen and Audi automobiles and the replacement component parts for these vehicles, such as replacement ARC inflators, in each state and territory of the United States." ¶ 133; *see also* ¶ 134 ("VW America engages in business activities which include the advertising, marketing, and sale of VW automobiles nationwide"). None of this violates Rule 8 or 9(b).

Regardless, "collective pleading" against defendants "does not run afoul" of the Federal Rules where, as here, "the allegations give the individual defendants sufficient notice" of their alleged misconduct. *Nafta Traders, Inc. v. Corkcicle, LLC*, 2020 WL 7422061, at *2 (M.D. Fla. May 27, 2020). Plaintiffs' allegations "give[] [VW AG] adequate notice of the claims against [it] and the factual allegations that support those claims." *Weiland v. Palm Beach Cnty. Sheriff's Off.*, 792 F.3d 1313, 1325–26 (11th Cir. 2015) (district court abused its discretion in determining complaint violated Rules 8(a)(2) and 10(b), as the subject counts were "informative

enough to permit a court to readily determine if they state a claim upon which relief can be granted"). This "may explain why [VW AG] did not move for a more definite statement under Federal Rule of Civil Procedure 12(e) or otherwise assert that [it] w[as] having difficulty knowing what [it] w[as] alleged to have done and why [it] w[as] liable for doing it." *Id.* at 1324.

Further, Plaintiffs have supplemented their already sufficient allegations with facts regarding VW AG's and VW America's roles and relevant activities. *See supra* at 4–8; *Schork Grp., Inc. v. Choice! Energy Servs., Retail*, *LP*, 2022 WL 2905231, at *5 (E.D. Pa. July 21, 2022) ("'lump[ing]' "argument is belied" in part by "the declarations"). In any event, "because this case involves 'an alleged fraudulent concealment perpetrated by sophisticated corporate entities that are related to each other, [Plaintiffs] need not distinguish the specific roles that each entity played in the fraudulent concealment in order to meet the Rule 9(b) standard.'" *In re Subaru Battery Drain Prods. Liab. Litig.*, 2021 WL 1207791, at *22 (D.N.J. Mar. 31, 2021).

Additionally, VW AG challenges the express warranty claims because it is "not a party to the Plaintiffs' written warranties and made no express warranty to Plaintiffs." Dkt. 319-1, at 3-4, 25. As Plaintiffs have previously explained, the Court cannot take judicial notice of VW AG's proffered document because the warranty "that covered Plaintiff's specific car is neither generally known within this Court's territorial jurisdiction nor capable of accurate and ready determination by resort to

sources whose accuracy cannot reasonably be questioned." Dkt. 226, at 8-9 (quoting *Butler v. Porsche Cars N. Am., Inc.*, 2016 WL 4474630, at *1 n.1 (N.D. Cal. Aug. 25, 2016)). Finally, insofar as California law applies to Plaintiff Jacinto's warranty claims, lack of privity based on her purchase of a used vehicle is not a basis to dismiss claims against a remote manufacturer. *See, e.g.*, *In re Toyota Motor Corp. Unintended Acceleration Mktg., Sales Pracs. & Prods. Liab. Litig.*, 754 F. Supp. 2d 1145, 1185 (C.D. Cal. 2010) (under California law, "where a plaintiff pleads that he or she is a third-party beneficiary to a contract that gives rise to the implied warranty of merchantability, he or she may assert a claim for the implied warranty's breach").

## CONCLUSION

For the foregoing reasons, the Court should deny VW AG's motion to dismiss. In the alternative, the Court should permit Plaintiffs to take discrete jurisdictional discovery as further specified in their accompanying motion.

Dated: April 4, 2025

/s/ Roland Tellis
Roland Tellis
rtellis@baronbudd.com
David Fernandes
dfernandes@baronbudd.com
Adam Tamburelli
atamburelli@baronbudd.com
Sterling Cluff
scluff@baronbudd.com
Kelsey J. Elling
kelling@baronbudd.com
**BARON & BUDD, P.C.**
15910 Ventura Blvd #1600
Encino, California 91436
Tel: (818) 839-2333

Respectfully submitted,

/s/ Demet Basar
Demet Basar
demet.basar@beasleyallen.com
W. Daniel "Dee" Miles, III
dee.miles@beasleyallen.com
J. Mitch Williams
mitch.williams@beasleyallen.com
Dylan T. Martin
dylan.martin@beasleyallen.com
**BEASLEY, ALLEN, CROW, METHVIN, PORTIS & MILES, P.C.**
272 Commerce Street
Montgomery, Alabama 36104
Tel: (334) 269-2343

H. Clay Barnett, III (GA Bar 174058)
clay.barnett@beasleyallen.com
Thomas P. Willingham (GA Bar 235049)
tom.willingham@beasleyallen.com
**BEASLEY, ALLEN, CROW, METHVIN, PORTIS & MILES, P.C.**
Overlook II
2839 Paces Ferry Rd SE, Suite 400
Atlanta, GA 30339
Tel: (404) 751-1162

*/s/ James E. Cecchi*
James E. Cecchi
jcecchi@carellabyrne.com
**CARELLA, BYRNE, CECCHI,
BRODY & AGNELLO, P.C.**
5 Becker Farm Road
Roseland, New Jersey 07068
Tel: (973) 994-1700

Zachary Jacobs
zjacobs@carellabyrne.com
**CARELLA, BYRNE, CECCHI,
BRODY & AGNELLO, P.C.**
222 South Riverside Plaza
Chicago, Illinois 60606
Tel: (973) 994-1700

Jason H. Alperstein
jalperstein@carellabyrne.com
Zachary J. Bower
zbower@carellabyrne.com
**CARELLA, BYRNE, CECCHI,
BRODY & AGNELLO, P.C.**
2222 Ponce De Leon Blvd.
Miami, Florida 33134
Tel: (973) 994-1700

*/s/ Elizabeth T. Castillo*
Niall P. McCarthy
nmccarthy@cpmlegal.com
Elizabeth T. Castillo
ecastillo@cpmlegal.com
David G. Hollenberg
dhollenberg@cpmlegal.com
**COTCHETT, PITRE &
McCARTHY, LLP**
840 Malcolm Road
Burlingame, CA 94010
Tel: (650) 697-6000

Theresa E. Vitale
tvitale@cpmlegal.com
**COTCHETT, PITRE &
McCARTHY, LLP**
2716 Ocean Park Blvd., Suite 3088
Santa Monica, CA 90405
Tel: (310) 392-2008

/s/ David Stellings
David Stellings
dstellings@lchb.com
Michael J. Miarmi
mmiarmi@lchb.com
Katherine I. McBride
kmcbride@lchb.com
Gabriel A. Panek
gpanek@lchb.com
**LIEFF CABRASER HEIMANN &
BERNSTEIN, LLP**
250 Hudson Street, 8th Floor
New York, New York 10013-1413
Tel: (212) 355-9500

Nimish R. Desai
ndesai@lchb.com
**LIEFF CABRASER HEIMANN &
BERNSTEIN, LLP**
275 Battery Street, 29th Floor
San Francisco, California 94111
Tel: (415) 956-1000

/s/ Kevin R. Dean
Kevin R. Dean (GA Bar 214855)
kdean@motleyrice.com
Ann K. Ritter
aritter@motleyrice.com
Lance V. Oliver
loliver@motleyrice.com
Sara O. Couch
scouch@motleyrice.com
**MOTLEY RICE LLC**
28 Bridgeside Boulevard
Mount Pleasant, South Carolina 29464
Tel: (843) 216-9000

/s/ Matthew D. Schultz
Matthew D. Schultz
mschultz@levinlaw.com
William F. Cash
bcash@levinlaw.com
**LEVIN, PAPANTONIO,
RAFFERTY, PROCTOR,
BUCHANAN, O'BRIEN, BARR &
MOUGEY, P.A.**
316 S. Baylen St., Suite 600
Pensacola, FL 32502
Tel: (850) 435-7140

*Leadership Committee for Plaintiffs and the Proposed Classes*

- 28 -

<u>/s/ Michael A. Caplan</u>                  <u>/s/ M.J. Blakely</u>
Michael A. Caplan (GA Bar 601039)      M.J. Blakely (GA Bar 708906)
mcaplan@caplancobb.com              mjblakely@blakelyfirm.com
T. Brandon Waddell (GA Bar 252639)   **THE BLAKELY FIRM, L.L.C.**
bwaddell@caplancobb.com             P.O. Box 3314
Ashley C. Brown (GA Bar 287373)      Decatur, GA 30031
abrown@caplancobb.com               Tel: (404) 491-0617
**CAPLAN COBB LLC**
75 Fourteenth Street NE, Suite 2700
Atlanta, Georgia 30309
Tel: (404) 596-5600

*Liaison Counsel for Plaintiffs and the Proposed Classes*

## **<u>CERTIFICATION</u>**

Pursuant to Civil Local Rule 7.1(D), the undersigned counsel certifies that this brief has been prepared with 14-point Times New Roman, as approved by the Court in Civil Local Rule 5.1(C).

*/s/ David Stellings*