# EXHIBIT 5

*new*
*1-1-95*

# I M P O R T E R   A G R E E M E N T

**between**

**VOLKSWAGEN AKTIENGESELLSCHAFT**

**- hereinafter referred to as "VWAG" -**

**and**

**VOLKSWAGEN OF AMERICA, INC.**

**- hereinafter referred to as "VWOA"**

**A. GENERAL PRINCIPLES**

Article 1      Subject of the Agreement
Article 2      Definitions
Article 3      VWoA's Legal Status
Article 4      Area of Primary Responsibility

**B. DUTIES AND SERVICES OF VWAG**

Article 5      Supplies
Article 6      Advice and Assistance
Article 7      Identifications and Trademarks
Article 8      Warranty

**C. DUTIES AND SERVICES OF VWoA**

Article 9      Equipment and Organization of VWoA's Enterprise
Article 10     Development and Support of Contractual Enterprises
               (Dealer Network)
Article 11     Purchase of Contractual Products
Article 12     Sale of Contractual Products
Article 13     Purchase Price, Terms of Sale and Delivery, Terms of Payment
Article 14     Inventory and Assortment
Article 15     Marketing, Sales Promotion and Public Relations
Article 16     After Sales Service
Article 17     Personnel and Training of Contractual Enterprises
Article 18     Advice and Assistance to Contractual Enterprises, Business
               Management
Article 19     Warranty, Warranty Administration and Auditing
Article 20     Extended Warranty, Marketing Costs
Article 21     Reports

**D. TERM AND TERMINATION OF AGREEMENT**

Article 22     Term of Agreement
Article 23     Ordinary Termination
Article 24     Short Notice of Termination
Article 25     Termination with Immediate Effect
Article 26     Procedures upon Termination of Agreement

**E. GENERAL PROVISIONS**

Article 27     Form, Relationship with Previous Agreements, Authority to Sign on
               Behalf of VWAG
Article 28     Transferability
Article 29     Partial Invalidity
Article 30     Failure to Exercise Rights
Article 31     Liability
Article 32     Place of Performance, Jurisdiction and Applicable Law

3

**Attachments:**

Appendix 1    Contractual Products
Appendix 2    Affiliated Companies of VWAG
Appendix 3    VWAG's Terms of Sale and Delivery of Importers
Appendix 4    Trade Marks
Appendix 5    Principles for the Determination of Transfer Prices
Appendix 6    Consumer Product Warranties
Appendix 7    Recall Actions

4

**WHEREAS VOLKSWAGEN AG**, a corporation organized under the laws of Germany and maintaining offices at Wolfsburg, Germany ("VWAG") is engaged in the manufacture of high quality products designed to satisfay the requirements of a wide range of purchasers throughout the world, including the United States of America.

**WHEREAS VOLKSWAGEN OF AMERICA, INC.**, a New Jersey corporation with offices at 3800 Hamlin Road, Auburn Hills, Michigan 48326 ("VWoA") has served for many years as the importer, distributor and marketer of Volkswagen vehicles and other Volkswagen products in the Continental United States and Hawaii;

**WHEREAS VWAG** offers to continue supplying VWoA with Volkswagen vehicles and other Volkswagen products;

**WHEREAS VWoA** desires to purchase such vehicles and other Volkswagen products from VWAG; and

**WHEREAS VWAG AND VWOA** desire to continue their contractual relationship based upon mutual understanding, cooperation, trust and confidence;

**NOW THEREFORE, VWAG AND VWOA** have entered into the following

## IMPORTER AGREEMENT

### A. GENERAL PRINCIPLES

### Article 1
### Subject of the Agreement

VWAG appoints VWoA as an importer of Volkswagen vehicles and other Volkswagen products, all as described in Appendix 1, for the area of primary responsibility defined in Article 4. VWoA agrees to accept such appointment and to assume responsibility for the importation, distribution, marketing and sale of such products through retail enterprises. In particular, VWoA shall perform all the duties assumed by it under this Agreement, shall exhaust fully all market opportunities for such products within such area of responsibility and shall promote in all respects the image and good reputation of any products and services covered by this Agreement, as well as the good reputation of VWAG, any affiliated companies of VWAG and any Volkswagen retail enterprises.

5

## Article 2
## Definitions

a)    "Contractual Products" as used in this Agreement means all those products listed in Appendix 1, as modified from time to time pursuant to Article 5 (d).

b)    "Volkswagen Distribution Organization" as used in this Agreement means the importers and distributors throughout the world authorized by VWAG to sell and/or service Contractual Products, together with the enterprises at the wholesale and retail levels duly authorized by them.

c)    "Contractual Enterprises" as used in this Agreement means all enterprises within VWoA's Area of Primary Responsibility as defined in subparagraph d) which are authorized pursuant to written agreements to distribute, sell and/or service Contractual Products.

d)    "Area of Primary Responsibility" as used in this Agreement means the area specified in Article 4 (a), as modified by VWAG pursuant to Article 4 (b).

## Article 3
## VWoA's Legal Status

VWoA shall carry on all business pursuant to this Agreement as an independent entrepreneur on its own behalf and for its own account. VWoA is not an agent or representative of VWAG and shall not act or purport to act for the account of or on behalf of VWAG.

## Article 4
## Area of Primary Responsibility

a)    VWoA assumes primary responsibility for the continental United States and Hawaii, which shall be referred to hereafter as the "Area of Primary Responsibility".

b)   VWoA shall neither advertise nor employ the service of agents nor in any other manner solicit for business outside the Primary Territory of Responsibility.

c)   In the interest of a well planned and effective sales organisation, VWoA shall sell the Contractual Program only to members of the Contractual Enterprises.

## B. DUTIES AND SERVICES OF VWAG

### Article 5
### Supplies

a)   Subject to the availability of Contractual Products and constraints relating to deliveries by suppliers of VWAG, VWAG shall supply to VWoA Contractual Products as provided in this Article 5. VWAG may arrange to have Contractual Products supplied to VWoA pursuant to this Agreement by any of VWAG's affiliated companies identified in Appendix 2, as amended by the Parties from time to time.

b)   Contractual Products shall be supplied in accordance with technical specifications previously agreed upon by VWAG and VWoA and in accordance with "VWAG's Terms of Sales and Delivery for Importers" set forth in Appendix 3 as amended by VWAG from time to time.

In case VWAG has caused one of its Affiliated Companies to supply Contractual Products to VWoA, the terms of sale and delivery of such affiliated company shall be applicable.

c)   VWoA shall not modify Contractual Products delivered to it without the prior written approval of VWAG. However, to the extent that VWAG deems modification of Contractual Products necessary or desirable because of technical considerations, VWAG may at any time prior to shipment modify the Contractual Products to be delivered to VWoA, or may require VWoA to modify the Contractual Products at VWAG's expense.

d)  VWAG and VWoA may agree from time to time to modify the technical specifications of Contractual Products, whereupon Appendix 1 will be deemed amended accordingly.

## Article 6
### Advice and Assistance

a)  VWAG shall, to the extent it deems appropriate, advise and assist VWoA. In particular, if VWAG considers it appropriate, VWAG may supply VWoA with the following materials free of charge as far as possible:

-   plans, concepts and programs for the sale of Contractual Products and for the management of its service and parts business;

-   sales promotion concepts and materials for Contractual Products;

-   training material for the initial and further training of personnel of VWoA and any Contractual Enterprises;

-   systems and programs for the planning of VWoA's business activities under this Agreement and for the information and advice of Contractual Enterprises;

-   standardized electronic data programs for business administration; and

-   service and parts documentation, literature and organizational materials.

VWoA shall employ the above materials and shall use such materials in order to exploit all market opportunities in such manner and to such extent as agreed with VWAG. In the event that there will be a charge for any materials supplied pursuant to this Article 6 (a), VWAG shall obtain VWoA's prior agreement to such charge.

b)  In addition, VWAG shall to the extent it deems appropriate:



8

- commission market surveys in conjunction with VWoA and bear a share of the costs thereof;

- make available to VWoA the experience gained by VWAG in the construction of importer, distributor and dealer facilities;

- assist VWoA by making available field service and special personnel;

- assist VWoA in procuring special tools and workshop equipment.

c)    VWAG may cause any of its affiliated companies or any other Party to perform any or all of the duties described in subparagraphs a) and b) above.

d)    VWAG shall, to the extent it deems necessary, issue summaries of experience it has gained in sales and after sales service of Contractual Products in areas outside the Area of Primary Responsibility and communicate such summaries to VWoA.

e)    VWAG will under no circumstances be obligated to perform any acts in the Area of Primary Responsibility or send any personnel into the Area of Primary Responsibility in carrying out its obligations under this Agreement.

### Article 7
### Identifications and Trademarks

It is in the mutual interest of VWAG and the Volkswagen Distribution Organization to identify their activities and the services in a uniform manner on a worldwide basis.

a)    VWoA shall accordingly be entitled and obligated to make use of the trademarks and service marks set forth in Appendix 4, as amended by VWAG from time to time, exclusively in connection with its activities pursuant to this Agreement and shall display the said marks prominently on its premises and on its stationery and business forms. In order to preserve the integrity of the said marks and maintain uniform and consistent product identification; VWoA shall employ the said marks only in the form and for the purposes

prescribed by VWAG. VWAG will make specimens of the said marks available to VWo'A.

b)   VWAG consents to the use by VWoA of the word "Volkswagen" as part of its corporate name "Volkswagen of America, Inc". This authorization is non-exclusive and non-transferable and is not intended to extend to any other business or corporate name which VWoA may wish to adopt in the future. In addition, this authorization shall automatically terminate forthwith in the event of any permanent or temporary inability of VWAG to exercise freely the rights resulting from its ownership by VWAG of less than fifty-one (51 %) percent of the capital stock of VWoA. Except as expressly provided in this paragraph, VWoA shall not use and shall not permit any Contractual Enterprise to use, as part of its corporate or business name, any of the trademarks or service marks set forth in Appendix 4, as amended by VWAG from time to time, unless it shall have obtained prior written approval from VWAG.

c)   VWoA shall take, at its own expense, but in the name of VWAG, all measures, including the institution and prosecution of lawsuits, which may be reasonably required to prevent unauthorized use within the Area of Primary Responsibility of the trademarks and service marks set forth in Appendix 4, as amended by VWAG from time to time. VWoA shall keep the legal department of VWAG informed of all of VWoA's activities under this paragraph, shall furnish the legal department of VWAG with reports of such activities as requested by VWAG and shall comply with all reasonable instructions given to it by VWAG with respect thereto.

d)   VWAG shall be responsible for, and shall pay all fees required to be paid in connection with the registration or continued registration in the United States of the trademarks and service marks set forth in Appendix 4, as amended by VWAG from time to time, and shall, at its own expense, take all measures, including the prosecution of lawsuits, which may be reasonably required to prevent the registration in the Area of Primary Responsibility of any trademark or service mark set forth in Appendix 4, as amended by VWAG from time to time.

e)   VWoA shall give due consideration to causing its premises and those of the Contractual Enterprises, to the extent possible, to conform to the identification program issued by VWAG from time to time.

f)    Except as otherwise agreed between the contracting Parties in writing, VWoA, in order to maintain uniform and consistent product identification, shall sell and service Contractual Products under the designations specified by VWAG and shall cause the Contractual Enterprises to do the same.

g)    VWoA shall cause its Contractual Enterprises to comply with its requirements relating to used car sales if such sales are carried out under any trademarks of VWAG licensed to such Contractual Enterprise.

## Article 8
## Warranty

VWAG MAKES NO WARRANTY WHATSOEVER, EXPRESS OR IMPLIED, AS TO CONTRACTUAL PRODUCTS TO BE SUPPLIED BY VWAG TO VWOA, INCLUDING, BUT NOT BY WAY OF LIMITATION, ANY WARRANTY OF MERCHANTABILITY OR FITNESS FOR ANY PARTICULAR PURPOSE OF SUCH CONTRACTUAL PRODUCTS, AND, EXCEPT AS EXPRESSLY PROVIDED IN ARTICLE 20 OF THIS AGREEMENT TO THE CONTRARY, VWAG SHALL BE UNDER NO LIABILITY WHATSOEVER, WHETHER FOR DIRECT, INDIRECT OR CONSEQUENTIAL DAMAGES WHERESOEVER OCCURRING AND HOWSOEVER CAUSED, OR IN ANY OTHER WAY IN CONNECTION WITH SUCH CONDITION. EXCEPT AS EXPRESSLY PROVIDED IN THIS AGREEMENT TO THE CONTRARY, ALL WARRANTIES OR LIABILITIES OF VWAG WITH RESPECT TO THE CONDITION OF CONTRACTUAL PRODUCTS TO BE SUPPLIED TO VWOA, WHETHER BY EXPRESS CONTRACT, IMPLICATION OR OPERATION OF LAW, ARE EXCLUDED.

## C. DUTIES AND SERVICES OF VWOA

## Article 9
## Equipment and Organization of VWoA's Enterprise

a)    Performance by VWoA of its obligations pursuant to this Agreement requires VWoA to meet adequate standards regarding financing, assets and personnel. The effectiveness of VWoA's enterprise and of the Contractual Enterprises depends largely on meeting such standards. These standards include, but are not limited to the following requirements:

aa)    VWoA shall take steps necessary to maintain financial liquidity adequate for the conduct of its business and the maintenance of an appropriate balance sheet.

bb)    VWoA shall maintain adequate facilities and equipment for all its activities pursuant to this Agreement, to such an extent as agreed upon with VWAG. In particular, VWoA shall have for this purpose sufficient storage area for new vehicles, spare parts warehousing facilities, appropriate workshop and service training facilities and related equipment and shall make available to the Contractual Enterprises a technically up-to-date data processing and communications system.

b)    VWoA shall determine any of the requirements it deems necessary for the proper performance of its business activities in conjunction with VWAG, and for this purpose VWoA shall give due consideration to the summaries made available pursuant to Article 6 (d) of this Agreement.

c)    VWoA shall employ suitably qualified personnel in sufficient numbers for the proper execution of its duties and obligations under this Agreement.

d)    VWoA shall organize its enterprise in such a way that all its internal and external business activities can be performed effectively and in accordance with the demands of the market.


## Article 10
## Development and Support of Contractual Enterprises
## (Dealer Network)

a)    The Parties agree that the successful sale of Contractual Products requires an effective Volkswagen Distribution Organization. VWoA therefore, based on a sales network planning schedule to be developed by it after consultation with VWAG, shall form and maintain within the Area of Primary Responsibility a sales network exemplary in the field of sales, service and parts supply.

b)   VWoA shall conclude agreements with the Contractual Enterprises based upon uniform terms and conditions prepared by it from time to time after due consultation with VWAG.

c)   VWoA shall assist and advise the Contractual Enterprises, particularly as provided in Article 15 and 18 of this Agreement. In doing so, VWoA shall make use of the services rendered by VWAG and described in Article 6 to such extent as VWoA deems appropriate.

## Article 11
## Purchase of Contractual Products

a)   The Parties recognize that sales and supply planning is necessary for VWoA to exploit market opportunities as well as for VWAG to plan and effectively utilize its production capacity. Accordingly, VWoA and VWAG shall negotiate and agree upon VWoA's annual sales objectives and delivery schedules for Contractual Products.

b)   VWoA's annual sales objectives established pursuant to paragraph (a) above, shall be determined not later than June 30th preceding the year to which the objectives apply, shall be in writing and specify the volume and delivery schedule of Contractual Products broken down by type, model and standard as well as optional equipment.

c)   On the basis of and consistent with VWoA's annual sales objectives established pursuant to paragraph a) above, VWoA shall place firm orders with VWAG once a month, or more frequently, if the Parties so desire, which shall specify volume broken down by type, model, standard as well as optional equipment, and expected delivery dates.

d)   In the event VWoA is not able to place firm orders for Contractual Products in a manner which is consistent with VWoA's annual sales objectives referred to in paragraph (a) above, VWoA shall promptly notify VWAG in writing of its inability to do so and, in consultation with VWAG, establish revised annual sales objectives which are achievable in view of the competitive conditions prevailing in the Area of Primary Responsibility.

e)   VWAG agrees to deliver to VWoA Contractual Products pursuant to VWoA's

13

firm purchase orders which are consistent with VWoA's annual sales objectives or any revised annual sales objectives, and in accordance with the Terms of Sale and Delivery set forth in Appendix 3 as amended from time to time.

f)    In the event that VWAG is not able to deliver to VWoA Contractual Products in accordance with VWoA's firm orders pursuant to subparagraph c) above, VWAG shall promptly notify VWoA in writing of its inability to do so and VWoA, in consultation with VWAG, shall establish revised annual sales objectives for the Area of Primary Responsibilty.

## Article 12
## Sale of Contractual Products

a)    VWoA shall arrange for the delivery and distribution of Contractual Products within its Area of Primary Responsibility. In order to achieve its annual sales objectives, VWoA shall establish with the Contractual Enterprises the sales objectives to be achieved by each Contractual Enterprise.

b)    VWoA shall, without prior written approval of VWAG, neither directly nor indirectly sell, market, or purport to be the selling agent, for new or unused motor vehicles which compete with Contractual Products and/or conclude distribution and/or service agreements for any goods which compete in the Area of Primary Responsibility with Contractual Products manufactured by VWAG or any company affiliated with VWAG.

c)    Also, without VWAG's prior written approval, VWoA will not enter into any agreements or arrangements to promote the sale of goods or services from its business premises unless such activites do not affect in any regard VWAG's business interests.

14

## Article 13
## Purchase Price, Terms of Sale and Delivery,
## Terms of Payment

a)    VWoA and VWAG shall negotiate and agree upon prices for the delivery of
Contractual Products which are established in advance of the date of
shipment to the United States and are calculated using a VWoA resale price
based distributor margin formula to be agreed upon by the Parties in
accordance with Appendix 5.

b)    The price of any Contractual Product may not be modified except by a
written agreement executed by both Parties.

c)    VWAG shall sell the Contractual Products to VWoA at prices established in
accordance with paragraphs a) and b) above and applicable on the day of
shipment and in accordance with VWAG's Terms of Sale and Delivery for
Importers set forth in Appendix 3, except that Sections III and IV of such
Terms of Sale and Delivery for Importers are expressly excluded.

d)    The Parties shall from time to time agree upon the terms of payment by
VWoA to VWAG for the supply of Contractual Products and the rendering of
services as specified in Article 6 of this Agreement.

## Article 14
## Inventory and Assortment

a)    In order to enable VWoA to exploit market opportunities in the Area of
Primary Responsibility, VWoA and its Contractual Enterprises shall at all
times maintain inventory of Contractual Products in quantities sufficient to
meet its sales objectives. VWoA shall maintain inventory sufficient to
compensate for fluctuations in sales and deliveries. The assortment in
inventory should correspond to the turnover of the respective Contractual
Products.

b)    VWoA shall maintain the inventory using equipment and devices necessary
to keep the Contractual Products in merchantable condition.

15

## Article 15
## Marketing, Sales Promotion and Public Relations

a)   VWoA shall establish and employ in the Area of Primary Responsibility
     marketing and public relations objectives and strategies which promote the
     reputation and image of VWAG and Contractual Products within guidelines
     established by VWAG. In developing such objectives and strategies, VWoA
     shall see to it that its activities are not inconsistent with any marketing and
     public relations plans, concepts and programs which VWAG has made
     available to VWoA from time to time.

b)   In addition to the plans, concepts and programs made available by VWAG,
     VWoA shall develop and use additional marketing and advertising methods
     and activities in accordance with the guidelines of VWAG and in accordance
     with the development of VWoA's sales. VWoA shall make available to VWAG,
     samples of such advertising including the corresponding materials for
     reproduction and copying. VWoA shall ensure that VWAG is entitled to use
     such advertising by entering into copyright agreements to that effect.

c)   VWoA shall provide for a marketing and advertising budget and shall expend
     not less than a percentage agreed upon with VWAG of the price of the
     vehicles listed in the sales objectives for marketing and advertising activities.

d)   In advance of each calendar year or upon request of VWAG, VWoA shall
     report to VWAG concerning its public relations plans including shows and
     exhibitions proposed for the following calendar year, including its objectives,
     a description of activities and expenditures budgeted for the year to finance
     these activities.

e)   VWoA shall reasonably consider to cooperate in any marketing and
     advertising campaign or activities designed by VWAG to be carried out by
     VWoA in the Area of Primary Responsibility. The extent and nature of such
     cooperation as well as the financial participation will be agreed in advance
     with VWAG.

f)   VWoA shall assist its Contractual Enterprises to cooperate among each other
     on a regional basis in conducting marketing and advertising campaigns and
     shall participate actively in developing such campaigns.

g)    In order to promote and improve the sales of the Contractual Products, VWoA shall cause its Contractual Enterprises to engage in business activities in respect of used cars including lease cars. VWoA shall provide assistance by way of organizational and promotional activities to its Contractual Enterprises.

For this purpose VWoA shall cause its Contractual Enterprises, among other things, to

-    maintain stocks of used cars in sufficient quantities;
-    perform repairs and maintenance services used cars;
-    endeavour to take competing used cars in trade.

### Article 16
### After Sales Service

a)    VWoA shall establish, develop and maintain a competent, effective and customer oriented after sales service to be provided through its Contractual Enterprises for Contractual Products. In providing such services, VWoA shall make every efforts to build and maintain good relationships between Contractual Enterprises and users of Contractual Products.

b)    VWoA and/or its Contractual Enterprises shall, in accordance with VWAG's instructions, guidelines and/or procedures

-    take delivery of, store as well as perform predelivery inspection and service of each vehicle prior to sales and delivery thereof; to the consumer;

-    warranty repairs and/or service and repair Contractual Products as set forth in Appendix 6 regardless of where purchased;

c)    VWoA shall cause its Contractual Enterprises to perform campaign inspections and/or corrections for users of Contractual Products including recall campaigns. VWAG may require campaign inspections and/or corrections whenever it deems such inspections and/or corrections to be necessary and may direct such campaigns to be carried out as referred to in Article 5 (c). Upon notice of a recall or service campaign affecting a particular

Contractual Product, VWoA shall cause its Contractual Enterprises to perform such campaigns, inspections and/or corrections on all affected Contractual Products whenever or wherever made available to them.

d)    The aforementioned services are provided for the benefit of users of Contractual Products. Accordingly, VWoA shall not impose any charge on such users for parts, materials or labour for which VWoA will be reimbursed by VWAG.

e)    All maintenance work and/or repairs carried out shall be in accordance with VWAG's instructions, guidelines and/or procedures.

f)    VWoA shall provide for use in its service operations and service system such workshop equipment, special tools and measuring and test devices according to VWAG's guidelines as are necessary to meet the service obligations hereunder.

g)    VWoA shall employ and designate qualified personnel which shall be responsible for promptly and courteously resolving consumer complaints on behalf of VWoA.

**Article 17**
**Personnel and Training of Contractual Enterprises**

a)    VWoA shall cause its Contractual Enterprises to employ a sufficient number of qualified personnel, in particular sales and aftersales personnel.

b)    For the purpose of the initial and follow-up training of personnel, VWoA shall in agreement with VWAG, hold training courses and seminars on all relevant technical and commercial subjects and, to this extent, shall make available instructors, training methods, equipment and facilities. In addition, VWoA shall make available in-dealership training and self-study programs to Contractual Enterprises. VWAG shall, if VWoA so requests, render technical assistance or provide advice with respect to training methods and materials based on experience gained by it in areas outside the Area of Primary Responsibility.

## Article 18
## Advice and Assistance to Contractual Enterprises, Business Management

a)   VWoA shall provide expert advice to Contractual Enterprises by having available a sufficient number of field service and specialist personnel.

b)   To the extent VWoA deems it appropriate, VWoA shall employ the VWAG Business Management System, shall introduce such System to the Contractual Enterprises and shall have experts advise Contractual Enterprises on business management matters. VWoA shall also ensure that VWoA's standardized data processing and communications programs are compatible with VWAG's standardized data processing and communications programs as well as those programs as utilized by the Contractual Enterprises so as to ensure effective administration including but not limited to order processing and adequate inventory control by the Contractual Enterprises.

## Article 19
## Warranty, Warranty Administration, Recall and Auditing

a)   Contractual Products sold by VWoA shall be warranted by VWoA to the ultimate consumer in accordance with terms and conditions of warranty approved by VWAG (Appendix 6). VWoA agrees that all its sales of Contractual Products shall be made in such a manner that the customer acquires all rights in accordance with VWoA's warranties, to the exclusion of any other, further or different warranties.

b)   VWAG shall reimburse to VWoA the warranty costs it has expended pursuant to paragraph a) above, including recall costs (Appendix 7) and service action costs. Recall and service actions will always be initiated by the service department of VWAG.

Reimbursement shall apply to

-   US dealer's labor cost
-   material cost calculated on cost price level VWoA (VWAG price list C plus landed cost VWoA) and additionally dealers' handling charge to the extent to be agreed between the Parties from time to time. Any increase of the

handling charge to be reimbursed shall be subject to prior approval by VWAG.

c)  The execution of warranty shall be in accordance with the guidelines issued by VWAG from time to time.

d)  VWoA shall be responsible for reducing the warranty costs by means of its own warranty cost reduction programs. VWAG shall continuously be kept informed by VWoA about the annual objectives and their achievement.

e)  VWoA shall provide VWAG with information pertaining to warranty matters to the extent and in the manner determined by VWAG. VWoA shall upon request of VWAG make warranty parts available to VWAG for investigation.

VWoA shall maintain a modern computer communications and processing system for the acceptance and disposition of warranty claims received from its retailers consistent with the guidelines pursuant to subparagraph c) which is compatible with VWAG's system to enable VWAG to track warranty cost projections. VWoA shall make use of VWAG's part identifier, damage and vendor codes, primary cause designation and any other available codes necessary to communicate with VWAG. The system shall have the capability of editing retailer warranty claims and permit prompt payment to VWoA's retailers of justified claims.

f)  Once a month on a date to be determined by VWAG, VWoA shall submit to VWAG its invoices for warranty costs incurred by it, including, but not limited to, all costs for recall actions and service actions. The invoices shall include a summary description of each claim including an accounting of the amounts disbursed by VWoA to its retailers for parts, labor and other items.

VWoA invoices shall be paid by VWAG within 30 days of the date of the invoice. In the event VWAG disputes the accuracy or appropriateness of a warranty claim, VWAG shall pay the invoice including the disputed claim when due and shall be reimbursed by VWoA promptly if the dispute is resolved in favor of VWAG.

g)  VWAG shall have the right at any time to audit VWoA's implementation and administration of its warranties as previously approved by VWAG. In the event VWAG's audit identifies practices, procedures or individual instances

which have caused VWoA to make payments to dealers outside the scope of VWoA's warranty obligations towards its retail customers or payments beyond reasonable and necessary assistance, VWAG, in its discretion, may require VWoA to credit VWAG the amount of such payments.

h)    In case VWAG has caused Contractual Products to be supplied by Affiliated Companies of VWAG for their own account, the terms of warranty of such companies shall replace the Warranty Conditions contained in Appendix 6.

## Article 20
## Extended Warranty, Marketing Costs

VWoA shall be responsible for certain other product related costs, including the following costs:

1.    Cost of repair or replacement of wear and tear items which fail due to normal wear and tear within 12 months or 12,000 miles, whichever occurs first;

2.    Costs of towing to the nearest dealer of a vehicle covered by VWoA's consumer product warranties;

3.    Costs of a loaner or courtesy vehicle provided to the owner of a motor vehicle which is repaired pursuant to VWoA's consumer products warranties, and due to the time consuming nature of the repair cannot be completed on a timely basis;

4.    Costs of improving the performance of a motor vehicle which the owner perceives as unsatisfactory;

5.    Costs of arbitration awards rendered pursuant to VWoA's Autoline Arbitration Program or any state arbitration system pursuant to any "lemon" law ordering VWoA to repair a vehicle, refund repair and related costs, including lease payments, or repurchase the motor vehicle;

6.    Costs of repair, reimbursement of repair costs or repurchase of a motor vehicle to prevent litigation;

7.    Costs of judgments and settlements of Small Claims Court proceedings alleging defects or unsatisfactory performance of the motor vehicle;

8.      Costs of trade assistance expended by VWoA to assist a vehicle owner to exchange
        an unsatisfactory motor vehicle with a new or satisfactory used vehicle.


### Article 21
### Reports

a)      VWoA shall submit to VWAG on a regular basis information as reasonably
        requested by VWAG concerning, but not limited to, business data, such as,
        but not limited to, warranty and warranty related matters as well as recall,
        requirements for the homologation of Contractual Products in the Area of
        Primary Responsibility, any enactments or changes of any relevant laws and
        regulations including taxes and customs as well as any other matters which
        may affect any aspect covered by this Agreement. VWoA shall inform
        VWAG, in particular, of any modification (approved or proposed) in the laws
        governing its Area of Primary Responsibility which may affect the
        manufacturing of vehicles and the regulations governing the use thereof
        including safety requirements for the Contractual Products.

b)      VWoA shall inform VWAG in particular through its regular reports on the
        development of the market generally and of its own and its contractual
        business activities within the Area of Primary Responsibility. VWoA shall
        furnish VWAG with all reasonably requested information relating to any
        substantial changes concerning any of its Contractual Enterprises in the Area
        of Primary Responsibility. VWoA shall particularily provide VWAG with a list
        of its Contractual Enterprises in the Area of Primary Responsibility. VWoA
        shall deliver such reports in a form and within a time determined by VWAG.

## D. TERM AND TERMINATION OF AGREEMENT

### Article 22
### Term of Agreement

This Agreement shall enter into effect on January 1, 1995 except that the costs indentified in Article 20 of this Agreement shall continue to be reimbursed to VWoA with respect to all 1995 and earlier model year Contractual Products. This Agreement shall terminate on December 31, 1996 and it shall thereafter automatically be renewed for two year periods.

### Article 23
### Ordinary Termination

This Agreement may be terminated by either Party as of the end of December 31, 1996 or at any subsequent two year period by giving one year's prior written notice to the other Party.

### Article 24
### Short Notice of Termination

Either Party shall be entitled to terminate this Agreement at any time by giving six (6) months prior written notice in the event of a material breach by the other Party of obligations arising from this Agreement.

### Article 25
### Termination with Immediate Effect

Either Party to this Agreement may terminate this Agreement, effective upon giving notice of such termination, if the other Party:

-    fails to obtain or is deprived of any official approval which may be necessary for the performance of the business activities governed by this Agreement; or

23

- suffers significant losses or severe damage to its business reputation or financial status (for example, the commencement of bankruptcy or insolvency proceedings, levy or execution upon the assets of said Party or of persons holding a participation therein on account of insolvency, protested checks or bills on account of insolvency); or

- is involved in staff, structural or financial difficulties in its enterprise which cannot be resolved within a reasonable period, where such difficulties endanger the fulfillment of material provisions of this Agreement.

## Article 26
## Procedures upon Termination of Agreement

Upon effectiveness of termination of this Agreement:

a)    VWoA shall without delay.

- cease to make use of any trademarks and service marks ever licensed to VWoA by VWAG in any form whatsoever;

- on request of VWAG, assign, for reasonable compensation, orders not yet executed, to VWAG or to a third Party designated by VWAG, and, on request of VWAG, make available to VWAG or a third Party designated by VWAG all brand-new, unsold Contractual Products which are in perfect condition. The repurchase price of brand-new vehicles shall be VWoA's landed cost price therefor, but not more than VWoA's landed cost price for similar vehicles on the day of repurchase. For all other Contractual Products ten (10 %) percent administration costs shall be deducted from the repurchase price, which shall be calculated in the same manner; and

- surrender all documents and materials made available to it, in particular all special items of equipment and special tools, technical literature and advertising materials, including signs and the like; to the extent that such materials were invoiced when supplied, they will be paid for by VWAG on return at the current trade value less a reasonable deduction.

24

b) VWAG shall be entitled to cancel in whole or in part orders of VWoA not yet executed. VWoA shall not be entitled to any compensation whatsoever arising therefrom.

c) Except as provided in this Article 26, VWoA shall not be entitled to any claims whatsoever by reason of termination of this Agreement in accordance with Article 23, 24, or 25 except as provided in this Article 26.

## E. GENERAL PROVISIONS

### Article 27
### Form, Relationship with Previous Agreements,
### Authority to Sign on Behalf of VWAG

a) All amendments or additions to this Agreement and all notices of termination shall be made or given in writing. Any oral agreements are null and void. Any amendment or addition other than an amendment or addition to any Appendix to this Agreement shall be identified in its title as "Addendum No. _", be dated and be executed on behalf of both Parties in accordance with procedures set forth in this Article 27.

b) The following Appendices as amended by VWAG or the Parties respectively from time to time, are attached to this Agreement and form an integral part hereof:

| | |
|---|---|
| Appendix 1: | Contractual Products |
| Appendix 2: | Affiliated Companies of VWAG |
| Appendix 3: | VWAG's Terms of Sale and Delivery for Importers |
| Appendix 4: | Trade Marks |
| Appendix 5: | Principles for the Determination of Transfer Prices |
| Appendix 6: | Consumer Product Warranties |
| Appendix 7: | Recall Actions |

c) Where special formalities must be completed before this Agreement can become valid, VWoA agrees to take the necessary steps at its own expense without delay.

d)    Upon the execution of this Agreement by both Parties, any previous agreements between the Parties concerning the business relationship dealt with in this Agreement shall become null and avoid.


## Article 28
## Transferability

VWoA's rights and duties under this Agreement cannot and shall not be transferred or assigned without the prior written approval of VWAG.


## Article 29
## Partial Invalidity

In the event any portion of this Agreement is or becomes invalid or unenforceable for any reason, the remaining portion shall continue in force unaffected. In the event that such portion of this Agreement is or becomes invalid or unenforceable in any part of the Area of Primary Responsibility, the validity of such portion in the remaining parts of the said Area shall not be affected thereby.


## Article 30
## Failure to Exercise Rights

Failure of either Party to this Agreement to exercise any of the rights to which it is entitled under this Agreement shall not be regarded as a waiver of such right and shall not prevent the Party from exercising such right at a later date.


## Article 31
## Liability

Each Party to this Agreement shall itself bear the commercial risk accruing to it from this Agreement and from its execution. VWAG, in particular, accepts no responsibility for expenses incurred by VWoA in the execution of this Agreement or for undertakings entered into by VWoA hereunder. No provisions of this Agreement shall be interpreted in such a way as to create rights to third Parties against VWAG.

26

## **Article 32**
## **Place of Performance, Jurisdiction and Applicable Law**

a)    The place of the registered offices of VWAG shall be the place of
performance for all obligations resulting from this Agreement for either Party.

b)    At the option of VWAG, the locally competent court having jurisdiction for
the place of the registered offices of VWAG or the competent court for the
place of the registered offices of VWoA shall have jurisdiction when VWoA is
the defendant in the proceedings. The Parties hereby expressly agree that
the court having jurisdiction for the place of the registered offices of VWAG
shall have jurisdiction for all litigations when VWAG is the defendant in the
proceedings. Notwithstanding the terms of any other agreement between
the Parties to the contrary, this Agreement regarding jurisdiction shall also
apply to all claims, whether or not based on this Agreement, which may arise
in connection with VWoA's activities.

c)    The laws of the Federal Republic of Germany shall govern this Agreement,
its construction, validity, interpretation and performance, as well as all
business relations between the Parties dealt with in this Agreement. The
application of "The United Nation's Convention on Contracts for the
International Sale of Goods" dated 11.04.1980 is hereby excluded.

Wolfsburg,                              Auburn Hills,

VOLKSWAGEN AKTIENGESELLSCHAFT    VOLKSWAGEN OF AMERICA, INC.

By: _____    _____

By: _____    _____

**Appendix 1 Contractual Products**

## I. Brand-new Automobiles

1. Vehicles bearing the Volkswagen name in accordance with the tables of types agreed and applicable to the model year in question together with such variations as are approved by VWAG and VWoA.

2. Vehicles from the applicable product range of VWAG for diplomats, tourists and other special customers for use in other countries.

3. Vehicles of subsidiary companies and/or licensees of VWAG in accordance with the agreements made in each case with VWAG.

4. The following products for which the Importer within the terms of the Importer Agreement undertakes the provision of after-sales service and of genuine Volkswagen parts shall also be Contractual Products:

   - those vehicles not covered by the aforementioned tables of types, approved variations, product offers and agreements, and industrial engines

   - and vehicle types no longer produced by VWAG and its subsidiaries

   which are in circulation in the Importer's territory.

## II. Aftermarket Service Parts
Genuine Volkswagen parts.

## III. Exchange Parts
Genuine Volkswagen exchange parts.

## IV. Other Contractual

1. Volkswagen industrial engines in accordance with the separate agreements concluded with VWAG.

2. Votex accessories in accordance with the agreements concluded with Votex Warenhandelsgesellschaft mbH.

**Appendix 2   Affiliated Companies of VWAG**

Audi AG, Ingolstadt, Germany

Volkswagen de Mexico S.A. de C.V., Puebla, Mexico

Votex AG, Dreieich, Germany

Volkswagen Canada Inc., Scarborough, Ontario, Canada 

**Appendix 3 VWAG's Terms of Sale and Delivery for Importers**

## I. General Remarks

1. These Terms apply to Contractual Products sold by VWAG to VWoA under the Importer Agreement.

2. The place of the registered offices of VWAG shall be the place of performance for all obligations by either party under these Terms.

3. The laws of the Federal Republic of Germany shall apply to these Terms, their interpretation and their performance. The German version of these Terms shall be the sole authoritative version if questions of interpretation arise.

   The application of "The United Nation's Convention on Contracts for the International Sale of Goods" dated 11.04.80 is hereby excluded.

4. The German court having jurisdiction for the place of the registered offices of VWAG shall have exclusive jurisdiction for all disputes arising from the business relationship governed by these Terms. However, VWAG reserves the right to apply to the court which has jurisdiction for the place of the VWoA's registered offices.

## II. Orders

1. VWoA shall submit its orders in writing or in the form of EDP cards for tapes or tele-processing and shall in all cases use the order forms or recording media specified by VWAG.

2. Orders placed by VWoA shall be binding on it unless rejected by VWAG within 4 weeks. VWoA shall not be entitled to any claims whatsoever as a result of its orders having been rejected.

## III. Prices

VWAG sells Contractual Products to VWoA at the prices valid on the day of dispatch. VWAG reserves the right to modify prices at any time. If prices are changed between the time of ordering and the day of dispatch VWoA shall pay the price valid on the day of dispatch.

## IV. Terms of Payment

1. Unless otherwise agreed, all payments are to be made in US-Dollars (USD) in accordance with the invoice.

2. In principle VWAG delivers Contractual Products only against prepayment. Release for dispatch takes place only following the receipt of the payment or following the opening of an irrevocable letter of credit confirmed by a first class German or international bank and containing a part-shipment clause, provided that the remaining terms of the letter of credit can be fulfilled by VWAG. Payment by cheque or any other mode of payment other than by cash shall not constitute payment until VWAG is entitled to make unrestricted use of the entire amount in US-Dollars (USD)

2

on one of its accounts in the Federal Republic of Germany. The amount invoiced shall be payable 90 days after the date of issuance of the invoice.

3. The Contractual Products supplied remain the property of VWAG until it is able to make unrestricted use of the entire amount invoiced. VWoA is obliged at its own expense to take all measures necessary in accordance with the laws applicable in the Area of Primary of Responsibility to ensure that the right of ownership of VWAG is not adversely affected.

4. VWoA shall bear all costs incurred with its payments. If VWoA fails to pay any amount on the due date in case payment after dispatch has been agreed, it shall pay on demand overdue interest from the due date to the date of actual payment at a rate of 1 % over 90 days' libor as published on Telerate page 3750.

## V. Deliveries

1. The Contractual Products ordered by VWoA will be delivered by VWAG subject to their availability and deliveries of VWAG's suppliers. VWoA shall accept partial deliveries.

2. VWoA shall not have any claim against VWAG for failure to deliver or for delayed delivery if such failure or delay is due to circumstances beyond the control of VWAG, for example natural disaster, force majeure, official ruling, war, disturbance, interruption in transportation facilities, shipwreck, strike, lock-out, confiscation, blockade, fire, shortage of supplies from subcontractors etc. If delivery is delayed because of such circumstances for more than 6 months, VWAG as well as VWoA may rescind the relative purchase orders.

3. If the delivery deadline is exceeded by more than 3 months for reasons other than of that kind listed in (2) above, VWoA may give notice of rescission of the purchase order concerned stating a reasonable period of grace in which delivery must take place. Any further claims by VWoA shall be excluded.

4. VWoA shall not be entitled to any claim against VWAG with respect to premature delivery of Contractual Products.

5. The appropriate version of the "Terms of Sale and Delivery for Volkswagen Industrial Engines" (including warranty terms) as printed on the reverse side of the order confirmation form applies to deliveries of Volkswagen industrial engines.

## VI. Delivery Terms

1. Deliveries on the basis of the terms "EXW", "FOB", "FCA", "CFR", take place in accordance with Incoterms 1990 with the following modifications:

    (a) Unless otherwise agreed, VWoA shall at its own expense and within the framework of the VWAG General Transportation Insurance Policy obtain insurance cover from the place of readiness at the manufacturer's works to the destination, including all risks in transit and associated storage, together with war risk, in so far as insurable, provided always that VWoA is able to do so by law.

    (b) Unless otherwise agreed VWAG reserves the right to conclude the shipment and carriage contracts to the destination or cause same to be concluded and to choose the transportation agencies, transportation means and routes. However,

the costs of shipment and carriage are to borne by the party liable thereto under the Incoterms 1990 conditions and said party shall also bear the risk of changes in shipment and carriage rates charged.

(c) Unless otherwise agreed the costs incurred in providing export packing (for instance when shipping overseas) are to be borne by VWoA.

2. If delivery is on a "CIF" basis VWAG will supply in accordance with Incoterms 1990 provided, however, that the provisions of para 1 (c) apply.

3. Deliveries on the basis of the term "DAF" shall take place in accordance with Incoterms 1990 with the exceptions listed under para 1 (a) - (c). In addition the following exceptions apply:

(a) All costs prepaid by the carrier in connection with customs processing at frontiers shall be borne by VWoA.

(b) If deviation becomes necessary from the scheduled carriage route VWoA shall bear all differences in cost.

4. In the case of parts returned by VWoA within the framework of the exchange parts program VWAG shall bear the costs of customs duties and clearance as well as of carriage within the Federal Republic of Germany.

## VII. Taking Delivery

1. VWoA shall take delivery of the ordered Contractual Products at the agreed place and at the date indicated to it. If VWoA fails to take delivery within the reasonable final period of grace allowed and made known to it by VWAG, VWAG shall be entitled to rescind the purchase contract and to claim the ascertainable losses incurred, but not less than plus five percent of the purchase price together, with the costs of return or redirection of the Contractual Products in compensation.

2. All complaints concerning incomplete or incorrect delivery of Contractual Products shall be submitted to VWAG in writing within 14 days following receipt of the delivery, accompanied by all relevant documents. If VWoA fails to do so, it shall not be entitled to any claims whatsoever. VWAG shall be responsible to VWoA for defective Contractual Products in accordance with the Terms of Warranty which VWoA is required to extend to its retail customers.

3. All details quoted by VWAG regarding performance, weight, fuel consumption, running costs, speed or the characteristic of Contractual Products shall be regarded as approximately only.

4

## VIII. Miscellaneous

1. Without the prior written approval of VWAG, VWoA shall not assign any claims against VWAG wholly or in part to a third party and shall not grant to third parties any entitlements in respect of such claims.

2. All additions or modifications of these Terms of Sale and Delivery shall only be valid if made in writing.

3. If individual provisions of these Terms prove invalid or incapable of execution, the remaining provisions shall be unaffected.

**Appendix 4   Trade Marks**

Trade marks according to Article 7 are:

1.  Registered signs valid for all identification programmes of VWAG.



2.  Registered Volkswagen signs. To be used only in accordance with the guidelines of the various identification programmes.

# VOLKSWAGEN

# VW

**Appendix 5 Principles for the Determination of Transfer Prices**

The transfer prices to be charged to VWoA by VWAG for Contractual Products supplied by VWAG shall be agreed between the Parties by applying the following principles:

1.  The basis for determining the transfer prices of the Contractual Products shall be the maximum suggested retail prices realistically achievable under expected market conditions as determined in accordance with Section 2 below as agreed between the Parties. Accordingly, the transfer price, which shall be the FOB-price, is to be computed by deducting from the retail price certain items, including, but not limited to, the following:

    -   Suggested dealer margin calculated as a percentage of the suggested retail price,
    -   VWoA's margin according to Section 2 below,
    -   Customs duties and import fees,
    -   Variable costs, including, but not limited to, freight, insurance, handling, port installation etc.

2.  VWoA's annual budget based on a mutually agreed upon 12-months'-projected sales volume and respective maximum suggested retail prices for the Contractual Products reasonably expected to be sold in the market shall allow for an adequate margin to be determined in the following manner:

2.1  VWoA's margin is calculated as a percentage of the revenue per vehicle. This margin shall allow VWoA, under normal market conditions and sales and financial performance comparable to other independent distributors, to the extent ascertainable, to cover the following, mututally agreed upon budgeted expenditures including but not limited to:

    a)  Normal marketing and sales expenditures for

        -   administration,
        -   advertising and other sales promotion measures,
        -   aids for sales, build out programs,
        -   incentive measures, → *lease subventions*
        -   customer financing support, leasing support including, but not limited to residual value support,
        -   deferred payments and floor planning
        -   enhanced supplemental warranty coverage
        -   product support and warranty related costs not reimbursed by VWAG.

    b)  Normal warehousing and logistics.

2.2  An appropriate profit shall be achievable under normal market conditions.

3.  Any other costs relating to marketing or warehousing which are not covered by VWoA's annual budget and caused by a single, unforeseen and/or extraordinary measure shall be borne by the Party having the predominant business interest in such measure or cost sharing or shall, if appropriate, be shared by the Parties; provided, however, that prior to any such measure the Parties shall agree on such measure or cost sharing.

4.  VWoA's margin shall not include costs for warranty, customer satisfaction, repair of serial defects, recalls, product liability and service actions to the extent such costs are borne by VWAG.

5.  When determining VWoA's margin the Parties shall give due regard to all significant market conditions such as, but not limited to

    -   size of the market
    -   intensity of competition
    -   inventory levels and turnover sales
    -   scope and terms of warranty provided
    -   advertising requirements
    -   special requirements of the brands
    -   extension of credit and payment terms.

    Once a year either party may request a review of VWoA's margins. Any change to the margins may be made only by an agreement in writing signed by each party.

6.  VWAG shall furnish to VWoA upon request accurate documentation as may be required by relevant US tax regulations.

7.  VWoA, in consultation with VWAG, will exercise its best efforts to reduce its costs and maintain a sales organisation and administrative costs, at a level appropriate for its expected sales volumes.

**Appendix 6  Consumer Product Warranties**

1.  VWoA warrants to the owner that the Contractual Product is free from defects in material and workmanship in accordance with the following terms:

    -   The new vehicle warranty becomes effective on the day of delivery or first service. It is valid for 2 years/24.000 miles whichever occurs first.

    -   The power train warranty shall be for



        5 years/50.000 miles,
        10 years/100.000 miles (for model year 1994 and 1995 passenger cars) valid until December 31, 1994,

        whichever occurs first or until the original owner transfers ownership of the vehicle to someone other than an immediate family member.

    -   the federal emissions warranty shall be for
        5 years/50.000 miles, whichever occurs first

    -   the California emissions warranty shall be for
        7 years/70.000 miles, whichever occurs first

    -   the warranty against corrosion perforation shall be for
        6 years.

    -   For Volkswagen Industrial Engines the warranty expires after a period of 24 months or with the completion of 1.000 hours of operation, whichever occurs first.

    -   For Genuine Spare Parts the warranty period is 12 months.

    -   The above mentioned conditions shall be changed from time to time in accordance with new agreements between VWAG and VWoA.

2.  Claims for the correction of defects under the warranties may only be lodged with authorized workshops entrusted with the service support of the purchased goods and must be lodged as soon as the defects are detected.

3.  The warranty extends, subject to technical requirements, to replacement or repair of the defective parts. Replaced parts become the property of the supplier.

    The costs incurred during work under warranty for the removal and installation of parts shall not be charged to the customer unless these costs were incurred as a result of modifications made to the purchased goods.

    All further claims, particularly with regard to compensation of direct and indirect damage, are excluded (i.e. car hire charges, towing cost).

4.    Warranty claims are not justified if the failure reported is caused by:

-    the purchased goods previously being repaired by a non-authorized workshop; or

-    parts being installed in the purchased goods whose use has not been approved by the manufacturer or where the purchased goods were modified in a manner not authorized by the manufacturer; or

-    the purchaser's failure to comply with the specifications relating to the maintenance and use of the purchased goods (service manual, service schedule etc.).

5.    Normal wear and tear (for vehicles and genuine parts) is not covered by this warranty. The same applies to damage resulting from incorrect handling or excessive loads being applied (e.g. through involvement in motor sport).

**Appendix 7   Recall Actions**

1.   Recall actions shall be performed
     -   to avoid reasonable and possible damage and/or personal injury related to products of VWAG already on the market, or
     -   in compliance with legal requirements and/or agency instructions.

     Recall actions shall generally be performed upon mutual agreement between VWAG and VWoA.

     VWoA shall perform any action in accordance with the instructions and guidelines of VWAG.

2.   VWoA shall start any recall action, initiated by VWAG, as soon as VWAG has provided the necessary information. VWoA shall provide VWAG with all technical data necessary for the record keeping of recall actions. VWoA shall inform VWAG immediately after a recall action is completed.

     Recall actions shall be performed by using genuine Volkswagen parts. Parts provided by other manufacturers shall only be used, if such parts have been approved by VWAG in advance.

     VWAG shall provide 100 % of such genuine parts needed for the performance of the recall action. If these parts are not delivered by VWAG they shall be ordered by VWoA in the usual manner.

     VWAG, shall to the extent it deems appropriate, assist VWoA by making field service and special personnel available to VWoA; the costs incurred thereby shall be borne by VWAG.

3.   All costs directly resulting from any recall action and all costs associated with a recall action which are caused by VWoA's acting in accordance with VWAG directives, shall be borne by VWAG.

     The costs related to recall actions shall be processed exclusively by WIN (warranty system) in reference to the action code.

     The payment of additional costs, i. e. charges for air freight, will be determined by mutual agreement between VWoA and VWAG.

4.   VWoA shall complete recall actions as soon as possible.

     VWoA shall be entitled to return any surplus genuine parts not needed for performing an action in accordance with mutually agreed conditions. Such return shall commence after completion of the recall action and shall be carried out at the latest within two months after completion.