# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF GEORGIA
# ATLANTA DIVISION

| | |
|---|---|
| IN RE: ARC AIRBAG INFLATORS PRODUCTS LIABILITY LITIGATION | MDL No. 3051 |
| | Case No. 1:22-md-03051-ELR |
| | District Judge Eleanor L. Ross |

# REPLY IN SUPPORT OF
# AUDI AKTIENGESELLSCHAFT'S MOTION TO DISMISS PLAINTIFFS'
# <u>CONSOLIDATED CLASS ACTION COMPLAINT</u>

## **TABLE OF CONTENTS**

**Page**

INTRODUCTION ..................................................................................1

ARGUMENT ........................................................................................3

    I.     AUDI AG IS NOT SUBJECT TO SPECIFIC JURISDICTION IN VIRGINIA..........................................................................3

          A.   AUDI AG Has Not Purposefully Availed Itself of the Protections of Virginia Law .......................................4

               1.   Jacinto Identifies No AUDI AG Conduct Within Virginia ......................................................4

               2.   VWGoA's Jurisdictional Contacts Cannot Be Imputed to AUDI AG .......................................6

               3.   AUDI AG Does Not Target the Virginia Market.............9

          B.   Jacinto's Claims Do Not Arise Out of or Relate to Any (Nonexistent) Activity by AUDI AG in Virginia ......................12

          C.   The Exercise of Personal Jurisdiction Over AUDI AG Would Offend Traditional Notions of Fair Play and Substantial Justice ....................................................14

    II.    Jacinto Does Not State a Claim Against AUDI AG (F.R. Civ. P. 12(b)(6)) ..........................................................................14

CONCLUSION .....................................................................................15

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Alexander v. Bayerische Motoren Werke AG*,
  2020 WL 2098108 (D.S.C. May 1, 2020) .......................................................13

*Andrews v. Shandong Linglong Tyre Co., Ltd.*,
  2022 WL 2484544 (E.D. Va. Jul. 6, 2022).......................................................9

*Asahi Metal Industry Co., Ltd. v. Superior Court*,
  480 U.S. 102 (1987)..........................................................................................10

*Bennett v. OmniSource Corp.*,
  2015 WL 6743866 (W.D. Va. Nov. 4, 2015) ......................................................8

*Bristol-Myers Squibb Co. v. Superior Ct. of Cal.*,
  582 U.S. 255 (2017)..........................................................................................13

*Byrd v. Drive Elec., LLC*,
  2017 WL 2126910 (N.D. Ga. May 16, 2017).....................................................12

*In re Capacitors Antitrust Litig.*,
  2015 WL 3638551 (N.D. Cal. June 11, 2015)....................................................11

*Consulting Eng'rs Corp v. Geometric Ltd.*,
  561 F.3d 273 (4th Cir. 2009) ...............................................................................4

*Daimler AG v. Bauman*,
  571 U.S. 117 (2014)..................................................................................3, 7, 8, 14

*Durham v. LG Chem, Ltd.*,
  2022 WL 274498 (11th Cir. Jan. 31, 2022).......................................................10

*Ford Motor Co. v. Montana Eighth Judicial District Court*,
  592 U.S. 351 (2021).....................................................................................4, 5, 13

*Robinson ex rel. Hunsinger v. Daimlerchrysler AG*,
  2008 WL 728877 (N.D. Cal. Mar. 17, 2008) ......................................................7

*J. McIntyre Machinery, Ltd. v. Nicastro*
  564 U.S. 873 (2011)........................................................................................5, 10

*Johnson v. Chrysler Can. Inc.*,
   24 F. Supp. 3d 1118 (N.D. Ala. 2014).................................................................12

*Kearney v. BMW AG*,
   2021 WL 1207476 (D.N.J. Mar. 31, 2021) .........................................................4

*King v. General Motors Corp.*,
   2012 WL 1340066 (N.D. Ala. Apr. 18, 2012)....................................................11

*L.W. v. Audi Aktiengesellschaft*,
   108 Cal. App. 5th 95 (2025) .......................................................................2, 3, 6

*Omega Homes, Inc. v. Citicorp Acceptance Co.*,
   656 F Supp. 393 (W.D. Va. 1987) .......................................................................8

*Opheim v. Volkswagen Aktiengeselschaft*,
   2021 WL 2621689 (D.N.J. June 25, 2021)...........................................................6

*Patt v. Volkswagen Group of America, Inc.*,
   688 F. Supp. 3d 1186 (S.D. Fla. 2023) ..............................................................11

*Reynolds v. Binance Holdings Ltd.*,
   481 F. Supp. 3d 997 (N.D. Cal. 2020)..................................................................8

*Riad v. Porsche Cars North America, Inc.*,
   657 F. Supp. 3d 695 (E.D. Pa. 2023)...................................................................7

*SkyHop Techs., Inc. v. Narra*,
   58 F. 4th 1211 (11th Cir. 2023) .........................................................................13

*Top Gun Ammo Sales, LLC v. COF Techs., LLC*,
   2022 WL 823061 (E.D. Mo. Mar. 18, 2022).....................................................11

*In re Volkswagen "Clean Diesel" Litig.*,
   2018 WL 9393018 (Va. Cir. Ct. Oct. 4, 2018)...................................................12

*Von Eisenberg v. Automobili Lamborghini S.p.A.*,
   Case No. CACE22014881, Dkt. 201522149 (Fla. 17th Cir. Ct.
   June 27, 2024)......................................................................................................7

*Von Eisenberg v. Automobili Lamborghini S.p.A.*,
   Case No. CACE22014881, Dkt. 201522160 (Fla. 17th Cir. Ct.
   June 27, 2024) ............................................................................................. 10

*William v. AES Corp.*,
   28 F. Supp. 3d 553 (E.D. Va. 2014) ............................................................ 6

*Williams v. Romarm, SA*,
   756 F.3d 777 (D.C. Cir. 2014) .................................................................... 10

*Williams v. Yamaha Motor Co. Ltd.*,
   851 F.3d 1015 (9th Cir. 2017) ...................................................................... 7

*XMission, L.C. v. Fluent LLC*,
   955 F.3d 833 (10th Cir. 2020) ..................................................................... 10

*Young v. Mitsubishi Motors N. Am. Corp.*,
   2020 WL 4584391 (W.D. Wash. Aug. 10, 2020) ......................................... 11

## Other Authorities

Fed. R. Civ. P. 11 ................................................................................................. 1

Fed. R. Civ. P. 12 ............................................................................................... 14

## INTRODUCTION

Plaintiff Eva Jacinto apparently recognizes that she has failed to plead a *prima facie* case of personal jurisdiction in Virginia over AUDI AG (a Germany entity that operates in Germany) for claims related to her purchase of a used Audi A3 in California. The operative pleading ("CCAC") makes only two factual allegations as to AUDI AG, both of which Jacinto ignores in her Opposition. Instead, she tries to fashion a new theory of specific jurisdiction based on "evidence" she supplies for the first time with her Opposition.

Jacinto now argues that AUDI AG is subject to specific jurisdiction in Virginia because Volkswagen Group of America, Inc. ("VWGoA"), the distributor of Audi vehicles in the U.S., is headquartered there. This newly contrived theory finds no support in the operative pleading ("CCAC"), which incorrectly alleges that Audi of America, LLC ("AoA, LLC") is "the importer and distributor of Audi brand vehicles sold in the United States." CCAC ¶ 132. Jacinto previously insisted that the Court was required to accept this allegation as true when she opposed AoA, LLC's motion to dismiss, despite evidence submitted by AoA, LLC establishing that she had sued it in error.[1] ECF 226 at 4. Now she reverses course, claiming that AUDI AG is subject to specific jurisdiction because of VWGoA's role as distributor and warrantor of

---

[1] Despite her belated acknowledgement that AoA, LLC did *not* distribute Audi vehicles in the U.S. and thus did not perform any function relevant to her claims, she still refuses to dismiss it as a defendant — arguably a violation of Fed. R. Civ. P. 11.

Audi vehicles.

Jacinto's new theory is meritless. She ignores the U.S. Supreme Court's repeated admonition that a defendant itself—not another—must have, by its own actions, purposefully availed itself of the privilege of conducting activities within a forum State. *See* ECF 305-1 at 20–21. As established in the Declaration of Magnus Weiss (ECF 305-3, "Weiss Dec."), AUDI AG has not done so. Jacinto's arguments rest on two incorrect premises: (1) VWGoA is AUDI AG's sales agent in the U.S., and its contacts can be imputed to AUDI AG under a so-called agency theory; and (2) because VWGoA is headquartered in Virginia and subject to *general* jurisdiction there, AUDI AG is subject to *specific* jurisdiction in Virginia for her California claims.

Jacinto identifies a single decision accepting this novel "sales agent" theory— a recent split (2-1) decision by the California Court of Appeal in *L.W. v. Audi Aktiengesellschaft*, 108 Cal. App. 5th 95 (2025). But the *L.W.* court did not have before it the 1995 Importer Agreement, which defines the legal relationship between AUDI AG and VWGoA and expressly provides that VWGoA is "an independent entrepreneur on its own behalf and for its own account" and "is not an agent or representative of AUDI AG." ECF 321-9 § A.3. Moreover, while AUDI AG disagrees with *L.W.*, that decision furnishes no support for the argument that Jacinto's claims arise from or relate to any (non-existent) conduct by AUDI AG in

*Virginia*. *L.W.* involved a California resident who bought an Audi vehicle in California, allegedly suffered injury in California, and sued in California. Jacinto never explains why Virginia has an interest in resolving her dispute with a German corporation over events allegedly occurring in California (and indeed, it does not).

Jacinto's attempt to conflate general and specific jurisdiction also fails. A finding that AUDI AG is somehow subject to jurisdiction in Virginia simply because VWGoA is headquartered there would, in effect, "subject foreign corporations to general jurisdiction whenever they have an in-state subsidiary or affiliate," which "would sweep beyond even the 'sprawling view of general jurisdiction.'" *Daimler AG v. Bauman*, 571 U.S. 117, 136 (2014).

Jacinto offers no meaningful response to AUDI AG's remaining arguments for dismissal. Her Opposition simply replicates the CCAC's impermissible group pleading. While she asks the Court not to consider the warranty excerpts supplied by AoA, LLC, she submits evidence with her own motion confirming that VWGoA, not AUDI AG, is the warrantor of her vehicle. Finally, Jacinto does not respond to, and thereby concedes, AUDI AG's argument and authorities establishing that she cannot bring a claim under the Song-Beverly Act.

## ARGUMENT

## I.   AUDI AG IS NOT SUBJECT TO SPECIFIC JURISDICTION IN VIRGINIA

A.    **AUDI AG Has Not Purposefully Availed Itself of the Protections of Virginia Law**

1.    **Jacinto Identifies No AUDI AG Conduct Within Virginia**

Jacinto argues that Audi AG "purposefully availed itself of the privilege of doing business in Virginia principally through its agreements and other interactions with its exclusive importer and distributor of Audi-manufactured vehicles in the U.S." Opp. 10–11. That AUDI AG contracted with a distributor headquartered in Virginia does not establish purposeful availment. *Kearney v. BMW AG*, 2021 WL 1207476, at *7 (D.N.J. Mar. 31, 2021) ("Jurisdiction also cannot be established through a foreign manufacture[r]'s decision to contract with an in-state distributor").

As Jacinto's own exhibits confirm, the commercial relationship between AUDI AG and VWGoA centers on Germany: any disputes between the two entities are to be resolved in Germany under German law, and "the place of the registered offices of AUDI AG shall be the place of performance for all obligations resulting from this agreement for either Party." *Id.* § E.32(a)-(b). AUDI AG is headquartered in Germany: it has no offices, employees, or real estate in Virginia. It designed, manufactured, and sold Jacinto's vehicle to VWGoA in Germany. VWGoA, not AUDI AG, imported Jacinto's vehicle to the U.S. ECF 305-3 ¶¶ 4–12, 14, 17. Each of these factors weighs against a finding of purposeful availment. *See Consulting Eng'rs Corp v. Geometric Ltd.*, 561 F.3d 273, 278 (4th Cir. 2009).

Citing *Ford Motor Co. v. Montana Eighth Judicial District Court*, 592 U.S.

351 (2021), Jacinto argues that it is sufficient that AUDI AG "systematically serve[s] a market" in the forum state. Opp. 13. In *Ford*, however, the defendant *itself* conducted extensive activities in the forum states, so much so that it *conceded* "purposeful availment." As an example of purposeful availment, the court cited defendant's expectation that the *forum state* would enforce the defendant's contracts when it conducts business there—as "assistance" to its "*in-state business*." *Ford*, 592 U.S. at 355–56, 367–68. Here, in contrast, AUDI AG conducts no business in Virginia.  It is VWGoA that advertises, markets, and distributes Audi vehicles in the U.S., through its network of dealers. ECF 305-1 ¶¶ 14, 17–20. VWGoA does so as "an independent entrepreneur on its own behalf and for its own account." ECF 321-9 § A.3. And any disputes relating to AUDI AG's sale of Jacinto's vehicle to VWGoA would be resolved in Germany under German law.

"The principal inquiry in cases of this sort is whether the defendant's activities manifest an intention to submit to the power of a sovereign." *J. McIntyre Machinery, Ltd. v. Nicastro* 564 U.S. 873, 881–882 (2011). Constitutional due process is based on reciprocity: it provides "fair warning" so that a potential defendant can "structure [its] primary conduct to lessen or avoid exposure to a given State's courts." *Ford*, 592 U.S. at 360. Here, nothing in AUDI AG's relationship with VWGoA manifests any intent to submit to jurisdiction in Virginia or makes it foreseeable that it would be sued there in a dispute arising from a used car purchase in California.

### 2.    VWGoA's Jurisdictional Contacts Cannot Be Imputed to AUDI AG

Jacinto seeks to impute VWGoA's jurisdictional contacts to AUDI AG, which requires a showing that VWGoA was AUDI AG's "*alter ego*, alias, stooge, or dummy." *William v. AES Corp.*, 28 F. Supp. 3d 553, 562 (E.D. Va. 2014). Jacinto characterizes VWGoA as AUDI AG's "sales agent," but she identifies only a single decision endorsing the "sales agent" theory, the recent split decision in *L.W.*, 108 Cal. App. 5th at 115. That decision (which is currently subject to Petition for Review before the California Supreme Court) is wrong on the facts and the law.

Jacinto points to a 1995 Importer Agreement, but she ignores language stating that Volkswagen of America, Inc. (a predecessor entity of VWGoA) "shall carry on all business pursuant to this Agreement as an independent entrepreneur on its own behalf and for its own account" and "is not an agent or representative of AUDI AG and shall not act or purport to act on behalf of AUDI AG." ECF 321-9 § A.3. Although the Importer Agreement has been amended several times since 1995, those terms remain in effect.  Supplemental Declaration of Magnus Weiss ("Supp. Weiss Dec.") ¶ 5; Reply Declaration of Peter Green ("Green Dec." ¶ 4).[2]

---

[2] Jacinto relies on *Opheim v. Volkswagen Aktiengesellschaft*, 2021 WL 2621689 (D.N.J. June 25, 2021), but the court did not decide the issue of specific jurisdiction over AUDI AG.  Rather, it deferred the issue and granted jurisdictional discovery. No such discovery is required here, given the evidence submitted by AUDI AG.

Jacinto cites *Daimler AG*, but there the Court reversed the Ninth Circuit's finding of jurisdiction based on purported control pursuant to a distribution agreement that gave the parent company the right to oversee certain operations. *Daimler AG*, 571 U.S. at 135–36, n.15; *see also Riad v. Porsche Cars North America, Inc.*, 657 F. Supp. 3d 695, 704 (E.D. Pa. 2023) (declining to impute distributor's contacts to remote manufacturer based on Importer Agreement; while there were "facts which demonstrate that Porsche AG does exercise some level of control over Porsche NA, these facts merely suggest a typical parent-subsidiary relationship, or an arm's length contractual relationship"); *Robinson ex rel. Hunsinger v. Daimlerchrysler AG*, 2008 WL 728877, at *5 (N.D. Cal. Mar. 17, 2008) (subsidiary that maintains exclusive responsibility for distribution, marketing, and sale of vehicles is not an agent of the parent); *Von Eisenberg v. Automobili Lamborghini S.p.A.*, Case No. CACE22014881, Dkt. 201522149 at 8-9 (Fla. 17th Cir. Ct. June 27, 2024) (subsidiary not agent for parent where Importer Agreement "expressly disavows" agency relationship and parent lacked a "high and very significant degree" of control over subsidiary's day-to-day operations) (Exhibit A).

These decisions reflect the bedrock principle that "[u]nder any standard for finding an agency relationship, the parent company must have the right to substantially control its subsidiary's activities." *Williams v. Yamaha Motor Co. Ltd.*, 851 F.3d 1015, 1024–25 (9th Cir. 2017). Control does not exist merely because a

subsidiary's functions are "important" to the parent or that the parent would perform them if the subsidiary did not exist, *Daimler*, 571 U.S. at 135–36, or because a parent helps to set up or fund a subsidiary, *Omega Homes, Inc. v. Citicorp Acceptance Co.*, 656 F Supp. 393, 400 (W.D. Va. 1987), or because the entities share branding materials, *Reynolds v. Binance Holdings Ltd.*, 481 F. Supp. 3d 997, 1006 (N.D. Cal. 2020). Rather, Jacinto must show "undue domination and control." *Bennett v. OmniSource Corp.*, 2015 WL 6743866, at *2–4 (W.D. Va. Nov. 4, 2015).

Jacinto argues that "Audi AG has extensive responsibility over the marketing, public relations, sale, and warranty process of its vehicles, and delivers vehicles to [VWGoA] based on specific orders." Opp. 8.[3] To make this argument, however, Jacinto mischaracterizes the Importer Agreement, which makes clear that VWGoA, not AUDI AG, is responsible for marketing, selling, and warranting Audi vehicles in the U.S. ECF 321-9 § A.1. Although Jacinto claims that the Importer Agreement "obligates" AUDI AG to perform certain tasks (Opp. 8), the Agreement makes clear that AUDI AG's role is to "advise and assist." ECF 321-9 § B.6. VWGoA creates its own sales network, drafts its own agreements with dealerships, decides how to

---

[3] Exhibit 1 does not mention VWGoA, much less establish an agency relationship. It applies to business partners who provide advertising and communications services *for AUDI AG* ("in particular … advertising and communication agencies"), but VWGoA is not a vendor of advertising or communications services. Green Dec. ¶ 4; Supp. Weiss Dec. ¶ 4. It performs activities under the Importer Agreement "on its own behalf and for its own account." ECF 321-9 § A.3.

advertise and market Audi vehicles in the U.S., and issues and administers warranties to U.S. purchasers and lessees of Audi vehicles. Supp. Weiss Dec. ¶¶ 8, 10, 11; Green Dec. ¶¶ 5–10. That AUDI AG consults with its distributor from time to time is neither surprising nor sufficient to make VWGoA its agent.

Jacinto also cites AUDI AG consolidated financial statements for the proposition that AUDI AG contractually controls *AoA, LLC*. Opp. 7 (citing Exs. 3 and 4). But Jacinto has belatedly acknowledged that AoA, LLC is not the distributor of Audi vehicles in the U.S.[4] Notably, the AUDI AG financial statements do not list *VWGoA* as a relevant company in the Audi Group. Nor do they assert that AUDI AG exerts any control over VWGoA, by contract or otherwise.[5]

### 3.    AUDI AG Does Not Target the Virginia Market

Jacinto argues that specific jurisdiction exists in Virginia because AUDI AG sold Jacinto's vehicle to VWGoA with knowledge that VWGoA would import, distribute, and sell it in the *U.S.* But AUDI AG's broad desire to sell vehicles in the U.S. is irrelevant. *See Andrews v. Shandong Linglong Tyre Co., Ltd.*, 2022 WL 2484544, at *7 (E.D. Va. Jul. 6, 2022) (rejecting stream of commerce theory where

---

[4] AoA, LLC does not import, sell, distribute or service Audi vehicles in the U.S., and it has not done so in the past. ECF 184-2 ¶ 7. Jacinto cites an unverified third-party website "career.com" advertising a position at "Audi of America," Ex. 2, but the listing does not pertain to any function performed by AoA, LLC.

[5] Exhibit 4 makes clear that "the Audi Group is a decentralized organization, with the individual subsidiaries conducting their business activities independently," ECF 321-5 at pg. 92, language that Jacinto ignores.

plaintiff "utterly fails to allege that Linglong targeted Virginia" and instead alleged that "Linglong targeted the [U.S.]"); *J. McIntyre*, 564 U.S. at 886; *Durham v. LG Chem, Ltd.*, 2022 WL 274498, at *2 (11th Cir. Jan. 31, 2022). A "broad desire to target the United States through a distributor will not suffice" to establish specific jurisdiction, and allegations that it "sold its products to an American distributor, fully aware the distributor would sell these products in the United States" are insufficient to constitute purposeful availment of the forum state. *Williams v. Romarm, SA*, 756 F.3d 777, 785 (D.C. Cir. 2014); *see also XMission, L.C. v. Fluent LLC*, 955 F.3d 833, 847 (10th Cir. 2020).

Jacinto would need to identify conduct *by AUDI AG* "purposefully directed at the forum State [Virginia]" and "indicat[ing] an intent" to "serve the market in the forum State [Virginia]." *Asahi Metal Industry Co., Ltd. v. Superior Court*, 480 U.S. 102, 112 (1987); *J. McIntyre*, 564 U.S. at 889 (identifying examples "such as special state-related design, advertising, advice, or marketing"); *Von Eisenberg v. Automobili Lamborghini S.p.A.*, Case No. CACE22014881, Dkt. 201522160 (Fla. 17th Cir. Ct. June 27, 2024) (no jurisdiction where defendant "never targeted any marketing or other activities towards" Florida) (order attached as Exhibit B). She has not done so. AUDI AG does not design or manufacture vehicles to be sold only in Virginia or to appeal specifically to Virginia residents. Supp. Weiss Dec. ¶ 12. It does not attempt to influence or encourage marketing to Virginia specifically. *Id.*

10

¶ 10. Nor could Jacinto establish any Virginia targeting relevant to her own vehicle, which she bought in California. She points out that VWGoA is based in Virginia (Opp. 13–14), but VWGoA distributes vehicles across the U.S., not just Virginia, and its presence there is completely irrelevant to AUDI AG. ECF 305-3 ¶¶ 19–20.[6]

Jacinto erroneously relies on *Patt v. Volkswagen Group of America, Inc.*, 688 F. Supp. 3d 1186 (S.D. Fla. 2023), which applied the "effects" test for personal jurisdiction, holding that defendant could be sued in Florida for a personal injury occurring in Florida arising out defendant's alleged conduct outside the state. *Id.* at 1191. While AUDI AG disagrees with the ultimate holding, the decision does not bear on whether Jacinto can sue AUDI AG in Virginia for an injury that allegedly occurred in California. Jacinto argues that *Patt* found specific jurisdiction in Florida even though plaintiff leased his car in California, but here, Jacinto's alleged "injury" *is* the purchase of her vehicle (again, in California). Jacinto's remaining authorities are distinguishable for the same reason.[7]

---

[6] Jacinto's own cases support the point. In *Young v. Mitsubishi Motors N. Am. Corp.*, 2020 WL 4584391, at *3 (W.D. Wash. Aug. 10, 2020), the court found purposeful availment based on allegations that defendant had specifically directed activities at Washington "to achieve sales in this particular forum." *See also Top Gun Ammo Sales, LLC v. COF Techs., LLC,* 2022 WL 823061, at *6 (E.D. Mo. Mar. 18, 2022) (purposeful availment where defendant contracted directly with end-user in forum and "reached into Missouri" to block shipments). *In re Capacitors Antitrust Litig.*, 2015 WL 3638551, at *1–3 (N.D. Cal. June 11, 2015), in contrast, involved a federal claim and jurisdiction under the federal long-arm statute, Fed. R. Civ. P. 4(k)(2).

[7] *King v. General Motors Corp.*, 2012 WL 1340066 (N.D. Ala. Apr. 18, 2012)

**B.    Jacinto's Claims Do Not Arise Out of or Relate to Any (Nonexistent) Activity by AUDI AG in Virginia**

Jacinto identifies no activity by AUDI AG in Virginia (or anywhere) that relates to her claims for misrepresentation and breach of warranty. She speculates that AUDI AG had "substantial involvement" in (unspecified) VWGoA activities that occurred "at or through [VWGoA's] Virginia headquarters." Opp. 15–16. But that is just another variation of her unsupported claim that VWGoA was AUDI AG's "*alter ego*, alias, stooge, or dummy," which fails for the reasons discussed above. Although Jacinto claims that "Audi AG's marketing and promotional messages induced her to believe its vehicles were safe and dependable" (Opp. 16), she fails to identify a single marketing or promotional message that she saw that was issued by AUDI AG (or anyone else). AUDI AG does not market Audi vehicles in the U.S.

*In re Volkswagen "Clean Diesel" Litig.*, 2018 WL 9393018 (Va. Cir. Ct. Oct. 4, 2018) is equally inapt, where plaintiffs alleged that the head of marketing and sales for the German manufacturer traveled to Virginia and, while there, "disseminated false and misleading information about the fraudulent vehicles from Virginia." *Id*. at *3 (noting allegations that AUDI AG itself "entered the Commonwealth to perpetuate the fraud"). Here, the unrebutted evidence confirms

---

(jurisdiction appropriate in Alabama for claim arising from car accident in Alabama); *Johnson v. Chrysler Can. Inc.,* 24 F. Supp. 3d 1118 (N.D. Ala. 2014) (same); *Byrd v. Drive Elec., LLC*, 2017 WL 2126910 (N.D. Ga. May 16, 2017) (jurisdiction proper in Georgia for property damage in Georgia).

that AUDI AG did not engage in the marketing of which Jacinto complains.

*Bristol-Myers Squibb Co. v. Superior Ct. of Cal.*, 582 U.S. 255 (2017) (*BMS*), forecloses the exercise of specific jurisdiction. *BMS* held that specific jurisdiction did not exist in California because the non-resident plaintiffs had not purchased the product at issue in California and had not suffered injury there. *Id.* at 264. The same is true for Jacinto, who bought her used car in California. *BMS* observed that the non-resident plaintiffs could potentially sue BMS in their home states (where they purchased the products and suffered injury) or in the states in which defendant was incorporated or headquartered (where it was subject to general jurisdiction). Here, AUDI AG is based in Germany, and the only AUDI AG conduct even arguably relevant to Jacinto's claims—the design, manufacture, and sale of her vehicle to VWGoA—occurred in Germany. *See Alexander v. Bayerische Motoren Werke AG*, 2020 WL 2098108, at *7 (D.S.C. May 1, 2020) (plaintiff's claims did not arise from foreign manufacturer's alleged contacts with South Carolina because plaintiff's vehicle was manufactured and sold to domestic subsidiary outside of U.S. and plaintiff leased her vehicle in Louisiana).

Jacinto cites *Ford* and *SkyHop Techs., Inc. v. Narra*, 58 F. 4th 1211 (11th Cir. 2023), for the proposition that the "arises from or relates to prong" does not impose a causal requirement. Opp. 15. She argues that her vehicle "came with a warranty … that she would not have received absent Audi AG's contacts with Virginia." Opp. 16.

Her claim, however, is for *breach* of warranty. Only VWGoA (and Audi dealerships) decide whether a claim based on her airbag inflator would be covered under warranty. Supp. Weiss Dec. ¶ 11; Green Dec. ¶ 10. Moreover, Jacinto's interpretation of the "arises from or relates to" test would render it a nullity, because the genesis of vehicle ownership will always be traceable back to AUDI AG's initial sale of Audi vehicles to VWGoA in Germany. Adopting such reasoning would amount to creating general jurisdiction over AUDI AG in Virginia, an approach the Supreme Court has rejected. *See Daimler AG*, 571 U.S. at 136.

###   C.   The Exercise of Personal Jurisdiction Over AUDI AG Would Offend Traditional Notions of Fair Play and Substantial Justice

For the same reasons, the exercise of specific jurisdiction over AUDI AG violates "traditional notions of fair play and substantial justice." Jacinto argues that Virginia "has a strong interest" in adjudicating claims against companies who "are headquartered or otherwise maintain a strong presence there," Opp. 19, but neither of those descriptions applies to AUDI AG. Equally unavailing is Jacinto's argument that AUDI AG has a "substantial relationship to a [Virginia] company." *Id*. at 18. The Court is not adjudicating a dispute between AUDI AG and VWGoA (and any such dispute would be litigated in Germany under German law in any case). Simply put, the forum state has no interest in adjudicating this dispute.

## II.   Jacinto Does Not State a Claim Against AUDI AG (F. R. Civ. P. 12(b)(6))

The Opposition doubles down on the CCAC's impermissible group pleading.

For example, the CCAC alleges that "Volkswagen AG is the parent company of VW America" and "[t]ogether, these entities operate under the name 'Volkswagen Group.'" CCAC ¶ 133. Now, however, Jacinto claims that "Volkswagen Group" includes AUDI AG. Opp. 21. Similarly, she alleges in the CCAC that Volkswagen Aktiengesellschaft imported Jacinto's vehicle to the U.S. (CCAC ¶ 136); now she claims it was AUDI AG "through" VWGoA. Opp. 14. Jacinto cannot keep her own allegations straight; they plainly fail to provide "sufficient notice" of AUDI AG's alleged misconduct. In any event, all of them are wrong.

Jacinto claims the Court cannot take judicial notice of the NVLW, even as she submits evidence confirming that the warranty is (1) issued by VWGoA, not AUDI AG, and (2) covers defects in materials and workmanship (*i.e.*, not design defects). The Court has what it needs to dismiss the express warranty claim. Finally, Jacinto does not respond to the authorities cited by AUDI AG confirming that her Song-Beverly Act claims must be dismissed. She suggests that California law may not apply, Opp. 23, but that assertion is meaningless since her claim arises under a California statute.

## CONCLUSION

For the above reasons, the Court should grant AUDI AG's Motion to Dismiss and dismiss all claims against it.

Dated: April 9, 2025                     Respectfully submitted,

                                         */s/ Livia M. Kiser*

                                         Livia M. Kiser
                                         Susan V. Vargas
                                         **KING & SPALDING LLP**
                                         633 West Fifth Street, Suite 1600
                                         Los Angeles, CA 90071
                                         Telephone: +1 213 443 4355
                                         Facsimile: +1 213 443 4310
                                         lkiser@kslaw.com
                                         svargas@kslaw.com

                                         Michael B. Shortnacy
                                         **SHOOK, HARDY AND BACON L.L.P.**
                                         2049 Century Park East, Suite 3000
                                         Los Angeles, CA 90067
                                         Telephone:  (424) 324-3494
                                         Facsimile:  (424) 204-9093

                                         *Counsel for Specially Appearing Defendant*
                                         *AUDI Aktiengesellschaft*

16

## CERTIFICATE OF COMPLIANCE WITH LOCAL RULE 5.1(C) AND 7.1(D)

I hereby certify that this Reply in Support of Audi Aktiengesellschaft's Motion To Dismiss Plaintiffs' Consolidated Class Action Complaint has been prepared with one of the font and point selections approved by the Court in LR 5.1(C) (Times New Roman, 14 pt.).

Dated: April 9, 2025                                  /s/ Livia M. Kiser
                                                      Livia M. Kiser

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on the date specified below, I caused a true and correct copy of the foregoing to be served on all counsel of record via the Court's CM/ECF e-filing system.

Dated: April 9, 2025                                    */s/ Livia M. Kiser*
                                                                 Livia M. Kiser