# EXHIBIT A

IN THE CIRCUIT COURT OF THE 17TH JUDICIAL CIRCUIT
IN AND FOR BROWARD COUNTY, FLORIDA

CASE NO. **CACE22014881**   DIVISION: **27**   JUDGE: **Bidwill, Martin J. (27)**

**Johann S. Von Eisenberg**

Plaintiff(s) / Petitioner(s)

v.

**Automobili Lamborghini S.p.A, et al**

Defendant(s) / Respondent(s)

_____/

## ORDER GRANTING BENTLEY MOTORS LIMITED'S MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION

THIS CAUSE has come before the Court upon defendant Bentley Motor Limited's ("Bentley UK's") Motion to Dismiss for lack of personal jurisdiction. After considering the Motion, Plaintiff's Response in Opposition, the Reply, the arguments of counsel at a hearing, proposed orders from the parties, and applicable law, the Court will grant the motion.

As explained below, the Court lacks jurisdiction over Bentley Motor Limited, a foreign vehicle manufacturer, in this asbestos product liability case because Plaintiff Johann Von Eisenberg has not satisfied his burden of showing that Bentley UK had "a substantial connection" with Florida created "by an action of [Bentley UK] purposefully directed toward the forum State." *S. Wall Prod., Inc. v. Bolin*, 251 So. 3d 935, 940 (Fla. 4th DCA 2018). The exercise of general or specific jurisdiction in this case would not comport with due process. *See also Imerys Talc Am., Inc. v. Ricketts*, 262 So. 3d 799, 802 (Fla. 4th DCA 2018); *Volkswagen Aktiengesellschaft v. Jones*, 227 So. 3d 150, 152 (Fla. 2d DCA 2017).

## LEGAL STANDARD

Before a Florida court may consider the merits of a complaint, it must ensure that it has jurisdiction over the parties. *Borden v. E-European Ins. Co.*, 921 So. 2d 587, 591 (Fla. 2006). The established procedure in Florida for determining whether a court may exercise personal jurisdiction is set forth in *Venetian Salami Co. v. Parthenais*, 554 So.2d 499, 502 (Fla. 1989). "Initially, the plaintiff may seek to obtain jurisdiction over a nonresident defendant by pleading the basis for service in the language of the statute without pleading the supporting facts." *Id.* at 502. The defendant can then challenge the legal sufficiency of the jurisdictional allegations by filing a motion to dismiss for lack of personal jurisdiction. *Id*. If the defendant wishes to challenge the factual accuracy of the jurisdictional allegations, it "must file affidavits in support of [its] position." *Id*. The burden then shifts back to the plaintiff "to prove by affidavit the basis upon which jurisdiction may be obtained." *Id*. "[I]f no such sworn proof is forthcoming from the plaintiff as to the basis for jurisdiction, the trial court must grant the defendant's motion to dismiss." *Rollet v. de Bizemont,* 159 So. 3d 351, 356 (Fla. 3d DCA 2015). "The trial court can resolve the issue of personal jurisdiction based on the affidavits or other evidence if they are not in conflict." *Bolin*, 251 So. 3d at 939. When "the evidence on the material facts on jurisdiction is in conflict, 'then the trial court must conduct a limited evidentiary hearing to resolve the factual dispute.'" *Id.* (citation omitted).

After engaging in this analysis, a court first determines whether there are sufficient jurisdictional facts to satisfy Florida's long-arm statute, section 48.193. *See Venetian Salami*, 554 So. 2d at 501-02. If the Court finds that Plaintiff has satisfied Florida's long-arm statute, the Court must then proceed to the second step of the analysis and determine whether the exercise of jurisdiction comports with federal due process. *Id*. As a matter of due process, a state may only authorize its courts to exercise personal jurisdiction over a foreign defendant if "the defendant's contacts with the forum state (1) are related to the plaintiff's cause of action or have given rise to it, (2) involve some act by which the defendant has purposefully availed itself of the privilege of conducting activities within the forum, and (3) must be such that the defendant should reasonably anticipate being haled into court there." *Jones*, 227 So. 3d at

154.

## ANALYSIS

Applying the *Venetian Salami* framework to this case, the Court finds that (1) Plaintiff's allegations are legally sufficient to support jurisdiction over Bentley UK in Florida, but (2) Bentley UK's declaration sufficiently refutes the relevant jurisdictional allegations, and (3), even after having conducted jurisdictional discovery, Plaintiff has not submitted competent evidence to establish either general or specific jurisdiction over Bentley UK in Florida for this case. As a result, this Court cannot exercise jurisdiction over Bentley UK.

**1. Plaintiff's Allegations**. Beginning with Plaintiff's complaint, the Court finds that Plaintiff's allegations are sufficient to plead jurisdiction over Bentley UK. *See* Am. Compl. ¶¶ 14, 24-28. The Amended Complaint asserts that Bentley UK "individually and/or through its agent(s)… manufactured, sold and/or distributed asbestos-containing products, including brakes, throughout the world, including Florida, which Plaintiff used and was exposed to in his life, causing Plaintiff to develop asbestosis." *Id.* ¶ 14. Plaintiff further alleges that Bentley UK purposefully directed actions toward Florida, including that Bentley UK had "an office or agency in Florida," that it "target[ed] Florida as a market for [its] products," "target[ed] consumers in Florida," "intentionally avail[ed] itself of the privilege of doing or benefitting from business in Florida," and "exercise[d] sufficient control over a subsidiary or affiliated entity to render such an entity an agent or alter ego of [Bentley UK]." *Id.* ¶ 25. Plaintiff alleges that his claims "arose out of" such actions. ¶ 28. Plaintiff further pleads that Bentley UK "engaged in substantial and not isolated activity within Florida." *Id.* ¶ 27. Viewed collectively and taken as true, these allegations support jurisdiction. *See* § 48.193 (2), Fla. Stat.; *Teva Pharm. Indus. v. Ruiz*, 181 So. 3d 513, 522 (Fla. 2d DCA 2015) (jurisdiction comports with due process when "[a] defendant's suit-related actions . . . create a substantial connection with the state.").

**2. Bentley UK's Declaration**. Because Plaintiff has sufficiently pled the existence of jurisdiction, the burden shifts to Bentley UK to contest these allegations with a sworn declaration. *Venetian Salami*, 554 So.2d at 502. The Court thus turns to the declaration submitted by Bentley UK's

corporate representative, Tom Applegarth. As a threshold matter, Plaintiff argues that Mr. Applegarth's declaration is insufficient because he lacks "personal knowledge." The Court rejected this argument at the November 29, 2023, hearing and ruled that it would consider Mr. Applegarth's declaration. *See, e.g.*, *Carriage Hills Condo., Inc. v. JBH Roofing & Constructors*, Inc., 109 So. 3d 329, 334–35 (Fla. 4th DCA 2013) (a corporate representative testifying "is not required to possess any personal knowledge at all"); *Jones*, 227 So. 3d at 157 (at the motion to dismiss for lack of jurisdiction stage, a defendant's declaration is "taken as true").

Turning to the declaration itself, the Court finds that it is sufficient to refute both general and specific jurisdiction. General personal jurisdiction allows a court to hear any claims against a foreign corporation when its "affiliations with the State are so 'continuous and systematic' as to render them essentially at home in the forum State." *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011) (citation omitted); *see also* § 48.193 (2), Fla. Stat. But under Supreme Court precedent, general jurisdiction is typically limited to a corporate defendant's place of incorporation and its principal place of business. *See Daimler AG v. Bauman*, 571 U.S. 117, 137 (2014); *Teva*, 181 So. 3d at 521 (no general personal jurisdiction over a defendant where it was neither incorporated in Florida nor had its principal place of business in Florida). According to Mr. Applegarth's declaration, Florida is not Bentley UK's place of incorporation nor its principal place of business. *See* Applegarth Decl. ¶¶ 4, 20. The declaration thus sufficiently refutes the existence of general jurisdiction over Bentley UK in Florida.

The Applegarth declaration is also sufficient to refute Plaintiff's allegations concerning specific jurisdiction. According to Mr. Applegarth's declaration, "Bentley UK does not and has not ever purposefully or voluntarily directed or targeted its activities toward the State of Florida with respect to the assembly or sale of vehicles or vehicle parts," *id.* at ¶ 23, Bentley UK "does not and has never had established channels for providing regular advice and information to customers in the State of Florida," *id.* at ¶ 24, "Bentley UK has never manufactured vehicles or vehicle parts in the state of Florida," *id.* at ¶ 26, and "Bentley UK does not and has never regularly imported or distributed vehicles or vehicle parts

in the United States." *Id.* at ¶ 31. Mr. Applegarth further asserts that since 1970, any sales of Bentley products were facilitated by Bentley America, not Bentley UK, *id.* at ¶¶ 19, 34, and that Bentley America "is a separate and distinct entity from Bentley UK" that "does not act as an agent of Bentley UK." *Id.* ¶ 14-15. As explained next, these statements refute the existence of specific jurisdiction.

For the exercise of specific jurisdiction over a foreign manufacturer, it is not enough that a product manufactured abroad ends up in Florida through the stream of commerce, and allegedly injures a resident in Florida. Instead, "something more, such as such as special state-related design, advertising, advice, or marketing is required to show purposeful availment of a forum." *J. McIntyre*, 564 U.S. at 889 (Breyer, J., joined by Alito, J., concurring) (internal quotation marks omitted). Florida courts have adopted the plurality opinion of the U.S. Supreme Court's decision in *J. McIntyre*. As the Fourth District explained in *Bolin*, a recent asbestos case, "[t]he placement of a product into the stream of commerce, without more, is not an act of the defendant purposefully directed toward the forum." 251 So. 3d at 940 (quoting *J. McIntyre,* 564 U.S. at 886 (emphasis added)). The plaintiff must show plus factors to allow the exercise of jurisdiction over a foreign manufacturer: there must be "a substantial connection between the defendant and the forum State" created "by an action of the defendant purposefully directed toward the forum State." *Id.* That connection does not exist even when a foreign manufacturer fills an order placed by a Florida resident, let alone when a foreign manufacturer transacts abroad with an independent U.S.-based distributor. *See Jones*, 227 So.3d at 152 ("[E]vidence that a foreign company will fill an online order for a particular product falls far short of establishing that that company has 'purposely availed' itself of the privilege of conducting activities within a particular state.").

Similarly, in *Imerys Talc*, the Fourth District relied on *J. McIntryre*'s plurality opinion to hold that the stream of commerce *plus* test rejects the notion that jurisdiction over a foreign manufacturer can be established merely because the manufacturer could have foreseen that its product would end up in Florida. 262 So. 3d at 804-05. Rather, "the defendant's transmission of goods permits the exercise of jurisdiction *only* where the defendant can be said to have *targeted* the forum; as a general rule, it is *not*

enough that the defendant might have predicted that its goods will reach the forum State.'" *Id*. (emphases added). *See also Highland Stucco*, 259 So. 3d at 950 ("It is not enough that Highland's products may have found their way into Florida or that Highland may have predicted that they might reach Florida, as foreseeability that a product may find its way into a forum state is not enough, by itself, to allow that state to constitutionally exercise jurisdiction over an out-of-state defendant.").

As made clear in *Bolin*, *Imerys Talc*, and *Jones*, Plaintiff cannot premise jurisdiction only on the allegation that Bentley UK manufactured asbestos-containing products that found their way to Florida, even if Bentley UK expected that its products would reach Florida. Plaintiff's *pure* stream of commerce theory does not suffice for the exercise of jurisdiction under Florida precedent adopting the stream of commerce *plus* theory articulated in the plurality opinion in *J.McIntyre*.

Instead, Plaintiff must show something more to establish the required plus factors— *i.e.*, conduct by Bentley UK that targeted the state of Florida beyond the mere sale of goods into the stream of commerce. But as Mr. Applegarth's declaration sets forth, "Bentley UK does not and has not ever purposefully or voluntarily directed or targeted its activities toward the State of Florida with respect to the assembly or sale of vehicles or vehicle parts." *Id.* at ¶ 23. All such activities are handled by Bentley America, a separate and distinct entity. *Id.* at ¶ 14-15. The Court must take the assertions in Mr. Applegarth's declaration as true for the purposes of the *Venetian Salami* burden-shifting framework, and his assertions sufficiently negate the existence of the required plus factors and thus the exercise of specific jurisdiction over Bentley UK.

3. **Plaintiff's Opposition and Submission of Counterevidence**. Because the Applegarth declaration refutes Plaintiff's relevant jurisdictional allegations, "the burden shifts back to the plaintiff to refute the evidence the defendant submitted by affidavit or other evidence." *Bolin*, 251 So. 3d at 939. In his response, Plaintiff points to (a) training provided by Bentley UK technicians to US dealers, (b) Bentley UK's shipment of goods at the direction of Bentley America, and (c) the actions of Bentley America. As explained next, none of these points suffice to refute Bentley UK's declaration or to establish jurisdiction over Bentley UK.

      **a. Training provided by Bentley UK.** Citing to Mr. Applegarth's deposition, Plaintiff points out that Bentley UK has provided technical training to authorized Bentley dealers in Florida. But this is insufficient, as a matter of law, to establish jurisdiction. Merely providing technical support to an independent U.S. distributor does not subject a foreign manufacturer to specific jurisdiction in Florida. *See, e.g.*, *State v. Am. Tobacco Co.*, 707 So. 2d 851, 855 (Fla. 4th DCA 1998) (no personal jurisdiction even though "executives of the parent worked closely with executives of the subsidiary on pricing and products and sometimes traveled to the United States for meetings") (citing *Kramer Motors, Inc. v. British Leyland, Ltd.*, 628 2d 1175 (9th Cir. 1980)). More fundamentally, Plaintiff's argument overlooks that jurisdiction requires "a *causal connection* between the defendant's activities in the forum state and the plaintiff's cause of action." *Piazenko v. Pier Marine Interiors GBH*, 314 So. 3d 438, 444 (Fla. 3d DCA 2020) (emphasis added). Plaintiff cannot show that his injuries were *caused* by Bentley UK's technical training of U.S. dealers. His claims arise out of the use of asbestos in brakes installed on Bentley vehicles during the assembly process in England—not out of anything that happened in a training session at a U.S. dealership.

      **b. Shipment of goods to locations specified by Bentley America.** Plaintiff asserts that Bentley UK shipped vehicles and parts to Florida and he claims that Bentley UK even retained ownership of such products in Florida. The Applegarth declaration, however, explains that "Bentley UK does not and has never regularly imported or distributed vehicles or vehicle parts in the United States." Applegarth Decl. ¶ 31. It further states that since 1970, any sales of Bentley products in Florida were facilitated by Bentley America, not Bentley UK, *id.* at ¶¶ 19, 34, and that Bentley America "is a separate and distinct entity from Bentley UK." *Id.* ¶ 14-15.

    Plaintiff's position is based on Bentley UK's Interrogatory Response No. 6, which states that "from time to time during the period of 1975 to 2005, Bentley [America] purchased select Bentley brand vehicle parts from Bentley UK and requested that Bentley UK ship those parts at Bentley [America]'s expense to locations specified by Bentley Motors, Inc. in the United States, which may have included authorized Bentley dealerships located in the State of Florida." Plaintiff reads too much

into Interrogatory Response No. 6. It explains that after Bentley America purchased parts from Bentley UK in England, Bentley America then requested and paid for shipment to the US, including Florida. As Mr. Applegarth further explained in his deposition, "at Bentley America's request, we facilitated the transportation to wherever they said, including the Port of Jacksonville." Applegarth Dep. at 126:13-16. Bentley America purchased the vehicles and any parts in England, and immediately upon purchase, was responsible for arranging the transportation and insurance. Applegarth Dep. at 83:20–24. Plaintiff points to no record evidence to rebut that assertion, much less that Bentley UK retained ownership over any products in Florida.

      **c. The actions of Bentley America.** Plaintiff also points to the actions of Bentley America as grounds for jurisdiction over Bentley UK. But the Court can consider the actions of a domestic company in determining jurisdiction over a foreign company only if the plaintiff can pierce the corporate veil by establishing an alter ego or agency relationship between the companies. *Jones*, 227 So. 3d 150 at 155; *Am. Tobacco*, 707 So. 2d at 854. Here, Plaintiff has not met his burden of proving the existence of either theory.

      To establish alter ego jurisdiction, a plaintiff must show "both that the corporation is a 'mere instrumentality' or alter ego of the defendant, and that the defendant engaged in 'improper conduct' in the formation or use of the corporation." *Bellairs v. Mohrmann*, 716 So. 2d 320, 323 (Fla. 2d DCA 1998). As to the first prong, Plaintiff fails to point to any evidence that rebuts Mr. Applegarth's declaration establishing the genuine corporate separateness between Bentley UK and Bentley America. *See* Applegarth Decl. ¶¶ 13, 15-18. Plaintiff also fails to meet the second prong of the test as he has not even alleged, let alone provided evidence, that Bentley America was formed or used for fraudulent purposes. *See McFadden Ford, Inc. v. Mancuso ex rel. Mancuso*, 766 So. 2d 241, 242 (Fla. 4th DCA 2000) ("The rule requiring a showing of improper conduct [to pierce the corporate veil] has been consistently followed.").

      Plaintiff also provides no evidence to support an agency theory of jurisdiction. An agency relationship under Florida law requires "(1) acknowledgement by the principal that the agent will act for

it, (2) the agent's acceptance of the undertaking, and (3) control by the principal over the actions of the agent." *Am. Tobacco Co.*, 707 So. 2d at 854. Plaintiff cannot show that an agency relationship was acknowledged by Bentley UK or accepted by Bentley America. Rather, Bentley UK's declaration submitted in this case states that "Bentley America does not act as an agent of Bentley UK." Applegarth Decl. ¶ 17. And the Importer Agreement and Service Agreement between Bentley UK and Bentley America both expressly disavow an agency relationship. *See* Importer Agreement Art. 3; Service Agreement, Art. 2. Finally, Plaintiff cannot point to any evidence establishing that Bentley UK had a "'high and very significant' degree of control over [Bentley America's] internal day-to-day operations," as would be necessary to establish an agency relationship. *Jones*, 227 So. 3d at 159 (quoting *Extendicare, Inc. v. McGillen*, 957 So. 2d 58, 64 (Fla. 5th DCA 2007)). None of the provisions that he cites from the Importer or Service Agreements demonstrates that Bentley America "manifests no separate corporate interests of its own and functions solely to achieve the purposes of the dominant corporation," as would be required to find agency. *Team Health Holdings, Inc. v. Caceres*, 357 So. 3d 746, 753 (Fla. 3d DCA 2023) (quotation marks omitted).

Agency jurisdiction is not established simply because a foreign company has "established goals for its subsidiaries," *Am. Tobacco Co.*, 707 So. 2d at 856, or where a U.S.-based affiliate uses "the same intellectual property as a parent corporation." *Schumacher Grp. of Delaware, Inc. v. Dictan*, 327 So. 3d 404, 409 (Fla. 3d DCA 2021). On the contrary, Florida courts have adopted a high bar for finding agency jurisdiction, rejecting it even in cases where the two companies held a much closer relationship. *See, e.g.*, *Enic, PLC v. F.F. S. & Co.*, 870 So. 2d 888, 891 (Fla. 5th DCA 2004) (no agency jurisdiction where "executives of the parent worked closely with executives of the subsidiary on pricing and products and sometimes traveled to the United States for meetings") (citing *Kramer*, 628 2d at 1177).

In sum, Plaintiff has not met his burden to provide evidence of any plus factors that would show Bentley UK purposefully directed action toward Florida as would be necessary to establish specific jurisdiction. *Bolin*, 251 So. 3d at 940. The Court need not hold an evidentiary hearing because Plaintiff has not submitted any sworn proof that disputes Bentley UK's declaration; indeed, neither party has

Case Number: CACE22014881

requested a hearing. On the record before the Court, Plaintiff has not demonstrated the jurisdictional facts sufficient to support general jurisdiction or specific jurisdiction in this case.

Therefore, Defendant Bentley Motor Limited's Motion to Dismiss for Lack of Personal Jurisdiction is hereby **GRANTED**. The plaintiff's claims against Bentley Motor Limited are **DISMISSED**.

**DONE AND ORDERED** in Chambers at Broward County, Florida on 27th day of June, 2024.

CACE22014881 06-27-2024 5:06 PM
Hon. Martin Bidwill
**CIRCUIT COURT JUDGE**
Electronically Signed by Martin Bidwill

**Copies Furnished To:**
Brigette Price , E-mail : bprice@kslaw.com
Clarke Sturge , E-mail : Clarke.Sturge@csklegal.com
Clarke Sturge , E-mail : Stephanie.Dopico@csklegal.com
Clarke Sturge , E-mail : Jacqueline.Koenig@csklegal.com
Courtney M. Keller , E-mail : nef-iws@gtlaw.com
Courtney M. Keller , E-mail : kellerc@gtlaw.com
Courtney M. Keller , E-mail : orllitdock@gtlaw.com
Erin Weinstock , E-mail : docketingmiami@rumberger.com
Erin Weinstock , E-mail : Eweinstock@rumberger.com
Erin Weinstock , E-mail : eweinstocksecy@rumberger.com
Jose L Becerra , E-mail : JLB@ferrarolaw.com
Jose L Becerra , E-mail : lfuentes@ferrarolaw.com
Kelsey E. Kilpatrick , E-mail : Kelsey.Kilpatrick@gtlaw.com
Lawrence J Bernard , E-mail : sgrubbe@bernardlaw.net
Lawrence J Bernard , E-mail : courtney@bernardlaw.net
Loren W Fender , E-mail : lfender@siegfriedrivera.com
Loren W Fender , E-mail : docketing@siegfriedrivera.com
Loren W Fender , E-mail : amaillo@siegfriedrivera.com
M. Stephen Smith , E-mail : ddelcastillo@rumberger.com
Matthew Keating Casbarro , E-mail : mcasbarro@ferrarolaw.com
Melville Stephen Smith , E-mail : ssmithsecy@rumberger.com
Melville Stephen Smith , E-mail : gestrada@rumberger.com
Melville Stephen Smith , E-mail : ssmith@rumberger.com
Michael R Holt , E-mail : mholtsecy@rumberger.com

Case Number: CACE22014881

Michael R Holt , E-mail : mholt@rumberger.com
Nikolas Volosin , E-mail : dorothy.matheis@akerman.com
Nikolas Volosin , E-mail : masterdocketlit@akerman.com
Nikolas Volosin , E-mail : nikolas.volosin@akerman.com
Nora Lewis , E-mail : Nora.Lewis@bowmanandbrooke.com
Nora Lewis , E-mail : Debra.Minnick@bowmanandbrooke.com
Robert Rudock , E-mail : bob.rudock@bowmanandbrooke.com
Robert Rudock , E-mail : estela.martinez@bowmanandbrooke.com
Susan Vargas , E-mail : svargas@kslaw.com
Timothy J Ferguson , E-mail : tferguson@foleymansfield.com
Timothy J Ferguson , E-mail : jhernandez@foleymansfield.com
Timothy J Ferguson , E-mail : courtmailmiami@foleymansfield.com
Valentin Leppert , E-mail : kstobacco@kslaw.com
Valentin Leppert , E-mail : jblake@kslaw.com
Valentin Leppert , E-mail : vleppert@kslaw.com
Whitney V. Cruz , E-mail : whitney.cruz@bowmanandbrooke.com
Whitney V. Cruz , E-mail : juliet.menendez@bowmanandbrooke.com