# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF GEORGIA
# ATLANTA DIVISION

| | |
|---|---|
| IN RE: ARC AIRBAG INFLATORS PRODUCTS LIABILITY LITIGATION | MDL No. 3051 |
| | Case No. 1:22-md-03051-ELR |
| | District Judge Eleanor L. Ross |

## REPLY IN SUPPORT OF
## VOLKSWAGEN AKTIENGESELLSCHAFT'S MOTION TO DISMISS
## <u>PLAINTIFFS' CONSOLIDATED CLASS ACTION COMPLAINT</u>

# **TABLE OF CONTENTS**

**Page**

INTRODUCTION ................................................................................................1

ARGUMENT .....................................................................................................3

    I.    VW Germany Is Not Subject to Specific Jurisdiction In Virginia ........3

        A.    VW Germany Has Not Purposefully Availed Itself of Virginia Law...............................................................................3

        B.    VWGoA's Jurisdictional Contacts Cannot Be Imputed to VW Germany .........................................................................7

        C.    Plaintiffs' Claims Do Not Arise Out of or Relate to Any (Nonexistent) Activity by VW Germany in Virginia ...............11

        D.    The Exercise of Personal Jurisdiction Over VW Germany Would Offend Traditional Notions of Fair Play and Substantial Justice ..................................................................14

    II.    Plaintiffs Do Not State a Claim Against VW Germany ......................14

CONCLUSION .................................................................................................15

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Alexander v. Bayerische Motoren Werke AG*,
  2020 WL 2098108 (D.S.C. May 1, 2020) .......................................................11

*Asahi Metal Industry Co., Ltd. v. Superior Court*,
  480 U.S. 102 (1987)...........................................................................................5

*In re Baby Food Prod. Liability Litig.*,
  2025 WL 986959 (N.D. Cal. Apr. 2, 2025)........................................................9

*Bristol-Myers Squibb Co. v. Superior Ct. of Cal.*,
  582 U.S. 255 (2017).........................................................................................11

*Consulting Eng'rs Corp v. Geometric Ltd.*,
  561 F.3d 273 (4th Cir. 2009) ..........................................................................4, 9

*Daimler AG v. Bauman*,
  571 U.S. 117 (2014)................................................................................3, 7, 8, 14

*EcoMed, LLC v. Asahi Kasei Med. Co.*,
  2018 WL 6620313 (S.D. Fla. Oct. 31, 2018) ...................................................11

*Ford Motor Co. v. Montana Eighth Judicial District Court*,
  592 U.S. 351 (2021)..............................................................................2, 6, 7, 12

*Gen. Cigar Holdings, Inc. v. Altadis, S.A.*,
  205 F. Supp. 2d 1335 (S.D. Fla.) .......................................................................9

*Hernandez v. Volkswagen Aktiengesellschaft*,
  2025 WL 879717 (Cal. Ct. App. Mar. 21, 2025) ............................................2, 8

*J. McIntyre Machinery, Ltd. v. Nicastro*,
  564 U.S. 873 (2011)........................................................................................5, 7, 9

*Jazini v. Nissan Motor Co., Ltd.*,
  148 F.3d 181 (2d Cir. 1998) ............................................................................2, 8

*Kearney v. BMW AG*,
  2021 WL 1207476 (D.N.J. Mar. 31, 2021) ........................................................4

*Knepfle v. J-Tech Corp.*,
    48 F.4th 1282 (11th Cir. 2022) ............................................................................8

*Kramer Motors, Inc. v. British Leyland, Ltd.*,
    628 F.2d 1175 (9th Cir. 1980) ....................................................................2, 10, 11

*L.W. v. Audi Aktiengesellschaft*,
    108 Cal. App. 5th 95 (2025) ...............................................................................2, 8

*Mich. Motor Techs. LLC v. Volkswagen Aktiengesellschaft*,
    2020 WL 3893038 (E.D. Mich. July 10, 2020) ........................................................6

*Miller v. Honda Motor Co., Ltd.*,
    779 F.2d 769 (1st Cir. 1985) .............................................................................2, 11

*Opheim v. Volkswagen Aktiengeselschaft*,
    2021 WL 2621689 (D.N.J. June 25, 2021) ............................................................12

*Patt v. Volkswagen Group of America, Inc.*,
    688 F. Supp. 3d 1186 (S.D. Fla. 2023) ..................................................................12

*Riad v. Porsche Cars North America, Inc.*,
    657 F. Supp. 3d 695 (E.D. Pa. 2023) .....................................................................2

*SkyHop Techs., Inc. v. Narra*,
    58 F. 4th 1211 (11th Cir. 2023) ...........................................................................14

*State by Swanson v. Volkswagen Aktiengesellschaft*,
    2018 WL 6273103 (Minn. Ct. App. Dec.3, 2018)...................................................12

*In re Takata Airbag Prods. Liab. Litig.*,
    396 F. Supp. 3d 1101 (S.D. Fla. 2019) ...................................................................2

*Williams v. Romarm, SA*,
    756 F.3d 777 (D.C. Cir. 2014) ............................................................................6, 8

*In re Volkswagen "Clean Diesel" Litig.*,
    2018 WL 9393018 (Va. Cir. Ct. Oct. 4, 2018) ......................................................13

*Volkswagenwerk Aktiengesellschaft v. Wheeler*,
    814 F.2d 812 (1st Cir. 1987) ...............................................................................12

*Williams v. Yamaha Motor Co. Ltd.*
    851 F.3d 1015 (9th Cir. 2017) ...............................................................................8

*World-Wide Volkswagen v. Woodson*,
    444 U.S. 286 (1980)..................................................................................4, 5, 12

## Other Authorities

Cal. R. Court 8.1115 .............................................................................................2

Fed. R. Civ. P. 4(k)(1)........................................................................................12

Fed. R. Civ. P. 4(k)(2)...................................................................................6, 12

## **INTRODUCTION**

Plaintiffs fail to plead a *prima facie* case of personal jurisdiction in Virginia over VW Germany (a Germany entity that operates in Germany) for claims related to vehicles purchased from third parties in Florida, Illinois, Montana, and New York. They instead proffer a new theory of specific jurisdiction based on "evidence" supplied for the first time with their Opposition, while also rehashing the meritless arguments made in opposing AUDI AG's motion to dismiss.

Plaintiffs argue VW Germany is subject to jurisdiction in Virginia merely because Volkswagen Group of America, Inc. ("VWGoA"), the U.S. distributor of Volkswagen vehicles, is headquartered there. That theory is meritless. The U.S. Supreme Court has repeatedly admonished that a defendant itself—not another entity—must have, by its own actions, purposefully availed itself of the privilege of conducting business within a forum State. *See* ECF 319-1 at 19–20. As established in the Declaration of Hans von Bülow, VW Germany has not done so.

Plaintiffs try to impute VWGoA's jurisdictional contacts to VWAG under what amounts to an agency theory. Opp. 3 ("VW AG's Virginia contacts through VW America subject VW AG to jurisdiction there"). The 1995 Importer Agreement on which they rely, however, expressly states that VWGoA is "an independent entrepreneur on its own behalf and for its own account" and "is not an agent or representative of VWAG [VW Germany]." ECF 327-6 § A.3.

Plaintiffs' entire argument rests on the unpublished, uncitable state court decision *Hernandez v. Volkswagen Aktiengesellschaft*, 2025 WL 879717, at *1 (Cal. Ct. App. Mar. 21, 2025). That case largely adopts and follows the analysis in a recent split (2-1) decision in *L.W. v. Audi Aktiengesellschaft,* 108 Cal. App. 5th 95 (2025). Both decisions are wrong on the facts and the law. *Hernandez,* which "must not be cited or relied upon by a court or party in any other action" (Cal. R. Court 8.1115), erroneously found that VW Germany "controlled" VWGoA based on an Importer Agreement that is more than 45 years old. *L.W.* imputed VWGoA's forum-directed activities to AUDI AG on the theory that VWGoA was its "sales agent," a finding expressly foreclosed by the Importer Agreement at issue in that case. ECF 329 at 7–8. More fundamentally, both decisions fly in the face of decades of precedent rejecting the assertion of specific jurisdiction over a foreign vehicle manufacturer based on an independent distributor's sales of vehicles in the forum state.[1]

Moreover, neither *Hernandez* nor *L.W.* supports the argument that Plaintiffs' claims arise from or relate to (non-existent) conduct by VW Germany in Virginia. Both cases involved California residents who allege they were injured by Audi or VW products in California and who sued in California. Similarly, *Ford Motor Co. v.*

---

[1] *See, e.g., Miller v. Honda Motor Co., Ltd*., 779 F.2d 769, 772 (1st Cir. 1985); *Jazini v. Nissan Motor Co., Ltd.*, 148 F.3d 181, 184–85 (2d Cir. 1998); *In re Takata Airbag Prods. Liab. Litig.*, 396 F. Supp. 3d 1101, 1149 (S.D. Fla. 2019); *Kramer Motors, Inc. v. British Leyland, Ltd.*, 628 F.2d 1175, 1177–78 (9th Cir. 1980); *Riad v. Porsche Cars North America, Inc.*, 657 F. Supp. 3d 695, 704 (E.D. Pa. 2023). *See also* ECF 319-1 at 25 n.9 (listing additional cases); ECF 315 at n.1 (same).

*Montana Eighth Judicial District Court*, 592 U.S. 351, 371 (2021), held only that a distributor that purposefully avails itself of the market in Minnesota and Montana can be subject to specific jurisdiction there for claims arising from accidents occurring *in those states*. None of these decisions establishes that an Illinois resident claiming injury in Illinois can sue the German manufacturer of his vehicle in Virginia. Nor would Virginia courts have any interest in resolving such a dispute.

Plaintiffs improperly conflate general and specific jurisdiction. A finding that VW Germany is subject to jurisdiction in Virginia simply because VWGoA is headquartered there would, in effect, "subject foreign corporations to general jurisdiction whenever they have an in-state subsidiary or affiliate," which "would sweep beyond even the 'sprawling view of general jurisdiction.'" *Daimler AG v. Bauman*, 571 U.S. 117, 136 (2014).

Plaintiffs offer no meaningful response to VW Germany's remaining arguments for dismissal. VW Germany is properly dismissed from this proceeding.

## **ARGUMENT**

## I.    **VW Germany Is Not Subject to Specific Jurisdiction In Virginia**

### A.    **VW Germany Has Not Purposefully Availed Itself of Virginia Law**

Plaintiffs argue that VW Germany "purposefully availed itself of the privilege of doing business in Virginia principally through its agreements and continuous interactions with VW America." Opp. 10. That is wrong. VW Germany has done no such thing merely because it contracted in Germany with a distributor headquartered

in Virginia. *Kearney v. BMW AG*, 2021 WL 1207476, at *7 (D.N.J. Mar. 31, 2021) ("Jurisdiction also cannot be established through a foreign manufacture[r]'s decision to contract with an in-state distributor").

As Plaintiffs' own exhibits confirm, the commercial relationship between VW Germany and VWGoA centers on Germany: any disputes between the two entities are to be resolved in Germany under German law, and "[t]he place of the registered offices of VWAG [*i.e.*, VW Germany] shall be the place of performance for all obligations resulting from this Agreement for either Party." ECF 327-6 § E.32(a)-(b). VW Germany is headquartered in Germany: it has no offices, employees, or real estate in Virginia. It did not design or manufacture Volkswagen vehicles in the U.S. (and it did not even manufacture the vehicles allegedly purchased by plaintiffs Knapp, Lewis, or Jacinto). These factors show no purposeful availment. *See Consulting Eng'rs Corp v. Geometric Ltd.*, 561 F.3d 273, 278 (4th Cir. 2009).

Plaintiffs cite dicta from *World-Wide Volkswagen v. Woodson*, 444 U.S. 286, 297 (1980), to allege that VW Germany "serve[s], directly or indirectly, the market" in Virginia. Opp. 2. As the Supreme Court has held since *World-Wide Volkswagen*, however, a remote manufacturer is not subject to specific jurisdiction simply because an independent distributor sells its products in the forum. The law requires conduct *by VW Germany* "purposefully directed at the forum State" that "indicate[s] an intent or purpose to serve the market in the forum State." *Asahi Metal Industry Co., Ltd. v.*

*Superior Court*, 480 U.S. 102, 112 (1987). There must be "something more" than just the foreign company's product being sold in the forum, *id.* at 111; for example, a "special state-related design, advertising, advice, [or] marketing." *J. McIntyre Machinery, Ltd. v. Nicastro*, 564 U.S. 873, 889 (2011).[2]

Plaintiffs identify no such conduct. VW Germany does not design or manufacture vehicles to be sold only in Virginia or to appeal specifically to Virginia residents, rendering Plaintiffs' cited authorities distinguishable for this reason. *See* ECF 329 at 16 & n.7. Nor does it attempt to influence or encourage marketing to Virginia residents. SvB Dec. ¶¶ 9, 11. Plaintiffs cannot establish any targeting of advertising relevant to Plaintiffs' own vehicles purchased outside of Virginia. Plaintiffs contend for the first time in their opposition that their vehicles "ended up in" Virginia. Opp. 19. But Plaintiffs have no allegation and furnish no evidence that their vehicles touched Virginia soil.

Plaintiffs argue that specific jurisdiction exists in Virginia because VW Germany's "pathway to the … U.S. market quite literally runs through the Eastern District of Virginia." Opp. 1. But a "broad desire to target the United States through a distributor will not suffice" to establish specific jurisdiction, and allegations that it

---

[2] In *World-Wide Volkswagen*, the Supreme Court found no specific jurisdiction in Oklahoma over a distributor and dealership that sold vehicles in New York, New Jersey, and Connecticut. While it was foreseeable that vehicles sold in those states could wind up in Oklahoma, that was insufficient to show that defendants "directly or indirectly" served a market in Oklahoma. 444 U.S. at 297.

"sold its products to an American distributor, fully aware the distributor would sell these products in the United States" are insufficient to constitute purposeful availment of *Virginia*. *Williams v. Romarm, SA*, 756 F.3d 777, 785 (D.C. Cir. 2014); *see also* ECF 329 at 14–15.[3] Plaintiffs point to the fact VWGoA is "headquartered in Virginia" (Opp. 14), but VWGoA distributes vehicles across the U.S., not just Virginia, and its presence there is irrelevant to VW Germany. ECF 319-2 ¶¶ 22–23.

Plaintiffs similarly misinterpret *Ford Motor Co. v. Montana Eighth Judicial District Court*. In *Ford*, the defendant *itself* conducted extensive activities in the forum states, so much so that it *conceded* "purposeful availment." *See Ford*, 592 U.S. at 355–56, 361, 364–65, 367–68. Ford itself advertised its vehicles "by every means imaginable" in the forum states and directly contracted in Montana with 36 dealerships and in Minnesota 84 more to sell Ford vehicles to state residents. *Id.* at 364–65. As an example of purposeful availment, *Ford* cited defendant's expectation that the *forum state* would enforce its contracts when it conducts business there—as "assistance" to its "*in-state business.*" *Id.* at 367–68.

Here, VW Germany conducts no business in Virginia and has no expectations that Virginia law would assist the company. It is VWGoA that advertises, markets, and distributes Volkswagen vehicles in Virginia, and it is VWGoA that contracts with

---

[3] *Mich. Motor Techs. LLC v. Volkswagen Aktiengesellschaft*, 2020 WL 3893038 (E.D. Mich. July 10, 2020) involved claims under federal patent laws and application of Fed. R. Civ. P. 4(k)(2).

dealerships in Virginia and other states. ECF 319-2 ¶¶ 16, 20. VWGoA does so as "an independent entrepreneur on its own behalf and for its own account." ECF 327-6 § A.3. Any disputes relating to VW Germany's sale of Plaintiffs' vehicles to VWGoA would be resolved in Germany under German law. VWGoA, not VW Germany, imports Volkswagen vehicles into the United States. ECF 319-2 ¶ 19.

No U.S. Supreme Court opinion has ever applied the concept of "indirectly" serving the forum market absent a showing that the defendant *itself* availed itself of the laws of the forum. "The principal inquiry in cases of this sort is whether the defendant's activities manifest an intention to submit to the power of a sovereign." *J. McIntyre*, 564 U.S. at 881–82. Constitutional due process exists to provide "fair warning" so that a potential defendant can "structure [its] primary conduct to lessen or avoid exposure to a given State's courts." *Ford*, 592 U.S. at 360. Here, VW Germany manifested no intent to submit jurisdiction in Virginia. Nor was it reasonably foreseeable that it could be sued there for disputes arising from car purchases in California, Florida, Illinois, Montana, and New York.

**B.    VWGoA's Jurisdictional Contacts Cannot Be Imputed to VW Germany**

Plaintiffs cite a footnote from *Daimler* for the proposition that "a corporation can purposefully avail itself of a forum by directing its agents or distributors to take action there." Opp. 3 (citing *Daimler*, 571 U.S. at 135 n.13). In *Daimler*, however, the court declined to exercise jurisdiction based on allegations that the parent had

the "right to oversee certain" of a subsidiary's "operations" under an Importer Agreement, where (as here) the agreement disavows "the creation of an agency relationship." *Daimler*, 571 U.S. at 136. In so doing, it rejected the "overbroad" approach to jurisdiction reflected in *L.W.* and *Hernandez*.[4]

As discussed in AUDI AG's reply, courts have refused to impute the jurisdictional contacts of a distributor to a foreign vehicle manufacturer based on similar Importer Agreements. *See* ECF 329 at 12. These decisions reflect the bedrock principle that "[u]nder any standard for finding an agency relationship, the parent company must have the right to substantially control its subsidiary's activities." *Williams*, 851 F.3d at 1024–25. *See also Knepfle v. J-Tech Corp.*, 48 F.4th 1282, 1292–93 (11th Cir. 2022) (reversing determination that specific jurisdiction existed over a Korean parent entity based on marketing activities of its domestic subsidiary, where plaintiff furnished no evidence that parent "exercises sufficient control over the subsidiary to render the subsidiary an agent or alter ego" of the parent); *Jazini*, 148 F.3d at 184–85 (same).

Plaintiffs argue that through the Importer Agreement, VW Germany "participates extensively in the marketing, public relations, sale, and warranty process of its vehicles to U.S. customers." Opp. 7. That mischaracterizes the

---

[4] *Daimler* "applies no less in the context of specific jurisdiction than in that of general jurisdiction." *Williams v. Yamaha Motor Co. Ltd.* 851 F.3d 1015, 1024–25 (9th Cir. 2017).

Importer Agreement, which makes clear that *VWGoA*, not VW Germany, is responsible for marketing, selling, and warranting Volkswagen vehicles in the U.S. ECF 327-6 § A.1. Nor does the Importer Agreement support the argument that VW Germany controlled or "directed" VWGoA's activities. VW Germany does not dictate how VWGoA performs its functions as distributor, marketer, or warrantor. SvB Dec. ¶ 5; Green Dec. ¶ 4. VWGoA creates its own sales network, drafts its own agreements with dealerships, decides how to advertise and Volkswagen vehicles in the U.S., and issues and administers warranties to U.S. purchasers and lessees.

That VW Germany may consult with its distributor from time to time is insufficient to support jurisdiction. *See Gen. Cigar Holdings, Inc. v. Altadis, S.A.*, 205 F. Supp. 2d 1335, 1343–44 (S.D. Fla.), *aff'd*, 54 Fed.Appx. 492 (11th Cir. 2002) ("regular contact" or "a very close working relationship" between parent and subsidiary insufficient to support jurisdiction); *Consulting Eng'rs Corp.*, 561 F.3d at 278 (calls and emails to entity headquartered in forum insufficient to support specific jurisdiction); *J. McIntyre*, 564 U.S. at 897 (no specific jurisdiction over remote manufacturer where "the U.S. distributor 'structured [its] advertising and sales efforts in accordance with' [manufacturer's] 'direction and guidance whenever possible'"); *In re Baby Food Prod. Liability Litig.*, 2025 WL 986959, at *6-7 (N.D. Cal. Apr. 2, 2025) ("shared branding and marketing materials" and participation in

subsidiary's budget allocations insufficient to establish jurisdiction over parent).[5]

Nor does Plaintiffs' assortment of press releases about VWGoA leadership establish control. *See* Opp. 6–7. Plaintiffs expressly disavow an *alter ego* theory of jurisdiction. *Id.* 17. Further, none of VWGoA's CEOs were employed by VW Germany while serving in VWGoA management (and most have never been employed by VW Germany at all). SvB Dec. ¶¶ 12–14; Green Dec. ¶¶ 10–12. Plaintiffs point to Dr. Antlitz, who serves on VW Germany's Board of Management and as Chair of VWGoA's Supervisory Board. But Dr. Antlitz is not an officer or employee of VWGoA. SvB Dec. ¶ 15; Green Dec. ¶ 13. He is an outside director on VWGoA's Supervisory Board.

Moreover, common directors do not demonstrate control. In *Kramer Motors, Inc. v. British Leyland, Ltd.*, 628 F.2d 1175 (9th Cir. 1980), the Ninth Circuit declined to find specific jurisdiction over a parent based on the activities of its subsidiary where: (1) at various times directors of the British parent sat on the board of the U.S. importer subsidiary; (2) the president of the subsidiary served as a director of the parent; (3) the parent had "general executive responsibility" for the subsidiary's operation and reviewed and "approved" the subsidiary's "major policy decisions"; (4) the parent "guaranteed obligations" of the subsidiary to U.S. banks; (5)

---

[5] Although Plaintiffs claim that the Importer Agreement "obligate[s]" VW Germany to perform certain tasks (Opp. 18), the Agreement makes clear that VW Germany's role is to "advise and assist." ECF 327-6 § B.6.

executives of the parent "worked closely" with executives of the subsidiary regarding vehicle pricing for the U.S. market and sometimes traveled to the U.S. for meetings; and (6) the parent approved the subsidiary's proposal to consolidate distribution of vehicles marketed overseas within the U.S. *Id.* at 1177. Courts in the Eleventh Circuit regularly cite *Kramer* to demonstrate "the high level of operational control that must be alleged to support personal jurisdiction over a non-resident parent company based on an agency theory."[6] No such control exists here.

### C. Plaintiffs' Claims Do Not Arise Out of or Relate to Any (Nonexistent) Activity by VW Germany in Virginia

Plaintiffs cannot show that their Florida, Illinois, Montana, and New York claims "arise from or relate" to any VW Germany (hypothetical) contacts with Virginia. *See Bristol-Myers Squibb Co. v. Superior Ct. of Cal.*, 582 U.S. 255 (2017) (no specific jurisdiction in California over claims asserted by non-California residents who were not prescribed drug in California, did not ingest drug in California, and did not experience injury in California); *see also Alexander v. Bayerische Motoren Werke AG*, 2020 WL 2098108, at *7 (D.S.C. May 1, 2020) (claims did not arise from foreign manufacturer's alleged contacts with South Carolina because plaintiff's vehicle was manufactured and sold to domestic

---

[6] *EcoMed, LLC v. Asahi Kasei Med. Co.*, 2018 WL 6620313, at *10 (S.D. Fla. Oct. 31, 2018), report and recommendation adopted, 2018 WL 6620467 (S.D. Fla. Nov. 28, 2018) (listing cases). *See also Miller v. Honda Motor Co., Ltd.*, 779 F.2d 769, 772 (1st Cir. 1985) (rejecting jurisdiction over Japanese manufacturer despite common membership on the board of directors of manufacturer and U.S. subsidiary).

subsidiary outside of U.S. and plaintiff leased her vehicle in Louisiana).

Plaintiffs' cases do not hold otherwise. As *Ford* put it, "specific jurisdiction attaches … when a company like Ford serves a market for a product in the forum State *and the product malfunctions there*." *Ford*, 592 U.S. at 363 (emphasis added). *See also World-Wide Volkswagen*, 444 U.S. at 297 (manufacturer subject to specific jurisdiction if it serves market in forum and "its allegedly defective merchandise has there been the source of injury to its owner or to others"); *Opheim v. Volkswagen Aktiengeselschaft*, 2021 WL 2621689 (D.N.J. June 25, 2021) (New Jersey residents suing in New Jersey for alleged injury in New Jersey);[7] *Patt v. Volkswagen Group of America, Inc.*, 688 F. Supp. 3d 1186 (S.D. Fla. 2023) (same for Florida); *State by Swanson v. Volkswagen Aktiengesellschaft*, 2018 WL 6273103 (Minn. Ct. App. Dec.3, 2018) (action brought by State of Minnesota alleging injury to Minnesota environment and residents). While VW Germany disagrees with the ultimate holdings in cases such as *Patt*, which conflate the inquiries required under Fed. R. Civ. P. 4(k)(1) and 4(k)(2), none hold that Plaintiffs can sue VW Germany in Virginia for injuries that allegedly occurred in other states.[8]

---

[7] *Opheim* did not find specific jurisdiction over VW Germany. It permitted jurisdictional discovery—an outcome that would be inappropriate here, as discussed in VW Germany's concurrently filed opposition to Plaintiffs' motion for discovery.

[8] Plaintiffs' remaining authorities are similarly distinguishable. ECF 329 at 16–17. Plaintiffs also cite *Volkswagenwerk Aktiengesellschaft v. Wheeler*, 814 F.2d 812, 814 (1st Cir. 1987), which did not address personal jurisdiction. Nor is it otherwise relevant: its trademark allegations pre-dated the relevant period here by decades.

Nor do Plaintiffs identify any activity by VW Germany in Virginia (or anywhere) that relates to their claims for misrepresentation and breach of warranty. Plaintiffs speculate that VW Germany was "closely involved with and responsible for numerous aspects of the advertising, sales, marketing, and regulatory and warranty processes for" the Volkswagen Class Vehicles, "including through its subsidiary." Opp. 18. But again, Plaintiffs improperly impute activities of VWGoA to VW Germany, which is improper for the reasons discussed above. Although Plaintiffs claim VW Germany's "uniform and pervasive marketing" caused them to believe "the cars were safe and dependable" (Opp. 18), they fail to identify a single marketing or promotional message. None exist, because VW Germany does not market Volkswagen vehicles for the U.S. market. ECF 319-2 ¶¶ 7, 23; SvB Dec. ¶ 9.

Plaintiffs cite *In re Volkswagen "Clean Diesel" Litig.*, 2018 WL 9393018 (Va. Cir. Ct. Oct. 4, 2018), which does not support their argument that jurisdiction over VW Germany "does not turn on whether it physically stepped into Virginia." *See* Opp. 3. There, the plaintiffs alleged that the head of marketing and sales for the German manufacturer traveled to Virginia and, while there, "disseminated false and misleading information about the fraudulent vehicles from Virginia." *Id*. at *3 (noting allegations that VW Germany itself "entered the Commonwealth to perpetuate the fraud"). Notably, while Plaintiffs point to language in *Clean Diesel* misdescribing the Importer Agreement, *see* Opp. 8 n.3, the court there did not rule

13

on agency or control. Here, the unrebutted evidence confirms that VW Germany did not engage in the marketing or warranty decisions of which Plaintiffs complain.

Plaintiffs cite *SkyHop Techs., Inc. v. Narra*, 58 F. 4th 1211 (11th Cir. 2023), for the proposition that the "arises from or relates to prong" does not impose a causal requirement. Opp. 18. But Plaintiffs' proffered interpretation of the "arises from or relates to" test would render it a nullity, because the genesis of vehicle ownership will always be traceable back to VW Germany's initial sale of Volkswagen vehicles in Germany to VWGoA. Adopting such reasoning would amount to creating general jurisdiction over VW Germany in Virginia, an approach the Supreme Court has rejected. *See Daimler*, 571 U.S. at 136.

## D.   The Exercise of Personal Jurisdiction Over VW Germany Would Offend Traditional Notions of Fair Play and Substantial Justice

Plaintiffs argue that Virginia "has a strong interest" in adjudicating claims against companies who are "headquartered" there, Opp. 21, but VW Germany is not. Equally unavailing is Plaintiffs' argument that VW Germany has a "substantial relationship to a [Virginia] company." *Id*. at 20. The Court is not adjudicating a dispute between VW Germany and VWGoA (and any such dispute would be litigated in Germany under German law). Virginia has no interest in adjudicating this dispute, and certainly none that would justify the exercise of jurisdiction here.

## II.   Plaintiffs Do Not State a Claim Against VW Germany

The Opposition fails to meaningfully address the CCAC's impermissible

group pleading. Plaintiffs repeatedly use the term "Volkswagen Group"—which is not a recognized legal entity—to mask distinctions between defendants. It appears that Plaintiffs themselves do not understand which entities they mean. Here, they acknowledge that the CCAC defines "Volkswagen Group" to mean VW Germany and VWGoA, but in their Opposition to AUDI AG's motion to dismiss, they claim it also includes AUDI AG. *Compare* ECF 327 at 29 *with* ECF 321 at 27. Further, as noted in VW Germany's opening papers, the CCAC is unclear whether Plaintiff Jacinto—who purchased a used Audi A3 manufactured by AUDI AG—is bringing claims against VW Germany. ECF 319-1 at 6 n.2, 26. Tellingly, the Opposition declines to answer this question. If Plaintiffs cannot (or will not) say whether Jacinto is suing VW Germany, their allegations plainly fail to provide "sufficient notice" of the claims asserted. Plaintiffs' remaining 12(b)(6) arguments are identical to those raised in their Opposition to AUDI AG's motion to dismiss and fail for the same reasons set forth in AUDI AG's reply.

## **<u>CONCLUSION</u>**

For the above reasons, the Court should grant VW Germany's Motion to Dismiss and dismiss all claims against it.

Dated: May 2, 2025                     Respectfully submitted,

                                                  */s/ Livia M. Kiser*

                                                  Livia M. Kiser

15

Susan V. Vargas
**KING & SPALDING LLP**
633 West Fifth Street, Suite 1600
Los Angeles, CA 90071
Telephone: +1 213 443 4355
Facsimile: +1 213 443 4310
lkiser@kslaw.com
svargas@kslaw.com

Michael B. Shortnacy
**SHOOK, HARDY AND BACON L.L.P.**
2049 Century Park East, Suite 3000
Los Angeles, CA 90067
Telephone:  (424) 324-3494
Facsimile:  (424) 204-9093

*Counsel for Specially Appearing Defendant
Volkswagen Aktiengesellschaft*

## <u>CERTIFICATE OF COMPLIANCE WITH LOCAL RULE 5.1(C) AND 7.1(D)</u>

I hereby certify that this Reply in Support of Volkswagen Aktiengesellschaft's Motion to Dismiss Plaintiffs' Consolidated Class Action Complaint has been prepared with one of the font and point selections approved by the Court in LR 5.1(C) (Times New Roman, 14 pt.).

Dated: May 2, 2025                                 <u>*/s/ Livia M. Kiser*</u>
                                                          Livia M. Kiser

## **CERTIFICATE OF SERVICE**

I hereby certify that on the date specified below, I caused a true and correct copy of the foregoing to be served on all counsel of record via the Court's CM/ECF e-filing system.

Dated: May 2, 2025                                    */s/ Livia M. Kiser*
                                                         Livia M. Kiser